# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BECKMAN COULTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> DEFENDANT CYTEK BIOSCIENCES, INC., <br> Defendant. | C.A. No. 24-0945-CFC-EGT |

## PLAINTIFF BECKMAN COULTER, INC.'S
## ANSWERING BRIEF IN OPPOSITION TO
## CYTEK BIOSCIENCES, INC'S MOTION TO STAY PENDING
## *INTER PARTES* REVIEW AND POST GRANT REVIEW

OF COUNSEL:

Omar A. Khan
Jeffrey A. Dennhardt
Lauren E. Matlock-Colangelo
WILMER CUTLER PICKERING HALE AND
  DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

Asher S. McGuffin
WILMER CUTLER PICKERING HALE AND
  DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Dated:  July 25, 2025

Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

I.     SUMMARY OF ARGUMENT ....................................................1

II.    NATURE AND STAGE OF PROCEEDINGS.............................................4

III.   STATEMENT OF FACTS ....................................................................6

    A.    Defendant's Sole IPR Retreads Art Rejected During Prosecution, and Its Other Post-Grant "Challenges" Are Purely Hypothetical...............6

    B.    PTAB's Discretionary Denial Procedure Renders Institution Unlikely 8

IV.    ARGUMENT.......................................................................................8

    A.    The Court Should Deny The Motion As Premature.............................8

    B.    The Court Should Deny The Motion At Least Until After Institution 11

    C.    The Stay Factors Favor Denying Defendant's Motion ......................12

        1.    Because No Post-Grant Proceedings Have Been Instituted, Any "Simplification" Is Purely Speculative .....................................12

        2.    The Case Is At An Advanced Stage ..........................................16

        3.    BEC Will Suffer Undue Prejudice If A Stay Is Granted...........17

V.     CONCLUSION...............................................................................20

## <u>TABLE OF AUTHORITIES</u>

**CASES**

Page(s)

*ADT LLC v. Vivint, Inc.*, IPR2022-00612, Paper 8 (P.T.A.B. Aug. 22, 2022) ................................................................................................................... 15

*AIA Eng'g Ltd. v. Magotteaux Int'l S/A*, 657 F.3d 1264 (Fed. Cir. 2011) ......................................................................................................................... 7

*Apple Inc. v. Fintiv, Inc.*, IPR2020-00019, 2020 WL 2126495 (P.T.A.B. Mar. 20, 2020) .................................................................................... 9

*Belden Techs. Inc. v. Superior Essex Commc'ns LP*, 2010 WL 3522327 (D. Del. Sept. 2, 2010) .......................................................... 21

*Bonutti Rsch., Inc. v. Lantz Med., Inc.*, 2015 WL 3386601 (S.D. Ind. May 26, 2015) ............................................................................................... 21

*Brit. Telecommunications PLC v. IAC/InterActiveCorp*, 2019 WL 4740156 (D. Del. Sept. 27, 2019) ................................................................ 13

*Cooper Notification, Inc. v. Twitter, Inc.*, 2010 WL 5149351 (D. Del. Dec. 13, 2010) ............................................................................................... 19

*Copy Protection LLC v. Netflix, Inc.*, 2015 WL 3799363 (D. Del. June 17, 2015) ................................................................................................ 14, 18

*Datanet LLC v. Dropbox Inc.*, 2023 WL 9005604 (W.D. Tex. Dec. 28, 2023) ................................................................................................................. 14

*Davol, Inc. v. Atrium Med.*, 2013 WL 3013343 (D. Del. June 17, 2013) ................................................................................................................. 19

*Ecto World, LLC v. RAI Strategic Holdings, Inc.*, IPR2024-01280, Paper 13 (P.T.A.B. May 19, 2025) ................................................................ 16

*Entangled Media, LLC v. Dropbox Inc.*, 732 F. Supp. 3d 1120 (N.D. Cal. 2024) ................................................................................................... 12

*Entropic Commc'ns v. DirecTV*, 2023 WL 3407132 (C.D. Cal. Apr. 17, 2023 ................................................................................................... 14

*Exact Sciences Corporation v. Geneoscopy, Inc.*, 1:23-cv-01319 (D. Del. Nov. 1, 2024) ........................................................................11

*Force Mos Tech., Co. v. ASUSTek Computer, Inc.*, 2024 WL 1586266 (E.D. Tex. Apr. 11, 2024)................................................................14

*Genentech, Inc. v. Amgen Inc.*, 2019 WL 3290167 (D. Del. July 18, 2019) ..............................................................................................20

*HIP, Inc. v. Hormel Foods Corp.*, 2019 WL 7667104 (D. Del. May 16, 2019) ...................................................................................14, 15

*Honeywell Int'l Inc. v. Arkema Inc.*, 939 F.3d 1345 (Fed. Cir. 2019) ...................17

*Hum Indust. Tech., Inc. v. Amsted Rail Co.*, IPR2023-00539, Paper 10 (P.T.A.B. July 26, 2023)................................................................16

*ImageVision.Net, Inc. v. Internet Payment Exch., Inc.*, 2012 WL 5599338 (D. Del. Nov. 15, 2012)....................................................20

*NEC Corp. v. Peloton Interactive, Inc.*, 2024 WL 1533952 (D. Del. Apr. 9, 2024)...............................................................................14

*Neo Wireless v. Dell Techs.*, 2022 WL 2763139 (W.D. Tex. June 7, 2022) ..............................................................................................14

*Neste Oil OYL v. Dynamic Fuels, LLC*, 2013 WL 3353984 (D. Del. July 2, 2013) ............................................................................20

*Pragmatus Mobile, LLC v. Amazon.com, Inc.*, 2015 WL 3799433 (D. Del. June 17, 2015)......................................................................18

*Princeton Digital Image Corp. v. Konami Digital Ent. Inc.*, 2014 WL 3819458 (D. Del. Jan. 15, 2014)............................................15, 22

*Robocast, Inc. v. Netflix, Inc.*, 1:22-cv-00305, D.I. 38 (D. Del. Jan. 26, 2023) ..............................................................................................11

*Sandpiper CDN, LLC v. Google LLC*, 2025 WL 1932504 (C. D. Cal. June 24, 2025)...............................................................................11

*SenoRx, Inc. v. Hologic, Inc.*, 2013 WL 144255 (D. Del. Jan. 11, 2013) ..............................................................................................20

*SITO Mobile R&D IP, LLC v. World Wrestling Ent., Inc*., 2021 WL 7628181 (D. Del. Dec. 20, 2021) ...................................................14

*TC Tech LLC v. Sprint Corp*., 2021 WL 4521045 (D. Del. Oct. 4, 2021) ...........................................................................................14

*Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, 193 F. Supp. 3d 345 (D. Del. 2016) .....................................................16

*Trover Grp., Inc. v. Dedicated Micros USA*, 2015 WL 1069179 (E.D. Tex. Mar. 11, 2015) ................................................................14

*TruePosition v. Polaris Wireless*, 2013 WL 5701529 (D. Del. Oct. 21, 2013) ...........................................................................................21

*TTI Consumer Power Tools, Inc. v. Lowe's Home Centers, LLC*, 2022 WL 16739812 (D. Del. Nov. 7, 2022)........................................18

*TwinStrand Biosciences, Inc. v. Guardant Health, Inc.*, 2023 WL 2563179 (D. Del. Mar. 17, 2023) .........................................11, 13

*Twinstrand Biosciences v. Guardant Health*, 2022 WL 18936070 (D. Del. Oct. 28, 2022) ....................................................................14

*WSOU Invs., LLC v. Netgear, Inc.*, 2022 WL 17337924 (D. Del. Nov. 30, 2022). .......................................................................................21

## STATUTES, RULES, AND REGULATIONS

35 U.S.C. § 103 ................................................................................7, 8

35 U.S.C. § 314 ....................................................................................8

35 U.S.C. § 315 ..............................................................................12, 20

35 U.S.C. § 316 ....................................................................................8

35 U.S.C. § 325 ................................................................................7, 15

## TABLE OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| A | Defendant Cytek Biosciences, Inc.'s Responses and Objections to Plaintiff's First Set of Interrogatories (Nos. 1-15) |
| B | Declaration of Jeffrey A. Dennhardt in Support of Beckman Coulter's Opposition Brief to Cytek's Motion to Stay |
| C | Prosecution History of EP 4332547 |
| D | Prosecution History of U.S. Patent No. 11,703,443 |
| E | Prosecution History of U.S. Patent No. 10,330,582 |
| F | Excerpted Portions of the Prosecution History of U.S. Patent No. 12,174,106 |
| G | Excerpted Portions of the Prosecution History of U.S. Patent No. 12,174,107 |
| H | Excerpted Portions of the Prosecution History of U.S. Patent No. 9,746,412 |
| I | Defendant Cytek Biosciences, Inc.'s Revised Initial Invalidity Contentions |

## I.    SUMMARY OF ARGUMENT

1.    Although Defendant Cytek Biosciences, Inc. ("Defendant") has been aware of Plaintiff Beckman Coulter's ("BEC") allegations since June 2024, and although the Parties are direct competitors that have been litigating this case for nearly a year, Defendant requests that the Court stay the litigation and move the trial date based primarily on hypothetical post-grant challenges to the Asserted Patents ***that have not even been filed***.  Not only is Defendant's request unprecedented—this Court has never entered a stay based on petitions that do not exist—but it contravenes standard practice adopted by this Court that stays should be granted only ***after institution*** of post-grant review.  Under Defendant's theory, every accused infringer in competitor litigation would be automatically entitled to a stay at the outset of litigation simply by claiming it will eventually file post-grant challenges.

2.    Even worse, Defendant asks the Court to save it from its own strategic decision to ***delay*** filing post-grant challenges until after BEC served its reply *Markman* brief and mere weeks before the one-year bar date.  Institution decisions on Defendant's proposed petitions will issue in early 2026 (likely after expert discovery closes), and any final written decisions will not issue until early 2027 (at least five months after trial).  Under the PTAB's long-standing discretionary denial practice, Defendant's petitions are virtually certain to be denied institution.  Thus, Defendant unabashedly seeks a stay to use as a basis to support institution of its late-

1

filed petitions that otherwise will almost certainly be denied at the PTAB. In essence, Defendant is asking the Court to put its thumb on the scale in favor of institution, but the core logic of Defendant's motion is entirely backwards: the Court should not issue stays to promote IPR institutions; instead, the fact of an IPR institution should inform whether a stay is appropriate.

3.      While Defendant's facially deficient motion should be rejected outright in light of the basic principles above, the specific facts and circumstances here also compel denial of Defendant's motion.

a.      ***First***, Defendant's motion is premature. Defendant has not yet filed three of the IPRs or PGRs that serve as the basis for its stay request. Neither the Court nor BEC can evaluate those purely hypothetical post-grant challenges at least until they are filed. Defendant suggests that recent PTAB guidance regarding discretionary denial warrants its extraordinary motion, but that guidance did not alter PTAB practice of discretionarily denying petitions that would result in a final written decision far after a district court trial. Despite that long-standing PTAB practice, this Court has consistently denied motions for stay prior to institution. Defendant should not be allowed to improperly put the cart before the horse and seek a stay before filing IPRs in an effort to increase the likelihood its petitions will be instituted.

2

b.      **Second**, consistent with the Court's typical practice, the Court should deny Defendant's motion at least until and in the (unlikely) event its post-grant challenges are instituted.

c.      **Finally**, to the extent the Court were to reach them, each of the stay factors strongly weighs against Defendant's motion:

No Simplification.  A stay is highly unlikely to simplify the issues.  Delaware courts routinely find this factor cannot favor a stay prior to institution.  Moreover, the petitions are likely to be discretionarily denied not only because the jury trial is little over a year away, but also because both references that underly its sole IPR invalidity ground were before the examiner during prosecution.  Defendant's reliance on prosecution of a different patent with different limitations prosecuted in a different country under a different statutory scheme should be given little weight.  In any event, numerous issues in the case will remain even after the post-grant proceedings, including more than 500 product-based invalidity grounds that are not subject to IPR estoppel, other validity issues that are not subject to IPR review, and Defendant's false marking counterclaim.

Advanced Stage of Litigation.  This case is far along—*Markman* briefing is complete, the hearing is just three weeks away, and fact discovery closes in just over two months.  Any IPRs or PGRs will be far behind this case—by the time any institution decisions issue, expert discovery will likely be closed, and the jury trial

3

will be mere months away; and by the time any final written decisions issue, it will have been over five months since the conclusion of the jury trial in this case.

    <u>BEC Severely Prejudiced</u>.  As Defendant concedes, the Parties are direct competitors, and they are among the few entities that offer flow cytometers that rely on WDM technology relating to the Asserted Patents.  Nearly all of Defendant's products rely on infringing technology, and BEC expects to establish lost profits and irreparable competitive harm due to Defendant's infringement.  Moreover, Defendant sat on its hands for nearly a year before filing its singular IPR (and continues to do so for its promised future filings), while the Parties litigated this case at great time and expense.  BEC is entitled to timely recover for Defendant's infringement, and granting a stay now—before petitions are even filed—will unreasonably delay BEC's ability to adjudicate Defendant's infringement.[1]

## II.    NATURE AND STAGE OF PROCEEDINGS

    The Asserted Patents relate to innovations in wavelength division multiplexing ("WDM") technologies for use in flow cytometers.  D.I. 1, ¶¶12-24. BEC and Defendant have long been direct competitors, and they are among the few

---

[1] BEC filed its opposition brief well in advance of its deadline because Defendant's motion is so obviously lacking in merit and the prejudice to BEC is so severe that BEC seeks prompt resolution and denial of Defendant's motion, including by ensuring that the Court has the most amount of time possible to potentially decide (and deny) the motion in advance of the upcoming *Markman* hearing.

entities that sell flow cytometers utilizing WDM technology.  D.I. 1 (Compl.), ¶¶8-19; D.I. 48 (Answer), ¶19.

Defendant has been aware of the family of Asserted Patents[2] since at least 2020, and it has been on notice of its infringement since at least June 2024, when BEC provided claim charts detailing Defendant's infringement.  *See* Ex. A at 15; Compl., Exs. 3-4 (D.I. 1-1); Compl., Ex. 16 (D.I. 1-3).  After the Parties were unable to resolve the dispute, BEC filed the Complaint on August 14, 2024, alleging infringement of the '582 and '443 Patents.  D.I. 1.  On January 9, 2025, just three weeks after the issuance of the '106 and '107 Patents, BEC filed its First Amended Complaint, alleging infringement of all Asserted Patents.  D.I. 42.  After BEC amended the Complaint, Defendant agreed that the Parties could maintain the original trial date and did not suggest additional time was necessary for post-grant challenges.  D.I. 53.

Over the last nearly 12 months of litigation, there has been substantial progress and investment in this proceeding by the Parties and Court:  (1) the Parties months ago served their infringement and invalidity contentions; served responses to multiple sets of written discovery, including multiple supplements; have collectively produced nearly 90,000 pages of documents; and have begun running

_____

[2] The "Asserted Patents" are U.S. Patent Nos. 10,330,582 ("'582 Patent"), 11,703,443 ("'443 Patent"), 12,174,106 ("'106 Patent"), and 12,174,107 ("'107 Patent").

5

and reviewing hits on ESI search terms; (2) the magistrate judge has heard and resolved multiple discovery disputes; (3) *Markman* briefing will be completed today, and the hearing is scheduled for August 21; (4) substantial completion of document production is less than one month away, the close of fact discovery is less than two-and-a-half months away, and trial is scheduled to begin in just over one year—on August 17, 2026.  Ex. B ¶¶5-13.

## III.    STATEMENT OF FACTS

### A.    Defendant's Sole IPR Retreads Art Rejected During Prosecution, and Its Other Post-Grant "Challenges" Are Purely Hypothetical

On July 17, 2025, Defendant filed a single IPR petition challenging certain claims of the '443 Patent.  D.I. 109-1 at 1.  The petition asserts one ground: obviousness under 35 U.S.C. § 103 in view of two prior art references, Goodman (U.S. Patent No. 6,542,306) and Oostman (U.S. Patent No. 6,683,314).  *Id.* at 4. Each reference was considered by the examiner during prosecution and is cited on the face of the '443 Patent, *see* Compl., Ex. 2 (D.I. 1-1) at 2, which weighs against institution.  *See* 35 U.S.C. § 325(d) ("Director may … reject the petition … because … the same prior art or arguments were previously presented to the Office.").

While these references were considered during prosecution of a European application, that application recited different limitations—notably, it was not limited to WDMs for flow cytometers, which is among the key limitations of the claims here, D.I. 89-1 at 1.  Importantly, the European Patent Office (EPO) also relies on a

6

different standard and process to evaluate patent applications.  D.I. 109-7 at 77; *AIA Eng'g v. Magotteaux Int'l*, 657 F.3d 1264, 1279 (Fed. Cir. 2011) (declining to consider foreign applications because "theories and laws of patentability vary from country to country, as do examination practices").  In any case, the limitation that was added to overcome Goodman and Oostman in the EPO is the ***exact limitation*** recited in the '443 claims:  the WDM is "for a flow cytometer."[3]  Ex. C, 19-30.

The IPR petition has not yet been afforded a filing date and, under the fastest possible schedule, an institution decision will issue in early 2026 (well after expert reports have been exchanged here). 35 U.S.C. § 314; D.I. 55.  In the unlikely event institution is granted (*see infra* Section IV.C.1), a final written decision will not issue until early 2027—at least five months after trial in this case.  35 U.S.C. § 316(a)(11); D.I. 55.

Defendant mischaracterizes its other post-grant challenges as "pending."  D.I. 108 at 8.  They are not.  Rather, Defendant merely "intends" to file additional post-grant petitions.  *Id.* at 1.  It is impossible to know the purported grounds Defendant may assert in its hypothetical petitions; Defendant itself does not appear to know the bases for its hypothetical challenges.  *Id.* at 15 (indicating petitions "will challenge these patents based on 35 U.S.C. §§ 103 ***and/or*** 112").

---

[3] Other limitations were also added, but those were primarily technical limitations added for reasons other than prior art.  Ex. C, 19-30.

**B. PTAB's Discretionary Denial Procedure Renders Institution Unlikely**

Defendant asks the Court to break from its typical procedure and grant a stay prior to institution (and before it files most of its post-grant challenges) due to recent discretionary denial guidance from the Director of the PTO.  D.I. 108 at 6-8.  That guidance issued in March 2025—seven months into the litigation and nine months after Defendant was put on notice of its infringement—and reiterated the time-to-trial denials that had been ongoing at the PTAB for years.  *Id.*  Specifically, discretionary denial based on time-to-trial has been in use since the PTAB issued its decision in *Apple v. Fintiv* in 2020.  IPR2020-00019, 2020 WL 2126495, at *2-3 (P.T.A.B. Mar. 20, 2020) (requiring consideration of "proximity of the court's trial date" to the final written decision).  Indeed, the Director's guidance cites *Fintiv* (and other cases) as enumerating the "discretionary considerations."  D.I. 108-1 at 2.  The Director's guidance reiterated the importance of the time-to-trial in the litigation, which was already a significant factor in denying institution.  *Id.*

## IV. ARGUMENT

**A. The Court Should Deny The Motion As Premature**

Defendant's motion is not ripe because several post-grant petitions that serve as the basis for its motion have not yet been filed, rendering it impossible for BEC or the Court to conduct the necessary inquiry into the stay factors.  As Defendant concedes, three of the four Asserted Patents are not presently subject to any post-

8

grant challenges. While Defendant suggests that it will file petitions at some point, it did not provide even basic information about its supposed petitions, including when they will be filed, what claims they will challenge, what statutory challenges they will raise, and what specific invalidity grounds and art (if any) they will assert. Thus, it is impossible to assess the merits of Defendant's hypothetical challenges.[4]

BEC is not aware of *any* instance in which this Court granted a stay based on hypothetical post-grant petitions, and Defendant cites none. Defendant invites the Court to walk a slippery slope: if it were proper to enter a stay based on unfiled petitions mere weeks before the close of fact discovery, then it would just as proper to automatically grant a stay at the outset of every patent litigation in which the accused infringer indicates an intent to later file IPRs. That is the clear implication of the Defendant's position.

Recognizing these facts, Defendant attempts to portray its premature request as necessary to address the recent PTO guidance on discretionary denials. D.I. 108 at 6-8. But Defendant omits that proximity between trial and the final written decision has been a key factor in the institution decision *since at least 2020*. *See* *supra* Section III.B. Defendant's IPR would have been subject to discretionary

---

[4] Defendant also failed to satisfy Local Rule 7.1.1. BEC requested information regarding the details of Defendant's hypothetical petitions and noted that BEC could not reasonably engage in a meet-and-confer without such understandings. Defendant provided no further information about its petitions and, undeterred, filed its motion. Ex. B ¶¶14-17.

denial on that basis even absent the Director's recent guidance.[5]  Further, even though the PTAB has long placed substantial weight on the district court's trial date and discretionarily denied institution where trial will predate a final written decision, this Court's practice has remained that "'stays are not ordinarily granted before the PTAB has instituted proceedings ...." *TwinStrand Biosciences v. Guardant Health*, 2023 WL 2563179, at *3 (D. Del. Mar. 17, 2023); *Exact Sciences v. Geneoscopy*, C.A. No. 23-cv-01319 (D. Del. Nov. 1, 2024) (minute entry); *Robocast v. Netflix*, C.A. No, 22-cv-00305, D.I. 38 (D. Del. Jan. 26, 2023)  Thus, the recent guidance is irrelevant to Defendant's request for a stay.  But even if it were true that the Director's guidance makes institution less likely under the circumstances, that is a reason to **deny** the stay, not grant it.

Despite knowing all along that the proximity between the trial date and final written decision is an important factor, Defendant waited until virtually the last possible moment to file its IPR.  The IPR bar date for the '443 Patent is August 14, 2025.  35 U.S.C. § 315(b); D.I. 1.  Defendant has known since November 2024, and reaffirmed and agreed as recently February 2025, that trial should be scheduled for

---

[5] *Sandpiper* is inapposite.  *See* D.I. 108 at 8.  In that out of district case, the parties "agree[d] ... th[e] case remains in the relatively early stages" and "no undue prejudice would arise from a post-institution stay"; all IPRs had been filed with institution decisions as soon as 4.5 months away; and final written decisions would issue "before any trial commences."  *Id.* at *2-3.  None of those factors is present here.

August 2026.  D.I. 25 at 26.  It could have easily avoided the timing concerns it raises now, particularly true given that the IPR art was available on the face of the '443 Patent.  Defendant nonetheless waited until discretionary denial was likely, and it asks the Court to save it from that strategic choice.  In so doing, Defendant seeks an end-run around the discretionary denial factors based solely on the fact that it "intends" to challenge the Asserted Patents, and thereby seeks to deprive BEC and the Court of any meaningful opportunity to understand how its hypothetical petitions might relate to the stay factors.  The problem is one of Defendant's own making, and the Court should deny the motion.

In the alternative, Defendant makes the incredible request that the Court issue an advisory opinion and prejudge a motion to stay based on hypothetical institution of its hypothetical post-grant challenges.  D.I. 108-1 at 8 (requesting the Court state it "is likely to stay [the] proceeding").  BEC cannot possibly brief the merits of such a request six months before any institution, not least of all because it has not seen the hypothetical challenges to three of the four Asserted Patents.  The Court should reject Defendant's alternative request.

## B.    The Court Should Deny The Motion At Least Until After Institution

Consistent with the Court's practice, Defendant's motion should be denied at least until after institution of any post-grant challenges.  That is the orderly and typical process, because institution provides substantial clarity on the scope of the

11

post-grant proceedings.  *See TwinStrand*, 2023 WL 2563179, at *3 ("[S]tays are not ordinarily granted before the PTAB has instituted proceedings ...."); *Brit. Telecom. v. IAC/InterActiveCorp*, 2019 WL 4740156, at *5 (D. Del. Sept. 27, 2019) ("[C]ourts almost invariably deny requests for stays pending IPR proceedings when the stay requests are filed before the IPR is instituted.").[6]

### C.    The Stay Factors Favor Denying Defendant's Motion

#### 1.    Because No Post-Grant Proceedings Have Been Instituted, Any "Simplification" Is Purely Speculative

"Generally, the 'simplification' issue does not cut in favor of granting a stay prior to the time the PTAB decides whether to grant the petition ...."  *HIP v. Hormel Foods*, 2019 WL 7667104, at *1 (D. Del. May 16, 2019) (quoting *Copy Protection v. Netflix*, 2015 WL 3799363, at *1 (D. Del. June 17, 2015)); *see also Twinstrand Biosciences v. Guardant Health*, 2022 WL 18936070, at *11 (D. Del. Oct. 28, 2022) ("simplification does not weigh in favor of a stay ... because the PTAB has not yet decided whether to institute IPR proceedings").  Here, most of the alleged post-grant

---

[6] In many districts, denying motions to stay proceedings before institution is a "universal practice." *Trover v. Dedicated Micros*, 2015 WL 1069179, at *6 (E.D. Tex. Mar. 11, 2015); *Entropic v. DirecTV*, 2023 WL 3407132, at *2 (C.D. Cal. Apr. 17, 2023); *Datanet v. Dropbox*, 2023 WL 9005604, at *4 (W.D. Tex. Dec. 28, 2023); *Entangled Media v. Dropbox*, 732 F. Supp. 3d 1120, 1124 (N.D. Cal. 2024) ("Courts frequently find that 'any simplification of the issues is speculative because the PTAB has not yet instituted review'").

petitions have not yet been filed, much less instituted.[7]  At best, institution is six months away.  Thus, this factor weighs against a stay.

Defendant's arguments are meritless.  ***First***, Defendant's claims of theoretical simplification should be rejected because institution is extremely unlikely.[8]  As explained above, the timing of the final written decision as compared to that of the jury trial in this case is a strong factor in favor of non-institution.  But even if the Court were to grant a stay and defer the trial, institution ***would still be unlikely***.  Both prior art references in Defendant's only filed IPR petition were considered during prosecution.  Ex. D, 151; Ex. E, 208; Ex. F, 6; Ex. G, 6.  That fact alone weighs heavily against institution.  35 U.S.C. § 325(d); *ADT v. Vivint*, IPR2022-00612, Paper 8 at 21-23 (P.T.A.B. Aug. 22, 2022) (denying institution because "Petition presents substantially the same prior art that was already considered by the examiner during prosecution," including art that was merely "made of record" but not "considered").

---

[7]  *TC Tech.*, *NEC*, and *SITO* dealt with post-institution stays and are of little probative value.  *See* D.I. 108 at 12-16 (citing 2021 WL 4521045, at *4 (D. Del. Oct. 4, 2021); 2024 WL 1533952, at *2 (D. Del. Apr. 9, 2024); 2021 WL 7628181, at *1 (D. Del. Dec. 20, 2021)).

[8] Defendant's reliance on *Princeton Digital* ignores that case was decided in the early days of IPR proceedings, when the impact of those proceedings on litigation was unknown.  D.I. 108 at 13 (citing 2014 WL 3819458 (D. Del. Jan. 15, 2014)).  Since then, courts have recognized any purported efficiencies are not as great as initially believed and that simplification "disfavors a stay" before institution.  *HIP*, 2019 WL 7667104, at *1.

Defendant's contention that the art at issue in its petition was never "pointed out" to the examiner, D.I. 108 at 14, ignores that (1) Oostman was the greatest focus of examination across the patent family and considered over many years by multiple examiners, Ex. H, 2-11; Ex. E, 572-577; (2) Goodman was one of many references considered by the examiners that discloses WDMs in telecommunications systems— not flow cytometry—and was thus cumulative of numerous references they analyzed in detail, *e.g.*, US2004/0165828 (Capewell); and (3) the examiners issued the Asserted Patents over multiple obviousness combinations that included Oostman in view of telecom WDM references like Goodman.[9]  Ex. H, 2-11.

Defendant's reliance on the European proceedings is entirely misplaced—the key limitation that was added to overcome Goodman and Oostman in the EPO is the **exact limitation** recited in the '443 claims:  the WDM is "for a flow cytometer."[10] Ex. C, 19-30.  More generally, Defendant's contentions about the supposed strength of its prior art raises the question of why Goodman was not cited by Defendant in its invalidity contentions.  Ex. I.  That is, if that prior art is so strong, why did Defendant

---

[9] *Ecto World* is distinguishable.  D.I. 108 at 14.  There, the applicant cited over 1,000 references, and there was no suggestion the IPR art was cumulative.  IPR2024-01280, Paper 13 at 6-7 (P.T.A.B. May 19, 2025).  Here, less than a quarter of the number of references in *Ecto World* are cited on the face of the patent, and Goodman is cumulative of the art that was considered.  And in *Hum Indust. Tech.*, unlike here, none of the art at issue "was used in a rejection" during prosecution.  D.I. 108 at 14 (citing IPR2023-00539, Paper 10 at 51 (P.T.A.B. July 26, 2023)).

[10] As noted above, while other limitations were also added, those were primarily technical limitations added for reasons other than the prior art.  Ex. C, 19-30.

14

forego its use in this litigation?  The reason is that the prior art arguments are weak, and Defendant knows as much, given that those arguments did not succeed in the European proceedings.

***Second***, Defendant's other claims of simplification are purely speculative. D.I. 108 at 13-16.  The Court should not find the issues will be simplified merely because Defendant's petition challenges the asserted claims of one patent or because the issues may overlap—that is true of every IPR petition.  *See Toshiba Samsung Storage Tech. Korea v. LG Elecs.*, 193 F. Supp. 3d 345, 348-49 (D. Del. 2016) (simplification factor weighed against stay even where there was overlap between the issues).  Defendant's claims of simplification for its hypothetical post-grant challenges, D.I. 108 at 15-16, are even more attenuated and tenuous given there is no way to assess what will be at issue in those proceedings.  Thus, this factor weighs against granting a stay.

***Finally***, even if Defendant's pending IPR and other hypothetical challenges are instituted, there will remain numerous issues in this proceeding that will not be decided in the post-grant proceedings.  For example, Defendant's invalidity contentions preserve more than 500 invalidity grounds that include product prior art that will not be resolved by its challenges.  Ex. I, 55-81; *see also Toshiba*, 193 F. Supp. 3d at 349 (simplification disfavored stay because "PTAB will not take up any arguments relating to infringement, damages or other issues," "nor will it be opining

15

on … a large number of asserted prior art combinations"). Because IPR petitions can only challenges claims on §§ 102 and 103 grounds, and because it is not clear PGR is available for the '106 and '107 Patents, *see* Ex. B ¶19, Defendant's other validity challenges will remain. Ex. I, 81-105. And even if Defendant achieves institution and succeeds on its validity challenges across the board (it will not), its false marking counterclaim will remain in dispute.

### 2.    The Case Is At An Advanced Stage

Contrary to Defendant's claims, D.I. 108 at 17-18, the case is at an advanced stage. Substantial discovery has occurred, including production of nearly 90,000 pages, exchange of multiple sets of interrogatory responses and supplements, and initiation of search term ESI collection. *Supra* Section II. The *Markman* hearing will occur in three weeks, and fact discovery closes in just over two months. *Id.* By the time institution decisions issue in early 2026, fact discovery will be closed, expert discovery likely will be closed, and trial will be mere months away. *Id.* The advanced stage of the proceeding thus heavily disfavors a stay. *Pragmatus v. Amazon.com*, 2015 WL 3799433, at *1 (D. Del. June 17, 2015) (denying stay where parties "substantially completed document production, exchanged invalidity and infringement contentions, and commenced claim construction briefing in preparation for a *Markman* hearing"); *Copy Protection*, 2015 WL 3799363, at *1

16

(denying stay where parties "engaged in a substantial amount of discovery and are set to complete claim construction briefing shortly").

Defendant cites *TTI Consumer*, but omits that, unlike here, (1) the reexamination proceeding was instituted before the litigation, (2) the examiner "already issued a non-final office action rejecting all 13 claims," and (3) at the time of briefing, "discovery had not started, and a trial date was not set." 2022 WL 16739812, at *1-2 (D. Del. Nov. 7, 2022).

### 3.    BEC Will Suffer Undue Prejudice If A Stay Is Granted

Finally, BEC will suffer undue prejudice if the case is stayed. The Parties and Court have expended substantial resources on litigation, and the close of fact and expert discovery are rapidly approaching. By contrast, the IPR is in its infancy, and a stay thus "risks unnecessarily impairing [BEC's] rights." *Davol v. Atrium*, 2013 WL 3013343, at *2 (D. Del. June 17, 2013). Any stay (including a six-month stay until institution decisions issue) will necessarily require moving the trial date. D.I. 55. But Defendant has been on notice of its infringement for more than a year, and BEC should not face additional delays in adjudicating Defendant's infringement. Not least of all, BEC's recovery should not be delayed by unfiled petitions.

Notably, "[c]ourts are reluctant to stay proceedings where the parties are direct competitors," as Defendant admits is true here. *Cooper v. Twitter*, 2010 WL 5149351, at *5 (D. Del. Dec. 13, 2010). While Defendant contends that the flow

cytometry market is crowded, it ignores that BEC and Defendant are among the few entities that offer flow cytometers based on WDM technology. Defendant cites *Neste Oil v. Dynamic Fuels*, D.I. 108 at 19, but that case involved "indirect competitors in the large, subsidy-driven market." 2013 WL 3353984, at *3 (D. Del. July 2, 2013).[11] Here, "the very early stage of the [IPR] proceedings and the parties' status as hard-fought competitors ***clearly weigh against a stay***." *SenoRx v. Hologic*, 2013 WL 144255, at *9 (D. Del. Jan. 11, 2013); *ImageVision.Net v. Internet Payment*, 2012 WL 5599338, at *5 (D. Del. Nov. 15, 2012) (direct competition indicated stay would be "highly prejudic[ial]").

Defendant's arguments to the contrary fail. ***First***, Defendant's claim that it filings came "early enough in the case to suggest that it is not seeking an inappropriate tactical advantage," D.I. 108 at 18, is contrary to fact. Defendant's sole IPR was filed five months after the parties exchanged infringement contentions, after BEC had served its *Markman* reply brief, and less than four weeks before the IPR bar date. And Defendant has yet to challenge three Asserted Patents. It is ***nearly***

---

[11] While Defendant argues that the lack of preliminary injunction favors a stay, its own cases confirm that factor is relevant only "[w]here the question of 'direct competition' remains unanswered." *Nestle Oil*, 2013 WL 3353984, at *4; *see also SenoRx*, 2013 WL 144255, at *8 (lack of preliminary injunction "might not shed much light on the amount of prejudice," including where parties are competitors). Further, because "[a] preliminary injunction is 'a drastic and extraordinary remedy that is not to be routinely granted,'" BEC's decision not to pursue an injunction was based on factors unrelated to the parties' status as competitors. *Genentech v. Amgen*, 2019 WL 3290167, at *2 (D. Del. July 18, 2019).

***impossible to file IPR petitions any later*** in the proceeding.  Defendant's timing was unquestionably designed to gain a tactical advantage, not only because it requested a stay prior to filing most of its petitions, but also because it "waited until the end of the statutory deadline to file its IPR, close to the eve of claim construction briefing, and after substantial document discovery was conducted," which evidences "an unfair tactical advantage or dilatory motive."[12] *TruePosition v. Polaris*, 2013 WL 5701529, at *6 (D. Del. Oct. 21, 2013).

***Second***, Defendant's claim that BEC delayed filing suit is not only wrong but also irrelevant to this factor, which addresses potential prejudice ***to that patentee*** from a stay.  In any case, the '443 Patent issued just one year before this suit was filed, and the '106 and '107 Patents were added to the case within weeks of issuance. D.I. 42, ¶¶10-12.  As courts have recognized for under-the-hood features, it can take time to assess infringement, particularly for patents involving complex and expensive technologies like those here.  *See Bonutti v. Lantz*, 2015 WL 3386601, at *3 (S.D. Ind. May 26, 2015) ("[t]he Court can hardly fault Plaintiffs" for "'spen[ding] considerable time conducting pre-suit investigations into [defendant's]

---

[12] *WSOU*, *see* D.I. 108 at 18, found no tactical advantage because the parties were "not direct competitors" and it was "not as if Defendant filed its petitions many months after having seen Plaintiff's initial claim charts and after having filed its own initial invalidity contentions."  2022 WL 17337924, at *1-*2 (D. Del. Nov. 30, 2022).  Those facts are diametrically opposed to those here.

19

products'"). Moreover, there is no evidence to suggest the timing of the Complaint had any impact on Defendant's delay in filing post-grant petitions.

**Finally**, Defendant identifies only two older cases (only one in Delaware) in which stay was granted pre-institution. D.I. 108 at 20. As noted above, over the last decade, the cases almost invariably go the other way. Moreover, in *Princeton Digital*, the case was "in its nascent stages," with "no party-initiated discovery," and "discovery related deadlines [were already] stayed." 2014 WL 3819458, at *5. Similarly, in *Mullen*, "no *Markman* hearing or trial [was] set," and the parties were not direct competitors. D.I. 109-8 at 1-4.

## V.    CONCLUSION

Defendant's motion should be denied.

|  | /s/ Frederick L. Cottrell, III |
|---|---|
| OF COUNSEL: | Frederick L. Cottrell III (#2555) |
|  | Kelly E. Farnan (#4395) |
| Omar A. Khan | Christine D. Haynes (#4697) |
| Jeffrey A. Dennhardt | RICHARDS, LAYTON & FINGER P.A. |
| Lauren E. Matlock-Colangelo | One Rodney Square |
| WILMER CUTLER PICKERING HALE AND | 920 North King Street |
| DORR LLP | Wilmington, Delaware 19801 |
| 7 World Trade Center | (302) 651-7700 |
| 250 Greenwich Street | cottrell@rlf.com |
| New York, NY 10007 | farnan@rlf.com |
| (212) 230-8800 | haynes@rlf.com |
|  |  |
| Asher S. McGuffin | *Attorneys for Plaintiff* |
| WILMER CUTLER PICKERING HALE AND |  |
| DORR LLP |  |
| 60 State Street |  |
| Boston, MA 02109 |  |
| (617) 526-6000 |  |

Dated:  July 25, 2025

21