# EXHIBIT 1

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | |
|---|---|
| Beckman Coulter, Inc. | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   1:24-cv-00945-CFC |
| | ) |
| Cytek Biosciences, Inc. | ) |
| _____ | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:        Lisa Nichols, 12450 Lorenzo Avenue, Boulder Creek CA 95006-9436
_____
*(Name of person to whom this subpoena is directed)*

☛ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place:  Cooley LLP<br>3175 Hanover Street<br>Palo Alto, CA 94304 | Date and Time:<br>10/22/2025 9:00 am |
|---|---|

The deposition will be recorded by this method:     Stenographically and by video
_____

❑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     09/29/2025
          _____

                    *CLERK OF COURT*

                                              OR

                                                    /s/ Elizabeth M . Flanagan
_____          _____
    *Signature of Clerk or Deputy Clerk*                      *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*     Cytek Biosciences,
Inc.                                , who issues or requests this subpoena, are:

Elizabeth M. Flanagan (#5891), Cooley LLP, 30 S. 9th St, 7th Floor, Minneapolis, MN 55402, bflanagan@cooley.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 1:24-cv-00945-CFC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# EXHIBIT 2

AO 88A  (Rev. 12/13) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Delaware ▾

| | |
|---|---|
| Beckman Coulter, Inc. | ) |
| _Plaintiff_ | ) |
| v. | )   Civil Action No.   1:24-cv-00945-CFC |
| Cytek Biosciences, Inc. | ) |
| _Defendant_ | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:      Danaher Corporation, c/o United Agent Group Inc., 1629 K St. NW, Ste. 300, Washington, DC 20006

_(Name of person to whom this subpoena is directed)_

☛ _Testimony:_ **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

See Schedule A

| Place: Cooley LLP<br>1299 Pennsylvania Ave NW STE 700,<br>Washington, DC 20221 | Date and Time:<br>10/22/2025 9:00 am |
|---|---|

The deposition will be recorded by this method:   Stenographically and by video

❑ _Production:_ You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      09/30/2025

| _CLERK OF COURT_ | | |
|---|---|---|
| | OR | |
| | | /s/ Elizabeth M . Flanagan |
| _Signature of Clerk or Deputy Clerk_ | | _Attorney's signature_ |

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_   Cytek Biosciences, Inc. , who issues or requests this subpoena, are:

Elizabeth M. Flanagan (#5891), Cooley LLP, 30 S. 9th St, 7th Floor, Minneapolis, MN 55402, bflanagan@cooley.com

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 1:24-cv-00945-CFC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/13) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

# Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
    **(A) *Appearance Not Required.*** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### *Definitions*

As used herein, the following terms shall have the following meanings:

1.      "Beckman Coulter" or "Plaintiff" shall, unless otherwise noted, refer to Plaintiff Beckman Coulter Inc. and any other persons/agent acting or purporting to act on their behalf as well as any of their present and past officers, directors, agents, employees, consultants, attorneys, and others acting or purporting to act on behalf of Plaintiff, including all affiliates, parents (including Danaher Corporation), divisions, joint ventures, licensees, franchisees, assigns, predecessors, successors in interest, and other legal entities, whether foreign or domestic, that are owned or controlled by Plaintiff and all predecessors (including Iris International, Inc., Cytojene Corp., and Xitogen Technologies, Inc.) and successors in interest to such entities.

2.      "Cytek" or "Defendant" shall mean Cytek Biosciences, Inc.

3.      "Danaher," "You," "Your," or "Yours" shall mean Danaher Corporation, including any divisions, subsidiaries, affiliates, parent companies, and any joint venture to which You may be a party.

4.      "Asserted Patent(s)" shall mean United States Patent Nos. 10,330,582 ("the '582 Patent); 11,703,443 ("the '443 Patent"); 12,174,106 ("the '106 Patent"); and 12,174,107 ("the '107 Patent"), as well as any additional patents Beckman Coulter asserts in This Litigation (*Beckman Coulter, Inc. v. Cytek Biosciences, Inc.*, C.A. No. 1:24-00945-CFC (D. Del.), (see Attachment 1, First Amended Complaint)) and their respective patent applications.

5.      "Related Patents and/or Applications" means any patents and patent applications, anywhere in the world, that claim priority, directly or indirectly, to or from the Asserted Patents and any patents and patent applications (provisional or non-provisional), anywhere in the world,

to which the Asserted Patents claim priority, directly or indirectly.

6.      "Accused Product(s)" refers to Cytek Aurora flow cytometers, Cytek Aurora CS cell sorters, Cytek Northern Lights, Cytek Northern Lights-CLC, and Cytek Aurora EVO.

7.      "CytoFLEX® Products" means the family of flow cytometers (CytoFLEX®, CytoFLEX® S, CytoFLEX® LX, CytoFLEX® nano, DxFLEXTM), and a cell sorter (CytoFLEX® SRT) sold by Beckman Coulter with the brand names CytoFLEX® and DxFLEXTM.

8.      "Mosaic" means the CytoFLEX mosaic Spectral Detection Module.

9.      "Document(s)" shall be defined as in Federal Rule of Civil Procedure 34(a), according to its broadest meaning, and shall encompass all media from which information can be obtained, including, but not limited to, electronically stored information.

10.      "Communication(s)" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) by oral, written, telephonic, electronic, or any other means.

11.      "Person" shall mean any natural person or legal entity, including any corporation, partnership, sole proprietorship, agency, or business association of any type or character.

12.      "Third Party" means any Person other than You, Plaintiff, or Defendant.

13.      "Prior Art" means the subject described in 35 U.S.C. § 102 and § 103, including but not limited to publications, patents, physical devices, prototypes, uses, sales, and offers for sale, and any Documents or other items evidencing any of the foregoing.

14.      "Infringe" or any variant thereof refers to any infringement whether direct, contributory, or by inducement.

15.      The term "including" or "includes" shall mean including without limitation.

16.      The terms "concerning" and "relating to" shall mean, in whole or in part, referring to, describing, evidencing, constituting, containing, comprising, referring to, embodying,

connected to, reflecting, analyzing, showing, discussing, identifying, illustrating, stating, regarding, supporting, refuting, rebutting, responding to, commenting on, evaluating, about, in respect of, mentioning, dealing with, or in any way pertaining to, either explicitly or implicitly.

17.    The singular form of each word shall be interpreted in the plural, and vice versa, so as to give each request the broadest possible scope.

18.    Regardless of the tense employed, all verbs shall be read as applying to past, present, and future as necessary to make any phrase more, rather than less, inclusive.

19.    The conjunctives "and" and "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

20.    The terms "all," "each," and "any" shall be construed as all and any.

21.    "State," "describe," and "describe in detail" mean to state and describe, with specificity, each and every fact, ultimate fact, circumstance, incident, act, omission, event, Date, and/or legal contention pertaining to the matter(s) inquired into in the request.

*Topics*

**TOPIC NO. 1:**

Any Communications between You and any Third Party relating to the alleged infringement of the Asserted Patents by Cytek, and/or This Litigation, including any Communications to Cytek's potential customers.

**TOPIC NO. 2:**

Your knowledge of Cytek and/or any of Cytek's products, including but not limited to the Accused Products.

**TOPIC NO. 3:**

Any Communications relating to and/or referencing Cytek and/or any of Cytek's products, including but not limited to the Accused Products.

**TOPIC NO. 4:**

Your knowledge of the differences and/or similarities between the Accused Products and the CytoFLEX® Products and/or Mosaic.

**TOPIC NO. 5:**

Your knowledge of the design, operation, and features of commercially available spectral flow cytometers from 2014 to present, including each of the Accused Products.

**TOPIC NO. 6:**

Your knowledge of the development and launch of each of the Accused Products, including your first awareness of each of the Accused Products.

███████████

███████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████



**TOPIC NO. 11:**

Your reasons for acquiring Beckman Coulter, Inc., Xitogen Technologies, and/or Cytojene Corporation, and all intellectual property (including the Asserted Patents and Related Patents and/or Applications) associated therewith, including the facts and circumstances of all diligence conducted in relation to such acquisitions.

**TOPIC NO. 12:**

The authenticity of any Documents and Communications produced by You to Cytek.

# EXHIBIT 3

AO 88B  (Rev. 12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Delaware ▼

| | |
|---|---|
| Beckman Coulter, Inc. | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.  1:24-cv-00945-CFC |
| Cytek Biosciences, Inc. | ) |
| *Defendant* | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:    Danaher Corporation, c/o United Agent Group Inc., 1629 K St. NW, Ste. 300, Washington, DC 20006

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A

| Place: Cooley LLP | Date and Time: |
|---|---|
| 1299 Pennsylvania Ave NW STE 700, Washington, DC 20221 | 10/15/2025 9:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    09/30/2025

| *CLERK OF COURT* | OR | |
|---|---|---|
| | | /s/ Elizabeth M . Flanagan |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Cytek Biosciences, Inc. , who issues or requests this subpoena, are:

Elizabeth M. Flanagan (#5891), Cooley LLP, 30 S. 9th St, 7th Floor, Minneapolis, MN 55402, bflanagan@cooley.com

## Notice to the person who issues or requests this subpoena
A notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:24-cv-00945-CFC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  12/13) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2) *Claiming Privilege or Protection.***
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

### *Definitions*

As used herein, the following terms shall have the following meanings:

1.      "Beckman Coulter" or "Plaintiff" shall, unless otherwise noted, refer to Plaintiff Beckman Coulter Inc. and any other persons/agent acting or purporting to act on their behalf as well as any of their present and past officers, directors, agents, employees, consultants, attorneys, and others acting or purporting to act on behalf of Plaintiff, including all affiliates, parents (including Danaher Corporation), divisions, joint ventures, licensees, franchisees, assigns, predecessors, successors in interest, and other legal entities, whether foreign or domestic, that are owned or controlled by Plaintiff and all predecessors (including Iris International, Inc., Cytojene Corp., and Xitogen Technologies, Inc.) and successors in interest to such entities.

2.      "Cytek" or "Defendant" shall mean Cytek Biosciences, Inc.

3.      "Danaher," "You," "Your," or "Yours" shall mean Danaher Corporation, including any divisions, subsidiaries, affiliates, parent companies, and any joint venture to which You may be a party.

4.      "Asserted Patent(s)" shall mean United States Patent Nos. 10,330,582 ("the '582 Patent); 11,703,443 ("the '443 Patent"); 12,174,106 ("the '106 Patent"); and 12,174,107 ("the '107 Patent"), as well as any additional patents Beckman Coulter asserts in This Litigation (*Beckman Coulter, Inc. v. Cytek Biosciences, Inc.*, C.A. No. 1:24-00945-CFC (D. Del.), (see Attachment 1, First Amended Complaint)) and their respective patent applications.

5.      "Related Patents and/or Applications" means any patents and patent applications, anywhere in the world, that claim priority, directly or indirectly, to or from the Asserted Patents and any patents and patent applications (provisional or non-provisional), anywhere in the world,

to which the Asserted Patents claim priority, directly or indirectly.

6.     "Accused Product(s)" refers to Cytek Aurora flow cytometers, Cytek Aurora CS cell sorters, Cytek Northern Lights, Cytek Northern Lights-CLC, and Cytek Aurora EVO.

7.     "CytoFLEX® Products" means the family of flow cytometers (CytoFLEX®, CytoFLEX® S, CytoFLEX® LX, CytoFLEX® nano, DxFLEXTM), and a cell sorter (CytoFLEX® SRT) sold by Beckman Coulter with the brand names CytoFLEX® and DxFLEXTM.

8.     "Mosaic" means the CytoFLEX mosaic Spectral Detector Module.

9.     "Document(s)" shall be defined as in Federal Rule of Civil Procedure 34(a), according to its broadest meaning, and shall encompass all media from which information can be obtained, including, but not limited to, electronically stored information.

10.     "Communication(s)" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) by oral, written, telephonic, electronic, or any other means.

11.     "Person" shall mean any natural person or legal entity, including any corporation, partnership, sole proprietorship, agency, or business association of any type or character.

12.     "Third Party" means any Person other than You, Plaintiff, or Defendant.

13.     The term "including" or "includes" shall mean including without limitation.

14.     The terms "concerning" and "relating to" shall mean, in whole or in part, referring to, describing, evidencing, constituting, containing, comprising, referring to, embodying, connected to, reflecting, analyzing, showing, discussing, identifying, illustrating, stating, regarding, supporting, refuting, rebutting, responding to, commenting on, evaluating, about, in respect of, mentioning, dealing with, or in any way pertaining to, either explicitly or implicitly.

15.     The singular form of each word shall be interpreted in the plural, and vice versa, so as to give each request the broadest possible scope.

16.	Regardless of the tense employed, all verbs shall be read as applying to past, present, and future as necessary to make any phrase more, rather than less, inclusive.

17.	The conjunctives "and" and "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

18.	The terms "all," "each," and "any" shall be construed as all and any.

*Instructions*

1.	Pursuant to Rule 45 of the Federal Rules of Civil Procedure, each document and thing produced in response to these requests is to be produced as it is kept in the usual course of business, including all file folders, binders, notebooks, and other devices by which such papers or things may be organized or separated.

2.	If you determine that any request calls for the production of documents protected by the attorney-client privilege, the work product doctrine, or some other applicable privilege, and you assert such privilege, you must identify in writing each document withheld and otherwise comply with the requirements of the Federal Rules of Civil Procedure.  If you only assert privilege over a portion of a document, then redact and identify the portion being withheld.

3.	These requests are continuous up to and following the trial of this proceeding such that any document or thing requested herein which is either discovered by you or comes within your possession, custody or control subsequent to your initial production, but before the final conclusion of this case, should be produced in a supplemental production immediately upon its discovery or receipt by you or your counsel.

4.	Attached as Attachment 2 to this subpoena is the Protective Order for this matter (Docket No. 40, December 23, 2024).  The Protective Order sets forth the requirements for the protection and handling of confidential information in This Litigation.  Please label or otherwise

designate any confidential information you produce in accordance with the Protective Order.

*Requests for Production*

**REQUEST NO. 1:**

All Documents and Communications between You and any Third Party relating to the alleged infringement of the Asserted Patents by Cytek, and/or This Litigation, including all non-duplicative Documents and Communications to Cytek's potential customers.

**REQUEST NO. 2:**

All Documents relating to the value and/or valuation of the Asserted Patents, whether for acquisition, assignment, transfer, or sale of any right, title, or interest, in whole or in part, of the Asserted Patents and Related Patents and/or Applications.

**REQUEST NO. 3:**

All Documents concerning or comprising agreements with any Persons having any financial interest in the Asserted Patents, and/or the outcome of This Litigation.

**REQUEST NO. 4:**

All Documents, including, but not limited to, bills of material, specifications, schematics, software and technical manuals, user guides, drawings and reference materials, describing the functionality, operation, parts/components, and use of the Mosaic (see https://www.beckman.com/flow-cytometry/research-flow-cytometers/cytoflexmosaic).

**REQUEST NO. 5:**

All Documents regarding the market or demand for Mosaic, including: (1) market studies, market surveys, competitive analyses, analyst reports, or any other Document prepared by Beckman Coulter or relating to market expectations and discussions or description of the competitive environment; (2) forecasts, sales/market projections, business plans, or other Documents reflecting Your expectations regarding the market potential for Mosaic.

**REQUEST NO. 6:**

All Documents related to the development costs associated with Mosaic.

**REQUEST NO. 7:**

All Documents and Communications related to the marketing and advertising strategy for Mosaic, including but not limited to any Documents and Communications comparing Mosaic with any of Cytek's products.

**REQUEST NO. 8:**

Documents sufficient to identify any and all divisions, companies, partnerships, corporations, or other business entities affiliated with You or owned by You in whole or in part or which own You in whole or in part, involved in the design, research and/or development of technology related to the Mosaic.

**REQUEST NO. 9:**

All Documents and things relating to plans, suggestions, or contemplated action regarding the bringing or institution of this lawsuit or any action against Cytek, including, without limitation, all corporate minutes and all other documents and things concerning meetings of the Board of Directors, Executive Committee or Committees, stockholders, or any other of Your corporate boards, committees, or sub-committees.

**REQUEST NO. 10:**

All Documents and Communications relating to Cytek and/or any of Cytek's products, including but not limited to the Accused Products.

**REQUEST NO. 11:**

All Documents concerning technical analyses or testing of the Accused Products.

**REQUEST NO. 12:**

All Documents and Communications related to spectral flow cytometers, including but not limited to the need to develop and/or have a spectral flow cytometer for Your and/or Beckman Coulter's product portfolio.

**REQUEST NO. 13:**

All Documents and Communications relating to any diligence performed by You or on behalf of You concerning Beckman Coulter's acquisition of Xitogen Technologies Inc. in April 2014, including (but not limited to) any analysis of the patent portfolio of the Asserted Patents and any analysis of the benefits and/or downside of the XTG-1600.







# Attachment 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BECKMAN COULTER, INC., | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 24-00945-CFC |
| | ) |
| CYTEK BIOSCIENCES, INC., | ) **DEMAND FOR JURY TRIAL** |
| | ) |
| | ) |
| Defendant. | |

## FIRST AMENDED COMPLAINT

Beckman Coulter, Inc. ("Beckman Coulter" or "Plaintiff"), by and through its attorneys, hereby alleges for its Complaint against Cytek Biosciences, Inc. ("Cytek") as follows:

## NATURE OF THE ACTION

1.  This is an action for patent infringement arising under 35 U.S.C. §§ 1 *et seq.*, including 35 U.S.C. § 271.

2.  Plaintiff brings this action to seek relief for Cytek's infringement of Beckman Coulter's rights arising under the patent laws of the United States, including 35 U.S.C. §§ 1, *et. seq.*, from U.S. Patent No. 10,330,582 (the "'582 Patent"), U.S. Patent No. 11,703,443 (the "'443 Patent"), U.S. Patent No. 12,174,106 (the "'106 Patent"), and 12,174,107 (the "'107 Patent") (collectively the "Asserted Patents").

1

## THE PARTIES

3.    Beckman Coulter, Inc., is a corporation organized and existing under the laws of Delaware, with a principal place of business at 250 South Kraemer Boulevard, Brea, California 92821.  Beckman Coulter, Inc. is the owner of all right, title, and interest in and to the Asserted Patents.

4.    Upon information and belief, Cytek is a corporation organized and existing under the laws of Delaware, with its principal place of business at 47215 Lakeview Boulevard, Fremont, California 94538-6407.

## JURISDICTION AND VENUE

5.    Beckman Coulter brings this action for patent infringement by Cytek arising under the patent laws of the United States, including Title 35 of the United States Code.   Accordingly, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.    This Court has personal jurisdiction over Cytek because, *inter alia*, Cytek is and was incorporated in Delaware, and committed, aided, abetted, induced, contributed to, and/or participated in the commission of tortious acts of patent infringement that led to foreseeable harm and injury to Plaintiff in Delaware.  Further, Cytek has and had substantial contacts with the forum as a consequence of its incorporation in Delaware and, upon information and belief, conducting business in Delaware.

2

7.     Venue is proper in this District under 28 U.S.C. § 1400(b) because Cytek is and was a Delaware corporation that, upon information and belief, conducts and did conduct business in Delaware.   Delaware is also the most convenient forum, and litigating this action in Delaware is in the interests of justice, under 28 U.S.C. § 1404(a).

## FACTUAL ALLEGATIONS

### The Asserted Patents

8.     Beckman Coulter has been a pioneer in flow cytometry and cell sorter technologies and services for more than 40 years.  Over the decades, Beckman Coulter has continued to innovate and develop flow cytometry and cell sorter technology.  Two of Beckman Coulter's key innovations in this regard are reflected in the Asserted Patents.

9.     The '582 Patent, entitled "Flow Cytometer," was duly and legally issued on June 25, 2019 to inventor Yong Qin Chen.  A true and correct copy of the '582 Patent is attached as **Exhibit 1**.

10.    The '443 Patent, entitled "Flow Cytometer," was duly and legally issued on July 18, 2023 to inventor Yong Qin Chen.  A true and correct copy of the '443 Patent is attached as **Exhibit 2**.

11.    The '106 Patent, entitled "Flow Cytometer," was duly and legally issued on December 24, 2024, to inventor Yong Qin Chen.  A true and correct copy of the

'106 Patent is attached as **Exhibit 22**.

12.     The '107 Patent, entitled "Flow Cytometer," was duly and legally issued on December 24, 2024, to inventor Yong Qin Chen.  A true and correct copy of the '107 Patent is attached as **Exhibit 23**.

13.     Beckman Coulter owns all rights, title, and interest in the Asserted Patents.

**Cytek's Infringing Products**

14.     Cytek makes, uses, sells, supplies, offers for sale, and/or imports Infringing Products, including at least Cytek Aurora flow cytometers & Cytek Aurora CS cell sorters.

15.     The Infringing Products further include any products, components, or convoyed or derivative products that were imported, made, used, sold, and/or offered for sale by or on behalf of Cytek in connection with and/or as part of Cytek Aurora flow cytometers or Cytek Aurora CS cell sorters and any other of Defendant's products that embody like functionality, including without limitation, Cytek Northern Lights and Cytek Northern Lights-CLC products.

16.     By selling, manufacturing, using, offering for sale in the United States and/or importing into the United States the Infringing Products, Cytek has infringed and continues to infringe the Asserted Patents and has benefited from doing so.

17.     An exemplary infringement chart, attached as **Exhibit 3,** details Cytek's

4

infringement of the '582 Patent. An exemplary infringement chart, attached as **Exhibit 4,** details Cytek's infringement of the '443 Patent. An exemplary infringement chart, attached as **Exhibit 24**, details Cytek's infringement of the '106 Patent. An exemplary infringement chart, attached as **Exhibit 25**, details Cytek's infringement of the '107 Patent. **Exhibits 5-15 and 17-21**, cited in the exemplary infringement charts, include exemplary evidence of Cytek's infringement of the Asserted Patents. These descriptions are not intended to limit Beckman Coulter's right to amend, supplement, or modify these descriptions or any other analysis, description, or claim chart or allege that other activities of Cytek infringed the identified claim or any other claims of this patent or other patents.

18.     On information and belief, Cytek knew of, should have known, and/or was willfully blind to the Asserted Patents, and Cytek's infringements of the Asserted Patents were knowing and willful or willfully blind.

19.     *First*, on information and belief, Cytek is a competitor with sophisticated processes that identified, monitored, investigated, and assessed Beckman Coulter's patent portfolio and Beckman Coulter's marked flow cytometer and cell sorter patents, and that portfolio includes the Asserted Patents. *See, e.g.*, U.S. Patent No. 10,739,245 (Cytek patent citing Beckman Coulter's U.S. Patent No. 7,440,101, entitled "System and method for multiple laser triggering."); U.S. Patent No. 8,660,332 (Cytek patent stating "Companies such as… Beckman Coulter Inc. (Fullerton, Calif.)…continue to

advance [flow cytometry] technologies." *Id*. at 2:7-10.).

20.     Cytek has been long aware of the patent family containing the Asserted Patents and therefore knew, or should have known, about the existence of the Asserted Patents themselves.  For example, Cytek has admitted that it became aware of both the '582 Patent and U.S. Patent No. 9,746,412 (the "'412 Patent") "on or around July 31, 2020" and reviewed both patents "in early August 2020."  The '412 Patent is in the same patent family as the Asserted Patents and is the parent of the '582 Patent. Further, Cytek's U.S. Patent No. 10,436,697 cites U.S. Publication No. 2015/0115174 (the "'174 Publication"), a publication of U.S. Application No. 14/555,102, which issued as U.S. Patent No. 9,746,412.  Cytek has known about the '174 Publication since at least May 7, 2019, when Cytek filed an Information Disclosure Statement with the U.S. Patent and Trademark Office identifying the '174 Publication.  Similarly, Cytek's U.S. Patent No. 11,333,597 cites the '412 Patent.  On June 17, 2021, Cytek filed an Information Disclosure Statement with the U.S. Patent and Trademark Office identifying the '412 Patent.  The '412 Patent and the Asserted Patents share the same inventor and specification.  Further, the '106 and '107 Patents are in the same family as the '412, '443, and '582 Patents and therefore, upon information and belief, Cytek has known, should have known, and/or was willfully blind about the '106 and '107 Patents since issuance.

21.     *Second,* on information and belief, Cytek and Beckman Coulter are and

were sophisticated parties and competitors in the flow cytometer and cell sorter markets.  On information and belief, it is common practice for companies in the flow cytometer and cell sorter markets—such as Cytek—to monitor, investigate, and assess competitor products and competitor patents for risk assessment purposes, including, on information and belief, patents marked on Beckman Coulter products such as Beckman Coulter's CytoFLEX products.  On information and belief, Cytek identified, monitored, investigated, and assessed its competitors' patents, including the Asserted Patents.  For example, Cytek publicly stated that it was aware of patents and applications owned by competitors that covered flow cytometers, cell sorters, and related devices, publicly acknowledged that third parties may have had patents on which Cytek's products infringed, and expected to be increasingly subject to third-party infringement claims.[1]  Similarly, Cytek's counterclaim alleges  that "Cytek … believe[d] that the CytoFLEX® products are covered by the ['582 and '443 Patents]" (D.I. 16, Counterclaim ¶ 34), further evidencing its awareness of the relevant patent family, including the Asserted Patents, and of their marking.[2]  Further, the Infringing Products function in the same or substantially the same manner as the claimed invention.  *Compare* '582 Patent at FIG. 25 (illustrating an optical subsystem) with

---

[1] *See* Cytek, Inc. Form S1 (2021) at 123-24, *available at* https://investors.cytekbio.com/node/6586/html.

[2] As explained in Beckman Coulter, Inc.'s Answer and/or Reply to Counterclaim, Beckman Coulter denies that it falsely marked the CytoFLEX Products with the '582 and '443 Patents.  (D.I. 19 ¶¶ 12-34).

Exhibit 8 (illustrating "Proprietary high sensitivity Coarse Wavelength Division Multiplexing (CWDM) semiconductor detector arrays,"), **Exhibit 14** at 2 ("Light emitted from the sample is collected and passes through the optical filter-based coarse wavelength division multiplexing (CWDM) demultiplexer arrays on the Cytek Aurora and Northern Lights cytometers."), and Cytek's U.S. Patent No. 11,169,076 at FIGS. 1, 7. For example, Cytek's product literature and webpage for the Infringing Products feature optical ray diagrams that are substantially similar to the figures in the Asserted Patents. *Compare* '582 Patent at FIG. 25 (illustrating an optical subsystem) with Exhibit 8 (illustrating "Proprietary high sensitivity Coarse Wavelength Division Multiplexing (CWDM) semiconductor detector arrays,") and **Exhibit 14** (similar).

22.     Prior to this complaint and during the damages period under 35 U.S.C. § 286, the Asserted Patents were listed on Beckman Coulter's public virtual marking page[3] in association with its CytoFLEX system, and Beckman Coulter properly fixed the words "patent" or "pat." next to the virtual marking web address on its CytoFLEX products in compliance with 35 U.S.C. § 287. Finally, the Asserted Patents are known in the industry and have been cited by at least 20 patents. Therefore, on information and belief, Cytek knew or should have known that at least its Cytek Aurora, Cytek Aurora CS, Cytek Northern Lights, and Cytek Northern Lights-CLC products were infringing. Nevertheless, Cytek continued its willful and deliberate infringement of

---

[3] *See* https://www.beckman.com/patents.

8

the Asserted Patents.

23.     Cytek's Aurora flow cytometers and Aurora CS cell sorters are in direct competition with Beckman Coulter's CytoFLEX flow cytometer and cell sorter products marked with the Asserted Patents and therefore, on information and belief, Cytek considered Beckman Coulter's CytoFLEX flow cytometer and cell sorter products to be in direct competition with at least its Cytek Aurora flow cytometers and Cytek Aurora CS cell sorters.[4]  Thus, on information and belief, Cytek monitored, investigated, and assessed at least the patents marked on Beckman Coulter's CytoFLEX flow cytometer and cell sorter products, and therefore knew or should have known that at least its Cytek Aurora flow cytometers and Cytek Aurora CS cell sorters were infringing at least the Asserted Patents, or else Cytek deliberately avoided evaluating its products and was willfully blind to its infringement of the Asserted Patents and acted despite an objectively high likelihood that its products infringed the Asserted Patents.  For example, Cytek's counterclaim alleges that it was "believe[d] that the CytoFLEX® products are covered by the ['582 and '443 Patents]" (D.I. 16,

---

[4] See Cytek, Inc. Form S1 (2021) at 122-23, available at https://investors.cytekbio.com/node/6586/html ("Our direct competitors include …Beckman Coulter (Danaher Corporation)…"); Defendant Cytek's Answer to Complaint and Counterclaim (D.I. 16 at Counterclaim ¶ 10) ("Beckman Coulter sells flow cytometers that compete with those sold by Cytek.  Specifically, Beckman Coulter sells a family of flow cytometers (CytoFLEX®, CytoFLEX® S, CytoFLEX® LX, CytoFLEX® nano), and a cell sorter (CytoFLEX® SRT) with the brand names CytoFLEX® (collectively referred to herein as 'the CytoFLEX® products'), each of which contains a WDM.").

Counterclaim ¶ 34), evidencing that Cytek monitored the relevant patent family, including the Asserted Patents, and also at least the patents marked on Beckman Coulter's CytoFLEX flow cytometer and cell sorter products.[5] Cytek further admits that Beckman Coulter "has marked the CytoFLEX® products with the '582 patent since at least October 17, 2021" and "started virtually marking the CytoFLEX® products with the '443 patent somewhere between February 19, 2024 and September 9, 2024." (D.I. 16, Counterclaim ¶ 29). Thus, on information and belief, Cytek knew or should have known that at least its Cytek Aurora flow cytometers and Cytek Aurora CS cell sorters were infringing the '582 Patent since at least October 17, 2021, the '443 Patent since at least February-September 2024, and the '106 and '107 Patents since issuance.

24. *Third*, on June 14, 2024, Beckman Coulter sent Cytek a letter identifying the '443 and '582 Patents in connection with "Cytek products, such as the Cytek Aurora products." The letter, attached as **Exhibit 16,** identified and attached a copy of the '443 and '582 Patents. The letter provided Cytek with actual notice of the '443 and '582 Patents and explained the how and why of Cytek's infringement by at least June 14, 2024. On information and belief, Cytek then analyzed the '443 and '582 Patents and their family members and came to the conclusion that it infringed the '443

---

[5] As explained in Beckman Coulter, Inc.'s Answer and/or Reply to Counterclaim, Beckman Coulter denies that it falsely marked the CytoFLEX Products with the '582 and '443 Patents. (D.I. 19 ¶¶ 12-34).

and '582 Patents, as set forth in paragraphs 28 to 43 below. Thus, on information and belief, at least as of June 14, 2024, Cytek had actual knowledge of the '443 and '582 Patents, and had actual knowledge of its infringement of those patents or was willfully blind to its infringement of those patents.

25. *Fourth*, on August 14, 2024, Beckman Coulter filed a Complaint against Cytek in the instant action (D.I. 1), which, together with the claim charts and exhibits attached to that Complaint (D.I. 1-1, 1-2, 1-3, 1-4), further explain how and why Cytek's Infringing Products infringe the '443 and '582 Patents. Cytek would have known that its products infringed the '443 and '582 Patents. On information and belief, the exhibits attached to the Complaint, including the '443 and '582 Patents (D.I. 1-1, 1-2, 1-3, and 1-4), evidenced to Cytek that the Infringing Products infringe the '443 and '582 Patents. Moreover, on information and belief, Cytek understood that the Complaint (D.I. 1) and the claim charts attached to the Complaint (D.I. 1-1) show where each limitation of at least claim 1 of the '443 and '582 Patents is found in the Infringing Products. On information and belief, Cytek understood Beckman Coulter's allegations that the Infringing Products infringe the '443 and '582 Patents. Thus, at least as of August 14, 2024, Cytek had actual knowledge of its infringement of the '443 and '582 Patents and had actual knowledge of its infringement of the '106 and '107 Patents since issuance.

26. Nevertheless, Cytek has not licensed the Asserted Patents and has

11

continued its willful and deliberate infringement of the Asserted Patents, including by continuing to make, use, import, promote, market, sell, and offer to sell the Infringing Products with knowledge of their infringement.

27.     As the direct and proximate result of Cytek's conduct, Beckman Coulter has suffered, and if Cytek's conduct is not enjoined, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial.  Because Beckman Coulter's remedy at law is inadequate, Beckman Coulter seeks, in addition to damages, injunctive relief.  Beckman Coulter's businesses operate in a competitive market and they will continue suffering irreparable harm absent injunctive relief.

## COUNT 1

### (INFRINGEMENT OF THE '582 PATENT)

28.     Plaintiff incorporates each of the above paragraphs as though fully set forth herein.

29.     On information and belief, Cytek directly or through the actions of its employees, agents, distributors, divisions, and/or subsidiaries, has infringed one or more of the claims of the '582 Patent, including at least claim 1 of the '582 Patent, directly, indirectly, literally and/or by equivalents under 35 U.S.C. §§ 1 *et seq.*, including, but not limited to § 271 by, among other things, making, using (including during research and development activities and product testing), selling, supplying,

12

offering for sale the Infringing Products in the United States and/or importing the

Infringing Products within the United States, and/or inducing or contributing to such

acts, without authority.  To the extent there are any differences between the

Infringing Products and the claims of the '582 Patent, such differences are

insubstantial.  For each claim limitation in at least claim 1 of the '582 Patent, one or

more elements of each of Cytek's Infringing Products matches the function, way,

and result of that claim limitation.

30.  For example, the Infringing Products meet each element of, and

infringe, claim 1, which states:

> **Claim 1.** An optical subsystem for a flow cytometer, the optical subsystem
> comprising:
> a collimating optical element arranged to receive light from a light source, the
> collimating optical element configured to project a collimated beam;
> an optical relay element arranged to receive at least a portion of the collimated
> beam from the collimating optical element, the optical relay element
> comprising a curved mirror configured to reflect the portion of the collimated
> beam received from the collimating optical element to produce a first image;
> a first focusing optical element arranged to receive at least a portion of the
> collimated beam reflected by the optical relay element; and
> a first semiconductor detector,
> wherein the first focusing optical element is configured to focus the portion of
> the collimated beam received from the optical relay element onto the first
> semiconductor detector.

31.  Cytek infringes each element of at least claim 1 of the '582 Patent.

Cytek's own documents show that the Infringing Products infringe the claims of the

Asserted Patents.  As an example, U.S. Patent No. 10,330,582 Infringement Chart,

detailing Cytek's infringement of that claim of the '582 Patent, is attached as **Exhibit 3**. This chart is not intended to limit Beckman Coulter's right to modify the chart or allege that other activities of Cytek infringe the identified claims or any other claims of the Asserted Patents. **Exhibit 3** is hereby incorporated by reference in its entirety. Each claim element in **Exhibit 3** that is mapped to the Infringing Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

32.     Cytek has also induced infringement of the '582 Patent under § 271(b) by providing customers with the Infringing Products, along with instructions for use, that, when followed in an intended manner and in a normal mode of operation, Cytek knew infringed the Asserted Patents. *See, e.g.*, **Exhibit 5**, Cytek Aurora User's Guide (providing instructions for using the Cytek Aurora flow cytometer); **Exhibit 6**, Cytek Aurora CS User's Guide (providing instructions for using the Cytek Aurora CS cell sorter). On information and belief, Cytek knew of the '582 Patent at least as of July 31, 2020. Further, the Infringing Products function in the same manner as the claimed invention. *Compare* '582 Patent at FIG. 25 (illustrating an optical subsystem) with **Exhibit 14** at 2 ("Light emitted from the sample is collected and passes through the optical filter-based coarse wavelength division multiplexing (CWDM) demultiplexer arrays on the Cytek Aurora and Northern Lights cytometers."). The instructions for use of the Infringing Products instructed and

14

encouraged Cytek's customers to use the Infringing Products in a way that infringed the '582 Patent. *See* **Exhibit 5**; **Exhibit 6.** Cytek provided its customers with the Infringing Products and instructions for use despite knowledge of or willful blindness to the '582 Patent and knowledge of or willful blindness to the fact that the induced acts infringed one or more claims of the '582 Patent. Therefore, Cytek specifically intended that its customers infringe the '582 Patent.

33.   Cytek has contributorily infringed the Asserted Patents under 35 U.S.C. § 271(c). Cytek designed the Infringing Products and/or its components specifically to be used in a manner as claimed in the '582 Patent. As such, the Infringing Products and/or its components are a material component of the patented combinations, specifically designed to be used according to the claims of the '582 Patent, and especially made and adapted for use in a manner that infringed the '582 Patent. The Infringing Products and/or its components are not staple articles of commerce and they do not have substantial uses that do not infringe the Asserted Patents. On information and belief, Cytek knew of, should have known of, and/or was willfully blind to the '582 Patent and that the Infringing Products are especially made to be used in a system that infringed the '582 Patent.

34.   Cytek's infringement has been willful and deliberate because, on information and belief, Cytek has known of, should have known of, and/or has been willfully blind to the '582 Patent since at least July 31, 2020, and knew of, should

15

have known of, and/or was willfully blind to its infringement but acted despite an objectively high likelihood that such acts would infringe the '582 Patent.

35.    As a direct and proximate result of Cytek's conduct, Plaintiff has suffered, and if Cytek's conduct is not enjoined, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial.  Because Plaintiff's remedy at law is inadequate, Plaintiff seeks, in addition to damages, injunctive relief.  Plaintiff's businesses operate in a competitive market and they will continue suffering irreparable harm absent injunctive relief.

## COUNT 2

### (INFRINGEMENT OF THE '443 PATENT)

36.    Plaintiff incorporates each of the above paragraphs as though fully set forth herein.

37.    On information and belief, Cytek directly or through the actions of its employees, agents, distributors, divisions, and/or subsidiaries, has infringed one or more of the claims of the '443 Patent, including at least claim 1 of the '443 Patent, directly, indirectly, literally and/or by equivalents under 35 U.S.C. §§ 1 *et seq.*, including, but not limited to § 271 by, among other things, making, using (including during research and development activities and product testing), selling, supplying, offering for sale the Infringing Products in the United States and/or importing the Infringing Products within the United States, and/or inducing or contributing to such

16

acts, without authority. To the extent there are any differences between the Infringing Products and the claims of the '443 Patent, such differences are insubstantial. For each claim limitation in at least claim 1 of the '443 Patent, one or more elements of each of Cytek's Infringing Products matches the function, way, and result of that claim limitation.

38. For example, the Infringing Products meet each element of, and infringe, claim 1, which states:

**Claim 1.** A wavelength division multiplexer (WDM) for a flow cytometer comprising:
a set of filters, each filter of the set of filters configured to pass a corresponding portion of multiple portions of light;
at least one mirror including at least one curved mirror, the at least one mirror configured to:
receive one or more portions of the light from the set of filters; and
reflect the one or more portions of the light to the set of filters; and
a set of detectors, each detector of the set of detectors corresponding to a filter of the set of filters and configured to receive a portion of the light at the detector that passed through the filter corresponding to the detector.

39. Cytek infringes each element of at least claim 1 of the '443 Patent. Cytek's own documents show that the Infringing Products infringe the claims of the Asserted Patents. As an example, U.S. Patent No. 11,703,443 Infringement Chart, detailing Cytek's infringement of that claim of the '443 Patent, is attached as **Exhibit 4**. This chart is not intended to limit Beckman Coulter's right to modify the chart or allege that other activities of Cytek infringe the identified claims or any other claims of the Asserted Patents. **Exhibit 4** is hereby incorporated by reference in its entirety.

17

Each claim element in **Exhibit 4** that is mapped to the Infringing Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

40.     Cytek has also induced infringement of the '443 Patent under § 271(b) by providing customers with the Infringing Products, along with instructions for use, that, when followed in an intended manner and in a normal mode of operation, Cytek knew infringed the Asserted Patents.  *See, e.g.*, **Exhibit 5**, Cytek Aurora User's Guide (providing instructions for using the Cytek Aurora flow cytometer); **Exhibit 6**, Cytek Aurora CS User's Guide (providing instructions for using the Cytek Aurora CS cell sorter).  On information and belief, Cytek knew of the '443 Patent at least as of June 14, 2024.  Further, the Infringing Products function in the same manner as the claimed invention.  *Compare* '443 Patent at FIG. 25 (illustrating an optical subsystem) with **Exhibit 14** at 2 ("Light emitted from the sample is collected and passes through the optical filter-based coarse wavelength division multiplexing (CWDM) demultiplexer arrays on the Cytek Aurora and Northern Lights cytometers.").  The instructions for use of the Infringing Products instructed and encouraged Cytek's customers to use the Infringing Products in a way that infringed the '443 Patent.  *See* **Exhibit 5; Exhibit 6.**  Cytek provided its customers with the Infringing Products and instructions for use despite knowledge of or willful blindness to the '443 Patent and knowledge or willful blindness to the fact that the

induced acts infringed one or more claims of the '443 Patent. Therefore, Cytek specifically intended that its customers infringe the '443 Patent.

41. Cytek has contributorily infringed the Asserted Patents under 35 U.S.C. § 271(c). Cytek designed the Infringing Products and/or its components specifically to be used in a manner as claimed in the '443 Patent. As such, the Infringing Products and/or its components are a material component of the patented combinations, specifically designed to be used according to the claims of the '443 Patent, and especially made and adapted for use in a manner that infringed the '443 Patent. The Infringing Products and/or its components are not staple articles of commerce and they do not have substantial uses that do not infringe the Asserted Patents. On information and belief, Cytek knew of, should have known of, and/or was willfully blind to the '443 Patent and that the Infringing Products are especially made to be used in a system that infringed the '443 Patent.

42. Cytek's infringement has been willful and deliberate because, on information and belief, Cytek has known, should have known, and/or has been willfully blind to the '443 Patent since at least June 14, 2024, and knew of, should have known of, and/or was willfully blind to its infringement but acted despite an objectively high likelihood that such acts would infringe the '443 Patent.

43. As a direct and proximate result of Cytek's conduct, Plaintiff has suffered, and if Cytek's conduct is not enjoined, will continue to suffer, severe

competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial.  Because Plaintiff's remedy at law is inadequate, Plaintiff seeks, in addition to damages, injunctive relief.  Plaintiff's businesses operate in a competitive market and they will continue suffering irreparable harm absent injunctive relief.

## COUNT 3

### (INFRINGEMENT OF THE '106 PATENT)

44.    Plaintiff incorporates each of the above paragraphs as though fully set forth herein.

45.    On information and belief, Cytek directly or through the actions of its employees, agents, distributors, divisions, and/or subsidiaries, has infringed one or more of the claims of the '106 Patent, including at least claim 1 of the '106 Patent, directly, indirectly, literally and/or by equivalents under 35 U.S.C. §§ 1 *et seq.*, including, but not limited to § 271 by, among other things, making, using (including during research and development activities and product testing), selling, supplying, offering for sale the Infringing Products in the United States and/or importing the Infringing Products within the United States, and/or inducing or contributing to such acts, without authority.   To the extent there are any differences between the Infringing Products and the claims of the '106 Patent, such differences are insubstantial.  For each claim limitation in at least claim 1 of the '106 Patent, one or more elements of each of Cytek's Infringing Products matches the function, way,

and result of that claim limitation.

46. For example, the Infringing Products meet each element of, and infringe, claim 1, which states:

**Claim 1.** A flow cytometer, comprising:
a light source arranged to illuminate a stream of particles in a viewing zone of a flow cell in the flow cytometer;
a collecting optical element configured to collect and focus fluorescent light emitted by a particle illuminated by the light source such that the fluorescent light leaving the collecting optical element converges; and
a wavelength division multiplexer (WDM) configured to separate into color bands the fluorescent light collected by the collecting optical element, the WDM including,
a collimating optical element that is separate from the collecting optical element and is arranged to receive the fluorescent light collected by the collecting optical element, the collimating optical element configured to collimate the fluorescent light,
a first semiconductor detector configured to detect and quantitate a first color band in the fluorescent light,
a first curved mirror arranged to receive at least a portion of the fluorescent light after the fluorescent light has passed through the collimating optical element, the first curved mirror configured to reflect the portion of the fluorescent light towards the first semiconductor detector, and
a first dichroic filter optically disposed between the first curved mirror and the first semiconductor detector, the dichroic filter configured to allow the first color band in the fluorescent light to pass through the first dichroic filter onto the first semiconductor detector, and to reflect a second color band in the fluorescent light away from the first semiconductor detector.

47. Cytek infringes each element of at least claim 1 of the '106 Patent. Cytek's own documents show that the Infringing Products infringe the claims of the Asserted Patent. As an example, the '106 Patent Infringement Chart, detailing Cytek's infringement of that claim of the '106 Patent, is attached as **Exhibit 24.** This

chart is not intended to limit Beckman Coulter's right to modify the chart or allege that other activities of Cytek infringe the identified claims or any other claims of the Asserted Patents.  **Exhibit 24** is hereby incorporated by reference in its entirety. Each claim element in **Exhibit 24** that is mapped to the Infringing Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

48.     Cytek has also induced infringement of the '106 Patent under § 271(b) by providing customers with the Infringing Products, along with instructions for use, that, when followed in an intended manner and in a normal mode of operation, Cytek knew infringed the Asserted Patents.  *See, e.g.*, **Exhibit 5**, Cytek Aurora User's Guide (providing instructions for using the Cytek Aurora flow cytometer); **Exhibit 6**, Cytek Aurora CS User's Guide (providing instructions for using the Cytek Aurora CS cell sorter).  On information and belief, Cytek knew of the '106 Patent at least as of December 24, 2024.  Further, the Infringing Products function in the same manner as the claimed invention.  *Compare* '106 Patent at FIG. 25 (illustrating an optical subsystem) with **Exhibit 14** at 2 ("Light emitted from the sample is collected and passes through the optical filter-based coarse wavelength division multiplexing (CWDM) demultiplexer arrays on the Cytek Aurora and Northern Lights cytometers.").  The instructions for use of the Infringing Products instructed and encouraged Cytek's customers to use the Infringing Products in a way that infringed

22

the '106 Patent.  *See* **Exhibit 5; Exhibit 6.**  Cytek provided its customers with the Infringing Products and instructions for use despite knowledge of or willful blindness to the '106 Patent and knowledge or willful blindness to the fact that the induced acts infringed one or more claims of the '106 Patent.  Therefore, Cytek specifically intended that its customers infringe the '106 Patent.

49.     Cytek has contributorily infringed the Asserted Patents under 35 U.S.C. § 271(c).  Cytek designed the Infringing Products and/or its components specifically to be used in a manner as claimed in the '106 Patent.  As such, the Infringing Products and/or its components are a material component of the patented combinations, specifically designed to be used according to the claims of the '106 Patent, and especially made and adapted for use in a manner that infringed the '106 Patent.  The Infringing Products and/or its components are not staple articles of commerce, and they do not have substantial uses that do not infringe the '106 Patent.  On information and belief, Cytek knew of, should have known of, and/or was willfully blind to the '106 Patent and that the Infringing Products are especially made to be used in a system that infringed the '106 Patent.

50.     Cytek's infringement has been willful and deliberate because, on information and belief, Cytek has known, should have known, and/or has been willfully blind to the '106 Patent since at least December 24, 2024 and knew of, should have known of, and/or was willfully blind to its infringement but acted

23

despite an objectively high likelihood that such acts would infringe the '106 Patent.

51.     As a direct and proximate result of Cytek's conduct, Plaintiff has suffered, and if Cytek's conduct is not enjoined, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial.  Because Plaintiff's remedy at law is inadequate, Plaintiff seeks, in addition to damages, injunctive relief.  Plaintiff's businesses operate in a competitive market and they will continue suffering irreparable harm absent injunctive relief.

## COUNT 4

### (INFRINGEMENT OF THE '107 PATENT)

52.     Plaintiff incorporates each of the above paragraphs as though fully set forth herein.

53.     On information and belief, Cytek directly or through the actions of its employees, agents, distributors, divisions, and/or subsidiaries, has infringed one or more of the claims of the '107 Patent, including at least claim 1 of the '107 Patent, directly, indirectly, literally and/or by equivalents under 35 U.S.C. §§ 1 *et seq.*, including, but not limited to § 271 by, among other things, making, using (including during research and development activities and product testing), selling, supplying, offering for sale the Infringing Products in the United States and/or importing the Infringing Products within the United States, and/or inducing or contributing to such acts, without authority.   To the extent there are any differences between the

24

Infringing Products and the claims of the '107 Patent, such differences are insubstantial. For each claim limitation in at least claim 1 of the '107 Patent, one or more elements of each of Cytek's Infringing Products matches the function, way, and result of that claim limitation.

54. For example, the Infringing Products meet each element of, and infringe, claim 1, which states:

**Claim 1.** A flow cytometer comprising:
an optical fiber; and
a wavelength division multiplexer (WDM) configured to receive light from the optical fiber, wherein the WDM comprises:
an array of mirrors;
an array of filters; and
an array of avalanche photodiodes (APDs) configured to receive light that passed through one or more filters in the array of filters;
wherein each of the filters in the array of filters is configured to receive light such that:
a portion of the light passes through the filter; and
another portion of the light is reflected; and
wherein each of the mirrors in the array of mirrors is configured to:
receive light reflected by a filter in the array of filters; and
reflect light to another filter in the array of filters.

55. Cytek infringes each element of at least claim 1 of the '107 Patent. Cytek's own documents show that the Infringing Products infringe the claims of the Asserted Patents. As an example, the '107 Patent Infringement Chart, detailing Cytek's infringement of that claim of the '107 Patent, is attached as **Exhibit 25**. This chart is not intended to limit Beckman Coulter's right to modify the chart or allege that other activities of Cytek infringe the identified claims or any other claims of the

25

Asserted Patents.  **Exhibit 25** is hereby incorporated by reference in its entirety. Each claim element in **Exhibit 25** that is mapped to the Infringing Products shall be considered an allegation within the meaning of the Federal Rules of Civil Procedure and therefore a response to each allegation is required.

56.     Cytek has also induced infringement of the '107 Patent under § 271(b) by providing customers with the Infringing Products, along with instructions for use, that, when followed in an intended manner and in a normal mode of operation, Cytek knew infringed the Asserted Patents.  *See, e.g.*, **Exhibit 5**, Cytek Aurora User's Guide (providing instructions for using the Cytek Aurora flow cytometer); **Exhibit 6**, Cytek Aurora CS User's Guide (providing instructions for using the Cytek Aurora CS cell sorter).  On information and belief, Cytek knew of the '107 Patent at least as of December 24, 2024.  Further, the Infringing Products function in the same manner as the claimed invention.  *Compare* '107 Patent at FIG. 25 (illustrating an optical subsystem) with **Exhibit 14** at 2 ("Light emitted from the sample is collected and passes through the optical filter-based coarse wavelength division multiplexing (CWDM) demultiplexer arrays on the Cytek Aurora and Northern Lights cytometers.").  The instructions for use of the Infringing Products instructed and encouraged Cytek's customers to use the Infringing Products in a way that infringed the '107 Patent.  *See* **Exhibit 5; Exhibit 6.**  Cytek provided its customers with the Infringing Products and instructions for use despite knowledge of or willful

26

blindness to the '107 Patent and knowledge or willful blindness to the fact that the induced acts infringed one or more claims of the '107 Patent. Therefore, Cytek specifically intended that its customers infringe the '107 Patent.

57. Cytek has contributorily infringed the Asserted Patents under 35 U.S.C. § 271(c). Cytek designed the Infringing Products and/or its components specifically to be used in a manner as claimed in the '107 Patent. As such, the Infringing Products and/or its components are a material component of the patented combinations, specifically designed to be used according to the claims of the '107 Patent, and especially made and adapted for use in a manner that infringed the Asserted Patents. The Infringing Products and/or its components are not staple articles of commerce, and they do not have substantial uses that do not infringe the Asserted Patents. On information and belief, Cytek knew of, should have known of, and/or was willfully blind to the '107 Patent and that the Infringing Products are especially made to be used in a system that infringed the '107 Patent.

58. Cytek's infringement has been willful and deliberate because, on information and belief, Cytek has known, should have known, and/or has been willfully blind to the '107 Patent since at least December 24, 2024 and knew of, should have known of, and/or was willfully blind to its infringement but acted despite an objectively high likelihood that such acts would infringe the '107 Patent.

59. As a direct and proximate result of Cytek's conduct, Plaintiff has

27

suffered, and if Cytek's conduct is not enjoined, will continue to suffer, severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Because Plaintiff's remedy at law is inadequate, Plaintiff seeks, in addition to damages, injunctive relief. Plaintiff's businesses operate in a competitive market and they will continue suffering irreparable harm absent injunctive relief.

## DEMAND FOR JURY TRIAL

60. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief, declaration and judgment that:

a. Cytek has infringed the Asserted Patents;

b. Plaintiff is entitled to preliminary and permanent injunctive relief enjoining Cytek, its officers, agents, servants, and employees, and those persons in active concert or participation with any of them, from manufacturing, using, offering for sale, selling in the United States, or importing into the United States, the Infringing Products, and any other product that infringes or induces or contributes to the infringement of the Asserted Patents, prior to the expiration date of the last to expire of those patents;

c. Plaintiff is entitled to an award of damages adequate to compensate for Cytek's infringement pursuant to 35 U.S.C. § 284, including lost profits or, at

a minimum, a reasonable royalty, as well as pre-judgment and post-judgment interest;

d.      Cytek's infringement of the Asserted Patents was willful and Plaintiff is entitled to enhanced damages up to and including trebling of the damages awarded to it;

e.      Plaintiff is entitled to costs and reasonable expenses to the fullest extent permitted by law;

f.      This case is exceptional pursuant to 35 U.S.C. § 285, and Plaintiff is entitled to an award of attorneys' fees; and

g.      Plaintiff is entitled to other and further relief as the Court may deem just and proper.

OF COUNSEL:

Omar A. Khan
Jeffrey A. Dennhardt
Lauren E. Matlock-Colangelo
WILMER CUTLER PICKERING HALE
    AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

Asher S. McGuffin
WILMER CUTLER PICKERING HALE
    AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Dated:  January 9, 2025

*/s/ Frederick L. Cottrell, III*
Frederick L. Cottrell, III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com

*Attorneys for Plaintiff*

30

# Attachment 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BECKMAN COULTER, INC.,

Plaintiff,

v.

CYTEK BIOSCIENCES, INC.,

Defendant.

C.A. No. 24-0945-CFC

**DEMAND FOR JURY TRIAL**

## [PROPOSED] STIPULATED PROTECTIVE ORDER

Plaintiff Beckman Coulter, Inc. ("Plaintiff" or "Beckman") and Defendant Cytek Biosciences, Inc. ("Defendant" or "Cytek") anticipate that documents, testimony, or information containing or reflecting confidential, proprietary, trade secret, and/or commercially sensitive information ("Confidential Information") are likely to be disclosed or produced during the course of discovery, initial disclosures, and supplemental disclosures in this case and request that the Court enter this Order setting forth the conditions for treating, obtaining, and using such information.

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, the Court finds good cause for this Protective Order ("Order" or "Protective Order").

## A. DEFINITIONS

1. "Action" means the above-captioned proceeding.

2. "Party" or "Parties" means the parties to this Action, including their parents, subsidiaries, and affiliates, and, as applicable, the Parties' counsel, officers,

1

directors, and employees.

3.    "Outside Counsel of Record" means attorneys who are not employees of a Party to this Action but are retained to represent or advise a Party to this Action and have appeared in this Action on behalf of that Party or are affiliated with a law firm that has appeared on behalf of that Party.

4.    "Designating Party" means any Party or non-party designating documents or information as Protected Information in this Action.

5.    "Receiving Party" shall mean any Party that receives Protected Information in this Action.

6.    "CONFIDENTIAL" (also referred to as "Confidential Information" herein) means all non-public information that qualifies for protection under Federal Rule of Civil Procedure 26(c).   Confidential Information shall apply to all information, documents and things within the scope of discovery in this Action that are designated as containing or comprising Confidential Information, including, without limitation, documents and things responsive to requests for production of documents and things under Fed. R. Civ. P. 34; information produced by other persons that the producing or Designating Party is under an obligation to maintain in confidence; responses to written interrogatories under Fed. R. Civ. P. 33; responses to requests for admission under Fed. R. Civ. P. 36 or other discovery requests; testimony adduced at depositions upon oral examination or upon written

questions pursuant to Fed. R. Civ. P. 30 and 31, or during hearings or at trial. The information contained therein and all copies, abstracts, excerpts, analyses or other writings that contain, reflect, reveal, suggest or otherwise disclose such information shall also be deemed Confidential Information. Information originally designated as Confidential Information shall not retain that status after any ruling by the Court denying such status to it.

7.    "HIGHLY CONFIDENTIAL" (also referred to as "Highly Confidential Information" herein) means any Confidential Information that the Designating Party reasonably believes contains highly sensitive information the disclosure of which could result in competitive or commercial disadvantage to the Designating Party, including, highly sensitive technical information. Any document designated as "HIGHLY CONFIDENTIAL" information is automatically designated as SUBJECT TO PROSECUTION BAR pursuant to Section I.

8.    "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" (also referred to as "Outside Attorneys' Eyes Only Information" herein) means any Highly Confidential Information that the Designating Party reasonably believes contains its most highly sensitive information, trade secrets and/or future business plans, the disclosure of which could result in significant competitive or commercial disadvantage to the Designating Party, including, (i) highly sensitive technical information; (ii) customer lists, (iii) trade secrets, (iv) future strategic

plans, including financial forecasts and marketing plans, and (v) non-public information regarding the research and development of future products, including materials concerning product research and development and non-public Patent Prosecution information concerning future products. Any document designated as "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" information is automatically designated as SUBJECT TO PROSECUTION BAR pursuant to Section I.

9.      "Protected Information" means, collectively, information designated as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY."

10.      "Patent-In-Suit" means all patents identified in the Complaint and any amendments thereto, including U.S. Patent Nos. 10,330,582 and 11,703,443.

11.      "Patent Prosecution" refers to (i) any involvement with the drafting, filing, amending, or prosecuting of any patent application; (ii) any involvement with strategic counseling, planning, or analysis with respect to any patent application owned or controlled by the Party; or (iii) any drafting of a new claim or a claim amendment in any reexamination, reissue, or post-grant proceeding, or providing advice on the content or scope of such a new or amended claim.

12.      "Outside Consultant" means a person with specialized knowledge or experience in subject matter pertinent to the Action who has been retained by a Party

4

or its Outside Counsel to serve as an expert witness or as an expert consultant in this Action and who is not a current employee, officer, or director of a Party and who, at the time of retention, is not anticipated to become an employee, officer, or director of a Party.

13.    "Professional Vendors" means entities that provide litigation support services (e.g., photocopying, organizing, storing, or retrieval of data in any form or medium, videotaping, translating, designing and preparing exhibits, graphics, or demonstrations, etc.) and their employees and subcontractors.   This definition includes independent legal translators retained to translate in connection with this Action; court reporters, independent stenographic reporters, and videographers retained to record and transcribe testimony in connection with this Action; and graphics, translation, or design services retained by counsel for purposes of preparing demonstrative or other exhibits for deposition, trial, or other court proceedings in this Action.   This definition also includes a professional jury or trial consultant retained in connection with this litigation and mock jurors retained by such a consultant to assist them in their work.   Professional Vendors do not include consultants who fall within the definition of Outside Consultant.

**B.    SCOPE**

14.    The protections conferred by this Order shall govern all Protected Information from a Designating Party, including non-parties, produced or generated

in disclosures or responses to discovery in this Action, whether formal or informal.

Those protections shall also extend to any information copied or extracted therefrom,

as well as all copies, excerpts, summaries, or compilations thereof, plus testimony,

conversations, or presentations by Receiving Parties or Outside Counsel of Record

for Receiving Parties that might reveal Protected Information.

## C.    USE AND CONTROL OF PROTECTED INFORMATION

15.    General.  All information designated as Protected Information by the

Designating Party pursuant to this Order and disclosed in this Action shall be used

by the Receiving Party solely for the purposes prosecuting, defending, or attempting

to settle this Action, any related appellate proceeding, and not for any other purpose

whatsoever, including without limitation any other litigation, Patent Prosecution,

acquisition, any other legal proceeding, any communication with any regulatory

agency, or any other business or competitive purpose or function, except as

permitted by order of court, or as agreed by the Parties.

16.    Exceptions.  The restrictions and obligations set forth herein relating

to material designated as Protected Information shall not apply to any information

that:

(a)    The Parties (and, if a non-party produced Protected Information,

the non-party) agree or the Court rules, is already public knowledge or was

improperly designated by the Designating Party because it does not satisfy the

6

definition of Protected Information set forth in this Order;

       (b)    The Parties (and any respective Designating Party) agree or the Court rules, has become public knowledge other than as a result of disclosure by a Receiving Party, its employees or agents in violation of this Order;

       (c)    Has come or shall come into a Receiving Party's legitimate possession independently of the Designating Party; or

       (d)    Has been independently developed by or for the Party without use of, or reference to, the other Party's Protected Information, which shall remain Protected.

       17.    <u>Rights to Use</u>.  Nothing contained in this Order shall be construed to limit any Receiving Party's rights to use in briefs or at trial or in any proceeding in this Action, any Protected Information of a Designating Party, subject to the provisions of Paragraphs 33, 34, and 35 below.  Nor shall this Order prevent counsel from examining a witness of the Designating Party or a witness who is otherwise subject to the protections of this Order to determine whether he or she has knowledge of the subject matter comprising Protected Information, so long as such examination shall be in a manner that does not disclose the details of the Protected Information.

       18.    <u>Other Proceedings</u>. By entering this Order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case.

7

Any person or party subject to this Order who becomes subject to a motion to disclose another party's information designated as confidential pursuant to this Order shall promptly notify that party of the notion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

19.     <u>Use of Protected Information in a Court Proceeding</u>.  If during a Court proceeding Protected Information is likely to be revealed, within a reasonable time prior to such Court proceeding, a Party must notify the other Party, and either party may request that the proceeding be held in camera, consistent with the Local Rules. The parties agree to use best efforts to avoid publishing Protected Information to members of the public.

## D.     DESIGNATION OF PROTECTED INFORMATION

20.     <u>General</u>.  Each Designating Party that produces or discloses any material that it reasonably believes contains or comprises Protected Information shall so designate the same.  Such a designation is a representation that the Designating Party reasonably believes that the document contains Protected Information. The Parties will use reasonable care to avoid designating as Protected Information documents or information that is not protected information. Designations shall be made on a document by document basis.

21.     <u>Static Image Format</u>.  With respect to documents or copies containing Protected Information produced as a static image, the Designating Party shall mark

8

each page of the document or copy with the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY."

22.     Native Format.  With respect to documents containing Protected Information produced in Native Format, the Designating Party shall include the appropriate confidentiality designation in the filename.  Any printed or PDFed copies of such designated documents shall be marked by the Receiving Party at the time of printing/PDFing with the appropriate confidentiality designation to ensure appropriate protection.

23.     Load File.  With respect to all documents produced that contain Protected Information, the Designating Party will also include in the Load File the appropriate designation that includes the level of protection (*e.g.*, "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY").

24.     Transcripts. Transcripts containing Protected Information shall have an obvious legend on the title page that the transcript contains Protected Information. The Designating Party shall inform the court reporter of these requirements during the deposition or within 30 days of receiving the final transcript.

25.     Tangible Objects. For information produced in some form other than documentary and for any other tangible items, the Designating Party shall affix in a

prominent place on the exterior of the container or containers in which the information or item is stored the legend "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY." If only a portion or portions of the information or item warrant protection, the Designating Party, to the extent practicable, shall identify the protected portion(s) and specify the level of protection being asserted.

26. <u>Inspections</u>. A Party or non-party that makes original documents or materials available for inspection need not designate them for protection until after the inspecting Party has indicated which material it would like copied and produced. During the inspection and before the designation, all of the material made available for inspection shall be deemed "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY." After the inspecting Party has identified the documents it wants copied and produced, the Designating Party must determine which documents qualify for protection under this Order. Then, before producing the specified documents, the Designating Party must affix the appropriate legend ("CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY") to each page.

27. <u>Designating Information Produced</u>. A Designating Party may designate, or counter-designate with a higher designation, information or items produced in this Action by another Party or non-party that contains or is derived

from the Designating Party's own Protected Information. Designations or counter-designations are subject to the restrictions set forth in the Order. Each Party that designates or counter designates such information or items will be treated as the Designating Party for purposes of this Order.

**E.  NON-PARTIES**

28.     General. If a Party seeks discovery from a non-party to this suit, the non-party will be provided with a copy of this Protective Order and may invoke its terms with respect to any Protected Information provided to the Parties. If any Protected Information is produced by a person other than a Party pursuant to this Order, such person shall be considered a "Designating Party" within the meaning of that term as it is used in the context of this Order, and all parties to this Order should be treated as Receiving Parties. The Parties recognize that, during the course of this Action, Protected Information that originated with a person other than a Party and for which there exists an obligation of confidentiality may be produced. Such information that the Designating Party believes originated with such a person, but is subject to a confidentiality obligation, may be designated as Protected Information and the provisions of this Order shall apply to such discovery as if such discovery were being provided by a Party. The non-party shall have thirty (30) days after production of such Protected Information to make any necessary designations.

29.     Duty to Non-Party. If a Party responding to discovery owes a duty to

11

a non-party relating to the confidentiality of documents in its possession, custody or control, the responding Party shall:

(a)  Timely serve a written objection to the production of such information on the basis of its obligation to a non-party not to disclose the information;

(b)  Timely provide the non-party written notice of the pending request and a copy of this Order; and, if needed,

(c)  Make the information requested available for inspection by the non-party.

(d)  If the non-party does not object to the disclosure of information within either a reasonable time from which the written notice of the pending request was sent by the responding Party or within the time period designated in any applicable agreement between the non-party and the responding Party, the responding Party shall produce the materials (subject to any appropriate designations under the terms of this Order).

(e)  If the non-party does object to the disclosure of information, the responding Party shall not produce any information in its possession or control that is subject to the applicable agreement between the non-party and the responding party before a determination by the Court.  Absent a court order to the contrary, the non-party shall bear the burden and expense of seeking protection in this Court of

12

its Protected Information.

## F.   FILING UNDER SEAL

30.   <u>Filing Protected Information</u>.  All documents and materials containing Protected Information that are filed with the Court shall be filed under seal.

(a)   A party that seeks to file under seal any Protected Information during this Action must comply with Paragraph 13 of the Court's Scheduling Order (D.I. 25) and all applicable Federal and Local Rules or a comparable rule on appeal.

(b)   Without written permission from the Designating Party or a Court Order secured after appropriate notice to all interested persons, a Party may not file in the public record any Protected Information in this Action.

31.   <u>Redacted Filings of Papers with Protected Information</u>. When papers containing Protected Information have been filed under seal, redacted public versions shall be filed with the Court in accordance with normal procedures provided by paragraph 13 of the Court's Scheduling Order (D.I. 25) and all other applicable local rules.  The party seeking to file redacted public versions must ensure that:

(a)   All Protected Information set forth in the papers is deleted or obscured and all Protected Information is removed as exhibits; and

(b)   Redacted versions of the papers are clearly marked, and the locations of all deleted information are clearly identified in conformity with local practice.

32.     <u>Request to Release Restriction</u>.  Nothing in this Order shall prohibit the right of one Party to request from another Party claiming confidentiality that the designated Protected Information be released from the confidentiality restriction for all purposes or for limited purposes (such as to show to certain designated persons). Any such requests and resulting permission shall be in writing and shall be considered by the Designating Party in good faith.

**G.      DISCLOSURE OF CONFIDENTIAL INFORMATION**

33.     <u>Disclosure of Confidential Information</u>.  Except as provided elsewhere in this Order, information designated CONFIDENTIAL may be disclosed only to the following individuals:

(a)     Outside Counsel of Record, and their respective legal, technical advisors, administrative, and other support staff, engaged in the conduct of this Action on behalf of the Receiving Party and to whom it is reasonably necessary to disclose the information for this litigation;

(b)     A maximum of two (2) Party employees per side whose primary responsibilities include overseeing this litigation and who are not competitive decisionmakers and additionally one (1) attorney who works for or on behalf of a Party's in-house legal department and whose primary responsibilities include overseeing this litigation. The individuals and attorney to whom such information will be made available must sign the form attached hereto as Exhibit A. For the

avoidance of doubt, an individual is not a competitive decisionmaker solely by virtue of participating in the negotiation of settlement agreements;

(c)     Outside Consultants of the Receiving Party to whom disclosure is reasonably necessary for this litigation who have been approved in accordance with Section H below and who have signed the form attached hereto as Exhibit A, and their support staff, if any, to whom disclosure is reasonably necessary for this Action;

(d)     Professional Vendors to which disclosure is reasonably necessary for this litigation, provided that before Confidential Information is disclosed for such purpose, a person with authority to bind the entity providing the professional service signs the form attached hereto as Exhibit A (e.g., the court reporting firm and jury consulting firm must sign the form, but not individual court reporters and mock jurors);

(e)     The Court, any appellate court(s), court personnel, jurors, alternate jurors, and qualified persons (including necessary clerical personnel) recording, taking or transcribing testimony or argument at any deposition, hearing, trial or appeal in this Actions to the extent that Confidential Information is disclosed at a deposition or Court session which such reporter is transcribing or recording;

(f)     Any designated arbitrator or mediator who is assigned to hear this matter, and his or her staff, who have signed the form attached hereto as Exhibit

A;

(g)     Persons who appear on the face of Confidential Information as an author, addressee, or recipient thereof, or other individual who otherwise possessed or personally knows the Confidential Information, provided such persons shall not be entitled to retain a copy of any Confidential Information;

(h)     During their depositions and/or at trial, witnesses in the Action to whom disclosure is reasonably necessary, unless the Designating Party objects to such disclosure or except as otherwise ordered by the Court. Before making such a disclosure, the Receiving Party must provide notice sufficient to allow the Designating party to object. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Information must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order; and

(i)     Any other person (i) agreed to in writing by the parties, as long as such persons comply with the procedures of Section H below, if applicable, or (ii) permitted by the Court.

34.     Disclosure of Highly Confidential Information. Except as provided elsewhere in this Order, information designated as HIGHLY CONFIDENTIAL may be disclosed only to the following individuals:

(a)     The Receiving Party's Outside Counsel of Record, and their

16

respective legal, investigative, technical, administrative, and other support staff, engaged in the conduct of this Action on behalf of the Receiving Party and to whom it is reasonably necessary to disclose the information for this litigation;

(b)   A maximum of three (3) attorneys per side who work on behalf of a Party's in-house legal department and whose primary responsibilities include overseeing this litigation and who are not competitive decisionmakers. For the avoidance of doubt, an individual is not a competitive decisionmaker solely by virtue of participating in the negotiation of settlement agreements. For Plaintiff's side, the designated attorneys will be Mary Britton, Mike Levy, and Anne Murphy. For Defendant's side, the designated attorneys will include Jennifer Prosba. Attorneys to whom such information will be made available must sign the form attached hereto as Exhibit A.;

(c)   Outside Consultants of the Receiving Party to whom disclosure is reasonably necessary for this litigation who have been approved in accordance with Section H below and who have signed the form attached hereto as Exhibit A, and their support staff, if any, to whom disclosure is reasonably necessary for this Action;

(d)   Professional Vendors to which disclosure is reasonably necessary for this litigation, provided that before Highly Confidential Information is disclosed for such purpose, a person with authority to bind the entity providing the

17

professional service signs the form attached hereto as Exhibit A (e.g., the court reporting firm and jury consulting firm must sign the form, but not individual court reporters and mock jurors);

     (e)    The Court, any appellate court(s), court personnel, jurors, alternate jurors, and qualified persons (including necessary clerical personnel) recording, taking or transcribing testimony or argument at any deposition, hearing, trial or appeal in this Action to the extent that Highly Confidential Information is disclosed at a deposition or Court session which such reporter is transcribing or recording;

     (f)    Any designated arbitrator or mediator who is assigned to hear this matter, and his or her staff, who have signed the form attached hereto as Exhibit A;

     (g)    Persons who appear on the face of Highly Confidential Information as an author, addressee, or recipient thereof, or other individual who otherwise possessed or personally knows the Highly Confidential Information, provided such persons shall not be entitled to retain a copy of any Highly Confidential Information;

     (h)    During their depositions and/or at trial, witnesses in the Action to whom disclosure is reasonably necessary, unless the Designating Party objects to such disclosure or except as otherwise ordered by the Court. Before making such a

18

disclosure, the Receiving Party must provide notice sufficient to allow the Designating party to object. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Information must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order; and

(i)      Any other person (i) agreed to by the parties, in writing, as long as such persons comply with the procedures of Section H below, if applicable, or (ii) permitted by the Court.

35.      <u>Disclosure of Outside Attorneys' Eyes Only Information</u>. Except as provided elsewhere in this Order, information designated as HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY may be disclosed only to the following individuals:

(a)      The Receiving Party's Outside Counsel of Record, and their respective legal, investigative, technical, administrative, and other support staff, engaged in the conduct of this Action on behalf of the Receiving Party and to whom it is reasonably necessary to disclose the information for this litigation;

(b)      Outside Consultants of the Receiving Party to whom disclosure is reasonably necessary for this litigation who have been approved in accordance with Section H below and who have signed the form attached hereto as Exhibit A, and their support staff, if any, to whom disclosure is reasonably necessary for this

Action;

(c)    Professional Vendors to which disclosure is reasonably necessary for this litigation, provided that before Outside Attorneys' Eyes Only Information is disclosed for such purpose, a person with authority to bind the entity providing the professional service signs the form attached hereto as Exhibit A (e.g., the court reporting firm and jury consulting firm must sign the form, but not individual court reporters and mock jurors);

(d)    The Court, any appellate court(s), court personnel, jurors, alternate jurors, and qualified persons (including necessary clerical personnel) recording, taking or transcribing testimony or argument at any deposition, hearing, trial or appeal in this Action to the extent that Outside Attorneys' Eyes Only Information is disclosed at a deposition or Court session which such reporter is transcribing or recording;

(e)    Any designated arbitrator or mediator who is assigned to hear this matter, and his or her staff, who have signed the form attached hereto as Exhibit A;

(f)    Persons who appear on the face of Outside Attorneys' Eyes Only Information as an author, addressee, or recipient thereof, or other individual who otherwise possessed or personally knows the Outside Attorneys' Eyes Only Information, provided such persons shall not be entitled to retain a copy of any

Outside Attorneys' Eyes Only Information;

(g)  During their depositions and/or at trial, witnesses in the Action to whom disclosure is reasonably necessary, unless the Designating Party objects to such disclosure or except as otherwise ordered by the Court. Before making such a disclosure, the Receiving Party must provide notice sufficient to allow the Designating party to object. Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Information must be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Order; and

(h)  Any other person (i) agreed to by the parties, in writing, as long as such persons comply with the procedures of Section H below, if applicable, or (ii) permitted by the Court.

36.  Written Consent. No Party or person shall disclose or cause to be disclosed to anyone not specified in Paragraphs 33, 34, and 35 above as being entitled to receive it, any information designated as Protected Information under this Order without prior written consent of the Designating Party or an order of this Court. If the Receiving Party learns that Protected Information produced to it is disclosed to any person other than in the manner authorized by this Order, the Receiving Party learning of the disclosure must immediately inform the Designating Party of all pertinent facts relating to such disclosure and shall make every effort to

prevent disclosure by each unauthorized person who received such information.

37. <u>Declaration of Compliance</u>. No person designated in accordance with Paragraphs 33(b), (c), (d), (f), (i), 34(b), (c), (d), (f), (i), or 35(b), (c), (e) shall have access to Protected Information without first signing the form attached hereto as Exhibit A. A file of all such executed Exhibit A(s) shall be maintained by counsel for the Party obtaining them until at least sixty (60) calendar days after the final termination of this Action, but shall not be provided to opposing counsel except as specifically provided in the Protective Order.

## H. USE AND DISCLOSURE TO DESIGNATED INDIVIDUALS

38. <u>General</u>. Before a Receiving Party gives, shows, discloses, makes available or communicates Protected Information to any individual designated under Paragraphs 33(c), 34(c), or 35(b):

(a) <u>Notice – Outside Consultants</u>. Before a Receiving Party gives, shows, discloses, makes available or communicates Protected Information to any Outside Consultant designated under Paragraphs 33(c), 34(c), or 35(b), the Receiving Party shall serve (i) written notice to the Designating Party, identifying the Outside Consultant; (ii) the current curriculum vitae of the Outside Consultant setting forth such person's present residence and business address(es), current employer and job title, and any company or companies by which that person was employed during the past ten (10) years; (iii) a list of all consulting agreements,

arrangements, or professional services that said person entered into or provided during the past five (5) years, to the extent it would not violate confidentiality obligations to disclose such agreements, arrangements, or services (to the extent that the specific identification of an Outside Consultant's client cannot be provided due to a confidentiality agreement, the Receiving Party seeking to make the disclosure to the Outside Consultant must provide whatever information the Outside Consultant believes can be disclosed without violating any confidentiality agreements, and the Receiving Party shall meet and confer with the Designating Party); (iv) a list identifying (by name and number of the case, filing date, and location of court) any litigation in connection with which the Outside Consultant has offered expert testimony, including through a declaration, report, or testimony at a deposition or trial, during the preceding five (5) years, including identification of the party for which the Outside Consultant offered testimony; (iv) a statement disclosing whether such Outside Consultant has been found to have violated the terms of a protective order in any litigation or legal proceeding; (vi) an identification of any patents or published patent applications in which the Outside Consultant is identified as an inventor or applicant; and (vii) a copy of the form attached hereto as Exhibit A, signed by the Outside Consultant, confirming the person's agreement to be bound by the terms of this Protective Order;

      (b)    The Designating Party shall be entitled to object in writing to

such disclosure to the proposed individual within seven (7) business days after receipt of the materials in the paragraph above stating specifically in writing the reasons why it objects to disclosure of the Protected Information to the proposed individual;

(c)     The Parties agree to promptly meet and confer and use good faith to resolve any such objection within five (5) business days of the written objection. If the Parties are unable to resolve the objection, the Party objecting to the disclosure to the individual may seek relief from the Court (e.g., by following the Court's procedure and filing an opening letter) within ten (10) business days after the meet and confer.  The objecting Party shall have the burden of showing good cause for a protective order and that the risk of harm that the disclosure would entail (under the safeguards proposed) outweighs the Receiving Party's need to disclose the Protected Information to the individual.

(d)     No disclosure of the Protected Information shall be made to the proposed individual until the time for serving objections to the individual has passed, or, in the event that a written objection is timely served and relief is sought from the Court, until all such objections are resolved by agreement or Court order;

(e)     The filing and pendency of objections shall not limit, delay, or defer any disclosures of Protected Information to persons as to whom no such objection has been made or as to whom the objecting party did not seek relief from

24

the Court within the prescribed period after making its objection, nor shall it delay or defer any other pending discovery unless the level of confidentiality bears directly on the objecting Party's ability to conduct such discovery.

(f)  A Party who has not previously objected to disclosure of Protected Information to an individual or whose objection has been resolved with respect to previously produced material shall not be precluded from raising an objection to an individual at a later time with respect to material that is produced after the time for objecting to such an individual has expired.

## I.  PROSECUTION BAR

39.  <u>General</u>.  Absent written consent from the Designating Party, any person who receives Protected Information designated "HIGHLY CONFIDENTIAL" or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" shall not, during the pendency of this Action and for two (2) years after the termination of this Action, including any appeals, engage in any Patent Prosecution involving claims covering, reciting, or relating to flow cytometer, cell analyzer, and/or cell sorter hardware, including hardware components thereof (such as, but not limited to, excitation, optical detection, and wavelength division multiplexer components).  Nothing in this paragraph shall be construed to prohibit an individual from participating in reexamination, reissue, or post-grant proceedings, such as an *inter partes* review, on behalf of an entity attempting to invalidate or

defend the validity of a patent, except that individuals subject to this prosecution bar may not participate in drafting new or amended claims or advising on the content or scope of such new or amended claims. For the avoidance of doubt, nothing herein shall preclude any individual from work relating to any post-grant proceeding before the Patent Trial and Appeal Board under 35 U.S.C. §§ 311 et seq. or 35 U.S.C. §§ 321 et seq. or similar post-grant proceedings before any foreign patent authority; provided, however, that no one who is authorized to receive information designated as HIGHLY CONFIDENTIAL or HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY shall provide any input, or otherwise participate in drafting or submitting any amendments to any claims relating to a flow cytometer, cell analyzer, and/or cell sorter hardware, including hardware components thereof (such as, but not limited to, excitation, optical detection, and wavelength division multiplexer components), in any reexamination, post-grant review, or inter partes review proceeding or similar post-grant proceeding before any foreign patent authority during the Term of the Prosecution Bar. For the avoidance of doubt, this Prosecution Bar shall not prevent an affected individual from providing to the U.S. Patent and Trademark Office anything that individual reasonably believes to be required to satisfy obligations of disclosure including, without limitation, evidence of prior art, prior use, prior knowledge or the like or as required to assist a patent applicant in complying with its duty of candor. The Prosecution Bar set forth herein

will be personal to any attorney who reviews or obtains information designated as HIGHLY CONFIDENTIAL or HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY or information derived therefrom and will not be imputed to any other persons or attorneys at the attorney's law firm or company.

## J.  CHALLENGE TO DESIGNATIONS

40.  <u>Timing of Challenges</u>.  Any Party or non-party may challenge a designation of confidentiality at any time.  Unless a prompt challenge to a Designating Party's confidentiality designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens, or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a confidentiality designation by electing not to mount a challenge promptly after the original designation is disclosed.

41.  <u>Meet and Confer</u>.  A Party that elects to initiate a challenge to a confidentiality designation must do so in good faith and must begin the process by conferring directly with outside counsel for the Designating Party.  In conferring, the challenging Party must explain, as to each challenged document or material, the basis for its belief that the confidentiality designation was not proper and must give the Designating Party an opportunity to review the designated material, to reconsider the circumstances, and, if no change in designation is offered, to explain the basis for the confidentiality designation.  A challenging Party may proceed to the next

27

stage of the challenge process only after first engaging in this meet-and-confer process.

42. <u>Judicial Intervention</u>. In cases where the Parties do not agree to the confidentiality designation of a document after meeting and conferring in good faith, a Party that elects to challenge a confidentiality designation after considering the justification offered by the Designating Party may seek relief from the Court, and therein identify the Protected Information challenged and sets forth the basis for the challenge. The burden of persuasion in any such challenge proceeding shall be on the Designating Party. Until the Court rules on the challenge, all Parties shall continue to afford the Protected Information in question the level of protection to which it is entitled under the Designating Party's designation.

43. <u>Costs</u>. All costs of such a challenge, including but not limited to attorneys' fees, shall be borne by the Party that incurred such cost.

## K. SECURITY AND DATA BREACH

44. <u>Equivalence</u>. Any person in possession of another Party's Protected Information shall exercise the same care with regard to the storage, custody, or use of such Protected Information as they would apply to their own material of the same or comparable sensitivity, but no less than reasonable care, including the precautions set forth in Paragraph 45.

45. <u>Reasonable Precautions</u>. Receiving Parties must take reasonable

precautions to protect Protected Information from loss, misuse and unauthorized access, disclosure, alteration and destruction. Such measures shall include:

(a)     Reasonably preventing unauthorized persons from gaining access to Protected Information (physical access control);

(b)     Reasonably preventing Protected Information from being used without authorization (logical access control) including, but not limited to, the use of passwords;

(c)     Reasonably ensuring that persons entitled to use Protected Information gain access only to such Protected Information as they are entitled to access in accordance with their access rights, and that, in the course of processing or use and after storage, Protected Information cannot be read, copied, modified, or deleted without authorization (data access control);

(d)     Reasonably ensuring that Protected Information cannot be read, copied, modified or deleted without authorization during electronic transmission, transport or storage on storage media, and that the target entities for any transfer of Protected Information by means of data transmission facilities can be established and verified (data transfer control);

(e)     Reasonably ensuring the establishment of an audit trail to document whether and by whom Protected Information has been accessed, modified, or removed from Protected Information processing systems, (entry control); and

29

(f)     Reasonably ensuring that Protected Information is processed solely in accordance with instructions from Counsel of the Receiving Party (control of instructions).

46.     <u>In Event of Breach</u>. If the Receiving Party discovers a breach of security relating to the Protected Information of another Party, the Receiving Party shall: (1) provide written notice to Designating Party of such breach within twenty-four (24) hours (or as soon as reasonably possible) of Receiving Party's discovery of the breach; (2) investigate and remediate the effects of the breach, and provide Designating Party with assurance reasonably satisfactory to Designating Party that such breach shall not recur; and (3) provide sufficient information about the breach that the Designating Party can reasonably ascertain the size and scope of the breach. The Designating Party shall maintain information regarding the breach as Confidential if reasonably possible to do so. If required by any judicial or governmental request, requirement, or order to disclose such information, the Receiving Party shall take all reasonable steps to give the Designating Party sufficient prior notice in order to contest such request, requirement, or order through legal means. The Receiving Party agrees to provide reasonable cooperation to the Designating Party or law enforcement in investigating any such security incident. In any event, the Receiving Party shall promptly take all necessary and appropriate corrective Action to terminate the unauthorized access as it deems appropriate in its

good faith and reasonable judgment.

## L.  DEPOSITIONS

47.  <u>Testimony</u>.  All deposition testimony shall be treated as containing Highly Confidential Information and subject to this Order until a time thirty (30) calendar days following receipt of the certified transcript by Outside Counsel of Record for the Plaintiff and Defendant and, in the event of a third-party witness, counsel for the non-party.  In the event that any Party wishes testimony or information disclosed at a deposition to be treated as Protected Information thereafter, that Party shall designate such testimony or information as Protected Information by either notifying the other Party in writing, within thirty (30) calendar days following receipt of the certified transcript, or designating during the deposition the transcript or portions thereof as Protected Information, and by specifying whether the information is to be treated as Confidential Information, Highly Confidential Information, and/or Outside Attorneys' Eyes Only Information. Documents and things already designated as Protected Information which are used as exhibits shall remain as such.  Any Party may designate the deposition testimony of any non-party as confidential and the provisions of this paragraph may be invoked.

48.  <u>Requesting Permission to Question Witness About Protected Information</u>.  In the event that a Party seeks to question a witness at a deposition

about Protected Information that the witness is not otherwise authorized to access under this Order, the Party who wishes to disclose the Protected Information must first seek permission to do so from the Designating Party. Such permission shall not be unreasonably denied. However, if permission is denied, the Party seeking to disclose the Protected Information may present an application to the Court for leave to disclose such information to the witness at issue. In making such an application, if there is no dispute regarding whether the document is Protected Information in the first place, the burden shall be on the requesting Party to demonstrate good cause for making the disclosure of properly designated Protected Information.

49. <u>Notification</u>. If counsel believes that any question or questions that will be put to a witness at deposition in this Action will disclose material designated Protected Information, or if material designated Protected Information will be used as an exhibit at such a deposition, counsel shall advise opposing counsel of the same in the course of the deposition, and the deposition (or protected portions thereof), shall be conducted only in the presence of persons entitled under the terms of this Order to access to the Protected Information at issue.

**M.     EXPERTS STIPULATION**

50. <u>Deposition Notice</u>. In this Action, a deposition notice will be sufficient to require any testifying expert to appear for a deposition. Absent good cause, no subpoena shall be served on an individual based on his/her role as a testifying expert.

At the time of service of any expert report, any data, documents, or other information

on which the expert relied in forming his/her opinion (if not previously produced)

shall be produced. Bates-numbered documents previously produced in this Action

and documents that are publicly available (absent a specific request for the publicly

available documents) need not be produced, but a list of any such documents shall

be provided with the expert report.

     51.     Expert Documents. Drafts of expert reports or declarations and notes,

written communications, and other types of preliminary work created or generated

by or for experts, pursuant to their role as experts in the Action (unless such notes

are generated while testifying) are exempt from discovery. Communications

between and among (a) experts, including their staff and representatives, and outside

counsel, and (b) experts and their respective staff for purposes of drafting expert

reports or declarations shall not be discoverable. Communications between experts,

including their staff, and other experts and their respective staff shall not be

discoverable unless the expert specifically relied upon any such communications as

a basis for any of his or her ultimate opinions or reports. Suggestions from outside

counsel regarding revisions to the form of the expert's report or additional support

for the expert's ultimate opinions are examples of communications that are protected

from discovery under this Order.

     52.     Nothing in this Order shall be construed to preclude (a) the use of non-

Protected Information by any Party; or (b) a Party from seeking to challenge a designation of any material(s) as Protected Information under this Order.

## N. NO WAIVER OF OBJECTION

53. <u>Right to Object</u>. This Order is intended to provide a mechanism for handling the disclosure or production of Protected Information to which there is no objection other than confidentiality. Neither the agreement of the Parties with respect to Protected Information, nor the designation of any information, document, or the like as Protected Information, nor the failure to make such designation, shall constitute evidence with respect to any issue on the merits in this Action. Each Party reserves the right to object to any disclosure of information or production of any documents it deems to contain Protected Information on any ground other than confidentiality that it may deem appropriate.

54. <u>Document Review</u>. The existence of this Order may not be used by any Party to argue that review of documents is unnecessary or that a Designating Party need not cull non-responsive, irrelevant or other documents before producing to the Requesting Party.

## O. NO WAIVER OF RIGHT TO APPROPRIATELY WITHHOLD OR REDACT

55. <u>Redactions</u>. Notwithstanding the provisions of this Order, Parties may redact from any document, whether designated Protected Information or not, any

information containing privileged material or any other data protected from disclosure by State, Federal, or foreign laws or regulations.

56.     Data Protection Information. The parties agree that productions of any information subject to federal, state, or foreign data protection laws or other privacy obligations may require additional safeguards pursuant to federal, state, or foreign statutes, regulations, or privacy obligations and will meet and confer to implement these safeguards if and when needed.

**P.     AMENDMENT**

57.     General. This Order may be amended with respect to (a) specific documents or items of Protected Information or (b) persons to whom Protected Information may be disclosed, by Court order. This Order shall remain in force and effect indefinitely until modified, superseded or terminated by order of this Court.

**Q.     DURATION AND TERMINATION**

58.     Duration. This Order shall continue in effect after final disposition of this Action and continue to be binding upon all persons to whom Protected Information is disclosed hereunder. Final disposition of this Action shall be deemed to be the later of (1) dismissal of all claims and defenses in this Action, with or without prejudice; and (2) final judgment herein after the completion and exhaustion of all appeals, rehearings, remands, trials, or reviews of this action, including the time limits for seeking relief from the Court or applications for extension of time

pursuant to applicable law.

59. Return or Destruction of Protected Information. Within ninety (90) days after final disposition, including all appeals, or such other time as the Designating Party may agree in writing, the Receiving Party shall use commercially reasonable efforts to either return or destroy all documents, objects and other materials produced as or designated as Protected Information, including all reproductions thereof, including but not limited to Protected Information given to experts, vendors, and in-house counsel. Counsel responsible for the destruction shall certify to counsel for the Designating Party that all such materials have been destroyed to the extent practicable.

60. Information Permitted to Be Retained. Notwithstanding the provision in the above paragraph, Protected Information that may exist on any backup, back-end, or archiving system, or in electronic files that are not reasonably accessible, and which cannot be reasonably deleted from such systems or files within ninety (90) days after the final determination of this Action, may be retained until such time as they are subject to routine deletion or destruction provided that confidentiality is maintained in accordance with this Order. Protected Information, including all hard and electronic copies, derivations and summaries thereof, may also be retained if it is subject to a legal duty or regulatory request to preserve, which is existing at the conclusion of this action, provided that such Protected Information may only be

retrieved, accessed, or used for this purpose and only while such duty to retain is continuing. Additionally, Outside Counsel of Record for each Party may retain (a) copies of pleadings, filings, transcripts, written discovery responses, expert reports and exhibits (but not documents/materials merely cited), affidavits, trial exhibits, and correspondence containing material designated Protected Information, and (b) documents, things, copies and samples to the extent they include or reflect receiving attorney's work product, including attorney email, so long as this Order will continue to govern any such retained materials.

**R.  DISCOVERY REGARDING MATERIALS CONTAINING POTENTIALLY PRIVILEGED INFORMATION**

61.  <u>General</u>.  The Parties agree that, in discovery in this case, they do not intend to disclose information subject to a claim of attorney-client privilege, attorney work product protection, physician-patient privilege, or any other applicable privilege or protection under law or regulation ("Privileged Information").  A Party may, however, at its sole discretion, elect to waive any or all such privileges for certain information and in doing so, shall notify the other party in writing that the provisions in this order will not apply to such information.

62.  <u>No Waiver</u>.  The production or disclosure of any Privileged Information, or the failure to object to the use of such Privileged Information within a reasonable time, shall not be deemed a waiver, impairment, or forfeiture in whole or in part of any claim of privilege or protection shielding the Privileged Information

and its subject matter from discovery regardless of the circumstances of the production or disclosure. The production or disclosure of any Privileged Information, or the failure to object to the use of such Privileged Information, whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding pursuant to Federal Rule of Evidence ("FRE") 502(d). This Order does not constitute a concession by any Party that any documents are subject to protection by the attorney-client privilege, the work product doctrine or any other potentially applicable privilege or doctrine. This agreement also is not intended to waive or limit in any way either party's right to contest any privilege claims that may be asserted with respect to any of the documents produced except to the extent stated in the agreement.

63. <u>Clawback</u>. The Designating Party must notify the Receiving Party within a reasonable time, in writing, upon discovery that Privileged Information has been produced or disclosed. To the extent the clawed back material is responsive to the opposing party's requests for production, the written notice must include a privilege log identifying the clawed back material, and including at least the date, author, addressee(s), and such other information as is reasonably necessary to identify the privileged or otherwise protected material so produced (the "Identified Materials"), as well as identifying the privilege and/or other immunity to which the Identified Materials are purportedly subject. Upon receiving written notice from the

Designating Party that privileged or otherwise protected material has been produced:

(a)   The Receiving Party shall not, from that point onward, copy, distribute, or otherwise use in any manner the Identified Materials, unless the parties agree, or the Court orders, otherwise;

(b)   The Receiving Party shall instruct all persons to whom the Receiving Party has disseminated the Identified Materials that such information is subject to this Order and may not be copied, distributed, or otherwise used; and

(c)   The Receiving Party and all persons notified as set out in the preceding subparagraph shall, within ten (10) calendar days:

i.   return, destroy, or delete all Identified Materials and all analyses, memoranda, or notes that were internally generated based upon the Identified Materials;

ii.   retrieve and return or destroy all copies of the Identified Materials in electronic format in databases or other locations used to store the documents; and

iii.   provide a certification of counsel that all Identified Materials have been returned, destroyed, or deleted.

(d)   For purposes of this Order, Identified Materials that are not reasonably accessible under Federal Rules of Civil Procedure 26(b)(2)(B) because they are stored by the Receiving Party on backup storage media are deemed to be

sequestered. Should such data be retrieved, the Receiving Party must promptly take steps to delete the restored Identified Materials.

64.     No Use of Identified Materials.  The Receiving Party may make no use of the Identified Materials during any aspect of this matter or any other matter, including in depositions or at trial, unless the documents are later designated by a court of competent jurisdiction as not privileged or protected.

65.     No Disclosure of Identified Materials.  The contents of the Identified Materials shall not be disclosed to anyone who was not already aware of the contents before the notice was made.  If the Receiving Party has any notes or other work product reflecting the contents of the Identified Materials, the Receiving Party will not review or use those materials unless a court of competent jurisdiction later designates the Identified Materials as not privileged or protected.

66.     Disputes.  If the Receiving Party contests the Designating Party's claim of privilege or other applicable protection, the parties will promptly meet and confer in an attempt to resolve the dispute.  If the parties are unable to resolve the dispute, the Receiving Party may seek relief from the Court to compel production of some or all of the Identified Materials:

      (a)     The basis for such relief may not be the fact or circumstances of the production or disclosure or any of the factors listed in Federal Rule of Evidence 502(b).

(b)     Any attempt to seek relief from the Court may not use in any manner the Identified Materials, which shall be returned, destroyed, or deleted upon notification of clawback, provided that nothing in this paragraph shall be construed to limit the use of any information regarding the Identified Materials contained in any privilege log provided in accordance with the terms of Paragraph 63 in seeking such relief.

(c)     The Designating Party retains the burden, upon the Receiving Party's challenge, of establishing the privileged or protected nature of the inadvertently produced material.

(d)     Pending resolution of the dispute, the Receiving Party may not use the contested information in any way.

67.     Ethical Responsibilities.     Nothing in this Order overrides any attorney's ethical responsibilities to refrain from examining or disclosing materials that the attorney knows or reasonably should know to be privileged and to inform the Designating Party that such materials have been produced.

68.     No Distribution of Privileged Information.  If any Receiving Party has reason to believe that it is in receipt of Privileged Information from a Designating Party, the Receiving Party shall not copy, distribute, or otherwise use such Privileged Information in any manner and shall provide prompt notice to the Designating Party to afford an opportunity to request return of the materials in the manner set forth

herein.

69.     Federal Rule of Evidence 502(b).  Federal Rule of Evidence 502(b) is
inapplicable to the Identified Materials, which shall receive the maximum protection
afforded by Federal Rule of Evidence 502(d).  Under Federal Rule of Evidence
502(d) and 28 U.S.C. § 1738, this Order shall be enforceable and granted full faith
and credit in all other state and federal proceedings.  Any subsequent conflict of law
analysis shall apply the law most protective of privilege and work product.

70.     Review.  By entering this Order, a party is not giving up its right to
review its documents for privilege or any other reason (including to identify non-
responsive documents) and the existence of this Order cannot be used to compel a
party to produce documents without review.

**S.     INADVERTENT DISCLOSURE**

71.     Disclosure of Privileged Information.     Disclosure of Protected
Information that is subject to a claim of privilege is governed by the Section S of
this Order.

72.     Unauthorized Disclosure.     If a Receiving Party learns that, by
inadvertence or otherwise, it has disclosed the Protected Information to any person
or in any circumstance not authorized under this Order, the Receiving Party must, as
soon as is practicable:

(a)     Notify the Designating Party in writing of the unauthorized

disclosure;

(b)     Use its best efforts to retrieve all copies of the Protected Information; and,

(c)     Inform the person or persons to whom unauthorized disclosures were made, to the extent the person or persons are identifiable, of all the terms of this Order and have the person or persons execute the form attached hereto as Exhibit A.

## T.     CORRECTION OF FAILURE TO DESIGNATE

73.     <u>General</u>.     Disclosure of Protected Information by the Designating Party without designating it as Protected Information as provided in this Order shall not be deemed a waiver in whole or in part of the Designating Party's claim of confidentiality, either as to the specific Protected Information or as to the same or related subject matter.  No Party shall be deemed to have violated this Order if, prior to notification of any later designation, such material has been disclosed or used in a manner inconsistent with the later designation.

74.     <u>Designation</u>. Following any such production to a Party in this Action, the Designating Party may, upon written notice to each Receiving Party, as soon as is practicable after the discovery of the unintentional disclosure, designate the document, thing, other discovery information, response or testimony as Protected Information in accordance with the provisions of this Order.

75.    Correction of Designations. Upon receipt of the notice of such failure to designate, each Receiving Party shall reasonably cooperate to correct any disclosure to maintain the confidentiality of the previously undesignated information, without prejudice, and shall treat the identified material as Protected Information until (i) the Parties agree to its non-protected treatment, or (ii) the Court determines its appropriate treatment.

76.    Return or Destruction. Within ten (10) days of receiving the notice, and assuming no relief is sought from the Court as provided for in Section K the Receiving Party shall return or destroy all copies of the unmarked or incorrectly marked documents, things, information, responses, or testimony; except that the Receiving Party shall not be obligated to destroy any mis-designated material that has become part of the record of this Action or of a deposition taken pursuant to this Action. If relief is sought from the Court pursuant to Section K governing challenges to designations, and the Court ultimately deems the identified material to be Protected Information under this Order, then the Receiving Party shall have (10) days after entry of an order to take the actions identified in this subsection.

77.    Reproduction. As soon as is practicable, the Designating Party shall re-produce the identified material with the proper designation.

**U.    DEMANDS FOR PRODUCTION OF PROTECTED INFORMATION IN OTHER ACTIONS.**

78.    General. In the event that a Designating Party's Protected Information

44

is sought by any person not a Party to this Action, by subpoena in another action, service of process, or pursuant to a court order, the Receiving Party from whom the information is sought shall:

(a)    give prompt written notice (here, meaning within no more than two (2) business days of receipt of the request) to the Designating Party who produced Protected Information hereunder. Such notification must include a copy of the subpoena or court order; and

(b)    Give prompt written notice to the party who caused the subpoena or order to issue that some or all of the material covered by the subpoena or order is subject to this Protective Order.

(c)    After receipt of the notice specified by this paragraph, the Designating Party seeking to maintain the confidentiality of any information shall have the sole responsibility for obtaining any order it believes necessary to prevent disclosure of the information that have been subpoenaed or requested.

i.    If the Designating Party does not seek relief from the Court for a protective order within the time allowed for production by the subpoena or request (or within such times as a court may direct or as may be agreed upon with the subpoenaing/requesting party) and give written notice of such relief sought to the subpoenaed party, the subpoenaed party may commence production in response to the subpoena or request.

45

(d)     The subpoenaed party will not produce any of the material designated "CONFIDENTIAL," "HIGHLY CONFIDENTIAL," or "HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY" while a party seeks relief from the Court for a protective order brought by the Designating Party pursuant to this paragraph is pending, or while an appeal from or request for appellate review of such relief is pending unless a court orders production of materials that are subject to this Order, then production of such materials pursuant to that Court Order shall not be deemed a violation of this Order.

(e)     Nothing herein shall require anyone covered by this Order to contest a subpoena or other legal process, or to appeal any order requiring production of Protected Information, or to subject itself to penalties for non-compliance with any legal process or order, provided the Receiving Party has notified the Designating Party that Protected Information has been subpoenaed or otherwise requested. However, the Receiving Party receiving a subpoena or other legal process, shall not object to the intervention by the Designating Party in the action seeking its Protected Information and will reasonably cooperate with the disclosing party so that it may be heard on the matter

## V.     MISCELLANEOUS

79.     <u>Additional Relief</u>. Nothing herein shall prevent any Party or non-party from seeking additional relief from the Court not specified in this Order, or from

applying to the Court for further or additional Orders.

80.     <u>Use or Disclosure of a Party's Own Protected Information</u>. Nothing contained in this Order shall be construed to restrain a Party or non-party from using or disclosing its own Protected Information as it deems appropriate. Such use and disclosures shall not affect any confidential designation made pursuant to the terms of this Order.

81.     <u>No Required Production</u>. Nothing contained in this Order shall be construed to require production of any Protected Information deemed by counsel for the Party or non-party possessing such material to be privileged or otherwise immune from discovery. This shall not preclude any Party from moving the Court for an order compelling production or disclosure of such material.

82.     <u>Notice Requirements</u>. All notices required by any paragraphs of this Order are to be made by e-mail to Outside Counsel of Record representing the noticed Party. The date by which a Party receiving notice shall respond or otherwise take action shall be computed from the date of receipt of the notice. For any notice required under this Order, notice received after the close of business (6:00 p.m. Eastern time) shall be deemed received on the following business day.

83.     <u>Advice of Counsel</u>. Nothing in this Order shall bar or otherwise restrict counsel from rendering advice to his or her client with respect to this Action and, in the course thereof, relying in a general way upon his or her examination of Protected

Information produced or exchanged in this Action; provided, however, that in rendering such advice and in otherwise communicating with a person not entitled to view any Protected Information, the attorney shall not disclose the contents of Protected Information produced by any other Party or non-party.

84.     Use at Trial. Subject to the restrictions in Section G, above, nothing in this Order shall be deemed to prevent the Parties from introducing any Protected Information into evidence at the trial of this Action, or from using any Protected Information at the trial of this Action, subject to any pretrial order issued by this Court.

85.     Alternative Dispute Resolution. Nothing in this Order shall be deemed to preclude the Parties from agreeing to disclose or exchange material for purposes of Alternative Dispute Resolution ("ADR") that might otherwise be covered by this Order.

86.     Privilege Log. No Party shall be required to identify on its respective privilege log any document or communication dated on or after the filing of the lawsuit, which, absent this provision, the Party would have been obligated to so identify on said privilege log. The Parties shall exchange their respective privilege logs within thirty (30) days of the date for substantial completion of document production as set forth in any Scheduling Order or as otherwise modified by Court order.

87.     The headings herein are provided only for the convenience of the parties, and are not intended to define or limit the scope of the express terms of this Order.

88.     This Order is entered without prejudice to the right of any Party to seek relief from the Court at any time to: (i) modify this Order to allow disclosure of Protected Information to additional persons or entities if reasonably necessary to prepare and present this Action; and (ii) to apply for additional protection of Protected Information.  Furthermore, without application to this Court, any Party that is a beneficiary of the protections of this Order may enter a written agreement releasing any other Party hereto from one or more requirements of this Order even if the conduct subject to the release would otherwise violate the terms herein.

89.     The United States District Court for the District of Delaware is responsible for the interpretation and enforcement of this Order.  After termination of this Action, the provisions of this Order shall continue to be binding except with respect to those documents and information that become a matter of public record. This Court retains and shall have continuing jurisdiction over the Parties and recipients of Protected Information for enforcement of the provision of this Order following termination of this Action.  All disputes concerning Protected Information produced under the protection of this Order shall be resolved by the United States District Court for the District of Delaware.

90.     Each of the Parties agrees to be bound by the terms of this Protective

Order as of the date Counsel of Record for such Party executes this Protective Order,

even if prior to entry of this Order by the Court.

91.     Any Party knowing or believing that any other Party is in violation of

or intends to violate this Order and has raised the question of violation or potential

violation with the opposing Party and has been unable to resolve the matter by

agreement may move the Court for such relief as may be appropriate in the

circumstances.  Pending disposition of the relief sought from the Court, the Party

alleged to be in violation of or intending to violate this Order shall discontinue the

performance of and/or shall not undertake the further performance of any action

alleged to constitute a violation of this Order.

92.     Every individual who reviews Protected Information acknowledges

that a breach of this Order may result in immediate and irreparable injury for which

there is no adequate remedy at law.  A Party may immediately apply to obtain

temporary, preliminary, and permanent injunctive relief against a violation or

threatened violation of this Order.

93.     The Default Standard for Discovery governs discovery of

Electronically Stored Information ("ESI") in this case.

Dated: December 20, 2024

Respectfully submitted,

*/s/ Christine D. Haynes*
Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com

OF COUNSEL:

Omar A. Khan
Jeffrey Dennhardt
Lauren E. Matlock-Colangelo
Wilmer Cutler Pickering Hale and
Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

Asher S. McGuffin
Wilmer Cutler Pickering Hale and
Dorr LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Attorneys for Plaintiff Beckman*
*Coulter, Inc.*

*/s/ Jeremy Tigan*
Karen Jacobs (#2881)
Jeremy Tigan (#5239)
Cameron Clark (#6647)
Morris, Nichols, Arsht & Tunnel LLP
1201 N Market St. # 1600
Wilmington, DE 19801
(302) 658-9200
KJacobs@morrisnichols.com
JTigan@morrisnichols.com
cclark@morrisnichols.com

OF COUNSEL:

Betsy Flanagan (#5891)
Cooley LLP
30 S. 9th Street
7th Floor
Minneapolis, MN 55402
(312) 881-6383
bflanagan@cooley.com

Adam Pivovar
Rozzi D. Upton
Dustin M. Knight
David Yun
Cooley LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004-2400
(202) 842-7800
apivovar@cooley.com
rupton@cooley.com
dknight@cooley.com
dyun@cooley.com

Reuben Chen
Cooley LLP
3175 Hanover St.
Palo Alto, CA 94304
(650) 843-5000
rchen@cooley.com

*Attorneys for Defendant Cytek*
*Biosciences, Inc.*

**SO ORDERED this day** 23rd **of December 2024.**

The Honorable Colm F. Connolly
United States District Court Judge

**EXHIBIT A TO THE AGREED PROTECTIVE ORDER**
**CONFIDENTIAL AGREEMENT**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

BECKMAN COULTER, INC.,

      Plaintiff,

  v.

CYTEK BIOSCIENCES, INC.,

      Defendant.

C.A. No. 24-0945-CFC

**DEMAND FOR JURY TRIAL**

**ACKNOWLEDGEMENT OF STIPULATED PROTECTIVE ORDER**

1.    My name is

_____

_____.

2.    I reside at

_____

_____.

3.    My current employer is

_____

_____.

4.    My current occupation or job description is

_____

_____.

5.     I have read the Agreed Protective Order dated _____,

2024, and have been engaged as

_____ on behalf of

_____ in the preparation and conduct of litigation styled

*Beckman Coulter, Inc. v. Cytek Biosciences, Inc.*, C.A. No. 24-cv-00945-CFC (D.

Del.).

6.     I am fully familiar with and agree to comply with and be bound by the

provisions of said Order.  I understand that I am to retain all copies of any

documents designated as CONFIDENTIAL, HIGHLY CONFIDENTIAL, or

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY, or any

similar designation, in a secure manner, and that all copies are to remain in my

personal custody until I have completed my assigned duties, whereupon the copies

and any writings prepared by me containing any information designated

CONFIDENTIAL, HIGHLY CONFIDENTIAL, or HIGHLY CONFIDENTIAL –

OUTSIDE ATTORNEYS' EYES ONLY, or any similar designation, are to be

returned to counsel who provided me with such material.

7.     I will not divulge to persons other than those specifically authorized

by said Order, and will not copy or use except solely for the purpose of the above-

captioned action, any information obtained pursuant to said Order, except as

provided in said Order.  I also agree to notify any stenographic or clerical

personnel who are required to assist me of the terms of said Order.

8.     In accordance with Paragraph 38 of the Agreed Protective Order (if applicable), I have attached my resume, curriculum vitae, or other information to this executed Confidentiality Agreement sufficient to identify: my current employer and job title; any company or companies by which I was employed during the past ten (10) years; a list of all consulting agreements, arrangements, or professional services that I entered into or provided during the past five (5) years; a list identifying any litigation in connection with which I have offered expert testimony during the past five (5) years; a statement disclosing whether I have been found to have violated the terms of a protective order in any litigation or legal proceeding; and any patents or published patent applications in which I am identified as an inventor or applicant.

9.     With respect for Paragraph 34(b) (if applicable), I hereby certify that I am not a competitive decision maker for my employer(s), and I do not reasonably foresee my future primary job duties and responsibilities including any competitive decision-making.  If my job duties or responsibilities change prior to final disposition of this litigation, I will determine whether any new duties or responsibilities include competitive decision-making, and if they do, I will promptly notify both parties of my new competitive decision-making responsibilities.

10.    I hereby submit to the jurisdiction of the United States District Court

for the District of Delaware for the purpose of enforcement of the Order in the

above-captioned action.

11.    I state under penalty of perjury under the laws of the United States of

America that the foregoing is true and correct.

By: _____

Executed on _____, 20___.

# Attachment 3

