**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BECKMAN COULTER, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CYTEK BIOSCIENCES, INC.,<br><br>Defendant. | C.A. No. 24-0945-CFC-EGT<br><br>[redacted] |

**PLAINTIFF BECKMAN COULTER, INC.'S OPENING BRIEF**
**IN SUPPORT OF ITS MOTIONS FOR SUMMARY JUDGMENT**


OF COUNSEL:

Omar A. Khan
Jeffrey A. Dennhardt
Laura Macro
Lauren Matlock-Colangelo
Jennifer L. Graber
Maggie Sawin
Kelly A. Todd
WILMER CUTLER PICKERING
HALE and DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

Akkad Y. Moussa
WILMER CUTLER PICKERING
HALE and DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037

Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER,
P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff*

[redacted]

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....... 1

II. NATURE AND STAGE OF PROCEEDINGS ....... 2

III. SUMMARY OF ARGUMENT ....... 3

IV. STATEMENT OF FACTS ....... 4

A. REVERSE DOCTRINE OF EQUIVALENTS ....... 4

B. CYTEK'S FAILURE TO MARK DEFENSE ....... 4

C. DXP ....... 5

V. LEGAL STANDARDS ....... 5

VI. ARGUMENT ....... 6

A. MOTION #1: CYTEK'S "REVERSE DOCTRINE OF EQUIVALENTS" DEFENSE SHOULD BE DISMISSED ....... 6

B. MOTION #2: THERE IS NO DISPUTE THAT BECKMAN SATISFIED THE MARKING REQUIREMENT OF § 287 ....... 12

C. MOTION #3: DXP CANNOT ANTICIPATE CLAIMS 11 AND 15 OF THE '443 PATENT ....... 15

VII. CONCLUSION ....... 18

[redacted]

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*,
6 F.3d 1523 (Fed. Cir. 1993) ....................12

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
314 F.3d 1313 (Fed. Cir. 2003) ....................9

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....................5, 6

*Arizona v. California*,
373 U.S. 546 (1963)....................8

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)....................5

*Ciena Corp. v. Corvis Corp.*,
334 F. Supp. 2d 598 (D. Del. 2004) ....................12

*City of Milwaukee v. Illinois*,
451 U.S. 304 (1981)....................7

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
567 F.3d 1314 (Fed. Cir. 2009) ....................9

*Diversitech Corp. v. Century Steps, Inc.*,
850 F.2d 675 (Fed. Cir. 1988) ....................17

*Generac Power Sys., Inc. v. Kohler Co.*,
2012 WL 6562153 (E.D. Wis. Nov. 29, 2012) ....................17

*Intel Corp. v. U.S.I.T.C.*,
946 F.2d 821 (Fed. Cir. 1991) ....................9

*IPA Techs. Inc. v. Microsoft Corp.*,
2024 WL 1797394 (D. Del. Apr. 25, 2024) ....................15

*Jutrowski v. Twp. of Riverdale*,
904 F.3d 280 (3d Cir. 2018) ....................6

[redacted]

*JVW Enters., Inc. v. Interact Accessories, Inc.*,
424 F.3d 1324 (Fed. Cir. 2005) ....................................................12

*Minn. Mining & Mfg. Co. v. Chemque, Inc.*,
303 F.3d 1294 (Fed. Cir. 2002) ....................................................15

*Mobil Oil Corp. v. Higginbotham*,
436 U.S. 618 (1978)....................................................................7

*Odetics, Inc. v. Storage Tech. Corp.*,
1997 WL 357598 (Fed. Cir. June 25, 1997).......................................9

*Old Reliable Wholesale, Inc. v. Cornell Corp.*,
635 F.3d 539 (Fed. Cir. 2011) ......................................................15

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ................................................10, 11

*Roche Palo Alto LLC v. Apotex, Inc.*,
531 F.3d 1372 (Fed. Cir. 2008) .............................................9, 10, 11

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
242 F.3d 1337 (Fed. Cir. 2001) ....................................................10

*Sovereign Bank v. BJ's Wholesale Club, Inc.*,
533 F.3d 162 (3d Cir. 2008) ........................................................13

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
930 F.3d 1295 (Fed. Cir. 2019) ....................................................16

*Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*,
127 F.4th 348 (Fed. Cir. 2025) ................................................7, 8, 9

*Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*,
726 F.2d 724 (Fed. Cir. 1984) ..................................................15, 17

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*,
279 F.3d 1357 (Fed. Cir. 2002) ...................................................8, 9

*Therasense, Inc. v. Becton, Dickinson & Co.*,
593 F.3d 1325 (Fed. Cir. 2010) ....................................................17

[redacted]

*U.S. Steel Corp. v. Philips Petroleum Co.*,
865 F.2d 1247 (Fed. Cir. 1989) ....................................................................9

**STATUTES, RULES, AND REGULATIONS**

35 U.S.C. § 102 ..........................................................................................17

35 U.S.C. § 112 ............................................................................................8

35 U.S.C. § 271 ........................................................................................4, 7

35 U.S.C. § 271(a) ....................................................................................4, 7

35 U.S.C. § 287 ......................................................................................2, 12

35 U.S.C. § 287(a) ......................................................................................12

35 U.S.C. § 292 ..........................................................................................14

Fed. R. Civ. P. 56(a)......................................................................................5

Fed. R. Civ. P. 56(e)......................................................................................6

Patent Act of 1952.........................................................1, 3, 4, 6, 7, 8, 9

[redacted]

## I. INTRODUCTION

This is a direct competitor case in which Beckman Coulter, Inc. ("Beckman") seeks to protect ground-breaking, patented technology practiced by its flagship product, CytoFLEX. CytoFLEX was marketed as the first commercially available instrument of its kind to utilize small area Avalanche Photodiodes ("APDs"), which the asserted patents expressly describe as being enabled by the inventive wavelength division multiplexer (WDM) architectures of the patents. Unable to muster any real non-infringement positions, given the accused products unmistakably practice Beckman's patents, Cytek Biosciences, Inc. ("Cytek") attempts to evade accountability for its widespread infringement by proffering excuses that are both legally flawed and unsupported by the record evidence.

***First***, Cytek argues that its infringement of Beckman's patents should be excused based upon a common law equitable doctrine called the "reverse doctrine of equivalents." But Congress abrogated this common law doctrine with the passage of the Patent Act of 1952, as the Federal Circuit has tacitly acknowledged, and Cytek's attempts to use this doctrine to import requirements the claims themselves do not recite commits what the Federal Circuit has called the "cardinal sin" of patent law. Because Cytek's excuse is contrary to clear Federal Circuit law, summary judgment should be granted against this unlawful defense.

[redacted]

***Second***, Cytek pled that that the substantial damages it owes to Beckman should be limited because Beckman supposedly failed to mark its CytoFLEX® products in accordance with 35 U.S.C. § 287. But this defense fails as a matter of law because, as Cytek repeated admitted during discovery, Beckman ***did*** mark its CytoFLEX® products with the asserted patents since at least October 17, 2021—admissions confirmed by undisputed documents and testimony.

***Third***, Cytek argues that claims 11 and 15 of U.S. Patent No. 11,703,443 (the "'443 patent") are supposedly anticipated by a product of its predecessor called the Digital Extra Parameter System ("DxP"). But Cytek has failed to produce clear and convincing evidence to prove exactly what was (and was not) inside that DxP box during the prior art period. Cytek admits that this box ***lacked*** the "flow cytometer" and "flow cell" requirements expressly recited by Beckman's patent claims. And Cytek presented no evidence—much less clear and convincing evidence—showing that DxP was ever publicly used in or actually sold with a "flow cytometer" or "flow cell" as claimed. Summary judgment that DxP does not anticipate claims 11 and 15 of the '443 patent is thus warranted as a matter of law.

## II. NATURE AND STAGE OF PROCEEDINGS

Beckman brought this action against Cytek in August 2024 asserting both the '443 patent and U.S. Patent No. 10,330,582 (the "'582 patent"). D.I. 1, Complaint. On January 9, 2025, Beckman amended its complaint to allege

[redacted]

additional infringement of U.S. Patent No. 12,174,107 (the "'107 patent"). D.I. 42. Discovery is complete, and trial is scheduled for August 17, 2026. D.I. 198, Scheduling Order.

## III. SUMMARY OF ARGUMENT

Beckman seeks summary judgment against Cytek on three issues:

***1. Cytek Misapplies an Abrogated Doctrine.*** Cytek argues that its infringement of Beckman's asserted claims should be excused under a common law equitable defense called "reverse doctrine of equivalents," which Congress abrogated with the passage of the Patent Act of 1952 and which Cytek uses to attempt to import features from example embodiments in the specification as though they were claim requirements. SOF#1 ¶¶1-5. Summary judgment against this unlawful defense should be granted.

***2. Beckman Marked Its Products.*** Cytek admits that Beckman marked its products; a fact corroborated by the evidence Beckman produced in discovery. SOF#2 ¶¶1-3. Summary judgment against Cytek's "failure to mark" defense is warranted.

***3. Cytek Failed To Prove DxP Anticipates By Clear And Convincing Evidence.*** It is undisputed that DxP lacks at least the "flow cytometer" and "flow cell including a flow channel" requirements recited by asserted claims 11 and 15 of the '443 patent. SOF#3 ¶¶5-7. Cytek has failed to produce clear and convincing

[redacted]

evidence demonstrating that DxP was ever publicly used in or sold with a flow cytometer or flow cell. SOF#3 ¶¶6-7. Cytek's anticipation theories based on DxP thus fail as a matter of law.

## IV. STATEMENT OF FACTS

### A. REVERSE DOCTRINE OF EQUIVALENTS

The Patent Act of 1952 defined "infringement of a patent" at 35 U.S.C. § 271: "***Except as otherwise provided in this title***, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). Nowhere in Title 35 did Congress provide for a so-called "reverse doctrine of equivalents" defense to patent infringement. Title 35, *passim*.

Cytek nevertheless purports to offer opinions from its technical expert, Dr. Ilkov, arguing that Cytek's infringement of the asserted claims of the Beckman's patents should be excused under a common law "reverse doctrine of equivalents" analysis. Ex.13, Ilkov Rebuttal Report ¶¶288-320; SOF#1 ¶¶1-2.

### B. CYTEK'S FAILURE TO MARK DEFENSE

Cytek's counterclaim for false marking admitted that "Beckman Coulter virtually marks the CytoFLEX® products as an alleged embodiment of the invention(s) claimed in the Asserted Patents." SOF#2 ¶¶1-2. Beckman's evidence

[redacted]

confirms that Beckman marked. SOF#2 ¶3. Cytek has produced no evidence of Beckman's alleged "failure to mark" in this litigation, and none of Cytek's five experts have an opinion on marking. SOF#2 ¶¶4-8.

### C. DXP

Cytek asserts that DxP anticipates claims of the '443 patent that require a "flow cytometer" or "flow cell." According to Dr. Ilkov, DxP itself does not contain a flow cytometer or flow cell. SOF#3 ¶2. Dr. Ilkov's opinions require DxP in combination with a different device—"FACSCalibur"—yet fail to present clear and convincing evidence that the DxP was ever publicly used in or sold with the BD FACSCalibur. SOF#2 ¶¶7-8.

## V. LEGAL STANDARDS

Summary judgment is appropriately granted when there are no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material only when it "might affect the outcome of the suit under the governing law," and a genuine issue exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). While the court must view the facts in the light most favorable to the nonmoving party, that party "may not rest upon the mere allegations or denials of his pleading, but … must set forth specific facts

[redacted]

showing that there is a genuine issue for trial." *Id.* (quoting Fed. R. Civ. P. 56(e)); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288-89 (3d Cir. 2018).

## VI. ARGUMENT

### A. MOTION #1: CYTEK'S "REVERSE DOCTRINE OF EQUIVALENTS" DEFENSE SHOULD BE DISMISSED

Cytek apparently intends to call Dr. Ilkov to testify at trial that its accused products do not infringe the asserted claims of Beckman's patents under a so-called "reverse doctrine of equivalents" analysis. Ex.13, Ilkov Rebuttal Report ¶¶288-320; SOF#1 ¶¶1-2. This claim should be dismissed for two reasons.

***First***, as the Federal Circuit has recognized, reverse doctrine of equivalents was abrogated as a legal theory by the Patent Act of 1952. As a result, there is no such common law equitable doctrine today. The jury will not be assisted in deciding the question of infringement by spending trial time on an unsound theory that has no basis in current patent law.

***Second***, even if the 1952 Patent Act had not abrogated this doctrine (which it did), Dr. Ilkov fails to faithfully apply the doctrine to the facts and evidence in this case. Rather than identifying the core inventive "principle" recited in the claims themselves, as this doctrine required, Dr. Ilkov treats the doctrine as a free pass to import supposed "requirements" that the claims neither recite nor require. SOF#1 ¶¶2-5. The Federal Circuit has squarely rejected such attempts as flawed and unreliable.

[redacted]

Cytek's reverse doctrine of equivalents defense thus fails as a matter of law.

### 1. The 1952 Patent Act Abrogated the "Reverse Doctrine of Equivalents"

In *Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, 127 F.4th 348 (Fed. Cir. 2025), the Federal Circuit found "compelling" the argument that the seldom invoked and long-disfavored common law "reverse doctrine of equivalents" had been abrogated by Congress in the Patent Act of 1952. Specifically, the Patent Act defines "infringement of a patent" at 35 U.S.C. § 271. Section 271(a) states: "***Except as otherwise provided in this title***, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." *Id.* There is no "reverse doctrine of equivalents"—which historically operated as an equitable escape hatch from literal infringement—codified anywhere in Title 35.

By defining infringement and limiting exceptions to those "otherwise provided in this title," Congress foreclosed extra-textual common law carveouts such as the "reverse doctrine of equivalents" as a defense to patent infringement. *See Steuben Foods*, 127 F.4th at 357 ("We find Steuben's arguments compelling"); *see also City of Milwaukee v. Illinois*, 451 U.S. 304, 315 (1981) ("Our commitment to the separation of powers is too fundamental to continue to rely on federal common law … when Congress has addressed the problem."); *Mobil Oil Corp. v.*

[redacted]

*Higginbotham*, 436 U.S. 618, 625-26 (1978) ("In the area covered by the statute, it would be no more appropriate to prescribe a different measure of damages than to prescribe a different statute of limitations, or a different class of beneficiaries…. [W]e have no authority to substitute our views for those expressed by Congress in a duly enacted statute.").

This conclusion is confirmed by 35 U.S.C. § 112, which demonstrates that Congress's abrogation of the "reverse doctrine of equivalents" was intentional. If the plain language of an asserted patent claim is broad enough to capture an accused device within its literal scope, but the alleged infringer believes that this reach of the claim exceeds the proper grasp of what the inventor actually invented, the appropriate recourse since the enactment of the 1952 Patent Act is to challenge to the validity of that claim under § 112—***not*** argue a non-infringement theory under the "reverse doctrine of equivalents." As the Federal Circuit observed, "when Congress enacted 35 U.S.C. § 112, after the decision in *Graver Tank*, it imposed requirements for the written description, enablement, definiteness, and means-plus-function claims that are co-extensive with the broadest possible reach of the reverse doctrine of equivalents." *Steuben Foods*, 127 F.4th at 357 (quoting *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1368 (Fed. Cir. 2002)). When Congress enacted § 112, in other words, it intentionally displaced the earlier common law equitable doctrine. *Arizona v. California*, 373

[redacted]

U.S. 546, 565-66 (1963) ("Where Congress has so exercised its constitutional power …, courts have no power to substitute their own notions of an 'equitable apportionment' for the apportionment chosen by Congress.").

Because Cytek's defense is based upon a common law equitable theory that Congress abrogated with the 1952 Patent Act, it should be dismissed.

### 2. Cytek's Application of the Doctrine Is Legally Flawed

Even if "reverse doctrine of equivalents" was still good law (and it is not), Dr. Ilkov's analysis is also legally flawed. Indeed, as the Federal Circuit has observed, "[w]e have ***never*** affirmed a decision finding noninfringement based on the reverse doctrine of equivalents." *Steuben Foods*, 127 F.4th at 357 (citing *Tate*, 279 F.3d at 1368; *U.S. Steel Corp. v. Philips Petroleum Co.*, 865 F.2d 1247, 1253 (Fed. Cir. 1989); *Intel Corp. v. U.S.I.T.C.*, 946 F.2d 821, 842 (Fed. Cir. 1991); *Odetics, Inc. v. Storage Tech. Corp.*, 1997 WL 357598, at *6 (Fed. Cir. June 25, 1997); *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1351 (Fed. Cir. 2003); *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1378 (Fed. Cir. 2008); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1339 (Fed. Cir. 2009)).

To state a prima facie case for non-infringement under the "reverse doctrine of equivalents," Dr. Ilkov was required to identify the core inventive "principle" or "equitable scope" of the asserted claims based upon requirements that the claims

[redacted]

actually recite, as they would be understood by a skilled artisan in light of the patent's specification and prosecution history. *See Roche Palo Alto*, 531 F.3d at 1378. Dr. Ilkov may ***not*** use the doctrine as a pretext to attempt to import new requirements into the claims, thereby confusing the jury and attempting to manufacture an otherwise unavailable non-infringement position. *Id.* at 1378-79 (rejecting expert's attempt to define the "principle" of the asserted claims as "use of $O_{40}$ in an amount sufficient to cause the formation of micelles" where "there is no mention of 'micelle' in the claims, specification, or prosecution history"). Yet that "cardinal sin of patent law" is exactly what Dr. Ilkov commits here. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1320 (Fed. Cir. 2005) (describing "reading a limitation from the written description into the claims" as "one of the cardinal sins of patent law" (quoting *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001))).

For example, citing a feature of an embodiment that the asserted patents' shared specification expressly describes as non-limiting, Dr. Ilkov argues that "a POSA would have understood the inventor to have ***disclosed a requirement*** of using an initially collimated beam within the wavelength division (de)multiplexer invention." Ex.13, Ilkov Rebuttal Report ¶293 (emphasis added) (citing Ex.25, '582 patent, Fig. 25, 4:34-38, 21:40-45, 44:58-61); SOF#1 ¶2. This commits the same error rejected in *Roche Palo Alto* and excoriated in *Phillips*, however,



RLF1 35513396v.3

[redacted]

because the asserted ***claims*** recite no such "initially collimated beam" requirement. *Roche Palo Alto*, 531 F.3d at 1378-79 (rejecting attempt to import a "micelle" requirement); *Phillips*, 415 F.3d at 1320; SOF#1 ¶¶3-5. As Dr. Ilkov notes, "the Asserted Claims of the '443 and '107 Patents" recite the "term 'light' rather than a 'collimated beam.'" Ex.13, Ilkov Rebuttal Report ¶292; SOF#1 ¶¶3-5.

Moreover, the Asserted Patents' shared specification expressly and repeatedly confirms that its Figure 25 embodiment—the disclosure upon which Dr. Ilkov's argument rests—is merely "an ***exemplary*** 6 port wavelength division multiplexer ("WDM")," ***not*** a requirement of the claimed invention. Ex.25, '582 patent, 25:64-67; *see also id.* 44:35-37 ("Fig. 25 shows the optical ray trace for an ***exemplary*** 6 port wavelength division multiplexer"). Indeed, the very same passage Dr. Ilkov cites at column 4 of the patent could not be more clear that it is merely describing what an "***exemplary*** embodiment [of] a wavelength division multiplexer ('WDM') ***may*** include"—not a claim requirement. *Id.* 4:34-38; SOF#1 ¶5. This same "cardinal sin" pervades Dr. Ilkov's "reverse doctrine" analysis for each of the patents. *See* Ex.13, Ilkov Rebuttal Report ¶¶308-320; SOF#1 ¶2.

Because Dr. Ilkov's analysis of the alleged "principles" of the Asserted Patents' claimed inventions is legally flawed, including because he has used the doctrine as a pretext for importing unrecited requirements, it cannot support

[redacted]

Cytek's defense as a matter of law. *Ciena Corp. v. Corvis Corp.*, 334 F. Supp. 2d 598, 605 (D. Del. 2004) (rejecting proposed "formulation of the principle of the claimed invention is an impermissible attempt to limit the claimed invention to the preferred embodiments disclosed in the patents"); *JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005) ("We do not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment.").

Accordingly, summary judgment against Cytek's reverse doctrine of equivalents defense should be granted.

### B. MOTION #2: THERE IS NO DISPUTE THAT BECKMAN SATISFIED THE MARKING REQUIREMENT OF § 287

A patent owner who marks "its products in compliance with 35 U.S.C. § 287(a)" thereby gives "notice to the public that" the products in question are "patented," and is "entitled to damages from the time when it either began marking" or gave actual notice of infringement to an infringer, "whichever was earlier." *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1535-37 (Fed. Cir. 1993); 35 U.S.C. § 287(a). There is no dispute that Beckman marked its CytoFLEX products with the Asserted Patents—a fact Cytek admits. SOF#2 ¶¶1-2. As a result, Beckman's damages commence when its admitted marking began.

[redacted]

Cytek admits that "Beckman Coulter's website virtually marks the CytoFLEX® products as a commercial embodiment of the '443 [and] '582" patents. Ex.6, D.I. 48, Counterclaim, ¶15; SOF#2 ¶1. It admits that Beckman "marked the CytoFLEX® products with the '582 patent since at least October 17, 2021" and that Beckman began "marking the CytoFLEX® products with the '443 patent somewhere between February 19, 2024 and September 9, 2024." Ex.6, D.I. 48, Counterclaim, ¶30; *see also id.* ¶¶10, 27, 29; SOF#2 ¶1. Moreover, Cytek cites as proof of these facts a Beckman website that also marks CytoFLEX® with the '107 patent. *Id.* ¶15 (reproducing a screenshot from https://www.beckman.com/patents); SOF#2 ¶2. Factual allegations made in a party's pleadings are admissions. *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 181 (3d Cir. 2008). And these admitted facts are likewise corroborated by the evidence Beckman produced in discovery. *See* BEC's First Supplemental Response to Cytek's Interrogatory No. 9 (citing supporting documents); SOF#2 ¶3.

Although Cytek raised "failure to mark" in its answer (Ex.6, D.I. Although Cytek raised "failure to mark" in its answer (Ex.6, D.I. 48, Answer ¶5), it has adduced no evidence in support of this defense during discovery. SOF#2 ¶10. None of Cytek's five experts, for example, offered any opinion disputing Beckman's marking. SOF#2 ¶¶4-8. Cytek's damages expert, Mr. Hansen,

[redacted]

confirmed he had not offered opinions on whether Beckman marked the CytoFLEX products with the asserted patents. Ex.3, Hansen Tr. 155:13-16; SOF#2 ¶4. When asked about marking, Cytek's technical expert, Dr. Leary, testified: "I don't even know what that means." Ex.7, Leary Tr. 76:5-9; SOF#2 ¶5. Similarly, Dr. Weigl confirmed he has "no opinion on any issues related to marking in the case" (Ex.22, Weigl Tr. 255:10-19), and Dr. Ilkov testified "I'm not offering any" opinions on whether Beckman "mark[ed] any Beckman Coulter patents on Beckman Coulter products." Ex.10, Ilkov Tr. 143:21-144:1; *see also* Ex.9, Kono Tr. 97:11-18; SOF#2 ¶¶6-8.

In Cytek's written discovery responses, rather than attempt to demonstrate the "failure to mark" defense stated in its answer, Cytek instead contend that CytoFLEX products are "falsely marked with the Asserted Patents." *See* Ex.11, Cytek's Tenth Interrogatory Responses, 76-77 (in responding to interrogatory on failure to mark, "Cytek incorporates by reference its response to Interrogatory No. 15 [false marking]"); SOF#2 ¶9. But by asserting false marking under 35 U.S.C. § 292, Cytek necessarily ***confirmed*** that Beckman's CytoFLEX products were "marked with the Asserted Patents." *Id.* Indeed, marking is the very first element of a "false" marking claim. *Id.*

[redacted]

Because Cytek admits Beckman's marking, and has offered no contrary evidence, summary judgment on marking is warranted as a matter of law. *See IPA Techs. Inc. v. Microsoft Corp.*, 2024 WL 1797394, at *11 (D. Del. Apr. 25, 2024).

### C. MOTION #3: DXP CANNOT ANTICIPATE CLAIMS 11 AND 15 OF THE '443 PATENT

Cytek contends that its predecessor, Cytek Development, supposedly sold a product called the Digital Extra Parameter System ("DxP") and purports that the DxP anticipates claims 11 and 15 of the '443 patent. SOF#3 ¶5. Cytek has put forth no evidence to meet its high burden to prove that DxP was publicly accessible in a single device before the litigation. SOF#3 ¶¶6-7.

For prior art to anticipate a claim, it must be both "publicly accessible" and "sufficient to enable one with ordinary skill in the art to practice the invention." *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002). In addition, to prove anticipation by a product, Cytek bears the burden to prove by clear and convincing evidence that all claim limitations are present in "a single reference [or] device" exactly as claimed. *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 726 F.2d 724, 727 (Fed. Cir. 1984) (internal quotation marks and alterations omitted); *Old Reliable Wholesale, Inc. v. Cornell Corp.*, 635 F.3d 539, 545 (Fed. Cir. 2011) ("[T]here could be no anticipation unless the [prior art product] disclosed, either expressly or inherently, ***all*** the structural limitations contained in the asserted apparatus claims.").

[redacted]

Among other elements, claims 11 and 15 of the ’443 patent expressly require a “flow cytometer” or “flow cell.” Ex.27, ’443 patent, cls. 11, 15; SOF#3 ¶¶1-3. Cytek’s technical expert, Dr. Ilkov, recognizes that DxP, standing alone, cannot anticipate claims 11 or 15 because DxP undisputedly ***lacks*** the “flow cytometer” that both claims require, and also lacks the “flow cell including a flow channel” that claim 15 requires. *See* Ex.12, Ilkov Opening Report ¶¶108-116, 244, 391; Ex.14, Ilkov Reply Report ¶156; SOF#3 ¶4. Thus, Dr. Ilkov concedes that this basic tenet of anticipation law is not met. *See SRI Int’l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1307 (Fed. Cir. 2019) (affirming summary judgment of no anticipation because “there was no genuine issue of fact regarding whether [the prior art] disclosed [an element] recited in the claims”).

Tacitly acknowledging this defect, Cytek and Dr. Ilkov resort to arguing that DxP in ***combination*** with a separate product of a separate company—a product called “BD FACSCalibur” offered by Becton, Dickenson and Co.—supposedly anticipated these claims. *See* Ex.12, Ilkov Opening Report ¶112 (arguing that a “DxP System installed in the BD FACSCalibur” together meet the claimed “flow cell” and “flow cytometry” requirements); *see also id.* ¶¶369-370, 393-394 (citing Ex.15, CYTEK_0000011561 (photograph of BD FACSCalibur)); SOF#3 ¶¶4-5. But this also fails as a matter of law for multiple reasons.

[redacted]

***First***, as a matter of law, anticipation under 35 U.S.C. § 102 requires clear and convincing proof that every element of the challenged patent claim existed identically ***in a single device***. *Studiengesellschaft*, 726 F.2d at 727; *Diversitech Corp. v. Century Steps, Inc.*, 850 F.2d 675, 677 (Fed. Cir. 1988) ("For a prior art reference to anticipate in terms of 35 U.S.C. § 102, every element of the claimed invention must be identically shown ***in a single reference***." (citation omitted)); *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010) ("Anticipation requires the presence ***in a single prior art*** disclosure of all elements of a claimed invention arranged as in the claim."). DxP undisputedly lacks the "flow cytometer" and "flow cell" elements of claims 11 and 15, for example, while BD FACSCalibur lacks the claimed WDMs, including curved mirrors elements (among others). *See* Ex.12, Ilkov Opening Report ¶¶108-117, 244, 391; Ex.14, Ilkov Reply Report ¶156; SOF#3 ¶4. As a result, neither is a "single prior art reference" with "all elements" of the claimed invention "arranged as in the claim." *Therasense*, 593 F.3d at 1332.

***Second***, Cytek fails to present any evidence that DxP was ever publicly used in or sold in its proposed combination with a BD FACSCalibur. If a defendant "wishes to establish anticipation through the existence of a device offered for sale, it must establish some evidence of that device's actual existence." *Generac Power Sys., Inc. v. Kohler Co.*, 2012 WL 6562153, at *13 (E.D. Wis. Nov. 29, 2012). Dr.

[redacted]

Ilkov provides no contemporaneous evidence to show that a DxP System combined with a flow cytometer was ever publicly used during the prior art period. *See* Ex.12, Ilkov Opening Report ¶117; SOF#3 ¶7. And while Dr. Ilkov asserts that Cytek Development sold refurbished flow cytometers containing the DxP System, he cites no contemporaneous evidence to corroborate any such sales. *See* Ex.12, Ilkov Opening Report ¶110; SOF#3 ¶6. In fact, the dates provided relate only to ***DxP System upgrades***, not to refurbished flow cytometers. *See* Ex.12, Ilkov Opening Report ¶117; SOF#3 ¶7. Thus, Cytek has failed to show that a flow cytometer containing the DxP System was ever sold, publicly used, or otherwise available to the public with a flow cytometer or flow cell.

Because Cytek has failed to demonstrate by clear and convincing evidence that a DxP System having a "flow cytometer" or "flow cell" was publicly sold or used before the '443 patent, its anticipation theory fails as a matter of law.

## VII. CONCLUSION

For the reasons outlined above, summary judgment should be granted.

[redacted]

OF COUNSEL:

Omar A. Khan
Jeffrey A. Dennhardt
Laura Macro
Lauren Matlock-Colangelo
Jennifer L. Graber
Kelly A. Todd
Maggie Sawin
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

Akkad Y. Moussa
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Ave.
NW Washington, DC 20037
(202) 663-6000

Dated: March 13, 2026

*<u>/s/ Frederick L. Cottrell, III</u>*
Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff*

[redacted]

**CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2026, true and correct copies of the foregoing document were served upon the following counsel of record in the manner indicated:

**BY E-MAIL**

Karen Jacobs
Jeremy A. Tigan
Cameron P. Clark
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19801

**BY EMAIL**

Reuben H. Chen
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304

Elizabeth M. Flanagan
Cooley LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402

Adam Pivovar
Dustin M. Knight
Rosalynd D. Upton
David Yun
Cooley LLP
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004

*/s/ Christine D. Haynes*
Christine D. Haynes (#4697)
haynes@rlf.com