IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BECKMAN COULTER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 24-945 (CFC) (EGT) |
| | ) | |
| v. | ) | ▮▮▮▮▮▮▮▮▮▮▮▮ |
| | ) | |
| CYTEK BIOSCIENCES, INC., | ) | |
| | ) | ▮▮▮▮▮▮▮ |
| Defendant. | ) | REDACTED - PUBLIC VERSION |

**CYTEK'S OPENING LETTER TO THE
HONORABLE COLM F. CONNOLLY IN SUPPORT OF ITS MOTION TO
STRIKE IMPROPER EXPERT DISCLOSURES**

OF COUNSEL:

COOLEY LLP
Reuben H. Chen
Allie Leeper
Juan Pablo González
HanByul Chang
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000

Elizabeth M. Flanagan
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402

Adam Pivovar
Dustin M. Knight
Rosalynd D. Upton
David Yun
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
(202) 842-7800

March 26, 2026

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@morrisnichols.com
jtigan@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendant
Cytek Biosciences, Inc.*

Dear Chief Judge Connolly,

Cytek respectfully requests the Court strike the market-share-based lost profits opinions for *Panduit* factor 2 (on non-infringing substitutes) advanced by BEC's damages expert, Ms. Riley, as not disclosed during fact discovery.[1]

The *Pennypack* analysis considers: "(1) the surprise or prejudice to the moving party; (2) the ability of the moving party to cure any such prejudice; (3) the extent to which allowing the testimony would disrupt the order and efficiency of trial; (4) bad faith or willfulness in failing to comply with the court's order; and (5) the importance of the testimony sought to be excluded." *Integra LifeSciences Corp. v. HyperBranch Med. Tech., Inc.*, No. 15-819-LPS-CJB, 2017 WL 11558096, at *5 (D. Del. Dec. 11, 2017). *Pennypack* favors exclusion.

Ms. Riley's market-share lost profits opinions were not disclosed in fact discovery. Cytek repeatedly sought fulsome damages contentions from BEC. *See e.g.*, Ex. 1 at 1, 4 (correspondence citing *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452-WCB, 2021 WL 12160836, at *4 (D. Del. Oct. 22, 2021), *TQ Delta, LLC v. DISH Network Corp.*, No. 15-614-RGA (D. Del.), *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, No. 14-878-LPS-CJB (D. Del. Jan. 28, 2016)). Nevertheless, BEC stood by its contentions and advanced the same lost profits theory throughout fact discovery—without mention of a market-share analysis.

BEC never disclosed its intent to perform a ***Mor-Flo*** market-share analysis, let alone the basis for it. BEC's initial and amended Rule 26(a)(1)(A)(iii) disclosures asserted BEC would seek lost profits that "include convoyed and/or derivative sales" without mentioning a market-share analysis. (*See* Ex. 2 at 14). BEC's interrogatory responses asserted BEC would "seek[] damages based on lost profits" under ***Panduit***, and that "there is an absence of acceptable non-infringing substitutes." (*See* Ex. 3 (Interrog. 6 Resp.) at 149, 162, 166-67, 176.) BEC asserted, without specificity, that "it w[ould] establish lost profits by calculating the incremental profit it would have made" on additional sales but-for Cytek's infringement. (*Id.* at 166.) BEC's response never mentions a market-share analysis, nor cites *State Industries, Inc. v. Mor-Flo Industries, Inc.*, 883 F.2d 1573, 1577-78 (Fed. Cir. 1989), which discusses lost profits based on market share when acceptable non-infringing alternatives are available from third-party competitors, nor suggests some of Cytek's market share in the but-for world would go to third-party products, let alone identify

---

[1] Cytek respectfully withdraws its other motions to strike in the joint discovery motion, D.I. 265.

any third-party products.  BEC's response did not even identify which BEC products compete against which Accused Products.  Cytek warned BEC its responses were deficient, including for that very reason.  (*See* Ex. 4 (Defendant's Interrog. 10 First Supp. Resp.) at 20-21.)  Even when BEC supplemented, it omitted mention of *Mor-Flo*, a market-share analysis, or any supporting basis.  (*See* Ex. 3 (Interrog. 6 Resp.) at 148-188.)

Ms. Riley's opening report revealed never-before-disclosed lost profits theories for *Panduit* factor 2, newly asserting the existence of third-party acceptable non-infringing substitutes.  Ms. Riley presents a 60-page market-share analysis assigning portions of Cytek's market share to BEC and *other competitors*, primarily Agilent and ThermoFisher.  (*See* Ex. 5 (Riley Op.) ¶¶239-374, Exhibits 11-11.8.)[2] Ms. Riley grouped products by previously undisclosed price bands, and specified products from BEC, Agilent, ThermoFisher, and others as competing with various Accused Product models.  (*Id.* ¶¶266-374.)  BEC's interrogatory response disclosed neither Agilent nor ThermoFisher, nor their products, nor price bands, nor which products compete against which Accused Products.  To perform this new analysis, Ms. Riley calculated market shares based on a document—the "**FluoroFinder**" spreadsheet—also ***not*** disclosed in the lengthy Bates-numbered document list in BEC's interrogatory response.  (Ex. 6 (Riley Tr.), 177:10-182:20.).  BEC served three supplemental interrogatory responses after Cytek produced the FluoroFinder data, but never cited it.[3]  (*See* Ex. 3 (Interrog. 6 Resp.) at 162-188).

BEC's untimely lost-profits about-face prejudiced Cytek.  *See Integra*, 2017 WL 11558096, at *10-11.  Because BEC failed to disclose this theory in fact discovery, including by failing to identify relevant competitors, competing products, and market-share data—Cytek had no meaningful opportunity to investigate BEC's theory, such as testing alleged competition from Agilent and ThermoFisher, and the applicability of the "FluoroFinder" data.  When Cytek deposed BEC's designated witnesses on market, market segmentation, and market-share, Cytek lacked notice of BEC's market-share theory and its underlying basis.  Cytek thus could not ask BEC's witnesses about the factual justification Ms. Riley uses for her market-share analysis—such as asking about Agilent and ThermoFisher, the specific BEC products identified as competing with the Accused Products, and price bands.  Cytek also could not ask fact witnesses about the reliability of using FluoroFinder data to

---

[2] Ms. Riley reiterated this improper new analysis in her Reply Report.  (*See* Ex. 7 (Riley Reply) ¶¶8-10, 69-81, 119-155, 167-225).

[3] Cytek produced the FluoroFinder spreadsheet (CYTEK_0000491046) on September 8, 2025.

calculate market share.  Cytek could not subpoena FluoroFinder for information about whether its data can reliably be used for this type of analysis—such as the nature and limitations of the data, data collection, its intended use, and whether FluoroFinder would have endorsed its use for a market-share analysis.  Cytek would have explored these issues had BEC timely presented its lost-profits theory.

Further, BEC's decision to withhold its theory until opening expert reports hampered Cytek's ability to develop rebuttal opinions.  Cytek and its expert had only a four-week period, spanning the year-end holidays, to rebut this new theory without the opportunity to develop factual evidence.  Additionally, had BEC provided proper notice, Cytek would have consulted a survey expert about customer preference surveys to assess whether customers would have purchased alternative products had the Accused Products been unavailable and, if so, which products and why.  This was not feasible within a four-week timeline.

This prejudice cannot be cured now.  Expert discovery has closed, opening summary judgment briefs have been filed, and trial is mere months away.  Striking Ms. Riley's untimely lost-profits analysis would properly address BEC's harmful failure to disclose while preserving the case schedule, and BEC can still pursue reasonable royalty damages. BEC and Ms. Riley should not, however, be permitted to present new opinions about the absence of acceptable non-infringing substitutes at trial and, accordingly, under *Panduit*, have no basis to pursue lost profits.

*    *    *

Cytek understands BEC will argue Cytek's motion is untimely, but BEC's position ignores both the timeline and Cytek's attempt to promote efficiency by consolidating its motions rather than bringing them piecemeal after each phase of reports.  No rule or scheduling order set a deadline for motions to strike, and Cytek diligently brought its motion shortly after close of expert discovery.  *See, e.g.*, *Chervon (HK) Ltd. v. One World Techs., Inc.*, No. 19-1293-GBW, 2025 WL 2638959, *4-5 (D. Del. Jan. 14, 2025) (motion to strike filed months after report was not untimely).  The parties exchanged reply reports on February 9, with expert depositions from February 12 to March 9.  The parties filed their joint request on motions to strike on March 17.  (*See* D.I. 265.)  Although Cytek has since withdrawn most of its motions, Cytek's motions in D.I. 265 addressed opening and reply reports.  (*Id.*)

Cytek repeatedly sought to meet-and-confer with BEC in February 2026 which, largely due to BEC's response time and availability, occurred on March 4, 9,

3

and 11.  Cytek worked with BEC in good faith to find times to confer on both parties' motions, and to present both parties' issues to the Court on the same timeline, including repeatedly accommodating BEC's shifting scheduling constraints.  Cytek sent a draft of the joint request March 12, BEC gave edits March 16, and the request was filed March 17.

Respectfully,

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)

JAT:ncf
Enclosure(s)
cc:    Clerk of the Court (via hand delivery)
        All Counsel of Record (via CM/ECF and e-mail)

4

## <u>WORD COUNT CERTIFICATION</u>

The undersigned counsel hereby certifies that the foregoing document contains 1,250 words, which were counted using the word count feature in Microsoft Word, in 14-point Times New Roman font.  The word count includes only the body of the letter.

*/s/ Jeremy A. Tigan*

_____

Jeremy A. Tigan (#5239)