# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| BECKMAN COULTER, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CYTEK BIOSCIENCES, INC.,<br><br>Defendant. | C.A. No. 24-0945-CFC<br><br> |

## LETTER TO THE HONORABLE COLM F. CONNOLLY FROM FREDERICK L. COTTRELL, III IN OPPOSITION TO CYTEK'S <u>MOTION TO STRIKE</u>

OF COUNSEL:

Omar A. Khan
Jeffrey A. Dennhardt
Laura Macro
Lauren Matlock-Colangelo
Jennifer L. Graber
Kelly A. Todd
Maggie Sawin
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

Akkad Y. Moussa
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Ave.
NW Washington, DC 20037
(202) 663-6000

Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com
*Attorneys for Plaintiff*

Dated: April 2, 2026

RLF1 35620512v.1

RICHARDS
LAYTON &
FINGER

Frederick L. Cottrell
Director
302-651-7509
Cottrell@rlf.com

April 2, 2026

**VIA CM-ECF**
The Honorable Colm F. Connolly
United States District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 North King Street, Unit 38
Room 4104
Wilmington, DE 19801-3555

> Re:  **Beckman Coulter, Inc. v. Cytek Biosciences, Inc.**
> **C.A. 24-945-CFC**

Dear Judge Connolly:

Cytek seeks to strike critical damages opinions from an opening report served on December 19, 2025, by now claiming prejudice—over three months later. Cytek's post-hoc, contrived arguments are fundamentally flawed. ***First,*** Cytek feigns surprise, but Beckman repeatedly disclosed that it would seek lost profits on "additional sales" it would have made but-for Cytek's infringement, to be further detailed in expert discovery. Indeed, Cytek's *own* responsive lost profits theory relied on market segmentation in view of the substantial discovery Beckman provided. ***Second***, Cytek's prejudice claims are belied by the fact that it did not raise its dispute with Beckman for over two months after opening reports and did not seek any meet-and-confer until days before expert discovery closed. ***Finally***, lost profits are critical to Beckman's case, and Cytek's own expert agrees that Beckman may be entitled to substantial lost profits. Cytek cites no case striking expert testimony under these circumstances. Its motion should be denied.

## I.    Beckman Preserved Its Market Share Analysis

Cytek has long been aware of Beckman's intent to seek lost profits, including by market share. Ex. 1, 149. The parties have never disputed that they operate in a multi-player market, and when applying the *Panduit* test in a multi-player market,

■ ■ ■

an "adjusted market share" is the generally accepted, "repeatedly approved" way to calculate lost profits. *Akamai Techs. v. Limelight Networks*, 805 F.3d 1368, 1380 (Fed. Cir. 2015).

Beckman unquestionably put Cytek on notice of its damages theories across 60+ pages of interrogatory responses that:

- Explained Beckman would establish lost profits on "*additional sales*"— not all sales—"it would have made but-for Defendant's infringement" and incorporated witness testimony confirming those sales would have been in a multi-player market. Ex. 1, 166-167;
- Repeatedly confirmed that additional lost profits details would be provided "through expert reports and testimony," *id.*, 149, 162, 166, 176-177, because "lost sales and profits" calculations "need not be turned over until…expert reports." *Greenkeepers v. Nike*, 2009 WL 3581817, at *5 (E.D. Pa. Oct. 29, 2009);
- Explained that customers seek "affordable and compact, 'benchtop' devices that provide a flexible number of colors" made possible "through the patented features"—the *exact* framework Beckman's expert applied. Ex. 1, 162-165; Ex. 2, ¶¶314, 266-321;
- Identified "compet[ition]" in the "mid-level market" and cited hundreds of documents discussing competition, demand drivers, and market share of the parties' and competitors' products, including documents used by Beckman's expert. *E.g.*, Ex. 1, 177-184 (citing Exs. 3-4, 6); Ex. 2, ¶¶281, 317 (same);
- Cited documents reflecting price bands that identify competing Beckman, ThermoFisher, and Agilent products and closely track its expert's opinions. *E.g.*, Ex. 1, 164, 183 (citing Ex. 3; Ex. 5); and
- Explained Beckman "lost revenue [and] market share" due to Cytek's infringement. Ex. 1, 236-251.

Cytek likewise understood Beckman's arguments. For example, it claimed that Beckman would not have made "*many of the sales*" in the but-for world due to market "sub-segmentation" and identified the same competitors as Beckman's expert, Michele Riley. Ex. 7, 50; Ex. 8, 25-28. Damages, market share, and competition were also central to discovery propounded by Cytek—including eight interrogatories, 28 document requests, and 18 30(b)(6) topics to which Beckman fully responded—and in testimony obtained from four Beckman witnesses. *E.g.*,

Ex. 9, 47:13-49:18, 119:4-136:12, 141:7-166:6, 238:12-259:16; Ex. 10, 146:14-158:20, 214:4-223:21, 249:18-264:12; Ex. 11, 205:6-208:4, 243:23-244:25; Ex. 12, 97:15-106:17 (discussing market share for ThermoFisher and Agilent).

Cytek's other arguments are meritless.  *First*, Beckman's interrogatory responses were not required to cite the *Mor-Flo* case; instead, they properly provided relevant facts and *expressly* stated that further analysis was for expert discovery. *Hall v. Fiat Chrysler*, 2023 WL 11518071, at *6 (C.D. Cal. May 15, 2023) (interrogatory seeking "legal authority" was "not proper").  *Second*, Beckman supplemented its interrogatory responses three times after Cytek alleged deficiencies.  Ex. 1.  Cytek *never* again alleged deficiencies or moved to compel. Ex. 17, *Robocast v. Netflix*, No. 22-0305-JLH-CJB, D.I. 437 (D. Del. Nov. 20, 2024) (refusing to strike where defendant "did not move to compel" to avoid "litigation by sandbagging").  *Finally*, Cytek cannot claim prejudice that the "FluoroFinder" spreadsheet was not cited in interrogatories because it is *Cytek's own document* that its business team relies on.  *Midwest Energy Emissions v. Arthur J. Gallagher*, 2022 WL 17617809, at *2 (D. Del. Dec. 7, 2022) (declining to strike information "derived from Defendants' own documents and e-mails").

## II.    Cytek Has Suffered No Prejudice

Cytek's claims of prejudice are equally meritless.  Cytek had notice of the expert testimony at issue as of December 19, 2025.  In fact, shortly after Beckman's opening reports, Cytek indicated it would move to strike certain testimony, but Ms. Riley's market share analysis *was not on that list*, confirming Cytek's purported surprise is a post-hoc justification to avoid Beckman's significant damages claim. Ex. 13; Ex. 18, *Pers. Audio v. Google*, No. 17-1751, D.I. 375, 3 n.3 (D. Del. Mar. 19, 2019) (denying motion to strike filed "two months" after disclosure because if disclosure was "highly prejudicial," "why would it not have moved to strike them sooner?").  Had Cytek met-and-conferred on its dispute then, there was ample time to cure any alleged prejudice.  Indeed, Beckman agreed to Cytek's requested extension to serve rebuttal reports, D.I. 214, so its complaints about the case schedule do not withstand scrutiny.  And Cytek admits it did not meet-and-confer with Beckman until March 4, 2026 and waited until after expert discovery closed to bring its dispute to the Court.  D.I. 284, 3-4.  Although Beckman disagreed with Cytek's position, to avoid burdening the Court, it offered Cytek a sur-reply report and corresponding extension to expert discovery.  Cytek refused, and instead waited

3

months to manufacture its purported prejudice.  The Court should reject such lie-in-wait tactics.

Further, Cytek's expert never claimed prejudice in responding to Beckman's analysis.  Instead, he analyzed the same customer preferences as Ms. Riley, identifying $29M in lost profits based on (1) SalesForce data Cytek produced for the first time with rebuttal reports, despite Beckman RFPs specifically requesting "SalesForce data," Ex. 14, 31; and (2) discussions with Cytek employees about that SalesForce data and Beckman's cited data.  Ex. 15, ¶¶51-58, 98-119.

Cytek's other prejudice claims should be rejected.  Cytek's *own* core damages theory was that Beckman would not have made all Cytek sales given the other competing products in the marketplace.  Ex. 8, 25-28.  Thus, not only did Cytek know and understand that Beckman was pursuing a market share analysis, Cytek's *own theory relied on that same analysis*, yet Cytek never retained a survey expert or sought third party discovery.  In any event, Cytek obtained the relevant discovery from Beckman and from in its own files.  Indeed, Cytek's expert contended that the SalesForce data he relied on was the "*primary*" market share data needed to perform the relevant analysis, confirming no additional discovery was necessary.  Ex. 16, 53:11-20.

## III.   Beckman's Lost Profits Are Critical

In any case, Cytek's motion should be denied because Beckman's lost profits are critical to its case.  Ms. Riley concludes that Beckman is entitled to $39M-$104M in lost profits, which comprises more than half of Beckman's damages claim.  Ex. 2, ¶¶228-392.  Cytek's damages expert likewise acknowledges that Beckman may be entitled to lost profits, comprising a substantial portion of the overall damages case.  Ex. 15, ¶¶158-161, 296.  Based on the importance of the opinions, the Court should deny Cytek's request for the "extreme sanction" of exclusion.  *In re Paoli*, 35 F.3d 717, 791-92 (3d Cir. 1994); *Zimmer Surgical v. Stryker*, 365 F. Supp. 3d 466, 499 (D. Del. 2019) (declining to strike substantial lost profits amount that was "undeniably important").

Respectfully,

*/s/ Frederick L. Cottrell, III*

Frederick L. Cottrell (#2555)

Cc:  All Counsel of Record (via CM-ECF and email)

4

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing Plaintiff Beckman Coulter, Inc.'s Answering Letter Brief in Opposition to Cytek's Motion to Strike complies with the Court's March 20, 2026 Oral Order. The text of the letter brief, including footnotes, was prepared in Times New Roman 14-point font and contains 1,250 words.

*/s/ Christine D. Haynes*
Christine D. Haynes (#4697)
haynes@rlf.com

Dated: April 2, 2026