IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BECKMAN COULTER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 24-945 (CFC) (EGT) |
| v. | ) | |
| | ) | ███████████ |
| CYTEK BIOSCIENCES, INC., | ) | |
| | ) | REDACTED - PUBLIC VERSION |
| Defendant. | ) | |

**DEFENDANT CYTEK'S OPPOSITION TO PLAINTIFF BEC'S CONCISE
STATEMENT OF FACTS IN SUPPORT OF
<u>SUMMARY JUDGMENT MOTION #1</u>**

OF COUNSEL:

Reuben H. Chen
HanByul Chang
Juan Pablo Gonzalez
Alexandra Leeper
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304

Elizabeth M. Flanagan
COOLEY LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402

Adam Pivovar
Dustin M. Knight
Rosalynd D. Upton
David Yun
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@morrisnichols.com
jtigan@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendant
Cytek Biosciences, Inc.*

Original filing date: April 13, 2026
Redacted filing date: May 4, 2026

| Abbreviation | Term/Meaning |
|---|---|
| '582 or '582 patent | U.S. Patent No. 10,330,582 |
| '443 or '443 patent | U.S. Patent No. 11,703,443 |
| '107 or '107 patent | U.S. Patent No. 12,174,107 |
| Asserted Claims | Claims 1, 3, 6, 23, and 26 of the '582 patent; claims 4, 6, 10, 11, and 15 of the '443 patent; claims 5, 16, 18, 26, 27, and 29 of the '107 patent |
| Asserted Patents | '582 patent, '443 patent, '107 patent |
| BEC | Plaintiff Beckman Coulter, Inc. |
| Cytek | Defendant Cytek Biosciences, Inc. |
| Ilkov | Fedor Ilkov, Ph.D., Cytek's expert |
| Robinson | Joseph Robinson, Ph.D., BEC's expert |
| Schaafsma | David Schaafsma, Ph.D., BEC's expert |
| Weigl | Bernhard Weigl, Ph.D., Cytek's expert |

## I.   RESPONSE TO BECKMAN COULTER'S CONCISE STATEMENT OF FACTS IN SUPPORT OF SUMMARY JUDGMENT MOTION #1

Cytek submits the following responses to Beckman Coulter's Concise Statement of Facts  in Support of Summary Judgment Motion #1 (D.I. 249).

1.      Cytek Biosciences Inc.'s ("Cytek") technical expert, Dr. Fedor Ilkov, opines: "to the extent BEC establishes literal infringement of the Asserted Claims of the '443 and '107 Patents, which, notably use the broad term 'light' rather than a 'collimated beam' as recited in the '582 Asserted Claims and as used to describe the alleged inventions in the specification, it is my opinion that the reverse doctrine of equivalents applies, and should bar a finding of infringement of the Asserted Claims of the '443 and '107 patents." Ex.13, Ilkov Rebuttal Report ¶292.

**Cytek's Response:** Undisputed that the quoted statement is in paragraph 292 of Ilkov's Rebuttal Report.  Ilkov also opines that "[f]or the reasons I describe below, the operation of the Accused Products is rooted in fundamentally different principles than those underlying the claimed invention, reflecting material innovation in the field of flow cytometry over the Asserted Patents."  He states that the "Accused Products comprise (1) a wavelength division demultiplexer that does *not* use a "collimating optical element" that projects a "collimated beam" as its input beam, but instead includes a focusing lens that projects a converging beam as its input beam; (2) a wavelength division demultiplexer that does not use a "collimated beam" throughout its optical relay configuration, but instead uses an alternatively converging and diverging beam; and (3) a flow cytometry system that practices spectral flow cytometry as opposed to conventional flow cytometry." (Ex. 1A, Ilkov Rebuttal, ¶¶288-289.)

2.      Dr. Ilkov opines: "a POSA would have understood the inventor to have disclosed a requirement of using an initially collimated beam within the wavelength division (de)multiplexer invention." Ex.13, Ilkov Rebuttal Report ¶293.

**Cytek's Response:** The quotation is incomplete.  The full sentence states:

"Thus, the specification of the Asserted Patents consistently teaches the use of a wavelength division (de)multiplexer having a collimating optical element to collimate the input beam, such that a POSA would have understood the inventor to have disclosed a requirement of using an initially collimated beam within the wavelength division (de)multiplexer invention."

3.      U.S. Patent No. 10,330,582 ("the '582 patent") discloses: "FIG. 25 is a diagram illustrating optical ray tracing for an exemplary 6 port wavelength division multiplexer ('WDM') using a zig-zag configuration in accordance with one aspect of the present disclosure." Ex.25, '582 patent, 25:64-67.

**Cytek's Response:** Undisputed that the quotations are accurate.

4.      The '582 patent's specification states: "FIG. 25 shows the optical ray trace for an exemplary 6 port wavelength division multiplexer of the present disclosure using zig-zag configuration." Ex.25, '582 patent, 44:35-37.

**Cytek's Response:** Undisputed that the quotations are accurate.

5.      The '582 patent's specification states: "According to an exemplary embodiment, a wavelength division multiplexer ('WDM') may include at least two optical elements." Ex.25, '582 patent, 4:34-38.

**Cytek's Response:**  The quotation is incomplete.  '582 patent, 4:34-38 states:

"According to an exemplary embodiment, a wavelength division multiplexer ('WDM') may include at least two optical elements.  The first optical element

3

collimates a beam of light received from an extended light source, such as the light from a pinhole or from a multimode optical fiber."

## II.    CYTEK'S COUNTERSTATEMENT OF MATERIAL FACTS AS TO WHICH THERE EXISTS A GENUINE ISSUE NECESSARY TO BE LITIGATED

6.      Claim 1 of the '107 patent recites:

> 1. A flow cytometer comprising:
> an optical fiber; and
> a wavelength division multiplexer (WDM) configured to
>     receive light from the optical fiber, wherein the WDM
>     comprises:
>     an array of mirrors;
>     an array of filters; and
>     an array of avalanche photodiodes (APDs) configured
>         to receive light that passed through one or more
>         filters in the array of filters;
>     wherein each of the filters in the array of filters is
>         configured to receive light such that:
>         a portion of the light passes through the filter; and
>         another portion of the light is reflected; and
>     wherein each of the mirrors in the array of mirrors is
>         configured to:
>         receive light reflected by a filter in the array of filters;
>             and
>         reflect light to another filter in the array of filters.

7.      Claim 5 ultimately depends from claim 1.

8.      Claim 16 of the '107 patent recites:

4

> 16. A flow cytometer comprising:
> a flow cell configured to permit liquid to flow through the flow cell;
> a laser configured to project light into the flow cell;
> a multimode optical fiber configured to receive light from the flow cell; and
> a wavelength division multiplexer (WDM) configured to receive light from the multimode optical fiber, wherein the WDM comprises:
> a plurality of mirrors, wherein at least one of the mirrors is a concave mirror;
> a plurality of filters; and
> a plurality of avalanche photodiodes (APDs) configured to receive light that passed through one or more filters of the plurality of filters;
> wherein each of the plurality of filters is configured to receive light such that:
> a portion of light passes through the filter; and
> another portion of light is reflected; and
> wherein each of the plurality of mirrors is configured to:
> receive light reflected by a filter of the plurality of filters; and
> reflect light to another filter of the plurality of filters.

9.    Claims 18, 26, 27, 29 ultimately depend from independent claim 16.

10.    Claim 1 of the '443 patent recites:

> What is claimed is:
> 1. A wavelength division multiplexer (WDM) for a flow cytometer comprising:
> a set of filters, each filter of the set of filters configured to pass a corresponding portion of multiple portions of light;
> at least one mirror including at least one curved mirror, the at least one mirror configured to:
> receive one or more portions of the light from the set of filters; and
> reflect the one or more portions of the light to the set of filters; and
> a set of detectors, each detector of the set of detectors corresponding to a filter of the set of filters and configured to receive a portion of the light at the detector that passed through the filter corresponding to the detector.

11.    Claims 4, 6, and 10 of the '443 patent depend from independent claim 1.

12.    Claim 11 of the '443 patent recites:

> 11. A flow cytometer comprising the WDM of claim 1.

13.    Claim 15 of the '443 patent depends from claim 11.

14.    The Accused Products and the invention(s) of the Asserted Patents serve the function of propagating light across their respective relay architectures. (Ex. 1A (Ilkov Rebuttal), ¶291, 308, 310, 315, 317.)

15.    The operation of the claimed invention(s) and Accused Products similarly results in color separation of light.  (Ex. 1A, ¶296; Ex. 1C (Ilkov Op.), ¶911.)

16.    The specification of the Asserted Patents states: "Since efficient color separation can only be accomplished economically with collimated light beam, …" (Ex. 1B, 44:24-26.)

17.    The Asserted Patents only disclose a "wavelength division multiplexer (WDM)" that requires use of a "collimated beam" or a "re-collimated beam" throughout the relay architecture. (Ex. 1A,  ¶¶290, 295-296; Ex. 1B, 4:48-53, 5:11-14, 45:26-29, 45:44-51, 45:66-46:1, FIGs. 25, 27, 28.)

18.    The WDM disclosed in the Asserted Patents uses a "collimating optical element" to project the "collimated beam."  (Ex. 1A, ¶¶73, 74, 76, 290, 293 (citing Ex. 1B, 4:34-38, 21:40-45, 44:58-61, FIG. 25 (item **902**)).)

19.    BEC expressly noted during prosecution that the specification's teachings with respect to the "collimating optical element" described in connection with FIG. 25 excluded a focused beam of converging light: "FIG. 25 (light 'effectively collimated' by collimating optical element 902 is not converging)." (Ex.

6

1L (D.I. 115-7), 10-11; Ex. 1A, ¶¶73-74.)

20.   The specification of the Asserted Patents contains no disclosure relating to a WDM that projects a non-collimated beam throughout its relay architecture. (Ex. 1C, ¶¶ 900, 924-925.)

21.   A conventional "flow cytometer" is claimed and described in the Asserted Patents. (Ex. 1A, ¶66, 290, 299; Ex. 1C, ¶¶884-886; Ex. 1B, 27:33-37, 47:35-38, 47:49-51, 48:20-23, 48:27-31.)

22.   The specification of the Asserted Patents contains no disclosure relating to spectral flow cytometry.  (Ex. 1A, ¶66.)

23.   Conventional flow cytometers are limited to collecting only bands of light (i.e., discrete portions of the emission spectrum) at the peak of each dye (i.e., one-detector-one-dye) and use a simple spillover compensation for a single laser and a single detector to determine the experimental signal for one dye.  (Ex. 1A, ¶302; Ex. 1E (Unlocking Insights), 1.)

24.   BEC's website shows an example of discrete bands of light (with significant intervening gaps) collected by a conventional flow cytometer.  (Ex. 1D (Spectral Flow Cytometry), Fig. 1A ("(A) Represents the optical layout of a traditional bandpass flow cytometer, with each detector measuring a fraction of emission of each fluor.").)



25.    The Accused Products are spectral, non-conventional flow cytometers where their detector modules rely on a non-collimated, alternating converging and diverging beam throughout the relay architecture.  (*See* D.I. 258 (SOF2), ¶11; *see also* Ex. 1A, ¶¶67-71, 75, 289, 294, 297, 300, 301; Ex. C, ¶880; Ex 1G, 2-5.)

26.    BEC stated in a publication outside of this litigation that "[u]nlike conventional flow cytometry, which collects only a discrete portion of the emission spectrum using single filters per fluorochrome, spectral flow cytometry captures the full spectrum for all fluorochromes on each cell using multiple detectors. Therefore, spectral flow cytometry requires more complex methods than compensation to distinguish fluorochromes … The process of deconvoluting fluorochrome emission spectral flow cytometry is referred to as unmixing." (Ex. 1E, 1; *see also* Ex. 1A, ¶302; Ex. 1D, 1-2 (explaining the same).)

27.    BEC and its expert stated in multiple publications outside of this litigation that conventional flow cytometers are materially different than spectral flow cytometers.  (*See, e.g.*, Ex. 1D, 1-2, 9; Ex. 1F (Spectral Flow Cytometry), 317;

8

Ex. 1E, 1-2 ("In contrast to conventional flow cytometry, spectral flow cytometry uses multiple detectors to capture the full spectrum emission of each fluorochrome across multiple lasers used in the system, to create a detailed spectral signature,…"; *see also* Ex. 1C, ¶¶876-879; Ex. 1H (Ilkov Reply), ¶265-272; Ex. 1I (Weigl Reply), ¶¶23-32, 39-44.)

28.    Dr. Robinson stated outside of this litigation that "a spectral flow cytometer is not just a device with more detectors or spectral channels. Rather, it's a system designed to gather and interpret fluorescence information in a fundamentally different way than a polychromat instrument." (Ex. 1F, 317.)

29.    BEC's website shows an example of a full emission spectrum collected for each dye by a spectral flow cytometer. (Ex. 1D, Fig. 1A ("(B) A spectral flow cytometer uses multiple detectors to collect full spectrum fluorescence emission for all fluorochromes using multi-laser excitation.").)



30.    Ilkov stated: "The Accused Products limit aberrations by use of an alternately converging/diverging beam, giving rise to more efficient beam control

that permits efficient propagation of the beam and color separation across more detectors (together with the flat-top laser) to achieve full spectral cytometry, ….” (Ex. 1A, ¶304.)

31. Use of a non-collimated beam is material to limiting beam aberration, a requirement for full spectral cytometry. (*Id.*, ¶¶298, 304.)

32. Ilkov applied his reverse doctrine of equivalents analysis for claim 1 (and its dependents) of the '443 patent for the claim limitations “WDM” and “light.” (*Id.*, ¶¶306-311.)

33. Ilkov additionally applied his reverse doctrine of equivalents analysis for claim 11 and 15 of the '443 patent for the claim limitation “flow cytometer.” (*Id.*, ¶312.)

34. Ilkov applied his reverse doctrine of equivalents analysis for claims 1 and 16 (and their dependents) of the '107 patent for the claim limitations “WDM,” “light,” and “flow cytometer.”  (*Id.*, ¶¶313-320.)

35. BEC’s expert, Schaafsma, disagrees with Ilkov’s identification of the principle of operation for the claimed invention(s) with respect to “WDM” and “light.”  (Ex. 1J (Schaafsma Reply), ¶¶321-324.)

36. Schaafsma and Robinson disagree with Ilkov’s identification of the principles of operation for the claimed invention(s) and Accused Products with respect to “flow cytometer.”  (*Id.*, ¶¶320, 323; Ex. 1K (Robinson Reply), ¶¶13-16,

10

23.)

37.    Schaafsma disagrees that the claimed invention(s) and Accused Products are different in operation principles with respect to "light," "WDM," and "flow cytometer."  (Ex. 1J, ¶¶ 325-329.)

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Cameron P. Clark

OF COUNSEL:

Reuben H. Chen
HanByul Chang
Juan Pablo González
Alexandra Leeper
COOLEY LLP
3175 Hanover Street
Palo Alto, CA  94304

Elizabeth M. Flanagan
COOLEY LLP
30 South 9th Street, 7th Floor
Minneapolis, MN  55402

Adam Pivovar
Dustin M. Knight
Rosalynd D. Upton
David Yun
COOLEY LLP
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC  20004

April 13, 2026

Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@morrisnichols.com
jtigan@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendant*
*Cytek Biosciences, Inc.*

11

## <u>WORD COUNT CERTIFICATION</u>

The undersigned counsel hereby certifies that the foregoing document contains 1,365 words, which were counted using the word count feature in Microsoft Word, in 14-point Times New Roman font.  The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Cameron P. Clark*

Cameron P. Clark (#6647)

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on May 4, 2026, upon the following in the manner indicated:

Frederick L. Cottrell III                                    *VIA ELECTRONIC MAIL*
Kelly E. Farnan
Christine D. Haynes
RICHARDS, LAYTON & FINGER P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Attorneys for Plaintiff*

Omar A. Khan                                                 *VIA ELECTRONIC MAIL*
Jeffrey A. Dennhardt
Lauren E. Matlock-Colangelo
Kelly A. Todd
Laura Macro
Maggie Sawin
WILMER CUTLER PICKERING HALE
  AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
*Attorneys for Plaintiff*

Akkad Y. Moussa
WILMER CUTLER PICKERING HALE
  AND DORR LLP
2100 Pennsylvania Avenue NW
Washington DC 20037
*Attorneys for Plaintiff*

*VIA ELECTRONIC MAIL*

/s/ Cameron P. Clark

Cameron P. Clark (#6647)

2