# EXHIBIT A



████████████████████████████

# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BECKMAN COULTER, INC., Plaintiff, v. CYTEK BIOSCIENCES, INC., Defendant. | C.A. No. 22-945-CFC-EGT |

## REBUTTAL EXPERT REPORT OF FEDOR A. ILKOV, PH.D. REGARDING NON-INFRINGEMENT OF U.S. PATENT NOS. 10,330,582; 11,703,443; and 12,174,107

Dated:    January 20, 2026

Respectfully submitted,

_____
Fedor A. Ilkov, Ph.D.

**TABLE OF CONTENTS**

**Page**

I.   QUALIFICATIONS, FEES & PRIOR EXPERT TESTIMONY............1

II.   ASSIGNMENT AND MATERIALS CONSIDERED FOR THIS REPORT............1

III.   SUMMARY OF OPINIONS AND EXPECTED TESTIMONY............2

IV.   LEGAL FRAMEWORK ON WHICH MY OPINIONS ARE BASED............7

   A.   Infringement Principles............7

      1.   Reverse Doctrine of Equivalents............9

V.   A PERSON OF SKILL IN THE ART ("POSA") ............9

VI.   CLAIM CONSTRUCTION ............10

   A.   The Court's Constructions............11

   B.   Additional Means-Plus-Function Terms............13

      1.   Collimating Optical Element............13

      2.   Focusing Optical Element ............21

VII.   COMMENTS ON THE ASSERTED PATENTS' DISCLOSURES............27

   A.   The Asserted Patents Only Describe a "WDM" That Works with Collimated Light and a Collimating Optical Element............27

   B.   The Asserted Patents Only Describe the Use of an Effectively Collimated Beam, Not Any Type of "Light"............28

   C.   The Asserted Patents Only Describe the Use of Bandpass Filters ............28

VIII.   OVERVIEW OF THE DISCLOSURES IN THE ASSERTED PATENTS AND THE MATERIAL DIFFERENCES IN CYTEK'S ACCUSED PRODUCTS ............28

   A.   Cytek's Full-Spectral Aurora & Northern Lights Flow Cytometers are Innovative............28

      1.   Cytek launched its innovative full spectral Aurora with 20+ color capability and unmixing algorithms in June 2017............28

**TABLE OF CONTENTS**
(continued)

Page

2. Danaher (BEC's corporate parent) recognized Cytek's innovative Aurora spectral flow cytometers just months after launch.......................................................33

3. Cytek's innovative spectral flow cytometers (Aurora and Northern Lights) continue to be recognized for how they have advanced the field of flow cytometry .......35

B. Cytek's Innovative Aurora and Northern Lights Full Spectrum Flow Cytometers Employ Advanced Technologies That Was Not Disclosed in the Asserted Patents ......................................................................43

1. The Asserted Patents are for a conventional flow cytometer and Cytek's Accused Products are spectral flow cytometers ...............................................43

2. Cytek's Accused Products use a *non-collimated* focused beam of converging light as the input beam into the detector assembly .................................47

    a. The "collimating optical element" of the Asserted Patents does not cover a focusing lens that projects a *non-collimated* focused beam of converging light ......................................47

    b. The input stage of Cytek's detector assemblies have a focusing lens that projects a non-collimated focused beam onto the first filter ..........53

3. The detector assembly in Cytek's Accused Products uses a non-collimated focused/defocused beam................60

    a. The disclosed and claimed "WDM" does not cover a detector assembly that uses a non-collimated focused/defocused beam with substantially different beam size for color separation ...............................................60

**TABLE OF CONTENTS**
(continued)

Page

b.  Cytek's detector assembly uses a focused input beam of converging light and thereafter propagates that input beam as a non-collimated focused/defocused beam of substantially different size ........................................................... 70

C.  Dr. Schaafsma Relies on ▮▮▮▮▮ Optical Models That Do Not Accurately Model the Real-World Components and Beam Optics in Cytek's Innovative Aurora and Northern Lights Detector Assemblies ....................................................... 86

IX.  CYTEK DOES NOT INFRINGE THE ASSERTED PATENTS ......... 95

A.  BEC's Experts Fail to Demonstrate All Elements of the '582 Asserted Claims Are Present in the Accused Products Either Literally or Under the Doctrine of Equivalents ................ 95

1.  Asserted Claim 1 ............................................................. 97

a.  "collimated beam" ................................................... 97

b.  1(b): "a collimating optical element arranged to receive light from a light source, the collimating optical element configured to project a collimated beam;" .................................. 111

c.  1(c): "an optical relay element arranged to receive at least a portion of the collimated beam from the collimating optical element, the optical relay element comprising a curved mirror configured to reflect the portion of the collimated beam received from the collimating optical element to produce a first image;" ............ 124

- iii -

**TABLE OF CONTENTS**
(continued)

**Page**

d.    1(c): "an optical relay element arranged to receive at least a portion of the collimated beam from the collimating optical element, the optical relay element comprising a curved mirror configured to reflect the portion of the collimated beam received from the collimating optical element to produce a *first image*;" 1(d) "a *first focusing optical element* arranged to receive at least a portion of the collimated beam reflected by the optical relay element"; and 1(e) "a *first semiconductor detector*," 1(f) wherein the *first focusing optical element* is configured to focus the portion of the collimated beam received from the optical relay element onto the *first semiconductor detector*." ...........................126

e.    Conclusion: Asserted Claim 1..............................130

2.    Asserted Claim 3 ...........................................130

a.    3(b): "wherein the first focusing optical element is configured to focus the portion of the collimated beam received from the optical relay element to a size smaller than 1 millimeter in diameter." ......................................130

b.    Conclusion: Asserted Claim 3..............................130

3.    Asserted Claim 6 ...........................................131

a.    6(b): "further comprising a first optical filter disposed along an optical path between the collimating optical element and the optical relay element, the first optical filter configured to separate the collimated beam into a first branch and a second branch."...............................131

b.    Conclusion: Asserted Claim 6..............................132

4.    Asserted Claim 20 ...........................................133

**TABLE OF CONTENTS**
(continued)

Page

a.  20(b): "a collimating optical element arranged to receive light from a light source, the collimating optical element configured to project a first image; and" ....................................133

b.  20(c): "an optical relay element arranged near the first image, the optical relay element configured to receive light from the collimating optical element and to project a second image;" ......................................137

c.  20(d): "wherein the size of the first image is substantially the same as the size of the second image; and" ..........................................139

d.  Conclusion: Asserted Claim 20............................142

5.  Asserted Claims 23 and 26...............................142

a.  22(c): "wherein the first image is a magnified image of the object" ...............................143

b.  Conclusion: Asserted Claim 23............................144

c.  26(b): "further comprising a first focusing optical element arranged near the second image," ................................................144

d.  Conclusion: Asserted Claim 26............................147

B.  BEC's Experts Fail to Demonstrate All Elements of the '443 Asserted Claims Are Present in the Accused Products Either Literally or Under the Doctrine of Equivalents ..............147

1.  Asserted Claim 4 .........................................149

a.  1(a): "A wavelength division multiplexer (WDM) for a flow cytometer comprising:" ..........149

**TABLE OF CONTENTS**
(continued)

Page

  b. 1(b): "a set of filters, each filter of the set of filters configured to pass a corresponding portion of multiple portions of light"; 1(d): "the at least one mirror configured to: receive one or more portions of the light from the set of filters"; and 1(e): "reflect the one or more portions of the light to the set of filters" ...............154

  c. Conclusion: Asserted Claim 4...............159

 2. Asserted Claim 6 ........................................160

  a. 6(b): "the set of filters include at least one dichroic filter, and" ...............................160

  b. Conclusion: Asserted Claim 6...............162

 3. Asserted Claim 10 ......................................162

  a. 9(b): "wherein an optical path of the light includes a first filter of the set of filters, followed by a first mirror of the at least one mirror, followed by a second filter of the set of filters, followed by a second mirror of the at least one mirror, followed by a third filter of the set of filters, followed by a third mirror of the at least one mirror, and followed by a fourth filter of the set of filters." ..........................163

  b. 10(b): "the first filter is an initial filter of the set of filters configured to receive the light, the second filter is configured to receive a first collimated beam of the light from the first mirror, and the fourth filter is configured to receive a second collimated beam of the light from the third mirror." ..........................164

  c. Conclusion: Asserted Claim 10: ..........................167

 4. Asserted Claim 11 ......................................167

  a. "A flow cytometer comprising the WDM of claim 1." ..........................167

- vi -

**TABLE OF CONTENTS**
(continued)

Page

b.  Conclusion: Asserted Claim 11 ...............................170

5.  Asserted Claim 15 ...........................................171

a.  Conclusion: Asserted Claim 15 .............................171

C.  BEC's Experts Fail to Demonstrate All Elements of the '107 Asserted Claims Are Present in the Accused Products Either Literally or Under the Doctrine of Equivalents ...............171

1.  Asserted Claim 5 ...........................................174

a.  1(a): "A flow cytometer comprising:" .................174

b.  1(c): "a wavelength division multiplexer (WDM) configured to receive light form the optical fiber, wherein the WDM comprises:" .......177

c.  1(e): "an array of filters" ........................................178

d.  1(g): "wherein each of the filters in the array of filters is configured to receive light such that: a portion of the light passes through the filter; and another portion of the light is reflected; and" 1(h): "wherein each of the mirrors in the array of mirrors is configured to: receive light reflected by a filter in the array of filters; and reflect light to another filter in the array of filters." .................................................178

e.  Conclusion: Asserted Claim 5 .............................183

2.  Asserted Claim 16 ...........................................184

a.  16(a): "A flow cytometer comprising:" ...............184

b.  16(b): a flow cell configured to permit liquid to flow through the flow cell; 16(c): a laser configured to project light into the flow cell ........187

c.  16(d): "a multimode optical fiber configured to receive light from the flow cell; and" ...................189

**TABLE OF CONTENTS**
(continued)

Page

d.    16(e): "a wavelength division multiplexer (WDM) configured to receive light from the multimode optical fiber, wherein the WDM comprises:"...........................................191

e.    16(g): "a plurality of filters" ...............................192

f.    16(i): "wherein each of the plurality of filters is configured to receive light such that: a portion of light passes through the filter; and another portion of light is reflected; and" 16(j): "wherein each of the plurality of mirrors is configured to: receive light reflected by a filter of the plurality of filters; and reflect light to another filter of the plurality of filters."................193

g.    Conclusion: Asserted Claim 16: ...........................197

3.    Asserted Claim 18 ..........................................................197

a.    Conclusion: Asserted Claim 18............................198

4.    Asserted Claims 26, 27, and 29.......................................198

a.    Conclusion: Asserted Claims 26, 27, and 29:.......199

X.    CYTEK DOES NOT INFRINGE UNDER 35 U.S.C. § 271 ..............199

XI.    CYTEK'S PRODUCTS DO NOT INFRINGE THE ASSERTED PATENTS UNDER THE REVERSE DOCTRINE OF EQUIVALENTS .................................................................................199

A.    The Fair Scope of the Invention of the Asserted Patents and the Principles of Operation of the Accused Products Are Fundamentally Different............................................201

B.    The Reverse Doctrine of Equivalents Applies to the Asserted '443 Claims.................................................212

C.    The Reverse Doctrine of Equivalents Applies to the Asserted '107 Claims.................................................215

XII.    CONCLUSION ........................................................................218

████████████████████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

cytometer products (together, the "Accused Products"). (*See, e.g.*, Houston Op. Rep., Section X.)

10.    I understand that Beckman Coulter accuses Cytek of infringing the following patent claims (Ex. 2, Listing of Asserted Claims for Asserted Patents (Non-Infringement)):

- claims 1, 3, 6, 23, and 26 of U.S. Patent No. 10,330,582 (the "'582 patent," "'582 Asserted Claims");

- claims 4, 6, 10, 11, and 15 of U.S. Patent No. 11,703,443 (the "'443 patent," "'443 Asserted Claims"); and

- claims 5, 16, 18, 26, 27, and 29 of U.S. Patent No. 12,174,107 (the "'107 patent," "'107 Asserted Claims").

11.    I understand that Beckman Coulter has submitted two expert reports regarding infringement of the Asserted Claims by the Accused Products, which I have reviewed. (*See* Dec. 19, 2025 Opening Expert Report of Dr. Jessica P. Houston Regarding Infringement of U.S. Patent Nos. 10,330,582, 11,703,443, and 12,174,107 ("Houston Opening Rep." or "Houston Rep."); Dec. 19, 2025 Opening Expert Report of Dr. David Schaafsma Regarding Infringement of U.S. Patent Nos. 10,330,582, 11,703,443, and 12,174,107 ("Schaafsma Opening Rep." or "Schaafsma Rep.") (collectively, "Infringement Reports").)

12.    In my opinion, the Houston and Schaafsma Opening Reports fail to

████████████████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

demonstrate infringement of the Asserted Claims for the reasons discussed in detail

in this Report.  These opinions, include, for example:

**For the '582 patent:**

- **No "collimated beam":**  The Accused Products do not meet any claim limitation reciting a "collimated beam" because the Accused Products do not make use of a "collimated beam," as described in more detail below.

- **No "collimating optical element":** The Accused Products do not meet the claim limitation "collimating optical element" because no component in the Accused Products receives light from a light source and projects a "collimated beam," portions of which are propagated through the claimed optical components (e.g., "optical relay element"; "first focusing optical element," and "first optical filter"), as described in more detail below.

- **No "optical relay element" that both receives and reflects a collimated beam:**  The Accused Products do not meet the claim limitation of an "optical relay element" arranged to both "receive" "a portion of the collimated beam from the collimating optical element" and "reflect the portion of the collimated beam received from the collimating optical element to produce a first image," as described in more detail below.

- **No "collimating optical element" that project a "first image" near an "optical relay element":**  The Accused Products do not meet the claim limitation of a "collimating optical element" arranged to "receive light from a light source" and to "project a first image" with an "optical relay element arranged near the first image," as described in more detail below.

- **No "first image" and "second image" substantially the same size:**  The Accused Products do not meet the claim limitation of a "collimating optical element" arranged to "receive light from a light source" and to "project a first image" with an "optical relay element" configured to "receive light the collimating optical element" and to "project a second image" "wherein the size of the first image is substantially the same as the size of the second image," as described in more detail below.

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

- **No "first focusing optical element" near the "second image":** The Accused Products do not meet the claim limitation of a "first focusing optical element arranged near the second image," as described in more detail below.

**For the '443 and '107 patents:**

- **No WDM that uses a "collimated beam":** The Accused Products do not meet any claim limitation reciting a "wavelength division multiplexer (WDM)" because the only "WDM" the Asserted Patents describe and enable requires a "first optical element"/"collimating optical element" (which the Accused Products lack) that projects a "collimated beam" (which the Accused Products do not make use of), as discussed in more detail below and, further, the Accused Products do not contain a wavelength division multiplexer, but rather a wavelength division *demultiplexer*.

- **No collimated "light":** The Accused Products do not meet claim limitations reciting "light," because as discussed in my Opening Report, the only light the Asserted Patents describe and enable passing between filters and mirrors is collimated light, which the Accused Products do not make use of, as discussed in more detail below.

- **No dichroic filters:** The Accused Products do not meet the claim limitation "filters" because the only "filters" the Asserted Patents describe and enable to reflect and ̦ass li̦ht with the mirrors are dichroic filters, which the Accused Products do not use—the̦ use band̦ass filters, and band̦ass and dichroic filters are not equivalent, as discussed in more detail below.

- **No conventional "flow cytometer":** The Accused Products do not meet any claim limitation reciting "flow cytometer" because the only "flow cytometer" the Asserted Patents describe and enable is a conventional flow cytometer. The Accused Products are full spectral flow cytometers, as discussed in more detail below.

- If Beckman Coulter establishes a *prima facie* case for literal infringement of any Asserted Claim of the '443 patent or '107 patent, the Accused Products do not infringe any valid Asserted Claims under the reverse doctrine of equivalents, as discussed in more detail below.

**For the '443 patent:**

████████████████████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

- **No "dichroic filter":** The Accused Products do not meet the claim limitation "dichroic filter" because the Accused Products use bandpass filters, not dichroic filters, and the two are not equivalent, as discussed in more detail below.

- **No "collimated beam":** The Accused Products do not meet any claim limitation reciting a "collimated beam" because the Accused Products do not make use of a "collimated beam," as discussed in more detail below.

- **No "flow cell" with a concave mirror and aberration corrector plate:** The Accused Products do not meet the claim limitation "flow cell" because the only "flow cell" the Asserted Patents describe and enable include a concave mirror and aberration corrector plate, not present in the Accused Products, as discussed in more detail below.

**For the '107 patent:**

- **No "flow cell" with a concave mirror and aberration corrector plate:** The Accused Products do not meet the claim limitation "flow cell" because the only "flow cell" the Asserted Patents describe and enable include a concave mirror and aberration corrector plate, not present in the Accused Products, as discuss in more detail below.

13. If this matter proceeds, I anticipate that I will be called to provide testimony regarding my analysis, opinions, and the issues discussed in this Report.

14. I reserve the right to rely on demonstratives to explain my analysis, opinions, and the issues discussed in this Report.

15. I reserve the right to supplement my analysis in response to any opinion offered by Beckman Coulter or its experts. For example, if an expert retained by Beckman Coulter replies to this Report, I reserve the right to rebut those positions. I also reserve the right to supplement, update, or amend this Report in light of opinions or positions taken in any other technical report by Beckman Coulter's

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

A POSA would have had at least an B.S. in physics, mechanical engineering, electrical engineering, or optical engineering (or equivalent degree) and at least two years of experience in designing optical and electro-optical systems, including for flow cytometer applications. A person could also have qualified as a POSA with a combination of (1) more formal education (such as a doctoral degree) and less technical experience, or (2) less formal education and more technical or professional experience.

## VI. CLAIM CONSTRUCTION

26. As mentioned in my Opening Report, I understand that the Court has issued claim construction rulings during the August 21, 2024 and September 17, 2025 hearings. Counsel has reproduced the Court's claim construction rulings related to the Asserted Claims below for ease of reference. I have applied these constructions in reaching my opinions. Where a claim construction has not been provided, with the exception of the terms "collimating optical element" and "focusing optical element" discussed further below, I used the meaning that I believe a hypothetical person of ordinary skill in the art (defined below) would understand to be the plain and ordinary meaning of the term on or about April 18, 2012, which I understand BEC contends is the conception date. My opinion would not change if the priority date were instead in 2013 or 2014. I note that Drs. Houston and Schaafsma have not set forth any opinion on the priority date.

- 10 -

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

## A.    The Court's Constructions

| Claim Term | Construction |
|---|---|
| Preambles ('582 patent, 1, 2, 3, 6, 20, 22, 23, 26; '443 patent, cls. 1, 6, 11, 13, 15; '107 patent, cls. 1, 2, 3, 5, 16, 17, 18, 20, 21, 22, 26, 27, 28, 29) | Limiting (D.I. 131 at 3.) |
| "[first / second] filter" ('443 patent, cl. 10) | "first and second filters to require that the first filter occur sequentially before or temporally before the second filter" (Aug. 21, 2025 Hr'g Tr. at 73:18-23.) |
| "first optical filter" ('582 patent, cl. 6) | plain and ordinary meaning, as the Court declined to construe this term yet noted the possibility of later construing it, if necessary (Aug. 21, 2025 Hr'g Tr. at 28:8-75:16; Sep. 17, 2025 Hr'g Tr. at 3:15-7:16.) |
| "second image" ('582 patent, cls. 20, 26) | "the second image is created after the first image and there is no intervening image" (Sep. 17, 2025 Hr'g Tr. at 117:1-3.) |
| "collimate" / "collimating" / "collimated beam" ('582 patent, cls. 1, 3, 6, 20; '443 patent, cl. 10) | plain and ordinary meaning, and deferring the issue of indefiniteness[1] (Aug. 21, 2025 Hr'g Tr. at 133:11-17, 134:4-135:16.) |
| "focusing lens" ('107 patent, cls. 17, 18) | plain and ordinary meaning, which is "lenses that capture and converge light" (Sep. 17 2025 Hr'g Tr. at 34:17-19.) |
| "image" ('582 patent, cls. 1, 20, 22) | "representation of an object created by light or emanating from a light source," and deferring the issue of indefiniteness[2] (Sep. 17, 2025 Hr'g Tr. at 89:15-17.) |

---

[1] I understand that the Court deferred the issue of indefiniteness of this term to be decided later in this case.

[2] I understand that the Court deferred the issue of indefiniteness of this term to be decided later in this case.

- 11 -

████████████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

## VII.    COMMENTS ON THE ASSERTED PATENTS' DISCLOSURES

47.    In my opening report, I offered opinions that the Asserted Claims are invalid for lack of written description support, enablement and indefiniteness, which opinions I incorporate here by reference. I highlight several of those opinions here, which are relevant to my analysis of whether BEC has demonstrated that all limitations of the Asserted Claims are present in the Accused Products.

### A.    The Asserted Patents Only Describe a "WDM" That Works with Collimated Light and a Collimating Optical Element

48.    First, as explained in my Opening Report, in my opinion no written description support exists for a wavelength division (de)multiplexer (WDM) that lacks a "collimating optical element" and projects a non-collimated beam through its relay architecture. (Ilkov Op. Rep., Section XV.B.) Rather, the Asserted Patents only disclose "WDM" having a "first optical element/collimating optical element" that is configured to project light from a light source as a "collimated beam" into and through a cascaded unit-magnification relay architecture. *Id.*) Thus, a "first optical element/collimating optical element" to project a "collimated beam" into and through the WDM's relay architecture is an essential feature of the disclosed inventions reciting a WDM in the '107 and '443 patents.

49.    In addition, as I note in my Opening Report, the claims' recitation of a "wavelength division multiplexer (WDM)" is wrong—it should be a *(de)*multiplexer based on the function it serves, which is separating light by wavelength rather than

███████████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

collecting light by wavelength.

**B.     The Asserted Patents Only Describe the Use of an Effectively Collimated Beam, Not Any Type of "Light"**

50.    Second, as explained in my Opening Report, in my opinion no written description support exists for the "light" recited in the Asserted Claims of the '107 and '443 patents to be any light other than an "effectively collimated" beam.  (Ilkov Op. Rep., Section XV.H.)

**C.     The Asserted Patents Only Describe the Use of Bandpass Filters**

51.    Third, as explained in my Opening Report, in my opinion no written description support exists for the "filters" recited in the Asserted Claims of the '107 and '443 patents to be any type of filter besides a dichroic filter.  (Ilkov Op. Rep., Section XV.H; *id.* at ¶¶1034-1036.)

## VIII. OVERVIEW OF THE DISCLOSURES IN THE ASSERTED PATENTS AND THE MATERIAL DIFFERENCES IN CYTEK'S ACCUSED PRODUCTS

**A.     Cytek's Full-Spectral Aurora & Northern Lights Flow Cytometers are Innovative**

**1.     Cytek launched its innovative full spectral Aurora with 20+ color capability and unmixing algorithms in June 2017**

52.    On June 7, 2017, Cytek announced the launch of its advanced full-spectral Aurora flow cytometer, noting its unique combination of patent pending and innovative technologies:

- 28 -

████████████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

element, such as a lens, mirror, or grating, to render rays of light more nearly parallel; a collimator." (D.I. 114 (Joint Claim Construction Br.) ("Joint CC Br.") at 74.) In the alternative, BEC provides a construction for the term as a means-plus-function term.

139. As I have stated above and previously, the term "**collimating optical element**" is a means-plus-function term whose structure is indefinite because no focal length is specified in the specification. (*See* Ilkov Op. Rep., Section XV.I.) I understand that the Court has construed "optical element," (a term appearing in the '443 patent) as a means-plus-function term. (Sep. 17, 2025 Hr'g Tr. at 40:12-13.) "Collimating" is a functional term which does not impart sufficient structure modifying a means-plus-function term, "optical element," to perform the recited functions: (1) "to receive light from a light source" and (2) "to project a collimated beam."

140. Even if not indefinite, a "**collimating optical element**" should be limited to the **achromatic doublet lens 902 (at its focal distance)**, which is the only structure disclosed in the specification associated with the term "**collimating optical element**" (and equivalents) and to the recited functions: (1) "to receive light from a light source" and (2) "to project a collimated beam." This is supported by the file history of the related '106 patent where BEC pointed out to the Patent Office what BEC considered to be the "collimating optical element":

- 112 -

████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement



FIG. 25

(BEC-CYTEK-00004404 at -4819 ('106 patent file history (July 18, 2024 Response to Final Office Action Sent May 2, 2024), 14) (annotations in original).)

141.    **Cytek's input optics do not infringe:** Dr. Houston and Dr Schaafsma improperly ignore ████████████████████████

████████   Drs. Houston and Schaafsma opine that the Accused Products meet this claim limitation by identifying two separate components in the Accused Products as the claimed "collimating optical element": the "collimating lens" and, in the alternative, odd-numbered "concave mirrors." (Houston Rep., ¶¶417-427; *see also* Schaafsma Rep., ¶¶196-197.) But the claim language requires that the "collimating

██████████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

optical element" (1) "receive light from a light source" and (2) "project a collimated beam" where the "optical relay element" "receive[s] at least a portion of the collimated beam *from* the collimating optical element." ('582 patent, cl. 1 (emphasis added).) Unlike the '582 patent, the first lens of Cytek's input optics does not project a collimated beam received by an optical relay element. Rather, ████████

██████████████████████████████

██████████████████████████████

██████████████████████████████

██████████████████████████████████████████████████████████████████

(CYTEK_0000000103.)

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement



(CYTEK_00000000104.)

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement



From the input stage **601**, the light is coupled into a detection module **614**. An end of the input stage(head) **601** is coupled to a transparent wedge **607** to receive the light from the focusing lens **605**. (Cytek's '076 patent, 11:1-4)

Cytek's '076 patent, Fig. 6 ("input stage" **601**)

142.   The focusing lens projects a focusing, converging beam and not a collimated beam.  The beam then continues in a diverging and converging manner throughout the detector module, such that there is a focused beam on odd-numbered bandpass filters and a defocused beam on even-numbered bandpass filters.

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

59.)" (Schaafsma Rep., ¶113.) Dr. Schaafsma then goes on to opine that "this function includes creating a beam that can be imaged and successively reimaged to create multiple images of the same size using a '1:1 relay,' thus controlling the maximum width of the beam as it propagates through the system. ('582 patent, 44:58-45:2, 45:22-29; 45:44-54.)" (*Id.*)

147.  Dr. Schaafsma further opines:  "The collimation lens in each Accused Product performs substantially the same function, in substantially the same way, to achieve substantially the same result as the collimating optical element(s) disclosed in the Asserted Patents.  In particular, as discussed above, the collimation lens is a doublet lens, which a POSA would understand reduces the convergence or divergence of light from the multimode fiber, when positioned by the standard collimation procedure for an extended light source (described above) which results in the multimode optical fiber being around one focal distance from the collimation lens.  As discussed below, a POSA would know that the collimation of any real source results in a beam that can converge slightly and then diverge, while remaining nearly parallel and maintaining substantially the same size between the collimation lens and the next element.  In the relay section of the WDM, this description applies to portions of the collimated beam under the court's construction of 'portion.'  As I discuss in detail below (Section XI), the collimation lens in the Accused Products acts to achieve the same result as the collimating optical element described in the

- 121 -

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

Asserted Patents, including the limitations of spot size and focusing on detectors."
(Schaafsma Rep., ¶114.)

148.    But, whether under means-plus-function construction or plain and ordinary meaning, Dr. Schaafsma's doctrine of equivalents opinions would render meaningless the claimed function "to project a collimated beam" where the "optical relay element" "receives at least a portion of the collimated beam from the collimating optical element." As I have described in Section VIII.B.2.b, VIII.B.3.b and VIII.C, the input stage of Cytek's detector assembly projects a non-collimated focused beam onto the first filter, which then propagates a non-collimated focused/defocused beam along the optical path. As I also described in Sections VIII.B.3.a VIII.B.2.b, VIII.B.3.b and VIII.C, a demultiplexer that projects non-collimated light is fundamentally different and not in any way "equivalent" to one that requires collimated light, as in the specification of the Asserted Patents. Furthermore, as I explained in my opinion above for the "**No infringement of "Collimated Beam" under the Doctrine of Equivalents**," the file history of the Asserted Patents clearly demonstrate BEC's and a POSA's understanding that projecting a focused beam of converging rays of light is substantially different from and does not perform the same function, in the same way, to achieve the same result as "projecting a collimated beam."

149.    As such, a POSA would not believe that Cytek's input stage projecting

████████████████████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

a non-collimated focused beam onto the first filter to be equivalent to projecting a "collimated beam." The input beam from the input stage is tightly focused to a sharp focused beam spot of converging rays and the portion of the wavelengths of light reflected onto the first microlens is a non-collimated defocused beam of diverging rays. The focused beam from the input stage and the propagation of a non-collimated focused/defocused beam along the optical path also has substantially different size within Cytek's detector assembly. I also reference my opinions above that "collimated beam" is not infringed under the doctrine of equivalents.

150. **No infringement by a "concave mirror":** Dr. Houston and Dr. Schaafsma also identify the odd-numbered "concave mirrors" in the Accused Products as the "collimating optical element." (Houston Rep., ¶¶421-427; Schaafsma Rep., ¶201.) But the "collimating optical" element, whether means-plus-function or plain or ordinary, must (1) "receive light from a light source" and (2) "project a collimated beam." In the Accused Products, the microlenses do neither. In the Accused Products, the first lens in the input optics receive light from a light source; the microlenses do not "receive light from a light source," but instead receive light reflected from filters. Further, the microlenses do not "project a collimated beam." The microlenses reflect light; they do not "project" light.

151. In my opinion, a concave mirror would also not be equivalent to an achromatic doublet lens. An achromatic doublet lens refracts light. A concave

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

mirror reflects light. They are substantially different and direct light in substantially different ways. I also reference my opinions above that "collimated beam" is not infringed under the doctrine of equivalents.

> c. **1(c): "an optical relay element arranged to receive at least a portion of the collimated beam from the collimating optical element, the optical relay element comprising a curved mirror configured to reflect the portion of the collimated beam received from the collimating optical element to produce a first image;"**

152. In my opinion, the Accused Products do not infringe claim limitation 1(c), "an optical relay element arranged to receive at least a portion of the collimated beam from the collimating optical element, the optical relay element comprising a curved mirror configured to reflect the portion of the collimated beam." ('582 patent, cl. 1.) I incorporate my analysis in Sections VIII.B.2 and VIII.C above and Appendix A and my analysis in Section IX.A.1.a on "collimated beam," and I disagree with Dr. Schaafsma's and Dr. Houston's opinions.

153. The Court construed "portion" to mean "subset of the spectrum of wavelengths of light." (Sep. 17, 2025 Hr'g Tr. at 92:21-24.)

154. For the Accused Products, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Id.*, ¶204.) But in Dr. Schaafsma own Zemax printout that uses a single field point, ▮▮▮▮▮▮▮▮▮▮▮

- 124 -

██████████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

In addition, because the Accused Products do not have or include a "collimating optical element" the Accused Products also do not comprise an "optical relay element configured to receive light from the collimating optical element and to project a second image."

> c.  **20(d): "wherein the size of the first image is substantially the same as the size of the second image; and"**

182.  For this claim element, Dr. Schaafsma asserts that: "The maximum beam size through the WDM remains constant, meaning that all the afocal images are essentially of the same size, and this is evident from the spot diagrams I produced above. Likewise, because the mirrors all have the same curvature and spacing, ██

████████████████████████████████████

██████████ (Schaafsma Rep., ¶223.) I disagree with these assertions. First, as I discuss further below, the Accused Products are not and do not have a WDM. Second, as I have discussed for the previous claim elements, the "afocal images" that Dr. Schaafsma identifies, including the ████████████████

████████████ are not "images" and thus are not first (or second) images. Third, the maximum beam size through the relay module of the Accused Products does not remain constant. Rather, as shown in my footprint analysis, the beam size is always changing—always converging or diverging.

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement



(Ilkov Rebuttal Rep., App. C.)

183.    Finally, I disagree with Dr. Schaafsma seeming identification of the beam spots on non-consecutive filters (that is, on the even-numbered filters or, separately, on the odd-numbered filters) as "first" and "second" images. In my opinion, this is inconsistent with the Court's claim construction for the "first image" and "second image terms," inconsistent with BEC's infringement contentions, and inconsistent with the apparent identification of "first" and "second" images in Dr. Schaafsma's discussion of claim element 20(c).

184.    In my opinion, if the "image" terms are not indefinite,

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

Accordingly, the size of the "first image" is not "substantially the same as the size of the second image" in the Accused Products, and this claim element is not infringed.

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement



(Ilkov Rebuttal Rep., App. C.)

### d.    Conclusion: Asserted Claim 20

185.   For all these reasons, BEC's experts have not demonstrated that each of the Accused Products meets all limitations of claim 20, and therefore, in my opinion, claim 20 of the '582 patent is not infringed.

### 5.    Asserted Claims 23 and 26

186.   I understand claim 23 of the '582 patent depends from claim 22, which in turn depends from claim 20, and thus includes all elements of claims 20 and 22 in addition to the elements of claim 23.

187.   I understand claim 26 of the '582 patent depends from claim 22, which

- 142 -

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

CYTEK_0000567088 at -090; *id.* at CYTEK_0000567089.



**Figure 2:** Light emitted from the sample is collected and passes through the optical filter-based coarse wavelength division multiplexing (CWDM) demultiplexer arrays on the Cytek Aurora and Northern Lights cytometers.

*See also* CYTEK_0000330753 at -824 (describing Cytek's patent-pending detector modules as a CWDM *demultiplexer* assembly); CYTEK_0000029762 at -806 and CYTEK_0000766804 at -838

(emphasis added).)

205.  Cytek's CEO and CTO testified that

- 151 -

████████████████████████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████ (emphasis added).).

206.  Cytek's engineers further confirmed this.  *See e.g.,* █████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████

207.  Therefore, because the Accused Products do not contain a "wavelength division multiplexer (WDM)," they do not infringe.  I understand that Dr. Leary has also concluded that the Accused Products do not use a "wavelength division multiplexer (WDM)" because there is no optical component that multiplexes light.

208.  Further, setting aside the incorrect claim term "wavelength division

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

multiplexer (WDM)," as I stated in my Opening Invalidity Report, the specification of the Asserted Patents only discloses and enables a wavelength division (de)multiplexer that has a "first optical element"/"collimating optical element" that is configured to project light from a light source as a "collimated beam" (or "effectively collimated" beam) into and through a cascaded unit-magnification relay architecture. Accordingly, a POSA would not have understood that the inventor had possession of the more broadly claimed "WDM" in the Asserted Claims of the '443 patent that includes filters, mirrors, and detectors, without any requirement of collimation of the light from the source. In my opinion, a "first optical element"/"collimating optical element" to project a "collimated beam" (or "effectively collimated" beam) into and through the wavelength division (de)multiplexer's relay architecture is an essential feature of the disclosed inventions of the '443 patent. I further incorporate my opinions from Section XV.B of my Opening Invalidity Report.

209. As the Asserted Claims of the '443 patent only disclose and enable an invention that uses a "first optical element"/"collimating optical element" to project a "collimated beam" (or "effectively collimated" beam) into and through the wavelength division (de)multiplexer's relay architecture, the Accused Products do not infringe. As I explained above in Section IX.A.1.a for the "collimated beam" and "collimating optical element" terms in Claims 1 of the '582 patent, the Accused

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

Products do not use a "collimating optical element" to project a "collimated beam" (or "effectively collimated" beam) into and through the detector module.

> **b.    1(b): "a set of filters, each filter of the set of filters configured to pass a corresponding portion of multiple portions of light"; 1(d): "the at least one mirror configured to: receive one or more portions of the light from the set of filters"; and 1(e): "reflect the one or more portions of the light to the set of filters"**

210.   As I explain in more detail below regarding limitation 6(b) of the '443 patent, incorporated here, the '443 and '107 patents' claimed "filter" comprises a dichroic filter, which is functionally distinct from a bandpass filter. Thus, the Accused Products do not practice a "filter" or "a set of filters" as recited by these limitations because they use bandpass filters and not dichroic filters.

211.   The claims of the '443 patent recite a set of filters where each filter in the set is "configured to pass a corresponding portion of multiple portions of *light*" and at least one mirror where said mirror is configured to "receive one or more portions of *the light* from the set of filters" and "reflect *the* one or more portions of *the light* to the set of filters." As I stated in my Opening Invalidity Report, the specification of the Asserted Patents only discloses and enables the use of a "collimated beam" (or "effectively collimated" beam) with these optical components within the "WDM" unit-magnification relay architecture. I further incorporate my opinions from Section XV.H of my Opening Invalidity Report.

212.   As the Asserted Claims of the '443 patent only disclose and enable an

█████████████████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

invention that uses a "collimated beam" (or "effectively collimated" beam) with the claimed "filters" and "mirror" within the "WDM" unit-magnification relay architecture, the Accused Products do not infringe.  As I explained above in Section IX.A.1.a for the "collimated beam" terms in Claim 1 of the '582 patent, the Accused Products do not use a "collimated beam."  For the same reasons, the Accused Products do not use a "collimated beam" (or "effectively collimated" beam) in the Asserted Claims of the '443 patent.  For example, the claim limitations 1(b), 1(d), and 1(e) requires that the mirror is configured to:  (1) "receive one or more portions of the light from the set of filters" and (2) "reflect the one or more portions of the light to the set of filters." ████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████    ████████████████████████

███████████████████████████████████████████████.

- 155 -

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement



(Ilkov Rebuttal Rep., App. B.)

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

(Ilkov Rebuttal Rep., App. C.)

213.



Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

(Schaafsma Rep., ¶¶129-132.)  In particular, ███████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████.  As I have noted previously, during prosecution BEC distinguished a "collimated beam" from a beam that focuses or converges.  (*See, e.g.*, BEC-CYTEK-00004404 at -4753-754 ('106 patent file history (June 4, 2024 Applicant Remarks), 9-10) (Beckman's statement that in "FIG. 25 (light 'effectively collimated' … is not converging.")).)

214.  This contrasts with FIG. 25 of the Asserted Patents, which Dr.

████████████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

Schaafsma has annotated to show a collimated beam with separation of different wavelengths as it travels through the detector module.



FIG. 25

(Schaafsma Rep., ¶82.)

### c.    Conclusion: Asserted Claim 4

215.   For all these reasons, BEC's experts have not demonstrated that each of the Accused Products meets all limitations of claim 1, and therefore, in my opinion, claim 4 of the '443 patent is not infringed.

████████████████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

### 2. Asserted Claim 6

216. I understand claim 6 of the '443 patent depends from claim 1, and thus includes all elements of claim 1 in addition to the elements of claim 6.

#### a. 6(b): "the set of filters include at least one dichroic filter, and"

217. The Accused Products do not practice limitation 6(b) of the '443 patent because they do not use dichroic filters. Instead, the Accused Products use bandpass filters, which are distinct in design and function.

218. Bandpass filters and dichroic filters are distinct types of optical filters, with unique properties. A bandpass filter is a "wave filter which has a single transmission band, [with] neither of the cutoff frequencies being zero or infinite," whereas a dichroic filter is an "optical filter designed to transmit light selectively according to wavelength (most often, a high-pass or low-pass filter)." (IEEE Standard Dictionary of Electrical & Electronics Terms, 4th ed., pp. 80, 258.)

219. As I explained in my Opening Report, dichroic filters are the only type of filter disclosed by the '443 and '107 patents' specification for receiving and reflecting an "effectively collimated" beam of light. (*See* Ilkov Op. Rep., ¶¶1033-1036; *see also, e.g.*,'582 patent, 45:8-13, 45:32-38, 45:44-49, 46:17-27, FIG. 25, FIG. 25A, FIG. 27, FIG. 28.)

220. I have also reviewed Dr. Weigl's Opening Report, where he explains the differences between dichroic filters and bandpass filters, and provides an analysis

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

representation of the shape of beam of light because the light source in the Accused Products is an extended light source, not a point source.  I already provided a more accurate Zemax modeling of the same file above.  My Zemax modeling shows that ███████████████████████████████████████ I also provide the spot sizes at each filter and microlens, which shows that ███████████████████ ████████████████████████ This further shows that the beam in the Accused Products does not satisfy limitation 10(b) even under Plaintiff's indefinite definition of "collimated beam" which is "nearly parallel."

###### c.      Conclusion: Asserted Claim 10:

236.    For all these reasons, BEC's experts have not demonstrated that each of the Accused Products meets all limitations of claims 1, 9 and 10, and therefore, in my opinion, claim 10 of the '443 patent is not infringed.

#### 4.      Asserted Claim 11

237.    I understand claim 11 of the '443 patent depends from claim 1, and thus includes all elements of claim 1 in addition to the elements of claim 11.

###### a.      "A flow cytometer comprising the WDM of claim 1."

238.    I understand that Cytek and BEC agree and the Court has construed the preamble of claim 11 of the '443 patent as limiting the claim scope.  As I previously explained in Section XV.A of my Opening Invalidity Report, which I incorporate here, the disclosures of the Asserted Patents are directed towards a conventional flow

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

cytometer. For example, the Asserted Patents expressly describe one-detector-one-dye to capture the dye's fluorescent emission peak: "Detecting and analyzing brightness changes in a combination of scattered and fluorescent light at each detector (*one for each fluorescent emission peak*) permits deriving various types of information about the physical and chemical structure of each individual particle." ('582 patent, 27:33-37 (emphasis added).) This is describing conventional flow cytometry.

239. Additionally, the Asserted Patents have extensive and repeating disclosures relating to a "replaceable dichroic filter assembly" within the claimed and disclosed "WDM." (*E.g.*, '107 patent, 47:54-57 ("To accommodate different types of fluorescence probe, various techniques have been developed to enable user *selection of dichroic filters suitable for their particular needs*."); *id.* at 48:1-3 ("fabricating a *replaceable dichroic filter assembly* 934 illustrated in FIG. 29C"); *id.* at 48:39-42 ("FIGS. 30A and 30B depict an embodiment of the present disclosure where the fore-mentioned *replaceable dichroic filter assembly 934 is used in the WDM 90* for optically processing a beam of light from an extended light source."); *id.* at 48:47-50 ("As shown in FIG. 30B, when *installing a dichroic filter* 927 the reference surface 931 of *the replaceable dichroic filter assembly* 934 may slide against the flat surface of the glass reference block 935 and be kept in contact therewith by a spring loaded screw 936.").) Such disclosures in the Asserted Patents

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

only have relevance in the context of conventional flow cytometry, where different filters would need to be changed when using different dyes with different emission peaks. Because spectral flow cytometers are designed to collect the full fluorescent emission across the multiple-detector channels, changing filters is not necessary. This is yet another reason why the Asserted Patents are directed to and only disclose a conventional one-detector-one-dye flow cytometer.

240. The disclosures in the specification do not mention using the spectral signatures unique to different dyes, unmixing algorithms, or any other disclosures that would even remotely indicate or suggest that the inventor contemplated, possessed, or had enabled a spectral flow cytometer. In my opinion, the claimed **"flow cytometer"** is directed to a conventional flow cytometer and cannot cover a spectral flow cytometer.

241. The Accused Products are spectral flow cytometers. For example, Cytek's documents describe "Cytek's Approach to Spectral Flow Cytometry." CYTEK_0000188680. Cytek states: "In 2017, Cytek Biosciences introduced the Cytek® Aurora system to the flow cytometry community. The Aurora system introduced several fluidic and excitation optics improvements from what existing conventional cytometers were offering[.]" Cytek's improvements included "flat-top beam profiles to uniformly energize the fluorochromes on each cell" and unique "emission optics design" "integrated with spectral analytics, enabling users to build

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

larger panels with fewer lasers" – making "full-spectral measurement of 24 colors for high-quality flow data with only 3 lasers possible." (*Id.* at CYTEK_0000188681.) Instead of one-detector-one dye, "[t]he design of the Aurora and Northern Lights systems allows for an increased number of detectors per laser without sacrificing the sensitivity of each detector channel with narrow emission bands." (*Id.* at CYTEK_0000188682.) Cytek's witnesses have also testified that the Accused Products are spectral flow cytometers.

I have also examined and used the Accused Products and confirm that they are spectral flow cytometers.

### b.    Conclusion: Asserted Claim 11

242.  For all these reasons, BEC's experts have not demonstrated that each

- 170 -

████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

of the Accused Products meets all limitations of claims 1 and 11, and therefore, in

my opinion, claim 11 of the '443 patent is not infringed.

### 5.    Asserted Claim 15

243.    I understand claim 15 of the '443 patent depends from claim 13, which

in turn depends from claim 11, which in turn depends from claim 1, and thus includes

all elements of claims 1, 11 and 13 in addition to the elements of claim 15.

#### a.    Conclusion: Asserted Claim 15

244.    For all these reasons, BEC's experts have not demonstrated that each

of the Accused Products meets all limitations of claims 1 and 11, and therefore, in

my opinion, claim 15 of the '443 patent is not infringed.

### C.    BEC's Experts Fail to Demonstrate All Elements of the '107 Asserted Claims Are Present in the Accused Products Either Literally or Under the Doctrine of Equivalents

245.    In my opinion, Drs. Houston and Schaafsma have failed to demonstrate

that the Accused Products contain each and every limitation of the '107 Asserted

Claims (claims 5, 16, 18, 26, 27, and 29), either literally or under the doctrine of

equivalents, and thus those claims are not directly infringed.

246.    Below I have reproduced the asserted claims of the '107 patent, and the

claims from which they depend, broken down into limitations that match how BEC's

experts evaluated the claims:

(1a) 1. A flow cytometer comprising:
(1b) an optical fiber; and

███████████████████████████████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

**(16i)** wherein each of the plurality of filters is configured to receive light such that: a portion of light passes through the filter; and another portion of light is reflected; and

**(16j)** wherein each of the plurality of mirrors is configured to: receive light reflected by a filter of the plurality of filters; and reflect light to another filter of the plurality of filters.

**(17a)** 17. The flow cytometer of claim 16,

**(17b)** wherein the WDM further comprises: a plurality of focusing lenses,

**(17c)** wherein each of the plurality of focusing lenses is configured to focus light that passed through a filter of the plurality of filters to a spot on an APD of the plurality of APDs,

**(17d)** wherein the spot has a diameter that is smaller than a diameter of a core of the multimode optical fiber.

**(18a)** 18. The flow cytometer of claim 17,

**(18b)** wherein for each of the plurality of focusing lenses, the diameter of the spot is less than 1 mm.

**(20a)** 20. The flow cytometer of claim 16,

**(20b)** wherein the plurality of mirrors includes more than one concave mirror.

**(21a)** 21. The flow cytometer of claim 20,

**(21b)** wherein the WDM is configured such that a portion of an optical path between the plurality of mirrors and the plurality of filters forms a zig-zag pattern.

**(22a)** 22. The flow cytometer of claim 21,

**(22b)** wherein the laser is configured to emit blue light, yellow-green light, violet light, or ultraviolet light.

**(26a)** 26. The flow cytometer of claim 22, wherein:

**(26b)** the WDM further comprises a block comprising a first surface; and

**(26c)** each of the plurality of filters is coupled to the first surface of the block.

**(27a)** 27. The flow cytometer of claim 26,

**(27b)** wherein the flow cytometer is a benchtop flow cytometer.

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

**(28a)** 28. The flow cytometer of claim 26,
**(28b)** wherein the flow cytometer is compact.

**(29a)** 29. The flow cytometer of claim 28, wherein:
**(29b)** wherein the WDM is capable of detecting a substantially full spectrum of visible light.

247. I have not evaluated all limitations of 107 Asserted Claims. The limitations I address, and my opinions concerning them, are laid out below.

### 1.    Asserted Claim 5

248. I understand claim 5 of the '107 patent depends from claim 3, which in turn depends from claim 2, which in turn depends from claim 1 and thus includes all elements of claims 1, 2 and 3 in addition to the elements of claim 5.

#### a.    1(a): "A flow cytometer comprising:"

249. I understand that Cytek and BEC agree and the Court has construed the preamble of claim 1 of the '107 patent as limiting the claim scope. As I previously explained in Section XV.A of my Opening Invalidity Report, which I incorporate here, the disclosures of the Asserted Patents are directed towards a conventional flow cytometer. For example, the Asserted Patents expressly describe one-detector-one-dye to capture the dye's fluorescent emission peak: "Detecting and analyzing brightness changes in a combination of scattered and fluorescent light at each detector (*one for each fluorescent emission peak*) permits deriving various types of information about the physical and chemical structure of each individual particle."

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

('582 patent, 27:33-37 (emphasis added).) This is describing conventional flow cytometry.

250. Additionally, the Asserted Patents have extensive and repeating disclosures relating to a "replaceable dichroic filter assembly" within the claimed and disclosed "WDM." (*E.g.*, '107 patent, 47:54-57 ("To accommodate different types of fluorescence probe, various techniques have been developed to enable user *selection of dichroic filters suitable for their particular needs.*"); *id.* at 48:1-3 ("fabricating a *replaceable dichroic filter assembly* 934 illustrated in FIG. 29C"); *id.* at 48:39-42 ("FIGS. 30A and 30B depict an embodiment of the present disclosure where the fore-mentioned *replaceable dichroic filter assembly 934 is used in the WDM 90* for optically processing a beam of light from an extended light source."); *id.* at 48:47-50 ("As shown in FIG. 30B, when *installing a dichroic filter* 927 the reference surface 931 of *the replaceable dichroic filter assembly* 934 may slide against the flat surface of the glass reference block 935 and be kept in contact therewith by a spring loaded screw 936.").) Such disclosures in the Asserted Patents only have relevance in the context of conventional flow cytometry, where different filters would need to be changed when using different dyes with different emission peaks. Because spectral flow cytometers are designed to collect the full fluorescent emission across the multiple-detector channels, changing filters is not necessary. This is yet another reason why the Asserted Patents are directed to and only disclose

- 175 -

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

a conventional one-detector-one-dye flow cytometer.

251.    The disclosures in the specification do not mention using the spectral signatures unique to different dyes, unmixing algorithms, or any other disclosures that would even remotely indicate or suggest that the inventor contemplated, possessed, or had enabled a spectral flow cytometer. In my opinion, the claimed "**flow cytometer**" is directed to a conventional flow cytometer and cannot cover a spectral flow cytometer.

252.    The Accused Products are spectral flow cytometers. For example, Cytek's documents describe "Cytek's Approach to Spectral Flow Cytometry." CYTEK_0000188680. Cytek states: "In 2017, Cytek Biosciences introduced the Cytek® Aurora system to the flow cytometry community. The Aurora system introduced several fluidic and excitation optics improvements from what existing conventional cytometers were offering[.]" Cytek's improvements included "flat-top beam profiles to uniformly energize the fluorochromes on each cell" and unique "emission optics design" "integrated with spectral analytics, enabling users to build larger panels with fewer lasers" – making "full-spectral measurement of 24 colors for high-quality flow data with only 3 lasers possible." (*Id.* at CYTEK_0000188681.) Instead of one-detector-one dye, "[t]he design of the Aurora and Northern Lights systems allows for an increased number of detectors per laser without sacrificing the sensitivity of each detector channel with narrow

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

emission bands." (*Id*. at CYTEK_0000188682.) Cytek's witnesses have also testified that the Accused Products are spectral flow cytometers.

 

 b.    1(c): "a wavelength division multiplexer (WDM) configured to receive light form the optical fiber, wherein the WDM comprises:"

253. The claims of the '107 patent recite a "wavelength division multiplexer (WDM)." As discussed above for claim limitation 1(a) of the '443 patent, which I incorporate by reference here, a POSA would understand that a wavelength division multiplexer *multiplexes* wavelengths of light, whereas a wavelength division demultiplexer *demultiplexes* wavelengths of light. For the same reasons as discussed

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

for claim limitation 1(a) of the '443 patent, the Accused Products do not use a wavelength division multiplexer to multiplex light and thus do not infringe claim 1 of the '107 patent.

### c.    1(e): "an array of filters"

254.  As I explain for limitation 6(b) of the '443 patent, incorporated here, the '443 and '107 patents' claimed "filter" comprises a dichroic filter, which is functionally distinct from a bandpass filter.  Thus, the Accused Products do not practice "an array of filter" as claimed by this limitation (or any other claim limitation of the '107 patents that recites "filter") because they use bandpass filters and not dichroic filters.

### d.    1(g): "wherein each of the filters in the array of filters is configured to receive light such that: a portion of the light passes through the filter; and another portion of the light is reflected; and" 1(h): "wherein each of the mirrors in the array of mirrors is configured to: receive light reflected by a filter in the array of filters; and reflect light to another filter in the array of filters."

255.  Claim 1 of the '107 patent recites that each filter in the array of filters is "configured to receive *light*" and reflect a "portion of the *light*" and each mirror in the array of mirrors is "configured to receive *light* reflected by a filter in the array of filters and reflect *light* to another filter in the array of filters."  As I stated in my Opening Invalidity Report, the specification of the Asserted Patents only discloses and enables the use of a "collimated beam" (or "effectively collimated" beam) with

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

these optical components within the "WDM" unit-magnification relay architecture. I further incorporate my opinions from Section XV.H of my Opening Invalidity Report.

256.   As claim 1 of the '107 patent only discloses and enables an invention that uses a "collimated beam" (or "effectively collimated" beam) with the claimed "filters" and "mirrors" within the "WDM" unit-magnification relay architecture, the Accused Products do not infringe.  As I explained above in Section IX.A.1.a for the "collimated beam" terms in Claim 1 of the '582 patent, the Accused Products do not use a "collimated beam."  For the same reasons, the Accused Products do not use a "collimated beam" (or "effectively collimated" beam) in the claim 1 of the '107 patent.  For example, the claim limitations 1(g) and 1(h) require that the mirror is configured to:  (1) "receive light reflected by a filter in the array of filters" and (2) "reflect light to another filter in the array of filters."

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement



(Ilkov Rebuttal Rep., App. B.)

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

(Ilkov Rebuttal Rep., App. C.)

257.    Even using Dr. Schaafsma's Zemax printout of only a single center field point,

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement



(Schaafsma Rep., ¶¶129-132.)

As I have noted previously, during prosecution BEC distinguished a "collimated beam" from a beam that focuses or converges. (*See, e.g.*, '106 patent file history, June 4, 2024 Applicant Remarks, at 9-10 (Beckman's statement that in "FIG. 25 (light 'effectively collimated' … is not converging.").)

258. This contrasts with FIG. 25 of the Asserted Patents, which Dr. Schaafsma has annotated to show a collimated beam with separation of different

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

wavelengths as it travels through the detector module.



FIG. 25

(Schaafsma Rep., ¶82.)

### e.    Conclusion: Asserted Claim 5

259.   For all these reasons, BEC's experts have not demonstrated that each of the Accused Products meets all limitations of claim 1, and therefore, in my opinion, claim 5 of the '107 patent is not infringed.

████████████████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

### 2.    Asserted Claim 16

#### a.    16(a): "A flow cytometer comprising:"

260.    I understand that Cytek and BEC agree and the Court has construed the preamble of claim 16 of the '107 patent as limiting the claim scope.  As I previously explained in Section XV.A of my Opening Invalidity Report, which I incorporate here, the disclosures of the Asserted Patents are directed towards a conventional flow cytometer.  For example, the Asserted Patents expressly describe one-detector-one-dye to capture the dye's fluorescent emission peak:  "Detecting and analyzing brightness changes in a combination of scattered and fluorescent light at each detector (*one for each fluorescent emission peak*) permits deriving various types of information about the physical and chemical structure of each individual particle." ('582 patent, 27:33-37 (emphasis added).)  This is describing conventional flow cytometry.

261.    Additionally, the Asserted Patents have extensive and repeating disclosures relating to a "replaceable dichroic filter assembly" within the claimed and disclosed "WDM." (*E.g.*, '107 patent, 47:54-57 ("To accommodate different types of fluorescence probe, various techniques have been developed to enable user *selection of dichroic filters suitable for their particular needs*."); *id.* at 48:1-3 ("fabricating a *replaceable dichroic filter assembly* 934 illustrated in FIG. 29C"); *id.* at 48:39-42 ("FIGS. 30A and 30B depict an embodiment of the present disclosure

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

where the fore-mentioned *replaceable dichroic filter assembly 934 is used in the WDM 90* for optically processing a beam of light from an extended light source."); *id.* at 48:47-50 ("As shown in FIG. 30B, when *installing a dichroic filter* 927 the reference surface 931 of *the replaceable dichroic filter assembly* 934 may slide against the flat surface of the glass reference block 935 and be kept in contact therewith by a spring loaded screw 936.").) Such disclosures in the Asserted Patents only have relevance in the context of conventional flow cytometry, where different filters would need to be changed when using different dyes with different emission peaks. Because spectral flow cytometers are designed to collect the full fluorescent emission across the multiple-detector channels, changing filters is not necessary. This is yet another reason why the Asserted Patents are directed to and only disclose a conventional one-detector-one-dye flow cytometer.

262.    The disclosures in the specification do not mention using the spectral signatures unique to different dyes, unmixing algorithms, or any other disclosures that would even remotely indicate or suggest that the inventor contemplated, possessed, or had enabled a spectral flow cytometer. In my opinion, the claimed "**flow cytometer**" is directed to a conventional flow cytometer and cannot claim a spectral flow cytometer.

263.    The Accused Products are spectral flow cytometers. For example, Cytek's documents describe "Cytek's Approach to Spectral Flow Cytometry."

- 185 -

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

(CYTEK_0000188680.) Cytek states: "In 2017, Cytek Biosciences introduced the Cytek® Aurora system to the flow cytometry community. The Aurora system introduced several fluidic and excitation optics improvements from what existing conventional cytometers were offering[.]" Cytek's improvements included "flat-top beam profiles to uniformly energize the fluorochromes on each cell" and unique "emission optics design" "integrated with spectral analytics, enabling users to build larger panels with fewer lasers" – making "full-spectral measurement of 24 colors for high-quality flow data with only 3 lasers possible." (*Id.* at CYTEK_0000188681.) Instead of one-detector-one dye, "[t]he design of the Aurora and Northern Lights systems allows for an increased number of detectors per laser without sacrificing the sensitivity of each detector channel with narrow emission bands." (*Id.* at CYTEK_0000188682.) Cytek's witnesses also testified that the Accused Products are

- 186 -

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

I have also examined and used the Accused Products and confirm that they are spectral flow cytometers.

> **b.      16(b): a flow cell configured to permit liquid to flow through the flow cell; 16(c): a laser configured to project light into the flow cell**

264.   I have already provided my opinion on the invalidity of terms related to "flow cell" in my opening report, which I incorporate here.  (Ilkov Op. Rep., Section XV.G.)   In my opinion, the only flow cell supported by the written description is one that includes a composite microscope objective, comprising a concave mirror and an aberration corrector plate.  Even if claim 16 is limited to this scope, claim limitation 16(b) is not infringed because the Accused Products

.

265.   I reviewed the documents cited by Dr. Houston in support of her opinion that the Accused Products infringe this claim limitation.

(CYTEK_0000001424 at -425

); CYTE _0000000112  at  -113  (same);

- 187 -

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

CYTEK_0000000445-46 (same); CYTEK_0000020895 ███████████

████████████

266.  Instead, the Accused Products utilize a flow cell ██████████

██ (CYTEK_0000892238 at -248, -252 ████████████

████████████████████████;

CYTEK_0000003882 at -4004 ████████████

████████████ CYTEK_0000002507 at -630 (same);

CYTEK_0000001226 at -227 ████████████

████████████

████████████ CYTEK_0000002061 at -2154-

2158 (████████████

████████████ CYTEK_0000002264 at -297-300 (same).) ██

████████████ cannot be the claimed flow cell because

it is distinct from a composite microscope ████████████

████████████ the only structure that is supported by the

specification. (CYTEK_0000000271 at -272, -283; CYTEK_0000000285 at -286,

-297.)    Furthermore, ████████████

(CYTEK_0000000112 ████ ████ ██ ██ ██ ██);

CYTEK_0000000271 ████ ████ ██ ████ ██);

CYTEK_0000000285    (same);    CYTEK_0000002264-2506    at    2297-2300

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

267.

268. Dr. Schaafsma's opinion that this claim limitation is infringed, (Schaafsma Rep., ¶¶298-99), is insufficient. Dr. Schaafsma uses the word "flow cell" only once in Section XI of his Report. And just like Dr. Houston, Dr. Schaafsma's report similarly fails to show that the flow cell used in the Accused Products includes a composite microscope objective, comprising a concave mirror and an aberration corrector plate, the only flow cell that is supported by the written description of the '107 patent.

c.    16(d): "a multimode optical fiber configured to receive light from the flow cell; and"

269. I reiterate my opinion regarding the invalidity of the term "flow cell" as explained in my opening report and incorporate here. (Ilkov Op. Rep., Section XV.G.) I also incorporate my discussions regarding non-infringement of claim limitation 16(c) above regarding "flow cell."

270. As I discussed above, ███████████████████ ████████████████████████████████████████. Therefore, the optical fiber in the Accused Products is not 'configured to receive light from the flow cell," but rather ████████████████ ████████████████████ before being received by the optical fiber.

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

(Houston Rep., ¶245 (in the Accused Products, ████████████████████ ████████████████████████████████ (emphasis added).) The figure that Dr. Houston uses, reproduced below, clearly shows that ██████████ ███████████████████████████████████

(Houston Rep., ¶245 (citing CYTEK_0000003882 at -4004; CYTEK_0000002507 at -630).)

271.   I disagree with Dr. Houston's opinion that "Element 16(d) does not require that the multimode fiber receive light directly from the flow cell without any intervening optical elements," (Houston Rep., ¶247), as a POSA would understand that the fiber receives light <u>directly</u> from the flow cell based on the plain meaning of the claim.  In the Accused Products, ████████████████████ ████████████████████████████████ that light is no longer "light

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

from the flow cell," but

> **d.    16(e): "a wavelength division multiplexer (WDM)
> configured to receive light from the multimode optical
> fiber, wherein the WDM comprises:"**

272.   . The claims of the '107 patent recite a "wavelength division multiplexer (WDM)." As discussed above for claim limitation 1(a) of the '443 patent, which I incorporate by reference here, a POSA would understand that a wavelength division multiplexer *multiplexes* wavelengths of light, whereas a wavelength division demultiplexer *demultiplexes* wavelengths of light. For the same reasons as discussed for claim limitation 1(a) of the '443 patent, the Accused Products do not use a wavelength division multiplexer to multiplex light and thus do not infringe claim 1 of the '107 patent.

273.   In addition, setting aside the incorrect claim term "wavelength division multiplexer (WDM)," as I stated in my Opening Invalidity Report, the specification of the Asserted Patents only discloses and enables a wavelength division (de)multiplexer that has a "first optical element"/"collimating optical element" that is configured to project light from a light source as a "collimated beam" (or "effectively collimated" beam) into and through a cascaded unit-magnification relay architecture. Accordingly, a POSA would not have understood that the inventor had possession of the more broadly claimed "WDM" in the Asserted Claims of the '107 patent that includes filters, mirrors, and detectors, without any requirement of

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

collimation of the light from the source. In my opinion, a "first optical element"/"collimating optical element" to project a "collimated beam" (or "effectively collimated" beam) into and through the wavelength division (de)multiplexer's relay architecture is an essential feature of the disclosed inventions of the '107 patent. I further incorporate my opinions from Section XV.B of my Opening Invalidity Report.

274.    As the Asserted Claims of the '107 patent only disclose and enable an invention that uses a "first optical element"/"collimating optical element" to project a "collimated beam" (or "effectively collimated" beam) into and through the wavelength division (de)multiplexer's relay architecture, the Accused Products do not infringe. As I explained above in Sections IX.A.1.a for the "collimated beam" and "collimating optical element" terms in Claims 1 of the '582 patent, the Accused Products do not use a "collimating optical element" to project a "collimated beam" (or "effectively collimated" beam) into and through the detector module.

### e.    16(g): "a plurality of filters"

275.    As I explain regarding limitation 6(b) of the '443 patent, incorporated here, the '443 and '107 patents' claimed "filter" comprises a dichroic filter, which is functionally distinct from a bandpass filter. Thus, the Accused Products do not practice "a plurality of filters" (or any other claim limitation of the '107 patent that recites "filter") because

- 192 -

███████████████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

> **f.**    **16(i): "wherein each of the plurality of filters is configured to receive light such that: a portion of light passes through the filter; and another portion of light is reflected; and" 16(j): "wherein each of the plurality of mirrors is configured to: receive light reflected by a filter of the plurality of filters; and reflect light to another filter of the plurality of filters."**

276.    Claim 16 of the '107 patent recites that each filter in the plurality of filters is "configured to receive *light*" and reflect a "portion of the *light*" and each mirror in the plurality of mirrors is "configured to receive *light* reflected by a filter in the plurality of filters[] and reflect *light* to another filter in the plurality of filters." As I stated in my Opening Invalidity Report, the specification of the Asserted Patents only discloses and enables the use of a "collimated beam" (or "effectively collimated" beam) with these optical components within the "WDM" unit-magnification relay architecture. I further incorporate my opinions from Section XV.H of my Opening Invalidity Report.

277.    As claim 16 of the '107 patent only discloses and enables an invention that uses a "collimated beam" (or "effectively collimated" beam) with the claimed "filters" and "mirrors" within the "WDM" unit-magnification relay architecture, the Accused Products do not infringe. As I explained above in Section IX.A.1.a for the "collimated beam" terms in Claim 1 of the '582 patent, the Accused Products do not use a "collimated beam." For the same reasons, the Accused Products do not use a "collimated beam" (or "effectively collimated" beam) in the claim 16 of the '107

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

patent.  For example, the claim limitations 16(i) and 16(j) require that the mirror is

configured to:  (1) "receive light reflected by a filter in the plurality of filters" and

(2) "reflect light to another filter in the plurality of filters."

(Ilkov Rebuttal Rep., App. B.)

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement



(Ilkov Rebuttal Rep., App. C.)

278.   Even using Dr. Schaafsma's Zemax printout of only a single center field point,



Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

(Schaafsma Rep., ¶¶129-132.)

As I have noted previously, during prosecution BEC distinguished a "collimated beam" from a beam that focuses or converges.  (*See, e.g.*, '106 patent file history, June 4, 2024 Applicant Remarks,  at 9-10 (Beckman's statement that in "FIG. 25 (light 'effectively collimated' … is not converging.").)

279.    This contrasts with FIG. 25 of the Asserted Patents, which Dr. Schaafsma has annotated to show a collimated beam with separation of different

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

wavelengths as it travels through the detector module.



FIG. 25

(Schaafsma Rep., ¶82.)

### g.    Conclusion: Asserted Claim 16:

280.   For all these reasons, BEC's experts have not demonstrated that each of the Accused Products meets all limitations of claim 16, and therefore, in my opinion, claim 16 of the '107 patent is not infringed.

### 3.    Asserted Claim 18

281.   I understand claim 18 of the '107 patent depends from claim 17, which

███████████████████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

### a.    Conclusion: Asserted Claims 26, 27, and 29:

286.   For all these reasons, BEC's experts have not demonstrated that each of the Accused Products meets all limitations of claim 16, and therefore, in my opinion, claim 16 of the '107 patent is not infringed.

## X.    CYTEK DOES NOT INFRINGE UNDER 35 U.S.C. § 271

287.   As I have analyzed immediately above, BEC's experts have failed to demonstrate that all limitations of the Asserted Claims are present in the Accused Products.  I understand this precludes a finding of infringement, and it is my opinion that BEC has not demonstrated that Cytek has infringed any Asserted Claim by making, selling, offering to sell, using and/or importing into the United States any of the Accused Products, as is required by 35 U.S.C. § 271(a) to demonstrate infringement.

## XI.   CYTEK'S PRODUCTS DO NOT INFRINGE THE ASSERTED PATENTS UNDER THE REVERSE DOCTRINE OF EQUIVALENTS

288.   I understand from counsel that pursuant to the reverse doctrine of equivalents, a finding of infringement may be precluded where an accused product is so far changed from the principles of a patented invention that it operates in a substantially different manner (even if it performs the same or similar function as the claimed invention).  For the reasons I describe below, the operation of the Accused Products is rooted in fundamentally different principles than those underlying the claimed invention, reflecting material innovation in the field of flow

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement cytometry over the Asserted Patents.

289.   Specifically, the Accused Products comprise (1) a wavelength division demultiplexer that does *not* use a "collimating optical element" that projects a "collimated beam" as its input beam, but instead includes a focusing lens that projects a converging beam as its input beam; (2) a wavelength division demultiplexer that does not use a "collimated beam" throughout its optical relay configuration, but instead uses an alternatively converging and diverging beam; and (3) a flow cytometer system that practices spectral flow cytometry as opposed to conventional flow cytometry.

290.   A POSA would recognize the disclosed invention depends on the use of a collimating optical element and the propagation of a collimated beam throughout the relay architecture for the operation of conventional flow cytometry, and is fundamentally unlike Cytek's design which enables its innovative spectral cytometry.

291.   In other words, even if the Accused Products were found to perform a similar function as the inventions (directing wavelengths of light between filter, mirrors, and detectors), they do so in a substantially different way described nowhere in the specification of Asserted Patents.

292.   Therefore, to the extent BEC establishes literal infringement of the Asserted Claims of the '443 and '107 Patents, which, notably use the broad term

- 200 -

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

"light" rather than a "collimated beam" as recited in the '582 Asserted Claims and as used to describe the alleged inventions in the specification, it is my opinion that the reverse doctrine of equivalents applies, and should bar a finding of infringement of the Asserted Claims of the '443 and '107 patents.

### A. The Fair Scope of the Invention of the Asserted Patents and the Principles of Operation of the Accused Products Are Fundamentally Different

293. The alleged invention extends to a wavelength division (de)multiplexer that requires a "collimating optical element" and the use of a "collimated beam." Indeed, the specification of the Asserted Patents refers to the use of a single lens **902** as the "collimating optical element" that projects a "collimated beam" in the WDM. (*E.g.*, '582 patent, *id.*, 21:40-45 ("... [A] flow cytometer having a wavelength division multiplexer (WDM), which includes an extended light source providing light that forms an object, *a collimating optical element that captures light from the extended light source and projects a magnified image of the object as a first light beam* ..." (emphasis added)); *id.*, 44:58-61 ("As depicted in FIG. 25, *a collimating optical element*, in this case an achromatic doublet lens **902**, may capture the light from source **901**, and project a magnified image of the object near a final focusing lens **905**" (emphasis added); *see also id.*, 4:34-38 ("[A] wavelength division multiplexer ('WDM') may include at least two optical elements [wherein t]he first optical element collimates a beam of light received from an extended light source,

- 201 -

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

such as the light from a pinhole or from a multimode optical fiber.").)  This is illustrated in the Figure 25, reproduced below:



'582 Patent, Figure 25 (annotated & magnified)

FIG. 25

Thus, the specification of the Asserted Patents consistently teaches the use of a wavelength division (de)multiplexer having a collimating optical element to collimate the input beam, such that a POSA would have understood the inventor to have disclosed a requirement of using an initially collimated beam within the wavelength division (de)multiplexer invention.

294.  As I have explained in detail above, ███████████████████████

███████████████████████████████████████████████

███████████████████████████  Accordingly, Cytek's Accused Products do not use a wavelength division demultiplexer with a collimating optical element and

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

collimated input beam.



295.    The alleged invention extends to a wavelength division (de)multiplexer that requires the use of a "collimated beam" or a "re-collimated beam" throughout the relay architecture. (*E.g.*, '582 patent, 45:26-29 ("The relay imaging concave mirror **907** therefore effectively doubles the collimated beam path without expanding the beam's diameter."); *id.*, at 4:48-50 ("Additional optical elements in the same 1:1 image relay configuration may also be included to further extend the collimated optical path."); *id.*, at 45:66-46:1 ("[O]ne may also use refractive optics . . . as a relay element to extend the path of the collimated beam of light.").) In fact, the specification of the Asserted Patents states that "efficient color

- 203 -

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

separation can *only* be accomplished economically with collimated light beam."

('582 patent, 44:25-26 (emphasis added).)

296.    Dr. Schaafsma's annotations of FIG. 25 illustrate how the alleged

invention relies on a collimated beam throughout the detector module to achieve

color separation:



Thus, the specification of the Asserted Patents consistently teaches a 1:1 relay

architecture for maintaining a collimated beam throughout the detector module, such

that a POSA would have understood the inventor to have disclosed a requirement

that the wavelength division demultiplexer use a collimated beam throughout the

relay architecture.

■■■■■■■■■■■■■■■■■■■■

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

297.   As I have explained above, Cytek's APD assembly module relies on a non-collimated, alternating converging and diverging beam throughout the relay architecture for achieving color separation.  As I have shown with reference to my Zemax file analyses, the Accused Products ■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■ Rather, a beam that alternately converges and diverges (and focuses and defocuses) propagates through the relay architecture in the Accused Products.  Accordingly, Cytek's Accused Products do not use a wavelength division demultiplexer that uses a collimated beam throughout the relay architecture.

298.   In my opinion, the use of a focused input beam as opposed to a collimated input beam, and the propagation of an alternately converging and diverging beam as opposed to a "collimated beam" is material to how the Cytek Accused Products function to detect fluorescence, which is by full spectral analysis.

299.       The alleged invention is directed to a conventional, one-detector-one-dye flow cytometer.  I have explained this in Section XI.A.2 of my Opening Report, which I incorporate here. The specification expressly describes the one-detector-one-dye approach to capture a dye's fluorescent emission peak: "Detecting and analyzing brightness changes in a combination of scattered and fluorescent light at each detector (one for each fluorescent emission peak) permits deriving various

- 205 -

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

types of information about the physical and chemical structure of each individual particle." ('582, 27:33-37.) The specification contains no disclosure relating to spectral flow cytometry.

300. The Accused Products practice spectral, non-conventional flow cytometry as opposed to the conventional flow cytometry described in the Asserted Patents' specification. As I explained in Section XI.A.1 of my Opening Report, spectral flow cytometry is fundamentally different from conventional flow cytometry. For example, conventional flow cytometers utilize a one-detector-one dye approach and configuration, whereas spectral flow cytometers use an all-detectors-all-dyes approach to capture the complete fluorescence spectra emitted by the cells being sampled and utilize the complete spectral signature of each dye for data collection and analysis. (CYTEK_0000993426 at -427 ("In contrast to conventional flow cytometry, spectral flow cytometry uses multiple detectors to capture the full spectrum emission of each fluorochrome across multiple lasers used in the system, to create a detailed spectral signature.").)

301. The Accused Products practice spectral, all-detectors-all-dyes flow cytometry, using the full emission spectral signature across multiple lasers to resolve these combinations from the spectral signature of each individual dye:

- 206 -

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement



(https://cytek-web.s3.us-east-1.amazonaws.com/cytekbio.com/documentation-center/Brochures/N9-20001+Rev.+M_Brochure,+Cytek+Aurora_WEB.pdf.)

302.   To work, spectral flow cytometry requires configuration elements and spectral unmixing algorithms that are fundamentally different than the filter-specific detection and spillover-based compensation employed by conventional flow cytometry.  (Beckman Coulter, *Spectral Flow Cytometery: A Detailed Scientific Overview*,        https://www.beckman.com/resources/reading-material/application-notes/spectral-flow-cytometry-detailed-scientific-overview        ("Spectral        flow

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

cytometry is an advanced analytical technique that enhances traditional flow cytometry by capturing the complete emission spectra of fluorochromes. Unlike conventional flow cytometry, which uses dichroic mirrors and discrete bandpass filters to measure specific wavelengths, spectral flow cytometry captures a variety of points across the entire emission spectrum of each fluorochrome.").) The distinctions between spectral unmixing algorithms, and conventional compensation methods are well-known in the field of flow cytometry, including as explained in the following Beckman Coulter publication:

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

## Unlocking Insights: The Vital Role of Unmixing Algorithms in Spectral Flow Cytometry[7]

### Introduction

Spectral flow cytometry offers significant improvements in performance and multiplexing capabilities beyond conventional flow cytometry. Unlike conventional flow cytometry, which collects only a discrete portion of the emission spectrum using single filters per fluorochrome, spectral flow cytometry captures the full spectrum for al fluorochromes on each cell using multiple detectors. Therefore, spectral flow cytometry requires more complex methods than compensation to distinguish fluorochromes. This is necessary because the instrument must distinguish between multiple fluorescent profiles across the entire visible light spectrum rather than from a few distinct channels. The process of deconvoluting fluorochrome emission spectra across an array of detectors in spectral flow cytometry is referred to as *spectral unmixing*. Unmixing requires single-stained reference controls, as well as noise-reducing mathematical algorithms. This article will give a brief explanation of the ideas behind compensation and unmixing, highlighting their differences, and discuss the current unmixing algorithms being used.



**Figure 1.** Compensation in Conventional Flow Cytometry: In conventional flow cytometry, each detector uses a bandpass filter to capture the peak emission of specific fluorophores. Any spillover from other fluorophores is corrected using a mathematical process called a "compensation" matrix.

*Denotes peak emission.



**Figure 2.** Unmixing in Spectral Flow Cytometry: Spectral flow cytometers use a detector array to capture the full spectral signature of all fluorophores. These combined signals create a single complex waveform, which is then separated into individual fluorophore signatures using an unmixing algorithm.

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

Thus, spectral flow cytometers collect all information for each dye across all lasers and detectors to use the spectral signature of each dye and perform unmixing algorithms to determine the experimental signal for each dye.    In contrast, conventional flow cytometers are limited to collecting only bands of light at the peak of each dye (i.e., one-detector-one-dye), for which they rely on simple spillover compensation for a single laser and a single detector module to determine the experimental signal for one dye.

303.    As a result of the differences between spectral and conventional flow cytometry, the number of different colors that can be analyzed in a spectral flow cytometer in a single experiment is substantially higher than what can be done in a conventional flow cytometer.  For example, Cytek's Aurora has been shown to detect 40 colors using fluorescent signal detections with up to 16 channels per laser. (Cytek    Aurora    System;    pp.    2,    15;    https://cytek-web.s3.us-east-1.amazonaws.com/cytekbio.com/documentation-center/Brochures/N9-20001+Rev.+M_Brochure,+Cytek+Aurora_WEB.pdf.) In contrast, CytoFLEX LX, which Beckman Coulter alleges embodies the Asserted Claims and describes as "our most advanced solution for multicolor analysis, (Research Flow Cytometers,

---

[7] CYTEK_0000993426 at -993426-427 (Beckman Coulter, *Unlockin_ Insights: The Vital Role o_ Unmixin_ Al_orithms in S_ectral Flow C_tometr_*, https://www.beckman.com/resources/reading-material/application-notes/unmixing-algorithms-in-spectral-flow-cytometry).

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

https://www.beckman.com/flow-cytometry/research-flow-cytometers#:~:text=This%20platform%20of%20benchtop%20flow,easy%2Dto%2Duse%20instrument), is limited to a maximum of 21 colors with 6 lasers, wherein each detector module is limited to 5 fluorescent detector channels associated with the peaks of the dyes (i.e., one-detector-one-dye). (CytoFLEX LX Flow Cytometer; https://www.beckman.com/flow-cytometry/research-flow-cytometers/cytoflex-lx).

304. The Accused Products limit aberrations by use of an alternately converging/diverging beam, giving rise to more efficient beam control that permits efficient propagation of the beam and color separation across more detectors (together with the flat-top laser) to achieve full spectral cytometry, which is substantially different than the teaching in the Asserted Patents' specification that "efficient color separation *can only* be accomplished economically with collimated light beam." ('582 patent at 44:25-26 (emphasis added).)

305. In sum, the substantial differences between the Accused Products and the claimed invention, including those I identify above, demonstrate fundamental differences in operation principles and are reflected in the design configurations of the optical architectures associated with each, including differences in the types of optical components used and their placement and function within the respective designs, and how they detect fluorescence. Thus, any similarities between the Accused Product and the claimed inventions are merely incidental and do not

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

improve the operation of the Accused Products or impart any measurable advantage on them.

**B.**     **The Reverse Doctrine of Equivalents Applies to the Asserted '443 Claims**

306.   In my opinion, there are two key aspects of claim 1 of the '443 patent for which the reverse doctrine of equivalents should apply to negate any finding of literal infringement: the "WDM" and "light."

307.   Limitation 1(a) recites "[a] wavelength division multiplexer (WDM) for a flow cytometer comprising," and if the Accused Products are found to literally meet this limitation, in my opinion, the reverse doctrine of equivalents should result in a finding of non-infringement. As explained above, the principles of the "WDM"[8] described in the Asserted Patents require (a) a collimating optical element and a collimated input beam, and (2) use of a collimated beam throughout the relay architecture. In contrast, the Accused Products' WDM does not have a collimating optical element, but instead uses a fiber focusing lens to generate a converging input beam, after which the Accused Products use an alternately converging and diverging beam; the Accused Products never use a collimated beam.

308.   In my opinion, while both the claimed and accused WDMs similarly

---

[8] I use the acronym WDM here according to the language of the Asserted Claims, despite the misnomer, describe above, that technology disclosed in the Asserted Patents and Accused Products make use of a wavelength division *de*multiplexer.

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

serve the function of propagating light across the relay architecture, they do so in a substantially different way based on the input optics and relay optics, which results in the propagation of manifestly different light beams (collimated vs. diverging/converging). As discussed above, the specification of the Asserted Patents nowhere describes the type of WDM employed in the Accused Products, and so if the Accused Products are found to literally contain a WDM—e.g., since the claim does not specify anything about the WDM's input architecture or what type of light beam it generates—in my opinion the reverse doctrine of equivalents should apply to recognize that the Accused Products contain a fundamentally different type of WDM than described in the specification and fairly within the scope of the disclosed invention.

309. Limitations 1(b), 1(f), 1(g), and 1(h) all recite "light," and relate to how the "light" interacts with the filters, mirrors, and detectors recited within claim 1 to propagate across the relay architecture. In my opinion, if the Accused Products are found to literally meet these limitations, the reverse doctrine of equivalents should result in a finding of non-infringement. As explained above, the principles of the alleged invention described in the Asserted Patents require use of a collimated beam throughout the relay architecture. The Accused Products, however, use an alternately converging and diverging beam, and never use a collimated beam.

310. In my opinion, while both the claimed and accused WDMs similarly

- 213 -

████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

serve the function of propagating light across the relay architecture to detect fluorescence, they do so in a substantially different way based on the type of light they propagate (collimated vs. diverging/converging). As discussed above, the specification of the Asserted Patents nowhere describes propagation of alternately converging and diverging light as occurs in the Accused Products, and so if the Accused Products are found to literally reflect or receive "light" as recited in limitations 1(b), 1(d), 1(e), and 1(f)—e.g., since the claim does not specify anything about the WDM's input architecture or what type of light beam it generates and is propagated through the relay architecture—in my opinion the reverse doctrine of equivalents should apply to recognize that the Accused Products propagate a fundamentally different type of light (converging/diverging) than described in the specification (collimated) and fairly within the scope of the disclosed invention.

311. I understand that asserted claims 4, 6, 10, 11, and 15 all depend from claim 1 and include all its limitations. Because, in my opinion, the reverse doctrine of equivalents should bar a finding of literal infringement of claim 1, it should also bar a finding of literal infringement for claims 4, 6, 10, 11, and 15, since they contain all the same requirements of claim 1.

312. In addition, claim 11 of the '443 patent recites "[a] flow cytometer comprising the WDM of claim 1." In my opinion, if the Accused Products are found to literally meet this limitation, the reverse doctrine of equivalents should result in a

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

finding of non-infringement. As explained above, the principles of the alleged invention described in the Asserted Patents are consistent with and describe conventional flow cytometry. The Accused Products, however, do not practice conventional flow cytometry, but rather spectral cytometry, as discussed above. In my opinion, the reverse doctrine of equivalents should bar a finding of literal infringement of claim 11 for this additional reason.

### C. The Reverse Doctrine of Equivalents Applies to the Asserted '107 Claims

313. In my opinion, there are three key aspects of claims 1 and 16 of the '107 patent for which the reverse doctrine of equivalents should apply to negate any finding of literal infringement: "WDM," "light," and "flow cytometer"

314. Limitations 1(c) and 16(e) recite "[a] wavelength division multiplexer (WDM)," and if the Accused Products are found to literally meet this limitation, in my opinion, the reverse doctrine of equivalents should result in a finding of non-infringement. As explained above, the principles of the WDM described in the Asserted Patents require (a) a collimating optical element and a collimated input beam, and (2) use of a collimated beam throughout the relay architecture. In contrast, the Accused Products' WDM does not have a collimating optical element, but instead uses a fiber focusing lens to generate a converging input beam, after which the Accused Products use an alternately converging and diverging beam; the Accused Products never use a collimated beam.

- 215 -

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

315. In my opinion, while both the claimed and accused WDMs similarly serve the function of propagating light across the relay architecture, they do so in a substantially different way based on the input optics and relay optics, which results in the propagation of manifestly different light beams (collimated vs. diverging/converging). As discussed above, the specification of the Asserted Patents nowhere describes the type of WDM employed in the Accused Products, and so if the Accused Products are found to literally contain a WDM—e.g., since the claims do not specify anything about the WDM's input architecture or what type of light beam it generates—in my opinion the reverse doctrine of equivalents should apply to recognize that the Accused Products contain a fundamentally different type of WDM than described in the specification and fairly within the scope of the disclosed invention.

316. Limitations 1(f), 1(g), and 1(h), and 16(h), 16(i) and 16(j) all recite "light," and relate to how the "light" interacts with the filters, mirrors, and APDs recited within claims 1 and 16 to propagate across the relay architecture. In my opinion, if the Accused Products are found to literally meet these limitations, the reverse doctrine of equivalents should result in a finding of non-infringement. As explained above, the principles of the alleged invention described in the Asserted Patents require use of a collimated beam throughout the relay architecture. The Accused Products, however, use an alternately converging and diverging beam, and

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

never use a collimated beam.

317.   In my opinion, while both the claimed and accused WDMs similarly serve the function of propagating light across the relay architecture, they do so in a substantially different way based on the type of light they propagate (collimated vs. diverging/converging).  As discussed above, the specification of the Asserted Patents nowhere describes propagation of alternately converging and diverging light as occurs in the Accused Products, and so if the Accused Products are found to literally reflect or receive "light" as recited in limitations 1(f), 1(g), and 1(h), and 16(h), 16(i) and 16(j) —e.g., since the claim does not specify anything about the WDM's input architecture or what type of light beam it generates and is propagated through the relay architecture—in my opinion the reverse doctrine of equivalents should apply to recognize that the Accused Products propagate a fundamentally different type of light (converging/diverging) than described in the specification (collimated) and fairly within the scope of the disclosed invention.

318.   In addition, limitations 1(a) and 16(a) of the '107 patent recite "[a] flow cytometer comprising."  In my opinion, if the Accused Products are found to literally meet this limitation, the reverse doctrine of equivalents should result in a finding of non-infringement.  As explained above, the principles of the alleged invention described in the Asserted Patents are consistent with and describe conventional flow cytometry.  The Accused Products, however, do not practice conventional flow

- 217 -

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

cytometry, but rather spectral cytometry, as discussed above. In my opinion, the reverse doctrine of equivalents should bar a finding of literal infringement of claims 1 and 16 for this additional reason.

319.    I understand that asserted claim 5 depends from claim 1 and includes all its elements. Because, in my opinion, the reverse doctrine of equivalents should bar a finding of literal infringement of claim 1, it should also bar a finding of literal infringement for claim 5, since it contains all the same requirements of claim 1.

320.    I understand that asserted claims 18, 26, 27, and 29 all depend from claim 16 and include all its elements. Because, in my opinion, the reverse doctrine of equivalents should bar a finding of literal infringement of claim 16, it should also bar a finding of literal infringement for claims 18, 26, 27, and 29, since they contain all the same requirements of claim 16.

## XII.  CONCLUSION

321.    For at least the reasons set forth in this Report and based on the documents and other evidence referenced herein, it is my opinion that the Accused Products do not infringe the Asserted Patents, including the '582 Patent, '443 Patent, and '107 Patent.

322.    My work on this matter is ongoing. As I examine additional materials and perform further analyses, I reserve the right to revise and supplement my opinions and this Report.

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

323. I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information, and belief.