# EXHIBIT B



**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BECKMAN COULTER, INC., | |
| Plaintiff, | |
| v. | C.A. No. 22-945-CFC-EGT |
| CYTEK BIOSCIENCES, INC., | |
| Defendant. | |

**REBUTTAL EXPERT REPORT OF JAMES F. LEARY, PH.D.
REGARDING NON-INFRINGEMENT OF
U.S. PATENT NOS. 10,330,582; 11,703,443; and 12,174,107**

Dated:  1/20/2026

James F. Leary, Ph.D.

**TABLE OF CONTENTS**

Page

I.     INTRODUCTION...................................................................................... 1

II.    QUALIFICATIONS................................................................................... 1

III.   FEES....................................................................................................... 3

IV.    PRIOR EXPERT TESTIMONY ................................................................ 3

V.     MATERIALS CONSIDERED FOR THIS REPORT .................................. 3

VI.    SUMMARY OF OPINIONS AND EXPECTED TESTIMONY ............... 4

VII.   LEGAL FRAMEWORK ........................................................................... 6

       A.    Infringement Principles .................................................................. 6

       B.    Direct and Indirect Infringement.................................................... 8

       C.    Willful Infringement...................................................................... 10

       D.    Indefiniteness................................................................................. 11

VIII.  CLAIM CONSTRUCTION ..................................................................... 11

       A.    The Court's Constructions.............................................................. 12

       B.    Additional Means-Plus-Function Terms ........................................ 14

             1.    "Collimating Optical Element" .......................................... 15

             2.    "Focusing Optical Element".............................................. 23

IX.    A PERSON OF ORDINARY SKILL IN THE ART ("POSA")............... 29

X.     FLOW CYTOMETRY BACKGROUND.................................................. 29

       A.    Overview of Flow Cytometry.......................................................... 29

       B.    Conventional vs. Spectral Flow Cytometry ................................... 32

XI.    THE ASSERTED PATENTS ................................................................... 37

       A.    Overview of the Asserted Patents' Shared Specification............... 37

       B.    File History.................................................................................... 38

       C.    The Asserted Patents Did Not Provide Any Significant Improvements or Advantages to the Existing Field of Flow Cytometry............................. 39

             1.    APDs in Flow Cytometers.................................................. 40

             2.    WDMs in Flow Cytometers ............................................... 44

XII.   CYTEK'S PATENTS............................................................................... 48

XIII.  OVERVIEW OF THE ACCUSED PRODUCTS ...................................... 56

       A.    Summary of the Aurora & Northern Lights Product Lines........... 56

**TABLE OF CONTENTS**
(continued)

Page

1.    Aurora ................................................................................ 57

2.    Aurora EVO ....................................................................... 59

3.    Aurora CS .......................................................................... 60

4.    Northern Lights ................................................................. 61

5.    Northern Lights NL-CLC .................................................. 62

6.    Laser Upgrades .................................................................. 64

B.    The Accused Products Employ Spectral Technology ................................. 65

C.    The Accused Products Propagate Light Through the Relay Architecture By Initially Focusing the Light and then Alternatively Diverging and Converging the Light As it Travels Through the Relay Architecture ..................................................................................... 65

D.    The Accused Products Use Bandpass Filters, Not Dichroic Filters ............. 65

E.    The Accused Products Use Microlenses, Not Mirrors ............................... 70

XIV.    BECKMAN COULTER FAILS TO SHOW INFRINGEMENT BY A PREPONDERANCE OF THE EVIDENCE ............................................. 76

A.    Beckman Has Failed to Demonstrate the Accused Products Meet All Limitations of the '107 Asserted Claims ...................................................... 76

1.    Elements of Asserted Claim 5 Not Present in the Accused Products ..................................................................... 82

a.    1(c): "a wavelength division multiplexer (WDM) configured to receive light from the optical fiber, wherein the WDM comprises:" .......................................... 82

b.    1(d): "an array of mirrors" ................................................... 92

c.    1(e): "an array of filters" ..................................................... 99

d.    1(f): "an array of avalanche photodiodes (APDs) configured to receive light that passed through one or more filters in the array of filters;" .................................... 100

e.    1(h): "wherein each of the mirrors in the array of mirrors is configured to: receive light reflected by a filter in the array of filters; and reflect light to another filter in the array of filters." .............................................. 101

f.    2(b): "the array of mirrors is substantially linear;" ............ 102

g.    2(c): "the array of filters is substantially linear; and" ........ 102

h.    2(d): "the array of APDs is substantially linear." ............... 103

**TABLE OF CONTENTS**
(continued)

**Page**

i. 3(b): "at least one of the mirrors in the array of mirrors is a concave mirror." ............................................................ 103

j. 5b: "the WDM is configured such that a portion of an optical path between the array of mirrors and the array of filters forms a zig-zag pattern.".................................... 104

k. Conclusion: Asserted Claim 5 ............................................ 104

2. Asserted Claim 16 ............................................................ 105

a. 16(b): a flow cell configured to permit liquid to flow through the flow cell; 16(c): a laser configured to project light into the flow cell ............................................ 105

b. 16(d): "a multimode optical fiber configured to receive light from the flow cell; and" .............................................. 107

c. 16(e): "a wavelength division multiplexer (WDM) configured to receive light from the multimode optical fiber, wherein the WDM comprises:" ................................ 109

d. 16(f): "a plurality of mirrors, wherein at least one of the mirrors is a concave mirror"........................................ 109

e. 16(g): "a plurality of filters; and"; 16(h): "a plurality of avalanche photodiodes (APDs)…"; 16(i) "wherein each of the plurality of filters…" ...................................... 111

f. 16(j): "wherein each of the plurality of mirrors is configured to: receive light reflected by a filter of the plurality of filters; and reflect light to another filter of the plurality of filters." ......................................... 111

g. Conclusion: Asserted Claim 16 .......................................... 112

3. Asserted Claim 18 ............................................................ 112

a. 17(b): "wherein the WDM further comprises: a plurality of focusing lenses,"............................................... 112

b. Conclusion: Asserted Claim 18 .......................................... 113

4. Asserted Claims 26, 27, and 29 ...................................... 113

a. 20(b): "wherein the plurality of mirrors includes more than one concave mirror." .................................................... 113

b. 21(b): wherein the WDM is configured such that a portion of an optical path between the plurality of mirrors and the plurality of filters forms a zig-zag pattern. ................................................................. 114

-iii-

**TABLE OF CONTENTS**
(continued)

**Page**

c.    26(c): "each of the plurality of filters is coupled to the first surface of the block." ................................................. 114

d.    Conclusion: Asserted Claims 26, 27 and 29 ...................... 119

B.    Beckman Has Failed to Demonstrate the Accused Products Meet All Limitations of the '443 Asserted Claims ...................................................... 119

1.    Asserted Claim 4 ............................................................. 123

a.    1(a): "A wavelength division multiplexer (WDM) for a flow cytometer comprising:" ............................................. 123

b.    1(c): "at least one mirror including at least one curved mirror, ..................................................................... 123

c.    1(d): "the at least one mirror configured to: receive one or more portions of the light from the set of filters; and" ................................................................. 123

d.    1(e): "reflect the one or more portions of the light to the set of filters; and" ......................................... 124

e.    4(b): "a block positioned between the at least one mirror and the set of filters, the block configured to enable transmission of the light; and" ................................ 124

f.    Conclusion: Asserted Claim 4 ........................................... 125

2.    Asserted Claim 6 ............................................................. 125

a.    6(b): "the set of filters include at least one dichroic filter, and" ........................................................................... 125

b.    6(c): "the at least one curved mirror is a concave mirror." .......................................................................... 134

c.    Conclusion: Asserted Claim 6 ........................................... 134

3.    Asserted Claim 10 ........................................................... 134

a.    9(b): "an optical path of the light includes a first filter of the set of filters, followed by a first mirror of the at least one mirror, followed by a second filter of the set of filters, followed by a second mirror of the at least one mirror, followed by a third filter of the set of filters, followed by a third mirror of the at least one mirror, and followed by a fourth filter of the set of filters .......................................................................... 135

b.    10(a): "The WDM of claim 9, wherein:" ........................... 138

**TABLE OF CONTENTS**
(continued)

**Page**

   c. 10(b): "the first filter is an initial filter of the set of filters configured to receive the light, the second filter is configured to receive a first collimated beam of the light from the first mirror, and the fourth filter is configured to receive a second collimated beam of the light from the third mirror." ............................... 138

   d. Conclusion: Asserted Claim 10 .......................... 141

  4. Asserted Claim 11 ........................................... 142

   a. 11(a): "A flow cytometer comprising the WDM of claim 1." ................................................... 142

   b. Conclusion: Asserted Claim 11 .......................... 142

  5. Asserted Claim 15 ........................................... 142

   a. 13(b): "a flow cell including a flow channel configured to enable passage of a particle; and" ................... 142

   b. Conclusion: Asserted Claim 15 .......................... 143

C. Beckman Has Failed to Demonstrate the Accused Products Meet All Limitations of the '582 Asserted Claims ..................................... 143

  1. Asserted Claim 1 ............................................ 146

   a. "collimated beam" ............................................. 146

    (1) Cytek's Accused Products do not use a "collimated beam" through the detector module**.... 150**

    (2) Cytek's Accused Products do not use a "collimated beam" even if "collimated beam" could (incorrectly) refer to segments of the beam **................................................... 172**

    (3) The "Collimated beam" limitations are not met under the Doctrine of Equivalents **......................... 180**

   b. 1(b): "a collimating optical element arranged to receive light from a light source, the collimating optical element configured to project a collimated beam;" ............................................... 195

   c. 1(c): "an optical relay element arranged to receive at least a portion of the collimated beam from the collimating optical element, the optical relay element comprising a curved mirror configured to reflect the portion of the collimated beam received from the collimating optical element to produce a first image;" ...... 220

**TABLE OF CONTENTS**
(continued)

Page

d.      1(c): "an optical relay element arranged to receive at least a portion of the collimated beam from the collimating optical element, the optical relay element comprising a curved mirror configured to reflect the portion of the collimated beam received from the collimating optical element to produce a *first image*;" 1(d) "a *first focusing optical element* arranged to receive at least a portion of the collimated beam reflected by the optical relay element"; and 1(e) "a *first semiconductor detector*," 1(f) wherein the *first focusing optical element* is configured to focus the portion of the collimated beam received from the optical relay element onto the *first semiconductor detector*." .................................................. 225

(1)      **"image" and "first image"** ................................... 225

(2)      **"first focusing optical element" and "first semiconductor detector"** ..................................... 237

(3)      **Dr. Schaafsma's mapping of "collimating optical element" onto the first "curved mirror"** .................................................. 240

e.      Conclusion: Asserted Claim 1 ........................................... 242

2.      Asserted Claim 3 ......................................................................... 243

a.      3(b): "wherein the first focusing optical element is configured to focus the portion of the collimated beam received from the optical relay element to a size smaller than 1 millimeter in diameter." .............................. 243

b.      Conclusion: Asserted Claim 3 ........................................... 243

3.      Asserted Claim 6 ......................................................................... 243

a.      6(b): "further comprising a first optical filter disposed along an optical path between the collimating optical element and the optical relay element, the first optical filter configured to separate the collimated beam into a first branch and a second branch." ..................................... 244

b.      Conclusion: Asserted Claim 6 ........................................... 250

4.      Asserted Claim 20 ....................................................................... 250

-vi-

**TABLE OF CONTENTS**
(continued)

Page

a.　20(b): "a collimating optical element arranged to receive light from a light source, the collimating optical element configured to project a first image; and" ................................................................................. 250

b.　20(c): "an optical relay element arranged near the first image, the optical relay element configured to receive light from the collimating optical element and to project a second image;" ..................................................... 261

c.　20(d): "wherein the size of the first image is substantially the same as the size of the second image;" ............................................................................. 270

d.　20(e): "wherein the optical relay element comprises a curved mirror or a concave-shaped dichroic filter."........... 274

e.　Conclusion: Asserted Claim 20 ......................................... 274

5.　Asserted Claims 23 and 26 ............................................................ 274

a.　22(c): "wherein the first image is a magnified image of the object." ............................................................................. 275

b.　Conclusion: Asserted Claim 23 ......................................... 277

c.　26(b): "further comprising a first focusing optical element arranged near the second image," ......................... 277

d.　26(b): "further comprising a first focusing optical element …, the first focusing optical element configured to focus the light from the optical relay element to a size smaller than the object of the light source to a first semiconductor detector." .......................... 281

e.　Conclusion: Asserted Claim 26 ......................................... 282

D.　Cytek Does Not Infringe Under 35 U.S.C. § 271(a) ................................. 282

E.　Cytek Does Not Infringe Under 35 U.S.C. § 271(b) or (c) ....................... 282

F.　Cytek Does Not Infringe the Asserted Patents Under 35 U.S.C. § 271(f)(1) ................................................................................................ 285

G.　Cytek Does Not Infringe the Asserted Patents Under 35 U.S.C. § 271(f)(2) ................................................................................................ 290

H.　Dr. Houston Does Not Establish Willful Infringement of the Asserted Claims................................................................................................ 291

**TABLE OF CONTENTS**
(continued)

**Page**

1.    Mere Knowledge of the Patents Cannot Establish Willful Infringement, and Cytek Had an Objectively Reasonable Belief in Non-Infringement ............................................................. 294

2.    Cytek's Knowledge and Analysis of Xitogen and the CytoFLEX Products Cannot Show Willful Infringement, and Cytek's Activities Are Nonetheless Common Industry Practice ..................................................................... 310

3.    Dr. Houston's Speculations Regarding "Copying" Are Unsupported ..................................................................... 319

4.    Dr. Houston's Speculations Regarding Willful Infringement Are Improper and Unsupported ....................................... 322

XV.    CYTOFLEX PRODUCTS DO NOT EMBODY THE ASSERTED PATENTS ............................................................................... 324

A.    CytoFLEX Products Do Not Include a Wavelength Division Multiplexer ............................................................. 324

B.    CytoFLEX Products Do Not Practice Filter Related Elements of the Asserted Claims .............................................. 328

C.    CytoFLEX Products Do Not Detect Substantially Full Spectrum of Visible Light ..................................................... 335

D.    CytoFLEX Products Do Not Practice Curved or Concave Mirrors Related Elements of the Asserted Claims ................ 351

E.    CytoFLEX Products Do Not Practice Claim 1 of the '582 Patent & Thus Also Do Not Practice Any Claims that Depend from Claim 1 .......... 365

1.    1(c): "an optical relay element arranged to receive at least a portion of the collimated beam from the collimating optical element, the optical relay element comprising a curved mirror configured to reflect the portion of the collimated beam received from the collimating optical element to produce a first image;" ..................................................... 365

2.    1(d): "a first focusing optical element arranged to receive at least a portion of the collimated beam reflected by the optical relay element; and" ......................................... 369

3.    1(e): "a first semiconductor detector" ........................... 375

4.    1(f): "wherein the first focusing optical element is configured to focus the portion of the collimated beam received from the optical relay element onto the first semiconductor detector" ......... 377

**TABLE OF CONTENTS**
(continued)

**Page**

F.   CytoFLEX Products Do Not Practice Claim 20 of the '582 Patent & Thus Also Do Not Practice Any Claims that Depend from Claim 20........ 380

    1.   20(b): "a collimating optical element arranged to receive light from a light source, the collimating optical element configured to project a first image; and" .......................................................... 380

    2.   20(c): "an optical relay element arranged near the first image, the optical relay element configured to receive light from the collimating optical element and to project a second image".......... 383

    3.   20(d): "wherein the size of the first image is substantially the same as the size of the second image; and".................................... 389

XVI.   CONCLUSION ............................................................................................... 391

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

Figure 25 does not provide any specific dimensions or suggest any given scale. This is because Figure 25 does not include a scale bar, dimensions, or any other indication that it is intended to be of scale." (D.I. 117-11 ("Schaafsma Reply Decl."), ¶68.) Hence, the specification of the Asserted Patents provides insufficient structure that corresponds to performing the ambiguous functions of "projecting a collimated beam" or "projecting a first image" (particularly considering the Court has construed "image" to include a real image and an "afocal image").[4]   I have also reviewed Dr. Ilkov's declarations in connection with claim construction of the term "collimating optical element" and "collimated beam." (*See* D.I. 115-27, Ex. 28 ("Ilkov Answering Decl."), Sections VI.B, VI.E; D.I. 117-36, Ex. 90 ("Ilkov Sur-Reply Decl."), Sections VI.C, VI.F.)  As discussed below, I agree.

44.    The term "collimating optical element" is not a widely used and understood category of optical components such that a POSA would understand what this term is referring to. (*See* Ilkov Answering Decl., ¶¶106-11; Ilkov Sur-Reply Decl., ¶45.) Therefore, I disagree with Dr. Shcaafsma's opinion that a POSA "would know from basic optics which lenses, mirrors, and gratings are collimating optical elements and would also call this category of optical components 'collimators.'" (Schaafsma Rep., ¶105.)

45.    Additionally, Claim 1 of the '582 patent requires "the collimating

---

[4] I understand the Court deferred the issue of whether "image" is indefinite.

██████████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

in conjunction with other components of the optical block assembly of the relay

module would be understood not to simply reflect light (as a mirror does) but also

to refract light (as a lens does), causing chromatic effects.

## XIV.  BECKMAN COULTER FAILS TO SHOW INFRINGEMENT BY A PREPONDERANCE OF THE EVIDENCE

### A.  Beckman Has Failed to Demonstrate the Accused Products Meet All Limitations of the '107 Asserted Claims

149.   In my opinion, the Accused Products do not infringe the '107 Asserted

Claims (claims 5, 16, 18, 26, 27 and 29).

150.   I understand that claim 5 depends from each of claims 1, 2 and 3, and

thus includes all elements of claims 1, 2, and 3, in addition to the elements of claim

5.  I reproduce below claims 1, 2, 3, and 5 of the '107 patent with individual elements

broken down (a, b, c, d, etc.,) as identified in Dr. Houston's report:

> **(1a)** 1. A flow cytometer comprising:
> **(1b)** an optical fiber; and
> **(1c)** a wavelength division multiplexer (WDM) configured to receive light from the optical fiber, wherein the WDM comprises:
> **(1d)** an array of mirrors;
> **(1e)** an array of filters; and
> **(1f)** an array of avalanche photodiodes (APDs) configured to receive light that passed through one or more filters in the array of filters;
> **(1g)** wherein each of the filters in the array of filters is configured to receive light such that: a portion of the light passes through the filter; and another portion of the light is reflected; and
> **(1h)** wherein each of the mirrors in the array of mirrors is configured to: receive light reflected by a filter in the array of filters; and reflect light to another filter in the array of filters.
>
> **(2a)** 2. The flow cytometer of claim 1, wherein:

████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

**(2b)** the array of mirrors is substantially linear;
**(2c)** the array of filters is substantially linear; and
**(2d)** the array of APDs is substantially linear.

**(3a)** 3. The flow cytometer of claim 2, wherein
**(3b)** at least one of the mirrors in the array of mirrors is a concave mirror.

**(5a)** 5. The flow cytometer of claim 3, wherein
**(5b)** the WDM is configured such that a portion of an optical path between the array of mirrors and the array of filters forms a zig-zag pattern.

151.   The elements of claims 1, 2, 3, and 5 of the '107 patent that in my opinion Drs. Houston and Schaafsma have not demonstrated are present in the Accused Products, either literally or under the doctrine of equivalents are as follows, and explained in more detail below: 1(c), 1(d), 1(e), 1(f),1(h), 2(b), 2(c), 2(d), and 3(b).

152.   I understand Dr. Ilkov opined that the '107 patent's specification discloses a conventional flow cytometer and fails to provide written description support for, and fails to enable the use of, a "flow cytometer," that performs spectral flow cytometry. (Ilkov Op. Rep., Section XV.A) The Accused Products are spectral flow cytometers, and thus are not within the scope of asserted claim 5. (*Id.*) The Accused Products are spectral flow cytometers, and thus are not within the scope of asserted claim 5. I   also understand Dr. Ilkov has opined that the '107 patent's specification fails to provide written description support for, and fails to enable the use of, a "Wavelength Division Multiplexer (WDM)" (despite the misnomer) other

- 77 -

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

than with a collimating optical element that produces a collimated beam (or effectively collimated beam), propagating through the optical path. (Ilkov Op. Rep., ¶¶91-93, 890-899, 911-926.) I also understand that Dr. Ilkov has opined that the '107 patent's specification fails to provide written description support for, and fails to enable the use of, "light" other than a collimated beam (or effectively collimated beam), propagating through the optical path between the claimed "filters" and "mirrors." (*Id.* at ¶¶91-93, 890-99, 1033.) The Accused Products make use of a converging and diverging beam, not a collimated beam, and thus are not within the scope of asserted claim 5. In addition, I understand that Dr. Weigl and Dr. Ilkov have opined that the '107 patent's specification fails to provide written description support for, and fails to enable the use of, "filters" other than "dichroic filters" for propagating a beam between the filters and the claimed mirrors. (Ilkov Op. Rep., ¶¶1034-1036; Weigl Op. Rep., ¶¶112-136.) The Accused Products use bandpass filters, not dichroic filters, and thus are not within the scope of asserted claim 5 for this additional reason.

153. I understand that asserted claim 16 is an independent claim, and that asserted claims 18, 26, 27 and 29 all ultimately depend from claim 16 and thus include all elements of claim 16. I understand that claim 18 depends from claim 17, and thus includes all elements of claims 17 and 16 in addition to the elements in claim 18 itself. I understand that claim 26 depends from claim 22, and thus includes

- 78 -

████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

all limitations of claims 22, 21, 20, and 16, in addition to the elements in claim 26

itself. I understand that claim 27 depends from claim 26, and thus includes all

elements of claims 26, 22, 21, 20 and 16, in addition to the elements of claim 27

itself. I understand that claim 29 depends from claim 28, and thus includes all

elements of claims 28, 26, 22, 21, 20, and 16, in addition to the elements of claim 29

itself. I reproduce below claims 16, 17, 18, 20, 21, 22, 26, 27, 28, and 29 of the '107

patent with individual elements broken down (a, b, c, d, etc.) as identified in Dr.

Houston's report:

> **(16a)** 16. A flow cytometer comprising:
> **(16b)** a flow cell configured to permit liquid to flow through the flow cell;
> **(16c)** a laser configured to project light into the flow cell;
> **(16d)** a multimode optical fiber configured to receive light from the flow cell; and
> **(16e)** a wavelength division multiplexer (WDM) configured to receive light from the multimode optical fiber, wherein the WDM comprises:
> **(16f)** a plurality of mirrors, wherein at least one of the mirrors is a concave mirror;
> **(16g)** a plurality of filters; and
> **(16h)** a plurality of avalanche photodiodes (APDs) configured to receive light that passed through one or more filters of the plurality of filters;
> **(16i)** wherein each of the plurality of filters is configured to receive light such that: a portion of light passes through the filter; and another portion of light is reflected; and
> **(16j)** wherein each of the plurality of mirrors is configured to: receive light reflected by a filter of the plurality of filters; and reflect light to another filter of the plurality of filters.
>
> **(17a)** 17. The flow cytometer of claim 16,
> **(17b)** wherein the WDM further comprises: a plurality of focusing lenses,

███████████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

**(17c)** wherein each of the plurality of focusing lenses is configured to focus light that passed through a filter of the plurality of filters to a spot on an APD of the plurality of APDs,

**(17d)** wherein the spot has a diameter that is smaller than a diameter of a core of the multimode optical fiber.

**(18a)** 18. The flow cytometer of claim 17,

**(18b)** wherein for each of the plurality of focusing lenses, the diameter of the spot is less than 1 mm.

**(20a)** 20. The flow cytometer of claim 16,

**(20b)** wherein the plurality of mirrors includes more than one concave mirror.

**(21a)** 21. The flow cytometer of claim 20,

**(21b)** wherein the WDM is configured such that a portion of an optical path between the plurality of mirrors and the plurality of filters forms a zig-zag pattern.

**(22a)** 22. The flow cytometer of claim 21,

**(22b)** wherein the laser is configured to emit blue light, yellow-green light, violet light, or ultraviolet light.

**(26a)** 26. The flow cytometer of claim 22, wherein:

**(26b)** the WDM further comprises a block comprising a first surface; and

**(26c)** each of the plurality of filters is coupled to the first surface of the block.

**(27a)** 27. The flow cytometer of claim 26,

**(27b)** wherein the flow cytometer is a benchtop flow cytometer.

**(28a)** 28. The flow cytometer of claim 26,

**(28b)** wherein the flow cytometer is compact.

**(29a)** 29. The flow cytometer of claim 28, wherein:

**(29b)** wherein the WDM is capable of detecting a substantially full spectrum of visible light.

154.  The elements of claims 16, 20, 21, 22, 26, 27, 28 and 29 that in my opinion Drs. Houston and Schaafsma have not demonstrated are present in the

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

Accused Products, either literally or under the doctrine of equivalents are as follows, and explained in more detail below: 16(b), 16(d), 16(e), 16(f), 16(j) 17(b), 20(b), and 26(c).

155.  I understand Dr. Ilkov opined that the '107 patent's specification discloses a conventional flow cytometer and fails to provide written description support for, and fails to enable the use of, a "flow cytometer," that performs spectral flow cytometry. (Ilkov Op. Rep., Section XV.A)  The Accused Products are spectral flow cytometers, and thus are not within the scope of asserted claims 16, 20, 21, 22, 26, 27, 28 and 29.  I understand Dr. Ilkov has opined that the '107 patent's specification fails to provide written description support for, and fails to enable the use of, a "Wavelength Division Multiplexer (WDM)" (despite the misnomer) other than with a collimating optical element that produces a collimated beam (or effectively collimated beam), propagating through the optical path. (Ilkov Op. Rep., ¶¶91-93, 890-899, 911-926.)  I also understand that Dr. Ilkov has opined that the '107 patent's specification fails to provide written description support for, and fails to enable the use of, "light" other than a collimated beam (or effectively collimated beam), propagating through the optical path between the claimed "filters" and "mirrors." (*Id.* at ¶¶91-93, 890-99, 1033.)  The Accused Products make use of a converging and diverging beam, not a collimated beam, and thus are not within the scope of asserted claims 16, 20, 21, 22, 26, 27, 28 and 29.  In addition, I understand

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

that Dr. Weigl and Dr. Ilkov have opined that the '107 patent's specification fails to provide written description support for, and fails to enable the use of, "filters" other than "dichroic filters" for propagating a beam between the filters and the claimed mirrors. (*Id.* at ¶¶1034-1036; Weigl Op. Rep., ¶¶112-136.) The Accused Products use bandpass filters, not dichroic filters, and thus are not within the scope of asserted claims 16, 18, 26, 27 and 29 for this additional reason.

**1. Elements of Asserted Claim 5 Not Present in the Accused Products**

156. I understand that claim 5 depends from each of claims 1, 2 and 3, and thus includes all elements of claims 1, 2, and 3, in addition to the elements of claim 5.

**a. 1(c): "a wavelength division multiplexer (WDM) configured to receive light from the optical fiber, wherein the WDM comprises:"**

157. In my opinion, claim limitation 1(c) is not present in the Accused Products because the Accused Products lack "a wavelength division multiplexer (WDM)."

158. Dr. Houston asserts that "the '107 Patent describes 'a Wavelength Division Multiplexing (WDM) system to separate a light beam into multiple colored bands'," and that "[a] POSA would thus understand that reference to wavelength division multiplexing refers to 'optically separating [e.g., demultiplexing] light received via the optical fiber into color bands.'" (Houston Rep., ¶137 (citing '107

████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement 292.)

> **j.      5b: "the WDM is configured such that a portion of an optical path between the array of mirrors and the array of filters forms a zig-zag pattern."**

204.   As explained above for limitation 1(d) of the '107 patent, and incorporated here, in my opinion the Accused Products do not contain "mirrors" and that the microlenses present in the Accused Products are not the equivalent of the claimed "mirrors."   So claim limitation 5(b) which requires that "the WDM is configured such that a portion of an optical path between the array of mirrors and the array of filters forms a zig-zag pattern" is not met because the Accused Products do not contain "mirrors."

205.   As explained above for limitation 1(d) of the '107 patent, and incorporated here, it is my opinion that a "subset" of mirrors in the Accused Products does not constitute an "array of mirrors," and so to the extent Drs. Houston and Schaafsma rely on less than all alleged mirrors to demonstrate the presence of this claim limitation in the Accused Products, in my opinion, they have not demonstrated that this claim limitation is met.  (*See* Houston Rep., ¶209; Schaafsma Rep., ¶¶291-292.))

> **k.      Conclusion: Asserted Claim 5**

206.   As discussed above, and incorporated here, Drs. Houston and Schaafsma have not demonstrated that each of the Accused Products meets all the

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

limitations of claims 1, 2, and 5, and thus it is my opinion that asserted claim 5 of

the '107 patent is not infringed.

### 2. Asserted Claim 16

**a.** 16(b): **a flow cell configured to permit liquid to flow through the flow cell; 16(c): a laser configured to project light into the flow cell**

207. In my opinion, claim limitations 16(b) and 16(c) are not present in the

Accused Products because the Accused Products lack the claimed "flow cell."

208. I understand that Dr. Ilkov has opined that the term "flow cell" is

indefinite for lack of written description and enablement. (Ilkov Op. Rep., Section

XV.G.) I have reviewed his opinion and agree that the only flow cell supported by

the specification is one that includes a composite microscope objective, comprising

a concave mirror and an aberration corrector plate.

209. None of the documents Dr. Houston cites (Houston Rep., ¶230) show

that the flow cell used in the Accused Products

(CYTEK_0000001424 at -425

; CYTEK_0000000112 at -113 (same);

CYTEK_0000000445-46 (same); CYTEK_0000020895 (

Instead, the flow cell in the Accused Products

, which is structurally distinct from a composite microscope

- 105 -

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

objective made up of a concave mirror and an aberration corrector plate as described

in the '107 patent's specification.  (CYTEK_0000892238 at -248, -252

; CYTEK_0000003882 at -4004

CYTEK_0000002507 at -630 (same); CYTEK_0000001226 at -227

;  CYTEK_0000002061  at  -2154-2158

CYTEK_0000002264 at -297-300 (same).)  The following documents also show

Cytek's

. (CYTEK_0000000271 at -272, -283; CYTEK_0000000285 at -286, -

297.)

210.

(See BEC-CYTEK-00270394 at -00270410-11.)

(Id. at BEC-CYTEK-

00270410.)

██████████████████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

███████████████████████████████████████████

███████████████████████████████████    (*Id.* at BEC-CYTEK-00270411.)

211.    Although Dr. Schaafsma opines that this claim limitation is met (Schaafsma Rep., ¶¶298-99), his discussion of the flow cell in the Accused Products is lacking, and I see the word "flow cell" only once in Section XI of his report, which he references to suggest this claim limitation is met.    Regardless, neither Dr. Houston's nor Dr. Schaafsma's reports establish that the flow cell in the Accused Products includes a composite microscope objective, comprising a concave mirror and an aberration corrector plate, which is the only flow cell adequately described in the '107 patent, as Dr. Ilkov has explained.

        b.     **16(d): "a multimode optical fiber configured to receive light from the flow cell; and"**

212.    In my opinion, limitation 16(d), "a multimode optical fiber configured to receive light from the flow cell," is not present in the Accused Products.

213.    In my opinion, the optical fiber in the Accused Products is not "configured to receive light from the flow cell." In the Accused Products, ███████████ ███████████████████████████████████████████████ Dr. Houston recognizes this, stating in the Accused Products that ████████████ █████████████████████████████████████████████ (Houston Rep., ¶245 (emphasis added).)    I reproduce the figure used by Dr. Houston from Cytek's document, showing that █████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

██████████████████████████████ (CYTEK_0000000112 ████

████████████████████ CYTEK_0000000271 ████████████

████████████ CYTEK_0000000285  (same);   CYTEK_0000002264-506   at

CYTEK_0000002297-300 ████████████████████████

████████████████████

████████████████████████████████████████

(Houston Rep., ¶245 (citing CYTEK_0000003882 at -4004; CYTEK_0000002507 at -630)).)

214.  Dr. Houston opines that "Element 16(d) does not require that the multimode fiber receive light directly from the flow cell without any intervening optical elements." (Houston Rep., ¶247.) I disagree. In my opinion, based on the plain language of the claim, a POSA would understand that the fiber must receive light directly from the flow cell, and that light that has passed through (and is

██████████████████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

manipulated by) any intervening optical element, ██████████████████████

██████████████████████, is not considered "light from the flow cell," but rather

"████████████████████

215.   Dr. Houston's citation of Dr. Shao's testimony is not to the contrary. (Houston Rep., ¶247.)  In full context, Dr. Shao testified that ████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████ (Q. Shao Depo. Tr. at 129:18-25 (emphasis added).)

216.   In addition, claim limitation 16(d) is not present in the Accused Products for the additional reason that they lack the claimed "flow cell" for the same reasons described above for limitations 16(b) and 16(c), which analysis I incorporate here by reference.

      c.     **16(e): "a wavelength division multiplexer (WDM) configured to receive light from the multimode optical fiber, wherein the WDM comprises:"**

217.   In my opinion, claim limitation 16(e) is not met for the same reasons discussed above for limitation 1(d) of the '107 patent (i.e., the Accused Products lack a "wavelength division multiplexer (WDM)"), which analysis I incorporate here by reference.

      d.     **16(f): "a plurality of mirrors, wherein at least one of the mirrors is a concave mirror"**

218.   As explained above for limitation 1(d) of the '107 patent, and

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement incorporated here, in my opinion the Accused Products do not contain "mirrors" and that the microlenses present in the Accused Products are not the equivalent of the claimed "mirrors." So claim limitation 16(f) which requires that "a plurality of mirrors, wherein at least one of the mirrors is a concave mirror" is not met because the Accused Products do not contain "mirrors."

219.   In addition, Dr. Houston asserts that a "'plurality' of mirrors includes two or more mirrors" and contends that because the Accused Products contain at least two mirrors this element is satisfied, including for the same reasons that limitation 1(d) is satisfied. (Houston Rep., ¶253.) To the extent Dr. Houston is asserting that this limitation is satisfied with reference to fewer than all "mirrors" in the array, I disagree. Claim 16 expressly recites a "flow cytometer" comprising a "WDM" and its scope encompasses a spectral flow cytometer because dependent claim 29 recites "wherein the WDM is capable of detecting a substantially full spectrum of visible light." In my opinion, a POSA would not understand a flow cytometer—let alone a spectral flow cytometer—to be operational with only two "mirrors," as Dr. Houston seemingly contends would satisfy this claim limitation. Instead, a POSA would recognize that all "mirrors" necessary to achieve the full spectral analysis must be present for the flow cytometer to work correctly.

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

wherein each element of the set of elements includes a bandpass filter, a lens, or a combination thereof.

**(6a)** 6. The WDM of claim 1, wherein:
**(6b)** the set of filters include at least one dichroic filter, and
**(6c)** the at least one curved mirror is a concave mirror.

**(9a)** 9. The WDM of claim 1, wherein
**(9b)** an optical path of the light includes a first filter of the set of filters, followed by a first mirror of the at least one mirror, followed by a second filter of the set of filters, followed by a second mirror of the at least one mirror, followed by a third filter of the set of filters, followed by a third mirror of the at least one mirror, and followed by a fourth filter of the set of filters.

**(10a)** 10. The WDM of claim 9, wherein:
**(10b)** the first filter is an initial filter of the set of filters configured to receive the light, the second filter is configured to receive a first collimated beam of the light from the first mirror, and the fourth filter is configured to receive a second collimated beam of the light from the third mirror.

**(11a)** 11. A flow cytometer comprising the WDM of claim 1.

**(13a)** 13. The flow cytometer of claim 11, further comprising:
**(13b)** a flow cell including a flow channel configured to enable passage of a particle; and
**(13c)** an optical element configured to detect scattered light emitted by the particle in the flow channel and illuminated by a light source.

**(15a)** 15. The flow cytometer of claim 13, further comprising:
**(15b)** a plurality of lasers including a first laser configured to illuminate the particle in the flow channel at a first location; and
a second laser configured to illuminate the particle at a second location in the flow channel.

247.    The elements of asserted claims 4, 6, 10, 11, and 15 of the '443 patent

that in my opinion Drs. Houston and Schaafsma have not demonstrated are present

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

in the Accused Products, either literally or under the doctrine of equivalents are as

follows, and explained in more detail below:  1(a), 1(c), 1(d), 1(e), 4(a), 6(a), 6(b),

6(c), 9(a), 9(b) and 11(a).

248.    I understand Dr. Ilkov has opined that the '443 patent's specification

fails to provide written description support for, and fails to enable the use of, a

"Wavelength Division Multiplexer (WDM)" (despite the misnomer) other than with

a collimating optical element that produces a collimated beam (or effectively

collimated beam), propagating through the optical path.  (Ilkov Opening Rep., ¶¶91-

93, 890-899, 911-926.)  I also understand that Dr. Ilkov has opined that the '107

patent's specification fails to provide written description support for, and fails to

enable the use of, "light" other than a collimated beam (or effectively collimated

beam), propagating through the optical path between the claimed "filter" and

"mirrors."  (Ilkov Op. Rep., ¶¶91-93, 890-899, 1033.)  The Accused Products make

use of a converging and diverging beam, not a collimated beam, and thus are not

within the scope of asserted claims 16, 20, 21, 22, 26, 27, 28 and 29.  In addition, I

understand that Dr. Ilkov and Dr. Weigl have opined that the '443 patent's

specification fails to provide written description support for, and fails to enable the

use of, "filters" other than "dichroic filters" for propagating a beam between the

filters and the claimed mirrors.  The Accused Products use bandpass filters, not

dichroic filters, and thus are not within the scope of asserted claims 4, 6, 10, 11, and

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

15 of the '443 patent for this additional reason.

### 1.    Asserted Claim 4

249.    I understand claim 4 of the '443 patent depends from claim 1 and thus includes all elements of claim 1 in addition to the elements of claim 4.

**a.    1(a): "A wavelength division multiplexer (WDM) for a flow cytometer comprising:"**

250.    In my opinion, claim limitation 1(a) is not met for the same reasons discussed above for limitation 1(c) of the '107 patent (i.e., no "wave division multiplexer (WDM")"), which analysis I incorporate here by reference.

**b.    1(c): "at least one mirror including at least one curved mirror,**

251.    As explained above for limitations 1(d) of the '107 patent (in Section XIV.A), and incorporated here, in my opinion the Accused Products do not contain "mirrors" and that the microlenses present in the Accused Products are not the equivalent of the claimed "mirrors." So claim limitation 1(c) which requires "at least one mirror including at least one curved mirror" is not met because the Accused Products do not contain a "mirror." They are ▮▮▮▮▮▮▮▮▮▮▮ that both refract and reflect light in ways that are not done by a mirror.

**c.    1(d): "the at least one mirror configured to: receive one or more portions of the light from the set of filters; and"**

252.    As explained above for limitation 1(d) of the '107 patent (in Section

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

Products do not contain a "mirror."

### f. Conclusion: Asserted Claim 4

255. As discussed above, and incorporated here, Drs. Houston and Schaafsma have not demonstrated that each of the Accused Products meets all the limitations of claims 1 and 4, and thus it is my opinion that asserted claim 4 of the '443 patent is not infringed.

### 2. Asserted Claim 6

256. I understand claim 6 of the '443 patent depends from claim 1 and thus includes all elements of claim 1 in addition to the elements of claim 6.

### a. 6(b): "the set of filters include at least one dichroic filter, and"

257. In my opinion, limitation 6(b), "the set of filters include at least one dichroic filter, and" is not present in the Accused Products. As discussed above in Section XIII.D, the Accused Products use bandpass filters, not dichroic filters.

258. Indeed, neither Dr. Houston nor Dr. Schaafsma identify any materials, such as Cytek schematics, BOMs, presentations, or the like, pertaining to the Accused Products that indicate the use of dichroic filters as recited by limitation 6(b). To the contrary, as Dr. Houston explains in Appendix B of her report (beginning at page 11), the Accused Products' filter assembly comprises bandpass filters. (*See, e.g.,* CYTEK_0000011098 at -11110; CYTEK_0000009850; CYTEK_0000011172.) As a result, claim element 6(b) is not literally present in the

- 125 -

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement Accused Products.

259. Instead, Dr. Houston attempts to expand the meaning of "dichroic filter" as claimed by the Asserted Patents to encompass bandpass filters. Specifically, Dr. Houston describes a dichroic filter as "an optical component that passes a subset of wavelengths of light and reflects another subset of wavelengths of light." (Houston Rep., ¶373.) She then refers back to claim element 1(g) of the '107 patent and her opinion that the filters in the claimed array of filters in the Accused Products "are configured to receive light such that: a portion of the light passes through the filter; and another portion of the light is reflected," to conclude that the Accused Products contain at least one dichroic filter. (Houston Rep., ¶373.) Dr. Schaafsma provides the same description of dichroic filters as Dr. Houston (Schaafsma Rep., ¶150) and opines that "[t]he filters in the Cytek products are dichroic filters, as I have explained above because they pass a color band of interest and reflects [sic] the remaining colors in the beam of light," (Schaafsma Rep., ¶252).

260. I disagree with this rationale. A dichroic filter is an optical element that reflects light at some wavelengths and transmits light at other wavelengths through the filter. The wavelength splitting achieved by the dichroic filter is not abrupt but instead follows a spectral curve for that dichroic filter. A dichroic filter is typically specified by a 50 percent transmittance wavelength, which is generally measured at a 45 degree angle of incidence. Essentially a dichroic filter is a simple wavelength

- 126 -

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

splitter.

261. In contrast, bandpass filters employ a more complex multilayer design than dichroic filter, which allow them to perform far more complicated functions than simple beam splitting. A bandpass filter is therefore a more sophisticated optical device with more complex spectral transmittance properties than the long- or short wavelength pass transmittance properties of a dichroic filter, which allow bandpass filters to have far more precise spectral properties using its multiple layers to perform destructive interference. For example, a bandpass filter can create a "band region" and reject wavelengths outside (both higher and lower) than this region. This differs from dichroic filters, which as used in the field of flow cytometry, cannot do that and are configured as beamsplitters as previously explained. Unlike dichroic filters, bandpass filters are normally specified by their spectral properties when the light is entering it perpendicularly and may yield a more complicated spectral response if oriented at an angle. Thus, equating bandpass filters to dichroic filters ignores these added complexities and behaviors associated with bandpass filters.

262. As I explain in Section XIII.D above, dichroic filters and bandpass filters are distinct optical elements, with distinguishable optical properties and functions. In fact, I understand that Dr. Weigl offered opinions concerning the lack of written description support and full scope enablement for "filter," as claimed by the '443 patents, where he addresses the differences between bandpass and dichroic

████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

filters. (*See* Weigl Op. Rep., Section VIII.E.) I have reviewed Dr. Weigl's analysis, and I agree and incorporate his opinions regarding the differences between bandpass and dichroic filters, including within the context of conventional flow cytometry.

263. A POSA would not understand a dichroic filter, as claimed by the '443 patent, to include any "optical component that passes a subset of wavelengths of light and reflects another subset of wavelengths of light," (Houston Rep., ¶373), or any optical element that "pass[es] a color band of interest and reflects the remaining colors in the beam of light," (Schaafsma Rep., ¶252). Nor would a POSA necessarily understand a bandpass filter to meet these descriptions—for example, as I explain in Section XIII.D, a bandpass filter may be configured to transmit a subset of wavelengths of light while absorbing (i.e., not reflecting) another subset of wavelengths of light. Indeed, a POSA would understand that many types of optical components exist that, depending on their specific configuration, could pass "pass[] a subset of wavelengths of light and reflect[] another subset of wavelengths of light," as Dr. Houston describes a dichroic filter, (Houston Rep., ¶373). Among such filters are dichroic filters, notch filters, bandpass filters, shortpass filters, and longpass filters.[15] However, each of these filters have distinct optical properties—and, a

---

[15] Evaporated Coatings Inc, *An Introduction to the Different Types of Optical Filters* (last visited Jan. 19, 2026), https://evaporatedcoatings.com/an-introduction-to-the-different-types-of-optical-filters/.

- 128 -

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

POSA would not equate a bandpass filter to a dichroic filter.

264. Dr. Houston also relies on Cytek's patent, U.S. Patent No. 11,913,868 ("'868 Patent), claiming it "confirms that band pass filters and dichroic filters are not mutually exclusive (i.e., bandpass filters can be dichroic filters)." This reliance is misplaced. As an initial matter, I note that none of the '868 Patent claims recite using a dichroic filter, so whether the Accused Products practice one or more of the '868 Patent claims has no bearing on whether the Accused Products comprise a dichroic filter. Furthermore, the '868 Patent does not equate dichroic filters to bandpass filters or otherwise indicate that "bandpass filters can be dichroic filters" as Dr. Houston claims. Indeed, the '868 Patent consistently refers to bandpass filters and dichroic filters as distinct types of optical element, which is consistent with my opinion. (*E.g.*, '868 Pat., 5:25-29 ("Generally, the image array consists of an array of micro-mirrors and an opposing array of bandpass *and/or* dichroic filters for each detection channel." (emphasis added)); 6:11-15 ("The plurality of long-pass dichroic filters D(1) through D(N) *can alternatively be* passband or bandpass optical filters *or include both* a dichroic optical filter and a bandpass optical filter in combination together to assure a limited range of wavelengths of light pass through." (emphasis added)); 9:49-53 ("Moreover, the last filter D(16) 314 *may not be a dichroic filter; instead a bandpass filter* can be used [where i]n the case of the bandpass filter, the incident light need not be further reflected to another mirror or filter." (emphasis

- 129 -

███████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement
added).)

265.    To support her opinion that the '868 Patent confirms that "bandpass filters can be dichroic filters," Dr. Houston relies on the '868 Patent's explanation that "[t]he alignment of the mounting block 1200 with the transparent block 806,1006 of the imaging array 708 and the angle of the angled curved openings 1201 is such that light reflected off a micro-mirror 712E can be *bandpass filtered* by a dichroic filter 709E and coupled into a lens/detector 711E." (*Id.*, 15:4-9 (emphasis added).)  A POSA would not understand this passage to equate bandpass and dichroic filters, but rather to describe a configuration wherein dichroic filters are used to transmit a narrow passband of light.    Such a configuration is similarly described in the following passage:

> The center wavelength and passband width of each optical dichroic filter are designed for optimized sampling of the fluorescence spectrum of dye to yield better accurate unmixing of a large quantity of different dyes. For example, assuming a fluorescence spectrum of light wavelengths from 400 nm to 800 nm and a sixteen (16) channel detection module, a bandwidth of 25 nm in light wavelength can be analyzed by each. For example, the first detector channel and the first dichroic filter D(1) can bandpass and analyze light wavelengths from 400 nm to 425 nm with a center wavelength of 412.5 nm. Wavelengths outside 400 nm to 425 nm are substantially filtered out and not passed onto the first detector in the first detector channel. A second detector channel and the second dichroic filter D(2) can bandpass and analyze light wavelengths from 425 nm to 450 nm with a center wavelength of 437.5 nm and increasing so on and so forth for each detector channel. The last or sixteenth detector channel and sixteenth dichroic filter D(16) can bandpass and analyze light wavelengths from 775 nm to 800 nm with a center wavelength of 787.5 nm.

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

(*Id.*, 7:51-8:5.) This passage describes a configuration wherein the fluorescence spectrum of light comprises wavelengths from 400 nm to 800 nm, and dichroic filters are arranged so that a bandwidth of 25 nm of light reach each of sixteen detectors. For example, the first dichroic could comprise a 425 short pass dichroic filter, which would transmit light below 425 nm (resulting in a passband of 400 nm to 425 nm based on the 400 nm to 800 nm spectrum), and relaying light above 425 nm to a next-in-sequence 450 short pass dichroic filter which would transmit light below 450 nm (resulting in a passband of 425 nm to 450 nm based on the 425 nm to 800 nm spectrum relayed by the previous dichroic). Thus, a POSA would not understand the '868 Patent to suggest that bandpass filters can be dichroic filters, but rather that dichroic filters can be arranged to transmit a narrow wavelength passband.

266. In short, Dr. Houston's opinion that "bandpass filters can be dichroic filters" is problematic and inconsistent with how a POSA would understand these filters; they are not literally the same.

267. Dr. Houston also offers the alternative opinion that "[t]o the extent that bandpass filters in the Accused Products are not literally dichroic filters, they are equivalent to dichroic filters," and then relies on Dr. Schaafsma's explanation of this alleged equivalence. (Houston Rep., ¶376). Dr. Houston, however, adds no separate analysis or opinions on this issue of alleged equivalence. Dr. Schaafsma, in turn, opines that the Accused Products' bandpass filters are equivalent to the claimed

- 131 -

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

dichroic filters "since their function is as the same as the standard understanding of a dichroic filter as understood by a POSA and described in the specification (*see* Section XI.G). A POSA would recognize that the bandpass filters in the Accused Products achieve their function through transmission of some subsets of the wavelengths of light and reflection of other wavelengths, making them functionally equivalent to dichroic filters." (Schaafsma Rep., ¶252.)

268. But as I explain in Section XIII.D above, dichroic filters and bandpass filters are not equivalent. Dichroic filters mainly operate as routing light beam splitters, separating light into two bands based on a wavelength cutoff wherein one band is transmitted, and the other is reflected. Indeed, dichroic filters are characterized by their wavelength cutoff, with high reflection and transmission efficiency. In contrast, bandpass filters transmit light of a specific wavelength range and are characterized by high transmission across the central passband coupled with strong blocking elsewhere.

269. These properties are shown in the figure below, which illustrates dichroic filters used to transmit and reflect light at different wavelengths (shown as different colors), with bandpass filters being used to filter a target wavelength range for detectors (here, PMTs):

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement



https://bitesizebio.com/31638/flow-cytometry-optics-system/
(last updated Jan. 14, 2025)

270.    Thus, while both dichroic filters and bandpass filters can be used for light separation, the type of light separation achieved by each is materially distinct, with bandpass filters being uniquely effective for selecting a particular wavelength range that reaches a sensor.    In fact, the specification of the '443 patent clearly confines bandpass filters to the role of further filtering a subset of light prior to it reaching a sensor, while relying on dichroic filters as routing light beam splitters. ('443 patent, 45:20-25 ("The dichroic filter **903** may pass the color band of interest and reflects the remaining colors in the beam of light for further processing within the WDM **90**.   An   optional band   pass   filter **904** may   be   inserted   following

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

the dichroic filter **903** to further improve the color isolation capability of the WDM **90**.").)

271. For these reasons, Drs. Houston and Schaafsma have not demonstrated that the Accused Products include "at least one dichroic filter" as required by limitation 6(b) of the '443 patent, either literally or under the doctrine of equivalents.

**b.      6(c): "the at least one curved mirror is a concave mirror."**

272. As explained above for limitation 1(d) of the '107 patent (in Section XIV.A), and incorporated here, in my opinion the Accused Products do not contain "mirrors" and that the microlenses present in the Accused Products are not the equivalent of the claimed "mirrors." So claim limitation 6(c) which requires "the at least one curved mirror is a concave mirror" is not met because the Accused Products do not contain a "mirror."

**c.      Conclusion: Asserted Claim 6**

273. As discussed above, and incorporated here, Drs. Houston and Schaafsma have not demonstrated that each of the Accused Products meets all the limitations of claims 1 and 6, and thus it is my opinion that asserted claim 6 of the '443 patent is not infringed.

**3.      Asserted Claim 10**

274. I understand claim 10 of the '443 patent depends from claim 9, which in turn depends from claim 1, and thus includes all elements of claims 1 and 9 in

- 134 -

█████████████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

288.   Dr. Schaafsma, referring back to Section XI of his report, contends that

███████████████████████████████████████████

██████████████████████████ respectively.  (Schaafsma Rep., ¶¶257-258.)  In Section XI.D, Dr. Schaafsma provides a "layout" of a Zemax file, "where rays from only 1 field point are shown."  (*Id.*, ¶129.)  I disagree that this is an accurate representation of the shape of beam of light because the light source in the Accused Products is an extended light source, not a point source.  As I describe below in discussing "collimated beam" for the '582 patent, I provide Dr. Ilkov's Zemax modeling that actually shows that there ████████████████████████████ ████████████ I also report the spot sizes at each filter and microlenses in the table below, as determined by Dr. Ilkov.   Even following Beckman's construction of a "collimated beam," which is "nearly parallel" (which is an indefinite definition), the spot size does not remain "nearly" the same as it travels through the optical block.

### d.    Conclusion: Asserted Claim 10

289.   As discussed above, and incorporated here, Drs. Houston and Schaafsma have not demonstrated that each of the Accused Products meets all the limitations of claims 1, 9 and 10, and thus it is my opinion that asserted claim 10 of the '443 patent is not infringed.

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

### 4.    Asserted Claim 11

290.   I understand claim 11 of the '443 patent depends from claim 1 and thus includes all elements of claim 1 in addition to the elements of claim 11.

> **a.    11(a): "A flow cytometer comprising the WDM of claim 1."**

291.   I understand Dr. Ilkov opined that the '443 patent's specification discloses a conventional flow cytometer and fails to provide written description support for, and fails to enable the use of, a "**flow cytometer**," that performs spectral flow cytometry. (Ilkov Op. Rep., Section XV.A) The Accused Products are spectral flow cytometers, and thus are not within the scope of asserted claim 11.

> **b.    Conclusion: Asserted Claim 11**

292.   As discussed above, and incorporated here, Drs. Houston and Schaafsma have not demonstrated that each of the Accused Products meets all the limitations of claims 111, and thus it is my opinion that asserted claim 11 of the '443 patent is not infringed.

### 5.    Asserted Claim 15

293.   I understand claim 15 of the '443 patent depends from claim 13, which in turn depends from claim 11, which in turn depends from claim 1, and thus includes all elements of claims 1, 11 and 13 in addition to the elements of claim 15.

> **a.    13(b): "a flow cell including a flow channel configured to enable passage of a particle; and"**

294.   For the same reasons I provided for claim 16(b) of the '107 patent,

██████████████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

which I incorporate here, the Accused Products do not infringe claim limitation

13(b) because the Accused Products do not use the claimed "flow cell" ███████

███████████████████████████████████████████

████████████████████    Rather, ███████████████████████████

██████████████████████    . Therefore, in my opinion, the Accused Products

do not infringe this claim limitation 13(b).

### b.    Conclusion: Asserted Claim 15

295.    As discussed above, and incorporated here, Drs. Houston and Schaafsma have not demonstrated that each of the Accused Products meets all the limitations of claims 1, 11 and 13, and thus it is my opinion that asserted claim 15 of the '443 patent is not infringed.

### C.    Beckman Has Failed to Demonstrate the Accused Products Meet All Limitations of the '582 Asserted Claims

296.    In my opinion, the Accused Products do not infringe the '582 Asserted Claims (cls. 1, 3, 6, 23 and 26).

297.    I understand that asserted claim 3 depends from claim 2, which in turn depends from claim 1 and thus includes all elements of claims 2 and 1 in addition to the elements of claim 3.  I understand claim 6 depends from claim 1, and thus includes all limitations of claim 1 in addition to the limitations of claim 6.  I understand claim 23 depends on claim 22, which in turn depends from claim 20, and thus claim 23 includes all limitations of claims 22 and 20 in addition to the

- 143 -

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

diverging." (Ilkov Op. Rep., ¶231.)  The Accused Products do not use a collimated

beam but instead has a series of diverging and converging optics.  As the well-known

Shapiro textbook on Practical Flow Cytometry states:  "light consisting of parallel

rays is said to be collimated."



(Howard M. Shapiro, *Practical Flow Cytometry* 119 (4th ed. 2003)

("Shapiro").)

303. Beckman's own user manual also defines "Collimate – To make

parallel (for example, collimate rays of light."



(BEC-CYTEK-00158922 at -159416.)

304. Further, during prosecution, Beckman also specifically distinguished a

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

collimated beam from a beam that is focusing or converging. (*See, e.g.*, BEC-CYTEK-00004404 at -4753-754 ('106 patent file history (June 4, 2024 Applicant Remarks, 9-10)) (Beckman's statement that in "FIG. 25 (light 'effectively collimated' … is not converging.")).)

305.    Dr. Schaafsma opines that "[a] POSA would further understand the concept of a 'collimated beam' as one with nearly parallel rays." (Schaafsma Rep., ¶202.) Dr. Schaafsma opines: "People of skill in the art commonly use the term 'collimated' in real-world systems, such as systems with fluorescent light like a flow cytometer, to describe to [sic] a real beam with rays that are slightly converging and/or diverging but remain 'nearly parallel.'" (Schaafsma Rep., ¶108.) Dr. Schaafsma also ambiguously contends that a "collimating optical element" "mak[es] light from an extended light source more nearly parallel" without any explanation as to how much "more nearly parallel" is purportedly required to achieve any such alleged "collimated beam." (Schaafsma Rep., ¶105.) Dr. Houston also opines that "People of skill in the art commonly use the term 'collimated' in real-world systems, such as systems with fluorescent light like a flow cytometer, to describe to [sic] a real beam which maintains substantially the same diameter and with rays that are slightly converging and/or diverging but remain 'nearly parallel.'" (Houston Rep., ¶416.) I disagree and I note that the '582 specification does not provide any explanation of what "nearly parallel" means (e.g., providing a permitted angle of

- 148 -

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

divergence).  In contrast, I note that one of the optical communication patents mentioned in the '582 specification – U.S. Patent No. 5,786,915 to Michael A. Scobey ("Scobey") – specifies "[t]he collimated light preferably has a divergence of not more than about 0.15° …." (Scobey, 7:51-52.)  No such parameter is provided in the '582 patent for a POSA to understand what "nearly parallel" means.

306.  Dr. Schaafsma also points to column 46:51-59 and FIG. 26 in opining that a collimated beam "may be 'diverg[ing] rapidly' when it is received by the optical relay element."  (Schaafsma Rep., ¶132 (alteration in original).)  I have reviewed column 46:51-59 and FIG. 26, and the '582 patent actually states: "FIG. 26 illustrates an optical ray trace for a *prior art* collimating device." ('582, 46:51-52 (emphasis added).)  This passage on a prior art device does not support Dr. Schaafsma's opinion that the "collimated beam" in the claimed invention may be diverging rapidly.  Indeed, the passage does not use the word "collimated beam." Instead, the passage states: "the *beam* of light diverges rapidly *beyond* the image 924 created by the collimating optical element 923." (*Id.* at 55-57 (emphases added).)



*FIG. 26*

(*Id.* at Fig. 26.)  In any event, a POSA simply would not understand the plain and ordinary meaning of "collimated beam" to include a beam diverging rapidly, as

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

Applicant respectfully disagrees that Oostman's objective lens 19 is configured to "focus fluorescent light" because the objective lens "collimate[s]" rather than focuses "the fluorescent signal from the target substance." Oostman at ¶ [0003] (emphasis added). Because Oostman's objective lens 19 collimates fluorescent light, a POSITA would have understood that the objective lens "brings all of the rays [] parallel to each other," albeit with some "beam divergence" in view of practical limitations. *See, e.g.,* Excerpts from Newport Catalog at 480, 500, *available at* http://rpdata.caltech.edu/courses/aph162/2007 (defining "Collimated Beam" and explaining how collimated beams have some "beam divergence" because "nothing is ever a true point source") (attached as APPENDIX A). This is not "focus[ing]" the fluorescent light, which instead involves converging the light. *See, e.g., id.* at 480 ("the focusing of a laser beam to a small spot" involves converging the light to "the focused spot"); Excerpt from Merriam Webster's Collegiate Dictionary Tenth Edition at 451 (1993) ("focus" means "to bring (as light rays) to a focus: CONCENTRATE" or "to come to a focus : CONVERGE") (attached as APPENDIX B); *compare, e.g.,* Specification at 54:27-31 and FIG. 10 (light that doublet lens 609 "focus[es]" converges "onto the image plane 605") *with* Specification at 68:21-26 and FIG. 25 (light "effectively collimated" by collimating optical element 902 is not converging).

(BEC-CYTEK-00004404 at 4753-754 ('106 patent file history (June 4, 2024 Applicant Remarks), 9-10) (annotated).)

333. As the foregoing statements by Beckman during prosecution plainly noted, the key feature of a "collimated beam" is that "all of the rays [are] parallel to each other" and "[t]his is not focusing … which instead involves converging the light." (*Id.*, 9.) Thus, Beckman itself recognized during prosecution that a focusing

- 186 -

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

beam of converging light (and, necessarily, a defocusing beam of diverging light) is

not insubstantially different from a "collimated beam."

334.   I have also considered Dr. Schaafsma's opinion above that the beam

used in the Accused Products and a "collimated beam" perform "substantially the

same function in substantially the same way to obtain the same result." (Schaafsma

Rep., ¶117.) I disagree with Dr. Schaafsma's opinion, which is that the function,

way, result test is satisfied because "the beam and all portions thereof maintain

substantially the same maximum diameter as it travels along the optical path by

having controlled divergence and/or convergence with the result that the projected

beam can be efficiently color separated by filters and focused onto one or more

APDs." (*Id.*)

335.   First, the beam in the Accused Products and the claimed "collimated

beam" do not perform substantially the same function.  In this regard, Dr. Schaafsma

contends that the function of the claimed "collimated beam" is the same as the non-

collimated focused/defocused beam within the Accused Products because "the beam

and all portions thereof maintain substantially the same maximum diameter as it

travels along the optical path by having controlled divergence and/or convergence

with the result that the projected beam can be efficiently color separated by filters

and focused onto one or more APDs." (*Id.*) But this assertion is wrong for multiple

reasons.  First, the non-collimated focused/defocused beam in the Accused Products

██████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

do not maintain the same beam diameter as it progresses down the optical path. The plain distinction between a focused/defocused beam is that its beam diameter is changing as it propagates, which is in stark contrast to the function performed by the claimed "collimated beam." Second, as I have noted above, the patent teaches that "efficient color separation *can only be* accomplished economically with collimated light beam," ('582 patent, 44:25-26 (emphasis added)) which requires parallel rays incident onto the filters at their designed angle of incidence. The function of having parallel rays for "efficient color separation" is distinct from (and opposite to) the function of a beam that is focused/defocused with converging/diverging rays that are not closely tied to the angle of incidence of the filters. Third, as I have also noted above, during prosecution Beckman expressly noted that the function of a collimated beam that "brings all of the rays [] parallel to each other …. is not focus[ing] the fluorescent light, which instead involves converging the light" and even "light 'effectively collimated' by collimating optical element 902 is not converging." (BEC-CYTEK-00004404 at 4753-754 ('106 patent file history (June 4, 2024 Applicant Remarks), 9-10) (alteration in original) (citation omitted).) Simply put, the function of an optical element that projects a focused/defocused beam of converging/diverging light is not the same function as projecting a "collimated beam" that "brings all of the rays parallel to each other."

336.    In any detector module there is a desire to keep a beam within a certain

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

disclose "reimaging light onto odd filters of a plurality of filters arranged in a row" (CYTEK_0000989932 at -990378 ('076 patent file history (July 9, 2021 Notice of Allowability), 3)), further supports my opinion.

>    b.    1(b): "a collimating optical element arranged to receive light from a light source, the collimating optical element configured to project a collimated beam;"

345.   In my opinion, limitation 1(b), "a collimating optical element arranged to receive light from a light source, the collimating optical element configured to project a collimated beam" is not present in the Accused Products.

346.   Drs. Houston and Schaafsma opine that the Accused Products meet this claim limitation by identifying two separate components in the Accused Products as the claimed "collimating optical element":  the "collimating lens" and, in the alternative, odd-numbered "concave mirrors."  (Houston Rep., ¶¶417-427; *see also* Schaafsma Rep., ¶¶196-197.)   I disagree with either of Drs. Houston's and Schaafsma's mappings, and reference my opinions above on the claim construction of the term "collimating optical element" and my opinions above concerning "collimated beam."  I further explain below why this limitation is not present in the Accused Products.

347.   For the term "collimating optical element," as I noted in Section VIII.B.1 above, I understand that Beckman has proposed a purported "plain and ordinary meaning" construction of "an optical element, such as a lens, mirror, or

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

grating, to render rays of light more nearly parallel; a collimator." (D.I. 114 (Joint Claim Construction Br.) ("Joint CC Br.") at 74.)   In the alternative, Beckman provides a construction for the term as a means-plus-function term.

348.   The term "collimating optical element" is not a widely used and understood category of optical components such that a POSA would understand what this term is referring to. (*See* Ilkov Answering Decl., ¶¶106-111; Ilkov Sur-Reply Decl., ¶45.) Therefore, I disagree with Dr. Shcaafsma's opinion that a POSA "would know from basic optics which lenses, mirrors, and gratings are collimating optical elements and would also call this category of optical components 'collimators.'" (Schaafsma Rep., ¶105.)

349.   I understand that Cytek has proposed that "collimating optical element" is a means-plus-function term. (Joint CC Br., 74.) In the alternative, Cytek proposed the following construction of the term: "'an optical component at a focal distance from a light source that projects a 'collimated beam' centered on the optical axis such that a 'portion of the collimated beam' is projected onto a first focusing optical element,' and another 'portion of the collimated beam' is projected onto a first optical relay element,[] otherwise indefinite." (*Id.*, 75.)

350.   As a means-plus-function term, both parties agree that the function of the "collimating optical element" in claim 1(b) is to "(1) receive light from a light source" and (2) "project a collimated beam." (*Id.*, 74.)  However, while Plaintiff

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

the "collimating lens"—also identified as "lens 1" in the Accused Products—as the

"collimating optical element." (Houston Rep., ¶¶417-420.) I disagree and, in my

opinion, there is no infringement under either party's construction.

354. While Cytek may label lens 1 a "collimating lens" in some instances, it

does not serve the claimed function of being configured to project a collimated beam

for the detector module, and Dr. Schaafsma and Dr. Houston have essentially

ignored that the focusing lens—also identified as "lens 2"—is part of the input optics

of the Accused Products. Yet I see that, during claim construction, Dr. Schaafsma

relied on a reference showing that "[t]he most common way of focusing a laser diode

beam is to use two collimating lenses, the first lens is to collimate the beam, the

second lens is to focus the collimated beam, as shown in Fig. 3.1." (D.I. 115-26

(Joint CC Br., Ex. 27 (Haiyin Sun, *Laser Diode Beam Basics, Manipulations and*

*Characterizations* 40 (2012)), at 40.)



40                                3  Single Transverse Laser Diode Beam Manipulation Optics

Fig. 3.1  a Using the first aspheric lens to collimate and second aspheric lenses to focus a laser diode beam. b Directly focusing a laser diode beam using one aspheric lens

(*Id.*) Given Dr. Schaafsma's reliance on this reference, I do not understand why he

████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement essentially ignored the focusing lens in the Accused Products.

355.    Even considering lens 1 alone, in my opinion, Dr. Houston (Houston Rep., ¶417) and Dr. Schaafsma (Schaafsma Rep., Section XI.J) cite documents and deposition transcripts that do not establish that the "collimating lens" is a collimating optical element configured to project a collimated beam.

356.    For example, CYTEK_0000000089 and CYTEK_0000001392 are Cytek's ████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

███████████████████████████ ██████

████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████

357.    In addition, to the extent that Drs. Houston and Schaafsma rely on the following graphic from the field service manual to suggest Lens 1 is projecting a collimated beam, I disagree.

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement



358.   (Houston Rep., ¶417 (annotated by Houston).)   That cartoon-like graphic is not an adequate substitute for the actual characteristics of the light exiting Lens 1.  Dr. Shao unambiguously explained that ███████████████████ ████████   (Q. Shao Dep. Tr. at 72:6-7 (discussing Q. Shao Dep. Ex. 7, CYTEK_0000003882 at -4001).)

359.   As noted above, I have reviewed the Zemax printouts from Dr. Ilkov. The Zemax printouts of Dr. Jay Hsieh's model shows that the ████████████ ████████████████████████████████████████████ ██████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

focal point, right, that confined distance is almost zero.").)

363. Dr. Hsieh, in discussing the email that Dr. Houston cites (HSIEH_000000008) at paragraph 419 of her report, clarified that

(J. Hsieh Dep. Tr. at 164:24-165:6.)  He also clarified throughout his deposition that

(*Id.* at 170:23-171:13, 203:9-204:16

This is consistent with my opinion above, that collimation cannot happen with an extended light source, but collimation can happen with a point source.

364. Dr. Schaafsma states that "the Accused Products include a collimation lens whose focal length is at or around the distance from the multimode optical fiber and which projects a collimated beam, a portion of which is directed towards a focusing optical element" and further that "these optical elements are approximately at *f* because they are propagating light from an extended light source."  (Schaafsma

- 206 -

████████████████████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement Rep., ¶106.) This is a faulty argument. First, Dr. Schaafsma's opinion essentially admits that Lens 1 and the mirrors are not necessarily placed at the focal length but only at "approximately the focal length." Second, Dr. Schaafsma cites numerous documents to support his opinion that the collimation lens has a focal length at or around the distance from the multimode optical fiber. But these documents do not show what the focal length of the collimation lenses are, or any accurate method to place Lens 1 and the mirrors at their focal lengths, for the same reasons I discuss below.

365. Dr. also Schaafsma appears to opine that a POSA would approximately collimate a beam by "project[ing] a beam onto a surface at some relevant distance away, and then adjust the collimating optical element until a minimum spot size is seen." (Schaafsma Rep., ¶¶57-58.) I disagree this produces a "collimated beam," for the reasons discussed below.

366. A POSA would understand that the function of the lens in front of the optical fiber (the "collimation lens") would be to collect as much light coming out of the fiber as possible. ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████.

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

367.    More importantly, Drs. Houston and Schaafsma ignore that Cytek's

(CYTEK_0000000089 at -103.)

- 208 -

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

optical element" in the Accused Products that "project[s] a collimated beam" where the "optical relay element" "receives at least a portion of the collimated beam *from* the collimating optical element."

371.   ***Dr. Schaafsma's Doctrine of Equivalents opinion ignores the recited function "to project a collimated beam."***  Dr. Schaafsma opines:  "[T]here is no difference between the described function and the way the collimation lens is used, and the same result is achieved.  The size of the beam is maintained so that a substantial portion of light can be received by each channel in the WDM, thereby 'extending the collimated distance.'"  (Schaafsma Rep., ¶112; *see also id.* ¶¶173-177.)  Dr. Schaafsma bases his opinion on the purported "function of the collimating optical element(s) [being] to create a beam 'over an extended distance without significantly expanding the beam diameter.'  ('582 patent, 44:28-34, 46:51-59.)"  (Schaafsma Rep., ¶113.)  Dr. Schaafsma then goes on to opine that "this function includes creating a beam that can be imaged and successively reimaged to create multiple images of the same size using a '1:1 relay,' thus controlling the maximum width of the beam as it propagates through the system.  ('582 patent, 44:58-45:2, 45:22-29; 45:44-54.)"  (*Id.*)

372.   Dr. Schaafsma further opines:  "The collimation lens in each Accused Product performs substantially the same function, in substantially the same way, to achieve substantially the same result as the collimating optical element(s) disclosed

- 212 -

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement in the Asserted Patents. In particular, as discussed above, the collimation lens is a doublet lens, which a POSA would understand reduces the convergence or divergence of light from the multimode fiber, when positioned by the standard collimation procedure for an extended light source (described above) which results in the multimode optical fiber being around one focal distance from the collimation lens. As discussed below, a POSA would know that the collimation of any real source results in a beam that can converge slightly and then diverge, while remaining nearly parallel and maintaining substantially the same size between the collimation lens and the next element. In the relay section of the WDM, this description applies to portions of the collimated beam under the court's construction of 'portion.' As I discuss in detail below (Section XI), the collimation lens in the Accused Products acts to achieve the same result as the collimating optical element described in the Asserted Patents, including the limitations of spot size and focusing on detectors."
(Schaafsma Rep., ¶114.)

373. However, Dr. Schaafsma's doctrine of equivalents opinions would render meaningless the claimed function "to project a collimated beam" where the "optical relay element" "receives at least a portion of the collimated beam from the collimating optical element," whether under means-plus-function construction or plain and ordinary meaning. I disagree with Dr. Schaafsma that this claimed function is substantially the same because "the collimation lens is a doublet lens,

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

which a POSA would understand reduces the convergence or divergence of light from the multimode fiber." (Schaafsma Rep., ¶114.)  I understand that the doctrine of claim vitiation prevents Beckman from rendering the claimed function meaningless.   But that is precisely what Dr. Schaafsma's opinion does by (1) changing the function to reducing the convergence or divergence of light and (2) ignoring that the focusing Lens 2 in the input optics of the Accused Products focuses the light and therefore there is no portion of the collimated beam received by the optical relay element.   I further reference my opinion in Section XIV.C.1.a above regarding "collimated beam."   Changing the function to include reducing the convergence of light would contradict Beckman's position during prosecution where Beckman argued that its use of a "collimated beam" is distinguishable from prior art that converges light. (BEC-CYTEK-00004404 at -4753-754 ('106 patent file history (June 4, 2024 Applicant Remarks, 9-10)).)  I understand that this would violate the doctrines of prosecution history estoppel, ensnarement, and claim vitiation.

374.   ***"Concave Mirror" Is Not a Collimating Optical Element Configured to Project a Collimated Beam Either Literally or Equivalently.***  Dr. Houston and Dr. Schaafsma also identify the odd-numbered "concave mirrors" in the Accused Products as the "collimating optical element."   (Houston Rep., ¶¶421-427; Schaafsma Rep., ¶201.)  I disagree.

375.   As an initial matter, the APD Module in the Accused Products do not

█████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

### 2.    Asserted Claim 3

407.   I understand that claim 3 of the '582 patent depends from claim 2, which in turn depends from claim 1, and thus includes all elements of claims 1 and 2 in addition to the elements of claim 3.

> **a.    3(b): "wherein the first focusing optical element is configured to focus the portion of the collimated beam received from the optical relay element to a size smaller than 1 millimeter in diameter."**

408.   In my opinion, claim limitation 3(b) is not met for the same reasons discussed above in Section XIV.C.1.b for limitations 1(b), 1(c), 1(d), 1(e), and 1(f) of claim 1 of the '582 patent, which analysis I incorporate here by reference.

> **b.    Conclusion: Asserted Claim 3**

409.   As discussed above, and incorporated here, Drs. Houston and Schaafsma have not demonstrated that each of the Accused Products meets all the limitations of claims 1, 2 and 3, and thus it is my opinion that asserted claim 3 of the '582 patent is not infringed.

### 3.    Asserted Claim 6

410.   I understand that claim 6 of the '582 patent depends from claim 1, and thus includes all elements of claim 1 in addition to the elements of claim 6.

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

          a.       **6(b): "further comprising a first optical filter disposed along an optical path between the collimating optical element and the optical relay element, the first optical filter configured to separate the collimated beam into a first branch and a second branch."**

411.  In my opinion, claim limitation 6(b) is not met for the same reasons discussed above in Section XIV.C.1.b for limitations 1(b), 1(c), 1(d), 1(e), and 1(f) of claim 1 of the '582 patent, which analysis I incorporate here by reference.

412.  I also understand that Dr. Weigl has opined that the '582 patent's specification fails to provide written description support for, and fails to enable the use of, "optical filters" other than "dichroic filters." (Weigl Op. Rep., ¶137.) The Accused Products use bandpass filters, not dichroic filters, and thus are not within the scope of "filter" in claim limitation 6(b).

413.  Additionally, each of the Accused Products does not satisfy the limitation of "the first optical filter configured to separate the collimated beam into a first branch and second branch." ███████████████████████

███████████████████████████████████████

██████████ (Schaafsma Rep., ¶¶215, 153.)  However, ████████████████

████████████████████████████████████. He, therefore, has not shown the claim element is infringed.

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement



(Schaafsma Rep., ¶130.)

414.    Additionally, to the extent Dr. Schaafsma intended to rely on his following annotated figure ███████████████████████████████ that figure demonstrates non-infringement in my opinion.

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

517. In my opinion, these facts regarding

confirm that Cytek had no reason to believe it was infringing any patents owned by Beckman. These facts are also consistent with

518. Turning back to Dr. Houston's opinions, Dr. Houston describes Dr. Ming Yan's former employment at Becton Dickinson and the ensuing trade secret litigation. (Houston Rep., ¶¶490-491.) I understand that case is separate from and has nothing to do with the instant litigation, and is certainly not relevant to willful infringement. Dr. Houston relies on this trade secret litigation as evidence that "Dr. Yan and Cytek had knowledge and awareness of Xitogen, the company that originally developed the claimed inventions, Dr. Chen, and Dr. Chen's work on the claimed inventions." (Houston Rep., ¶491.)

519. Dr. Houston then provides a bulleted list of documents allegedly showing that

███████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement Rep., ¶492.)  However, this evidence pertaining to the CytoFLEX *product* cannot establish that Cytek willfully infringed the Asserted *Patents*—especially when the Asserted Patents *did not yet exist* as of the date of these cited documents.  Also, Cytek's activities—████████████████████████████████ ██████████████████████ are common practice in the field.  Dr. Houston attempts to paint a picture that Cytek's knowledge of Beckman's technology was a one-way street, but in reality—as illustrated above—████████████████████████ ███████████████████████████████████ ████████████████████

520.   I have reviewed each document cited in ¶492 of the Houston Report, and found no evidence that Cytek believed the Accused Products infringed the yet-to-issue Asserted Patents.  ████████████████████████████ ███████████████████████████████████ ███████████████████████████████████ ███████████████████████████████████ ███████████████████████████████  ███ ███████████████████████████████████ ███████████████████████████████████ ███████████████████████████████████ ███████████████████████████████████

- 314 -

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

(*See also, e.g.*, BEC-CYTEK_00074359 (CAD identifying bandpass filters used for so-called WDM assembly, such as "615/20BP Filter"); BEC-CYTEK_00074360 (similar); BEC-CYTEK_00074361 (similar); BEC-CYTEK_00074362 (similar); BEC-CYTEK_00074390 (similar); BEC-CYTEK_00074459 (similar).)

556.    Beckman Coulter's Service Manual for the CytoFLEX Products (specifically identifying the CytoFLEX, CytoFLEX S, CytoFLEX LX, and DxFLEX) shows that the CytoFLEX Products' so-called WDMs are configured to use bandpass filters as opposed to dichroic filters: "Because of the efficiency of [the so-called WDM] optical design, dichroic filters are not needed [such that a]ll of the filters in the WDM are band-pass filters." (BEC-CYTEK_00016527 at -643.)

557.    Thus, for the foregoing reasons, in my opinion, the CytoFLEX Products do not practice literally or under the doctrine of equivalents at least claim 6 of the '443 patent, which specifically recites the use of dichroic filters.  In addition, I understand that Dr. Ilkov and Dr. Weigl have opined that the '443 patent's and '107 patent's specification fails to provide written description support for, and fails to enable the use of, filters other than "dichroic filters" for propagating a beam between the filters and the claimed mirrors.  (Ilkov Op. Rep., ¶¶1034-1036; Weigl Op. Rep., ¶¶112-136.)  I also understand that Dr. Weigl has opined that the '582 patent's specification fails to provide written description support for, and fails to enable the use of, "optical filters" other than "dichroic filters." (Weigl Op. Rep., ¶137.)  The

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

Accused Products use bandpass filters, not dichroic filters, and thus are not within the scope literally or under the doctrine of equivalents of asserted claims 4, 6, 10, 11, and 15 of the '443 patent, claims 5, 16, 18, 26, 27 and 29 of the '107 patent, and claim 6 of the '582 patent for this additional reason. I understand from counsel that Dr. Houston and Dr. Schaafsma are precluded from introducing any new opinions in their reply reports which they could have raised in their opening reports. To the extent that Dr. Houston or Dr. Schaafsma provide any additional opinions on the foregoing issues in a reply report, I reserve all rights to further reply.

**C.    CytoFLEX Products Do Not Detect Substantially Full Spectrum of Visible Light**

558. Dr. Houston and Dr. Schaafsma failed to demonstrate that the CytoFLEX Products detect a substantially full spectrum of visible light. (*See* Houston Opening Rep. ¶¶638-641; Schaafsma Opening Rep. ¶479.)

559. I have reviewed Dr. Houston and Dr. Schaafsma's Opening Infringement Reports and confirmed that they do not offer any opinion or identify any evidence that any of the CytoFLEX Products "detect[] a substantially full spectrum of visible light." (*See* Houston Op. Rep. ¶¶638-641; Schaafsma Op. Rep. ¶479.) Claim 29 of the '107 patent requires a WDM capable of "detecting a substantially full spectrum of visible light," which the '107 patent defines as between 380 nm and 780 nm, ('107 patent, 57:37-40), using a single detector module (i.e., using a single set of filters and detectors without needing to rely on multiple detector

- 335 -