# EXHIBIT G



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BECKMAN COULTER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-945 (CFC) (EGT) |
| | ) | |
| CYTEK BIOSCIENCES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## REPLY INVALIDITY EXPERT REPORT OF FEDOR A. ILKOV, PH.D.

Dated: 2/9/2026

Respectfully submitted,

Fedor A. Ilkov, Ph.D.

████████████████████████████████████

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................1

      A.    Qualifications and Experience ................................................1

      B.    Assignment ............................................................................1

      C.    Materials Considered ............................................................2

II.   SUMMARY OF OPINIONS .................................................................3

III.  LEGAL STANDARDS ..........................................................................4

      A.    Invalidity ................................................................................4

      B.    Claim Construction ...............................................................4

      C.    Anticipation ...........................................................................5

      D.    Obviousness ...........................................................................8

      E.    Conception and Reduction to Practice ................................14

      F.    Written Description ..............................................................15

      G.    Enablement ...........................................................................16

      H.    Indefiniteness .......................................................................17

IV.   ASSERTED PATENTS ........................................................................18

V.    CLAIM CONSTRUCTION .................................................................18

      A.    The Court's Constructions ...................................................18

      B.    Additional Means-Plus-Function Terms .............................20

            1.    Collimating Optical Element ....................................20

            2.    Focusing Optical Element.........................................29

VI.   USE OF DISPUTED TERMS & TERMS LACKING § 112
      SUPPORT FOR PRIOR ART ANALYSIS ........................................33

VII.  PERSON OF ORDINARY SKILL IN THE ART ("POSA").....................34

VIII. PRIORITY DATE, CONCEPTION, AND REDUCTION TO
      PRACTICE ..........................................................................................35

      A.    The "Semiconductor Detector" and "Set of Detectors"
            Limitations of Claims 1 and 26 of the '582 Patent and Claim 1

████████████████████████████████████████

of the '443 Patent Are Not Entitled to an October 2012 Priority Date.................................................................................36

B.      The "Focusing" to "Smaller/Less than 1 Millimeters" Limitations of Claims 3 and 11 of the '582 Patent and Claims 14 and 18 of the '107 Patent Are Not Entitled to an October 2012 Priority Date ...................................................38

C.      The "Curved Mirror" Limitations of Claims 1, 14, and 20 of the '582 Patent Are Not Entitled to an October 2012 Priority Date ........40

D.      The "Optical Element Configured to Detect Scattered Light" Limitations of Claims 13 of the '443 Patent Are Not Entitled to at Least an October 2012 Priority Date .............................................41

E.      The "Ultraviolet Laser" Limitations of Claim 12 of the '443 Patent and Claims 6 and 12 of the '107 Patent Are Not Entitled to an October 2012 Priority Date .....................................................42

F.      The "Substantially Full Spectrum of Visible Light" Limitations of Claims 9 and 29 of the '107 Patent Are Not Entitled to an October 2012 Priority Date ............................................................44

IX.     RESPONSE TO DR. SCHAAFSMA'S, DR. HOUSTON'S AND DR. ROBINSON'S TECHNOLOGY BACKGROUND AND STATE OF THE ART OPINIONS..............................................................45

A.      Wavelength Division Demultiplexers Were Well-Known in the Prior Art and Would Have Been Used For Flow Cytometry.............45

B.      Using APDs to Detect Fluorescent Emission in Flow Cytometers Was Well-Known in the Prior Art .................................54

C.      Using Optical Blocks in Flow Cytometers Was Well-Known in the Prior Art.................................................................64

D.      A POSA Would Have Known that Absent a Shared Excitation Path (and Corresponding Optical Components) Lasers Interrogate Particles in a Flow Cell at Different Spatial Locations ...............................................................................67

X.      RESPONSE TO DR. SCHAAFSMA'S AND DR. HOUSTON'S DISCUSSION OF THE PRIOR ART ..........................................69

A.      BD FACSArray System .............................................................69

        1.      The BD FACSArray System Discloses a Flow Cytometer .....73

ii

B.   BD LSR-II System ...............................................................74

C.   Lemoff ................................................................................74

　　1.   Lemoff Teaches a "Collimated Beam" and a "Collimating Optical Element" ..................................77

　　2.   Lemoff Teaches a "Multimode Optical Fiber" ........................83

　　3.   Lemoff Provides a Motivation to Combine for Increased Compactness ...............................................83

D.   Cytek's Curved-Mirror DxP Wavelength Division (de)Multiplexer Detectors ("DxP System") .....................................86

　　1.   The DxP System Is Prior Art .................................................86

　　　　i.   The BMS-Z DxP System Is Representative of the DxP System ...........................................87

　　　　ii.   The DxP System's Development & Commercialization History Demonstrates It Is Prior Art ...........................................95

　　　　iii.   The DxP System Was Reduced to Practice & Depicted in Drawings or Descriptions Sufficient to Enable a POSA to Practice It......................................100

　　2.   The DxP System Discloses a Flow Cytometer ......................102

　　3.   The DxP System Discloses a Wavelength Division (de)Multiplexer ...............................................104

　　　　i.   The DxP System as Installed BMS-Z DxP System Is a Wavelength Division (de)Multiplexer ..................105

　　　　ii.   The DxP System as Installed BMS-Z DxP System Is Configured to Control Beam Size ..........................107

E.   Luminex FlexMap 3D System .........................................113

　　1.   The Luminex FlexMap 3D System Discloses a Flow Cytometer ...............................................116

F.   Oostman ..............................................................................117

G.   Frazier ................................................................................119

H.   Assorted References to APDs in Flow Cytometry ..........................120

　　1.   Doornbos: ..........................................................................120

iii

2. Gjelsnes:.................................................................................121

3. Stewart: ...............................................................................122

4. Lawrence 2006 and Lawrence 2008: ...................................122

XI. RESPONSE TO DR. SCHAAFSMA'S MOTIVATION TO COMBINE OPINIONS ............................................................................122

XII. THE ASSERTED CLAIMS ARE ANTICIPATED AND/OR OBVIOUS.................................................................................................126

XIII. BECKMAN COULTER HAS NOT ESTABLISHED OBJECTIVE INDICIA OF NON-OBVIOUSNESS .....................................................126

A. Relevant Legal Principles................................................................127

B. Dr. Schaafsma Fails to Establish Long Felt But Unsolved Need ....128

C. Dr. Schaafsma Fails to Establish Failure of Others .........................133

D. Dr. Schaafsma Fails to Establish Skepticism...................................138

E. Dr. Schaafsma Fails to Establish Unexpected Results.....................143

F. Dr. Schaafsma Fails to Establish Industry Praise ............................146

G. Dr. Schaafsma Fails to Establish Teaching Away ...........................149

H. Dr. Schaafsma Fails to Establish Copying.......................................152

I. Dr. Schaafsma Fails to Establish Commercial Success ...................156

J. Dr. Schaafsma Fails to Establish Nexus ..........................................160

XIV. THE ASSERTED CLAIMS ARE INVALID UNDER 35 U.S.C. § 112 ...............................................................................................................162

A. "Wavelength Division Multiplexer (WDM)"-Related Terms .........162

1. The claimed "wavelength division multiplexer (WDM)" lacks full scope written description support ('443, cls. 1, 4, 6, 9, 10, 11, 13, 15; '107, cls. 1, 2, 3, 5, 16, 17, 18, 20, 21, 22, 26, 27, 28, 29) ............................................................162

2. The claimed "wavelength division multiplexer (WDM)" lacks full scope enablement ('443, cls. 1, 4, 6, 9, 10, 11, 13, 15; '107, cls. 1, 2, 3, 5, 16, 17, 18, 20, 21, 22, 26, 27, 28, 29) ............................................................................171

B.    "WDM is capable of detecting a substantially full spectrum of visible light" ..................................................................177

    1.    Spectral flow cytometry v. conventional flow cytometry .....178

    2.    Dr. Robinson's improper reliance on and mischaracterization of current views and instruments...........196

    3.    The claimed "WDM is capable of detecting a substantially full spectrum of visible light" lacks full scope written description support ('107, cls. 1, 2, 3, 5, 16, 17, 18, 20, 21, 22, 26, 27, 28, 29) ..........................................205

    4.    The claimed "WDM is capable of detecting a substantially full spectrum of visible light" lacks full scope enablement ('107, cls. 1, 2, 3, 5, 16, 17, 18, 20, 21, 22, 26, 27, 28, 29) ..................................................212

    5.    All asserted claims of the '443 patent lack written description support and lack full scope enablement because they also recite a "wavelength division multiplexer (WDM)" ...........................................216

    6.    All asserted claims of the '582 patent lack written description support and lack full scope enablement because the claim preambles recite a "[a]n optical subsystem for a flow cytometer" that is limiting...................217

    7.    The phrase "a substantially full spectrum of visible light" is indefinite ('107, cls. 9, 29) ..................................................218

C.    Optical Fiber- / Light Source-Related Terms...................................219

    1.    The claimed "optical fiber" lacks full scope written description support ('107, cls. 1, 2, 3, 5) ..............................219

    2.    The claimed "optical fiber" lacks full scope enablement ('107, cls. 1, 2, 3, 5) ............................................................222

    3.    The claimed "light source" lacks full scope enablement and associated written description ('582, cls. 1, 20)..............223

D.    Detector-Related Terms ...................................................................226

    1.    A POSA in the field of the Asserted Patents is not an expert in carbon nanotube research and would not have been aware of any of Dr. Arnold's own or cited research papers ..................................................................................226

2.    There is no mention of "a carbon nanotube detector" in the October 18, 2012 '5819 Provisional Application ............237

3.    The common specification refers to a "carbon nanotube detector" generically and without exclusion.........................238

4.    The claimed "semiconductor detector" lacks full scope written description and enablement ('582, cls. 1, 2, 3, 6, 26) .......................................................................240

5.    The claimed "detector" lacks full scope written description and enablement ('443, cls. 1, 4, 9, 10, 11, 13, 15) .......................................................................244

6.    The claimed "[array/plurality] of avalanche photodiodes (APDs)" lack full scope written description and enablement ('107, cls. 1, 2, 3, 5, 16, 17, 18, 20, 21, 22, 26, 27, 28, 29) .................................................246

E.    Mirror Terms ....................................................................248

1.    The claimed "curved mirror" lacks full scope written description support ('443, cls. 1, 4, 9, 10, 11, 13, 15; '582, cls. 1, 2, 3, 6, 20, 22, 23, 26) .......................................248

2.    The claimed "mirror" lacks full scope written description support ('107, cls. 1, 2, 3, 5, 16, 17, 18, 20, 21, 22, 26, 27, 28, 29) .........................................................253

3.    The claimed "concave mirror" lacks full scope written description support ('107, cls. 3, 5, 16, 18, 26, 27, 29; '443 cl. 6) ..................................................254

F.    Flow Cell Terms ...............................................................256

1.    The claimed "flow cell" lacks full scope enablement and associated written description support ('443, cls. 11, 13, 15; '107, cls. 16, 18, 26, 27, 29) ..........................256

2.    The claimed "flow cytometer" lacks full scope enablement and associated written description support ('107, cls. 1, 2, 3, 5) .........................................................266

3.    The claimed "multimode optical fiber configured to receive light from the flow cell" lacks written description support and enablement ('107, cls. 16, 18, 26, 27, 29)..........267

vi

██████████████████████████████████

G.    The claimed "light" in the Asserted Claims of the '443 and '107 patents lack full scope enablement and associated written description ...............................................................................267

H.    Collimation-Related Terms ............................................................272

1.    The claimed "collimated beam" is indefinite ('582, cl. 1; '443, cl. 10) .........................................................................272

2.    The claimed "collimating optical element" is indefinite ('582, cls. 1, 20) ....................................................................277

3.    The claimed "first collimated beam" and "second collimated beam" terms lack written description support and are not enabled ('443, cl. 10) .........................................280

I.    Image-Related Terms ......................................................................281

1.    The claimed "image" is indefinite ('582, cls. 1, 20)..............281

2.    The claimed "optical relay element configured to reflect a portion of the collimated beam to produce a first image" ('582, cl. 1), and the claimed "collimating optical element configured to project a first image" and "optical relay element configured to receive light from the collimating optical element and to project a second image" ('582, cl. 20) lack written description support ..........288

3.    The claimed "optical relay element configured to reflect a portion of the collimated beam to produce a first image" ('582, cls. 1), and the claimed "collimating optical element configured to project a first image" and "optical relay element configured to receive light from the collimating optical element and to project a second image" ('582, cl. 20) lack enablement ..................................291

4.    The claimed "arranged near" in "an optical relay element arranged near the first image" is indefinite and lacks full scope written description and enablement ('582, cl. 20) .......292

J.    "Substantially"-Related Terms........................................................295

1.    The claimed "substantially linear" terms are indefinite ('107, cl. 2)..................................................................295

2.    The claimed "substantially the same … size" is indefinite ('582, cl. 20)..................................................................296

██████████████████████████████████████████████

K.    Other Terms................................................................297

    1.    The claimed "a first semiconductor detector, wherein the first focusing optical element is configured to focus the portion of the collimated beam received from the optical relay element onto the first semiconductor detector" lacks written description support ('582, cl. 1) ................................297

    2.    The claim term "compact" is indefinite ('107, cls. 28, 29) ...301

XV.  CONCLUSION................................................................305

Fedor A. Ilkov, Ph.D. Reply Report Regarding Invalidity

red box) and visible in the image of the as-installed BMS-Z DxP System as shown

at the bottom:



**Excerpts of CYTEK_0000011509 (annotated); Excerpts of CYTEK_0000011594 (annotated); Excerpts of CYTEK_0000011570 (annotated).**

164.   In addition, as I explained in my Opening Report, the DxP System as

installed in the BMS-Z DxP System, discloses a "collimating beam" and a

109

Fedor A. Ilkov, Ph.D. Reply Report Regarding Invalidity

"collimating optical element" (i.e., a controlled beam size and means for controlling the beam size) based on Beckman Coulter's interpretations of these terms. As articulated in my Opening Report, my opinion is that the terms "collimated beam" and "collimating optical element" are indefinite. Indeed, a POSA would not be able to distinguish a "collimated beam" from a non-collimated beam under Beckman Coulter's interpretation of the term, which includes a "focused beam" as a "collimated beam," and would similarly not understand what optical element(s) comprise a "collimating optical element."[18] I have already explained why the DxP System as installed in the BMS-Z DxP System discloses a "collimated beam" and a "collimating optical element" in my analysis of claim 1 of the '582 Patent in Ground 4. (Ilkov Opening Rep., Section XI.D.) As I explained in my Opening Report, Beckman Coulter's infringement allegations against Defendant identify "optical

---

[18] For example, as detailed in my Opening Report, Dr. Schaafsma asserted during claim construction that a "collimating optical element" can be any "device" or "assembly," so long as the undefined device or assembly projects a collimated beam. (*See* D.I. 117-30 (Joint Claim Construction Br., Ex. 84 ("collimator. Optical device that renders diverging or converging light rays parallel.")); D.I. 117-13 (Joint Claim Construction Br., Ex. 67 (Newton's Telecom Dictionary (27th Ed. 2013)), at 314 ("collimator" "A collimator is an assembly that is used to straighten and make parallel diverging light").) This assertion by Dr. Schaafsma further demonstrates the lack of any associated definite structure in that, according to Dr. Schaafsma, a "collimating optical element" also can arbitrarily be considered to include entire multi-component "devices" and "assemblies" even though he has provided no identified structure for any such devices or assemblies. (Ilkov Opening Rep., ¶¶1055-1057.)

Fedor A. Ilkov, Ph.D. Reply Report Regarding Invalidity

relay elements comprising curved mirrors" M(1), M(2), M(3), … M(N), that focus

the light from a light source as a collimating optical element and "focused light"

(i.e., light with convergence) as part of a collimated beam:



(Beckman Coulter's Infringement Contentions, Ex. 1 at 42.)  This is consistent with

Beckman Coulter's articulation of a collimated beam elsewhere in Beckman

Coulter's infringement contentions, such as in the annotated figure below where

Beckman Coulter identifies light emanating from a fiber optic, and relayed between

concave mirrors and dichroic filters in a diverging/converging pattern as "portions

of a collimated [i.e., controlled] beam":

111

Fedor A. Ilkov, Ph.D. Reply Report Regarding Invalidity



(Beckman Coulter's Feb. 14, 2025 Infringement Contentions, Ex. 1 at 55.)  Thus,

under Beckman Coulter's own articulation regarding what comprises a "collimating

optical element" and "collimated beam," light emission from a fiber optic into

Cytek's PMT Box, as installed in the BMS-Z DxP System, which is then relayed

across a series of concave mirrors and dichroic filters, discloses a design "to control

beam size," (Schaafsma Rebuttal Rep., ¶415).

165.   In sum, I disagree with Dr. Schaafsma's conclusion that I "fail[ed] to

provide evidence or analysis of a ray trace that might indicate whether and how

arrangement of components within the [DxP] PMT box limits or controls the

divergence of a light beam that enters the PMT Box."  (Schaafsma Rebuttal Rep.,

Fedor A. Ilkov, Ph.D. Reply Report Regarding Invalidity

398.  Lastly, in response to my illustration of why a POSA would not be able to distinguish a beam that is "nearly parallel" and one that is not "nearly parallel," Dr. Schaafsma states that my "second illustration would not be understood by a POSA to be collimated as the beam is still changing substantially in diameter." (Schaafsma Rebuttal Rep., ¶839.)  Dr. Schaafsma's critique of my illustration is a clear example of how the term "nearly parallel" is indefinite and does not provide a POSA any way of determining the metes and bounds of the term.  While Dr. Schaafsma considers that second illustration to show a beam that is "changing substantially in diameter," he does not point to any support whether from the specification or otherwise for how a POSA would determine when a beam changes "substantially in diameter" such that it is not "collimated."  Tellingly, I labeled that beam as "more nearly parallel" and "diverging" not "substantially diverging."

2.    **The claimed "collimating optical element" is indefinite ('582, cls. 1, 20)**

399.  I have reviewed Dr. Schaafsma's Rebuttal Report regarding invalidity (*see, e.g.,* Schaafsma Rebuttal Rep., ¶¶841-852).  I maintain my opinion that "collimating optical element" as used in asserted claims of the '582 patents is indefinite for lack of sufficient corresponding structure for all the reasons stated in my Opening Report and above.  I further respond to Dr. Schaafsma's Rebuttal Report as follows.

████████████████████████████████████████████████

Fedor A. Ilkov, Ph.D. Reply Report Regarding Invalidity

400.   With respect to claim 1 of the '582 patent, ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████  (Schaafsma Rebuttal Rep.,

¶844.)  The cited testimony does not support Dr. Schaafsma's opinion because the witnesses did not have to consider the implications of focal length in the context of the questions posed.  In other words, because the questions did not ask the witnesses about focal length, the witnesses did not have to discuss focal length and there is nothing in the answers that I would interpret as taking a position that focal length is irrelevant to the functioning of the "collimating optical element."   Additionally, ████████████████████████████████████████████████████████"

(*See, e.g.,* Q. Shao Dep. Tr. at 123:18-24; B. Shan Dep. Tr. at 67:18-68:17 (incorporating B. Shan Dep. Errata Executed on December 5, 2025).)

401.   Dr. Schaafsma reproduces his opinions from his claim construction opinions and states:

Fedor A. Ilkov, Ph.D. Reply Report Regarding Invalidity

846.    As my full quote made clear, I was simply referring to the fact that POSAs understand that a collimating optical element does not have to be one single glass piece (i.e., a lens), but it can also be, *e.g.*, an achromatic doublet lens (two lenses formed together into a single unit, *see, e.g.*, https://www.thorlabs.com/mwir-achromatic-doublets-optimized-for-3---5-m?tabName=Overview), as the specification itself discloses as an exemplary collimating optical element. '582 Patent, 44:58-67. Even mirrors technically have subcomponents: a solid material (*e.g.*, glass) with a reflective coating covering at least one side of it. *See, e.g.*, '582 Patent, 3:21-25 ("The concave mirror may be made of an optically transparent material, such as glass or optical quality plastics, of plano-convex shape with a highly-reflecting coating on the convex side for internal reflection."); U.S. Patent No. 11,333,597, 16:23-26 ("A reflective material 811

(Schaafsma Rebuttal Rep., ¶846.) That a "collimating optical element" can include an achromatic doublet lens misses the point. Simply having an achromatic lens without specifying the focal distance would not project a collimated beam.

402.    Lastly, with respect to claim 20 of the '582 patent, Dr. Schaafsma states that "a POSA would understand that a collimating optical element projecting a first image includes a system like a telescope or telecentric pair in which the spatial information in the object (points of light) has been transformed into angular information in the collimated beams emerging from the afocal system." (Schaafsma Rebuttal Rep., ¶850.) For all the reasons I provide below related to the "image" terms, (Section XIV.I) a collimating optical element that project a collimated beam does not project a first image. Therefore, the claim term "a collimating optical

279

████████████████████████████████

Fedor A. Ilkov, Ph.D. Reply Report Regarding Invalidity

specificity on what are the purportedly acceptable tolerances, minor variations, alignment constraints, and wavelength-dependent effects, and he does not cite anything to support his opinion. Moreover, the specification provides no reasonably certain guidance. The teaching of a 1:1 image relay merely supports images that are the same size, not the metes and bounds of when images are "substantially the same size."

429. In my opinion, a POSA reading the '582 patent would not be able to determine the meaning of "substantially the same … size" with any reasonable certainty.

### K. Other Terms

**1. The claimed "a first semiconductor detector, wherein the first focusing optical element is configured to focus the portion of the collimated beam received from the optical relay element onto the first semiconductor detector" lacks written description support ('582, cl. 1)**

430. I have reviewed Dr. Schaafsma's Rebuttal Report regarding invalidity (*see, e.g.*, Schaafsma Rebuttal Rep., ¶¶984-992). I maintain my opinion that "a first semiconductor detector, wherein the first focusing optical element is configured to focus the portion of the collimated beam received from the optical relay element onto the first semiconductor detector" in claim 1 of the '582 patent lack written description support for all the reasons stated in my Opening Report. I further respond to Dr. Schaafsma's Rebuttal Report as follows.

297

Fedor A. Ilkov, Ph.D. Reply Report Regarding Invalidity

431.  Dr. Schaafsma states that "[he] understands that the Court construed 'first focusing optical element' and 'first semiconductor detector' in this claim to not require a sequence and that 'it doesn't tell you which comes first.' Sep. 17, 2025 H'rg Tr. at 163.6:-164:25." (Schaafsma Rebuttal Rep., ¶985.)  However, I understand that the Court construed "first focusing optical element" and "second focusing optical element" and "first semiconductor detector" and "second semiconductor detector" in claim 18 of the '582 patent as not requiring a sequence, but expressly limited the construction to claim 18. (Sep. 17, 2025 Hr'g Tr. at 161:1-163:17.)  Claim 18 of the '582 patent is *not* an Asserted Claim.  The specific language in claim 1 of the '582 patent, however, supports my position.

432.  Claim 1 recites "a first semiconductor detector, wherein the first focusing optical element is configured to focus the portion of the collimated beam received from the optical relay element onto the first semiconductor detector." As I explained in my Opening Report at ¶¶1110-11, this claim requires the following sequence:



433.  Yet, there is no specification support for such an arrangement as I

Fedor A. Ilkov, Ph.D. Reply Report Regarding Invalidity

explained in my Opening Report at ¶1111:



FIG. 25



FIG. 27

299

██████████████████████████████████

Fedor A. Ilkov, Ph.D. Reply Report Regarding Invalidity



FIG. 28

434.   Notably, in BEC's initial infringement contentions, BEC mapped the claim language onto FIG. 1 of Cytek's patent, where FIG. 1 does show a sequence of a curved mirror – first focusing optical element – first semiconductor detector.



FIG. 1

300

Fedor A. Ilkov, Ph.D. Reply Report Regarding Invalidity

(Beckman Coulter's Feb. 14, 2025 Infringement Contentions, Ex. 1, at 117.) No such disclosure or figure appears in the '582 patent.

435. In my opinion, a POSA reading the '582 patent would not have understood the specification to have disclosed "a first semiconductor detector, wherein the first focusing optical element is configured to focus the portion of the collimated beam received from the optical relay element onto the first semiconductor detector" as recited in claim 1 of the '582 patent.

### 2.    The claim term "compact" is indefinite ('107, cls. 28, 29)

436. I have reviewed Dr. Houston's Rebuttal Report regarding invalidity (*see, e.g.*, Houston Rebuttal Rep., ¶¶411-417). I maintain my opinion that "compact" as used in claims 28 and 29 of the '107 patent is indefinite for all the reasons stated in my Opening Report. (Ilkov Opening Rep., ¶1113.) I further respond to Dr. Houston's Rebuttal Report as follows.

437. The specification disclosures cited by Dr. Houston fail to inform a POSA how to discern with reasonable certainty when the claimed flow cytometer is no longer "compact" such that it would fall outside the scope of claims 28 and 29 of the '107 patent. The first disclosure, as noted in my Opening Report, merely describes the claimed invention as "compact and easy to manufacture" and says nothing about what it means for a flow cytometer to be "compact." (*See* Houston Rebuttal Rep., ¶411 (citing '107 patent, 2:23-28); Ilkov Opening Rep., ¶1113.)