# EXHIBIT K



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BECKMAN COULTER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-945 (CFC) (EGT) |
| | ) | |
| CYTEK BIOSCIENCES, INC., | ) | ███████████ |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CYTEK BIOSCIENCES, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTIONS FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY (MSJ NO. 1-3)**

OF COUNSEL:
Reuben H. Chen
HanByul Chang
Juan Pablo Gonzalez
Alexandra Leeper
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304

Elizabeth M. Flanagan
COOLEY LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402

Adam Pivovar
Dustin M. Knight
Rosalynd D. Upton
David Yun
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004

March 13, 2026

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@morrisnichols.com
jtigan@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendant
Cytek Biosciences, Inc.*

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ...................................................................................6

II.     NATURE AND STAGE OF THE PROCEEDINGS...................................10

III.    SUMMARY OF THE ARGUMENT............................................................10

IV.     STATEMENT OF FACTS........................................................................13

V.      MOTION NO. 1:  The Accused Products Do Not Infringe Claims 23 and 26 of the '582 Patent Under the Court's Claim Construction ............................18

      A.      BEC's infringement theories for the "the size of the first image is substantially the same as the size of the second image" limitation do not properly apply the Court's construction of "second image," so summary judgment of non-infringement must follow ........................18

      B.      BEC's reply opinions comparing sequential spot sizes, to the extent considered, fail to create a genuine issue of material fact regarding infringement of the "size of the first image is substantially the same as the size of the second image" limitation .............................................22

      C.      Alternatively (or additionally), the term "image" is indefinite...........29

VI.     MOTION NO. 2: The Accused Products Do Not Infringe Claims 1, 3, and 6 of the '582 Patent Because They Do Not Use a "Collimated Beam" ...........33

      A.      The Claims and Written Description Demand Propagation of a Collimated Beam Within the Claimed Optical Subsystem.................34

      B.      The Accused Products do not propagate a "collimated beam" within their detector module and therefore do not infringe claims 1, 3, and 6 .......................................................................................................38

            1.      The Accused Products' input optics do not project and propagate a "collimated beam" within the detector module; Schaafsma's reliance on allegedly collimated beam segments does not satisfy claim 1 ...........................................................40

            2.      The Accused Products do not have "an optical relay element" that is arranged both "to receive at least a portion of the collimated beam from the collimating optical element … [and] to reflect the portion of the collimated beam received from the collimating optical element[.]" .................................................46

            3.      The Accused Products do not satisfy "collimated beam" under the doctrine of equivalents because BEC's theory would vitiate

i

**TABLE OF CONTENTS**
(continued)

**Page**

the claim term and because a focused and defocused beam is substantially different from a "collimated beam".....................48

C.    Alternatively, the Term "Collimated Beam" Is Indefinite as a POSA Would Be Unable to Determine the Scope of the Term with Reasonable Certainty.............................................................52

VII.    MOTION NO. 3: The '443/'107 Asserted Claims Are Invalid for Lack of Written Description for the Full-Scope of "WDM".......................................55

A.    The Only "WDM" Supported by the Written Description Is One that Includes a Collimating Optical Element/"First Optical Element" that Projects a Collimated Beam Used by the WDM................................55

B.    The '443/'107 Asserted Claims Recite a WDM But Not the Essential Element, a "Collimating Optical Element"/"First Optical Element" That Projects a Collimated Beam Used by the WDM .......................58

VIII.    CONCLUSION...................................................................................61

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*,
  811 F.3d 1334 (Fed. Cir. 2016) ...................................................................44

*Athletic Alts., Inc. v. Prince Mfg., Inc.*,
  73 F.3d 1573 (Fed. Cir. 1996) ....................................................................45

*Augme Techs., Inc. v. Yahoo! Inc.*,
  755 F.3d 1326 (Fed. Cir. 2014) ...................................................................46

*Geneva Pharms., Inc. v. GlaxoSmithKline PLC*,
  349 F.3d 1373 (Fed. Cir. 2003) ...................................................................47

*Gentry Gallery, Inc. v. Berkline Corp.*,
  134 F.3d 1473 (Fed. Cir. 1998) ...................................................................54

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
  558 F.3d 1368 (Fed. Cir. 2009) ...................................................................56

*Intell. Sci. & Tech., Inc. v. Sony Elecs., Inc.*,
  589 F.3d 1179 (Fed. Cir. 2009) ...................................................................18

*Lipocine Inc. v. Clarus Therapeutics, Inc.*,
  541 F. Supp. 3d 435 (D. Del. 2021)..............................................................54

*LizardTech, Inc. v. Earth Res. Mapping, Inc.*,
  424 F.3d 1336 (Fed. Cir. 2005) ...................................................................56

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  572 U.S. 898 (2014)...................................................................................49

*Novozymes A/S v. DuPont Nutrition Biosciences APS*,
  723 F.3d 1336 (Fed. Cir. 2013) ...................................................................54

*NuVasive, Inc. v. Alphatec Holdings, Inc.*,
  557 F. Supp. 3d 1069 (S.D. Cal. 2021)..........................................................49

*Regents of Univ. of Minn. v. AGA Med. Corp.*,
  717 F.3d 929 (Fed. Cir. 2013) ....................................................................18

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Sage Prods. Inc. v. Devon Indus. Inc.*,
  126 F.3d 1420 (Fed. Cir. 1997) ..........................................................45

*In re Shafovaloff*,
  No. 2024-1035, 2025 WL 1779173 (Fed. Cir. June 27, 2025)..........................55

*Stragent, LLC v. Volvo Car USA, LLC*,
  No. 22-cv-00293, 2024 WL 1366813 (D. Del. Apr. 1, 2024)................18, 19, 20

*Tronzo v. Biomet, Inc.*,
  156 F.3d 1154 (Fed. Cir. 1998) ..........................................................43

*Univ. of Rochester v. G.D. Searle & Co.*,
  358 F.3d 916 (Fed. Cir. 2004) ..........................................................54

**Other Authorities**

Fed. R. Civ. P. 30(b)(6)..........................................................52

## TABLE OF ABBREVIATIONS

| Abbreviation | Term/Meaning |
|---|---|
| '582 patent | U.S. Patent No. 10,330,582 |
| '443 patent | U.S. Patent No. 11,703,443 |
| '107 patent | U.S. Patent No. 12,174,107 |
| Asserted Patents | '582 patent; '443 patent; '107 patent |
| Asserted Claims | Claims 1, 3, 6, 23, and 26 of the '582 patent; claims 4, 6, 10, 11, and 15 of the '443 patent; claims 5, 16, 18, 26, 27, and 29 of the '107 patent |
| BEC | Plaintiff Beckman Coulter, Inc. |
| Cytek | Defendant Cytek Biosciences, Inc. |
| Houston | Jessica Houston, Ph.D., BEC's expert |
| Ilkov | Fedor Ilkov, Ph.D., Cytek's expert |
| Leary | James Leary, Ph.D., Cytek's expert |
| Schaafsma | David Schaafsma, Ph.D., BEC's expert |

**Motion 3**

Summary judgment of invalidity is warranted for all '443/'107 Asserted Claims for failure to satisfy the written description requirement.  The written description only discloses a so-called "Wavelength Division Multiplexer (WDM)" [2] having a "collimating optical element"/"first optical element" configured to project a collimated beam used within the WDM, but the claims broadly recite a WDM that uses any light without any requirement for that light to be "collimated" by a "collimating optical element"/"first optical element."

## IV.    STATEMENT OF FACTS

The written description states that "efficient color separation ***can only be*** accomplished economically with collimated light beam." (SUF2, ¶8; Ex. 2A, 44:24-26.)  In infringement contentions, BEC pointed to the beam throughout the Accused Products' detector module as the alleged "collimated beam."

---

[2] BEC treats a "wavelength division multiplexer (WDM)" as a "wavelength division *de*multiplexer."  Cytek disagrees because a multiplexer adds different light bands together while a *de*multiplexer separates light into different bands.  Cytek does not move for summary judgment on this non-infringement position, but reserves the right to advance it at trial.



(SUF2, ¶30; Ex. 2K, 32 (BEC's annotations); *see also id.* at 42-44.) Tellingly, BEC annotated the entire beam traveling through the detector modules as "portions of **collimated beam**." BEC maintained this position even after conceding at *Markman* that "portion" means "subset of the spectrum of wavelengths of light" instead of BEC's proposed construction that sought to ambiguously construe "portion" as meaning a single light ray (or some subset of the rays) within the accused "beam." (Ex. 2D, 92:21-24.)

In infringement contentions, BEC also identified all beam spots on the Accused Products' bandpass filters as "images" and distinguished the alleged "images" (in green below) from other segments of the alleged "collimated beam" (in blue). (SUF1, ¶7.)



(*Id.*, (citing Ex. 1C, 66, 220.)



(*Id.*, (citing Ex. 1C, 55, 202).)

The undisputed evidence, however, is that the accused "beam" in the Accused Products is not a "collimated beam" because, as BEC's expert, Schaafsma, admitted, segments of the beam are not "collimated." (SUF2, ¶16; Ex. 1H, 214:9-15.) So, in

15

expert discovery, BEC advanced a new theory. BEC's expert, Schaafsma,[3] pointed to mere segments of the beam as allegedly "collimated," abandoning BEC's theory that the entire beam is the accused "collimated beam." (SUF2, ¶¶ 14-16 (citing Ex. 2B, ¶¶130-131, 171-172; Ex. 2H, ¶¶201-207).)

Additionally, Schaafsma's new infringement theory relied on two different "types" of alleged "images" within the Accused Products: (1) "afocal images" that purportedly exist along segments of the beam, such as the beam segments between elements M1 & M2, and (2) focused or real images on the odd-numbered filters (F1, F3, etc.) (rather than on sequential filters). (SUF1, ¶¶8-9, 13)



---

[3] Schaafsma was BEC's only expert to independently provide substantive infringement opinions regarding the "collimated beam"-related and "image"-related limitations. Another BEC expert, Houston, provided opinions only regarding the "collimating optical element"-related limitations and simply opined that she reviewed and agreed with Schaafsma's analysis of these limitations. (SUF2, ¶10; SUF1, ¶10.)

(*Id.*)  According to Schaafsma, "afocal images" exist along the entire length of the allegedly "collimated" segments of the beam, not just at the filters.  (SUF1, ¶¶11-12.)  Thus, using Schaafsma's taxonomy, the Accused Products have an alternating sequence of focused images on the odd filters (F1, F3, etc.) with intervening "afocal images" (e.g., in annotated segment(s) B4-B5 between M1-F2-M2), and vice versa. (SUF1, ¶¶8-9, 11-12.)

Schaafsma's initial infringement analysis for the "substantially the same … size" element 20(d) rested on two alternative infringement theories: (1) that the so-called "afocal images" were all essentially the same size (ignoring the intervening focused images), and (2) separately, that the focused images on the odd-numbered filters are the same size (ignoring the intervening "afocal images").  (SUF1, ¶¶13-14.)  The "images" identified by Schaafsma in each theory are nonsequential, and there are intervening images between each respective pair of first and second "images." (*Id.*)

Schaafsma also introduced a third new infringement opinion in his Reply report, asserting that the focused beam spots on the odd-numbered filters and the unfocused beam spots on the even-numbered filters purportedly differ by ███████ in size, so "are substantially the same size." (SUF1, ¶15.)

real images that are formed on the odd-numbered filters, and (2) "afocal images" that purportedly comprise segments of the light beam (*e.g.*, between M1-M2, M3-M4, etc.) that encode information "that can later be re-imaged to form a real image." (SUF1, ¶¶9, 12.) According to Schaafsma, an "afocal image" exists along the "entire length" of an (effectively) collimated beam segment. (SUF1, ¶11.) What Schaafsma calls an "afocal image" is three-dimensional, whereas the focused images on the odd-numbered filters are only two-dimensional. (SUF1, ¶¶11-12, 26.) Schaafsma's previous description of an "afocal image" is thus inconsistent with his new opinion regarding the difference between the unfocused *spot size* at the even-numbered filters and the size of the focused/real *images* formed on the odd-numbered filters.

Thus, even Schaafsma's belated, conclusory assertion that the focused spots on the odd-numbered filters are "substantially the same size" as the unfocused spots on the even-numbered filters—which is irreconcilable with his other opinions—is insufficient to create a genuine issue of fact regarding noninfringement of element 20(d).

C.    **Alternatively (or additionally), the term "image" is indefinite**

The term "image" as used in the '582 patent is indefinite because BEC contends it includes a "collimated afocal image," but the term "collimated afocal image" describes an impossibility in a flow cytometer. Though "afocal" is a known term, it is undisputed that the phrase "collimated afocal image" does not appear

29

anywhere in the field other than in the Asserted Patents.  (SUF1, ¶22.)  And the two instances where this phrase is used in the written description fail to provide guidance on what a "collimated afocal image" is, where it is formed within the light path of an optical subsystem for a flow cytometer, or the size of such an "image." (SUF1, ¶23; Ex. 1J, ¶¶1080-1085.)  Rather, the two uses of the phrase "collimated afocal image" in the written description discuss a different component—a composite microscope objective—than what is claimed in the '582 patent, a different component that produces a real image through further focusing the beam (using, *e.g.*, a lens) "at a finite distance." (SUF1, ¶23 (citing Ex. 1A, 35:25-25, 36:25-32).)



FIG. 10

(Ex. 1J, ¶1082; Ex. 1A, FIG. 10 (annotated).)

In contrast, a POSA would understand that a collimated beam forms an afocal "image" at infinity. (SUF1, ¶24.)

30

Using this relationship, you can see why light going through a converging lens can produce three different results (this is similar to what we saw earlier for light passing through a spherical boundary). Whether the light converges, diverges, or is collimated depends on where the object is relative to the focal length of the lens:



(*Id.*, (citing Ex. 1J, ¶1079).) Because a collimated beam forms an afocal image at infinity, a POSA would not understand any "collimated afocal image" to be formed within the claimed "optical subsystem for a flow cytometer," as the light path in such a subsystem is indisputably not infinite. (SUF1, ¶¶24-25.)

Schaafsma equates an "afocal image" with a "collimated" *segment* of a light beam and contends that "image information" is included or encoded in the collimated beams propagating between two optical elements. (SUF1, ¶¶11-12.) The claims of the '582 patent recite an "image," however, not "image information" that can later be used to form an image. (SUF1, ¶27.) "Information" that can be used to form an "image" is not the "image" itself. (Ex. 1L, ¶413.) Schaafsma further confuses an "afocal image" (which resolves at infinity) with an "afocal system" that can create a real image if there is a second lens. (*Id.*, ¶¶410, 414.) There is no "afocal image" that exists along a path of light; rather, "images" are two-dimensional shapes formed on an image plane—located at a finite distance for real images to be formed

by converging rays and located at an infinite distance for a collimated beam—not a three-dimensional object comprising an entire length of a beam segment. (*Id.*)

Schaafsma's conclusory comparison of the "size" of an "afocal image" to that of a focused/real image further underscores the indefiniteness of the "image" term. Real images are formed by converging rays on or at a two-dimensional image plane, while "afocal images," according to Schaafsma, allegedly "exist" along the entire length of a segment of a light beam with no identifiable image plane. (SUF1, ¶¶9, 11-12, 26.) Thus, whether a real image at an image plane is "substantially the same … size" as a projection of a "collimated afocal image" with no image plane (or an image plane at infinity) has no objective answer since nothing identifies where to measure the relative size of the "collimated afocal image" for comparison against a real image (even assuming comparing the "size" of Schaafsma's two different types of "images" makes any sense). Indeed, Schaafsma's own model shows that the allegedly "collimated afocal image" segment of the beam between M1-F2-M2 has varying cross-sectional diameter of ▮▮▮▮▮▮▮▮▮▮ (SUF1, ¶¶18-19; Ex. 1G.) Since the allegedly "collimated afocal image" has a different cross-sectional size at different locations in BEC's identified beam segment in which the "collimated afocal image" allegedly "exists" and there is no image plane to indicate which of the varying sizes of the "collimated afocal image" are to be used to determine whether "the first image is substantially the same as the size of the second image," a POSA

32

would not be able to determine with reasonable certainty whether a real "first image" is substantially the same size as a "collimated afocal" "second image." (SUF1, ¶¶11-12, 18-19; Ex. 1L, ¶¶413-415.)

Thus, to the extent that: (i) "collimated afocal images" or "afocal images" are included within the scope of the "image" term; (ii) "collimated afocal images" or "afocal images" need not be (perfectly) collimated; and (iii) an arbitrary cross-section of a three-dimensional projection of a "collimated afocal image" can serve as a proxy for the "image" "size," all as BEC contends, a POSA would not understand the scope of the term "image" with reasonable certainty because they would not understand *where* along the length of a "collimated" beam path a two-dimensional cross-section that represents the "size" of the three-dimensional projected "afocal image" is located. (*Id.*)

## VI.    MOTION 2: THE ACCUSED PRODUCTS DO NOT INFRINGE CLAIMS 1, 3, AND 6 OF THE '582 PATENT BECAUSE THEY DO NOT USE A "COLLIMATED BEAM"

The Accused Products do not infringe the remaining asserted claims of the '582 patent because they use an alternatingly focused and defocused beam within the detector module, not a "collimated beam" as required by claim 1 of the '582 patent.    BEC does not dispute that the beam within the Accused Products is alternatingly focused and defocused.  Instead, BEC attempts to prove infringement by pointing to mere "segments" of the beam and arguing that only initial collimation

33

or alleged mirrors.

2.    **The Accused Products do not have "an optical relay element" that is arranged both "to receive at least a portion of the collimated beam from the collimating optical element … [and] to reflect the portion of the collimated beam received from the collimating optical element[.]"**

Further, to the extent an individual segment of a beam could satisfy the claim term "collimated beam" (and it does not) under any of Schaafsma's infringement mappings (whether accusing L1 or M1 as the claimed "collimating optical element" and M1 or M2 as the accused "optical relay element"), the Accused Products would not satisfy the entirety of limitation 1(c), which requires "an optical relay element" arranged both "to receive at least a portion of the collimated beam from the collimating optical element … [and] to reflect the portion of the collimated beam received from the collimating optical element[.]" (SUF2, ¶3.) In other words, the optical relay element must both *receive* and *reflect* the same portion (subset of wavelengths) of "the collimated beam." This is absent from the Accused Products as Schaafsma's Zemax analysis demonstrates.

46



(SUF2, ¶27; Ex. 2B, ¶130 (annotated to show non-collimated beam and optical relay elements).)

None of M1-M15 satisfy the limitation of an "optical relay element" receiving "a portion of the collimated beam" and reflecting "the portion of the collimated beam." Schaafsma admits that he has "never described the beam from the odd-numbered filters to the odd-numbered mirrors as collimated." (SUF2, ¶20; Ex. 2H, ¶215.) Hence, it is undisputed that none of the accused odd-numbered mirrors receive "a portion of the collimated beam." Schaafsma also "agree[s] that Cytek focuses its beam at portions along the optical path" (SUF2, ¶22; Ex. 2H, ¶101), and admits that a "POSA would not consider something that is brought to a point of focus" to be a collimated beam. (SUF2, ¶22; Ex. 2I, 131:6-15.) Thus, it is also

undisputed that the accused even-numbered mirrors (M2, M4, etc.) do not reflect "the portion of the collimated beam."

Because there is simply no alleged mirror that both receives and reflects the same portion (subset of wavelengths) of the collimated beam (limitation 1(c)), Cytek does not infringe asserted claims 1, 3, and 6 of the '582 patent.

> **3.    The Accused Products do not satisfy "collimated beam" under the doctrine of equivalents because BEC's theory would vitiate the claim term and because a focused and defocused beam is substantially different from a "collimated beam"**

The Accused Products also cannot infringe "collimated beam" under the doctrine of equivalents. Schaafsma alleges that if "any portion(s) of the beam are not literally a 'collimated beam' and/or a 'portion of the collimated beam,' then the beam is equivalent to the claimed 'collimated beam' and/or any portion(s) thereof under the Doctrine of Equivalents" because "the beam and all portions thereof maintain substantially the same *maximum* diameter as it travels along the optical path by having controlled divergence and/or convergence." (SUF2, ¶32; Ex. 2B, ¶117.) But Schaafsma's position vitiates the term "collimated" beam from the claims.

A theory of equivalence may not vitiate a claim term. *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998) ("If a theory of equivalence would vitiate a claim limitation, … then there can be no infringement under the doctrine of

genuine issue of material fact on the issue of infringement by equivalents"). The claimed invention is designed to maintain a "collimated beam," not purposefully cause a beam to converge and diverge like the Accused Products. (SUF2, ¶11; Ex. 2E, ¶¶86-89; 133; Ex. 2F, ¶¶327-331.) Moreover, Schaafsma made no attempt to assert that the undisputed non-collimated converging and non-collimated diverging segments within the Accused Products are approximately "collimated," nearly "collimated," or closely "collimated" to support any contention that they are merely insubstantially different and/or operate in substantially the same way as the recited "collimated beam."

Finally, the result is not substantially the same. Cytek's converging and diverging optics helps minimize aberrations so that the beam can propagate further to reach more detectors. (Ex. 2E, ¶133; Ex. 2F, ¶340.) Moreover, BEC has submitted no evidence demonstrating substantially the same result between use of a "collimated beam" and use of a focused and defocused beam. Therefore, there can be no infringement under the doctrine of equivalents.

C.    **Alternatively, the Term "Collimated Beam" Is Indefinite as a POSA Would Be Unable to Determine the Scope of the Term with Reasonable Certainty**

Alternatively, the term "collimated beam" is indefinite because "its legal scope is not clear enough that a person of ordinary skill in the art could determine whether a particular composition infringes or not." *Geneva Pharms., Inc. v.*

*GlaxoSmithKline PLC*, 349 F.3d 1373, 1384 (Fed. Cir. 2003) (inability for a POSA to know whether a particular product is within the claim scope is "the epitome of indefiniteness.").

The Court construed the term "collimated beam" under its plain meaning but reserved the issue of indefiniteness. (SUF2, ¶5; Ex. 2C, 133:11-15 ("I'm not going to construe this term. I'm going to give it its plain and ordinary meaning. I do think it raises, though serious concerns about indefiniteness.").)

BEC contends the plain meaning is "a beam with nearly parallel rays." (*See* D.I. 89-1, 12; Ex. 2I, 146:2-6, 147:22-148:3.) But the specification does not provide any guidance, such as disclosing the allowed degree of divergence (or convergence) of the beam, if any, to distinguish a "collimated beam" from a non-collimated beam. (SUF2, ¶35; Ex. 2O, ¶1053.) BEC's experts, Schaafsma and Houston, admit as much. (SUF2, ¶35; Ex. 2H, ¶206; Ex. 2P, 135:25-136:11.)

During deposition, Schaafsma admitted that defining a "collimated beam" as having "minimal convergence or divergence" is merely "a descriptive term that doesn't particularly have an implied metric." (SUF2, ¶36; Ex. 2I, 181:11-19.) Similarly, Schaafsma admitted that the plain meaning of "collimated beam" with respect to "weak divergence" does not "imply any kind of a metric." (*Id.*, 182:16-22)

This begs the question, what degree of divergence or convergence could be

53

accepted and still have a "collimated beam?" (*See* Ex. 2C, 135:9-13.) Schaafsma testified that he would interpret a "nearly collimated beam" "as it is collimated," thereby demonstrating there is no reasonable certainty regarding the scope of the term. (SUF2, ¶37; Ex. 2I, 166:12-170:21 ("Q. If someone wanted to have a system that did not use a collimated beam, but they wanted to use a nearly collimated beam, how would they do that? A. Again, it's a descriptive term, so unless there is something that said -- you know, that spelled out that difference, I would interpret it as it is collimated."), 175:7-179:22 ("Q. So 'approximately collimated' would be having approximately nearly parallel rays, right? A. If you read that in conjunction with the construction, you would come up with that term.").) This is precisely the indefinite "zone of uncertainty" the Supreme Court has warned against. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 909-10 (2014).

BEC's DOE infringement position only further highlights the indefiniteness of "collimated beam" since the literal scope of the term lacks reasonable certainty to a POSA. Therefore, in the alternative, summary judgment of indefiniteness of the term "collimated beam" is proper. *See NuVasive, Inc. v. Alphatec Holdings, Inc.*, 557 F. Supp. 3d 1069, 1077 (S.D. Cal. 2021) ("Claims cannot rely on the 'unpredictable vagaries of any one person's opinion.'" (citation omitted)).

54