# EXHIBIT L



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BECKMAN COULTER, INC.,          )
                                )
          Plaintiff,            )
                                )  C.A. No. 24-945-CFC
  v.                            )
                                )
CYTEK BIOSCIENCES, INC.,        )
                                )
          Defendant.            )
                                )



                    Wednesday, September 17, 2025
                         9:02 a.m.
                       Markman Hearing



                      844 King Street
                    Wilmington, Delaware


  BEFORE: THE HONORABLE COLM F. CONNOLLY
  United States District Court Judge



  APPEARANCES:


              RICHARDS, LAYTON & FINGER
              BY:  CHRISTINE D. HAYNES, ESQ.
              BY:  FREDERICK L. COTTRELL III, ESQ.

              -and-

APPEARANCES CONTINUED:


                WILMERHALE
                BY:  OMAR KAHN, ESQ.
                BY:  JEFFREY DENNHARDT, ESQ.
                BY:  ASHER S. MCGUFFIN, ESQ.


                        Counsel for the Plaintiff




                MORRIS NICHOLS ARSHT & TUNNELL
                BY:  JEREMY TIGAN, ESQ.
                BY:  CAMERON CLARK, ESQ.


                -and-

                COOLEY LLP
                BY:  REUBEN CHEN, ESQ.
                BY:  ADAM PIVOVAR, ESQ.
                BY:  DUSTIN KNIGHT, ESQ.
                BY:  BETSY FLANAGAN, ESQ.
                BY:  ROSALYND UPTON, ESQ.


                        Counsel for the Defendant


                    _ _ _ _ _ _ _ _ _


                    P R O C E E D I N G S


        (Proceedings commenced in the courtroom beginning at

9:02 a.m.)

                **THE COURT:**  Please be seated.  Good morning.

Figure 25.

MR. DENNHARDT: Sure. You want me to put it on the screen, Your Honor?

THE COURT: Sure, that'd be great.

MR. DENNHARDT: Actually, I'll do it on the ELMO, if that's all right.

And maybe, Your Honor, before we get there, just because this talks about Figure 25, Columns 44 through 46 repeatedly refers to a collimated beam forming an image, right?

So "collimating optical element projects a magnified image." Here we see "may use an achromatic doublet lens as the first collimating element." Talks about since images, right, are created before the focusing lens.

So there is no convergence, right? The image is created before the focusing lens. So the entire description of Figure 25 is about images and collimated beams.

So it's all over the place in the patent. The claims tell you that a collimated beam forms an image. The specification tells you, and then there is the specific references to the "collimated afocal image," which identifies a particular kind of image in a collimated beam.

THE COURT:  Okay.

MR. DENNHARDT:  So it's all over the place, Your Honor.

I'm happy to pull up Figure 25 if you like.

THE COURT:  And your expert would say there is such a thing as a collimated afocal image?

MR. DENNHARDT:  Of course.

THE COURT:  Well, I know that.  There's enough money out there for experts to tell you anything.

MR. DENNHARDT:  Your Honor, I think it would be hard pressed to suggest that that's not something that exists because, again, the specification tells you it exists, right?  So --

THE COURT:  No.  No.  I'm sorry.  I just don't accept that, for what it's worth.

I mean, there's too many bad patents filed. People will say whatever they need to say.  I'm not going to just accept for you...

You might be right as a matter of claim construction, but in the world out there, to be honest, you know, my gut tells me people don't think an image is created by collimated light.  That's what my gut says. It's just the rules of claim construction might say otherwise here.

MR. DENNHARDT:  And, Your Honor, if I could

from a frame the thinking on this.  You're right, the specification and the rules of claim construction would suggest that you could say that a collimated beam forms an image because we see it in the spec, and we see it in the claims.

But they also haven't pointed you to anything that says, well, you can never have a collimated beam with an image, right?  There's simply nothing in the record that says that other than --

**THE COURT:**  Their problem is they have to point to extrinsic evidence.  I totally agree with that.

And, now, they do cite this prosecution history discussion.  I'm not sure, though, it's got to be, I guess, clear and unequivocal, I mean, you know, under the rules of interpretation.

**MR. DENNHARDT:**  So let me point you to a different portion of the prosecution history that, in fact goes the other way.

Well, let me address first their point and and then I will point you to something else.

So what they said, Your Honor, is converging is different -- excuse me -- collimating is different from focusing.  I told you at the last hearing we don't dispute that.

They also said a focused beam can form an

says, I don't think it's disputed, there is not.

MR. KNIGHT:  There is none, and it wouldn't make any sense.

THE COURT:  But that favors you, so give him credit.  He actually acknowledged that there is no virtual image disclosed.  So then you can come back and say, see, there's no virtual image disclosed.  But there is a collimated afocal image disclosed.

And now can you point to any claim which would, if I accept your construction, allow for a collimated afocal image?

MR. KNIGHT:  No, Your Honor, because --

THE COURT:  I don't think you can.

MR. KNIGHT:  Right.

THE COURT:  I think that's the right answer. I don't think you have a choice.

MR. KNIGHT:  One additional point that I --

THE COURT:  Just wait.

MR. KNIGHT:  Sorry, Your Honor.

THE COURT:  I think we left it, with respect to collimated, I didn't construe it, right?

MR. KNIGHT:  Correct.

THE COURT:  And I think what's going to happen at trial is your experts are going to get up there and your expert's going to say, if I'm looking at Figure 25,

as soon as it leaves 902, it's not collimated, it's impossible, or it just wouldn't be collimated; is that right?

MR. KNIGHT:  I don't know that that's accurate, Your Honor.

THE COURT:  Okay.

I'm troubled by what I'm going to have to construe this as, but I just don't see a way around it, and part of it's based on what I think is just common sense and minimal understanding of optics that I have.

For instance, the idea that you can have magnification without having some kind of divergence or convergence doesn't make sense to me.

Does it make sense to you?

MR. KNIGHT:  It does not, Your Honor.

THE COURT:  And that's what their position is.

And the idea that you could have collimated, purely collimated light create an image doesn't sound right to me.

But the patent discusses collimated afocal images.  And as I say, my gut tells me, my limited experience tells me you're right.

And I think this is a great example of something that points to what I think just doesn't make sense in claim construction, which is that we begin with

the, quote/unquote "plain and ordinary meaning in the context of a patent," unquote. And then we're told to look to extrinsic evidence solely at the beginning.

But if you think about it, ordinary is a normative term. It has to refer to extrinsic evidence in order for the term "ordinary" to have any meaning. It just doesn't make sense. But that's the way we're required to construe patents.

And the problem for you is that the patent talks about a collimated afocal image. And so I think the limitation you want to impose, I can't, under the rules of construction.

I do think it would be better than just deferring to the plaintiff's proposal of representation of an object to add that. It has to be a representation of an object created by light or emanating from a light source.

It sounds like you'll agree to that, I mean, but you're reserving your objections, I understand. But you'll agree at least that much is true, correct?

MR. KNIGHT: That much is true.

THE COURT: Yeah. So I think that I'm going to construe it that way, which is, in effect, the plain and ordinary meaning, at least upon to which you can all agree.

And then you're going to make an indefiniteness argument, and what I am going to do is talk to you at the end of this as how we should maybe manage the case going forward, and maybe we should have some briefing and motion practice on some of these issues about adequacy, written description, enablement, and indefiniteness.  All right?

MR. KNIGHT:  Thank you, Your Honor.

THE COURT:  All right.  So that takes care of "image."

I've construed it as a representation of an object created by light or emanating from a light source.

You know, I refer you all, I had, I call it the Bacon case.  I can't remember the title of the case, but Morris Nichols is in here somewhere, aren't they?

MR. TIGAN:  It wasn't my case, Your Honor, but it might be *Hormel versus* --

THE COURT:  Thank you.  Good memory. Mr. Tigan, good memory.

You might want to look at that because what I did in that case was the defendant was so sure they had a winning indefiniteness argument that I offered them the opportunity to just litigate one summary judgment motion, but we would do it right away.

And as outlined in my opinion in that case, and I was affirmed, the Federal Circuit has treated indefiniteness, even though you can have competing expert testimony, as an appropriate subject for summary judgment motion.

And in that case, I had a hearing, and I heard competing expert testimony and made determinations as to credibility and ruled and found the patent indefinite.  And it was affirmed.

You all might want to read that case and we can talk about whether we should have some kind of similar mechanism here.

Okay.  That takes care of "image."

Want to do "portion," the "portion" term next?

**MR. DENNHARDT:**  Me again, Your Honor.

**THE COURT:**  All right.

**MR. DENNHARDT:**  So the dispute here, Your Honor, is whether "portion" gets its plain and ordinary meaning.

It's a well-understood term.  The jury is going to know what portion means.  Courts repeatedly hold that "portion" has its plain and ordinary meaning because a jury knows what it means, and multiple courts have construed it as a part of any whole, either

I believe that's correct.

THE COURT:  Okay.  What are the asserted claims that use the term "second semiconductor detector"?

MR. CHEN:  Claim 18, Your Honor.

THE COURT:  Anything else?

MR. CHEN:  I do not believe so.  Oh, wait. For the '582?  For the --

THE COURT:  We'll get the '106 in a second.

MR. CHEN:  Right.  Yes.

THE COURT:  But just for the '582.

MR. KHAN:  In the '582, I believe that's also correct, Your Honor.  In the asserted claims of the '582 patent, it's Claim 18.

THE COURT:  Okay.  Are there any other asserted claims?  Now, I think we have Claim 1 of the '106 patent; is that right?

MR. KHAN:  Claim 1 of the '106 Patent, yes, Your Honor.

THE COURT:  And either of those two, the two terms we're talking about, does it use it?

MR. KHAN:  The second terms are not in Claim 1 of the '106 Patent.

THE COURT:  There are no second terms?

MR. KHAN:  It's just first terms, not second.

THE COURT:  Yep.  Okay.

So are there any other asserted claims, period, that use either the term "second focusing optical element" or "second semiconductor detector" other than Claim 18 of the '582 Patent?

MR. KHAN:  If we are limiting ourselves to asserted claims, that's it.

MR. CHEN:  Claim 5, Your Honor, uses a second semiconductor detector of the '106.

THE COURT:  The '106?  Okay.

MR. KHAN:  Claim 5 is not asserted.

THE COURT:  Claim 5 is not asserted, so I don't have to construe it.

MR. KHAN:  I think what Mr. Chen --

THE COURT:  Look, it's really simple.  I do want to kind of move on.

I just want to know what the universe is of asserted claims that use the term either "second focusing optical element" or "second semiconductor detector."

And it sounds like right now the entire universe is Claim 18 of the '582 Patent.

MR. KHAN:  For asserted claims, yes.

THE COURT:  Okay.  And Mr. Chen, you agree?

MR. CHEN:  Correct, Your Honor.

THE COURT:  All right.  I don't need argument

anymore.

MR. KHAN:  Okay.

THE COURT:  Here's what I'm going to do.  I don't believe that it's required to be sequential in Claim 18.  I read Claim 18.  I don't see anything in the claim language that requires sequencing.

I think Figure 25 requires sequencing.  The defendant says Claim 18 does not read on Figure 25, and I think Mr. Khan's also admitted it doesn't read on Figure 25.

MR. KHAN:  It does.

THE COURT:  Oh, you say it does?

MR. KHAN:  Under our construction, it would appropriately encompass Figure 25, yes.

THE COURT:  Okay.  Well, I don't have to decide that.  I don't have to decide that because the main thing is, you say it doesn't.

MR. CHEN:  Uh-huh.

THE COURT:  And that's what really I find most informative, right?  At the end of the day, I look to *Phillips*, and I look to whether or not the terms in the claim that I am asked to construe, I am asked to look at what they mean.  I read the claim, but I also am informed by the written description.  And if the claim actually read on Figure 25, I would be informed, and I'd say it's

got to be sequenced.  But the defendant says it doesn't read on it, and then I don't see why I'd be informed by Figure 25.  Okay?

MR. KHAN:  Thank you, Your Honor.

THE COURT:  All right.  Next.

So understand I ruled that, essentially, I am agreeing with the plaintiff on both of those terms, right, "second focusing optical element" and "second conductor detector" in that there doesn't have to be sequencing.

So what I'm saying is, essentially, I don't agree with the defendant that the "second focusing optical element" or "second semiconductor detector" in Claim 18 must follow immediately after "first focusing optical element" or "first semiconductor detector" without any intervening optical element or semiconductor detector.

MR. CHEN:  Just with respect to the asserted claim.  But could I actually just make one point, Your Honor?

THE COURT:  Yeah, you can make a point.

MR. CHEN:  Okay.  Can I get that --

THE COURT:  Oh, no, no.  Don't make another argument.  I've got to move on.  So sorry.

MR. CHEN:  Okay.  Just based on the other

claim language, Your Honor, it is the second focusing lens that's receiving the second branch. They are branching off at that juncture.

**THE COURT:** Yeah, I just don't buy that. Okay. Then I will state further for the record, then, why.

First of all, I've read the claim. I don't see anything in the claim that requires sequencing. Second, I actually found the drawing probative.

And Mr. Chen, you won't like this, and I think you are wonderful advocate, but you won't like it, your inability to persuade me that that diagram shows sequencing. I don't think it does. I think it could show simultaneous transmission on branches, Number 1.

And then, Number 2, it doesn't tell you which comes first. And Mr. Chen admitted that there also could be a third and fourth. And the problem is that the drawing, just like the claim language itself, doesn't mandate which branch comes first or second. It just labels them that way.

And the fact is, I think what was really telling is when Mr. Chen looked at the branches, it's like he told me, well, you can call the second one the first or you can call the first one the second. That goes to the point. That's the whole point.

cite to the record, and so I stopped reading your brief. I think that's the only thing a judge in my position could do.

We're on our second *Markman* hearing. We've incurred an awful lot of judicial time to date, and we need to move the case. And so when I figure out all those factors, I think, at this point, I'm going to require the plaintiffs to narrow the claims to 16 claims.

Within two weeks good enough?

**MR. CHEN:** Yes.

**MR. KHAN:** We can do two weeks, Your Honor.

**THE COURT:** Sixteen claims.

And you ought to think about, when you're trying to figure out what claims, I mean, I don't know if it can be avoided, but to the extent you can avoid my having to construe those outstanding three terms, that would be a smart idea.

**MR. KHAN:** I believe there are only two outstanding terms. I may be mistaken. It's just "collimating optical element" and "collecting optical element," because focusing optical element, I think --

**THE COURT:** I've ruled on.

**MR. KHAN:** Yes, you're right.

**THE COURT:** Right. Is that true, there's only

two?

MR. KHAN:  There's only two.

MR. CHEN:  I believe that's correct, Your Honor.

THE COURT:  Well, then, ideally neither of those two terms would be in the 16 asserted claims. Because then they are not prejudiced.

MR. CHEN:  Thank you.

THE COURT:  Right?  Now, I'm not saying you have to do it, you know, but that would make sense.

Now, once you narrow in two weeks, if they, they being the defendant -- a singular, "it" -- wants to propose a way to tee up certain issues that it thinks might be efficient, I'm willing to entertain that.

By the way, I take it, if the plaintiff has some efficient way of resolving the case too, I'm willing to listen to that.  I raise that initially not because of...

Well, not because of any reason other than I haven't found it to be successful when you have inadequate written descriptions and indefiniteness.  And to be candid, as I've alluded to earlier is, there's some issues that, you know, my antenna says aren't right with some of this patent issue, like a collimated afocal image.

Now, maybe.  I'm open-minded.  I say things all the time, I have initial reactions, I articulate it, and then I change my mind.  I have actually granted motions or reconsidered rulings I've issued in writing.  But I'm just saying, my antenna is up.  It just doesn't make a lot of sense.

And that's also why I, earlier on, suggested there may be early briefing we could address on written description, enablement, or indefiniteness.  But it may be a stupid idea.

All right.  But here's what I'm going to do.  We're going to finish for the day.  I've construed all but those two terms, and we're going to just hold them in abeyance.  Well, actually, we'll just hold their construction in abeyance.  They may go away.

I'm going to require the plaintiff, within two weeks of today, to identify the 16 claims that will be the universe from which it will select claims to try at trial.

And then, if you all meet and confer and decide it's worthwhile to have a status conference to discuss ways to move the case, I'm willing to do that.  I won't have the status conference, by the way, it won't be until, like, November at the earliest.  I am pretty flooded.

207

Does that make sense?

**MR. KHAN:**  It does, Your Honor.

And just to be clear, once we narrow, they would also be required to narrow their prior art per Judge Tennyson's order in the schedule.

**THE COURT:**  Yeah, I don't know what her order is.

But, Mr. Chen, do you understand that there's going to be corresponding narrowing of the defense after the narrowing of --

**MR. CHEN:**  Understood, Your Honor.

**THE COURT:**  Okay.  Sounds good.

Okay.  All right.  Thank you all very much then.  Have a good day.

(The proceedings concluded at 2:53 p.m.)

CERTIFICATE OF COURT REPORTER

I hereby certify that the foregoing is a true and accurate transcript from my stenographic notes in the proceeding.

/s/ Bonnie R. Archer
Bonnie R. Archer, RPR, FCRR
Official Court Reporter
U.S. District Court