D.I. 316

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BECKMAN COULTER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-945 (CFC) (EGT) |
| | ) | |
| CYTEK BIOSCIENCES, INC., | ) | ███████████████ |
| | ) | |
| Defendant. | ) | REDACTED - PUBLIC VERSION |
| | ) | |

## DEFENDANT CYTEK'S REPLY BRIEF IN SUPPORT OF ITS MOTIONS FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY (MSJ NO. 1-3)

OF COUNSEL:
Reuben H. Chen
HanByul Chang
Juan Pablo Gonzalez
Alexandra Leeper
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304

Elizabeth M. Flanagan
COOLEY LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402

Adam Pivovar
Dustin M. Knight
Rosalynd D. Upton
David Yun
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@morrisnichols.com
jtigan@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendant
Cytek Biosciences, Inc.*

Original filing date: April 29, 2026
Redacted filing date: May 6, 2026

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ..................................................................................1

II.   MOTION 1: THE ACCUSED PRODUCTS DO NOT INFRINGE CLAIMS 23 AND 26 OF THE '582 PATENT................................................1

    A.    BEC's First Two Infringement Theories for the "Substantially The Same . . . Size" Limitation Rest on an Improper Modification of the Court's Construction of "Second Image" ............2

    B.    BEC's Third Infringement Theory Is Unsupported by Any Reasoned Analysis or Evidence ...........................................................5

    C.    Alternatively, "Image" Is Indefinite......................................................8

III.  MOTION 2: THE ACCUSED PRODUCTS DO NOT INFRINGE CLAIMS 1, 3, AND 6 OF THE '582 PATENT................................................9

    A.    The Court's Construction of "Portion" and the Plain Language of the Claims Support Summary Judgment; BEC's Attempt to Reconstrue "Portion" and Rewrite the Claims Should Be Rejected .................................................................................................9

    B.    BEC's Theory About Odd-Numbered "Mirrors" Being a "Collimating Optical Element" Fails ....................................................13

    C.    Whether the Doctrine of Equivalents Would Vitiate "Collimated Beam" Is a Question of Law...........................................16

    D.    Alternatively, "Collimated Beam" Is Indefinite................................17

IV.  MOTION 3: SUMMARY JUDGMENT OF INVALIDITY OF THE '443/'107 ASSERTED CLAIMS IS WARRANTED.................................18

V.   CONCLUSION.................................................................................23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allergan USA, Inc. v. MSN Lab'ys Priv. Ltd.*,
111 F.4th 1358 (Fed. Cir. 2024) ...............................................................22, 23

*Applied Med. Res. Corp. v. Tyco Healthcare Grp. LP*,
534 F. App'x 972 (Fed. Cir. 2013) .................................................................16

*Gentry Gallery, Inc. v. Berkline Corp.*,
134 F.3d 1473 (Fed. Cir. 1998) ......................................................................19

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
755 F.3d 1367 (Fed. Cir. 2014) ......................................................................22

*Intel Corp. v. Future Link Sys., LLC*,
268 F. Supp. 3d 605 (D. Del. 2017).................................................................4

*Lockheed Martin Corp. v. Space Systems/Loral, Inc.*,
324 F.3d 1308 (Fed. Cir. 2003) ......................................................................14

*Masimo Corp. v. Philips Elec. N. Am. Corp.*,
62 F. Supp. 3d 368 (D. Del. 2014)..................................................................21

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014) ..........................................................................................8

*Nice v. Witness*,
No. 06-311-JJF, D.I. 279 (D. Del. Dec. 17, 2007) .........................................15

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
521 F.3d 1351 (Fed. Cir. 2008) ................................................................14, 16

*Regents of the Univ. of California v. Eli Lilly & Co.*,
119 F.3d 1559 (Fed. Cir. 1997) .................................................................19, 22

*Regents of Univ. of Minn. v. AGA Med. Corp.*,
717 F.3d 929 (Fed. Cir. 2013) ..........................................................................7

*Scriptpro, LLC v. Innovation Assocs., Inc.*,
762 F.3d 1355 (Fed. Cir. 2014) ......................................................................18

ii

# TABLE OF CONTENTS
(continued)

**Page**

*Telcordia Techs., Inc. v. Lucent Techs., Inc.*,
514 F. Supp. 2d 598 (D. Del. 2007), *aff'd*, 612 F.3d 1365 (Fed. Cir. 2010) ......................................................................................................13

*Traveler Innovations Ltd. v. Evenflo Co., Inc.*,
No. CV 24-1204-RGA, 2026 WL 161354 (D. Del. Jan. 21, 2026)...................15

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
200 F.3d 795 (Fed. Cir. 1999) ........................................................................4

*Welker Bearing Co. v. PHD, Inc.*,
550 F.3d 1090 (Fed. Cir. 2008) .......................................................................16

## TABLE OF ABBREVIATIONS

| Abbreviation | Term/Meaning |
|---|---|
| '582 patent | U.S. Patent No. 10,330,582 |
| '443 patent | U.S. Patent No. 11,703,443 |
| '107 patent | U.S. Patent No. 12,174,107 |
| Asserted Patents | '582 patent; '443 patent; '107 patent |
| Asserted Claims | Claims 1, 3, 6, 23, and 26 of the '582 patent; claims 4, 6, 10, 11, and 15 of the '443 patent; claims 5, 16, 18, 26, 27, and 29 of the '107 patent |
| BEC | Plaintiff Beckman Coulter, Inc. |
| Cytek | Defendant Cytek Biosciences, Inc. |
| Ilkov | Fedor Ilkov, Ph.D., Cytek's expert |
| Schaafsma | David Schaafsma, Ph.D., BEC's expert |
| COE | Collimating optical element |
| FOE | First optical element |
| Shao | Qing Shao, Cytek's 30(b)(6) witness with knowledge regarding the Accused Products |
| Shi | Xianghua "Leo" Shi, BEC's 30(b)(6) witness with knowledge regarding the development and conception relating to the Asserted Patents |

iv

## I.       INTRODUCTION

Granting Cytek's motions would entirely dispose of this case.  Motions 1 and 2 seek summary judgment of non-infringement of all Asserted Claims of the '582 patent for which BEC seeks the most damages, as the earliest Asserted Patent.  In opposition, BEC tries to create a factual dispute by re- and mis-interpreting the Court's constructions for the "second image" and "portion" terms.  The Court should reject BEC's claim-construction backpedaling and confirm the Accused Products do not infringe the '582 patent.  Motion 3 seeks to invalidate all Asserted Claims of the '443/'107 patents by holding BEC to what it actually disclosed it purportedly invented—flow cytometers that depend on the use of collimated light and optical components to produce the same.  BEC's recent maneuver to obtain claims in the '443/'107 patents untethered to the written description—all to target Cytek and its (non-infringing) unique spectral technology that outperforms BEC's CytoFLEX products in the marketplace—should be reined in and the Asserted '443/'107 patents invalidated for overreaching.

## II.      MOTION 1: THE ACCUSED PRODUCTS DO NOT INFRINGE CLAIMS 23 AND 26 OF THE '582 PATENT

BEC offers three infringement theories for the "size of the first image is substantially the same as the size of the second image" limitation.  Each is insufficient as a matter of law to prove infringement.

1

**A.** **BEC's First Two Infringement Theories for the "Substantially The Same . . . Size" Limitation Rest on an Improper Modification of the Court's Construction of "Second Image"**

BEC's first two infringement theories fail because they do not apply the Court's construction of "second image," which requires "no intervening image" between the first and second image.  Based on the evidence and arguments BEC advances, there is indisputably an intervening "image" between the respectively identified pairs of "first" and "second" images in BEC's first two theories.



2



(D.I.255 ("SUF1"), ¶14; D.I.257 (Ex.1F), ¶¶262-263 (orange and green annotations added).)

To avoid this fatal defect, BEC attempts to rewrite the Court's construction of "second image" to merely prohibit "no intervening image *of the same type*."[1] (SUF1, ¶¶13-14.)

BEC bafflingly asserts in opposition that Schaafsma applied the "image" and "second image" terms "exactly as the Court construed them" while maintaining its position that an "intervening image" purportedly is only an image of the same type. (*See* D.I.302 (BEC Opposition), 15-17.)

BEC claims the parties dispute whether "intervening images" exist in the Accused Products. (*Id.*, 13-14.)  Not so.  BEC cannot now run from its *Markman*

---

[1] Emphasis added unless noted otherwise.

arguments that "image" includes so-called "collimated afocal images." (Ex.1O (9/17/25 Hr'g Tr.), 76:21-81:7; 88:16-90:7.)

It is undisputed that BEC/Schaafsma contend that "afocal images" exist and are present in the Accused Products as the allegedly "collimated" segments of the light beam that occur (i.e., **intervene**) between the focused images on the odd-numbered filters.[2]   (*E.g.*, D.I.257 (Ex.1D), ¶¶130-131, 175-177, 219-223; *id.* (Ex.1F), ¶¶262-263.)  Under BEC/Schaafsma's version of the facts—which should be credited on summary judgment[3]—there is always an "intervening image" (*of a different image type*) between the "first image" and "second image" Schaafsma identifies in his first two infringement theories.  (D.I.302, 9-10, 12-13, 25.) Schaafsma thus does not compare the sizes of correctly identified "first" and "second image[s]" under the Court's construction of "second image," and his analysis under

---

[2] The actual dispute between the parties is whether "collimated afocal images" exist *within the finite light path* in the Accused Products.  Cytek's alternative positions are: (i) to the extent "collimated afocal images" exist, BEC fails to prove infringement under the Court's construction of "second image," (ii) but to the extent "collimated afocal images" do not exist, "image" is indefinite.  *E.g., Intel Corp. v. Future Link Sys., LLC*, 268 F.Supp.3d 605, 621 (D. Del. 2017) (permitting alternative positions).  But, because a claim must *simultaneously* be valid and infringed for BEC to prevail, BEC cannot simply mirror and adopt the reverse of Cytek's positions.  Accordingly, this dispute does not save BEC from summary judgment of noninfringement, at least not while BEC attempts to stave off summary judgment of indefiniteness of the "image" term.  It cannot have it both ways.  (*See* D.I.248, 29-33.)

[3] *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 806–07 (Fed. Cir. 1999) (on summary judgment "'[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'").

his first two theories fails to show the Accused Products infringe claim element 20(d).

BEC's reliance on Shao's testimony regarding "images" (D.I.302, 14-15) is a red herring and cannot create a genuine dispute of material fact. In fact, Schaafsma cited Shao's testimony *as supporting* his opinions that "afocal images" exist between the focused images, not as conflicting with this position. (*See, e.g.*, D.I.257 (Ex.1D), ¶131.) Regardless, Shao was not an expert witness and was not shown the Court's construction of the "image" term nor asked to apply this construction to the Accused Products. (*See, e.g.*, D.I.310 (Ex.67), 237:5-239:25, 270:6-272:9.) Rather, Shao was asked about "real images" (*id.*, 237:19-24), and not about "afocal images."

### B.    BEC's Third Infringement Theory Is Unsupported by Any Reasoned Analysis or Evidence

BEC's late-offered[4] third infringement theory comparing the size of the focused light beam on an odd-numbered filter to that of the unfocused light beam on the subsequent even-numbered filter (or vice versa) also fails to create a triable fact because it is based solely on a conclusory assertion by BEC's expert that is irreconcilable with his opinions on what a POSA would understand the term "substantially the same … size" to mean.

---

[4] Cytek previously sought to strike this theory as untimely but withdrew its motion to narrow the disputes before the Court. As explained below, this third theory is likewise insufficient to survive summary judgment.

First, Schaafsma fails to identify any evidence to support his conclusion that because "the spot sizes between even and odd filters ranges from ███████ in Ilkov's model "the images are substantially the same size." (SUF1, ¶15; D.I.257 (Ex.1F), ¶271.) He offered no evidence from the written description or prosecution history of the '582 patent, for example, to support the proposition that a █████ size difference is insubstantial. (*Id*.)

In opposition, BEC likewise fails to identify any evidence to support Schaafsma's bare conclusion. Instead, BEC improperly conflates (i) the allegedly "detailed analysis" Schaafsma performed to model and determine the size of the beam at various locations within the Accused Products[5] with (ii) evidence or analysis supporting a conclusion regarding whether a POSA would consider the relevant spot sizes determined in step (i) (which differed by at least █████ and up to █████ depending on the model used) to be "substantially the same," as this term is used in the '582 patent. (*See* D.I.302, 18-19, 21-24.)

Moreover, Schaafsma explicitly opined a POSA would understand two images to be "substantially the same size" when "the images are approximately equal in size within the tolerances inherent in optical design, while recognizing that perfect identity is not technically achievable [because of] minor variations [in optical

---

[5] The modeling and analysis of beam sizes *Schaafsma performed* (as opposed to Ilkov) showed *larger* differences in beam spot sizes between consecutive odd- and even-numbered filters. (*See* D.I.248, 26-28, 32.)

components] due to manufacturing tolerances, alignment constraints, and wavelength-dependent effects." (SUF1, ¶16.) He continued: "the intended relationship is near equality, not arbitrary similarity." (*Id*.)

Neither Schaafsma nor BEC identified any evidence showing that the admitted size difference between the focused images on the odd-numbered filters and the unfocused "afocal images" on the even-numbered filters in the Accused Products results from minor variations in optical components, manufacturing tolerances, alignment constraints, or other unavoidable constraints or "tolerances inherent" in real-world optical systems. In fact, the evidence shows the opposite—that beam-size differences result from the deliberate focusing and de-focusing design of the Accused Products. (D.I.248, 24-28; D.I.257 (Ex.1D), ¶¶131, 175-177, 221, 223.)

Schaafsma's conclusion that a ███████ difference in image size would not be considered substantial is thus a mere assertion of "arbitrary similarity," lacking evidentiary support and contrary to Schaafsma's own understanding. This conclusory assertion "cannot raise triable issues of material fact on summary judgment." *Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 941 (Fed. Cir. 2013). Moreover, BEC's cited cases that involve "substantially [equal/helical/constant]" limitations (D.I.302, 18, 20) are inapposite and do not indicate some *per se* rule that a jury must assess whether something is substantially

7

similar, nor that summary judgment is never appropriate for "substantially"-reciting terms.

Here, the evidence—or more precisely, the lack thereof—with respect to the "substantially the same … size" limitation demonstrates there is no genuine dispute BEC cannot show that sequential focused and unfocused beam spots in the Accused Products satisfy this limitation, particularly as Schaafsma asserts it should be understood.

## C.    Alternatively, "Image" Is Indefinite

To the extent BEC asserts "afocal images" do not exist to save its infringement theory involving an intervening "afocal image" between two focused images, BEC effectively and necessarily concedes that the term "image" is indefinite.

In opposition, BEC ignores Schaafsma's definition of an "afocal image" as a segment of light that purportedly exists over particular paths/sections of the Accused Products' beam (SUF1, ¶¶9, 11-12; D.I.302, 13, 28-30), which further confirms the indefiniteness of "image" because a POSA would not understand with reasonable certainty *where* to measure the "size" of a 3D "afocal image."  (*See* D.I.248, 32-33.)

Further, BEC's argument that the term "image" cannot be indefinite because it is "susceptible" to construction (*see* D.I.302, 29-30) harkens back to the old "amenable to construction" or "insolubly ambiguous" standards for patent indefiniteness that the Supreme Court overruled in *Nautilus, Inc. v. Biosig*

8

*Instruments, Inc.*, 572 U.S. 898, 911 (2014).  A construed term can be indefinite, and, here, the Court reserved the issue of indefiniteness.

### III.   MOTION 2: THE ACCUSED PRODUCTS DO NOT INFRINGE CLAIMS 1, 3, AND 6 OF THE '582 PATENT

#### A.   The Court's Construction of "Portion" and the Plain Language of the Claims Support Summary Judgment; BEC's Attempt to Reconstrue "Portion" and Rewrite the Claims Should Be Rejected

Under the Court's construction of "portion"–"a subset of the spectrum of wavelengths of light"–there can be no material dispute that "portion of the collimated beam" refers to collimated light.  A collimated beam consists of collimated subsets of wavelengths of light.  As the collimated beam travels through the claimed device, specific portions of the collimated light (collimated subsets of wavelengths) will be filtered and reflected (*e.g.*, red, yellow, green, etc.).  An example of this from the patent, as annotated by BEC's expert, is depicted below:

9



FIG. 25

(D.I.258 ("SUF2"), ¶8; D.I.115-1 (Schaafsma Opening Decl.), ¶¶27-29, 97-98; D.I.259-1 (Ex.2B), ¶¶82-83.)

In opposition, BEC reads "collimated" out of the claim. The claim language recites "portion of the **collimated** beam," not "portion of the beam" or "portion of light." The Accused Products do not satisfy the "collimated beam" limitations, including the requirement of an "optical relay element arranged *to receive at least a portion of the collimated beam from the collimating optical element*" and "*to reflect the portion of the collimated beam*." (D.I.306 (Ex.2), cl. 1.) No portion of the

10

collimated beam is both received and reflected by any "optical relay element" in the Accused Products:



(SUF2, ¶27; D.I.259-1 (Ex.2B), ¶130 (annotated to show non-collimated beam and optical relay elements).)

BEC's brief improperly rejects the Court's construction of "portion" in favor of its own construction for "portion of the collimated beam": "'a ***portion*** of the collimated beam' (Ex.2, cl. 1)—i.e., segments of the beam." (D.I.302, 31 (emphasis in original).) BEC's interpretation—"segments of the beam"—omits the "collimated" requirement. The Court never construed "portion of the collimated beam" as "segments of the beam," nor provided any basis for ignoring the term "collimated." Based on BEC's improper construction, it then attempts to create a

11

non-existent fact dispute identifying a ***non-collimated segment of a beam*** as a "portion of the collimated beam" by wrongly reading "collimated" out of the limitation.

BEC's new position that "portion of the collimated beam" lacks a collimation requirement also rewrites history.  (Ex.2Q (D.I.114, Joint Claim Construction Br.), 121-28.)  BEC broadly proposed that "portion" means "a part of any whole, either separated from or integrated with it."  (*Id.*, 121-22.)  Yet ,the Court largely adopted Cytek's construction, ruling that "portion" is a "subset of the spectrum of wavelengths of light."  (D.I.310 (Ex.27), 92:21-24.)  Moreover, BEC admitted that "[t]he claims themselves define what 'portions' are recited.  *See* '582 Patent, cl. 1 ('portion of the collimated beam[']); '443 Patent, cl. 1 ('portion of the light')."  (Ex.2Q, 126.)  BEC's backtracking should be rejected.

BEC also criticizes Cytek's position that claim 1's language is consistent with the patent's emphasis that "efficient color separation can only be accomplished economically with collimated light beam."  (D.I.302, 33.)  But it is precisely this need for "collimated" light that the patent asserts differentiates it from the prior art.  (*See* D.I.306 (Ex.2), 44:28-34.)  Even Schaafsma concedes that "this statement is made in the context of discussing the prior art ***and the problem the Asserted Patents' inventions propose to solve***.".  (D.I.306 (Ex.23), ¶809; Ex.2R (Schaafsma Tr.),

280:9-281:10).[6]   Ultimately, BEC fails to raise any factual disputes under *Telecordia*. Like here, the plaintiff in *Telecordia* improperly attempted to "reargue" and "persuade the court to revisit its claim construction rulings." *Telcordia Techs., Inc. v. Lucent Techs., Inc.*, 514 F.Supp.2d 598, 606 (D. Del. 2007), *aff'd*, 612 F.3d 1365 (Fed. Cir. 2010).   Likewise, BEC improperly advances a new claim construction by arguing that "portion of the collimated beam" is mere "segments of the beam." And like in *Telecordia*, BEC does not otherwise dispute the underlying facts about Cytek's Accused Products relevant to this motion. *Id.* BEC does not dispute that the Accused Products' beam does not remain collimated, as its expert has admitted there are non-collimated segments of the beam. (*See, e.g.*, D.I.302, 35; D.I.306 (Ex.22), ¶¶130-131, 196-197.) BEC also does not dispute that the Accused Products lack an "optical relay element" that both receives a collimated beam portion (subset of wavelengths) and reflects the same collimated beam portion (subset of wavelengths), as its expert has also admitted. (*See* D.I.248, 46-48.) Because BEC has failed to raise any fact disputes, summary judgment is warranted.

## B.   BEC's Theory About Odd-Numbered "Mirrors" Being a "Collimating Optical Element" Fails

If the Court accepts the foregoing argument, it does not need to decide whether

---

[6] Ilkov's opinion was that "***affordability and performance*** are not patented features," not "efficiency and economy." (D.I.306 (Ex.20), ¶201.) Further, Ilkov was responding to Schaafsma's non-obviousness opinions unrelated to the term "a portion of the collimated beam."

BEC's alternative infringement theory—alleging the odd-numbered "mirrors" are a structural equivalent to a "lens"—satisfies the "collimating optical element" ("COE") limitation.  But in any event, the limitation is not met.

The Court already construed "COE" as performing the functions of "(1) receive light from a light source; (2) project a collimated beam" and the structure as "a lens, such as an achromatic doublet lens, and structural equivalents thereof."  (D.I.310 (Ex.70), 5.)  For literal infringement, the structural equivalent must perform the "*identical function*" (not substantially the same function). *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1320 (Fed. Cir. 2003) (emphasis added).  Here, the alleged "mirrors" do not perform the identical functions under the Court's construction.  BEC disagrees, but the only disputes regarding the claimed functions are claim construction disputes over the plain reading of the claim language (not factual disputes):  (1) Do the alleged "mirrors" receive light *from a light source* (BEC's position) or do they receive light *from another optical component* (e.g., "COE") (Cytek's position)?  (2) Do the alleged "mirrors" *project* light (BEC's position) or do they *reflect* light (Cytek's position)? The plain reading of the claim language compels summary judgment in Cytek's favor. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute.").

14

The claim language and written description support that the "mirrors" do not receive light from the light source. Claim 1 recites distinct elements: a "collimating optical element" and an "optical relay element." The claim further makes clear that the "COE" receives light from a light source and projects a collimated beam. Then, the "optical relay element [is] arranged to receive at least a portion of the collimated beam from the collimating optical element, [where] the optical relay element compris[es] a curved mirror …." (D.I.306 (Ex.2), cl.1.) Similarly, the written description discloses only an achromatic doublet lens **902** performing the function of "receiving light from the light source" **901**. (*Id.*, 44:58-60.) BEC has not identified any disclosure where any other optical element, such as curved mirrors, performs the function of "receiv[ing] light from the light source." The written description thus supports that the "COE" is a lens that receives light from the light source **901** and not a "mirror," which receives light "indirectly" from the light source. BEC's attempt to insert "indirectly" into the claim language is improper. Moreover, courts routinely find that a "direct" relationship is required even when the term "direct" is not used. *Traveler Innovations Ltd. v. Evenflo Co., Inc.*, No. 24-1204-RGA, 2026 WL 161354, at *12 (D. Del. Jan. 21, 2026) (construing "articulated" as requiring a direct connection based on claim language and specification); *Nice Sys., Inc. v. Witness Sys., Inc.*, No. 06-311, at 8-9 (D. Del. Dec. 17, 2007) (Ex.2S) (finding disputed claim included "directness component" based

15

on the claim language and specification).)

Claim 1 also confirms that "mirrors" do not "project" light, but "reflect" light. It recites that the "COE" "project[s] a collimated beam" whereas "a curved mirror [is] configured to reflect the portion of the collimated beam received from the collimating optical element." (D.I.306 (Ex.2), cl.1.) Schaafsma's conclusory opinion contrary to the claim language cannot create any factual dispute, (Ex.2T (Schaafsma Reply), ¶241), especially on an issue where BEC bears the burden.

Cytek's positions do not require lexicography or disclaimer, but rather a straightforward application of the Court's construction and the plain language of the claim. *See O2 Micro*, 521 F.3d at 1360.[7]

### C.    Whether the Doctrine of Equivalents Would Vitiate "Collimated Beam" Is a Question of Law

If the Court determines that the application of the doctrine of equivalents would vitiate a claim limitation, summary judgment of non-infringement is proper as a matter of law. *See, e.g.*, *Applied Med. Res. Corp. v. Tyco Healthcare Grp. LP*, 534 F. App'x 972, 979 (Fed. Cir. 2013) (affirming summary judgment because DOE theory vitiated a claim limitation). Here, Schaafsma (in D.I.310, (Ex.24), ¶220) opines that a collimated beam and a "focused/defocused" (non-collimated) beam are

---

[7] BEC's brief does not argue that a "mirror" is an equivalent to "COE" under the doctrine of equivalents. Nor could it, as a mirror is not "after-arising technology." *See Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1099-100 (Fed. Cir. 2008).

equivalent if their maximum diameters are controlled.  (D.I.302, 39.)  This vitiates "collimated beam" and cannot stand as a matter of law.  (*See* D.I.248, 48-50.)

### D.    Alternatively, "Collimated Beam" Is Indefinite

BEC's indefiniteness counterarguments fail.  BEC invokes Schaafsma's irrelevant opinions regarding a Cytek document and Ilkov's patents to argue that a POSA would have understood whether a beam is collimated without reference to angles of convergence/divergence, or any other guidance from the written description to provide reasonable certainty.[8]  The cited document (D.I. 130, (Ex.75)), however, ███████████████████████████ and at best, shows how a POSA would ███████████████████████ (D.I.302, 40-41.)  But BEC did not claim ████████████  It claimed a "collimated beam."

Not only are Ilkov's patents irrelevant to the patents here, they do not claim a "collimated beam."  Further, Ilkov testified that collimation has a specific meaning in optics, and without a specifying limit, "***it's indefinite***."  (D.I.306 (Ex.21), 168:19-25.)

The Court previously commented that "what degree of divergence and, perhaps, convergence could be accepted and still have a collimated beam," an issue

---

[8] D.I.310 (Ex.25), ¶207 seems to have been a typographical error.  The correct citation appears to be Ex.24, ¶206.  Cytek has not argued for a "strict angle cutoff" for the term "collimated beam."  The specification is void of any objective guidance that would allow a POSA to determine when a beam is collimated in the context of this claimed invention.

17

of infringement, could boil down to a battle of experts. (D.I.310 (Ex.26), 135:9-13.) In contrast, the Court noted "serious concerns about indefiniteness," (*id.*, 133:14-15), and did not state that indefiniteness (a legal issue) would boil down to a battle of the experts.

Determining what qualifies as "collimated beam" for infringement is a separate inquiry from whether a POSA would have understood the scope of "collimated beam" with reasonable certainty. Indeed, BEC posits no argument or evidence to address Schaafsma's undisputed testimony that he was unable to provide any measure for how a POSA would reasonably differentiate between a "collimated beam" *per se* (as recited) and a beam that is "nearly collimated" and would fall outside the scope of the term. (*See* D.I.248, 54.) Accordingly, the term is indefinite.

## IV. MOTION 3: SUMMARY JUDGMENT OF INVALIDITY OF THE '443/'107 ASSERTED CLAIMS IS WARRANTED

BEC's Asserted Claims impermissibly attempt to claim more than what the specification discloses—a "WDM" that uses only an input "collimated beam".[9] BEC does not and cannot dispute that the Asserted Claims fail to recite any

---

[9] *Scriptpro* is inapplicable because there, the Court found that the specification communicated to a POSA that the claimed invention could "achieve stated purposes *even without omitted features.*" *Scriptpro, LLC v. Innovation Assocs., Inc.*, 762 F.3d 1355, 1359 (Fed. Cir. 2014). Here, the specification makes clear that the stated purpose of "efficient color separation can only be accomplished economically with collimated light beam," (D.I.306 (Ex.1), 44:43-45), communicating to a POSA that the claimed WDM can only be achieved *with* the omitted features—a "COE" or "FOE" or any optical element that projects a collimated beam.

18

"collimating optical element" ("COE")/"first optical element" ("FOE") that is meant to capture light from the light source and project a collimated beam into the "WDM." Yet, the claims broadly encompass "WDMs" that do not use a collimated beam, notwithstanding the lack of any such support in the written description. They are therefore invalid. *See Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479-80 (Fed. Cir. 1998). BEC's counterarguments fail.

**First,** Cytek and its experts have been consistent in asserting that an optical element that projects a collimated beam is necessary for the "WDM" disclosed in the Asserted Patents. BEC mischaracterizes Ilkov's opinion in Ex.18, ¶¶895-896 by truncating the second half of the opinion, where he explains that the "similar optical element" "***project[s] the captured light as a collimated beam***." (D.I.306 (Ex.18), ¶895.)

Additionally, Ilkov's obviousness opinion in Ex.20, ¶162—that Cytek's engineers might have determined a collimating lens was "unnecessary" for Cytek's prior art DxP System—is irrelevant to the written description analysis. *See Regents of the Univ. of California v. Eli Lilly & Co.*, 119 F.3d 1559, 1567 (Fed. Cir. 1997) ("a description which renders obvious a claimed invention is not sufficient to satisfy the written description requirement of that invention"). Obviousness can involve prior art that does not expressly disclose every claimed limitation. Although irrelevant, Ilkov's obviousness analysis included the presence of an "optical

19

element" that functioned to "limit the divergence of a light beam (i.e., control the beam size)"[10] (D.I.306 (Ex.20), ¶¶162-163), which is what Schaafsma identified as the relevant touchpoint for collimation. (*Id.*, ¶161 (quoting Ex.3M (Schaafsma Rebuttal), ¶415).)

Additionally, Ilkov's prior art analysis for use of a "focusing lens" to control the beam size was advanced expressly based on BEC's (incorrect) position in its infringement allegations that pointed to a focused beam as a "collimated beam." (Ex.3N (Ilkov Opening), ¶150.)[11] Therefore, Ilkov's obviousness opinions do not create any factual dispute about whether a POSA would have understood that an optical element to project a collimated beam is an essential element of the claimed invention.

*Second*, BEC has identified no disclosed embodiment of a WDM without initial collimation of the light into the WDM. BEC's citations either do not disclose the structural design of a WDM at all, or disclose a WDM that has a COE/FOE. For example, D.I.306 (Ex.1), 2:40-44 and 2:46-64 generically refer to a "WDM," and 7:4-23 and 23:14-40 describe the function of the WDM but none describe any of the

---

[10] BEC seemingly (and incorrectly) equates "controlling the beam size" to "collimation." (D.I.302, 44-46.)

[11] BEC cites Schaafsma's response to Ilkov, rather than directly citing Ilkov, (D.I.302, 45 (citing Ex.23, ¶¶277-283, 299)), which obscures Ilkov's disclaimer that he was adopting BEC's infringement position to render his invalidity opinion rather than affirmatively opining that a focusing lens would produce a collimated beam.

optical elements or other physical components that comprise the WDM.

Other passages BEC cites as supposedly lacking a COE/FOE actually recite one.  The embodiments described in D.I.306 (Ex.1), 6:40-46[12], 8:26-43, and 57:12-17 disclose either a "first optical element" (which projects a collimated beam) or an "imaging optical arrangement," which the specification uses synonymously with collimating optical element **902**.  (*See e.g.*, *id.*, 45:15 ("collimating optical element **902**"), 57:15-16 ("imaging optical arrangement **902**"), *see also id.*, 45:10-46:48, 57:12-48.)  Similarly, Ex.1, 58:5-7 expressly recites a collimated beam, with no mention of an embodiment in which a collimated beam is **not** produced.

BEC's resort to disclosures that other optical elements may achieve the same design goal or "various other ways to control the beam size"[13] (D.I.302, 43, 44, 45) is irrelevant because the claims do not recite **any** optical element that collimates the light beam (or even controls the beam size) into the WDM.  Rather, the disclosures for the design of the WDM all use a collimated beam projected by a COE or FOE.[14]

---

[12] Contrary to BEC's assertion, this embodiment discloses a first optical element at D.I.306 (Ex.1), 6:53.

[13] Ex.1, 8:12-29 appears to be a typographical error.  The correct citation is Ex.2.

[14] Because the specification discloses only a WDM that uses a collimated beam, the Court need not rely on the prosecution history of the Asserted Patents nor Mr. Shi's testimony.  (D.I.302, 48-49.)  Nevertheless, Cytek disagrees that the prosecution history of related patents or Shi's testimony is legally irrelevant.  *Cf. Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F.Supp.3d 368, 384 (D. Del. 2014) (granting summary judgment of invalidity for lack of written description because inventor's testimony that he "did not know" whether an undisclosed embodiment would be

(D.I.248, 55-57.)  Similarly, the written description clearly describes the essential nature of collimation: "efficient color separation *can only be accomplished* economically with collimated light beam." (D.I.306 (Ex.1), 44:43-45.)  BEC cannot evade this disclosure by focusing solely on the words "efficient" or "economically" while ignoring that this "can only be accomplished" with WDMs using collimated light.

BEC's other arguments miss the mark.  Arguments about the supposed inventive aspect of the Asserted Claims are irrelevant.  So, too, are arguments that "collimating optical elements were already well-known in the art."  (D.I.302, 47-48.)[15]  The relevant question is whether the claimed scope (which BEC concedes covers WDMs that lack a COE or any other first "optical element") is sufficiently supported by the written description (which describes only WDMs with a COE/FOE).  *See Regents*, 119 F.3d at 1566 ("a patent specification must describe an invention and do so in sufficient detail that one skilled in the art can clearly conclude that 'the inventor invented the claimed invention'").

*Allergan* is inapposite.  There, the specification disclosed at least two

---

"effective" demonstrated that the specification failed to provide written description for the undisclosed embodiment).

[15] BEC's reliance on *Hill-Rom* is inapposite.  *Hill-Rom* stands for the proposition that the *specification* need not disclose what is known in the art.  *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1373 (Fed. Cir. 2014).  Here, the issue is not whether the specification discloses a collimating lens, which it does, but whether the claims recite an essential element, a "COE"/"FOE," which they do not.

22

embodiments of the claimed invention that lacked the unclaimed element, a glidant. The specification did not attribute any particular function to the glidant. *Allergan USA, Inc. v. MSN Lab'ys Priv. Ltd.*, 111 F.4th 1358, 1375 (Fed. Cir. 2024). Here, the written description, where any optical elements or other physical elements within the WDM are described, discloses only embodiments of a WDM that include the unclaimed COE/FOE. (D.I.248, 56-57; SUF3, ¶¶7-8.) Further, the written description and the claim attribute a particular function to the COE/FOE, namely, to project a collimated beam. (*See, e.g.*, D.I.306 (Ex.1), 4:48-49 ("The first optical element collimates a beam of light"), cl.1.) Summary judgment is, therefore, warranted.

## V.    CONCLUSION

Cytek's motions for summary judgment should be granted.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Cameron P. Clark*

OF COUNSEL:

Reuben H. Chen
HanByul Chang
Juan Pablo González
Alexandra Leeper
COOLEY LLP
3175 Hanover Street
Palo Alto, CA  94304

Elizabeth M. Flanagan
COOLEY LLP
30 South 9th Street, 7th Floor
Minneapolis, MN  55402

Adam Pivovar
Dustin M. Knight
Rosalynd D. Upton
David Yun
COOLEY LLP
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC  20004

April 29, 2026

Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@morrisnichols.com
jtigan@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendant*
*Cytek Biosciences, Inc.*

24

## <u>WORD COUNT CERTIFICATION</u>

The undersigned counsel hereby certifies that the foregoing document contains 4,782 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the brief. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

/s/ *Cameron P. Clark*

Cameron P. Clark (#6647)

# CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on April 29, 2026, upon the following in the manner indicated:

Frederick L. Cottrell III                                    *VIA ELECTRONIC MAIL*
Kelly E. Farnan
Christine D. Haynes
RICHARDS, LAYTON & FINGER P.A.
One Rodney Square
920 North King Street
Wilmington, DE  19801
*Attorneys for Plaintiff*

Omar A. Khan                                                 *VIA ELECTRONIC MAIL*
Jeffrey A. Dennhardt
Lauren E. Matlock-Colangelo
Kelly A. Todd
Laura Macro
Maggie Sawin
WILMER CUTLER PICKERING HALE
  AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY  10007
*Attorneys for Plaintiff*

Akkad Y. Moussa
WILMER CUTLER PICKERING HALE
  AND DORR LLP
2100 Pennsylvania Avenue NW
Washington DC 20037
*Attorneys for Plaintiff*

*VIA ELECTRONIC MAIL*

*/s/ Cameron P. Clark*

Cameron P. Clark (#6647)

2