# EXHIBIT 13



# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BECKMAN COULTER, INC., | |
| Plaintiff, | |
| v. | C.A. No. 22-945-CFC-EGT |
| CYTEK BIOSCIENCES, INC., | |
| Defendant. | |

**REBUTTAL EXPERT REPORT OF JAMES F. LEARY, PH.D.
REGARDING NON-INFRINGEMENT OF
U.S. PATENT NOS. 10,330,582; 11,703,443; and 12,174,107**

Dated: 1/20/2026

James F. Leary, Ph.D.

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION...................................................................................... 1

II.   QUALIFICATIONS.................................................................................. 1

III.  FEES......................................................................................................... 3

IV.   PRIOR EXPERT TESTIMONY .............................................................. 3

V.    MATERIALS CONSIDERED FOR THIS REPORT ................................ 3

VI.   SUMMARY OF OPINIONS AND EXPECTED TESTIMONY ............... 4

VII.  LEGAL FRAMEWORK............................................................................ 6

      A.    Infringement Principles ................................................................. 6

      B.    Direct and Indirect Infringement................................................... 8

      C.    Willful Infringement.................................................................... 10

      D.    Indefiniteness.............................................................................. 11

VIII. CLAIM CONSTRUCTION .................................................................... 11

      A.    The Court's Constructions........................................................... 12

      B.    Additional Means-Plus-Function Terms ..................................... 14

            1.    "Collimating Optical Element" ......................................... 15

            2.    "Focusing Optical Element".............................................. 23

IX.   A PERSON OF ORDINARY SKILL IN THE ART ("POSA").............. 29

X.    FLOW CYTOMETRY BACKGROUND................................................ 29

      A.    Overview of Flow Cytometry....................................................... 29

      B.    Conventional vs. Spectral Flow Cytometry ................................. 32

XI.   THE ASSERTED PATENTS ................................................................... 37

      A.    Overview of the Asserted Patents' Shared Specification............. 37

      B.    File History.................................................................................. 38

      C.    The Asserted Patents Did Not Provide Any Significant Improvements
            or Advantages to the Existing Field of Flow Cytometry.............. 39

            1.    APDs in Flow Cytometers................................................. 40

            2.    WDMs in Flow Cytometers .............................................. 44

XII.  CYTEK'S PATENTS.............................................................................. 48

XIII. OVERVIEW OF THE ACCUSED PRODUCTS ..................................... 56

      A.    Summary of the Aurora & Northern Lights Product Lines.......... 56

**TABLE OF CONTENTS**
(continued)

**Page**

1. Aurora .................................................................................. 57

2. Aurora EVO ........................................................................ 59

3. Aurora CS ........................................................................... 60

4. Northern Lights .................................................................. 61

5. Northern Lights NL-CLC .................................................. 62

6. Laser Upgrades ................................................................... 64

B. The Accused Products Employ Spectral Technology ................................. 65

C. The Accused Products Propagate Light Through the Relay Architecture By Initially Focusing the Light and then Alternatively Diverging and Converging the Light As it Travels Through the Relay Architecture ................................................................... 65

D. The Accused Products Use Bandpass Filters, Not Dichroic Filters ............. 65

E. The Accused Products Use Microlenses, Not Mirrors ................................ 70

XIV. BECKMAN COULTER FAILS TO SHOW INFRINGEMENT BY A PREPONDERANCE OF THE EVIDENCE ........................................................... 76

A. Beckman Has Failed to Demonstrate the Accused Products Meet All Limitations of the '107 Asserted Claims ....................................................... 76

1. Elements of Asserted Claim 5 Not Present in the Accused Products ............................................................................... 82

   a. 1(c): "a wavelength division multiplexer (WDM) configured to receive light from the optical fiber, wherein the WDM comprises:" .......................................... 82

   b. 1(d): "an array of mirrors" .................................................... 92

   c. 1(e): "an array of filters" ...................................................... 99

   d. 1(f): "an array of avalanche photodiodes (APDs) configured to receive light that passed through one or more filters in the array of filters;" ..................................... 100

   e. 1(h): "wherein each of the mirrors in the array of mirrors is configured to: receive light reflected by a filter in the array of filters; and reflect light to another filter in the array of filters." ............................................... 101

   f. 2(b): "the array of mirrors is substantially linear;" ............ 102

   g. 2(c): "the array of filters is substantially linear; and" ........ 102

   h. 2(d): "the array of APDs is substantially linear." .............. 103

**TABLE OF CONTENTS**
(continued)

Page

|   |   |   |   |
|---|---|---|---|
| i. | 3(b): "at least one of the mirrors in the array of mirrors is a concave mirror." | 103 |
| j. | 5b: "the WDM is configured such that a portion of an optical path between the array of mirrors and the array of filters forms a zig-zag pattern." | 104 |
| k. | Conclusion: Asserted Claim 5 | 104 |

2. Asserted Claim 16 .......... 105

| a. | 16(b): a flow cell configured to permit liquid to flow through the flow cell; 16(c): a laser configured to project light into the flow cell | 105 |
| b. | 16(d): "a multimode optical fiber configured to receive light from the flow cell; and" | 107 |
| c. | 16(e): "a wavelength division multiplexer (WDM) configured to receive light from the multimode optical fiber, wherein the WDM comprises:" | 109 |
| d. | 16(f): "a plurality of mirrors, wherein at least one of the mirrors is a concave mirror" | 109 |
| e. | 16(g): "a plurality of filters; and"; 16(h): "a plurality of avalanche photodiodes (APDs)…"; 16(i) "wherein each of the plurality of filters…" | 111 |
| f. | 16(j): "wherein each of the plurality of mirrors is configured to: receive light reflected by a filter of the plurality of filters; and reflect light to another filter of the plurality of filters." | 111 |
| g. | Conclusion: Asserted Claim 16 | 112 |

3. Asserted Claim 18 .......... 112

| a. | 17(b): "wherein the WDM further comprises: a plurality of focusing lenses," | 112 |
| b. | Conclusion: Asserted Claim 18 | 113 |

4. Asserted Claims 26, 27, and 29 .......... 113

| a. | 20(b): "wherein the plurality of mirrors includes more than one concave mirror." | 113 |
| b. | 21(b): wherein the WDM is configured such that a portion of an optical path between the plurality of mirrors and the plurality of filters forms a zig-zag pattern. | 114 |

-iii-

**TABLE OF CONTENTS**
(continued)

**Page**

c.    26(c): "each of the plurality of filters is coupled to the first surface of the block." ................................................. 114

d.    Conclusion: Asserted Claims 26, 27 and 29 ....................... 119

B.    Beckman Has Failed to Demonstrate the Accused Products Meet All Limitations of the '443 Asserted Claims ..................................................... 119

1.    Asserted Claim 4 .............................................................. 123

a.    1(a): "A wavelength division multiplexer (WDM) for a flow cytometer comprising:" ............................................... 123

b.    1(c): "at least one mirror including at least one curved mirror," .................................................................. 123

c.    1(d): "the at least one mirror configured to: receive one or more portions of the light from the set of filters; and" ................................................................... 123

d.    1(e): "reflect the one or more portions of the light to the set of filters; and" .......................................... 124

e.    4(b): "a block positioned between the at least one mirror and the set of filters, the block configured to enable transmission of the light; and" ................................ 124

f.    Conclusion: Asserted Claim 4 ........................................... 125

2.    Asserted Claim 6 .............................................................. 125

a.    6(b): "the set of filters include at least one dichroic filter, and" .................................................................. 125

b.    6(c): "the at least one curved mirror is a concave mirror." .................................................................. 134

c.    Conclusion: Asserted Claim 6 ........................................... 134

3.    Asserted Claim 10 ............................................................ 134

a.    9(b): "an optical path of the light includes a first filter of the set of filters, followed by a first mirror of the at least one mirror, followed by a second filter of the set of filters, followed by a second mirror of the at least one mirror, followed by a third filter of the set of filters, followed by a third mirror of the at least one mirror, and followed by a fourth filter of the set of filters ............................................................... 135

b.    10(a): "The WDM of claim 9, wherein:" ........................... 138

**TABLE OF CONTENTS**
(continued)

Page

      c.     10(b): "the first filter is an initial filter of the set of filters configured to receive the light, the second filter is configured to receive a first collimated beam of the light from the first mirror, and the fourth filter is configured to receive a second collimated beam of the light from the third mirror." .............................................. 138

      d.     Conclusion: Asserted Claim 10 ......................................... 141

    4.     Asserted Claim 11 ........................................................... 142

      a.     11(a): "A flow cytometer comprising the WDM of claim 1." ................................................................. 142

      b.     Conclusion: Asserted Claim 11 ......................................... 142

    5.     Asserted Claim 15 ........................................................... 142

      a.     13(b): "a flow cell including a flow channel configured to enable passage of a particle; and" ................................... 142

      b.     Conclusion: Asserted Claim 15 ......................................... 143

C.    Beckman Has Failed to Demonstrate the Accused Products Meet All Limitations of the '582 Asserted Claims .................................................... 143

    1.     Asserted Claim 1 ............................................................ 146

      a.     "collimated beam" ............................................................ 146

          (1)    Cytek's Accused Products do not use a "collimated beam" through the detector module **.... 150**

          (2)    Cytek's Accused Products do not use a "collimated beam" even if "collimated beam" could (incorrectly) refer to segments of the beam **................................................................ 172**

          (3)    The "Collimated beam" limitations are not met under the Doctrine of Equivalents **.......................... 180**

      b.     1(b): "a collimating optical element arranged to receive light from a light source, the collimating optical element configured to project a collimated beam;" ............................................................... 195

      c.     1(c): "an optical relay element arranged to receive at least a portion of the collimated beam from the collimating optical element, the optical relay element comprising a curved mirror configured to reflect the portion of the collimated beam received from the collimating optical element to produce a first image;" ...... 220

**TABLE OF CONTENTS**
(continued)

Page

d.    1(c): "an optical relay element arranged to receive at least a portion of the collimated beam from the collimating optical element, the optical relay element comprising a curved mirror configured to reflect the portion of the collimated beam received from the collimating optical element to produce a *first image*;" 1(d) "a *first focusing optical element* arranged to receive at least a portion of the collimated beam reflected by the optical relay element"; and 1(e) "a *first semiconductor detector*," 1(f) wherein the *first focusing optical element* is configured to focus the portion of the collimated beam received from the optical relay element onto the *first semiconductor detector*." .......................................................... 225

(1)    **"image" and "first image"** ................................... 225

(2)    **"first focusing optical element" and "first semiconductor detector"** ..................................... 237

(3)    **Dr. Schaafsma's mapping of "collimating optical element" onto the first "curved mirror"** .................................................. 240

e.    Conclusion: Asserted Claim 1 ........................................... 242

2.    Asserted Claim 3 ........................................................... 243

a.    3(b): "wherein the first focusing optical element is configured to focus the portion of the collimated beam received from the optical relay element to a size smaller than 1 millimeter in diameter." .............................. 243

b.    Conclusion: Asserted Claim 3 ........................................... 243

3.    Asserted Claim 6 ........................................................... 243

a.    6(b): "further comprising a first optical filter disposed along an optical path between the collimating optical element and the optical relay element, the first optical filter configured to separate the collimated beam into a first branch and a second branch." ...................................... 244

b.    Conclusion: Asserted Claim 6 ........................................... 250

4.    Asserted Claim 20 ......................................................... 250

**TABLE OF CONTENTS**
(continued)

**Page**

a. 20(b): "a collimating optical element arranged to receive light from a light source, the collimating optical element configured to project a first image; and" ................................................................. 250

b. 20(c): "an optical relay element arranged near the first image, the optical relay element configured to receive light from the collimating optical element and to project a second image;" .................................................... 261

c. 20(d): "wherein the size of the first image is substantially the same as the size of the second image;" ............................................................... 270

d. 20(e): "wherein the optical relay element comprises a curved mirror or a concave-shaped dichroic filter." ........... 274

e. Conclusion: Asserted Claim 20 ......................................... 274

5. Asserted Claims 23 and 26 ............................................................. 274

a. 22(c): "wherein the first image is a magnified image of the object." ............................................................. 275

b. Conclusion: Asserted Claim 23 ......................................... 277

c. 26(b): "further comprising a first focusing optical element arranged near the second image," ......................... 277

d. 26(b): "further comprising a first focusing optical element …, the first focusing optical element configured to focus the light from the optical relay element to a size smaller than the object of the light source to a first semiconductor detector." ........................... 281

e. Conclusion: Asserted Claim 26 ......................................... 282

D. Cytek Does Not Infringe Under 35 U.S.C. § 271(a) .................................. 282

E. Cytek Does Not Infringe Under 35 U.S.C. § 271(b) or (c) ......................... 282

F. Cytek Does Not Infringe the Asserted Patents Under 35 U.S.C. § 271(f)(1) .............................................................................................. 285

G. Cytek Does Not Infringe the Asserted Patents Under 35 U.S.C. § 271(f)(2) .............................................................................................. 290

H. Dr. Houston Does Not Establish Willful Infringement of the Asserted Claims............................................................................................................ 291

-vii-

**TABLE OF CONTENTS**
(continued)

Page

1.  Mere Knowledge of the Patents Cannot Establish Willful Infringement, and Cytek Had an Objectively Reasonable Belief in Non-Infringement .................................................. 294

2.  Cytek's Knowledge and Analysis of Xitogen and the CytoFLEX Products Cannot Show Willful Infringement, and Cytek's Activities Are Nonetheless Common Industry Practice .................................................................................... 310

3.  Dr. Houston's Speculations Regarding "Copying" Are Unsupported ............................................................................ 319

4.  Dr. Houston's Speculations Regarding Willful Infringement Are Improper and Unsupported ............................................ 322

XV.   CYTOFLEX PRODUCTS DO NOT EMBODY THE ASSERTED PATENTS ............................................................................................ 324

A.  CytoFLEX Products Do Not Include a Wavelength Division Multiplexer .............................................................................. 324

B.  CytoFLEX Products Do Not Practice Filter Related Elements of the Asserted Claims .............................................................. 328

C.  CytoFLEX Products Do Not Detect Substantially Full Spectrum of Visible Light .................................................................... 335

D.  CytoFLEX Products Do Not Practice Curved or Concave Mirrors Related Elements of the Asserted Claims ............................ 351

E.  CytoFLEX Products Do Not Practice Claim 1 of the '582 Patent & Thus Also Do Not Practice Any Claims that Depend from Claim 1 ......... 365

1.  1(c): "an optical relay element arranged to receive at least a portion of the collimated beam from the collimating optical element, the optical relay element comprising a curved mirror configured to reflect the portion of the collimated beam received from the collimating optical element to produce a first image;" .............................................................................. 365

2.  1(d): "a first focusing optical element arranged to receive at least a portion of the collimated beam reflected by the optical relay element; and" ....................................................... 369

3.  1(e): "a first semiconductor detector" .......................... 375

4.  1(f): "wherein the first focusing optical element is configured to focus the portion of the collimated beam received from the optical relay element onto the first semiconductor detector" ......... 377

**TABLE OF CONTENTS**
(continued)

**Page**

F.    CytoFLEX Products Do Not Practice Claim 20 of the '582 Patent & Thus Also Do Not Practice Any Claims that Depend from Claim 20........ 380

    1.    20(b): "a collimating optical element arranged to receive light from a light source, the collimating optical element configured to project a first image; and" .......................................................... 380

    2.    20(c): "an optical relay element arranged near the first image, the optical relay element configured to receive light from the collimating optical element and to project a second image".......... 383

    3.    20(d): "wherein the size of the first image is substantially the same as the size of the second image; and".................................... 389

XVI.   CONCLUSION ............................................................................................... 391

███████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

## I.    INTRODUCTION

1.    At the request of counsel for Defendant Cytek Biosciences, Inc. ("Cytek Biosciences" or "Cytek"), I hereby submit the following report pursuant to Federal Rule of Civil Procedure 26(a)(2)(B).

## II.    QUALIFICATIONS

2.    My name is James F. Leary, Ph.D. I have been retained by Cytek Biosciences as an expert witness in the above-captioned litigation filed by Plaintiff Beckman Coulter, Inc. ("Beckman" or "Beckman Coulter" or "Plaintiff").

3.    My educational background, career history, publications, and other relevant qualifications provided here are only a summary.  My full curriculum vitae is attached as Exhibit A to this Report.

4.    I am a well-recognized flow cytometry expert with more than 50 years' experience in flow cytometry instrument design and operation.  I have substantial experience with high-speed flow cytometry and cell sorting, and rare-cell detection and analysis methods for minimal residual disease monitoring in cancer patients.

5.    I have an undergraduate degree in aerospace engineering from MIT, an MS degree in Physics from the University of New Hampshire, and a PhD in Biophysics from Penn State University where my PhD dissertation was in the area of flow cytometry.  I had a postdoctoral fellowship at the well-known flow cytometry group at Los Alamos National Laboratory.

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

**H.    Dr. Houston Does Not Establish Willful Infringement of the Asserted Claims**

489.    I have reviewed Dr. Houston's Report with respect to willful infringement.  I disagree that Cytek willfully infringed.  As an initial matter, I am told by counsel that there cannot be willful infringement if there is no direct infringement of any of the Asserted Claims.  As I have explained above, there is no direct infringement of any Asserted Claim; therefore, there cannot be any willful infringement.

490.    Dr. Houston seems to opine that Cytek's knowledge of the Asserted Patents and the patent family is sufficient to prove willful infringement.  (Houston Rep., Sections XII and XIII.)  I am told by counsel that to prove willful infringement, knowledge of the patents alone is not sufficient.  Rather, there must be 1) knowledge of the patents, and 2) specific intent to infringe.  Dr. Houston, however, does not provide any evidence that Cytek knew that it was infringing and that it specifically intended to infringe.

491.    Dr. Houston also points to evidence of Cytek's knowledge and analysis of Xitogen and the CytoFLEX Products.  However, none of this evidence is specifically tied to knowledge of *the Asserted Patents*, or to a specific intent to infringe *the Asserted Patents*.  Dr. Houston seems to suggest that the alleged similarities between the Accused Products and the CytoFLEX Products show that Cytek was willfully blind to infringement of the Asserted Patents.  (*E.g.* Houston

- 291 -

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

Rep., ¶501.) However, I understand from counsel that it is improper for expert witnesses to opine regarding a party's mental state with respect to willful infringement or willful blindness.[23] I understand that neither Dr. Houston nor I am qualified to opine regarding whether Cytek had the requisite specific intent to infringe, or be willfully blind to, the Asserted Patents. Nonetheless, to the extent Dr. Houston is permitted to testify regarding Cytek's mental state, I disagree with any insinuation that Cytek was willfully blind to its alleged infringement of the Asserted Patents, as discussed below. Further, I disagree with Dr. Houston's assertions regarding the technical similarities between the Accused Products and the CytoFLEX Products. (*Id.*)

492. Dr. Houston relies on the same evidence to speculate that Cytek "deliberately and wantonly copied" the claimed inventions in designing and developing the Accused Products. (*E.g.*, Houston Rep., ¶500.) First, the Accused Products launched *before* the first Asserted Patent (and the parent '412 patent) issued, so Cytek could not have "copied" the claimed inventions. Second, as noted, I understand that experts cannot opine regarding whether a party intentionally copied

---

[23] I am informed by counsel that willful infringement can be established if the accused infringer was willfully blind as to its infringement of a patent, *i.e.*, if the accused infringer 1) was aware that there was a high likelihood that the accused products infringed a valid patent, and 2) took deliberate action to avoid learning whether the accused products infringed such a patent.

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

another technology or patent. To the extent Dr. Houston is permitted to testify regarding Cytek's mental state, I disagree that her cited evidence shows that Cytek "copied" (let alone *intentionally* copied) the Asserted Patents and/or the CytoFLEX Products, as discussed below.

493. Dr. Houston concludes by asserting that Cytek willfully infringed the Asserted Patents because it "kn[e]w[] the Accused Products infringed the Asserted Patents, and its purported non-infringement positions were not reasonable." (Houston Rep., ¶500.) Again, I understand that neither Dr. Houston nor I can speculate regarding what Cytek "knew" at the time of infringement—this would be pure conjecture. And as explained below, I disagree that Cytek's non-infringement positions were "not reasonable." In fact, from a technical standpoint, I agree with

as I further explain below. It is thus my opinion that Cytek's belief in non-infringement and/or invalidity was objectively reasonable, and I am informed by counsel that infringement is not willful if the accused infringer had a reasonable basis to believe that the patent claims are not infringed or invalid. Accordingly, I disagree with Dr. Houston's opinion that Cytek willfully infringed the Asserted Patents.

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

**1.    Mere Knowledge of the Patents Cannot Establish Willful Infringement, and Cytek Had an Objectively Reasonable Belief in Non-Infringement**

494.    Dr. Houston first points to various evidence to assert that "Cytek had knowledge of the patent family for the Asserted Patents as early as 2015[.]" (Houston Rep., ¶489.)  However, as noted above, I understand that knowledge of the patents (or their earlier family members) is not enough to establish willful infringement.  Specific intent to infringe must also be established, and I am informed by counsel that neither Dr. Houston nor I am qualified to opine on these issues. Nonetheless, I will address the evidence cited by Dr. Houston regarding Cytek's knowledge of the Asserted Patents.

495.    Dr. Houston correctly recites the dates of Cytek's first awareness of the Asserted Patents and the parent '412 patent.  (Houston Rep., ¶483.)  Specifically, and as stated in Cytek's interrogatory responses,

███████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement
altered).)

512.    For the foregoing reasons, Dr. Houston's cited evidence regarding Cytek's awareness of the patent family for the Asserted Patents is not sufficient to establish willful infringement, which requires showing 1) knowledge of the patents and 2) specific intent to infringe.  Further, although neither Dr. Houston nor I can opine regarding Cytek's subjective belief in non-infringement or invalidity, I believe that Cytek's beliefs therein were objectively reasonable, and they are consistent with my opinions in this Report.

### 2.    Cytek's Knowledge and Analysis of Xitogen and the CytoFLEX Products Cannot Show Willful Infringement, and Cytek's Activities Are Nonetheless Common Industry Practice

513.    Dr. Houston spends about six pages recounting Cytek's knowledge and analysis of Xitogen and the CytoFLEX products.  (Houston Rep., ¶¶490-501.)  As an initial matter, I understand that the willful infringement inquiry assesses the accused infringer's knowledge of the *patent*—not knowledge of the products allegedly embodying the patent.  None of the examples provided by Dr. Houston specifically tie the CytoFLEX (or its Xitogen precursor) to the Asserted Patents Critically, all of the documents cited by Dr. Houston in ¶¶492-493 are dated *before* the first Asserted Patent (the '582 patent) issued on June 25, 2019.  These documents therefore cannot support a finding of willful infringement—one cannot infringe a patent that does not yet exist.  Additionally, Cytek released its Aurora on June 7,

- 310 -

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

2017, before even the parent '412 patent issued on August 29, 2017, and well before the '582 patent issued. And as explained above, even if Cytek knew that Beckman owned patents allegedly cover the CytoFLEX or the XTG product, knowledge of patents alone is insufficient to establish willful infringement.

514. Further, in my experience, all of Cytek's activities described in this section are common practice in the flow cytometry industry—it is normal and expected for competitors to monitor and analyze each others' products.

515. In fact, the evidence shows that

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

████████████████████████████████████

█████████████████████████

517.   In my opinion, these facts regarding ███████████████████

█████████████████████████████████████████

confirm that Cytek had no reason to believe it was infringing any patents owned by

Beckman.  These facts are also consistent with ████████████████████

█████████████████████████████████.

518.   Turning back to Dr. Houston's opinions, Dr. Houston describes Dr. Ming Yan's former employment at Becton Dickinson and the ensuing trade secret litigation. (Houston Rep., ¶¶490-491.)  I understand that case is separate from and has nothing to do with the instant litigation, and is certainly not relevant to willful infringement. Dr. Houston relies on this trade secret litigation as evidence that "Dr. Yan and Cytek had knowledge and awareness of Xitogen, the company that originally developed the claimed inventions, Dr. Chen, and Dr. Chen's work on the claimed inventions." (Houston Rep., ¶491.)

519.   Dr. Houston then provides a bulleted list of documents allegedly showing that ████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████ (Houston

- 313 -

███████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

Rep., ¶492.) However, this evidence pertaining to the CytoFLEX *product* cannot establish that Cytek willfully infringed the Asserted *Patents*—especially when the Asserted Patents *did not yet exist* as of the date of these cited documents. Also, Cytek's activities—███████████████████████████████ ████████████████—are common practice in the field. Dr. Houston attempts to paint a picture that Cytek's knowledge of Beckman's technology was a one-way street, but in reality—as illustrated above—███████████████████████ ███████████████████████████████████████ ████████████████████.

520.    I have reviewed each document cited in ¶492 of the Houston Report, and found no evidence that Cytek believed the Accused Products infringed the yet-to-issue Asserted Patents. ███████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████  ████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

████████████████████████████████████████████ As I explained above, the Accused Products also do not use a WDM as claimed by the Asserted Patents, and thus do not infringe.

521. ████████████████████████████████████

████████████████████████████████    ██████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████ As I explain above, the Accused Products, employing APDs, also have full spectral functionality.

522. The majority of the remaining bullets in ¶492 also describe ████████

████████████████████████████████████ Houston Rep., ¶492 at p. 238 (first through fifth and seventh bullets on page); *id.* at p. 239 (second through fourth and eighth bullets on page).)  However, I understand that Dr. Yong Chen, the inventor of the Asserted Patents, does not purport to have invented APDs. (*See supra* Section XI.C.)  Likewise, as discussed above, Beckman was not the first to use APDs in flow cytometry.  (*Id.*; *see also* ████████████████

████████████████████████████    ██████████████

- 315 -



James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

small the [APD] box is, how low cost because of the manufacturing from China,

Thus, in my opinion, these documents discussing APDs have no bearing on the issue of whether Cytek infringed, much less willfully infringed, the Asserted Patents.[26]

523. The remainder of ¶492 cites Cytek documents that, at a high level, describe

. (Houston Rep., ¶492 at p. 237 (fourth bullet on page); *id.* at fn. 13; *id.* at p. 238 (sixth bullet on page); *id.* at p. 239 (first and fifth through seventh bullets on page).) Dr. Houston does not explain how these documents show that Cytek willfully infringed the Asserted Patents; they do not relate to the Asserted Patents and so do not show any intent to infringe. For example, a

---

[26] In one of the bullets discussing APDs, Dr. Houston states that Cytek's commercial product "uses the WDM approach." (Houston Rep., ¶492, at p. 238 (fourth bullet).) For the reasons explained above, I disagree that Cytek's commercial products use a "WDM" as claimed by the Asserted Patents.

HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY
James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

███████████████████████████████████████████████████████

██ ████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████ Cytek had an objectively reasonable belief that it was *not* infringing the Asserted Patents. Nor does Dr. Houston explain how ███████████████████ supports willful infringement. In my experience, it is common for ██████████████

███████████████████████████████████████████████████████

████████████████████. Cytek was therefore simply engaging in common industry practice, all while maintaining a reasonable belief of non-infringement for the reasons I explained above.

524.  Dr. Houston concludes ¶492 by noting that Cytek released its Aurora on June 7, 2017. (Houston Rep., ¶492 (last bullet).)  Importantly, this was *before* even the parent '412 patent issued on August 29, 2017, and well before the first Asserted Patent (the '582 patent) issued on June 25, 2019. This further supports that Cytek did not know it was allegedly infringing any Beckman patents—it cannot infringe patents that do not yet exist.

525.  Dr. Houston next cites to three documents post-dating the Aurora's launch (and pre-dating the Asserted Patents) to claim that "██████████████

- 317 -

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

(Houston Rep., ¶493.)   Again, in my opinion, this is routine competitor behavior and suggests no wrongdoing by Cytek.   None of the cited documents

526.   The activities described in ¶494 are likewise commonplace among competitors, and do not indicate that Cytek intended to infringe Beckman's patents. (Houston Rep., ¶494.)

527.   Lastly, Dr. Houston points to a

(Houston Rep., ¶495 (citing CYTEK_0000824631).)

██████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

██████████

██████████, Cytek had already developed an objectively reasonable belief that it did not infringe the Asserted Patents. (*See supra* Section XIV.H.1.)

528. For all the reasons set forth above, it is my opinion that Cytek's knowledge and analysis of Xitogen and the CytoFLEX products cannot and do not show willful infringement.

### 3. Dr. Houston's Speculations Regarding "Copying" Are Unsupported

529. Dr. Houston asserts that "Cytek copied Dr. Chen's inventions in designing and developing the Accused Products[.]" (Houston Rep., ¶¶497-499.) As a preliminary matter, I understand that neither Dr. Houston nor I am qualified to opine on Cytek's subjective intent with respect to "copying." Nonetheless, to the extent Dr. Houston is permitted to testify regarding Cytek's mental state, I disagree that her cited evidence shows that Cytek "copied" the Asserted Patents and/or the CytoFLEX Products. To the contrary, Cytek had a reasonable belief that it did *not* infringe or copy the Asserted Patents, since Cytek's design is fundamentally different from that of Beckman's.

530. Notably, Cytek released the Aurora on June 7, 2017, more than two years before the first Asserted Patent (the '582 patent) issued on June 25, 2019. I understand that one cannot "copy" from a patent that does not yet exist.

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

Products' so-called WDM is collimated.  If the light beam is collimated throughout, then no real image could form.  If the light beam is not collimated throughout the CytoFLEX Products' optical relay path—which lack of collimation would be another reason the CytoFLEX Products do not embody the Asserted Patents—then Dr. Houston and Dr. Schaafsma fail to state so.  In any event, neither Dr. Houston nor Dr. Schaafsma addresses where any image, including an afocal image, forms or provide any measurements as to its size.

630.  Thus, Dr. Houston and Dr. Schaafsma fail to address how the CytoFLEX Products practice each element of limitation 20(d) literally or under the doctrine of equivalents.  I understand from counsel that Dr. Houston and Dr. Schaafsma are precluded from introducing any new opinions in their reply reports which they could have raised in their opening reports.  To the extent that Dr. Houston or Dr. Schaafsma provides any additional mapping as to this limitation in regard to the CytoFLEX Product in their reply report, I reserve all rights to further reply.

## XVI.  CONCLUSION

631.  My work on this matter is ongoing.  As I examine additional materials and perform further analyses, I reserve the right to revise and supplement my opinions and this Report.

632.  I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge, information,

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

and belief.