# EXHIBIT A

2026 WL 1217150

2026 WL 1217150
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.

MAQUET CARDIOVASCULAR LLC, Plaintiff/Counterdefendant,

v.

ABIOMED, INC., Abiomed R&d, Inc., and Abiomed Europe GmbH, Defendants/Counterclaimants

Civil Action No. 17-12311-FDS
|
Signed 05/04/2026

**Attorneys and Law Firms**

Andrew J. Ligotti, Pro Hac Vice, Christopher L. McArdle, Pro Hac Vice, Neal J. Mclaughlin, Pro Hac Vice, Paul J. Tanck, Pro Hac Vice, Wade G. Perrin, Pro Hac Vice, Charlie M. Jonas, Ravi Shah, Alston & Bird, LLP, New York, NY, Gregory J. Carbo, Pro Hac Vice, Chadbourne & Parke LLP, New York, NY, James Charles Grant, Pro Hac Vice, Alston & Bird, LLP, Atlanta, GA, Michael S. Connor, Pro Hac Vice, Kirk T. Bradley, Lauren Nicole Griffin, Matthew Scott Stevens, Nicholas Christopher Marais, Alston & Bird, Charlotte, NC, Erik Paul Belt, McCarter & English, LLP, Boston, MA, for Plaintiff Maquet Cardiovascular LLC.

Adam Steinmetz, Pro Hac Vice, Desmarais LLP, Washington, DC, C. Sebastian Zonte, Pro Hac Vice, White & Case LLP, New York, NY, John M. Desmarais, Pro Hac Vice, Amy Wann, Brian D. Matty, Davis Gonsalves, Kerri-Ann Limbeek, Desmarais LLP, New York, NY, Joseph L. Stanganelli, Barclay Damon, LLP, Boston, MA, Kevin J. Gu, Kyle Patrick Curry, Desmarais LLP, San Francisco, CA, Sharonmoyee Goswami, Cravath, Swaine & Moore LLP, New York, NY, Charles D. Larsen, White & Case, LLP, Boston, MA, for Counter Claimants, Abiomed R&D, Inc., Abiomed Inc.

Adam Steinmetz, Pro Hac Vice, Desmarais LLP, Washington, DC, C. Sebastian Zonte, Pro Hac Vice, John Padro, Pro Hac Vice, Laura Rees Logsdon, White & Case LLP, New York, NY, Charles D. Larsen, White & Case, LLP, Boston, MA, John M. Desmarais, Pro Hac Vice, Amy Wann, Brian D. Matty, Davis Gonsalves, Kerri-Ann Limbeek, Desmarais LLP, New York, NY, Matthew Robert Wisnieff, Pro Hac Vice, Scott T. Weingaertner, Stefan M. Mentzer, Goodwin Procter LLP, New York, NY, Joseph L. Stanganelli, Barclay Damon, LLP, Boston, MA, Kevin J. Gu, Kyle Patrick Curry,

Desmarais LLP, San Francisco, CA, Sharonmoyee Goswami, Cravath, Swaine & Moore LLP, New York, NY, for Counter Claimants Abiomed Europe GmbH, Abiomed R&D, Inc., Abiomed Inc.

Adam Steinmetz, Pro Hac Vice, Desmarais LLP, Washington, DC, Andrei Harasymiak, Keith R. Hummel, Lauren A. Moskowitz, Sharonmoyee Goswami, Cravath, Swaine & Moore LLP, New York, NY, C. Sebastian Zonte, Pro Hac Vice, John Padro, Pro Hac Vice, Laura Rees Logsdon, White & Case LLP, New York, NY, John M. Desmarais, Amy Wann, Brian D. Matty, Davis Gonsalves, Kerri-Ann Limbeek, Desmarais LLP, New York, NY, Matthew Robert Wisnieff, Pro Hac Vice, Scott T. Weingaertner, Goodwin Procter LLP, New York, NY, Joseph L. Stanganelli, Barclay Damon, LLP, Boston, MA, Kevin J. Gu, Kyle Patrick Curry, Desmarais LLP, San Francisco, CA, Charles D. Larsen, White & Case, LLP, Boston, MA, for Counter Claimant Abiomed R&D, Inc.

Andrew J. Ligotti, Christopher L. McArdle, Neal J. Mclaughlin, Paul J. Tanck, Wade G. Perrin, Ravi Shah, Alston & Bird LLP, New York, NY, Gregory J. Carbo, Chadbourne & Parke LLP, New York, NY, James Charles Grant, Alston & Bird, LLP, Atlanta, GA, Michael S. Connor, Alston & Bird, Charlotte, NC, Erik Paul Belt, McCarter & English, LLP, Boston, MA, for Counter Defendant Maquet Cardiovascular LLC.

Andrew J. Ligotti, Christopher L. McArdle, Neal J. Mclaughlin, Paul J. Tanck, Wade G. Perrin, Ravi Shah, Alston & Bird LLP, New York, NY, Gregory J. Carbo, Chadbourne & Parke LLP, New York, NY, Matthew Scott Stevens, Alston & Bird LLP, Charlotte, NC, for Counter Defendant Maquet Cardiovascular LLC.

Andrew J. Ligotti, Pro Hac Vice, Christopher L. McArdle, Neal J. Mclaughlin, Pro Hac Vice, Paul J. Tanck, Wade G. Perrin, Ravi Shah, Alston & Bird LLP, New York, NY, Gregory J. Carbo, Pro Hac Vice, Chadbourne & Parke LLP, New York, NY, Michael S. Connor, Pro Hac Vice, Alston & Bird, Charlotte, NC, for Counter Defendant Maquet Cardiovascular LLC

Adam Steinmetz, Pro Hac Vice, Desmarais LLP, Washington, DC, Andrei Harasymiak, Sharonmoyee Goswami, Keith R. Hummel, Lauren A. Moskowitz, Cravath Swaine & Moore LLP, New York, NY, C. Sebastian Zonte, White & Case LLP, New York, NY, Charles D. Larsen, White & Case, LLP, Boston, MA, John M. Desmarais, Pro Hac Vice, John Padro, Pro Hac Vice, Amy Wann, Brian D. Matty, Davis Gonsalves, Kerri-Ann Limbeek, Desmarais LLP, New York, NY, Laura

Rees Logsdon, White & Case, LLP, New York, NY, Matthew Robert Wisnieff, Pro Hac Vice, Scott T. Weingaertner, Stefan M. Mentzer, Goodwin Procter LLP, New York, NY, Joseph L. Stanganelli, Barclay Damon, LLP, Boston, MA, Kevin J. Gu, Kyle Patrick Curry, Desmarais LLP, San Francisco, CA, for Counter Claimant Abiomed Europe GmbH.

Adam Steinmetz, Pro Hac Vice, Desmarais LLP, Washington, DC, Andrei Harasymiak, Sharonmoyee Goswami, Pro Hac Vice, Keith R. Hummel, Pro Hac Vice, Lauren A. Moskowitz, Pro Hac Vice, Cravath Swaine & Moore LLP, New York, NY, Charles D. Larsen, White & Case, LLP, Boston, MA, John Padro, Pro Hac Vice, C. Sebastian Zonte, Pro Hac Vice, Laura Rees Logsdon, Pro Hac Vice, White & Case, LLP, New York, NY, John M. Desmarais, Pro Hac Vice, Amy Wann, Brian D. Matty, Davis Gonsalves, Frederick J. Ding, Kerri-Ann Limbeek, Desmarais LLP, New York, NY, Matthew Robert Wisnieff, Pro Hac Vice, Scott T. Weingaertner, Pro Hac Vice, Stefan M. Mentzer, Pro Hac Vice, Goodwin Procter LLP, New York, NY, Brian E. Whiteley, Henry Gaylord, Joseph L. Stanganelli, Barclay Damon, LLP, Boston, MA, Kevin J. Gu, Kyle Patrick Curry, Desmarais LLP, San Francisco, CA, for Defendants Abiomed Inc., Abiomed R&D, Inc., Abiomed Europe GmbH.

## MEMORANDUM AND ORDER ON
## REVERSE DOCTRINE OF EQUIVALENTS

Saylor, United States District Judge.

**\*1** This is an action for patent infringement. It is the second lawsuit between the parties concerning a line of intravascular blood pumps. *See Abiomed, Inc. v. Maquet Cardiovascular LLC*, No. 16-cv-10914-FDS, 2023 WL 4038564 (D. Mass. Jun 15, 2023) ("*Abiomed I*"). In this case, plaintiff Maquet Cardiovascular LLC has sued defendants Abiomed, Inc., Abiomed R&D, Inc., and Abiomed Europe GmbH for infringing U.S. Patent No. 10,238,783 (filed Sept. 21, 2018) ("the '783 patent"). Defendants (collectively, "Abiomed") have counterclaimed for declaratory judgment of noninfringement.

The present issue concerns the defense known as the reverse doctrine of equivalents. There are three questions as to that issue raised by the parties: (1) whether the defense continues to be viable in light of the recent dicta of the Federal Circuit in *Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, 127 F.4th 348 (Fed. Cir. 2025); (2) whether the defense, if viable, is a factual defense to be tried before the jury or an equitable

defense to be tried before the court; and (3) whether the defense, if viable, can be raised in this proceeding.

### I. Whether the Defense is Viable

The first question concerns the continued viability of the defense. The reverse doctrine of equivalents is a defense that was recognized by the Supreme Court in *Westinghouse v Boyden Power Brake Co.*, 170 U.S. 537, 18 S.Ct. 707, 42 L.Ed. 1136 (1898). *See id.* at 568, 18 S.Ct. 707 ("The patentee may bring the defendant within the letter of his claims, but if the latter has so far changed the principle of the device that the claims of the patent, literally construed, have ceased to represent his actual invention, he is as little subject to be adjudged an infringer as one who has violated the letter of a statute has to be convicted, when he has done nothing in conflict with its spirit and intent.").

In 1950, the Court reaffirmed the doctrine in *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950):

> The wholesome realism of [the] doctrine [of equivalents] is not always applied in favor of a patentee but is sometimes used against him. Thus, where a device is so far changed in principle from a patented article that it performs the same or a similar function in a substantially different way, but nevertheless falls within the literal words of the claim, the doctrine of equivalents may be used to restrict the claim and defeat the patentee's action for infringement.

> \* \* \*

> What constitutes equivalency must be determined against the context of the patent, the prior art, and the particular circumstances of the case.

*Id.* at 608-09.

In 1997, the Supreme Court considered a challenge to the doctrine of equivalents in *Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). In particular, the petitioner in that case argued that "the doctrine of equivalents, as set out in *Graver Tank* in 1950, did not survive the 1952 revision of the Patent Act ... because it is inconsistent with several aspects of that Act." *Id.* at 25, 117 S.Ct. 1040. The Supreme Court rejected that challenge:

> Such minor differences as exist between [the relevant provisions] in the 1870 and the 1952 [Patent] Acts have

no bearing on the result reached in *Graver Tank*, and thus provide no basis for our overruling it. In the context of infringement, we have already held that pre-1952 precedent survived the passage of the 1952 Act. We see no reason to reach a different result here.

\* \* \*

Congress in 1952 could easily have responded to *Graver Tank*.... But it did not. Absent something more compelling than the dubious negative inference offered by petitioner, the lengthy history of the doctrine of equivalents strongly supports adherence to our refusal in *Graver Tank* to find that the Patent Act conflicts with that doctrine.

*Id.* at 26-28 (citations and footnote omitted).

It is true that the statements in *Graver Tank* as to the reverse doctrine of equivalents are dicta, and that *Warner-Jenkinson* addressed the doctrine of equivalents and pre-1952 precedents generally, without focusing in particular on the reverse doctrine. Nonetheless, a fair reading of the Supreme Court case law compels the conclusion that, at least as of 1997, the reverse doctrine of equivalents was a long-standing and viable, if somewhat rare, defense.

The case law from that point to the present reflects that conclusion, although on at least two occasions since 1997 the doctrine has been the subject of substantial criticism from the Federal Circuit.

In 2002, in *Tate Access Floors, Inc., v. Interface Architectural Resources, Inc.*, 279 F.3d 1357 (Fed Cir. 2002), the Federal Circuit, in rejecting a "practicing the prior art" defense, observed the following, albeit in dicta:

Not once has this court affirmed a decision finding noninfringement based on the reverse doctrine of equivalents. And with good reason: when Congress enacted 35 U.S.C. § 112, after the decision in *Graver Tank*, it imposed requirements for the written description, enablement, definiteness, and means-plus-function claims that are co-extensive with the broadest possible reach of the reverse doctrine of equivalents. Even were this court likely ever to affirm a defense to literal

infringement based on the reverse doctrine of equivalents, the presence of one anachronistic exception, long mentioned but rarely applied, is hardly reason to create another.

*Id.* at 1368 (citations omitted).

Nonetheless, on at least three subsequent occasions, the Federal Circuit explained, without criticizing, the reverse doctrine of equivalents. In each instance it cited *Graver Tank* and did not suggest that the doctrine was invalid or would be abolished should the right occasion arise. *See Amgen, Inc., v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1351 (Fed. Cir. 2003) (explaining the defense); *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1378 (Fed. Cir. 2008) (explaining the defense, while noting that the doctrine is "rarely applied" and repeating that the court had "never affirmed a finding of non-infringement" under the doctrine); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1339 (Fed. Cir. 2009) (explaining the defense in the context of a request for sanctions against a party for invoking it and observing that "[t]he Supreme Court has recognized it to be a viable defense, even if it is rarely asserted") And during that same period, multiple district courts have concluded that the defense is viable and instructed juries on the issue. *See, e.g.*, Final Jury Instructions at 10, *Magnolia Med. Techs., Inc. v. Kurin, Inc.*, Case No. 19-cv-97-CFC (D. Del. Aug. 4, 2022), Dkt. No. 448; Memorandum Order at 1-2, *AVM Techs., LLC v. Intel Corp.*, Case No. 1:15-cv-00033-RGA, 2017 WL 1787562 (D. Del. May 1, 2017), Dkt. No. 685.

**\*3** In 2025, the Federal Circuit again called into serious question whether the reverse doctrine of equivalents was a valid defense and whether it would survive an appellate challenge under appropriate circumstances. In *Steuben Foods,* the appellant argued that the district court erred both by finding that the doctrine remained a viable defense to infringement and by applying it to grant judgment as a matter of law on noninfringement following trial. In substance, it argued that the doctrine was eliminated by the 1952 Patent Act. *See* 127 F.4th at 357. The Federal Circuit observed: "We find [appellant's] arguments compelling, but need not decide whether RDOE survived the 1952 Patent Act. We have never affirmed a decision finding noninfringement based on the reverse doctrine of equivalents. And this case does not cause a change of course." *Id.* (citation modified). The court then

ruled that the jury's verdict should not have been overturned in any event. *See id.* at 357-59.

The sharp criticism of the reverse doctrine of equivalents by the Federal Circuit—without actually invalidating it—puts this Court in a difficult position. There is certainly a substantially heightened possibility that if the Court applies the doctrine here, any judgment in favor of defendant would ultimately be reversed. The Court does not look lightly upon that prospect, and the massive waste of judicial and party resources that would result. But the case law upholding the doctrine has not yet been overturned. And that case law includes not only Federal Circuit precedent, but also the Supreme Court's decisions in *Graver Tank* and *Warner-Jenkinson*. This Court is not permitted simply to read the tea leaves—no matter how clear—and assume that the doctrine will be invalidated in some future proceeding before the Federal Circuit. It must apply the law as it exists. And if the reverse doctrine of equivalents is to be abolished or somehow limited, that is the prerogative of the Federal Circuit and, ultimately, the Supreme Court. In the meantime, this Court has no alternative but to assume that the defense continues to exist.

Accordingly, the Court concludes that the defense is viable, at least as of this writing, and may apply in this case should the evidence so warrant.

**II. Whether the Defense Is Equitable or Legal**

The next question is whether the RDOE is a legal defense, and therefore must be tried to the jury, or an equitable one, and therefore must be tried to the court. On this issue, at least, the answer seems clear. Although the reverse doctrine of equivalents has been referred to repeatedly as an "equitable defense," in *Hilton Davis Chemical Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512 (Fed. Cir. 1995) (en banc), *rev'd on other grounds*, 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997), the Federal Circuit concluded that the term "equitable" in that context referred to "fairness," and that the defense presents a question of fact that must be tried to a jury:

> In several recent opinions, this court has referred to the doctrine of equivalents as "equitable." The term

"equitable" can have many meanings. The Supreme Court explained in *Graver Tank* that the doctrine prevents the unfairness of depriving the patent owner of effective protection of its invention, thereby achieving a fair or "equitable" result. Thus, in doctrine of equivalents cases, this court's allusions to equity invoke equity in its broadest sense—equity as general fairness. While recognizing the equity, or fairness, promoted by the doctrine of equivalents, furthermore, the Supreme Court stated unequivocally that application of the doctrine is a question of fact.

*Id.* at 1521 (citations and footnote omitted). That decision was an en banc decision; Judge Plager, in a dissent joined by three colleagues, argued that the majority's decision incorrectly held that the application of the doctrine of equivalents was properly a matter for judges, sitting in equity, not juries. *See id.* at 1542-43 (Plager, J., dissenting).

**\*4** Accordingly, in light of that decision, any issue concerning the reverse doctrine of equivalents will be submitted to the jury, not determined by the Court sitting in equity.

**III. Whether the Evidence Supports the Application of the RDOE Here**

Finally, plaintiff contends that the evidence in this case does not support the application of the reverse doctrine of equivalents in this case, even assuming that it remains a valid defense. In substance, that is a request for summary judgment in its favor as to the defense. Because there is no evidentiary record at this stage from which the Court can make that evaluation, it will defer any such determination until the trial.

**So Ordered.**

**All Citations**

--- F.Supp.3d ----, 2026 WL 1217150