# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| BECKMAN COULTER, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CYTEK BIOSCIENCES, INC.,<br><br>Defendant. | C.A. No. 24-0945-CFC<br><br><br>**REDACTED — PUBLIC VERSION** |

## JOINT [PROPOSED] FINAL JURY INSTRUCTION (PHASE I)[1]

---

[1] Language proposed by Beckman Coulter and opposed by Cytek appears in blue text and brackets. Language proposed by Cytek and opposed by Beckman Coulter appears in green text and brackets. The parties reserve the right to modify their proposals, and the proposals are without prejudice to outstanding or forthcoming motions.

# TABLE OF CONTENTS

1.  GENERAL INSTRUCTIONS ...............................................................6

1.1.  INTRODUCTION ...........................................................................6

1.2.  JUROR'S DUTIES ..........................................................................6

1.3.  CONSIDERATION OF EVIDENCE.............................................7

1.4.  DIRECT AND CIRCUMSTANTIAL EVIDENCE .......................8

1.5.  EXHIBITS AND DEMONSTRATIVES.........................................9

1.6.  DEPOSITION TESTIMONY..........................................................9

1.7.  CREDIBILITY OF WITNESSES................................................10

1.8.  EXPERT TESTIMONY................................................................11

1.9.  ADMISSIONS ...............................................................................12

1.10.  STATEMENTS OF COUNSEL ...................................................12

1.11.  COMMENTS BY THE COURT ..................................................12

1.12.  USE OF JUROR NOTES..............................................................13

2.  PARTIES AND THEIR CONTENTIONS ........................................14

2.1.  THE PARTIES ..............................................................................14

2.2.  THE PARTIES' CONTENTIONS ...............................................14

3.  ISSUES PRESENTED ..........................................................................15

4.  PATENT INSTRUCTIONS ..................................................................19

    4.1.  THE PATENT SYSTEM ................................................................19

    4.2.  THE ROLE OF CLAIMS IN A PATENT ................................................19

    4.3.  INDEPENDENT AND DEPENDENT CLAIMS.........................................20

    4.4.  CONSTRUCTION OF THE CLAIMS......................................................21

    4.5.  "COMPRISING" CLAIMS ................................................................31

5.  INFRINGEMENT ................................................................................31

    5.1.  PATENT INFRINGEMENT GENERALLY ...............................................31

    5.2.  DIRECT INFRINGEMENT -- LITERAL INFRINGEMENT .....................45

    5.3.  LITERAL INFRINGEMENT OF MEANS-PLUS-FUNCTION CLAIMS....48

    5.4.  DIRECT INFRINGEMENT – INFRINGEMENT UNDER THE DOCTRINE OF EQUIVALENTS ..........................................................................55

    5.5.  NON-INFRINGEMENT UNDER THE REVERSE DOCTRINE OF EQUIVALENTS ..........................................................................60

    5.6.  INDUCED INFRINGEMENT .................................................................63

iii

5.7.    INFRINGEMENT BY SUPPLY OF ALL OR A SUBSTANTIAL PORTION OF THE COMPONENTS OF A PATENTED INVENTION TO ANOTHER COUNTRY (§ 271(F)(1)) ................................................................................ 68

5.8.    CONTRIBUTORY INFRINGEMENT ....................................................... 71

5.9.    INFRINGEMENT BY SUPPLY OF COMPONENTS ESPECIALLY MADE OR ADAPTED FOR USE IN THE PATENTED INVENTION IN ANOTHER COUNTRY (§ 271(F)(2)) ................................................................................ 74

6.    INVALIDITY ........................................................................................ 77

6.1.    SUMMARY OF INVALIDITY DEFENSE ............................................... 77

6.2.    INVALIDITY OF INDEPENDENT AND DEPENDENT CLAIMS .............. 80

6.3.    PRIOR ART ........................................................................................ 81

6.3.1  PRIORITY DATE ............................................................................. 83

6.3.2  DATE OF INVENTION & DILIGENT REDUCTION TO PRACTICE ... 86

6.3.3    PRIOR ART – PUBLICLY KNOWN OR USED, OR ON SALE ......... 96

6.3.4.    [CYTEK: PRIOR ART CONSIDERED OR NOT BY THE PATENT OFFICE        103

6.4.    LEVEL OF ORDINARY SKILL IN THE ART ...................................... 106

6.5    ANTICIPATION ................................................................................ 107

6.6.  OBVIOUSNESS.......................................................................110

6.7.  INDEFINITENESS' ...............................................................126

6.8.  WRITTEN DESCRIPTION REQUIREMENT.......................................130

6.9.  ENABLEMENT REQUIREMENT .........................................................141

7.  DELIBERATIONS AND VERDICT ..................................................147

7.1.  INTRODUCTION .................................................................147

7.2.  UNANIMOUS VERDICT ........................................................148

7.3.  DUTY TO DELIBERATE........................................................149

7.4.  SOCIAL MEDIA...................................................................150

7.5.  COURT HAS NO OPINION ................................................151

## 1.   GENERAL INSTRUCTIONS

### 1.1.   Introduction[2]

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding the issues for the first phase of this trial.

I gave you some instructions at the beginning of the case. I will not repeat them now, but they still apply. You should consider those instructions and these instructions together as a whole.

Please listen very carefully to everything I say.

You will have a written copy of the preliminary instructions and these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

### 1.2.   Juror's Duties[3]

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant

---

[2] *Globus Medical, Inc. v. Life Spine*, *Inc.*, No. 1:21-cv-01445-CFC, D.I. 346 at § 1.1 (D. Del. Aug. 12, 2025).

[3] *Globus Medical, Inc. v. Life Spine*, *Inc.*, No. 1:21-cv-01445-CFC, D.I. 346 at § 1.2 (D. Del. Aug. 12, 2025).

to influence your decision about the facts in any way.  You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on any given issue.  It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them.  This includes the instructions that I gave you before and during the trial, and these instructions.  All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly.  Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

### 1.3.    Consideration of Evidence[4]

The evidence in this case includes the testimony of witnesses and the exhibits that I have admitted into evidence.  What the lawyers say, as I have noted previously, is not evidence.

You should use your common sense in weighing the evidence.  Consider the evidence in light of your everyday experience with people and events and give it

---

[4] *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346 at § 2.4 (D. Del. Aug. 12, 2025).

whatever weight you believe it deserves.  If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### 1.4.    Direct and Circumstantial Evidence[5]

During the preliminary instructions, I told you about "direct evidence" and "circumstantial evidence."  I will remind you now what each means.

Direct evidence is evidence like the testimony of an eyewitness, which if you believe it, directly proves a fact.  If a witness testified that he saw it raining outside and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact.  If someone walked into a courtroom wearing a raincoat covered in drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence.  You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

---

[5] *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346 at § 2.3 (D. Del. Aug. 12, 2025).

### 1.5.    Exhibits and Demonstratives[6]

During the course of the trial, you have seen many exhibits, and many of these exhibits were admitted as evidence.  You will have these admitted exhibits in the jury room during your deliberations.

During the course of the trial, other items (including charts and animations presented by attorneys and witnesses) were offered to help illustrate the testimony of the various witnesses.  These illustrations, called "demonstratives," have not been admitted as evidence, are not evidence, and should not be considered as evidence.  Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case.  As a result, you will not have demonstratives in the jury room for your deliberations.

### 1.6.    Deposition Testimony[7]

During the trial, certain testimony was presented to you through the playing of video excerpts from depositions.  A deposition is the sworn testimony of a witness taken before trial.  You should not attribute any significance to the fact that the

---

[6] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at 9 (D. Del. Aug. 12, 2025) and *Deere & Co. v. AGCO Corp.*, 1:18-cv-00827-CFC-JLH, D.I. 535-1, at § 2.7 (D. Del. Mar. 28, 2023).

[7] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at 8 (D. Del. Aug. 12, 2025) and *Deere & Co. v. AGCO Corp.*, 1:18-cv-00827-CFC-JLH, D.I. 535-1, at § 2.6 (D. Del. Mar. 28, 2023).

testimony is not live at trial. Deposition testimony is entitled to the same consideration you would give if the witness had appeared personally in court.

The deposition testimony may have been edited or cut to exclude irrelevant testimony. You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

### 1.7. Credibility of Witnesses[8]

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave at the trial. You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

---

[8] *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 2.8 (D. Del. Aug. 12, 2025).

### 1.8.    Expert Testimony[9]

During the trial, you heard testimony from expert witnesses.  Expert testimony is testimony from a person who has a special skill or technical knowledge in some science, profession, or business.  This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience.  However, you are not required to accept any expert's opinion.  As with any other witness, it is up to you to judge the credibility of the expert witness and decide whether to rely upon his or her testimony.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting the expert's opinions, as well as the factors I have previously mentioned for weighing testimony by any other witness.  Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject some or all of the testimony of experts, just as with any other witness.

---

[9] *Deere & Co. v. AGCO Corp.*, 1:18-cv-00827-CFC-JLH, D.I. 535-1, at § 1.10 (D. Del. Mar. 28, 2023).

### 1.9.    Admissions[10]

The parties have stipulated that certain facts are true.  To the extent that stipulated or admitted facts have been read to you during this trial, you must treat these facts as having been proven for the purposes of this case.

### 1.10.  Statements of Counsel[11]

A further word about statements of counsel and arguments of counsel.  The attorneys' statements and arguments are not evidence.  Instead, their statements and arguments are intended to help you review the evidence presented.

If you remember the evidence differently from the way it was described by the attorneys, you should rely on your own recollection.

### 1.11.  Comments by the Court[12]

During the course of the trial, I may have asked questions of a witness in order to bring out facts not then fully covered in the testimony.  Please do not assume that I hold any opinion on the matters to which my questions may have related.

---

[10] Adapted from *f'real Foods LLC v. Hamilton Beach Brands*, 1:16-cv-00041-CFC, D.I. 255, at § 1.17 (D. Del. Apr. 28, 2019).

[11] *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 2.9 (D. Del. Aug. 12, 2025).

[12] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 2.10 (D. Del. Aug. 12, 2025).

Remember that you, as jurors, are at liberty to disregard all comments of the Court in arriving at your own findings as to the facts.

On the other hand, you are required to follow the Court's instructions on the law, whether you agree with these instructions or not.

### 1.12.  Use of Juror Notes[13]

You may have taken notes during trial to assist your memory.  As I instructed you at the beginning of the case, you should use caution in consulting your notes.  There is a tendency to attach undue importance to matters that have been written down.  Some testimony that is considered unimportant at the time presented, and therefore not written down, takes on greater importance later in the trial in light of all the evidence presented.  Therefore, your notes are only a tool to aid your own individual memory.

Your notes are not evidence and are not a complete outline of the proceedings or a list of the highlights of the trial.  Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

---

[13] *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 2.11 (D. Del. Aug. 12, 2025).

## 2.    PARTIES AND THEIR CONTENTIONS

### 2.1.    The Parties[14]

I will now review for you the parties in this action, and the positions of the parties that you will have to consider in reaching your verdict.

As I previously mentioned, the plaintiff in this case is Beckman Coulter, Inc., which I will refer to as "Beckman Coulter," or "Plaintiff."

The defendant in this case is Cytek Biosciences, Inc., which I will refer to as "Cytek," "Cytek Biosciences," or "Defendant."

### 2.2.    The Parties' Contentions[15]

Beckman Coulter is the owner of the three U.S. Patents at issue in this case: U.S. Patent No. 10,330,582, U.S. Patent No. 11,793,443, and U.S. Patent No. 12,174,107, which we have been referring to by their last three digits:  the '582 Patent, '443 Patent, and '107 Patent.  You may have also heard the '582, '443, and '107 Patents referred to collectively as the "Asserted Patents" or "Patents-in-Suit."

Beckman Coulter alleges that Cytek infringes claims 1, 3, 6, 23, and 26 of the '582 Patent; claims 4, 6, 10, 11, and 15 of the '443 Patent; and claims 5, 16, 18, 26,

---

[14] Adapted from *Globus Medical, Inc. v. Life Spine*, *Inc*., No. 1:21-cv-01445-CFC, D.I. 346, at § 3.1 (D. Del. Aug. 12, 2025).

[15] Adapted from *Globus Medical, Inc. v. Life Spine*, *Inc*., No. 1:21-cv-01445-CFC, D.I. 346, at § 3.2 (D. Del. Aug. 12, 2025).

27, and 29 of the '107 Patent.  We have been referring to these claims collectively as the "Asserted Claims."

The Cytek products that Beckman Coulter alleges infringe are as follows: Cytek Aurora™, Aurora CS™, Aurora Evo™, and Northern Lights™ (including Northern Lights™ Research, Northern Lights™ Clinical, and Northern Lights™ NL-CLC) flow cytometers.  In addition, Beckman Coulter alleges infringement by Cytek's laser upgrade kits and APD modules, which allow users to add additional colors and channels to Cytek's accused flow cytometers.  We have been referring to these products as the "accused products."

Cytek denies that it has infringed the Asserted Claims of the Asserted Patents. Cytek also contends that the Asserted Claims are invalid.

I will give you further instructions regarding the meaning of infringement and invalidity later in these instructions.

## 3.    ISSUES PRESENTED[16]

You must decide the following issues for this phase of the trial:

---

[16] Adapted from *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, Case 1:19-cv-00097-CFC CJB, D.I. 448, at § 2 (D. Del. Aug. 4, 2022) and *Deere & Co. v. AGCO Corp.*, 1:18-cv-00827-CFC-JLH, D.I. 535-1, at § 2 (D. Del. Mar. 28, 2023).

1) Whether Beckman Coulter has proven by a preponderance of the evidence that Cytek directly infringes, either literally or through the doctrine of equivalents, the Asserted Claims of the '582, '443, and '107 Patents.

[**Beckman Coulter:** 2) Whether Beckman Coulter has proven by a preponderance of the evidence that Cytek indirectly infringes the Asserted Claims of the '582, '443, and '107 Patents.][17]

---

[17] **Beckman Coulter**: Beckman Coulter's instruction is necessary to inform the jury that Beckman Coulter also alleges that Cytek indirectly infringes the Asserted Claims. Cytek's proposal risks confusing the jury about whether they need to find that Cytek, as opposed to its customers, directly infringed in order to find indirect infringement. Beckman's proposal avoids potential confusing by instructing the jury on the different infringement issues and then instructing the jury on Cytek's defenses of RDOE and validity.

**Cytek**: Cytek will agree to this instruction if Beckman Coulter agrees to revise as follows, which is necessary to avoid confusion and inform the jury regarding Cytek's defense under the reverse doctrine of equivalents: "For any claim that you found direct infringement, and found the reverse doctrine of equivalents does not apply, whether Beckman Coulter has proven by a preponderance of the evidence that Cytek indirectly infringes the Asserted Claims of the '582, '443, and '107 Patents." However, this instruction must be numbered 3), after Cytek's proposed instruction regarding non-infringement under RDOE.

16

[**Cytek:** 2) If you find Beckman Coulter has proven by a preponderance of evidence that Cytek infringes any Asserted Claim of the '443 and '107

---

**Beckman Coulter**:  Cytek's placement of the reverse doctrine of equivalents instruction is confusing because the first question refers only to *Cytek's* direct infringement, whereas the relevant direct infringement for purposes of the reverse doctrine of equivalents in the context of an indirect infringement claim would be the direct infringement by Cytek's customers.  Beckman Coulter suggests placing the direct and indirect infringement questions first, and then listing the reverse doctrine of equivalents as a defense.  If Cytek agrees, Beckman Coulter would drop the brackets and green coloring on the reverse doctrine of equivalents, but proposes to keep footnote 18 for now memorializing the parties' positions on whether the reverse doctrine of equivalents should go to the jury at all.  Finally, there is no risk of juror confusion as the placement of the issues says nothing about who bears the burden.

**Cytek:** Cytek disagrees with Beckman Coulter's proposal.  As noted in footnote 18, the Court has already rejected Beckman Coulter's motion for summary judgment against Cytek's "RDOE" defense. *See* D.I. 367.  Non-infringement under the reverse doctrine of equivalents is part of the direct infringement inquiry, and must come before the issue of indirect infringement, to accurately reflect the law and avoid juror confusion.  The burden of persuasion on infringement always rests with Beckman Coulter. *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1123-24 (Fed. Cir. 1985).  If Beckman Coulter establishes infringement, "the accused infringer may undertake the burden of going forward to establish the fact of non-infringement under the reverse doctrine of equivalents.  If the accused infringer makes a *prima facie* case, the patentee, who retains the burden of persuasion on infringement, must rebut that *prima facie* case." *Id.*  Accordingly, Beckman Coulter's proposal to list indirect infringement before RDOE risks confusing the jury into believing that Cytek bears the burden of persuasion to demonstrate no direct infringement.

17

<span style="color:green">Patents, whether Cytek does not infringe such claim(s) under the reverse doctrine of equivalents.][18]</span>

3) Whether Cytek has proven by clear and convincing evidence that the Asserted Claims are invalid.

---

[18] **Cytek:** Cytek's proposed instruction is proper because the reverse doctrine of equivalents is a viable defense for the jury to decide. *See Maquet Cardiovascular LLC v. Abiomed, Inc. et al.*, --- F. Supp. 3d ----, 2026 WL 1217150 (D. Mass. May 4, 2026); *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1123 (Fed. Cir. 1985); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950). This Court has already rejected Beckman Coulter's motion for summary judgment against Cytek's RDOE defense. *See* D.I. 367. Therefore, this instruction is proper and necessary. As this Court properly found, the Supreme Court held that § 271(a) left intact the entire body of case law on direct infringement and rejected the argument that the doctrine of equivalents, as set out in *Graver Tank* in 1950, did not survive the 1952 revision of the Patent Act. *Id.*, at 4 (citations and quotation marks omitted). Cytek reiterates that this instruction must go before Beckman Coulter's proposed instruction regarding indirect infringement (if the Court is inclined to adopt it), for the reasons explained in footnote 17.

**Beckman Coulter:** For the reasons given in Beckman Coulter's motion for summary judgment against Cytek's reverse doctrine of equivalents defense, Beckman Coulter preserves the argument that the reverse doctrine of equivalents did not survive the Patent Act of 1952 and that, in any event, Cytek's application of the doctrine is legally flawed. *See* D.I. 234, 246, 326; *see also Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, 127 F.4th 348, 357 (Fed. Cir. 2025).

## 4.    PATENT INSTRUCTIONS

### 4.1.    The Patent System[19]

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case.  I will now give you more detailed instructions about the patent laws that specifically relate to this case.  If you would like to review my instructions at any time during your deliberations, they will be available to you in the jury room.

### 4.2.    The Role of Claims in a Patent[20]

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."  The patent claims are the numbered sentences at the end of each patent.  The claims are important because it is the words of the claims that define what a patent covers and thus the patent owner's property rights.

Only the claims of a patent can be infringed.  The figures and text in the rest of the patent provide a description and/or examples of the invention and provide context for the claims, but it is the claims that define the breadth of the patent's

---

[19] *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 4.1 (D. Del. Aug. 12, 2025).

[20] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 4.2 (D. Del. Aug. 12, 2025) and *Deere & Co. v. AGCO Corp.*, 1:18-cv-00827-CFC-JLH, D.I. 535-1, at § 3.1 (D. Del. Mar. 28, 2023).

coverage.  Each claim may cover more or less than another claim.  Therefore, what a patent covers depends, in turn, on what each of its claims covers.

Each claim is made up of claim elements, also referred to as claim limitations. A claim element, or claim limitation, is a requirement of a claim.  A patent claim is infringed only if an accused product includes each and every element stated in that patent claim.

Both infringement and invalidity must be assessed on a claim-by-claim basis. There may be infringement of all claims, there may be infringement as to one claim but no infringement as to another, or there may be no infringement of any claims. Similarly, all claims may be invalid, one claim may be invalid but another claim may not be, or all claims may not be invalid.

### 4.3.   Independent and Dependent Claims[21]

There are two types of patent claims: independent claims and dependent claims.  In this case, Beckman Coulter asserts both independent and dependent claims.

An "independent" claim does not refer to any other claim of the patent and sets forth all of the requirements that must be met in order for a product or method

---

[21] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 4.3 (D. Del. Aug. 12, 2025) and *Deere & Co. v. AGCO Corp.*, 1:18-cv-00827-CFC-JLH, D.I. 535-1, at § 3.2 (D. Del. Mar. 28, 2023).

to be covered by that claim, and thus infringe that claim.  It is not necessary to look at any other claim to determine what an independent claim covers.

A "dependent" claim refers to and incorporates the requirements of another claim and adds its own additional requirements.  In this way, the claim "depends" on another claim.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim from which it depends.  For example, Claim 3 of the '582 Patent is a dependent claim because it incorporates the requirements of claims 1 and 2.

### 4.4.    Construction of the Claims[22]

It is my job as the judge to provide to you the meaning of any claim language that must be interpreted.  [**Beckman Coulter:** It is not the job of any witness to

---

[22] Unless otherwise indicated, adapted from *Globus Medical, Inc. v. Life Spine*, *Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 4.4 (D. Del. Aug. 12, 2025) and *Deere & Co. v. AGCO Corp.*, 1:18-cv-00827-CFC-JLH, D.I. 535-1, at § 3.3 (D. Del. Mar. 28, 2023).

provide you with the meaning of the claim language.][23]   You must accept the

definitions I give you and use them when you decide whether any claim has been

---

[23] **Beckman Coulter:** Beckman Coulter's proposed language is from this Court's instruction in *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 4.4 (D. Del. Aug. 12, 2025), on which the instruction is otherwise based. Beckman Coulter's proposed language is also necessary to inform the jury that it is the role of the Court, and not the jury, to construe the claims. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996) ("We hold that the construction of a patent, including terms of art within its claims, is exclusively within the province of the court."). As explained in Beckman Coulter's *Daubert* motions, Cytek impermissibly seeks to narrow the scope of the Asserted Claims under the guise of "plain and ordinary meaning" and should not be permitted to do so. *See* D.I. 252 at 5-17, 21-22; D.I. 327 at 1-12; *see also EMC. v. Pure Storage*, 2016 WL 775742, *4 (D. Del. Feb. 25, 2016) (experts cannot "testify[] that [the] specification" limits "the plain and ordinary meaning"). Notably, Cytek does not dispute that it plans to use its experts to argue claim construction under the guise of plain and ordinary meaning. But none of Cytek's cited cases permit this. Rather, *Phillips* addressed the evidence that can be used to guide a ***court's*** claim construction and not what can be presented to a jury. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) ("extrinsic evidence in the form of expert testimony can be ***useful to a court***" (emphasis added)). *LG Electronics* determined only that a jury consider an expert's ***application*** of the plain and ordinary meaning, not that an expert may construe the claims for the jury, as Cytek suggests. *LG Elecs. USA, Inc. v. Whirlpool Corp.*, 798 F.Supp.2d 541, 554 (D. Del. 2011) ("jury was entitled to reject the direct testimony of Dr. Bessler, who testified that each claimed element was present in the accused product, but indicated on cross-examination that the outlet of the water dispensing assembly did not extend beyond the "outer surface" of the door in the accused product"). Likewise, *TQ Delta, LLC v. Adtran, Inc.*, held that "[e]xpert testimony regarding whether an accused device falls within the scope of a court's claim construction is appropriate," not that an expert may make claim construction arguments to the jury. 2019 WL 5626638, at *1 (D. Del. Oct. 31, 2019).

infringed and whether any claim is invalid.  You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

You should not take my definition of the language of the patent claims as an indication that I have a view regarding how you should decide the infringement or invalidity issues that you are being asked to decide.  These issues are yours to decide.

I have already defined the meaning of some of the words of the Asserted Claims in this case.  These definitions, which I will now read to you, are also in your glossary of terms.

---

**Cytek:**  Beckman Coulter's proposed language risks confusing the jury regarding its role in assessing the meaning of claim terms.  Indeed, a jury can consider expert testimony on a claim term's "plain and ordinary" meaning.  *E.g.*, *TQ Delta, LLC v. ADTRAN, Inc.*, No. CV 14-954-RGA, 2019 WL 5626638, at \*1 (D. Del. Oct. 31, 2019) (expert testimony of POSA's understanding of plain meaning "is appropriate to assist the jury"); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (en banc) (expert testimony relevant); *LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 798 F. Supp. 2d 541, 554 (D. Del. 2011) (where the court construes a term to have its plain and ordinary meaning, the jury may consider expert testimony to understand the term's meaning).  Cytek is not suggesting that an expert may *construe* the claims for the jury, as Beckman Coulter asserts.  And as Beckman Coulter notes, *LG Electronics* determined that a jury may consider an expert's application of plain and ordinary meaning.  Additionally, Beckman Coulter's proposed language is not in the final instructions approved by this Court in the *Deere* instructions on which this instruction is based; nor is it in the 2023 *Magnolia* instructions approved by this Court.  *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, Case 1:19-cv-00097-CFC CJB, D.I. 448, at § 3.2 (D. Del. Aug. 4, 2022).  Further, Beckman Coulter's proposed language is unnecessary because the immediately preceding, agreed-upon sentence states: "It is my job as the judge to provide to you the meaning of any claim language that must be interpreted."

| CLAIM TERM | DEFINITION |
|---|---|
| "[first / second] filter" ('443 Patent, cl. 10) | "first filter" is "initial filter," "second filter" is "second sequential filter after an initial filter" |
| "first optical filter" ('582 Patent, cl. 6) | [**Beckman Coulter:** Plain and ordinary meaning, which does not require a sequence; <br><br> **Cytek**: Plain and ordinary meaning (Aug. 21, 2025 Hr'g Tr. at 28:8-75:11; Sep. 17, 2025 Hr'g Tr. at 3:15-7:16.)][24] |

---

[24] **Beckman Coulter:** Beckman Coulter's proposal reflects the Court's determination that it was "going to go with Beckman's approach" for this term. Sep. 17, 2025 Hr'g Tr. at 5:19-6:2. Beckman Coulter's proposal was "[a]n element or limitation as distinguished from another instance of the element or limitation; 'first' and 'second' are used to distinguish between repeated instances of an element or limitation." Cytek seeks to reopen closed claim construction issues by arguing that "the first optical filter is the initial filter," which is improper. Cytek is also incorrect that "Beckman Coulter's proposal is unsupported by the Court's *Markman* ruling and cites to part of the transcript discussing 'first and second dichroic filter' in the dropped '106 patent." The Court expressly noted that its construction "applies for first and second optical filter." Sep. 17, 2025 Hr'g Tr. at 5:19-6:2.

The parties agree to remove hearing transcript and *Markman* Order citations upon finalization of the jury instructions.

**Cytek:** Cytek's proposal reflects that the Court stated that it was "not construing first and second optical filter," leaving its construction to plain and ordinary meaning, as the Court declined to construe this term, yet noted the possibility of later construing it, if necessary. (Aug. 21, 2025 Hr'g Tr. at 28:8-75:11; Sep. 17, 2025 Hr'g Tr. at 3:15-7:16.) The Court did not indicate that the plain and ordinary meaning included "which does not require a sequence." Beckman Coulter's proposal is unsupported by the Court's *Markman* ruling and cites to part of the transcript discussing "first and second dichroic filter" in the dropped '106 patent. Here, claim 6 recites that the "first optical filter" is "between the collimating optical element and the optical relay element." Therefore, the first optical filter is the initial filter. There is no recitation of a "second optical filter" in claim 6, so it is unclear why BEC is proposing "does not require a sequence."

24

| CLAIM TERM | DEFINITION |
|---|---|
| "focusing lenses … configured to focus light" ('107 Patent, cl. 18) | "lenses that capture and converge light." [(Sep. 17, 2025 Hr'g Tr. at 34:17-19.)][25] |
| "image" ('582 Patent, cl. 1, 23, 26) | "Representation of an object created by light or emanating from a light source." [(Sep. 17, 2025 Hr'g Tr. at 89:15-17.)][26] |
| "first"/"second image" ('582 Patent, cl. 2) | [**Beckman Coulter:** Plain and ordinary meaning][27] |
| "first"/"second image" ('582 Patent, cl. 26) | [**Beckman Coulter**: For claims 26: "the second image is created after the first image and there is no intervening image."; **Cytek:** "the second image is created after the first image and there is no intervening image"(Sep. 17, 2025 Hr'g Tr. at 117:1-3.)][28] |
| "collimate" / "collimating" / "collimated beam" | Plain and ordinary meaning [(Aug. 21, 2025 Hr'g Tr. at 133:11-17, 134:4-135:16.)][29] |

[25] The parties agree to remove hearing transcript and *Markman* Order citations upon finalization of the jury instructions.

[26] *Id.*

[27] *See* footnote 28.

[28] **Beckman Coulter:**  Beckman Coulter's proposal is necessary to inform the jury that this term was not construed for claim 2.  The parties agree to remove hearing transcript and *Markman* Order citations upon finalization of the jury instructions.

**Cytek:** Beckman Coulter's proposal for including unasserted claim 2 is unnecessary and confusing.  The left column in the table specifies that the Court's construction for the "first" / "second image" terms applies only to asserted claim 26 of the '582 patent.

[29] The parties agree to remove hearing transcript and *Markman* Order citations upon finalization of the jury instructions.

| CLAIM TERM | DEFINITION |
|---|---|
| ('582 Patent, cls. 1, 3, 6, 23, 26; '443 Patent, cl. 10) | |
| "portion of the" ('582 Patent, cls. 1, 3, 6; '443 Patent, cls. 4, 6, 10, 11, 15; '107 Patent, cls. 5, 16, 18, 26, 27, 29) | "subset of the spectrum of the wavelengths of light" [(Sep. 17, 2025 Hr'g Tr. at 92:23-24.)][30] |
| "optical element configured to detect" ('443 Patent, cl. 15) | *Function*: "detect scattered light emitted by the particle in the flow channel and illuminated by a light source" [(D.I. 131-1, Ex. A to Amended Joint Claim Construction Chart at 18.)] [31]<br><br>*Means*: The items labelled 408 or 413 in the specification. [(Sep. 17, 2025 Hr'g Tr. at 180:16-18.)][32] |
| "collimating optical element" ('582 Patent, cls. 1, 3, 6, 23, and 26) | *Function*: (1) receive light from a light source; (2) project a collimated beam<br><br>*Structure*: a lens, such as an achromatic doublet lens, and structural equivalents thereof [(D.I. 226 at 5.)][33] |
| "collimating optical element" ('582 Patent, cls. 23 and 26) | *Function*: (1) receive light from a light source; (2) project a first image<br><br>*Structure*: a lens, such as an achromatic doublet lens, and structural equivalents |

---

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

| CLAIM TERM | DEFINITION |
|---|---|
|  | thereof<br>[(D.I. 226 at 5.)][34] |

Although I have only construed some of the claim terms, it is important to understand that a patent claim is infringed only if the product accused of infringement includes each and every element in that patent claim. For any other claim term that I have not provided a definition, you should use its plain and ordinary meaning within the context of the patent in which the claim term is used as determined from the perspective of a person of ordinary skill in the art as of the priority date. [**Cytek:** Reasonable minds could differ as to the plain and ordinary

---

[34] *Id.*

meaning of a term.[35]   Therefore, you may consider expert testimony in determining how a person of ordinary skill in the art would understand that term as of the priority date, and assign it the weight you deem appropriate.[36]]

---

[35] **Cytek:** Cytek's proposed language is an accurate recitation of the law.  *E.g.*, *TQ Delta, LLC v. ADTRAN, Inc.*, No. CV 14-954-RGA, 2019 WL 5626638, at *1 (D. Del. Oct. 31, 2019) (expert testimony of POSA's understanding of plain meaning "is appropriate to assist the jury"); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (en banc) (expert testimony relevant to a claim term's meaning).  This instruction is necessary to provide the appropriate context for "plain and ordinary" meaning of a term and specifically that the jury may take into account expert testimony to determine what "plain and ordinary" meaning of a term is as understood by a POSA when, as here, the Court does not explain what that plain and ordinary meaning is.  *See LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 798 F. Supp. 2d 541, 554 (D. Del. 2011) (where the court construes a term to have its plain and ordinary meaning, the jury may consider expert testimony to understand the term's meaning); *see also Belden Techs. Inc. v. Superior Essex Commc'ns LP*, 733 F. Supp. 2d 517, 546 (D. Del. 2010).  In this respect, *Belden Techs.* supports Cytek's proposed language that clarifies the jury's role in determining the "plain and ordinary" meaning of a term in light of credible expert testimony.  Cytek is not suggesting that an expert may construe the claims for the jury, as Beckman Coulter asserts.  And as Beckman Coulter notes, *LG Electronics* determined that a jury may consider an expert's application of plain and ordinary meaning.

28

---

**Beckman Coulter:**  Cytek's proposed language departs from the *Globus* and *Deere* instructions on which this instruction is based.  *See Globus Medical, Inc. v. Life Spine*, *Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 4.4 (D. Del. Aug. 12, 2025) and *Deere & Co. v. AGCO Corp.*, 1:18-cv-00827-CFC-JLH, D.I. 535-1, at § 3.3 (D. Del. Mar. 28, 2023).  Cytek does not dispute that it improperly intends to argue claim construction to the jury.  Cytek's cited cases do not permit Cytek to do so.  Rather, *Phillips* addressed the evidence that can be used to guide a ***court's*** claim construction and not what can be presented to a jury.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) ("extrinsic evidence in the form of expert testimony can be ***useful to a court***" (emphasis added)).  *LG Electronics* determined only that a jury consider an expert's ***application*** of the plain and ordinary meaning, not that an expert may construe the claims for the jury, as Cytek suggests.  *LG Elecs. USA, Inc. v. Whirlpool Corp.*, 798 F.Supp.2d 541, 554 (D. Del. 2011) ("jury was entitled to reject the direct testimony of Dr. Bessler, who testified that each claimed element was present in the accused product, but indicated on cross-examination that the outlet of the water dispensing assembly did not extend beyond the "outer surface" of the door in the accused product").  And *Belden* merely denied summary judgment of invalidity in light of the parties' conflicting arguments about whether the prior art taught a disputed claim limitation.  733 F.Supp.2d 517, 546 (D. Del. Aug. 24, 2010) ("Because reasonable minds could differ both as to the meaning and presence of this final limitation, the court declines to grant either parties' motion for summary judgment with respect to the '866 patent.").  This does not support Cytek's broad instruction, which risks misleading the jury into believing they should construe the claims under the guise of applying the "plain and ordinary meaning." *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996) ("We hold that the construction of a patent, including terms of art within its claims, is exclusively within the province of the court."); *EMC. v. Pure Storage*, 2016 WL 775742, *4 (D. Del. Feb. 25, 2016) (experts cannot "testify[] that [the] specification" limits "the plain and ordinary meaning").

29

---

[36] **Cytek**: Cytek's proposed language is an accurate recitation of the law. *E.g.*, *TQ Delta, LLC v. ADTRAN, Inc.*, No. CV 14-954-RGA, 2019 WL 5626638, at *1 (D. Del. Oct. 31, 2019) (expert testimony of POSA's understanding of plain meaning "is appropriate to assist the jury"); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) (en banc) (expert testimony relevant to a claim term's meaning). This instruction is necessary to provide the appropriate context for "plain and ordinary" meaning of a term and specifically that the jury may take into account expert testimony to determine what "plain and ordinary" meaning of a term is as understood by a POSA when, as here, the Court does not explain what that plain and ordinary meaning is. *See LG Elecs. U.S.A., Inc. v. Whirlpool Corp.*, 798 F. Supp. 2d 541, 554 (D. Del. 2011) (where the court construes a term to have its plain and ordinary meaning, the jury may consider expert testimony to understand the term's meaning); *see also TQ Delta, LLC v. ADTRAN, Inc.*, No. CV 14-954-RGA, 2019 WL 5626638, at *1 (D. Del. Oct. 31, 2019). In this respect, *TQ Delta* supports Cytek's proposed language that clarifies the role of expert testimony in the jury's deliberation of "plain and ordinary" meaning.

**Beckman Coulter:** Cytek's proposed language departs from the *Globus* and *Deere* instructions on which this instruction is based. *See Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 4.4 (D. Del. Aug. 12, 2025) and *Deere & Co. v. AGCO Corp.*, 1:18-cv-00827-CFC-JLH, D.I. 535-1, at § 3.3 (D. Del. Mar. 28, 2023). Cytek also does not identify any instructions given by this Court that include this proposed language and does not dispute that it plans to argue claim construction to the jury. This is improper. *Supra* n.35. As explained in footnote 35s, *Phillips*, *TQ Delta*, and *LG Electronics* do not allow a party to argue claim construction to a jury. Likewise, *TQ Delta* addressed a *Daubert* motion seeking to exclude expert testimony and found only that the relevant testimony did not "purport to limit the claims to any particular purpose" and thus would not be "unhelpful to the jury." 2019 WL 5626638, at *2. This does not support this instruction, which would risk misleading the jury into believing they should construe the claims.

30

### 4.5.   "Comprising" Claims[37]

The beginning portion, or preamble, of a claim commonly uses the word "comprising."  "Comprising" means "including" or "containing."  A claim that uses the word "comprising" or "comprises" is not limited to products having only the elements that are recited in the claim, but also covers products that include additional features.

## 5.   INFRINGEMENT

### 5.1.   Patent Infringement Generally[38]

I will now instruct you how to decide infringement.  Infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but not infringement as to another.  To prove that any claim of a patent is infringed, Beckman Coulter must persuade you by a preponderance of the evidence that it is more likely true than not that a claim is infringed.  Cytek contends that it does not infringe any of the Asserted Claims.

A claim of a patent may be infringed directly or indirectly.  As explained further in the following Instructions, direct infringement results if Cytek's accused products are covered by at least one claim of the Asserted Claims.  Indirect

---

[37] *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 4.5 (D. Del. Aug. 12, 2025).

[38] Unless otherwise indicated, adapted from *Magnolia Medical Tech., Inc. v. Kurin, Inc.*, 1:24-cv-01124-CFC, D.I. 416, at § 4.1 (D. Del. Dec. 14, 2025).

infringement results if Cytek induces another to infringe a claim or contributes to the infringement of a claim.[39]

In this case, there are several ways that Beckman Coulter contends Cytek has and continues to infringe: (1) direct infringement, either literally or under the doctrine of equivalents; (2) induced infringement; (3) supply of all or a substantial portion of the components of a patented invention to another country; (4) contributory infringement; and (5) supply of components especially made or adapted for use in the patented invention in another country.[40]

---

[39] 2025 AIPLA Model Patent Jury Instructions at § 3.0, *available at* https://www.aipla.org/docs/default-source/committee-documents/patent-litigation-files/2025/final/2025-08-18---aipla-model-patent-jury-instructions97a6c7cf1cf24560aa4c091382f9a2e2.pdf?sfvrsn=8254824d_1

[40] **Beckman Coulter:** Beckman Coulter's proposal is necessary to provide the jury with information about the ways in which Cytek is accused of infringement. By contrast, Cytek's proposed language improperly omits infringement under the doctrine of equivalents, which risks juror confusion about the infringement claims in this case.

32

[**Beckman Coulter:**  During the trial, you heard evidence about Cytek's own patents, including Cytek's belief that its patents are improvements over Beckman Coulter's patents and products.  However, Cytek's patents provide no defense to

---

**Cytek**: Cytek's proposed language attempts to streamline the instructions for the jury and is legally accurate.  Literal infringement and infringement under the doctrine of equivalents are two subcategories of direct infringement.  The distinction between the two types of direct infringement is further explained in the following sections.  *See* Sections 5.2, 5.4 ("There are two types of direct infringement, literal infringement and infringement under doctrine of equivalents.").  This is additionally consistent with the instructions that were given in *Magnolia*, a case this instruction is based upon.  *Magnolia Medical Tech., Inc. v. Kurin, Inc.*, 1:24-cv-01124-CFC, D.I. 416, at § 4.1 (D. Del. Dec. 14, 2025); *see also Magnolia Medical Tech., Inc. v. Kurin, Inc.*, 1:24-cv-01124-CFC, D.I. 452,1888:11-15 (D. Del. Feb. 6, 2026). ("Now, there's two ways a claim may be infringed. The first we call direct infringement, and the second is induced infringement.").

infringement of Beckman Coulter's Patents.][41] [**Beckman Coulter:** Additionally, in

deciding the issue of infringement, keep in mind that an improvement upon a

---

[41] **Beckman Coulter:** Cytek should be precluded from presenting evidence or argument regarding its patents and patent applications, which are irrelevant to the issues in this case and would only serve to confuse the jury. June 30, 2022 Tr. at 30:6-31:3, *Magnolia Medical Techs. v. Kurin, Inc*., 1:19-cv-00097-CFC-CJB, (D. Del. June 30, 2022) (Connolly, J.) ("The existence of one's own patent does not constitute a defense to infringe onto someone else's patents."). Cytek's plans to use statements made by an examiner reviewing Cytek's patent application as purportedly reflecting the understanding of a POSA fails because Cytek has not demonstrated that these examiners are, in fact, POSAs. Cytek's argument also risks confusing the jury into substituting the examiners' findings for their own judgment. *See Salazar*, 414 F.3d at 1347 (no acquiescence to unilateral examiner statements). Cytek's IP is also irrelevant to Cytek's reverse doctrine of equivalents defense because Cytek does not dispute that it has not offered any expert opinion that the Accused Products practice Cytek's IP. And Cytek identifies no case holding that unrelated claims bear on the written description of the Asserted Claims. Beckman Coulter proposes this instruction only in the event the jury is permitted to hear evidence regarding Cytek's patents and patent applications. *See Bio-Tech. Gen. Corp. v. Genentech, Inc*., 80 F.3d 1553, 1559 (Fed. Cir. 1996) ("[T]he existence of one's own patent does not constitute a defense to infringement of someone else's patent. It is elementary that a patent grants only the right to exclude others and confers no right on its holder to make, use, or sell." (quoting *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 879 n.4 (Fed. Cir. 1991))).

patented device may still infringe.  Likewise, a patent may issue on an improvement

that infringes another's patents.  Therefore, Cytek can still be liable for infringing

---

**Cytek**: The issue of whether Cytek should be precluded from presenting evidence or argument regarding Cytek's patents is subject to Beckman Coulter's pending MIL No. 1, which Cytek opposes.  If Beckman Coulter is concerned about confusing the jury, it should withdraw all of its proposed language regarding Cytek's patents.  As explained in Cytek's opposition to Beckman Coulter's pending MIL No. 1, Cytek intends to rely on the *prosecution history* of its own patents, not merely on the fact that Cytek has its own patents.  Cytek's patent's prosecution history is directly probative to many of its defenses, including its written description and RDOE arguments.  *See Salazar v. Procter & Gamble Co*., 414 F.3d 1342, 1347 (Fed. Cir. 2005) (examiner statements are evidence of POSA's understanding); *Sprint Commc'ns Co. v. Charter Commc'ns Inc.*, 2021 WL 982729, *7-9 (D. Del. Mar. 16, 2021) (denying exclusion of DOE rebuttal evidence).  Moreover, contrary to Beckman Coulter's assertions, Cytek does not argue noninfringement based on mere comparison between the content of Cytek's patents and the Asserted Claims.  Given the intended use of Cytek's patents, this instruction has the danger to confuse the jury by implying an argument that Cytek is not making and is thus prejudicial. Further, Beckman Coulter's proposed language is improperly argumentative, as it assumes Cytek's patented technology merely reflects an improvement to the Asserted Patents.  Beckman Coulter's concern is more appropriately addressed by Cytek's proposed instruction that "you must compare Cytek's Accused Products to the Asserted Claims when making your decision regarding infringement."  *See* Section 5.1.  Lastly, this language does not appear in the 2025 AIPLA Model Patent Jury Instructions, the Northern District of California, Model Patent Jury Instructions, or any other jury instructions approved by this Court.  While Beckman Coulter's arguments in its position statements are improper rehash of its MIL argument, Cytek responds: The law does not require that the examiners be established as a POSA, and Beckman Coulter has not cited a case that states the contrary.  None of the patents that Cytek intends to rely on are "unrelated."  Beckman Coulter's statement that "Cytek does not dispute that it has not offered any expert opinion that the Accused Products practice Cytek's IP" is misleading.  Dr. Ilkov, Cytek's expert, relies on certain figures of Cytek's patent to capture aspects of the claims relating to reimaging.  Dr. Houston, Beckman Coulter's expert, put Cytek's patents at issue by relying on them to support her infringement opinions.

Beckman Coulter's patents even if its accused products have additional or improved features or if Cytek received a patent for such additional or approved features.][42]

---

[42] **Beckman Coulter:** Beckman Coulter's proposed language is necessary to prevent juror confusion about the infringement inquiry, including that Cytek's patents are not relevant to that inquiry. *Supra* n.41; *see also Atlas Powder Co. v. E.I. DuPont de Nemours & Co.*, 750 F.2d 1569, 1580 (Fed. Cir. 1984) ("[W]here defendant has appropriated the material features of a patent in suit, infringement will be found even when those features have been supplemented and modified to such an extent that the defendant may be entitled to a patent for the improvement." (citation and internal quotation marks omitted)); *Water Tech. Corp. v. Calco, Ltd.*, 850 F.2d 660, 669 (Fed. Cir. 1988) ("it is elementary patent law that a patent may issue on an improvement which infringes another's patent"); *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1179 (Fed. Cir. 1991) ("The district court seems to have focused on the fact that Zeiss' introduction of a piezoelectric element is an improvement upon the patented invention. Indeed, in view of Renishaw's use of piezoelectric elements in its own newer probes, this superiority appears to be undisputed. But an improvement upon a patented device does not necessarily avoid infringement."); *JVW Enterprises, Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1333 (Fed. Cir. 2005) ("These additional features amount to improvements that do not avoid infringement"). Beckman Coulter's proposed language does not suggest Cytek's IP "merely reflects an addition or improvement to the Asserted Patents," and instead merely provides the jury with the relevant legal standard. Cytek should be precluded from presenting evidence regarding its patents and patent applications. *Supra* n.41.

36

[**Beckman Coulter:**  In deciding the issue of infringement, keep in mind that there is nothing improper in filing a patent application or writing patent claims to cover an adverse party's product.  This is true even where a patent is applied for and granted after the Accused Product enters the market.  Cytek can still be liable for

---

**Cytek's**:  The issue of whether Cytek should be precluded from presenting evidence or argument regarding Cytek's patents is subject to Beckman Coulter's pending MIL No. 1, which Cytek opposes.  As explained in Cytek's opposition to Beckman Coulter's pending MIL No. 1, Cytek intends to rely on the *prosecution history* of its own patents, not merely on the fact that Cytek has its own patents.  Cytek's patent's prosecution history is directly probative to many of its defenses, including its written description and RDOE arguments.  *See Salazar*, 414 F.3d at 1347; *Sprint Commc'ns*, 2021 WL 982729, *7-9.  Moreover, contrary to Beckman Coulter's assertions, Cytek does not argue noninfringement based on mere comparison between the content of Cytek's patents and the Asserted Claims.  Given the intended use of Cytek's patents, this instruction has the danger to confuse the jury by implying an argument that Cytek is not making and is thus prejudicial.  Further, Beckman Coulter's proposed language is improperly argumentative, as it assumes Cytek's patented technology merely reflects an ***addition*** or improvement to the Asserted Patents.  Lastly, Beckman Coulter's proposed language does not appear in the 2025 AIPLA Model Patent Jury Instructions, the Northern District of California, Model Patent Jury Instructions, or any other jury instructions approved by this Court.

infringing Asserted Patents that issued after the Accused Products entered the market.]43

---

43 **Beckman Coulter:**   Cytek admits that it plans to rely extensively on substantive timing arguments.  This instruction is therefore necessary to prevent juror confusion about whether infringement can be found where the accused products were launched before the asserted patent issued because "there is nothing improper, illegal, or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market." *BlephEx, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1404 (Fed. Cir. 2022); *see also Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 874 (Fed. Cir. 1988) ("It should be made clear at the outset of the present discussion that there is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market; nor is it in any manner improper to amend or insert claims intended to cover a competitor's product the applicant's attorney has learned about during the prosecution of a patent application. Any such amendment or insertion must comply with all statutes and regulations, of course, but, if it does, its genesis in the marketplace is simply irrelevant and cannot of itself evidence deceitful intent.").  Cytek's written description argument fails because its cited cases substantively relied only on the lack of support in the specification, not timing.  And *Syntheses* reiterated that "broadening claims … to capture a competitor's products is not improper" where there is written description support.  734 F.3d at 1341.

**Cytek**:  Beckman Coulter's proposed language is improperly argumentative and highly prejudicial, especially in light of its low probative value.  As explained in Cytek's opposition to Beckman Coulter's MIL No. 3, Cytek intends to rely on the timing of the Accused Products *vis-à-vis* the issuance of the Asserted Patents, and what specification support existed at the time the Accused Products were launched, for Cytek's indirect infringement and willfulness positions, *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1286 (Fed. Cir. 2020); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510-11 (Fed. Cir. 1990); *Natera, Inc. v. ArcherDX, Inc.*, 2023 WL 12139680, at \*2 (D. Del. May 3, 2023), as well as invalidity position, *Synthes USA, LLC v. Spinal Kinetics, Inc.*, 734 F.3d 1332, 1341 (Fed. Cir. 2013); *Quake v. Lo,* 928 F.3d. 1365, 1373 (Fed. Cir. 2019).  Therefore, Beckman Coulter's proposed language in this section poses the danger of diminishing the relevance of this evidence to the issues of indirect and willful infringement and invalidity.  Lastly, this language does not appear in the 2025 AIPLA Model Patent Jury Instructions, the Northern District of California, Model Patent Jury Instructions, or any other jury instructions approved by this Court.  While Beckman Coulter's arguments in its position statement are improper rehash of its MIL arguments, Cytek responds: As Beckman Coulter concedes, *Synthes* stands for the proposition that the specification must still support the broadened claims.  734 F.3d at 1341.  Here, there was no specification support for Beckman Coulter's broadened claims, as discussed by Cytek's experts.  Additionally, the Federal Circuit in *Synthes* held that substantial evidence for lack of written description included that "Synthes amended the application that became the [asserted] patent to add the concept of 'openings' in claim 29 almost five years after the application was originally filed, and after SK's M6 devices were already on the market." *Id.*

[**Beckman Coulter:**  Nor is the assertion that an Accused Product practices the prior art a defense to infringement.  This means that Cytek cannot argue that the Accused Products do not infringe because they are simply practicing the prior art.]⁴⁴

---

[44] **Beckman Coulter:**  Beckman Coulter's proposed language reflects black-letter law that practicing the prior art is not a defense to infringement.  *Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1337 (Fed. Cir. 2011) ("A 'practicing the prior art' defense typically refers to the situation where an accused infringer compares the accused infringing behavior to the prior art in an attempt to prove that its conduct is either noninfringing or the patent is invalid as anticipated because the accused conduct is simply 'practicing the prior art.' In *Tate*, this court explained that accused infringers 'are not free to flout the requirement of proving invalidity by clear and convincing evidence by asserting a "practicing the prior art" defense to literal infringement under the less stringent preponderance of evidence standard.'" (quoting *Tate Access Floors, Inc. v. Interface Architectural Resources, inc.*, 279 F.3d 1357, 1367 (Fed. Cir. 2002))); *In re Omeprazole Patent Litig.*, 536 F.3d 1361, 1377 (Fed. Cir. 2008) ("It is well established, however, that 'practicing the prior art' is not a defense to infringement.").  Cytek's plan to rely on statements made by an examiner during prosecution of Cytek's patent application risks confusing the jury for the reasons set forth in Beckman Coulter's briefing on Beckman MIL 1.  *See also supra* n.41.

**Cytek**:  Beckman Coulter's proposed language is improperly argumentative and highly prejudicial, especially in light of its low probative value.  As also explained in Cytek's opposition to Beckman Coulter's pending MIL No. 1, Cytek intends to rely on the prior art references—including certain unasserted IP—at least in support of its *invalidity* defenses.  Given the intended use of the evidence, Beckman Coulter's proposed language has the danger to confuse the jury by implying an argument Cytek is not making.  Beckman Coulter's concern is more appropriately addressed by Cytek's proposed instruction that "you must compare Cytek's Accused Products to the Asserted Claims when making your decision regarding infringement." *See* Section 5.1.  Lastly, this language does not appear in the 2025 AIPLA Model Patent Jury Instructions, the Northern District of California, Model Patent Jury Instructions, or any other jury instructions approved by this Court.

You have heard evidence about Beckman Coulter's commercial products and Cytek's Accused Products.  Rather, you must compare Cytek's Accused Products to the Asserted Claims when making your decision regarding infringement.[45]

[**Cytek:** You also heard evidence about Cytek's owns patents.  However, in deciding the issue of infringement, you may not compare Cytek's patents to the

---

[45] Adapted from United States District Court, Northern District of California, Model Patent Jury Instructions (Oct. 2019) at § 3.2, https://cand.uscourts.gov/sites/default/files/documents/NDCA_Model_Patent_Jury_Instructions_erroneous-citation-omitted-10-28-24.pdf; *see also Johnson & Johnston Assocs. v. R.E. Serv. Co*., 285 F.3d 1046, 1052 (Fed. Cir. 2002) (en banc) ("Moreover, the law of infringement compares the accused product with the claims as construed by the court. Infringement, either literally or under the doctrine of equivalents, does not arise by comparing the accused product 'with a preferred embodiment described in the specification, or with a commercialized embodiment of the patentee.' (quoting *SRI Int'l v. Matsushita Elec. Corp*., 775 F.2d 1107, 1121 (Fed. Cir. 1985))); *Adams Respiratory Therapeutics v. Perrigo*, 616 F.3d 1283, 1288-89 (Fed. Cir. 2010) ("Perrigo is correct that here, the accused product must meet all limitations of the claim. However, when a commercial product meets all of the claim limitations, then a comparison to that product may support a finding of infringement.").

41

Asserted Patents.  Rather, you must compare Cytek's Accused Products to the Asserted Claims when making your decision regarding infringement.][46]

You have also heard evidence about the specifications of the Asserted Patents, including preferred embodiments and exemplary figures of the claimed inventions. However, in deciding the issue of infringement, you may not compare Cytek's

---

[46] **Cytek**: Cytek's proposed language states the black letter law and is necessary to clarify to the jury that the only proper infringement analysis is between the Asserted Claims and the Accused Products. *Forest Lab'ys, Inc. v. Abbott Lab'ys*, 239 F.3d 1305, 1313 (Fed. Cir. 2001) ("Abbott needed to present adequate evidence with respect to the accused product, not the content of [the accused infringer's] patent application that may or may not describe the product.").  The issue of whether Cytek should be precluded from presenting evidence or argument regarding Cytek's patents is subject to Beckman Coulter's pending MIL No. 1, which Cytek opposes. Contrary to Beckman Coulter's assertions, Cytek does not intend to argue non-infringement based on mere comparison between the content of Cytek's patent and patent applications and the Asserted Claims.

**Beckman Coulter:**  Cytek should not be permitted to tell the jury about its patents or patent applications.  *Supra* n.41.  However, to the extent Cytek is permitted to tell the jury about its patents and patent applications, Beckman Coulter agrees Cytek should not be permitted to argue non-infringement based on the mere fact of its patents and patent applications.  Both parties' experts use Cytek's Patent, albeit prejudicially under FRE 403, as evidence of infringement or non-infringement.

42

Accused Products to the specifications, including to any preferred embodiments or exemplary figures.[47]

[**Beckman Coulter:**  In determining Cytek's liability for infringement, you may consider whether Cytek is liable for the activities of its subsidiaries.  A parent corporation that directs the infringing activity of a subsidiary can be liable for its subsidiary's infringement.  In determining whether Cytek is liable for the activities

---

[47] *Johnson & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) (en banc) ("Moreover, the law of infringement compares the accused product with the claims as construed by the court. Infringement, either literally or under the doctrine of equivalents, does not arise by comparing the accused product 'with a preferred embodiment described in the specification, or with a commercialized embodiment of the patentee.' (quoting *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985))); *SRI Int'l*, 775 F.2d at 1121 (en banc) ("The law does not require the impossible. Hence, it does not require that an applicant describe in his specification every conceivable and possible future embodiment of his invention."); *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1303 (Fed. Cir. 2007) ("This court has cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification.").

of its subsidiaries, you must consider the amount of control Cytek exercises over the actions of its subsidiaries and whether Cytek dominates those activities.][48]

[**Beckman Coulter:** Finally, any alleged delay in the decision to file this lawsuit is not a defense to infringement.][49]

---

[48] **Beckman Coulter:** Beckman Coulter's proposed language is necessary to explain to the jury the circumstances in which Cytek may be vicariously liable for the actions of Cytek's subsidiaries. *See Intellectual Ventures I LLC v. Toshiba Corp.*, 66 F.Supp.3d 495, 498 (D. Del. Sept. 3, 2013) ("A parent corporation that directs the allegedly infringing activity of a subsidiary can be liable for its subsidiary's infringement. However, under the agency theory, the issue of liability rests on the amount of control the parent corporation exercises over the actions of the subsidiary. Simply being a wholly-owned subsidiary of a parent corporation alone does not make the subsidiary the agent of its parent; rather, a parent corporation will be held liable for the activities of the subsidiary only if the parent dominates those activities.' In patent cases where defendants are jointly liable for the infringement, each joint-tortfeasor is liable for the full amount of damages up to a single full recovery.'" (citations and internal citation marks omitted)).

**Cytek**: Beckman Coulter's proposed language is entirely prejudicial, irrelevant, and unnecessary given that vicarious liability, a completely separate legal issue, has not been raised by either party during fact discovery or expert discovery. None of the experts have opined on this issue and no fact witnesses have been asked about this during fact discovery. Beckman Coulter's proposed language does not appear in the 2025 AIPLA Model Patent Jury Instructions, the Northern District of California, Model Patent Jury Instructions, or any other jury instructions approved by this Court.

[49] **Beckman Coulter:** Cytek should not be permitted to argue that Beckman Coulter delayed filing this lawsuit because the timing of suit is not a defense to infringement or damages. *See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 346 (2017); *supra* n.43. Moreover, such arguments would risk confusing the jury into wrongly believing that there was some impropriety in the timing of the Complaint. *Supra* n.43. Beckman Coulter proposes this instruction only in the event that Cytek is permitted to tell the jury that Beckman Coulter purportedly delayed filing suit.

### 5.2.    Direct Infringement -- Literal Infringement[50]

In order to prove direct infringement, Beckman Coulter must prove by a preponderance of the evidence that Cytek has made, used, sold, or offered for sale within the United States, or imported into the United States, at least one of the Accused Products that meets all of the requirements of at least one Asserted Claim. Cytek contends that it does not directly infringe any of the Asserted Claims.

A patent claim can be literally infringed only if the accused product meets each and every element of that patent claim.  So, to prove literal infringement of an

---

**Cytek**:  The issue of whether Cytek should be precluded from presenting evidence or argument regarding the timing of lawsuit is subject to Beckman Coulter's pending MIL No. 3.  As explained in Cytek's opposition to Beckman Coulter's MIL No. 3, the timing of the lawsuit is highly probative and relevant to indirect infringement and willfulness, *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1286 (Fed. Cir. 2020); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510-11 (Fed. Cir. 1990); *Natera, Inc. v. ArcherDX, Inc.*, 2023 WL 12139680, at *2 (D. Del. May 3, 2023), as well as invalidity, *Synthes USA, LLC v. Spinal Kinetics, Inc.*, 734 F.3d 1332, 1341 (Fed. Cir. 2013); *Quake v. Lo,* 928 F.3d. 1365, 1373 (Fed. Cir. 2019). Therefore, Beckman Coulter's proposed language is improperly argumentative and poses the danger of diminishing the relevance of this evidence to the issues of indirect and willful infringement and invalidity.  *SCA* does not apply because Cytek is not advancing a *per se* laches-based defense to infringement.  *See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 580 U.S. 328, 346 (2017) ("Laches cannot be interposed as a defense against damages").  Lastly, Beckman Coulter's proposed language does not appear in the 2025 AIPLA Model Patent Jury Instructions, the Northern District of California, Model Patent Jury Instructions, or any other jury instructions approved by this Court.

[50] Unless otherwise indicated, adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 4.8 (D. Del. Aug. 12, 2025).

Asserted Claim, Beckman Coulter must show by a preponderance of the evidence that the Accused Products meet all of the limitations of that claim.  If an Accused Product does not satisfy one or more elements recited in an Asserted Claim, that Accused Product does not infringe that claim literally.

[**Beckman Coulter:**  Whether or not Cytek knew its products infringe or even knew of the Asserted Patents does not matter in determining direct infringement. Therefore, even if Cytek had no knowledge that it infringed, it could still infringe an Asserted Claim if an Accused Product nonetheless has each and every element of that claim.]  [**Cytek:** A party can directly infringe a patent without knowledge of the patent or without knowing that what the party is doing is patent infringement.][51]

---

[51] **Beckman Coulter:**  Beckman Coulter's proposal explains to the jury that knowledge or intent is not relevant to direct infringement.  *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760-761 n.2 (2011) ("a direct infringer's knowledge or intent is irrelevant"); *see also* United States District Court, Northern District of California, Model Patent Jury Instructions (Oct. 2019) at 11, *available at* https://cand.uscourts.gov/sites/default/files/documents/NDCA_Model_Patent_Jury _Instructions_erroneous-citation-omitted-10-28-24.pdf.  Cytek's proposal risks confusing the jury by stating a party merely "can" directly infringe without knowledge or intent, without stating that such knowledge or intent is *irrelevant* to direct infringement.

**Cytek:** Cytek's proposed language mirrors the 2025 AIPLA Model Patent Jury Instructions at § 3.1. Cytek's proposed language is more succinct and less argumentative than the one proposed by Beckman Coulter, while maintaining the substance of the instruction, that an accused infringer may infringer *regardless* of knowledge of a patent.

You must determine infringement with respect to each Asserted Claim individually.  However, a product can infringe a dependent claim only if the product meets all of the requirements of both the dependent claim and any other claims from which the dependent claim depends.  Because a dependent claim incorporates all of the features of the independent claim it refers to, if you find that an independent claim is not infringed, then [**Cytek:** you must find that][52] the claims that depend on that claim cannot be infringed.[53]

---

[52] **Cytek**:  Cytek's proposed language mirrors the 2025 AIPLA Model Patent Jury Instructions at § 3.5 ("If you find that [Independent Claim] from which [Dependent Claim] depends is not literally infringed, then *you must find that* [Dependent Claim] is also not literally infringed.") (emphasis added); *see also Shelbyzyme LLC v. Genzyme Corp.*, No. 1:09-cv-00768, D.I. 183 at § 3.6 (D. Del. July 13, 2012).  The additional language further clarifies to the jury the black letter law that "dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed." *Wahpeton Canvas Co., v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed.Cir.1989).

**Beckman Coulter:**  Cytek's proposed language departs from the *Globus* instruction on which this instruction is based.  *See Globus Medical, Inc. v. Life Spine*, *Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 4.3 (D. Del. Aug. 12, 2025) ("Because a dependent claim incorporates all of the features of the independent claim it refers to, if you find that an independent claim is not infringed, then the claims that depend on that claim cannot be infringed.").  Cytek's proposal is also unnecessary because the instruction states that "If you find that an independent claim is not infringed, then the claims that depend on that claim *cannot be infringed*."

[53] *Globus Medical, Inc. v. Life Spine*, *Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 4.3 (D. Del. Aug. 12, 2025).

### 5.3.    Literal Infringement of Means-Plus-Function Claims[54]

Claim 15 of the '443 Patent and claims 1, 3, 6, 23, and 26 of the '582 Patent each include what is known as a "means-plus-function" claim element.  Means-plus-function elements express a claim requirement by its function, rather than by any specific structure, and cover only those structures that the specification describes as corresponding to that function, as well as equivalents of those structures.

To establish that the Accused Products include a means-plus-function element, Beckman Coulter must prove by a preponderance of the evidence that the Accused Products:

1) Include a structure or a set of structures that perform(s) the identical functions recited in the claim; and

2) That structure or set of structures is either identical or equivalent to the structure or set of structures that the patent describes as corresponding to those functions, which I have set out for you in your claim construction chart.

Beckman Coulter contends that Cytek directly infringes all of the Asserted Claims.  Cytek contends that it does not directly infringe any of the Asserted Claims.

---

[54] Adapted from *Personal Audio LLC v. Google LLC*, 1:17-cv-01751-CFC, D.I. 886, at § 5.B (D. Del. Sept 12, 2023).

In deciding whether Beckman Coulter has proven that any Accused Product includes a structure that meets a means-plus-function element of the Asserted Claims, you must first decide whether the Accused Product has any structure that performs the [**Beckman Coulter**: specific] [**Cytek:** identical][55] functions identified in your claim construction chart.  If you find that an Accused Product does include a structure that performs the [**Beckman Coulter:** identified] [**Cytek:** identical][56]

---

[55] **Beckman Coulter:** Cytek's proposed language departs from the *Personal Audio* instructions on which this instruction is based.  *Personal Audio LLC v. Google LLC*, 1:17-cv-01751-CFC, D.I. 886, at § 5.B (D. Del. Sept 12, 2023) ("whether the accused product has any structure that performs the specific function identified in your claim construction chart.").

**Cytek**:   Cytek's proposed language clarifies to the jury that, under the well-established law, to prove literal infringement of a means-plus-function term, the structure must perform the ***identical*** function recited in the claim, not merely a specific function. *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 (Fed. Cir. 2006) ("Literal infringement of a means-plus-function claim limitation requires that the relevant structure in the accused device perform the identical function recited in the claim").

[56] **Beckman Coulter:** Cytek's proposed language departs from the *Personal Audio* instructions on which this instruction is based.  *Personal Audio LLC v. Google LLC*, 1:17-cv-01751-CFC, D.I. 886, at § 5.B (D. Del. Sept 12, 2023) ("If you find that an accused product does not include a structure that performs the identified function….").

49

functions, you must next decide whether the structure in the accused product is the same as or equivalent to the structure identified in your claim construction chart.

If an Accused Product does not perform the [**Beckman Coulter:** specific] [**Cytek:** identical][57] function recited in the claim, the means-plus-function requirement is not met, and the product does not infringe that claim literally. Alternatively, even if the Accused Product has a structure that performs the

---

**Cytek**:  Cytek's proposed language clarifies to the jury that, under the well-established law, to prove literal infringement of a means-plus-function term, the structure must perform the ***identical*** function recited in the claim, not merely a specific function. *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 (Fed. Cir. 2006) ("Literal infringement of a means-plus-function claim limitation requires that the relevant structure in the accused device perform the identical function recited in the claim").

[57] **Beckman Coulter:** Cytek's proposed language departs from the *Personal Audio* instructions on which this instruction is based.  *Personal Audio LLC v. Google LLC*, 1:17-cv-01751-CFC, D.I. 886, at § 5.B (D. Del. Sept 12, 2023) ("If the product does not perform the specific function recited in the claim….").

**Cytek**:  Cytek's proposed language clarifies to the jury that, under the well-established law, to prove literal infringement of a means-plus-function term, the structure must perform the ***identical*** function recited in the claim, not merely a specific function. *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 (Fed. Cir. 2006) ("Literal infringement of a means-plus-function claim limitation requires that the relevant structure in the accused device perform the identical function recited in the claim").

50

[**Beckman Coulter:** specific] [**Cytek:** identical][58] function recited in [**Beckman Coulter:** claim 15 of the '443 Patent, but the structure that performs the function is not identical or equivalent to the structure provided in the '443 Patent, the Accused Product does not infringe claim 15 of the '443 Patent literally.  Likewise, even if an Accused Product has a structure that performs the specific function recited in claim 1, 3, 6, 23, or 26 of the '582 Patent] [**Cytek:** the claim][59], but the structure that

---

[58] **Beckman Coulter:** Cytek's proposed language departs from the *Personal Audio* instructions on which this instruction is based.  *Personal Audio LLC v. Google LLC*, 1:17-cv-01751-CFC, D.I. 886, at § 5.B (D. Del. Sept 12, 2023) ("Alternatively, even if the product has a structure that performs the specific function….").

**Cytek**:   Cytek's proposed language clarifies to the jury that, under the well-established law, to prove literal infringement of a means-plus-function term, the structure must perform the ***identical*** function recited in the claim, not merely a specific function.  *Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 (Fed. Cir. 2006) ("Literal infringement of a means-plus-function claim limitation requires that the relevant structure in the accused device perform the identical function recited in the claim").

[59] **Beckman Coulter:**  Beckman Coulter's proposal is necessary to inform the jury which claims may be infringed under the doctrine of equivalents.

**Cytek**:  Cytek's proposed language is clearer and more helpful for the jury to understand the law.  The specific claims that Beckman Coulter asserts infringement under the doctrine of equivalents are provided on the verdict form.  Therefore, this recitation of the specific claims is redundant.  Moreover, Beckman Coulter's proposed language—including the addition of "literally" at the end of the first sentence—departs from the *Personal Audio* instructions on which this instruction is based.  *Personal Audio LLC v. Google LLC*, 1:17-cv-01751-CFC, D.I. 886, at § 5.B (D. Del. Sept 12, 2023) ("Alternatively, even if the product has a structure that performs the specific function recited in the claim . . . the product does not infringe the asserted claim.").

51

performs the function is not identical or equivalent to the structure provided in the [**Beckman Coulter:** '582 patent] [**Cytek:** patent][60], the Accused Product does not infringe [**Beckman Coulter:** 1, 3, 6, 23, or 26 of the '582 Patent] [**Cytek:** the Asserted Claim.][61]

The structure of an Accused Product is equivalent to a structure identified in the '443 or '582 Patents if a person of ordinary skill in the field of technology of the patent would consider the differences between the structure found in the product and

---

[60] **Beckman Coulter:** Beckman Coulter's proposal is necessary to inform the jury which claims may be infringed under the doctrine of equivalents.

**Cytek**: Cytek's proposed language is clearer and more helpful for the jury to understand the law. The specific claims that Beckman Coulter asserts infringement under the doctrine of equivalents is provided on the verdict form. Therefore, this recitation of the specific claims is redundant. Moreover, Beckman Coulter's proposed language departs from the *Personal Audio* instructions on which this instruction is based. *Personal Audio LLC v. Google LLC*, 1:17-cv-01751-CFC, D.I. 886, at § 5.B (D. Del. Sept 12, 2023) ("Alternatively, even if the product has a structure that performs the specific function recited in the claim. . .").

[61] **Beckman Coulter:** Beckman Coulter's proposal is necessary to inform the jury which claims may be infringed under the doctrine of equivalents.

**Cytek**: Cytek's proposed language is clearer and more helpful for the jury to understand the law. The specific claims that Beckman Coulter asserts infringement under the doctrine of equivalents is provided on the verdict form. Therefore, this recitation of the specific claims is redundant. Moreover, Beckman Coulter's proposed language departs from the *Personal Audio* instructions on which this instruction is based. *Personal Audio LLC v. Google LLC*, 1:17-cv-01751-CFC, D.I. 886, at § 5.B (D. Del. Sept 12, 2023) ("Alternatively, even if the product has a structure that performs the specific function recited in the claim. . .").

the structure identified in the patent to be insubstantial at the time the patent issued or if that person would have found the structure performed the [**Beckman Coulter:** specific functions] [**Cytek:** identical functions][62] in substantially the same way to achieve substantially the same result.  In deciding whether the differences would be "insubstantial," you may consider whether a person having an ordinary level of skill in the field of technology of the patent would have known the interchangeability of the two structures or sets of structures at the time the patent issued.  The fact that a structure or a set of structures is known to be equivalent today is not enough.  For the '443 Patent, the structure or set of structures must have been available at the time the '443 Patent issued:  July 18, 2023.  For the '582 Patent, the structure or set of structures must have been available at the time the '582 Patent issued:  June 25, 2019.

---

[62] **Beckman Coulter:** Cytek's proposed language departs from the *Personal Audio* instructions on which this instruction is based.  *Personal Audio LLC v. Google LLC*, 1:17-cv-01751-CFC, D.I. 886, at § 5.B (D. Del. Sept 12, 2023) ("would have found the structure performed the function in substantially the same way to achieve substantially the same result").

**Cytek:** Beckman Coulter's proposed language is an inaccurate recitation of the law. An equivalent structure must still perform the identical function in order to show literal infringement of a means-plus-function term.  *SPEX Techs., Inc. v. W. Digital Corp.*, 859 F. App'x 557, 560 (Fed. Cir. 2021) ("Literal infringement of § 112, ¶ 6 requires that the 'relevant structure in the accused device perform the identical function recited in the claim and be identical *or* equivalent to the corresponding structure in the specification.'") (emphasis added) (quoting *Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1267 (Fed. Cir. 1999)).

[**Beckman Coulter:** If you determine that a structure is not an equivalent to a structure in the Asserted Claims for purposes of literal infringement, an accused structure may still be infringed under the doctrine of equivalents, which I will describe shortly.][63]

The individual components or elements, if any, of an overall structure that I have defined for you as corresponding to a claimed function are not claim limitations by themselves.  Rather, the claim limitation is the overall structure corresponding to the claimed function.  Equivalence cannot be used to erase meaningful structural and functional limitations of the claim.  A substitute structure in the accused device with

---

[63] **Beckman Coulter:** Beckman Coulter's proposal is necessary to clarify to the jury that an accused structure can infringe "under the doctrine of equivalents if it performs substantially the same function in substantially the same way, to achieve substantially the same result." *Advanced Med. Optics, Inc. v. Alcon, Inc.*, 361 F. Supp. 2d 404 (D. Del. 2005); *see also Kemco Sales, Inc. v. Control Papers Co*, 208 F.3d 1352, 1364 (Fed. Cir. 2000) ("If an accused structure is not a section 112, paragraph 6 equivalent of the disclosed structure because it does not perform the identical function of that disclosed structure and hence does not literally infringe, it may nevertheless still be an "equivalent" under the doctrine of equivalents. Thus, if one applies the traditional function-way-result test, the accused structure must perform substantially the same function, in substantially the same way, to achieve substantially the same result, as the disclosed structure.").

**Cytek**: Beckman Coulter's proposed language is unnecessary and duplicative given that the jury will be instructed that "an Accused Product can infringe an Asserted Claim if it includes component parts that are equivalent to those elements of the claim that are not literally present in the Accused Product."  The verdict form also clarifies that there are two ways of finding infringement.

a different number of component parts may still be a structural equivalent if the structure as a whole complies with the requirements I have just described.

### 5.4. Direct Infringement – Infringement Under the Doctrine of Equivalents[64]

There are two types of direct infringement, literal infringement and infringement under doctrine of equivalents.  What I have explained to you so far is literal infringement.  If you decide that Cytek's Accused Products do not literally infringe an Asserted Claim, you must then decide whether it is more likely than not that an Accused Product infringes the Asserted Claim under what is called the "doctrine of equivalents."  Beckman Coulter contends that Cytek literally infringes and also infringes under the doctrine of equivalents.  Cytek contends that it does not infringe any of the Asserted Claims under the doctrine of equivalents.

Under the doctrine of equivalents, an Accused Product can infringe an Asserted Claim if it includes component parts that are equivalent to those elements of the claim that are not literally present in the Accused Product.  Here, Beckman Coulter asserts that the Accused Products include equivalents of various elements in the Asserted Claims.

---

[64] Unless otherwise indicated, adapted from *f'real Foods LLC v. Hamilton Beach Brands, Inc.*, 1:16-cv-00041-CFC, D.I. 307-1, at § 4.2.4 (D. Del. Sept. 30, 2019) and *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, Case 1:19-cv-00097-CFC CJB, D.I. 448 (D. Del. Aug. 4, 2022), § 4.

If an Accused Product literally lacks a certain element of an Asserted Claim, and has no equivalent to that missing element, then it cannot infringe the claim under the doctrine of equivalents.  Thus, in making your decision under the doctrine of equivalents, you must look at a particular element of the Asserted Claim and decide whether an Accused Product has an equivalent part.  In deciding whether a component part of an Accused Product is equivalent to a particular claim element, you may consider whether, at the time of the alleged infringement, persons of ordinary skill in the field would have known of the interchangeability of the accused component part with the particular element.  [**Beckman Coulter:** However, the known interchangeability between the particular element and the component part of the product is not necessary to find infringement under the doctrine of equivalents.]

[**Cytek:** While the known interchangeability between the particular element and the component part of the accused product is not necessary to find infringement under

the doctrine of equivalents, it is one factor to consider in deciding whether there is infringement under the doctrine of equivalents.][65]

To show infringement under the doctrine of equivalents, Beckman Coulter must show that the differences between the claim element and a corresponding aspect of the Accused Products are insubstantial.  One way to determine this is to look at whether or not the corresponding aspect of the Accused Product performs substantially the same function, in substantially the same way, to achieve substantially the same result as the element in the claimed invention.

---

[65] **Beckman Coulter:**  Beckman Coulter's proposed language aligns with this Court's instruction in *f'real Foods LLC v. Hamilton Beach Brands, Inc. See* 1:16-cv-00041-CFC, D.I. 307-1, at § 4.2.4 (D. Del. Sept. 30, 2019) ("However, the known interchangeability between the particular element and the component part of the accused product is not necessary to find infringement under the doctrine of equivalents."). Beckman Coulter's proposed language is also consistent with Federal Circuit law. *See, e.g., Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*, 467 F.3d 1370, 1382 (Fed. Cir. 2006) ("Lastly, we reject Mayne's argument that the lack of known interchangeability between edetate and DTPA as an antimicrobial agent mandates the conclusion that the accused product does not infringe under the doctrine of equivalents. … As stated in Warner–Jenkinson, known interchangeability is only one factor to consider in a doctrine of equivalents analysis."). Beckman Coulter's proposal will also prevent juror confusion about the standard for infringement under the doctrine of equivalents.

**Cytek**:  Beckman Coulter's proposed language provides a one-sided argumentative instruction.  Cytek's proposed language provides a more accurate and complete recitation of the law. *See, e.g., Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*, 467 F.3d 1370, 1382 (Fed. Cir. 2006) ("As stated in *Warner–Jenkinson*, known interchangeability is only ***one factor to consider*** in a doctrine of equivalents analysis.").

57

For means-plus-function terms, a structure may infringe under the doctrine of equivalents even if it does not literally infringe if the accused structure performs substantially the same function, in substantially the same way, to achieve substantially the same result, as the disclosed structure.

[**Beckman Coulter:** During the trial, you heard evidence about Cytek's patents. The fact that Cytek has its own patents does not prevent the Accused Products from having components that are equivalent to elements of Beckman Coulter's Asserted Claims for purposes of infringement under the doctrine of equivalents.][66]

---

[66] **Beckman Coulter:** Cytek should be precluded from presenting evidence about its own patents and patent applications, which are irrelevant to the issues in this case and would only serve to confuse the jury. *Supra* n.41. Beckman Coulter proposes this instruction only in the event the jury is permitted to hear evidence regarding Cytek's patents and patent applications. *See Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324 (Fed. Cir. 2000) ("it is well established that separate patentability does not avoid equivalency as a matter of law").

Application of the doctrine of equivalents is on an element-by-element basis. The question is not whether the Accused Product as a whole is equivalent to the claimed invention as a whole. In other words, for a product to infringe an Asserted Claim under the doctrine of equivalents, the element of the Asserted Claim which is not literally found in the Accused Product must contain an equivalent for each element of the claim that is not literally present in the Accused Product.

---

**Cytek**: The issue of whether Cytek should be precluded from presenting evidence or argument regarding Cytek's patents is subject to Beckman Coulter's pending MIL No. 1, which Cytek opposes. As explained in Cytek's opposition to Beckman Coulter's pending MIL No. 1, Cytek intends to rely on the *prosecution history* of its own patents, not merely on the fact that Cytek has its own patents. Cytek's patent's prosecution history is directly probative to many of its defenses, including its written description and RDOE arguments. *See Salazar*, 414 F.3d at 1347; *Sprint Commc'ns*, 2021 WL 982729, *7-9. Moreover, contrary to Beckman Coulter's assertions, Cytek does not argue noninfringement—either literal or under the doctrine of equivalents—based on mere comparison between the content of Cytek's patents and the Asserted Claims or on mere existence of Cytek's patents. Given the intended use of Cytek's patents, this instruction has the danger to confuse the jury by implying an argument that Cytek is not making and is thus prejudicial. Furthermore, this language does not appear in the 2025 AIPLA Model Patent Jury Instructions, the Northern District of California, Model Patent Jury Instructions, or any other jury instructions approved by this Court.

59

### 5.5.    Non-Infringement under the Reverse Doctrine of Equivalents[67]

The doctrine of equivalents can also be used to negate a finding of infringement.  This is sometimes called the "reverse doctrine of equivalents."  Under this doctrine, an Accused Product that meets all the limitations of an Asserted Claim nevertheless does not infringe if the Accused Product is so far changed in principle from the patented invention that it performs the same or a similar function in a substantially different way.  That determination must be made against the context of

---

[67] **Cytek:**  Cytek's proposed language is adapted from *Steuben Foods, Inc. v. Shibuya Hoppmann Corp. et al.*, No. 1:19-cv-02181-CFC, D.I. 784 at § 4 (D. Del. Nov. 18, 2021), *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1:19-cv-00097-CFC CJB, D.I. 448 at §4 (D. Del. Aug. 4, 2022), and *Maquet Cardiovascular LLC v. Abiomed, Inc. et al.*, No. 1:17-cv-12311-FDS, D.I. 784 (Trial Tr. (Day 10)) at 153:6-17 (D. Mass. May 27, 2026); *see also Maquet Cardiovascular LLC v. Abiomed, Inc. et al.*, --- F. Supp. 3d ----, 2026 WL 1217150 (D. Mass. May 4, 2026) (holding that the reverse doctrine of equivalents is a viable defense for the jury to decide); *see also* D.I. 367; *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1123 (Fed. Cir. 1985); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950).  This Court has already rejected Beckman Coulter's motion for summary judgment against Cytek's RDOE defense.  *See* D.I. 367.  Therefore, this instruction is proper and necessary.  As this Court properly found, the Supreme Court held that § 271(a) left intact the entire body of case law on direct infringement and rejected the argument that the doctrine of equivalents, as set out in *Graver Tank* in 1950, did not survive the 1952 revision of the Patent Act.  *Id.*, at 4 (citations and quotation marks omitted).

**Beckman Coulter:** For the reasons given in Beckman Coulter's motion for summary judgment against Cytek's reverse doctrine of equivalents defense, Beckman Coulter preserves the argument that the reverse doctrine of equivalents did not survive the Patent Act of 1952 and that, in any event, Cytek's application of the doctrine is legally flawed.  *See* D.I. 234, 246, 326; *see also Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, 127 F.4th 348, 357 (Fed. Cir. 2025).

60

the patent, the prior art, and the particular circumstances of this case.  [**Beckman Coulter:**  However, in evaluating the principle of the claimed invention, it is improper to limit the claimed invention to the preferred embodiments disclosed in the patents.  Further, once Beckman Coulter has proven that Cytek directly infringes, Cytek bears the burden to show non-infringement under the reverse doctrine of equivalents.][68] [**Cytek:** Here, Cytek asserts that the Accused Products do not infringe

---

[68] **Beckman Coulter:** Beckman Coulter's proposal is necessary to prevent Cytek from misleading the jury into believing that claims may be limited to preferred embodiments or that Beckman Coulter bears the burden to prove that that the accused products do not escape infringement under the reverse doctrine of equivalents. *See Ciena Corp. v. Corvis Corp.*, 334 F. Supp. 2d 598, 605 (D. Del. 2004) (rejecting proposed "formulation of the principle of the claimed invention is an impermissible attempt to limit the claimed invention to the preferred embodiments disclosed in the patents"); *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1377-1378 (Fed. Cir. 2008) ("While the patentee bears the burden of proving infringement, if the patentee establishes literal infringement, the burden shifts to the accused infringer to set forth a prima facie case of non-infringement under the reverse doctrine of equivalents. If the accused infringer is successful in making a prima facie case, the patentee must then rebut that prima facie case."). While Cytek contends it is not seeking to limit the claims to preferred embodiments, Cytek's expert, Dr. Ilkov, relies on expressly non-limiting embodiments to, for example, argue that a "requirement" of the claims is "an initially collimated beam." D.I. 246 at 10.  For the reasons given in Beckman Coulter's motion for summary judgment against Cytek's reverse doctrine of equivalents defense, Beckman Coulter preserves the argument that the reverse doctrine of equivalents did not survive the Patent Act of 1952 and that, in any event, Cytek's application of the doctrine is legally flawed. *Supra* n.18.

61

the Asserted Claims of the '443 and '107 Patents because, under the reverse doctrine

of equivalents, the Accused Products are fundamentally different from the

embodiments of the Asserted Claims in the '443 and '107 Patents.][69]

---

**Cytek**: Beckman Coulter's proposed language invites unnecessary confusion.  First, Cytek's RDOE position does not rest on limiting the claimed invention to the preferred embodiments, as briefed in Cytek's opposition to Beckman Coulter's now-denied Motion for Summary Judgment No. 1. Cytek and its expert rely on numerous disclosures from the shared specification of the Asserted Patents for the understanding of the operating principle of the Asserted Patents, not merely the preferred embodiments.  As Cytek briefed in its opposition, RDOE requires establishing the "principle" or "equitable scope of the claims" of the patented invention in "light of the specification, the prosecution history, and the prior art." *Scripps Clinic & Rsch. Found. v. Genentech, Inc.*, 927 F.2d 1565, 1581 (1991). BEC's reliance on *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372 (Fed. Cir. 2008) is misplaced. There, the expert defined the principle of operation for asserted claims by factual details that were entirely absent from "the claims, specification, or prosecution history." *Id.* at 1378-79. Second, Beckman Coulter's language omits the fact that Beckman Coulter carries the initial *prima facie* burden to prove literal infringement.  *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1123 (Fed. Cir. 1985).  It is only after Beckman Coulter makes that showing does Cytek need to respond with its *prima facie* evidence for RDOE.  *Id.* at 1124.  The burden of persuasion on infringement always rests with Beckman Coulter.  *Id.* at 1123-24.

[69] **Cytek**:  Cytek's proposed "fundamentally different" language is an accurate recitation of the law of reverse doctrine of equivalents.  *See SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1124 (Fed. Cir. 1985) (the reverse doctrine of equivalents determines "whether a product has been so far changed in principle that it performs the same or similar function in a substantially different way").  Moreover, this language is adapted from *Nielsen Co. (US), LLC v. TVision Insights, Inc.*, No. 1:22-00057-CJB, D.I. 526, at §4.3 (D. Del. June 11, 2026) ("Under this doctrine, TVision must prove that the accused product or process, although literally falling within the scope of the patent claim, is so fundamentally different from the patented invention that, in substance and purpose, the accused product does not appropriate the patented invention.").

**5.6.**  **Induced Infringement**[70]

Beckman Coulter also alleges that Cytek actively induces its customers to directly infringe the Asserted Claims.  Cytek contends that it does not induce infringement of any Asserted Claim.

Cytek is liable for induced infringement of the Asserted Claims if Beckman Coulter proves by a preponderance of the evidence that:

[**Beckman Coulter:**

1) Cytek took active steps to encourage infringement of the Asserted Patents;

2) Cytek's customers directly infringed the Asserted claims;

3) Cytek knew of the infringed Asserted Patents, or showed willful blindness to the existence of the infringed Asserted Patents, before the infringement;

---

**Beckman Coulter:**  Cytek's proposed language departs from the *Steuben* instruction on which this instruction is based, which did not use Cytek's "fundamentally different" language. *Steuben Foods, Inc. v. Shibuya Hoppmann Corp. et al.*, No. 1:19-cv-02181-CFC, D.I. 784 at § 4 (D. Del. Nov. 18, 2021).  Beckman Coulter preserves its argument that reverse doctrine of equivalents is not a defense to infringement. *Supra* n.18.  If Cytek's proposal is adopted, Beckman Coulter respectfully requests that the instruction be modified to read "Beckman Coulter contends that Cytek's products infringe."

[70] Unless otherwise indicated, adapted from *Orexo AB v. Actavis Elizabeth LLC*, 1:17-cv-00205-CFC, D.I. 270, at § 3.6 (D. Del. Mar. 28, 2019).

4) Cytek knew, or showed willful blindness, that the actions of its customers would infringe at least one Asserted Claim.]

[**Cytek:**    1) Cytek's customers directly infringed the Asserted Claims;

2) Cytek took action to encourage its customers to directly infringe the Asserted Claims;

3) Cytek knew of the Asserted Patents and Cytek knew that the induced actions, if taken, would constitute direct infringement, or Cytek believed that there was a high probability that the actions taken by its customers constituted direct infringement and took deliberate steps to avoid learning of that infringement; and

4) Cytek's alleged inducement as opposed to other factors, actually caused its customers to directly infringe.][71]

---

[71] **Beckman Coulter:** Cytek's instructions depart from the *Orexo* instruction on which this instruction is based. *Orexo AB v. Actavis Elizabeth LLC*, 1:17-cv-00205-CFC, D.I. 270, at § 3.6 (D. Del. Mar. 28, 2019). Cytek identifies no instructions used by this Court that contain Cytek's proposed language. Additionally, Cytek's "as opposed to other factors" language is also contrary to law because the Federal Circuit has rejected the proposition that the inducing acts need to be the only factor causing the direct infringement. *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1335 (Fed. Cir. 2016) (rejecting argument that defendant did not induce infringement because plaintiff "failed to establish a nexus between [defendant's] allegedly inducing acts and the acts of the direct infringer"). Cytek's proposal also improperly omits reference to willful blindness.

64

The mere knowledge of possible infringement by others does not amount to inducement.  Rather, Beckman Coulter must prove that Cytek took affirmative [**Cytek:** as opposed to passive][72] steps to bring about the desired result of direct infringement, and acted with specific intent to cause acts that constitute direct infringement and must have known that its actions would cause the direct

---

**Cytek:** Cytek's instructions are adapted from *Glaxosmithkline LLC v. Teva Pharms. USA, Inc.*, No. 1:14-cv-00878-GBW-CJB, D.I. 440, at § 4.2 (D. Del. June 19, 2017), where induced (and direct) infringement and willful infringement were the only infringement issues tried to the jury.  *See also Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 146 S. Ct. 1391, 1398 (2026).  "Willful blindness" does not appear in either *Glaxosmithkline* or *Hikma*, and Beckman Coulter has not explained why it is necessary to add reference to that phrase.  Beckman Coulter mischaracterizes the holding of *Power Integrations*.  There, the issue was whether circumstantial evidence, as opposed to direct evidence, presented at trial was sufficient to support the jury's finding of induced infringement.  *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1335 (Fed. Cir. 2016) ("While none of this evidence can be directly linked to the particular . . . acts of direct infringement, it was sufficient to allow the jury to find that Fairchild had induced its customers . . . to infringe as a class. This is all that we require.").  To the contrary, the "as opposed to other factor" language has been approved by this District.  *See, e.g., Cirba Inc. v. VMWare, Inc.*, No. 1:19-cv-00742-LPS, D.I. 526, at § 4.3 (D. Del. Jan. 22, 2020); *GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, No. CV 14-878-LPS-CJB, D.I. 440, at § 4.2 (D. Del. June 19, 2017).

[72] **Cytek:**  Cytek's proposed language is directly from the recent Supreme Court opinion concerning induced infringement.  *See also Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 146 S. Ct. 1391, 1400 (2026).  The language is necessary to appropriately instruct the jury that an affirmative action cannot include any passive act.

**Beckman Coulter:**  Cytek's proposed language is not necessary as the jury will be instructed that Cytek must take "affirmative" steps.

infringement, or believed there was a high probability that its actions would cause the direct infringement but deliberately avoided confirming that belief.   The necessary inducement can be implicit or explicit, but[73] must be clear to Cytek's customers.

[**Beckman Coulter:**  A belief in the invalidity of a patent is not a defense to induced infringement.][74]

---

[73] Adapted from *Personal Audio v. Google*, 1:17-cv-01751-CFC, D.I. 806, at § 7 (D. Del. Mar. 5, 2023); *see also Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 146 S. Ct. 1391, 1398 (2026).

**Beckman Coulter:**  To the extent this instruction is given using the "clear" language from Hikma, the jury should be given the additional context that inducement can be "implicit or explicit.  *See Hikma*, 146 S. Ct. at 1401 (2026) ("But implicit or explicit, the necessary inducement must be "clear" to the relevant audience and "affirmative.").

[74] **Beckman Coulter:**  Beckman Coulter's proposed language is necessary to prevent juror confusion about whether a purported belief in invalidity is relevant to inducement.  Under Supreme Court case law, it is not. *Comil USA LLC v. Cisco Systems*, 575 U.S. 632, 642 (2015) ("And because infringement and validity are separate issues under the Act, belief regarding validity cannot negate the scienter required under § 271(b)."). Further, Cytek's reference to willfulness makes no sense, as that will occur in Phase II.

**Cytek**:  Beckman Coulter's proposed language is improperly argumentative and highly prejudicial, especially given the irrelevance of the instruction.  Cytek will not argue that Cytek's subjective belief of invalidity is proof of no induced infringement. Therefore, this is not a question at issue in this case.  Moreover, this poses the danger of confusing the jury particularly because the subjective belief of invalidity is relevant to a distinct issue of willful infringement, an issue that is separately presented to the jury.

[**Beckman Coulter:** In considering whether Cytek actively intended to induce infringement, you may consider whether Cytek copied or reverse engineered Beckman Coulter's claimed invention.][75]

---

[75] **Beckman Coulter:** Beckman Coulter's instruction will help the jury understand the standard for indued infringement. *See Sonos v. D&M Holdings*, 2017 WL 5633204, at *2 (D. Del. Nov. 21, 2017) ("copying or reverse engineering … generally admissible" as relevant to "inducement of infringement" or "willful infringement"); *Power Integrations v. Fairchild Semiconductor Int'l*, 843 F.3d 1315, 1333 (Fed. Cir. 2016) ("culture of copying" relevant to inducement); *Digital Reg of Texas v. Adobe*, 2014 WL 4090550, at *8 (N.D. Cal. Aug. 19, 2014) ("evidence supporting … copying" "relevant" to "induced infringement"); *Motio v. BSP Software*, 2016 WL 4430452, at *5 (E.D. Tex. Aug. 22, 2016) (copying supported whether defendant "possessed the intent to cause infringement."). Cytek's position also improperly assumes a fact in dispute—whether Cytek has a culture of copying. The jury is entitled to make this determination for itself. And for the reasons briefed in Beckman Coulter's opposition to Cytek's pending MIL 2, evidence of copying is relevant and would not be unduly prejudicial.

**Cytek**: Beckman Coulter's proposed language is improperly argumentative and highly prejudicial. Merely because evidence *may be* relevant does not mean such evidence is admissible. Indeed, "there is significant prejudice associated with [copying] evidence, as a jury may use evidence of copying to unfairly conclude that Defendant's products infringe the patents-in-suit." *Sonos, Inc. v. D&M Holdings Inc.*, No. CV 14-1330-WCB, 2017 WL 5633204, at *3 (D. Del. Nov. 21, 2017) (internal citation omitted). *Power Integrations* does not apply because Beckman Coulter has fallen far short of proving any "culture" of copying, let alone a single instance of copying. For the reasons briefed in Cytek's pending MIL No. 2, such evidence is highly prejudicial and irrelevant and should not be presented to the jury in connection with Beckman Coulter's infringement case-in-chief. Moreover, Beckman Coulter has not identified any jury instructions approved by this Court that has this language.

### 5.7.  Infringement by Supply of All or a Substantial Portion of the Components of a Patented Invention to Another Country (§ 271(f)(1))[76]

Beckman Coulter also alleges that Cytek infringes claims 11 and 15 of the '443 Patent and Claims 5, 16, 18, 26, 27, and 29 of the '107 Patent by supplying, or causing to be supplied, all or a substantial portion of the components of the patented product from the United States to another country and actively inducing the assembly of those components into a product that would infringe those claims if they had been assembled in the United States.  This is also referred to as "infringement under Section 271(f)(1)," because the statute governing this kind of infringement is 35 U.S.C. § 271(f)(1).  Cytek contends that it does not infringe under Section 271(f)(1).

---

[76] Adapted from 2025 AIPLA Model Patent Jury Instructions at 19§ 3.9; and *Integra Lifesciences Corp. et al. v. HyperBranch Medical Technology, Inc.*, No. 1:15-cv-00819-LPS, D.I. 749 at § 4.3 (D. Del. June 7, 2018); *see also* 35 U.S.C.§ 271(f)(1) ("Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer."); *Life Techs. Corp. v. Promega Corp.*, 580 U.S. 140, 149 (2017) ("Accordingly, we conclude that a quantitative interpretation hews most closely to the text of the statute and provides an administrable construction. … [W]e must next decide whether, as a matter of law, a single component can ever constitute a 'substantial portion' so as to trigger liability under § 271(f)(1). The answer is no.").

To show infringement under Section 271(f)(1), Beckman Coulter must prove that each of the following is more likely than not:

1) An Accused Product, as it was intended to be assembled outside the United States, included all elements of at least one of claims 11 or 15 of the '443 Patent or Claims 5, 16, 18, 26, 27, and 29 of the '107 Patent;

2) Cytek supplied, or caused to be supplied, components from the United States that made up all or a substantial portion of the invention of any one of claims 11 or 15 of the '443 Patent or Claims 5, 16, 18, 26, 27, and 29 of the '107 Patent; and

3) Cytek specifically intended to actively induce the combination of the components into a product that Cytek knew would infringe claims 11 or 15 of the '443 Patent or Claims 5, 16, 18, 26, 27, and 29 of the '107 Patent if the components had been combined in the United States.

The "substantial portion of the components" requirement in 2) above requires a quantitative, not a qualitative, assessment of the supplied components as compared to the overall components in the claimed invention. To export a single component of a multi-component invention cannot create liability under § 271(f)(1).

[**Cytek:** The "specifically intended to actively induce" requirement in 3) above depends upon the same legal requirements of active inducement under

69

§ 271(b).[77]  In other words, Beckman Coulter must prove that Cytek had knowledge

of the asserted patents and knew that the combination of components abroad would

_____

[77] **Cytek:** Cytek's proposed language instructs the jury that § 271(f)(1) requires that the components be supplied "in such manner as to actively induce" their combination abroad.  35 U.S.C. § 271(f)(1); *Confluent Surgical, Inc. v. Hyperbranch Med. Tech., Inc.*, No. CV 17-688-LPS-CJB, 2017 WL 4804264, at *1 (D. Del. Oct. 25, 2017), *adopted*, 2017 WL 11556764 (D. Del. Nov. 13, 2017).  "[A]s it relates to the required acts of inducement of direct infringement," Section 271(f)(1) "includes the same legal requirements as does Section 271(b)."  *TriDiNetworks Ltd. v. NXP-USA, Inc.*, No. CV 19-1062-CFC-CJB, 2020 WL 2514086, at *2, n.3 (D. Del. May 15, 2020); *Sartorius Bioanalytical Instruments, Inc. v. Gator Bio, Inc.*, No. 5:22-CV-01417-EJD, 2026 WL 473295, at *9 (N.D. Cal. Feb. 19, 2026) ("Sections 271(f)(1) and (f)(2) mirror the induced and contributory infringement provisions under §§ 271(b) and (c), respectively[.]").  Further, "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement."  *Dialect, LLC v. Amazon.com, Inc.*, No. 1:23-cv-00581-DJN, 2024 WL 4010111, at *4 (E.D. Va. Aug. 30, 2024) (quoting *Glob-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 771 (2011)) ("[B]asic principles of statutory interpretation strongly support giving the phrase 'actively indue' the same meaning in both § 271(b) and §271(f)(1). . . . The Court accordingly concludes that the scienter requirement described in *Global-Tech*—knowledge of infringing nature or willful blindness thereto—applies to § 271(f)(1).").

**Beckman Coulter:**  Cytek's proposed language is not in the instructions upon which this instruction is based and is unnecessary because the instructions already state that Beckman Coulter must prove that "Cytek specifically intended to induce the combination of the components into a product that would infringe."

70

directly infringe, not merely that Cytek had knowledge that the components would be combined outside the United States].[78]

### 5.8. Contributory Infringement[79]

Beckman Coulter asserts that Cytek is liable for contributory infringement by contributing to the direct infringement of claims 11 and 15 of the '443 Patent and claims 5, 16, 18, 26, 27, and 29 of the '107 Patents by Cytek's customers. Cytek

---

[78] **Cytek:** Cytek's proposed language provides the necessary legal context to the jury that in assessing the "specific intent" element under § 271(f)(1), the jury must use the same standard as explained in induced infringement. *Symantec Corp. v. Comput. Assocs. Int'l, Inc.*, 522 F.3d 1279, 1292-93 (Fed. Cir. 2008) (quoting *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed.Cir.2006)). "Induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement." *Dialect, LLC v. Amazon.com, Inc.*, No. 1:23-cv-00581-DJN, 2024 WL 4010111, at *4 (E.D. Va. Aug. 30, 2024) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 771 (2011)) ("[B]asic principles of statutory interpretation strongly support giving the phrase 'actively induce' the same meaning in both § 271(b) and §271(f)(1). . . . The Court accordingly concludes that the scienter requirement described in *Global-Tech*—knowledge of infringing nature or willful blindness thereto—applies to § 271(f)(1)."). "Willful blindness" does not appear in either *Glaxosmithkline* or *Hikma*, and Beckman Coulter has not explained why it is necessary to add reference to that phrase.

**Beckman Coulter:** Cytek's proposed language is not in the instructions on which this instruction is based and is unnecessary because the instructions already state that Beckman Coulter must prove that "Cytek specifically intended to induce the combination of the components into a product that would infringe." Moreover, Cytek's proposal incorrectly leaves out willful blindness. To the extent Cytek's proposed language is accepted, it should be modified to include instructions on willful blindness.

[79] Unless otherwise indicated, adapted from *Orexo AB v. Actavis Elizabeth LLC*, 1:17-cv-00205-CFC, D.I. 270, at § 3.7 (Mar. 28, 2019).

contends that it has not contributed to infringement by its customers.  Cytek is liable for contributory infringement of the Asserted Claims if Beckman Coulter proves by a preponderance of the evidence that:

1) Cytek's customers using the Accused Products have directly infringed the Asserted Claims.

2) Cytek sold, offered for sale, or imported within the United States a component of the infringing product;

3) The component is not a staple article or commodity of commerce capable of substantial non-infringing use;

4) The component constitutes a material part of the claimed inventions; and

5) Cytek knew about the Asserted Patents and that the component was especially made or adapted for use in a product [**Cytek**: Cytek knew was infringing].[80]

A "staple article or commodity of commerce capable of substantial non-infringing use" is something that has uses other than as a part or component of the patented product, and those other uses are not occasional, farfetched, impractical, or experimental.

Beckman Coulter can establish Cytek knew that it contributed to the direct infringement of the Asserted Patents by showing that Cytek (1) subjectively believed

---

[80] **Cytek:** Cytek's proposed language provides the necessary legal context to the jury that that "Section 271(c) 'require[s] a showing that the alleged contributory infringer knew that the combination for which his component was especially designed was both patented and infringing.'" *WesternGeco LLC v. ION Geophysical Corp.*, 2012 WL 2568167, at *4 (S.D. Tex. June 29, 2012) (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964)); *Veeco Instruments Inc. v. SGL Carbon, LLC*, No. 17-CV-2217 (PKC), 2017 WL 5054711, at *22 (E.D.N.Y. Nov. 2, 2017) (adopting the *WesternGeo* standard under § 271(f)(2)). "Section 271(f)(2) requires a plaintiff to prove that the defendant (1) intended the combination of components; (2) knew that the combination he intended was patented; and (3) knew that the combination he intended would be infringing if it occurred in the United States." *Id.* "Willful blindness" does not appear in either *Glaxosmithkline* or *Hikma*, and Beckman Coulter has not explained why it is necessary to add reference to that phrase.

**Beckman Coulter:** Beckman Coulter does not disagree that contributory infringement has a knowledge requirement, but opposes this instruction for omitting willful blindness.

that there was a high probability that a patent existed covering the accused products and (2) took deliberate actions to avoid learning of the patent.[81]

### 5.9. Infringement by Supply of Components Especially Made or Adapted for Use in the Patented Invention in Another Country (§ 271(f)(2))[82]

Beckman Coulter asserts that Cytek infringes claims 11 and 15 of the '443 Patent and claims 5, 16, 18, 26, 27, and 29 of the '107 Patent by supplying or causing to be supplied components of a claimed invention of the Asserted Patents from the United States into a foreign country. This is also referred to as "infringement under Section 271(f)(2)," because the statute that governs the infringement is called 35 U.S.C. § 271(f)(2). Cytek contends that it does not infringe under Section 271(f)(2).

---

[81] *Integra Lifesciences Corp. et al. v. HyperBranch Medical Technology, Inc.*, No. 1:15-cv-00819-LPS, D.I. 749 at § 4.4 (D. Del. June 7, 2018).

[82] Adapted from the 2025 AIPLA Model Patent Jury Instructions at § 3.11; and *Integra Lifesciences Corp. et al. v. HyperBranch Medical Technology, Inc.*, No. 1:15-cv-00819-LPS, D.I. 749 at § 4.5 (D. Del. June 7, 2018); *see also* 35 U.S.C. § 271(f)(2) ("Whoever without authority supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer."); *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1257 (Fed. Cir. 2000) ("On its face, § 271(f)(2) imposes liability only on those who 'supply' or 'cause to supply' any component of a patented invention.").

To show infringement under Section 271(f)(2), Beckman Coulter must prove that each of the following is more likely than not:

1) Cytek actually supplied the components from the United States into a foreign country or caused them to be supplied from the United States to a foreign country;

2) Cytek knew or should have known that the components were especially made or adapted for use in a product that infringes claims 11 or 15 of the '443 Patent or claims 5, 16, 18, 26, 27, and 29 of the '107 Patent;

3) Those components have no substantial non-infringing use; and

4) Cytek intended for the components to be combined into that product. It is not necessary for you to find that the components actually were combined into an infringing product, as long as you find that Cytek intended the components to be combined into a product that would have infringed a claim of an Asserted Patent if they had been combined in the United States.

[**Cytek:** The knowledge requirement in 2) above includes the equivalent legal requirements under § 271(c).][83]  [**Cytek:** In other words, Beckman Coulter must show that Cytek knew that the intended combination was patented and knew that the combination would be infringing.  Additionally, under the intent requirement in 4)

---

[83] **Cytek:**  Cytek's proposed language provides the necessary legal context to the jury that in assessing the "knowledge" element under § 271(f)(2), the jury must use the same standard as explained in contributory infringement.  *Sartorius Bioanalytical Instruments, Inc. v. Gator Bio, Inc.*, No. 5:22-CV-01417-EJD, 2026 WL 473295, at *9 (N.D. Cal. Feb. 19, 2026) ("Sections 271(f)(1) and (f)(2) mirror the induced and contributory infringement provisions under §§ 271(b) and (c), respectively[.]").

**Beckman Coulter:**  Cytek's proposal is unnecessary because element 2 in the instructions already says Beckman Coulter must prove that "Cytek knew or should have known that the components were especially made or adapted for use in a product that infringes."  Moreover, the instruction is inaccurate because the relevant knowledge under § 271(f)(2) is different, including because there is no infringing product in the United States under § 271(f)(2).  Rather, as the instructions already explain, § 271(f)(2) focuses on a combination of components that "would have infringed a claim of an Asserted Patent if they had been combined in the United States."

above, Beckman Coulter must show that Cytek intended the combination of components.][84]

In the context of Section 271(f)(2), a substantial use of an accused feature is one that is not occasional, farfetched, impractical, experimental, or hypothetical.

## 6. INVALIDITY

### 6.1. Summary of Invalidity Defense[85]

Patent invalidity is a defense to patent infringement. Cytek contends that the Asserted Claims are invalid. Beckman Coulter contends that all Asserted claims are valid.

---

[84] **Cytek:** Cytek's proposed language provides the necessary legal context to the jury that in assessing the "knowledge" and "intent" elements under § 271(f)(2), the jury must use the same standard as explained in contributory infringement. *WesternGeco LLC v. ION Geophysical Corp.*, 2012 WL 2568167, at *4 (S.D. Tex. June 29, 2012) (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964)); *Veeco Instruments Inc. v. SGL Carbon, LLC*, No. 17-CV-2217 (PKC), 2017 WL 5054711, at *22 (E.D.N.Y. Nov. 2, 2017) (adopting the *WesternGeo* standard under § 271(f)(2)). "Willful blindness" does not appear in either *Glaxosmithkline* or *Hikma*, and Beckman Coulter has not explained why it is necessary to add reference to that phrase.

**Beckman Coulter:** Cytek's proposal is unnecessary because element 4 in the instructions already states that Beckman Coulter must prove that "Cytek intended the components to be combined into a product that would have infringed a claim of an Asserted Patent if they had been combined in the United States." Moreover, Cytek's proposal incorrectly leaves out willful blindness. To the extent Cytek's proposed language is accepted, it should be modified to include instructions on willful blindness.

[85] Adapted from *Deere & Co. v. AGCO Corp. Precision Planting LLC*, 1:18-cv-00827-CFC-JLH, D.I. 535-1, at § 5 (D. Del. Mar. 28, 2023).

Cytek must prove invalidity by clear and convincing evidence.  As a reminder, clear and convincing evidence is evidence that produces a high probability that a fact is true.  This is a higher standard than the "preponderance of the evidence" standard that is used for infringement but lower than the "proof beyond a reasonable doubt" standard.

[**Cytek:**  Claims of an issued patent may be found to be invalid.  Thus, you must determine whether each of the Asserted Patent Claims is invalid.

Cytek contends that the Asserted Patent Claims are invalid for the following reasons:

1. claims 6, 11, and 15 of the '443 Patent are anticipated;

2. all Asserted Claims are obvious;

3. claims 1, 3, 6, 23, and 26 of the '582 Patent, claim 10 of the '443 Patent, and claim 5 and 29 of the '107 Patent are indefinite;

4. all Asserted Claims lack written description support;

5. all Asserted Claims are not enabled.

I will now instruct you in more detail why Cytek alleges that the Asserted Patent Claims are invalid.][86]

---

[86] **Cytek:** Cytek's proposed language proposal adheres to the 2025 AIPLA Model Patent Jury Instructions, and which Beckman Coulter does not allege is an incorrect recitation of the law. *See* 2025 AIPLA Model Patent Jury Instructions, Section V(4.0). The proposed language offers a helpful roadmap to the jury concerning the invalidity issues in this case, similar to what the parties have agreed to include for infringement. *See supra* Section 5.1 (Patent Infringement Generally). It is not redundant or duplicative. Indeed, the proposed language mirrors that used by other courts in this District. *E.g.*, *Integra Lifesciences Corp. et al. v. HyperBranch Medical Technology, Inc.*, No. 1:15-cv-00819-LPS, D.I. 749 at § 5 (D. Del. June 7, 2018). There is no risk of jury confusion, including because Cytek has specifically identified which claims are subject to which of Cytek's invalidity contentions. Separately, Beckman Coulter's proposed additional language ("Claims of an issued patent may be found to be invalid, but all issued claims are presumed to be valid" *and* "Beckman Coulter contends that all Asserted Claims are valid and non are anticipated or obvious and all Asserted Claims have sufficient written description, are definite, and are enabled") is unnecessary and duplicative. For example, the first paragraph in this section already states "Beckman Coulter contends that all Asserted claims are valid," and the "clear and convincing" burden of proof is already included, obviating the need to restate that patents are presumed valid. This language does not appear in the AIPLA model, and Beckman Coulter does not cite any model or court-approved jury instruction in support of its proposed additions.

### 6.2.  Invalidity of Independent and Dependent Claims[87]

As I stated earlier, there are two different types of asserted claims.  One type of claim is called an independent claim.  The other type of claim is called a dependent claim.

You must evaluate the invalidity of each Asserted Claim separately.  Even if an independent claim is invalid, this does not mean that the dependent claims that depend from it are automatically invalid.  Rather, you must consider the validity of each claim, separately.  You must decide this issue of validity on a claim-by-claim basis.  However, if you find that a dependent claim is invalid, then you must find

---

**Beckman Coulter**: Cytek identifies no instruction given by this Court that contains its proposed language.  Cytek's proposed language is also unnecessary because the jury will already be informed that they must determine whether the Asserted Claims are valid.  Further, if Cytek is permitted to tell the jury that "Claims of an issued patent may be found to be invalid," this instruction should be revised to say that "Claims of an issued patent may be found to be invalid, but all issued claims are presumed to be valid."  Contrary to Cytek's assertion, this language would be necessary because telling the jury that Cytek must prove invalidity by clear and convincing evidence is different from informing the jury that all issued claims are presumed valid.  This instruction should also be modified to say that "Beckman Coulter contends that all Asserted Claims are valid and are not anticipated or obvious and all Asserted Claims have sufficient written description, are definite, and are enabled."  Cytek's position that this would be "duplicative" confirms that Cytek's proposed language is redundant—just as this "the first paragraph in this section already states 'Beckman Coulter contends that all Asserted claims are valid,'" it likewise states that "Cytek contends that the Asserted Claims are invalid."

[87] Adapted from *Globus Medical, Inc. v. Life Spine*, *Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 4.10 (D. Del. Aug. 12, 2025).

that the independent claim from which it depends is also invalid.  The dependent claim includes all of the elements of the independent claim from which it depends.

### 6.3.  Prior Art[88]

Under the patent laws, in order for someone to be entitled to a patent, the invention must be new and not obvious over what came before it.  That which came before is referred to as the "prior art."

The parties agree that the following are prior art:

1.    BD FACSArray System

2.    BD LSR-II System

3.    U.S. Patent No. 6,198,864 to Lemoff and Aronson ("Lemoff")

4.    Luminex FlexMap 3D System (rebranded as Bio-Rad BioPlex 3D System) ("Luminex System")

5.    U.S. Pub. 2003/0048539 to Oostman and Blasenheim ("Oostman")

6.    U.S. Patent No. 8,284,402 to Frazier ("Frazier")

The parties disagree about whether the following is prior art:

1.    [**Cytek:**  Cytek  Development  DxP  Flow  Cytometry

---

[88] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at 24 (D. Del. Aug. 12, 2025) and *Deere & Co. v. AGCO Corp.*, 1:18-cv-00827-CFC-JLH, D.I. 535-1, at 18-19 (D. Del. Mar. 28, 2023).

Systems][**Beckman Coulter:** Digital Extra Parameter][89] ("DxP System")

You must determine whether the DxP System is prior art to the Asserted Claims. This will require you to determine whether it was publicly known or used, or on sale before the priority date of the Asserted Claims.

**[Cyek's Proposal:** In addition to the above references, Cytek introduced other publications and patents that published before the priority date of the Asserted

---

[89] **Cytek:** Cytek's product was indisputably referred to as "Cytek Development DxP Flow Cytometry Systems," including in marketing materials relied upon by both parties' experts. (Houston Rebuttal Rep., ¶320 (citing CYTEK_0000967329); (Ilkov Reply Rep., ¶155 (citing CYTEK_0000967329).) Record evidence, including reacquired prior art DxP Flow Cytometry Systems, comprise flow cytometry systems with DxP branding that were either customer-owned flow cytometers with installed DxP components or flow cytometers procured and refurbished by Cytek Development. In either instance, the DxP System comprised a flow cytometer system and Beckman Coulter's proposed language is an improper attempt to use the jury instructions to argue validity by telling the jury that the Court agrees that the DxP System did not comprise a flow cytometer.

**Beckman Coulter:** Cytek's product was indisputably called the Digital Extra Parameter System. D.I.293 at 8 (stating CytekDev referred to DxP as "Digital Extra Parameter System(s)"); D.I. 298 at 6 (same). Cytek's proposed language is an improper attempt to use the jury instructions to argue invalidity by telling the jury that the Court agrees the DxP is a flow cytometry system, which the parties dispute.

Claims.  You may also consider these references as part the knowledge of a person of ordinary skill in the art at the time.][90]

### 6.3.1  Priority Date[91]

A patent's "priority date" is the date that is used in assessing whether the patent satisfies the written description, enablement, and definiteness requirements. The priority date of a patent claim also affects what documents are available as prior art and is determined on a claim-by-claim basis.  The priority date of an Asserted Claim is an issue for you the jury to determine.

---

[90] **Cytek:** Cytek may rely at trial on references that are indisputably prior art to establish the knowledge of a person having ordinary skill in the art, to show the level of ordinary skill in the art, to provide motivations to combine prior art, or for other proper purposes—indeed, Beckman Coulter does not dispute that background art can properly be used for such purposes.  This instruction thus is appropriate to provide context to the jury that other references discussed during the trial but not expressly listed in this instruction are likewise prior art.

**Beckman Coulter:**  Cytek identifies no previous instructions from this Court using Cytek's proposed language.  Cytek also cites no case law supporting its proposed language.  To the extent Cytek's proposal is adopted, it should be modified to instruct the jury that it may only find obviousness based on Cytek's specific identified combinations of references and limiting the use of any additional references.  Cytek has not provided Beckman Coulter with notice of how it intends to use purported "Background Art," or even what such art it intends to rely upon, and Beckman Coulter reserves all rights to dispute the use of Cytek's purported background art.

[91] Unless otherwise indicated, adapted from *Boston Scientific Corp. v. Nevro Corp.*, 1:16-cv-01163-CFC-CJB, D.I. 793 at 43-45 (D. Del. Oct. 8, 2021).

In this case, the parties dispute whether the DxP System qualifies as prior art. To determine if the DxP System is prior art, you will first need to determine the priority date of the Asserted Claims.

[**Cytek:** The Asserted Claims are entitled to a presumptive priority date of November 26, 2014 based on the filing of nonprovisional application number 14/455,102 on November 26, 2014.][92]    Beckman Coulter contends the Asserted Claims are entitled to a priority date of either:

---

[92] **Cytek:** Cytek's proposed language is an accurate recitation of the law and necessary here, where Beckman Coulter claims that it is entitled to an earlier priority date than its November 26, 2014 nonprovisional application by claiming priority to and through a series of provisional and continuation-in-part applications. Under binding Federal Circuit caselaw, because the PTO made no finding that the Asserted Patents are entitled to an earlier filing date, the presumptive priority date of the Asserted Patents is November 26, 2014 and the burden rests with Beckman Coulter to prove entitlement to an earlier priority date. *Natural Alternatives Int'l, Inc. v. Iancu*, 904 F.3d 1375, 1380 (Fed. Cir. 2018) ("claims in a patent or patent application are not entitled to priority [to an earlier application] at least until the patent owner *proves* entitlement to the PTO, the Board, or a federal court." (emphasis in original)); *see also Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1380 (Fed. Cir. 2015); *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305 (Fed. Cir. 2008).

1.  **October 19, 2012** based on provisional patent application numbers 61/653,245, 61/653,328, 61/715,819, and 61/715,836;

2.  **April 29, 2013** based on provisional patent application numbers 61/653,328, 61/715,819, 61/715,836, 61/653,245, and 61/816,819;

3.  **May 30, 2013** based on provisional patent application numbers 61/653,328, 61/715,819, 61/715,836, 61/653,245, and 61/816,819 and PCT application no. PCT/US2013/043453; **OR**

4.  **December 4, 2013** based on provisional patent application numbers 61/653,328, 61/715,819, 61/715,836, 61/653,245, 61/816,819, and 61/911,859 and PCT application no. PCT/US2013/043453.

Cytek contends that the Asserted Claims are entitled to a priority date no earlier than the November 26, 2014 filing of nonprovisional application number 14/455,102. As the party challenging validity, Cytek always has the burden to prove by clear and

---

Thus, this instruction is necessary to prevent juror confusion on at least two related points. First, without clarification, jurors may wrongly believe that the Asserted Patents are entitled to the earliest possible priority date included on the face of the Asserted Patents. *Cf. PowerOasis*, 522 F.3d at 1304–05 (no presumption that claims are entitled to claim priority to an earlier filing date). Second, the priority date of the Asserted Claims is a central factual issue for the jury to decide in this case. Correctly framing the November 26, 2014 date as "presumptive"—rather than definitive—is balanced and necessary for the jury to properly weigh the evidence on priority and to understand that, once Cytek has established a prima facie case of invalidity, Beckman Coulter must come forward with evidence supporting any earlier priority date it claims. *Id.* at 1305-06.

**Beckman Coulter:**  Cytek's proposal is improperly argumentative because it tells the jury that Cytek's proposed priority date is "presumptive."  Cytek did not provide its position on this instruction, including its cited case law, until 4:48 pm the day these instructions were due for filing and Beckman Coulter has not had sufficient time to review.  Beckman Coulter reserves all rights.

convincing evidence that the DxP System is prior art. If Cytek does so, the burden to produce evidence shifts to Beckman Coulter such that Beckman Coulter must provide evidence supporting an earlier filing date. Once Beckman Coulter has produced this evidence, Cytek has the burden to convince you that Beckman Coulter is not entitled to that earlier filing date.[93]

Beckman Coulter can claim priority to these earlier applications if Beckman Coulter can show that there is written description support for the full scope of each Asserted Claim and that the full scope of each Asserted Claims is enabled. I will describe the written description and enablement requirements to you below at Instruction 6.8 (Written Description Requirement) and Instruction 6.9 (Enablement Requirement).

Different Asserted Claims may have a different priority date depending on whether the priority applications satisfy the written description and enablement requirement for individual patent claims. Therefore, you must assess and determine the priority date separately for each Asserted Claim.

### 6.3.2  Date of Invention & Diligent Reduction to Practice

If you find that one or more Asserted Claims are entitled to rely on the October 19, 2012 priority date, then you must also determine whether those claims are

---

[93] *Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327-1328 (Fed. Cir. 2008)

entitled to an earlier date of invention of April 18, 2012 based on Beckman Coulter's alleged invention date of the inventions claimed by the Asserted Patents.

If you determine that Beckman Coulter is not entitled to the October 19, 2012 priority date, and is only entitled to a priority date of April 29, 2013; May 30, 2013; December 4, 2013; or November 26, 2014, the Asserted Claims are **not** entitled to an April 18, 2012 date of invention and you must use the priority date to which you determined Beckman Coulter was entitled.

An earlier alleged invention date requires evidence of both earlier conception and diligence in reducing the inventive concept to practice. [**Cytek's Proposal:** Beckman Coulter, as the party alleging a priority date that is earlier than the presumptive priority date of November 26, 2014, must establish conception and diligent reduction to practice by clear and convincing evidence.][94]

---

[94] **Cytek:** Cytek's proposed language is an accurate statement of law, *Kenexa Brassring, Inc. v. Taleo Corp.*, 751 F. Supp. 2d 735, 753 (D. Del. 2010); *see also Price v. Symsek*, 988 F.2d 1187, 1191 (Fed. Cir. 1993); *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1376 (Fed. Cir. 2016), and identifies for the jury the relevant standard of proof that should be applied in deliberating on whether Beckman Coulter established conception and diligent reduction to practice. For example, in *Kenexa*, the court explained that where "[p]laintiff attempts to swear behind the prior art references cited by defendants [under 35 USC §§ 102(a) and 102(g)(2)] by establishing a[n earlier] conception date, [t]he party alleging prior invention must establish prior invention by clear and convincing evidence." *Kenexa Brassring, Inc.*, 751 F. Supp. 2d at 753, 759.

Conception is the mental part of an inventive act, i.e., the formulation in the mind of the alleged inventor of a definite and permanent idea of the complete and operative invention. Conception of a claim is complete when the idea is so clearly defined in the alleged inventor's mind that, if the idea were communicated to a person having ordinary skill in the art, he or she would be able to reduce the claimed subject matter to practice without undue research or experimentation.

---

Indeed, the proposed language mirrors similar instructions given by other courts in this District. *E.g.*, *Intellectual Ventures I LLC et al v. Motorola Mobility LLC*, No. 1-11-cv-00908-SLR, D.I. 314 (Final Jury Instructions), at 35 (D. Del. Feb. 4, 2014) ("[Patentee] **bears the burden to prove, by clear and convincing evidence,** that it is entitled to this earlier invention date by showing that [the inventor] conceived of the asserted claims then, and that he was diligent in reducing the invention to practice" (emphasis added)). The proposed language thus provides clarification on this issue and is consistent with the parties' inclusion of the relevant standards of proof elsewhere across these Instructions. (*E.g.*, *supra* Instruction 5 (identifying preponderance of evidence standard for infringement; Instruction 6 (identifying clear and convincing standard for invalidity).)

**Beckman Coulter:** Cytek identifies no instructions given by this Court that used Cytek's proposed language. Moreover, Cytek misstates the relevant burden by relying solely on cases involving interferences or prior invention challenges. Here, Cytek, as the party challenging validity, always has the burden to prove by clear and convincing evidence that a purportedly invalidating reference is prior art. *Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327-1328 (Fed. Cir. 2008). The burden of production shifts to Beckman Coulter to provide evidence and argument supporting an earlier priority date only upon a prima facie case of invalidity. *Id.* Once Beckman Coulter has made that showing, the burden shifts back to Cytek to convince the Court that Beckman Coulter is not entitled to the benefit of the earlier priority date. *Id.* The burden of persuasion never shifts to Beckman Coulter. *Id.*

[**Cytek:** Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial. Therefore, Beckman Coulter must present evidence sufficient to show on a claim-by-claim basis, with corroborating evidence, that the complete invention was conceived on or before the alleged date of conception.][95]

There must be some evidence beyond the inventor's own testimony that confirms the date of invention. [**Cytek:** An inventor's testimony concerning conception must be corroborated by independent evidence.][**Beckman Coulter:** In

---

[95] **Cytek:** The proposed language reflects well-established, blackletter letter regarding conception. *See Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 66, (1998) ("The word 'invention' must refer to a concept that is complete, rather than merely one that is 'substantially complete.'"). Here, the "completeness" of Beckman Coulter's conception as of Beckman Coulter's claimed priority dates is central to the parties' dispute and warrants additional guidance to the jury. Cytek's proposed language is consistent with the Federal Circuit Bar Association Model Patent Instructions and other instructions given by courts in this District on this issue. *E.g.*, Federal Circuit Bar Association Model Patent Instructions at § 4.3a-2 ("Conception may be proven when the invention is shown in its complete form by drawings, disclosure to another person, or other forms of evidence presented at trial."); *Bridgestone Americas Tire Operations LLC v. Schrader-Bridgeport International Inc. et al*, No. 1-13-cv-00763-GMS, D.I. 254 (Final Jury Instructions), at 39 (D. Del. June 10, 2015) ("Conception may be proven when each of the elements of a claim are shown in complete form by drawings, disclosure to another person, or other forms of evidence presented at trial. Therefore, Bridgestone must present evidence sufficient to show on a claim-by-claim basis, with corroborating evidence, that the complete invention was conceived on or before the alleged date of conception.").

**Beckman Coulter:** Cytek identifies no instructions previously given by this Court that used Cytek's proposed language. Cytek's proposed language is also unnecessary because the jury will be instructed on conception.

order to demonstrate reduction to practice, Beckman Coulter is not required to produce an actual over-the-shoulder observer of conception and reduction to practice. Additionally, it is not necessary to have corroborating evidence from a source totally independent of the inventor for every point of a reduction to practice.][96]

---

[96] **Cytek:** Cytek's proposed language is an accurate statement of law. *Dionex Softron GmbH v. Agilent Tech., Inc.*, 56 F.4th 1353, 1360 (Fed. Cir. 2023) ("[A]n inventor's testimony must be corroborated by independent evidence." (quoting *Cooper v. Goldfarb*, 15 F.3d 1321, 1330-1331 (Fed. Cir. 1998))). Here, Beckman Coulter intends to rely on inventor testimony at trial to support its priority claims and the proposed language provides necessary clarification for the jury regarding how to properly weigh such evidence. Indeed, the proposed language mirrors that provided by other courts in this district. *E.g., Continuous Composites, Inc., v. Markforged, Inc.*, No. 1-21-cv-00998 (MN), D.I. 309 (Final Jury Instructions) at 16 (D. Del. Apr. 11, 2024) ("The oral testimony of the alleged prior inventor is not by itself enough to prove that he or she conceived of the claimed invention and was diligent in reducing it to practice. An inventor's testimony concerning conception, diligence and reduction to practice of a prior invention must be corroborated by independent evidence."); *TrackTime, LLC v. Amazong.com Services LLC, et al.*, No. 1-18-cv-01518 (MN), D.I. 306 (Final Jury Instructions) at 13 (D. Del. Sep. 19, 2023) ("The oral testimony of the inventor is not by itself enough to prove that he conceived of the claimed invention. An inventor's testimony concerning conception must be corroborated by independent evidence."); *bioMerieux, S.A. et al v. Hologic Inc., et al*, No. 1-18-cv-00021-LPS-CJB, D.I. 428 (Final Jury Instruction) at 25 (D. Del. Feb. 25, 2020) (similar); *Ingenico Inc. v. IOENGINE, LLC*, No. 1-18-cv-00826-WCB, D.I. 497 (Final Jury Instructions) at 16 (D. Del. Jul 15, 2022) (similar).

By contrast, Beckman Coulter's proposal risks misleading the jury because it does not fully and accurately recite the law as explained by the Federal Circuit—for example, while "it is not necessary to produce an actual over-the-shoulder observer" a patentee must identify "sufficient circumstantial evidence of an independent nature [that] can satisfy the corroboration requirement." *Dionex Softron*, 56 F.4th at 1360. Notably, Beckman Coulter does not cite any model or court-approved jury instruction in support of its proposed additions. If the Court does adopt Beckman Coulter's proposed additions, Cytek would ask that the following language be included as well to avoid jury confusion regarding the role of independent evidence in corroborating inventor testimony, which is adapted from the jury instructions used in this District cited above and the Federal Circuit's reasoning in *Dionex Softron*: "Ultimately, the oral testimony of the alleged prior inventor is not by itself enough to prove that he or she conceived of the claimed invention and was diligent in reducing it to practice and you must decide whether Beckman Coulter has sufficiently corroborated any inventor testimony to persuade you."

**Beckman Coulter:** Cytek identifies no instructions previously given by this Court that used Cytek's proposed language. Cytek's proposed language is also unnecessary because the jury will be instructed that "There must be some evidence beyond the inventor's own testimony that confirms the date of invention."  By contrast, Beckman Coulter's proposal is necessary to explain to the jury the kind of corroborating evidence necessary. *See, e.g.*, *Dionex Softron GmbH v. Agilent Tech., Inc.*, 56 F.4th 1353, 1360 (Fed. Cir. 2023) ("[A]n inventor's testimony must be corroborated by independent evidence. However, a "rule of reason" analysis is applied to determine whether an inventor's testimony regarding reduction to practice has been sufficiently corroborated. The rule requires an evaluation of all pertinent evidence when determining the credibility of an inventor's testimony. In order to corroborate a reduction to practice, it is not necessary to produce an actual over-the-shoulder observer. Rather, sufficient circumstantial evidence of an independent nature can satisfy the corroboration requirement. Furthermore, an actual reduction to practice does not require corroboration for every factual issue contested by the parties.... [T]he law does not impose an impossible standard of "independence" on corroborative evidence by requiring that every point of a reduction to practice be corroborated by evidence having a source totally independent of the inventor; indeed, such a standard is the antithesis of the rule of reason. In the final analysis, each corroboration case must be decided on its own facts with a view to deciding whether the evidence as a whole is persuasive." (quoting Cooper v. Goldfarb, 15 F.3d 1321, 1330-1331 (Fed. Cir. 1998))).

A claim is "reduced to practice" when it has been constructed, used, or tested sufficiently to show that it will work for its intended purpose. [**Cytek's Proposal:** For example, a machine is reduced to practice when it is assembled, adjusted and used.][97]

[**Cytek:** To demonstrate that the alleged inventor was diligent in reducing the alleged invention to practice, Beckman Coulter must show reasonable continuous diligence from the date of conception to the date of the subsequent reduction to practice. Like conception, to show diligence, Beckman Coulter must provide evidence beyond the alleged inventor's own testimony that corroborates reasonable

---

[97] **Cytek:** This proposal is a helpful example that accurately reflects the law and helps explain the concept of reduction to practice to the jury. Indeed, this example was used by the Supreme Court in *Corona Cord Tire Co. v. Dovan Chem. Corp.*, 276 U.S. 358, 383 (1928) ("A machine is reduced to practice when it is assembled, adjusted and used."), and continues to be used by the Supreme Court and courts in this district, *e.g.*, *Pfaff v. Wells Elecs., Inc.,* 525 U.S. 55, 57 n. 2 (1998) ("A process is reduced to practice when it is successfully performed. A machine is reduced to practice when it is assembled, adjusted and used. (quoting *Corona Cord Tire Co.*, 276 U.S. at 838)); *Quest Integrity USA, LLC v. Clean Harbors Indus. Servs., Inc.*, 245 F. Supp. 3d 606, 623 (D. Del. 2017), *aff'd in part, rev'd in part and remanded sub nom., Quest Integrity USA, LLC v. Cokebusters USA Inc.*, 924 F.3d 1220 (Fed. Cir. 2019) (same) (reversed and remanded on other grounds); *Rhenalu v. Alcoa, Inc.*, 224 F. Supp. 2d 773, 804 (D. Del. 2002) (*Pfaff,* 525 U.S. at 57, n. 2)).

**Beckman Coulter:** Cytek identifies no instructions previously given by this Court containing this limited articulation of what it means to reduce a machine to practice. Cytek's proposal is also unnecessary because the jury will be instructed on reduction to practice.

92

continuous diligence from the date of conception to the date on which the alleged inventor(s) reduced the alleged invention to practice.][98]

Diligence means working continuously, though not necessarily every day.

[**Cytek's Proposal:** However, if an inventor attempts to rely on an earlier date of conception, it must show that it exercised reasonable diligence throughout the entire

---

[98] **Cytek:** Cytek's proposed language is an accurate recitation of the law. *Dionex Softron GmbH v. Agilent Tech., Inc.*, 56 F.4th 1353, 1360 (Fed. Cir. 2023) ("[A]n inventor's testimony must be corroborated by independent evidence." (quoting *Cooper v. Goldfarb*, 15 F.3d 1321, 1330-1331 (Fed. Cir. 1998))). Here, Beckman Coulter intends to rely on inventor testimony at trial to support its priority claims and the proposed language provides necessary clarification for the jury regarding how to properly weigh such evidence.  Indeed, the proposed language mirrors that provided by other courts in this district. *Continuous Composites, Inc., v. Markforged, Inc.*, No. 1-21-cv-00998 (MN), D.I. 309 (Final Jury Instructions) at 16 (D. Del. Apr. 11, 2024) ("The oral testimony of the alleged prior inventor is not by itself enough to prove that he or she conceived of the claimed invention and was diligent in reducing it to practice. An inventor's testimony concerning conception, diligence and reduction to practice of a prior invention must be corroborated by independent evidence."); *TrackTime, LLC v. Amazong.com Services LLC, et al.*, No. 1-18-cv-01518 (MN), D.I. 306 (Final Jury Instructions) at 14 (D. Del. Sep. 19, 2023) ("The oral testimony of the inventor is not by itself enough to prove that he was diligent in reducing the invention to practice. An inventor's testimony concerning diligence and reduction to practice of an invention must be corroborated by independent evidence."); *bioMerieux, S.A. et al v. Hologic Inc., et al*, No. 1-18-cv-00021-LPS-CJB, D.I. 428 (Final Jury Instruction) at 26 (D. Del. Feb. 25, 2020) (similar); *Ingenico Inc. v. IOENGINE, LLC*, No. 1-18-cv-00826-WCB, D.I. 497 (Final Jury Instructions) at 17 (D. Del. Jul 15, 2022) (similar).

**Beckman Coulter:**  Cytek identifies no instructions given by this Court that used Cytek's proposed language.  Cytek's proposal is also unnecessary because the jury will be instructed that "There must be some evidence beyond the inventor's own testimony that confirms the date of invention."

93

period between the date of conception and the date the invention was reduced to practice.  This requires the inventor to show that it took specific and affirmative acts during this entire period that were directly related to the reduction to practice of the invention at issue, and that acceptable excuses be provided for any periods of inactivity.][99]

---

[99] **Cytek:** The proposed language is an accurate recitation of law, and aligns with similar instructions given by courts in this District. *E.g.*, *Tarkus Imaging Inc. v. Adobe Systems Inc., et. al.*, No. 1-10-cv-00063-LPS, D.I. 479 (Final Jury Instructions), at 31 (D. Del. June 27, 2012) ("If an inventor attempts to rely on an earlier date of conception, it must show that it exercised reasonable diligence throughout the entire period between the date of conception and the date the invention was reduced to practice. This requires the inventor to show that it took specific and affirmative acts during this entire period that were directly related to the reduction to practice of the invention at issue, and that acceptable excuses be provided for any periods of inactivity.); *TrackTime, LLC v. Amazong.com Services LLC, et al.*, No. 1-18-cv-01518 (MN), D.I. 306 (Final Jury Instructions) at 14 (D. Del. Sep. 19, 2023) ("[T]the period during which diligence is required must be accounted for by either affirmative acts or acceptable excuses."); *United States of America v. Gilead Sciences, Inc. et al*, No. 1-19-cv-02103 (MN), D.I. 464 (Final Jury Instructions), at 17 (D. Del. May 8, 2023) (same). Here, the parties dispute that the inventor diligently worked to reduce to practice, including due to unexplained inactivity during the critical period. Therefore, this instruction is necessary to explain that while diligence does not require working "necessarily every day," it requires that gaps be accounted for with acceptable excuses. Beckman Coulter's argument that Cytek's proposed language will confuse the jury into thinking that "an **unexplained** period of inactivity necessarily defeats diligence" is baseless—Cytek's proposed instruction makes clear that **explained** (i.e., when "acceptable excuses [are] provided") periods of inactivity do not defeat diligence.

**Beckman Coulter:**  Cytek does not identify any instructions previously given by this Court that contain Cytek's proposed language.  Cytek's instruction also risks misleading the jury into believing that an unexplained period of inactivity necessarily defeats diligence.

[**Beckman Coulter:** If Cytek makes an initial showing that the DxP is prior art, Beckman Coulter then bears the burden of coming forward with evidence that the named inventor invented the claimed inventions in April 2012.  However, Cytek must ultimately prove by clear and convincing evidence that the DxP System qualifies as prior art.][100]

---

[100] **Cytek:** Beckman Coulter's proposed language is inappropriate here, and risks confusing the jury. That Cytek must ultimately prove that the DxP System qualifies as prior art is already stated in Instruction 6.3.1 above. This Section provides the jury with instruction regarding the date of invention and reduction practice, and here Beckman Coulter bears the burden of proving by clear and convincing evidence that it conceived of and diligently reduced to practice its claimed invention. *Kenexa Brassring, Inc. v. Taleo Corp.*, 751 F. Supp. 2d 735, 753 (D. Del. 2010); *see also Price v. Symsek*, 988 F.2d 1187, 1191 (Fed. Cir. 1993); *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1376 (Fed. Cir. 2016); *see also Intellectual Ventures I LLC et al v. Motorola Mobility LLC*, No. 1-11-cv-00908-SLR, D.I. 314 (Final Jury Instructions), at 35 (D. Del. Feb. 4, 2014) ("[Patentee] bears the burden to prove, by clear and convincing evidence, that it is entitled to this earlier invention date by showing that [the inventor] conceived of the asserted claims then, and that he was diligent in reducing the invention to practice"). To the extent the Court is inclined to adopt Beckman Coulter's proposal, Cytek asks that the following language be included instead to mitigate jury confusion: While Cytek must ultimately prove by clear and convincing evidence that the DxP System qualifies as prior art, Beckman Coulter bears the burden of proving by clear and convincing evidence that it is entitled to its alleged April 18, 2012 date of invention by showing that Young Chen had conceived of the asserted claims as of that date and that he was diligent in reducing them to practice.

95

### 6.3.3  Prior Art – Publicly Known or Used, or On Sale[101]

Use this instruction for any Asserted Claim you determine is entitled to a priority date before March 16, 2013.  For any Asserted Claim entitled to a priority date after March 16, 2013, please turn to page 98.

If you determined that one or more Asserted Claims had been invented as of **April 18, 2012** and were thereafter diligently reduced to practice, you must determine whether the DxP System was prior art to those claims because it was known to or used by others in the United States before April 18, 2012.  If you determined that one or more Asserted Claims are only entitled to an **October 19, 2012** priority date, you must determine whether the DxP System was prior art to those claims because it was known to or used by others in the United States before October 19, 2012.

---

[101] Unless otherwise indicated, adapted from Federal Circuit Bar Association Model Patent Instructions at 47, *available at* https://s45968.pcdn.co/wp-content/uploads/public_docs/May-2020-FCBA-Model-Patent-Jury-Instructions.pdf.; *see also Jiaxing Super Lighting Electric Appliance, Co. v. CH Lighting Tech. Co.*, 146 F.4th 1098, 1106 (Fed. Cir. 2025) ("To trigger the on-sale bar provision, the offer for sale must embody the claims of the asserted patent.  The invention must be the subject of a commercial offer for sale and be ready for patenting."); *Ingenico Inc. v. IOENGINE LLC*, 136 F.4th 1354, 1361 (Fed. Cir. 2025) ("The 'in public use' element of the public use bar is met if the invention ' "was accessible to the public or was commercially exploited"' by the inventor" (citation omitted)).

**Publicly Known:** An invention is known when the information about it was reasonably accessible to the public on that date.

**Publicly Used, On Sale:** An invention was publicly used when it was either (1) accessible to the public or (2) commercially exploited.

An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor. [**Cytek:** A single, non-secret use of the invention by a single person is sufficient to satisfy the public use requirement.][102]

---

[102] **Cytek:** The proposed language is an accurate statement of law. *UCB, Inc. v. Watson Laboratories Inc.*, 927 F.3d 1272, 1289-91 (Fed. Cir. 2019) ("For prior art to anticipate because it has been 'used,' the use must be accessible to the public … [p]rior knowledge and use by a single person is sufficient." (internal citations omitted) (quoting *Minnesota Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002); *Coffin v. Ogden*, 85 U.S. (18 Wall.) 120, 124 (1873))). While Beckman Coulter attempts to mischaracterize the Federal Circuit's ruling, the court's statement that "[p]rior knowledge and use by a single person is sufficient" was an affirmative articulation of the governing legal standard under 35 U.S.C. § 102(a) (pre-AIA), drawn from the Supreme Court's ruling in *Coffin v. Ogden*. In *UCB*, the court confirmed that "[t]he patient's use of the patches fairly counts as public use under § 102(a)" even where that single-patient use was the entirety of the evidence supporting invalidity. *UCB*, 927 F. 3d at 1291. Beckman Coulter's reference to "clear error" is irrelevant to the Federal Circuit's recitation of the relevant legal standard and its affirmation that a single use is sufficient to satisfy § 102(a) public use.

97

An invention is commercially exploited when it was sold or offered for sale,

[**Cytek:** even if the specifics of the invention are kept secret. For example, an inventor commercially exploits an invention by selling a product made using an invention or promoting a product embodying an invention, regardless of whether and when the public learns about the invention itself, and regardless of whether the inventor has attempted to keep the invention secret, including by imposing confidentiality obligations on observers. A commercial offer for sale was made if another party could make a binding contract by simply accepting the offer.  It is not

---

Cytek's proposed language is also necessary because Beckman Coulter intends to suggest to the jury that the DxP System is not prior art based on limited sales and because of physical and customer-imposed restrictions on accessing components of the DxP System. (*E.g.*, L. Nichols Depo. Tr. 92:5-92:16 (testimony affirmatively designated by Beckman Coulter for trial wherein Beckman Coulter counsel eliciting testimony re physical and customer-imposed restrictions on DxP System Components).) That is not the law. The public use inquiry asks only whether the use was accessible to the public, not whether it was commercially widespread. Without this instruction, there is risk that the jury will apply a higher threshold than appropriate under the law.

**Beckman Coulter:**  Cytek identifies no instructions given by this Court that used Cytek's proposed language. Cytek also mischaracterizes Beckman Coulter's argument regarding the DxP and Beckman Coulter does not plan to argue that the DxP is not prior art "based on limited sales and because of physical and customer-imposed restrictions on accessing components of the DxP System." *UCB* does not support Cytek's broad proposal.  Instead, *UCB* evaluated a district court's invalidity determination under § 102(a) "for clear error" and does not stand for the proposition that a single use is necessarily sufficient to support invalidity. 927 F.3d at 1291.

98

required that a sale was made, nor that the terms of the sale disclose the details of the invention.][103]

To be a public use, the invention also must have been ready for patenting at the time of the alleged public use. An invention is ready for patenting when it was reduced to practice or it had been described such that a person having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice or publicly disclosed.

\*\*\*

If you determined that one or more Asserted Claims are entitled to only a priority date on or after March 16, 2013, you must determine whether the DxP System was prior art because it was publicly known or was used, on sale, or

---

[103] **Cytek:** The proposed language is an accurate statement of law, and adheres to the AIPLA model jury instructions concerning prior art based on public use and on sale. 2025 AIPLA Model Patent Jury Instructions, at § V(6.2.2; 6.3). This instruction is necessary here because Beckman Coulter intends to suggest to the jury that commercialization of the DxP System did not amount to public use based on limited sales and because of physical and customer-imposed restrictions on accessing components of the DxP System. (*E.g.*, L. Nichols Depo. Tr. 92:5-92:16 (testimony affirmatively designated by Beckman Coulter for trial wherein Beckman Coulter counsel eliciting testimony re physical and customer-imposed restrictions on DxP System Components).)

**Beckman Coulter:** Cytek identifies no instructions previously given by this Court that use Cytek's proposed language. And Beckman Coulter does not plan to argue that the DxP is not prior art "based on limited sales and because of physical and customer-imposed restrictions on accessing components of the DxP System." This instruction is therefore unnecessary and will confuse the jury.

otherwise made available to the public before the priority date you determined applies—either April 29, 2013, May 30, 2013, December 4, 2013, or November 26, 2014. Cytek contends that the DxP System was publicly known, publicly used, on sale, or otherwise available before each of these dates.

**Publicly Known:** An invention is known when the information about it was reasonably accessible to the public on that date.

**Publicly Used, On Sale:** An invention was publicly used when it was either (1) accessible to the public or (2) commercially exploited.

An invention is publicly used if it is used by the inventor or by a person who is not under any limitation, restriction, or obligation of secrecy to the inventor.

[**Cytek:** A single, non-secret use of the invention by a single person is sufficient to satisfy the public use requirement.][104]

---

[104] **Cytek:** The proposed language is an accurate statement of law. *UCB, Inc. v. Watson Laboratories Inc.*, 927 F.3d 1272, 1289-91 (Fed. Cir. 2019) ("For prior art to anticipate because it has been 'used,' the use must be accessible to the public … [p]rior knowledge and use by a single person is sufficient." (internal citations omitted) (quoting *Minnesota Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002); *Coffin v. Ogden*, 85 U.S. (18 Wall.) 120, 124 (1873))). While Beckman Coulter attempts to mischaracterize the Federal Circuit's ruling, the court's statement that "[p]rior knowledge and use by a single person is sufficient" was an affirmative articulation of the governing legal standard under 35 U.S.C. § 102(a) (pre-AIA), drawn from the Supreme Court's ruling in *Coffin v. Ogden*. In *UCB*, the court confirmed that "[t]he patient's use of the patches fairly counts as public use under § 102(a)" even where that single-patient use was the entirety of the evidence supporting invalidity. *UCB*, 927 F. 3d at 1291. Beckman Coulter's reference to "clear error" is irrelevant to the Federal Circuit's recitation of the relevant legal standard and its affirmation that a single use is sufficient to satisfy § 102(a) public use.

Cytek's proposed language is also necessary because Beckman Coulter intends to suggest to the jury that the DxP System is not prior art based on limited sales and because of physical and customer-imposed restrictions on accessing components of the DxP System. (*E.g.*, L. Nichols Depo. Tr. 92:5-92:16 (testimony affirmatively designated by Beckman Coulter for trial wherein Beckman Coulter counsel eliciting testimony re physical and customer-imposed restrictions on DxP System Components).) That is not the law. The public use inquiry asks only whether the use was accessible to the public, not whether it was commercially widespread. Without this instruction, there is risk that the jury will apply a higher threshold than appropriate under the law.

101

An invention is commercially exploited when it was sold or offered for sale,

[**Cytek:** even if the specifics of the invention are kept secret. For example, an inventor commercially exploits an invention by selling a product made using an invention or promoting a product embodying an invention, regardless of whether and when the public learns about the invention itself, and regardless of whether the inventor has attempted to keep the invention secret, including by imposing confidentiality obligations on observers. A commercial offer for sale was made if another party could make a binding contract by simply accepting the offer. It is not

---

**Beckman Coulter:** Cytek identifies no instructions given by this Court that Used Cytek's proposed language. Cytek also mischaracterizes Beckman Coulter's argument regarding the DxP and Beckman Coulter does not plan to argue that DxP is not prior art "based on limited sales and because of physical and customer-imposed restrictions on accessing components of the DxP System." *UCB* does not support Cytek's broad proposal. Instead, *UCB* evaluated a district court's invalidity determination under § 102(a) "for clear error" and does not stand for the proposition that a single use is necessarily sufficient to support invalidity. 927 F.3d at 1291.

required that a sale was made, nor that the terms of the sale disclose the details of the invention.][105]

To be a public use, the invention also must have been ready for patenting at the time of the alleged public use.  An invention is ready for patenting when it was reduced to practice or it had been described such that a person having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice or publicly disclosed.

### 6.3.4. [Cytek: Prior Art Considered or Not by the Patent Office

For all Asserted Claims, regardless of whether or not particular prior art references were considered by the Patent Examiner during the prosecution of the application that issued as the Asserted Patents, Cytek must prove invalidity by clear

---

[105] **Cytek:** The proposed language is an accurate statement of law, and adheres to the AIPLA model jury instructions concerning prior art based on public use and on sale. 2025 AIPLA Model Patent Jury Instructions, at § V(6.2.2; 6.3). This instruction is necessary here because Beckman Coulter intends to suggest to the jury that commercialization of the DxP System did not amount to public use based on limited sales and because of physical and customer-imposed restrictions on accessing components of the DxP System. (*E.g.*, L. Nichols Depo. Tr. 92:5-92:16 (testimony affirmatively desginated by Beckman Coulter for trial wherein Beckman Coulter counsel eliciting testimony re physical and customer-imposed restrictions on DxP System Components).)

**Beckman Coulter:**  Cytek identifies no instructions previously given by this Court that use Cytek's proposed language.  And Beckman Coulter does not plan to argue that DxP is not prior art "based on limited sales and because of physical and customer-imposed restrictions on accessing components of the DxP System."  This instruction is therefore unnecessary and will confuse the jury.

and convincing evidence.  This burden of proof remains the same whether or not the Patent Examiner considered the references.

Where Cytek is relying on prior art that was not considered by the Patent Examiner, you may consider whether that prior art is significantly different and more relevant than the prior art that the Patent Examiner did consider.  If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether Cytek has proven invalidity.][106]

---

[106] **Cytek:** Cytek's proposal follows the 2025 AIPLA Model Patent Jury Instructions and Federal Circuit Bar Association Model Patent Instructions, which Beckman Coulter does not allege are an incorrect recitation of the law.  *See* 2025 AIPLA Model Patent Jury Instructions, Section V(5.1); Federal Circuit Bar Association Model Patent Instructions at §§ B.4.3b-1, B.4.3c(ii). In fact, the Supreme Court has held that where the Patent Office did not have "all material facts before it" then "a jury instruction on the effect of new evidence can, and when requested, most often should, be given." *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 111 (2011). "When it is disputed whether the evidence presented to the jury differs from that evaluated by the PTO, the jury may be instructed to consider that question." Cytek requests exactly this—that the jury be instructed to consider whether Cytek is relying on prior art not considered by the Patent Office and, if so, that the jury know it may way such art more heavily.

Indeed, several courts in this District have provided similar instructions. For example, in *Nox Medical ehf v. Natus Neurology Inc.*, Judge Andrews instructed the jury that "[w]hen a party challenging the validity of a patent presents evidence that was not considered by the Examiner during the prosecution of the application which resulted in the issued patent, such new evidence may be given more weight than evidence considered by the Examiner and may make it easier to satisfy that party's evidentiary burden." *Nox Medical ehf v. Natus Neurology Inc.*, No. DDE-1-15-cv-00709-RGA, D.I. 259 (Final Jury Instructions), at 17 (D. Del. May 7, 2018); *see also SmartSky Networks, LLC v. Gogo Business Aviation, LLC et al*, No. DDE-1-22-cv-00266-JDW, D.I. 594 (Final Jury Instructions), at 44-45 (D. Del. Nov. 21, 2025) ("When Gogo is relying on prior art that the Patent Office did not consider during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the Patent Office did consider."); *Continuous Composites, Inc., v. Markforged, Inc.*, No. 1-21-cv-00998 (MN), D.I. 309 (Final Jury Instructions) at 12 (D. Del. Apr. 11, 2024) ("[Y]ou may consider whether that prior art is significantly different and more relevant than the prior art that the Patent Office did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether the challenger has carried its clear-and-convincing burden of proving invalidity.").

Moreover, there is no risk of jury confusion where, as here, the Instructions already make clear that Cytek at all times bears the burden of proving invalidity by clear and convincing evidence. *E.g.*, *supra* Instructions 3, 6.1 and 6.3. Indeed, this Instruction already reminds that jury that regardless of what references the Patent Office did or did not consider, "Cytek must prove invalidity by clear and convincing evidence."

Lastly, Beckman Coulter's additional proposed language is unnecessary and is not based on any model jury instruction or jury instructions given in Courts by this District. Unlike Cytek's impartial proposal, Beckam Coulter's language risks that the jury will give too much weight to the presumption of validity and will confuse the jury as to what qualifies as "considered" art.

### 6.4.    Level of Ordinary Skill in the Art[107]

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of the priority date.

In this case, a person of ordinary skill in the art would have had at least a B.S. in physics, mechanical engineering, electrical engineering, or optical engineering (or

---

**Beckman Coulter:** Cytek does not identify any instructions previously given by this Court that use its proposed language.  Cytek's instruction also risks confusing the jury about the presumption of validity and Cytek's burden to prove invalidity.  To the extent Cytek's proposal is adopted, Beckman Coulter requests that the jury also be informed that issued claims are presumed valid, that Cytek always has the burden to prove invalidity by clear and convincing evidence, and that it may be harder for Cytek to meet the clear and convincing burden when it relies on the same argument or the same reference that the patent office already considered. *See, e.g.*, *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260-–61 (Fed. Cir. 2012) ("[I]t may be harder to meet the clear and convincing burden when the invalidity contention is based upon the same argument on the same reference that the PTO already considered.  Importantly, whether a reference was before the PTO goes to the weight of the evidence, and the parties are of course free to, and generally do, make these arguments to the fact finder."); *Ultra-Tex Surfaces, Inc. v. Holl Bros. Chem. Co.*, 204 F.3d 1360, 1367 (Fed. Cir. 2000) ("when a party alleges that a claim is invalid based on the very same references that were before the examiner when the claim was allowed, that party assumes the following additional burden: When no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents.").

[107] Adapted from *Globus Medical, Inc. v. Life Spine*, *Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 4.13 (D. Del. Aug. 12, 2025)

equivalent degree) and at least two years of experience in designing optical and electro-optical systems, including for flow cytometer applications. A person could also have qualified as a person of ordinary skill in the art with a combination of (1) more formal education (such as a doctoral degree) and less technical experience, or (2) less formal educational and more technical or professional experience.

### 6.5 Anticipation[108]

In order for someone to be entitled to a patent, the invention must actually be "new." Cytek contends that claims 6, 11, and 15 of the '443 Patent are anticipated by the DxP System, which means that Cytek contends these claims are not new. Beckman Coulter denies that these claims are anticipated. Cytek must prove [**Beckman Coulter:** by clear and convincing evidence][109] that claims 6, 11, and 15 of the '443 Patent are anticipated.

---

[108] Unless otherwise indicated, adapted from *Magnolia Medical Tech., Inc. v. Kurin, Inc.*, 1:24-cv-01124-CFC, D.I. 416, at § 6.3 (D. Del. Dec. 14, 2025).

[109] **Beckman Coulter:** Beckman Coulter's proposal aligns with the *Magnoilia* instruction provided by this Court. *Magnolia Medical Tech., Inc. v. Kurin, Inc.*, 1:24-cv-01124-CFC, D.I. 416, at § 6.3 (D. Del. Dec. 14, 2025). Cytek's repeated attempts to hide its burden to prove invalidity from the jury should be rejected. Cytek has identified no prejudice from instructing the jury that Cytek has the burden to prove anticipation by clear and convincing evidence and no reason to depart from this Court's standard practice. Rather, this language is necessary to instruct the jury of clear and convincing standard as they are instructed on anticipation, rather than leaving the jury with only the general burden instruction cited by Cytek. This statement thus provides specific context for how Cytek's burden applies in the anticipation context.

Invalidity by anticipation means that a single piece of prior art discloses each and every element (or limitation) of the claimed invention such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.  To anticipate the invention (i.e., the patent claim), the prior art does not have to use the same words as the claim. But the single piece of prior art must disclose all of the elements of the claim, and the elements must be arranged in the same way as in the claim.  The claim elements may either be disclosed expressly or necessarily implied (i.e., definitely present, even if not explicitly stated). If the prior art discloses—whether expressly or inherently—a device that would practice the claim, the claim is anticipated.

If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.

---

**Cytek:** Beckman Coulter's propose language is duplicative and unnecessary. That Cytek must ultimately prove invalidity is already stated above (*e.g.*, Instructions 3, 6.1)—there is no need to serially repeat the burden of proof across each Invalidity instruction as Beckman Coulter proposes. Beckman Coulter does not cite any support for its claim that this addition is necessary to prevent juror confusion about the relevant standard.

[**Beckman Coulter**:  The DxP System cannot anticipate these claims if the DxP System never implemented the claimed features or that these features were not implemented in a single DxP product.][110]

[**Beckman Coulter:**  Asserting that the prior art is the same as the Accused Products cannot constitute clear and convincing evidence of invalidity.  The proper

---

[110] **Beckman Coulter:**  Beckman Coulter's instruction will help the jury understand the standard for anticipation by product prior art.  *In re Koninklijke Philips Patent Litig.*, 18-cv-01885-HSG, 2020 WL 7392868, at *27 (N.D. Cal. Apr. 13, 2020) ("For example, the party challenging validity may combine multiple types of evidence— including different written publications, source code, physical samples, engineer testimony, and testing—without performing a motivation to combine analysis. At the same time, a patentee may defeat a showing of invalidity by demonstrating that the product never implemented the described functionality or that it was not implemented in a single product.").  Beckman Coulter's proposal is not duplicative because it describes the standard for product prior art, while Cytek's instructions refer to disclosures, not products.

**Cytek:** Beckman Coulter's proposed language is unnecessary and does not adhere to any model jury instructions or jury instructions used by courts in this District. First, this Instructions already make clear that anticipation requires that a single prior art reference or system disclose each element of an asserted claim—for example, this Instruction already states that (1) "Invalidity by anticipation means that a single piece of prior art discloses each and every element (or limitation) of the claimed invention…"; and (2) "But the single piece of prior art must disclose all of the elements of the claim…" Second, Beckman Coulter's proposed language is neither a quote from the out-of-district case it cites, nor from any other impartial source. Instead, Beckman Coulter's language is a thinly veiled attempt to use the jury instructions to advance its own validity arguments regarding the DxP System and the features Beckman Coulter alleges are not disclosed therein. Lastly, Beckman Coulter's proposed language further risks jury confusion because it is syntactically incoherent.

comparison for purposes of invalidity is between the alleged prior art and the patent claims.][50]

### 6.6. Obviousness[111]

In order to be patentable, the invention must not have been obvious to a person of ordinary skill in the field of technology of the patent as of the priority date, which

---

[50] **Beckman Coulter:** Beckman Coulter's proposed language will avoid juror confusion about the proper comparison for determining validity. *Zenith Electronics Corp. v. PDI Communication Sys., Inc.*, 522 F.3d 1348, 1363 (Fed. Cir. 2008) ("Likewise, mere proof that the prior art is identical, in all material respects, to an allegedly infringing product cannot constitute clear and convincing evidence of invalidity."). Cytek agrees that the Accused Products are "not relevant to the issue of validity." Beckman Coulter's instruction will make sure the jury understands that this is so.

**Cytek:** Beckman Coulter's proposed language is unnecessary and does not adhere to any model jury instructions or jury instructions used by courts in this District. First, this Instructions already make clear that anticipation requires that a single prior art reference or system disclose each element of *an asserted claim*—for example, this Instruction already states that (1) "Invalidity by anticipation means that a single piece of prior art discloses each and every element (or limitation) of the *claimed* invention…"; and (2) "But the single piece of prior art must disclose *all of the elements of the claim*…" Second, Beckman Coulter's proposed language risks confusing the jury. Nowhere else in the invalidity instructions are the Accused Products referenced because they are not relevant to the issue of validity, and Beckman Coulter's attempt to insert them here is unnecessary. Lastly, the proposed language is unwarranted because Cytek will not argue invalidity on the grounds that the Accused Products are identical to the DxP System—notably, Beckman Coulter does not cite any record evidence indicating a need for this instruction.

[111] Unless otherwise indicated, adapted from *Natera, Inc. v. CareDx, Inc.*, 1:20-cv-00038-CFC-CJB, D.I. 455, at § 6.D (D. Del. Jan. 25, 2024).

you must determine (as instructed above) and which refers to [**Cytek:** either the Asserted Claims' presumptive priority date of November 26, 2014][112] **OR**:

1. **April 18, 2012**: if you determined that the claims are entitled to an October 19, 2012 priority date **AND** April 18, 2012 invention date; **OR**

2. **October 19, 2012**: if you determined that the claims are entitled to October 19, 2012 priority date **BUT NOT** an April 18, 2012 invention date; **OR**

3. **April 29, 2013**, **May 30, 2013**, OR **December 4, 2013**: if you found the Asserted Claims were **NOT** entitled to an October 19, 2012 priority date, and were instead entitled to one of these other priority dates; OR

4. [Beckman Coulter:  **November 26, 2014**: if you found the Asserted Claims were NOT entitled to another priority date].[113]

---

[112] **Cytek:** As discussed above in section 6.3.1, Cytek's proposed language is an accurate recitation of the law.  Under binding Federal Circuit caselaw, the presumptive priority date of the Asserted Patents is November 26, 2014 and the burden rests with Beckman Coulter to prove entitlement to an earlier priority date. *Natural Alternatives Int'l, Inc. v. Iancu*, 904 F.3d 1375, 1380 (Fed. Cir. 2018); *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1380 (Fed. Cir. 2015); *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305 (Fed. Cir. 2008).

**Beckman Coulter:**  Cytek's proposal is argumentative and suggests to the jury that the Court believes November 2014 is the priority date.  Cytek added its cited case law to its position at 4:48 pm the day these instructions were due for filing.  Beckman Coulter therefore has not had sufficient time to review and respond.  Beckman Coulter reserves all rights.

[113] **Beckman Coulter:**  Beckman Coulter's proposal provides the jury with the possible priority dates without suggesting the Court has endorsed any particular date.  Beckman Coulter also disagrees with Cytek's proposed revision, which will suggest to the jury that the Court agrees with Cytek's position.

Cytek contends that the Asserted Claims are invalid as obvious over the following combinations of prior art. Beckman Coulter disagrees and contends that all Asserted Claims are valid and non-obvious.

| Claims | Obviousness Ground |
|---|---|
| **U.S. Patent No. 10,330,582 (the '582 Patent)** ||
| Claims 1, 3, 6 | BD FACSArray System & Lemoff |
| Claims 1, 3, 6 | Luminex System & Lemoff |
| Claims 1, 3, 6 | Oostman, Lemoff & Frazier |
| Claims 1, 3, 6, 23, 26 | DxP System & BD FACSArray System |
| Claims 1, 3, 6, 23, 26 | DxP System & Luminex System |
| **U.S. Patent No. 11,703,443 (the '443 Patent)** ||
| Claims 6, 10, 11, 15 | DxP System |
| Claims 4 | DxP System & Lemoff |
| Claims 4, 6, 10, 11, 15 | BD LSR-II System & Lemoff |
| Claims 4, 6, 10, 11, 15 | Luminex System & Lemoff |
| Claims 4, 6, 10, 11, 15 | Oostman & Lemoff |
| **U.S. Patent No. 12,174,107 (the '107 Patent)** ||
| Claims 5, 16, 26, 27, 29 | BD FACSArray System & Lemoff |
| Claims 18 | BD FACSArray System, Oostman & Lemoff |
| Claims 5, 16, 18, 26, 27, 29 | Luminex System & Lemoff |
| Claims 5, 16, 18, 26, 27, 29 | Oostman, Lemoff & Frazier |
| Claims 5, 16, 18, 26, 27, 29 | Cytek DxP System & BD FACSArray System |

**Cytek:** If the Court is inclined to adopt Beckman Coulter's proposal, Cytek requests that the wording be: "**November 26, 2014**: if you found the Asserted Claims were entitled only to their presumptive priority date and **NOT** to another priority date." Beckman Coulter's attempt to withhold from the jury that the Asserted Patents are only presumptively entitled to a priority date of November 26, 2014 is improper, as noted above.

| Claims | Obviousness Ground |
|---|---|
| Claims 5, 16, 18, 26, 27, 29 | Cytek DxP System & Luminex System |

You should consider each claim separately. If a patent claim is obvious, it is invalid. Cytek must prove [**Beckman Coulter:** by clear and convincing evidence][114] that the claimed inventions of the Asserted Patents would have been obvious to a person having ordinary skill in the art at the time of the priority date of the Asserted Patents. Beckman Coulter contends that the claims are valid and are not obvious.

The issue is not whether the claimed subject matter would have been obvious to you as a layperson, to me as the judge, or for that matter to a genius in the field of technology, but whether it would have been obvious to one of ordinary skill in the art at the time of the priority date of the Asserted Claim. You must decide what the priority date is as discussed-at the start of this section. [**Cytek:** Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown

---

[114] **Beckman Coulter:** Beckman Coulter's proposed language aligns with the *Natera* instruction on which this instruction is based. *Natera, Inc. v. CareDx, Inc.*, 1:20-cv-00038-CFC-CJB, D.I. 455, at § 6.D (D. Del. Jan. 25, 2024). Beckman Coulter's language is also necessary to tell the jury the appropriate standard for proving obviousness.

**Cytek:** Beckman Coulter's propose language is duplicative and unnecessary. That Cytek must ultimately prove invalidity is already stated above (*e.g.*, Instructions 3, 6.1)—there is no need to serially repeat the burden of proof across each Invalidity instruction as Beckman Coulter proposes. Beckman Coulter does not cite any support for its claim that this addition is necessary to prevent juror confusion about the relevant standard.

by considering one or more than one item of prior art. To be clear, when combining

prior art, obviousness does not require that a feature from one prior art item actually

be incorporated into another prior art item or that items from different prior art

perfectly fit together.  Instead, a person of ordinary skill in the art is also a person of

ordinary creativity and in many cases will be able to adjust the teachings from different prior art so they fit together like pieces of a puzzle.][115]

You should not consider what is known today or use what is taught in the patent as a road map for selecting and combining items of prior art.  Do not use hindsight.  Instead, put yourself in the place of a person of ordinary skill in the art as of the relevant priority date.

In determining whether an Asserted Patent Claim would have been obvious, you must consider:

1.    the scope and content of the prior art;

2.    the level of ordinary skill in the field of the invention that someone would have had at the time of the priority date;

3.    any differences between the prior art and the claimed invention; and

4.    any relevant "objective indicia" of nonobviousness, which I will explain shortly.

In considering whether a claimed invention is obvious, you may [**Beckman Coulter:** (but are not required to)][116] find obviousness if you find that at the time of the claimed invention, a reason existed that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the same way the claimed invention does.

[**Beckman Coulter:**  Generally, a person of ordinary skill in the art would only have been motivated to combine analogous art.  Prior art is analogous where

115

[115] **Cytek:** The proposed language is an accurate recitation of law, *ClassCo, Inc. v. Apple, Inc.*, 838 F.3d 1214, 1219 (Fed. Cir. 2016) ("Instead, *KSR* teaches that '[a] person of ordinary skill is also a person of ordinary creativity, not an automaton" … [a]nd it explains that the ordinary artisan recognizes 'that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle.'" (internal citations omitted) (quoting *KSR International Co. v. Teleflex Inc.,* 550 U.S. 398, 420-21 (2007))); *see also Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC*, 825 F.3d 1373, 1381 (Fed. Cir. 2016) (citation omitted), and aligns with model jury instructions and similar instructions given by courts in this District.   *See* 2025 AIPLA Model Patent Jury Instructions, Section V(7.0) ("Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering one or more than one item of prior art."); Section V(7.2) ("In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may consider the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention."), Section V(7.3) ("The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems."); *see also Jackson v. NuVasive, Inc.*, No. 1-21-cv-00053 (RGA), D.I. 529 (Final Jury Instructions), at 19 (D. Del. Apr. 21, 2025) ("Obviousness may be shown by considering one or more than one item of prior art."); *Pacific Biosciences of California, Inc. v. Oxford Nanopore Technologies Inc.*, No. 1-17-cv-00275-LPS, D.I. 476 (Final Jury Instructions), at 27 (D. Del. Mar. 17, 2020) (similar); *Personal Audio LLC v. Google LLC*, No. 1-17-cv-01751 (CFC), D.I. 886 (Final Jury Instructions), at 18 (D. Del. Sep. 12, 2023) ("And assume that the person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems in this field."); *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1-19-cv-00097 (CFC) (CJB), D.I. 450 (Final Jury Instructions), at (D. Del. Aug. 4, 2022 (same); *St. Jude Medical, et. al. v. Volcano Corporation*, No. 1:10-cv-00631-RGA-MPT, D.I. 431 (Final Jury Instructions), at 18 (D. Del. Oct. 19, 2012) ("A person of ordinary skill in the art, however, is also a person of ordinary creativity. In many cases, a person of ordinary skill in the art will be able to fit the teachings of multiple patents together like pieces of a puzzle."); *PureWick Corporation v. Sage Products LLC*, No. 1-19-cv-01508, D.I. 314 (Final Jury Instruction), at 27 (D. Del. Apr. 1, 2022) ("Common sense teaches, however, that familiar items may have obvious uses beyond their primary purposes, and in many

116

cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle.").

**Beckman Coulter:**  Cytek made significant revisions to its position at 4:48 pm the day these instructions were due.  Beckman Coulter has therefore had insufficient time to review and respond.  Beckman Coulter reserves all rights.

Cytek's instruction departs from the *Natera* instruction on which this instruction is based.  *Natera, Inc. v. CareDx, Inc.*, 1:20-cv-00038-CFC-CJB, D.I. 455, at § 6.D (D. Del. Jan. 25, 2024).  Cytek identifies no instructions given by this Court that use its proposed language.  Contrary to Cytek's assertion, neither *Personal Audio* nor *Magnolia* used Cytek's proposed language.  Rather,  *Personal Audio* and *Magnolia* stated that "the person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems in this field," not "a person of ordinary skill in the art is understood to be a person of ordinary creativity, capable of adjusting elements from the prior art to unite them" as Cytek proposes. *Personal Audio LLC v. Google LLC*, No. 1-17-cv-01751 (CFC), D.I. 886 (Final Jury Instructions), at 18 (D. Del. Sep. 12, 2023); *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1-19-cv-00097 (CFC) (CJB), D.I. 450 (Final Jury Instructions), at  (D. Del. Aug. 4, 2022).  And neither case used any of Cytek's other language.

Cytek's proposed instruction is also unnecessary because the jury will be otherwise instructed about the proper standard for obviousness, including that obviousness is based on "combinations of prior art."  Indeed, the jury will be provided with Cytek's table of art combinations, so there can be no doubt that the jury will understand that obviousness can be based on more than one reference.

117

Cytek's proposed language would confuse the jury.  For example, Cytek proposes "[t]o be clear, when combining prior art, obviousness does not require that a feature from one prior art item actually be incorporated into another prior art item or that items from different prior art perfectly fit together."  But Cytek's cited instructions and cases say the opposite—that a POSA "will be able to fit the teachings of multiple patents together like pieces of a puzzle."  *See St. Jude Medical, et. al. v. Volcano Corporation*, No. 1:10-cv-00631-RGA-MPT, D.I. 431 (Final Jury Instructions), at 18 (D. Del. Oct. 19, 2012) ("Judge Andrews instructed the jury that "A person of ordinary skill in the art, however, is also a person of ordinary creativity. In many cases, a person of ordinary skill in the art ***will be able to fit the teachings of multiple patents together like pieces of a puzzle***." (emphasis added)); *PureWick Corporation v. Sage Products LLC*, No. 1-19-cv-01508, D.I. 314 (Final Jury Instruction), at 27 (D. Del. Apr. 1, 2022) ("Common sense teaches, however, that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill ***will be able to fit the teachings of multiple patents together like pieces of a puzzle***."); *ClassCo, Inc. v. Apple, Inc.*, 838 F.3d 1214, 1219 (Fed. Cir. 2016) ("Instead, *KSR* teaches that '[a] person of ordinary skill is also a person of ordinary creativity, not an automaton" … [a]nd it explains that the ordinary artisan recognizes 'that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill ***will be able to fit the teachings of multiple patents together like pieces of a puzzle***.'").

[116] **Beckman Coulter:** Beckman Coulter's instruction aligns with the *Natera* instruction on which this instruction is based.  *Natera, Inc. v. CareDx, Inc.*, 1:20-cv-00038-CFC-CJB, D.I. 455, at § 6.D (D. Del. Jan. 25, 2024) ("In considering whether a claimed invention is obvious, you may (but are not required to) find obviousness if you find that, at the time of the claimed invention, a reason existed….").  Cytek also admits that the jury is "not required to find obviousness if they find that a reason existed at the time of invention to combine known elements" and thus this instruction is legally proper.

118

either (1) the art is from the same field of endeavor as the claimed invention, regardless of the problem addressed or (2) even if the reference is not within the same field of endeavor, the reference is reasonably pertinent to the particular problem with which the inventor is involved.][53]

---

**Cytek:** Beckman Coulter's proposal is unnecessary. Here, it is already clear to the jury that they are not *required* to find obviousness if they find that a reason existed at the time of invention to combine known elements as recited by the claimed invention because the instruction otherwise reads "you *may* find," not "you *must* find." Indeed, excluding Beckman Coulter's proposed language is consistent with this Court's approach in *Deere & Co. v. Agco Corp. Precision Planting LLC*. No. 18-827 (CFC), D.I. 535-1 (Jury Instructions), at 25 (D. Del. Mar. 28, 2023) ("In considering whether a claimed invention is obvious, you may find obviousness if you find that at the time of the claimed invention, a reason existed that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the same way the claimed invention does.").

[53] **Beckman Coulter:** Beckman Coulter's proposed language will assist the jury in understanding whether a skilled artisan would have been motivated to combine the prior art. *In re Ethicon, Inc.*, 844 F.3d 1344, 1349 (Fed. Cir. 2017) ("Generally, a skilled artisan would only have been motivated to combine analogous art. Prior art is analogous where either (1) 'the art is from the same field of endeavor, regardless of the problem addressed' or (2) even if the reference is not within the same field of endeavor, 'the reference still is reasonably pertinent to the particular problem with which the inventor is involved.'"). This instruction is necessary because Cytek relies on references from different fields of endeavor and thus the jury must decide whether there would have been motivation to combine these references.

You should also consider whether a person of ordinary skill would have had a reasonable expectation of success in making or carrying out the invention through combining or modifying the prior art without the benefit of the Asserted Patents and their disclosure. [**Beckman Coulter:** Importantly, a claim is not proved obvious merely by demonstrating that each of the claim's elements or requirements was independently known in the art.  Most, if not all, inventions rely on building blocks

---

**Cytek:** Beckman Coulter's proposed language is unnecessary and does not adhere to any model jury instructions or jury instructions used by courts in this District. Indeed, Beckman Coulter's proposed language departs from the *Natera* instruction on which this instruction is based.  *Natera, Inc. v. CareDx, Inc.*, 1:20-cv-00038-CFC-CJB, D.I. 455, at § 6.D (D. Del. Jan. 25, 2024). Beckman Coulter's instruction also risks confusing jury by adding additional, unnecessary elements to this instruction—certainly, Beckman Coulter fails to identify any need for this language. Instead, Beckman Coulter's proposed language is an attempt to advance its baseless argument that Cytek's asserted prior art references from the optical communications field are non-analogous art despite these references being directed to wavelength division demultiplexing and Beckman Coulter concluding such art to be sufficiently pertinent to the claimed invention to warrant inclusion in its IDS's during prosecution of the Asserted Patents.

If the Court is inclined to accept Beckman Coulter's proposal, Cytek would ask that the following language be included to properly instruct the jury on what it means for a reference to be "reasonably pertinent": "A reference is reasonably pertinent if, even though it may be in a different field from that of the inventor's endeavor, it is one which, because of the matter with which it deals, logically would have commended itself to an inventor's attention in considering his problem. If a reference disclosure has the same purpose as the claimed invention, the reference relates to the same problem, and that fact supports use of that reference in an obviousness rejection." *In re Clay*, 966 F. 2d 656, 659 (Fed. Cir. 1992); *Innovention Toys, LLC v. MGA Entertainment, Inc.*, 637 F.3d 1314, 1321 (Fed. Cir. 2011). Cytek's additional proposal directly quotes the Federal Circuit, and explains an otherwise unknown legal concept (i.e., "reasonably pertinent") to the jury.

120

of prior art, and claimed discoveries will likely be—almost of necessity—combinations of what is already known.] [117] [**Cytek:** To show obviousness, the law does not require that the prior art provide proof, to a statistical certainty, that the

---

[117] **Beckman Coulter:** Beckman Coulter's instruction aligns with the *Natera* instruction on which this instruction is based. *Natera, Inc. v. CareDx, Inc.*, 1:20-cv-00038-CFC-CJB, D.I. 455, at § 6.D (D. Del. Jan. 25, 2024) ("Most, if not all, inventions rely on building blocks of prior art, and claimed discoveries will likely be—almost of necessity—combinations of what is already known."). This instruction is necessary to explain to the jury that it is not enough that the elements of the claimed invention are disclosed in the prior art because most inventions "rely on building blocks long since uncovered, and claimed discoveries almost of necessity will be combinations of what, in some sense, is already known." *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 418-419 (2007). By contrast, Cytek's proposal departs from the *Natera* instruction on which this instruction is based. Cytek also does not identify any instruction given by this Court that uses Cytek's proposed language. Moreover, Cytek's proposal is unnecessary as the jury will already be instructed that only a "reasonable" expectation of success is required.

**Cytek:** Beckman Coulter's proposed language is unnecessary—indeed, Beckman Coulter fails to identify any reason for its inclusion. To the extent the Court is inclined to include Beckman Coulter's proposed language, Cytek asks that the following be included as well: "To show obviousness, the law does not require that the prior art provide proof, to a statistical certainty, that the claimed result would work. In the context of obviousness, only a reasonable expectation of success is required, not conclusive proof or absolute predictability." Cytek refers the Court to the next footnote, which addresses Cytek's proposal.

121

claimed result would work. In the context of obviousness, only a reasonable expectation of success is required, not conclusive proof or absolute predictability.][118]

---

[118] **Cytek:** The proposed language is an accurate recitation of law, and aligns with similar instructions given by courts in this District. *Glaxosmithkline LLC and Smithkline Beecham (Cork) Ltd. v. Teva Pharmaceuticals USA, Inc.*, No. 14-878-LPS-CJB, D.I. 440 (Final Jury Instructions), at 39 (D. Del. June 19, 2017) ("To show obviousness, the law does not require that the prior art provide proof, to a statistical certainty, that the claimed result would work. In the context of obviousness, only a reasonable expectation of success is required, not conclusive proof or absolute predictability."); *Cirba, Inc. d/b/a Densify et al v. VMware, Inc.*, No. 1-19-cv-00742-LPS, D.I. 526 (Final Jury Instructions), at 40 (D. Del. Jan. 22, 2020) (same); *Osseo Imaging, LLC v. Planmeca USA Inc.*, No. 1-17-cv-01386, D.I. 188 (Final Jury Instructions), at 32-33) (D. Del. Aug. 26, 2022) (same). Here, this instruction is necessary to explain to the jury that the obviousness inquiry does not require the prior art actually practice or prove the success of the claimed invention—Beckman Coulter seeks to exclude it because it undercuts the (improper) argument Beckman Coulter intends to make at trial regarding the predictability of the prior art necessary to demonstrate obviousness, including the use of APDs in flow cytometry wavelength division demultiplexing systems, is necessary to prove obviousness.

122

You should also consider what are called "objective indicia" that may show whether or not the claimed invention is obvious. These indicia include:

1) whether the claimed invention was commercially successful as a result of the merits of the claimed invention;

2) whether the claimed invention satisfied a long-felt need;

---

Moreover, as recognized by courts in this District, Cytek's proposed instruction properly contextualizes Beckman Coulter's proposed language immediately preceding (i.e., to contextualize the sentence "Importantly, a claim is not proved obvious merely by demonstrating that each of the claim's elements or requirements was independently known in the art. Most, if not all, inventions rely on building blocks of prior art, and claimed discoveries will likely be—almost of necessity— combinations of what is already known."). *E.g.*, *Glaxosmithkline LLC and Smithkline Beecham (Cork) Ltd. v. Teva Pharmaceuticals USA, Inc.*, No. 14-878-LPS-CJB, D.I. 440 (Final Jury Instructions), at 39 (D. Del. June 19, 2017) ("<u>The existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art.</u> *To show obviousness, the law does not require that the prior art provide proof, to a statistical certainty, that the claimed result would work. In the context of obviousness, only a reasonable expectation of success is required, not conclusive proof or absolute predictability*." (emphases added—underlined language mirrors Beckman Coulter's proposed language; italicized language reflects additional language requested by Cytek)); *Cirba, Inc. d/b/a Densify et al v. VMware, Inc.*, No. 1-19-cv-00742-LPS, D.I. 526 (Final Jury Instructions), at 40 (D. Del. Jan. 22, 2020) (same); *Osseo Imaging, LLC v. Planmeca USA Inc.*, No. 1-17-cv-01386, D.I. 188 (Final Jury Instructions), at 32-33) (D. Del. Aug. 26, 2022) (same).

**Beckman Coulter:** Cytek's proposal departs from the *Natera* instruction on which this instruction is based. Cytek also does not identify any instruction given by this Court that uses Cytek's proposed language. Additionally, Cytek's proposal is unnecessary as the jury will already be instructed that only a "reasonable" expectation of success is required. Finally, Cytek mischaracterizes Beckman Coulter's arguments and Cytek has the burden to demonstrate reasonable expectation of success consistent with Federal Circuit precedent.

123

3) whether others had tried and failed to make the claimed invention;

4) whether the claimed invention achieved unexpected results;

5) whether others in the field praised the claimed invention;

6) whether others in the field copied the claimed invention; and

7) whether persons having ordinary skill in the art of the claimed invention expressed surprise or disbelief regarding whether the claimed invention would work.

[**Cytek:** Beckman Coulter bears the burden to prove objective indicia and that a "nexus," or connection, exists between the objective evidence of non-obviousness and the specific inventive aspect of the claim rather than an unclaimed feature or a feature that was known in the prior art. This means that any of the secondary considerations asserted by Beckman Coulter must be the result of the claimed invention. Any objective evidence of non-obviousness must be coextensive or commensurate in scope with the claims which the evidence is offered to support for you to give it any weight. Even if you conclude that Beckman Coulter has established some of the above considerations, those considerations should be considered along with all the other evidence in the case in determining whether Cytek has proven that the claimed invention would have been obvious.][**Beckman Coulter:** When considering these factors, there must be a connection, or what we call a nexus, between the objective evidence of non-obviousness, if it's been presented at trial,

124

and the specific inventive aspect of the claim rather than a feature that was known in the prior art or unclaimed features.][119]

---

[119] **Cytek:** Cytek's proposed language is a more accurate recitation of law than Beckman Coulter's proposal because Beckman Coulter's proposal omits key elements of obviousness inquiry, including (1) that Beckman Coulter bears the burden of providing objective indicia and the necessary nexus; and (2) that even if Beckman Coulter establishes some objective indicia, the jury should consider these *along with* all the other evidence in determining whether the claimed invention is obvious. Beckman Coulter does not dispute that Cytek's propose is an accurate recitation of law.  Indeed, Cytek's proposed language adheres to Federal Circuit precedent, model jury instructions and other jury instructions used by courts in this District. *E.g.*, *MeadWestVaco Corp. v. Rexam Beauty & Closures, Inc.*, 731 F.3d 1258, 1265 (Fed. Cir. 2013) ("objective evidence of non-obviousness must be commensurate in scope with the claims which the evidence is offered to support"); *Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 965 (Fed. Cir. 2014) ("It is the established rule that 'objective evidence of no-obviousness must be commensurate in scope with the claims which the evidence is offered to support.'"); *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373 (Fed. Cir. 2019) ("[P]atentee [must] show[] that the asserted objective evidence is tied to a specific product and that product 'embodies the claimed features, and is coextensive with them.'"); 2025 AIPLA Model Patent Jury Instructions, Section V(7.4) ("These secondary considerations are relevant only if there is a connection, or nexus, between the consideration and the invention covered by the patent claim. Even if you conclude that the patentee has established some of the above considerations, those considerations should be considered along with all the other evidence in the case in determining whether [the Defendant] has proven that the claimed invention would have been obvious."); *Cirba, Inc. d/b/a Densify et al v. VMware, Inc.*, No. 1-19-cv-00742-LPS, D.I. 526 (Final Jury Instructions), at 47-48 (D. Del. Jan. 22, 2020) ("[Patentee] has the burden to show evidence of 'objective indicia' or 'secondary considerations' and to show that there is a connection, sometimes called a 'nexus,' between the evidence showing any of these factors and the claimed invention, if this evidence is to be given weight by you in arriving at your conclusion on the obviousness issue."); *Glaxosmithkline LLC and Smithkline Beecham (Cork) Ltd. v. Teva Pharmaceuticals USA, Inc.*, No. 14-878-LPS-CJB, D.I. 440 (Final Jury Instructions), at 45-46 (D. Del. June 19, 2017) (same).

### 6.7.  Indefiniteness[120; 121]

Cytek alleges that claims 1, 3, 6, 23, and 26 of the '582 Patent, claim 10 of the '443 Patent, and claim 5 and 29 of the '107 Patent are invalid for failing to meet the definiteness requirement.  Beckman Coulter contends that these claims are definite and not invalid.

Definiteness is decided on a claim-by-claim basis.  Cytek must prove indefiniteness [**Beckman Coulter:** by clear and convincing evidence][122].  If a patent claim is indefinite, it is invalid.

---

**Beckman Coulter:** Cytek's proposed language is not from the *Natera* instructions on which this instruction is based, while Beckman's tracks the *Natera* instruction previously approved by this Court. *Natera, Inc. v. CareDx, Inc.*, 1:20-cv-00038-CFC-CJB, D.I. 455, at § 6.D (D. Del. Jan. 25, 2024).  Cytek identifies no instructions previously given by this Court that use Cytek's proposed language.  Cytek's proposal is overly complicated and is not necessary to tell the jury to consider all the evidence, as the jury will be told they "should *also* consider" evidence of objective indicia in addition to the other evidence on non-obviousness.

[120] Adapted from *Boston Scientific v. Nevro*, 1:16-cv-01163-CFC-CJB, D.I. 793, at § 5.6 (Oct. 8, 2021).

[121] Cytek reserves the right to reorganize the Jury Instruction sections to conform to the order of the Verdict Form, including having Indefiniteness follow the Instructions concerning Written Description and Enablement.

[122] **Beckman Coulter:**  Beckman Coulter's proposed language is necessary to prevent juror confusion about Cytek's burden and tracks the *Boston Scientific* instruction on which this instruction is based. *See Boston Scientific v. Nevro*, 1:16-cv-01163-CFC-CJB, D.I. 793, at § 5.6 (Oct. 8, 2021).

126

A patent must be precise enough to afford clear notice of what is claimed, thereby informing the public what is outside the claim and still open to them. This is known as the definiteness requirement. A claim is indefinite if the patent fails to inform those skilled in the art about the metes and bounds of the claim with reasonable certainty. Indefiniteness is to be evaluated from the perspective of someone skilled in the art at the time of the priority date of the Asserted Claim.

A claim is indefinite if its language might mean several different things and no informed and confident choice is available among the contending definitions. For example, a claim is indefinite if the patent and/or prosecution history fails to disclose a single known approach or establish that, where multiple known approaches exist, a person having ordinary skill in the art would know which approach to select.

[**Cytek:** A claim using a term of degree, such as "substantially" or "near," is indefinite if the claim language fails to provide enough certainty about the claim's

---

**Cytek:** Beckman Coulter's propose language is duplicative and unnecessary. That Cytek must ultimately prove invalidity is already stated above (*e.g.*, Instructions 3, 6.1)—there is no need to serially repeat the burden of proof across each Invalidity instruction as Beckman Coulter proposes. Beckman Coulter does not cite any support for its claim that this addition is necessary to prevent juror confusion about the relevant standard.

scope to one of skill in the art when read in the context of the invention.][123] [**Cytek:** Likewise, a claim term that is construed to have its plain and ordinary meaning is indefinite if the term's plain and ordinary meaning fails to provide enough certainty about the claim's scope to one of skill in the art when read in the context of the

---

[123] **Cytek:** The proposed language, which Beckman Coulter does not dispute is an accurate statement of law, is necessary to properly instruct the jury regarding the definiteness inquiry as it applies to terms of degree—here, for example, "substantially" and "near." It is well-established that terms of degree introduce additional complexity into the definiteness analysis, *see Interval Licensing v. AOL*, 766 F.3d 1364, 1370-71 (Fed. Cir. 2014) (discussing terms of degree, including within the Supreme Court's decision in *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014)). As the Federal Circuit has explained, for a term of degree to be found definite, it must "provide[] enough certainty to one of skill in the art when read in the context of the invention." *Id.* Beckman Coulter's argument that the proposed language risks confusing the jury "into believing the Court endorses Cytek's view" holds no water—the proposed language is impartial as to any term's definiteness and instead tracks the Federal Circuit's articulation of the relevant inquiry.

**Beckman Coulter:** Cytek's proposal departs from the *Boston Scientific* instruction on which this instruction is based. Further, Cytek should not be permitted to use the jury instructions to tell the jury that "substantially" is a purported term of degree for purposes of indefiniteness because one of the terms Cytek challenges as purportedly indefinite is "substantially full spectrum of light." Cytek cannot credibly argue that including "substantial" as an example in the jury instructions is somehow "impartial" and Cytek's proposal risks confusing the jury into believing that the Court endorses Cytek's view of the case.

invention.  The fact that a term has been construed or given its plain and ordinary meaning does not indicate that the term is definite.][124]

---

[124] **Cytek:** Beckman Coulter does not dispute that Cytek's proposal is an accurate statement of law. Moreover, it is necessary to avoid the risk that the jury will believe that the Court's construction of certain claim terms as having their plain and ordinary meaning is an indication by the Court that these terms and their scope would be understood by a POSA. Indeed, the Court here has expressly reserved the issue of indefiniteness on certain terms, which the Court construed as having their plain and ordinary meanings. 2025-08-21 *Markman* Hr'g at 133:11-15 (collimating, collimate, and collimated beam: "I'm not going to construe this term. I'm going to give it its plain and ordinary meaning. I do think it raises, though serious concerns about indefiniteness."). Thus, Cytek's proposal merely ensures that the jury should not give any presumption of definiteness to a claim term merely because it has been construed or given its plain and ordinary meaning.

**Beckman Coulter:** Cytek's proposal departs from the *Boston Scientific* instruction on which this instruction is based.  Cytek's instruction is also unnecessary because the jury has already been provided the standard for indefiniteness.  Cytek's instruction is an improper attempt to use the jury instructions to advance its substantive invalidity argument regarding the plain and ordinary meaning of certain claim terms.

129

### **6.8.**    **Written Description Requirement**[125]

The patent laws <u>contains what</u> is called the written description requirement. If [**Beckman Coulter:** clear and convincing evidence shows that][126] a patent claim lacks adequate written description, it is invalid.

Cytek contends that the Asserted Claims are invalid because the patent specification of the patents does not contain an adequate description of the claimed inventions.  Beckman Coulter contends that the Asserted Claims are not invalid and have sufficient written description support.  [**Beckman Coulter:** To succeed on this challenge, Cytek must show by clear and convincing evidence that a person having ordinary skill in the art at the time of the priority date would have concluded that the written specification does not describe the full scope of subject matter of the

---

[125] Adapted from *Natera v. CareDx*, 1:20-cv-00038-CFC-CJB, D.I. 455, at § 6.E (D. Del. Jan. 25, 2024).

[126] **Beckman Coulter:**  Beckman Coulter's proposed language is necessary to inform the jury about Cytek's burden and aligns with the *Natera* instruction on which this instruction is based.  *See Natera v. CareDx*, 1:20-cv-00038-CFC-CJB, D.I. 455, at § 6.E (D. Del. Jan. 25, 2024) ("If clear and convincing evidence shows that a patent claim lacks adequate written description, it is invalid.").

**Cytek:** Beckman Coulter's propose language is duplicative and unnecessary. That Cytek must ultimately prove invalidity is already stated above (*e.g.*, Instructions 3, 6.1)—there is no need to serially repeat the burden of proof across each Invalidity instruction as Beckman Coulter proposes. Beckman Coulter does not cite any support for its claim that this addition is necessary to prevent juror confusion about the relevant standard.

130

Asserted Claims.][**Cytek:** To succeed, Cytek must show that a person having ordinary skill in the field reading the patent specification as of the priority date would not have recognized that it describes the full scope of the invention as it is finally claimed in the Asserted Claims. If a patent claim lacks adequate written description, it is invalid.][127] [**Cytek:** A mere wish or plan for obtaining the claimed invention is

---

[127] **Cytek:** Cytek's proposed language is a more accurate recitation of law than Beckman Coulter's, and tracks the Federal Circuit Bar Association Model Patent Instructions. Federal Circuit Bar Association Model Patent Instructions at § 4.2a ("To succeed, [alleged infringer] must show by clear and convincing evidence that a person having ordinary skill in the field reading the patent specification as of the effective filing date of [insert date] would not have recognized that it describes the full scope of the invention as it is finally claimed in claim(s) [ ] of the [ ] patent. If a patent claim lacks adequate written description, it is invalid"). Cytek's proposal (and the Federal Circuit Bar Association Model Patent Instructions) also accurately accounts for the fact that the written description inquiry evaluates the written description ***as of the priority*** date vis-à-vis what is "***finally claimed***." While a patentee may seek to expand claim scope beyond that originally sought by filing a continuation or divisional application, any such expansion ***must*** be evaluated for written description support as of the priority date—indeed, this is a key element in evaluating the written description support for patents such as the Asserted Patents were several years (here, more than a decade for the '107 patent) elapse between the priority date and the issuance of patent claims. In contrast, Beckman Coulter's proposed language fails to account for these issues and risks confusing the jury by introducing unnecessary language, including referring to the undefined and otherwise unused terms "full scope of subject matter" and "written specification."

Additionally, to the extent that the Court is inclined to accept Beckman Coulter's proposal, Cytek requests that the phrase "Cytek must show by clear and convincing evidence" not be included. This language is duplicative and unnecessary. That Cytek must ultimately prove invalidity is already stated above (*e.g.*, Instructions 3, 6.1)—there is no need to serially repeat the burden of proof across each Invalidity instruction as Beckman Coulter proposes. Beckman Coulter does not cite any support for its claim that this addition is necessary to prevent juror confusion about the relevant standard.

**Beckman Coulter:**  Cytek made substantial changes to its position at 4:48 pm the day these instructions were due to be filed.  Beckman Coulter has therefore had insufficient time to review and respond.  Beckman Coulter reserves all rights.

Beckman Coulter's proposed language aligns with the *Natera* instruction on which this instruction is based. *See Natera v. CareDx*, 1:20-cv-00038-CFC-CJB, D.I. 455, at § 6.E (D. Del. Jan. 25, 2024) ("To succeed on this challenge, CareDx must show by clear and convincing evidence that a person having ordinary skill in the art at the time of the priority date…."). Cytek cites no case showing that its proposal is "more accurate" than Beckman Coulter's. It is not. *See In re Float'N'Grill LLC*, 72 F.4th 1347, 1350 (Fed. Cir. 2023) ("An applicant is free to seek an expanded scope of coverage beyond that originally sought by filing a continuation or divisional application during the pendency of a parent application and may therein include claims extending to the full scope of the subject matter described in the original specification under 35 U.S.C. § 112(a)."); *LizardTech, Inc. v. Earth Resource Mapping, Inc.*, 424 F.3d 1336, 1346 (Fed. Cir. 2005) (written description looks to whether "specification would 'reasonably convey to a person skilled in the art that [the inventor] had possession of the claimed subject matter at the time of filing'" (quoting *Bilstad v. Wakalopulos*, 386 F.3d 1116, 1125 (Fed. Cir. 2004))). Moreover, Cytek does not explain how "the full scope of subject matter of the Asserted Claims" could possibly be more confusing than "the full scope of the invention as it is finally claimed in the Asserted Claims" as proposed by Cytek. Finally, Cytek's repeated attempts to hide its burden to prove invalidity from the jury should be rejected. Cytek has identified no prejudice from instructing the jury that Cytek has the burden to prove lack of written description by clear and convincing evidence and no reason to depart from this Court's standard practice. Rather, the language is necessary to instruct the jury of clear and convincing standard at the moment they are instructed on written description, rather than leaving the jury with only the general burden instruction cited by Cytek. This statement thus provides specific context for how Cytek's burden applies in the written description context.

not adequate written description.][128][**Cytek:** Likewise, a patent specification that merely renders obvious the claimed invention does not satisfy the written description requirement.][129]

---

[128] **Cytek:** The proposed language is an accurate recitation of law and aligns with similar instructions given by this Court and others courts in this District. *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1:19-cv-00097-CFC-CJB, D.I. 450 (Final Jury Instructions), at 14 (D. Del. Aug. 4, 2022) ("But a mere wish or plan for obtaining the claimed invention is not adequate written description."); *TrackTime, LLC v. Amazong.com Services LLC, et al.*, No. 1-18-cv-01518 (MN), D.I. 306 (Final Jury Instructions) at 23 (D. Del. Sep. 19, 2023) (same). The propose language also tracks the Federal Circuit Bar Association Model Patent Instructions. Federal Circuit Bar Association Model Patent Instructions at § 4.2a ("However, a mere wish or plan for obtaining the claimed invention(s) is not adequate written description.").

Here, this instruction is necessary to explain to the jury that the written description inquiry cannot be satisfied by forward-looking statements and references in the specification for elements not yet in the possession of the inventor as of the priority date. This is a point directly at issue here—for example, the Asserted Patents' specification references detector types that Cytek contends did not exist as of the priority date. Contrary to Beckman Coulter's assertion, Cytek's proposed language is not an attempt to argue validity, but rather to provide the jury with impartial instruction to guide their deliberation on issues that will be tried by the parties. Indeed, Beckman Coulter does not argue that Cytek's proposed language is inaccurate, or that the instruction impartially recites the law.

**Beckman Coulter:** Cytek's proposal is not in the *Natera* instruction on which this instruction is based. Cytek admits that this instruction is an improper attempt to use the jury instructions to argue invalidity because Cytek contends that the specification "references detector types that Cytek contends did not exist as of the priority date." Cytek's proposal therefore risks confusing the jury into believing the Court endorses Cytek's view of the case.

134

[129] **Cytek:** Cytek's proposal is an accurate recitation of law that tracks language from the Federal Circuit. *See Lockwood v. American Airlines, Inc.*, 107 F. 3d 1565, 1572 (Fed. Cir. 1997) ("One shows that one is 'in possession' of the invention by describing the invention, with all its claimed limitations, not that which makes it obvious."; *ICU Medical, Inc. v. Alaris Medical Systems, Inc.*, 558 F.3d 1368, 1379 (Fed. Cir. 2009); *Regents of University of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1567 (Fed Cir. 1997) ("Recently, we held that a description which renders obvious a claimed invention is not sufficient to satisfy the written description requirement of that invention."). Here, this instruction is necessary to explain to the jury that the written description inquiry cannot be satisfied by forward-looking statements and references in the specification for elements not yet in the possession of the inventor as of the priority date. This is a point directly at issue here—for example, the Asserted Patents' specification references detector types that Cytek contends did not exist as of the priority date. Contrary to Beckman Coulter's assertion, Cytek's proposed language is not an attempt to argue validity, but rather to provide the jury with impartial instruction to guide their deliberation on issues that will be tried by the parties. Indeed, Beckman Coulter does not argue that Cytek's proposed language is inaccurate, or that the instruction impartially recites the law.

**Beckman Coulter:** Cytek identifies no instructions previously given by this Court that use Cytek's proposed language. Moreover, Cytek's proposed language risks confusing the jury by asking them to consider obviousness in the context of written description without providing any explanation of what it means for a specification to render a claimed invention obvious. Finally, Cytek admits that this instruction is an improper attempt to use the jury instructions to argue invalidity because Cytek contends that the specification "references detector types that Cytek contends did not exist as of the priority date." Cytek's proposal therefore risks confusing the jury into believing the Court endorses Cytek's view of the case.

135

In deciding whether Cytek has shown **[Beckman Coulter:** by clear and convincing evidence][130] that the patents do not satisfy the written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the priority date for each Asserted Claims.

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification and the exact words found in the claim need not be used.  The specification is not required to expressly include what was well-known to a person

---

[130] **Cytek:** Beckman Coulter's propose language is duplicative and unnecessary. That Cytek must ultimately prove invalidity is already stated above (*e.g.*, Instructions 3, 6.1)—there is no need to serially repeat the burden of proof across each Invalidity instruction as Beckman Coulter proposes. Beckman Coulter does not cite any support for its claim that this addition is necessary to prevent juror confusion about the relevant standard.

**Beckman Coulter:**  Beckman Coulter's proposal aligns with the *Natera* instruction on which this instruction is based.  *See Natera v. CareDx*, 1:20-cv-00038-CFC-CJB, D.I. 455, at § 6.E (D. Del. Jan. 25, 2024).  Cytek's repeated attempts to hide its burden to prove invalidity from the jury should be rejected.  Cytek has identified no prejudice from instructing the jury that Cytek has the burden to prove lack of written description by clear and convincing evidence and no reason to depart from this Court's standard practice.  Rather, this language is necessary to instruct the jury of clear and convincing standard as they are instructed on written description, rather than leaving the jury with only the general burden instruction cited by Cytek. This statement thus provides specific context for how Cytek's burden applies in the written description context.

of ordinary skill in the art as of the priority date.  The level of required disclosure depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and other considerations appropriate to the subject matter.  The written description requirement does not demand either examples or an actual reduction to practice, [**Beckman Coulter:** which occurs when a prototype is made that meets all limitations of the claim and would work for its intended purpose.][56] [**Cytek:** To

---

[56] **Beckman Coulter:** Beckman Coulter's proposal will help the jury understand the meaning of actual reduction to practice by explaining what an inventor must prove to demonstrate actual reduction to practice. *E.I. du Pont De Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060, 1075 (Fed. Cir. 2019) ("To establish an actual reduction to practice, as opposed to the constructive reduction to practice that occurs when a patent application is filed, 'the inventor must prove that: (1) he constructed an embodiment or performed a process that met all the limitations [of the claim]; and (2) he determined that the invention would work for its intended purpose.'"); *see also, e.g.*, *Complete Genomics, Inc. v. Illumina, Inc.*, 1:19-cv-00970-MN, D.I. 404 (Final Jury Instructions) at 22 (May 5, 2022) ("A claimed method is reduced to practice when all of its elements are successfully performed and has been shown that it will work for its intended purpose, or when it is fully described in a patent application filed with the Patent Office.").  Cytek does not identify any legal error in Beckman Coulter's proposed language and does not identify which "additional unnecessary detail" this instruction provides.

137

satisfy the written description requirement, enough must be included in the specification to convince persons of ordinary skill in the art that the inventor possessed the full scope of the invention.  Claims may be no broader than the supporting disclosure, and a narrow disclosure will limit claim breadth.  This means that a claim is invalid for lack of written description if it fails to include something that the specification identifies as an essential element.][131]

---

**Cytek:** Beckman Coulter's proposal is not in the *Natera* instruction on which this instruction is based despite Beckman Coulter arguing elsewhere that Cytek's proposals should not be included because they deviate from the *Natera* instruction. *Natera v. CareDx*, 1:20-cv-00038-CFC-CJB, D.I. 455, at § 6.E (D. Del. Jan. 25, 2024). Beckman Coulter fails to identify any reason for which this additional language is necessary, other than broadly claiming it will "help the jury … by explaining what an inventor must prove to demonstrate actual reduction to practice." Not so. This instruction is more likely to confuse the jury by providing additional, unnecessary detail. Unsurprisingly, Beckman Coulter fails to identify a single model jury instruction or set of instructions given by this Court or other courts in this District that use Beckman Coulter's proposed language.

[131] **Cytek:** The proposed language is an accurate recitation of law, *see Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed. Cir. 1998), and is modeled on the Federal Circuit Bar Association Model Patent Instructions and jury instructions given by courts in this District, *e.g.*, Federal Circuit Bar Association Model Patent Instructions at § 4.2a.; *Jazz Pharmaceuticals, Inc. v. Avadel Pharmaceuticals PLC et al*, No. 1-21-cv-00691 (GBW), D.I. 572 (Final Jury Instructions), at 33-34 (D. Del. Mar. 1, 2024). This instruction is necessary here because the parties dispute whether certain claim limitations have adequate written support because they omit essential elements of the invention as disclosed in the specification, and are thus broader than what the supporting disclosure allows.

138

Contrary to Beckman Coulter's assertion, the phrases "essential elements" and "narrow disclosure will limit claim breadth" are readily discernible. *See, e.g., Jazz Pharmaceuticals, Inc. v. Avadel Pharmaceuticals PLC et al*, No. 1-21-cv-00691 (GBW), D.I. 572, at 33–34 (D. Del. Mar. 1, 2024) ("However, written description support for the ***essential elements*** of the invention must be disclosed in the specification itself, and not merely present in the prior art." (emphasis added)). *Cooper Cameron* merely rejected an "essential element" test requiring inquiry into the inventor's *intent* while upholding the "unremarkable proposition that a broad claim is invalid when the entirety of the specification clearly indicates that the invention is of a much narrower scope." *Cooper Cameron Corp. v. Kvaerner Oilfield Prods.*, Inc., 291 F.3d 1317, 1323 (Fed. Cir. 2002). Thus, *Cooper* is consistent with the well-established principle that claiming an invention that omits elements the specification deems necessary renders a claim invalid. *See Gentry Gallery*, 134 F.3d at 1479. Finally, Beckman Coulter's request for additional qualifying language about embodiments, preferred examples, and knowledge in the art would only cause jury confusion by burying the written description standard under a series of out-of-context caveats and carve-outs.

**Beckman Coulter:** Cytek made substantial revisions to its position at 4:48pm EST on the day these instructions were due. As a result, Beckman Coulter has not had sufficient time to review and respond. Beckman Coulter reserves all rights.

Cytek's proposal departs from the *Natera* instruction on which this instruction is based. *See Natera v. CareDx*, 1:20-cv-00038-CFC-CJB, D.I. 455, at § 6.E (D. Del. Jan. 25, 2024). Cytek identifies no instructions given by this Court that contain Cytek's proposed language.

139

In evaluating whether the specification has provided an adequate written description, you may consider such factors as:

1) the nature and scope of the patent claims;

2) the complexity, predictability, and maturity of the technology at issue;

---

Cytek's proposal also risks confusing the jury by injecting the term "essential elements" into the instructions without explanation and suggesting that "narrow" disclosures always limit claims. But *Gentry Gallery* supports no such statement and said only "in a given case, the scope of the right to exclude **may be limited** by a narrow disclosure" and found such limitation where "the originally disclosure clearly identifies the console **as the only possible location for the controls**." 134 F.3d 1473, 1479 (Fed. Cir. 1998); *see also see also Cooper Cameron Corp. v. Kvaerner Oilfield Prods.*, Inc., 291 F.3d 1317, 1323 (Fed. Cir. 2002) (no "'essential element' test mandating an inquiry into what an inventor considers to be essential to his invention and requiring that the claims incorporate those elements"). Thus, to the extent Cytek's proposal is adopted, Beckman Coulter requests that it be modified to explain to the jury that embodiments and figures do not limit the claims absent express statements or indications of limitation. *See, e.g.*, *Gentry Gallery*, 134 F.3d at 1479 ("[i]t is a truism that a claim need not be limited to a preferred embodiment"). Further, to the extent Cytek's proposal is adopted, Beckman Coulter also requests that it be modified to include the statement from *Jaxx Pharmaceuticals* that "It is unnecessary to spell out every detail of the invention in the specification, and specific examples are not required." *Jazz Pharmaceuticals, Inc. v. Avadel Pharmaceuticals PLC et al*, No. 1-21-cv-00691 (GBW), D.I. 572 (Final Jury Instructions), at 33-34 (D. Del. Mar. 1, 2024). Likewise, to the extent Cytek's proposal is adopted, it should be modified to explain that just because a feature "may be necessary [for some embodiments] does not mean that the inventors did not possess a formulation in which it was not necessary, *Allergan USA, Inc. v. MSN Lab'ys Prv. Ltd.*, 111 F.4th 1358, 1375 (Fed. Cir. 2024), and that "a patent specification need not disclose or teach what is known in the art," *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1373 (Fed. Cir. 2014). Finally, Cytek admits that this is an attempt to improperly use the jury instructions to advance its substantive invalidity arguments by suggesting that the Court endorses Cytek's view of the case.

3) the existing knowledge in the relevant field; and

4) the scope and content of the prior art.

The issue of written description is decided on a claim-by-claim basis, not as to the entire patent or group of claims.

### 6.9.    Enablement Requirement[132]

Cytek contends that the Asserted Claims are invalid because the specification of the Asserted Patents does not enable the full scope of the claimed inventions. Beckman Coulter contends that the Asserted Claims are valid and enabled.

[**Beckman Coulter:** To succeed, Cytek must show by clear and convincing evidence that the patent specifications of the; **Cytek:** To succeed, Cytek must show

---

[132] Unless otherwise indicated, adapted from *Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, 1:19-cv-02181-CFC-CJB, D.I. 784, at § 5.3 (Nov. 18, 2021).

that the]133 Asserted Patents do not contain a sufficiently full and clear description to have allowed a person having ordinary skill in the art to make and use the full scope of the claimed inventions as of the priority date without undue experimentation. If a patent claim is not enabled, it is invalid.

The question of undue experimentation is a matter of degree, and what is required is that the amount of experimentation not be "unduly extensive." Some amount of experimentation to make and use the invention is allowable. [**Beckman Coulter:** Further, enablement does not require that a person having ordinary skill

---

133 **Beckman Coulter:** Beckman Coulter's proposal is necessary to inform the jury about Cytek's burden and aligns with the *Steuben* instruction on which this instruction is based. *See Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, 1:19-cv-02181-CFC-CJB, D.I. 784, at § 5.3 (Nov. 18, 2021) ("To succeed, Shibuya and Hood must show by clear and convincing evidence that the patent specifications of the '591 and '188 patents do not contain…."). Cytek's repeated attempts to hide its burden to prove invalidity from the jury should be rejected. Cytek has identified no prejudice from instructing the jury that Cytek has the burden to prove lack of enablement by clear and convincing evidence and no reason to depart from this Court's standard practice. Rather, the language is necessary to instruct the jury of clear and convincing standard at the moment they are instructed on enablement, rather than leaving the jury with only the general burden instruction cited by Cytek. This statement thus provides specific context for how Cytek's burden applies in the written description context.

**Cytek:** Beckman Coulter's propose language is duplicative and unnecessary. That Cytek must ultimately prove invalidity is already stated above (*e.g.*, Instructions 3, 6.1)—there is no need to serially repeat the burden of proof across each Invalidity instruction as Beckman Coulter proposes. Beckman Coulter does not cite any support for its claim that this addition is necessary to prevent juror confusion about the relevant standard.

142

could make or use the most optimized configuration of the invention or a commercially viable embodiment of the invention.]¹³⁴

---

¹³⁴ **Beckman Coulter:** Beckman Coulter's instruction is necessary to explain to the jury that enablement focuses on the claimed invention and not the most optimized version of the claimed invention. Beckman Coulter's instruction also reflects Federal Circuit case law. *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1306-1307 (Fed. Cir. 2010) ("A patent specification only must enable one of ordinary skill in the art "to practice the claimed invention without undue experimentation. … In requiring disclosure of "programming" and relying on the difficulty of constructing Transocean's first dual activity rig, the district court erroneously required Transocean to enable the most efficient commercial embodiment, rather than the claims."); *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 684 (Fed. Cir. 2015) ("Title 35 does not require that a patent disclosure enable one of ordinary skill in the art to make and use a perfected, commercially viable embodiment…."); *CFMT, Inc. v. Yieldup Intern. Corp.*, 349 F.3d 1333, 1338 (Fed. Cir. 2003) ("In essence, the district court set the enablement bar too high. Enablement does not require an inventor to meet lofty standards for success in the commercial marketplace. Title 35 does not require that a patent disclosure enable one of ordinary skill in the art to make and use a perfected, commercially viable embodiment absent a claim limitation to that effect.").

[**Beckman Coulter:** Whether Cytek copied Beckman Coulter's claimed invention can be considered in determining whether a person of ordinary skill in the art could make and use Beckman Coulter's claimed inventions.][135]

---

**Cytek:** Beckman Coulter's proposed language is misleading and does not adhere to any articulation of law by any court, or to any model jury instructions or jury instructions used by courts in this District. Indeed, Beckman Coulter's proposal is not in the *Steuben Foods* instruction on which this instruction is based despite Beckman Coulter arguing elsewhere that Cytek's proposals should not be included because they deviate from the *Steuben Foods* instruction. *Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, 1:19-cv-02181-CFC-CJB, D.I. 784, at § 5.3 (Nov. 18, 2021). Beckman Coulter fails to identify any reason for which this additional language is necessary. It is not necessary. This instruction is more likely to confuse the jury by providing additional, unnecessary detail, and raising questions as to how they should differentiate an optimal configuration of the invention or commercially viable one *from* a non-optimal or non-commercially viable one. If the Court is inclined to adopt Beckman Coulter's proposed language, then Cytek requests that following language (in **bold underline**) be added: "Further, enablement does not require that a person having ordinary skill could make or use the most optimized configuration of the invention or a commercially viable embodiment of the invention **so long as the specification enabled a person having ordinary skill could make or use the full scope of the claimed invention as of the priority date.**"

[135] **Beckman Coulter:** Cytek made substantial revisions to its position at 4:48 pm EST the day these instructions were due to be filed. As a result, Beckman Coulter has not had sufficient time to review and respond. Beckman Coulter reserves all rights.

Beckman Coulter's instruction will inform the jury that evidence of copying is probative of enablement. *American Axle & Mfg. v. Neapco Holdings*, 2024 WL 125186, at *3 (D. Del. Jan. 11, 2024) ("Plaintiff may introduce evidence of copying if Defendants raise … nonenablement defense"); *Medtronic v. Cardiac Pacemakers*, 721 F.2d 1563, 1583 (Fed. Cir. 1983) ("copying may defeat assertions of nonenablement.").

144

In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

1) The time and cost of any necessary experimentation;

2) how routine any necessary experimentation is in the field;

3) whether the patent discloses specific working examples of the claimed invention;

4) The amount of guidance presented in the patent;

---

**Cytek:** Beckam Coulter's proposal baselessly injects the prejudicial and irrelevant concept of copying into this Instruction—copying is not part of the legal standard for enablement. The enablement inquiry asks whether the specification teaches a POSA to make and use the full scope of the claimed invention without undue experimentation, ***as of the priority date*** and ***not*** on what a competitor later did. Beckman Coulter does not identify a single model jury instructions or jury instructions used by courts in this (or any other) District that reference copying in the context of enablement, and it would be improper to do so.

Beckman Coulter cites no case that found enablement based on copying. *Medtronic* was an obviousness case where the Federal Circuit never reached enablement, analyzed copying in the enablement context, or articulated any legal standard governing how a jury should weigh copying evidence on that issue; the language Beckman Coulter cites is unreasoned dicta. *American Axle* addressed a motion in limine ruling on evidentiary admissibility, not a jury instruction. Critically, the court in that case conditioned admission of copying evidence on "an appropriate limiting instruction," recognizing the risk of prejudice to the defendant. *American Axle & Mfg. v. Neapco Holdings*, 2024 WL 125186, at *3 (D. Del. Jan. 11, 2024). Here, Beckman Coulter's proposed instruction does precisely the opposite: it inserts copying into the jury's enablement deliberations with no limiting instruction whatsoever, inviting the very prejudice that *American Axle* recognized.

Lastly, Beckman Coulter's proposal is inappropriate for the reasons set forth in Cytek's Reply ISO of its MIL #2, namely that Beckman Coulter cannot rely on any expert testimony at trial regarding enablement based on copying.

145

5) The nature and predictability of the field;

6) The level of ordinary skill in the field; and

7) The nature and scope of the claimed invention.;

No one of these factors is alone dispositive.  Rather, you must make your decision about whether or not the degree of experimentation required is undue based upon all of the evidence presented to you.  You should weigh these factors and determine whether, in the context of this invention and the state of the art as of the priority date of the Asserted Patents person having ordinary skill would have needed to experiment unduly to make and use the full scope of the claimed invention.

146

## 7.    DELIBERATIONS AND VERDICT

### 7.1.   Introduction[136]

That concludes the part of my instructions on the law.  I will end by explaining some things about how you will conduct your deliberations in the jury room and about your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case.  If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.  Any questions or messages normally should be sent through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages.  Do not write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be.  Your votes should stay secret until you are finished.

---

[136] Adapted from *Globus Medical, Inc. v. Life Spine*, *Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 5.1 (D. Del. Aug. 12, 2025) and *Deere & Co. v. AGCO Corp.*, 1:18-cv-00827-CFC-JLH, D.I. 535-1, at § 7.1 (D. Del. Mar. 28, 2023)

### 7.2.    Unanimous Verdict[137]

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict.  Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without disregarding your individual judgment.  Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors.  In the course of your deliberations, do not hesitate to re-examine your own views and change your opinions, if convinced they are erroneous.  But you should not give up your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

A verdict form has been prepared for you.  I will review it with you in a moment.  You will take the form to the jury room, and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date,

---

[137] *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 5.2 (D. Del. Aug. 12, 2025).

148

and sign the form.  You will then return to the courtroom, and my deputy will read aloud your verdict.

Do not show the completed verdict form to anyone or share it with anyone until you are in the courtroom.  Unless I direct you otherwise, do not reveal your answers until you are discharged.  After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

And I will remind you that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find.  It is your sole and exclusive duty and responsibility to determine the verdict.

### 7.3.   Duty to Deliberate[138]

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room.  In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement.  Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences.  Do not hesitate to change your mind if

---

[138] Adapted from *Globus Medical, Inc. v. Life Spine*, *Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 5.3 (D. Del. Aug. 12, 2025).

you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with.  In the end, your vote must be exactly that, your own vote.  It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say.  So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

### 7.4.    Social Media[139]

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case.  You may not use any electronic device or media, such as a telephone, cellphone, smartphone, iPhone, iPad, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chatroom, blog, website, or app such as Facebook or Meta, LinkedIn, Snapchat, YouTube, Twitter, now known as X, TikTok, or Instagram to communicate to anyone about this case or to conduct any research about this case

---

[139] Adapted from *Globus Medical, Inc. v. Life Spine*, *Inc*., No. 1:21-cv-01445-CFC, D.I. 346, at § 5.4 (D. Del. Aug. 12, 2025).

until I accept your verdict. You also should not communicate to anyone any information about this case or conduct any research about this case, until I accept your verdict.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

### 7.5. Court Has No Opinion[140]

Let me finish by repeating something I have said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourself based on the evidence presented.

---

[140] *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 5.5 (D. Del. Aug. 12, 2025).