# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BECKMAN COULTER, INC.,

        Plaintiff,

v.

CYTEK BIOSCIENCES, INC.,

        Defendant.

C.A. No. 24-0945-CFC

███████████████

**TGF CEVGF '/'RWDNE 'XGTUKQP**

## [PROPOSED] PRETRIAL ORDER

Plaintiff Beckman Coulter, Inc. ("Beckman Coulter" or "Plaintiff") and Defendant Cytek Biosciences, Inc. ("Cytek" or "Defendant") submit for the Court's approval this Joint Proposed Final Pretrial Order pursuant to Local Rule 16.3 and this Court's November 14, 2024 Scheduling Order (D.I. 25).  The parties attempted in good faith to reach consensus on the following issues.  To the extent the parties had differing positions, each party's respective proposal is explained for the Court's consideration.

A Pretrial Conference in this matter is scheduled for August 7, 2026.  A jury trial of this matter is scheduled to begin on August 17, 2026.

**Counsel for Plaintiff**

Omar A. Khan
Jeffrey A. Dennhardt
Laura Macro
Lauren Matlock-Colangelo
Jennifer L. Graber
Maggie Sawin
Kelly A. Todd
Robert J. Gunther, Jr.
WILMER CUTLER PICKERING
HALE and DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

Akkad Y. Moussa
WILMER CUTLER PICKERING
HALE and DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037

James M. Dowd
WILMER CUTLER PICKERING
HALE and DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
(213) 443-5300

Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com

**Counsel for Defendant**

Adam Pivovar
Dustin M. Knight
David Yun
COOLEY LLP
1299 Pennsylvania Avenue NW,
Suite 700
Washington, DC 20004
(202) 842-7800
apivovar@cooley.com
dknight@cooley.com
dyun@cooley.com

Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
MORRIS, NICHOLS, ARSHT &
TUNNELL, LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@morrisnichols.com
jtigan@morrisnichols.com
cclark@morrisnichols.com

Elizabeth M. Flanagan (#5891)
COOLEY LLP

ii

30 S. 9th Street, 7th Floor
Minneapolis, MN 55402
bflanagan@cooley.com

Reuben Chen
Alexandra Leeper
HanByul Chang
Juan Pablo Gonzalez
COOLEY LLP
3175 Hanover Street
Pal Alto, CA 94304
(650) 843-5000
rchen@cooley.com
aleeper@cooley.com
HanByul.chang@cooley.com
jgonzalez@cooley.com

## **TABLE OF CONTENTS**

I.    NATURE OF THE ACTION ................................................................................1

      A.   The Parties ...........................................................................................1

      B.   Pleadings & Patent Infringement Claims .............................................1

      C.   Jurisdiction ...........................................................................................2

      D.   Standing ................................................................................................2

      E.   Claim Construction ...............................................................................3

      F.   Issues to Be Litigated at Trial ..............................................................5

      G.   Pending Motions ...................................................................................6

II.   ISSUES OF FACT ............................................................................................7

      A.   Joint Statement of Uncontested Facts ..................................................7

      B.   Parties' Statements of Contested Facts to Be Litigated at Trial ..............8

III.  ISSUES OF LAW .............................................................................................8

IV.   EXHIBITS ........................................................................................................9

      A.   Trial Exhibits .......................................................................................9

      B.   Demonstratives ...................................................................................16

      C.   Exhibit Binders ...................................................................................19

V.    WITNESSES ...................................................................................................19

      A.   Live Witnesses ...................................................................................19

      B.   Deposition Designations .....................................................................25

      C.   Objections to Expert Testimony .........................................................29

VI.   STATEMENT OF PROOFS ...........................................................................29

VII.  TRIAL DISCLOSURE SCHEDULE ..............................................................29

A. Designated Corporate Representative .......................................29

B. Exhibits .......................................................................30

C. Demonstratives .............................................................33

D. Live Witnesses .............................................................36

E. Deposition Designations and Objections.............................36

F. Pleadings and Written Discovery .....................................39

VIII. NUMBER OF JURORS ............................................................40

IX. PHASES AND LENGTH OF TRIAL...........................................40

X. AMENDMENTS TO PLEADINGS ...........................................43

XI. MOTIONS IN LIMINE............................................................44

XII. CERTIFICATION REGARDING SETTLEMENT ....................46

XIII. OTHER MATTERS ................................................................46

A. Jury Notebooks .............................................................46

B. Handling of Confidential Information...............................47

C. Federal Judicial Center's Patent Video ...........................48

D. Set-Up of Electronic and Computer Equipment..................49

XIV. MISCELLANEOUS ISSUES.....................................................49

XV. MOTION FOR JUDGMENT AS A MATTER OF LAW ...........60

XVI. ORDER CONTROLS................................................................60

**TABLE OF EXHIBITS**

| Exhibit No. | Description |
|---|---|
| 1 | Statement of Uncontested Facts |
| 2 | Beckman Coulter's Statement of Contested Facts that Remain to be Litigated |
| 3 | Cytek's Statement of Contested Facts that Remain to be Litigated |
| 4 | Beckman Coulter's Statement of the Issues of Law that Remain to be Litigated |
| 5 | Cytek's Statement of the Issues of Law that Remain to be Litigated |
| 6 | Beckman Coulter's Exhibit List with Cytek's Objections |
| 7 | Cytek's Exhibit List with Beckman Coulter's Objections |
| 8 | Joint Exhibit List |
| 9 | Beckman Coulter's List of Potential Trial Witnesses and Cytek's Objections |
| 10 | Cytek's List of Potential Trial Witnesses and Beckman Coulter's Objections |
| 11 | Beckman Coulter's Deposition Designations with Cytek's Counter-Designations and Objections and Beckman Coulter's Objections to Cytek's Counter-Designations |
| 12 | Cytek's Deposition Designations with Beckman Coulter's Counter-Designations and Objections and Cytek's Objections to Beckman Coulter's Counter-Designations |
| 13 | Beckman Coulter's Statement of Proofs |
| 14 | Cytek's Statement of Proofs |
| 15 | Beckman Coulter's Proposed Amendments to the Pleadings |
| 16-18 | Beckman Coulter's Motions in Limine, Cytek's Oppositions, and Beckman Coulter's Replies |
| 19-21 | Cytek's Motions in Limine, Beckman Coulter's Oppositions, and Cytek's Replies |

## I.    NATURE OF THE ACTION[1]

1.    This is an action for patent infringement under Title 35 of United States Code.

### A.    The Parties

2.    Beckman Coulter is a corporation organized and existing under the laws of Delaware, with a principal place of business at 250 South Kraemer Boulevard, Brea, California 92821.

3.    Cytek is a corporation organized and existing under the laws of Delaware, with its principal place of business at 47215 Lakeview Boulevard, Fremont, California 94538.

### B.    Pleadings & Patent Infringement Claims

4.    Beckman Coulter's original complaint for patent infringement against Cytek was filed on August 14, 2024.  D.I. 1.  Beckman Coulter filed an amended complaint on January 9, 2025.  D.I. 42.  Cytek filed an answer to Beckman Coulter's amended complaint and a counterclaim for False Marking Under 35 U.S.C. § 292 on February 6, 2025.  D.I. 48.  Beckman Coulter filed an answer to Cytek's counterclaim on February 27, 2025.  D.I. 52.  Cytek voluntarily dismissed

---

[1] Where the parties have competing proposals, Cytek's proposals are listed in green and Beckman Coulter's in blue.

1

its counterclaim for False Marking Under 35 U.S.C. § 292 on March 17, 2026. D.I. 264.

5. Beckman Coulter's allegations of patent infringement have been narrowed to the following Asserted Claims of the following Asserted Patents (subject to potential additional narrowing currently under discussion between the parties):

| PATENT | CLAIMS |
| --- | --- |
| U.S. Patent No. 10,330,582 ("the '582 Patent") | 1, 3, 6, 23, and 26 |
| U.S. Patent No. 11,703,443 ("the '443 Patent") | 4, 6, 10, 11, and 15 |
| U.S. Patent No. 12,174,107 ("the '107 Patent") | 5, 16, 18, 26, 27, and 29 |

## C. Jurisdiction

6. This civil action for alleged patent infringement arises under the patent laws of the United States, including but not limited to 35 U.S.C. § 271. No party contests personal jurisdiction for purposes of this action.

7. No party contests that this Court has subject matter jurisdiction over Beckman Coulter's claims pursuant to 28 U.S.C. §§ 1331 and 1338.

## D. Standing

8. Beckman Coulter possesses all substantial rights in the Asserted Patents under 35 U.S.C. § 281 and therefore has statutory standing to pursue its

2

infringement claims. Cytek does not contest that Beckman Coulter has standing to assert its claims against Cytek.

## E.    Claim Construction

9.    The Court held two Markman hearings, on August 21, 2025 (D.I. 151) and September 17, 2025 (D.I. 173) respectively. The Court construed multiple claim terms at the hearings, and issued a Claim Construction Order on February 24, 2026 (D.I. 226). The Court construed the below claim terms as follows:[2]

| CLAIM TERM | DEFINITION |
|---|---|
| "[first / second] filter" ('443 Patent, cl. 10) | "first filter" is "initial filter," "second filter" is "second sequential filter after an initial filter" |
| "first optical filter" ('582 Patent, cl. 6) | [**Beckman Coulter:** Plain and ordinary meaning, which does not require a sequence;<br><br>**Cytek**: Plain and ordinary meaning (Aug. 21, 2025 Hr'g Tr. at 28:8-75:11; Sep. 17, 2025 Hr'g Tr. at 3:15-7:16.)] |
| "focusing lenses … configured to focus light" ('107 Patent, cl. 18) | "lenses that capture and converge light." [(Sep. 17, 2025 Hr'g Tr. at 34:17-19.)] |
| "image" ('582 Patent, cl. 1, 23, 26) | "Representation of an object created by light or emanating from a light source." [(Sep. 17, 2025 Hr'g Tr. at 89:15-17.)] |
| "first"/"second image" ('582 Patent, cl. 2) | [**Beckman Coulter:** Plain and ordinary meaning] |

---

[2] The parties incorporate by reference their respective footnotes in the Proposed Joint Final Jury Instructions for Phase 1.

| CLAIM TERM | DEFINITION |
|---|---|
| "first"/"second image" ('582 Patent, cl. 26) | [**Beckman Coulter**: For claims 26: "the second image is created after the first image and there is no intervening image."; **Cytek:** "the second image is created after the first image and there is no intervening image"(Sep. 17, 2025 Hr'g Tr. at 117:1-3.)] |
| "collimate" / "collimating" / "collimated beam" ('582 Patent, cls. 1, 3, 6, 23, 26; '443 Patent, cl. 10) | Plain and ordinary meaning [(Aug. 21, 2025 Hr'g Tr. at 133:11-17, 134:4-135:16.)] |
| "portion of the" ('582 Patent, cls. 1, 3, 6; '443 Patent, cls. 4, 6, 10, 11, 15; '107 Patent, cls. 5, 16, 18, 26, 27, 29) | "subset of the spectrum of the wavelengths of light" [(Sep. 17, 2025 Hr'g Tr. at 92:23-24.)] |
| "optical element configured to detect" ('443 Patent, cl. 15) | *Function*: "detect scattered light emitted by the particle in the flow channel and illuminated by a light source" [(D.I. 131-1, Ex. A to Amended Joint Claim Construction Chart at 18.)]<br><br>*Means*: The items labelled 408 or 413 in the specification. [(Sep. 17, 2025 Hr'g Tr. at 180:16-18.)] |
| "collimating optical element" ('582 Patent, cls. 1, 3, 6, 23, and 26) | *Function*: (1) receive light from a light source; (2) project a collimated beam<br><br>*Structure*: a lens, such as an achromatic doublet lens, and structural equivalents thereof [(D.I. 226 at 5.)] |
| "collimating optical element" ('582 Patent, cls. 23 and 26) | *Function*: (1) receive light from a light source; (2) project a first image<br><br>*Structure*: a lens, such as an achromatic doublet lens, and structural equivalents |

4

| CLAIM TERM | DEFINITION |
|---|---|
|  | thereof [(D.I. 226 at 5.)] |

**F.    Issues to Be Litigated at Trial**

10.    Subject to the Court's rulings on pending motions for summary judgment and *Daubert* motions, *see infra* § I.G, and any agreed-upon case narrowing, the issues to be litigated at trial include the following:

a.  **Direct Infringement.**  Beckman Coulter's claim that Cytek directly infringes the Asserted Claims of the Asserted Patents, literally and/or under the doctrine of equivalents.

b.  **Induced Infringement.**  Beckman Coulter's claim that Cytek induces infringement of the Asserted Claims of the Asserted Patents.

c.  **Contributory Infringement.**  Beckman Coulter's claim that Cytek contributorily infringes claims 11 and 15 of the '443 Patent and claims 5, 16, 18, 26, 27, and 29 of the '107 Patent.

d.  **Infringement under § 271(f)(1).**  Beckman Coulter's claim that Cytek infringes claims 11 and 15 of the '443 Patent and claims 5, 16, 18, 26, 27, and 29 of the '107 Patent under § 271(f)(1).

e.  **Infringement under § 271(f)(2).**  Beckman Coulter's claim that Cytek infringes claims 11 and 15 of the '443 Patent and claims 5, 16, 18, 26, 27, and 29 of the '107 Patent under § 271(f)(2).

f. **Willful Infringement.**  Beckman Coulter's claim that Cytek has willfully infringed the Asserted Claims.

g. **Money Damages.**  Beckman Coulter's claims for money damages.

h. **Injunctive Relief.**  Beckman Coulter's claim for injunctive relief.

i. **Reverse Doctrine of Equivalents**.  Cytek's defense that the Accused Products do not infringe under the reverse doctrine of equivalents.

j. **Invalidity.**  Cytek's defense that the Asserted Claims are invalid under 35 U.S.C. §§ 102, 103, and/or 112.

## G.    Pending Motions

11.    The motions currently pending before the Court are certain of the parties' respective Summary Judgment and/or *Daubert* Motions, and Motions *in Limine* (identified in Section XI and filed concurrently with this Proposed Pretrial Order) as identified below:

### 1.    Beckman Coulter's *Daubert* Motions

- *Daubert* Motion #1 to Exclude Drs. Ilkov and Leary's Opinions that Improperly Read Limitations into Claims (D.I. 237);
- *Daubert* Motion #2 to Exclude Drs. Ilkov and Leary's Opinions that Contradict the Court's Claim Constructions (D.I. 238);
- *Daubert* Motion #3 to Exclude Drs. Ilkov and Leary's Opinions on Non-Infringement Based on a Lack of Enablement and Written Description (D.I. 239);
- *Daubert* Motion #4 to Exclude Drs. Ilkov and Weigl's Improper Claim Construction of "Substantially Full Spectrum of Visible Light" (D.I. 240);

6

- *Daubert* Motion #5 to Exclude Junichiro Kono's Expert Opinions and Dr. Fedor Ilkov's Derivative Opinions Relying on Dr. Kono (D.I. 241);
- *Daubert* Motion #6 to Exclude Mr. Hansen's Adjusted Reasonable Royalty Rate as Based on Unreliable Methodology (D.I. 242); and
- *Daubert* Motion #7 to Exclude Mr. Hansen's Opinions that Cytek Had a Non-Infringing Alternative for "Non-U.S. Sales" (D.I. 243).

### 2.    Cytek's Summary Judgment Motions

- Motion for Summary Judgment of Non-Infringement of Asserted Claims 23 and 26 of the '582 Patent and Alternative Motion for Summary Judgment that the Asserted Claims of the '582 Patent are Invalid as Indefinite (MSJ No. 1) (D.I. 244);
- Motion for Summary Judgment of Non-Infringement of Asserted Claims 1, 3, and 6 of the '582 Patent and Alternative Motion that the Asserted Claims are Indefinite (MSJ No. 2) (D.I. 245);
- Motion for Summary Judgment of Invalidity of the Asserted Claims of the '443 and '107 Patents (MSJ No. 3) (D.I. 247);

## II.    ISSUES OF FACT

### A.    Joint Statement of Uncontested Facts

12.    Attached as **Exhibit 1** are facts that are not disputed or have been admitted, agreed to, or stipulated to by the parties and require no proof at trial.  The facts set forth in **Exhibit 1** are part of the evidentiary record in the case.  Subject to the Court's approval, either party, with prior notice to the other party, may read any or all of the uncontested facts to the jury, as long as entire facts are read (i.e., the entire numbered paragraph), and will be charged for the time used to do so.

7

13.    The parties are continuing to confer in good faith on the statement of uncontested facts.[3]  The parties reserve the right to modify or supplement the joint statement of uncontested facts, including to the extent necessary to reflect fairly the Court's rulings on any motions or subsequent orders of the Court or by agreement of the parties.

**B.    Parties' Statements of Contested Facts to Be Litigated at Trial**

14.    Beckman Coulter's statement of contested facts that remain to be litigated is set forth in **Exhibit 2**.  Cytek's statement of contested facts that remain to be litigated is set forth in **Exhibit 3**.

15.    The parties reserve the right to modify or supplement their statements of facts that remain to be litigated to the extent necessary to reflect fairly the Court's rulings on any motions or subsequent orders of the Court or by agreement of the parties.

**III.    ISSUES OF LAW**

16.    Beckman Coulter's statement of the issues of law that remain to be litigated is set forth in **Exhibit 4**.  Cytek's statement of the issues of law that remain to be litigated is set forth in **Exhibit 5**.

---

[3] *See* Joint Miscellaneous Issue No. #2.

17. The parties reserve the right to modify or supplement their Statements of Issues of Law that remain to be litigated to the extent necessary to reflect fairly the Court's rulings on any motions or subsequent orders of the Court, or by agreement of the parties. The parties have identified additional reservations in their Statements of Issues of Law that remain to be litigated, including the right to supplement and amend their lists, for example, to respond to any issues, arguments, or evidence raised by the other party, or in the event of any Court ruling that might raise new or additional issues.

## IV. EXHIBITS

### A. Trial Exhibits

18. Beckman Coulter's list of exhibits that it may offer at trial, except exhibits used solely for impeachment, is attached as **Exhibit 6**. Beckman Coulter identified its exhibits with PTX numbers, starting with PTX-0001. **Exhibit 6** also includes Cytek's objections to Beckman Coulter's trial exhibits, including citations to the Federal Rules of Evidence, using Cytek's objection shorthand, which is included at the end of Exhibit 6.

19. Cytek's list of exhibits that it may offer at trial, except demonstratives and exhibits used solely for impeachment, is attached as **Exhibit 7**. Cytek identified its exhibits with DTX numbers, starting with DTX-0001. **Exhibit 7** also includes Beckman Coulter's objections to Cytek's trial exhibits, including citations

9

to the Federal Rules of Evidence, using Beckman Coulter's objection shorthand, which is included at the end of Exhibit 7.

20.    Joint trial exhibits are identified with JTX numbers, starting with JTX-0001. The joint exhibit list is attached as **Exhibit 8**. The parties are working in good faith to supplement the joint exhibit list and will file with the Court an updated joint exhibit list by August 6, 2026. As with any other exhibit, joint trial exhibits must be admitted into evidence through a witness or a supporting declaration that is deemed proper and admissible under FRE 902(11), and actually used at trial. The presence of an exhibit on the joint exhibit list is not an admission that the exhibit is admissible, and the parties expressly reserve the right to object to admission of any exhibit on the joint exhibit list.

21.    The parties have indicated their objections to the other side's trial exhibits utilizing objection codes, and the respective keys to their objection codes are appended at the end of each exhibit list.

22.    This pretrial order contains the parties' good-faith efforts to identify the exhibits to be used at trial, except demonstratives and exhibits to be used solely for impeachment, as well as all objections to the admission of such exhibits. The deadline to supplement the exhibit lists to include additional exhibits is August 11, 2026. Any further exhibit list supplementation must be supported by good cause.

The parties reserve the right to object to any such additional exhibits. Documents not listed on an exhibit list may not be admitted at trial absent good cause shown.

23.    Any party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to all evidentiary objections (which may be raised at trial). Any exhibit, once admitted, may be used equally by each party, subject to any limitations as to its admission. The exhibit lists may include exhibits that may not necessarily be offered or introduced into evidence.

24.    The listing of a document on a party's exhibit list is not an admission that such document is relevant or admissible when offered by the opposing side. Asserting an objection to a document on an opposing party's exhibit list is not an admission that such document is not relevant or inadmissible when offered by the objecting party.

25.    The parties agree that any description of a document on an exhibit list, including the date listed for documents, is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document.

26.    The parties agree that if either party removes or otherwise withdraws an exhibit from its exhibit list, the other party may amend its exhibit list at any time to include that same exhibit without leave of Court. The parties also agree

11

that the parties thereafter may make objections to such exhibit, other than an objection based on untimely listing.

27.    Exhibits to be used solely for impeachment need not be included on the lists of trial exhibits or disclosed in advance of being used at trial.  Such exhibits used solely for impeachment and not included on an exhibit list may not be admitted into evidence absent leave of Court.

28.    The parties stipulate that each document that on its face appears to be generated by a party, a party's parent company, or a party's predecessor(s), including documents generated by its employees, officers, or agents, shall be deemed a true and correct copy of a document maintained in that entity's files as of the date of the entity's document collection under Federal Rule of Evidence 901, with no need for additional proof of authenticity or business record status at trial provided that the trial exhibit appears to be unaltered from the condition in which it was produced by the producing entity.  Notwithstanding the foregoing, the parties reserve the right to object to the authenticity of a document or its status as a business record if good cause is shown considering the context and use at trial, and each party reserves its right to object to the document on any other ground.  The parties agree to meet and confer in good faith regarding the authenticity and admissibility of the documents each party has produced.

29.    Complete legible copies of documents may be offered and received in evidence to the same extent as an original unless a genuine question is raised as to the authenticity of the original, or in the circumstances it would be unfair to admit the copy in lieu of the original.  Legible copies of United States patents and the contents of the Patent and Trademark Office file histories and records may be offered and received in evidence in lieu of certified copies thereof, subject to all other objections that might be made to the admissibility of certified copies.

30.    All exhibits shall be pre-marked with a stamp on the first page, to the extent possible, using the following color labels and containing the following prefix identifiers:

   a.  Beckman Coulter's Exhibits (Yellow Labels): PTX (beginning with PTX-0001);

   b.  Cytek's Exhibits (Blue Labels): DTX (beginning with DTX-0001);

   c.  Joint Exhibits (White Labels): JTX (beginning with JTX-0001).

31.    Pages of each exhibit shall be consecutively numbered.  As an example, pages of Beckman Coulter's first exhibit should be PTX-0001.001, PTX-0001.002, etc.

32.    In the case of trial exhibits that have been previously marked as a deposition exhibit, to remove duplicates and improve legibility of the exhibits used at trial, the parties agree that the trial exhibit shall be treated as identical to the

indicated deposition exhibit regardless of whether it bears a deposition exhibit sticker or identical Bates number, unless a genuine question is raised as to whether the trial exhibit and deposition exhibit are identical.  The parties also agree that two exhibits that are identical (notwithstanding different Bates numbers) shall be treated as identical, unless a genuine question is raised as to whether the exhibits are identical.

33.    The parties will be presenting exhibits electronically and respectfully request access to the courtroom shortly before trial, at the Court's convenience, to test the Court's audio-video equipment and set up their equipment.

34.    Absent agreement between the parties and approval by the Court, no exhibit will be admitted unless offered into evidence through a witness, who must at least be shown the exhibit, or a supporting declaration that is deemed proper and admissible under FRE 902(11).  Notwithstanding the foregoing, to avoid calling witnesses live or by designation solely for evidentiary issues and for purposes of streamlining the presentation and issues for the jury, the parties shall be permitted and encouraged to agree—and shall be required to participate in a good faith meet-and-confer—on which exhibits are not objectionable, and those exhibits shall be entered into evidence before any relevant fact or expert witness testifies.

35.    Nothing herein (including the exhibits hereto) shall be construed as a stipulation or admission that a document listed on a party's exhibit list is entitled to any weight in deciding the merits of this case.

36.    Each party has made a good-faith effort to list objections to exhibits offered by the other party as, e.g., not relevant (FRE 402), unduly prejudicial (FRE 403), or for lack of foundation (FRE 602) to the extent such objections are facially evident from the objected-to exhibit(s).  However, each party reserves the right to object to any evidence offered by the other party, including the admission of any exhibit, on any of these grounds, or any other proper basis, at the time such evidence is offered, in view of the specific context in which such evidence is offered.

37.    On or before the first day of trial, counsel for each party will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list for each party. Plaintiff shall provide a completed Form AO 187 exhibit list for all joint exhibits.

38.    After opening statements, exhibits may not be published, displayed or otherwise shown to the jury until after they have been admitted into evidence. Once admitted, counsel may publish exhibits to the jury without requesting to do so.

39.    A party may replace poor print or digital quality copies of exhibits with improved or higher print or quality digital copies. Any replacement copies must be provided to the other party no later than the day prior to use.

## B.    Demonstratives

40.    The term "demonstratives" includes power-points, graphics, animations, and physical demonstratives, but does not include scans or blow outs, highlights and/or ballooning of admitted exhibits or parts of admitted exhibits or testimony.  Demonstratives can include deposition testimony that will be played at some point in the case, so long as the parties' objections to the deposition testimony have been resolved in advance of the demonstrative's publication to the jury.

41.    Demonstratives exchanged may not be used by the opposing party before being used by the disclosing party.  Demonstrative slides must be numbered and exchanged, in good faith, in the order and with the same numbers that the party in good faith intends to use them.  The exhibit numbers should not change once the demonstratives have been exchanged.  However, nothing in this Pretrial Order shall require counsel to use all demonstrative slides or shall prevent counsel from exercising their judgment at trial as to the content and order of any examination.

42.    Once a demonstrative has been used by the disclosing party, the other party may not alter, in any way, the as-used, original version of the demonstrative.

16

For avoidance of doubt, this agreement does not prevent a party from altering a non-original copy of an as-used demonstrative that the offering party showed in court earlier in the trial or creating a new demonstrative that is a mark-up or modification of a previously used demonstrative.

43.     The parties agree that the demonstratives that the parties intend to use at trial do not need to be included on their respective exhibit lists that are part of this Final Pretrial Order.

44.     Beckman Coulter's demonstratives will be identified with PDX numbers, starting with PDX-001.

45.     Cytek's demonstratives will be identified with DDX numbers, starting at DDX-001.

46.     The party seeking to use a demonstrative in connection with direct examination (with the exception of demonstratives drawn or created by a witness or counsel during the course of direct testimony) will provide a color representation of the demonstrative to the other side in PDF or PPT form. However, for video or animations, the party seeking to use the demonstrative will provide it to the other side in an appropriate electronic format to view the video or animation, in the same form in which it will be used at trial.  For physical demonstratives, but not including printable demonstratives, the party seeking to use the demonstrative will provide by electronic means a color representation as a

17

PDF of 8.5" x 11" copies of the exhibits and make the demonstrative available for inspection as discussed below.  Demonstratives may not be modified after exchange, except by agreement of the parties (such as to resolve objections) or as otherwise permitted herein, but a party is not required to use all exchanged demonstratives.  For each demonstrative that is based on a document or documents produced or exchanged in discovery in this litigation, each party shall disclose to the other parties all documents that form the basis of the demonstrative, either: (a) on the face of the demonstrative; or (b) in a table or other writing provided at the time the demonstrative is exchanged with the other parties.  Each party will exchange electronic representations of demonstratives by e-mail or FTP in accordance with the schedules set out below and make any physical demonstratives, including devices or machines, but not including printable demonstratives, available for inspection.  The parties do not need to exchange copies of demonstratives to be used only during cross-examination.

47.     The parties agree that any changes to a demonstrative made after being provided to the opposing party will only be to font/format/correct typographical errors and not edits of substance, unless made in response to and for the purpose of resolving an objection.  If a party changes a demonstrative after providing it to the opposing party, the party shall promptly notify the opposing

18

party of the change(s) and promptly provide the updated demonstrative prior to its use in open court.

### C.    Exhibit Binders

48.    Prior to the start of direct examination of a particular witness, the party conducting the direct examination will provide the other party with two copies of a binder containing all exhibits and printable demonstratives, such as slides, that they intend to use with that witness on direct examination and will provide all required copies to the Court.  With respect to cross examination, the party cross-examining a witness shall provide two copies of a binder containing all the exhibits to be used during cross examination to the other party and all required copies to the Court at the start of the cross examination of that witness.  A witness on cross examination may not confer with anyone regarding his or her testimony (e.g., during breaks or if held over at the end of a trial day) until the cross examination is completed.

## V.    WITNESSES

### A.    Live Witnesses

49.    Beckman Coulter's List of Potential Trial Witnesses is attached as **Exhibit 9.**  Cytek's objections to Beckman Coulter's list are attached thereto.

50.    Cytek's List of Potential Trial Witnesses is attached as **Exhibit 10**. Beckman Coulter's objections to Cytek's list are attached thereto.

19

51.    Each party will provide to the other a good-faith list of witnesses it intends to call live at the trial by [**Beckman Coulter:** August 11, 2026] [Cytek: August 7, 2026], without prejudice to the right to remove or add any witness.

52.    Any witness not listed in the **Exhibits 9 and 10** will be precluded from testifying, absent good cause shown.  The listing of a witness on a party's witness list does not require that party to call that witness to testify, either live or by deposition.

53.    Pursuant to Federal Rule of Evidence 615, the parties request that the Court prevent fact witnesses—other than witnesses who have already testified, been excused, and will not testify again in any Phase of the trial—from hearing the testimony of other witnesses.  Additionally, no counsel will be permitted to confer with witnesses about the substance of their testimony on breaks while on cross-examination.  The parties further request that in accordance with provision (2)(b) of Rule 615, this exclusion rule will not apply to the officer or employee designated by each party as its representative.  The parties further agree that expert witnesses need not be sequestered.

54.    The parties will give each other advance notice of the witnesses they will call, including the order in which the party intends to call the witness and the method of testimony (i.e., live or by deposition), by 7:00 p.m. (all times Eastern) two (2) calendar days before they intend to call the witness.  The lists will indicate

20

whether a witness will be called live or by deposition and identify the intended order of witnesses and manner of testimony (i.e., live or by designation).  [**Cytek:** Each party shall be bound to call the witnesses in its list in the order and manner (i.e., live or by designation) identified, except by agreement of the parties or for good cause shown.][4]

55.    [**Beckman Coulter**: For the convenience of witnesses, the parties, and to streamline presentation for the Court, fact witnesses will testify only once per Phase of trial—barring a showing of good cause—and therefore cross-examination of all fact witnesses may exceed the scope of direct examination so long as the evidence would be otherwise able to be presented in a party's case in chief for that Phase of trial.  This provision applies to fact witnesses who testify live and by

---

[4] **Beckman Coulter**: Cytek's proposal would preclude either party from streamlining their presentation as the trial progresses, such as by deciding not to call a particular witness.  For example, the schedule contemplates that Beckman Coulter will disclose its invalidity rebuttal witnesses before it puts on its invalidity case.  Cytek has preserved literally dozens of different invalidity theories, not all of which it will present at trial.  Beckman Coulter should be allowed to drop witnesses that become moot based on what Cytek actually presents.  Moreover, the parties should be able to adjust their witness presentations based on the evidence presented and the Court's rulings.

**Cytek:** Cytek's proposal allows the parties to meet-and-confer on dropping witnesses.  However, to ensure the parties can adequately prepare for trial, certainty is needed on which witnesses will appear and in what order.

21

deposition designation.][5] [**Beckman Coulter**: Dr. Young Chen is the sole inventor

of the asserted patents, and a third party beyond Beckman Coulter's control, who

_____

[5] **Beckman Coulter:** Beckman Coulter's proposed addition is consistent with Federal Rule of Evidence 611(b), which provides that "[t]he court may allow inquiry into additional matters as if on direct examination" and authorizes the Court to control the mode and order of examining witnesses to make trial presentation effective and avoid wasting time.  Fed. R. Evid. 611(a), (b). Beckman's Coulters proposal avoids duplicative witness testimony within the phased trial and prevents a scenario where, for example, a witness is called live or by deposition up to three times throughout a single phase in the trial (e.g., once in Plaintiff's case-in-chief, once in Defendant's case, and once in Plaintiff's rebuttal case).  Indeed, during the meet-and-confer process, Cytek indicated that if Beckman Coulter calls a witness, e.g., by deposition, during its case-in-chief, Cytek believes it should be permitted to call that same witness by deposition, relying on different testimony, during its case.  Such duplicative presentation of witnesses would lead to inefficiencies and jury confusion.

Similar provisions have been included in numerous pretrial orders entered by this Court.  _See, e.g._, _Personal Audio, LLC v. Google LLC_, No. 1:17-cv-01751-CFC, D.I. 813 PTO ¶ 93 (D. Del. May 15, 2023) (Connolly, J.) ("In the interest of presenting the case efficiently," providing that each witness, except one identified expert, "will testify only once," and that the party cross-examining the witness may exceed the scope of direct examination); _Deere & Co. v. AGCO Corp., Precision Planting LLC_, No. 1:18-cv-00827-CFC-JLH, D.I. 453 PTO ¶ 57 (D. Del. July 1, 2022) (Connolly, J.) (providing that, if both sides expect to call a witness, "the scope of any cross-examination of the witness will not be limited to the subject matters during direct examination").

Regardless of the Court's ruling on other witnesses, Dr. Chen, a third party who has agreed to testify live, has a specific conflict as explained in footnote 23.

has indicated that he has a conflict that will prevent his attendance beyond the first trial day (August 17).  To ensure the jury has the benefit of Dr. Chen's complete evidence, Dr. Chen may testify as a percipient witness to all relevant facts within his personal knowledge during his August 17 appearance.][6]

---

**Cytek:** The default for all witnesses is that the scope of cross-examination is limited to the scope of direct examination, F.R.E. 611(b), and Beckman Coulter has not provided any justification for waiving that requirement across the board for all fact witnesses.  Beckman Coulter's proposal to depart from standard trial practice is prejudicial to Cytek, inefficient, and could lead to juror confusion since cross-examination of fact witnesses beyond scope would inject issues into the case out-of-order without appropriate context and would require the parties to engage in overbroad beyond-scope cross-examinations seeking testimony that may not actually prove to be relevant and material to the issues actually presented and disputed to the jury.  At present, Cytek is not aware of any Cytek fact witness who would be called more than once during a single phase of the trial, unless called as an adverse witness by Beckman Coulter.  Beckman Coulter has not provided notice of any such witness it intends to call adversely.  Cytek can only speculate as to which fact witnesses from Beckman Coulter's list of "will call" or "may call" may warrant being called as an adverse witness by Cytek at this time or that would be subject to being called separately as part of Beckman Coulter's case-in-chief and in its rebuttal case in Phase I.  In particular, as addressed in more detail below, Beckman Coulter has not explained that Dr. Yong Chen would otherwise need to testify more than once during a single phase of the trial since his anticipated testimony is only relevant to Beckman Coulter's rebuttal case on invalidity.

[6] **Cytek:** Cytek objects to Beckman Coulter's proposal for the reasons explained in the footnote to Cytek's Miscellaneous Issue No. 3.

56.     If a party chooses to call a witness live, [**Beckman Coulter:** the parties / **Cytek**: that party][7] cannot also call that witness by deposition.

57.     The parties agree that a single attorney will handle the same witness in a single examination, regardless of the scope and number of issues on which that witness testifies.  For example, if an expert witness is addressing both infringement and validity in a single examination, only one attorney will be allowed to cross-examine that witness.  Notwithstanding the foregoing, if a witness testifies more than once in a phase of trial, for example, if an expert witness testifies in Plaintiff's case-in-chief and its rebuttal case, the same attorney need not cross-examine the witness in both the case-in-chief and in rebuttal.

---

[7] **Beckman Coulter:** Beckman Coulter's proposal is intended to avoid the same witness testifying both live and by deposition.  Cytek's proposal would permit Cytek to present the same witness a second time by deposition even after the witness has already appeared live, which would undermine the efficiency and orderly presentation that this provision is designed to achieve.  If an opposing party wishes to elicit testimony that was the subject of Rule 30(b)(6) designations, it can do so through cross-examination.

**Cytek:** A party who calls a witness live should not also be able to call that same witness by deposition, with the exception that the opposing party may still call the witness by deposition, such as to play deposition testimony of a 30(b)(6) witness testifying on behalf of the corporation.

**B.    Deposition Designations**

58.    [**Beckman Coulter:** A party may designate testimony identified as affirmative testimony as a counter-designation.][8]

59.    Beckman Coulter's list of deposition designations, along with Cytek's counter-designations, is attached as **Exhibit 11**.  The parties agree that Cytek will exchange deposition objections to Beckman Coulter's designated testimony by July 31, 2026 and file with the Court updated deposition designations that include the objections by August 5, 2026.

60.    Cytek's list of deposition designations, along with Beckman Coulter's counter-designations, is attached as **Exhibit 12**. The parties agree that Beckman Coulter will exchange deposition objections to Cytek's designated testimony by

---

[8] **Beckman Coulter:** Beckman Coulter's proposal avoids unnecessary disputes over deposition designations, while preserving all objections to admissibility.  This is consistent with pretrial orders entered by this Court.  *See, e.g.*, *Deere & Co. v. AGCO Corp., Precision Planting LLC*, No. 1:18-cv-00827-CFC-JLH, D.I. 453 PTO ¶ 59 (D. Del. July 1, 2022) (Connolly, J.) ("A party may designate testimony identified as affirmative testimony as a counter-designation.").

**Cytek:** The parties have already exchanged counter-designations, except to Beckman Coulter's late-disclosed affirmative designations as discussed below.  All counter-designated testimony must be specifically among that party's identified counter-designations.

25

July 31, 2026 and file with the Court updated deposition designations that include the objections by August 5, 2026.

61.    By objecting to a designation on a given ground, a party asserts that at least one question or answer in the designation is subject to such objection.  A party's objection to a question will also apply as an objection to the answer.

62.    Exhibits 11 and 12, as filed on August 5, 2026, shall contain the maximum universe of designations and counter-designations, subject to further rulings by the Court, except as necessary to establish foundation or authenticity for an exhibit, and except as further necessary for Cytek to provide counter-designations to the additional and revised designations that Beckman Coulter added to its Exhibit 11, on July 13, 2026.  With the following exception,  Exhibits 11 and 12, as filed on August 5, 2026, shall not be supplemented without approval of all parties or leave of the Court, on good cause shown, although the parties anticipate making further cuts during their rolling disclosures for trial and specifically reserve the right to designate testimony from each other's designations during the process of those exchanges.  A party's affirmative or counter-designation shall not be taken as an admission that the testimony is admissible if offered by the opposing party.

63.    Designated deposition testimony will be offered to the Court as designated testimony that the parties play by video in Court or have read into the

26

record and will count against the party's trial presentation time.  Specifically, any affirmative designations offered by a party will count against that party's trial presentation time, whereas any counter-designations by the other party will count against the party who made the counter-designations. All counter-designations will be charged against the party that made the counter-designations, including presumptively for counter-designations based on objections for alleged incompleteness pursuant to Fed. R. Civ. P. 32(a)(6) or Fed. R. Evid. 106.  The parties agree to meet and confer regarding any disputes as to whether counter-designations based on incompleteness should not be charged to the counter-designating party.  If the parties cannot reach an agreement, the counter-designating party reserves the right to raise the dispute with the Court as to which party should be charged the time for the alleged incompleteness designation.

64.    All irrelevant and redundant material, including colloquy between counsel and objections, other than may be required to establish context of the witness's answer, will be eliminated when the deposition is read or played by video at trial.

65.    If an exhibit is introduced in a deposition designation, the exhibit may be moved into evidence if it is on a party's trial exhibit list, the offering party moves it into evidence, and it is not otherwise objected to or the Court overrules the objections.  If an exhibit is referenced in a deposition designation played at trial

27

and is in evidence, or is not objected to, or the Court has overruled any objections, the designating party may display the exhibit to the jury alongside the video and highlight or enlarge portions of the exhibit on the screen as if the exhibit was being shown to a live testifying witness.  The parties agree to meet and confer in an effort to resolve any objections to exhibits to be admitted through deposition designations in advance of the designations being played during trial.

66.    When the witness is called to testify by deposition at trial, the party calling the witness shall provide the Court with three copies of the transcript of the designations and counter-designations that will be read or played.  The parties shall provide the time to be charged to each party to the Court with the transcripts.

67.    The above procedures regarding deposition designations do not apply to portions of deposition transcripts and/or video used for impeachment or cross-examination of a witness.  Any deposition testimony may be used at trial for the purpose of impeachment, subject to any objections and the limits of the Federal Rules, regardless of whether a party specifically identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

68.    A party shall immediately notify the other party if, for any reason, it decides not to call a witness that it had previously indicated on its witness list would appear live.  In that event, the other party may designate and offer

deposition testimony from such witness to the extent otherwise permitted and admissible.  Counter-designations may also be provided.

### C.      Objections to Expert Testimony

69.      The parties agree that the Court should rule at trial on objections to expert testimony as beyond the scope of expert disclosures.

## VI.    STATEMENT OF PROOFS

70.      Beckman Coulter's Statement of Intended Proofs is attached as **Exhibit 13**.

71.      Cytek's Statement of Intended Proofs is attached as **Exhibit 14**.

72.      The parties have reserved certain rights in their Statements of Intended Proofs, including the right to revise, modify, supplement, or change its statement of intended proofs in light of the Court's rulings and in light of the other party's pretrial activities, including any subsequently produced discovery or identification of issues of law and fact to be litigated.

## VII.   TRIAL DISCLOSURE SCHEDULE

### A.      Designated Corporate Representative

73.      Each party will provide to the other side the name of its designated corporate representative by no later than 7:00 p.m. two business days prior to the first day of trial, i.e., by Thursday, August 13, 2026.

### B.    Exhibits

74.    Each party will make available for inspection any physical exhibits that may be used at trial at noon on August 15, 2026, including upon request all exhibits that were disclosed, specifically identified, and made available for inspection during fact discovery.  [**Cytek:** Physical exhibits to be used or admitted into evidence at trial shall be limited to those that were disclosed, specifically identified, and made available for inspection during fact discovery.][9]

75.    Each party will provide, by electronic mail, a list of trial exhibits, by exhibit number, to be used in connection with direct examination (specifically identifying the witness through which each exhibit will be offered), by 7:00 p.m. ET the day before their intended use, and objections will be provided no later than 8:30 p.m. ET the same day. The parties will meet and confer by 9:30 p.m. ET that same evening.  If good-faith efforts to resolve any objections fail, the objecting

---

[9] **Beckman Coulter:**  The parties agree that any physical exhibit intended to be admitted into evidence at trial will be made available for inspection before trial. Cytek's proposal to impose additional limitations on physical exhibits is not supported by law.  Notably, Cytek never asked to inspect any of Beckman Coulter's products and never served a Request for Production seeking product samples.

 **Cytek:** Physical exhibits are not exempt from standard rules on discovery, and as such, absent good cause, any physical exhibits to be introduced at trial must have been disclosed and made available for inspection during discovery.

party shall bring its objections to the Court's attention at the start of the trial day before the exhibit is shown to the jury.

76.    A party is not required to provide advance notice of exhibits to be used during an adverse direct examination or cross-examination.

77.    At 7:00 pm ET after each trial day, each party shall provide the other a list of the exhibits it admitted during that trial day (whether through direct, cross, redirect, or recross), provided that each party shall have a right to reasonably revise its list based on review and checking of the daily transcript.  The parties also agree to cooperate in the event the daily transcript is not available sufficiently in advance before this exchange.  To the extent there are disputes regarding the proposed list of admitted exhibits, the parties shall discuss at 9:30 pm ET that same day.  The following trial day, the party offering the witness shall read the list of admitted exhibits into the record.  To the extent any exhibit is submitted in a form different from that previously disclosed (including with additional redactions), the party seeking to introduce the exhibit shall promptly notify the opposing party of the change(s) and provide a copy to the other party, which shall be no later than by 7:30 a.m. ET on the day the exhibit is to be offered.  The receiving party shall have an opportunity to review the modified exhibit and approve any changes, if applicable.  No such exhibit shall be submitted to the Court without the other party's approval.

78.     The parties agree that any exhibit listed on either party's exhibit list as to which no objections remain pending at the time of opening statements may be shown to the jury by either party during opening statements if the exhibit will be the subject of testimony and introduced by a witness at trial.  The parties agree to meet and confer to the extent objections remain pending to attempt to resolve any such objections so that exhibits may be used during opening statements or objections can be resolved by the Court.

79.     Each party shall provide the other side an opportunity to inspect the physical copies of the admitted exhibits (including redacted exhibits) that it intends to submit to the Court and the jury.  Each party shall provide printed paper copies of its admitted non-voluminous exhibits to be submitted to the Court and jury prior to deliberations.  While voluminous exhibits will be fully admitted into the record, the parties agree to meet and confer in good faith to determine the scope of excerpts of those exhibits that shall be printed.  To the extent the parties cannot reach agreement, the party offering the voluminous exhibit into evidence shall print the entire exhibit, and the parties shall share the costs of printing those voluminous exhibits with 50% costs to each party.

80.     The parties agree to conduct this inspection of printed admitted exhibits at 7:00 am ET on the day that the jury is set to begin deliberations, or at another time agreeable by the parties, and submit the paper copies to the Court

32

thereafter, with an additional exchange or inspection as necessary depending on timing of the close of evidence.  For any exhibits admitted after the parties' exchange at 7:00 am ET on the day that the jury is set to begin deliberations, such exhibits will be exchanged separately and added to the master set of exhibits in the presence of a representative of both parties unless otherwise agreed.  Beckman Coulter shall then, within three days after the jury begins deliberations, provide Cytek with a flash drive containing electronic copies of all admitted exhibits (including all agreed modifications).  Cytek shall then, within four days after the jury begins deliberation (i.e., within one day of receiving the flash drive from Beckman Coulter), identify any potential issues with the electronic copies, which shall be promptly addressed by Cytek.

### C.    Demonstratives

#### 1.    Demonstratives to be Used During Direct Examination of Witnesses

81.    Each party will provide color copies of demonstratives, in PDF form, by electronic mail or FTP to be used in connection with direct examination (specifically identifying the witness for which the demonstratives will be used). For video or animations, the party seeking to use the demonstrative will provide it in a format what will permit review of the video and/or animations, as they will be shown in court to the other side via FTP or email.  Parties will exchange demonstratives by 7:00 p.m. ET the day before their intended use, and objections

33

will be provided no later than 8:30 p.m. ET the same day.  Physical demonstratives, other than printable demonstratives, shall be made available for inspection at an agreed-upon location.  The party intending to use any physical demonstrative shall notify the other party that it intends to use the physical demonstrative by 7:00 p.m. ET the day before its intended use, and objections will be provided no later than 8:30 p.m. ET the same day.  The parties will meet and confer at 9:30 p.m. that same evening. If good-faith efforts to resolve any objections fail, the objecting party shall bring its objections to the Court's attention at the start of the trial day before the demonstrative is shown to the jury.

### 2.      Demonstratives to be Used During Cross-Examination of Witnesses

82.    The parties are not required to provide advance notice of demonstratives to be used during cross-examination.

83.    Each party will provide color copies of demonstratives in PDF form, by electronic mail or FTP, used in connection with cross-examination, by 7 p.m. ET the day cross-examination concludes.  For video or animations, the party seeking to use the demonstrative will provide it in a format what will permit review of the video and/or animations, as they were shown in court, to the other side via FTP or email.

34

### 3.    Opening Statements

84.    By no later than 2:00 p.m. ET the calendar day before opening statements, the parties shall exchange color copies of demonstratives and exhibits they intend to use in their respective opening statements.  By no later than 4:00 p.m. ET that same day, any objections to the demonstratives shall be served on the other side.  By 5:00 ET that same day, the parties shall meet and confer to resolve any objections.  If good-faith efforts to resolve any objections fail, the objecting party shall bring its objections to the Court's attention at the start of the trial day before the demonstrative is shown to the jury.  Demonstrative slides must be numbered and exchanged in the order that the party in good faith intends to use them.  However, nothing in this Pretrial Order shall require counsel to use all demonstrative slides or shall prevent counsel from exercising their judgment at trial as to the content and order of any examination.

### 4.    Closing Statements

85.    For closing statements, the parties agree that any exhibit that was used during the trial and moved into evidence, trial transcripts, demonstratives previously shown to the jury, and deposition designations played at trial may be presented to the jury.  The parties agree that there is no need to exchange demonstratives for closing statements before closing statements occur.

### D.    Live Witnesses

86.    Each party will inform the opposing party of the witnesses they intend to call live or by deposition (and the order in which the witnesses will be called) by email by 7:00 p.m. ET two calendar days prior to the date that the party intends to call such witness(es).  The lists will indicate whether a witness will be called live or by deposition.  The other party shall identify any objections to such witness(es) by 8:30 p.m. ET the same day, and the parties shall meet and confer to resolve any objections by 9:30 p.m. ET that same evening.  If good-faith efforts to resolve any objections fail, the objecting party shall bring its objections to the Court's attention at the start of the trial day before the witness is called.

### E.    Deposition Designations and Objections

87.    The party offering deposition testimony (other than for the purpose of impeachment) shall identify the deposition testimony to be offered from the previously exchanged designations by 7:00 p.m. ET at least three calendar days prior to the testimony being offered into the record.  A party may choose not to introduce deposition testimony designated in this Pretrial Order.  The party receiving the designations shall inform the opposing party of any objections and any specific pages and lines from that deposition to counter-designate by 7:00 p.m. ET the next day (i.e., two calendar days before the start of the trial day on which that witness's testimony will be offered).  To the extent necessary, the designating

party will provide the opposing party with any objections to the opposing party's counter-designations by 8:30 p.m. ET that same day, i.e., two calendar days prior to the testimony being offered into the record. The parties will thereafter meet and confer by 9:30 p.m. two days before the testimony is to be offered into the record. If good-faith efforts to resolve any objections fail, the objecting party shall bring its objections to the Court's attention at the start of the trial day before the designation is offered into the record.

88.    No objections, preambles, or exchanges between counsel will be played or read. Time will be charged to the party that designated or counter-designated the testimony. Both sides' designations will be read or played together in the chronological order in which designations occurred during the deposition. If deposition testimony is to be presented by video, then the party playing the designated testimony shall also serve the other party with electronic video clips of all testimony to be played (which shall include all designations and counter-designations) by 7:00 p.m. ET one calendar day before the witness is to be called at trial, including an identification of the time allocation to each party. The parties will thereafter meet and confer by 9:30 p.m. that evening to resolve any issues.

89.    For those witnesses whose deposition testimony will be played or read to the jury, the parties shall be permitted to make short neutral introductions to introduce the witness, including the witness's name, job title, employer,

employment period [**Cytek:** , and if relevant and agreed to by the parties, the 30(b)(6) topics for which that witness was designated][10].  However, counsel shall not be permitted to make any argument or comment on any evidence or expected testimony during such introductions.  Such introductions will count against the time of the party offering the testimony.

90.    This pretrial order contains the maximum universe of deposition designations and counter-designations, except as necessary to establish foundation or authenticity of an exhibit. The parties may not introduce deposition designations

---

[10] **Beckman Coulter:** Introductions should not include attorney characterizations of the 30(b)(6) topics on which a witness was designated, including because all designations are subject to party objections, and the scope of agreed testimony was narrower than the scope of the 30(b)(6) topics as served.  Simply reading the noticed topics would not accurately reflect the 30(b)(6) testimony the parties actually agreed to provide and are likely to invite disputes over, e.g., the scope of each topic, the wording of the designated testimony, the relevance of such testimony to the issues at issue in the trial, and completeness.  Pretrial orders entered by this Court limit deposition introductions to neutral information and prohibit argument or commentary. *See, e.g.*, *Globus Med., Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 319 PTO ¶ 67 (D. Del. July 24, 2025) (Connolly, J.) (permitting brief transition statements identifying the witness by "name, position or title, and/or the entity with which he or she is associated," but prohibiting argument or comment on the evidence).  Moreover, Cytek's designated testimony includes ample discussion of the 30(b)(6) topics on which witnesses were designated. Should a party wish to designate and play at trial the testimony identifying a witness's 30(b)(6) topics, it may do so.

**Cytek:** Many witnesses whose depositions have been designated for trial provided 30(b)(6) testimony on behalf of one of the parties.  To streamline trial and provide context to the jury, such designations should be provided as part of the short introductions to the deposition designations.

or counter-designations that are not included in this Order except for good cause shown or by agreement of the parties. The parties have made a good faith effort to pair counter designations to specific affirmative designations during the pretrial designation process.  The parties reserve the right to play, read, or otherwise present any counter-designated deposition testimony in response to any affirmative deposition testimony offered by the opposing party at trial, regardless of how the parties may have previously paired or matched counter designations to specific affirmative designations during the pretrial designation process.

### F.    Pleadings and Written Discovery

91.    For pleadings and/or any written discovery (i.e., interrogatory responses or responses to requests for admission) and/or stipulations that a party intends to read into the record, the offering party shall, by 7:00 p.m. ET one calendar day prior to the date the party intends to read such pleadings and/or written discovery and/or stipulations, identify to the other side the pleadings and/or written discovery and/or stipulations, including by specific request or interrogatory number and/or pages, that it expects to read during trial.  By 8:30 p.m. ET that same day, the receiving party shall identify its objections to disclosed pleadings and/or written discovery and/or stipulations, as well as any portion of the pleadings and/or written discovery and/or stipulations that have not been designated but which it believes, in fairness, should be read at the same time.  The parties shall

meet and confer at 9:30 p.m. ET that same day to attempt to resolve any objections, with any objections that cannot be resolved to be raised with the Court on the day the pleadings and/or written discovery and/or stipulations is expected to be read.

## VIII.  NUMBER OF JURORS

92.     There shall be eight jurors.  The Court will conduct jury selection through the "struck juror" method, beginning with the Court reading voir dire to the jury panel in the courtroom, continuing by meeting with jurors individually and addressing any challenges for cause, and concluding with peremptory strikes.

## IX.    PHASES AND LENGTH OF TRIAL

93.     Per the Court's Scheduling Order (D.I. 25), this case is scheduled for a 5-day jury trial beginning on August 17, 2026 at 8:30 a.m., with the time to be divided in half equally between Beckman Coulter and Cytek.  The parties propose holding jury selection on Friday, August 14, 2026 and consent to either the Judge or the Magistrate Judge presiding over jury selection.

94.     The parties propose 12 hours for each side's presentation of its case

[**Beckman Coulter:** (including opening and closing statements)]  [**Cytek:**

(including opening statements), excluding closing statements].[11] **[Beckman Coulter**: As part of the 12 hours for each side, each side's opening statements may be up to 30 minutes, each side's closing statements may be up to 45 minutes, and Beckman Coulter may reserve up to 15 minutes for rebuttal during closing in each phase, respectively.]**[12]

95.    Unless otherwise ordered, time will be charged to a party for its opening statement, direct and redirect examinations of witnesses it calls, cross-examination of witnesses called by any other party, and introduced deposition designations and counter designations, including introductions **[Beckman**

---

[11] **Beckman Coulter**:  While Beckman Coulter believes that it is necessary to including openings and closings in the time calculations in order to finish both phases in one week, Beckman Coulter defers to the Court for the specific schedule.

**Cytek:** Cytek understands that it is this Court's practice to exclude closing arguments from the parties' trial time allocation.

[12] **Beckman Coulter:**  Beckman Coulter believes that providing guidance on the time permitted for opening and closing statements will ensure efficient and balanced trial presentations and completion of the parties' cases within the 5-day trial window set forth in the Scheduling Order, particularly if Cytek's proposal on excluding closing statements from the time counted against a party is adopted.  *See* D.I. 25 at 26.

**Cytek**: Cytek does not believe specific time allocations for opening are necessary. Each party can use its discretion on how to allocate trial time between openings and examinations.  If the Court is inclined to adopt Beckman Coulter's proposal, Cytek suggests a ceiling of 60 minutes for opening and 60 minutes for closing.

**Coulter**: , and closing statements].[13]  The Courtroom Deputy will keep a running total of trial time used by counsel.

96.    The order of presentation of evidence will be as follows: The trial will proceed in two phases: Phase 1 will consist of infringement and validity.  Phase 2 will consist of damages and willfulness.  Opening statements in each Phase shall be made by Beckman Coulter first, followed by Cytek.  The order of presentation of evidence will follow the burden of proof for each Phase.  Accordingly, Beckman Coulter will go first and present its case-in-chief ([**Beckman Coulter:** including objective indicia][14]).  Then Cytek will present its response to Beckman Coulter's

---

[13] **Beckman Coulter:**  *See supra* n.11.

[14] **Beckman Coulter**: Beckman Coulter's witnesses called in its case-in-chief should be able to provide testimony on objective indicia to streamline presentation so that each fact witness is called only once live or by deposition in Phase 1. Cytek's proposal would require that each fact witness and expert witness testify twice in Phase 1.  As Beckman Coulter explains in its Opposition to Cytek's Motion *in Limine* No. 2, copying is relevant to multiple aspects of Beckman Coulter's case-in-chief, such as direct infringement, induced infringement, and enablement.  *See* Plaintiff Beckman Coulter, Inc.'s Opposition to Cytek's Motion *in Limine* No. 2. at 1-3.

case in-chief and Cytek's case-in-chief on issues for which Cytek bears the burden of proof.  Beckman Coulter will then present any proper rebuttal and its response to issues on which Cytek's bears the burden of proof ([**Cytek:**_, including objective indicia][15]).  The order of closing statements in each phase shall be Beckman Coulter, followed by Cytek, and then Beckman Coulter's rebuttal.

97.    By 5:00 p.m. the day before a party intends to rest (or before leaving court that day, whichever is later), that party shall inform the other party of its intent to finish its presentation of evidence the following day.

## X.    AMENDMENTS TO PLEADINGS

98.    Beckman Coulter's proposed amendments to the pleadings are attached as Exhibit 15.  The exhibits referred to in Beckman Coulter's proposed

---

**Cytek:** Beckman Coulter's proposal to present objective indicia in its case-in-chief is an improper attempt to introduce copying as part of its infringement allegations. As discussed Cytek's MIL 2, copying is relevant to Phase I only as part of Beckman Coulter's rebuttal case on invalidity, only if Cytek brings an obviousness-based prior-art theory, and only if Beckman Coulter can establish a proper foundation for the relevance of any copying allegations.  To allow Beckman Coulter to end-run these requirements would be unduly prejudicial to Cytek. Furthermore, Cytek is not aware of any witness who would properly be called both in Beckman Coulter's case-in-chief on infringement and its rebuttal case on validity.

[15] **Beckman Coulter**: *See* n.14.

**Cytek:** If objective indicia are relevant in this case, they are relevant to Beckman Coulter's rebuttal case in Phase I—not its case-in-chief—for the reasons explained above.

amended pleadings refer to the original exhibits filed on January 9, 2025 (*see* D.I. 42).[16]

## XI.    MOTIONS IN LIMINE

99.    Beckman Coulter's motions in limine are attached as **Exhibits 16-18**, each of which contains Beckman Coulter's opening brief, Cytek's opposition, and Beckman Coulter's reply.  Beckman Coulter seeks a motion in limine order on the following:

a.    Beckman Coulter's Motion *in Limine* #1: "To Preclude Evidence, Testimony, or Argument Regarding Unasserted Patents and Patent Applications in Support of Cytek's Non-Infringement, Invalidity, or Damages Arguments."

b.    Beckman Coulter's Motion *in Limine* #2: "To Preclude Evidence, Testimony, or Argument Regarding Non-party Danaher Corporation, Speculation Regarding Danaher's Purported Mental State to Argue Non-Infringement, and Danaher's Non-Comparable Valuation of Cytek to Suppress Damages."

c.    Beckman Coulter's Motion *in Limine* #3: "To Preclude Evidence, Testimony, or Argument that the Timing of this Lawsuit Evidences Non-Infringement or Impacts Damages."

---

[16] **Cytek:** Cytek directs the Court to its Miscellaneous Issue #4.

100. Cytek's motions in limine are attached as **Exhibits 19-21**, each of which contains Cytek's opening brief, Beckman Coulter's opposition, and Cytek's reply. Cytek seeks a motion in limine order on the following:

a. Cytek's Motion *in Limine* #1: "To Exclude Any Evidence, Testimony, or Argument Regarding Either Party's Other Litigations or Arbitrations.".

b. Cytek's Motion *in Limine* #2: "To Exclude Evidence, Testimony, or Argument that Cytek Copied, Stole, or Misappropriated the Technology in Beckman Coulter's Products."

c. Cytek's Motion *in Limine* #3: "To Exclude Evidence, Testimony, or Argument Relating to the Court's Commentary Regarding Claim Construction."

101. The parties' stipulated motions in limine are below:

a. The parties shall be precluded from introducing evidence, testimony, or argument regarding the size of the parties' law firms or the number of attorneys representing the parties.

b. The parties shall be precluded from introducing evidence, testimony, or argument referring to the role or presence in the courtroom of jury consultants or shadow jurors, or the use of focus groups or mock proceedings to assist with trial preparation, jury selection, or trial.

c. The parties shall be precluded from introducing evidence, testimony, or argument that raises religious or political beliefs, race, ethnicity, gender,

national origin, sexual orientation, or health (including but not limited to vaccination status) of a party, witness, attorney, or law firm.

      d.      Neither party shall reference the presence or absence of any party's witnesses.

      e.      The parties shall be precluded from introducing evidence, testimony, or argument regarding IPR, PGR, and *ex parte* reexamination proceedings before the Patent Office and ADR proceedings, including all allegations raised therein.

## XII.  CERTIFICATION REGARDING SETTLEMENT

102.  The parties hereby certify that they have engaged in a good-faith effort to explore resolution of the controversy by settlement.  The parties have been unable to reach agreement.

## XIII.  OTHER MATTERS

### A.    Jury Notebooks

103.  The parties agree that jurors be permitted to write notes, in paper provided in the jury notebooks, during the presentations of the parties and that jurors be permitted to bring these notes into the deliberation room.  The parties propose that jurors be instructed not to exchange or share their notes with other jurors (though they may discuss the contents of their notes) and that the jurors' notes be collected by the clerk each evening after the jury has been excused, and collected and destroyed without review after the jury is discharged.

104.   The parties agree that the jury shall receive the Court's claim constructions and a copy of each of the Asserted Patents in the jury notebooks. The parties will provide the Court with inserts for the notebook containing a photograph of each witness and the witness's name that will be provided to the jury before that witness testifies.

### B.    Handling of Confidential Information

105.   On December 23, 2024, the Court adopted the parties' Stipulated Protective Order (D.I. 40) to safeguard the confidentiality of certain of the parties' business and technical information, as well as that of third parties.  All outside counsel shall handle such protected information in accordance with the terms of the Protective Order and shall not disclose such Confidential Information to persons not authorized to view such information under the terms of the Protective Order.  Nonetheless, the presentation of evidence at trial shall take place in open court, unless a party specifically requests, and the Court agrees, that the Court be closed during presentation of certain portions of the evidence.

106.   It is agreed that any party or non-party whose information is subject to the Protective Order may request that testimony or an exhibit, subject to the Protective Order, be placed under seal and handled in accordance with the Protective Order.  With the Court's permission, the parties may request that demonstratives or evidence potentially reflecting confidential information not be

47

made available to the public.  The parties have agreed that the individuals designated as In-House Counsel in accordance with Protective Order, or other In-House Counsel agreed to by the parties, may attend any sealed portion of the trial.

107.   Notwithstanding the above, pursuant to certain third party confidentiality obligations under agreement between the parties, subject to the Court's approval, a party may request the Court to seal the Courtroom with respect to highly confidential information of a third party, and such request may include a request for In-House Counsel to leave (or otherwise be secluded from) the Courtroom during such sealed portion of the trial in which such third party evidence is presented.

108.   The parties agree to cooperate in good faith to prevent or limit public disclosure of documents containing information designated Confidential, Highly Confidential, or Highly Confidential – Outside Attorneys' Eyes Only and/or testimony eliciting such information, including, but not limited to, meeting and conferring regarding offering into evidence only those pages of such documents relevant to claims or defenses and/or to redact any irrelevant portions of such documents.

### C.    Federal Judicial Center's Patent Video

109.   The parties agree that the Federal Judicial Center's video, "The Patent Process: An Overview for Jurors," will be played to jurors during the Preliminary

Jury Instructions, and the jurors will be provided with a copy of the sample patent referenced in the video.  *See* https://www.fjc.gov/publications/patent-process-overview-jurors.  The parties further agree that the time for playing this video will not be charged to any party.

### D.    Set-Up of Electronic and Computer Equipment

110.    The parties respectfully request that the Court grant access to the courtroom on Friday, August 14, 2026, to allow the parties to set up electronic equipment to be used during trial.  To the extent that both sides will be sharing common equipment in the courtroom, each side will share the cost of that equipment.

## XIV.  MISCELLANEOUS ISSUES

111.    **Joint:** The parties jointly raise the following issues for discussion at the pre-trial conference:

a.   Joint Miscellaneous Issue No. #1.  The parties are engaged in good faith discussions regarding a two-phased case narrowing proposal.  If the parties have not reached agreement, the parties will either present a dispute or proposal at the pretrial conference.

b.   Joint Miscellaneous Issue No. #2.  The parties have agreed to continue good faith discussions to make the Statement of Uncontested Facts more robust to streamline the issues for trial, and would like to address the progress

49

with those negotiations during the pretrial conference and seek further guidance from the Court.

112.   **Beckman Coulter:**  Beckman Coulter raises the following issue for discussion at the pretrial conference.

a.   Beckman Coulter Miscellaneous Issue No. #1:  The Court's order on Cytek's Daubert Motion 2 states that Dr. Michael Arnold is precluded "from offering at trial opinions about the validity of Plaintiff's asserted patents" because he is not a person of ordinary skill in the art ("POSA").  D.I. 366.  To be clear, Cytek did not seek to exclude Dr. Arnold's testimony in its entirety; it sought to exclude only portions of a limited number of paragraphs of his report that address the ultimate issue of validity.  *See* D.I. 232 (proposed order seeking to exclude testimony regarding "validity" and citing paragraphs).  Thus, Beckman Coulter understands the Court's order to exclude only Dr. Arnold's testimony on the ultimate question of validity.   To the extent Dr. Arnold— whose testimony responds to and rebuts the testimony of Cytek's expert Dr. Junichiro Kono—is precluded from testifying at all because he is not a POSA, Dr. Kono should also be precluded from testifying at all pursuant to the law of the case because, as he admitted at his deposition, he is also not a POSA and is therefore identically situated to Dr. Arnold: "I know nothing about flow cytometers.  So I'm not a person of ordinary skill in the art in this case."  Kono

Tr. 115:10-13. To the extent Dr. Kono is permitted to testify at trial, then Dr. Arnold should be permitted to testify in the same capacity to the same scope.[17]

b.    Beckman Coulter Miscellaneous Issue No. #2: Cytek should not be permitted to argue at trial that Beckman Coulter failed to mark its products with the Asserted Patents as required under 35 U.S.C. § 287, an argument Cytek waived by failing to raise it during discovery, including in response to Beckman Coulter's Interrogatory No. 14 seeking any such arguments. During fact discovery, Beckman Coulter served Interrogatory No. 14, which asked Cytek to "[i]dentify and describe in detail all legal and factual bases relating to any contention that 'Beckman Coulter and/or any predecessors in interest or any licensees to the Asserted Patents failed to properly mark any of their relevant products or materials as required by 35 U.S.C. § 287, or otherwise failed to give proper notice that Cytek's actions allegedly infringe the Asserted Patents.'" In response, Cytek stated only that it "incorporates by reference its response to Interrogatory No. 15 and its First Counterclaim" and further alleged that "the CytoFLEX products do not practice the claims of the Asserted Patents." Cytek's First Counterclaim asserted that (i) "Beckman Coulter's website

---

[17] **Cytek:** Beckman Coulter's position is irrelevant to the issues in this pretrial order and instead an improper attempt to expand to scope of its pending fifth *Daubert* motion. To the extent the Court is inclined to entertain Beckman Coulter's new arguments, Cytek reserves the right to respond at oral argument.

virtually marks the CytoFLEX® products," D.I. 16, ¶ 10; (ii) "Beckman Coulter … has marked the CytoFLEX® products with the '582 patent since at least October 17, 2021," D.I. 16, ¶ 29; and (iii) "Beckman Coulter started virtually marking the CytoFLEX® products with the '443 patent somewhere between February 19, 2024 and September 9, 2024," D.I. 16, ¶ 29.  Cytek never supplemented its response to Interrogatory No. 14 during discovery.  Accordingly, because Cytek contended only that the products *were* properly marked and admitted the dates on which such marking began, and because Cytek subsequently withdrew its counterclaim that Beckman Coulter falsely marked its products, *see* D.I. 264, Cytek waived any argument that Beckman Coulter failed to mark the CytoFLEX products with the Asserted Patents, and it cannot claim otherwise at trial.[18]

    c.    Beckman Coulter Miscellaneous Issue No. #3:  Beckman Coulter objects to Cytek's contention that it intends to offer at trial testimony by

---

[18] **Cytek**: Beckman Coulter's Miscellaneous Issue addressed to marking, which it added to this proposed joint pretrial order at 7:30am E.T. the day the document is due to the Court, is a blatant and improper attempt to relitigate Beckman Coulter's Motion for Summary Judgment No. 2, which the Court has already denied.  To the extent the Court entertains Beckman Coulter's arguments here, Cytek directs the Court to its opposition to Beckman Coulter's summary judgment motion.  *See* Dkt. 293.  Cytek further directs the Court to Cytek's positions to the following proposed final jury instructions for Phase 2: Footnote 5 in Section 2 ("Issues Presented in Phase II"); Footnote 8 in Section 3 ("Burdens of Proof"); and Footnotes 14-21 in Section 4.2 ("The Damages Period").

declaration under Fed. R. Evid. 902(11) from Barry Walter and Irene Adams because such testimony is untimely.  Cytek served Mr. Walter's declaration on October 8, 2025, mere days before the close of fact discovery on October 25, 2025.  *See* D.I. 178.  Beckman Coulter requested information and documents from Mr. Walter, which Cytek refused to provide, and given the timing of service of his declaration, Beckman Coulter was precluded from serving a subpoena to obtain the necessary discovery relating to his declaration, rendering it untimely.  Cytek served Ms. Adams' declaration on December 15, 2025, months after the October 25, 2025, close of fact discovery.  *See* D.I. 178.  As a result, Beckman Coulter was precluded from taking discovery on the subject matter of Ms. Adams' declaration, and her declaration is untimely.  Cytek should thus be precluded from offering those declarations at trial.  To the extent

Cytek is permitted to offer these declarations, it should be required to make each witness available for deposition in advance of trial. [19]

    d.    Beckman Coulter Miscellaneous Issue #4:  Beckman Coulter objects to Cytek's Fourth Supplemental Rule 26(a)(1) disclosure served just weeks before trial on July 2, 2026, which added Laurent Ginestet-Araki to its disclosures for the first time.  Cytek seeks to have him, for the first time, testify about facts related to "the contents, use, and source of the 'FluoroFinder' spreadsheet, including but not limited to CYTEK_0000065431 and CYTEK_000049104."  The information in CYTEK_0000065431 and CYTEK_000049104 is data they kept in the ordinary course of business and produced in this case that Cytek is now improperly attempting to ascribe to a third party.  Cytek's disclosure was served eight months after the close of fact discovery and nearly three months after the Court's hearing on April 16, 2026.

---

[19] **Cytek**: As Beckman Coulter notes, it has had the FRE 902(11) declarations in question since October 8, 2025 and December 15, 2025.  Beckman Coulter first included this dispute in the pretrial filings the day those filings are due—at 1:30am E.T. (objections to Cytek's witness list) and 7:30 am E.T. (revisions to this proposed joint pretrial order).  Cytek thus reserves the right to respond to Beckman Coulter's objections at a later date.  Briefly, these declarations were provided by third-parties; Beckman Coulter has not subpoenaed either declarant.  Notwithstanding Beckman Coulter's failure to serve subpoenas, Mr. Walter was made available for deposition on multiple dates, and Beckman Coulter declined to depose him.  Ms. Adams is outside Cytek's control, provided her declaration in response to a timely subpoena from Cytek, and Beckman Coulter never sought or requested a deposition from Ms. Adams.

Had Cytek timely disclosed the scope of Mr. Araki's knowledge on such topics, Beckman Coulter could have deposed him on those issues and sought relevant documents. Beckman Coulter was precluded from doing so by virtue of Cytek's late disclosure. Additionally, Cytek refused to produce Mr. Araki for a deposition on this topic (*see* D.I. 370). Given Cytek's untimely disclosure and the resulting prejudice to Beckman Coulter, Mr. Araki should not be allowed to testify at trial on this topic.[20]

113. **Cytek:** Cytek additionally raises the following issues for discussion at the pretrial conference, each of which Cytek believes should be resolved prior to trial to ensure the trial is streamlined and that the parties can adequately prepare.

   a. Cytek Miscellaneous Issue #1: During the September 17, 2025 Markman hearing, the Court deferred construction of "focusing optical element" and "first focusing optical element" until a later date. (Sep. 17, 2025 Hr'g Tr. at 34:21-47:18; 48:8-49:2). Cytek proposes

---

[20] **Cytek:** Cytek disclosed Mr. Ginestet-Araki as knowledgeable about the "FluoroFinder" spreadsheet pursuant to the Court's guidance in denying Cytek's motion to strike Beckman Coulter's reliance on the FluoroFinder spreadsheet that Cytek may provide witness testimony about the document. *See* 4/16 Hr. Tr. 49-50 ("to the extent that Ms. Riley is relying on an internal document, even at this point, the defendant is free to have somebody come in and testify and explain that document. And [Beckman Coulter] can't rebut it"). Mr. Ginestet-Araki was a Rule 30(b)(6) witness, has already been deposed by Beckman Coulter, and was asked at deposition about FluoroFinder generally.

that the Court revisit construction of these terms at a time convenient for the Court prior to trial.[21]

 b. Cytek Miscellaneous Issue #2:  During the September 17, 2025 Markman hearing, the Court deferred construction of "first optical filter" until a later date.  (7:1-14.)  Cytek proposes that the Court revisit construction of this term at a time convenient for the Court prior to trial.[22]

---

[21] **Beckman Coulter:** There is no need to revisit claim construction at this late stage, and the terms can be given their plain and ordinary meaning, particularly given that the Court already stated it was "not going to construe it" and "not going to touch the term."  9/17/25 *Markman* Tr. 46:21-47:9.  Cytek agreed at *Markman* that the Court did not need to construe the term at that time.  *Id.*  The intrinsic evidence has not changed.

**Cytek:** As the case has continued to develop since the *Markman* hearing, including through expert discovery, it is apparent that the parties have ongoing disputes over claim scope that require the Court's attention.  *See O2 Micro Int'l v. Beyond Innovation Tech.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute.")

[22] **Beckman Coulter:** There is no need to revisit claim construction at this late stage, and the term can be given its plain and ordinary meaning, particularly given that the Court stated that it was "not construing first and second optical filter."  9/17/25 *Markman* Tr. at 7:1-10.  The Court made clear that if "we go to trial, it comes up, we have to construe it; I'll deal with it then.  I'm just not doing it now." *Id.* at 7:12-14.  Cytek has identified no reason why these terms need to be construed now, and the intrinsic evidence has not changed.  Thus, the Court stated it would not revisit the issue before trial.

c.  Cytek Miscellaneous Issue #3:  Whether Dr. Yong Chen should be permitted to testify to issues not relevant to infringement during Beckman Coulter's case-in-chief.[23]

---

**Cytek:** As the case has continued to develop since the *Markman* hearing, including through expert discovery, it is apparent that the parties have ongoing disputes over claim scope that require the Court's attention.  *See O2 Micro Int'l v. Beyond Innovation Tech.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute.")

[23] **Beckman Coulter:** Beckman Coulter objects to Cytek's attempt to raise a motion *in limine* in the Pretrial Order.  Regardless, Beckman Coulter responds as follows:

Cytek attempts to keep Dr. Chen, the sole inventor of the asserted patents, from testifying from Beckman Coulter's case-in-chief, casting him as a rebuttal witness and arguing that "Dr. Chen's testimony has no relevance to Beckman Coulter's case-in-chief" and is "relevant only in later stages of the case."  Cytek's position is false on its face, and improperly attempts to restrain Beckman Coulter's ability to put on its case.  Inventors are routinely and ubiquitously called by the patent owner-plaintiff in its case-in-chief, as "[a]n inventor is a competent witness to explain the invention and what was intended to be conveyed by the specification and covered by the claims. The testimony of the inventor may also provide background information, including explanation of the problems that existed at the time the invention was made and the inventor's solution to these problems." *Voice Techs. Group, Inc. v. VMC Sys., Inc.*, 164 F.3d 605 (Fed. Cir. 1999).  Dr. Chen's testimony is necessary to explain the background and technology in this case, and is additionally relevant to numerous other aspects of Beckman Coulter's case-in-chief, including priority.  Additionally, this Court has allowed inventors to testify in a plaintiff's case-in-chief and has provided guidance in prior cases on such testimony, which Beckman Coulter will follow. *See Natera, Inc. v. CareDx, Inc.*, C.A. No. 20-038-CFC (D. Del. Jan. 22, 2024), D.I. 466 at 136:21-137:11.

57

Additionally, Dr. Chen is a third-party witness beyond Beckman Coulter's control, and has indicated that he is available only on the first day of trial on August 17, 2026. Beckman Coulter should not be forced to forego Dr. Chen's live testimony due to his limited trial availability. Rule 611(a) authorizes the Court to control the order of witnesses to make trial presentation effective and avoid wasting time. Fed. R. Evid. 611(a). That is precisely what Beckman Coulter proposes. Cytek's criticisms of the specificity or immovability of Dr. Chen's conflict do not change the analysis: Beckman Coulter is not asking to admit otherwise inadmissible testimony or evade the Court's phasing order; it is asking to preserve live testimony from an important third-party witness during his available window to appear in court, subject to all ordinary objections and the Court's control over scope and order of proof.

**Cytek:** Beckman Coulter notified Cytek on July 13, 2026, that it seeks to call Dr. Yong Chen during its case-in-chief on infringement. But Dr. Chen's testimony has no relevance to Beckman Coulter's case-in-chief. Dr. Chen is the inventor on the three patents-in-suit but has no knowledge relevant to infringement. Allowing Dr. Chen to testify live during Beckman Coulter's case-in-chief would not be relevant to infringement—the only issue in Beckman Coulter's case-in-chief—but would unduly prejudice Cytek by permitting testimony related to issues such as invalidity and Beckman Coulter's copying and willfulness allegations before Cytek presents its case-in-chief, and before Phase 2 occurs (if at all). These issues have no place in Beckman Coulter's case-in-chief, and are relevant only in later stages of the case and only if Beckman Coulter can establish a proper foundation, such as explained in Cytek's MIL 2. At minimum, allowing Dr. Chen to testify on the first day of trial, August 17, on topics well beyond Beckman Coulter's case-in-chief, would allow Beckman Coulter to end-run its evidentiary obligations to establish a foundation for copying allegations, and could even permit Beckman Coulter to improperly argue willfulness during Phase I of the trial. Dr. Chen is a third party outside the subpoena power of the Court who has been deposed and for whom both parties have provided deposition designations; if he is not available to testify live during the stages and phases of the case for which his testimony may prove relevant, his deposition testimony may be used instead, like any other third-party witness.

    d.  Cytek Miscellaneous Issue #4:  Cytek objects to Beckman Coulter's

proposed amendments to the pleadings as untimely.  Fed. R. Civ. P.

15, 16(c)(2)(B).  To the extent Beckman Coulter's amendments to the

---

Furthermore, Dr. Chen's conflict does not appear to be immovable or specific, and he has known of the trial date in this case since last year.  Counsel for Beckman Coulter represented to Cytek on a meet-and-confer on July 15, 2026 that the conflict relates to Dr. Chen's work for Genotix Biotech, Inc., for which Dr. Chen is the Founder and President.  But Beckman Coulter's counsel said they had no further information on what work "conflict" supposedly prevents Dr. Chen from testifying later in the week.  Rather, counsel  generally stated that as a third party, Dr. Chen should not have to take a week off work for trial.  This, however, does not explain why Beckman Coulter has taken the position that Dr. Chen is available only in Beckman Coulter's case-in-chief—to which his testimony is <u>not</u> relevant— rather than in Beckman Coulter's rebuttal case—to which Dr. Chen's testimony may be relevant.  Additionally, despite Beckman Coulter's Rule 26 disclosures implying otherwise, if Dr. Chen is indeed "a third party beyond Beckman Coulter's control" and unwilling to voluntarily appear to permit an orderly trial, then, as noted above, Beckman Coulter can rely on his designated deposition testimony.  Similarly, Beckman Coulter also could have taken its own affirmative third-party deposition of Dr. Chen during fact discovery to secure his relevant trial testimony.  Beckman Coulter chose not to do so.  At present, Dr. Chen's apparent lack of voluntarily availability for a few days instead of a single day appears more in line with his deposition testimony that "I have a lot of other things that's more important than this [case]," than any actual "conflict" known to Cytek to justify Beckman Coulter's position.  Chen Tr. at 25:12-22; *see also* Chen Tr. at 69:5-12 ("Q.  If you're asked to come to trial in August of 2026, would you come?  A.  If it is legally required, I definitely will.  If it's not and I can get along with it, no.  I am not going to do it."), 69:13-25 ("If I really think about it, what I recognize now is that Cytek is trying to invalidate my patent and I am very proud of what I did, and I am very confident those patents are valid.  So for that reason, if there actually is a trial involve trying to invalidity my patents, I will volunteer.").  Either way, Dr. Chen's unspecified "conflict" and/or unwillingness to spend time on trial are insufficient to outweigh the undue prejudice to Cytek from allowing Dr. Chen to testify live "to all relevant facts within his personal knowledge" during Beckman Coulter's case-in-chief.

pleadings in Exhibit 15 are allowed, Cytek respectfully requests an opportunity to respond.[24]

## XV.    MOTION FOR JUDGMENT AS A MATTER OF LAW

114.    All motions for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) may be brought to the Court orally or in writing.  The parties propose that motions be made when the jury is outside of the courtroom, or at sidebar, and that motions be argued during breaks when the jury is out of the courtroom or at the end of the day after the jury has been dismissed.

## XVI.  ORDER CONTROLS

115.    This order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

116.    The parties reserve the right to seek leave to supplement or amend this final pretrial order based on subsequent events or by agreement.

---

[24] **Beckman Coulter:**  Local Rule 16.3 expressly contemplates that the parties may identify "amendments to the pleadings" in the proposed pre-trial order, consistent with Federal Rule of Civil Procedure 15.  Beckman Coulter's proposed amendments to the pleadings are intended to streamline the issues for trial and do not introduce any new claims, defenses, or factual issues.

**Cytek:** Consistent with Fed. R. Civ. P. 15, leave of Court is required for Beckman Coulter's proposed amendments.

/s/ Frederick L. Cottrell, III
Frederick L. Cottrell, III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com

OF COUNSEL:

Omar A. Khan
Jeffrey A. Dennhardt
Laura Macro
Lauren Matlock-Colangelo
Jennifer L. Graber
Maggie Sawin
Kelly A. Todd
Robert J. Gunther, Jr.
WILMER CUTLER PICKERING
HALE and DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

Akkad Y. Moussa
WILMER CUTLER PICKERING
HALE and DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037

/s/ Cameron P. Clark
Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@morrisnichols.com
jtigan@morrisnichols.com
cclark@morrisnichols.com

OF COUNSEL:

Reuben H. Chen
Alexandra D. Leeper
Juan Pablo Gonzalez
HanByul Chang
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000

Elizabeth M. Flanagan (#5891)
COOLEY LLP
2049 Century Park East, Suite 3700
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402

61

James M. Dowd
WILMER CUTLER PICKERING
HALE and DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
(213) 443-5300

*Attorneys for Plaintiff*

Adam Pivovar
Dustin M. Knight
Rosalynd D. Upton
David Y. Yun
COOLEY LLP
1299 Pennsylvania Avenue NW,
Suite 700
Washington, DC 20004
(202) 842-7800

*Attorneys for Defendant*