# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BECKMAN COULTER, INC.,

                    Plaintiff,

       v.

CYTEK BIOSCIENCES, INC.,

                    Defendant.

C.A. No. 24-0945-CFC

██████████████

## EXHIBIT 4

## BECKMAN COULTER'S STATEMENT OF THE ISSUES OF LAW THAT REMAIN TO BE LITIGATED

Beckman Coulter reserves the right to rely upon the legal authorities cited by Cytek in its corresponding exhibit, Exhibit 5.

To the extent Beckman Coulter's Statement of Contested Facts that Remain to be Litigated, as set forth in Exhibit 2, contains items that the Court determines are more appropriately included in this list of issues of law, those items are incorporated herein by reference. Should the Court determine that any issue identified below is more appropriately considered an issue of fact, Beckman Coulter incorporates such issue by reference into Exhibit 2.

## I.    Issues on Which Plaintiff Bears the Burden of Proof

### A.    Infringement

#### 1.    Infringement of U.S. Patent No. 10,330,582 (the "'582 Patent")

1.    Whether Beckman Coulter has proven by a preponderance of evidence that Cytek has infringed and continues to infringe one or more of claims 1, 3, 6, 23, and 26 of the '582 Patent (collectively, the "Asserted Claims of the '582 Patent") either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a) by making, using, offering to sell, selling, or importing the Accused Products within the United States, in view of Cytek's defense of reverse doctrine of equivalents.

2.    Whether Beckman Coulter has proven by a preponderance of evidence that Cytek has infringed and continues to infringe one or more of the Asserted Claims of the '582 Patent under 35 U.S.C. § 271(b) by actively inducing, with knowledge of the '582

Patent, acts by others that constitute infringement, either literally or under the doctrine of equivalents, of one or more of the Asserted Claims of the '582 Patent.

3.      Whether Beckman Coulter has proven by a preponderance of evidence that Cytek has willfully infringed and continues to willfully infringe one or more of the Asserted Claims of the '582 Patent under 35 U.S.C. § 284.

**2.      Infringement of U.S. Patent No. 11,703,443 (the "'443 Patent")**

4.      Whether Beckman Coulter has proven by a preponderance of evidence that Cytek has infringed and continues to infringe one or more of claims 4, 6, 10, 11, 15 of the '443 Patent (collectively, the "Asserted Claims of the '443 Patent") either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a) by making, using, offering to sell, selling, or importing the Accused Products within the United States, in view of Cytek's defense of reverse doctrine of equivalents.

5.      Whether Beckman Coulter has proven by a preponderance of evidence that Cytek has infringed and continues to infringe one or more of the Asserted Claims of the '443 Patent under § 271(b) by actively inducing, with knowledge of the '443 Patent, acts by others that constitute infringement, either literally or under the doctrine of equivalents, of one or more of the Asserted Claims of the '443 Patent.

6.      Whether Beckman Coulter has proven by a preponderance of evidence that Cytek has contributed and continues to contribute, under § 271(c), to infringement by others of one or more of claims 11 and 15 of the '443 Patent by supplying Accused Products, including upgrades and APD modules, that are combined into infringing flow

cytometers and used by customers.  Whether Beckman Coulter has proven by a preponderance of evidence that Cytek knew of the '443 Patent and knew that the APD modules are especially adapted for use in the claimed invention and have no substantial non-infringing use, and intended for the APD modules to be used in flow cytometers that would directly infringe, literally or under the doctrine of equivalents, the Asserted Claims of the '443 Patent.

7.      Whether Beckman Coulter has proven by a preponderance of evidence that Cytek has infringed and continues to infringe claims 11 and 15 of the '443 Patent under § 271(f)(1) by supplying or causing to be supplied APD modules from the United States to Cytek's facilities outside of the United States, and whether the APD modules make up all or a substantial portion of the inventions of claim 11 and 15.  Whether Beckman Coulter has proven by a preponderance of evidence that Cytek knew of the '443 Patent and actively induced the combination of APD modules in the accused flow cytometers, and whether the combination of APD modules in the accused flow cytometers would directly infringe, literally or under the doctrine of equivalents, if it occurred in the United States.

8.      Whether Beckman Coulter has proven by a preponderance of evidence that Cytek has infringed and continues to infringe one or more of claims 11 and 15 of the '443 Patent under § 271(f)(2) by supplying APD modules from the United States to Cytek's facilities outside the United States, and whether the APD modules are especially made or adapted for use in the claimed invention and are not staple articles of commerce suitable

for substantial non-infringing use.   Whether Beckman Coulter has proven by a preponderance of evidence that Cytek knew of the '443 Patent and knew that the APD modules are especially adapted for use in the claimed invention and have no substantial non-infringing use, and intended for the APD modules to be used in flow cytometers that would directly infringe, literally or under the doctrine of equivalents, claims 11 and 15 of the '443 Patent if the APD modules had been used in flow cytometers in the United States.

9.      Whether Beckman Coulter has proven by a preponderance of evidence that Cytek has willfully infringed and continues to willfully infringe one or more of the Asserted Claims of the '443 Patent under 35 U.S.C. § 284.

### 3.      Infringement of U.S. Patent No. 12,174,107 (the "'107 Patent")

10.     Whether Beckman Coulter has proven by a preponderance of evidence that Cytek has infringed and continues to infringe one or more of claims 5, 16, 18, 26, 27, 29 of the '107 Patent (collectively, the "Asserted Claims of the '107 Patent") either literally or under the doctrine of equivalents, under 35 U.S.C. § 271(a) by making, using, offering to sell, selling, or importing the Accused Products within the United States, in view of Cytek's defense of reverse doctrine of equivalents.

11.     Whether Beckman Coulter has proven by a preponderance of evidence that Cytek has infringed and continues to infringe one or more of the Asserted Claims of the '107 Patent under § 271(b) by actively inducing, with knowledge of the '107 Patent, acts by others that constitute infringement, literally or under the doctrine of equivalents, of one or more of the Asserted Claims of the '107 Patent.

12.     Whether Beckman Coulter has proven by a preponderance of evidence that Cytek has contributed and continues to contribute, under § 271(c), to infringement by others of one or more of the Asserted Claims of the '107 Patent, with knowledge of the '107 Patent by supplying Accused Products, including upgrades and APD modules, that are combined into infringing flow cytometers and used by customers.  Whether Beckman Coulter has proven by a preponderance of evidence that Cytek knew of the '107 Patent and knew that the APD modules are especially adapted for use in the claimed invention and have no substantial non-infringing use, and intended for the APD modules to be used in flow cytometers that would directly infringe, literally or under the doctrine of equivalents, the Asserted Claims of the '107 Patent,

13.     Whether Beckman Coulter has proven by a preponderance of evidence that Cytek has infringed and continues to infringe one or more of the Asserted Claims of the '107 Patent under § 271(f)(1) by supplying or causing to be supplied APD modules from the United States to Cytek's facilities outside of the United States, and whether the APD modules make up all or a substantial portion of the invention of the Asserted Claims of the '107 Patent.  Whether Beckman Coulter has proven by a preponderance of evidence that Cytek knew of the '107 Patent and actively induced the combination of APD modules in the accused flow cytometers,  and whether the combination of APD modules in the accused flow cytometers would directly infringe, literally or under the doctrine of equivalents, if they had occurred in the United States.

6

14.    Whether Beckman Coulter has proven by a preponderance of evidence that Cytek has infringed and continues to infringe one or more of the Asserted Claims of the '107 Patent under § 271(f)(2) by supplying APD modules from the United States to Cytek's facilities outside the United States, and whether the APD modules are especially made or adapted for use in the claimed inventions and are not staple articles of commerce suitable for substantial non-infringing use.    Whether Beckman Coulter has proven by a preponderance of evidence that Cytek knew of the '107 Patent and knew that the APD modules are especially adapted for use in the claimed invention and have no substantial non-infringing use, and intended for the APD modules to be used in flow cytometers that would directly infringe, literally or under the doctrine of equivalents, one or more of the Asserted Claims of the '107 Patent if the APD modules had been used in flow cytometers in the United States.

15.    Whether Beckman Coulter has proven by a preponderance of evidence that Cytek has willfully infringed and continues to willfully infringe one or more of the Asserted Claims of the '107 Patent under 35 U.S.C. § 284.

### 4.    Legal Authority

#### a)    *Direct Infringement*

16.    Direct Infringement occurs when "whoever without authority makes, uses, offer to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent."  35 U.S.C. § 271(a).

17.    "Infringement is a question of fact."  *Sunovian Pharm., Inc. v. Teva Pharm. USA, Inc.*, 731 F.3d 1271, 1275 (Fed. Cir. 2013).

18.    For a system claim, "the patentee must show that the accused device meets each claim limitation, either literally or under the doctrine of equivalents."  *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1142 (Fed. Cir. 2018) (citing *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002)).  Plaintiff bears the burden of proving infringement by a preponderance of the evidence.  *See Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 557-558 (2014) ("patent-infringement litigation has always been governed by a preponderance of the evidence standard").  "The infringement analysis is a two-step inquiry.  First, the court determines the scope and meaning of the patent claims asserted, and then the properly construed claims are compared to the allegedly infringing device."  *Cordis Corp. v. Bos. Sci. Corp.*, 658 F.3d 1347, 1354 (Fed. Cir. 2011) (internal citations omitted).  "[L]imitations cannot be read into the claims from the specification or the prosecution history."  *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1340 (Fed. Cir. 1999); *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1321 (Fed. Cir. 2013) ("limitations discussed in the specification may not be read into the claims").

19.    "A patentee may prove direct infringement or inducement of infringement by either direct or circumstantial evidence."  *Liquid Dynamics Corp. v. Vaughan Co.*, 449

F.3d 1209, 1219 (Fed. Cir. 2006); *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1364 (Fed. Cir. 2012) ("Direct infringement can be proven by circumstantial evidence.").

20.    "The existence of one's own patent does not constitute a defense to infringe onto someone else's patents."  June 30, 2022 Tr. at 30:6-31:3, *Magnolia Medical Techs. v. Kurin, Inc.*, 1:19-cv-00097-CFC-CJB, (D. Del. June 30, 2022) (Connolly, J.).  *See Bio-Tech. Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1559 (Fed. Cir. 1996) ("[T]he existence of one's own patent does not constitute a defense to infringement of someone else's patent. It is elementary that a patent grants only the right to exclude others and confers no right on its holder to make, use, or sell." (quoting *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 879 n.4 (Fed. Cir. 1991))).

21.    An accused infringer can still be found liable for infringement where it has allegedly improved upon the patented technology.  *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*, 750 F.2d 1569, 1580 (Fed. Cir. 1984) ("[W]here defendant has appropriated the material features of a patent the suit, infringement will be found even when those features have been supplemented and modified to such an extent that the defendant may be entitled to a patent for the improvement." (citation and internal quotation marks omitted)); *Water Tech. Corp. v. Calco, Ltd.*, 850 F.2d 660, 669 (Fed. Cir. 1988) ("it is elementary patent law that a patent may issue on an improvement which infringes another's patent."); *Stiftung v. Renishaw PLC*, 945 F.2d 1173, 1179 (Fed. Cir. 1991) ("The district court seems to have focused on the fact that Zeiss' introduction of a piezoelectric

9

element is an improvement upon the patented invention. Indeed, in view of Renishaw's use of piezoelectric elements in its own newer probes, this superiority appears to be undisputed. But an improvement upon a patented device does not necessarily avoid infringement."); *JVW Enterprises, Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1333 (Fed. Cir. 2005) ("These additional features amount to improvements that do not avoid infringement.").

### b)    Literal Infringement

22.    To prove literal infringement, the patentee "must show that the accused device contains each and every limitation of the asserted claim[]." *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1358 (Fed. Cir. 2012).  However, an accused device "cannot escape infringement by merely adding features." *Radio Steel and Mfg. Co. v. MTD Products, Inc.*, 731 F.2d 840, 848 (Fed. Cir. 1984); *see also Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1347 (Fed. Cir. 2005) ("The addition of unclaimed elements does not typically defeat infringement when a patent uses an open transitional phrase such as 'comprising.'").  Nor is "infringement … avoided merely because a non-infringing mode of operation is possible." *Z4 Techs., Inc. v. Microsoft Corp.*, 507 F.3d 1340, 1350 (Fed. Cir. 2007).

### c)    Doctrine of Equivalents

23.    "'[A] product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is equivalence between the elements of the accused product or process and the claimed elements of the patented invention.'" *Smartrend Mfg. Grp., Inc. v. Opti-Luxx Inc*, 159 F.4th 1322, 1332 (Fed. Cir.

10

2025) (quoting *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1016 (Fed. Cir. 2006)). "Doctrine of equivalents infringement is found where the differences between the claimed invention and the accused device or process are insubstantial." *Smartrend*, 159 F.4th at 1332 (internal quotation marks omitted). The function-way-result test is one "articulation of the equivalence test." *Id*. "The function-way-result test asks whether the accused product 'performs substantially the same function in substantially the same way to obtain the same result.'" *Id*. (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950)).

24.   "Infringement, either literal or under the doctrine of equivalents, is a question of fact." *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1344 (Fed. Cir. 2013) (quoting *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009)).

25.   A component of an accused product may be equivalent to elements of an asserted claim for purposes of infringement under the doctrine of equivalents even if the accused product is covered by a separate patent. *See Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1324 (Fed. Cir. 2000) ("it is well established that separate patentability does not avoid equivalency as a matter of law.").

### d)   *Reverse Doctrine of Equivalents*

26.   While the patentee bears the burden of proving infringement, if the patentee establishes literal infringement, the burden shifts to the accused infringer to set forth a prima facie case of non-infringement under the reverse doctrine of equivalents. *Roche*

*Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1377–78 (Fed. Cir. 2008) (citation omitted).

Then, if "the accused infringer is successful in making a prima facie case, the patentee must then rebut that prima facie case." *Id.* at 1378.

27.    "The reverse doctrine of equivalents is an equitable doctrine designed 'to prevent unwarranted extension of the claims beyond a fair scope of the patentee's invention.'" *Id.* at 1377 (quoting *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1581 (Fed. Cir. 1991), *overruled on other grounds by Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282 (Fed. Cir. 2009)).  "Under the reverse doctrine of equivalents, an accused product or process that falls within the literal words of a claim nevertheless may not infringe if the product or process 'is so far changed in principle from a patented article that it performs the same or a similar function in a substantially different way.'"  *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1351 (Fed. Cir. 2003) (quoting *Graver Tank & Mfg. Co. v. Linde Air Prod. Co.*, 339 U.S. 605, 608–09 (1950)).  In such a case, the reverse doctrine of equivalents "may be used to restrict the claim and defeat the patentee's action for infringement."  *Roche Palo Alto LLC v. Apotex, Inc.*, 526 F. Supp. 2d 985, 991 (N.D. Cal. 2007), aff'd, 531 F.3d 1372 (Fed. Cir. 2008).  "Because the reverse doctrine of equivalents requires a fundamental change in the basic principle by which the device operates, the doctrine is rarely invoked and virtually never sustained."  *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1338 (Fed. Cir. 2009) (citing

12

*Roche*, 531 F.3d at 1378 ("[T]his court has never affirmed a finding of non-infringement under the reverse doctrine of equivalents.")).

28.    Like the doctrine of equivalents, the reverse doctrine of equivalents is applied to individual limitations of a claim. *DePuy Spine*, 567 F.3d at 1338–39; *see also Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997) ("[T]he doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole."). "The reverse doctrine of equivalents comes into consideration only when literal infringement is apparent." *Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n*, 846 F.2d 1369, 1372 (Fed. Cir. 1988).

29.    Application of the reverse doctrine of equivalents "requires that facts specific to the accused device be determined and weighed against the equitable scope of the claims, which in turn is determined in light of the specification, the prosecution history, and the prior art." *Scripps*, 927 F.2d at 1581. To establish a prima facie case for application of the reverse doctrine of equivalents, the accused infringer must show that the accused device is "sufficiently different from that which is patented that despite the apparent literal infringement, the claims are interpreted to negate infringement." *Texas Instruments*, 846 F.2d at 1371 (citations omitted). An accused device is sufficiently different from the patented claims when the accused device "is so far changed in principle from a patented article that it performs the same or a similar function in a substantially different way." *Graver Tank*, 339 U.S. at 608–09.

### e)    *Induced Infringement*

30.    Under 35 U.S.C.§ 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer."  A claim for induced infringement has three elements: "First, there must be direct infringement by a third party.  Second, the inducer must know that the induced acts constitute patent infringement.  Third, and most relevant here, the inducer must take active steps ... to encourage direct infringement." *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, No. 24-889, 2026 WL 1593307 (U.S. June 4, 2026) (internal quotation and citation omitted).  "In contrast to direct infringement, liability for inducing infringement attaches only if the defendant knew of the patent and that the induced acts constitute patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015) (internal quotation marks and citation omitted).  "[W]illful blindness can satisfy the knowledge requirement for active inducement under § 271(b) (and for contributory infringement under § 271(c)), even in the absence of actual knowledge." *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed. Cir. 2016).  "Willful blindness, in turn, is characterized by 'two basic requirements:  (1) The defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact.'" *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1118 (Fed. Cir. 2022) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011)).  "A patentee may prove direct infringement or inducement of infringement by either direct or circumstantial evidence." *Liquid Dynamics*, 449 F.3d at 1219.

14

31. A belief that the Asserted Claims are invalid is irrelevant to the issue of induced infringement. *Comil USA, LLC v. Cisco Sys.*, 575 U.S. 632, 642 (2015) ("And because infringement and validity are separate issues under the Act, belief regarding validity cannot negate the scienter required under § 271(b).").

### f) Contributory Infringement

32. Under 35 U.S.C. § 271(c), "[w]hoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer."  "Contributory infringement under 35 U.S.C. § 271(c) requires proof that (1) the defendant had knowledge of the patent in suit, (2) the defendant had knowledge of patent infringement, and (3) the accused product is not a staple article or commodity of commerce suitable for a substantial noninfringing use." *Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1335 (Fed. Cir. 2021) (internal quotation marks and citation omitted).  In assessing whether a use is substantial, the fact-finder may consider 'the use's frequency, ... the use's practicality, the invention's intended purpose, and the intended market.'" *Toshiba Corp.*, 681 F.3d at 1362 (quoting *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010)).

33.   "Like induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC*, 575 U.S. at 639.  "[W]illful blindness can satisfy the knowledge requirement . . . for contributory infringement under § 271(c)[], even in the absence of actual knowledge."  *Warsaw Orthopedic, Inc.*, 824 F.3d at 1347.  Willful blindness has "two basic requirements:  (1) The defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact."  *Global-Tech Appliances*, 563 U.S. at 769.

### g)   *Infringement Under § 271(f)(1)*

34.   Under 35 U.S.C. § 271(f)(1), a party is liable for infringement if it "supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention," where "such components are uncombined in whole or in part," and are supplied "in such manner as to actively induce the combination of such components outside of the United States" in a manner that "would infringe the patent if such combination occurred within the United States."

35.   Section 271(f)(1) "expands the definition of infringement to include supplying from the United States a patented invention's components," and the statute is directed to the domestic act of supplying components "in or from the United States," rather than the location of the ultimate combination. *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 444–45 (2007).

16

36.     Section 271(f)(1)'s requirement that the defendant supply "all or a substantial portion of the components" is a "quantitative" inquiry. *Life Techs. Corp. v. Promega Corp.*, 580 U.S. 140, 146–50 (2017). "[A] single component does not constitute a substantial portion of the components of a patented invention." *Id*. at 150–51.

37.     Section 271(f)(1) further requires that the components be supplied "in such manner as to actively induce" their combination abroad. "[A]s it relates to the required acts of inducement of direct infringement," Section 271(f)(1) "includes the same legal requirements as does Section 271(b)." *TriDiNetworks Ltd. v. NXP-USA, Inc.*, No. CV 19-1062-CFC-CJB, 2020 WL 2514086, at *2, n.3 (D. Del. May 15, 2020). "A finding of inducement requires both an underlying instance of direct infringement and a requisite showing of intent." *Liquid Dynamics*, 449 F.3d at 1222-23.

### h)     Infringement Under § 271(f)(2)

38.     Under 35 U.S.C. § 271(f)(2), a party is liable for infringement if it "supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use," where such component is uncombined and supplied "knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States." "Like Section 271(c), Section 271(f)(2) requires that the components of a patented invention have no substantial non-infringing use." *TriDiNetworks Ltd.*, 2020 WL

17

2514086, at *3, n.4. "[N]on-infringing uses are substantial when they are not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental." *Toshiba Corp.*, 681 F.3d at 1362.

39.     Section 271(f)(2) "does not require an actual combination of the components, but only a showing that the infringer shipped them with the intent that they be combined." *Waymark Corp. v. Porta Sys. Corp.*, 245 F.3d 1364, 1368 (Fed. Cir. 2001).

### *i)       Willful Infringement*

40.     Willful infringement is a question of fact. *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1339-42 (Fed. Cir. 2016).

41.     "To establish willfulness, the patentee must show the accused infringer had a specific intent to infringe at the time of the challenged conduct." *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987 (Fed. Cir. 2021).   Beckman Coulter must prove willfulness by a preponderance of the evidence. *Id.*

## B.     Priority, Conception, and Reduction to Practice

### 1.     Issues of Law to Be Litigated

42.     Whether the inventions of the Asserted Claims of the '582 Patent were conceived of no later than April 2012, including about April 18, 2012.

43.     Whether the inventions of the Asserted Claims of the '443 Patent were conceived of no later than April 2012, including about April 18, 2012.

44.      Whether the inventions of the Asserted Claims of the '107 Patent were conceived of no later than April 2012, including about April 18, 2012.

45.    Whether the inventions of the Asserted Claims of the '582 Patent were actually reduced to practice with reasonable diligence no later than September 20, 2012, and constructively reduced to practice with reasonable diligence no later than October 19, 2012.

46.    Whether the inventions of the Asserted Claims of the '443 Patent were actually reduced to practice with reasonable diligence no later than September 20, 2012, and constructively reduced to practice with reasonable diligence no later than October 19, 2012.

47.    Whether the inventions of the Asserted Claims of the '107 Patent were actually reduced to practice with reasonable diligence no later than September 20, 2012, and constructively reduced to practice with reasonable diligence no later than October 19, 2012.

48.    Whether the Asserted Claims of the '582 Patent are entitled to priority date of (1) October 19, 2012 based on provisional patent application numbers 61/653,245, 61/653,328, 61/715,819, and 61/715,836; (2) April 29, 2013 based on provisional patent application numbers 61/653,328, 61/715,819, 61/715,836, 61/653,245, and 61/816,819; (4) May 30, 2013 based on provisional patent application numbers 61/653,328, 61/715,819, 61/715,836, 61/653,245, and 61/816,819 and PCT application no. PCT/US2013/043453; (5) December 4, 2013 based on provisional patent application numbers 61/653,328,

61/715,819, 61/715,836, 61/653,245, 61/816,819, and 61/911,859 and PCT application no. PCT/US2013/043453.

49.    Whether the Asserted Claims of the '443 Patent are entitled to priority date of (1) October 19, 2012 based on provisional patent application numbers 61/653,245, 61/653,328, 61/715,819, and 61/715,836; (2) April 29, 2013 based on provisional patent application numbers 61/653,328, 61/715,819, 61/715,836, 61/653,245, and 61/816,819; (4) May 30, 2013 based on provisional patent application numbers 61/653,328, 61/715,819, 61/715,836, 61/653,245, and 61/816,819 and PCT application no. PCT/US2013/043453; (5) December 4, 2013 based on provisional patent application numbers 61/653,328, 61/715,819, 61/715,836, 61/653,245, 61/816,819, and 61/911,859 and PCT application no. PCT/US2013/043453.

50.    Whether the Asserted Claims of the '107 Patent are entitled to priority date of (1) October 19, 2012 based on provisional patent application numbers 61/653,245, 61/653,328, 61/715,819, and 61/715,836; (2) April 29, 2013 based on provisional patent application numbers 61/653,328, 61/715,819, 61/715,836, 61/653,245, and 61/816,819; (4) May 30, 2013 based on provisional patent application numbers 61/653,328, 61/715,819, 61/715,836, 61/653,245, and 61/816,819 and PCT application no. PCT/US2013/043453; (5) December 4, 2013 based on provisional patent application numbers 61/653,328, 61/715,819, 61/715,836, 61/653,245, 61/816,819, and 61/911,859 and PCT application no. PCT/US2013/043453.

### 2.    Legal Authority

51.    The Leahy-Smith America Invents Act ("AIA") became effective, in relevant part, on March 16, 2013.  The post-AIA version of 35 U.S.C. § 102 applies to patent applications filed after that effective date and to patents that claim priority to any such application. Leahy-Smith America Invents Act, Pub. L. No. 112-29, sec. 3(c), 125 Stat. 284, 293 (2011).  Pre-AIA provisions of the Patent Act apply to patents with an effective filing date before March 16, 2013.

52.    "Priority of invention and its constituent issues of conception and reduction to practice are questions of law predicated on subsidiary factual findings."  *REG Synthetic Fuels, LLC v. Neste Oil Oyj*, 841 F.3d 954, 958 (Fed. Cir. 2016).

53.    A patent application may claim the benefit of an earlier application if "the disclosure of the earlier application provides support for the claims of the later application, as required by 35 U.S.C. § 112."  *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008).  "While a prior application need not contain precisely the same words as are found in the asserted claims, the prior application must indicate to a person skilled in the art that the inventor was in possession of the invention as later claimed."  *Id.* (internal quotation marks and citations omitted); *see also* 35 U.S.C. § 120 (requiring that the earlier application provide § 112(a) written-description support for the later-claimed invention).

54.    Conception is defined as "the 'formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention.'"  *Dawson v.*

21

*Dawson*, 710 F.3d 1347, 1352 (Fed. Cir. 2013) (quoting *Hybritech Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986)). "Conception is complete when 'the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation.'" *Id.* (quoting *Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994)).

55.     In order to establish an actual reduction to practice, the patentee must show construction of an embodiment or performance of a process that meets all the limitations of the claim that would work for its intended purpose, as well as the existence of sufficient evidence to corroborate inventor testimony regarding these events. *Yorkey v. Diab*, 601 F.3d 1279, 1286 (Fed. Cir. 2010).

### C.     Damages and Other Relief

#### 1.     Issues of Law to Be Litigated

56.     The amount of compensatory damages to which Beckman Coulter is entitled for Cytek's allegedly infringing sales from the date of first sale to judgment in this case, including the amount of lost profits damages and, where lost profits are not available, reasonable royalty damages.

57.     For lost profits, whether, during the damages period: (1) there was a demand for the patented products; (2) there were no acceptable non-infringing alternatives; (3) Beckman Coulter had the manufacturing and marketing capacity to make the infringing

sales Cytek made; and (4) Beckman Coulter would have made a quantifiable amount of lost profits if Cytek had not infringed

58.   Whether Beckman Coulter is entitled to an award of pre-judgement and post-judgement interest, and the amount.

59.   Whether Beckman Coulter is entitled to enhanced damages pursuant to 35 U.S.C. § 284.

60.   Whether this is an exceptional case pursuant to 35 U.S.C. § 285.

61.   Whether attorneys' fees, expenses, and/or costs are due to Beckman Coulter, and the amount due.

62.   Whether Beckman Coulter is entitled to injunctive relief.

### 2.   Legal Authority

#### a)   Damages

63.   Under 35 U.S.C. § 284, upon a finding of infringement, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."  35 U.S.C. § 284.  "[T]he amount of a prevailing party's damages is a finding of fact on which the plaintiff bears the burden of proof by a preponderance of the evidence."  *Smithkline Diagnostics, Inc. v. Helena Labs. Corp.*, 926 F.2d 1161, 1164 (Fed. Cir. 1991); *Amgen Inc. v. Hospira, Inc.*, 944 F.3d 1327, 1341 (Fed. Cir. 2019) ("The jury's determination of the amount of damages is an issue of fact. …").

"The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances." 35 U.S.C. § 284.

64.    The purpose of compensatory damages is to make the patent owner whole or fully compensate it for the infringement and to assess "the difference between [the patentee's] pecuniary condition after the infringement, and what his condition would have been if the infringement had not occurred." *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407 (2018); *Rite- Hite Corp. v. Kelley Co.*, Inc., 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc), *cert. denied*, 516 U.S. 867 (1995) ("[T]he Supreme Court has interpreted [Section 284] to mean that 'adequate' damages should approximate those damages that will *fully compensate* the patentee for infringement." (emphasis in original)). "The 'overriding purpose' of § 284 is to 'affor[d] patent owners complete compensation' for infringements." *WesternGeco LLC.*, 585 U.S. at 408 (quoting *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 (1983)).

### b)    *Lost Profits*

65.    "To recover lost profits damages for patent infringement, the patent owner must show that it would have received the additional profits 'but for' the infringement. The patent owner bears the burden to present evidence sufficient to show a reasonable probability that it would have made the asserted profits absent infringement." *King Instruments Corp. v. Perego*, 65 F.3d 941, 952 (Fed. Cir. 1995); *see also Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275 (Fed. Cir. 2017) (requiring "but for" causation to recover lost profits). Once the patentee "establishes a reasonable probability of 'but for'

causation, 'the burden then shifts to the accused infringer to show that [the patent owner's 'but for' causation claim] is unreasonable for some or all of the lost sales.'" *Allergan, Inc. v. Revance Therapeutics, Inc.*, 789 F. Supp. 3d 365, 377 (D. Del. 2025) (citing *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999)).

66.    "There is no particular required method to prove but for causation.  One 'useful, but non-exclusive' method to establish the patentee's entitlement to lost profits is the *Panduit* test first articulated by the Sixth Circuit." *Mentor Graphics Corp.*, 851 F.3d at 1284 (quoting *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc))).  Under the *Panduit* test, a plaintiff is entitled to lost profits if it can establish: (1) "demand for the patented product"; (2) "absence of acceptable noninfringing substitutes"; (3) "manufacturing and marketing capability to exploit the demand"; and (4) "the amount of the profit [the plaintiff] would have made." *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156 (6th Cir. 1978); *Mentor Graphics*, 851 F.3d at 1284-87 (applying *Panduit* factors for lost profits analysis).

67.    For the first *Panduit* factor—demand for the patented product—"the focus on particular features corresponding to individual claim limitations is unnecessary." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1331 (Fed. Cir. 2009); *Mentor Graphics*, 851 F.3d at 1285 ("The first factor—demand for the patented product—considers demand for the product as a whole."). "The proper inquiry asks whether demand existed in the marketplace for the patented product, i.e., a product covered by the patent in

suit or that directly competes with the infringing device." *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1241-42 (Fed. Cir. 2017) (internal quotation marks and citation omitted). In addition, "[a]n infringer's marketing material promoting the patented feature in question is evidence of demand for that feature." *Advanced Med. Optics, Inc. v. Alcon Inc.*, 361 F. Supp. 2d 404, 419 (D. Del. 2005).

68.     Regarding the second *Panduit* factor, "if purchasers are motivated to purchase because of particular features available only from the patented product, products without such features—even if otherwise competing in the marketplace—would not be acceptable noninfringing substitutes." *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991); *see also Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1361 (Fed. Cir. 2012) ("[P]roducts lacking the advantages of the patented invention can hardly be termed a substitute acceptable to the customer who wants those advantages.") (internal citation and quotation marks omitted)). "The patentee is not obliged to negate every possibility that a purchaser might not have bought the patentee's product instead of the infringing one, or might have foregone the purchase altogether." *Presidio*, 702 F.3d at 1361 (quoting *Rite–Hite*, 56 F.3d at 1545).

69.     "[A] patent owner may [also] satisfy the second *Panduit* element by substituting proof of its market share for proof of the absence of acceptable substitutes." *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1219 (Fed. Cir. 1993) (citing *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1578) (Fed. Cir. 1989)).

"This market share approach allows a patentee to recover lost profits, despite the presence of acceptable, noninfringing substitutes, because it nevertheless can prove with reasonable probability sales it would have made 'but for' the infringement." *Id.* "[T]o determine a patentee's market share, the record must accurately identify the market." *Crystal Semiconductor v. Tritech Microelectronics*, 246 F.3d 1336, 1356 (Fed. Cir. 2001). "The proper starting point to identify the relevant market is the patented invention." *Micro Chemical, Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1124 (Fed. Cir. 2003). The relevant market "also includes other devices or substitutes similar in physical and functional characteristics to the patented invention." *Id.* However, it "excludes alternatives to the patented product with disparately different prices or significantly different characteristics." *Crystal Semiconductor*, 246 F.3d at 1356. "Once the market is defined, it generally becomes an easier task to determine how many suppliers operate in the defined relevant market." *Micro Chemical*, 318 F.3d at 1124–25.

70.    For the third *Panduit* factor, a plaintiff must show "manufacturing and marketing capability to exploit the demand." *Mentor Graphics*, 851 F.3d at 1285; *AOS Holding Co. v. Bradford White Corp.*, No. 18-cv-412-LPS, 2021 WL 5411103 (D. Del. Mar. 31, 2021), *aff'd sub nom. A.O. Smith Corp. v. Bradford White Corp.*, No. 2021-2222, 2022 WL 3053891, at *36 (Fed. Cir. Aug. 3, 2022) ("Turning to the third *Panduit* factor, AOS has also shown that it had the manufacturing and marketing capacity to satisfy the

additional demand it would have confronted had BW's infringing product not been on the market.").

71.     Finally, a plaintiff must show the amount of profit it would have made but for the infringement.  "Full compensation includes any foreseeable lost profits the patent owner can prove." *Grain Processing*, 185 F.3d at 1349.  Lost profits may be due to diverted sales, price erosion, and increased expenditures caused by the infringement." *Atmel Corp. v. Silicon Storage Tech., Inc.*, 76 F. App'x 298, 311 (Fed. Cir. 2003).  The amount of profits calculated in the fourth factor are not further apportioned according to "the amount of profit properly attributable to [a infringing product's] patented features." *Mentor Graphics*, 851 F.3d at 1287.  Rather, apportionment is already "properly incorporated into the lost profits analysis and in particular through the *Panduit* factors." *Id.* at 1288.

### c)     *Reasonable Royalty*

72.     "35 U.S.C. § 284 requires the district court to award damages 'in an amount no less than a reasonable royalty.'" *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365 (Fed. Cir. 2015) (quoting *Dow Chemical Co. v. Mee Indus.*, Inc., 341 F.3d 1370, 1381 (Fed.Cir.2003)).  "A patentee receives a reasonable royalty for any of the infringer's sales not included in the lost profit calculation." *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1354 (Fed. Cir. 2001) (citing *Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1119 (Fed. Cir. 1996)); *AOS Holding*, 2021 WL 5411103, at *40 (evaluating reasonable royalty based on sales not included in lost profits calculation).  "Thus, a patentee may obtain lost profit damages for that portion of the

28

infringer's sales for which the patentee can demonstrate 'but for' causation and reasonable royalties for any remaining infring[ement]." *Crystal Semiconductor*, 246 F.3d at 1354; *see also AOS Holding*, 2021 WL 5411103, at *40.

73.    "Determining that royalty requires a jury to 'find the royalty that would have been agreed to in a hypothetical negotiation between a willing licensee and willing licensors at the time infringement began.'" *Willis Elec. Co. v. Polygroup Ltd. (Macao Com. Offshore)*, 166 F.4th 1363, 1374 (Fed. Cir. 2026) (quoting *Fujifulm Corp. v. Benun*, 605 F.3d 1366, 1372 (Fed. Cir. 2010)). "[W]hat an infringer would prefer to pay is not the test for damages." *Rite-Hite*, 56 F.3d at 1555. "[T]hat the parties might have agreed to a lesser royalty is of little relevance, for to look only at that question would be to pretend that the infringement never happened; it would also make an election to infringe a handy means for competitors to impose a compulsory license policy upon every patent owner." *Id*. (citing *TWM Mfg. Co. v. Dura Corp.*, 789 F.2d 895, 900 (Fed. Cir. 1986)). "[A]n infringer's net profit margin is not the ceiling by which a reasonable royalty is capped." *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1238 (Fed. Cir. 2011); *Bayer Healthcare LLC v. Baxalta Inc.*, 407 F. Supp. 3d 462, 481 (D. Del. 2019), *aff'd*, 989 F.3d 964 (Fed. Cir. 2021) ("The Federal Circuit has since made clear that 'an infringer's net profit margin is not the ceiling by which a reasonable royalty is capped.'") (quoting *Powell.*, 663 F.3d at 1238). There is also no "hard rule" "that damages for patent infringement may never be

significantly higher than the purchase price of the patent." *TC Tech., LLC v. Sprint Corp.*, No. 16-cv-153-RGA, 2019 WL 2515779, at \*26 (D. Del. June 18, 2019).

74.    The fifteen factors identified in *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), are commonly used for the reasonable royalty analysis. The *Georgia-Pacific* factors are:

a.    The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

b.    The rates paid by the licensee for the use of other patents comparable to the patent in suit.

c.    The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

d.    The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

e.    The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

f.  The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

g.  The duration of the patent and the term of the license.

h.  The established profitability of the product made under the patent; its commercial success; and its current popularity.

i.  The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

j.  The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

k.  The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

l.  The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

m. The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process,

business risks, or significant features or improvements added by the infringer.

n. The opinion testimony of qualified experts.

o. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement.

*See also Willis Elec.*, 166 F.4th at 1384 (application of the *Georgia-Pacific* factors is a "sound approach").

75. While the Federal Circuit has approved the use of the *Georgia-Pacific* factors in numerous decisions and district courts have repeatedly applied the analysis, the factors are not exclusive, and some or all of the factors may be relevant to a particular case, depending on the facts of the case. *See, e.g., Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012) ("We do not require that witnesses use any or all of the *Georgia–Pacific* factors when testifying about damages in patent cases."); *Minks v. Polaris Industries, Inc.*, 546 F.3d 1364, 1372 (Fed. Cir. 2008) (applying the first and sixth factors); *Rite-Hite Corp.*, 56 F.3d at 1555 (affirming damages award not based on *Georgia-Pacific* factors).

76. "Any reasonable royalty analysis 'necessarily involves an element of approximation and uncertainty.'" *Lucent Technologies Inc.*, 580 F.3d at 1325 (quoting

*Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995)).  The Federal Circuit has "recognized that estimating a reasonable royalty is not an exact science.  The record may support a range of reasonable royalties, rather than a single value.  Likewise, there may be more than one reliable method for estimating a reasonable royalty."  *Summit 6, LLC v. Samsung Elecs. Co.,* 802 F.3d 1283, 1296 (Fed. Cir. 2015).  "All approaches have certain strengths and weaknesses, and, depending upon the facts, one or all may produce admissible testimony in a particular case.  Because each case presents unique circumstances and facts, it is common for parties to choose different, reliable approaches in a single case and, when they do, the relative strengths and weaknesses of each approach may be exposed at trial or attacked during cross-examination."  *Id*.

### d)    Pre-Judgment Interest

77.    The patent statute authorizes awards of prejudgment interest.  35 U.S.C. § 284.  The Supreme Court has held that "prejudgment interest should ordinarily be awarded."  *Kaufman v. Microsoft Corp.*, 34 F.4th 1360, 1373-74 (Fed. Cir. 2022) (citing *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 (1983)).  "Prejudgment interest runs from the earliest date of infringement for any patent issued at the time of the hypothetical negotiation. …"  *Comcast IP Holdings I LLC v. Sprint Commc'ns Co.,* 850 F.3d 1302, 1315 (Fed. Cir. 2017).

78.    "The rate of prejudgment interest and whether it should be compounded or uncompounded are matters left largely to the discretion of the district court.  In exercising that discretion, however, the district court must be guided by the purpose of prejudgment

interest, which is 'to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement.'" *Bio-Rad Lab'ys., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986) (citation omitted); *Green Mountain Glass LLC v. Saint-Gobain Containers, Inc.*, 300 F. Supp. 3d 610, 627 (D. Del. 2018) ("The Federal Circuit has given district courts great discretion when determining the applicable interest rate for an award of prejudgment interest.") (internal citation and quotation marks omitted).

### e)   *Post-Judgment Interest*

79.   Section 1961(a) of Title 28 of the United States Code states that "interest shall be allowed on any money judgment in a civil case recovered in a district court." "Postjudgment interest is awarded on monetary judgments recovered in all civil cases," including ones for patent infringement. *Transmatic, Inc. v. Gulton Indus., Inc.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999).

80.   Post-judgment interest is governed by regional circuit law. *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, No. 2023-1772, 2025 WL 649737, at *11 (Fed. Cir. Feb. 28, 2025) (citing *Transmatic*, 180 F.3d at 1348). In the Third Circuit, interest begins to accrue on the date of the entry of judgment. *Travelers Cas. & Sur. Co. v. Ins. Co. of N. Am.*, 609 F.3d 143 (3d Cir. 2010) ("[A]s a general matter, post-judgment interest on a particular award only starts running when a judgment quantifying that award has been entered.") Courts in this district routinely award post-judgment interest in patent infringement cases. *Amgen Inc. v. Hospira, Inc.*, 336 F. Supp. 3d 333 (D. Del. 2018) (awarding post-judgment interest

to patentee for patent infringement); *SRI Int'l, Inc. v. Cisco Sys., Inc.*, No. CV 13-1534-RGA, 2022 WL 1523063, at *3-4 (D. Del. May 13, 2022) (awarding post-judgment interest for defendant's willful infringement).

### f)    Enhanced Damages

81.    Under 35 U.S.C. § 284, the "court may increase the damages up to three times the amount found or assessed." "That language contains no explicit limit or condition, and we have emphasized that the word 'may' clearly connotes discretion." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103 (2016) (internal citations omitted). "The sort of conduct warranting enhanced damages has been variously described … as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id*. at 103-104. "In determining whether enhanced damages are appropriate, courts should consider the overall circumstances of the case." *Presidio*, 875 F.3d at 1382.

82.    The Federal Circuit has set forth several factors, called the *Read* factors, that the Court may consider in determining whether to award enhanced damages:

> a.    whether the infringer deliberately copied the ideas or design of another;
>
> b.    whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good faith belief that it was invalid or that it was not infringed;
>
> c.    the infringer's behavior as a party to the litigation;
>
> d.    defendant's size and financial condition;

  e. closeness of the case;

  f. duration of defendant's misconduct;

  g. remedial action by the defendant;

  h. defendant's motivation for harm; and

  i. whether defendant attempted to conceal its misconduct.

*Liquid Dynamics*, 449 F.3d at 1225 (citing *Read*, 970 F.2d at 826–27); *WCM Indus., Inc. v. IPS Corp.*, 721 F. App'x 959, 972 (Fed. Cir. 2018) ("the *Read* factors, although not mandatory, do assist the trial court in evaluating the degree of the infringer's culpability and in determining whether to exercise its discretion to award enhanced damages at all, and if so, by how much the damages should be increased.)

83. A patentee may obtain enhanced damages under 35 U.S.C. § 284 where it establishes that the defendant's infringement was "willful." *Halo*, 59 U.S. at 103. However, willfulness is not required for enhanced damages. *Id*. at 106 ("Section 284 allows district courts to punish the full range of culpable behavior. Yet none of this is to say that enhanced damages must follow a finding of egregious misconduct. As with any exercise of discretion, courts should continue to take into account the particular circumstances of each case in deciding whether to award damages, and in what amount.").

84. "[P]atent-infringement litigation has always been governed by a preponderance of the evidence standard. Enhanced damages are no exception." *Id*. at 107 (internal quotation marks and citation omitted).

### g)    Attorneys' Fees and Costs.

85.    Under 35 U.S.C. § 285, the Court may award reasonable attorneys' fees to the prevailing party in an "exceptional" case that "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated," determined in the Court's discretion considering the totality of the circumstances. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

### h)    Injunctive Relief

86.    Section 283 provides that the Court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."  35 U.S.C. § 283.  When seeking a permanent injunction, the patentee must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  The decision to award or deny [such] relief lies within the  equitable discretion of the district court. … The district court's decision is reviewable for abuse of discretion."  *Apple Inc. v. Samsung Elecs. Co.,* 809 F.3d 633, 639-40 (Fed. Cir. 2015) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 388 (2006)).

87.    To satisfy the first factor, the patentee must prove that a "causal nexus relates the alleged harm to the alleged infringement." *Id*.  "Where two companies are in

37

competition against one another, the patentee suffers the harm—often irreparable—of being forced to compete against products that incorporate and infringe its own patented inventions." *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Cir. 2013).

88.    In balancing the hardships between the parties, the Court "assesses the relative effect of granting or denying an injunction." *Apple*, 809 F.3d at 645.  Factors that the Court may consider include: "the parties' sizes, products, and revenue sources." *Evonik Degussa Gmbh v. Materia, Inc.*, No. 09-636 (NLH/JS), 2017 WL 3434156, at *3 (D. Del. Aug. 10, 2017) (citing *Microsoft*, 598 F.3d at 862).  Notably, "[a] party cannot escape an injunction simply because it is smaller than the patentee or because its primary product is an infringing one." *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011).  Nor can the party escape if any harms suffered from the injunction were "'almost entirely preventable' and were the result of its own calculated risk to launch its product pre-judgment." *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383 (Fed. Cir. 2006); *Natera Inc. v. ArcherDx, Inc.*, No. 20-CV-125-GBW, 2023 WL 9103876 (D. Del. Dec. 1, 2023) ("When the harms an infringer faces are 'almost entirely preventable' and triggered by a 'calculated risk to launch its product pre-judgment,' the balance of hardships strongly tilts in favor of the patentee.") (internal citation and quotation marks omitted).

## II.   Issues on Which Defendant Bears the Burden of Proof

### A.   Validity

1.   Whether Cytek can prove by clear and convincing evidence that claims 6, 10, 11, and 15 of the '443 Patent are invalid as anticipated by the prior art.

2.   Whether Cytek can prove by clear and convincing evidence that claims 1, 3, 6, 23, and 26 of the '582 Patent are invalid as obvious over the prior art.

3.   Whether Cytek can prove by clear and convincing evidence that claims 4, 6, 10, 11, and 15 of the '443 Patent are invalid as obvious over the prior art.

4.   Whether Cytek can prove by clear and convincing evidence that claims 5, 16, 18, 26, 27, and 29 of the '107 Patent are invalid as obvious over the prior art.

5.   Whether Cytek can prove by clear and convincing evidence that claims 1, 3, 6, 23, and 26 of the '582 Patent are invalid for failure to comply with the written description requirement under 35 U.S.C. § 112.

6.   Whether Cytek can prove by clear and convincing evidence that claims 4, 6, 10, 11, and 15 of the '443 Patent are invalid for failure to comply with the written description requirement under 35 U.S.C. § 112.

7.   Whether Cytek can prove by clear and convincing evidence that claims 5, 16, 18, 26, 27, and 29 of the '107 Patent are invalid for failure to comply with the written description requirement under 35 U.S.C. § 112.

8. Whether Cytek can prove by clear and convincing evidence that claims 1, 3, 6, 23, and 26 of the '582 Patent are invalid for failure to comply with the enablement requirement under 35 U.S.C. § 112.

9. Whether Cytek can prove by clear and convincing evidence that claims 4, 6, 10, 11, and 15 of the '443 Patent are invalid for failure to comply with the enablement requirement under 35 U.S.C. § 112.

10. Whether Cytek can prove by clear and convincing evidence that claims 5, 16, 18, 26, 27, and 29 of the '107 Patent are invalid for failure to comply with the enablement requirement under 35 U.S.C. § 112.

11. Whether Cytek can prove by clear and convincing evidence that claims 1, 3, 6, 23, and 26 of the '582 Patent are invalid for failure to comply with the definiteness requirement under 35 U.S.C. § 112.

12. Whether Cytek can prove by clear and convincing evidence that claim 10 of the '443 Patent is invalid for failure to comply with the definiteness requirement under 35 U.S.C. § 112.

13. Whether Cytek can prove by clear and convincing evidence that claims 5 and 29 of the '107 Patent are invalid for failure to comply with the definiteness requirement under 35 U.S.C. § 112.

B.     **Legal Authority**

1.     **Presumption of Validity and Burdens**

14.     "A patent shall be presumed valid." 35 U.S.C. § 282(a). "Thus, by its express terms, § 282 establishes a presumption of patent validity, and it provides that a challenger must overcome that presumption to prevail on an invalidity defense." *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 100 (2011). "The presumption mandated by § 282 is applicable to all of the many bases for challenging a patent's validity." *Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1570 (Fed. Cir. 1987); *see also Wonderland Switz. AG v. Evenflo Co.*, 2022 WL 20590003, at *16 (D. Del. Dec. 6, 2022) (presumption applies to "all of the many bases for challenging a patent's validity," and "exists at every stage of the litigation" (internal quotation marks and citations omitted)). Cytek must prove an invalidity defense by clear and convincing evidence. *i4i Ltd. P'ship*, 564 U.S. at 95. "'[B]ecause the presumption of validity remains intact . . . throughout the litigation,' the burden of persuasion never shifts to the patentee . . . ." *Novo Nordisk A/S v. Caraco Pharm. Lab'ys, Ltd.*, 719 F.3d 1346, 1352 (Fed. Cir. 2013) (quoting *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359-60 (Fed. Cir. 2007)).

15.     "[T]he burden of persuasion is and remains always upon the party asserting invalidity." *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1358 (Fed. Cir. 1984) (internal citation and emphasis omitted); *see Cephalon, Inc. v. Watson Pharms., Inc.*, 707 F.3d 1330, 1337 (Fed. Cir. 2013) ("Because we must presume a patent enabled, the challenger bears the burden, throughout the litigation, of proving lack of enablement by

41

clear and convincing evidence"). "It is not necessary that the court hold a patent valid; it is only necessary that it hold that the patent challenger has failed to carry its burden." *Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 1996 WL 621830, at *5 (D. Del. Oct. 21, 1996), *aff'd,* 228 F.3d 1338 (Fed. Cir. 2000) (quoting *Jones v. Hardy*, 727 F.2d 1524, 1529 n.3 (Fed. Cir. 1984)). "[W]here the challenger fails to identify any persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's burden on the validity issue." *Canon Comput. Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998); *see also i4i Ltd. P'ship*, 564 U.S. at 100 ("'[A] patent shall be presumed valid' and '[t]he burden of establishing invalidity . . . shall rest on the party asserting'" it (quoting 35 U.S.C. § 282)); *Novo Nordisk*, 719 F.3d at 1352.

16.     Although the burden of proof for invalidity is always clear and convincing evidence, the finder of fact may give less weight to prior art references that were previously considered by the PTO.  *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260-61 (Fed. Cir. 2012) ("[I]t may be harder to meet the clear and convincing burden when the invalidity contention is based upon the same argument on the same reference that the PTO already considered.  Importantly, whether a reference was before the PTO goes to the weight of the evidence, and the parties are of course free to, and generally do, make these arguments to the fact finder.").

### 2.     Prior Art

17.     Pre-AIA 35 U.S.C. § 102 defines the scope of prior art for patents with an effective filing date prior to March 16, 2013.  For patents with an effective filing date after

March 16, 2013, the scope of prior art for purposes of anticipation under 35 U.S.C. § 102 and obviousness under 35 U.S.C. § 103 is defined by 35 U.S.C. § 102 (AIA).  Cytek bears the burden under the Federal Rules of Evidence to show by clear and convincing evidence that the references it intends to assert as prior art are authentic, admissible, and were publicly available before the relevant dates to qualify as prior art under 35 U.S.C. § 102.  Fed. R. Evid. 803, 901 and 902; *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327-28 (Fed. Cir. 2008).  To establish that a document is prior art, it is Cytek 's burden to present sufficient evidence showing that the reference was patented, published, in public use, on sale, or otherwise publicly available before the "effective filing date of the claimed invention." 35 U.S.C. § 102(a); *Kyocera Wireless Corp. v. U.S. Int'l Trade Comm'n*, 545 F.3d 1340, 1350 (Fed. Cir. 2008).

18.   To establish that a reference is prior art, it is Cytek's burden to present sufficient evidence to establish that the reference was publicly accessible before the critical date of the patent.  *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1350 (Fed. Cir. 2008); *In re Wyer*, 655 F.2d 221, 227 (C.C.P.A. 1981); *MHL Custom, Inc. v. Waydoo USA, Inc.*, 2023 WL 5748755, at *3 (D. Del. Sept. 6, 2023).  Only if Cytek presents such evidence does the burden to produce evidence supporting an earlier filing date shift to Beckman Coulter.  *Licensing Corp.*, 545 F.3d at 1327-28.  Once Beckman Coulter has produced this evidence, Cytek has the burden to persuade, by clear and convincing evidence, that Beckman Coulter is not entitled to an earlier filing date.  *Id.*

19.    "The touchstone of whether a reference constitutes a printed publication is public accessibility." *Lynk Labs, Inc. v. Samsung Elecs. Co.*, 125 F.4th 1120, 1125 (Fed. Cir. 2025), *cert. denied,* 146 S. Ct. 1792 (2026) (quoting *Weber, Inc. v. Provisur Tech., Inc.*, 92 F.4th 1059, 1067 (2024)).  A given reference is "publicly accessible 'upon a satisfactory showing that such document has been disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art, exercising reasonable diligence, can locate it.'" *Jazz Pharms., Inc. v. Amneal Pharms., LLC*, 895 F.3d 1347 (Fed. Cir. 2018) (quoting *Wyer*, 655 F.2d at 226); *see also Kyocera Wireless Corp.*, 545 F.3d at 1350; *In re Lister*, 583 F.3d 1307, 1311-14 (Fed. Cir. 2009).

20.    "When the asserted basis of invalidity is a public use or on-sale bar, the court should determine whether the subject of the barring activity met each of the limitations of the claim, and thus was an embodiment of the claimed invention." *Dana Corp. v. Am. Axle & Mfg., Inc.*, 279 F.3d 1372, 1375 (Fed. Cir. 2002) (internal citations and quotations omitted); *see also Jiaxing Super Lighting Electric Appliance, Co. v. CH Lighting Tech. Co.*, 146 F.4th 1098, 1106 (Fed. Cir. 2025) ("To trigger the on-sale bar provision, the offer for sale must embody the claims of the Asserted Patent.); *Quest Integrity USA, LLC v. Cokebusters USA Inc.*, 924 F.3d 1220, 1228 (Fed. Cir. 2019) (the question for determining if the on-sale bar is implicated is whether the sale "satisfied each limitation of the claims."). When a party relies on a physical machine, it bears the burden of proving that the machine qualifies as "prior art" under 35 U.S.C. § 102(b).  *See, e.g.*, *Scaltech Inc. v. Retec/Tetra,*

44

*L.L.C.*, 178 F.3d 1378, 1383 (Fed. Cir. 1999) (for an on-sale bar to apply, the device sold, or offered for sale, must "me[e]t each of the limitations of the claim, and thus [be] an embodiment of the claimed invention"). "The 'in public use' element of the public use bar is met if the invention '"was accessible to the public or was commercially exploited"' by the inventor." *Ingenico Inc. v. IOENGINE LLC*, 136 F.4th 1354, 1361 (Fed. Cir. 2025) (citation omitted).

21.    To qualify as prior art under § 102(b), a machine or system must be "in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States . . . ." 35 U.S.C. § 102(b) (pre-AIA).  This on-sale bar was largely retained by the AIA.  "The AIA, as relevant here, retained the on-sale bar and added the catchall phrase 'or otherwise available to the public.'" *Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, 586 U.S. 123, 130 (2019) (quoting pre-AIA 35 U.S.C. § 102(b))130.  "Congress did not alter the meaning of 'on sale' when it enacted the AIA," and so "it adopted the earlier judicial construction of that phrase." *Id*. at 131–32.

22.    A two-prong test governs the application of the on-sale bar: "First, the product must be the subject of a commercial offer for sale . . . Second, the invention must be ready for patenting." *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998); *Meds. Co. v. Hospira, Inc.*, 827 F.3d 1363, 1368 (Fed. Cir. 2016) ("*Pfaff's* two-step framework requires that the claimed invention was (1) the subject of a commercial offer for sale; and (2) ready for patenting.").

23.    With respect to the first prong, an offer for sale under § 102(b) requires a "commercial offer for sale" under applicable contract law; that is, "the offer must be sufficiently definite that another party could make a binding contract by simple acceptance, assuming consideration." *Atlanta Attachment Co. v. Leggett & Platt, Inc.*, 516 F.3d 1361, 1365 (Fed. Cir. 2008); *see also Meds. Co.*, 827 F.3d at 1373 ("'[T]he transaction at issue must be a 'sale' in a commercial law sense,' and that '[a] sale is a contract between parties to give and to pass rights of property for consideration which the buyer pays or promises to pay the seller for the thing bought or sold.'" (internal citation omitted)); *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1052 (Fed. Cir. 2001) ("General principles of contract law must govern a conclusion that a sale occurred, and under these principles, a completed sale requires an offer, an acceptance, and consideration."); *Plumtree Software, Inc. v. Datamize, LLC*, 473 F.3d 1152, 1161 (Fed. Cir. 2006) (citing *Grp. One Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 1048 (Fed. Cir. 2001)) ("A commercial sale or offer for sale necessarily involves consideration.").

24.    With respect to the second prong, an invention is "ready for patenting" when it has been reduced to practice or when the inventor has prepared drawings or other descriptions of the invention that are sufficiently specific to enable persons skilled in the art to practice the invention. *Pfaff*, 525 U.S. at 67-68. "The fact that a concept is eventually shown to be workable does not retrospectively convert the concept into one that was 'ready for patenting' at the time of conception. … the [Supreme] Court recognized this distinction

when it stated in *Pfaff* that the on sale bar does not arise when there is 'additional development after the offer for sale.'" *Space Sys./Loral, Inc. v. Lockheed Martin Corp.*, 271 F.3d 1076, 1080-81 (Fed. Cir. 2001) (quoting *Pfaff*, 525 U.S. at 68 n.14); *see also Aug. Tech. Corp. v. Camtek, Ltd.*, 655 F.3d 1278, 1289 (Fed. Cir. 2011) ("[T]he seller is offering to sell *the invention* once he has conceived of it. Before that time, he was merely offering to sell an idea for a product.").

25.    Subsequent completion of an invention after the critical date will not relate back to make an offer for sale of an incomplete invention an invalidating sale. *Robotic Vision Sys., Inc. v. View Eng'g, Inc.*, 112 F.3d 1163, 1167-68 (Fed. Cir. 1997) ("An offer of sale, to be a bar within the meaning of section 102(b), must be of an invention that is substantially complete at the time of the offer . . . The on-sale bar was not intended to prevent discussions between potential inventor-suppliers and customers concerning inventions not yet completed."); *see Aug. Tech. Corp.*, 655 F.3d at 1289.

### 3.    Anticipation

26.    A patent claim is invalid as anticipated under § 102(a) if "the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent." 35 U.S.C. § 102(a) (pre-AIA).  Similarly under the AIA, a claim is invalid if the claimed invention "was patented, described in a printed publication, in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." 35 U.S.C. § 102 (AIA).

47

27.     "A patent claim is invalid due to anticipation if, within 'the four corners of a single, prior art document . . . every element of the claimed invention [is described], either expressly or inherently, such that a person of ordinary skill in the art could practice the invention without undue experimentation.'"  *Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1346 (Fed. Cir. 2009) (citations omitted).  Anticipation "is a question of fact." *Jiaxing Super Lighting Elec. Appliance, Co.*, 146 F.4th at 1109 (quoting *Finisar Corp. v. DirectTV Grp., Inc.*, 523 F.3d 1323, 1334 (Fed. Cir. 2008)).

28.     The prior art reference "must 'disclose all elements of the claim within the four corners of the document,' and it must 'disclose those elements arranged as in the claim.'"  *Microsoft Corp. v. Biscotti, Inc.*, 878 F.3d 1052, 1069 (Fed. Cir. 2017) (quoting *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008)); *Titanium Metals Corp. of Am. v. Banner*, 778 F.2d 775, 780 (Fed. Cir. 1985) ("[A]nticipation under § 102 can be found only when the reference discloses exactly what is claimed.").  Accordingly, "it is not enough that the prior art reference discloses part of the claimed invention, which an ordinary artisan might supplement to make the whole, or that it includes multiple, distinct teachings that the artisan might somehow combine to achieve the claimed invention."  *Net MoneyIN*, 545 F.3d at 1371; *see also In re Arkley*, 455 F.2d 586, 587 (C.C.P.A. 1972) (to anticipate, the alleged prior art reference must disclose the invention "without any need for picking, choosing, and combining various disclosures not directly related to each other by the teachings of the cited reference").  An anticipatory prior art system must not amount to a "post-hoc, reconstructed interpretation of how a

[prior-art] system *might* have been constructed … ."  *Ioengine, LLC v. PayPal Holdings, Inc.*, 607 F. Supp. 3d 464, 519 (D. Del. 2022) (emphasis in original).

29.    "An anticipating reference must describe the patented subject matter with sufficient clarity and detail to establish that the subject matter existed in the prior art and that such existence would be recognized by persons of ordinary skill in the field of the invention."  *Crown Operations Int'l, Ltd. v. Solutia Inc.*, 289 F.3d 1367, 1375 (Fed. Cir. 2002).  Further, "[a] claimed invention cannot be anticipated by a prior art reference if the allegedly anticipatory disclosures cited as prior art are not enabled."  *Elan Pharms., Inc. v. Mayo Found. for Med. Educ. & Rsch.*, 346 F.3d 1051, 1054 (Fed. Cir. 2003) (citations omitted) (quoting *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1354 (Fed. Cir. 2003)); *see also Impax Lab'ys, Inc. v. Aventis Pharms., Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008).

30.    A single product can anticipate a claim only if it has implemented the described features.  *In re Koninklijke Philips Pat. Litig.*, 2020 WL 7392868, at *27 (N.D. Cal. Apr. 13, 2020) ("For example, the party challenging validity may combine multiple types of evidence—including different written publications, source code, physical samples, engineer testimony, and testing—without performing a motivation to combine analysis. At the same time, a patentee may defeat a showing of invalidity by demonstrating that the product never implemented the described functionality or that it was not implemented in a single product.").

31. In order to prove inherent anticipation, the patent challenger must prove by clear and convincing evidence that the missing element or elements are necessarily present in the allegedly anticipating disclosure. *See HTC Corp. v. Cellular Commc'ns Equip., LLC*, 877 F.3d 1361, 1368 (Fed. Cir. 2017) ("A party seeking to establish inherent anticipation must show that a person of ordinary skill in the art would recognize that missing descriptive matter in a prior art reference is nevertheless necessarily present."). Inherency "may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient." *Motorola Mobility, LLC v. Int'l Trade Comm'n*, 737 F.3d 1345, 1350 (Fed. Cir. 2013) ("Inherency requires more than probabilities or possibilities." (citing *Bettcher Indus. v. Bunzl USA, Inc.*, 661 F.3d 629, 639 (Fed. Cir. 2011))).

*32.* "[T]here must be factual support for an expert's conclusory opinion." *Upjohn Co. v. Mova Pharm. Corp.*, 225 F.3d 1306, 1311 (Fed. Cir. 2000); *see also Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 24 (Fed. Cir. 2012) ("[G]eneral and conclusory testimony ... does not suffice as substantial evidence of invalidity.'" (quoting *Koito Mfg. Co. v. Turn–Key–Tech, LLC*, 381 F.3d 1142, 1152 (Fed. Cir. 2004))).

### 4. Obviousness

33. A patent is invalid as obvious "if the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains." 35 U.S.C. § 103 (AIA).

34.    Under pre-AIA, a patent is invalid as obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  35 U.S.C. § 103 (pre-AIA).

35.    "Obviousness is a question of law based on underlying facts." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1358 (Fed. Cir. 2017).

36.    To perform this analysis under § 103, "the scope and content of the prior art are [to be] determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007) (quoting *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)).  "Against this background, the obviousness or nonobviousness of the subject matter is determined." *Id.* (quoting *Graham*, 383 U.S. at 17-18).  "Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." *Id.* (quoting *Graham*, 383 U.S. at 17-18).  Before finding a patent claim invalid for obviousness the jury must consider all of these factors.  *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Pat. Litig.*, 676 F.3d 1063, 1076-80 (Fed. Cir. 2012) ("fact finders must withhold judgment on an obviousness challenge until it considers all relevant evidence, including that relating to the objective considerations.").

37.   "[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR Int'l Co.*, 550 U.S. at 418; *see also Unigene Lab'ys, Inc. v. Apotex Inc.*, 655 F.3d 1352, 1360 (Fed. Cir. 2011) ("Obviousness requires more than a mere showing that the prior art includes separate references covering each separate limitation in a claim under examination."). Rather, there must be some evidence of a motivation or "reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so." *In re Cyclobenzaprine*, 676 F.3d at 1068-69 (internal quotations and citations omitted); *KSR Int'l Co.*, 550 U.S. at 419.

38.   "Generally, a skilled artisan would only have been motivated to combine analogous art. Prior art is analogous where either (1) 'the art is from the same field of endeavor, regardless of the problem addressed' or (2) even if the reference is not within the same field of endeavor, 'the reference still is reasonably pertinent to the particular problem with which the inventor is involved.'" *In re Ethicon, Inc.*, 844 F.3d 1344, 1349 (Fed. Cir. 2017) (quoting *In re Clay*, 966 F.2d 656, 658-59 (Fed. Cir. 1992)). Cytek must establish by clear and convincing evidence that the claimed invention would have been *prima facie* obvious. *Novo Nordisk*, 719 F.3d at 1352 ("[O]nce the challenger has presented a prima facie case of invalidity, the patent owner has the burden of going forward with rebuttal evidence. This requirement 'does not in substance shift the burden of

persuasion, because the presumption of validity remains intact and the ultimate burden of proving invalidity remains with the challenger throughout the litigation.'" (quoting *Novo Nordisk A/S v. Caraco Pharm. Lab'ys*, 775 F. Supp. 2d 985, 992 (E.D. Mich. 2011))). Failure to show *prima facie* obviousness means the claims are not invalid for obviousness, ending the inquiry. *Yamanouchi Pharm. Co. v. Danbury Pharmacal, Inc.*, 231 F.3d 1339, 1345 (Fed. Cir. 2000).

39.    "Obviousness 'cannot be based on the hindsight combination of components selectively culled from the prior art to fit the parameters of the patented invention.'" *Cheese Sys., Inc. v. Tetra Pak Cheese & Powder Sys., Inc.*, 725 F.3d 1341, 1352 (Fed. Cir. 2013) (quoting *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 546 (Fed. Cir. 2013)); *In re NTP, Inc.*, 654 F.3d 1279, 1299 (Fed. Cir. 2011) ("Care must be taken to avoid hindsight reconstruction by using 'the patent in suit as a guide through the maze of prior art references, combining the right references in the right way so as to achieve the result of the claims in suit.'" (citations omitted)). "[W]hen the prior art teaches away from combining certain known elements, discovery of a successful means of combining them is more likely to be nonobvious." *KSR Int'l Co.*, 550 U.S. at 416.

> Prior art teaches away when 'a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant.' … 'The degree of teaching away will of course depend on the particular facts; in general, a reference will teach away if it suggests that the line of development flowing from the reference's disclosure is unlikely to be productive of the result sought by the applicant.'

*Arctic Cat*, 876 F.3d at 1360 (quoting *In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994)); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1326 (Fed. Cir. 2009) ("An inference of nonobviousness is especially strong where the prior art's teachings undermine the very reason being proffered as to why a person of ordinary skill would have combined the known elements.").

40.    "What a prior art reference teaches and whether a skilled artisan would have been motivated to combine references are questions of fact." *Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1051 (Fed. Cir. 2016) (citing *Par Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1196-97 (Fed. Cir. 2014)).

### a)    *Objective Indicia of Non-Obviousness*

41.    The patent holder "may rebut a prima facie showing of obviousness with objective indicia of nonobviousness." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1305 (Fed. Cir. 2010) ("If all of the factual disputes regarding the objective evidence resolve in favor of [plaintiff], it has presented a strong basis for rebutting the prima facie case [of obviousness].").

42.    The evidentiary burden to show facts supporting a conclusion of invalidity is one of clear and convincing evidence. *Procter & Gamble Co. v. Teva Pharms. USA, Inc.*, 566 F.3d 989, 993-94 (Fed. Cir. 2009). The burden of proof rests with Cytek and does not shift to Beckman Coulter. *Id.*; *see also Graham*, 383 U.S. 1; *In re Cyclobenzaprine*, 676 F.3d at 1079 n.5 ("[T]he party challenging validity bears the burden of persuasion throughout the litigation." (citing *i4i Ltd. P'ship*, 564 U.S. at 100)).

54

43.    "Objective indicia of nonobviousness play a critical role in the obviousness analysis." *Leo Pharm. Prods., Ltd. v. Rea*, 726 F.3d 1346, 1358 (Fed. Cir. 2013).  Thus, in determining the question of obviousness, evidence of objective indicia must be considered as part of the analysis. *See In re Cyclobenzaprine*, 676 F.3d at 1079-80.  This requirement is a "check against hindsight bias."  *See id*. at 1078-79.  Such factors include:

- whether the claimed invention satisfied a long-felt need in the art;

- failure of others to resolve the need;

- whether the claimed invention taught away from the technical direction of the industry;

- whether skilled artisans expressed skepticism that the claimed invention would work as intended;

- whether the claimed invention achieved unexpected results;

- whether others in the field praised the invention;

- whether the claimed invention was a commercial success

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1368 (Fed. Cir. 2013); *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1322-23 (Fed. Cir. 2005); *Ormco Corp.*, 463 F.3d at 1311.  This list is not exhaustive, however, and may also include additional factors related to obviousness or non-obviousness.  *Graham*, 383 U.S. at 17-18.

44.    **Long Felt But Unresolved Need:** A long felt need for the invention that was not yet fulfilled as of the date of the invention is evidence of non-obviousness when the invention met such a need. *Procter & Gamble Co.*, 566 F.3d at 998.  "Evidence of a long

felt but unresolved need tends to show non-obviousness because it is reasonable to infer that the need would have not persisted had the solution been obvious." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1332 (Fed. Cir. 2016); *see also Leo Pharm. Prods.*, 726 F.3d at 1359 (finding that the "length of the intervening time between the publication dates of the prior art and the claimed invention" may support that there was a long-felt need for the claimed invention).

45.    **Failure of Others to Develop the Invention:** Evidence showing that others in the field tried and failed to develop inventions similar to the patentee's can support a finding of non-obviousness. *In re Cyclobenzaprine*, 676 F.3d at 1082. "The purpose of evidence of failure of others is to show indirectly the presence of a significant defect in the prior art, while serving as a simulated laboratory test of the obviousness of the solution to a skilled artisan." *Id.* (internal quotation marks and citation omitted). "Longfelt need is closely related to the failure of others. Evidence is particularly probative of [non-]obviousness when it demonstrates both that a demand existed for the patented invention, and that others tried but failed to satisfy that demand." *Id.* "This is particularly true when the evidence indicates that others found development of the claimed invention difficult and failed to achieve any success." *Id.* at 1081; *see also Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1354 (Fed. Cir. 2003) (finding "there can be little better evidence negating an expectation of success than actual reports of failure"). "Litigation argument that an innovation is really quite ordinary carries

56

diminished weight when offered by those who had tried and failed to solve the same problem, and then promptly adopted the solution that they are now denigrating." *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372 (Fed. Cir. 2012) (quoting *Heidelberger Druckmaschinen AG v. Hantscho Commercial Prods., Inc.*, 21 F.3d 1068, 1072 (Fed. Cir. 1994)).

46.     **Unexpected Results:** A showing of unexpected results can support a conclusion of non-obviousness. *See United States v. Adams*, 383 U.S. 39, 51-52 (1966). In considering unexpected results, the question is whether "the claimed invention exhibits some superior property or advantage that a person of ordinary skill in the relevant art would have found surprising or unexpected." *PAR Pharm., Inc.*, 773 F.3d at 1200 (quoting *Proctor & Gamble*, 566 F.3d at 994). In appropriate circumstances unexpected results can be "be sufficient standing alone to preclude a finding of obviousness." *Id.*

47.     **Commercial Success:** "Commercial success is relevant … because the law presumes an idea would successfully have been brought to market sooner, in response to market forces, had the idea been obvious to persons skilled in the art." *Luv n' Care, Ltd. v. Laurain*, 98 F.4th 1081, 1103-04 (Fed. Cir. 2024) (quoting *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1376 (Fed. Cir. 2005)). "It is not necessary … that the patented invention be solely responsible for the commercial success, in order for this factor to be given weight appropriate to the evidence, along with other pertinent factors." *Align Tech.,*

*Inc. v. ClearCorrect Operating, LLC*, 745 F. App'x 361, 368 (Fed. Cir. 2018) (quoting

*Cont'l Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264, 1273 (Fed. Cir. 1991)).

\*    \*    \*

48.    "Objective indicia of nonobviousness must be considered in every case where present." *Apple*, 839 F.3d at 1048 (citing *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1349 (Fed. Cir. 2012)).

> Indeed, [such] evidence … may often be the most probative and cogent evidence in the record. It may often establish that an invention appearing to have been obvious in light of the prior art was not. It is to be considered as part of all the evidence, not just when the decisionmaker remains in doubt after reviewing the art.

*In re Cyclobenzaprine*, 676 F.3d at 1075-76 (quoting *StratoFlex*, *Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538-39 (Fed. Cir. 1983)).

49.    As to each category of objective indicia, a nexus must exist between the objective factor and "the merits of the claimed invention." *Transocean*, 699 F.3d at 1350; *see also Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1332 (Fed. Cir. 2019) ("If 'the asserted objective evidence is tied to a specific product and that product 'embodies the claimed features, and is co-extensive with them,' then the objective evidence is entitled to a rebuttable presumption of nexus." (quoting *Polaris Indus., Inc. v. Arctic Cat, Inc.*, 882 F.3d 1056, 1072 (Fed. Cir. 2018))). Imposition of a "strict requirement" that the objective indicia be recited in the claims is "improper"; for example, where the claimed invention *enables* a beneficial result, that result need not be explicitly recited in the claim in order to meet the nexus requirement. *See Rambus Inc. v. Rea*, 731 F.3d 1248, 1257 (Fed. Cir. 2013) (overturning the Board's finding of lack of nexus, since "Rambus's evidence shows beyond dispute that the claimed dual-edge data transfer functionality is what enabled

59

the praised high-speed transfer of data."). Further, nexus need not be drawn uniquely to the novel, individual features of the claim, but relates to the claimed invention as a whole. *WBIP*, 829 F.3d at 1330-31.

50.    Nexus is presumed where "the patentee shows that the asserted objective evidence is tied to a specific product and that product 'is the invention disclosed and claimed in the patent.'" *Id.* at 1329 (quoting *J.T. Eaton & Co. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997)). Under such circumstances, the burden shifts to the party alleging obviousness to rebut the presumed nexus. *See id.* The party alleging obviousness "cannot successfully rebut the presumption with argument alone—it must present evidence." *Id.* (quoting *Brown & Williamson Tobacco Corp. v. Philip Morris, Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000)). Alternatively, even where nexus is not presumed, "the patent owner is still afforded an opportunity to *prove* nexus" by demonstrating that the objective evidence is the "direct result of the unique characteristics of the claimed invention." *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373-74 (Fed. Cir. 2019) (quoting *In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996) (emphasis added)).

51.    Nexus is not negated even if an unpatented attribute also contributes to an objective indicator. *Volvo Penta of the Ams., LLC v. Brunswick Corp.*, 81 F.4th 1202, 1212 (Fed. Cir. 2023) (nexus not limited to novel features, and the invention should be considered "as a whole" (quoting *Chemours Co. FC, LLC v. Daikin Indus.*,

*Ltd.*, 4 F.4th 1370, 1377 (Fed. Cir. 2021)));  *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1378 (Fed. Cir. 2000) (nexus found where patented filtration process and unpatented mobility feature both contributed to commercial success); *see also Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1394 (Fed. Cir. 1988) ("A patentee is not required to prove . . . that the commercial success of the patented invention is *not* due to factors other than the patented invention. . . . A requirement for proof of the negative of all imaginable contributing factors would be unfairly burdensome, and contrary to the ordinary rules of evidence.").  To satisfy the nexus requirement, the "[o]bjective evidence of nonobviousness need only be 'reasonably commensurate with the scope of the claims.'" *Rambus*, 731 F.3d at 1257 (quoting *In re Huai-Huang Kao*, 639 F.3d 1057, 1068 (Fed. Cir. 2011)).

### 5.    Written Description

52.    A patent's

> "specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention."

35 U.S.C. § 112 (pre-AIA); 35 U.S.C. § 112(a) (AIA).

53.    Cytek must prove by clear and convincing evidence that the asserted claims are invalid for lack of written description and/or lack of enablement. *See Enzo*

*Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 962-63 (Fed. Cir. 2002); *Cephalon*, 707 F.3d at 1335-36.

54.    The written description requirement is met if "the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *ScriptPro LLC v. Innovation Assocs., Inc.*, 833 F.3d 1336, 1340 (Fed. Cir. 2016) (quoting *Ariad Pharm., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010)). The disclosure does not need to describe the exact subject matter claimed. *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331 (Fed. Cir. 2016) ("when examining the written description for support for the claimed invention, we have held that the exact terms appearing in the claim 'need not be used *in haec verba*.'" (internal citation omitted)). The test for reasonably conveying possession of an invention is a flexible one, requiring an "objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Novartis Pharms. Corp. v. Accord Healthcare, Inc.*, 21 F.4th 1362, 1368-69 (Fed. Cir. 2022), *vacated on reh'g,* 38 F.4th 1013 (Fed. Cir. 2022) (cleaned up).

55.    "[P]atentees may choose their own descriptive terms as long as those terms adequately divulge a reasonably clear meaning to one of skill in the art." *Hockerson-Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369, 1375 (Fed. Cir. 1999). That is, the "reasonably conveys" standard does not require the disclosure and claims

to match exactly. *In re Skvorecz*, 580 F.3d 1262, 1269 (Fed. Cir. 2009) ("The form and presentation of the description can vary with the nature of the invention; compliance with the written description requirement is a fact-dependent inquiry."). An invention need not have been reduced to practice to have been adequately described. *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1366-67 (Fed. Cir. 2006). The "requirement is satisfied by the patentee's disclosure of such descriptive means as words, structures, figures, diagrams, formulas, etc., that fully set forth the claimed invention." *Enzo Biochem*, 323 F.3d at 969 (cleaned up).

56.    The question of whether a patent meets the written description requirement is a factual one. *Ajinomoto Co. v. Int'l Trade Comm'n*, 932 F.3d 1342 (Fed. Cir. 2019); *Yingbin-Nature (Guangdong) Wood Indus. Co. v. Int'l Trade Comm'n.*, 535 F.3d 1322, 1334-35 (Fed. Cir. 2008). Written description is determined as of the filing date. *Falko-Gunter Falkner*, 448 F.3d at 1363.

### 6.    Enablement

57.    "Claims are not enabled when, at the effective filing date of the patent, one of ordinary skill in the art could not practice their full scope without undue experimentation." *Wyeth & Cordis Corp. v. Abbott Laby's*, 720 F.3d 1380, 1384 (Fed. Cir. 2013). "[A] a reasonable amount of routine experimentation required to practice a claimed invention does not violate the enablement requirement." *Cephalon*, 707 F.3d at 1336. "[T]he focus 'is not merely quantitative, since a

considerable amount of experimentation is permissible, if it is merely routine, or if the specification in question provides a reasonable amount of guidance.'" *Id.* at 1339 (Fed. Cir. 2013) (quoting *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1564 (Fed. Cir. 1996)). "Title 35 does not require that a patent disclosure enable one of ordinary skill in the art to make and use a perfected, commercially viable embodiment." *Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 684 (Fed. Cir. 2015) (quoting *CFMT, Inc. v. YieldUP Int'l Corp.*, 349 F.3d 1333, 1338 (Fed. Cir. 2003)).

58. The Federal Circuit set forth a list of eight factors that can be considered in determining whether an amount of experimentation is "undue." *Cephalon*, 707 F.3d at 1336 (quoting *In re Wands*, 858 F.2d 731, 736-37 (Fed. Cir. 1988)). The *Wands* factors are considered to be "illustrative … not mandatory. What is relevant depends on the facts." *Id.* at 1336. The *Wands* factors include:

> (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims.

*Id.* (quoting *In re Wands*, 858 F.2d at 737).

### 7. Definiteness

59. 35 U.S.C. § 112 ¶ 2 provides that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112 ¶ 2 (pre-AIA);

64

35 U.S.C. § 112(b) (AIA). This provision strikes a "delicate balance" which recognizes that the definiteness requirement must tolerate "[s]ome modicum of uncertainty" as "the price of ensuring the appropriate incentives for innovation." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 909 (2014) (internal quotations omitted) (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 731-32 (2002)).

60.    As such, a party seeking to invalidate a patent claim based on indefiniteness under 35 U.S.C. § 112, ¶ 2 must prove by clear and convincing evidence that a patent's "claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Cox Commc'ns, Inc. v. Sprint Commc'n Co.*, 838 F.3d 1224, 1228-31 (Fed. Cir. 2016) (quoting *Nautilus*, 572 U.S. at 901); *Takeda Pharm. Co. Ltd. v. Zydus Pharms. USA, Inc.*, 743 F.3d 1359, 1366 (Fed. Cir. 2014).  It is the "claims, not particular claim terms" that are pertinent to "the dispositive question in an indefiniteness inquiry."  *Cox*, 838 F.3d at 1231-32.

61.    Claim terms that have "sufficiently objective meaning in the art" do not render a claim indefinite.  *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1260 (Fed. Cir. 2014).  Furthermore, claims are not indefinite when the intrinsic evidence provides "a general guideline and examples sufficient to enable a person of ordinary skill in the art to determine" the scope of the claim.  *Amgen Inc. v. F.*

*Hoffman-La Roche Ltd.*, 580 F.3d 1340, 1371 (Fed. Cir. 2009) (quoting *In re Marosi*, 710 F.2d 799, 803 (Fed. Cir. 1983)).  "[A] patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement." *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017) (quoting *Invitrogen corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005)).

62.    The inquiry regarding indefiniteness is a question of law to be assessed as of the filing date.  *Guangdong Alison Hi-Tech Co. v. Int'l Trade Comm'n*, 936 F.3d 1353, 1359 (Fed. Cir. 2019); *Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd.*, 401 F.3d 1367, 1370-72 (Fed. Cir. 2005) ("A determination of claim indefiniteness is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." (quoting *Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998))).