IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BECKMAN COULTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> CYTEK BIOSCIENCES, INC., <br><br> Defendant. | C.A. No. 24-cv-945 (CFC) (EGT) <br><br> ███████████████ |

**EXHIBIT 5**

**CYTEK BIOSCIENCES, INC.'S STATEMENT OF
ISSUES OF LAW WHICH REMAIN TO BE LITIGATED**

## I.    INTRODUCTION

Pursuant to Local Rule 16.3(c)(5) of the Local Rules of Civil Procedure of the United States District Court for the District of Delaware, Defendant Cytek Biosciences, Inc. ("Defendant" or "Cytek") respectfully submits the following statement of contested law that remain to be litigated in the action brought by Plaintiff Beckman Coulter, Inc. ("Plaintiff" or "Beckman Coulter").

The following statements are not exhaustive. Cytek reserves the right to modify or amend this Exhibit to the extent necessary to reflect any future rulings by the Court, to supplement or amend this Exhibit to fairly respond to any new issues that Beckman Coulter may raise, or to address any additional discovery produced by Beckman Coulter.  To the extent Cytek's statement of contested facts that remain to be litigated, which is submitted as Exhibit 3 hereto, contains issues of law, those issues are incorporated herein by reference.  Moreover, if any issue of law identified below should properly be considered an issue of fact, then such statement should be considered to be part of Cytek's statement of contested facts that remain to be litigated.

Further, Cytek's identification of the issues of law that remain to be litigated on issues where Beckman Coulter bears the burden of proof is based on its understanding of the arguments that Beckman Coulter has put forth to date.  To the extent Beckman Coulter attempts to introduce different or additional legal arguments

1

to meet their burden of proof, Cytek reserves its rights to contest those legal arguments, and to present any and all rebuttal evidence and argument in response to those arguments, and will not be bound by this summary of remaining legal issues.

## II.    PRESERVED ISSUES

1.    The statement of issues of law herein are without waiver to Cytek's pending motions, including:

- Cytek's motions for summary judgment of (1) noninfringement of claims 23 and 26 of the '582 Patent; (2) noninfringement of claims 1, 3, and 6 of the '582 Patent; and (3) invalidity for lack of written description for claims 4, 6, 10, 11, and 15 of the '443 Patent, and claims 5, 16, 18, 26, 27, and 29 of the '107 Patent.  (D.I. 244, 245, 247.)

- Cytek's motions *in limine* and other pretrial filings.

Cytek incorporates by reference all cited authorities in Cytek's briefing, including the opposition briefs to Beckman Coulter's motions.  (*See* D.I. 233, 248, 293, 301, 308, 316, and 323.)

## III.    LEVEL OF ORDINARY SKILL IN THE ART

2.    The level of ordinary skill in the art is that of a hypothetical person presumed to have known the relevant art at the time of the invention.  Factors that may be considered are the (1) "educational level of the inventor;" (2)  "types of problems encountered in the art," (3) "prior art solutions to those problems," (4)

"rapidity with which innovations are made," (5) "sophistication of the technology," and (6) "educational level of active workers in the field. These factors are not exhaustive but merely a guide to determining the level of ordinary skill in the art." *Daiichi Sankyo Co., Ltd. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007) (citations omitted). "Although the educational level of the inventor may be a factor to consider in determining the level of ordinary skill in the art, it is by no means conclusive." *Orthopedic Equip. Co., Inc. v. All Orthopedic Appliances, Inc.*, 70 F.2d 1376, 1382 (Fed. Cir. 1983).

## IV.    INFRINGEMENT

### A.    Issues of Law

3.    Whether Beckman Coulter has failed to carry its burden of proving by ta preponderance of the evidence that Cytek directly infringes, either literally or under the doctrine of equivalents, claims 1, 3, 6, 23, and/or 26 of the '582 Patent under 35 U.S.C. § 271(a) by making, using, offering for sale, selling, and/or importing the Accused Products in this country.

4.    Whether Beckman Coulter has failed to carry its burden of proving by a preponderance of the evidence under 35 U.S.C. § 271(b) that Cytek induced and continues to induce third parties to directly infringe claims 1, 3, 6, 23, and/or 26 of the '582 Patent.

5.    Whether Beckman Coulter has failed to carry its burden of proving by

3

a preponderance of the evidence that Cytek willfully infringed claims 1, 3, 6, 23, and/or 26 of the '582 Patent.

6.    Whether Beckman Coulter has failed to carry its burden of proving by a preponderance of the evidence that Cytek directly infringes, either literally or under the doctrine of equivalents, claims 4, 6, 10, 11, and/or 15 of the '443 Patent by making, using, offering for sale, selling, and/or importing the Accused Products in this country.

7.    Whether Beckman Coulter has failed to carry its burden of proving by a preponderance of the evidence under 35 U.S.C. § 271(b) that Cytek induced and continues to induce third parties to directly infringe claims 4, 6, 10, 11, and/or 15 of the '443 Patent.

8.    Whether Beckman Coulter has failed to carry its burden of proving by a preponderance of the evidence under 35 U.S.C. § 271(c) that Cytek has contributed and continues to contribute to third parties' direct infringement of claims 11 and/or 15 of the '443 Patent by supplying the Accused Products, including upgrades and APD modules, that are combined into infringing flow cytometers and used by third parties, including whether Beckman Coulter has failed to carry its burden of showing that Cytek knew of the '443 Patent, knew that the APD modules are especially adapted for use in the claimed invention and have no substantial non-infringing use, and specifically intended for the APD modules to be used in flow cytometers that

4

would directly infringe claims 11 and/or 15 of the '443 Patent.

9.      Whether Beckman Coulter has failed to carry its burden of proving by a preponderance of evidence that Cytek has infringed and continues to infringe claims 11 and/or 15 of the '443 Patent under § 271(f)(1) by supplying or causing to be supplied APD modules from this country to Cytek's facilities outside of this country, and whether the APD modules make up all or a substantial portion of the inventions of claims 11 and/or 15, including whether Beckman Coulter has failed to carry its burden of proving by a preponderance of evidence that Cytek knew of the '443 Patent and induced third parties to incorporate APD modules in the accused flow cytometers, and whether the incorporation of APD modules in the accused flow cytometers would directly infringe if it occurred in this country.

10.     Whether Beckman Coulter has failed to carry its burden of proving by a preponderance of evidence that Cytek has infringed and continues to infringe claims 11 and/or 15 of the '443 Patent under 35 U.S.C. § 271(f)(2) by supplying APD modules from this country to Cytek's facilities outside this country, and whether the APD modules are especially made or adapted for use in the claimed invention and are not staple articles of commerce suitable for substantial non-infringing use, including whether Beckman Coulter has failed to carry its burden of proving by a preponderance of evidence that Cytek knew of the '443 Patent and knew that the APD modules are especially adapted for use in the claimed invention

and have no substantial non-infringing use, and intended for the APD modules to be used in flow cytometers that would directly infringe claims 11 and/or 15 of the '443 Patent if the APD modules had been used in flow cytometers in this country.

11.    If Beckman Coulter establishes infringement of claims 4, 6, 10, 11, and/or 15 of the '443 Patent, whether Cytek has raised a *prima facie* case that Cytek does not infringe 4, 6, 10, 11, and/or 15, respectively, of the '443 Patent under the reverse doctrine of equivalents, and whether Beckman Coulter has rebutted that *prima facie* case.

12.    Whether Beckman Coulter has failed to carry its burden of proving by a preponderance of the evidence that Cytek willfully infringed claims 4, 6, 10, 11, and/or 15 of the '443 Patent.

13.    If Beckman Coulter establishes infringement of claims 4, 6, 10, 11, and/or 15 of the '443 Patent, whether Cytek has raised a *prima facie* case that Cytek does not infringe claims 4, 6, 10, 11, and/or 15, respectively of the '443 Patent under the reverse doctrine of equivalents, and whether Beckman Coulter rebuts that prima facie case.

14.    Whether Beckman Coulter has failed to carry its burden of proving by a preponderance of the evidence that Cytek directly infringes, either literally or under the doctrine of equivalents, claims 5, 16, 18, 26, 27, and/or 29 of the '107 Patent by making, using, offering for sale, selling, and/or importing the Accused

Products in this country.

15.    Whether Beckman Coulter has failed to carry its burden of proving by a preponderance of the evidence under 35 U.S.C. § 271(b) that Cytek induced and continues to induce third parties to directly infringe infringes claims 5, 16, 18, 26, 27, and/or 29 of the '107 Patent by using the Accused Products within the United States.

16.    Whether Beckman Coulter has failed to carry its burden of proving by a preponderance of the evidence under 35 U.S.C. § 271(c) that Cytek has contributed and continues to contribute to third parties' direct infringement claims 5, 16, 18, 26, 27, and/or 29 of the '107 Patent by supplying Accused Products, including upgrades and APD modules, that are combined into infringing flow cytometers and used by third parties, including whether Beckman Coulter has failed to carry its burden of showing that Cytek knew of the '107 Patent, knew that the APD modules are especially adapted for use in the claimed invention and have no substantial non-infringing use, and specifically intended for the APD modules and laser upgrades to be used in flow cytometers that would directly infringe claims 5, 16, 18, 26, 27, and/or 29 of the '107 Patent.

17.    Whether Beckman Coulter has failed to carry its burden of proving by a preponderance of evidence that Cytek has infringed and continues to infringe claims 5, 16, 18, 26, 27, and/or 29 of the '107 Patent under § 271(f)(1) by supplying

or causing to be supplied APD modules from this country to Cytek's facilities outside of this country, and whether the APD modules make up all or a substantial portion of the inventions of claims 5, 16, 18, 26, 27, and/or 29, including whether Beckman Coulter has failed to carry its burden of proving by a preponderance of evidence that Cytek knew of the '107 Patent and induced third parties to incorporate APD modules in the accused flow cytometers, and whether the incorporation of APD modules in the accused flow cytometers would directly infringe if it occurred in this country.

18.    Whether Beckman Coulter has failed to carry its burden of proving by a preponderance of evidence that Cytek has infringed and continues to infringe claims 5, 16, 18, 26, 27, and/or 29 of the '107 Patent under 35 U.S.C. § 271(f)(2) by supplying APD modules from this country to Cytek's facilities outside this country, and whether the APD modules are especially made or adapted for use in the claimed invention and are not staple articles of commerce suitable for substantial non-infringing use, including whether Beckman Coulter has failed to carry its burden of proving by a preponderance of evidence that Cytek knew of the '107 Patent and knew that the APD modules are especially adapted for use in the claimed invention and have no substantial non-infringing use, and intended for the APD modules to be used in flow cytometers that would directly infringe claims 5, 16, 18, 26, 27, and/or 29 of the '107 Patent if the APD modules had been used in flow cytometers in this

8

country.

19.     If Beckman Coulter establishes infringement of claims 5, 16, 18, 26, 27, and/or 29 of the '107 Patent, whether Cytek has raised a *prima facie* case that Cytek does not infringe claims 5, 16, 18, 26, 27, and/or 29, respectively, of the '107 Patent under the reverse doctrine of equivalents, and whether Beckman Coulter has rebutted that *prima facie* case.

20.     Whether Beckman Coulter has failed to carry its burden of proving by a preponderance of the evidence that Cytek willfully infringed claims 5, 16, 18, 26, 27, and/or 29 of the '107 Patent.

## B.     Legal Authority

21.     Beckman Coulter bears the burden of proving infringement of all elements of the asserted patent claims and must meet its burden by a preponderance of the evidence. *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1364 (Fed. Cir. 2000); *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.*, 859 F.2d 878, 889 (Fed. Cir. 1988).  Beckman Coulter's burden never shifts to Cytek. *See Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1327 (Fed. Cir. 2008) (stating that "the burden to prove infringement" never shifts from the plaintiff and that "the risk of decisional uncertainty stays on the proponent of the proposition").

22.     To determine whether a patentee has met this burden, courts apply a two-part test: "First, the claim must be properly construed to determine its scope and

9

meaning. Second, the claim as properly construed must be compared to the accused device or process." *Ethicon Endo-Surgery, Inc. v. U.S. Surgical Corp.*, 149 F.3d 1309, 1315 (Fed. Cir. 1998) (citation omitted); *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1344 (Fed. Cir. 2012). Step one is a question of law; step two is a question of fact. *See Wavetronix v. EIS Elec. Integrated Sys.*, 573 F.3d 1343, 1354 (Fed. Cir. 2009); *Alza Corp. v. Andrx Pharms., LLC*, 607 F. Supp. 2d 614, 623 (D. Del. 2009).

**1.    Direct Infringement Under 35 U.S.C. § 271(a) – Literal Infringement**

23.    A party directly infringes if it "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor[.]" 35 U.S.C. § 271(a).

24.    An accused product literally infringes only "when every limitation recited in the claim appears in the accused device, i.e., when 'the properly construed claim reads on the accused device exactly.'" *DeMarini Sports, Inc. v. Worth, Inc.*, 239 F.3d 1314, 1331 (Fed. Cir. 2001) (citing *Amhil Enters. Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996)).

25.    "If even one limitation is missing or not met as claimed, there is no literal infringement." *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998); *Bayer AG v. Elan Pharm. Rsch. Corp.*, 212 F.3d 1241, 1247 (Fed.

10

Cir. 2000) ("If any claim limitation is absent from the accused device, there is no literal infringement as a matter of law."); *Glaxo, Inc. v. Novopharm, Ltd.*, 110 F.3d 1562, 1566 (Fed. Cir. 1997) ("It is elementary patent law that all limitations are material," and plaintiffs are "required to establish the presence of each limitation of the asserted claims.").

### 2. Direct Infringement Under 35 U.S.C. § 271(a) – Doctrine of Equivalents

26. If a patentee cannot establish literal infringement because an accused product does not meet every element of an asserted claim, the patentee may establish infringement under doctrine of equivalents "if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21, 29 (1997) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950)).

27. "A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product was insubstantial." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009). "One way of doing so is by showing on a limitation by limitation basis that the accused product performs substantially the same function in substantially the same way with substantially the same result as each claim limitation of the patented product." *Id.*

11

28.     Prosecution history estoppel stands "as a legal limitation on the doctrine of equivalents." *Warner-Jenkinson*, 520 U.S. at 30.  Prosecution history estoppel "prevents a patentee from recapturing through the doctrine of equivalents the subject matter that the applicant surrendered during prosecution." *Integrated Tech. Corp. v. Rudolph Techs., Inc.*, 734 F.3d 1352, 1356 (Fed. Cir. 2013).  Prosecution history estoppel may bar the patentee from relying on the doctrine of equivalents if, during prosecution, the patentee made a narrowing amendment to satisfy any requirement of the Patent Act.  A patentee may be barred from relying on the doctrine of equivalents if, during prosecution, the patentee made arguments that effectively narrowed the scope of the patent claims. "[A]rguments made during prosecution without amendments to claim language—if sufficient to evince a clear and unmistakable surrender of subject matter—may estop an applicant from recapturing that surrendered matter under the doctrine of equivalents."  *Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 828 n.3 (Fed. Cir. 1999); *see also Wang Labs., Inc. v. Mitsubishi Elecs. Am., Inc.*, 103 F.3d 1571, 1578 (Fed. Cir. 1997) ("Arguments and amendments made to secure allowance of a claim, especially those distinguishing prior art, presumably give rise to prosecution history estoppel."); *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 951-52 (Fed. Cir. 1993) ("The essence of prosecution history estoppel is that a patentee should not be able to obtain, through the doctrine of equivalents, coverage of subject matter that was relinquished

12

during prosecution to procure issuance of the patent.").)

29.    A theory of equivalence cannot be proper, and there cannot be a finding of infringement under the doctrine of equivalents, if such theory would broaden the range of equivalence so much that it would entirely vitiate the claim limitation. *See Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358–62 (Fed. Cir. 2005) (reversing the district court's grant of summary judgment and remanded to enter a judgment of non-infringement because the district court's infringement finding entirely vitiated the claim limitation); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1160 (Fed. Cir. 1998) (finding that there was insufficient evidence to support the jury's finding of infringement when a theory of equivalence read out a claim limitation); *see also Eagle Pharms. Inc. v. Slayback Pharma Inc.*, 958 F.3d 1171, 1174, 1177 (Fed. Cir. 2020) (finding insufficient evidence to support finding of infringement where theory of equivalence relied on unclaimed alternative to claim limitation). "[I]f a court determines that a finding of infringement under the doctrine of equivalents would entirely vitiate a particular claimed element, then the court should rule that there is no infringement under the doctrine of equivalents." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1344 (Fed. Cir. 2016) (quoting *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1321 (Fed. Cir. 2003)) (reversing the jury's verdict of infringement under the doctrine of equivalents when this finding vitiated the claim limitation); *see also Olaf*

13

*Soot Design, LLC v. Daktronics, Inc.*, 839 F. App'x 505, 511 (Fed. Cir. 2021) (reversing the jury's finding of infringement when under the proper claim construction, a finding of infringement under the doctrine of equivalents would eliminate the claim limitation).

30.     Additionally, the doctrine of "[e]nsnarement bars a patentee from asserting a scope of equivalency that would encompass, or 'ensnare,' the prior art." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322 (Fed. Cir. 2009).  If a hypothetical patent claim, constructed on the basis of the patentee's doctrine of equivalents theory to literally cover the accused device, would be unpatentable as anticipated or obvious, then "the patentee has overreached, and the accused device is noninfringing as a matter of law."  *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1380 (Fed. Cir. 2001).  "[T]he burden of persuasion that the hypothetical claim does not ensnare the prior art remains with the patentee."  *Streamfeeder, LLC v. Sure-Feed Sys., Inc.*, 175 F.3d 974, 983 (Fed. Cir. 1999).  Ensnarement is a question of law to be decided by the Court, not the jury.  *DePuy Spine*, 567 F.3d at 1324.

### 3.     Indirect Infringement – Induced Infringement Under 35 U.S.C. § 271(b)

31.     "Whoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  Liability for induced infringement requires there be direct infringement.  *See Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572

U.S. 915, 920–21 (2014); *see also Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1351–53 (Fed. Cir. 2022) (affirming summary judgment of no induced infringement where the patentee failed to show any act of direct infringement).

32. An induced infringement claim requires three elements: (1) there must be direct infringement by a third party; (2) "the inducer must know that the induced acts constitute patent infringement"; and (3) "the inducer must take active steps . . . to encourage direct infringement." *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 146 S. Ct. 1391, 226 L.Ed.2d. 159, 167 (U.S. 2026).

33. Beckman Coulter "must show that an alleged infringer knowingly induced another to commit an infringing act to establish induced infringement under section 271(b)." *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1374 (Fed. Cir. 2003) (citing *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990)). Beckman Coulter must first prove that Cytek "knew of the patent." *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1304–05 (Fed. Cir. 2006). Beckman Coulter must also prove that Cytek knew that "the induced acts constitute patent infringement." *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 756, 766 (2011); *see also Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 642 (2015) ("[Induced infringement] requires proof the defendant knew the acts were infringing.").

15

34.    Furthermore, inducement requires "specific intent to cause another to infringe." *Manville Sales*, 917 F.2d at 553–54 (finding that district court's holding of induced infringement was contrary to law when there was no evidence of specific intent); *Wordtech Sys. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1316 (Fed. Cir. 2010) ("Inducement requires intent."). "[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Med. Corp.*, 471 F.3d at 1306.

35.    "The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer . . . intended to induce infringement of the patent." 35 U.S.C. § 298.  And merely showing that a defendant provides instructions and training for its customers alone does not evidence inducement; rather, the patentee must show that such instructions and training evidence "intent to encourage infringement." *Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.*, 785 F.3d 625, 631 (Fed. Cir. 2015).

### 4.    Indirect Infringement – Contributory Infringement Under 35 U.S.C. § 271(c)

36.    "Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, … constituting a material part of the invention, knowing the same to

be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer." 35 U.S.C. § 271(c).

37.     To establish contributory infringement, Beckman Coulter must show the following elements by a preponderance of the evidence: "1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention. *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

38.     "[A] violator of § 271(c) must know 'that the combination for which his component was especially designed was both patented and infringing.'" *Global-Tech,* 563 U.S. at 763 (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964)).

## 5.     Infringement Under 35 U.S.C. § 271(f)(1)

39.     Under 35 U.S.C. § 271(f)(1), a party is liable for infringement where it "supplies … in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States."

17

40.    Section 271(f)(1) "addresses the act of exporting a substantial portion of an invention's components." *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407, 409 (2018). "[T]he phrase 'substantial portion' in 35 U.S.C. § 271(f)(1) has a quantitative, not a qualitative, meaning" and "does not cover the supply of a single component of a multicomponent invention." *Life Techs. Corp. v. Promega Corp.*, 580 U.S. 140, 152 (2017).

41.    Section 271(f)(1) further requires that the components be supplied "in such manner as to actively induce" their combination abroad. *Confluent Surgical, Inc. v. Hyperbranch Med. Tech., Inc.*, 2017 WL 4804264, at *1 (D. Del. Oct. 25, 2017. "[A]s it relates to the required acts of inducement of direct infringement," Section 271(f)(1) "includes the same legal requirements as does Section 271(b)." *TriDiNetworks Ltd. v. NXP-USA, Inc.*, No. CV 19-1062-CFC-CJB, 2020 WL 2514086, at *2, n.3 (D. Del. May 15, 2020).

### 6.    Infringement Under 35 U.S.C. § 271(f)(2)

42.    Under 35 U.S.C. § 271(f)(2), a party is liable for infringement if it "supplies or causes to be supplied in or from the United States any component of a patented invention that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use," where such component is uncombined and supplied "knowing that such component is so made or adapted and intending that such component will

18

be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States."

43.    "Like Section 271(c), Section 271(f)(2) requires that the components of a patented invention have no substantial non-infringing use." *TriDiNetworks Ltd.*, 2020 WL 2514086, at *3, n.4.  Beckman Coulter bears the burden of proving the lack of substantial non-infringing uses for the exported component.  *Toshiba Corp v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012).  To prove that a component has no "substantial noninfringing us," Beckman Coulter must show that the potential non-infringing uses of the component are "unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental."  *Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1327 (Fed. Cir. 2009).  To assess this issue, the jury may consider "not only the use's frequency, but also the use's practicality, the invention's intended purpose, and the intended market." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011).

44.    Section 271(f)(2) also includes a knowledge and intent requirement, which "requires a plaintiff to prove that the defendant (1) intended the combination of components; (2) knew that the combination [it] intended was patented; and (3) knew the combination [it] intended would be infringing if it occurred in the United States." *WesternGeco LLC v. ION Geophysical Corp.*, 2012 WL 2568167, at *4 (S.D. Tex. June 29, 2012) (citing *Aro Mfg. Co. v. Convertible Top Replacement Co.*,

19

377 U.S. 476, 488 (1964)).

### 7.   Willful Infringement

45.   Willful infringement is a question of fact.  *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1339-42 (Fed. Cir. 2016).

46.   Beckman Coulter has the burden to prove by a preponderance of the evidence that Cytek's infringement was willful.  *Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 987 (Fed. Cir. 2021).

47.   This requires a showing that Cytek's infringement was "deliberate," "consciously wrongful," and "without any reason to suppose [its] conduct [was] arguably defensible."  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93, 103–05 (2016). Willful infringement is one that is "willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* (quoting *Halo Elecs.,* 579 U.S. at 103–04).

48.   Awareness of the patents-in-suit, without more, cannot establish willful infringement.  *Bayer Healthcare*, 989 F.3d at 988; *Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 585 F. Supp. 2d 636, 642 (D. Del. 2008) ("The simple fact that infringement exists does not equate to willful infringement, even where the accused has knowledge or is aware of the patent.").  Beckman Coulter must show Cytek "had a specific intent to infringe at the time of the challenged conduct."  *Bayer Healthcare*, 989 F.3d at 987.

49.   A finding of willful infringement does not mandate that enhanced damages must be awarded.  Rather, whether to award enhanced damages is left to the discretion of the Court.  *See* 35 U.S.C. § 284; *see also Halo Elecs.*, 579 U.S. at 104.  Only truly egregious conduct warranting "punitive" or "vindictive" sanctions warrants an award of enhanced damages.  *Halo Elecs.*, 579 U.S. at 98.

50.   "The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent . . . ." 35 U.S.C. § 298. The decision not to seek an opinion of counsel or refuse to waive attorney-client privilege is "largely irrelevant" to the willful infringement analysis. *See SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019).

### 8.   Noninfringement – Reverse Doctrine of Equivalents

36.   The reverse doctrine of equivalents is available as a defense to infringement "where a device is so far changed in principle from a patented article that it performs the same or a similar function in a substantially different way, but nevertheless falls within the literal words of the claim." *Graver Tank*, 339 U.S. at 608-09. This doctrine prevents "unwarranted extension of the claims beyond a fair scope of the patentee's invention." *Scripps Clinic & Rsch. Found. v. Genentech, Inc.*, 927 F.2d 1565, 1581 (1991).

21

37.    "[T]he reverse doctrine of equivalents also raises a fact question, determinable on inquiry into whether a product has been so far changed in principle that it performs the same or similar function in a substantially different way." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1123 (Fed. Cir. 1985).

38.    "Application of the doctrine requires that facts specific to the accused device to be determined and weighed against the equitable scope of the claims, which in turn is determined in light of the specification, the prosecution history, and the prior art." *Scripps*, 927 F. 2d. at 1581.  "The reverse doctrine of equivalents, like the doctrine of equivalents, is applied to individual limitations of a claim." *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322 (Fed. Cir. 2009) (citing *Warner-Jenkinson*, 520 U.S. at 29).

39.    When a patentee establishes infringement, "the accused infringer may undertake the burden of going forward to establish the fact of non-infringement under the reverse doctrine of equivalents.  If the accused infringer makes a *prima facie* case, the patentee, who retains the burden of persuasion on infringement, must rebut that *prima facie* case." *SRI Int'l*, 775 F.2d at 1123.

## V.    PRIORITY, CONCEPTION, AND REDUCTION TO PRACTICE

### A.    Issues of Law

40.    Whether Beckman Coulter has failed to meet its burden of proving that each of the Asserted Claims of the '582 Patent are entitled to an effective filing date

earlier than November 26, 2014, the filing date of U.S. Appl. No. 14/555,102, and if not, what date.

41.    Whether Beckman Coulter has failed to meet its burden of proving that each of the Asserted Claims of the '443 Patent are entitled to an effective filing date earlier than November 26, 2014, the filing date of U.S. Appl. No. 14/555,102, and if not, what date.

42.    Whether Beckman Coulter has failed to meet its burden of proving that each of the Asserted Claims of the '107 Patent are entitled to an effective filing date earlier than November 26, 2014, the filing date of U.S. Appl. No. 14/555,102, and if not, what date.

### B.    Legal Authority

43.    Beckman Coulter asserts that the Asserted Claims of the Asserted Patents are entitled to a priority date of "about April 18, 2012," a date that is earlier than any the provisional applications to which the Asserted Patents claim priority. As an initial matter, the Asserted Claims of the Asserted Patents, at minimum, are only entitled to a presumed effective filing date of November 26, 2014, the filing date of the ancestral continuation-in-part application for U.S. Patent No. 9,746,402. *See PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305 (Fed. Cir. 2008) ("When neither the PTO nor the Board has previously considered priority, there is simply no reason to presume that claims in a CIP application are entitled to the

effective filing date of an earlier filed application.").

44.    Congress passed the Leahy-Smith America Invents Act ("AIA") in 2011 that, among other things, "changed how priority is determined, by converting the U.S. patent system from a first-to-invent to a first-inventor-to-file system." *SNIPR Techs. Ltd. v. Rockefeller Univ.*, 72 F.4th 1372, 1374 (Fed. Cir. 2023). However, Congress mandated that the "first-to-file" regime "shall apply" to patents and applications that "contain[ ] or contained at any time ... a claim ... that has an effective filing date ... on or after [March 16, 2013]." *Id.*, at 1376 (quoting AIA § 3(n)(1)). In other words, the patentability requirements of pre-AIA apply to patents and applications "that have only ever contained claims with pre-AIA effective filing dates." The patentability requirements of AIA apply to patents and applications "that have only ever contained claims with post-AIA effective filing dates" *or* "that contain (or contained at any time) at least one claim with a pre-AIA effective filing date *and* at least one claim with a post-AIA effective filing date" (i.e., "mixed patents and applications"). *Id.*

45.    If a patent has an effective filing date before March 16, 2013, the pre-AIA provisions of the Patent Act apply. *See* Leahy-Smith America Invents Act ("AIA"), Pub. L. No. 112-29, §3(n)(1), 125 Stat. 284 (2011). If a patent has an effective filing date on or after March 16, 2013, the AIA Provisions of the Patent Act apply.

46.    Generally, 35 U.S.C. § 120 provides that a patent application for an "invention disclosed in the manner provided by the first paragraph of section 112 of this title in an application previously filed in the United States ... shall have the same effect, as to such invention, as though filed on the date of the prior application ...." Under 35 U.S.C. § 120, "a claim in a later application receives the benefit of the filing date of an earlier application so long as the disclosure in the earlier application meets the requirements of 35 U.S.C. § 112, ¶ 1, including the written description requirement, with respect to that claim." *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1326 (Fed. Cir. 2008). "Thus, in order for the asserted claims of the [later] Patent to receive the benefit of the filing date of the [earlier] Patent … written description support for the asserted claims must be found in the [earlier] Patent." *Cordance Corp. v. Amazon.com, Inc.*, 658 F.3d 1330, 1334 (Fed. Cir. 2011). "Entitlement to a filing date extends only to subject matter that is disclosed; not to that which is obvious." *Rsch. Corp. Techs., Inc. v. Microsoft Corp.*, 627 F. 3d 859, 870 (Fed. Cir. 2010). "In order to gain the benefit of the filing date of an earlier application under 35 U.S.C. § 120, each application in the chain leading back to the earlier application must comply with the written description requirement of 35 U.S.C. § 112." *Lockwood v. Am. Airlines, Inc.,* 107 F.3d 1565, 1571 (Fed. Cir. 1997).

47.    "Patent claims are awarded priority on a claim-by-claim basis based on the disclosure in the priority applications." *Lucent Techs., Inc. v. Gateway, Inc.*, 543

F.3d 710, 718 (Fed. Cir. 2008). "[O]nce a challenger (the alleged infringer) has introduced sufficient evidence to put at issue whether there is prior art alleged to anticipate the claims being asserted, prior art that is dated earlier than the apparent effective date of the asserted patent claim, the patentee has the burden of going forward with evidence and argument to the contrary." *Endo Pharms. Inc. v. Actavis Inc.*, No. 14-1381-RGA, 2017 WL 3731001, at *4 (D. Del. Aug. 30, 2017)*, aff'd,* 922 F.3d 1365 (Fed. Cir. 2019) (quoting *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1329 (Fed. Cir. 2008). "Once Plaintiffs meet their burden of production, the burden shifts back to Defendants to prove by clear and convincing evidence that Plaintiffs are not entitled to the earlier date of invention." *Id.*

48.  "The party alleging prior invention must establish prior invention by clear and convincing evidence." *Kenexa BrassRing, Inc. v. Taleo Corp.*, 751 F. Supp. 2d 735, 753 (D. Del. 2010); *Price v. Symsek*, 988 F.2d 1187, 1191 (Fed. Cir. 1993) (holding that a party alleging an earlier date of invention must establish conception and reduction to practice by clear and convincing evidence); *see also In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1376 (Fed. Cir. 2016) ("[A] patentee bears the burden of establishing that its claimed invention is entitled to an earlier priority date than an asserted prior art reference") (citing *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1380 (Fed. Cir. 2015)).

49.  "Pre-AIA section 102(g) allows a patent owner to antedate a reference

26

by proving earlier conception and reasonable diligence in reducing to practice." *Monsanto Co. v. Mycogen Plant Sci., Inc.*, 261 F.3d 1356, 1362 (Fed. Cir. 2001). Conception has been defined as "the complete performance of the mental part of the inventive act" and it is "the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is thereafter to be applied in practice[.]" *Townsend v. Smith*, 36 F.2d 292, 295, 4 U.S.P.Q. 269, 271 (C.C.P.A. 1930). "[A]n idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue." *Dawson v. Dawson*, 710 F.3d 1347, 1352 (Fed. Cir. 2013). Merely expressing a problem to be solved is insufficient to constitute "conception" if the patent owner did not provide a solution to that problem. *Singh v. Brake*, 317 F.3d 1334, 1341 (Fed. Cir. 2003). "[C]onception is complete only when the idea is so clearly defined in the inventor's mind that only ordinary skill would be necessary to reduce the invention to practice, without extensive research or experimentation." *Dawson*, 710 F.3d at 1352 (quoting *Burroughs Wellcome Co. v. Barr Lab'ys, Inc.,* 40 F.3d 1223, 1228 (Fed. Cir. 1994)). In other words, a "substantially complete" idea is not a conception. *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 66 (1998).

50. A claimed invention is "reduced to practice" when it has been constructed, used, or tested sufficiently to show that it will work for its intended

27

purpose or when the inventor files a patent application that fully describes how to make and use the invention. *Teva Pharm. Indus. Ltd. v. AstraZeneca Pharms. LP*, 661 F.3d 1378, 1383 (Fed. Cir. 2011). For example, "a process is reduced to practice when it is successfully performed. A machine is reduced to practice when it is assembled, adjusted and used." *Corona Cord Tire Co. v. Dovan Chem. Corp.*, 276 U.S. 358, 383 (1928). "An invention, though completed, is deemed abandoned, suppressed, or concealed if, within a reasonable time after completion, no steps are taken to make the invention publicly known. Thus, failure to file a patent application; to describe the invention in a publicly disseminated document; or to use the invention publicly, have been held to constitute abandonment, suppression or concealment." *Correge v. Murphy*, 705 F.2d 1326, 1330 (Fed. Cir. 1983).

51. "[A]n inventor's testimony alone is insufficient to prove conception [and reduction to practice]." *E.I. du Pont de Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060, 1075–76 (Fed. Cir. 2019); *see also Price*, 988 F.2d at 1194; *Shu-Hui Chen v. Bouchard*, 347 F.3d 1299, 1309-10 (Fed. Cir. 2003). There must be some corroborating evidence beyond the inventor's own testimony that confirms the inventor's testimony regarding conception and reduction to practice. *See Allergan, Inc. v. Apotex Inc.*, 754 F.3d 952, 967 (Fed. Cir. 2014). To corroborate a conception, there must be evidence of what the inventor has disclosed to others, and what that disclosure would fairly suggest to one of ordinary skill in the art. *See In re Jolley*,

28

308 F.3d 1317, 1323 (Fed. Cir. 2002).

## VI.    INVALIDITY

### A.    Issues of Law

52.    Whether Cytek has proven, by clear and convincing evidence, that claims 6, 10, 11, and 15 of the '443 Patent are invalid as anticipated by the prior art.

53.    Whether Cytek has proven, by clear and convincing evidence, that claims 1, 3, 6, 23, and 26 of the '582 Patent are invalid as obvious over the prior art.

54.    Whether Cytek has proven, by clear and convincing evidence, that claims 4, 6, 10, 11, and 15 of the '443 Patent are invalid as obvious over the prior art.

55.    Whether Cytek has proven, by clear and convincing evidence, that claims 5, 16, 18, 26, 27, and 29 of the '107 Patent are invalid as obvious over the prior art.

56.    Whether Cytek has proven, by clear and convincing evidence, that claims 1, 3, 6, 23, and 26 of the '582 Patent are invalid for failure to comply with the written description requirement under 35. U.S.C. § 112.

57.    Whether Cytek has proven, by clear and convincing evidence, that claims 4, 6, 10, 11, and 15 of the '443 Patent are invalid for failure to comply with the written description requirement under 35. U.S.C. § 112.

58.    Whether Cytek has proven, by clear and convincing evidence, that

29

claims 5, 16, 18, 26, 27, and 29 of the '107 Patent are invalid for failure to comply with the written description requirement under 35. U.S.C. § 112.

59. Whether Cytek has proven, by clear and convincing evidence, that claims 1, 3, 6, 23, and 26 of the '582 Patent are invalid for failure to comply with the enablement requirement under 35. U.S.C. § 112.

60. Whether Cytek has proven, by clear and convincing evidence, that claims 4, 6, 10, 11, and 15 of the '443 Patent are invalid for failure to comply with the enablement requirement under 35. U.S.C. § 112.

61. Whether Cytek has proven, by clear and convincing evidence, that claims 5, 16, 18, 26, 27, and 29 of the '107 Patent are invalid for failure to comply with the enablement requirement under 35. U.S.C. § 112.

62. Whether Cytek has proven, by clear and convincing evidence, that claims 1, 3, 6, 23, and 26 of the '582 Patent are invalid for failure to comply with the definiteness requirement under 35. U.S.C. § 112.

63. Whether Cytek has proven, by clear and convincing evidence, that claim 10 of the '443 Patent is invalid for failure to comply with the definiteness requirement under 35. U.S.C. § 112.

64. Whether Cytek has proven, by clear and convincing evidence, that claims 5 and 29 of the '107 Patent are invalid for failure to comply with the definiteness requirement under 35. U.S.C. § 112.

**B.    Legal Authority**

**1.    Presumption of Validity**

65.    Patents are presumed valid, and a party challenging the validity of a patent bears the burden to prove invalidity by clear and convincing evidence.  35 U.S.C. § 282(a).

66.    "If the PTO did not have all material facts before it, . . . the challenger's burden to persuade the jury of its invalidity defense by clear and convincing evidence may be easier to sustain." *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 110–111 (2011).

**2.    Prior Art**

67.    Under pre-AIA, "[a] person shall be entitled to a patent unless – (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or … (e) the invention was described in — (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have

31

the effects for the purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language, or … (g)(2) before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it.    In determining priority of invention under this subsection, there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other."  35 U.S.C. § 102 (pre-AIA).

68.    Whether an allegedly invalidating reference is prior art is "a question of law based on underlying facts."  *Minton v. Nat'l Ass'n of Sec. Dealers, Inc.*, 336 F.3d 1373, 1376 (Fed. Cir. 2003); *see also TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 (Fed. Cir. 2004) ("Whether a reference was published prior to the critical date, and is therefore prior art, is a question of law based on underlying fact questions.").  Under the pre-AIA version of 35 U.S.C. § 102, a patent or other printed publication is prior art under § 102(b) if it "describe[s]" the invention "in this or a foreign country . . . more than one year prior to the date of the application for patent."  Section 102(a), on the other hand, does not limit invalidating public uses, offers for sale, or printed descriptions to one year before filing; those

32

invalidating activities must simply occur "before the invention of the patent."  The invention date for purposes of § 102(a) is normally the effective filing date of the asserted patent.

69.    Under the AIA, "A person shall be entitled to a patent unless— (1) the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention; or (2) the claimed invention was described in a patent issued under section 151, or in an application for patent published or deemed published under section 122(b), in which the patent or application, as the case may be, names another inventor and was effectively filed before the effective filing date of the claimed invention."  35 U.S.C. § 102(a) (AIA).

70.    Public use and public knowledge are not demanding standards.  *See Nat'l Research Dev. Corp. v. Varian Assocs., Inc.*, 822 F. Supp. 1121, 1129 (D.N.J. 1993), *aff'd in part, vacated in part*, 17 F.3d 1444 (Fed. Cir. 1994) ("It does not take much to trigger the 'public use' statutory bar to a patent.").  Public use includes "any use" of a device "by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor."  *Baxter Int'l, Inc. v. COBE Labs., Inc.*, 88 F.3d 1054, 1058 (Fed. Cir. 1996) (holding use of centrifuge in a laboratory where co-workers and visitors saw it in operation qualified as "public use"); *see also Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317, 1328 (Fed. Cir. 2009)

(holding public use requirement satisfied where "during the 1989 demonstration, all elements of the repair method in claim 1 of the [] Patent were performed"); *Adenta GmbH v. OrthoArm, Inc.*, 501 F.3d 1364, 1372 (Fed. Cir. 2007) (display of bracket at "1994 Florida trade show" is public use); *Beachcombers v. WildeWood Creative Prods., Inc.*, 31 F.3d 1154, 1159-60 (Fed. Cir. 1994) (displaying an invention at a dinner party is public use).  While § 102(b) uses slightly different language (*i.e.*, "public use"), the same standard governs whether a reference is "known or used by others" under § 102(a).  *See Ormco Corp.*, 463 F.3d at 1305-06 (reversing finding of no "use by others" under § 102(a) because "Dr. Truax promoted his system to other orthodontists through seminars and clinics and distributed his instruction sheet at those clinics").  In addition, a device known or used by others must be "ready for patenting."  *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67-68 (1998).  That requirement is satisfied if the device is reduced to practice or the persons who conceived of the device have "prepared drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention."  *Id.*

71.     "Whether a patent is invalid for public use is a question of law based on underlying facts."  *Netscape Commc'ns Corp. v. Konrad*, 295 F.3d 1315, 1319-20 (Fed. Cir. 2002).  Public use includes "any use of [the claimed] invention by a person other than the inventor who is under no limitation, restriction or obligation

34

of secrecy to the inventor." *Id.* (quoting *Petrolite Corp. v. Baker Hughes Inc.,* 96 F.3d 1423, 1425 (Fed. Cir. 1996)). "The totality of the circumstances is considered in conjunction with the policies underlying the public use bar." *Tone Bros., Inc. v. Sysco Corp.,* 28 F.3d 1192, 1198, 31 USPQ2d 1321, 1324 (Fed. Cir. 1994). The circumstances may include: the nature of the activity that occurred in public; the public access to and knowledge of the public use; whether there was any confidentiality obligation imposed on persons who observed the use; whether persons other than the inventor performed the testing; the number of tests; the length of the test period in relation to tests of similar devices; and whether the inventor received payment for the testing." *Id.* "There may be additional factors in a particular case relevant to the public nature of the use or any asserted experimental aspect." *Id.*

72.   To invalidate, the prior use or knowledge of an invention must be public. *Woodland Tr. v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1370 (Fed. Cir. 1998). This publicity requirement is met by the absence of affirmative steps by the prior user to conceal the use. *See, e.g., W.L. Gore & Assoc. v. Garlock, Inc.*, 721 F.2d 1540, 1548-49 (Fed. Cir. 1983) (citing *Elec. Storage Battery Co. v. Shimadzu*, 307 U.S. 5, 20 (1939)).

73.   Public use includes "any use of [the claimed] invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy

to the inventor." *Petrolite Corp. v. Baker Hughes Inc.*, 96 F.3d 1423, 1425, 40 U.S.P.Q.2d 1201 (Fed. Cir. 1996); *see also American Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262, 1267 (Fed. Cir. 2008) ("The test for whether an invention is ineligible for a patent due to the section 102(b) public use bar 'is whether the purported use: (1) was accessible to the public; or (2) was commercially exploited.' Consideration of public use includes analysis of, *inter alia*, the nature of and public access to activities involving the invention; confidentiality obligations imposed upon observers; commercial exploitation; and the circumstances surrounding testing and experimentation. An invention is in public use if it is shown to or used by an individual other than the inventor under no limitation, restriction, or obligation of confidentiality.").

74.    Public use need not be visible to be public. *See Lough v. Brunswick Corp.*, 86 F.3d 1113 (Fed. Cir. 1996) ("Some inventions are by their very character only capable of being used where they cannot be seen or observed by the public eye. … Nevertheless, if its inventor sells a machine of which his invention forms a part, and allows it to be used without restriction of any kind, the use is a public one.") (quoting *Egbert v. Lippmann,* 104 U.S. 333, 336 (1881)); *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1570 (Fed. Cir. 1997) (agreeing that "the public need not have access to the "inner workings" of a device for it to be considered "in public use" or "used by others" within the meaning of the statute").

75.     "Section 102(b) may create a bar to patentability either alone, if the device placed on sale is an anticipation of the later claimed invention or, in conjunction with the prior art." *LaBounty Mfg., Inc. v. U.S. Intern. Trade Com'n*, 985 F.2d 1066, 1071 (Fed. Cir. 1992).

76.     Application of the on-sale bar is a question of law based on underlying facts. *Medicines Co. v. Hospira, Inc.*, 827 F.3d 1363, 1371 (Fed. Cir. 2016) (citing *Group One, Ltd. v. Hallmark Cards, Inc.*, 254 F.3d 1041, 145 (2001)).

77.     The pre-AIA version of the Patent Act "prevented a person from receiving a patent if, 'more than one year prior to the date of the application for patent in the United States,' 'the invention was .. on sale' in the United States." *Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, 586 U.S. 123, 129-130 (2019) (quoting pre-AIA 35 U.S.C. § 102(b)). "The AIA, as relevant here, retained the on-sale bar and added the catchall phrase 'or otherwise available to the public.'" *Id.* at 130. "Congress did not alter the meaning of 'on sale' when it enacted the AIA," and so "it adopted the earlier judicial construction of that phrase." *Id.*, 131-132.

78.     Under the "earlier judicial construction," "an on-sale bar applies 'when two conditions are satisfied' more than a year before an inventor files a patent application." *Helsinn*, 586 U.S. at 130 (citing *Pfaff v. Wells Elects., Inc.*, 525 U.S. 55, 67 (1998)). "First, the product must be the subject of a commercial offer for sale." *Pfaff*, 525 U.S. at 67. "Second, the invention must be ready for patenting"

37

which can be shown by proof of "reduction to practice" or "drawings or other descriptions of the invention that were sufficiently specific to enable a person skilled in the art to practice the invention." *Id*., at 67-68.

79.    "[T]o be 'on sale' under § 102 (b), a product must be the subject of a commercial sale or offer for sale" and "a commercial sale is one that bears the general hallmarks of a sale pursuant to Section 2-106 of the Uniform Commercial Code." *Medicines Co.*, 827 F.3d at 1365; *see also id.*, at 1373-76.

80.    Section 2-106 of the Uniform Commercial Code provides that  a sale "consists in the passing of title from the seller to the buyer for a price." UCC § 2-106 (1); *see also In re Caveney*, 761 F.2d 671, 676 (Fed. Cir. 1985) (A sale may be "a contract between parties to give and pass rights of property for consideration which the buyer pays or promises to pay the seller for the thing bought and sold.").

81.    "A bid to supply a product specified in an RFP is a traditional offer to sell." *FieldTurn Intern., Inc. v. Sprinturf, Inc.*, 433 F.3d 1366, 1369-70 (Fed. Cir. 2006).

82.    An offer for sale and acceptance of a purchase order prior to the critical date with delivery and/or installation occurring afterward is sufficient to trigger the on-sale bar. *See, e.g., J.A. LaPorte, Inc. v. Norfolk Dredging Co.*, 787 F.2d 1577, 1583 (Fed. Cir. 1986) ("The date of the purchase agreement is, therefore, the effective date on which the invention became part of the public domain.  That

38

delivery of the device embodying the invention occurred later is immaterial.").

83.    "It is well established … that a single sale or offer to sell is enough to bar patentability" even if kept secret from the trade.  *In re Caveney*, 761 F.2d at 675-76.

### 3.    Anticipation Under § 102

84.    Under pre-AIA 35 U.S.C. § 102(a), a patent is invalid if "the invention was known or used by others in this country . . . before the invention thereof by the applicant for a patent." 35 U.S.C. § 102(a) (pre-AIA).  The AIA includes a similar provision, indicating a patent is invalid if "the claimed invention was patented, described in a printed publication, or in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention."  35 U.S.C. § 102(a) (AIA).

85.    "Anticipation is a question of fact." *Sentry Prot. Prod., Inc. v. Eagle Mfg. Co.*, 400 F.3d 910, 914 (Fed. Cir. 2005) (affirming grant of summary judgment of invalidity for anticipation).

86.    A patent is invalid for anticipation under 35 U.S.C. §102, if a prior art reference discloses, expressly or inherently, each and every limitation of the claimed invention. *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1379 (Fed. Cir. 2003).

87.    A prior art reference anticipates a claim if the reference enables one of

ordinary skill in the art to practice the invention, even if the author or inventor did not actually make or reduce to practice the claimed subject matter. *Id.* at 1380–81; *Cont'l Can Co. v. Monsanto Co.*, 948 F.2d 1264 (Fed. Cir. 1991). "A person of ordinary skill in the art" refers to a hypothetical person who is presumed to have knowledge of all of the prior art in the field and analogous fields. *In re Gorman*, 933 F.2d 982, 986 (Fed. Cir. 1991). Such a person possesses ordinary creativity and is not an automaton. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007).

88.    The full scope of the claimed invention does not need to be enabled by the prior art reference for it to anticipate a claim, but rather disclosure of the invention by the prior art reference must be sufficient for a person having ordinary skill in the art, looking at that one reference, to be able to make and use at least one embodiment within the scope of the claimed invention. *ClearValue, Inc. v. Pearl River Polymers, Inc.*, 668 F.3d 1340, 1344 (Fed. Cir. 2012) (citation omitted).

89.    The prior art is relevant for all that it teaches. *In re AT & T Intellectual Property II, L.P.*, 856 F.3d 991, 996 (Fed. Cir. 2017) (explaining that a "preferred embodiment" is "not a limitation on the scope of the patent's disclosure"); *Arthrocare Corp. v. Smith & Nephew, Inc.*, 406 F.3d 1365, 1372 (Fed. Cir. 2005) (noting that "it was error for the district court to limit the disclosure of the prior art reference to a preferred embodiment"). A reference with a variety of teachings is relevant for anticipation to the full extent of its enabling disclosure; it is relevant for

40

all that it contains. *Perricone v. Medicis Pharm. Corp.*, 432 F.3d 1368, 1376 (Fed. Cir. 2005).

### 4.    Obviousness Under § 103

90.    Obviousness is a question of law that is based on underlying issues of fact. *See KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007).

91.    Under pre-AIA, the standard for whether a patent claim is obvious is whether "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  35 U.S.C. § 103(a) (pre-AIA).

92.    Under AIA, the standard for whether a patent claim is obvious is substantively similar and is whether "the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention was made."  35 U.S.C. § 103 (AIA).

93.    Obviousness is based on four underlying factual determinations: (1) "the scope and content of the prior art"; (2) "differences between the prior art and the claims at issue"; (3) "the level of ordinary skill in the pertinent art"; and (4) "secondary considerations," if any, of nonobviousness.  *KSR*, 550 U.S. at 406-07

(citing *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966)).

94.    "[T]he scope of the relevant prior art . . . include[s] that reasonably pertinent to the particular problem with which the inventor was involved." *In re GPAC Inc.*, 57 F.3d 1573, 1577 (Fed. Cir. 1995) (quotation omitted). "A reference is reasonably pertinent if, even though it may be in a different field of endeavor, it is one which, because of the matter with which it deals, logically would have commended itself to an inventor's attention in considering his problem." *Id*. at 1578 (quotation omitted). "If a reference disclosure relates to the same problem as that addressed by the claimed invention, that fact supports use of that reference in an obviousness [finding]." *Id*. (quotation omitted).

95.    Obviousness is judged from the perspective of a person of ordinary skill in the art at the time the alleged invention was made. *See Takeda Chern. Indus. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1355 (Fed. Cir. 2007). A person of ordinary skill in the art is a hypothetical person who is "presumed to be aware of all the pertinent prior art." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985).

96.    Where a claim "simply arranges old elements with each performing the same function it had been known to perform and yields no more than one would expect from such an arrangement, the combination is obvious." *KSR*, 550 U.S. at 417 (quotation omitted). "Common sense teaches . . . that familiar items may have

42

obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle." *Id.* at 420; *see also Leapfrog Enters. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161-62 (Fed. Cir. 2007).

97.   In general, a claim is invalid for obviousness if "a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention," and "would have had a reasonable expectation of success in doing so." *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1361 (Fed. Cir. 2007).  The references need not contain "precise teachings directed to the specific subject matter of the challenged claim" for a person of ordinary skill in the art to be motivated to combine the references.  *KSR*, 550 U.S. at 418.  Rather, a court must "take account of the inferences and creative steps that a person of ordinary skill in the art would employ." *Id.* at 418.  The Federal Circuit has "repeatedly held" that a combination may be obvious "even absent any hint of suggestion in the [prior art] references themselves." *DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1368 (Fed. Cir. 2006); *see also Allergan*, 754 F.3d at 963-64. A court that requires the prior art "clearly and unequivocally [to] disclose" a "motivation to combine" therefore "err[s]" by taking an overly cramped view of what the prior art teaches." *Allergan*, 754 F.3d at 963-64; *see also Motorola, Inc. v. Interdigital Tech Corp.*, 121 F.3d 1461, 1472 (Fed. Cir. 1997) ("[T]here is no

requirement that the prior art contain an express suggestion to combine known elements to achieve the claimed invention.").

98.    "Whether a reference qualifies as analogous art is a question of fact." *In re Bigio*, 381 F.3d 1320, 1324 (Fed. Cir. 2004). "Two separate tests define the scope of analogous art: 'whether the art is from the same field of endeavor, regardless of the problem addressed and, (2) if the reference is not within the field of the inventor's endeavor, whether the reference still is reasonably pertinent to the particular problem with which the inventor was involved.'" *Airbus S.A.S. v. Firepass Corp.*, 941 F.3d 1374, 1379 (Fed. Cir. 2019) (quoting *In re Bigio*, 381 F.3d at 1325). The field of endeavor is determined "by reference to explanations of the invention's subject matter in the patent application, including the embodiments, function, and structure of the claimed invention." *Netflix, Inc. v. DivC, LLC*, 80 F.4th 1352, 1359 (Fed. Cir. 2023) (quoting *In re Bigio*, 381 F.3d at 1325).  The field of endeavor is "not limited to the specific point of novelty, the narrowest possible conception of the field, or the particular focus within a given field."  *Unwired Planet, LLC v. Google Inc.*, 841 F.3d 995, 1001 (Fed. Cir. 2016).  "Unlike the reasonable-pertinence test, the field-of-endeavor test does not look to the problem that the patent purports to address.  It is enough that the prior art reference falls within the relevant field of endeavor of the patent-in-suit." *Netflix*, 80 F.4th at 1359 (citations omitted).

99.    A reference outside an inventor's field of endeavor is "reasonably

44

pertinent" where its subject matter "logically would have commended itself to an inventor's attention in considering his problem." *In re Clay*, 966 F.2d 656, 659 (Fed. Cir. 1992). In other words, "reasonably pertinent" means "a person of ordinary skill would reasonably have consulted those references and applied their teachings in seeking a solution to the problem that the inventor was attempting to solve." *In re GPAC Inc.*, 57 F.3d 1573, 1578 (Fed. Cir. 1995).

100. "[T]he expectation of success need only be reasonable, not absolute." *Pfizer*, 480 F.3d at 1364; *see also Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1165 (Fed. Cir. 2006); *Allergan, Inc. v. Sandoz Inc.*, 726 F.3d 1286, 1292 (Fed. Cir. 2013); *In re Merck*, 800 F.2d 1091, 1097 (Fed. Cir. 1986). And routine experimentation on the part of an artisan does not support nonobviousness. *See Pfizer*, 480 F.3d at 1368.

101. "[O]nce a challenger has presented a prima facie case of invalidity, the patentee has the burden of going forward with rebuttal evidence." *Pfizer*, 480 F.3d at 1360. If the patentee fails to do so, the patent cannot be found valid. *See*, *e.g.*, *Ralston Purina Co. v. Far-Mar-Co.*, 772 F.2d 1570, 1573 (Fed. Cir. 1985).

102. "While th[e] burden of persuasion remains with the challenger, a patentee bears the burden of production with respect to evidence of secondary considerations of nonobviousness." *ZUP, LLC v. Nash Mfg., Inc.*, 896 F.3d 1365, 1373-74 (Fed. Cir. 2018). Secondary considerations include: unexpected results,

failure of others, skepticism of experts or praise of the alleged invention, the existence of a long-felt but unsolved problem, commercial success, or copying of the alleged invention. *See, e.g.*, *Graham*, 383 U.S. at 17–18; *Asyst Techs., Inc. v. Emtrak, Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008); *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1324 (Fed. Cir. 2004). "[S]econdary considerations of nonobviousness . . . simply cannot overcome a strong prima facie case of obviousness." *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2016) (where "the inventions represented no more than 'the predictable use of prior art elements according to their established functions' . . . the secondary considerations are inadequate to establish nonobviousness as a matter of law").

103.    The patentee must also show that any secondary consideration has a nexus to the claimed invention in order for the evidence of secondary considerations to be given substantial weight. *See Prometheus Labs., Inc. v. Roxane Laboratories, Inc.*, 805 F.3d 1092, 1101-02 (Fed. Cir. 2015); *see also Simmons Fastener Corp. v. Ill. Tool Works, Inc.*, 739 F.2d 1573, 1575 (Fed. Cir. 1984); *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373 (Fed. Cir. 2019) ("[T]here must be 'a legally and factually sufficient connection' between the evidence and the patented invention.") (quoting *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1332 (Fed. Cir. 2019)); *Ferring Pharms. Inc. v. Fresenius Kabi USA, LLC*, 645 F. Supp. 3d 335, 387 (D. Del. 2022) (finding no nexus when the patentee "ma[de] no effort to tie the

46

asserted secondary considerations to the claimed [invention]); *Cubist Pharms., Inc. v. Hospira, Inc.*, 75 F. Supp. 3d 641, 667 (D. Del. 2014), *aff'd*, 805 F.3d 1112 (Fed. Cir. 2015).  "The patentee bears the burden of showing that a nexus exists."  *Fox Factory*, 944 F.3d at 1373.

104.    A "nexus between the merits of the claimed invention and evidence of secondary considerations is required in order for the evidence to be given substantial weight in an obviousness decision. . . Put another way, commercial success or other secondary considerations may presumptively be attributed to the patented invention only where the marketed product embodies the claimed features, and is coextensive with them."  *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1327-28 (Fed. Cir. 2008) (citations omitted).

105.    "[T]he law deems evidence of (1) commercial success, and (2) some causal relation or 'nexus' between an invention and commercial success of a product embodying that invention, probative of whether an invention was non-obvious."  *AstraZeneca LP v. Breath Ltd.*, 88 F. Supp. 3d 326, 392 (D.N.J. 2015), *aff'd*, 603 F. App'x 999 (Fed. Cir. 2015) (quoting *Merck & Co., Inc. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1376 (Fed.Cir.2005)).  Therefore, "it is important to ensure an adequate nexus to the patented claims."  *Id.*

106.    "The normal desire of scientists or artisans to improve upon what is already generally known" does not amount to unexpected results.  *See In re Peterson*,

47

315 F.3d 1325, 1330-31, (Fed. Cir. 2003).  "Unexpected results must be established by factual evidence. Mere argument or conclusory statements in the specification does not suffice."  *In re De Blauwe*, 736 F.2d 699, 705 (Fed. Cir. 1984).

107.   Failure of others is not indicative of nonobviousness where the alleged failure is due to issues unrelated to the claimed invention.  S*ee Boston Sci. SciMed, Inc. v. Cordis Corp.*, 554 F.3d 982, 991-92 (Fed. Cir. 2009); *Geo M. Martin Co. v. Alliance Mach. Sys. Int'l, LLC*, 618 F.3d 1294, 1305 (Fed. Cir. 2010) ("The Trust's evidence of failure of others is similarly insufficient. While a jury might have credited the Trust's evidence that other machines, such as the Visy machine, did not work as well as the Quik–Break, everything indicates that the Quik–Break's superiority was due to its enhanced throughput over and above the claimed ability to handle a 'plurality of logs.'").  In other words, "[e]vidence of the long-felt need factor must squarely address the need satisfied by the asserted claims themselves." *AstraZeneca v. Breath*, 88 F. Supp. 3d at 387.

108.   "[L]ong-felt need involves a showing of 'an articulated identified problem and evidence of efforts to solve that problem.'"  *In re Kavanagh*, 851 F. App'x 1028, 1035 (Fed. Cir. 2021) (quoting *Tex. Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1178 (Fed. Cir. 1993)).

109. "[C]opying," in the context of secondary considerations of nonobviousness, applies only "if the alleged copyist has in fact copied the patented

48

product rather than independently arrived at a similar design." *Medtronic, Inc. v. Teleflex Innovations S.a.r.l.*, 70 F.4th 1331, 1339-40 (Fed. Cir. 2023). "Copying requires duplication of features of the patentee's work based on access to that work, lest all infringement be mistakenly treated as copying." *Institut Pasteur & Université Pierre Et Marie Curie v. Focarino*, 738 F.3d 1337, 1347-48 (Fed. Cir. 2013); *accord Boston Sci. SciMed, Inc. v. Iancu*, 811 F. App'x 618, 628 (Fed. Cir. 2020). "Our case law holds that copying requires evidence of efforts to replicate a specific product, which may be demonstrated through internal company documents, direct evidence such as disassembling a patented prototype, photographing its features, and using the photograph as a blueprint to build a replica, or access to the patented product combined with substantial similarity to the patented product." *Wyers*, 616 F.3d at 1246.

110.   Regarding commercial success, a revenue number by itself is generally not indicative of nonobviousness; that number must be analyzed in the context of the overall market. *See In re Baxter Travenol Lab'ys*, 952 F.2d 388, 392 (Fed. Cir. 1991) (rejecting evidence of commercial success where "[n]o market share information was provided"); *accord In re Huang*, 100 F.3d 135, 140 (Fed. Cir. 1996).

111.   "[Secondary] considerations are relevant only in a close case where all other proof leaves the question of invention in doubt." *Dow Chem. Co. v.*

49

*Halliburton Oil Well Cementing Co.*, 324 U.S. 320, 330 (1945). "[S]econdary considerations of nonobviousness . . . simply cannot overcome a strong prima facie case of obviousness." *Wyers*, 616 F.3d at 1246; *see also Genentech, Inc. v. Sandoz Inc.*, 55 F.4th 1368, 1378 (Fed. Cir. 2022) (quoting *W. Union Co. v. MoneyGram Payment Sys., Inc.*, 626 F.3d 1361, 1371 (Fed. Cir. 2010)); *Leapfrog*, 485 F.3d at 1162.

### 5.    Lack of Written Description Under § 112

112.    A patent may be held invalid if the claims are not supported by written description. "The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention." 35 U.S.C. § 112 ¶1 (pre-AIA); 35 U.S.C. § 112(a) (AIA).

113.    The purpose of the written description requirement is to "ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification." *Atl. Rsch. Mktg. Sys., Inc. v. Troy*, 659 F.3d 1345, 1354 (Fed. Cir. 2011) (internal citations and quotations omitted). "The essence of the written description requirement is that a patent applicant, as part of the bargain with the

50

public, must describe his or her invention so that the public will know what it is and that he or she has truly made the claimed invention." *AbbVie Deutschland GmbH & Co., KG v. Janssen Biotech, Inc.*, 759 F.3d 1285, 1298 (Fed. Cir. 2014) (citing *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736 (2002)). "[T]he hallmark of written description is disclosure." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). The written description requirement is satisfied only when the specification "'clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed.' . . . In other words, the test for sufficiency is whether the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id.* at 1351-52. This is because patents are awarded "to those who actually perform the difficult work of 'invention'. . . and disclose the fruits of that effort to the public." *Id.* at 1353-54; *see also Boston Sci. Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1364 (Fed. Cir. 2011).

114. In determining whether a specification contains an adequate written description, "one must make an 'objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art.'" *Boston Sci. Corp.*, 647 F.3d at 1366 (citing *Ariad Pharms.*, 598 F.3d at 1351). This inquiry is a question of fact. *Ariad Pharms.*, 598 F.3d at 1351-52.

115. "A 'mere wish or plan' for obtaining the claimed invention is not

51

adequate written description." *Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1348 (Fed. Cir. 2011). "[An] adequate written description requires a precise definition, such as by structure, formula, chemical name, physical properties, or other properties, of species falling within the genus sufficient to distinguish the genus from other materials." *Ariad Pharms.*, 598 F.3d at 1350. "[M]erely drawing a fence around the outer limits of a purported genus is not an adequate substitute for describing a variety of materials constituting the genus and showing that one has invented a genus and not just a species." *Id.*

116. "While the written description requirement does not require that the specification recite the claimed invention in any particular way, pointing to an 'amalgam of disclosures' from which an artisan could have created the claimed invention does not satisfy this requirement." *Flash-Control, LLC v. Intel Corp.*, No. 2020-2141, 2021 WL 2944592, at *3 (Fed. Cir. July 14, 2021); *see also Billups-Rothenberg, Inc. v. Assoc. Reg'l & Univ. Pathologists, Inc.*, 642 F.3d 1031, 1037 (Fed. Cir. 2011) (affirming summary judgment of lack of written description, relying in part on absence of "even a single species that satisfies the claims").

### 6. Lack of Enablement Under § 112

117. Section 112 of the Patent Act requires not only that the specification describe the invention itself (the written description requirement), but also that the specification describe the "manner and process of making and using" the invention,

52

such that a person skilled in the art may also make and use it (the enablement requirement). *See Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1344 (Fed. Cir. 2010); *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1344-45 (Fed. Cir. 2005). A patent must "enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use" the claimed invention. *See* 35 U.S.C. § 112 ¶ 1 (pre-AIA); 35 U.S.C. § 112(a) (AIA).

118.    Enablement is a question of law. *Wyeth & Cordis Corp. v. Abbott Lab'ys,* 720 F.3d 1380, 1384 (Fed. Cir. 2013).

119.    "[T]he specification must enable the full scope of the invention as defined by its claims. The more one claims, the more one must enable." *Amgen Inc. v. Sanofi*, 143 S. Ct. 1243, 1254 (2023). "[I]f an inventor claims a lot, but enables only a little, the public does not receive its benefit of the bargain." *Id.* at 1258.

120.    "Enablement requires that 'the specification teach those in the art to make and use the invention without undue experimentation.'" *Idenix Pharms. LLC v. Gilead Scis. Inc.*, 941 F.3d 1149, 1154 (Fed. Cir. 2019) (quoting *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988)). "Factors to be considered in determining whether a disclosure would require undue experimentation . . . include (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or

unpredictability of the art, and (8) the breadth of the claims." *In re Wands*, 858 F.2d at 737. "A specification that requires a POSA to 'engage in an iterative, trial-and-error process to practice the claimed invention' does not provide an enabling disclosure." *Idenix Pharms. LLC v. Gilead Scis. Inc.*, 941 F.3d 1149, 1161 (Fed. Cir. 2019).

121. "If an inventor attempts but fails to enable his invention in a commercial product that purports to be an embodiment of the patented invention, that is strong evidence that the patent specification lacks enablement." *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1319 (Fed. Cir. 2007); *Novo Nordisk Pharms., Inc. v. Bio-Technology Gen. Corp.*, 424 F.3d 1347, 1362 (Fed. Cir. 2005) ("[A]n inventor's failed attempts to practice an invention are relevant evidence of non-enablement"); *Liebel-Flarsheim*, 481 F.3d at 1379 (missing a prototype factored into lack of enablement); *Auto. Techs. Int'l v. BMW of N. Am.*, 501 F.3d 1274, 1284 (Fed. Cir. 2007) ("the specification provides 'only a starting point, a direction for further research'. . . . it does not provide guidance to a person of ordinary skill in the art on how to make or use [the invention]."); *Genentech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1366 (Fed. Cir. 1997) (similar); *see also, Trs. of Boston Univ. v. Everlight Elecs. Co.*, 896 F.3d 1357, 1361 (Fed. Cir. 2018) ("We can safely conclude that the specification does not enable what the experts agree is physically impossible.").

122. Enablement is assessed as of the priority date of the patent. *In re '318*

54

*Pat. Infringement Litig.*, 583 F.3d 1317, 1323 (Fed. Cir. 2009).

### 7.    Indefiniteness Under § 112

123.   Section 112 requires that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention." 35 U.S.C. § 112 ¶ 2 (pre-AIA); 35 U.S.C. § 112(b) (AIA).

124.   "A patent is invalid for indefiniteness if its claims, read in light of the patent's specification and prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention", and that definiteness is to be measured as of the time of the patent application. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 898-99 (2014); *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) (A "term of degree fails to provide sufficient notice of its scope if it depends on the unpredictable vagaries of any one person's opinion.").

125.   [A] patent must be precise enough to afford clear notice of what is claimed, thereby "'appris[ing] the public of what is still open to them . . . in a manner that avoids '[a] zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims[.]'" *Nautilus, Inc.,* 572 U.S. at 898-99.

126.   Claims are indefinite when "an artisan would not know from one [instance] to the next whether a certain [product] was within the scope of the claims

55

because a wide variety of factors could affect adequacy." *Halliburton Energy Servs., Inc. v. M-I LLC*, 514 F.3d 1244, 1254-55 (Fed. Cir. 2008). Further, "the absence of identified boundaries in terms of proximity, distance, or location renders [] claims indefinite." *Abdou v. Alphatec Spine, Inc.,* No. 12-CV-1804 BEN RBB, 2014 WL 6611422 at *8 (S.D. Cal. Nov. 19, 2014).

## VII.  DAMAGES

### A.    Issues of Law

127.   Whether and when Beckman Coulter complied with the requirements of 35 U.S.C § 287 concerning constructive and/or actual notice of alleged infringement.

128.   Whether Beckman Coulter has failed to carry its burden of proving entitlement to lost profits damages by a preponderance of the evidence and the amount of any such damages.

129.   Whether Beckman Coulter has failed to carry its burden of proving reasonable royalty damages by a preponderance of the evidence and the amount of any such damages.

130.   Whether Beckman Coulter has failed to carry its burden of proving that it is entitled to an award of prejudgment and post-judgment interest, and the amount of such interest.

131.   Whether Beckman Coulter is entitled to enhanced damages pursuant to

35 U.S.C. § 284.

132.    Whether either party has established that this is an exceptional case, and whether either party is entitled to attorneys' fees pursuant to 35 U.S.C. § 285, and the amount.

### B.    Legal Authority

#### 1.    Damages Generally and Burden of Proof

133.    "Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."  35 U.S.C. § 284.

134.    Section 284 is directed to "damages adequate to compensate for the infringement."  35 U.S.C. § 284.  Depending on the circumstances of the case, compensatory damages may take the form of (1) lost profits, (2) an established royalty, or (3) a reasonable royalty.  *See Smithkline Diagnostics, Inc. v. Helena Lab'ys Corp.*, 926 F.2d 1161, 1163, 1167, & n.5; *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983).  The infringer's profits are <u>not</u> a measure of damages.  *See Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 673 (Fed. Cir. 1988); *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 505-506 (1964); *see also Contour IP Holding, LLC v. GoPro, Inc.*, No. 3:17-CV-04738-WHO, 2020 WL 5106845, at *14 (N.D. Cal. Aug. 31, 2020).

135.   Once a patent holder is compensated via an award of patent damages, no additional recovery may be had from the paying infringer or any other direct or indirect infringer.  *See Minco, Inc. v. Combustion Engineering, Inc.*, 95 F.3d 1109, 1121 (Fed. Cir. 1996).  *See Glenayre Elecs., Inc. v. Jackson*, 443 F.3d 851, 872 (Fed. Cir. 2006).   This is because "in most cases damages assessed for indirect infringement will be equal to damages assessed for the underlying direct infringement." *Id.* at 859.

136.   Beckman Coulter has the burden of proving each element of its damages case, including the amount of damages, by a preponderance of the evidence.  *See Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 660 (Fed. Cir. 2017).  Damages "must not be left to conjecture by the jury.  They must be proved, and not guessed at." *Id.*  "[T]here can be an award of no damages where 'none were proven.'" *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020).

137.   "The court may receive expert testimony as an aid to the determination of damages or of what royalty would be reasonable under the circumstances."  35 U.S.C. § 284.  "A damages theory must be based on 'sound economic and factual predicates.'" *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) (quoting *Riles v. Shell Expl. & Prod. Co.*, 298 F.3d 1302, 1311 (Fed. Cir. 2002)).  "At all times, the damages inquiry must concentrate on compensation for the economic harm caused by infringement of the claimed invention. . . . Any

58

evidence unrelated to the claimed invention does not support compensation for infringement but punishes beyond the reach of the statute." *ResQNet, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) (internal citation omitted).

138.   The Federal Rules of Civil Procedure require disclosure of "each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]" Fed. R. Civ. P. 26(a)(1)(A)(iii).  Late disclosure theories of damages may be struck. S*ee NexStep, Inc. v. Comcast Cable Commc'ns, LLC*, No. CV 19-1031-RGA, 2021 WL 5356293, at *1, 3 (D. Del. Nov. 17, 2021) (excluding late-disclosed, new theory of damages that plaintiff proposed after court granted motion to exclude opinion of plaintiff's damage expert).

### 2.   Marking and Notice Requirements

139.   When a patented article has been produced by a patentee or its licensee, the amount of damages the patentee can recover in an infringement suit is statutorily limited to those acts of infringement that occurred after the patentee gave the alleged infringer "notice of infringement." 35 U.S.C. § 287(a) (1994). The statute permits either constructive notice, which is accomplished by marking the article with the patent number, or actual notice. The requirement of actual notice is designed to

assure that the accused infringer knew of the adverse patent and the alleged infringement during the period in which its liability accrues. *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345–47, 59 U.S.P.Q.2d 1290 (Fed. Cir. 2001).

140. Under the Patent Act, a patentee may provide the public with notice that a commercial product embodies a patented invention by affixing on the product itself, or if not physically possible, by affixing to a label or packaging material accompanying the product, the word patent followed by the patent number. 35 U.S.C.A. § 287(a). A patentee or licensee may virtually mark a product by affixing the word "patent" or the abbreviation "pat" to the article followed by a web address that will direct the user to a free site that identifies the patent number(s) that are applicable to that product. 35 U.S.C. § 287(a) (2011) ("Patentees … may give notice to the public that the same is patented … by fixing thereon the word 'patent' or the abbreviation 'pat.' together with an address of a posting on the Internet, accessible to the public without charge for accessing the address, that associates the patented article with the number of the patent…"). Patentees and their licensees must so mark any product they sell that is covered by the patent to recover damages without having to give actual notice of the patent to the accused infringer. Patented articles must be marked with the word "patent" and the patent number in order for a patentee to recover damages for infringement. Otherwise, the patentee must show that it notified the infringer of the patent and the infringer

60

continued to infringe thereafter. In this event, the patentee may recover damages only for the infringement occurring after it provided the actual notice. 35 U.S.C.A. § 287(a).

141. Whether the patentee's or licensee's efforts to mark comply with the statute presents a question of fact. *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339, 59 U.S.P.Q.2d 1290 (Fed. Cir. 2001) ("[C]ompliance with the marking statute, 35 U.S.C. § 287(a), is a question of fact.").

142. The patentee bears the burden of pleading and proving he complied with § 287(a)'s marking requirement. *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996); *see also Dunlap*, 152 U.S. at 248, 14 S.Ct. 576 ("[T]he duty of alleging and the burden of proving either [actual or constructive notice] is upon the [patentee]."). Whether a patentee's articles have been marked "is a matter peculiarly within his own knowledge ...." *Dunlap*, 152 U.S. at 248. If a patentee who makes, sells, offers for sale, or imports his patented articles has not "given notice of his right" by marking his articles pursuant to the marking statute, he is not entitled to damages before the date of actual notice. *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017).

### 3.    Lost Profits

143. "To recover lost profits, the patent owner must show 'causation in fact,' establishing that 'but for' the infringement, he would have made additional profits."

61

*Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999) (citing *King Instruments Corp. v. Perego*, 65 F.3d 941, 952 (Fed.Cir.1995)).

144.    The patent owner has an initial burden to show that the patent owner would have made the asserted sales "but for" infringement by a preponderance of the evidence. See *Rite–Hite Corp. v. Kelley Co.,*, 56 F.3d 1538, 1545 (Fed.Cir.1995); *see also Hebert v. Lisle Corp.*, 99 F.3d 1109, 1119, 40 U.S.P.Q.2d 1611, 1618 (Fed. Cir. 1996); *Promega Corp.*, 875 F.3d at 660 ("In patent cases, 'the burden of proving damages falls on the patentee[.]'" (quoting *Lucent Techs., Inc. v. Gateway Inc.,* 580 F.3d 1301, 1324 (Fed. Cir. 2009))). The burden then shifts to the alleged infringer to show the patent owner's claim is unreasonable for some or all of the alleged lost sales. *Id*.; *see also Grain Processing*, 185 F. 3d at 1349.

145.    For lost profits, the proper analysis "requires a reconstruction of the market, as it would have developed absent the infringing product…." *Grain Processing*, 185 F.3d at 1350. "[O]nly by comparing the patented invention to its next-best available alternative(s) — regardless of whether the alternative(s) were actually produced and sold during the infringement — can the court discern the market value of the patent owner's exclusive right, and therefore his expected profit or reward, had the infringer's activities not prevented him from taking full economic advantage of this right." *Id.* at 1350.

146.   "To obtain as damages the profits on sales he would have made absent the infringement, i.e., the sales made by the infringer, a patent owner must prove: (1) demand for the patented product, (2) absence of acceptable noninfringing substitutes, (3) his manufacturing and marketing capability to exploit the demand, and (4) the amount of the profit he would have made." *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

147.   The first *Panduit* factor assumes "that the patent owner and the infringer sell substantially the same product." *BIC Leisure Prods. Inc.,* 1 F.3d at 1219. "If the products are not sufficiently similar to compete in the same market for the same customers, the infringer's customers would not necessarily transfer their demand to the patent owner's product in the absence of the infringer's product. In such circumstances … the first Panduit factor does not operate to satisfy the elemental 'but for' test." *Id.*

148.   To satisfy the second prong of the *Panduit* test "by substituting proof of its market share for proof of the absence of acceptable substitutes," the patent owner and alleged infringer must compete in the same market and sell similar products. *See BIC Leisure, Inc.*, 1 F.3d at 1219.

149.   If the defendant had a non-infringing alternative available, the plaintiff generally cannot show the infringement caused it to lose profits because "a rational would-be infringer is likely to offer an acceptable noninfringing alternative, if

63

available, to compete with the patent owner rather than leave the market altogether." *Grain Processing*, 185 F.3d at 1351.

150.   Beckman Coulter has the burden of proving the absence of acceptable noninfringing alternatives by "either that the potential alternative was not acceptable to potential customers or was not available at the time." *Presidio Components* 875 F.3d at 1380.

151.   A fair and accurate reconstruction of the market that would have existed if no patent infringement had occurred, upon patentee's claim of lost profits, must take into account, where relevant, alternative actions the infringer foreseeably would have undertaken had he not infringed. *Grain Processing*, 185 F.3d at 1350; 35 U.S.C. § 284.

152.   To satisfy the third prong of the *Panduit* test, "the patent owner must prove … manufacturing and marketing capability to exploit the demand …" *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1551–52, (Fed. Cir. 1994) (affirming summary judgment that patentee was not entitled to lost profits as damages, but was limited to a reasonable royalty, because patentee could not prove that it had the capability to make the accused infringer's sales); *Gargoyles, Inc. v. U.S.*, 113 F.3d 1572, 1577–78, (Fed. Cir. 1997) (affirming denial of lost profit damages because patentee failed to show that it had the capacity to produce, or have its suppliers produce, the number of infringing products purchased by the Army).

153. Lost profits damages must be apportioned "between the patented feature and the unpatented features' using 'reliable and tangible' evidence." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)); *see also*, *WesternGeco L.L.C. v. ION Geophysical Corp.*, 913 F.3d 1067, 1073 (Fed. Cir. 2019) (requiring apportionment between the lost profits attributable to the patented features and those attributable to the nonpatented features); *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Systems, LLC,* 350 F.3d 1327, 1346 (Fed. Cir. 2003) (vacating damage award and remanding where the district court "failed to distinguish the allocation of profits that would have been made 'but for' the infringement of the '376 patent with the profits that could fairly be allocated to customer demand related to the features embodying the [noninfringed] '991 patent").

### 4.    Reasonable Royalty

154. A royalty is a payment made to a patent holder in exchange for a license that provides the right to make, use, or sell the claimed invention.  A reasonable royalty is defined as the amount that someone wanting to make, use, or sell the patented invention would have agreed to pay to the patent owner and the patent owner would have accepted just before infringement began.  *See Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) ("The most common method

65

for determining a reasonable royalty is the hypothetical negotiation approach, which 'attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began.'"); *see also Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 770 (Fed. Cir. 2014) (explaining that a reasonable royalty is the amount that a person, desiring to manufacture, use, or sell a patented article would be willing to pay as a royalty and yet be able to make, use, or sell the patented article at a reasonable profit).

155. A royalty can be calculated in several different ways. Some of the relevant factors are: the value that the claimed invention contributes to the accused product; the value that factors other than the claimed invention contribute to the accused product; and comparable license agreements. *See Virnetx*, 767 F.3d at 1326, 1330; *see also Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

156. A reasonable royalty can be paid either in the form of a one-time lump sum payment or as a "running royalty" (sometimes referred to as a "continuing" or "ongoing" royalty). Choice of lump sum versus running royalty must be supported by the facts. *See Lighting Def. Grp. LLC v. Shanghai Sansi Elec. Eng'g Co. Ltd.*, No. 2:22-CV-01476-PHX-SMB, 2024 WL 4837011 (D. Ariz. Nov. 20, 2024) (excluding running royalty opinion as "unreliable" where the evidence overwhelmingly showed a preference for lump sum). Both methods are designed to

compensate the patent holder based on the accused infringer's use of the patented technology. A lump sum payment is equal to an amount that the alleged infringer would have paid at the time of a hypothetical negotiation for a license covering all sales of the licensed product, both past and future. A running royalty is paid out over time. "In a standard running royalty license, the amount of money payable by the licensee to the patentee is tied directly to how often the licensed invention is later used or incorporated into products by the licensee." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1326 (Fed. Cir. 2009). "A per-unit running royalty is paid based on the number of units ultimately sold (or made, etc.), which is of course directly related to product revenues. As more units are sold, more revenue is earned and more royalties are paid." *Id.* at 1330. A running royalty can be calculated, for example, by multiplying a royalty base (number of accused products sold) by a royalty rate (amount per unit).

157. A reasonable royalty may be based on a hypothetical license negotiation between the patent owner and accused infringer that "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent Techs.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). The patent is assumed valid and infringed and it is assumed that both parties were willing to enter into an agreement. *See id.* at 1325. "[P]arties in a hypothetical negotiation are presumed to have perfect knowledge of

67

all facts and circumstances, some of which were unknown during the actual patent negotiations and acquisition." *Intell. Ventures I LLC v. Check Point Software, et al.*, C.A. Nos. 10-1067-LPS, 12-1581-LPS, at *11 (D. Del. Mar. 31, 2014) (Mem. Op.) (citing *Mobile Oil Corp. v. Amoco Chem. Corp.*, 915 F. Supp. 1333, 1353 (D. Del. 1994)).

158.  Damages are based on what the parties to the hypothetical license negotiations would have agreed upon at the time of the negotiation. *See Virnetx*, 767 F.3d at 1326 ("The most common method for determining a reasonable royalty is the hypothetical negotiation approach, which 'attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began.'").  Evidence relevant to the negotiation is not necessarily limited to facts that occurred on or before the date of the hypothetical negotiation. *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1571–72 (Fed. Cir. 1988); *see also Lucent Techs.*, 580 F.3d at 1333-34 ("[O]ur case law affirms the availability of post-infringement evidence as probative in certain circumstances.").

159.  In deciding the amount of a reasonable royalty that would have resulted from the hypothetical negotiation, the following factors may be considered:

> (1) The royalties received by the patentee for the licensing of the patent in suit, proving or tending to prove an established royalty.

(2) The rates paid by the licensee for the use of other patents comparable to the patent in suit.

(3) The nature and scope of the license, as exclusive or non-exclusive; or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

(4) The licensor's established policy and marketing program to maintain his patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5) The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter.

(6) The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.

(7) The duration of the patent and the term of the license.

(8) The established profitability of the product made under the patent; its commercial success; and its current popularity.

(9) The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results.

(10) The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention.

(11) The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use.

(12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

69

(13) The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14) The opinion testimony of qualified experts.

(15) The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee— who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention— would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

See *Georgia-Pacific*, 318 F. Supp. at 1120.

160. As part of the analysis under *Georgia-Pacific* factors 1 and 2, the fact-finder may consider, respectively, prior licenses for the use of the patent in suit, or prior licenses for the use of "other patents comparable to the patent in suit." *See Georgia-Pacific*, 318 F. Supp. at 1120. The amount of weight given to any particular license depends on the degree of comparability with the terms of the hypothetical license. *See ResQNet.com*, 594 F.3d at 869-70; *see also Lucent Techs.*, 580 F.3d at 1325-26.

161. "A patentee is only entitled to a reasonable royalty attributable to the infringing features. The patentee must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features." *Power Integrations, Inc. v.*

70

*Fairchild Semiconductor International, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018) (quoting *Ericsson v. D-Link*, 773 F.3d at 1226) (internal quotations removed); *see Garretson v. Clark*, 111 U.S. 120, 121 (1884); *Beatrice Foods v. New Eng. Printing & Lithographing*, 899 F.2d 1171, 1176 (Fed. Cir. 1990). "The law requires patentees to apportion the royalty down to a reasonable estimate of the value of its claimed technology, or else establish that its patented technology drove demand for the entire product." *VirnetX, Inc.*, 767 F.3d at 1329; *see also Bayer HealthCare LLC v. Baxalta Inc.*, No. 16-CV-1122-RGA, 2019 WL 330149, at *8 (D. Del. Jan. 25, 2019) (citing *Ericsson v. D-Link*, 773 F.3d at 1226–27 (instructing that royalties must be apportioned between the infringing and non-infringing features of the accused product)).

162.    Conventional components are also to be apportioned out. *See Exmark Mfg. v. Briggs & Stratton Power Prods. Grp.*, 879 F.3d 1332, 1348 (Fed. Cir. 2018).

163.    In determining the appropriate royalty base and the appropriate royalty rate, "the ultimate combination of [both the] royalty base and royalty rate must reflect the value attributable to the infringing features of the product [i.e., the patented technology alone], and no more." *Ericsson v. D-Link*, 773 F.3d at 1226; *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1309-10 (Fed. Cir. 2018) ("[T]he [] combination of royalty base and royalty rate must reflect the value attributable to the infringing features . . ., and no more." . . . [P]atentee must 'give evidence tending

71

to separate or apportion the [infringer]'s profits and the patentee's damages between the patented feature and the unpatented features. . . .").  When the entire value of the accused product is not attributable to the patented feature, "courts must insist on a [] realistic starting point for the royalty calculations by juries—often, the smallest salable unit and, at times, even less."  *Ericsson v. D-Link*, 773 F.3d at 1227; *see also GPNE*, 2014 WL 1494247, at *11-13.

### 5.    Costs, Prejudgment Interest, and Postjudgment Interest

164.    Section 284 allows for "interest and costs as fixed by the court."

165.    As with the other aspects of Beckman Coulter's damages case, Beckman Coulter has the burden of proving the amount of pre- and post-judgment interest to which it believes it would be entitled.  *Promega Corp.*, 875 F.3d at 660.

166.    Under 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."    Upon a finding of infringement, prejudgment interest may be awarded "where necessary to afford the plaintiff full compensation for the infringement."    *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1076 (Fed. Cir. 2020) (citations omitted). The rate of prejudgment interest and whether it should be compounded or not are matters for the Court's discretion.  *See Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 800 (Fed. Cir. 1988); *Bio-Rad Laby's., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986).  Prejudgment interest must be based "only on the

72

compensatory portion of the damages award," not on any enhanced damages awarded. *Beatrice Foods*, 923 F.2d at 1580.

167.   Delay in filing suit that is prejudicial to Cytek prohibits an award of prejudgment interest. *See Crystal Semiconductor Corp. v. TriTech Microelecs. Intern.*, 246 F.3d 1336, 1362 (Fed. Cir. 2002) (denying prejudgment interest because of "two year delay in initiating the present suit").

168.   "The 'date of entry of judgment' demarcates the boundary between pre- and postjudgment interest." *Transmatic, Inc. v. Gulton Indus.*, 180 F.3d 1343, 1347 (Fed. Cir. 1999) (internal quotations and citations omitted).  Postjudgment interest accrues "from the date of the entry of judgment" and is "computed daily to the date of payment." *Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 97 (3d Cir. 1993); 28 U.S.C. §1961(b).  Regional circuit law is applied when determining postjudgment interest. *See Taltech Ltd. v. Esquel Enters. Ltd.*, 604 F.3d 1324, 1335 (Fed. Cir. 2010).

169.   Under the rules of this District, "[u]nless otherwise ordered by the Court, the prevailing party shall be entitled to costs.  The party shall, within 14 days after the time for appeal has expired or within 14 days after the issuance of the mandate of the appellate court, file a bill of costs.  Failure to comply with the time limitations of this Rule shall constitute a waiver of costs, unless the Court otherwise orders or counsel are able to agree on the payment of costs. In the latter case, no bill

73

of costs need be filed." D. Del. Local Rule 54.1(a)(1). "Costs shall be taxed in conformity with the provisions of 28 U.S.C. §§1920, 1921, and 1923, and such other provisions of law as may be applicable and the remaining paragraphs of subpart (b) of this Rule." D. Del. L.R. 54.1(b)(1).

### 6.    Enhanced Damages

170.    Under section 284, "the court may increase the damages up to three times the amount found or assessed." The court has discretion as to whether to award enhanced damages and in what amount. *See Halo Elecs.,* 579 U.S. at 103; *Harris Corp. v. Ericsson Inc.,* 417 F.3d 1241, 1259 (Fed. Cir. 2005).

171.    "The sort of conduct warranting enhanced damages has been variously described in our cases as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or— indeed—characteristic of a pirate." *Halo Elecs.*, 579 U.S. at 103–04; *see also*, *Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1300-01 (Fed. Cir. 2023) (quoting *Presidio Components, Inc. v. Am. Tech. Ceramics. Corp.*, 875 F.3d 1369, 1382 (Fed. Cir. 2017)). A finding of willful infringement does not compel enhancement of damages. *See Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1581 (Fed. Cir. 1992); *State Industries, Inc. v. Mor-Flo Industries, Inc.*, 948 F.2d 1573, 1577 (Fed. Cir. 1991); *Funai Elec. Co., Ltd. v. Daewoo Electronics Corp.*, 616 F.3d 1357, 1376–77, (Fed. Cir. 2010); *see also* 35 U.S.C. § 284; *Halo Elec.*, 579 U.S. at 104. "In determining

74

whether enhanced damages are appropriate, courts should consider the overall circumstances of the case." *Presidio Components, Inc.*, 875 F.3d at 1382 (citing *Halo Elec.*, 579 U.S. at 106).

### 7.    Attorneys' Fees

172.    "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. To be "exceptional," a case must "stand[] out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553-55 (2014).

173.    "Exceptionality is an element or precondition for the imposition of attorney fees" and exceptional cases are rare. *Samsung Electronics Co., Ltd. v. Rambus, Inc.,* 523 F.3d 1374, 1379–80 (Fed. Cir. 2008); *see also Raniere v. Microsoft Corp.*, 887 F.3d 1298, 1303 (Fed. Cir. 2018). "District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 572 U.S. at 554-55. An award of "attorney fees is not automatic, even for the extraordinary case." *Nat'lPresto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1197 (Fed. Cir. 1996).

## VIII.  INJUNCTIVE RELIEF

### A.  Issues of Law to Be Litigated

174.  Whether Beckman Coulter has failed to carry its burden of proving by a preponderance of the evidence that it is entitled to injunctive relief that permanently enjoins Cytek and its officers, employees, agents, attorneys, affiliates, successors, assigns, and others acting in privity or concert with them from making, using, selling, offering to sell in the United States, or importing into the United States the Accused Products.

### B.  Legal Authority

175.  "[A]n injunction is an equitable remedy. It is not a remedy which issues as of course, or to restrain an act the injurious consequences of which are merely trifling. An injunction should issue only where the intervention of a court of equity is essential in order effectually to protect property rights against injuries otherwise irremediable." *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982) (citations omitted).

176.  A plaintiff seeking a permanent injunction must prove "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *See eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006).

76

177. Courts "treat the irreparable harm factor the same in both the preliminary and permanent injunction contexts." *Apple Inc. v. Samsung Elecs. Co.*, Ltd., 735 F.3d 1352, 1361 (Fed. Cir. 2013). There must be a causal nexus between the infringing conduct and the alleged harm suffered by plaintiff. *See id*. at 1363-64.

178. "[U]ndue delay" in seeking relief "negates the idea of irreparability" for an injunction. *Genentech, Inc. v. Amgen Inc.*, 2019 WL 3290167, *2 (D. Del. July 18, 2019); *see Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) (finding that "unnecessary, years-long delay" weighs against injunctive relief); *Fritz v. Arthur D. Little, Inc.*, 944 F. Supp. 95, 98 (D. Mass. 1996) ("unexplained delay of more than two years in commencing … action" rebutted plaintiff's claim of irreparable harm).

179. To determine irreparable harm courts look to "evidence of what actual damage was likely due to any continuation of [the accused infringer]'s alleged infringing sales and whether money damages will provide adequate compensation and vindication of [the patentee]'s patent rights." *Reebok Intern. Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1557 (Fed. Cir. 1994). "Plaintiff must show that damages are inadequate to compensate for Defendant's infringement." *Wonderland Switzerland AG v. Evenflo Co., Inc.*, C.A. 18-1990, 2022 WL 2438750, at *3 (D. Del. Jul. 5, 2022) (denying plaintiff's post-trial motion for a permanent injunction).

180. If the plaintiff's alleged harm can be remedied through monetary relief, both the first and second factors weigh in favor of the defendant. *See, e.g., Eli Lilly*

*& Co. v. Am. Cyanamid Co.*, 82 F.3d 1568, 1578–79 (Fed. Cir. 1996) (no irreparable harm where damages would be adequate); *Kone Corp. v. ThyssenKrupp USA, Inc.*, 2011 WL 13137061, *19 (D. Del. Dec. 2, 2011) (alleged loss of future business contracts compensable). The fact that calculating damages is "often a complex task" does not establish irreparable harm. *Chestnut Hill Sound, Inc. v. Apple Inc.*, 2015 WL 6870037, *5 (D. Del. Nov. 6, 2015); *see, e.g.*, *Nutrition 21 v. United States*, 930 F.2d 867, 871 (Fed. Cir. 1991) ("difficulty of calculating losses" does not justify injunctive relief).

181. Whether a product provides advantages to patients over patentee's product, and whether employees must be laid off are considerations that weigh towards substantial hardship of the alleged infringer. *See Conceptus, Inc. v. Hologic, Inc.*, 2012 WL 44064 (N.D. Cal. Jan. 9, 2012).

182. "The touchstone of the public interest factor is whether an injunction, both in scope and effect, strikes a workable balance between protecting the patentee's rights and protecting the public from the injunction's adverse effects." *Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1379 (Fed. Cir. 2020) (quoting *i4i*, 598 F.3d at 863, *aff'd*, 564 U.S. 91 (2011)).