# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

BECKMAN COULTER, INC.,

        Plaintiff,

    v.

CYTEK BIOSCIENCES, INC.,

        Defendant.

C.A. No. 24-945-CFC

 

**EXHIBIT 18**

## PLAINTIFF'S MOTION *IN LIMINE* NO. 3
## OPENING, ANSWERING AND REPLY

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BECKMAN COULTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> CYTEK BIOSCIENCES, INC., <br><br> Defendant. | C.A. No. 24-0945-CFC |

**PLAINTIFF BECKMAN COULTER, INC.'S MOTION *IN LIMINE* NO. 3
TO PRECLUDE EVIDENCE, TESTIMONY, OR ARGUMENT THAT THE
TIMING OF THIS LAWSUIT EVIDENCES
<u>NON-INFRINGEMENT OR IMPACTS DAMAGES</u>**

**TABLE OF EXHIBITS[1]**

| Exhibit No. | Exhibit |
|---|---|
| 1 | Cytek's 10th Supplemental Response and Objections to Interrogatories Nos. 1-15 (Dec. 12, 2025) |
| 2 | Deposition Transcript of Wenbin Jiang |
| 3 | Rebuttal Report of Mr. John Hansen |
| 4 | Rebuttal Non-Infringement Report of Dr. Fedor Ilkov |
| 5 | Rebuttal Non-Infringement Report of Dr. James Leary |
| 6 | Our Business, Danaher, https://www.danaher.com/our-businesses |
| 7 | Opening Invalidity Report of Dr. Bernhard Weigl |

---

[1] Exhibits cited in this opposition as "Ex. __" are attached to the Declaration of L. Matlock-Colangelo, filed as an attachment to this motion.

Cytek intends to suggest to the jury that Beckman's lawsuit lacks merit because it was filed several years after two asserted patents issued.[2] But the Supreme Court rejected laches as a defense to infringement or damages. *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods.*, 580 U.S. 329, 346 (2017). The timing of suit is thus irrelevant, and suggesting otherwise to the jury would be prejudicial, inconsistent with the law, and likely to confuse the jury and waste time on a "trial within a trial" on the suit's timeliness. FRE 401-403.

**First**, because laches is not a defense to infringement, *SCA Hygiene*, 580 U.S. at 346, when Beckman filed suit has no bearing at all on whether Cytek infringes.[3] *See Sprint Commc'ns v. WideOpenWest*, No. 18-00361-RGA (D. Del. Nov. 16, 2022), D.I. 440 at 1 (excluding "evidence and argument relating to delay in bringing the lawsuit"); *Kendon Indus. v. Towblazer*, 2024 WL 5275549, at *3 (C.D. Cal. Dec. 23, 2024) (timing of suit "not relevant"); FRE 401-402.

**Second**, the timing of suit is irrelevant to damages because, as the Supreme Court held, a patentee may statutorily "recover damages for any infringement committed within six years of the filing of the claim." *SCA Hygiene*, 580 U.S. at 336; *see also Exmark Mfg. v. Briggs & Stratton Power Prods.*, 879 F.3d 1332, 1352 (Fed. Cir. 2018) ("evidence of [plaintiff's] purportedly delayed decision to sue for

---

[2] *See, e.g.*, Ex. 1 at 68-69; Ex. 2 at 212:1-9**,** 258:1-21; Ex. 4 at ¶ 58; Ex. 5 at ¶515-517.

[3] To the extent other equitable defenses might consider the timing of suit, none are preserved here. *See* D.I. 48 at 10-11 (Cytek's Answer listing defenses).

1

infringement" is "not relevant to damages"); *Elbit Sys. Land & C4I v. Hughes Network*, 2017 WL 11658860, at *2 (E.D. Tex. July 25, 2017) (precluding suggestion that plaintiff is "undeserving of damages because of Plaintiffs' delay in filing suit"); FRE 401-402.

*Finally*, even if timing had marginal relevance (it does not), that would be far outweighed by the unfair prejudice to Beckman, the significant risk of confusion, and likelihood of misleading the jury.  For example, suggesting that Beckman delayed filing suit may cause the jury wrongly to believe that there was some impropriety in the timing of the Complaint.  There was not.  Beckman is entitled to recover for infringement up to six years prior to suit, and nothing required Beckman to sue earlier than it did.  *See* 35 U.S.C. § 286 (governing pre-suit damages); *Kendon*, 2024 WL 5275549, at *3 (evidence of purported delay had "potential of unfair prejudice," "confusing the issues[,] or misleading the jury").  Likewise, allowing Cytek to argue that the timing of Beckman's suit excuses Cytek's willful infringement would mislead the jury into focusing on Beckman's conduct rather than properly evaluating *Cytek's* "knowledge … at the time of the challenged conduct." *Halo Elecs. v. Pulse Elecs.*, 579 U.S. 93, 105 (2016); *see also LecTec v. Chattem*, No. 08-cv-00130-DF (E.D. Tex. Jan. 4, 2011), D.I. 324 at 20 (excluding evidence of purported delay despite argument that "Plaintiff's delay cuts against" willfulness); *Touchstream v. Charter Commc'n*, 2:23-cv-00059-JRG-RSP (E.D. Tex. Jan. 21,

2

2025), D.I. 275 at 3 (granting motion to exclude "testimony or argument that delay in filing suit is a defense to patent infringement"); FRE 403.

Moreover, any such argument would invite improper jury speculation as to Beckman's reasons for filing suit when it did. FRE 403. "Evidence of a party's litigation history or motivation for filing a lawsuit is generally inadmissible due to the danger of unfair prejudice, confusion of the issues, and wasting time." *Hobro v. United Airlines*, 2023 WL 2814694, at *1 (D. Haw. Apr. 6, 2023). As the Federal Circuit explained, "[t]here are many reasons to forego filing a lawsuit, [and] to imply that [plaintiff] did so because it did not think the invention had value is speculative." *Exmark*, 879 F.3d at 1352.

Allowing Cytek to argue delay to the jury would also waste time with a "mini trial" on why Beckman filed suit when it did, including Cytek's own role in that timing. Such a trial within the trial would distract from the actual issues the jury will be asked to decide in this case: Cytek's willful infringement, the damage to Beckman, and the validity of the Asserted Patents. FRE 403. The danger of "confusion of the issues[] and wasting time" thus far outweighs any marginal relevance. *Hobro*, 2023 WL 2814694, at *1.

Thus, Cytek should be precluded from introducing evidence, testimony, and argument about the timing of Beckman's lawsuit. FRE 401-403.

OF COUNSEL:

Omar A. Khan
Jeffrey A. Dennhardt
Laura Macro
Lauren Matlock-Colangelo
Jennifer L. Graber
Kelly A. Todd
Maggie Sawin
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

Akkad Y. Moussa
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Ave.
NW Washington, DC 20037
(202) 663-6000

Dated: June 26, 2026

/s/ Frederick L. Cottrell, III
Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff*

4

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2026, true and correct copies of the foregoing

document were served upon the following counsel of record in the manner indicated:

**BY E-MAIL**

Karen Jacobs
Jeremy A. Tigan
Cameron P. Clark
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE  19801

**BY EMAIL**

Reuben H. Chen
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304

Elizabeth M. Flanagan
Cooley LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402

Adam Pivovar
Dustin M. Knight
Rosalynd D. Upton
David Yun
Cooley LLP
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004

*/s/ Christine D. Haynes*
Christine D. Haynes (#4697)
haynes@rlf.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| BECKMAN COULTER, INC., | ) ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 24-0945-CFC |
| v. | ) | |
| CYTEK BIOSCIENCES, INC. | ) ) ) | |
| Defendant. | ) | |

## D. DEL. L.R. 7.1.1 CERTIFICATION

The undersigned hereby certifies, pursuant to District of Delaware Local Rule 7.1.1, that counsel for Plaintiff and Defendant met and conferred on the foregoing motion.   Defendant opposes the relief sought in the motion.


OF COUNSEL:

Omar A. Khan
Jeffrey A. Dennhardt
Laura Macro
Lauren Matlock-Colangelo
Jennifer L. Graber
Maggie Sawin
Kelly A. Todd
WILMER CUTLER PICKERING
HALE and DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007

*/s/ Frederick L. Cottrell III*
Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER,
P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff*

(212) 230-8800

Akkad Y. Moussa
WILMER CUTLER PICKERING
HALE and DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037

Dated:  June 26, 2026

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| BECKMAN COULTER, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CYTEK BIOSCIENCES, INC.,<br><br>Defendant. | C.A. No. 24-0945-CFC |

**[PROPOSED] ORDER GRANTING PLAINTIFF BECKMAN COULTER'S MOTION *IN LIMINE* NO. 3 TO PRECLUDE EVIDENCE, TESTIMONY, OR ARGUMENT THAT THE TIMING OF THIS LAWSUIT EVIDENCES <u>NON-INFRINGEMENT OR IMPACTS DAMAGES</u>**

Plaintiff Beckman Coulter, Inc. ("Beckman") having filed a Motion to Exclude evidence, testimony, or argument that the timing of this lawsuit evidences non-infringement or impacts damages, and the Court having considered the Motion and the accompanying briefs; now, therefore,

IT IS HEREBY ORDERED that Defendant and its witnesses and attorneys may not opine or present at trial any argument or evidence regarding the timing of this lawsuit or any alleged delay in bringing suit.

SO ORDERED this ___ day of _____, 2026.

_____
Hon. Colm F. Connolly
Chief, United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BECKMAN COULTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> CYTEK BIOSCIENCES, INC., <br><br> Defendant. | C.A. No. 24-0945-CFC <br><br>  |

## DECLARATION OF LAUREN MATLOCK-COLANGELO IN SUPPORT OF
## PLAINTIFF BECKMAN COULTER, INC.'S MOTIONS *IN LIMINE*

I, Lauren Matlock-Colangelo, declare as follows:

1.    I am licensed to practice law in the State of New York and have been admitted to this Court *pro hac vice* by Order dated September 3, 2024.  D.I. 8 (so ordered).

2.    I am an attorney with the law firm of Wilmer Cutler Pickering Hale and Dorr LLP, located at 7 World Trade Center, 250 Greenwich Street, New York, New York 10007, and counsel for Plaintiff Beckman Coulter, Inc. ("Beckman Coulter").

3.    I have personal knowledge of the facts set forth herein and with the proceedings in this case, and if called to testify, I would competently testify thereto.

4.    I submit this Declaration in support of the following motions by Beckman Coulter:

    a. Motion i*n Limine* To Preclude Evidence, Testimony, or Argument Regarding Unasserted Patents and Patent Applications in Support of Cytek's Non-Infringement, Invalidity, or Damages Arguments

    b. Motion *in Limine* to Preclude Evidence, Testimony, or Argument Regarding Non-Party Danaher Corporation, Speculation Regarding Danaher's Purported Mental State to Argue Non-Infringement, and Danaher's Non-Comparable Valuation of Cytek to Suppress Damages; and

2

Case 1:24-cv-00945-CFC    Document 399-1    Filed 07/24/26    Page 15 of 147 PageID #: 36457

c. Motion *in Limine* To Preclude Evidence, Testimony, or Argument that the Timing of This Lawsuit Evidences Non-Infringement or Impacts Damages.

5.    A true and correct copy of excerpts from Defendant Cytek Biosciences, Inc.'s Tenth Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories, dated December 12, 2025, are attached hereto as **Exhibit 1**.

6.    A true and correct copy of excerpts from the deposition transcript of Wenbin Jiang, dated November 26, 2025, are attached hereto as **Exhibit 2**.

7.    A true and correct copy of excerpts from the Rebuttal Expert Report of John L. Hansen, dated January 20, 2026, are attached hereto as **Exhibit 3**.

8.    A true and correct copy of excerpts from the Rebuttal Expert Report of Fedor Ilkov, dated January 20, 2026, are attached hereto as **Exhibit 4**.

9.    A true and correct copy of excerpts from the Rebuttal Expert Report of James Leary, dated January 20, 2026, are attached hereto as **Exhibit 5**.

10.    A true and correct copy of Danaher's webpage *Our Businesses* from https://www.danaher.com/our-businesses, is attached hereto as **Exhibit 6**.

11.    A true and correct copy of excerpts from the Opening Expert Report of Bernhard Weigl, dated December 19, 2025, are attached hereto as **Exhibit 7**.

12.    I declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and

3

further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 26th day of June, 2026.

/s/ Lauren E. Matlock-Colangelo

Lauren E. Matlock-Colangelo

4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 26, 2026, true and correct copies of the foregoing

document were served upon the following counsel of record in the manner indicated:

<table>
<tr><td><b><u>BY E-MAIL</u></b></td><td><b><u>BY EMAIL</u></b></td></tr>
<tr><td>

Karen Jacobs<br>
Jeremy A. Tigan<br>
Cameron P. Clark<br>
Morris, Nichols, Arsht & Tunnell LLP<br>
1201 N. Market Street<br>
P. O. Box 1347<br>
Wilmington, DE  19801

</td><td>

Reuben H. Chen<br>
Cooley LLP<br>
3175 Hanover Street<br>
Palo Alto, CA 94304<br>
<br>
Elizabeth M. Flanagan<br>
Cooley LLP<br>
30 S. 9th Street, 7th Floor<br>
Minneapolis, MN 55402<br>
<br>
Adam Pivovar<br>
Dustin M. Knight<br>
Rosalynd D. Upton<br>
David Yun<br>
Cooley LLP<br>
1299 Pennsylvania Avenue NW<br>
Suite 700<br>
Washington, DC 20004

</td></tr>
</table>

<u>/s/ Christine D. Haynes</u>
Christine D. Haynes (#4697)
haynes@rlf.com

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BECKMAN COULTER, INC., | C.A. No. 24cv00945-CFC-EGT |
| Plaintiff, | **DEMAND FOR JURY TRIAL** |
| v. | |
| CYTEK BIOSCIENCES, INC., | |
| Defendant. | |

### DEFENDANT CYTEK BIOSCIENCES, INC.'S TENTH SUPPLEMENTAL RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES (NOS. 1- 15)

Pursuant to Federal Rules of Civil Procedure 26 and 33 and the Local Rules of the United States District Court for the District of Delaware, Defendant Cytek Biosciences, Inc. ("Cytek" or "Defendant") hereby supplements and/or amends its objections and responses to Interrogatories in the First Set of Interrogatories to Defendant Cytek Biosciences, Inc. (Nos. 1-15) served by Plaintiff Beckman Coulter, Inc. ("BC" or "Plaintiff").

### GENERAL OBJECTIONS

Cytek hereby incorporates its General Objections contained in its Responses and Objections to Plaintiff's First Set of Interrogatories (Nos. 1 – 15), dated December 16, 2024.

### SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES

Without waiving or limiting in any manner any of the foregoing General Objections, but rather incorporating them into each of the following responses to the extent applicable, Cytek hereby supplements its responses to Interrogatory Nos. 1-15 as follows:

### INTERROGATORY NO. 1:

Identify and describe in detail the facts and circumstances relating to information used to identify the Cytek Products and any component thereof. This includes but is not limited to

1

objections.

Cytek incorporates by reference its response and first supplemental response to Interrogatory No. 7 dated May 9, 2025.

Investigation and discovery are ongoing in this case. The objections and responses are based upon information currently available to Cytek and are made without prejudice to Cytek's right to use or rely on subsequently discovered information. Cytek specifically reserves the right to supplement, amend, modify, and/or correct its response in view of further progress of fact and expert discovery, and in light of any supplement by Plaintiff of its interrogatory responses.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11 (10/22/2025):**

Cytek hereby incorporates by reference its original response and first supplemental response, including its prior specific objections.









Indeed, it was not until June 14, 2024 did Cytek first learn of Beckman Coulter's infringement allegations as to a limited number of claims with respect to the '443 and '582 patents when Beckman Coulter's counsel served a letter on Cytek. CYTEK_0000909015. Cytek analyzed the infringement allegations in the letter and determined that there was no infringement by Cytek and that the then-asserted claims of the '443 and '582 patents were (and are) invalid. Cytek promptly sent a letter to Beckman Coulter prior to the lawsuit indicating its position with respect to non-infringement and invalidity on the '443 and '582 patent claims.

Cytek first learned of Beckman Coulter's infringement allegations as to a single claim in the '107 patent when Beckman Coulter amended its complaint and added these patents to the case.

Cytek learned of Beckman Coulter's infringement allegations generally on February 14, 2025, when Beckman Coulter served its Initial Infringement Contentions in this litigation.

69

Dated: December 12, 2025

Respectfully submitted,

COOLEY LLP

Adam Pivovar
Dustin M. Knight
Rosalynd D. Upton
David Yun
COOLEY LLP
1299 Pennsylvania Avenue NW,
Suite 700
Washington, DC 20004
(202) 842-7800
apivovar@cooley.com
dknight@cooley.com
rupton@cooley.com
dyun@cooley.com

By: */s/ Elizabeth M. Flanagan*
Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@morrisnichols.com
jtigan@morrisnichols.com
cclark@morrisnichols.com

Elizabeth M. Flanagan (#5891)
COOLEY LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402
bflanagan@Cooley.com

Reuben Chen
HanByul Chang
Juan Pablo Gonzalez
COOLEY LLP
3175 Hanover Street
Pal Alto, CA 94304
(650) 843-5000
rchen@cooley.com
HanByul.chang@cooley.com
jgonzalez@cooley.com

Attorneys for Defendant
**CYTEK BIOSCIENCES, INC.**

79

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing

**DEFENDANT CYTEK BIOSCIENCES, INC.'S TENTH SUPPLEMENTAL RESPONSES**

**AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES (NOS. 1-**

**15)** was served to be served on the following persons by email on December 12, 2025:

Omar A. Khan
Jeffrey Dennhardt
Lauren E. Matlock-Colangelo
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
omar.khan@wilmerhale.com
Jeffrey.Dennhardt@wilmerhale.com
Lauren.Matlock-Colangelo@wilmerhale.com

Asher S. McGuffin
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
Asher.McGuffin@wilmerhale.com

Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff Beckman Coulter, Inc.*

*/s/ Elizabeth M. Flanagan*
Elizabeth M. Flanagan

# EXHIBIT 2



# Transcript of Wenbin Jiang, Ph.D., Corporate Designee & Individually

**Date:** November 26, 2025
**Case:** Beckman Coulter, Inc. -v- Cytek Biosciences

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

Transcript of Wenbin Jiang, Ph.D., Corporate Designee & Individually 1 (1 to 4)
Conducted on November 26, 2025

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BECKMAN COULTER, INC.,          )
                                )
          Plaintiff,            )
                                )
     VS.                        )   NO. 24-CV-00945
                                )
CYTEK BIOSCIENCES, INC.,        )
                                )
          Defendant.            )
_____)

-- H I G H L Y   C O N F I D E N T I A L --

OUTSIDE ATTORNEYS' EYES ONLY

IN-PERSON VIDEOTAPED DEPOSITION OF

CYTEK BIOSCIENCES, INC.,

By and through its Designated Representative,

WENBIN JIANG, PH.D.,

and in his Individual Capacity

WEDNESDAY, NOVEMBER 26, 2025

STENOGRAPHIC REPORTER:  CHRISTA YAN, CSR NO. 14316, RPR
                                            _____

PERSONAL APPEARANCES:

FOR PLAINTIFF:
     WILMERHALE LLP
     BY:  JEFFREY DENNHARDT, ATTORNEY-AT-LAW
     250 Greenwich Street
     New York, New York 10007
     jeffrey.dennhardt@wilmerhale.com

FOR DEFENDANT:
     COOLEY LLP
     BY:  REUBEN CHEN, ATTORNEY-AT-LAW
          HANBYUL CHANG, ATTORNEY-AT-LAW
     3175 Hanover Street
     Palo Alto, California 94304
     rchen@cooley.com

ALSO PRESENT PERSONALLY:
TOMAS REYES, The Videographer

ALSO PRESENT REMOTELY:
KELLY TODD, WilmerHale
MAGGIE SAWIN, WilmerHale

--oOo--

INDEX OF EXAMINATIONS

                                        PAGE

BY MR. DENNHARDT                         9

BY MR. CHEN                            358

BY MR. DENNHARDT                       372

--oOo--

--oOo--

Witness's Changes or Corrections       380

Reporter's Certificate                 381

E X H I B I T S

| EXHIBIT | MARKED FOR IDENTIFICATION | PAGE |
|---|---|---|
| Exhibit 1 | Wenbin Jiang LinkedIn Profile | 14 |
| Exhibit 2 | US Patent 7,280,204 October 9, 2007 | 55 |
| Exhibit 3 | CYTEK_0000976929 Cytek Launches DxP Athena System | 82 |
| Exhibit 4 | CYTEK_0000893707 Message from Ming Yan, sent June 17, 2018 | 85 |
| Exhibit 5 | CYTEK_0000975537 DxP Athena Flow Cytometer Analysis | 91 |
| Exhibit 6 | CYTEK_0000584758 Message from Dave Kennedy, January 18, 2023 | 100 |
| Exhibit 7 | CYTEK_0000967248 Objective/ Product Positioning | 102 |
| Exhibit 8 | CYTEK_0000894551 Message from Ming Yan, February 15, 2016 | 118 |
| Exhibit 9 | CYTEK_0000987089 Outline, Technology Introduction | 122 |
| Exhibit 10 | CYTEK_0000970732 Products and Services Overview | 142 |

Transcript of Wenbin Jiang, Ph.D., Corporate Designee & Individually 47 (185 to 188)
Conducted on November 26, 2025



**Page 185**

THE WITNESS: Non-collimated and reimage on every other detector --

THE STENOGRAPHIC REPORTER: You said the image every other detector?

THE WITNESS: Reimage on every other detector.

MR. DENNHARDT: Reimage, r-e image.

THE WITNESS: Reimage, yeah.

And this one require collimated beam across, so obviously, we are very different. The scope is different. The implementation is different. And so we feel there's no need. It's so obvious. At that time, we didn't really go to consult with our legal counsel. Just too different.

BY MR. DENNHARDT:

Q  When you say it's so obvious, are you referring to it's so obvious that, in your view, the Aurora doesn't infringe or are you referring to obviousness as it relates to invalidity?

A  No, not infringing. That term, yeah.

Q  I understand.

A  We didn't study really in detail. Nonvalidity require we really consult with the attorneys and, right, we basically look at the infringement mostly.

Q  So the first time you considered whether the Aurora product infringed Beckman Coulter's patents was after the Aurora product was launched, right?

**Page 186**

MR. CHEN: Objection; outside the scope, calls for a legal conclusion.

But you can answer.

THE WITNESS:

**Page 187**

THE STENOGRAPHIC REPORTER: I'm sorry, I didn't understand that. Earlier mentioned what?

THE WITNESS:

BY MR. DENNHARDT:

Q

MR. CHEN: Objection; outside the scope.

THE WITNESS:

BY MR. DENNHARDT:

Q

**Page 188**

And so... that was the whole reason why. Right. And frankly speaking, and if you look at our -- that's also a reason why we have our own IP as well. And when we look at those IP, and in fact, Cytek, the design really is following our own IP. And, you know, our IP, our patent has been issued by the U.S. Patent Office, over Yong Chen's patent. That's another reason --

THE STENOGRAPHIC REPORTER: I'm sorry, over what?

THE WITNESS: Over Yong Chen's patent. This one, '412, right.

And the U.S. Patent Office feels, we don't infringe. And there's a substantial difference of Cytek's IP from those early patents. Yeah.

BY MR. DENNHARDT:

Q  So you believe that the U.S. Patent Office performed an infringement analysis of whether --

A  I don't think --

Q  Let me finish my question.

You believe that the U.S. Patent Office performed an infringement analysis of whether Cytek's products infringed Dr. Chen's patents?

A  I'm not sure how U.S. patent reviews their process. I'm not an expert on that aspect. We cited Yong Chen's patents during our patent applications.

Q  You cited it because it was closely related

A   I think there are many other subjects involved. And earlier I mention the whole architecture. I already earlier, I mentioned with regarding to the detector capturing the light, right. In this particular design in Yong Chen's patent, and every detector signal, corresponding to the one particular dyes information. That's what's capturing. And it's -- it captures a discrete wavelength, right, and whole block.

In fact, our whole optical block captured the continuum and sequentially continuing the whole spectrum from the -- all the dyes. It's a spectral profile, that's what we are capturing. And in this Yong Chen's patent, each dye correspond, each detector, the signal, correspond to the light information fluorescence intensity of one particular dye. So there are many other things showing we don't actually infringe on this patent.

Q   Anything else? I just want to make sure I have a complete understanding.

A   I think you're asking me to go through every count... subject, with regard to any infringement. I have to rely on legal counsel and experts to go through those claims. Right.

Q   You're not a lawyer, right?

A   I'm not a lawyer. Exactly. That's why I'm saying is, I can't state everything complete. Right. I have to rely on experts to help and do that.

Q   You don't have any legal training, correct?

A   No, I don't.

Q   You haven't reviewed the claims of the '443 or the '107, right?

A   No.

Q   You haven't reviewed the Court's claim construction in this case, right?

A   No.

Q   You haven't reviewed any of the prior art Cytek is asserting in this case, right?

A   No.

Q   You haven't reviewed Cytek's noninfringement contentions in this case, right?

A   Put it this way --

THE STENOGRAPHIC REPORTER: I didn't hear that. Repeat that.

THE WITNESS: Put it this way, it's so clear Cytek does not infringe on Yong Chen's patents because first is, right, Yong Chen's patents is about conventional flow cytometer, and Cytek is about flow spectral. Those are two very different concepts in terms of earlier explaining the whole architecture, whole data analysis algorithms. And U.S. Patent Office has already reviewed, and our patents, and over Yong Chen's patent and issued

Cytek's patents. And our practice, our implementation is actually based on our own patents, architecture so clear we don't infringe.

So clearly it was all those circumstances, right. Plus all those what we have shown clearly, and those collimated beam and all of those other facts I have stated. Nowhere Cytek is infringing on Cytek -- in Yong Chen's patents.

Nowhere Beckman has ever mentioned about Cytek infringing on any of Yong Chen's patents. Right. So... it's clear, Cytek does not infringe any of those patents.

BY MR. DENNHARDT:

Q   Sir, the question was: Have you reviewed Cytek's noninfringement contentions in this case, yes or no?

A   I have not really reviewed what our legal counsel has submitted. Of course, I'm not an expert. But on the other hand, I'm just talking about all the circumstances here. And it's not possible, in good faith, to claim our products are infringing on Beckman's patents,

Q   Well, that's for the jury to decide, right?

A   Yeah.

Q   So no, you haven't reviewed Cytek's infringement contentions in this case, right, sir?

A   No, I haven't.

Q   You haven't reviewed Cytek's invalidity

Transcript of Wenbin Jiang, Ph.D., Corporate Designee & Individually    65 (257 to 260)
Conducted on November 26, 2025

257

the document.

THE WITNESS: Again, it's just to caution our investors. And there's a potential out there. And... it's not necessary. And we do but just want to be cautious here.

BY MR. DENNHARDT:

Q Beckman Coulter has a larger intellectual property portfolio than Cytek, right?

MR. CHEN: Objection; calls for speculation.

THE WITNESS: Beckman could have -- do have lots of patents, but we don't know with regarding to this particular space, this particular technology whether Beckman Coulter has or not. Frankly speaking, it's for the legal counsel to make the determination. What we have practiced is what we call the full spectral profiling and technology, and we practice our products actually and our technology based on our own IP, our own patents.

And in fact, patent office issued our patents over Yong Chen's patents, and therefore, we feel we do

258

have the freedom to operate. And I don't know if Beckman has any full spectral profiling based technology or patents out there and -- which we infringe. We don't think so. And based on all the information engagement, we have had since 2018, and clearly -- and in the best-faith basis, I don't think Beckman has any IPs.

We launched our product in 2017. Right? And Beckman didn't do anything until late 2024. And then come to actually associate with Beckman, launching their own product, spectral then come to accuse Cytek of infringement. You could have done so many years before then, right?

And Beckman didn't do that.

BY MR. DENNHARDT:

Q Is that it?

A Yes.

Q Move to strike as nonresponsive.

259

MR. CHEN: Disagree.

BY MR. DENNHARDT:

Q Beckman Coulter has a larger patent portfolio than Cytek, right?

MR. CHEN: Same objection.

THE WITNESS: Beckman clearly has a larger patent portfolio but doesn't mean Beckman has the patent portfolio on the technology we are practicing.

BY MR. DENNHARDT:

Q All right.

MR. CHEN: Before you go to another exhibit, we've actually been going for a while here.

MR. DENNHARDT: Happy to take a break.

MR. CHEN: Yeah, let's take a break.

MR. DENNHARDT: Yeah.

THE VIDEOGRAPHER: Okay, we're going off the record. Time, 3:35 p.m.

(Recess taken.)

THE VIDEOGRAPHER: We are back on the record. Time, 3:54 p.m.

(Whereupon Deposition Exhibit 26 was marked for identification.)

BY MR. DENNHARDT:

Q All right. Sir, you've just been handed Exhibit 26, which is a document bearing Bates Number

260

CYTEK 20892.

MR. CHEN: Objection; foundation.

THE WITNESS:

BY MR. DENNHARDT:

Q

MR. CHEN: Objection; lacks foundation, calls for a legal conclusion.

THE WITNESS:

BY MR. DENNHARDT:

Q

# EXHIBIT 3

Beckman Coulter, Inc.

v.

Cytek Biosciences, Inc.

Civil Action No. 1:24-cv-00945-CFC

Expert Rebuttal Report of John L. Hansen

HKA Global, LLC

January 20, 2026

John L. Hansen

**Table 3: Ms. Riley's Claimed Total Damages by U.S. Only or Worldwide[7]**

|  |  | U.S. Only | Worldwide |
|---|---|---|---|
| *A* | Claimed Cell Lost Profits | ███████ | ███████ |
| *B* | Claimed Reasonable Royalties | ███████ | ███████ |
| *C=A+B* | **Ms. Riley's Claimed "Total Damages"** | ███████ | ███████ |

14. In an alternative scenario in Exhibit 1A, Ms. Riley presents claimed damages ranging from ████████████████████████████████████ when including the BD FACSARIA III in the alternative market share scenario for cell sorters.[8]

15. Ms. Riley also set forth an alternative reasonable royalty only damages scenario assuming "the Court determines that Defendant is not liable for lost profit damages" totaling ████████████████████████████████████████████ ████████████[9]

16. I address flaws in Ms. Riley's lost profits and reasonable royalty analyses and opinions, as well as present adjusted damages figures (as summarized in **Section VI** below), in this Rebuttal Report.

## III.    BACKGROUND

### A.  Beckman Coulter, Inc.

17. BEC is a Delaware corporation headquartered in Brea, California.[10]  In 2011, BEC was acquired by Danaher Corporation ("Danaher") and today operates as a subsidiary of Danaher.[11]  Beckman Coulter Life Sciences and Beckman Coulter Diagnostics are the two operating companies for Beckman Coulter, Incorporated, which is fully-owned by Danaher.[12]  The two operating companies exist as one legal entity, however, they each have their own president and CFO.[13]  Beckman Coulter-branded products are sold under

---

[7] Riley Report: Exhibit 1
[8] Riley Exhibits 1A, 3.1, 3.2.
[9] Riley Report: ¶693 and Exhibit 1.1.
[10] Complaint, August 14, 2024, p. 1.
[11] Danaher Corporation, SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 5, Exhibit 21.1.
[12] Deposition of Patricia Del Castillo (Director of Finance at Beckman), October 24, 2025: pp. 7, 39-40; Deposition of Pietro Lopriore (SVP of Global Commercial Operations at Beckman), October 29, 2025: pp. 12-13.
[13] Deposition of Patricia Del Castillo (Director of Finance at Beckman), October 24, 2025: pp. 40-41.

both Danaher's Life Sciences and Diagnostics business segments.[14] Beckman Coulter's life sciences offerings include centrifuges, air and liquid particle counters, genomic instruments, microbioreactors, and flow cytometers.[15] Beckman Coulter's Life Sciences division contains two further portfolio groups: Biotech and Flow Cytometry.[16] The Flow Cytometry division is further divided into Clinical and RUO (Research Use Only) subdivisions.[17] Previously, the CHC (Cell Health and Centrifuge) and BWS (Biotech Workflow Solutions) stood alongside the Flow Cytometry division, but the two groups have since been collapsed into the single Biotech group, which now exists alongside the continued Flow Cytometry division.[18]

## B. Danaher Corporation

18.	Danaher is the Parent Company of Beckman Coulter.[19] Danaher is a Delaware corporation headquartered in Washington, D.C.[20] Danaher describes itself as comprising 15 operating companies within the biotechnology, life sciences, and diagnostics industries.[21] In 2024, Danaher's Diagnostics business segment was the largest revenue-generating division with nearly $9.8 billion in revenue followed by Life Sciences ($7.3 billion) and Biotechnology ($6.8 billion).[22]

## C. Cytek Biosciences, Inc.

19.	Cytek was founded in 2014 as is headquartered in Fremont, California.[23] Cytek is a cell analysis solutions company offering a number of flow cytometers including its Northern Lights, Aurora, Guava, and Amnis product lines.[24] The company offers additional

---

[14] Danaher Corporation, SEC Form 10-K for the Fiscal Year ended December 31, 2024, pp. 5-7.

[15] https://www.beckman.com/shop.

[16] Deposition of Patricia Del Castillo (Director of Finance at Beckman), October 24, 2025: p. 9.

[17] Deposition of Patricia Del Castillo (Director of Finance at Beckman), October 24, 2025: p. 9.

[18] Deposition of Patricia Del Castillo (Director of Finance at Beckman), October 24, 2025: pp. 18-20.

[19] Danaher Corporation, SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 5, Exhibit 21.1.

[20] Danaher Corporation, SEC Form 10-K for the Fiscal Year ended December 31, 2024: p. 1.

[21] Danaher Corporation, SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 3.

[22] Danaher Corporation, SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 38.

[23] Cytek Biosciences, Inc., SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 20.

[24] Cytek Biosciences, Inc., SEC Form 10-K for the Fiscal Year ended December 31, 2024, pp. 4-5. https://cytekbio.com/pages/aurora; https://cytekbio.com/pages/northern-lights; https://cytekbio.com/pages/imagestream; https://cytekbio.com/pages/guava. See also, https://cytekbio.com/pages/muse-micro; https://cytekbio.com/pages/orion.

products including micro cell analyzers and reagent cocktail preparation systems.[25] Cytek's customers include pharmaceutical and biopharma companies, academic institutions, and clinical research organizations.[26]  In the U.S., Cytek products are available for research use only.[27]  Cytek's sales in the United States are primarily direct, meaning that Cytek's sales representatives will sell direct to a customer.[28]  In a very small percentage of situations, Cytek will go through a partner, such as GSS, when selling to the government.[29]  Outside of the United States, sales in Europe, Canada, Australia and China are mostly direct, however other regions such as Africa, South America and Taiwan are through distributors.[30]

20.    Cytek touts its patented Full Spectrum Profiling ("FSP") technology as optimizing sensitivity and accuracy through a unique optical and electronic design.[31]  According to Cytek, this patented optics design enables researchers to effectively collect the full range of light emissions in an extremely compact space, resulting in higher resolution and enabling the development of highly complex assays with numerous colors and biomarkers.[32]

21.    In addition to its patented technology, Cytek's SEC filings lists several competitive strengths including a complete offering across price points, service of customers' unmet needs, diversified customer base and breadth of relationships, and global scale and reach.[33] ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████[34]

[25] https://cytekbio.com/pages/muse-micro; https://cytekbio.com/pages/orion.
[26] Cytek Biosciences, Inc., SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 4.
[27] https://investors.cytekbio.com/.
[28] Deposition of David Kennedy (VP of Global Sales at Cytek), October 2, 2025: pp. 222-223.
[29] Deposition of David Kennedy (VP of Global Sales at Cytek), October 2, 2025: p. 223.
[30] Deposition of David Kennedy (VP of Global Sales at Cytek), October 2, 2025: pp. 224-225.
[31] Cytek Biosciences, Inc., SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 4.
[32] Cytek Biosciences, Inc., SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 4.
[33] Cytek Biosciences, Inc., SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 5.
[34] CYTEK_0000124118-146 (at 120).

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BECKMAN COULTER, INC., | |
| Plaintiff, | |
| v. | C.A. No. 22-945-CFC-EGT |
| CYTEK BIOSCIENCES, INC., | |
| Defendant. | |

**REBUTTAL EXPERT REPORT OF FEDOR A. ILKOV, PH.D. REGARDING NON-INFRINGEMENT OF U.S. PATENT NOS. 10,330,582; 11,703,443; and 12,174,107**

Dated:      January 20, 2026          Respectfully submitted,

_____
Fedor A. Ilkov, Ph.D.

██████████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

collecting light by wavelength.

**B.    The Asserted Patents Only Describe the Use of an Effectively Collimated Beam, Not Any Type of "Light"**

50.    Second, as explained in my Opening Report, in my opinion no written description support exists for the "light" recited in the Asserted Claims of the '107 and '443 patents to be any light other than an "effectively collimated" beam. (Ilkov Op. Rep., Section XV.H.)

**C.    The Asserted Patents Only Describe the Use of Bandpass Filters**

51.    Third, as explained in my Opening Report, in my opinion no written description support exists for the "filters" recited in the Asserted Claims of the '107 and '443 patents to be any type of filter besides a dichroic filter. (Ilkov Op. Rep., Section XV.H; *id.* at ¶¶1034-1036.)

**VIII.    OVERVIEW OF THE DISCLOSURES IN THE ASSERTED PATENTS AND THE MATERIAL DIFFERENCES IN CYTEK'S ACCUSED PRODUCTS**

**A.    Cytek's Full-Spectral Aurora & Northern Lights Flow Cytometers are Innovative**

**1.    Cytek launched its innovative full spectral Aurora with 20+ color capability and unmixing algorithms in June 2017**

52.    On June 7, 2017, Cytek announced the launch of its advanced full-spectral Aurora flow cytometer, noting its unique combination of patent pending and innovative technologies:

- 28 -

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement



(*See*     https://cytekbio.com/pages/cytek-biosciences-debuts-new-advanced-flow-cytometry-system.)

53.    Cytek's innovative Aurora full spectral flow cytometer was developed based on Cytek having been on "the frontlines of the industry for decades to address the unmet need for "a user-friendly and truly affordable hyper-parametric flow cytometer" that would permit more labs to "have the ability to obtain deeper biological insights from a single sample," and noting that "[t]his will have a significant impact on research and clinical application files such as immunology, oncology, and systems biology":

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement





Cytek has been on the frontlines of the industry for decades, providing services and customization to keep cytometry systems tuned and running at high performance levels. The introduction of Aurora combines the company's vast pool of technical expertise with its profound market understanding to mark its full circle evolution from a service provider to a solution provider. "Cytek has evolved to address an unmet need," noted Dr. Wenbin Jiang, CEO of Cytek Biosciences. "Years of experience have revealed to us that the cytometry community has lacked a user-friendly and truly affordable hyper-parametric flow cytometer. Our technology allows us to provide an instrument that offers outstanding performance and unparalleled reagent flexibility when it comes to dye selection and multicolor panel design. With Aurora, more labs will have the ability to obtain deeper biological insights from a single sample. This will have a significant impact on research and clinical application fields such as immunology, oncology and systems biology."

(*See* https://cytekbio.com/pages/cytek-biosciences-debuts-new-advanced-flow-cytometry-system.)





## Introduction

When working with conventional flow cytometers, researchers are often limited by the number of reagents they can combine into a single tube. To gather the desired amount of information from each sample, they need multiple tubes, often with some redundant markers across them, to fully characterize cells of interest. With Cytek's full spectrum cytometers, researchers can consolidate a larger number of parameters into a single tube assay. With more reagents combined per tube, less sample is needed, and the need for redundant markers is eliminated.

To demonstrate these sample-to-answer workflow efficiencies, Cytek's scientists designed and optimized a 1-tube acute myeloid leukemia (AML) minimum residual disease (MRD) detection assay based on a published 3-tube assay[1]. Data from the original 3-tube assay and the consolidated 1 tube assay were generated using a Cytek 3-laser full spectrum cytometer and compared.



██████████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

55.    In my opinion, Cytek's launch of the Aurora spectral flow cytometer was a critical and fundamental advancement in flow cytometry that went well above-and-beyond the capabilities of conventional flow cytometers like BEC's CytoFLEX. In my opinion report on invalidity, I have already explained the fundamental differences between spectral flow cytometry and conventional flow cytometry, which I incorporate by reference herein.  Additionally, however, Cytek's Aurora also provided capabilities and functionality within a less-complex, less-expensive, and more user-friendly system than the Sony spectral flow cytometer that had already been on the market for a few years as of 2017 but had not gained substantial traction within the flow cytometry community.

**2.**    ████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

██████████████████████



Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

There are many innovative features within Cytek's Aurora and Northern Lights spectral flow cytometers, including, among others:

████████████████████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████

58.     I understand that Danaher never mentioned any alleged issues with any patent rights, including any of the presently Asserted Patents at the ████████ ██████ or anytime before BEC sent Cytek a letter alleging infringement in June 2024.

> **3.      Cytek's innovative spectral flow cytometers (Aurora and Northern Lights) continue to be recognized for how they have advanced the field of flow cytometry**

59.     Cytek's innovative Aurora and Northern Lights spectral flow cytometers have continued to be recognized throughout the industry.  Indeed, Cytek

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

**b.**

78.

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

79.

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

(CYTEK_00000000104.)

82.

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

disclosure in the specification regarding how much beam divergence is permitted or what constitutes "large beam expansion" as part of the disclosure that "the present disclosure extends the collimated optical path length *without large beam expansion*."

88.    The patent further contends that "[i]t is apparent to those skilled in the art that dichroic filters may be inserted anywhere along the *long, narrow and collimated beam path* afforded by *the present disclosure's* relay imaging."  ('582 patent, 5:11-14.)  Again, the specification is referring to "the present disclosure" as requiring a "long, narrow, *collimated beam path*," which a POSA would understand as requiring a "collimated beam" along the entire "collimated beam path."  A POSA would have further recognized that the disclosure that "dichroic filters may be inserted anywhere" along a beam path only applies when the path is entirely a "collimated beam."

89.    Again contrary to the disclosures of the Asserted Patents, Cytek's Accused Products ██████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████   As such, contrary to the "WDM" disclosed in the specification of the Asserted Patents, ██████████████████████████

████████████████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████    The use of a relay architecture that directs defocused light onto even filters while reimaging light onto odd filters is a fundamental innovation of the optical design in Cytek's non-collimated focused/defocused array design, which was expressly recognized by the Patent Office as not being disclosed in the disclosure of the Asserted Patents (in the form of family member US Patent 9,746,412 as noted below):

███████████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

**Allowable Subject Matter**

Claims 1, 3-15 and 30-33 are allowed.

The prior art does not disclose, in the claimed environment, a flow cytometer having an image array comprising a transparent block, a plurality of micro-mirrors and a plurality of filters, wherein each of the filters reflects light onto one of the plurality of micro-mirrors and passes light of a differing wavelength onto a detector channel, and wherein incident light within the image array zigzags back and forth between consecutive filters and consecutive micro-mirrors. The closest prior art is believed to be the Chen (US 9746412), Frazier (US 8284402) and Grann (US 6201908) references cited in Applicant's most recent information disclosure statements. Although these

Application/Control Number: 15/659,610                                     Page 3
Art Unit: 1799

references teach the state of the art regarding optical blocks that reflect light between mirror and filters to produce incident light that travels in a zigzag pattern, these references do not utilize micro-mirrors or mirrors having a radius of curvature that directs light onto even filters while reimaging light onto odd filters of a plurality of filters arranged in a row.

(*See* 2021-07-09 Notice of Allowability in prosecution of Cytek's '076 patent (Appl. No. 15/659,610), pp. 2-3.)

90.     I agree with the Examiner that there is no disclosure in the Asserted Patents of using a non-collimated focused/defocused beam within a curved-mirror relay architecture that reimages onto odd filters and directs defocused light onto even filters of a plurality of filters in a row.  (*See* '582 patent, 45:22-29 ("The light beam between the concave mirror **907** and the second image at the lens **908** may have

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

As explained in the previous response sent June 4, 2024 ("Prior Response"), Applicant respectfully disagrees that Oostman's objective lens 19 is configured to "focus fluorescent light" because the objective lens "collimate[s]" rather than focuses "the fluorescent signal from the target substance." Oostman at ¶ [0003] (emphasis added). A POSITA would have understood that collimation means generally maintaining the width of a beam for some distance, including by, for example, limiting its convergence or divergence. *E.g.*, Specification at 4:46-63. Oostman's objective lens 19's collimation—while not necessarily maintaining parallelism, given that achieving perfectly parallel rays of light is not realizable in practice—is not "focus[ing]" the fluorescent light, which instead involves converging the light. *See, e.g.*, Excerpts from Newport Catalog at 480, *available at* http://rpdata.caltech.edu/courses/aph162/2007 (attached as APPENDIX A to the Prior Response) (distinguishing between "Focusing" and "Collimating" in "Application 1" and "Application 2").

Nevertheless, in an effort to expedite prosecution, independent claims 1, 13, and 18 are each amended to recite "that the fluorescent light leaving the collecting optical element converges," which makes clear that the fluorescent light "focus[ed]" by the "collecting optical element" converges instead of being collimated. Because Oostman's objective lens 19 collimates the fluorescent light, it is not configured to "focus [the] fluorescent light ... such that the fluorescent light leaving [the objective lens] converges" as the claims require. *See* Oostman at ¶ [0003]; *supra*.

(BEC-CYTEK-00004404 ('106 patent file history (July 18, 2024 Applicant Remarks), 15.)

135.  In my opinion, Dr. Schaafsma and Dr. Houston are taking a position inconsistent with what BEC told the patent office during prosecution—i.e., that a "collimated beam" is distinguishable and substantially different from prior art that

██████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

uses a focused beam of converging light. (BEC-CYTEK-00004404 at -4753-754 ('106 patent file history (June 4, 2024 Applicant Remarks), 9-10).)

136. I also note that in granting Cytek's '076 patent, the U.S. Patent Office also recognized that Cytek's teaching of a focused/defocused beam that allows for "reimaging light onto odd filters of a plurality of filters arranged in a row" was inventive over the disclosure of the Asserted Patents. (CYTEK_0000989932 at -990378 ('076 patent file history (July 9, 2021 Notice of Allowability), 3).) This further supports my opinion that a "collimated beam" and Cytek's focused/unfocused beam are not equivalent.

> **b.    1(b): "a collimating optical element arranged to receive light from a light source, the collimating optical element configured to project a collimated beam;"**

137. In my opinion, the Accused Products do not infringe claim limitation 1(b), "a collimating optical element arranged to receive light from a light source, the collimating optical element configured to project a collimated beam." ('582 patent, cl. 1.) I incorporate my analysis in Sections VIII.B.2 and VIII.C above and Appendix A, my analysis on the claim construction of "collimating optical element," and my analysis in Section IX.A.1.a on "collimated beam," and I disagree with Dr. Schaafsma's and Dr. Houston's opinions.

138. For "**collimating optical element**," I understand that BEC has proposed a purported "plain and ordinary meaning" construction of "an optical

- 111 -

# EXHIBIT 5

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BECKMAN COULTER, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CYTEK BIOSCIENCES, INC.,<br><br>Defendant. | C.A. No. 22-945-CFC-EGT |

## REBUTTAL EXPERT REPORT OF JAMES F. LEARY, PH.D. REGARDING NON-INFRINGEMENT OF U.S. PATENT NOS. 10,330,582; 11,703,443; and 12,174,107

Dated:  1/20/2026

James F. Leary, Ph.D.

██████████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

Becton Dickinson as early as 2004 employs a linear configuration demultiplexer), IX.B (BD LSR-II System, flow cytometer manufactured and distributed by Becton Dickinson as early as 2007 employs an octagonal configuration demultiplexer), IX.D (DxP System, flow cytometer manufactured and distributed by Cytek Development, Inc. as early as 2010 employs a zig-zag configuration demultiplexer), IX.E (Luminex FlexMap 3D System, flow cytometer manufactured and distributed by Diasorin as early as 2008 employs a linear configuration demultiplexer).)

## XII.   CYTEK'S PATENTS

106.   I understand that Cytek has its own patents on full spectral flow cytometers.  For example, U.S. Patent No. 11,169,076 ("the '076 patent") by Yan et al. was published on November 9, 2021.  (CYTEK_0000990444; *see also* U.S. Patent Nos. 11,333,597 and 10,739,245.)  I understand that the specification of the '076 patent describes principles of Cytek's flow cytometry technology as embodied in the Accused Products.  *See, e.g.,* M. Yan Dep. Tr. at 215:9-12 ("Q. ████████████

██████████████████████████████████████████

█████████████████████████████").  Notably, nowhere in the Cytek '076 patent is the term "Wavelength Division Multiplexer" or "WDM" ever used.  Instead, Cytek's patent describes a demultiplexing process which is performed in a totally different way than by a WDM.

107.   My review of the file history of the '076 patent further confirms my

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

opinion that the Accused Products do not infringe any of the Asserted Patents.

108.   The application that issued as the '076 patent was filed on July 25, 2017.  (CYTEK_0000989932.)  The Examiner issued a notice of allowance on February 2, 2021, stating that the prior art references do not disclose "imaging at plurality of detectors."  (*Id.* at CYTEK_0000990302 (Feb. 2, 2021 Notice of Allowance, 2).)

109.   After the Applicant filed a supplemental Information Disclosure Statement Form ("IDS"), which I understand concerns the submission of additional references for the Patent Office's consideration, the Examiner issued a notice of allowance on July 9, 2021 for the '076 patent, specifically allowing the claims over U.S. Patent No. 9,746,412 (which I understand is the parent patent in the same patent family as the Asserted Patents, shares a common specification with the Asserted Patents, and also names the same inventor as the Asserted Patents, Yong Chen), along with two other references.  The Examiner allowed the claims of the '076 patent over the references because they did not disclose "reimaging light onto odd filters of a plurality of filters arranged in a row."  (*Id.* at CYTEK_0000990378 (July 9, 2021 Notice of Allowance, 3).)

110.   

- 49 -

███████████████████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████ shows that the Accused Product "reimag[es] light onto odd filters of a plurality of filters arranged in a row," (CYTEK_0000989932 at -378 (July 9, 2021 Notice of Allowance, 3)), just as disclosed.

111.  First, █████████████████████████████████████████

███████████████████████████████████████████████████

(CYTEK_0000000089 at -103; '076, FIG. 2B, 11:1-4 (annotated).)

112.  ██████████████████████████████████████████████

█████████████████████████

██████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

(email from Cytek's CTO stating ████████████████████████████

████████████████████████████████████████████████

(emphasis added)).)

165.    This is further evidenced by Cytek's own patents.    For example, nowhere does the Cytek '076 patent claim or describe a WDM device. Indeed, the specification of the patent repeatedly describes a "wavelength de-multiplexing system" and light that is "de-multiplexed" or "wavelength demultiplexed" into detector channels.    (*See* '076 patent at 4:9-10 ("The detection module 100 is a wavelength *de-multiplexing* system." (emphasis added)); *see also id.* at 12:31-33 ("Accordingly, different wavelengths are *de-multiplexed* by the plurality of detectors in each of the first detection module 714 and second detection module 715." (emphasis added)).)

166.    Cytek's CEO and CTO also repeatedly testified that the Accused Products do not contain a "wavelength division multiplexer," but instead, implement de-multiplexing technology.    W. Jiang Dep. Tr. at 68:17-21 ("Q. ████████████

████████████████████████████████████████████████

██████    ██████    ████████    ██████████ );  *id.*at  63:5-13  ("Q. ████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

342.    Third, the beam in the Accused Products and the claimed "collimated beam" do not achieve substantially the same result.  To the contrary, the converging and diverging beam allows the Accused Products to more efficiently perform full spectral flow cytometry.  The converging and diverging optics of the Accused Products is not collimated optics, and is fundamental to the design of Cytek's spectral cytometers because it efficiently minimizes aberrations such that the full fluorescence spectrum can be captured by the higher number of detector channels so that subsequent unmixing algorithm software can resolve overlapping spectra from two or more fluorophores based on each dye's unique spectral signature.  Hence, any trade-off incident to color separation between the use of a "collimated beam"— which the specification of the Asserted Patents says "*can only be accomplished economically with collimated light beam*" ('582 patent, 44:25-26 (emphasis added)) versus the aberration-limiting, non-collimated focused/defocused beam within the Accused Products clearly lands in favor of Cytek's design, which is specific to the needs of Cytek's spectral flow cytometers.

343.    Therefore, in my opinion, the beam in Cytek's Accused Products and the claimed "collimated beam" do not perform substantially the same function, in substantially the same way, to achieve substantially the same result.

344.    Again, the Patent Office allowing the claims of Cytek '076 patent over the disclosures in the Asserted Patents and other prior art because they did not

██████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement disclose "reimaging light onto odd filters of a plurality of filters arranged in a row" (CYTEK_0000989932 at -990378 ('076 patent file history (July 9, 2021 Notice of Allowability), 3)), further supports my opinion.

### b.    1(b): "a collimating optical element arranged to receive light from a light source, the collimating optical element configured to project a collimated beam;"

345.    In my opinion, limitation 1(b), "a collimating optical element arranged to receive light from a light source, the collimating optical element configured to project a collimated beam" is not present in the Accused Products.

346.    Drs. Houston and Schaafsma opine that the Accused Products meet this claim limitation by identifying two separate components in the Accused Products as the claimed "collimating optical element": the "collimating lens" and, in the alternative, odd-numbered "concave mirrors." (Houston Rep., ¶¶417-427; *see also* Schaafsma Rep., ¶¶196-197.) I disagree with either of Drs. Houston's and Schaafsma's mappings, and reference my opinions above on the claim construction of the term "collimating optical element" and my opinions above concerning "collimated beam." I further explain below why this limitation is not present in the Accused Products.

347.    For the term "collimating optical element," as I noted in Section VIII.B.1 above, I understand that Beckman has proposed a purported "plain and ordinary meaning" construction of "an optical element, such as a lens, mirror, or

███████████████████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

16, and 20.

499.    ██████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████



FIG. 1

500.    ████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████ I reserve the

right to respond to any opinion should Dr. Houston be permitted to later provide a

new opinion.

501.    ████████████████████████████████████████

███ ████ ████ █████ █████ ████ ███ ████ █████ █ ██████ █████ █████



James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

502. Based on the above facts, it is my opinion that Dr. Jiang developed a reasonable belief that Cytek did not infringe claims 1, 3, 14, or 16 of the '412 patent.

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

For example, I agree with Dr. Jiang that claim 3 is not infringed. ████████████

████████████████, claim 1, which recites a "collimating optical element" is also not infringed, consistent with my opinions above on "collimating optical element." (CYTEK_0000988641 at –641-642.) ████████████████

████████████████████████ and instead concludes summarily that they are "not correct" based on her review of Dr. Schaafsma's report. (Houston Rep., ¶485 (citing Schaafsma Rep., ¶¶94-97, 188-192).)  But Dr. Schaafsma also did not analyze the specific non-infringement positions articulated in the ████████████████. (*See* Schaafsma Rep., ¶¶94-97 (merely providing an overview of the '412 patent); *id.* at ¶¶188-192 (citing two non-infringement positions from the '582 chart, and concluding without explanation that ████████████████████████

████████.)[25]  In my opinion, ████████████████████

████████████████████████████

████████████████████.  I further understand that, contrary to Dr. Houston's suggestion, "consult[ing] an[] attorney" is not required to develop a reasonable belief in non-infringement. (*See* Houston Rep., ¶485.)  In any event, I understand that ████████████████████

---

[25] I address Dr. Schaafsma's opinions regarding Dr. Jiang's '582 claim chart below.

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

503.    I have also reviewed Dr. Jiang's deposition testimony, which reinforces my opinion that Cytek had a reasonable belief in invalidity and non-infringement of the '412 patent.    (W. Jiang Dep. Tr., 181:14-212:9 (discussing CYTEK_0000988641).)    As Dr. Jiang explains, the '412 patent is directed to a conventional flow cytometer, while Cytek's products use full spectral flow cytometry.    (W. Jiang Dep. Tr., 184:9-11 ("[A]fter reviewing [the '412 patent], it's so obvious, so different.  And this is a conventional flow cytometer while Cytek's is full spectral profile technology"); *see also id.* at 210:18-23 ("[I]t's so clear Cytek does not infringe on Yong Chen's patents because . . . Yong Chen's patents [are] about conventional flow cytometer, and Cytek is about [full] spectral.  Those are two very different concepts in terms of earlier explaining the whole architecture, whole data analysis algorithms.").)    As explained in this report, I agree that conventional flow cytometry is fundamentally different from full spectral flow cytometry.

504.    Dr. Houston asserts that "Cytek's spectral cytometer is predicated on the use of a WDM" and "[t]herefore, the use of spectral technology alone does not render Cytek's products non-infringing with respect to the [']412 Patent or the Asserted Patents." (Houston Rep., ¶485.)  I disagree, because as I explain above, the Accused Products do *not* use a WDM as claimed in the Asserted Patents.

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

2017, before even the parent '412 patent issued on August 29, 2017, and well before the '582 patent issued. And as explained above, even if Cytek knew that Beckman owned patents allegedly cover the CytoFLEX or the XTG product, knowledge of patents alone is insufficient to establish willful infringement.

514. Further, in my experience, all of Cytek's activities described in this section are common practice in the flow cytometry industry—it is normal and expected for competitors to monitor and analyze each others' products.

515. In fact, the evidence shows that Beckman and its parent company Danaher Corporation were well-aware of— ███████████████ — Cytek's technology. (*See* Cytek's Second Suppl. Resp. to Interrog. No. 11 (Oct. 22, 2025).) ███████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

████████████I am informed that neither Danaher nor Beckman ever shared any concerns that Aurora infringed any claim in any Asserted Patent or related patent or application, even after the '582 patent issued in June 2019, until the June 2024 letter mentioned above.

516. ████████████████████████████████████████

- 312 -

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

informed that at no point in time did Danaher or Beckman allege infringement of its then-issued '412 and '582 patents.

517. ██████████████████████████████████████████

██████████████ and their failure to allege infringement during those times—confirm that Cytek had no reason to believe it was infringing any patents owned by Beckman. ██████████████████████████████████████

██████████████████████████████

518. Turning back to Dr. Houston's opinions, Dr. Houston describes Dr. Ming Yan's former employment at Becton Dickinson and the ensuing trade secret litigation. (Houston Rep., ¶¶490-491.) I understand that case is separate from and has nothing to do with the instant litigation, and is certainly not relevant to willful infringement. Dr. Houston relies on this trade secret litigation as evidence that "Dr. Yan and Cytek had knowledge and awareness of Xitogen, the company that originally developed the claimed inventions, Dr. Chen, and Dr. Chen's work on the claimed inventions." (Houston Rep., ¶491.)

519. Dr. Houston then provides a bulleted list of documents allegedly showing that "Cytek frequently and repeatedly[] studied, examined, and analyzed the CytoFLEX and its performance throughout its development of the Accused Products and compared and analyzed the structure, function, operation, features, benefits, and performance of the CytoFLEX to the Accused Products." (Houston

- 313 -

# EXHIBIT 6

Danaher is Comprised of Leading Science and Technology Companies



🔍

Our Businesses

# Solving today's critical challenges



# Danaher is comprised of a set of businesses across biotechnology,

6/25/26, 10:08 AM
Case 1:24-cv-00945-CFC    Document 399-1 of Leading Science and Technology Companies Page 70 of 147 PageID #:
36512
Danaher Is Comprised of Leading Science and Technology Companies.

diagnostics, and life sciences united
by a shared commitment to innovate
for tangible impact.

## The Danaher ecosystem

The Danaher ecosystem — made up of more than 15 businesses with
leadership positions in their respective end markets — is dedicated to
advancing continuous improvement and accelerating innovation to make a
meaningful impact. What differentiates Danaher is not only the strength of our
individual businesses, but how they work together—connected by a shared
operating system and a commitment to continuous improvement.

Each business is backed by Danaher and its resources, including the Danaher
Business System, which empowers our businesses to make a tangible
difference in lives around the world. We take on the most pressing challenges
and leverage our expertise in science and technology to deliver
transformative innovations.

This ecosystem allows us to orchestrate connected science across entire
workflows—bringing together the right technologies, expertise, and scale to
solve complex challenges faster and with greater certainty.

Case 1:24-cv-00945-CFC    Document 399-1    Filed 07/24/26    Page 71 of 147 PageID #: 36513



# Driving change around the world

With a global presence and a commitment to excellence, we are dedicated to making an impact in every corner of the world.

# ~$25B

6/25/26, 10:08 AM
Case 1:24-cv-00945-CFC     Document 399-1     Filed 07/24/26     Page 72 of 147 PageID #:
Danaher Is Comprised of Leading Science and Technology Companies
36514

total revenue in 2025

# >15

businesses across science and technology

# 60K

associates



# Biotechnology

Our biotechnology businesses deliver researchers and biopharmaceutical companies the expertise, tools, and services they need to develop and commercialize life-changing therapeutics. We support our customers from

Case 1:24-cv-00945-CFC    Document 399-1    Filed 07/24/26    Page 73 of 147 PageID #: 36515

discovery to delivery as they undertake life-saving activities ranging from fundamental biological research to developing and manufacturing innovative vaccines, biologic drugs, novel cell and gene therapies, and new technologies such as mRNA. As part of the Danaher ecosystem, these businesses benefit from shared capabilities and cross company collaboration—continuously accelerating ideas from discovery to real world impact.



**Learn about biotechnology  →**

# Diagnostics

We're generating proprietary insights into disease areas and innovation trends to develop inventive solutions of high clinical impact. Operating in both established and emerging markets, we provide our expertise to healthcare practitioners, researchers, and other leaders in the field, enabling them to save and improve lives. Our businesses come together for unparalleled breadth and depth of offerings, resulting in high-quality and accurate diagnostic confidence for a wide range of critical health conditions. Working together, our diagnostics businesses combine speed, scale and DBS-driven rigor to support faster, more confident decisions when they matter most.









6/25/26, 10:08 AM    Case 1:24-cv-00945-CFC    Document 399-1    Filed 07/24/26    Page 74 of 147 PageID #:
Danaher Is Comprised of Leading Science and Technology Companies
36516







**Learn about diagnostics  →**

# Life Sciences

Our life sciences businesses are dedicated to accelerating the discovery, development, and delivery of solutions that safeguard and improve human health. We bridge the gap between research and practical application, enabling the development of revolutionary innovations such as biopharmaceuticals and enhanced synthetic biologics—connecting science across disciplines and workflows, at global scale, to help people live longer, healthier lives.











Case 1:24-cv-00945-CFC    Document 399-1    Filed 07/24/26    Page 75 of 147 PageID #: 36517











**Learn about life sciences →**

---

# Explore all businesses

When the challenge is complex, the right answer rarely comes from a single company. Every Danaher business brings distinct strengths—together, they form a connected portfolio built to solve the hardest problems in science and healthcare.

Looking for a specific business or want to see the whole portfolio? Our business directory organizes all of Danaher's businesses in one place.

# See all businesses →

# EXHIBIT 7

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BECKMAN COULTER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-945 (CFC) (EGT) |
| | ) | |
| CYTEK BIOSCIENCES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPENING EXPERT REPORT OF BERNHARD H. WEIGL, PH.D.</u>

Dated: December 19, 2025

Respectfully submitted,

_____

Bernhard H. Weigl, Ph.D., MSc

Brannen Dep Tr. 37:14-24, 43:17-46:8; Del Castillo Dep. Tr. 51:10-53:6; Koksch Dep. Tr. 187:22-189:5.) I understand that Beckman Coulter takes the position that CytoFLEX practices the '582, '443, and '107 patents.

80. I have reviewed the deposition testimony of named inventor Yong Chen and note that he did not have any involvement in the prosecution of the '443 and '107 patents, as Dr. Chen had already left Beckman Coulter. (Chen Rough Dep. Tr. 39:22-40:4.) This means that the additional limitation of "substantially full spectrum of visible light" was added by Beckman Coulter's patent attorneys without Dr. Chen's knowledge prior to the September 3, 2024 filing of the patent application that became the '107 patent.

81. Additionally, a decade after the asserted April 2012 priority date of the Asserted Claims, Beckman Coulter filed an unrelated patent application that attempts to disclose a full spectral flow cytometer. *See* U.S. Patent Publication No. 2025/0198904 at Para. [0043] ("At present, the flow cytometry is developing from the conventional multi-color fluorescence channel to the high-channel fluorescence full spectrum."). Beckman Coulter's patent application appears to claim priority to a foreign filing date of a Chinese patent application on March 23, 2022. Similarly, Beckman Coulter filed another patent application on October 17, 2023 which also mentions newly filed patents directed to "spectral flow cytometry" and "unmixing," in contrast to conventional flow cytometry using "compensation"/"spillover," long

Lopriore Dep. Tr. 109:9-13; Goff Dep. Tr. 77:9-13; Brannen Dep Tr. 37:14-24, 43:17-46:8; Del Castillo Dep. Tr. 51:10-53:6; Koksch Dep. Tr. 187:22-189:5.)  It is further, in my opinion, demonstrated by the fact that it took Beckman Coulter over a decade to develop and launch the mosaic module.  The long development timeline Beckman Coulter undertook further supports the conclusion that the technological implementation of the detector modules in a spectral flow cytometer was not enabled by the specification of the Asserted Patents

87.    Moreover, I understand that on Feb. 1, 2023, Beckman Coulter filed U.S. Patent Application No. 18/847,394 entitled "Light Detecting System and Light Detecting Method for Flow Cytometer."  (*See* U.S. Patent Application Publication No. 2025/0198904 to Jianhua Wang ("Wang").)  In this 2023 patent application Beckman Coulter acknowledges the distinction between conventional flow cytometry and conventional flow cytometry:

> [0043]    At present, the flow cytometry is developing from the conventional multi-color fluorescence channel to the high-channel fluorescence full spectrum. With the fluorescence full spectrum, more fluorescence information is acquired and more (*up to 40 or more or more channels* of) fluorescein and other information are analyzed at the same time, so as to acquire more sample expression information, thereby achieving a sensitive and accurate test result. *In order to achieve this objective, high-density channel acquisition of the fluorescence spectrum is required to reflect a spectral feature of the fluorescence.*

(Wang, [0043].)

88.    Beckman Coulter's 2023 patent filing was directed to a "light

65

██████████████████████████████

==detection system 100 for a flow cytometer" that "includes a beam separating device **102** and multiple wavelength division multiplexing devices **104.**== (*Id.*, [0031].) The "beam splitting device 102" and multiple wavelength division multiplexing devices 104" are described and depicted in FIG. 2: "As an example, the multiple first beams may be transmitted in a layered layout in a vertical direction (for example, a z-axis direction shown in FIG. **2** ), so that, for example, the size of the wavelength division multiplexing device **104** can be further reduced." (*Id.*, [0046].)



Figure 2

(*Id.*, [0043].)

89.    ████████████████████████████

████████████████████████████████████

████████████████████████████████████











90.    The fact that Beckman Coulter has filed a patent application directed to its recently launch mosaic detector module indicates that Beckman Coulter believes the mosaic to be new and not previously disclosed or enabled by Yong Chen's Asserted Patents from a decade earlier. I agree. The Asserted Patents here are solely directed to one-dye-one-detector conventional flow cytometry and provides no disclosures, teachings, or guidance that would have enabled a POSA to create and design a spectral WDM that would be suitable for use within a spectral flow cytometer. In my opinion, the one-detector-one-dye conventional flow cytometer and WDM disclosures in the Asserted Patents would not have enabled a

72

POSA to make and use a "WDM capable of detecting a substantially full spectrum of visible light" to the extent the phrase could be interpreted as going being a one-detector-one-dye conventional flow cytometer detector configuration to a non-conventional all-detectors-all-dyes configuration of spectral flow cytometry.

91.     To convert the conventional flow cytometer WDM disclosed in the Asserted Patent would require substantial research, development, and trial-and-error testing considering the nascent state of spectral flow cytometry before 2014.  At that time, only Sony had already launched a commercial flow cytometer, based on a diffraction grating for separating the fluorescent signal and using PMTs for detection channels, and publications in the art by researchers at Purdue University had also used a diffraction grating.  There were no teachings or guidance within the art that I am aware of prior to the priority date of the Asserted Patents (i.e., prior to 2014), directed towards how to make and use a "flow cytometer . . . wherein the WDM is capable of detecting a substantially full spectrum of visible light" using the recited "zig-zag" WDM configuration required by claims 9 and 29 without undue experimentation.  Accordingly, it is my opinion that claims 9 and 29 are not enabled. I reached my conclusion based on my evaluation of the *Wands* Factors, which I apply below.

92.     **Breadth of the Claims (*Wands* Factor No. 1)**:  The "flow cytometer . . . wherein the WDM is capable of detecting a substantially full spectrum of visible

73

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| BECKMAN COULTER, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>CYTEK BIOSCIENCES, INC.,<br><br>        Defendant. | C.A. No. 24-cv-945 (CFC) (EGT)<br><br>█████████████ |

**CYTEK'S OPPOSITION TO BECKMAN COULTER'S MOTION *IN LIMINE* NO. 3 TO PRECLUDE EVIDENCE, TESTIMONY, OR ARGUMENT THAT THE TIMING OF THIS LAWSUIT EVIDENCES <u>NON-INFRINGEMENT OR IMPACTS DAMAGES</u>**

MIL 3 should be denied because this lawsuit's timing is highly relevant to numerous issues in this case, and this relevance outweighs any purported risk of prejudice or confusion.

This lawsuit's timing and BEC's yearslong failure to allege infringement are highly probative and relevant to indirect infringement and willfulness, each of which rests on Cytek's subjective intent. 35 U.S.C. §§ 271(b), (c), (f); *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1286 (Fed. Cir. 2020); *Gustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510-11 (Fed. Cir. 1990) (willfulness is "by definition a question of the actor's *intent*, the answer to which must be inferred from all the circumstances."); *Natera, Inc. v. ArcherDX, Inc.*, 2023 WL 12139680, at *2 (D. Del. May 3, 2023) (denying MIL to preclude evidence of delay).[1]

BEC knew of the accused Aurora products 7 years before filing suit █████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████  ██████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████  ██████████████████████████████████████████

---

[1] BEC's citations to *Sprint*, *Kendon*, *Exmark*, and *Elbit* are each distinguishable because intent and/or willfulness were not at issue. *Sprint*, No. 18-00361-RGA, D.I. 440, 1; *Kendon*, 2024 WL 5275549, at *3; *Exmark*, 879 F.3d at 1352; *Elbit*, 2017 WL 11658860, at *2.

1

███████████████████████████████████████████████

███████████████ The asserted '582 patent issued in June 2019 (D.I. 1-1, Ex. 1 at 1), but neither BEC nor Danaher notified Cytek of alleged infringement. ██

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████ The asserted '443 patent issued in July 2023 (D.I. 1-1, Ex. 2 at 1), but BEC remained silent until June 2024. (Ex. H (CYTEK_0000909015).)

BEC's concern about the jury "focusing on Beckman's conduct" instead of "*Cytek's* knowledge" (MIL 3 at 2 (quotation altered)) is misplaced because BEC's conduct is probative of Cytek's knowledge and intent. The jury could find that BEC's yearslong conduct, ██████████████████████████, and silence regarding potential infringement all reinforced Cytek's reasonable belief of non-infringement, which negates intent for indirect and willful infringement. Indeed, Cytek would have no reason to believe it was infringing when BEC never raised infringement in any of the parties' repeated discussions.

The lawsuit's timing is also relevant to invalidity. To assess written description, courts routinely consider whether a plaintiff waited to file continuation claims and initiate litigation until after learning of an allegedly infringing product.

2

*E.g.*, *Synthes USA, LLC v. Spinal Kinetics, Inc.*, 734 F.3d 1332, 1341 (Fed. Cir. 2013) (substantial evidence for lack of written description included that "Synthes amended the application that became the [asserted] patent to add the concept of 'openings' in claim 29 almost five years after the application was originally filed, and after SK's M6 devices were already on the market."); *Quake v. Lo*, 928 F.3d 1365, 1373 (Fed. Cir. 2019) (discussing timing of amended claims in written description analysis); *see also Columbia Ins. Co. v. Simpson Strong-Tie Co. Inc.*, 2023 WL 2733427, at *3 (Fed. Cir. Mar. 31, 2023) (because "claim amendments and continuation applications" can be filed "long after an initial application is filed," written description "ensure[s] that the patent owner may only exclude others from what they had actually invented **as of the priority date**").  Here, BEC filed some asserted claims 12 years after its claimed priority date, and after Cytek launched the Aurora, but without specification support.

BEC articulates no prejudice or confusion that outweighs the probative weight, and its other arguments fail.  *LecTec* allowed "evidence of when Plaintiff filed suit" and "when relevant events occurred[.]"  2011 WL 13086026, at *10.  *Touchstream* too "[did] not prevent the Defendant from offering evidence of any relevant dates."  2:23-cv-00059-JRG-RSP, D.I. 275 at 3.  Cytek will not argue that the lawsuit's timing bars BEC's infringement or damages theories *per se*.  *SCA Hygiene*, 580 U.S. 328, 346.  The Court should deny BEC's MIL 3.

3

Dated: July 9, 2026

Respectfully submitted,

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

By: */s/ Jeremy A. Tigan*
    Karen Jacobs (#2881)
    Jeremy A. Tigan (#5239)
    Cameron P. Clark (#6647)
    1201 North Market Street
    P.O. Box 1347
    Wilmington, DE 19899
    (302) 658-9200
    kjacobs@morrisnichols.com
    jtigan@morrisnichols.com
    cclark@morrisnichols.com

Adam Pivovar
Dustin M. Knight
David Yun
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
(202) 842-7800
apivovar@cooley.com
dknight@cooley.com
dyun@cooley.com

Elizabeth M. Flanagan (#5891)
COOLEY LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402
bflanagan@cooley.com

Reuben Chen
HanByul Chang
Juan Pablo Gonzalez
Alexandra Leeper
COOLEY LLP
3175 Hanover Street
Pal Alto, CA 94304
(650) 843-5000
rchen@cooley.com
hanbyul.chang@cooley.com
jgonzalez@cooley.com
aleeper@cooley.com

4

# EXHIBIT A

HOME › NEWS ›

## CYTEK BIOSCIENCES DEBUTS NEW ADVANCED FLOW CYTOMETRY SYSTEM

June 7, 2017 - 02:22PM

## Cytek Biosciences Debuts New Advanced Flow Cytometry System

### Aurora Brings Next-Level Performance, Sensitivity, Flexibility, and Affordability to Laboratories Everywhere

**FREMONT, Calif., June 7, 2017** – More colors, greater flexibility, higher sensitivity, better affordability. **Cytek Biosciences Inc.** today announced the launch of its new Aurora advanced flow cytometry system, which features a unique combination of patent-pending, innovative technologies that take flow cytometry to the next level of performance and flexibility.

Aurora offers capabilities that go beyond flow cytometry systems that come with a much higher price tag, making it the embodiment of Cytek's mission to make massively multiparametric flow cytometry accessible to a larger number of researchers.

Cytek has been on the frontlines of the industry for decades, providing services and customization to keep cytometry systems tuned and running at high performance levels.  The introduction of Aurora combines the company's vast pool of technical expertise with its profound market understanding to mark its full circle evolution from a service provider to a solution provider.  "Cytek has evolved to address an unmet need," noted Dr. Wenbin Jiang, CEO of Cytek Biosciences. "Years of experience have revealed to us that the cytometry community has lacked a user-friendly and truly affordable hyper-parametric flow cytometer. Our technology allows us to provide an instrument that offers outstanding performance and unparalleled reagent flexibility when it comes to dye selection and multicolor panel design. With Aurora, more labs will have the ability to obtain deeper biological insights from a single sample. This will have a significant impact on research and clinical application fields such as immunology, oncology and systems biology."

Aurora enables a 20+ color capability, using three excitation lasers and 50 channels. An innovative system design, which includes excitation optics and compact semiconductor detector modules with high quantum efficiency, allows for the implementation of more detection channels per laser than conventional flow cytometry systems. Depending on the laser excitation wavelength, this permits

BEC-CYTEK-00346220

detection of any fluorescence emission in the 400-900nm range without having to change optical filters. Aurora's optical design and unmixing algorithm combine to enable the use of a wide array of dyes, including those with highly overlapping spectra – a feat not possible using conventional cytometry.

Aurora will be demonstrated at the industry's premier flow cytometry conference, CYTO 2017, in Boston from June 10-14 at booth #86. Aurora joins Cytek's existing lineup of flow cytometry solutions, all of which are backed by Cytek's comprehensive service plan offerings.

Please visit **www.cytekbio.com** for more information.

## About Cytek Biosciences, Inc.

Cytek is a leading flow cytometry solution provider and provides compact, affordable instruments with high multiplexing capability and a wide range of services to support researchers and clinicians. Cytek Biosciences Inc. is the outcome of a merger between Cytek Development Inc., a leading pioneer in flow cytometry, and Cytoville Inc., a venture-capital-backed business focusing on advanced bio-medical instrument technology development. The company's headquarters are in Fremont, California with branch offices and distribution channels across the globe. More information about the company and its products is available at **www.cytekbio.com**. To learn more, follow Cytek on **LinkedIn**, **Twitter** and **Facebook**.

### Join Our Newsletter

Subscribe and stay up-to-date with the latest news and resources!

Email Address

BEC-CYTEK-00346221

# EXHIBIT B

Page 1

UNITED STATES DISTRICT COURT

IN THE DISTRICT OF DELAWARE


BECKMAN COULTER, INC.,                    )
                                          )
                Plaintiff,                )
                                          )
        against                           )
                                          )C.A. No.
CYTEK BIOSCIENCES, INC.,                  )1:24-cv-00945-
                                          )CFC-EGT
                Defendant.                )
----------------------------------------)


                    - - -


███████████████████████████████████████


                    - - -


            November 7, 2025 - Friday


                  9:06 a.m. CET

                    - - -

        video-recorded in-person deposition


        taken at:

        WILMER HALE

        Servcorp - Bastion Tower, Pl, du Champ de Mars 5

        1050 Bruxelles, Belgium


        MAGNA JOB No. 1425571

        Taken remotely before Sherry Yan, CSR 14442, RPR



Page 2

A P P E A R A N C E S

(in person)

Attorneys for Defendant:
by:  Betsy Flanagan, Esq.
bflanagan@cooley.com
COOLEY LLP
30 South Ninth Street
7th Floor
Minneapolis, MN  55402
T  +1 312 881 6383
M  +1 612 723 2854


Attorneys for Plaintiff:
by Omar Khan, Esq.
Omar.khan@wilmerhale.com
WILMER HALE
7 World Trade Center
New York, New York 10007



     Also present:
     Pat Kirk, Videographer

Page 3

I N D E X

WITNESS          EXAMINATION          PAGE
MARIO KOKSCH          by Ms. Flanagan          8, 261
              by Mr. Khan          247
          - - -

E X H I B I T S

KOKSCH

| Exhibit | DESCRIPTION | Page |
|---|---|---|
| 58 | Bates No. BEC-CYTEK-00341863 | |
| | -00341865 | 72 |
| 59 | Bates No. BEC-CYTEK-00341868 | |
| | -00341902 | 84 |
| 60 | Bates No. BEC-CYTEK-00341944 | |
| | -00341947 | 100 |
| 61 | Bates No. BEC-CYTEK-00308444 | |
| | -00308455 | 108 |
| 62 | Bates No. BEC-CYTEK-00308600 | 119 |
| 63 | Bates No. BEC-CYTEK-00308601 | |
| | -00308618 | 121 |
| 64 | Bates No. BEC-CYTEK-00308294 | 134 |
| 65 | Bates No. BEC-CYTEK-00308296 through | |
| | -00308312 | 135 |
| 66 | Bates No. BEC-CYTEK-00308286 | 136 |
| 67 | Bates No. BEC-CYTEK-00341927 | |
| | -00341933 | 150 |

Page 4

(cont...)

KOKSCH

| Exhibit | DESCRIPTION | Page |
|---|---|---|
| 68 | Bates No. BEC-CYTEK-00307741 | |
| | -00307747 | 153 |
| 69 | Bates No. BEC-CYTEK-00303746 | |
| | -00303747 | 160 |
| 70 | Bates No. BEC-CYTEK-00303748 | |
| | -00303779 | 160 |
| 71 | Bates No. BEC-CYTEK-00006833 | |
| | -00006921 | 170 |
| 72 | Bates No. BEC-CYTEK-00006730 | |
| | -00006800 | 172 |
| 73 | Bates No. BEC-CYTEK-00006922 | |
| | -00007019 | 173 |
| 74 | Bates No. BEC-CYTEK-00006808 | |
| | -00006830 | 174 |
| 75 | Bates No. BEC-CYTEK-00006801 | |
| | -00006807 | 176 |
| 76 | Bates No. BEC-CYTEK-00316374 | |
| | -00316377 | 182 |
| 77 | Bates No. BEC-CYTEK-00338104 | 186 |
| 78 | Bates No. BEC-CYTEK-00325963 | |
| | -00325967 | 188 |

Page 5

(cont...)

KOKSCH

| Exhibit | DESCRIPTION | Page |
|---|---|---|
| 79 | Bates No. BEC-CYTEK-0032916 | |
| | -0032921 | 194 |
| 80 | Bates No. CYTEK_0000882748 | |
| | -0000882749 | 198 |
| 81 | Bates No. BEC-CYTEK-00169076 | |
| | -00169078 | 201 |
| 82 | Bates No. BEC-CYTEK-00091937 | |
| | -00091952 | 202 |
| 83 | Bates No. BEC-CYTEK-00342769 | |
| | -00342772 | 208 |
| 84 | Bates No. BEC-CYTEK-00290387 | 211 |
| 85 | Bates No. BEC-CYTEK-00290446 | 212 |
| 86 | Bates No. BEC-CYTEK-00290447 | |
| | -00290454 | 215 |
| 87 | Bates No. BEC-CYTEK-00288552 | 221 |
| 88 | Bates No. BEC-CYTEK-00288553 | |
| | -00288558 | 222 |
| 89 | Bates No. BEC-CYTEK-00285318 | |
| | -00285319 | 225 |
| 90 | "BECLS Preliminary M&A Funnel" | 226 |
| 91 | Bates No. BEC-CYTEK-00283887 | |
| | -00233890 | 231 |



Page 6

(cont...)
KOKSCH

| Exhibit | DESCRIPTION | Page |
|---|---|---|
| 92 | Bates No. BEC-CYTEK-00283927 | 233 |
| 93 | Bates No. BEC-CYTEK-00041387 -00041400 | 235 |
| 94 | Bates No. BEC-CYTEK-00341679 -00341680 | 236 |
| 95 | Bates No. BEC-CYTEK-00341741 -00341748 | 238 |
| 96 | Bates No. BEC-CYTEK-00274313 -00274315 | 240 |
| 97 | Bates number BEC CYTEK 002744395 | 241 |

Page 7

PROCEEDING

(9:06 a.m. CET)

//

//

VIDEOGRAPHER:  We are now starting Media 1 in the deposition of Mario Koksch in the matter of Beckman Coulter, Inc. versus Cytek Biosciences, Inc.

The date today is the 7th of November, 2025, and the time on the video monitor is 9:06 a.m.  This deposition is taking place at Bastion Tower in Brussels in Belgium.  The videographer is Pat Kirk.  The court reporter today is Sherry Yan.  Both appear on behalf on Magna Legal Services in the U.S.

Will counsel please identify themselves on the record, stating whom they represent.

MS. FLANAGAN:  Betsy Flanagan with Cooley LLP on behalf of Cytek Biosciences.

MR. KHAN:  Omar Khan with Wilmer Hale for the Plaintiff.

VIDEOGRAPHER:  Thank you.

Would the court reporter please now swear in the witness.

//

//

WHEREUPON,

Page 8

MARIO KOKSCH, having been first duly sworn/affirmed, was examined and testified as follows:

EXAMINATION

BY MS. FLANAGAN:

Q.  Mr. Koksch, who is your employer today?

A.  My employer is Beckman Coulter Life Sciences.

Q.  Is that the same thing as Beckman Coulter, Incorporated?

MR. KHAN:  Objection.

THE WITNESS:  Beckman Coulter, Incorporated is the global legal entity.

Q.  BY MS. FLANAGAN:  Do you receive your paychecks from Beckman Coulter, Incorporated?

A.  I receive my paychecks from the German entity called Beckman Coulter GmbH.

Q.  What is your current title?

A.  My current title is Vice President Global Marketing and Medical & Scientific Affairs.

Q.  How long have you worked for Beckman Coulter?

MR. KHAN:  Objection.

THE WITNESS:  I started working for Beckman Coulter on September 1st, 2000.

Q.  BY MS. FLANAGAN:  When did you starts working

Page 9

with Beckman Coulter's Flow Cytometry Products Division?

A.  Can you help me clarify the question, if this relates to my employment with Beckman Coulter or the time before as a customer?

Q.  In your role as an employee at Beckman Coulter, when did you first start working with their flow cytometry products in any capacity?

A.  I started with the flow products of Beckman Coulter from day 1 on.

Q.  So you had been working on flow cytometry products with Beckman Coulter since 2000; correct?

A.  Yes, that's correct.

Q.  At some point did you take on responsibility for the Beckman Coulter Flow Cytometry Business Unit?

A.  This is a question or a statement?

Q.  That's a question.

At some point did you?

A.  I started working in the Business Unit in July 2010.

Q.  Was there a Flow Cytometry Business Unit at Beckman Coulter when you started in 2000?

A.  Yes, there had been Business Unit.

Q.  In 2012, you became the Vice President & General Manager of Beckman Coulter's Flow Cytometry Business Unit; correct?





Page 166



Page 167

Page 168

Q. BY MS. FLANAGAN: Does Beckman Coulter have any knowledge of when Cytek first became aware of either the '582, '443 or '107 Patents?

MR. KHAN: Objection.

THE WITNESS: These three patents had been publicly available after 2019; so they have been in the public domain, which means as part of normal business diligence, associates of Cytek should've been able to find the patents.

So I don't know how Cytek is going about staying up to date with the patent landscape, so I

Page 169

cannot talk about who found what that one date. That would be a question for Cytek associates, not for me.

Q. BY MS. FLANAGAN: Okay. So you don't know when Cytek may have found either the '582, '443 or '107 Patents; right?

MR. KHAN: Objection.

THE WITNESS: As I stated before, that would be a good question for Cytek leaders, not for me.

Q. BY MS. FLANAGAN: And not for Beckman Coulter either; right?

MR. KHAN: Objection -- actually, objection and mischaracterizes testimony. Asked and answered.

THE WITNESS: I don't know when Cytek associates have seen these Asserted Patents the first time.

Q. BY MS. FLANAGAN: When did Beckman Coulter first become aware of Cytek's Aurora product?

MR. KHAN: Objection.

THE WITNESS: To the best of my memory, Cytek launched the Aurora in June 2017 and have put the information on the website, and this was when we learned about the new instrument and details of the technology.

Q. BY MS. FLANAGAN: Does Beckman Coulter perform competitive intelligence on Cytek in the ordinary course of business like following its website and its

MAGNA
LEGAL SERVICES

Page 170

announcements, staying up to date on things?

A. As I mentioned many times before, the flow community is a small community. If one company launches a new system, it just take a few days, and then everybody knows about it. So it doesn't take a specific action or a party to find out what is on somebody else's website. So that's what we do as normal course of business.

Q. Is it fair to say that any announcements Cytek would've made about product launches or product development is something that Beckman Coulter would have found out about within a couple of days of such public-facing announcements?

MR. KHAN: Objection.

THE WITNESS: As through our own activities or our customers would inform us about this. It's a small community.



Page 266

MR. KHAN:  Correct.

VIDEOGRAPHER:  And you concur with this?

MS. FLANAGAN:  I believe I also have a standing order.

I do want a rough transcript.  I do want a video.

COURT REPORTER:  And rough draft for you?

MR. KAHN:  Yes, please.

VIDEOGRAPHER:  We are now going off the record at 18:02.  End of Media 4.

(Whereupon the deposition concluded at 18:02 CET.)

Page 267

CERTIFICATE OF DEPONENT

I, MARIO KOKSCH, hereby certify that I have read the foregoing pages of my deposition of testimony taken in these proceedings on Friday, November 7, 2025 and, with the exception of the changes listed on the next page and/or corrections, if any, find them to be a true and accurate transcription thereof.

Signed:  ........................
Name:      MARIO KOKSCH
Date:  ........................

Page 268

ERRATA SHEET

Case Name:  BECKMAN COULTER, INC. against CYTEK BIOSCIENCES, INC.

Witness:   MARIO KOKSCH

Date:      November 7, 2025

Page/Line  From           To

____/____  _____

____/____  _____

____/____  _____

____/____  _____

____/____  _____

____/____  _____

____/____  _____

____/____  _____

____/____  _____

____/____  _____

____/____  _____

____/____  _____

____/____  _____

____/____  _____

____/____  _____

Subscribed and sworn to before me this _____ day of _____, 2025.

_____
   MARIO KOKSCH

Page 269

CERTIFICATE OF COURT REPORTER

I, Sherry Yan, CSR 14442, RPR, do hereby certify that I took the stenographic notes of the foregoing statement under oath/affirmation and that the transcript thereof is a true and accurate record transcribed to the best of my skill and ability.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which the deposition was taken, and that I am not a relative or employee of any attorney or counsel employed by the parties hereto, nor financially or otherwise interested in the outcome of the action.

Signed  ........................
     Sherry Yan
Date:  Monday, November 17, 2025

MAGNA
LEGAL SERVICES

# EXHIBIT C

CONFIDENTIAL

CYTEK_0000882748



CONFIDENTIAL

CYTEK_0000882749

# EXHIBIT D

| From: | "Bernardo, Gail" <gail.bernardo@danaher.com> |
|---|---|
| Sent: | Tue, 11 May 2021 16:56:43 -0700 (PDT) |
| To: | Wenbin Jiang <wjiang@cytekbio.com> |
| Subject: | RE: Danaher Life Sciences Introductory Meeting |

Perfect – I will send an Outlook meeting invitation with a MS Teams link for video or phone call. Kevin will join by video.

Meeting will take place on Tuesday, May 18 from 3:30-4pm Pacific.

Thank you kindly,
Gail

*Gail Bernardo*
Office: (630) 694-3394
Cell: (847) 736-8687

**From:** Wenbin Jiang <wjiang@cytekbio.com>
**Sent:** Tuesday, May 11, 2021 6:37 PM
**To:** Bernardo, Gail <gail.bernardo@danaher.com>
**Subject:** RE: Danaher Life Sciences Introductory Meeting

Hi Gail

How about May 18, 3:30 pm?

Wenbin

**From:** Bernardo, Gail <gail.bernardo@danaher.com>
**Sent:** Tuesday, May 11, 2021 3:13 PM
**To:** Wenbin Jiang <wjiang@cytekbio.com>
**Subject:** RE: Danaher Life Sciences Introductory Meeting

Hi Wenbin,

Please let me know your time zone.

Unfortunately, Wednesday, the 19th from 9-11 am at PDT or EDT will not work for Kevin. He has all-day, corporate meetings that day. Instead, please let me know if any of these times might work for you.

Mon, May 17 – 6-6:30am PDT
Tue, May 18 – 2-4pm PDT
Thu, May 20 – 6-6:30am PDT
Fri, May 21 – 6-6:30am PDT

We can look at the following week if needed. I look forward to hearing from you or your assistant.

Thank you,

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

CYTEK_0000948856

Gail

Gail Bernardo | *Executive Assistant to Kevin Chance*
Danaher Corporation
1500 N Mittel Blvd | Wood Dale, IL 60191
Tel: (630) 694-3394 | Fax: (630) 694-3307
Cell: (847) 736-8687

---

**From:** Wenbin Jiang <wjiang@cytekbio.com>
**Sent:** Tuesday, May 11, 2021 12:35 PM
**To:** Bernardo, Gail <gail.bernardo@danaher.com>
**Subject:** Re: Danaher Life Sciences Introductory Meeting

Gail,

Any time slot between 9-11 am next Wednesday, the 19th?

Wenbin

> On May 11, 2021, at 9:51 AM, Bernardo, Gail <gail.bernardo@danaher.com> wrote:
>
> Hello Wenbin,
>
> I look forward to hearing from your assistant so we can determine a good time for the call with Kevin next week. Kevin is located in PDT.
>
> Thanks,
> Gail
>
> *Gail Bernardo*
> Office: (630) 694-3394
> Cell: (847) 736-8687
>
> **From:** Chance, Kevin P <Kevin.Chance@DHLifeSciences.com>
> **Sent:** Tuesday, May 11, 2021 10:56 AM
> **To:** Wenbin Jiang <wjiang@cytekbio.com>
> **Cc:** Bernardo, Gail <gail.bernardo@danaher.com>
> **Subject:** RE: Danaher Life Sciences Introductory Meeting
>
> Wenbin,
>
> That would work for me. I'll ask Gail to work with your assistant to set up a call.
>
> Best,
>
> Kevin

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

CYTEK_0000948857

**From:** Wenbin Jiang <wjiang@cytekbio.com>
**Sent:** Tuesday, May 11, 2021 8:34 AM
**To:** Chance, Kevin P <Kevin.Chance@DHLifeSciences.com>
**Cc:** Bernardo, Gail <gail.bernardo@danaher.com>
**Subject:** Re: Danaher Life Sciences Introductory Meeting

Kevin,

Thank you. We are all doing well. Hope everything goes well to you and your family too.

How about finding some time in the second half of next week?

Best,

Wenbin

> On May 11, 2021, at 6:56 AM, Chance, Kevin P <Kevin.Chance@dhlifesciences.com> wrote:
>
> Wenbin,
>
> It's been some time since we last connected. I hope that you and your family (and company) have made it through the last few months of the pandemic with minimal issues.
>
> I'd like to see if we could find 30 minutes next week to touch base. If this would work for you, I'll ask my assistant to work with yours to put this on the calendar.
>
> Best regards,
>
> Kevin
>
> **From:** WenBin Jiang <wjiang@cytekbio.com>
> **Sent:** Monday, September 14, 2020 11:58 AM
> **To:** Chance, Kevin P <Kevin.Chance@DHLifeSciences.com>
> **Subject:** RE: Danaher Life Sciences Introductory Meeting
>
> Kevin,
>
> An invite has been sent for the call. Talk to you by then.
>
> Wenbin

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

CYTEK_0000948858

**From:** Chance, Kevin P <Kevin.Chance@DHLifeSciences.com>
**Sent:** Monday, September 14, 2020 11:52 AM
**To:** WenBin Jiang <wjiang@cytekbio.com>
**Subject:** RE: Danaher Life Sciences Introductory Meeting

Wenbin,

I'd prefer a video call.  We use MS Teams – shall I send a Teams invite or would you like to set up a Zoom call?

Thanks.

Kevin

**From:** WenBin Jiang <wjiang@cytekbio.com>
**Sent:** Monday, September 14, 2020 10:40 AM
**To:** Chance, Kevin P <Kevin.Chance@DHLifeSciences.com>
**Subject:** RE: Danaher Life Sciences Introductory Meeting

Hi Kevin,

10:30 am on Wed will work. I can be reached at 818-402-3826, or we may set up a zoom call, if you would prefer.

Best,

Wenbin

**From:** Chance, Kevin P <Kevin.Chance@DHLifeSciences.com>
**Sent:** Monday, September 14, 2020 10:12 AM
**To:** WenBin Jiang <wjiang@cytekbio.com>
**Subject:** RE: Danaher Life Sciences Introductory Meeting

Wenbin,

A call would be great.  I'm booked tomorrow from 9-11am but I'm free at 10:30am on Wednesday.  Would that work for you?  If not, I'll ask my assistant to get back to you with other possible times.

Thanks.

Kevin

**From:** WenBin Jiang <wjiang@cytekbio.com>
**Sent:** Monday, September 14, 2020 9:46 AM
**To:** Chance, Kevin P <Kevin.Chance@DHLifeSciences.com>
**Subject:** RE: Danaher Life Sciences Introductory Meeting

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

CYTEK_0000948859

Dear Kevin,

Thank you for the contact. How about a phone conversation first? I will be available at 9-11 am tomorrow, or if you may propose some alternative time slots.

Best,

Wenbin

**From:** Chance, Kevin P <Kevin.Chance@DHLifeSciences.com>
**Sent:** Monday, September 14, 2020 7:20 AM
**To:** WenBin Jiang <wjiang@cytekbio.com>
**Subject:** Danaher Life Sciences Introductory Meeting

Dear Wenbin,

My name is Kevin Chance and I am running Danaher's Life Sciences Instrumentation Group which includes Beckman Coulter LS, SCIEX, Leica Microsystems, Molecular Devices, Phenomenex and IDBS.

We received very positive feedback on your Aurora platform on recent customer visits, and I would very much appreciate to get to know you and your company better.

Would you be available for an initial introductory conversation? I live in Saratoga and would be happy to meet you at your Fremont facility.

Best regards,

Kevin

**Kevin Chance | DH Life Sciences LLC, a Danaher company**
Vice President and Group Executive
Life Science Instruments Group
510.210.5143 | kevin.chance@dhlifesciences.com
Pronouns: He / His / Him

Please be advised that this email may contain confidential information. If you are not the intended recipient, please notify us by email by replying to the sender and delete this message. The sender disclaims that the content of this email constitutes an offer to enter into, or the acceptance of, any agreement; provided that the foregoing does not invalidate the binding effect of any digital or other electronic reproduction of a manual signature that is included in any attachment.
This message is confidential and the property of Cytekbio. It may also be privileged or otherwise protected by work product immunity or other legal rules. If you have received this email by mistake please let us know by replying to this email and then delete it from your system. You should not copy the message or disclose its contents to anyone.
Please be advised that this email may contain confidential information. If you are not the intended recipient, please notify us by email by replying to the sender and delete this message. The sender disclaims that the content of this email constitutes an offer to enter into, or the acceptance of, any agreement; provided that the foregoing does not invalidate

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

CYTEK_0000948860

# EXHIBIT E

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

CYTEK_0000949407

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

CYTEK_0000949408

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

CYTEK_0000949409

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

CYTEK_0000949410

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

CYTEK_0000949411

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

CYTEK_0000949412

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY CYTEK_0000949413

# EXHIBIT F



# Sales Order

Cytek Biosciences Inc.
46107 Landing Parkway
Fremont CA 94538
United States
(510) 657-0102

| | |
|---|---|
| **Date** | 10/15/2020 |
| Order # | SO3406 |
| **Customer PO #** | 2046431 |
| **Intercompany PO #** | |
| **Terms** | Net 30 |
| **Currency** | US Dollar |
| **Sales Rep** | Katherine Fonte |
| **Incoterms** | |

**Memo**

**Bill To**

Accounts Payable
Beckman Coulter AP
Email BECAP.US@beckman.com
or PO Box 2268
Brea CA 92822
United States

**Ship To**

Attn: James Tung 786-202-2356
Beckman Coulter
11800 SW 147th Ave.
Rm 22-M22
Miami FL 33196
United States

| Item Number | Rev | Description | Serial/Lot | Quantity | Qty. Unit | Rate | Amount |
|---|---|---|---|---|---|---|---|
| N7-00003 | 0D | Aurora 67 Channel System | | 1 | ea | 399,000.00 | 399,000.00 |
| N7-00020 | 0A | Aurora Plate Loader | | 1 | ea | 25,000.00 | 25,000.00 |
| N9-90000-0A | | Aurora On-Site Training | | 1 | ea | 0.00 | 0.00 |

| | |
|---|---|
| Subtotal | 424,000.00 |
| Shipping Cost (TBD) | 2,400.00 |
| Total | $426,400.00 |


SO3406

CYTEK_0000400602

# EXHIBIT G

# EXHIBIT H



a | 5350 Lakeview Parkway South Dr. | Indianapolis, IN 46268
o | 317.808.4200 or 800.352.4975
f | 317.808.4395
w | beckman.com

June 14, 2024

**Via FedEx and Electronic Mail**

Valerie T. Barnett,
Chief Legal Officer,
Cytek Biosciences, Inc.,
47215 Lakeview Boulevard,
Fremont, CA 94538
Phone: (650) 862-4897
vbarnett@cytekbio.com

**Re: Beckman Coulter Patent Portfolio**

Dear Ms. Barnett:

We are writing because it has come to our attention that Cytek Biosciences, Inc. and its affiliates ("Cytek") are using patented technologies owned by Beckman Coulter, Inc. and its affiliates ("Beckman Coulter").

As you know, Beckman Coulter is a leader in scientific research instruments serving academic, biopharmaceutical, clinical research, and diagnostic customers. Since 1935, the world has turned to us for solutions to challenging problems, and we are proud to say we have solved many of them. Our mission today, which has changed little since 1935, is to innovate so we can empower those who are seeking answers to life's important scientific and healthcare questions.  From particle characterization for industrial use to flow cytometry for patient diagnostics, we design products of the highest quality in our quest to deliver innovative and trusted scientific solutions across the globe.

One of Beckman Coulter's flagship products is the CytoFLEX Platform.  CytoFLEX is a revolutionary and groundbreaking flow cytometer that delivers powerful performance in a compact and easy-to-use system.  The innovative design of CytoFLEX's optical and detection system focuses on the science of harnessing the power of advanced sensitivity and resolution.  CytoFLEX leverages a wavelength division multiplexer (WDM) to measure multiple wavelengths of light and utilizes avalanche photodiode detectors (APDs), which provide for exceptional detection capabilities, multiplexed, full-spectrum detection, and large dynamic range. With exquisite sensitivity and resolution, each benchtop CytoFLEX configuration can offer more than other cytometers that are up to four times the size.

As you likely also know, Beckman Coulter has a substantial estate of intellectual property relating to the innovations and technologies generated as part of the research and development of the CytoFLEX Platform, including the CytoFLEX optical and detection systems.  Based on our review of publicly available information, we have strong reason to believe that Cytek is using Beckman

*Accelerating Answers*

CONFIDENTIAL

CYTEK_0000909015

Coulter's patented technologies without permission.  By way of example only, Appendices A.1-A.2 explain how and why Cytek products, such as the Cytek Aurora products, infringe at least U.S. Patent Nos. 10,330,582 (the "'582 Patent") and 11,703,443 (the "'443 Patent").  The '582 and '443 Patents are part of a broader family of related patents and applications directed to innovations and advances in optical and detection systems for flow cytometry and cell sorting.  Accordingly, please note that the specific patents and claims identified in Appendices A.1-A.2 are merely exemplary and illustrative, our investigation is continuing, and these may not be the only patented technologies used by Cytek.

We take the protection of our intellectual property very seriously.  And we expect Cytek to respect Beckman Coulter's intellectual property rights and to compete in the marketplace on a fair and level playing field.  Accordingly, please let us know of your availability in the coming week for a telephonic or virtual discussion regarding this matter.  We note that this letter and our offer of a discussion are without prejudice, and we reserve our rights.

I can be reached by phone at (463) 777-6246 or by email at ammurphy@beckman.com.  We look forward to hearing from you.

Sincerely,

Anne Murphy, Chief IP Counsel
Beckman Coulter Life Sciences
5350 Lakeview Parkway S Dr.
Indianapolis, IN 46268

Enclosures
      Appendix A.1: U.S. Patent No. 10,330,582
      Appendix A.2: U.S. Patent No. 11,703,443

Accelerating Answers

CONFIDENTIAL

CYTEK_0000909016

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| BECKMAN COULTER, INC., | |
| Plaintiff, | C.A. No. 24-0945-CFC |
| v. |  |
| CYTEK BIOSCIENCES, INC., | |
| Defendant. | |

**PLAINTIFF BECKMAN COULTER, INC.'S REPLY IN SUPPORT OF ITS
MOTION *IN LIMINE* NO. 3 TO PRECLUDE EVIDENCE, TESTIMONY,
OR ARGUMENT THAT THE TIMING OF THIS LAWSUIT EVIDENCES
<u>NON-INFRINGEMENT OR IMPACTS DAMAGES</u>**

Although Cytek claims it will not assert that "timing bars BEC's infringement or damages theories *per se*" (Opp.3), its intent to rely extensively on substantive timing arguments remains clear and should be precluded.  Laches is not a defense (Br.1-2 n.3), and Cytek cites no case supporting its assertion that ***Beckman's*** actions are probative of ***Cytek's*** willfulness or intent (Opp.2).  Cytek may elicit testimony about "when relevant events occurred" (Opp.3) to the extent relevant to issues such as, e.g., the damages period.  But if Cytek is permitted to make substantive arguments about Beckman's alleged delay, it would require a trial-within-a-trial, including discussion of ███████████████████████████████████████████████

███████████████  Further, Cytek's written description argument (Opp.2-3) risks misleading the jury and conflicts with the Federal Circuit's holding that "there is nothing improper, illegal, or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market." *BlephEx, LLC v. Myco Indus., Inc.*, 24 F.4th 1391, 1404 (Fed. Cir. 2022).  The jury should consider whether the written description supports the claims without skewing the analysis with claims that Beckman delayed filing its patents or its suit.[1]

---

[1] Cytek's cases mentioning the timing of patent claim amendments (Opp.3) substantively relied only on the lack of support in the specification, not timing.  In fact, *Syntheses* reiterated that "broadening claims … to capture a competitor's products is not improper" where there is written description support.  734 F.3d at 1341.  Moreover, for the sole case Cytek cites denying a MIL on delay (Opp.1), Cytek omits that the denial was solely because it "exceed[ed] the number of in limine requests permitted." *Natera*, 2023 WL 12139680, at *2.

1

OF COUNSEL:

Robert J. Gunther, Jr.
Omar A. Khan
Jeffrey A. Dennhardt
Laura Macro
Lauren Matlock-Colangelo
Jennifer L. Graber
Maggie Sawin
Kelly A. Todd
WILMER CUTLER PICKERING
HALE and DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

James Dowd
WILMER CUTLER PICKERING
HALE and DORR LLP
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
(213) 443-5300

Akkad Y. Moussa
WILMER CUTLER PICKERING
HALE and DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037


Dated: July 15, 2026

*/s/ Frederick L. Cottrell III*
Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER,
P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff*

2

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2026, true and correct copies of the foregoing

document were served upon the following counsel of record in the manner indicated:

**BY E-MAIL**

Karen Jacobs
Jeremy A. Tigan
Cameron P. Clark
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE  19801

**BY EMAIL**

Reuben H. Chen
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304

Elizabeth M. Flanagan
Cooley LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402

Adam Pivovar
Dustin M. Knight
Rosalynd D. Upton
David Yun
Cooley LLP
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004

*/s/ Christine D. Haynes*
Christine D. Haynes (#4697)
haynes@rlf.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

BECKMAN COULTER, INC.,

                Plaintiff,

       v.

CYTEK BIOSCIENCES, INC.,

                Defendant.

C.A. No. 24-0945-CFC



## DECLARATION OF LAUREN MATLOCK-COLANGELO IN SUPPORT OF PLAINTIFF BECKMAN COULTER, INC.'S REPLY BRIEFS IN SUPPORT OF ITS MOTIONS *IN LIMINE*

I, Lauren Matlock-Colangelo, declare as follows:

1.    I am licensed to practice law in the State of New York and have been admitted to this Court *pro hac vice* by Order dated September 3, 2024.  D.I. 8 (so ordered).

2.    I am an attorney with the law firm of Wilmer Cutler Pickering Hale and Dorr LLP, located at 7 World Trade Center, 250 Greenwich Street, New York, New York 10007, and counsel for Plaintiff Beckman Coulter, Inc. ("Beckman Coulter").

3.    I have personal knowledge of the facts set forth herein and with the proceedings in this case, and if called to testify, I would competently testify thereto.

4.    I submit this Declaration in support of the following oppositions by Beckman Coulter:

> a. Plaintiff Beckman Coulter, Inc.'s Reply Brief in Support of Its Motion *in Limine* No. 1 to Preclude Evidence, Testimony, or Argument Regarding Unasserted Patents and Patent Applications in Support of Cytek's Non-Infringement, Invalidity, or Damages Arguments

> b.  Plaintiff Beckman Coulter, Inc.'s Reply in Support of its Motion *in Limine* No. 2 to Preclude Evidence, Testimony, or Argument Regarding Non-Party Danaher Corporation, Speculation Regarding Danaher's Purported Mental State to Argue Non-

2

Infringement, and Danaher's Non-Comparable Valuation of Cytek to Suppress Damages

c.  Plaintiff Beckman Coulter, Inc.'s Reply in support of Its Motion *in Limine* No. 3 to Preclude Evidence, Testimony, or Argument That the Timing of This Lawsuit Evidences Non-Infringement or Impacts Damages

5.  A true and correct copy of excerpts from the File History of U.S. Patent No. 9,746,412, are attached hereto as **Exhibit 8**.

6.  A true and correct copy of excerpts from the Expert Rebuttal Report of John L. Hansen, dated January 20, 2026, are attached hereto as **Exhibit 9**.

7.  I declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 15th day of July, 2026.

/s/    Lauren E. Matlock-Colangelo

Lauren E. Matlock-Colangelo

3

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2026, true and correct copies of the foregoing

document were served upon the following counsel of record in the manner indicated:

**BY E-MAIL**

Karen Jacobs
Jeremy A. Tigan
Cameron P. Clark
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE  19801

**BY EMAIL**

Reuben H. Chen
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304

Elizabeth M. Flanagan
Cooley LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402

Adam Pivovar
Dustin M. Knight
Rosalynd D. Upton
David Yun
Cooley LLP
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004

*/s/ Christine D. Haynes*
Christine D. Haynes (#4697)
haynes@rlf.com

# EXHIBIT 8

Application No. 14/555,102                          Docket No.: BECC.P0002US.CIP/11412161
Reply to Office Action of June 27, 2016

and focusing elements to form a beam emitted from a light source, and a photomultiplier tube to detect the beam. *See Oostman*, at col. 6, lns. 40-49. In *Oostman*, the photomultiplier tube is used to detect light emitted from a pinhole or a multimode optical fiber (common light source of the detector) in fluorescence detection instrument, e.g., flow cytometer. The size of an object of such light source is usually measured in millimeters. *See* specification, on p. 69, lns. 19-22; *see also Oostman*, at col. 10, lns. 25-47. However, such light source has an etendue hundreds of times greater than that of a laser beam out of a single mode optical fiber, and, therefore, it is more difficult to focus a beam from such light source down to a small size. *See* specification, on p. 69, lns. 1-8. As such, a photomultiplier tube, as illustrated by *Oostman* in detail, instead of a semiconductor detector with a small active area, is normally used to detect light with greater etendue in fluorescence detection instrument in the prior art. *Id.*

On the contrary, *Capewell* teaches an optical communication system that includes multiple optical assemblies to collimate and redirect a beam emitted from a light source, and a detector to detect the beam. *See Capewell*, at ¶s [0002] and [0039]. In *Capewell*, the detector is used to detect light emitted from a point light source, such as a single mode optical fiber, in a WDM to be used with a communication system. *Id.*, at ¶ [0030]. The size of an object of such point light source is usually measured in micrometers. *See* specification, on p. 69, lns. 22-23; *see also Capewell*, at ¶ [0049]. As such, such point light source has much less etendue than a bigger light source. *See* specification, on p. 69, lns. 1-8.

From the foregoing, it is clear that *Oostman* and *Capewell* discuss different kinds of optical systems (fluorescence detection instrument v. optical communication system) with different sizes of light sources. The Office Action fails to provide any explicit analysis to support the combination of optical elements from different kinds of optical systems, as taught by *Oostman* and *Capewell*. For instance, the Office Action asserts that since *Capewell* has disclosed that the size of the focused light beam can be minimized in order to maximize the tolerance to detector misalignment, it would have been obvious to one of ordinary skill in the art to modify the focusing element of *Oostman* to be able to focus to a size smaller than the object of the extended light source. *See* Office Action, on p. 4. However, the Office Action fails to address ***how*** to modify a focusing element in ***fluorescence detection instrument*** with a focusing

42346373.1                                  - 8 -

Application No. 14/555,102                                    Docket No.: BECC.P0002US.CIP/11412161
Reply to Office Action of June 27, 2016

element in an ***optical communication system*** to focus a beam to a size smaller than the object of the extended light source to a first semiconductor detector, as claimed. *See In re Kumar*, 418 F.3d 1361, 1369 (Fed. Cir. 2005) ("To render a later invention unpatentable for obviousness, the prior art must enable a person of ordinary skill in the field to make and use the later invention."). As discussed above, it is more difficult to focus a beam with greater etendue in fluorescence detection instrument than to focus a beam with less etendue in an optical communication system.

According to the above, a *prima facie* conclusion of obviousness has not been established. *Oostman* in view of *Capewell* fails to render claim 364 obvious. Hence, Applicant respectfully requests that the Examiner withdraw the rejection under 35 U.S.C. § 103(a) of claim 364.

### 2.     Dependent claims 366-379

#### a.    Claim 366

Claim 366 recites that "an image relay optical element arranged to receive a color band of interest of the first light beam, the image relay optical element configured to project a second image as a second light beam, wherein the second light beam is substantially a unit magnification of the first light beam." The Office Action asserts that *Oostman* has disclosed the above features. *See* Office Action, on ps. 4-5. In particular, the Office Action asserts that beam splitting element 151 in *Oostman* meets the image relay optical element as claimed. *Id.* Applicant respectfully disagrees with such assertion.

For example, *Oostman*'s beam splitting element 151 does ***not receive a color band of interest*** of the first light beam as the claimed image relay optical element does. Instead, *Oostman*'s beam splitting element 151 receives beam 147 output from a fiber ***in its entirety*** and splits beam 147 into beam 155 and beam 153. *See Oostman*, at col. 6, lns. 45-47 and 55-57. Further, the cited selections of *Oostman* do not teach or suggest the size of beam 147 received by beam splitting element 151, or beams 155 and 153 output from beam splitting element 151. In fact, controlling the beam size is important for a WDM. As specified in the specification, utilizing an image relay optical element to extend a collimated beam path without expanding the

42346373.1                                       - 9 -

Application/Control Number: 14/555,102                                             Page 2

Art Unit: 2884

## DETAILED ACTION

The present application is being examined under the pre-AIA first to invent provisions.

### *Response to Arguments*

Applicant's arguments, see page 8, filed October 27, 2016, with respect to independent claim 364 have been fully considered and are persuasive. Upon reconsideration, Capewell suggests minimizing the size of the image to maximize the optical energy and tolerance to detector misalignment. However, there's no teaching to focus the light beam to **a size smaller than the object**. Therefore, the rejection of claim 364 and those depend from 364 has been withdrawn.

Thus, claims 364-382 and 387 are allowed.

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to MINDY VU whose telephone number is (571)272-8539. The examiner can normally be reached on M-F 9am - 5:30pm.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Dave Porta can be reached on 571-272-2444.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

# EXHIBIT 9

Beckman Coulter, Inc.

v.

Cytek Biosciences, Inc.

Civil Action No. 1:24-cv-00945-CFC

**Expert Rebuttal Report of John L. Hansen**

**HKA Global, LLC**

**January 20, 2026**

John L. Hansen

both Danaher's Life Sciences and Diagnostics business segments.[14] Beckman Coulter's life sciences offerings include centrifuges, air and liquid particle counters, genomic instruments, microbioreactors, and flow cytometers.[15] Beckman Coulter's Life Sciences division contains two further portfolio groups: Biotech and Flow Cytometry.[16] The Flow Cytometry division is further divided into Clinical and RUO (Research Use Only) subdivisions.[17] Previously, the CHC (Cell Health and Centrifuge) and BWS (Biotech Workflow Solutions) stood alongside the Flow Cytometry division, but the two groups have since been collapsed into the single Biotech group, which now exists alongside the continued Flow Cytometry division.[18]

### B. Danaher Corporation

18. Danaher is the Parent Company of Beckman Coulter.[19] Danaher is a Delaware corporation headquartered in Washington, D.C.[20] Danaher describes itself as comprising 15 operating companies within the biotechnology, life sciences, and diagnostics industries.[21] In 2024, Danaher's Diagnostics business segment was the largest revenue-generating division with nearly $9.8 billion in revenue followed by Life Sciences ($7.3 billion) and Biotechnology ($6.8 billion).[22]

### C. Cytek Biosciences, Inc.

19. Cytek was founded in 2014 as is headquartered in Fremont, California.[23] Cytek is a cell analysis solutions company offering a number of flow cytometers including its Northern Lights, Aurora, Guava, and Amnis product lines.[24] The company offers additional

---

[14] Danaher Corporation, SEC Form 10-K for the Fiscal Year ended December 31, 2024, pp. 5-7.

[15] https://www.beckman.com/shop.

[16] Deposition of Patricia Del Castillo (Director of Finance at Beckman), October 24, 2025: p. 9.

[17] Deposition of Patricia Del Castillo (Director of Finance at Beckman), October 24, 2025: p. 9.

[18] Deposition of Patricia Del Castillo (Director of Finance at Beckman), October 24, 2025: pp. 18-20.

[19] Danaher Corporation, SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 5, Exhibit 21.1.

[20] Danaher Corporation, SEC Form 10-K for the Fiscal Year ended December 31, 2024: p. 1.

[21] Danaher Corporation, SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 3.

[22] Danaher Corporation, SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 38.

[23] Cytek Biosciences, Inc., SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 20.

[24] Cytek Biosciences, Inc., SEC Form 10-K for the Fiscal Year ended December 31, 2024, pp. 4-5. https://cytekbio.com/pages/aurora; https://cytekbio.com/pages/northern-lights; https://cytekbio.com/pages/imagestream; https://cytekbio.com/pages/guava. See also, https://cytekbio.com/pages/muse-micro; https://cytekbio.com/pages/orion.