IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BECKMAN COULTER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C. A. No.:  24-945-CFC |
| v. | ) | |
| | ) | ▉▉▉▉▉▉▉▉▉ |
| CYTEK BIOSCIENCES, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**EXHIBIT 19**

**CYTEK'S MOTION *IN LIMINE* NO. 1
OPENING, ANSWERING AND REPLY**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

BECKMAN COULTER, INC.,          )
                                )
        Plaintiff,              )
                                )       C. A. No.:  24-0945-CFC
        v.                      )
                                )       ███████████████
CYTEK BIOSCIENCES, INC.,        )
                                )
        Defendants.             )
                                )

**CYTEK'S MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE, TESTIMONY, AND ARGUMENT RELATING TO EITHER PARTY'S OTHER LITIGATIONS OR ARBITRATIONS**

BEC should be prohibited from introducing evidence of a prior, unrelated litigation involving Cytek and its employees because such evidence is irrelevant to the liability issues here, and any purported relevance is dwarfed by the danger of unfair prejudice, confusion, and waste of time. Pursuant to Fed. R. Evid. 401, 402, 403, and 404, Cytek moves to exclude any evidence, testimony, or argument regarding either party's other litigations or arbitrations, including the *Becton Dickinson v. Cytek* and the *Becton Dickinson v. Beckman Coulter* litigations, including all allegations raised therein and any settlement terms thereof. The only exception, solely in any damages phase of the case, would be evidence regarding the terms of the *Becton Dickinson v. Cytek* settlement agreement for the sole purpose of addressing reasonable royalty damages, if previously disclosed in a damages expert report and if otherwise admissible.

In 2018, Becton Dickinson ("BD") sued Cytek and several Cytek employees, including Chief Technology Officer, Ming Yan, alleging trade secret misappropriation. Cytek denied any liability and counterclaimed based on California unfair competition law. As part of a 2020 settlement, ███████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ (BD did not claim patent infringement in its complaint).

The existence of and the accusations raised in this unrelated *Becton Dickinson*

1

trade secret litigation are irrelevant to any patent infringement or invalidity issues here.  BEC nonetheless appears to be poised to introduce evidence about this trade secret litigation in an attempt to falsely paint Cytek and its employees as bad actors or serial misappropriators in the hopes of persuading the jury to disregard Cytek's defenses in this patent litigation and adjudge them copycats and willful infringers.

BEC's intention to use this unrelated litigation as improper propensity evidence is clear. BEC's expert, Dr. Houston, shoehorns an uncritical repetition of BD's allegations and a slanted selection of certain disputed facts from the *Beckton Dickinson* trade secret litigation into her report under the guise of supposedly supporting the (at most) tenuously-related proposition that "Dr. Yan and Cytek had knowledge [] and awareness of Xitogen, the company that originally developed the claimed inventions, Dr. Chen [the named inventor of the Asserted Patents], and Dr. Chen's work on the claimed inventions." (Ex. 1 (Houston Opening Rep.) ¶491.)  She further opines, without substantiation, that Dr. Yan's ████████████ ████████████████████████████████████████████ is "pertinent to whether Cytek independently developed its Accused Products." (Ex. 2 (Houston Reply Rep.) ¶281 (emphasis added).)

Further, even if the unrelated *Becton Dickinson* trade secret litigation were marginally relevant to any disputed issues of infringement or invalidity here (and it is not), its probative value is dwarfed by the danger of unfair prejudice, confusion,

2

and waste of time.  In addition to the substantial risk that the jury would react emotionally to BD's allegations and perceive Cytek in an unfavorable light based on unrelated *allegations* that Cytek denied that are irrelevant to this case, allowing BEC to adduce evidence of the *Becton Dickinson* litigation would lead to a wasteful, unnecessary trial-within-a-trial on issues unrelated to infringement or invalidity.

This conclusion is further supported by *Orexo AB v. Actavis Elizabeth LLC*, where this Court granted a motion *in limine* in a subsequent case precluding evidence regarding a closely related earlier case involving the same parties and asserted patent but different accused product. *See* 424 F. Supp. 3d 371, 374-76 (D. Del. 2019). In *Orexo*, in considering Rule 403, the Court stated: "I've got to weigh probative [value] versus potential unfair prejudice, and I don't think it's a close call." *Id*. at 376, quoting Tr. of Mar. 11, 2019 Hr'g at 85:15-24; *see also id*. at 377-78, 383-84. Here, the balance between probative value and risk of unfair prejudice, confusing the jury, and waste of time is even further tilted in favor of precluding evidence of the *Becton Dickinson* litigation, which involved completely different legal claims and alleged facts.

Finally, the carve-out Cytek proposes still permits BEC to potentially use the *Becton Dickinson* settlement agreement in Phase 2 of the trial (if needed) in support of reasonable royalty damages, while protecting Cytek from the improper, unfairly prejudicial use of this evidence by the jury when deciding issues of liability.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

/s/ Jeremy A. Tigan

Reuben H. Chen
Alexandra Leeper
Juan Pablo González
HanByul Chang
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000

Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@morrisnichols.com
jtigan@morrisnichols.com
cclark@morrisnichols.com

Elizabeth M. Flanagan
COOLEY LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402

*Attorneys for Defendant*
*Cytek Biosciences, Inc.*

Adam Pivovar
Dustin M. Knight
David Yun
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
(202) 842-7800

Dated: June 26, 2026

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BECKMAN COULTER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C. A. No.:  24-0945-CFC |
| | ) | |
| v. | ) | |
| | ) | |
| CYTEK BIOSCIENCES, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PROPOSED ORDER GRANTING CYTEK'S MOTION *IN LIMINE* NO. 1
TO EXCLUDE EVIDENCE, TESTIMONY, AND ARGUMENT RELATING
<u>TO EITHER PARTY'S OTHER LITIGATIONS OR ARBITRATIONS</u>**

On this _____ day of _____, 2026, the Court having considered Cytek Biosciences Inc.'s ("Cytek's") Motion *in Limine* to Exclude Evidence, Testimony, and Argument Relating to Either Party's Other Litigations or Arbitrations, and all papers and arguments submitted therewith,

IT IS ORDERED that the motion is GRANTED.  Cytek and Plaintiff Beckman Coulter, Inc. ("Beckman Coulter") are PRECLUDED from offering any evidence, testimony, or argument regarding either party's other litigations or arbitrations, including the *Becton Dickinson v. Cytek* et al. litigation, and the *Becton Dickinson v. Beckman Coulter* litigation, including all allegations raised therein and

any settlement terms thereof, subject to the following exception. The foregoing shall not preclude evidence, testimony, or argument, solely in Phase 2, regarding the terms of the *Becton Dickinson v. Cytek* et al. litigation settlement agreement only for purposes of addressing reasonable royalty damages, provided such settlement terms are properly disclosed in the expert report of a damages expert and otherwise admissible.

Dated: _____          _____
                                     United States District Court Judge

6

# EXHIBIT 1

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| BECKMAN COULTER, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 24-0945-CFC-EGT |
| CYTEK BIOSCIENCES, INC., | ) ) | |
| Defendant. | ) ) ) | |

**OPENING EXPERT REPORT OF DR. JESSICA P. HOUSTON, PHD
REGARDING INFRINGEMENT OF U.S. PATENT NOS. 10,330,582, 11,703,443, AND
12,174,107**

December 19, 2025

_____
Dr. Jessica P. Houston

Houston Opening Infringement Report

## TABLE OF CONTENTS

I.      Introduction.................................................................................................. 1

II.     Background and Qualifications.................................................................... 1

III.    Materials Considered .................................................................................. 4

IV.     Legal Principles .......................................................................................... 4

   A.   Claim Construction ................................................................................. 4

   B.   Infringement............................................................................................. 4

      1.   Literal Infringement........................................................................... 5

      2.   Infringement Under the Doctrine of Equivalents............................... 5

      3.   Direct Infringement............................................................................ 7

      4.   Indirect Infringement ........................................................................ 7

      5.   Infringement by Supply of All or a Substantial Portion of the Components of a Patented Invention to Another Country ..................................................... 8

      6.   Infringement by Supply of Components Especially Made or Adapted for Use in the Patented Invention into Another Country .................................................. 9

      7.   Willful Infringement ......................................................................... 10

   C.   State of the Art ....................................................................................... 10

   D.   Damages................................................................................................. 10

V.      Summary of Opinions ............................................................................... 12

VI.     Person of Ordinary Skill in the Art........................................................... 12

VII.    Technology Background............................................................................. 13

   A.   Overview of Flow Cytometry ............................................................... 13

      1.   Scattered Light Detection ................................................................ 14

      2.   Fluorescence Detection.................................................................... 16

   B.   Optical Subsystems & Wavelength Division Multiplexers ................... 19

   C.   Spectral Flow Cytometry ...................................................................... 22

VIII.   Overview of the Asserted Patents ............................................................. 23

   A.   Background of the Inventions................................................................ 23

   B.   Patent Specification .............................................................................. 24

   C.   File History ............................................................................................ 26

      1.   '412 Patent ....................................................................................... 26

      2.   '582 Patent ....................................................................................... 27

      3.   '772 Patent ....................................................................................... 30

Houston Opening Infringement Report

4.    '106 Patent ..................................................................................................... 30

5.    '443 Patent ..................................................................................................... 36

6.    '107 Patent ..................................................................................................... 37

D.    Asserted Claims ........................................................................................................ 37

1.    '582 Patent ..................................................................................................... 38

2.    '443 Patent ..................................................................................................... 39

3.    '107 Patent ..................................................................................................... 41

IX.    Claim Construction ................................................................................................. 43

X.    Cytek's Flow Cytometers .......................................................................................... 44

A.    Overview of Accused Products.................................................................................. 44

1.    Cytek Aurora................................................................................................... 45

2.    Cytek Aurora EVO ......................................................................................... 46

3.    Cytek Aurora CS............................................................................................. 48

4.    Cytek Northern Lights and Cytek Northern Lights NL-CLC....................... 49

B.    Laser Upgrades ......................................................................................................... 51

C.    Components of the Accused Products ....................................................................... 51

XI.    Cytek's Accused Products Infringe the Asserted Patents.................................. 54

A.    '107 Patent ............................................................................................................... 54

1.    Claim 5............................................................................................................ 54

2.    Claim 16.......................................................................................................... 117

3.    Claim 18.......................................................................................................... 132

4.    Claim 26.......................................................................................................... 142

5.    Claim 27.......................................................................................................... 161

6.    Claim 29.......................................................................................................... 166

B.    '443 Patent ............................................................................................................... 173

1.    Claim 4............................................................................................................ 173

2.    Claim 6............................................................................................................ 193

3.    Claim 10.......................................................................................................... 195

4.    Claim 11.......................................................................................................... 199

5.    Claim 15.......................................................................................................... 200

C.    '582 Patent ............................................................................................................... 213

1.    Claim 1............................................................................................................ 213

2.    Claim 3............................................................................................................ 223

3.    Claim 6............................................................................................................ 226

ii

Houston Opening Infringement Report

4.    Claim 23 .......................................................................................................... 227

5.    Claim 26 .......................................................................................................... 231

XII.    Cytek's Knowledge of the Patents; Knowledge of Xitogen, Dr. Chen, and CytoFLEX; and Copying .............................................................................................. 232

A.    Cytek's Knowledge of the Patents ................................................................... 232

B.    Cytek's Knowledge and Analysis of Xitogen and the CytoFLEX Products ................. 235

C.    Copying ........................................................................................................ 241

XIII.    Cytek's Willful Infringement of the Asserted Patents ..................................... 243

XIV.    Beckman Coulter's CytoFLEX Flow Cytometers ........................................... 244

A.    The CytoFLEX Platform ................................................................................. 244

1.    Development of CytoFLEX ......................................................................... 244

2.    Products ...................................................................................................... 245

3.    Key Features of CytoFLEX ......................................................................... 246

XV.    Beckman Coulter's CytoFLEX Platform Embodies the Claimed Inventions ............... 304

A.    '107 Patent ................................................................................................... 305

1.    Claim 5 ........................................................................................................ 305

2.    Claim 16 ...................................................................................................... 316

3.    Claim 18 ...................................................................................................... 321

4.    Claim 26 ...................................................................................................... 326

5.    Claim 27 ...................................................................................................... 333

6.    Claim 29 ...................................................................................................... 333

B.    '443 Patent ................................................................................................... 338

1.    Claim 4 ........................................................................................................ 338

2.    Claim 6 ........................................................................................................ 344

3.    Claim 10 ...................................................................................................... 345

4.    Claim 11 ...................................................................................................... 348

5.    Claim 15 ...................................................................................................... 349

C.    '582 Patent ................................................................................................... 353

1.    Claim 1 ........................................................................................................ 353

2.    Claim 3 ........................................................................................................ 358

3.    Claim 6 ........................................................................................................ 360

4.    Claim 23 ...................................................................................................... 361

5.    Claim 26 ...................................................................................................... 364

XVI.    Technical Advantages and Impacts of the Claimed Inventions and Additional Considerations ............................................................................................... 365

Houston Opening Infringement Report

A.    Prior to the Asserted Patents, APDs' Main Use Cases Were for Red and Near Infrared Channels of Specialized Particle Analyzers ........................................................ 366

B.    Blue Lasers Have Historically Been, and Still Are, the Most Important Laser for Flow Cytometry ........................................................................................ 367

C.    Cytek's Flat-Top Beam Technology Has Comparatively Low Importance for the Flow Cytometers ...................................................................................... 367

D.    The Asserted Patents' Claimed WDM Allows for Cytek's Full Spectrum Cytometry .. 369

XVII.    Lack of Non-Infringing Alternatives ........................................................... 371

XVIII.    Comparable Licenses and Products ........................................................... 373

XIX.    35 U.S.C. § 271 ............................................................................ 378

A.    Induced Infringement Under 35 U.S.C. § 271(b) ............................................. 378

B.    Contributory Infringement Under 35 U.S.C. § 271(c) ......................................... 380

C.    Supply Under 35 U.S.C. § 271(f)(1) .......................................................... 382

D.    Supply Under 35 U.S.C. § 271(f)(2) .......................................................... 384

XX.    Supplementation of Opinions ................................................................. 384

Houston Opening Infringement Report

## **TABLE OF APPENDICES**

- Appendix A: Jessica P. Houston Curriculum Vitae

- Appendix B: Components of the Accused Products

- Appendix C: List of Materials Considered

Houston Opening Infringement Report
Introduction

## I.    Introduction

1.    I have been retained as an expert in this case by WilmerHale on behalf of Plaintiff Beckman Coulter, Inc. ("BEC"). I expect to testify at trial regarding the matters set forth in this report, if asked about these matters by the Court or by the parties' attorneys.

2.    I understand that BEC has asserted U.S. Patent Nos. 10,330,582, 11,703,443, and 12,174,107 to Yong Qin Chen ("the '582 patent," "the '443 patent," and "the '107 patent," or collectively the "Asserted Patents"), entitled "Flow Cytometer" against certain products offered by Defendants Cytek Biosciences, Inc. ("Cytek").  Specifically, I understand that BEC is asserting claims 1, 3, 6, 23, and 26 of the '582 patent, claims 4, 6, 10, 11, and 15 of the '443 patent, and claims 5, 16, 18, 26, 27, and 29 of the '107 patent against certain Cytek products (collectively referred to as the "Asserted Claims").

3.    I have been asked for my expert opinion regarding, among other things, whether Cytek products infringe the Asserted Claims of the Asserted Patents. As explained in detail below, it is my opinion that the accused Cytek products infringe the Asserted Claims.

## II.    Background and Qualifications

4.     My qualifications are described in detail in my *curriculum vitae*, which is attached as Appendix A.  I have not previously testified at trial or deposition.

5.    I have twenty years of research experience in biomedical engineering with the subdisciplines of cytometry, biophotonics, and imaging. Currently I am a Professor of Chemical & Materials Engineering at New Mexico State University (NMSU) in Las Cruces, NM. At NMSU, I am the principal investigator of the Laboratory for Flow Cytometry and Related Biophotonics (https://flowcytometry.nmsu.edu/). As director of this laboratory, I supervise postdoctoral fellows, graduate students, and undergraduates on projects that are related to flow

1

Houston Opening Infringement Report
Cytek's Knowledge of the Patents; Knowledge of Xitogen, Dr. Chen, and CytoFLEX; ██████
██████

251:1.  I have reviewed Dr. Schaafsma's report, and understand that ████████████████

████████████████████████████████████████████████████.  Schaafsma Op.

Rep., ¶¶94-97, 188-192, 371-400.

487.    Additionally, ████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████

488.    Cytek filed U.S. Patent No. 11,169,076 on July 25, 2017, which includes the '412

patent in its references cited.  CYTEK_0000217139 at CYTEK_00000217140.  Cytek filed U.S.

Patent No. 11,33,597 on March 30, 2018, and again included the '412 patent in its references

cited.  CYTEK_0000217165 at CYTEK_0000217166.

489.    Therefore, it is my opinion that ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

██        ████████████████████████████████████

490.    I understand that ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Houston Opening Infringement Report

Cytek's Knowledge of the Patents; Knowledge of Xitogen, Dr. Chen, and CytoFLEX; and

████████ ████████████████████████████████████████████████████████. *Id.* at

98:6-8.

491.    ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██    ████████████████████████████████████████

████████████████████████████████████████████

[12] First Amended Complaint ¶ 78, *Becton, Dickinson & Co. v. Cytek Biosciences, Inc.*, No. 3:18-cv-00933(N.D. Cal. June 8, 2018), Dkt. No. 57; Answer and Counterclaim to First Amended Complaint ¶ 78, *Becton, Dickinson & Co. v. Cytek Biosciences, Inc.*, No. 3:18-cv-00933 (N.D. Cal. Sept. 7, 2018), Dkt. No. 70; Yan Tr. at 123:20-124:24.

Houston Opening Infringement Report

Cytek's Knowledge of the Patents; Knowledge of Xitogen, Dr. Chen, and CytoFLEX; ███

███████████████████████████████████████████████████████

███████████████████████████████████

- ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

█ ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████

█ ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████

█ ████████████████████████████████████████████
████████████████████████████████

█ ████████████████████████████████████████████
████████████████████████████████████████████
███████████

---

[13] *See also* ███████████████████████████████████


Houston Opening Infringement Report



Houston Opening Infringement Report
Cytek's Knowledge of the Patents; Knowledge of Xitogen, Dr. Chen, and CytoFLEX;

Houston Opening Infringement Report
Cytek's Knowledge of the Patents; Knowledge of Xitogen, Dr. Chen, and CytoFLEX;



# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| BECKMAN COULTER, INC., | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 24-945-CFC-EGT |
| CYTEK BIOSCIENCES, INC., | ) ) | |
| Defendant. | ) ) ) | |

**REPLY EXPERT REPORT OF DR. JESSICA P. HOUSTON, PH.D.
REGARDING INFRINGEMENT OF
U.S. PATENT NOS. 10,330,582; 11,703,443; and 12,174,107**

February 9, 2026                Respectfully submitted,

_Jessica P. Houston_

_____
Dr. Jessica P. Houston, Ph.D.

Houston Reply Infringement Report

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................................1

II.  BACKGROUND AND QUALIFICATIONS .......................................................2

III. MATERIALS CONSIDERED FOR THIS REPORT.........................................2

IV.  LEGAL FRAMEWORK .......................................................................................3

   A.  Reverse Doctrine of Equivalents ................................................................. 3

V.   SUMMARY OF OPINIONS .................................................................................3

VI.  A PERSON OF ORDINARY SKILL IN THE ART ("POSA")..........................4

VII.     TECHNOLOGY BACKGROUND .................................................................4

   A.  Overview of Flow Cytometry....................................................................... 4

   B.  Conventional vs. Spectral Flow Cytometry ................................................ 5

VIII.    THE ASSERTED PATENTS ...........................................................................6

   A.  File History.................................................................................................... 6

   B.  The Asserted Patents Provided Significant Improvements and Advantages to the Existing Field of Flow Cytometry ......................................................... 8

      1.  APDs in Flow Cytometers.................................................................... 8

      2.  WDMs in Flow Cytometers ............................................................... 13

IX.  CLAIM CONSTRUCTION................................................................................20

X.   CYTEK'S PATENTS ..........................................................................................21

XI.  OVERVIEW OF THE ACCUSED PRODUCTS ...............................................21

   A.  Summary of the Accused Product Lines.................................................... 21

   B.  The Accused Products' Purported Use of "Spectral" Technology Does Not Avoid Infringement ................................................................................... 23

   C.  The Accused Products Have a WDM ........................................................ 25

   D.  The Accused Products Have a "Collimating Optical Element" ......................................... 26

   E.  The Claims Do Not Require a Collimated Beam Throughout the WDM and The Accused Products Have a Collimated Beam .......................................... 26

   F.  The Accused Products Use Dichroic Filters .............................................. 27

      1.  To the extent the Accused Products' bandpass filters are not literally dichroic filters, they are equivalent to dichroic filters.............................................. 30

   G.  The Accused Products Use of Concave Mirrors ....................................... 30

      1.  Microlenses are not distinct from mirrors........................................... 30

      2.  Dr. Leary's definition of "mirror" ...................................................... 34

      3.  Refraction in the Accused Products does not prevent infringement.......................... 35

      4.  Microlenses are equivalent to mirrors................................................. 37

i

Houston Reply Infringement Report

XII.    CYTEK INFRINGES THE ASSERTED CLAIMS AS SHOWN BY A PREPONDERANCE OF THE EVIDENCE ..................................................................37

    A.  Beckman Has Demonstrated the Accused Products Meet All Limitations of the '107 Asserted Claims ................................................................................................ 37

        1.  Asserted Claim 5.................................................................................... 40

        2.  Asserted Claim 16.................................................................................. 44

        3.  Asserted Claim 18.................................................................................. 49

        4.  Asserted Claims 26, 27, and 29............................................................. 50

    B.  Beckman Has Demonstrated the Accused Products Meet All Limitations of the '443 Asserted Claims ................................................................................................ 53

        1.  Asserted Claim 4.................................................................................... 55

        2.  Asserted Claim 6.................................................................................... 56

        3.  Asserted Claim 10.................................................................................. 58

        4.  Asserted Claim 11.................................................................................. 62

        5.  Asserted Claim 15.................................................................................. 63

    C.  Beckman Has Demonstrated the Accused Products Meet All Limitations of the '582 Asserted Claims ................................................................................................ 64

        1.  Asserted Claim 1.................................................................................... 64

        2.  Asserted Claim 3.................................................................................... 70

        3.  Asserted Claim 6.................................................................................... 70

        4.  Asserted Claim 23.................................................................................. 72

        1.  Asserted Claim 26.................................................................................. 74

    D.  Reverse Doctrine of Equivalents Does Not Apply ........................................... 75

    E.  Cytek Infringes Under 35 U.S.C. § 271(a)....................................................... 76

    F.  Cytek Infringes Under 35 U.S.C. § 271(b) or (c).............................................. 76

    G.  Cytek Infringes the Asserted Patents Under 35 U.S.C. § 271(f)(1)................... 79

    H.  Cytek Infringes the Asserted Patents Under 35 U.S.C. § 271(f)(2).................... 84

    I.  Cytek Willfully Infringed the Asserted Claims................................................. 86

        1.  Cytek's Knowledge of the Patents Is Consistent with Willful Infringement, and Cytek Did Not Have an Objectively Reasonable Belief of Noninfringement ...................... 87

        2.  Cytek's Knowledge and Analysis of Xitogen and the CytoFLEX is Consistent with Willful Infringement, and Cytek's Activities Are Not Common Industry Practice.... 92

        3.  Cytek Copied the Inventions in the Asserted Patents ................................. 96

        4.  The Evidence is Consistent with Willful Infringement ............................. 98

XIII.   CYTOFLEX PRODUCTS EMBODY THE ASSERTED PATENTS............................100

    A.  CytoFLEX Products Include a Wavelength Division Multiplexer................................. 100

Houston Reply Infringement Report

B. CytoFLEX Products Practice Filter Related Elements of the Asserted Claims ............. 101

C. CytoFLEX Products Detect a Substantially Full Spectrum of Visible Light .................. 103

D. CytoFLEX Products Practice Curved or Concave Mirrors Related Elements of the Asserted Claims ................................................................................................ 107

    1. Dr. Leary's isolated assertions regarding functional diagrams are incorrect............ 107

    2. Dr. Leary's interpretation of CytoFLEX BOMs and CAD drawings is incorrect .... 113

E. CytoFLEX Products Practice Claim 1 of the '582 Patent ................................................ 119

    1. 1(c): "an optical relay element arranged to receive at least a portion of the collimated beam from the collimating optical element, the optical relay element comprising a curved mirror configured to reflect the portion of the collimated beam received from the collimating optical element to produce a first image;" ....................................... 119

    2. 1(d): "a first focusing optical element arranged to receive at least a portion of the collimated beam reflected by the optical relay element; and" .................................. 120

    3. 1(e): "a first semiconductor detector" ....................................................................... 120

    4. 1(f): "wherein the first focusing optical element is configured to focus the portion of the collimated beam received from the optical relay element onto the first semiconductor detector" .......................................................................................... 121

    5. CytoFLEX Products Practice the Claims Depending from Claim 1 of the '582 Patent 122

F. CytoFLEX Products Practice Claim 20 of the '582 Patent .............................................. 122

    1. 20(b): "a collimating optical element arranged to receive light from a light source, the collimating optical element configured to project a first image; and" ...................... 122

    2. 20(c): "an optical relay element arranged near the first image, the optical relay element configured to receive light from the collimating optical element and to project a second image" ................................................................................................ 123

    3. 20(d): "wherein the size of the first image is substantially the same as the size of the second image; and" ................................................................................................ 124

    4. CytoFLEX Products Practice the Claims Depending from Claim 20 of the '582 Patent............................................................................................................... 124

XIV.    SUPPLEMENTAL OPINIONS ............................................................................. 125

Houston Reply Infringement Report

## TABLE OF APPENDICES

- Appendix A: List of Materials Considered

- Appendix B: Images from Inspection of Products

iv

Houston Reply Infringement Report

## I.    INTRODUCTION

1.    I have been retained as an expert in this case by WilmerHale on behalf of Plaintiff Beckman Coulter, Inc. ("BEC"). I expect to testify at trial regarding the matters set forth in this report, if asked about these matters by the Court or by the parties' attorneys.

2.    I understand that BEC has asserted U.S. Patent Nos. 10,330,582; 11,703,443; and 12,174,107 to Yong Qin Chen ("the '582 patent," the '443 patent," and "the '107 patent," or collectively the "Asserted Patents"), entitled "Flow Cytometer" against certain products offered by Defendant Cytek Biosciences, Inc. ("Cytek"). Specifically, I understand that BEC is asserting claims 1, 3, 6, 23, and 26 of the '582 patent, claims 4, 6, 10, 11, and 15 of the '443 patent, and claims 5, 16, 18, 26, 27, and 29 of the '107 patent against certain Cytek products (collectively referred to as the "Asserted Claims").

3.    I previously submitted an expert report dated December 19, 2025, titled "Opening Expert Report of Jessica Houston, Ph.D." ("Houston Opening") in this case, which I incorporate by reference.  I previously submitted an expert report dated January 20, 2026, titled "Rebuttal Expert Report of Jessica Houston, Ph.D." ("Houston Rebuttal") in this case, which I incorporate by reference.

4.    I have been asked for my expert opinion regarding, among other things, whether Cytek products infringe the Asserted Claims of the Asserted Patents. As explained in detail in my opening report, it is my opinion that the accused Cytek products infringe the Asserted Claims.  I have reviewed the Rebuttal Reports of Dr. Fedor Ilkov ("Ilkov Rebuttal") and Dr. James Leary ("Leary Rebuttal"), and it is still my opinion that the accused Cytek products infringe the Asserted Claims.

Houston Reply Infringement Report

██████████████████████████████████████████████████████ (Leary

Rebuttal, ¶¶509-510; Houston Opening, ¶487; Jiang Tr. at 236:4-251:1).

276.   Dr. Leary then reiterates that ████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████  (Leary Rebuttal, ¶¶511-512).  As explained above, ████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████

**2.    ██████████████████████████████████████████████████ is Consistent with Willful Infringement, and Cytek's Activities Are Not Common Industry Practice**

277.   Dr. Leary appears to imply that the six pages of evidence I discuss ████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████  (Leary Rebuttal, ¶513).  Dr. Leary asserts that ██████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████  (Leary Rebuttal, ¶¶513, 519-520, 524-525).  I understand that a patent that

92

does not exist cannot be infringed; however, I also understand that pre-issuance evidence of copying may be relevant to support a theory of willful infringement.  In my opinion, based on my experience developing flow cytometers, ███████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████

278.    Dr. Leary does not meaningfully dispute the evidence that I set out in my opening report; instead, he states, without providing any reasoning or evidence as to why, that "all of Cytek's activities described in this section are common practice in the flow cytometry industry." (Leary Rebuttal, ¶514, 523, 525-526).  These purportedly "common practice" activities included, for example, ███████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Houston Reply Infringement Report

141:2-10, 143:5-21, 145:9-10 ███████████████████ 152:23-154:3).    In my professional experience in the flow cytometer industry and in my experience designing flow cytometers, Cytek's actions, including those highlighted above, were not common practice.

279.    Further evidence supports that Cytek went beyond what, in my professional experience, would be considered common practice in the flow cytometry industry.    During the development of the Accused Products, ████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████ (CYTEK_0000994561 at CYTEK_0000994561-62; *see also* CYTEK_0000994563 ████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████ (CYTEK_0000994610; CYTEK_0000994612).    Based on my professional experience in the flow cytometry industry and my experience in designing flow cytometers, it is not considered common practice to propose reverse engineering a competitor's design to meet one's design needs while developing a flow cytometer.

280.    Dr. Leary appears to equate the due diligence activities of Beckman Coulter's parent company, Danaher Corporation, in evaluating Cytek for a potential acquisition through a formal, mutually agreed upon, and confidential process, which Dr. Leary admits was "after Yong Chen's '412 patent had issued in August 2017," to ████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

94

Houston Reply Infringement Report



In my experience, it is common practice in the flow cytometry industry to explore potential business partnerships or strategic acquisitions; as discussed above, Cytek's actions, in my experience, are not common practice and are inconsistent with independent development of a flow cytometer.

281.    Dr. Leary opines that

282.    Dr. Leary also discusses evidence relating to

(Leary Rebuttal, ¶¶521-522; *see also id.*, ¶534). However, as discussed in my opening report, Section VIII.A., and above in Sections VII.B.1-2.,, the inventions claimed in the Asserted Patents enabled, for the first time, the use of APDs for general detection in a flow cytometer, rather than limited use in niche applications. Further,

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████ (Yan Tr. at 244:1-245:12).

283.    Dr. Leary additionally contends that ██████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████. (Leary

Rebuttal, ¶527).  As already discussed, I disagree with Dr. Leary that █████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████

284.    Thus, I disagree with Dr. Leary that ██████████████████████████

███████████████████████████████████████████████████████

██████████████████████

### 3.    Cytek Copied the Inventions in the Asserted Patents

285.    Based on my experience designing and building flow cytometers, as well as my professional expertise, the evidence outlined in my opening report and discussed above is inconsistent with ████████████████████████████████

████████████████████████████████████ (Houston Opening, ¶499).  Further, as explained in my opening report, Cytek's infringement, including its continued infringement to present, ███████████████████████████████████████████████████████

96

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

BECKMAN COULTER, INC.,

               Plaintiff,

     v.

CYTEK BIOSCIENCES, INC.,

               Defendant.

C.A. No. 24-0945-CFC



# PLAINTIFF BECKMAN COULTER, INC.'S OPPOSITION TO CYTEK'S MOTION *IN LIMINE* NO. 1

**TABLE OF EXHIBITS**[1]

| Exhibit No. | Exhibit |
|---|---|
| 1 | Excerpts from Opening Expert Report of Michele Riley (Dec. 19, 2025) |
| 2 | Excerpts from Opening Expert Report of David Schaafsma (Dec. 19, 2025) |
| 3 | Excerpts from Deposition of Bing Shan (Oct. 24, 2025) |
| 4 | Excerpts from Opening Invalidity Expert Report of Fedor Ilkov, Ph.D. (Dec. 19, 2025) |
| 5 | Excerpts from Deposition of Fedor Ilkov, Ph.D. (Feb. 24, 2026) |

---

[1] Exhibits cited in this opposition as "Ex. __" are attached to the Declaration of L. Matlock-Colangelo, filed as an attachment to this brief.

Beckman agrees that evidence and argument relating to other litigations and arbitrations should generally be kept from the jury and does not intend to present "improper propensity evidence," Cytek MIL No. 1 ("Mot.") at 2. Beckman opposes Cytek's Motion only to the extent it would preclude Beckman from incidentally referencing *Becton Dickinson v. Cytek* in the context of using the BD/Cytek settlement agreement to support damages. Beckman further disputes Cytek's suggestion that Beckman has not preserved the ability to rely on the BD/Cytek settlement at trial.

 *E.g.*, Ex. 1 ¶ 152 n.423

When Beckman pointed this out to Cytek during the parties' meet-confer, Cytek accepted that Beckman's planned use of the BD/Cytek settlement agreement was permissible as an evidentiary matter, but shifted to challenging whether Ms. Riley's reports had preserved the ability to do so. Cytek's Motion and Proposed Order likewise suggest that Cytek plans to challenge Beckman's preservation of the settlement agreement. *See* Mot. 1 ("if previously disclosed in a damages expert

1

report and if otherwise admissible"); Proposed Order 6 ("provided such settlement terms are properly disclosed in the expert report of a damages expert and otherwise admissible."). Contrary to Cytek's assertions, Ms. Riley's expert report contains extensive analysis of the BD/Cytek settlement agreement, fully preserving Beckman's ability to rely on it at trial. For example, ███████████████████████

███████████████████████████████████████████████████

████████████████ *E.g.*, Ex. 1 ¶ 152 n.423 ████████████████

██████████ ¶153 ██████████████████████████

██████████ She also analyzed the BD/Cytek settlement as ████████████████

████████████████████ *Id.* ¶ 533 ████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████ Moreover, Ms. Riley conducted a detailed analysis of the BD/Cytek settlement agreement, ████████████████████████

████████████████████ *Id.* ¶ 534 ████████████████

███████████████████████████████████████████ ¶¶ 544-56

████████████████████████████. Based on her analysis, Ms. Riley determined that ████████████████████████

███████████████████████████████████████████████████

████████████████████████ *Id.* ¶¶ 574-75.

2

Accordingly, Cytek's Motion should be denied to the extent it seeks to preclude Beckman from relying on the BD/Cytek settlement agreement as part of Beckman's damages case.[2]  Moreover, while Beckman does not intend to discuss the allegations raised in the BD Litigation, Beckman should be permitted to incidentally reference the BD Litigation in the context of using the BD/Cytek settlement agreement to support damages.

---

[2] Depending on the order of witnesses during the liability and damages phases of trial, Beckman may need to introduce the BD/Cytek settlement agreement into evidence through a Cytek witness during the liability phase solely to allow Beckman Coulter's damages expert to opine on it during Phase II of the trial.

3

OF COUNSEL:

Robert J. Gunther, Jr.
Omar A. Khan
Jeffrey A. Dennhardt
Laura Macro
Lauren Matlock-Colangelo
Jennifer L. Graber
Maggie Sawin
Kelly A. Todd
WILMER CUTLER PICKERING
HALE and DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

James Dowd
WILMER CUTLER PICKERING
HALE and DORR LLP
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
(213) 443-5300

Akkad Y. Moussa
WILMER CUTLER PICKERING
HALE and DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037

*/s/ Frederick L. Cottrell III*
Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff*

4

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2026, true and correct copies of the foregoing

document were served upon the following counsel of record in the manner indicated:

**BY E-MAIL**

Karen Jacobs
Jeremy A. Tigan
Cameron P. Clark
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE  19801

**BY EMAIL**

Reuben H. Chen
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304

Elizabeth M. Flanagan
Cooley LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402

Adam Pivovar
Dustin M. Knight
Rosalynd D. Upton
David Yun
Cooley LLP
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004

*/s/ Christine D. Haynes*
Christine D. Haynes (#4697)
haynes@rlf.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| BECKMAN COULTER, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CYTEK BIOSCIENCES, INC.,<br><br>Defendant. | C.A. No. 24-0945-CFC |

**[PROPOSED] ORDER GRANTING-IN-PART CYTEK'S MOTION *IN LIMINE* NO. 1 TO PRECLUDE EVIDENCE, TESTIMONY, OR ARGUMENT RELATING TO EITHER PARTY'S OTHER LITIGATIONS OR ARBITRATIONS**

Defendant Cytek Biosciences, Inc. ("Cytek") having filed a Motion to Exclude evidence, testimony, or argument relating to either party's other litigations or arbitrations, and the Court having considered the Motion and the accompanying briefs; now, therefore,

IT IS HEREBY ORDERED that:

1. Cytek and Plaintiff Beckman Coulter, Inc. ("Beckman Coulter") are PRECLUDED from offering any evidence, testimony, or argument regarding either party's other litigations or arbitrations, including the *Becton Dickinson v. Cytek* et

al. litigation, and the *Becton Dickinson v. Beckman Coulter* litigation, including all allegations related therein, subject to the following exception.

2.  The foregoing shall not preclude evidence, testimony, or argument, solely in Phase II, regarding the *Becton Dickinson v. Cytek* litigation settlement agreement only for purposes of addressing reasonable royalty damages.  This Order does NOT preclude Beckman Coulter from offering the BD/Cytek settlement agreement into evidence through a Cytek witness during Phase I solely for purposes of allowing Beckman Coulter's damages expert to opine on the BD/Cytek settlement agreement during Phase II.

SO ORDERED this ___day of _____, 2026.

_____
Hon. Colm F. Connolly
Chief, United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

BECKMAN COULTER, INC.,

          Plaintiff,

      v.

CYTEK BIOSCIENCES, INC.,

          Defendant.

C.A. No. 24-0945-CFC



## DECLARATION OF LAUREN MATLOCK-COLANGELO IN SUPPORT OF PLAINTIFF BECKMAN COULTER, INC.'S OPPOSITION TO CYTEK'S MOTIONS *IN LIMINE*

I, Lauren Matlock-Colangelo, declare as follows:

1.      I am licensed to practice law in the State of New York and have been admitted to this Court *pro hac vice* by Order dated September 3, 2024. D.I. 8 (so ordered).

2.      I am an attorney with the law firm of Wilmer Cutler Pickering Hale and Dorr LLP, located at 7 World Trade Center, 250 Greenwich Street, New York, New York 10007, and counsel for Plaintiff Beckman Coulter, Inc. ("Beckman Coulter").

3.      I have personal knowledge of the facts set forth herein and with the proceedings in this case, and if called to testify, I would competently testify thereto.

4.      I submit this Declaration in support of the following oppositions by Beckman Coulter:

> a. Plaintiff Beckman Coulter, Inc.'s Opposition to Cytek's Motion *in Limine* No. 1 to Exclude Evidence, Testimony, and Argument Relating to Either Party's Other Litigations or Arbitrations
>
> b. Plaintiff Beckman Coulter, Inc.'s Opposition to Cytek's Motion *in Limine* No. 2 to Exclude Evidence, Testimony, and Argument that Cytek Copied, Stole, or Misappropriated the Technology in BEC's Products

1

c.  Plaintiff Beckman Coulter, Inc.'s Opposition to Cytek's Motion *in Limine* to Exclude Evidence, Testimony, and Argument Relating to the Court's Commentary Regarding Claim Construction

5.  A true and correct copy of excerpts from the Opening Expert Report of Michele Riley, dated December 19, 2025, is attached hereto as **Exhibit 1**.

6.  A true and correct copy of excerpts from the Opening Expert Report of David Schaafsma, dated December 19, 2025, is attached hereto as **Exhibit 2**.

7.  A true and correct copy of excerpts from the deposition transcript of Bing Shan, dated October 24, 2025, is attached hereto as **Exhibit 3**.

8.  A true and correct copy of excerpts from the Opening Invalidity Expert Report of Fedor Ilkov, Ph.D., dated December 19, 2025, is attached hereto as **Exhibit 4**.

9.  A true and correct copy of excerpts from the deposition transcript of Fedor Ilkov, Ph.D., dated February 24, 2026, is attached hereto as **Exhibit 5**.

10.  I declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code.

2

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 9th day of July, 2026.

/s/  Lauren E. Matlock-Colangelo

Lauren E. Matlock-Colangelo

# CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2026, true and correct copies of the foregoing

document were served upon the following counsel of record in the manner indicated:

**BY E-MAIL**

Karen Jacobs
Jeremy A. Tigan
Cameron P. Clark
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE  19801

**BY EMAIL**

Reuben H. Chen
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304

Elizabeth M. Flanagan
Cooley LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402

Adam Pivovar
Dustin M. Knight
Rosalynd D. Upton
David Yun
Cooley LLP
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004


*/s/ Christine D. Haynes*
Christine D. Haynes (#4697)
haynes@rlf.com

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

BECKMAN COULTER, INC.,

                Plaintiff,

       v.

CYTEK BIOSCIENCES, INC.,

                Defendant.

C.A. No. 24-000945-CFC

**EXPERT REPORT OF MICHELE M. RILEY**

December 19, 2025



150.    My bases for the conclusions summarized in **Table 8** and **Table 9** are discussed in the remainder of this section.

### *Standard Material Costs*

151.    Standard material costs include Cytek's costs for the materials it uses to produce the Accused Products.  .[412] My review of Cytek documents indicates that .[413] This is consistent with , for example.[414]

### *Other Direct Costs*

152.    "Other direct costs" include Cytek's costs associated with the production of the Accused

---

[412] Deposition of Al Hernandez, October 8, 2025, pp. 50-51.

[413] Exhibits 22.4 and 22.8.

[414] CYTEK_0000115974; See, also, Deposition of Al Hernandez, October 8, 2025, pp. 50-51; .

See Deposition of Al Hernandez, October 8, 2025, pp. 95-96.



Products, beyond standard material costs.[415] These include ███████████ ████ ██████ ██████ ███ ████████ ███ ██████████████████████████████████ ██ ████ ████████████████████ ██ ██████ ███████████████████████

---

[415] CYTEK_0000084065 (2021); CYTEK_0000213648 (2022); CYTEK_0000068829 (2023); CYTEK_0000437854 (2024); CYTEK_0000289623 (2024); Cytek stated in its 2024 form 10-K that cost of sales "associated with our products primarily consists of manufacturing-related costs incurred in the production process, inventory write-downs, warranty costs, third-party royalty costs, personnel and related costs, costs of component materials, overhead, packaging and delivery and depreciation expense." Cytek also stated that its gross margins factor in "production overhead costs." See Cytek Biosciences, Inc. Form 10-K for the fiscal year ended December 31, 2024, pp. 70, 72, and 75.

[416]  See Deposition of Al Hernandez, October 8, 2025, p. 97 and CYTEK_0000084065 (2021); CYTEK_0000213648 (2022); CYTEK_0000068829 (2023); CYTEK_0000437854 (2024); CYTEK_0000289623 (2024).

[417] ███████████████████████████████████ See CYTEK_0000115974; Deposition of Al Hernandez, October 8, 2025, p. 130.

[418] ████████████████████████████████████ See CYTEK_0000115974.

[419] ███████████████████████████████████████████ See CYTEK_0000115974 and Deposition of Al Hernandez, October 8, 2025, p. 129.

[420] ██████████████████████████████ . See CYTEK_0000115974.

[421] ████████████████████████████████████ . See CYTEK_0000115974.

[422] ███████████████████████████ See CYTEK_0000115974.

[423] ██████████████████████████████████████████████████████████████ . See CYTEK_0000115974; CYTEK_0000071182; CYTEK_0000020561 ██████████████ ; CYTEK_0000426043

[424] ███████████████████████████████████████ See CYTEK_0000115974.

██████████████████████████████████████

153.    I used ██████████████████████████████ documents ██████████████████████████
███████████ to calculate Cytek's other direct costs.[425] Because these documents cover
all Cytek instruments, I calculated each cost category other than royalty expense as a
percentage of revenue and assumed that this percentage applied proportionally to the
Accused Product revenue. ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████.[426]

154.    Deducting standard and indirect costs yields a gross margin for the Accused Products
ranging from ████████[427]

155.    This estimate is supported by Cytek's budgets for the Accused Products, which I
understand are ██████████████████████████████████,[428] and which show

████████████████████████████████████████████████████

███████████████████. For example:



- ████████████████████████████████████████████

    ████████████████████████████████████████████████

    ████████████████████████████

    ████████████████████████████████████████████████

    █████████[431]

[425] CYTEK_0000115974.

[426] ████████████████████████████████████████████████
████████████ (Deposition of Wenbin Jiang, Ph.D., November 26, 2025, p. 321).

[427] Exhibit 30.2; I note that this is a conservative measure of gross margin, ████████████████
████████████████████████████████████ (CYTEK_0000139886).

[428] Deposition of Al Hernandez, October 8, 2025, pp. 11-13.

[429] CYTEK_0000448293.

[430] CYTEK_0000109394 at 397.

[431] CYTEK_0000208404; ████████████████████████████████████
████████████████████████

### c. The Market Approach

531. The Market Approach values assets based on comparable transactions between unrelated parties. "The Market Approach to valuing intangible assets is the process by which a market value estimate is derived by analyzing similar intangible assets that have recently been sold or licensed and then comparing those intangible assets to the subject intangible asset."[1066] When considering the Market Approach, an examination of the terms of transfer for similar technology is undertaken and inferences are drawn from those observations to identify terms the parties might have agreed to at the time of the hypothetical negotiation.

532.

533. Cytek's CEO and Chairman of the Board, Dr. Jiang, ................................................ .[1071]

---

[1066] Reilly, Robert F. and Schweihs, Robert P., Valuing Intangible Assets, 1999, pp. 157-158.
[1067] Deposition of Patricia del Castillo, October 24, 2025, p. 7.
[1068] Deposition of Patricia del Castillo, October 24, 2025, pp. 56-57.
[1069] Redacted Deposition of Mario Koksch, November 7, 2025, pp. 8, 35-36.
[1070] Redacted Deposition of Mario Koksch, November 7, 2025, pp. 80, 84, 263-264.
[1071] Deposition of Wenbin Jiang, Ph.D., November 26, 2025, pp. 15, 321-322.

████████████████████████████████████████████████████████

534.    Under the Market Approach, I have analyzed the documents discussed below, including a ██████████████████████████████████████████████████ discussed by Dr. Jiang and ████████████████████████████, ████████████████████████ ████████████████████████████████████

           *i.*    ████████████████████████

535.    I reviewed a document titled, ██████████████████████████████████ ████████████████████████████████" [1072] █████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████ [1073]

536.    ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████ [1074] I note, in the interest of completeness under my analysis of the Market Approach, that ████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████ [1075]

537.    Because this document references ██████████████████████ ████████████ I reviewed ████████████████████████████ ████████████████████████████████████. [1076] ████████████ ████████████████████████████████████████████████

---

[1072] CYTEK_0000115286 at 286.
[1073] CYTEK_0000115286 at 289.
[1074] CYTEK_0000115286 at 294.
[1075] CYTEK_0000115286 at 294.
[1076] CYTEK_0000115286 at 294, 476.

231



*iv.* ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████[1098] The agreement settled ongoing

litigation between the parties, in which BD accused Cytek and a number of its former

employees of trade secret misappropriation and breach of contract.[1099] ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████[1100] ████████████████████████████

████.[1101] The parties also agreed to dismiss the pending litigation (without either party

admitting liability in the matter).[1102] ████████████████████████

████████████████.[1103] ████████████████████.[1104]

The Licensed Products ████████████████████████[1105] ████████

████████████████████████████████████████████████

████.[1106]

---

[1098] CYTEK_0000020561 at 561.

[1099] CYTEK_0000020561 at 561; Complaint in *Becton, Dickinson and Company v. Cytek Biosciences Inc., Ming Yan, Alfred Riley, David Vrane, Stephen Zhang, Zhenxiang Gong, Alex Zhong, Marina Jaimes, Gil Reinn, and Janelle Shook (Case 3:18-cv-00933-SK)*, pp. 23-35; Deposition of Wenbin Jiang, Ph.D., November 26, 2025, pp. 271-272.

[1100] CYTEK_0000020561 at ██████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████ See
CYTEK_0000020561 at 563 ████████████████████████████
████████████████████████ See CYTEK_0000020561 at 563.

[1101] CYTEK_0000020561 at 569.

[1102] CYTEK_0000020561 at 565, 576. See, also, Deposition of Wenbin Jiang, Ph.D., November 26, 2025, pp. 272-273.

[1103] CYTEK_0000020561 at 570.

[1104] CYTEK_0000020561 at 565-566.

[1105] CYTEK_0000020561 at 563, 569.

[1106] Discussions with Drs. Houston and Schaafsma.

██████████████████████████████████████████████

546. The agreement defines ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ .[1107]

547. In consideration for the above license grant, releases, covenant not to sue, and litigation dismissal, ██████████████████████████████████████████

████████████████████ [1108] Cytek agreed t████████████████████████

████████████████████, which are defined to include the ████████████

████████████████████████████████████████████ [1109] ████████████

████████████████████████████████████████████████████

██████████ .[1110] ████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████ .[1111] The parties agreed that

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████ that was alleged in the litigation proceeding.[1112]

548. Cytek also agreed ████████████████████████████████████████

████████████████████████████████████████████████

---

[1107] CYTEK_0000020561 at 563; Deposition of Wenbin Jiang, Ph.D., November 26, 2025, p. 273.

[1108] CYTEK_0000020561 at 566.

[1109] CYTEK_0000020561 at 563, 566. See, also, Deposition of Wenbin Jiang, Ph.D., November 26, 2025, pp. 273-274.

[1110] CYTEK_0000020561 at 566.

[1111] CYTEK_0000020561 at 567.

[1112] CYTEK_0000020561 at 566-567. ██████████████████████████████████████████

██████████████████████████████████████ (Deposition of Wenbin Jiang, Ph.D., November 26, 2025, pp. 273-274).

236



.[1113] In addition, on the effective date,

.[1114]

549.    There are certain similarities concerning the terms of the BD and Cytek Settlement Agreement and those of the hypothetical license, as noted below:



550.    There are certain differences concerning the terms of the BD and Cytek Settlement Agreement and those of the hypothetical license, as noted below:



---

[1113] CYTEK_0000020561 at 566.

[1114] CYTEK_0000020561 at 577; Deposition of Wenbin Jiang, Ph.D., November 26, 2025, pp. 273-274.

[1115] CYTEK_0000020561 at 569.

[1116]

[1117] CYTEK_0000020561 at 561; Complaint in *Becton, Dickinson and Company v. Cytek Biosciences Inc., Ming Yan, Alfred Riley, David Vrane, Stephen Zhang, Zhenxiang Gong, Alex Zhong, Marina Jaimes, Gil Reinn, and Janelle Shook (Case 3:18-cv-00933-SK)*, pp. 23-35.

237



551. Another important difference between the BD and Cytek Settlement Agreement and the hypothetically negotiated license is that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

552.

---

1118 CYTEK_0000020561 at 561.
1119 CYTEK_0000020561 at 567.
1120 CYTEK_0000154619 at 758.
1121 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
(CYTEK_0000426043). I note ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

███████████████████████████████████

553. ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████.[1122] ███████████████████████

█████████████████████████████████████████████.[1123]

554. █████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████.[1124] ███████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████.[1125]

555. I understand from Dr. Houston that the Asserted Patents have comparatively more technological value than the patents covered by the BD and Cytek Settlement Agreement.[1126]

556. Therefore, the effective royalty rate actually to be paid by Cytek under the terms of the BD and Cytek Settlement Agreement was ██████████████████████████ ████████.[1127] ████████████████████ reflects the royalties Cytek paid on the royalty-bearing sales made during the remaining lives of the patents licensed to Cytek from BD.

*v.* ██████████████████████

██ ████████████████████████████████████████████

████████████████████████████████████████████

██████████████‐█████████████████████████████████████

████████████████████████████████████████████

---

[1122] CYTEK_0000426043 at 075.
[1123] CYTEK_0000426043 at 075.
[1124] CYTEK_0000514743 at 744.
[1125] CYTEK_0000514743 at 748.
[1126] Discussion with Dr. Houston.
[1127] Effective royalty rate of ████████████████████████████
[1128] BEC-CYTEK-00041387 at 387, 400.

███████████████████████████████████████████████████

### viii.    Market Approach Conclusion

574. The most relevant agreement to the hypothetical negotiation that I considered under the Market Approach is the ██████████████████████████████████████ ████, which provides for a ███████████████ for the license of patents ████████ ███████████. The settlement agreement between BD and Cytek licenses patents that relate to flow cytometry, and it is a patent license to which Cytek is a party. However, this agreement was entered into in settlement of litigation (which would require a significant upward adjustment to the ███ running royalty). Further, as I discussed in my analysis of the agreement above, the effective royalty rate is actually ████████████████████ ██████████████████████████████.

575. Therefore, the Market Approach yields a royalty rate indicator in the range of ██████████ of Accused Product sales.

### d.  The Georgia-Pacific Factors

576. In the well-recognized *Georgia-Pacific* case, the court set forth certain factors to be considered when determining a reasonable royalty.[1179] These factors, commonly referred to as the *Georgia-Pacific* factors, are guidelines for evaluating the likely actions of the parties in a hypothetical negotiation. Based on the facts and circumstances of any case, the factors are not necessarily given equal weight, nor are the factors all-inclusive. Rather, the *Georgia-Pacific* factors are part of the overall analysis to determine reasonable royalty damages. Many courts, including the Court of Appeals for the Federal Circuit, have considered the *Georgia-Pacific* factors when determining a reasonable royalty rate under the construct of a hypothetical negotiation.

577. BEC and Cytek would enter into a discussion of the *Georgia-Pacific* factors after determining the negotiating reference range for the royalty rate through consideration of the income,

---

[1179] *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), mod. and aff'd, 446 F.2d 295 (2d Cir. 1971), *cert. denied*, 404 U.S. 870 (1971).

███████████████████████████████████████████

with this royalty obligation, Cytek would maintain a significant pricing advantage relative to most competitors in the ultra-high parameter segment.

## IX.    DAMAGES CONCLUSIONS

693.    If the Court determines that Defendant is liable for infringing the Asserted Patents, then Cytek owes Beckman Coulter reasonable royalty damages of at least ██████████ and ██ ████████████████████████████████████████████████, assuming damages begin on October 17, 2021.[1363] Alternatively, if the Court determines that Defendant is not liable for lost profits damages, Cytek owes Beckman Coulter reasonable royalty damages of at least ████████████████████████████████ totaling ██████████, assuming damages begin on October 17, 2021.[1364]

## X.    PREJUDGMENT INTEREST

694.    I understand that upon a finding of infringement by Defendant, Plaintiff may be entitled to collect prejudgment interest on its damages. If asked to do so, I will calculate prejudgment interest consistent with this Court's practices.

_____

Michele M. Riley
December 19, 2025

---

[1363] Exhibits 1, 1.1, 2 and 8.
[1364] Exhibit 1.1.

# EXHIBIT 2

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BECKMAN COULTER, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CYTEK BIOSCIENCES, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 24-0945-CFC-EGT |

**OPENING EXPERT REPORT OF DR. DAVID SCHAAFSMA, PHD
REGARDING INFRINGEMENT OF U.S. PATENT NOS. 10,330,582, 11,703,443, AND
12,174,107**

December 19, 2025

Dr. David Schaafsma





# EXHIBIT 3



## Transcript of Bing Shan, Corporate Designee & Individually

**Date:** October 24, 2025
**Case:** Beckman Coulter, Inc. -v- Cytek Biosciences

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY



on the front side of the block right, in the real product?

A. You mean I know this structure? Right.

Q. I'm just trying to make sure it's clear that there's a part missing from this view; right?

A. It's missing? Can you remind me which part is missing?

MR. CHEN: Objection. Calls for a legal conclusion. Foundation.

THE WITNESS: Yeah, I would suggest you not use "mirror" here.

BY MR. McGUFFIN:

Q. Okay.

Q. Okay. But there is --

A. Components, yeah.

MR. CHEN: Objection. Foundation.

BY MR. McGUFFIN:

MR. CHEN: Objection. Foundation.

BY MR. McGUFFIN:

Q. Okay. So if you can turn to the last page, I want to talk through quickly the components that are shown.

I'm going to start in the lower-left corner.

A. The last page. Okay.

Q. Yeah, the last page. Starting in the lower-left corner.

MR. CHEN: Objection. Form.

MR. CHEN: Objection. Calls for a legal conclusion.

BY MR. McGUFFIN:

MR. CHEN: Objection. Misstates testimony.

BY MR. McGUFFIN:

MR. CHEN: Objection. Calls for a legal conclusion.

BY MR. McGUFFIN:



**Page 69**

A.

Q.  Before we get to that, I do want to ask -- the optical fiber is an extended light source; right?

MR. CHEN:  Objection.  Foundation.

THE WITNESS:  What do you mean "extended light source"?

BY MR. McGUFFIN:

Q.  Are you familiar with the term "extended light source"?

A.  Can you define that?

Q.  Well, I'm asking if you're familiar with the term.

A.  I don't use this word.

Q.  So you don't know what the term "extended light source" means?

A.  I don't know the exact word.  Maybe we use different term.

**Page 70**

Q.  I'm move on.  If you don't understand the term, it's not important.

So moving up and right from the collimating lens,

**Page 71**

MR. CHEN:  Objection.  Calls for a legal conclusion.

BY MR. McGUFFIN:

Q.  So you're familiar with the term "dichroic filter"; right?

A.  Dichroic, we use a lot on the mirrors. It's different from -- from band-pass filter.

Q.  Okay.  But are you familiar with the term "dichroic filter"?

A.  Dichroic mirror, I familiar with.  Dichroic

**Page 72**

filter, I think I rarely use that as -- yeah, as a -- as a technical term.

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BECKMAN COULTER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-945 (CFC) |
| | ) | (EGT) |
| CYTEK BIOSCIENCES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPENING INVALIDITY EXPERT REPORT OF FEDOR A. ILKOV, PH.D.

Dated: _12/19/2025_

Respectfully submitted,

Fedor A. Ilkov, Ph.D.

element, such as a lens, mirror or grating, to render rays of light more nearly parallel; a collimator." (D.I. 114, Joint Claim Construction Brief at 74.) Plaintiff also suggests in the alternative that, if "collimating optical element" is construed as a "means-plus-function" term, that its function is to "(1) receive light from a light source; (2) project a collimated beam including a first image." (*Id.*) Plaintiff states that a "lens" or structural equivalents may qualify as a "collimating optical element" under this alternate construction. (*Id.*) In my opinion, Oostman's collimating lens, implemented in Lemoff's WDM, is a "**collimating optical element**" under either interpretation of the term.

231. Oostman's collimating lens added into Lemoff's zig-zag WDM also "**projects a collimated beam**" under the Court's plain and ordinary meaning construction of this term. While my opinion is that the term "collimated beam" is indefinite, in the alternative, a POSA would have understood that a beam wherein all rays of light originating from a point on the source are projected parallel with each other and those rays within the beam are neither converging (i.e., a focused beam) or diverging would satisfy the "**collimated beam**" limitation, which a POSA would have expected to project from Oostman's collimating lens when positioned at a focal length away from the output end of Lemoff's optical fiber **42**. I understand that Plaintiff has proposed that the plain and ordinary meaning of this term means "a beam with nearly parallel rays." In my opinion, the beam projected by Oostman's

collimating lens equally satisfies Plaintiff's proposed construction as well.

      **iii.**    **Claim 1[b]: "an optical relay element arranged to receive at least a portion of the collimated beam from the collimating optical element,"**

232.   The combination of Oostman and Lemoff discloses and/or renders obvious Claim 1[b] for the same reasons I provided for Claim 1[b] in Ground 1, fully incorporated here.

      **iv.**    **Claim 1[c]: "the optical relay element comprising a curved mirror configured to reflect the portion of the collimated beam received from the collimating optical element to produce a first image;"**

233.   The combination of Oostman and Lemoff discloses and/or renders obvious Claim 1[c] for the same reasons I provided for Claim 1[c] in Ground 1, fully incorporated here.

      **v.**    **Claim 1[d]: "a first focusing optical element arranged to receive at least a portion of the collimated beam reflected by the optical relay element; and"**

234.   The combination of Oostman and Lemoff discloses and/or renders obvious Claim 1[d] for the same reasons I provided for Claim 1[d] in Ground 1, fully incorporated here.

      **vi.**    **Claim 1[e]: "a first semiconductor detector,"**

235.   The combination of Lemoff and Frazier discloses and/or renders obvious Claim 1[e]. Whereas Lemoff generally teaches that each of "an array of lenses **50**, **52**, **54**, and **56** is coupled to the output end **46** of the MOB **14** to direct

150

# EXHIBIT 5



## Transcript of Fedor Ilkov, Ph.D.

**Date:** February 24, 2026
**Case:** Beckman Coulter, Inc. -v- Cytek Biosciences

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

165

document speaks for itself.

THE WITNESS: I do.

BY MR. KHAN:

Q. Okay. In your patent which recites a collimating lens, there's no indication of any divergence or convergence angle; correct?

MR. PIVOVAR: Objection to form. Lacks foundation. Mischaracterizes the document.

THE WITNESS: It implies collimating lens -- collimating light, yes.

BY MR. KHAN:

Q. So in your patent, collimating -- the collimating lens is recited in order to collimate the light; correct?

**A. That's correct.**

Q. And in your patent, it recites the collimating lens to collimate the light. The patent does not specify any convergence or divergence angle; correct?

MR. PIVOVAR: Objection to form. Lacks foundation. Calls for speculation.

THE WITNESS: Reading my patent, POSA would understand that this lens would create light with parallel beams. That's correct.

///

166

BY MR. KHAN:

Q. Okay. And --

**A. Not diverging or converging.**

Q. And so "collimating" by itself means not diverging or converging; correct?

MR. PIVOVAR: Objection to form.

THE WITNESS: That's general understanding. That's how I think POSA would interpret it, the word "collimating" and word "collimating lens" produces.

BY MR. KHAN:

Q. Okay. And the word "collimating" by itself does not mean just narrowing the spatial cross section of a light beam; correct?

MR. PIVOVAR: Objection to form. Vague. Incomplete hypothetical.

THE WITNESS: That's correct.

BY MR. KHAN:

Q. Okay. And collimating by itself does not mean reducing the divergence by the light from a common -- well, stop that. Let me just make my question clear. Sorry.

The word "collimating" by itself does not mean reducing the divergence by the light; correct?

MR. PIVOVAR: Objection to form. Vague. Incomplete hypothetical to the extent it calls for a

167

legal conclusion.

THE WITNESS: In understanding of POSA, if the light emanating from the source that collimating or -- of this light achieved with collimating lens will render the rays in this light parallel each other.

If source has a diverging light, then it renders in parallel each other.

BY MR. KHAN:

Q. So the -- I guess my question was a little bit different. So let me try -- let me see if I can rephrase slightly. Strike that.

The term "collimate" by itself, in your view, does not mean just reducing the divergence by the light; correct?

MR. PIVOVAR: Objection. Asked and answered. Vague. Incomplete hypothetical. Calls for a legal conclusion.

THE WITNESS: It's not just mean that. Among other things, it depends in the situation and specific.

BY MR. KHAN:

Q. So, in your view, the word "collimate" by itself can mean reducing divergence by the light?

MR. PIVOVAR: Objection. Mischaracterizes

168

testimony. Asked and answered. Incomplete hypothetical. Calls for a legal conclusion.

THE WITNESS: Collimation in POSA view, without specifying and limiting anything else, would understood as a parallel -- parallel rays.

And parallel rays usually apply zero divergence or zero angle between these rays.

BY MR. KHAN:

Q. Okay. So the term "collimated" by itself does not mean merely reducing divergence by the light; correct?

MR. PIVOVAR: Objection. Asked and answered several times. Lacks foundation. Incomplete hypothetical. And calls for a legal conclusion.

THE WITNESS: Reducing divergence of light could be achieved and done by quite a few different ways or approaches.

Collimation has, in optics, very specific meaning which renders the rays parallel with -- if someone for some application they wanted to use this term a little bit wider range, they could specify limits within which this terminology used.

Without that limit specifying, it's indefinite or understood as parallel rays.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BECKMAN COULTER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No.  24-0945-CFC |
| | ) | |
| CYTEK BIOSCIENCES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPLY IN SUPPORT OF CYTEK'S MOTION *IN LIMINE* NO. 1 TO
EXCLUDE EVIDENCE, TESTIMONY, AND ARGUMENT RELATING TO
<u>EITHER PARTY'S OTHER LITIGATIONS OR ARBITRATIONS</u>**

Cytek's MIL No. 1 should be granted because the parties agree that "evidence and argument relating to other litigations and arbitrations should generally be kept from the jury" (BEC Opp. at 1) and because the qualification on which BEC's opposition is based—use in BEC's damages case (*id.* at 3)—is not present. Cytek's MIL1 and proposed order expressly carve out an exception that permits BEC to use the BD/Cytek agreement in Phase 2 of the trial (if needed) in support of damages. Further, the conditions that such evidence may be used "if previously disclosed in a damages expert report and if otherwise admissible" simply indicate that Cytek does not preemptively waive any objections that may arise depending on how BEC uses this evidence *in the damages phase*. (Mot. at 1.)

BEC still asserts that it may need to "incidentally reference" the BD/Cytek agreement and introduce it into evidence via a Cytek witness during the *liability phase*. (BEC Opp. at 3 & n.2.)  But any such references to the BD/Cytek agreement during the liability phase—"incidental" or not—should be precluded because of the risk of unfair prejudice, confusion, and waste of time. Cytek will not object to the introduction of the BD/Cytek agreement in the damages phase on the basis that it was not introduced into evidence in the liability phase. And further, reference to the "settlement" aspect of that agreement in the damages phase should not be permitted; its potential relevance is limited to a royalty rate, and raising the concept of a settlement—and thus a litigation—would cause confusion and risk unfair prejudice.

1

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Reuben H. Chen
Alexandra Leeper
Juan Pablo González
HanByul Chang
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000

Elizabeth M. Flanagan
COOLEY LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402

Adam Pivovar
Dustin M. Knight
David Yun
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
(202) 842-7800

Dated: July 15, 2026

*/s/ Jeremy A. Tigan*
Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@morrisnichols.com
jtigan@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendant*
*Cytek Biosciences, Inc.*

2