# CVVCEJ O GP V'E

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BECKMAN COULTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> CYTEK BIOSCIENCES, INC., <br><br> Defendant. | C.A. No. 24-0945-CFC <br><br> ~~FILED UNDER SEAL~~ <br> ~~HIGHLY CONFIDENTIAL-~~ <br> ~~ATTORNEYS' EYES ONLY~~ |

**PLAINTIFF BECKMAN COULTER, INC.'S <u>CORRECTED</u> REPLY BRIEF IN SUPPORT OF ITS MOTIONS TO EXCLUDE CERTAIN OPINIONS OF <u>DEFENDANT'S TECHNICAL EXPERTS</u>**

OF COUNSEL:

Robert J. Gunther, Jr.
Omar A. Khan
Jeffrey A. Dennhardt
Laura Macro
Lauren Matlock-Colangelo
Jennifer L. Graber
Maggie Sawin
Kelly A. Todd
WILMER CUTLER PICKERING
HALE and DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

Akkad Y. Moussa
WILMER CUTLER PICKERING
HALE and DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037

Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................1

II.    ARGUMENT.........................................................................................1

    A.    MOTION#1: OPINIONS BASED ON "LIMITATIONS" THE CLAIMS DO NOT RECITE SHOULD BE EXCLUDED...................1

        1.    Cytek's Experts Improperly Import "Collimated" Into "Light" and "WDM" ..............................................................2

        2.    Cytek's Experts Improperly Import "Conventional" Into "Flow Cytometer" ...................................................................4

    B.    MOTION#2: OPINIONS THAT CONTRADICT THE COURT'S CONSTRUCTIONS SHOULD BE EXCLUDED...............................7

        1.    Cytek's Experts' Remaining Opinions "Collimating Optical Element" Improperly Contradict the Court's Construction........7

        2.    Cytek's Experts' Opinions on "Image" and "Collimated Beam" Contradict the Court's Construction ...........................................8

        3.    Cytek's Experts' Opinions on "First" Focusing Optical Element/Semiconductor Detector Improperly Contradict the Court's Construction ...............................................................10

    C.    MOTION#4: CLAIM CONSTRUCTION OPINIONS SHOULD BE EXCLUDED .......................................................................12

    D.    MOTION #5: DR. KONO'S OPINIONS, AND DR. ILKOV'S DERIVATIVE OPINIONS, SHOULD BE EXCLUDED..................12

III.    CONCLUSION....................................................................................14

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336 (Fed. Cir. 2010)..................13

*CAO Lighting, Inc. v. Gen. Elec. Co.*, CV-20-681-GBW, 2023 WL 1930354 (D. Del. Jan. 30, 2023)........................................................10

*EMC Corp. v. Pure Storage, Inc.*, CV-13-1985-RGA, 2016 WL 775742 (D. Del. Feb. 25, 2016).........................................................3

*EPOSpos Technologies Ltd.v. Pegasus Technologies Ltd.*, 766 F.3d 1338 (Fed. Cir. 2014)........................................................................4

*Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357 (Fed. Cir. 2006)..........................13

*Fin Control Sys. Pty, Ltd. v. OAM, Inc.*, 265 F.3d 1311 (Fed. Cir. 2001) ..........................................................................................11

*Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343 (Fed. Cir. 2005).............................................................................................11

*Guangzhou Yucheng Trading Co. v. Dbest Prods., Inc.,* 644 F. Supp. 3d 637 (C.D. Cal. 2022) ..............................................................8, 9

*Huawei Techs. Co. Ltd. v. Samsung Elecs. Co. Ltd.*, 340 F. Supp. 3d 934 (N.D. Cal. 2018) ..............................................................3

*HVLPO2, LLC  v. Oxygen Frog, LLC*, 949 F.3d 685 (Fed. Cir. 2020) ...................13

*Kraft Foods Grp. Brands LLC v. TC Heartland, LLC,* 232 F. Supp. 3d 632 (D. Del. 2017) ..........................................................................4, 6

*MediaTek, Inc. v. Freescale Semiconductor, Inc.*, 11-CV-5341-YGR, 2014 WL 971765 (N.D. Cal. Mar. 5, 2014) .................................................10

*Medtronic v. Edwards Lifesciences*, 2013 WL 12131745 (C.D. Cal. Nov. 27, 2013) ....................................................................................13

*Seachange Int'l Inc. v. C-Cor Inc.*, 413 F.3d 1361 (Fed. Cir. 2005).....................3, 5

*Silicon Graphics Inc. v. ATI Techs. Inc.*, 607 F.3d 784 (Fed. Cir. 2010) ............................................................................................3, 5

*Spherix Inc. v. VTtech Telecomms. Ltd.*, 3:13-CV-3494-M, 2015 WL 9311489 (N.D. Tex. Mar. 19, 2015) ........................................................4, 12

*Sprint Commc'ns L.P. v. Cox Commc'ns Inc.*, 302 F. Supp. 3d 597 (D. Del. 2017) ...................................................................................................8

*SuperGuide Corp. v. DirecTV Enterprises, Inc.*, 358 F.3d 870 (Fed. Cir. 2004) ..................................................................................................5, 6

*Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012) ...................................................................................................2

*TQ Delta, LLC v. ADTRAN, Inc.*, CV-14-954-RGA, 2019 WL 5626638 (D. Del. Oct. 31, 2019) ...................................................................5

*Trudell Med. Int'l Inc. v. D R Burton Healthcare, LLC*, 127 F.4th 1340 (Fed. Cir. 2025) ............................................................................8

## STATUTES, RULES, AND REGULATIONS

Fed. R. Evid. 702 ............................................................................................1, 2

## I.    INTRODUCTION

Beckman's *Daubert* Motions #1, 2, and 4 identified methodological defects that pervade Cytek's technical experts' opinions:  they improperly read in limitations that neither the claims nor the Court's constructions require.  Cytek's Opposition confirms its experts offered improper opinions by withdrawing 97 such paragraphs.[1]  Cytek offers no principled reason why the remaining challenged opinions, suffering from the same errors, are admissible.  Beckman also moves to exclude what Cytek now calls "lay" testimony from Dr. Kono (and Dr. Ilkov's derivative opinions) on the availability of carbon nanotubes (Motion#5).  Cytek fails to show how these opinions are relevant, supported by sufficient facts and data, or otherwise reliable.  Dr. Kono's "lay" opinions fall squarely within this Court's Rule 702 gatekeeping responsibility and should be excluded.

## II.    ARGUMENT

### A.    MOTION#1: OPINIONS BASED ON "LIMITATIONS" THE CLAIMS DO NOT RECITE SHOULD BE EXCLUDED

Cytek's experts improperly import optional specification features into the claims.  Opening-Br.4-1~~1~~2.  Cytek concedes this by withdrawing 41 paragraphs of opinions on "flow cell," "filter," and "configured to receive."  Cytek-Br.5. Although Cytek's experts' opinions on "light," "WDM," and "flow cytometer"

---

[1] Cytek agreed that it would not offer expert testimony relying on invalidity, including Section 112, as a basis for non-infringement.  Cytek-Br.19-20.  That agreement resolves Motion#3.

1

commit the same methodological error, Cytek attempts to defend those opinions under the guise of "plain meaning." Cytek-Br.2-5. But a broad term like "light" cannot be limited to one particular subtype, i.e., "collimated light," and Cytek did not seek such a narrow construction. Rule 702 requires exclusion of these equally improper opinions.

### 1.    Cytek's Experts Improperly Import "Collimated" Into "Light" and "WDM"

Cytek's experts improperly limit "light" to one subtype, "collimated light," and likewise limit "WDM" to one subtype—WDMs that propagate a "collimated beam" through their "relay architecture." Opening-Br.5-6, 8-9. Cytek does not deny that its "collimated" limitation is not in the claims, and its arguments that seek to import that requirement are unsupportable.

*First*, Cytek's argument that limiting the claims to "collimation" is "consistent" "with "the specification" (Cytek Br. 4) ignores that a "patentee is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning." *Thorner v. Sony Comput. Ent. Am.*, 669 F.3d 1362, 1367 (Fed. Cir. 2012).[2] It is correspondingly improper to "read limitations from the specification into [the] claims" or "redefine [claim] words," including under the guise of plain meaning. *Id.* at 1366. The Federal Circuit rejects attempts to limit broad terms to

---

[2] All emphases added unless otherwise indicated.

a particular subtype.  *E.g.*, *Silicon Graphics v. ATI Techs.*, 607 F.3d 784, 787, ~~790~~-91 (Fed. Cir. 2010) (rejecting attempt to limit "rasterization" to "floating point rasterization"); *Seachange Int'l v. C-C*OR~~or~~, 413 F.3d 1361, 1376-77 (Fed. Cir. 2005) (rejecting attempt to limit "processor" to processors running "application type software").  Expert "opinion that seeks to limit the full scope of a term's plain and ordinary meaning must be stricken." *Huawei Techs. v. Samsung Elecs.*, 340 F. Supp. 3d 934, 968 (N.D. Cal. 2018); *see also EMC. v. Pure Storage*, 2016 WL 775742, *4 (D. Del. Feb. 25, 2016) (experts are "precluded from testifying that [the] specification" limits "the plain and ordinary meaning of claim terms").

**Second**, Cytek is mistaken that Beckman's expert Dr. Schaafsma supports limiting the claims to "collimation."  Cytek-Br.4.  Dr. Schaafsma opines that light must enter the claimed WDMs in some controlled manner, and identifies collimation as one way to do so while also noting that a POSA would recognize other methods (e.g., "an image relay") could be used.  Ex.35, ¶¶802-803.  Dr. Schaafsma also explains that "using a collimating optical element" is one way to control light, but it "***is not recited*** in the claims" and "so it would be improper to import these disclosures from the specification."  *Id.*, ¶¶803, 817, 865; Ex.36, ¶¶80-84; Ex.37, ¶¶25-28, 69-70; *see also* Ex.33, ¶¶52, 137.  Dr. Schaafsma thus refutes Cytek's position.

3

### 2.    Cytek's Experts Improperly Import "Conventional" Into "Flow Cytometer"

Cytek also seeks to limit "flow cytometer" to "***conventional*** flow cytometers" despite that no claim recites that limitation.  Opening-Br.10-11. Cytek's arguments lack merit.

***First***, Cytek is mistaken that "flow cytometer" may be limited to "conventional" devices based on "the specification."  Cytek-Br.3-4.  The Federal Circuit rejected a near-identical argument in *EPOSpos Technologies v. Pegasus Technologies*, finding it improper to "import[] the word 'conventional' from preferred embodiments into its construction of the term" "drawing implement." 766 F.3d 1338, 1343 (Fed. Cir. 2014).  "Although … the specifications recite embodiments including 'conventional' writing implements," the Federal Circuit held, "[t]he ***claims*** do not state that the 'drawing implement' must be 'conventional.'"  *Id.*  The same is true here:  the claims are not limited to "***conventional*** flow cytometers," and Cytek's attempt to "import [that] limitation[] … through expert testimony" is "not permit[ted]."  *Kraft Foods Grp. Brands v. TC Heartland,* 232 F. Supp. 3d 632, 635 (D. Del. 2017).  Indeed, "the absence of an adjective" in front of a term "signifies that [the term] is intended to encompass various [] types [of that term], in accordance with the broad, ordinary and customary meaning." *Spherix v. VTtech Telecomms.*, 2015 WL 9311489, at

4

*28-31 (N.D. Tex. Mar. 19, 2015); ~~see also id.~~ ("network" is not limited "IP network"); *Silicon Graphics*, 607 F.3d at 790-91; *Seachange*, 413 F.3d at 1376-77.

*TQ Delta v. ADTRAN*, 2019 WL 5626638 (D. Del. Oct. 31, 2019) (Cytek-Br.3) is not to the contrary.  There, the defendant moved to exclude opinions it argued imported a "purpose" requirement contrary to "the Court's claim construction."  *Id*. at *1.  The Court denied the motion, not because "limit[ing] the scope of the claims to a preferred embodiment" is permissible (the Court recognized it is not), but because the challenged opinion did not "limit the claims to any particular purpose."  *Id.* at *2.  By contrast, Cytek admits that its experts import their "conventional" requirement based on "examining the specification," arguing non-infringement based on a limitation that is not in the claims.  Cytek-Br.3-4.  *TQ Delta* thus supports exclusion.

*Second*, Cytek's claim that it may import a "conventional' limitation because "[s]pectral flow cytometers with a mirror-filter beam relay architecture" were "not available before 2012-2013" (Cytek-Br.3) is legally irrelevant and factually wrong.  The Federal Circuit rejected that argument in *SuperGuide v. DirecTV Enterprises*, 358 F.3d 870 (Fed. Cir. 2004), where the district court limited "television signals" to "analog signals" and excluded "digital television signals" because "the only type of television signals" used as of the priority date "were analog signals."  *Id.* at 87~~6-805~~-76.  The Federal Circuit reversed, holding,

5

"[t]he claim language does not limit the disputed phrases to any particular type of technology or specify a particular type of signal format, such as analog or digital," and "neither 'analog' nor 'digital' appears in any of the asserted claims." *Id.* at 878-80. The same is true here: the claims are not limited to either "conventional" or "spectral" flow cytometers—they recite "flow cytometers" broadly. Ex.33, ¶¶42, 53-54, 120; Ex.38, 47:12-48:8.

Moreover, spectral flow cytometers were already known. Cytek's expert admitted that Sony launched a "spectral flow cytometer" around "2010," which itself was "quite a few years after [a] paper and patent on spectral flow cytometer" had been published. Ex.10-A, 214:7-215:10. By claiming "flow cytometers" generally, the inventor encompassed all such devices—conventional, spectral, or otherwise. *SuperGuide*, 358 F.3d at 880 ("Had the patentees intended to limit the disputed claim terms to 'analog' technology, they could have easily done so" by reciting "analog").

***Finally***, Cytek attempts to distinguish *Kraft*'s holding that "the law does not permit [a party] to import limitations from the specification into the claims through expert testimony," 232 F. Supp. 3d at 634-35, arguing the dispute involved terms the Court construed. Cytek-Br.4-5. But *Kraft* found that importing limitations is impermissible whether it be through claim construction or expert testimony. 232 F. Supp. 3d at 634-35. The opinions here should be excluded for the same reason.

6

**B.    MOTION#2: OPINIONS THAT CONTRADICT THE COURT'S CONSTRUCTIONS SHOULD BE EXCLUDED**

**1.    Cytek's Experts' Remaining Opinions "Collimating Optical Element" Improperly Contradict the Court's Construction**

Cytek agrees opinions inconsistent with the construction of "collimating optical element" are improper and withdraws certain of those opinions,[3] but refuses to withdraw other equally improper testimony.  Cytek-Br.5-8.  These opinions should be excluded in full.

*First*, Dr. Leary's testimony at Cytek-Ex.B, ¶¶356, 364-366 is inconsistent with the means-plus-function construction that "a lens and structural equivalents are sufficient to satisfy the claimed functions."  Opening-Br.13-14.  Cytek contends the paragraphs address only the function adopted by the Court.  Cytek-Br.7-8.  But in opining that a "collimating optical element" requires an optical component "placed at [a] focal length," Dr. Leary advances the same structure Cytek proposed and this Court rejected during *Markman* (i.e., an optical component at a focal distance from a light source).  Ex.16, 3-4.

*Second*, Drs. Ilkov's and Leary's opinions that the Accused Products' "optical relay element" does not receive a collimated beam (Cytek-Ex.A, ¶¶141,

---

[3] Cytek vaguely suggests that if its experts' opinions are excluded, some of "Dr. Schaafsma's opinions" on "collimating optical element" should be too.  Cytek-Br.6.  But it does not say which opinions it challenges, and any objection now comes too late under the Court's rules.  *See* D.I.25, ¶19(b).

148-149; Cytek-Ex.B, ¶373) are contrary to the Court's ruling that the claimed functions "***do not*** contain the additional requirement of an optical relay element." Opening-Br.14; Ex.16, 2-3.  Contrary to Cytek's argument (Cytek-Br.8), the Court did ***not*** "agree" that "the claim language as a whole includes th[e] additional requirement" that the collimating optical element projects the beam onto the optical relay element; as noted, the Court found the opposite.  Ex.16, 3.

### 2. Cytek's Experts' Opinions on "Image" and "Collimated Beam" Contradict the Court's Construction

Expert testimony that an "image" must have ray convergence at the image plane and that a "collimated beam" can have no convergence contradict the Court's constructions and should be excluded.  Opening-Br.15-16.  Cytek's counterarguments lack merit.

***First***, Cytek is wrong that its experts may contradict the Court when "address[ing] indefiniteness."  Cytek-Br.9-10, 13.  Opinions "untethered from the district court's claim constructions" are improper regardless of the purpose for which they are offered.  *Trudell Med. Int'l v. D R Burton Healthcare*, 127 F.4th 1340, 1349-50 (Fed. Cir. 2025); *see also Guangzhou Yucheng Trading v. Dbest Prods.,* 644 F. Supp. 3d 637, 649-50 (C.D. Cal. 2022) (experts may not "offer invalidity opinions" that rely on "additional, narrowing claim construction" "inconsistent with the Court's construction"); *Sprint Commc'ns v. Cox Commc'ns ,* 302 F. Supp. 3d 597, 620 (D. Del. 2017) (same).

8

*Second*, Cytek does not dispute dozens of improper expert opinions challenged in Beckman's motion that contradict the construction of "image" as a "representation of an object created by light or emanating from a light source." Opening-Br.15-16.  Cytek attempts to defend only three paragraphs of its reports (Ex.13, ¶¶173, 175; Ex.17, ¶430), which opine that the path between M1 and M2 cannot be an "image" because "[t]he Court did not define 'image' to include a three-dimensional beam segment." Cytek-Br.12-13.[4]  But nothing in the Court's construction precludes a three-dimensional beam segment, and Cytek's experts "should not be allowed to offer" an inconsistent, "additional, narrow[er]" meaning of "image." *Guangzhou*, 644 F. Supp. 3d at 649-50.

*Third*, for the term "collimated beam," Cytek's suggestion that its experts may opine to the jury on "what degree of divergence" and "convergence could be accepted" in a "collimated beam" (Cytek-Br.13-14) misses the point.  Cytek's experts opine that the term "collimated beam" can *only* be met by parallel rays, excluding *any* amount of convergence.  *E.g.*, Ex.12, ¶¶902 ("collimated (*i.e.,* light consisting of *parallel rays*)"), 903 ("are *parallel* (i.e., a collimated beam)"), 904 ("The rays from the point source *all emerge parallel* to each other, so we say that they are collimated.") (emphasis modified), 905 ("the rays of light become *parallel*

---

[4] Cytek's assertion that Dr. Ilkov can "properly apply the Court's construction of 'image'" (Cytek-Br.10-13) defeats its Motion #1B argument on indefiniteness (D.I.244). *See* D.I.302, 25-30.

9

and the produced light beam is collimated"); Ex.17, ¶319 ("A converging beam ***cannot*** be a 'collimated beam.'").  These opinions contradict the Court's ruling that it "was not persuaded that an artisan of ordinary skill would find that a 'collimated beam' requires perfectly parallel rays."  Ex.16, 3-4.

Nor should Cytek be allowed to argue that the prosecution history from a later, unasserted patent permits contradicting the Court's ruling.  Cytek-Br.15-16.  Experts "rel[ying] heavily on the prosecution history" are not "merely offering testimony … [on] the plain and ordinary meaning" because the "prosecution history raises issues solely for the court, not the jury."  *MediaTek v. Freescale Semiconductor*, 2014 WL 971765,*5 (N.D. Cal. Mar. 5, 2014); *CAO Lighting v. Gen. Elec.*, 2023 WL 1930354, *6 (D. Del. Jan. 30, 2023) (excluding opinion that "improperly relie[d]" on "patent's file history to import a limitation").

### 3. Cytek's Experts' Opinions on "First" Focusing Optical Element/Semiconductor Detector Improperly Contradict the Court's Construction

Cytek's experts also contradict the Court's constructions by imposing a sequence requirement on the "first" focusing optical element/semiconductor detector.  Opening-Br.17-19.  The Court rejected Cytek's argument that ~~"first" means "initial" and~~ "second" must immediately follow "first" ~~means "second sequential"~~ for claim 18 of the '582 patent at *Markman*.  Ex.18, 162:3-

10

~~163:17~~164:25, 47:4-9.  Undaunted, Cytek repackages this argument for claim 1 (and its dependent claims) under the guise of "plain meaning."  Cytek-Br.17-19.

Cytek argues its experts can ignore the Court's analysis of claim 18, rejecting the same sequencing argument Cytek now makes for claim 1, merely because these are differently numbered claims.  Cytek-Br.16-18.  This argument strains credulity because the relevant language in both claims is the same.  *Fin Control Sys. v. OAM*, 265 F.3d 1311, 1318 (Fed. Cir. 2001) ("[T]he same terms appearing in different portions of the claims should be given the same meaning....").  Consistent with the Court's analysis of claim 18, and contrary to Cytek's argument on claim 1, the Federal Circuit has found "[t]he use of the terms 'first' and 'second' is a common patent-law convention to distinguish between repeated instances of an element or limitation"—not a sequencing requirement. *Free Motion Fitness v. Cybex Int'l*, 423 F.3d 1343, 1348 (Fed. Cir. 2005).  And, as this Court explained, because Cytek agreed that claim 18 "does not read on Figure 25," the Court did not need to adopt any specific sequencing.  Ex.18, 162:3-163:17.  Cytek and its experts also agree that claim 1 (and all other asserted '582 claims) does not read on Figure 25 (Ex.12, ¶1110); thus, the Court's reasoning for claim 18 also applies to the "first semiconductor detector" and "first focusing

11

optical element" in claim 1 and its dependents.  The Court should reject Cytek's attempt to rehash arguments it has already rejected.[5]

### C.   MOTION#4: CLAIM CONSTRUCTION OPINIONS SHOULD BE EXCLUDED

In addition to importing "conventional" into "flow cytometer" (*see* Motion#1), Cytek's experts—at the same time—take the contradictory position that other dependent claims are limited to "spectral" flow cytometers.  Opening-Br.21-22.  These opinions are improper for the identical reasons discussed above. *Supra* Section II.A.  Cytek says that limiting the claims to "spectral flow cytometers" is based on "plain meaning," now for the term "capable of detecting a substantially full spectrum of visible light."  Cytek-Br.20.  But "limit[ing]" a broad term "to a particular type" is not plain meaning.  *Spherix*, 2015 WL 9311489, *28-31.  Rather, the claim term can be met by any flow cytometer that can detect a substantially full spectrum of visible light.  *See* Ex.29, ¶¶404-407; Ex.30, ¶¶222, 235, 257, 273-276; Ex.33, ¶¶638-642; Ex.34, ¶¶298-307.

### D.   MOTION #5: DR. KONO'S OPINIONS, AND DR. ILKOV'S DERIVATIVE OPINIONS, SHOULD BE EXCLUDED

Dr. Kono's methodologically flawed opinions on carbon nanotubes should

---

[5] At a minimum, Cytek's arguments re-interpreting "first" as "initial" are improper claim construction that fails for the reasons discussed in Motion #4.

be excluded.[6]  Opening-Br.22-26.  Cytek fails to justify presenting these opinions at trial.[7]

   ***First***, Cytek confusingly asserts that Dr. Kono should be permitted to opine that "the inventor of the Asserted Patents did not … enable[] a flow cytometer" (Ex.20, ¶45) because Dr. Kono purportedly uses "enabled" in its "lay sense only." Cytek-Br.25.  But it is "plainly wrong" to permit a witness to provide "lay testimony regarding [the witness's] perception and experience" on invalidity. *HVLPO2 v. Oxygen Frog*, 949 F.3d 685, 688-89 (Fed. Cir. 2020).  Notably, Dr. Kono did not "read the entire patents" and cannot know what they "enabled." Ex.9, 105:13-156.

   Nor are Dr. Kono's opinions on supposed real-world "availab[ility]" of carbon nanotubes "relevant" (Cytek-Br.24) since written description and enablement do not require actual reduction to practice.  *Ariad Pharms. v. Eli Lilly*, 598 F.3d 1336, 1351-52 (Fed. Cir. 2010); *Medtronic Inc. v. Edwards Lifesciences Corp.*, 2013 WL 12131745, *5 (C.D. Cal. Nov. 27, 2013) (citing *Falko-Gunter*

---

[6] Since both parties' move to exclude opinions of the other's carbon nanotube expert (*see* D.I.232#2), Beckman proposed to reduce the burden on the Court in resolving these motions by mutually agreeing not to call either expert at trial; Cytek refused to meet-and-confer and refused Beckman's proposal.  Ex.31.

[7] Cytek's suggestion that Dr. Kono does not provide opinions as a POSA (Cytek-Br.23-24) misses the point.  Dr. Kono not only lacks requisite qualifications, his resulting opinions are also irrelevant and unreliable.  *See* Opening-Br.24-25.

*Falkner v. Inglis*, 448 F.3d 1357, 1366-67 (Fed. Cir. 2006)).  Cytek's claim that these cases are "inapplicable because Kono does not opine on invalidity" (Cytek-Br.26) only confirms his "enablement" testimony—which is an invalidity issue—should be excluded.

*Second*, Dr. Kono also cannot opine on commercial availability because he is "not an expert of … commercial availability," does not know "the threshold to say [something] is available," "cannot provide an expert opinion" on the topic, and did not apply a reliable methodology.  Ex.9, 39:6-9, 41:18-20, 120:14-122:13.  Cytek cites no case supporting its contention that Dr. Kono may "broadly evaluate[]" commercial availability.  Cytek-Br.25-26.  Dr. Kono's rank speculation about availability, divorced from any expertise or legal standard, does not reflect reliable methodology and should be excluded.

## III.   CONCLUSION

Beckman's Motions to Exclude #1-5 should be granted.

OF COUNSEL:

Robert J. Gunther, Jr.
Omar A. Khan
Jeffrey A. Dennhardt
Laura Macro
Lauren Matlock-Colangelo
Jennifer L. Graber
Kelly A. Todd
Maggie Sawin
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

Akkad Y. Moussa
WILMER CUTLER PICKERING HALE AND DORR LLP
2100 Pennsylvania Ave.
NW Washington, DC 20037
(202) 663-6000

Dated: ~~April 29~~July 28, 2026

/s/ Frederick L. Cottrell, III
Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff*

15