# CVVCEJ O GP V'H

███████████████████████████████████████████

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| BECKMAN COULTER, INC., | C.A. No. 24-0945-CFC-EGT |
| Plaintiff, | |
| v. | ██████████████████████ |
| | ██████████████████████ |
| CYTEK BIOSCIENCES, INC., | |
| Defendant. | ████████████████<br>**TGFCEVGF'/'RWDNE'XGTUKQP** |

**PLAINTIFF BECKMAN COULTER, INC.'S CORRECTED OPENING BRIEF IN SUPPORT OF MOTION TO EXCLUDE CERTAIN OPINIONS OF DEFENDANT'S TECHNICAL EXPERTS: FEDOR A. ILKOV, PH.D., BERNHARD H. WEIGL, PH.D., JAMES F. LEARY, PH.D., AND JUNICHIRO KONO, PH.D.**

OF COUNSEL:

Robert J. Gunther, Jr.
Omar A. Khan
Jeffrey A. Dennhardt
Laura Macro
Lauren Matlock-Colangelo
Jennifer L. Graber
Maggie Sawin
Kelly A. Todd
WILMER CUTLER PICKERING
HALE and DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

Akkad Y. Moussa

Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff*

WILMER CUTLER PICKERING
HALE and DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037

████████████████████████

## TABLE OF CONTENTS

Page

I.     INTRODUCTION .................................................................................1

II.    NATURE AND STAGE OF PROCEEDINGS ...........................................2

III.   STATEMENT OF FACTS .....................................................................2

IV.    SUMMARY OF ARGUMENT................................................................2

V.     LEGAL STANDARDS.........................................................................4

VI.    ARGUMENT......................................................................................4

       A.     MOTION #1: DRS. ILKOV'S AND LEARY'S OPINIONS THAT IMPROPERLY READ LIMITATIONS INTO CLAIMS SHOULD BE EXCLUDED .....................................................................4

              1.     Drs. Ilkov' and Leary's Opinions That Import "a Collimated Beam" Into "Light" Limitations ...................................5

              2.     Drs. Ilkov's and Leary's Opinions That Import "Dichroic" Into "Filter/Optical Filter" Limitations ...........................6

              3.     Drs. Ilkov' and Leary's Opinions That Import a "Concave Mirror and Aberration Corrector Plate" Into "Flow Cell" Limitations ..........................................................7

              4.     Drs. Ilkov's and Leary's Opinions That Import a Collimated Beam Into "WDM" Limitations..............................8

              5.     Drs. Ilkov's and Leary's Opinions Import "Conventional" Into the "Flow Cytometer" Limitations ............................10

              6.     Drs. Ilkov's and Leary's Opinions Import "Directly" Into the "Configured To Receive" Limitation ......................12

       B.     MOTION 2: DRS. ILKOV'S AND LEARY'S OPINIONS THAT CONTRADICT THE COURT'S CLAIM CONSTRUCTIONS SHOULD BE EXCLUDED ...........................................................13

i

1.    Drs. Ilkov's and Leary's Opinions That Are Contrary to the Court's Construction of "Collimating Optical Element" Are Unreliable ..................................................................................13

2.    Drs. Ilkov's and Leary's Opinions That Contradict the Court's Construction Regarding "Image" and "Collimated Beam" Are Unreliable ..................................................................................15

3.    Drs. Ilkov's and Leary's Opinions Requiring Sequence in the Second "Focusing Optical Element" and "Semiconductor Detector" Are Inconsistent With the Court's Claim Construction and Should Be Excluded ....................................17

C.    MOTION #3: DRS. ILKOV'S AND LEARY'S OPINIONS ON NON-INFRINGEMENT BASED ON A LACK OF ENABLEMENT AND WRITTEN DESCRIPTION SHOULD BE EXCLUDED ........19

D.    MOTION #4: DRS. ILKOV'S AND WEIGL'S IMPROPER CLAIM CONSTRUCTION OF "SUBSTANTIALLY FULL SPECTRUM OF VISIBLE LIGHT" SHOULD BE EXCLUDED ................................21

E.    MOTION #5: JUNICHIRO KONO'S EXPERT OPINIONS SHOULD BE EXCLUDED AND DR. FEDOR ILKOV's DERIVATIVE OPINIONS RELYING ON DR. KONO SHOULD BE STRUCK ................................................................................ 22-23

VII.    CONCLUSION .......................................................................................26

ii

████████████████████████████████████████████████████████

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*,
2017 WL 3528606 (D. Del. Aug. 16, 2017)...................................................25

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
239 F.3d 1343 (Fed. Cir. 2001) ........................................................................3

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
598 F.3d 1336 (Fed. Cir. 2010) .............................................................23, 25

*Callpod, Inc. v. GN Netcom, Inc.*,
703 F. Supp. 2d 815 (N.D. Ill. March 29, 2010) ...........................................16

*Cordis Corp. v. Bos. Sci. Corp.*,
561 F.3d 1319 (Fed. Cir. 2009) ..........................................................9, 11, 21

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993).........................................................................................4

*Dow Corning Wright Corp. v. Osteonics Corp.*,
939 F. Supp. 65 (D. Mass. 1996)......................................................................9

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009) ................................................................ 14-17

*Falko-Gunter Falkner v. Inglis*,
448 F.3d 1357 (Fed. Cir. 2006) .....................................................................25

*Farmhand, Inc. v. Craven*,
455 F.2d 609 (8th Cir. 1972) ...........................................................................9

*Guangzhou Yucheng Trading Co. v. Dbest Prods., Inc.*,
644 F. Supp. 3d 637 (C.D. Cal. 2022).......................................................21-22

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
755 F.3d 1367 (Fed. Cir. 2014) .......................................................................5

*In re ChanBond, LLC Pat. Litig.*,
2019 WL 6910284 (D. Del. Dec. 19, 2019) ...................................................22

RLF1 35513037v.2

*In re Wands*,
    858 F.2d 731 (Fed. Cir. 1988) ...........................................................................24

*Inline Connection Corp. v. AOL Time Warner Inc.*,
    2007 WL 275928 (D. Del. Jan. 29, 2007) ....................................... 22, 25-26

*Kraft Foods Grp. Brands LLC v. TC Heartland, LLC*,
    232 F. Supp. 3d 632 (D. Del. 2017) ............................ 5, 6, 7, 8, 9, 10, 11, 12

*Lee's Aquarium & Pet Prods., Inc. v. Python Prods., Inc.*,
    1998 WL 129903, 152 F.3d 945 (Fed. Cir. 1998)...................................3, 20

*Linear Technology Corp. v. International Trade Comm'n*,
    566 F.3d 1049 (Fed. Cir. 2009) ......................................................................12

*Liquid Dynamics Corp. v. Vaughan Co.*,
    449 F.3d 1209 (Fed. Cir. 2006) ......................................................................19

*Medtronic, Inc. v. Cardiac Pacemakers, Inc.*,
    721 F.2d 1563 (Fed. Cir. 1983) ......................................................................20

*Medtronic Inc. v. Edwards Lifesciences Inc.*,
    2013 WL 12131745 (C.D. Cal. Nov. 27, 2013) ............................................25

*Pulse Electronics, Inc. v. U.D. Electronic Corp.*,
    860 F. App'x 735 (Fed. Cir. 2021)...................................................................5

*Trudell Med. Int'l Inc. v. D R Burton Healthcare, LLC*,
    127 F.4th 1340 (Fed. Cir. 2025) .............................................................14, 17

*United States v. Hebshie*,
    754 F. Supp. 2d 89 (D. Mass. 2010).............................................................24

## STATUTES, RULES, AND REGULATIONS

Fed. R. Evid. 702 ................................................................................................4, 24

iv

## I.    INTRODUCTION

Beckman Coulter ("Beckman") is a pioneer and innovator in flow cytometer technologies.  Beckman's groundbreaking technology revolutionized the industry with its flagship product—CytoFLEX—the first commercially available instrument of its kind.  Beckman's patents covering that technology describe novel wavelength division multiplexers ("WDMs") optical subsystems combined with semiconductor detectors, such as small area avalanche photodiodes ("APDs"), not previously used in flow cytometers.  The three patents at issue here cover CytoFLEX and are asserted against Beckman's director competitor, Cytek Biosciences, Inc. ("Cytek"), for its widespread infringement of Beckman's patented technology.

In an improper effort to evade accountability for its infringement, Cytek offers opinions from four different technical experts consisting of dozens of invalidity and non-infringement theories that do not comport with patent law. Notwithstanding the Court's having already dedicated two full-day *Markman* hearings to construing fourteen terms proposed by Cytek, Cytek's proffered expert opinions now seek (improperly) to import numerous additional non-limiting features of example embodiments from the specification into the claims, are untethered from the Court's clear claim construction rulings, improperly conflate infringement and validity analysis, and would confuse and mislead the jury on

1

legally irrelevant issues.  As Cytek's technical experts repeatedly admitted during their depositions, they did not ground their opinions in the claim language, which renders their opinions methodologically unsound and requires their exclusion.

## II.  NATURE AND STAGE OF PROCEEDINGS

Beckman brought this action against Cytek in August 2024 for its infringement of both U.S. Patent No. 11,703,443 ("the '443 patent") and U.S. Patent No. 10,330,582 (the "'582 patent").  D.I. 1.  On January 9, 2025, Beckman amended its complaint to also allege infringement of U.S. Patent No. 12,174,107 (the "'107 patent").  D.I. 42.  Trial is set for August 17, 2026.  D.I. 198.

## III.  STATEMENT OF FACTS

On December 19, 2025, Cytek offered the expert opinions of Drs. Fedor Ilkov, Bernhard Weigl, and Junichiro Kono to support its invalidity case.  Exs.12, 19, 20.  On January 20, 2026, Cytek offered expert opinions of Drs. Ilkov and James Leary regarding non-infringement.  Exs.13, 17.  On February 9, 2026, Cytek's experts, including Drs. Ilkov and Kono, submitted reply reports.  Exs.14, 21.

## IV.  SUMMARY OF ARGUMENT

Many of Cytek's technical expert opinions should be excluded for failing to apply the basic legal framework for a proper invalidity or non-infringement analyses—including failing to apply the claims as they have been construed by the

2

RLF1 35513037v.2

Court.  *See Lee's Aquarium & Pet Prods., Inc. v. Python Prods., Inc.*, 1998 WL 129903, at *1, 152 F.3d 945 (Fed. Cir. 1998) ("The infringement analysis has two prongs: (1) claim construction and (2) application of the claims to the accused product."); *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) ("Only when a claim is properly understood can a determination be made whether the claim 'reads on' an accused device or method, or whether the prior art anticipates and/or renders obvious the claimed invention.").

> 1.    *Cytek's Technical Experts Import Limitations from the Optional Embodiments in the Specification Into Claim Limitations.*  The Court should exclude opinions that read requirements into the claim terms "flow cytometer," "WDM," "light," "flow cell," "filter," and "receive light from" based on the non-limiting features of example embodiments disclosed in the specification.

> 2.    *Cytek's Technical Experts Fail to Apply the Court's Claim Constructions.*  The Court should exclude opinions that apply Cytek's proposed constructions that the Court fully considered and rejected.

> 3.    *Cytek's Technical Experts Use Invalidity as a Basis for Non-Infringement.*  The Court should exclude opinions that misuse the alleged lack of enablement or written description as reasons for non-infringement.

3

████████████████████████████████████████████

> **4.    *Cytek's Technical Experts Engage in Improper Claim Construction.***
> The Court should exclude opinions that purport to construe "capable of detecting a substantially full spectrum of visible light" to mean "spectral flow cytometry."

> **5.    *Cytek's Technical Expert, Dr. Kono, Is Not a POSA and Cannot Be Relied Upon for His Incomplete Analysis on Carbon Nanotubes.***  Dr. Kono's opinions and Dr. Ilkov's derivative opinions on the commercial availability of carbon nanotubes should be excluded.  Dr. Kono admitted that he is not a POSA, never read the patents in full, and did not engage in reliable methodology to opine on commercial availability, let alone the factors necessary to support written description and enablement.

## V.    LEGAL STANDARDS

Under Federal Rule of Evidence 702, the Court must "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); Fed. R. Evid. 702.

## VI.    ARGUMENT

### A.    MOTION #1: DRS. ILKOV'S AND LEARY'S OPINIONS THAT IMPROPERLY READ LIMITATIONS INTO CLAIMS SHOULD BE EXCLUDED

Cytek's technical experts admit that they imported limitations from the specification into the claim terms "flow cytometer," "WDM," "light," "flow cell,"

4

RLF1 35513037v.2

"filter," and "receive light."  Ex.13, Ilkov Rebuttal Report ¶¶50, 255-258, 276-279; Ex.17, Leary Rebuttal Report ¶¶152, 155, 248.  These opinions should be excluded.  "As [the Federal Circuit has] repeatedly held, it is improper 'to import limitations from the specification into the claims.'"  *Pulse Elecs., Inc. v. U.D. Elec. Corp.*, 860 F. App'x 735, 737 (Fed. Cir. 2021) (quoting *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371-72 (Fed. Cir. 2014)).  It is appropriate to exclude these expert opinions under *Daubert* because "the law does not permit [a party] to import limitations from the specification into the claims through expert testimony."  *Kraft Foods Grp. Brands LLC v. TC Heartland, LLC*, 232 F. Supp. 3d 632, 635 (D. Del. 2017).

### 1.    Drs. Ilkov' and Leary's Opinions That Import "a Collimated Beam" Into "Light" Limitations

Drs. Ilkov's and Leary's opinions that the claimed "light" is limited to a collimated beam should be excluded.  The '107 and '443 asserted claims recite "light," but Drs. Ilkov and Leary opine that light must be "a collimated beam."  Ex.13, Ilkov Rebuttal Report ¶¶50, 255-258, 276-279; Ex.17, Leary Rebuttal Report ¶¶152, 155, 248.  These opinions should be excluded because they improperly import limitations from the specification into the claims.  *See Kraft*, 232 F. Supp. 3d at 635.

The claims do not recite that "light" is limited to a collimated beam—in fact, other than dependent claim 10 of the '443 patent, "collimation" is not in the

5

asserted claims of the '107 and '443 patents at all.  Rather, Dr. Ilkov opines that "claim limitations reciting 'light,'" are so limited because "the only light ***the Asserted Patents describe*** and enable passing between filters and mirrors is collimated light."[1]  Ex.13, Ilkov Rebuttal Report ¶12; *see id.* ¶50; Ex.17, Leary Rebuttal Report ¶152; *see also id.* ¶¶155, 248.  Because these opinions improperly (and blatantly) import limitations into the claims, they should be excluded.  *See Kraft*, 232 F. Supp. 3d at 635.

### 2.    Drs. Ilkov's and Leary's Opinions That Import "Dichroic" Into "Filter/Optical Filter" Limitations

Drs. Ilkov's and Leary's opinions that the claimed "filter"/"optical filter" is limited to a "dichroic filter" should be excluded.  The '443 and '107 patents recite "filter," and the '582 patent recites an "optical filter," but Drs. Ilkov and Leary limit all asserted claims reciting these elements to "dichroic filters."  Ex.13, Ilkov Rebuttal Report  ¶¶12, 51, 210, 254, 275; Ex.17, Leary Rebuttal Report ¶¶152, 155, 412, 557 (partially exclude for statements regarding written description and enablement for "filter" and "optical filters").  These opinions should be excluded because they improperly import limitations into the claims.  *Kraft*, 232 F. Supp. 3d at 635.

---

[1] All emphases added unless otherwise noted.

████████████████████████████████████████

There is only one claim in the Asserted Patents ('443 patent, claim 6) that recites a "dichroic filter."  This claim demonstrates both that (1) the named inventors knew how to limit their claims to a "dichroic filter" when and where appropriate; and (2) none of the other claims, none of which recite this term, are so limited.  Yet Drs. Ilkov and Leary improperly seek to limit *all* claims that recite the broad terms "filter" or "optical filter" solely to a "dichroic filter."  *E.g.*, Ex.7, Leary Tr. 250:22-251:2 (testifying his "noninfringement analysis" was that Cytek does not infringe "because Cytek uses band-pass, not dichroics, to do all the splitting.").  These improper opinions should be excluded.  *See Kraft*, 232 F. Supp. 3d at 635.

### 3.    Drs. Ilkov' and Leary's Opinions That Import a "Concave Mirror and Aberration Corrector Plate" Into "Flow Cell" Limitations

Drs. Ilkov's and Leary's opinions that the claimed "flow cell" is limited to a flow cell including a concave mirror and aberration corrector plate should be excluded.  The '443 and '107 patents recite a "flow cell," but Drs. Ilkov and Leary limit the claims to a flow cell that "include[s] a concave mirror and aberration corrector plate."  Ex.13, Ilkov Rebuttal Report ¶¶12, 264-268; Ex.17, Leary Rebuttal ¶¶208-211, 294.  These opinions should be excluded because they improperly import limitations from the specification into the claims.  *See Kraft*, 232 F. Supp. 3d at 635.

7

None of the asserted claims of the '443 and '107 patents recite a "flow cell" "including a concave mirror and aberration corrector plate." Rather, as Dr. Ilkov admits, his opinions seek to add this requirement to "the claim limitation 'flow cell'" because (according to Dr. Ilkov) "the only 'flow cell' the *Asserted Patents describe* and enable include a concave mirror and aberration corrector plate." Ex.13, Ilkov Rebuttal Report ¶12; Ex.7, Leary Tr. 252:2-7 (agreeing he interpreted the claimed "flow cell" as limited to a flow cell with a concave mirror and an aberration corrector plate because "[t]hat's the only one described in the – in the patent." Because Dr. Ilkov admits he is importing this feature from an example embodiment in the specification as though it were a requirement of the claims, his "flow cell" opinions should be excluded. *See Kraft*, 232 F. Supp. 3d at 635.

### 4. Drs. Ilkov's and Leary's Opinions That Import a Collimated Beam Into "WDM" Limitations

Drs. Ilkov's and Leary's opinions that the claimed "WDMs" are limited to WDMs that collimate a beam throughout its architecture should be excluded. The asserted claims of the '107 and '443 patents recite "WDMs" comprising the particular elements recited in the respective claims, but do ***not*** recite a collimated beam projected into and throughout the WDMs' relay architecture or a collimating optical element. Nevertheless, Drs. Ilkov and Leary opine that the claimed WDMs must be limited to "work[] with collimated light and a collimating optical element" and have "a 'collimated beam [projected] into and through the WDM's relay

8

architecture." Ex.13, Ilkov Rebuttal Report ¶¶12, 43, 48 (heading), 86-97, 208-209, 211-214, 273-274; Ex.17, Leary Rebuttal Report ¶¶152, 155, 217, 248; Ex.7, Leary Tr. 250:17-21. These opinions should be excluded because they improperly import limitations into the claims. *See Kraft*, 232 F. Supp. 3d at 635.

None of the asserted claims of the '107 or '443 patents recite any WDM that includes "a 'collimated beam'" projected "into and through the WDM's relay architecture" or a "collimating optical element"—those words do not appear in the claims of the two patents. Ex.12, Ilkov Opening Report ¶¶923, 890.[2] Instead, Dr. Ilkov improperly imports those requirements into the claims of the '107 or '443 patents from the claims of the '582 patent; Dr. Ilkov opines that "any claim limitation reciting 'wavelength division multiplexer (WDM)'" is so limited "because the only 'WDM' **the Asserted Patents describe** and enable requires a 'first optical element'/'collimating optical element'" "that projects a 'collimated beam.'" Ex.13, Ilkov Rebuttal Report ¶12; *see id.* ¶48; Ex.17, Leary Rebuttal Report ¶152; *see also id.* ¶¶155, 248. But "limitations of a separate claim cannot be used to restrict the provisions of another claim." *Farmhand, Inc. v. Craven*, 455 F.2d 609, 610 (8th Cir. 1972); *Dow Corning Wright Corp. v. Osteonics Corp.*, 939

---

[2] The Court did not construe "WDM" to require propagating a collimated beam throughout the relay architecture, and while Cytek originally proposed (but later withdrew) a construction for "WDM" (Ex.8, Cytek's Proposed Claim Constructions, 11-12), it would be improper for its experts to now argue claim construction to the jury. *Cordis*, 561 F.3d at 1337.

9

F. Supp. 65, 70 n.3 (D. Mass. 1996) ("[A] limitation may not be read from one claim into another.…"). These improper opinions should be excluded. *See Kraft*, 232 F. Supp. 3d at 635.

### 5. Drs. Ilkov's and Leary's Opinions Import "Conventional" Into the "Flow Cytometer" Limitations

Drs. Ilkov's and Leary's opinions that the claimed "flow cytometer" is limited to conventional flow cytometers should be excluded. The asserted claims of the '107 patent and asserted claims 11 and 15 of the '443 patents recite a "flow cytometer." According to Cytek's experts, flow cytometers can include "conventional" flow cytometers and "spectral" flow cytometers. *E.g.*, Ex.19, Weigl Opening Report ¶¶55-58. Conventional flow cytometers use a mathematical procedure called "compensation" to remove spillover signals, whereas spectral flow cytometers use a procedure called "spectral unmixing." *Id.* ¶58. Drs. Ilkov and Leary offer opinions that limit the claimed "flow cytometer" to a "one-detector-one-dye conventional" flow cytometer and exclude "spectral" flow cytometers. *See* Ex.13, Ilkov Rebuttal Report ¶¶12, 66, 238-241, 249-252, 260-263, 299-305; Ex.17, Leary Rebuttal Report ¶¶152, 155, 248, 291. These opinions should be excluded because they improperly import limitations from the specification into the claims. *See Kraft*, 232 F. Supp. 3d at 635.

As Cytek's experts admit, none of the claims include any limitations that limit the claim scope to "conventional" or "one-detector-one-dye"—those words

10

do not appear in the claims at all.  *See* Ex.7, Leary Tr. 285:24-287:21 (agreeing "the words 'conventional flow cytometer'" do not appear in the claims of the '582, '443, or '107 patents); Ex.22, Weigl Tr. 185:25-186:4 (agreeing "the word 'one dye, one detector' doesn't appear in there [the claims] at all).[3]  As Dr. Weigl explained, his opinion that "the invention is limited to conventional flow cytometry [is] based on  -- based on --***not*** on the claim language."  Ex.22, Weigl Tr. 197:10-16, 219:25-220:2.  And as Dr. Leary confirmed, he has "interpreted the claims to be limited to conventional flow cytometers."  Ex.7, Leary Tr. 249:6-9.

All three experts testified or opined that their understanding that the claims cover only conventional flow cytometry was based on the content of the specification.  *See* Ex.13, Ilkov Rebuttal Report ¶66 ("The Asserted Patents are directed to a conventional flow cytometer" because "[t]he ***specification*** of the Asserted Patents is clearly directed to a conventional one-detector-one-dye flow cytometer.…"); *see also id.* ¶12; Ex.17, Leary Rebuttal Report ¶¶152, 155, 291; Ex.22, Weigl Tr. 214:8-17 ("it's the lack of enablement and written description"

---

[3]  Notably, the Court did not construe "flow cytometer" as limited to a conventional flow cytometer, and in fact, Cytek originally proposed (but later withdrew) a construction of "flow cytometer" that ***was not*** limited to conventional flow cytometry.  Ex.8, Cytek's Proposed Claim Constructions, 7-8.  To the extent Cytek's experts now plan to argue claim construction to the jury, that would also warrant exclusion of this testimony.  *Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009).

RLF1 35513037v.2

████████████████████████████████████████████████████████████

that "limits the claims to a conventional flow cytometer."). These improper opinions should be excluded. *See Kraft*, 232 F. Supp. 3d at 635.

### 6. Drs. Ilkov's and Leary's Opinions Import "Directly" Into the "Configured To Receive" Limitation

Drs. Ilkov's and Leary's opinions that the claimed "multimode optical fiber configured to receive light from the flow cell" recited in claim 16 of the '107 patent is limited to a fiber that receives light *directly* from a flow cell should be excluded. Ex.13, Ilkov Rebuttal Report ¶271 ("a POSA would understand that the fiber receives light <u>directly</u> from the flow cell based on the plain meaning of the claim." (emphasis in original)); *see also id.*, ¶270; Ex.17, Leary Rebuttal Report ¶¶212-215. In fact, the specification of the '107 patent discloses that the flow cytometer may include additional components between the claimed elements. *See* '107 Patent at 2:46-64 (composite microscope objective between flow cell and fiber), 2:59-61. Without support in the specification, it is improper to add limitations to exclude indirect configurations. *Linear Technology Corp. v. International Trade Comm'n*, 566 F.3d 1049, 1059-1060 (Fed. Cir. 2009). Thus, Cytek's experts opinions that attempt to read unsupported limitations into the claims to avoid infringement should be excluded because they improperly import limitations from the specification into the claims. *See Kraft*, 232 F. Supp. 3d at 635.

12

**B.    MOTION #2: DRS. ILKOV'S AND LEARY'S OPINIONS THAT CONTRADICT THE COURT'S CLAIM CONSTRUCTIONS SHOULD BE EXCLUDED**

**1.    Drs. Ilkov's and Leary's Opinions That Are Contrary to the Court's Construction of "Collimating Optical Element" Are Unreliable**

The Court should exclude Dr. Ilkov's § 112 invalidity and non-infringement opinions and Dr. Leary's non-infringement opinions related to the "collimating optical element" limitation of asserted claims of the '582 patent that are based on Cytek's proposed claim construction, which was rejected by the Court.

***First***, contrary to the Court's construction of "collimating optical element," which identifies the functions to "(1) receive light from a light source;" and "(2) project a collimated beam" (Ex.16, D.I. 226, 5), Drs. Ilkov and Leary rely on Cytek's proposed structure for the means-plus-function term, namely, that "collimating optical element" requires an optical component that is at a focal distance from a light source. *See* Ex.17, Leary Rebuttal Report ¶356 ("Following this procedure does not ensure that the collimation lens will be placed at the focal length."); *see also* Ex.12, Ilkov Opening Report ¶¶1054-1067; Ex.13, Ilkov Rebuttal Report ¶¶29-33, 35-36, 137 (partially exclude for statements incorporating claim construction analysis of "collimating optical element"), 139-141; Ex.14, Ilkov Reply Report ¶¶44-48, 50-51, 164 (partially exclude for statement that a POSA "would similarly not understand what optical element(s)

13

comprise a 'collimating optical element'"), 164 n.18, 399-402; Ex.17, Leary Rebuttal Report ¶¶41-47, 52-53, 346 (partially exclude for statement incorporating claim construction opinions), 348-352, 364-366, 421-425.  The Court rejected this aspect of Cytek's proposed construction and instead found that "a lens and structural equivalents are sufficient to satisfy the claimed functions."  Ex.16, D.I. 226, 3.

*Second*, Drs. Ilkov and Leary also rely on Cytek's alternative proposed construction of "collimating optical element" as having the function of projecting a collimated beam onto an optical relay element.  *See* Ex.13, Ilkov Rebuttal Report ¶141 ("Unlike the '582 patent, the first lens of Cytek's input optics does not project a collimated beam received by an optical relay element."), *see also id.* ¶¶140, 148-149; Ex.17, Leary Rebuttal Report ¶373.  The Court expressly rejected that aspect of Cytek's proposed construction, explaining that the claimed functions "***do not*** contain the additional requirement of an ***optical relay element***."  Ex.16, D.I. 226, 2-3.

These opinions are inconsistent with the Court's construction and must be excluded.  *See Trudell Med. Int'l Inc. v. D R Burton Healthcare, LLC*, 127 F.4th 1340, 1349-50 (Fed. Cir. 2025) (expert opinion is improper if "untethered from the district court's claim constructions."); *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575

14

████████████████████████████████████████

F.3d 1312, 1321 (Fed. Cir. 2009) ("No party may contradict the court's construction to a jury.")

### 2. Drs. Ilkov's and Leary's Opinions That Contradict the Court's Construction Regarding "Image" and "Collimated Beam" Are Unreliable

The Court should exclude Dr. Ilkov's § 112 invalidity and non-infringement opinions and Dr. Leary's non-infringement opinions related to the "image" and "collimating beam" limitation of asserted claims of the '582 patent that are based on Cytek's proposed claim construction, which was rejected by the Court.

*First*, the Court construed "image" to mean a "representation of an object created by light or emanating from a light source," and clarified that (1) "image" does not require converging rays, and (2) "collimated beam" does not require perfectly parallel rays, *i.e.*, does not exclude converging rays. Ex.16, D.I. 226, 3-4. Drs. Ilkov and Leary take the exact opposite position, arguing that an "image" *must* have ray convergence at the image plane and that a "collimated beam" *cannot* have ray convergence. Ex.12, Ilkov Opening Report ¶¶1066, 1104; Ex.13, Ilkov Rebuttal Report ¶¶35, 173 (partial exclusion for statement that path between M1 and M2 cannot be an image), 175 (same); Ex.14, Ilkov Reply Report ¶50; Ex.17, Leary Rebuttal Report ¶¶52, 425; *see also* Ex.10, Ilkov Tr. 161:8-15 ("collimating lens for creating a collimated beam cannot create an afocal image"), 251:13-17 ("I interpret court construction … For the image" to mean "there's an

15

image formed on every filter"). These opinions contradict the Court's construction that "image" is "simply 'a representation of an object created by light or emanating from a light source'" and does not "require[] rays of light to be focused to a point." Ex.16, D.I. 226, 3-4.

*Second*, for "collimated beam," Dr. Ilkov opines that "the parallel nature of the rays within a 'collimated beam' were an essential aspect of the claimed invention." Ex.12, Ilkov Opening Report ¶925, *see also id.* ¶¶897, 902-907 (partial exclusion); Ex.13, Ilkov Rebuttal Report ¶¶106, 126; Ex.10, Ilkov Tr. 149:21-150:2. Dr. Leary also opines that "[a] *converging* beam *cannot* be a 'collimated beam.'" Ex.17, Leary Rebuttal Report ¶319; *id.* ¶430 (partially exclude for statement that "[t]he segment [between M1 and M2] is also not collimated as light is converging and diverging as I previously explained for claim 1 of the '582 patent on 'collimated beam' (and incorporate here)"). But the Court found the exact opposite, holding that it "was not persuaded that an artisan of ordinary skill would find that a 'collimated beam' requires perfectly parallel rays." *See* Ex.16, D.I. 226, 3-4.

Because these opinions directly contradict the Court's Claim Construction Order, they should be excluded. *See Trudell Med. Int'l Inc.*, 127 F.4th at 1349-50; *Exergen Corp.*, 575 F.3d at 1321; *Callpod, Inc. v. GN Netcom, Inc.*, 703 F. Supp. 2d 815, 821-22 (N.D. Ill. March 29, 2010) (excluding expert testimony because

16

"[t]his is precisely the construction of [the term] that the Court considered, and rejected, in its claim construction."

> **3.    Drs. Ilkov's and Leary's Opinions Requiring Sequence in the Second "Focusing Optical Element" and "Semiconductor Detector" Are Inconsistent With the Court's Claim Construction and Should Be Excluded**

The Court should exclude Dr. Ilkov's and Leary's opinions related to the "focusing optical element" and "semiconductor detector" limitations in claims 1, 3, and 26 of the '582 that require sequencing.  Those opinions are inconsistent with the Court construction that "second" "focusing optical element" and "semiconductor detector" does not "require[] sequencing."  Ex.18, 9/17/25 Markman Tr. 162:3-164:25.

During claim construction Cytek argued for these terms that "first" meant "initial" and "second" meant "second sequential."  *See e.g,* DI 114, 10-21.  At the Markman hearing, the Court rejected Cytek's position or declined to construe these terms for the '582 patent. Ex.18, 9/17/25 Markman Tr. 162:3-163:17, 47:4-9. Despite this, Dr. Ilkov opines that there is a "***required sequence***" for the "focusing optical element" and "semiconductor detector" terms:



RLF1 35513037v.2

Ex.12, Ilkov Opening Report ¶1110; *id.* ¶¶174, 288; Ex.13, Ilkov Rebuttal Report ¶¶161, 162 (partially exclude for statement that "Dr. Schaafsma's mapping is not to the first set of focusing lens and semiconductor detector, but instead to the ***third*** set of focusing lens and semiconductor detector"), 194; Ex.14, Ilkov Reply Report ¶¶430-435.  Similarly for non-infringement, Dr. Leary opines that the accused products do not infringe because "the third" focusing lens or semiconductor detector are not the claimed "first" elements.  Ex.17, Leary Rebuttal Report ¶¶400 (partially exclude), 399, 401 (partially exclude), 404 (partially exclude), 465 (partially exclude), 468 (partially exclude), 597-598 & n.32, 608.  For example, Dr. Leary illustrated his opinion that light "is received by the third focusing optical element (highlighted in green) and not by the first focusing optical element (highlighted in yellow)":

RLF1 35513037v.2



*Id.* ¶597.

Drs. Ilkov and Leary cannot subvert the Court's claim construction to advance their non-infringement arguments; these opinions should be excluded. *See Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006) (opinions "based on an impermissible claim construction" should be excluded as not relevant and to avoid confusing and misleading the jury).

> ### C. MOTION #3: DRS. ILKOV'S AND LEARY'S OPINIONS ON NON-INFRINGEMENT BASED ON A LACK OF ENABLEMENT AND WRITTEN DESCRIPTION SHOULD BE EXCLUDED

The Court should exclude Drs. Ilkov's and Leary's opinions that improperly rely on the alleged lack of enablement or lack of written description as a basis for

19

non-infringement.  The proper legal analysis of infringement requires: "(1) claim construction and (2) application of the claims to the accused product." *Lee's Aquarium & Pet Prods., Inc. v. Python Prods., Inc.*, 1998 WL 129903, at \*1, 152 F.3d 945 (Fed. Cir. 1998); *Medtronic, Inc. v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1583 (Fed. Cir. 1983) ("Though an invalid claim cannot give rise to liability for infringement, whether it is infringed is an entirely separate question capable of determination without regard to its validity.").

Dr. Ilkov expressly states that his "opinions that the Asserted Claims are invalid for lack of written description support, enablement and indefiniteness … *are relevant* to my analysis of whether [Beckman] has demonstrated that all limitations of the Asserted Claims are present in the Accused Products."  Ex.13, Ilkov Rebuttal Report ¶47; *see also id.* ¶¶12, 48, 50-51, 208-214, 231, 255-258, 264-269, 273-274, 276-279.  Dr. Leary similarly bases non-infringement opinions on Dr. Ilkov's opinions that the asserted patents fail to provide written description support and enablement.  *See* Ex.17, Leary Rebuttal Report ¶152 (opining "[t]he Accused Products are spectral flow cytometers, and thus are not within the scope of asserted claim 5" based on Dr. Ilkov's written description and enablement opinion of "flow cytometer."); *see also id.*, ¶¶138, 155, 208-211, 216, 248, 291, 294, 412, 557 (partial exclusion of all but opinions regarding claim 6 of the '443 Patent); Ex.7, Leary Tr. 252:2-7.

20

Thus, Drs. Ilkov and Leary's opinions that assume non-infringement based on the purported lack of written description or enablement should thus be excluded.

### D.    MOTION #4: DRS. ILKOV'S AND WEIGL'S IMPROPER CLAIM CONSTRUCTION OF "SUBSTANTIALLY FULL SPECTRUM OF VISIBLE LIGHT" SHOULD BE EXCLUDED

Drs. Ilkov and Weigl opine that the "substantially full spectrum of visible light" limitation of claims 9 and 29 of the '107 patent are invalid under § 112 because the claims should be construed as "spectral flow cytometry."  *See* Ex.12, Ilkov Opening Report ¶¶933-949, 955; Ex.19, Weigl Opening Report ¶¶64-111; Ex.22, Weigl Tr. 214:1-7, 220:11-23.   These opinions should be excluded as improper claim construction.  *See Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009) ("[I]t is improper to argue claim construction to the jury because the risk of confusing the jury is high when experts opine on claim construction.") (internal quotation marks omitted).

Claims 9 and 29 of the '107 patent do not recite "spectral" flow cytometry. *See* Ex.23, '107 patent, cls. 9, 29.  Cytek never asked the Court to construe "capable of detecting a substantially full spectrum of visible light" to require a "spectral" flow cytometer.  Ex.8, Cytek's Proposed Claim Constructions, 2-13. Drs. Ilkov and Weigl cannot rewrite the claims to limit them to a particular type of flow cytometer.  Doing so is improper claim construction which warrants

21

exclusion. *See Guangzhou Yucheng Trading Co. v. Dbest Prods., Inc.*, 644 F. Supp. 3d 637, 650 (C.D. Cal. 2022) ("Although experts may introduce evidence as to the plain an ordinary meaning of terms not construed by the Court," when the expert "is not introducing evidence about a POSA's understanding," but rather "is providing conclusory testimony on his preferred construction of this limitation," such testimony should be excluded).

Further, Dr. Weigl's opinion that he did "not believe that Cytek's full spectral flow cytometer or the specific detector configurations used therein to capture the complete emission spectrum and utilize the spectral signature to perform unmixing was invented or enabled by the Asserted Patents" erroneously focuses the § 112 analysis on the Accused Products. Ex.19, Weigl Opening Report ¶100; *see also id.* ¶106. This underscores Cytek's experts' impermissible attempts to limit the claims to a specific technology unrecited in the claims. *In re ChanBond, LLC Pat. Litig.*, 2019 WL 6910284, *6 (D. Del. Dec. 19, 2019) (excluding an expert opinion on invalidity under §112 that "erroneously focuse[d] on the accused technologies"); *see also Inline Connection Corp. v. AOL Time Warner Inc.*, 2007 WL 275928, at *4 (D. Del. Jan. 29, 2007).

### E.    MOTION #5: JUNICHIRO KONO'S EXPERT OPINIONS SHOULD BE EXCLUDED AND DR. FEDOR ILKOV's

22

███████████████████████████████████████████████████████

## DERIVATIVE OPINIONS RELYING ON DR. KONO SHOULD BE STRUCK

Dr. Kono is "only offering [his] expert opinions regarding my knowledge of the lack of readily available, including the lack of commercially available, carbon nanotube photodetectors as of December 4, 2013." Ex.20, Kono Opening Report ¶18. Dr. Ilkov relies on Dr. Kono's opinions to conclude that the asserted claims lack written description and enablement. Ex.12, Ilkov Opening Report ¶¶987-994, 999-1001, 1005-1008; Ex.14, Ilkov Reply Report ¶¶329-334, 336-339, 343, 345-346, 350-352, 354-356. These opinions should be excluded because they are unreliable and apply incorrect legal standards.

Dr. Kono purports to know that "the inventor of the Asserted Patents did not have (and could not have had) possession of or to have enabled a flow cytometer (or any optoelectrical subsystem) that included a carbon nanotube photodetector or a carbon nanotube avalanche photodetector as of December 4, 2013." Ex.20, Kono Opening Report ¶45. Yet, Dr. Kono admits that his opinions "are not about the patents." Ex.9, Kono Tr. 97:1-2. In fact, Dr. Kono has never fully read the specifications of the asserted patents. *Id.*, 105:13-16. He also admits that he is "not a person of ordinary skill in the art [] in this case." *Id.*, 115:9-13. But opining on what the inventor possessed requires analysis of what the "four corners of the specification" "conveys to those skilled in the art," *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1136, 1351-52 (Fed. Cir. 2010), and enablement requires analysis

23

of whether the specification's disclosures would have enabled a person of ordinary skill in the art ("POSA") to make and use the claimed invention. *In re Wands*, 858 F.2d 731, 735 (Fed. Cir. 1988). Dr. Kono, who is not a POSA and has not read the four corners of the asserted patents, thus cannot reliably speak to possession or enablement.

Dr. Kono's sole opinion—on the lack of readily available carbon nanotube detectors—is also unreliable. According to Dr. Kono himself, he is "not an expert of … commercial availability," does not know "the threshold to say [a thing] is available," and "cannot provide an expert opinion" on the topic. Ex.9, Kono Tr. 39:6-9, 41:18-20. He testified that he does not "know the precise definition" for something sold to be commercially available and does "not know what regulatory conditions would be necessary for something to be commercially available." *Id.*, 119:22-120:12. He also admitted that he did not consult any industry standards on commercial availability nor dictionaries or encyclopedias, *id.*, 90:21-91:15, and did not examine catalogs, price lists, industry newsletters, procurement databases to test his conclusion. *Id.*, 120:14-122:13. Dr. Kono's opinions should be excluded because they cannot reasonably be assessed for reliability. *See* Fed. R. Evid. 702; *United States v. Hebshie*, 754 F. Supp. 2d 89, 125 (D. Mass. 2010) ("Documentation is necessary to test a hypothesis; in fact, reproducibility is the sine qua non of 'science.'").

24

Dr. Kono's opinion on commercial availability is of limited value for the written description and enablement inquiries, where real-world devices or actual reduction to practice is not required. *See Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351-52 (Fed. Cir. 2010) (written description looks at whether the "four corners of the specification" "reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date"); *Medtronic Inc. v. Edwards Lifesciences Corp.*, 2013 WL 12131745, *5 (C.D. Cal. Nov. 27, 2013) ("Enablement does not require actual reduction to practice." (citing *Falko-Gunter Falkner v. Inglis*, 448 F.3d 1357, 1366-67 (Fed. Cir. 2006)). Dr. Kono's opinions are thus misaligned with the issues and should be excluded because they will not "help[] the jury to understand the evidence or to determine a fact in issue.'" *Am. Cruise Lines, Inc. v. HMS Am. Queen Steamboat Co. LLC*, 2017 WL 3528606, at *3 (D. Del. Aug. 16, 2017).

Furthermore, Dr. Kono's opinions cannot support Dr. Ilkov's enablement conclusions because Dr. Kono did not "analyze the amount of experimentation that would have been needed to practice the asserted patents," or consider "whether there were working examples in the asserted patents" (Ex.9, Kono Tr. 99:23-101:7), and Dr. Ilkov does not do so independently. This neglects to consider whether experimentation was undue under § 112 and renders these opinions unreliable. *See Inline Connection Corp. v. AOL Time Warner Inc.*, 2007 WL

25

275928, at *5 (D. Del. Jan. 29, 2007) ("Because [the expert] did not conduct a proper enablement analysis, his opinion is not reliable and is not admissible on enablement.").

## VII.   CONCLUSION

For the reasons outlined above, Beckman's Motions #1-5 to Exclude should be granted.

RLF1 35513037v.2

OF COUNSEL:

Robert J. Gunther, Jr.
Omar A. Khan
Jeffrey A. Dennhardt
Laura Macro
Lauren Matlock-Colangelo
Jennifer L. Graber
Kelly A. Todd
Maggie Sawin
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

Akkad Y. Moussa
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Ave.
NW Washington, DC 20037
(202) 663-6000

Dated: July 28, 2026

/s/ Frederick L. Cottrell, III
Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff*

27

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies that the foregoing Plaintiff Beckman Coulter, Inc.'s Corrected Opening Brief In Support of Motion To Exclude Certain Opinions Of Defendant's Technical Experts:  Fedor A. Ilkov, Ph.D., Bernhard H. Weigl, Ph.D., James F. Leary, Ph.D., and Junichiro Kono, Ph.D. complies with the type-volume requirements of the Court's November 6, 2019 Standing Order Regarding Briefing in All Cases and the Scheduling Order. The text of the brief, including footnotes, was prepared in Times New Roman 14-point font and contains 5,418 words, and when combined with the Summary Judgment brief and other *Daubert* brief, the total is 12,315/12,500 words.

/s/ Christine D. Haynes
Christine D. Haynes (#4697)
haynes@rlf.com

Dated: July 28, 2026