## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BECKMAN COULTER, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CYTEK BIOSCIENCES, INC.,<br><br>Defendant. | C.A. No. 24-0945-CFC<br><br>~~FILED UNDER SEAL~~ |

### CORRECTED JOINT [PROPOSED] FINAL JURY INSTRUCTIONS

### (PHASE II)[1]

---

[1] Language proposed by Beckman Coulter and opposed by Cytek appears in blue text and brackets. Language proposed by Cytek and opposed by Beckman Coulter appears in green text and brackets. The parties reserve the right to modify their proposals, and the proposals are without prejudice to outstanding or forthcoming motions.

# TABLE OF CONTENTS

PHASE II ................................................................................................................. 1

1.  INTRODUCTION ............................................................................................. 1

2.  ISSUES PRESENTED IN PHASE II ............................................................. 2

3.  BURDENS OF PROOF ..................................................................................... 5

4.  PATENT INFRINGEMENT DAMAGES ...................................................... 6

    4.1.  DAMAGES GENERALLY ......................................................................... 6

    4.2.  THE DAMAGES PERIOD ........................................................................ 8

    4.3.  DAMAGES - VICARIOUS LIABILITY .................................................. 15

    4.4.  LOST PROFITS ...................................................................................... 17

        4.4.1.  LOST PROFITS – DEMAND FOR THE PATENTED PRODUCT ..................... 21

        4.4.2.  LOST PROFITS – ACCEPTABLE NON-INFRINGING SUBSTITUTES ............ 21

        4.4.3.  LOST PROFITS – MARKET SHARE ..................................................... 23

        4.4.4.  LOST PROFITS – CAPACITY ............................................................. 25

        4.4.5.  LOST PROFITS – AMOUNT OF PROFIT .............................................. 26

        4.4.6.  [BECKMAN COULTER:  SALES TO GLOBAL CUSTOMERS ......................... 26

    4.5.  REASONABLE ROYALTY ..................................................................... 30

        4.5.1.  [BECKMAN COULTER: REASONABLE ROYALTY – HYPOTHETICAL NEGOTIATION ..................................................................................... 35

**4.5.2.    [BECKMAN COULTER: SALES TO GLOBAL CUSTOMERS.......................... 40**

**4.5.3.    NO DOUBLE RECOVERY ............................................................ 45**

**5.    WILLFUL INFRINGEMENT................................................................ 45**

**6.    DELIBERATION AND VERDICT......................................................... 53**

ii

**PHASE II[2]**

**1.    INTRODUCTION[3]**

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding the second phase of the case.

I have given you instructions at the beginning of each phase and before you began deliberations for Phase I.  I will not repeat those instructions now.  Instead, I will only explain the positions of the parties and the law you will apply in this phase. Please listen very carefully to everything I say.

You will have a written copy of the instructions I gave you previously and these instructions with you in the jury room for your reference during your deliberations.  You will also have a verdict form, which will list the questions that you must answer to decide this phase of the case.

---

[2] The Phase II instructions assume a finding of a finding of infringement and no invalidity for the '582, '443, and '107 Patents.  To the extent the jury does not return a verdict of infringement and no invalidity for all Asserted Patents, the Instructions in Sections 2, 4.1, 4.2, 4.3.1, and 5 need to be revised to address only those patents for which the jury found infringement and no invalidity.

[3] *Globus Medical, Inc. v. Life Spine, Inc.*, 1:21-cv-01445-CFC, D.I. 348, at § 1.1 (Aug. 14, 2025).

## 2.    ISSUES PRESENTED IN PHASE II[4]

During this phase of the case, you must decide the following issues according to the instructions that I give you:

1) [**Cytek**: Has Beckman Coulter proven by a preponderance of the evidence whether, and if so when, it complied with the marking statute with respect to the '582 and '443 Patents.][5]

---

[4] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, 1:21-cv-01445-CFC, D.I. 348, at § 1.2 (D. Del. Aug. 14, 2025).

[5] **Cytek:** Cytek has never admitted Beckman Coulter complied with the marking requirements of 35 U.S.C. § 287 with respect to any Asserted Patent, and Beckman Coulter never relied on such alleged admission during fact or expert discovery. Beckman Coulter moved for summary judgment to establish marking compliance as a matter of law (BEC's MSJ No. 2), but the Court denied that motion. D.I. 368. Beckman Coulter's position statement is nothing more than an improper attempt to relitigate—through a jury instruction—the very motion the Court denied. Beckman Coulter bears the burden of proving compliance with the marking statute, yet it never attempted to satisfy that burden with particularity. Indeed, in response to Cytek's Interrogatory No. 11, which asked amongst other things "when You first marked the CytoFLEX® products with the Asserted Patent(s)," Beckman Coulter provided no substantive response of when it had first done so outside a laundry list of document numbers. Further, Cytek's damages expert expressly addresses alternative start dates to the damages period specifically because marking is disputed. Instead, Beckman Coulter now seeks to abandon its obligation to prove marking compliance with belated contentions that Cytek somehow conceded admission and waived any marking challenge. That Cytek brought (but later dropped) a false marking counterclaim is not an admission that Beckman Coulter complied with 35 U.S.C. § 287. First, that counterclaim was made on "information and belief." (D.I. 58, ¶ 30.) Second, Beckman Coulter itself denied those marking allegations in its Answer to Cytek's Counterclaims. (D.I. 52, ¶ 30.) Third, the counterclaim did not allege Beckman Coulter's marking complied with § 287 as to any patent as of any date in a substantially continuous manner. Moreover, Cytek withdrew its false marking counterclaim (D.I. 263-264), and withdrawn pleadings are not binding judicial

2

admissions. *See West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 171-73 (3d Cir. 2013); *Giannone v. U.S. Steel Corp.*, 238 F.2d 544, 547 (3d Cir. 1956). Further, Cytek's dismissal was expressly without prejudice and "not intended to affect any party's other claims, counterclaims, or defenses in this case." *See* D.I. 52 at ¶ 30; D.I. 264. Whether BEC complied with the marking statute – and if so, when – remains a disputed issue of fact for the jury, and Cytek's proposed instruction appropriately presents that issue for the jury.

**Beckman Coulter**:  Cytek's proposed language is incorrect because Cytek has forfeited the ability to challenge marking.  For example, Cytek did not identify any "bases for any contention that Plaintiffs products are not marked" in response to Beckman Coulter Interrogatory No. 14.   Instead, Cytek stated that "Because the CytoFLEX products do not practice the claims of the Asserted Patents, and instead are falsely marked with the Asserted Patents on BC's website (https://www.beckman/com/patents), BC has failed to mark any product with the Asserted Patents."  Likewise, none of Cytek's experts have provided any opinions on marking.  Accordingly, Cytek has not preserved a marking challenge and has instead admitted the CytoFLEX products are "marked with the Asserted Patents on BC's website." *See also,*  D.I. 48, Answer ¶2 ("U.S. Patent No. 10,330,582 (the ''582 Patent'), U.S. Patent No. 11,703,443 (the ''443 Patent'), U.S. Patent No. 12,174,106 (the ''106 Patent'), and U.S. Patent No. 12,174,107 (the ''107 Patent')" are "collectively, the 'Asserted Patents'"), *id.* at Counterclaim ¶¶10 ("Beckman Coulter virtually marks the CytoFLEX® products as an alleged embodiment of the invention(s) claimed in the Asserted Patents"), ¶¶15 ("Beckman Coulter's website virtually marks the CytoFLEX® products as a commercial embodiment of the claimed inventions of the '443, '582, and '106 Patents"), 30 ("Beckman Coulter nonetheless has marked the CytoFLEX® products with the '582 patent since at least October 17, 2021. … Beckman Coulter started virtually marking the CytoFFLEX® products with the '443 patent somewhere between February 19, 2024 and September 9, 2024, seemingly for purposes of this litigation."), 20 ("By virtually marking the CytoFLEX® products as covered by the '443, '582, and '106 patents, Beckman Coulter represents to the public that the WDM present in the CytoFLEX® products has a curved mirror."), 26 ("Beckman Coulter marks the CytoFLEX® products under the '443, '582, and '106 patents"), 27-28 (similar); *see also* D.I. 246 at 12-13. Notably, Beckman Coulter's summary judgment motion on marking was not denied on the merits and was instead denied solely because Beckman Coulter's first ranked summary judgment motion was denied.  And contrary to Cytek's claim, Beckman Coulter did not deny that it marked but denied an allegation that "Beckman coulter has been aware or should have been aware of its improper patent marking of certain

3

2)  What amount of damages, if any, has Beckman Coulter proven by a preponderance of the evidence is adequate to compensate for Cytek's past infringement for [claims __ of the '582 Patent, claims __ of the '443 Patent, and claims __ of the '107 Patent]?

3)  Has Beckman Coulter proven by a preponderance of the evidence that Cytek's infringement was willful?

[**Cytek:** If you determine that any infringement was willful, that decision must not affect the amount of any damages award you give for infringement.  I will take willfulness into account later if you find it.][6]

---

CytoFLEX® products since at least October 17, 2021."  D.I. 48, Counterclaim ¶ 30; D.I. 52, ¶ 30.   Finally, Cytek's position that Beckman Coulter "never attempted to satisfy" its burden is baseless.  As but one example, Cytek admits that Beckman Coulter identified ample documentary evidence demonstrating marking.

[6] **Cytek:** Cytek's proposal mirrors the model instruction in 2025 AIPLA Model Patent Jury Instructions, at § 11.0 (citing 35 U.S.C. § 298; *Halo Elecs. Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016)), *available at* https://www.aipla.org/docs/default-source/committee-documents/patent-litigation-files/2025/final/2025-08-18---aipla-model-patent-jury-instructions97a6c7cf1cf24560aa4c091382f9a2e2.pdf?sfvrsn=8254824d_1.  Indeed, Cytek's proposed language mirrors instructions given by courts in this District.  *E.g.*, *Cap-XX Ltd. v. Maxwell Tech.*, No. 1:19-cv-01733-JLH, D.I. 314, at § 12 (D. Del. Dec. 15, 2023) (Final Jury Instructions); *IOEngine, LLC v. Imation, Corp.*, No. 14-1572-GMS, D.I. 199, § 5.1 at p.40 (D. Del. Feb. 17, 2017).  This instruction will also prevent juror confusion about whether a willfulness finding can affect the amount of damages awarded (it cannot).

**Beckman Coulter**: Cytek's proposed language is not in the *Globus Medical* instruction on which the parties base this instruction or in any other instruction

4

### 3.    BURDENS OF PROOF[7]

Beckman Coulter has the burden of proving damages [**Cytek:**, including whether Beckman Coulter met its marking obligations, and][8] willful infringement by a preponderance of the evidence.  This means Beckman Coulter must produce evidence which, when considered in light of all of the facts, leads you to believe that what Beckman Coulter claims is more likely true than not.  This is the same burden of proof that you applied in the first phase of the trial as to infringement.

---

previously given by this Court.  Cytek's proposal is also unnecessary because the jury has already been informed that damages and willfulness are two separate determinations.

[7] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, 1:21-cv-01445-CFC, D.I. 348, at § 1.3 (Aug. 14, 2025).

[8]  **Cytek:**  Beckman Coulter's forfeiture argument fails for the reasons stated in footnote 5 above.  *Supra* n.5.  Accordingly, instructing the jury about Beckman Coulter's burden on marking is necessary and appropriate.

**Beckman Coulter**:  Cytek's proposed language is not necessary because Cytek has already admitted that Beckman Coulter compiled with the marking statute and has forfeited the ability to challenge marking for the reasons explained above in footnote 5.

## 4.    PATENT INFRINGEMENT DAMAGES

### 4.1.    Damages Generally[9]

You have found [claims __ of the '582 Patent, claims __ of the '443 Patent, and claims __ of the '107 Patent] to be infringed.  You must now consider what amount of damages to award to Beckman Coulter.  I will now instruct you about the measure of damages.  The fact that I am instructing you about damages does not mean that Beckman Coulter has proven damages.  I am expressing no opinion one way or the other.

The amount of damages you award must be adequate to compensate Beckman Coulter for Cytek's infringement.  Your damages award should put Beckman Coulter in approximately the same financial position that it would have been in had the infringement not occurred.

You should keep in mind that the damages you award are meant to adequately compensate Beckman Coulter and not to punish Cytek.  You must be careful to ensure that award is no more or no less than the value of the patented inventions.

[**Cytek:** Beckman Coulter has the burden to establish the amount of its damages by a preponderance of the evidence.  In other words, you should award only those damages that Beckman Coulter establishes that it more likely than not

---

[9] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, 1:21-cv-01445-CFC, D.I. 348, at § 2.1 (Aug. 14, 2025).

6

suffered].[10]  While Beckman Coulter is not required to prove the amount of damages with mathematical precision, it must prove them with reasonable certainty.  You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, Beckman Coulter seeks damages for Cytek's past infringement in two forms: lost profits and reasonable royalty.  I will explain both shortly.  Cytek contends that Beckman Coulter cannot prove lost profits and would only be entitled to a reasonably royalty.  [**Cytek:** But, regardless of the type of damages you choose to award, you must be careful to ensure the award is no more and no less than the value of the patented invention.][11]

---

[10] **Cytek:**  Cytek's proposed language is taken directly from this Court's Phase II final jury instructions in *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, C.A. No. 19-097-CFC, D.I. 450, § 5.1 (D. Del. Aug. 4, 2022), a case involving the same dual damages theories – lost profits and reasonable royalty – at issue here. The language is necessary to instruct the jury of the preponderance of the evidence standard at the moment they are instructed on damages, rather than leaving the jury with only the general burden instruction from Section 3. This statement thus provides specific context for how Beckman Coulter's burden applies in the damages context; i.e., *what* Beckman Coulter must prove is more likely than not true—the damages it suffered.

**Beckman Coulter:**  Cytek's proposal is not in the *Globus* instructions on which this instruction is based.  Cytek's proposal is also unnecessary because Section 3 informs the jury that Beckman Coulter must prove damages by a preponderance of the evidence.  Further, this instruction already informs the jury "You must be careful to ensure that award is no more or no less than the value of the patented inventions" and that Beckman Coulter must "prov[e] damages."

[11] **Cytek:** Cytek's proposed language is taken directly from this Court's Phase II final jury instructions in *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, C.A.

### 4.2.   The Damages Period[12]

In determining the amount of damages you must determine when the damages began.  Damages commence on the date that Cytek has both infringed and been notified of the alleged infringement of the Asserted Patents. **[Beckman Coulter: Beckman Coulter may recover damages for infringement occurring up to six years prior to the filing of the complaint in this lawsuit.][13] [Beckman Coulter:  Here,**

---

No. 19-097-CFC, D.I. 450, § 5.1 (D. Del. Aug. 4, 2022). The language is necessary to serve as a closing reminder to the jury that whichever form of damages it awards must be limited to the value of the patented invention.

**Beckman Coulter:** Cytek's proposal is unnecessary because the instruction already informs the jury that "You must be careful to ensure that award is no more or no less than the value of the patented inventions."  Further, Cytek's proposed language is not in the *Globus* instruction on which this instruction is based.  *Globus Medical, Inc. v. Life Spine, Inc.*, 1:21-cv-01445-CFC, D.I. 348, at § 2.1 (Aug. 14, 2025).

[12] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, 1:21-cv-01445-CFC, D.I. 348, at § 2.2 (Aug. 14, 2025).

[13] **Beckman Coulter:**  Beckman Coulter's proposed language is necessary to inform the jury that Beckman Coulter may recover damages that occurred within six years before the filing of the complaint.  *See* 35 U.S.C. § 285286 ("Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action.").  This instruction is necessary because Cytek plans to substantively argue that Beckman Coulter delayed filing this litigation.  Beckman Coulter's instruction will not confuse the jury because the instruction provides the specific period for which Beckman seeks damages.

**Cytek:** Beckman Coulter's proposed language is unnecessary and confusing because the six-year limitations period under 35 U.S.C. § 286 is irrelevant in this case, as the earliest alleged damages start date is October 17, 2021, which is well within the six-year limitations period because this lawsuit filed in August 14, 2024. In addition, Beckman Coulter's proposed language risks misleading the jury into believing that they may award damages as of Beckman Coulter's earliest alleged marking date because it is within the six-year damages window, when that remains

Cytek admits that Beckman Coulter marked its CytoFLEX products with the Asserted Patents.][14]

Here, Beckman Coulter contends that the damages period begins on [[if one or more valid claim of the '582 Patent is found infringed in Phase 1] October 17, 2021]; [[if the '582 Patent is not found infringed in Phase 1, but one or more valid claim of the '443 Patent is found infringed in Phase 1] on or after July 18, 2023]. [[If only the '107 Patent is found infringed and valid in Phase 1], December 24, 2024.]

[**Cytek:** Cytek contends that if one or more valid claims of the '582 or '443 Patents is found infringed in Phase 1, the damages period did not begin until the date that Beckman Coulter actually notified Cytek of the alleged infringement—June 14, 2024.  It is Beckman Coulter's burden to prove that Cytek received notice of infringement of the '582 and '443 Patents before June 14, 2024.

---

a contested issue. Beckman Coulter's suggestion that the instruction is needed because Cytek will argue that Beckman Coulter delayed filing this litigation misses the point.

[14]  **Beckman Coulter:**   Beckman Coulter's proposed language is appropriate because Cytek admits that Beckman Coulter marked its CytoFLEX products and has forfeited the ability to challenge marking. *Supra* n.5.

**Cytek**: Cytek did not admit Beckman Coulter marked its CytoFLEX products and did not forfeit the ability to challenge marking. *Supra* n.5. Beckman Coulter improperly attempts to resolve a disputed factual issue through jury instruction, and one on which the Court has already denied Beckman Coulter's summary judgment motion. Beckman Coulter cannot now embed its rejected position as if it is a stated fact in the jury instructions. Cytek's proposed language appropriately represents the live issue for the jury.

9

If only one or more valid claims of the '107 Patent is found infringed in Phase 1, Cytek contends that the damages period begins on January 9, 2025, when Beckman Coulter actually notified Cytek of the alleged infringement by asserting the '107 Patent against Cytek in this lawsuit.][15]

Beckman Coulter can provide notice to Cytek of Cytek's alleged infringement of the '582 and '443 Patents by giving notice to the public in general.  Beckman Coulter can provide this public notice by marking substantially all products it sold that practice the [**Beckman Coulter:** '582 and '443 Patents; **Cytek:** Asserted

---

[15] **Beckman Coulter**: Cytek should be held to its admission that Beckman Coulter complied with the marking statute with respect to the Asserted Patents and has forfeited the right to challenge marking. *Supra* n.5.  Accordingly, Cytek cannot now contend that Beckman Coulter did not properly mark.

**Cytek**: Cytek did not admit that Beckman Coulter complied with the marking statute. *Supra* n.5. Beckman Coulter's proposed language is again an improper attempt to resolve a disputed factual issue through jury instruction. Cytek's contention that the damages period for the '582 and '443 patents began no earlier than June 14, 2024, and January 7, 2025 for the '107 patent is a live issue that the jury must resolve. *See* D.I. 293, 296, 297_5.  Further, Beckman Coulter's contentions as to damages start dates should not be the sole contentions contained in the jury instructions since marking and notice are contested issues.  In addition, Beckman Coulter's proposal misstates Cytek's contentions.  Cytek does not contend "that if one or more valid claims of the '582 or '443 Patent is found infringed in Phase 1, the damages period did not begin until October 21, 2021 for the '582 Patent, or between February and September, 2024, for the '443 Patent."  Again, these are disputed issues and Cytek's contention is that Beckman Coulter cannot prove constructive notice under 35 U.S.C. 287, and thus the actual notice date – June 14, 2024 of the '582 and '443 patents – applies.

Patents][16] with the numbers of the [**Beckman Coulter:** ʼ582 and ʼ443 Patents;

**Cytek:** Asserted Patents].[17]  "Marking" is placing either the word "patent" or the

---

[16] **Beckman Coulter:**   Beckman Coulter's proposed language is necessary to prevent the jury from being misled into believing that marking is at issue for all Asserted Patents.  While Cytek has forfeited the ability to challenge marking, it also does not contend that marking is at issue for the ʼ107 Patent.  To the extent Cytek contends that marking is at issue for the ʼ107 Patent, it has also forfeited the ability to challenge marking of the ʼ107 patent as it admitted that Beckman Coulter marks the ʼ107 patent.  *Supra* n.5; D.I. 48 at Answer ¶2 ("U.S. Patent No. 10,330,582 (the ʼʼ582 Patent'), U.S. Patent No. 11,703,443 (the ʼʼ443 Patent'), U.S. Patent No. 12,174,106 (the ʼʼ106 Patent'), and U.S. Patent No. 12,174,107 (the ʼʼ107 Patent')" are "collectively, the 'Asserted Patents'"), Counterclaim ¶¶10 ("Beckman Coulter virtually marks the CytoFLEX® products as an alleged embodiment of the invention(s) claimed in the Asserted Patents").

**Cytek**: Beckman Coulter's forfeiture argument fails for the reasons stated in footnote 5. *See supra* n.5.  Beckman Coulter's reliance on Cytek's Counterclaim fares no better. D.I. 48. Cytek's responses were made "on information and belief" and subsequently withdrawn without prejudice.  Regardless, nothing in the pleadings suggest a concession of substantial, continuous marking in compliance with 35 U.S.C. § 287.

[17] **Beckman Coulter:**   Beckman Coulter's proposed language is necessary to prevent the jury from being misled into believing that marking is at issue for all Asserted Patents.  While Cytek has forfeited the ability to challenge marking, it also does not contend that marking is at issue for the ʼ107 Patent.  To the extent Cytek contends that marking is at issue for the ʼ107 Patent, it has also forfeited the ability to challenge marking of the ʼ107 patent as it admitted that Beckman Coulter marks the ʼ107 patent.  *Supra* n.5; D.I. 48 at Answer ¶2 ("U.S. Patent No. 10,330,582 (the ʼʼ582 Patent'), U.S. Patent No. 11,703,443 (the ʼʼ443 Patent'), U.S. Patent No. 12,174,106 (the ʼʼ106 Patent'), and U.S. Patent No. 12,174,107 (the ʼʼ107 Patent')" are "collectively, the 'Asserted Patents'"), Counterclaim ¶¶10 ("Beckman Coulter virtually marks the CytoFLEX® products as an alleged embodiment of the invention(s) claimed in the Asserted Patents").

**Cytek**: Beckman Coulter's forfeiture argument fails for the reasons stated in footnote 5. *See supra* n.5.  Beckman Coulter's reliance on Cytek's Counterclaim

11

abbreviation "pat." with the [**Beckman Coulter:** '582 and '443 Patents'; **Cytek:** Asserted Patents']¹⁸ number[s] on substantially all of the products that include the patented invention. The marking requirement may also be satisfied by including with the product, or when, from the character of the product, this cannot be done, by fixing to the product, or to the package wherein one or more of them is contained, an internet address to a posting that associates the patented products with the patent number[s] of the [**Beckman Coulter:** '582 and '443 Patents; **Cytek:** Asserted Patents].¹⁹ [**Beckman Coulter:** Cytek admits that Beckman Coulter marked its

---

fares no better. D.I. 48. Cytek's responses were made "on information and belief" and subsequently withdrawn without prejudice.

¹⁸ **Beckman Coulter:** Beckman Coulter's proposed language is necessary to prevent the jury from being misled into believing that marking is at issue for all Asserted Patents. While Cytek has forfeited the ability to challenge marking, it also does not contend that marking is at issue for the '107 Patent. To the extent Cytek contends that marking is at issue for the '107 Patent, it has also forfeited the ability to challenge marking of the '107 patent as it admitted that Beckman Coulter marks the '107 patent. *Supra* n.5; D.I. 48 at Answer ¶2 ("U.S. Patent No. 10,330,582 (the ''582 Patent'), U.S. Patent No. 11,703,443 (the ''443 Patent'), U.S. Patent No. 12,174,106 (the ''106 Patent'), and U.S. Patent No. 12,174,107 (the ''107 Patent')" are "collectively, the 'Asserted Patents'"), Counterclaim ¶¶10 ("Beckman Coulter virtually marks the CytoFLEX® products as an alleged embodiment of the invention(s) claimed in the Asserted Patents").

**Cytek**: Beckman Coulter's forfeiture argument fails for the reasons stated in footnote 5. *See supra* n.5. Beckman Coulter's reliance on Cytek's Counterclaim fares no better. D.I. 48. Cytek's responses were made "on information and belief" and subsequently withdrawn without prejudice.

¹⁹ **Beckman Coulter:** Beckman Coulter's proposed language is necessary to prevent the jury from being misled into believing that marking is at issue for all Asserted Patents. While Cytek has forfeited the ability to challenge marking, it also does not contend that marking is at issue for the '107 Patent. To the extent Cytek

CytoFLEX products with the Asserted Patents.; **Cytek:** This means that Beckman Coulter must show that substantially all of the products made, offered for sale, or sold under the Asserted Patents have been marked with the patent number[s], or when, from the character of the product, this cannot be done, by fixing to the product, or to the package wherein one or more of them is contained, an internet address that associates the patented products with the patent number[s].  Beckman Coulter contends that, it substantially complied with the marking requirement (a) at least by October 17, 2021 for the '582 Patent, and (b) on or after the July 18, 2023 issue date for the '443 Patent, and Beckman Coulter also contends it continued its marking of products with the '582 and '443 Patents after those dates.  If Beckman Coulter did not reasonably continuously mark substantially all of its products with the patent number[s], then Beckman Coulter did not provide notice via marking.][20]  Notice to

---

contends that marking is at issue for the '107 Patent, it has also forfeited the ability to challenge marking of the '107 patent as it admitted that Beckman Coulter marks the '107 patent.  *Supra* n.5; D.I. 48 at Answer ¶2 ("U.S. Patent No. 10,330,582 (the ''582 Patent'), U.S. Patent No. 11,703,443 (the ''443 Patent'), U.S. Patent No. 12,174,106 (the ''106 Patent'), and U.S. Patent No. 12,174,107 (the ''107 Patent')" are "collectively, the 'Asserted Patents'"), Counterclaim ¶¶10 ("Beckman Coulter virtually marks the CytoFLEX® products as an alleged embodiment of the invention(s) claimed in the Asserted Patents").

**Cytek**: Beckman Coulter's forfeiture argument fails for the reasons stated in footnote 5.  *See supra* n.5.  Beckman Coulter's reliance on Cytek's Counterclaim fares no better. D.I. 48. Cytek's responses were made "on information and belief" and subsequently withdrawn without prejudice.

[20] **Beckman Coulter:**  As explained above, Cytek admits that Beckman Coulter marked its products with the Asserted Patents and forfeited the right to challenge

the public via marking is effective even if Cytek did not see or was not aware of the notice to the public.

[**Cytek:** If Beckman Coulter does not carry its burden as to marking, damages begin on the date that Cytek received actual notice of the alleged infringement of the '582 and '443 Patents, i.e., June 14, 2024.  Again, if only claims of the '107 Patent are found to be infringed and not invalid, then Cytek contends that the damages period begins on January 9, 2025.][21]

---

marking. *Supra* n.5.  Cytek's instruction impermissibly asks the jury to determine the sufficiency of marking, which is not at issue in this case.  Further, Cytek omits language from the *Globus* instruction on which this instruction is based.  At minimum, Cytek's instruction should be revised to state that "Beckman Coulter has the burden of establishing that it substantially complied with the marking requirement" to make clear to the jury that the standard is substantial compliance. *Globus Medical, Inc. v. Life Spine, Inc.*, 1:21-cv-01445-CFC, D.I. 348, at § 2.2 (Aug. 14, 2025).

**Cytek**: Beckman Coulter's forfeiture argument fails for the reasons stated in footnote 5 above, and its proposed language improperly attempts to resolve a live factual dispute. *Supra* n.5. Because the marking dispute remains live for the '582, '443, and '107 Patents, the jury requires a complete instruction on the marking standard, including who bears the burden and what it requires. Cytek does not object to adding the sentence from the *Globus* instruction that "Beckman Coulter has the burden of establishing that it substantially complied with the marking requirement."

[21] **Cytek**: For the reasons stated in footnote 5 above, Beckman Coulter's argument that "Cytek should be held to its admission" fails. Cytek's proposed language will not confuse the jury as it correctly presents Cytek's damages period positions for the '582 and '443 Patents (June 14, 2024 – the date of actual notice via Beckman Coulter's notice letter), and for the '107 Patent (January 9, 2025 – the date of actual notice via Beckman Coulter's First Amended Complaint). Beckman Coulter's proposed revision is not a neutral correction as it would replace Cytek's damages period position with Beckman Coulter's own competing position. Moreover,

14

### 4.3.    Damages - Vicarious Liability

[**Beckman Coulter:** In determining the amount of damages Beckman Coulter has proven, you may consider any infringement for which you determined in Phase I that Cytek and its subsidiaries are jointly liable because Cytek directed the infringing activity of any subsidiaries and exercised control over the actions of those subsidiaries such that Cytek dominates those activities.  If Cytek and its subsidiaries are jointly liable for infringement, each is liable for the full amount of damages up to a full single recovery.][22]

---

Beckman Coulter's proposed revisions are unnecessary as both parties' competing positions are already separately set out earlier in Section 4.2. Introducing Beckman Coulter's revisions here would only confuse the jury.

**Beckman Coulter**: Cytek should be held to its forfeiture of any marking challenge and admission that Beckman Coulter complied with the marking statute with respect to the Asserted Patents. *Supra* n.5.  Accordingly, Cytek's proposed language will confuse the jury by suggesting they must determine whether Beckman Coulter complied with the marking statute. Moreover, to the extent Cytek's proposal is adopted, the last sentence should be revised to read "and Beckman Coulter contends that the damages period for the '107 Patent begins on December 24, 2024" because neither party suggests that the jury needs to determine marking with respect to the '107 Patent.

[22] **Beckman Coulter:**  Beckman Coulter's proposed language is necessary to explain to the jury the circumstances in which Beckman Coulter may recover damages from Cytek based on the activities of Cytek's  subsidiaries. *See Intellectual Ventures I LLC v. Toshiba Corp.*, 66 F.Supp.3d 495, 498 (D. Del. Sept. 3, 2013) ("A parent corporation that directs the allegedly infringing activity of a subsidiary can be liable for its subsidiary's infringement.  However, under the agency theory, the issue of liability rests on the amount of control the parent corporation exercises over the actions of the subsidiary.  Simply being a wholly-owned subsidiary of a parent corporation alone does not make the subsidiary the agent of its parent; rather, a parent corporation will be held liable for the activities of the subsidiary only if the

15

parent dominates those activities.' In patent cases where defendants are jointly liable for the infringement, each joint-tortfeasor is liable for the full amount of damages up to a single full recovery.'" (citations and internal citation marks omitted)). Beckman Coulter's damages expert extensively discussed the facts supporting vicarious liability. *See* Opening Expert Report of Michele Riley at ¶¶189-198, *e.g.*, ¶198 ("In sum, the evidence and testimony from Cytek's witnesses supports that Cytek maintains globally integrated manufacturing and sales operations that are directed and controlled by the United States parent entity.").   The vicarious liability question is properly addressed in Phase II because it bears on the amount of damages that Beckman Coulter can recover from Cytek. *See Intellectual Ventures*, 66 F.Supp.3d at 498 ("In patent cases where defendants are jointly liable for the infringement, each joint-tortfeasor is liable for ***the full amount of damages*** up to a single full recovery.'" (emphasis added)).  To the extent Cytek contends that this question belongs in Phase I, Beckman Coulter would agree to include the instruction on vicarious liability in both Phase I and Phase II and has proposed appropriate language.

**Cytek**: Beckman Coulter's proposed instruction does not appear in the *Globus*, *Natera*, or *Magnolia* jury instructions on which this is based. Beckman Coulter's sole cited authority, *Intellectual Ventures*, concerns a Rule 12(b)(6) motion to dismiss, not a jury instruction precedent. Moreover, Beckman Coulter's proposed instruction is also unnecessary on its own terms, and it provides no explanation for why standalone vicarious liability instructions are necessary. Beckman Coulter's technical experts, Drs. Houston and Schaafsma, do not address liability anywhere in their opinions. And Beckman Coulter's damages expert—in providing her limited worldwide theories—never uses the term "vicarious liability," never opines that Cytek should be held jointly or severally liable, and never expands her analysis to any legal framework. Similarly, Cytek's damages expert does not discuss the issue of vicarious liability in his report because it was not an issue.  Instructing the jury on a vicarious liability framework that no expert uses risks confusing the jury. More fundamentally, vicarious liability is a question that belongs in Phase I, not Phase II. Phase II assumes the liability determinations already made by the jury in Phase I and asks only what amount of damages Beckman Coulter is owed; it is not the proper vehicle for extending or supplementing liability findings.

16

### 4.4.   Lost Profits[23]

Beckman Coulter seeks to recover damages in the form of lost profits for Cytek's sales of the infringing products.  To recover lost profits, Beckman Coulter must show a causal relationship between the infringement and its loss of profit.  In other words, Beckman Coulter must show by a preponderance of the evidence that, "but for" the infringement, there is a reasonable probability that Beckman Coulter would have [**Beckman Coulter:** earned higher profits; **Cytek:** made additional profits][24].  To show this, Beckman Coulter must prove that, if there had been no infringement, Beckman Coulter would have made some portion of the sales that

---

[23] Unless otherwise indicated, adapted from *Natera, Inc. v. CareDx, Inc.*, 1:20-cv-00038-CFC-CJB, D.I. 458, at 6-7 (Jan. 26, 2024).

[24] **Beckman Coulter:** Beckman Coulter's proposed language is from the *Natera* instructions on which this instruction is based.  *See Natera, Inc. v. CareDx, Inc.*, 1:20-cv-00038-CFC-CJB, D.I. 458, at 6-7 (Jan. 26, 2024) ("there is a reasonable probability that Natera would have earned higher profits").  Further, Cytek does not explain how "higher profits" encompasses price erosion, particularly given that Beckman's damages expert did not argue price erosion.

**Cytek**: Cytek's proposed language is from the 2025 AIPLA Model Patent Jury Instructions at §10.2.2.1, *available* at https://www.aipla.org/docs/default-source/committee-documents/patent-litigation-files/2025/final/2025-08-18---aipla-model-patent-jury-instructions97a6c7cf1cf24560aa4c091382f9a2e2.pdf?sfvrsn=8254824d_1, and is more precise to the damages theories presented in this case. Cytek's proposed language "made additional profits" more accurately captures a pure lost-profits theory as opposed to "earned higher profits" which could be understood to encompass price erosion. Beckman Coulter's damages expert expressly did *not* calculate price erosion. *See* D.I. 289-2 (Expert report of Beckman Coulter Expert, Ms. Riley) ("These estimates therefore assume zero price erosion" … "I have not calculated price erosion damages").

17

Cytek made of the infringing product. [**Cytek:** Part of your job is to determine what the customers who purchased Cytek's products would have done if the alleged infringement had not occurred.  It is important to remember that the profits I have been referring to are the profits allegedly lost by Beckman Coulter, not the profits, if any, made by Cytek on the infringing sales.][25]

[**Beckman Coulter**: There is no required method to prove that Beckman Coulter would have earned higher profits "but for" Cytek's infringement.  However, one way Beckman Coulter may prove entitlement to lost profits is by establishing each of the following:; **Cytek**: Beckman Coulter has proven its lost profits if you

---

[25] **Cytek:** Cytek's proposed language is from the *GlaxoSmithKline* instruction and also mirrors the language found in the 2025 AIPLA Model Patent Jury Instructions at §10.2.2.1, *available* at https://www.aipla.org/docs/default-source/committee-documents/patent-litigation-files/2025/final/2025-08-18---aipla-model-patent-jury-instructions97a6c7cf1cf24560aa4c091382f9a2e2.pdf?sfvrsn=8254824d_1.  Cytek's proposed language is necessary to explain to the jury that it must assess what Cytek's customers would have done absent the infringement; it puts the but-for world in context. Moreover, Cytek's proposed language prevents jury confusion between Beckman Coulter's claimed lost profits and Cytek's actual profits on infringing sales, a distinction not found elsewhere in the instructions. *See GlaxoSmithKline LLC and Smithkline Beecham (Cork) Ltd. v. Teva Pharmaceuticals USA, Inc.*, C.A. 14-878-LPS-CJB, D.I. 440, at § 6.3 (D. Del. June 19, 2017).

**Beckman Coulter:**  Cytek's proposed language is not in the *Natera* instruction on which this instruction is based.  *Natera, Inc. v. CareDx, Inc.*, 1:20-cv-00038-CFC-CJB, D.I. 458, at 6-7 (Jan. 26, 2024).  Additionally, Cytek's instruction is unnecessary as the instruction already informs the jury that the focus is on the additional profits Beckman Coulter would have made.

find that, with respect to sales of Cytek's products, Beckman Coulter has proven each of the following factors by the more likely than not standard:][26]

---

[26] **Beckman Coulter:**  Beckman Coulter's proposed language aligns with Federal Circuit law, which makes clear that "[t]here is no particular required method to prove but for causation" and that the *Panduit* factors are only a "'useful, but nonexclusive' method to establish the patentee's entitlement to lost profits."  *Mentor Graphics Corp. v. EVE-USA*, Inc., 851 F.3d 1275, 1284 (Fed. Cir. 2017). ("There is no particular required method to prove but for causation. One 'useful, but non-exclusive' method to establish the patentee's entitlement to lost profits is the Panduit test first articulated by the Sixth Circuit."). Cytek's proposed language risks confusing the jury by suggesting that the *Panduit* factors are the only way to prove lost profits and is not from instructions previously given by this Court.  Beckman Coulter's proposed language is necessary to explain to the jury that the *Panduit* factors are not the exclusive method of determining lost profits and to prevent juror confusion. Beckman Coulter's language helps clarify, for example, that a patentee can recover lost profits using a market share analysis, even if there are acceptable non-infringing substitutes available.  *State Industries, Inc. v. Mor-Flo Industries, Inc.*, 883 F.2d 1573 (Fed. Cir. 1989), *cert. denied*, 493 U.S. 1022 (1990).  Beckman Coulter's expert relies on a market share analysis as contemplated by *Mor-Flo*.  Opening Report of Michele Riley at ¶¶239-374. Beckman Coulter's proposed language is required to avoid juror confusion about whether a market share analysis is an acceptable method of proving lost profits.

**Cytek**: Beckman Coulter's proposed language is not in the *Natera* instruction on which this section is based and also departs from how this Court has previously framed the *Panduit* instruction. *See Natera, Inc. v. CareDx, Inc.*, C.A. No. 20-038-CFC, D.I. 458, at 7 (Jan. 26, 2024); *see also Magnolia Medical Techs., Inc. v. Kurin, Inc.*, C.A. No. 19-97-CFC, D.I. 450, § 5.2 (Aug. 4, 2022). Moreover, Beckman Coulter's "no required method" language is unnecessary because Beckman Coulter's damages expert relies exclusively on the *Panduit* factors. There is no jury confusion to prevent as the market share theory is already in the instruction. Instead, Beckman Coulter's proposed language risks confusing the jury about other nonexistent theories. Cytek's proposal thus appropriately focuses on the *Panduit* Factors.  *See GlaxoSmithKline LLC and Smithkline Beecham (Cork) Ltd. v. Teva Pharmaceuticals USA, Inc.*, C.A. 14-878-LPS-CJB, D.I. 440, at § 6.3 (D. Del. June 19, 2017).

(1) That there was demand for Beckman Coulter's patented product;

(2) That there were no available, acceptable, non-infringing substitute products, or if there were, Beckman Coulter's market share of the sales made by Cytek that Beckman Coulter would have made despite the availability of those non-infringing substitute products;

(3) That Beckman Coulter had the manufacturing and marketing capacity to make the additional sales of Cytek to satisfy the demand; and

(4) The amount of profit that Beckman Coulter would have made if Cytek had not infringed.

[**Beckman Coulter**: The amount of lost profits need not be proved with absolute mathematical precision; however it must be proved with reasonable certainty.][27]

---

[27] **Beckman Coulter:**    Beckman Coulter's proposal aligns with the *Natera* instructions on which this instruction is based.  *See Natera, Inc. v. CareDx, Inc.*, 1:20-cv-00038-CFC-CJB, D.I. 458, at 6-7 (Jan. 26, 2024) ("The amount of lost profits need not be proved with absolute or mathematical precision; however, it must be proved with reasonable certainty.").  Beckman's proposal also reflects Federal Circuit case law, which has long held that damages need not be proved with mathematical precision. *Ryco, Inc. v. Ag-Bag Corp.*, 857 F.2d 1418, 1428 (Fed. Cir. 1988) ("The amount of list profits awarded cannot be speculative but the amount need not be proven with unerring precision." (citation omitted)); *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1381 n.3 (Fed. Cir. 2015) (favorably citing *Ryco*).

**Cytek**: Beckman Coulter's proposed instruction is unnecessary as Section 4.1 already instructs the jury "While Beckman Coulter is not required to prove the amount of damages with mathematical precision, it must prove them with reasonable

[I will now instruct you on each of these four elements.][28]

### 4.4.1. Lost Profits – Demand for the Patented Product[29]

The first factor in the lost profits analysis looks to the demand for Beckman Coulter's patented CytoFLEX products.  Beckman Coulter can prove demand for its patented CytoFLEX products by showing significant sales of its CytoFLEX products or by showing significant sales of Cytek's infringing products containing the same features that are covered by [claims __ of the '582 Patent, claims __ of the '443 Patent, and claims __ of the '107 Patent].  To use sales of Cytek's products as proof of this demand, Beckman Coulter's and Cytek's products must be sufficiently similar to compete against each other in the same market.

### 4.4.2. Lost Profits – Acceptable Non-Infringing Substitutes[30]

The second factor in the lost profits analysis asks whether non-infringing, acceptable substitutes for Beckman Coulter's products competed with Cytek's

---

certainty." That requirement need not be repeated, but if it is, reference only to the reasonable certainty requirement should be included:  "Beckman Coulter must prove the amount of lost profits by a preponderance of the evidence and with reasonable certainty."

[28] *Globus Medical, Inc. v. Life Spine, Inc.*, 1:21-cv-01445-CFC, D.I. 348, at § 2.3 (Aug. 14, 2025).

[29] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, 1:21-cv-01445-CFC, D.I. 348, at § 2.4 (Aug. 14, 2025).

[30] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, 1:21-cv-01445-CFC, D.I. 348, at § 2.5 (Aug. 14, 2025).

infringing products in the marketplace and the impact of such substitutes on the marketplace absent the sales of Cytek's infringing products.  If the realities of the marketplace are that competitors other than Beckman Coulter would likely have captured some or all of the sales made by Cytek, even despite a difference in the products, then Beckman Coulter is not entitled to lost profits on those sales that would have been made by a non-infringing substitute.  Likewise, if the realities are that Cytek itself had a non-infringing substitute, then Beckman Coulter is not entitled to lost profits on those sales that would have been made by a non-infringing substitute.  Here, Cytek contends that one available non-infringing substitute was for it to manufacture accused products, including APD modules, for foreign sales entirely outside of the United States, such that no act of infringement within the United States would have occurred for those products.  Beckman Coulter contends that Cytek could not move all manufacturing abroad for foreign sales, including because Cytek already had issues manufacturing certain APD modules abroad.

To be an acceptable substitute, the product must have had one or more of the advantages of the patented invention that were important to the actual buyers of the infringing products, not the public in general.

Any acceptable substitute must also not infringe the ['582, '443, and '107 Patents].  Any acceptable substitute, in addition, must have been available during the damages period.  The substitute need not have been actually sold at the time.

But, if the acceptable substitute was not sold during the damages period, then Cytek must show by a preponderance of the evidence that, during the damages period, a competitor or Cytek had all the necessary equipment, materials, know-how, and experience to design and manufacture the acceptable non-infringing substitute. If you determine that some of Cytek's customers would just as likely have purchased an acceptable non-infringing substitute, then Beckman Coulter has not shown it lost those sales but for Cytek's infringing sales. If you determine that some of the purchasers of Cytek's infringing products would just as likely have purchased a non-infringing acceptable product, then Beckman Coulter has not shown it lost those specific sales but for Cytek's infringement.

Even if you find that Beckman Coulter and Cytek were the only ones with the advantages of the patented invention, Beckman Coulter is nonetheless required to prove to you by a preponderance of the evidence that it would have, in fact, made Cytek's infringing sales.

### 4.4.3. Lost Profits – Market Share[31]

If you find that there were acceptable non-infringing substitutes in the marketplace, Beckman Coulter may still be entitled to lost profits on a portion of Cytek's infringing sales. The burden is on Beckman Coulter to prove that it is more

---

[31] Unless otherwise indicated, adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, 1:21-cv-01445-CFC, D.I. 348, at § 2.6 (Aug. 14, 2025).

likely than not that its CytoFlex products competed in the same market as Cytek's

infringing products, and that Beckman Coulter would have made a portion of the

infringing sales equal to at least Beckman Coulter's share of the market but for

Cytek's infringement.  It is not necessary for Beckman Coulter to prove that

Beckman Coulter and Cytek were the only two suppliers in the market for Beckman

Coulter to demonstrate entitlement to lost profits.

[**Beckman Coulter:** Products are considered in the same market if they are

considered "sufficiently similar" to compete against each other.  Two products are

not "sufficiently similar," and therefore are not considered in the same market, if

the products have significantly different prices or significantly different product

characteristics.][32]

---

[32] **Beckman Coulter:** Beckman Coulter's proposed language is necessary to explain to the jury how to determine whether products are sufficiently similar to complete against one another.  *See* Federal Circuit Model Patent Jury Instructions at 59, *available at* https://s45968.pcdn.co/wp-content/uploads/public_docs/May-2020-FCBA-Model-Patent-Jury-Instructions.pdf; *see also BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993) ("The *Panduit* test, however, operates under an inherent assumption, not appropriate in this case, that the patent owner and the infringer sell products sufficiently similar to compete against each other in the same market segment. If the patentee's and the infringer's products are not substitutes in a competitive market, *Panduit*'s first two factors do not meet the "but for" test—a prerequisite for lost profits."); *id.* at 1219 ("The first *Panduit* factor—demand for the patented product—presupposes that demand for the infringer's and patent owner's products is interchangeable. … In *Gyromat*, for instance, the patent owner's and the infringer's products were similar in price and product characteristics."); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1124 (Fed. Cir. 2003) ("The relevant market also includes other devices or substitutes similar in physical and functional characteristics to the patented invention.  It

### 4.4.4.  Lost Profits – Capacity[33]

The third factor in the lost profits analysis asks whether Beckman Coulter had the manufacturing and marketing ability to actually make the sales it allegedly lost due to Cytek's infringement.  To be awarded lost profits based on additional sales of Beckman Coulter's products that Beckman Coulter claims it would have made but for Cytek's infringement, Beckman Coulter must prove that it was more likely than not that it would have had the capacity to manufacture enough products to make those additional sales, as well as the marketing capacity to make those additional sales.

---

excludes, however, alternatives with disparately different prices or significantly different characteristics." (internal quotation marks and citation omitted)).

**Cytek:** Beckman Coulter's proposed language does not appear in the *Globus* instruction on which this section is based.  It also departs from the Federal Circuit Model Patent Jury Instructions.  Moreover, Beckman Coulter's proposed language – adding a price and characteristic definition – improperly inserts Beckman Coulter's damages expert's disputed market segmentation methodology, and departs from the neutral jury instruction that directly precedes Beckman Coulter's proposed addition. Adopting Beckman Coulter's proposed language risks confusing the jury by suggesting that price and characteristics are the only factors a juror should consider in determining if two products compete in the same market.

[33] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, 1:21-cv-01445-CFC, D.I. 348, at § 2.7 (Aug. 14, 2025).

### 4.4.5. Lost Profits – Amount of Profit[34]

The fourth factor in the lost profits analysis asks the amount of profit that Beckman Coulter would have made if Cytek had not infringed.  Beckman Coulter may calculate the amount of its lost profits by calculating its lost sales and subtracting any additional costs or expenses it would have incurred in making those lost sales, such as cost of goods, sales costs, packaging costs, and shipping costs. Fixed costs that do not vary with increases in production or scale, such as taxes, insurance, rent, and administrative overhead, should not be subtracted from a patent holder's lost revenue.

### 4.4.6. [Beckman Coulter:  Sales to Global Customers

Beckman Coulter may recover lost profits based on Cytek's sales of its infringing products to foreign customers if the sales were made in the United States, the infringing products were manufactured in the United States, or if Cytek used the infringing products in the United States, including by testing the infringing products.

In determining whether a sale occurred in the United States, you may consider whether substantial activities occurred in the United States. Examples of such activities include whether:

---

[34] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, 1:21-cv-01445-CFC, D.I. 348, at § 2.8 (Aug. 14, 2025).

1) The relevant contracts were formed in the United States;

2) The relevant contracts were governed by United States law;

3) The relevant contracts require orders to be made through a domestic ordering systems;

4) All activities relating to designing, simulating, testing, evaluating, and qualifying the product made by the seller and its customers occur in the United States;

5) A United States entity provides customers with samples and simulations incorporating designs;

6) During the sales cycles, United States engineers assist customers in implementing solutions into the infringing product;

7) There are contractual commitments that a certain volume of products are made in the United States.

In determining whether a product was manufactured in the United States, you may consider whether Cytek finally assembles the infringing products in the United States, even if it did not make each individual component in the United States.

In determining whether a product was used in the United States, you may consider whether Cytek performed any action that indicates any putting to service

of the product, including, for example, testing the product or any other use for its intended purpose.

Additionally, Beckman Coulter may recover lost profits based on Cytek's sales of its infringing products to foreign customers if Beckman Coulter shows that (1) there was an act of infringement in the United States directly associated with that foreign sale and (2) it was reasonably, objectively foreseeable that but for the infringement, Beckman Coulter would have made the foreign sales that were made by Cytek.][35]

---

[35] **Beckman Coulter:**  Beckman Coulter's proposed language is necessary to explain to the jury the circumstances in which Beckman Coulter may recover damages based on Cytek's worldwide sales. *Brumfield, Trustee for Ascent Trust v. IBG LLC*, 97 F.4th 854, 875 (Fed. Cir. Mar. 27, 2024) ("Under WesternGeco we must examine the particular acts alleged to constitute infringement under particular statutory provisions to determine if the allegations focus on domestic conduct. … If the exporting covered by § 271(f)(2) is a domestic act for purposes of the extraterritoriality analysis, as *WesternGeco* held, so too are the § 271(a)-covered acts at issue in this case."); *id.* at 877 ("We have said, too, in the lost-profits setting, that "reasonable, objective foreseeability" is "generally" sufficient for proximate causation, while indicating that a different conclusion might be justified if there is "a persuasive reason to the contrary.""); *WesternGeco LLC v. ION Geophysical Corp.*, 585 U.S. 407, 417, 138 S. Ct. 2129, 2139, 201 L. Ed. 2d 584 (2018) ("damages award for lost [foreign] profits [i]s a permissible domestic application of § 284"); *Centrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360, 1372 (Fed. Cir. 2019) ("[A] final assembler can be liable for making an infringing combination—assuming the evidence supports such a finding—even if it does not make each individual component element.~~");" and "as~~ ~~*Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1378 (Fed. Cir. 2017) ("[A]~~s long as a defendant adds the final limitations to complete a claimed combination, the defendant infringes."); *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1378 (Fed. Cir. 2017); *Golden Blount, Inc. v. Robert H. Peterson Co.,* 438 F.3d 1354, 1362 (Fed. Cir. 2006) ("[E]ach time an EMB was attached to a primary burner by either Peterson or an end-user, the combination was

infringing."); *California Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 993 (Fed. Cir. 2022) (question is whether there were "substantial activities in the United States"); *Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corp.*, 2025 WL 1836331, at *3 (N.D. Cal. July 3, 2025) (listing evidence that can support a finding that a sale was made or offered in the United States); *Carnegie Mellon Univ. Marvel Tech. Grp., Ltd.*, 807 F.3d 1283, 1308 (Fed. Cir. 2015) (listing evidence that can support a finding that a sale was made or offered in the United States).   Cytek's reliance on *Trustees of Columbia University*, 169 F.4th at 1339, makes no sense because the *Trustees of Columbia* trial occurred before *Brumfield* was decided, and the question whether the plaintiff's foreign damages theory "was proper under the causation theory of *Brumfield*" was not reached in part because "the jury was not instructed … that they could grant a reasonable royalty for foreign sales based on this theory."   *Id.* Beckman Coulter's proposed language will not cause confusion because it requires a "an act of infringement in the United States" and is therefore entirely consistent with Section 4.4.2.  Further Cytek does not explain why "directly associated," which uses common English words, could possibly cause juror confusion.

**Cytek**: Beckman Coulter disclosed substantial modifications to its proposed Instruction 4.4.6 and supporting footnote (including citing multiple new cases) less than 24 hours before the July 17, 2025 5pm ET filing deadline.  Cytek has not had sufficient time to fully consider and respond to Beckman Coulter's proposal and position, and thus reserves all rights to make additional objections, including at the charge conference.

Beckman Coulter's proposed language is not in the *Globus* instruction on which this section is based. Moreover, Beckman Coulter's proposed language is unnecessary and creates a serious risk of confusing the jury because Section 4.4.2 already informs the jury that if Cytek could have manufactured the Accused Products abroad, such that no domestic act of infringement occurred, Beckman Coulter is not entitled to lost profits on those foreign sales. Beckman Coulter's proposed language in Section 4.4.6 risks contradictory jury findings through the *Brumfield* framework – a framework the Federal Circuit subsequently declined to extend in *Trustees of Columbia University v. Gen Digital Inc.*, 169 F.4th 1320 (Fed. Cir. 2026). Beckman Coulter's instruction additionally risks confusing the jury because it fails to articulate with sufficient clarity what certain phrases mean, including "directly associated," leaving the jury to apply an ambiguous standard.

29

### 4.5.    Reasonable Royalty[36]

For any infringing sales for which you find Beckman Coulter has not proven lost profits [**Cytek:** (which could be all of the infringing sales or only a subset of the infringing sales)][37], Beckman Coulter is entitled to at least a reasonable royalty. [**Beckman Coulter**: Because you found that Beckman Coulter has established infringement of [claims __ of the '582 Patent, claims __ of the '443 Patent, and claims __ of the '107 Patent] by a preponderance of the evidence, the patent laws provide that the amount of damages that Cytek must pay Beckman Coulter for infringing the Asserted Claims must be enough to compensate for the infringement,

---

[36] Adapted from *Deere & Co. v. Agco Corp.*, No. 1:18-cv-827-CFC, D.I. 535-1, at § 6.3 (D. Del. March 28, 2023).

[37] **Cytek**: Cytek's proposed language reflects the *Globus* instruction previously given by this Court. *See Globus Medical, Inc. v. Life Spine, Inc.*, 1:21-cv-01445-CFC, D.I. 348, at § 2.9 (D. Del. Aug. 14, 2025). In addition, Cytek's proposed language is necessary because it makes clear that the jury may find lost profits unavailable on all infringing sales, which is consistent with the opinions of Beckman Coulter's damages expert. Moreover, Beckman Coulter's objection that this is unnecessary because the jury has already been instructed on lost profits does not account for the specific clarifying function the parenthetical serves at the precise moment the jury is directed to shift from lost profits to reasonable royalty.

**Beckman Coulter:** Cytek's proposed language is not in the *Deere* instruction on which this instruction is based. *See Deere & Co. v. Agco Corp.*, No. 1:18-cv-827-CFC, D.I. 535-1, at § 6.3 (D. Del. March 28, 2023). It is also unnecessarily, as the jury has already been instructed that Beckman may not be entitled to lost profits on all of Cytek's sales.

and may not be less than a reasonable royalty for the use of Beckman Coulter's inventions.][38]

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and alleged infringer would have agreed to in a hypothetical negotiation taking place at a time just prior to when the infringement first began. In this case, that hypothetical negotiation would have taken place shortly

---

[38] **Beckman Coulter:** Beckman Coulter's proposed language aligns with the *Deere* instruction on which this instruction is based. *Deere & Co. v. Agco Corp.*, No. 1:18-cv-827-CFC, D.I. 535-1, at § 6.3 (D. Del. March 28, 2023) ("the patent laws provide that the amount of damages that AGCO Precision must pay Deere for infringing the Asserted Claims must be enough to compensate for the infringement, and may not be less than a reasonable for the use of Deere's inventions"). Beckman Coulter's proposal tracks the language of the patent statute and is necessary to inform the jury that patent damages may not be less than a reasonable royalty. *See* 35 U.S.C. § 284 ("in no event less than a reasonable royalty for the use made of the invention by the infringer"). The language need not be conditional, because the jury will have already made its liability determination in Phase I. By contrast, *Deere* did not bifurcate liability and damages.

**Cytek**: Beckman Coulter's proposed language is improperly argumentative, highly prejudicial, lacks appropriate burden information, and materially departs from the *Deere* instruction on which it is based. It risks confusing or improperly influencing the jury. *Deere's* formulation is conditional ("*If* you find that Deere has established infringement") whereas Beckman Coulter's proposed instruction is declarative ("*Because* you found that Beckman Coulter has established infringement"). Moreover, Beckman Coulter's proposed language is unnecessary because Section 4.5 already explains "Beckman Coulter is entitled to at least a reasonable royalty." Both *Globus* and *Natera* – where damages followed a bifurcated liability determination – instructed reasonable royalty without using any declarative "because you found" language Beckman Coulter proposes.

before the first of the three Asserted Patents issued on June 25, 2019.  [**Cytek:** The reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.  When the infringing products have both patented and unpatented features, measuring this value requires a determination of the value added by the patented features.  The royalty rate must reflect the value attributable to the infringing features of Cytek's products, and no more.][39]

In considering this hypothetical negotiation, you should focus on what the expectations of Beckman Coulter and Cytek would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement.  [**Cytek:** Having that in mind, you may consider any relevant fact in determining the

---

[39] **Cytek:** *See Globus Medical, Inc. v. Life Spine, Inc.*, 1:21-cv-01445-CFC, D.I. 348, at § 2.9 (Aug. 14, 2025). Cytek's proposed language reflects the *Globus* instruction previously given by this Court. Cytek's proposal is necessary because it specifies that the award must be grounded in the incremental value the patent adds, providing the jury explicit guidance for products with both patented and unpatented features. Cytek's proposed language derives from the concept of apportionment, is not redundant, and cannot be found elsewhere in this instruction.

**Beckman Coulter:**  Cytek's proposed language is not in the *Deere* instruction on which this instruction is based.  *Deere & Co. v. Agco Corp.*, No. 1:18-cv-827-CFC, D.I. 535-1, at § 6.3 (D. Del. March 28, 2023).  Cytek's proposal is also unnecessary because this instruction already informs the jury that "[t]he ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more."

reasonable royalty for the use of a patented invention, including the testimony of experts.][40]  The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

A reasonable royalty is typically made up of a royalty base and a royalty rate that is applied to that base.  There may be more than one way to calculate a royalty base and a royalty rate.  The ultimate combination of royalty base and royalty rate

---

[40] **Cytek**: Cytek's proposed language is drawn from the *GlaxoSmithKline* instruction. Cytek's proposed language helps clarify to the jury the scope of evidence they may consider in arriving at a royalty without reference to the specific *Georgia-Pacific* factors that Beckman Coulter unnecesarily seeks to introduce in Section 4.5.1. This instruction is not redundant of the general expert testimony instruction a jury will receive. *See GlaxoSmithKline LLC and Smithkline Beecham (Cork) Ltd. v. Teva Pharmaceuticals USA, Inc.*, C.A. 14-878-LPS-CJB, D.I. 440, at § 6.4 (D. Del. June 19, 2017). Beckman Coulter's argument that the jury will be left without guidance absent the *Georgia-Pacific* factors is directly refuted by the *GlaxoSmithKline* instruction which instructed the jury to "consider any relevant fact" without a *Georgia-Pacific* factors list. *Id* at § 6.4. Moreover, here, the agreed text of Section 4.5 already provides the jury with substantial guidance through the hypothetical negotiation framework, royalty base and rate, and apportionment.

**Beckman Coulter:**  Cytek's proposed language is not in the *Deere* instruction on which this instruction is based.  *Deere & Co. v. Agco Corp.*, No. 1:18-cv-827-CFC, D.I. 535-1, at § 6.3 (D. Del. March 28, 2023).  Cytek's instruction is also unnecessary, as the jury will be instructed that they can consider expert testimony and will be given the standard to apply to determine a reasonable royalty.  Cytek's proposal is particularly inappropriate given that Cytek opposes providing the jury with instructions regarding the *Georgia-Pacific* factors.  As a result, if Cytek's proposals are accepted, the jury will be given no guidance as to which factors can impact the damages analysis and risks juror confusion and the possibility of a damages award unsupported by substantial evidence.

must reflect the value attributable to the infringing features of the product, and no more. [**Cytek:** That is, when the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.][41]

Evidence of events after infringement first began can be considered in evaluating the reasonable royalty, but only to the extent that the evidence of such later events aids in assessing what royalty would have resulted from a hypothetical negotiation just before the time of infringement.

---

[41] **Cytek:** Cytek's proposed language is taken directly from the *Globus* instruction previously given by this Court. Cytek's proposed language is necessary to clarify to the jury that when the accused products have both patented and unpatented features, the award must be apportioned to the patented features only. This gives the jury practical guidance on how to apply that standard to the specific products at issue. Beckman Coulter's redundancy objection is also directly contradicted by the *Globus* instruction itself, which addresses apportionment at three separate points across the reasonable royalty sections demonstrating that repeated apportionment reminders are appropriate. *See Globus Medical, Inc. v. Life Spine, Inc.*, 1:21-cv-01445-CFC, D.I. 348, at §§ 2.09-2.11 (Aug. 14, 2025).

**Beckman Coulter:** Cytek's proposal is not in the *Deere* instruction on which this instruction is based. *Deere & Co. v. Agco Corp.*, No. 1:18-cv-827-CFC, D.I. 535-1, at § 6.3 (D. Del. March 28, 2023). Cytek's proposed language is also unnecessary because the instruction already informs the jury about apportionment, including that "[t]he ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more."

34

### 4.5.1. [Beckman Coulter: Reasonable Royalty – Hypothetical Negotiation[42]

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. You are trying to determine the amount that the parties to the hypothetical negotiation would have agreed upon if both had been reasonably and voluntarily trying to reach an agreement.

[Estimating a reasonable royalty is not an exact science, and the reasonable royalty analysis necessarily involves approximation. There may be more than one reliable method for estimating a reasonable royalty.][43] However, in determining the reasonable royalty, you may consider the following nonexclusive list of factors:

---

[42] **Beckman Coulter**: Unless otherwise indicated, adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, 1:21-cv-01445-CFC, D.I. 348, at 19-22 (Aug. 14, 2025). Beckman Coulter's proposal will prevent juror confusion by explaining the hypothetical negotiation and the *Georgia-Pacific* factors, on which both parties experts relied.

**Cytek:** Beckman Coulter's proposed language is not reflected in the *Deere* instruction on which Section 4.5 is based. *Deere & Co. v. Agco Corp.*, No. 1:18-cv-827-CFC, D.I. 535-1, at § 6.3 (D. Del. March 28, 2023). Beckman Coulter's proposed language is unnecessary. Sufficient reasonable royalty instruction can be, and has been, provided without overburdening the jury with all fifteen *Georgia-Pacific* factors. *See GlaxoSmithKline LLC v. Teva Pharms. USA, Inc.*, No. 14-878-LPS-CJB, D.I. 440, at § 6.4 (D. Del.). Beckman Coulter's proposed language risks confusing and overburdening the jury. *Infra* n. 45, 46.

[43] **Beckman Coulter**: Beckman Coulter's proposed language reflects Federal Circuit law. *Lucent Technologies Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) ("Both Microsoft and Lucent must therefore accept that any reasonable royalty analysis 'necessarily involves an element of approximation and uncertainty.'" (citing *Unisplay, S.A. v. Am. Elec. Sign Co.*, 69 F.3d 512, 517 (Fed. Cir. 1995)); *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1296 (Fed. Cir. 2015) ("This

35

1) Any royalties received by Beckman Coulter for licensing of the ['582, '443, or '107 Patents], providing or tending to prove an established royalty;

2) The rates paid by Cytek to license other patents comparable to the ['582, '443, or '107 Patents];

3) The nature and scope of the license, such as whether the license is exclusive or non-exclusive, or as restricted or non-restricted in terms

---

court has recognized that estimating a reasonable royalty is not an exact science. The record may support a range of reasonable royalties, rather than a single value. Likewise, there may be more than one reliable method for estimating a reasonable royalty."). Cytek does not explain why the *Georgia-Pacific* factors would burden the jury. Beckman Coulter's proposed language is also necessary to provide the jury with specific instructions on the standard for providing reasonable royalty damages through the hypothetical negotiation framework at the time they are instructed about that framework.

**Cytek**: Beckman Coulter's proposed language is not in the *Deere* instruction on which Section 4.5 is based, or the *Globus* instruction from which Beckman Coulter imports other portions of proposed Section 4.5.1. Beckman Coulter's proposed language is unnecessary because the jury has already been instructed that damages need not be proven with mathematical precision. *See* Sections 4.1, 4.4. Instructing a jury for a third time, in yet another formulation and from Federal Circuit case law beyond baseline instructions, risks signaling to the jury that Beckman Coulter's royalty methodology deserves special deference to imprecision. Here, Cytek is not concerned with the overburdensome nature of the *Georgia-Pacific* factors, but instead, about the redundancy of restating the approximation standard a third time. Moreover, Beckman Coulter's proposed language sits immediately before its *Georgia-Pacific* factors instruction and risks priming the jury toward special deference to imprecision in Beckman Coulter's royalty methodology at the precise moment those factors are introduced.

36

of its territory or with respect to whom the manufactured product may be sold;

4) Any established policy by Beckman Coulter to maintain its patent monopoly by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity;

5) The commercial relationship between Beckman Coulter and Cytek, such as whether or not they are competitors in the same territory in the same line of business;

6) The effect of selling the patented specialty in promoting sales of other [Cytek] products; the existing value of the invention to Beckman Coulter as a generator of sales of its non-patented items; and the extent of such derivative and convoyed sales;

7) The duration of the ['582, '443, and '107 Patents] and the term of the license;

8) The established profitability of the product made under the patents; its commercial success; and its current popularity;

9) The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

10) The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Globus, and the benefits of those who have used the invention;

11) The extent to which Cytek has made use of the invention and any evidence probative of the value of that use;

12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions;

13) The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by Cytek;

14) The opinion testimony of qualified experts;

15) The amount that a licensor (such as Beckman Coulter) and a licensee (such as Cytek) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be

able to make a reasonable profit and which amount would have been

acceptable by a patentee who was willing to grant a license.

No one factor is dispositive, and you can and should consider the evidence

that has been presented to you in this case as well as any other factors that would

have increased or decreased the royalty Cytek would have been willing to pay and

Beckman Coulter would have been willing to accept, acting as normally prudent

business people.][44]

---

[44] **Beckman Coulter:** Beckman Coulter's proposal is necessary to give the jury information about the hypothetical negotiation, including the *Georgia-Pacific* factors. It also aligns with instructions previously given by this Court. *See Globus Medical, Inc. v. Life Spine, Inc.*, 1:21-cv-01445-CFC, D.I. 348, at 19-22 (Aug. 14, 2025). Cytek does not explain why providing the jury with the *Georgia-Pacific* factors will "diluting and confusing" deliberations. And there is no risk that the jury will not consider "all evidence" because Beckman Coulter's proposal expressly states that "[t]here may be more than one reliable method for estimating a reasonable royalty" and that the *Georgia-Pacific* factors are "nonexclusive."

**Cytek:** Beckman Coulter's proposal is not in the *Deere* instruction on which Section 4.5 is based. *Deere & Co. v. Agco Corp.*, No. 1:18-cv-827-CFC, D.I. 535-1, at § 6.3 (D. Del. March 28, 2023). Beckman Coulter's instruction is also unnecessary because the jury is already instructed as to the hypothetical negotiation and the applicable framework. Burdening the jury with fifteen factors risks diluting and confusing the jury's deliberations, including because the jury may consider all evidence, not just evidence concerning the *Georgia-Pacific* factors, in assessing a reasonable royalty. *Supra* n.44. To the extent the Court chooses to reference the *Georgia-Pacific* factors, it should be limited to those that were addressed by either party's damages experts.

### 4.5.2. [Beckman Coulter: Sales to Global Customers

Beckman Coulter may recover a reasonable royalty based on Cytek's sales of its infringing products to foreign customers if the sales were made in the United States, the infringing products were manufactured in the United States, or if Cytek used the infringing products in the United States, including by testing the infringing products.

In determining whether a sale occurred in the United States, you may consider whether substantial activities occurred in the United States. Examples of such activities include whether:

1) The relevant contracts were formed in the United States;

2) The relevant contracts were governed by United States law;

3) The relevant contracts require orders to be made through a domestic ordering systems;

4) All activities relating to designing, simulating, testing, evaluating, and qualifying the product made by the seller and its customers occur in the United States;

5) A United States entity provides customers with samples and simulations incorporating designs;

6) During the sales cycles, United States engineers assist customers in implementing solutions into the infringing product;

40

7) There are contractual commitments that a certain volume of products are made in the United States.

In determining whether a product was manufactured in the United States, you may consider whether Cytek finally assembles the infringing products in the United States, even if it did not make each individual component in the United States.

In determining whether a product was used in the United States, you may consider whether Cytek performed any action that indicates any putting to service of the product, including, for example, testing the product or any other use for its intended purpose.

Beckman Coulter may recover reasonable royalty damages on products that were sold in the United States, even if the products were made or used outside the United States.  Likewise, Beckman Coulter may recover reasonable royalty damages on products made in the United States, even if the products were sold or used outside the United States.]45

---

45 **Beckman Coulter:**  Beckman Coulter's instruction will assist the jury in evaluating whether Beckman Coulter may recover reasonable royalty damages based on Cytek's conduct outside the United States.  Beckman Coulter's proposal also aligns with Federal Circuit law. *Carnegie Mellon Univ. v. Marvell Tech. Grp.*, 807 F.3d 1283, 1306 (Fed. Cir. 2015) ("Where a physical product is being employed to measure damages for the infringing use of patented methods, we conclude, territoriality is satisfied when and only when any one of those domestic actions for that unit (e.g., sale) is proved to be present, even if others of the listed activities for

that unit (e.g., making, using) take place abroad"); *Centrak, Inc. v. Sonitor Techs., Inc.*, 915 F.3d 1360, 1372 (Fed. Cir. 2019) ("[A] final assembler can be liable for making an infringing combination—assuming the evidence supports such a finding—even if it does not make each individual component element.");" and "as *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1378 (Fed. Cir. 2017) ("[A]s long as a defendant adds the final limitations to complete a claimed combination, the defendant infringes."); *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1378 (Fed. Cir. 2017); *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1362 (Fed. Cir. 2006) ("[E]ach time an EMB was attached to a primary burner by either Peterson or an end-user, the combination was infringing."); *California Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 993 (Fed. Cir. 2022) (question is whether there were "substantial activities in the United States"); *Kawasaki Jukogyo Kabushiki Kaisha v. Rorze Corp.*, 2025 WL 1836331, at *3 (N.D. Cal. July 3, 2025) (listing evidence that can support a finding that a sale was made or offered in the United States); *Carnegie Mellon Univ. Marvel Tech. Grp., Ltd.*, 807 F.3d 1283, 1308 (Fed. Cir. 2015) (listing evidence that can support a finding that a sale was made or offered in the United States).  Cytek's reliance on *Trustees of Columbia University*, 169 F.4th at 1339, makes no sense because the *Trustees of Columbia* trial occurred before *Brumfield* was decided, and the question whether the plaintiff's foreign damages theory "was proper under the causation theory of *Brumfield*" was not reached in part because "the jury was not instructed … that they could grant a reasonable royalty for foreign sales based on this theory."  *Id.*  Beckman Coulter's proposed language will not cause confusion because it requires a "an act of infringement in the United States" and is therefore entirely consistent with Section 4.4.2.  Further Cytek does not explain why "directly associated," which uses common English words, could possibly cause juror confusion.  Beckman Coulter's proposed language is unrelated to Cytek's damages expert opinion on its alleged non-infringing alternative.  For example, Cytek's damages expert opinion on relocating manufacturing and assembly to support *foreign* sales would not apply to instances of sales *in the United States* of a product that was made or used outside of the United States.  Beckman Coulter's proposed language is necessary to explain to the jury that these instances may still lead to recovery for Beckman Coulter, and aligns with Federal Circuit law. *Carnegie Mellon*, 807 F.3d at 1306 ("Where a physical product is being employed to measure damages for the infringing use of patented methods, we conclude, territoriality is satisfied when and only when *any one* of those domestic actions for that unit (e.g., sale) is proved to be present, even if others of the listed activities for that unit (e.g., making, using) take place abroad" (emphasis added)).

42

[Additionally, Beckman Coulter may recover reasonable royalty damages based on Cytek's non-infringing conduct outside the United States if Beckman Coulter proves that Cytek's foreign conduct increased the value of Cytek's infringement in the United States.  For example, Beckman Coulter can demonstrate that Cytek's infringement in the United States is needed to enable profits from Cytek's conduct abroad.][46]

---

**Cytek**: Beckman Coulter disclosed substantial modifications to this proposed instruction and its position statement (including multiple cases) less than 24 hours before the July 17, 2026 filing deadline for this document.  Accordingly, Cytek has not had sufficient time to consider and respond to the modifications and BEC's position statement and reserves all right to do so, including through the charge conference, and maintains its objection to this proposed instruction.

Beckman Coulter's proposal is not in the *Deere* instruction on which this instruction is based. *Deere & Co. v. Agco Corp.*, No. 1:18-cv-827-CFC, D.I. 535-1, at § 6.3 (D. Del. March 28, 2023). Further, Beckman Coulter's proposed language assumes the resolution of a contested factual dispute. Cytek's damages expert has opined that Cytek could have relocated manufacturing and assembly to its Singapore and China facilities to support foreign sales without any U.S. manufacturing involvement, which would place downward pressure on any royalty applicable to all sales, including non-U.S. sales. Instructing the jury on worldwide royalty recovery before the threshold non-infringing alternatives manufacturing question is resolved risks confusing the jury.

[46] **Beckman Coulter:** Beckman Coulter's proposal is necessary to inform the jury about when Beckman Coulter may recover reasonable royalty damages on products sold or used outside the United States. *Brumfield , Tr. for Ascent Tr. v. IBG LLC*, 97 F.4th 854, 877 (Fed. Cir. 2024), *cert. denied sub nom. Brumfield Tr. for Ascent Tr. v. IBG LLC*, 145 S. Ct. 1922, 221 L. Ed. 2d 663 (2025), *reh'g denied sub nom. Brumfield v. IBG LLC*, No. 24-764, 2025 WL 1679050 (U.S. June 16, 2025) ("If the patentee seeks to increase that amount by pointing to foreign conduct that is not itself infringing, the patentee must, at the least, show why that foreign conduct increases the value of the domestic infringement itself—because, e.g., the domestic infringement enables and is needed to enable otherwise-unavailable profits from

43

conduct abroad—while respecting the apportionment limit that excludes values beyond that of practicing the patent."); *10X Genomics, Inc. v. Vizgen, Inc.*, 22-cv-595-MFK , 2025 WL 26734, at *3 (D. Del. Jan. 3, 2025) ("To obtain reasonable royalty damages based on foreign sales, Vizgen must 'show why that foreign conduct increases the value of the domestic infringement itself—because, e.g., the domestic infringement enables and is needed to enable otherwise-unavailable profits from conduct abroad.'" (quoting *Brumfield*, 97 F.4th at 877)). Cytek's suggestion that the Federal Circuit "expressly declined to validate" the legal theory in *Brumfield* ignores that in Cytek's cited case, the Federal Circuit did not critique "the causation theory of *Brumfield*" but rather did not reach it in part because trial in that case occurred before *Brumfield* was decided so "the jury was not instructed … that they could grant a reasonable royalty for foreign sales based on this theory." *Trustees of Columbia*, 169 at 1339.

**Cytek**: Beckman Coulter's proposal is not in the *Deere* instruction on which this instruction is based. *Deere & Co. v. Agco Corp.*, No. 1:18-cv-827-CFC, D.I. 535-1, at § 6.3 (D. Del. March 28, 2023). Further, Beckman Coulter's proposed language is prejudicial and further risks confusing the jury by affirmatively stating "Cytek's infringement in the United States" within the instruction, as opposed to using qualified language such as "any infringement found in Phase I" or "acts found to infringe." The proposed language may improperly cause the jury to treat the entire causal framework of the instruction, including the contested nexus between domestic infringement and foreign profits, as established fact rather than a disputed issue for the jury to determine. More critically, it asks the Court to instruct the jury on a legal theory the Federal Circuit expressly declined to validate, leaving unsettled whether *Brumfield* supports reasonable royalty recovery for foreign sales at all. *See Trustees of Columbia Univ. in City of New York v. Gen Digital Inc.*, 169 F.4th 1320, 1339 (Fed. Cir. 2026) ("We thus need not reach the question of whether Columbia's theory of foreign damages was proper under the causation theory of Brumfield.") Beckman Coulter's response confirms the law remains unsettled. The problem is further compounded by the fact that Beckman Coulter's own damages expert does not advance the opinion articulated in *Brumfield*. It is unnecessary to instruct the jury on a framework no expert advances under a legal theory that Beckman Coulter cannot show has been definitively validated.

44

### 4.5.3. No Double Recovery[47]

The law does not permit double recovery for sales or profits relating to the same product.  If a sale is the basis of one form of monetary recovery, that same sale cannot also be the basis of another form of monetary recovery.  This means that if you award Beckman Coulter its lost profits under patent infringement for the sale of a certain number of accused products, you may not also award a reasonable royalty for those same sales.

## 5.  WILLFUL INFRINGEMENT[48]

Beckman Coulter contends Cytek's infringement of [claims __ of the '582 Patent, claims __ of the '443 Patent, and claims __ of the '107 Patent] was willful.

Willful infringement is knowing or deliberate infringement.  In other words, a person willfully infringes a patent only if the person knows that the patent issued, knows that its product infringes the patent, and engages in deliberate or intentional conduct to infringe or cause others to infringe.  Therefore, for you to find that

---

[47] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, 1:21-cv-01445-CFC, D.I. 348, at § 2.12 (Aug. 14, 2025).

[48] Unless otherwise indicated, adapted from *Personal Audio, LLC v. Google LLC*, No. 1:17-cv-01751-CFC, D.I. 887, §§ 4-5 (D. Del. Sept. 12, 2023) and *Magnolia Medical Tech., Inc. v. Kurin Inc.*, 1:24-cv-01124-CFC, D.I. 410, at § 3 (Dec. 12, 2025) (Kurin and Magnolia Medical's Proposals); *id.* at p.7 (Kurin representing that its willfulness instruction is "the instruction that the Court proposed in the prior case") (citing *Magnolia Medical Techs. v. Kurin Inc.*, C.A. No. 19-97 (D.I. 506) (Day 3 Trial Transcript) at 3:11–15, 5:23–25, 188:8–11).

Cytek willfully infringed any of the Asserted Claims you have found to be valid and infringed, Beckman Coulter must prove by a preponderance of the evidence, at the time Cytek infringed those claims, (1) Cytek knew the '582 patent, '443 patent, and/or the '107 patent had been issued, (2) Cytek knew that the accused products directly infringed the Asserted Claims, or knew that its actions would cause its customers to directly infringe the Asserted Claims.

Under the law, to prove that a defendant knows something, a plaintiff must show actual knowledge or willful blindness on the part of the defendant. A defendant cannot avoid liability by deliberately shielding itself from clear evidence or critical facts that are strongly suggested by the circumstances. A defendant is willfully blind to a fact if it (1) subjectively believed that there is a high probability that the fact exists, and (2) took deliberate actions to avoid learning of that fact. Being willfully blind is different from being merely reckless or negligent with respect to a risk of wrongdoing. A reckless defendant is one who merely knows of a substantial and unjustified risk of wrongdoing. And a negligent defendant is one who should have known of a risk but did not know it.

Whether Cytek reasonably believed in the invalidity or non-infringement of a patent is relevant to willful infringement.

[**Cytek:** In determining whether Beckman Coulter has proven that Cytek's infringement was willful, you must consider the totality of circumstances based on

the evidence presented at trial and assess Cytek's knowledge at the time the challenged conduct occurred.

[**Beckman Coulter:** To determine whether Cytek acted willfully, consider all the facts and assess Cytek's knowledge at the time of the challenged conduct. Facts that may be considered include, but are not limited to:

1) whether or not Cytek acted consistently with the standards of behavior for its industry;

2) whether or not Cytek reasonably believed it did not infringe or that Beckman Coulter's ['582, '443, and '107 Patents] were invalid;

3) Whether or not Cytek made a good-faith effort to avoid infringing Beckman Coulter's ['582, '443, and '107 Patents], for example, whether Cytek attempted to design around Beckman Coulter's ['582, '443, and '107 Patents];

4) Whether or not Cytek intentionally copied a product of Beckman Coulter's that is covered by Beckman Coulter's Asserted Patents;

5) Whether or not Cytek intentionally copied a publication that discloses the inventions of the Asserted Claims; and

6) Whether or not Cytek tried to cover up its infringement.][49]

---

[49] **Cytek:** Cytek's proposed language mirrors the model instruction for willful infringement from the 2025 AIPLA Model Patent Jury Instructions, at § 11.0,

47

*available           at           https://www.aipla.org/docs/default-source/committee-documents/patent-litigation-files/2025/final/2025-08-18---aipla-model-patent-jury-instructions97a6c7cf1cf24560aa4c091382f9a2e2.pdf?sfvrsn=8254824d_1*.

Cytek's proposal is also an accurate recitation of the law. *Gustafson, Inc. v. Intersystems Industrial Products, Inc.*, 897 F.2d 508, 510-11 (Fed. Cir. 1990) ("Whether an act is 'willful' is by definition a question of the actor's intent, the answer to which must be inferred from all the circumstances."); *accord AOS Holding Company v. Bradford White Corp.*, No. 18-412-LPS, 2021 WL 5411103, at *34 (D. Del. Mar. 31, 2021) ("[E]ven post-*Halo*, willfulness looks to 'totality of the circumstances presented in the case'") (citation omitted). Conversely, Beckman Coulter's proposed language is derived from the ***plaintiff's*** proposal in the 2025 *Magnolia* case, and is not in the instruction that ***this Court*** adopted in the 2023 *Magnolia* case, which the Court had "completely rewr[itten]" from the parties' proposals. *Magnolia Medical Techs. v. Kurin Inc.*, C.A. No. 19-00097, D.I. 506 (Day 3 Trial Transcript) at 3:11–15, 5:23–25, 188:8–11 (D. Del. Feb. 24, 2023); *see also Magnolia Medical Tech., Inc. v. Kurin Inc.*, 1:24-cv-01124-CFC, D.I. 410, at § 3, pp. 4-5 (D. Del. Dec. 12, 2025) (Kurin's Proposal) (representing that "Kurin proposes the instruction that the Court proposed in the prior case"). Further, Beckman Coulter's proposal risks confusing the jury by implying that one or more of the enumerated facts may exist in this case.

**Beckman Coulter:** Beckman Coulter's proposed language aligns with Magnolia Medical's proposal in the Magnolia instructions on which this instruction is based. *Magnolia Medical Tech., Inc. v. Kurin Inc.*, 1:24-cv-01124-CFC, D.I. 410, at § 3 (Dec. 12, 2025). Beckman Coulter's proposal also aligns with instructions in *Orexo v. Actavis Elizabeth*, 1:17-cv-00205-CFC, D.I. 270 at §3.8 (D. Del. Mar. 28, 2012) and with the agreed portion of the parties' willfulness instructions in *Personal Audio v. Google*, 1:17-cv-01751-CFC, D.I. 805 (D. Del. May 5, 2023) and *Boston Scientific v. Nevro*, 1:16-cv-01163-CFC-CJB, D.I. 793 at §4.4 (D. Del. Oct. 8, 2021). Beckman Coulter's proposal is also substantively the same as instructions routinely used in instructions given in this District. *See, e.g., Godo Kaisha IP Bridge 1 v. TCL Communication Tech.*, 1:15CV634, D.I. 483 at § 47 (Nov. 7, 2018); *Pacific Biosceinces of California v. Oxford Nanopore Tec.*, 17-cv-275-LPS, D.I. 476, § 7 (D. Del. Mar. 17, 2020); *Express Mobile, Inc. v. GoDaddy.com, LLC*, 1:19-cv-01937-MFK-JLH, D.I. 327 at § 4.4 (D.Del. Mar. 3, 2023). Beckman Coulter's proposal will prevent juror confusion by identifying the kinds of evidence that supports willfulness. Cytek does not dispute that Beckman's language precisely tracks Federal Circuit law and will tell the jury the factors they "may consider in addressing willfulness." *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*,

[**Beckman Coulter:** In determining whether Cytek acted willfully, you may consider conduct that occurred before Beckman Coulter's ['582, '443, and '107 Patents] issued to determine whether Cytek willfully infringed as of the date of issuance of the Asserted Patents.  For example, notice of a pending patent application can support the conclusion that an infringer should have known of the patent at the date of issuance.][50]

---

946 F.3d 1367, 1378–79 (Fed. Cir. 2020) (identifying factors the jury may consider in addressing willfulness, including "[w]hether or not [Defendant] intentionally copied a product of [Plaintiff] that is covered by the [asserted patent]," "[w]hether or not [Defendant] reasonably believed it did not infringe or that the patent was invalid," "[W]hether or not [Defendant] made a good-faith effort to avoid infringing the [asserted patent], for example, whether [Defendant] attempted to design around the [asserted patent," and "[w]hether or not [Defendant] tried to cover up its infringement"); *C.R. Bard Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372, 1380 (Fed. Cir. 2020) ("[Plaintiff] introduced evidence at trial that [Defendant's] Director of Intellectual Property was aware of the applications that issued as the patents-in-suit prior to their issuance. [Plaintiff] also introduced evidence that [Defendant] intentionally copied [Plaintiff's] CT radiographic marker based on market demand. This is sufficient evidence to support a jury verdict of willfulness."); *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1327 (Fed. Cir. 2021) (reversing JMOL of no willful infringement where jury instructed to consider factors including "whether or not defendant acted in accordance with the standards of commerce for its industry"). And there is no risk of juror confusion because Beckman Coulter's proposal states that "[f]acts that may be considered include, but are not limited to" the enumerated facts.

[50] **Beckman Coulter:**  Beckman Coulter's proposal reflects Federal Circuit law, which makes clear that pre-issuance conduct, including notice of a pending patent application, can support willfulness as of the date of issuance. *See Trustees of Columbia Univ. City of New York v. Gen Digital Inc.*, 169 F.4th 1320, 1336 (Fed. Cir. 2026) ("We have established that notice of a pending patent application is sufficient for a jury to find that the infringer should have known of the patent at the date of issuance.  The jury was entitled to infer based on Norton's expressed interest

49

[**Beckman Coulter:** It is possible to willfully infringe a patent after it issues even if the accused product was launched before the patent was issued by the Patent Office.][51]

---

in licensing the intellectual property that it was aware of the patent application at that time." (internal citation omitted)); *Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876 F.3d 1350, 1371 ("substantial evidence demonstrated that BRP knew about the patents before they issued, conducted only a cursory analysis of the patents, waited years before seeking advice of qualified and competent counsel, and unsuccessfully tried to buy the asserted patents through a third party."). Cytek assumes a fact in dispute by asserting "there is no evidence that Cytek 'knew about the patents before they issued.'"

**Cytek:** Beckman Coulter's proposal is not in the *Personal Audio* or *Magnolia* instructions on which this instruction is based. Beckman Coulter's proposed language is also unnecessary because both parties' proposed willfulness instructions already state that the jury must consider "the totality of circumstances" (Cytek) or "all of the facts" (Beckman Coulter) to "assess Cytek's knowledge at the time the challenged conduct occurred." Additionally, Beckman Coulter's use of the phrase "pending patent application" is misleading and risks confusing the jury because, here, Cytek became aware of a patent ***publication*** (WO 2013/181453) related to the asserted patents—not a pending patent application that issued as one of the asserted patents. The *Trustees of Columbia* case cited by Beckman Coulter is inapplicable because, as noted, the facts here do not involve a "pending patent application." 169 F.4th at 1336. The *Arctic Cat* case is likewise inapposite because, here, there is no evidence that Cytek "knew about the patents before they issued[.]" 876 F.3d 1350, 1371 (Fed. Cir. 2017). At minimum, for these reasons, the following sentence proposed by Beckman Coulter should be omitted: "For example, notice of a pending patent application can support the conclusion that an infringer should have known of the patent at the date of issuance."

[51] **Beckman Coulter:** Beckman's proposal will prevent juror confusion about whether it is possible to willfully infringe a patent that issues after the accused products were launched. *See Gustafson, Inc. v. Intersys. Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990) (no "per se rule that willful infringement could never be found when manufacture began before issuance of a patent"); *Shiley, Inc. v. Bentley Labs., Inc.*, 794 F.2d 1561, 1568 (Fed. Cir. 1986) ("Bentley argues that since it began to market its infringing device a month before any of Shiley's patents issued,

[**Cytek:** There can be no willful infringement before a patent has issued. Knowledge of a patent application cannot support a willfulness finding.][52]

---

its infringement cannot be willful as a matter of law under *State Industries, Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 224 USPQ 418 (Fed.Cir.1985). We disagree.").

**Cytek:** Beckman Coulter's proposal is not in the *Personal Audio* or *Magnolia* instructions on which this instruction is based. Beckman Coulter's proposed language is also unnecessary because Cytek will not argue that the fact that the Aurora launched before any asserted patent issued ***precludes*** a finding of willful infringement.

[52] **Cytek:** Cytek's proposed language is an accurate recitation of the law and will help the jury understand the legal standard for willful infringement. *Bioverativ Inc. v. CSL Behring LLC*, C.A. No. 17-cv-914-RGA, 2020 WL 1332921, at *2 (D. Del. Mar. 23, 2020) ("There can be no willful infringement before a patent is issued."); *iFIT v. Peloton Interactive, Inc.*, C.A. No. 21-507-RGA, 2022 WL 609605, at *2 (D. Del. Jan. 28, 2022) (knowledge of application is not enough to establish willfulness); *Robocast, Inc. v. Microsoft Corp.*, 21 F. Supp. 3d 320, 334-35 (D. Del. 2014) (granting summary judgment of no willfulness despite knowledge of patent application); *Helios Streaming, LLC v. Vudu, Inc.*, C.A. No. 19-1792-CFC-SRF, 2021 WL 254069, at *4-5 (D. Del. Jan. 26, 2021) (granting motion to dismiss despite knowledge of patent application); *see also LED Wafer Sols. LLC v. Samsung Elecs. Co.*, C.A. No. 22-cv-04809-AMO, 2026 WL 1738113, at *4 (N.D. Cal. June 16, 2026) ("[A]llegations of mere notice of patent applications are insufficient to establish notice of patent infringement for purposes of a willful infringement claim — a patent application itself is not notice of a patent since none yet exists, and a mere application cannot serve as the knowledge basis for willful or indirect infringement."). Cytek's proposal will also prevent juror confusion about whether it is possible to willfully infringe a patent before it has issued. The *Trustees of Columbia* case cited by Beckman Coulter is inapplicable because, as noted above in footnote 52, the facts here do not involve a "pending patent application." 169 F.4th at 1336. The *Arctic Cat* case is likewise inapposite because, here, there is no evidence that Cytek "knew about the patents before they issued[.]" 876 F.3d 1350, 1371 (Fed. Cir. 2017).

**Beckman Coulter:** Cytek's proposal is not in the *Personal Audio* or *Magnolia* instructions on which this instruction is based. Cytek's proposal is also contrary to law because the Federal Circuit has held that "notice of a pending patent application is sufficient for a jury to find that the infringer should have known of the patent at

51

[**Cytek:** You may not assume that merely because Cytek did not obtain a lawyer's opinion, that the opinion would have been unfavorable. The absence of a lawyer's opinion is not sufficient for you to find that Cytek acted willfully. Rather, the issue is whether, considering all the circumstances, Beckman Coulter has established that Cytek's conduct was willful.][53]

---

the date of issuance." *Trustees of Columbia Univ. City of New York v. Gen Digital Inc.*, 169 F.4th 1320, 1336 (Fed. Cir. 2026) ("The jury was entitled to infer based on Norton's expressed interest in licensing the intellectual property that it was aware of the patent application at that time." (internal citation omitted)); *see also Arctic Cat Inc. v. Bombardier Recreational Products Inc.*, 876 F.3d 1350, 1371 ("substantial evidence demonstrated that BRP knew about the patents before they issued, conducted only a cursory analysis of the patents, waited years before seeking advice of qualified and competent counsel, and unsuccessfully tried to buy the asserted patents through a third party.").

[53] **Cytek:** Cytek's proposal mirrors the model instruction in 2025 AIPLA Model Instructions at § 11.1 (citing 35 U.S.C. § 298; *Halo Elecs. Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016)), *available at* https://www.aipla.org/docs/default-source/committee-documents/patent-litigation-files/2025/final/2025-08-18---aipla-model-patent-jury-instructions97a6c7cf1cf24560aa4c091382f9a2e2.pdf?sfvrsn=8254824d_1. Cytek's proposed language also mirrors instructions given by courts in this District. *E.g.*, *Integra Lifesciences Corp. et al. v. Hyperbranch Medical Technology, Inc.*, No. 15-819-LPS-CJB, D.I. 749, at § 15.2 (D. Del. June 7, 2018) (Final Jury Instructions).

**Beckman Coulter**: Cytek's proposed language is not in the *Personal Audio* or *Magnolia* instructions on which this instruction is based. Cytek's proposal is also unnecessary as Beckman Coulter will not argue that Cytek's failure to obtain an opinion of counsel results in an adverse inference that such an opinion would be negative.

[**Cytek:** If you determine that any infringement was willful, that decision must not affect the amount of any damages award you award for infringement. I will take willfulness into account later if you find it.][54]

## 6.    DELIBERATION AND VERDICT[55]

I have completed my instructions on the law. All the instructions I gave you previously about the rules for deliberations still apply, and you will have a copy of them with you. I will remind you that, when you start deliberating, do not talk to the jury officer, to me, or to anyone but each other about the case. If you have any

---

[54] **Cytek:** Cytek's proposal mirrors the model instruction in 2025 AIPLA Model Instructions at § 11.0 (citing 35 U.S.C. § 298; *Halo Elecs. Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016)), *available at* https://www.aipla.org/docs/default-source/committee-documents/patent-litigation-files/2025/final/2025-08-18---aipla-model-patent-jury-instructions97a6c7cf1cf24560aa4c091382f9a2e2.pdf?sfvrsn=8254824d_1. Cytek's proposed language also mirrors instructions given by courts in this District. *E.g.*, *Cap-XX Ltd. v. Maxwell Tech.*, No. 1:19-cv-01733-JLH, D.I. 314, at § 12 (D. Del. Dec. 15, 2023) (Final Jury Instructions); *IOEngine, LLC v. Imation, Corp.*, No. 14-1572-GMS, D.I. 199, § 5.1 at p.40 (D. Del. Feb. 17, 2017). Although provided in Section 2 above regarding "Issues Presented in Phase II," this language would be helpful to repeat to the jury in the context of the willfulness instruction to ensure the jury's damages assessment does not take willfulness into account.

**Beckman Coulter:** Cytek's proposed language is not in the *Personal Audio* or *Magnolia* instructions on which this instruction is based. Cytek's proposal is also unnecessary as the jury has been instructed that damages and willfulness are separate inquiries. *Supra* Section 2. Further, even if Cytek's proposal is adopted, it should not be provided twice to the jury and Cytek also proposed this language in Section 2.

[55] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, 1:21-cv-01445-CFC, D.I. 348, at § 3 (Aug. 14, 2025).

questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can.

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

I remind you that in your deliberations you are to consider the instructions I have given you as a whole, including the instructions I gave you previously. You should not single out any part of any instruction, including this one, and ignore others. They are all equally important.

Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourself based on the evidence presented. You may now retire and continue your deliberations.