# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

BECKMAN COULTER, INC.,

               Plaintiff,

      v.

CYTEK BIOSCIENCES, INC.,

               Defendant.

C.A. No. 24-945-CFC



**REDACTED - PUBLIC VERSION**

## EXHIBIT 17

## PLAINTIFF'S MOTION *IN LIMINE* NO. 2
## OPENING, ANSWERING AND REPLY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BECKMAN COULTER, INC.,

                Plaintiff,

      v.

CYTEK BIOSCIENCES, INC.,

                Defendant.

C.A. No. 24-0945-CFC



**PLAINTIFF BECKMAN COULTER, INC.'S MOTION *IN LIMINE* NO. 2 TO PRECLUDE EVIDENCE, TESTIMONY, OR ARGUMENT REGARDING NON-PARTY DANAHER CORPORATION, SPECULATION REGARDING DANAHER'S PURPORTED MENTAL STATE TO ARGUE NON-INFRINGEMENT, AND DANAHER'S NON-COMPARABLE VALUATION OF CYTEK TO SUPPRESS DAMAGES**

**TABLE OF EXHIBITS**[1]

| Exhibit No. | Exhibit |
|---|---|
| 1 | Cytek's 10th Supplemental Response and Objections to Interrogatories Nos. 1-15 (Dec. 12, 2025) |
| 2 | Deposition Transcript of Wenbin Jiang |
| 3 | Rebuttal Report of Mr. John Hansen |
| 4 | Rebuttal Non-Infringement Report of Dr. Fedor Ilkov |
| 5 | Rebuttal Non-Infringement Report of Dr. James Leary |
| 6 | Our Business, Danaher, https://www.danaher.com/our-businesses |
| 7 | Opening Invalidity Report of Dr. Bernhard Weigl |

---

[1] Exhibits cited in this opposition as "Ex. __" are attached to the Declaration of L. Matlock-Colangelo, filed as an attachment to this motion.

Cytek intends to refer to non-party Danaher Corporation and speculate as to its mental state to suggest an improper (and unfounded) David versus Goliath trial narrative, insinuate Danaher did not believe that Cytek infringes, and suppress damages. But Danaher is not a party in this litigation, and Beckman is only one of seven businesses within Danaher's Diagnostics business sector.[2] Accordingly, any references to Danaher or its Life Sciences, Diagnostics, and Biotechnology business sectors should be precluded as irrelevant, unduly prejudicial, and likely to confuse the jury and waste time. FRE 401-403.

*First*, Cytek intends to highlight non-party Danaher's size, wealth, and business success[3] in an effort to manufacture an improper David versus Goliath trial narrative that incorrectly paints Cytek as the "little guy." But non-party Danaher has nothing to do with this case, and its size and success are completely irrelevant and present substantial risk of prejudice and jury confusion. *See Liqwd v. L'Oréal USA*, No. 17-00014-JFB-SRF (D. Del. July 2, 2019), D.I. 912 at 1-2 (excluding "evidence of … net worth … of any defendant or their parent entity" as "irrelevant" and "potentially prejudicial"); *DUSA Pharms. v. Biofrontera*, No. 1:18-cv-10568-RGS (D. Mass. Nov. 1, 2021), D.I. 389 (excluding "parent company's size or finances"); FRE 401-403. Even if Danaher were a party to this case, courts routinely preclude such David versus Goliath arguments as highly prejudicial. *See, e.g.,*

---

[2] Ex. 6 at 5-6.
[3] *See, e.g.*, Ex. 3 at ¶18.

1

*Globus Med. v. Life Spine*, No. 21-01445-CFC (D. Del. Aug. 11, 2025), D.I. 338 at 74:15-17 (precluding "David-Goliath talk").

**Second**, Cytek should likewise be precluded from arguing that it does not infringe, willfully or not, because non-party Danaher twice discussed with Cytek — at Cytek's request—possible acquisition of Cytek and characterized Cytek's products as innovative.[4]  Even if Danaher's views were relevant to whether Cytek infringes (they are not),[5] such relevance would be substantially outweighed by the risk of confusion and misleading the jury.  FRE 403.  For example, telling the jury that Danaher characterized Cytek's products as innovative risks misleading the jury into believing that any purported innovations cannot infringe.  That is not the law. *See Stiftung v. Renishaw*, 945 F.2d 1173, 1179 (Fed. Cir. 1991) ("[I]mprov[ing] upon a patented device does not necessarily avoid infringement.").  Further, evidence of Danaher and Cytek's business discussions would result in a lengthy "mini trial" on Danaher's evaluations of and discussions with Cytek that would distract from the issues in this case.  FRE 403.  Importantly, there is no evidence that Danaher speculated or determined that Cytek's products do not infringe the Asserted Patents.

Cytek should also be precluded from "skewing the damages horizon" with

---

[4]  *See, e.g.*, Ex. 1 at 66-69; Ex. 4 at ¶¶56, 58; Ex. 5 at ¶515-517.
[5]  As Judge Tennyson already determined in a related proceeding, non-party Danaher's "views regarding Cytek or the accused technology" are "irrelevant" to "infringement" and willfulness.  *Danaher v. Cytek Bioscience*, No. 1:25-mc-00524-CFC (D. Del. Jan. 22, 2026), D.I. 35 at 4.

2

Danaher's indisputably non-comparable (and preliminary) valuation of Cytek.[6] *Virnetx v. Cisco Sys.*, 767 F.3d 1308, 1327 (Fed. Cir. 2014) (warning against use of large numbers that "misleadingly suggest[] an inappropriate [damages] range"). The hypothetical negotiation is between the "patentee" and "infringer" and focuses on "the claimed invention[]." *ResQNet.com v. Lansa*, 594 F.3d 860, 868-69 (Fed. Cir. 2010). A "non-party's unconsummated offer" for something other than the Asserted Patents is plainly irrelevant to this inquiry. *See On Track Innovations v. T-Mobile USA*, 106 F. Supp. 3d 369, 417 (S.D.N.Y. 2015). And even if Danaher's initial valuation of Cytek were hypothetically relevant (it is not), no expert in this case contends that Danaher's valuation was comparable to a license for the claimed technology. *See VLSI Tech. v. Intel*, 87 F.4th 1332, 1346 (Fed. Cir. 2023) (citing "basic evidentiary precondition" that "licenses be 'sufficient[ly] comparab[le]'"). Evidence of Danaher's valuation would therefore invite error by "unavoidably convey[ing] a message of relevance," *id.* at 1349, and mislead the jury into relying on indisputably non-comparable evidence. FRE 403.

Cytek should therefore be precluded from discussing non-party Danaher.

---

[6] *See, e.g.*, Ex. 1 at 67; Ex. 4 at ¶56.

OF COUNSEL:

Omar A. Khan
Jeffrey A. Dennhardt
Laura Macro
Lauren Matlock-Colangelo
Jennifer L. Graber
Kelly A. Todd
Maggie Sawin
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

Akkad Y. Moussa
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Ave.
NW Washington, DC 20037
(202) 663-6000

Dated: June 26, 2026

/s/ Frederick L. Cottrell, III
Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff*

4

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2026, true and correct copies of the foregoing

document were served upon the following counsel of record in the manner indicated:

**BY E-MAIL**

Karen Jacobs
Jeremy A. Tigan
Cameron P. Clark
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE  19801

**BY EMAIL**

Reuben H. Chen
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304

Elizabeth M. Flanagan
Cooley LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402

Adam Pivovar
Dustin M. Knight
Rosalynd D. Upton
David Yun
Cooley LLP
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004

*/s/ Christine D. Haynes*
Christine D. Haynes (#4697)
haynes@rlf.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| BECKMAN COULTER, INC., | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 24-0945-CFC |
| v. | ) | |
| | ) | |
| CYTEK BIOSCIENCES, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## D. DEL. L.R. 7.1.1 CERTIFICATION

The undersigned hereby certifies, pursuant to District of Delaware Local Rule 7.1.1, that counsel for Plaintiff and Defendant met and conferred on the foregoing motion.    Defendant opposes the relief sought in the motion.

|  |  |
|---|---|
| | /s/ Frederick L. Cottrell III |
| OF COUNSEL: | Frederick L. Cottrell III (#2555) |
| | Kelly E. Farnan (#4395) |
| Omar A. Khan | Christine D. Haynes (#4697) |
| Jeffrey A. Dennhardt | RICHARDS, LAYTON & FINGER, |
| Laura Macro | P.A. |
| Lauren Matlock-Colangelo | One Rodney Square |
| Jennifer L. Graber | 920 North King Street |
| Maggie Sawin | Wilmington, Delaware 19801 |
| Kelly A. Todd | (302) 651-7700 |
| WILMER CUTLER PICKERING | cottrell@rlf.com |
| HALE and DORR LLP | farnan@rlf.com |
| 7 World Trade Center | haynes@rlf.com |
| 250 Greenwich Street | |
| New York, NY 10007 | *Attorneys for Plaintiff* |

(212) 230-8800

Akkad Y. Moussa
WILMER CUTLER PICKERING
HALE and DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037

Dated:  June 26, 2026

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| BECKMAN COULTER, INC.,<br><br>     Plaintiff,<br><br>  v.<br><br>CYTEK BIOSCIENCES, INC.,<br><br>     Defendant. | C.A. No. 24-0945-CFC |

**[PROPOSED] ORDER GRANTING PLAINTIFF BECKMAN COULTER'S MOTION *IN LIMINE* NO. 2 TO PRECLUDE EVIDENCE, TESTIMONY, OR ARGUMENT REGARDING NON-PARTY DANAHER CORPORATION, SPECULATION REGARDING DANAHER'S PURPORTED MENTAL STATE TO ARGUE NON-INFRINGEMENT, AND DANAHER'S NON-COMPARABLE VALUATION <u>OF CYTEK TO SUPPRESS DAMAGES</u>**

Plaintiff Beckman Coulter, Inc. ("Beckman") having filed a Motion to Exclude evidence, testimony, or argument regarding non-party Danaher Corporation ("Danaher"), speculation regarding Danaher's purported mental state to argue non-infringement, and Danaher's non-comparable valuation of Cytek to suppress damages, and the Court having considered the Motion and the accompanying briefs; now, therefore,

IT IS HEREBY ORDERED that Defendant and its witnesses and attorneys may not opine or present at trial any evidence or argument about non-party Danaher.

SO ORDERED this \_\_\_day of _____, 2026.

_____
Hon. Colm F. Connolly
Chief, United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

BECKMAN COULTER, INC.,

               Plaintiff,

     v.

CYTEK BIOSCIENCES, INC.,

               Defendant.

C.A. No. 24-0945-CFC



## DECLARATION OF LAUREN MATLOCK-COLANGELO IN SUPPORT OF PLAINTIFF BECKMAN COULTER, INC.'S MOTIONS *IN LIMINE*

I, Lauren Matlock-Colangelo, declare as follows:

1.    I am licensed to practice law in the State of New York and have been admitted to this Court *pro hac vice* by Order dated September 3, 2024.  D.I. 8 (so ordered).

2.    I am an attorney with the law firm of Wilmer Cutler Pickering Hale and Dorr LLP, located at 7 World Trade Center, 250 Greenwich Street, New York, New York 10007, and counsel for Plaintiff Beckman Coulter, Inc. ("Beckman Coulter").

3.    I have personal knowledge of the facts set forth herein and with the proceedings in this case, and if called to testify, I would competently testify thereto.

4.    I submit this Declaration in support of the following motions by Beckman Coulter:

   a. Motion i*n Limine* To Preclude Evidence, Testimony, or Argument Regarding Unasserted Patents and Patent Applications in Support of Cytek's Non-Infringement, Invalidity, or Damages Arguments

   b. Motion *in Limine* to Preclude Evidence, Testimony, or Argument Regarding Non-Party Danaher Corporation, Speculation Regarding Danaher's Purported Mental State to Argue Non-Infringement, and Danaher's Non-Comparable Valuation of Cytek to Suppress Damages; and

2

    c. Motion *in Limine* To Preclude Evidence, Testimony, or Argument that the Timing of This Lawsuit Evidences Non-Infringement or Impacts Damages.

5. A true and correct copy of excerpts from Defendant Cytek Biosciences, Inc.'s Tenth Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories, dated December 12, 2025, are attached hereto as **Exhibit 1**.

6. A true and correct copy of excerpts from the deposition transcript of Wenbin Jiang, dated November 26, 2025, are attached hereto as **Exhibit 2**.

7. A true and correct copy of excerpts from the Rebuttal Expert Report of John L. Hansen, dated January 20, 2026, are attached hereto as **Exhibit 3**.

8. A true and correct copy of excerpts from the Rebuttal Expert Report of Fedor Ilkov, dated January 20, 2026, are attached hereto as **Exhibit 4**.

9. A true and correct copy of excerpts from the Rebuttal Expert Report of James Leary, dated January 20, 2026, are attached hereto as **Exhibit 5**.

10. A true and correct copy of Danaher's webpage *Our Businesses* from https://www.danaher.com/our-businesses, is attached hereto as **Exhibit 6**.

11. A true and correct copy of excerpts from the Opening Expert Report of Bernhard Weigl, dated December 19, 2025, are attached hereto as **Exhibit 7**.

12. I declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and

further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 26th day of June, 2026.

/s/ Lauren E. Matlock-Colangelo

Lauren E. Matlock-Colangelo

4

# CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2026, true and correct copies of the foregoing document were served upon the following counsel of record in the manner indicated:

**BY E-MAIL**

Karen Jacobs
Jeremy A. Tigan
Cameron P. Clark
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE  19801

**BY EMAIL**

Reuben H. Chen
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304

Elizabeth M. Flanagan
Cooley LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402

Adam Pivovar
Dustin M. Knight
Rosalynd D. Upton
David Yun
Cooley LLP
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004

*/s/ Christine D. Haynes*
Christine D. Haynes (#4697)
haynes@rlf.com

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BECKMAN COULTER, INC., | C.A. No. 24cv00945-CFC-EGT |
| Plaintiff, | **DEMAND FOR JURY TRIAL** |
| v. | |
| CYTEK BIOSCIENCES, INC., | |
| Defendant. | |

**DEFENDANT CYTEK BIOSCIENCES, INC.'S TENTH SUPPLEMENTAL
RESPONSES AND OBJECTIONS TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES (NOS. 1- 15)**

Pursuant to Federal Rules of Civil Procedure 26 and 33 and the Local Rules of the United States District Court for the District of Delaware, Defendant Cytek Biosciences, Inc. ("Cytek" or "Defendant") hereby supplements and/or amends its objections and responses to Interrogatories in the First Set of Interrogatories to Defendant Cytek Biosciences, Inc. (Nos. 1-15) served by Plaintiff Beckman Coulter, Inc. ("BC" or "Plaintiff").

**GENERAL OBJECTIONS**

Cytek hereby incorporates its General Objections contained in its Responses and Objections to Plaintiff's First Set of Interrogatories (Nos. 1 – 15), dated December 16, 2024.

**SPECIFIC OBJECTIONS AND RESPONSES TO INTERROGATORIES**

Without waiving or limiting in any manner any of the foregoing General Objections, but rather incorporating them into each of the following responses to the extent applicable, Cytek hereby supplements its responses to Interrogatory Nos. 1-15 as follows:

**INTERROGATORY NO. 1:**

Identify and describe in detail the facts and circumstances relating to information used to identify the Cytek Products and any component thereof. This includes but is not limited to

1

objections.

Cytek incorporates by reference its response and first supplemental response to Interrogatory No. 7 dated May 9, 2025.

Investigation and discovery are ongoing in this case. The objections and responses are based upon information currently available to Cytek and are made without prejudice to Cytek's right to use or rely on subsequently discovered information. Cytek specifically reserves the right to supplement, amend, modify, and/or correct its response in view of further progress of fact and expert discovery, and in light of any supplement by Plaintiff of its interrogatory responses.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11 (10/22/2025):**

Cytek hereby incorporates by reference its original response and first supplemental response, including its prior specific objections.

After issuance of the '412 patent, Cytek gave a management presentation in January 2018 to Danaher Corporation (Beckman Coulter's parent company) and Beckman Coulter providing them with extensive details about Cytek, its Aurora and Athena products, its intellectual property portfolio, and its sales projections and go-to-market strategy for its products. *See* CYTEK_0000893376-CYTEK0000893431. In the slide deck shared with Danaher and Beckman Coulter, Cytek identified multiple patents and patent applications that disclosed technical details as to the design, structure, and operation of its products, including the accused Aurora product(s):



(CYTEK_0000893405.) The slide deck specifically listed ███████████████

█████████████████████████████████████████████████████████

████████████████████████████ that Beckman Coulter now cites in

its infringement contentions as purported evidence of infringement.

Beckman Coulter and Danaher responded to Cytek's management, not by alleging

infringement, but instead offering to acquire Cytek. On February 14, 2018, Danaher sent an

indication of interest ("IOI") letter to Dr. Wenbin Jiang, Chief Executive Officer at Cytek, seeking

to purchase Cytek because Danaher believed that Cytek's "innovative cellular analysis platforms,

Aurora and Athena, with their broad range of spectra and resulting multiplexing capability

provide strong customer value." CYTEK_0000882748. Danaher indicated that a "transaction with

Cytek is compelling and will complement our business and enhance the value proposition we offer

to our customers" and ███████████████████████████. *Id*. The proposal had "the

support of our senior management, but is subject to our completion of customary due diligence"

which Danaher claimed it would be able to "move quickly" on based on its ability to "leverage our own team's familiarity with the relevant technology." CYTEK_0000882749. Despite its awareness of Cytek's technology and products, at no time did Danaher or Beckman Coulter indicate concerns that Aurora infringed any claim in any Asserted Patent or Related Patent and/or Application.

Years passed without Danaher or Beckman Coulter notifying Cytek of potential infringement, even after the '582 patent issued. Instead, Danaher revisited acquisition discussions with Cytek prior to Cytek's IPO, when Kevin Chance, Vice President and Group Executive at Danaher Life Sciences (which includes Beckman Coulter), reached out to Dr. Jiang on September 14, 2020 to set up a call to discuss the Aurora product and Cytek. CYTEK_0000948858. Mr. Chance and Dr. Jiang conducted a video call on September 16, 2020. CYTEK_0000948859-CYTEK_0000948860. Mr. Chance never indicated concerns that Aurora infringed any claim in any Asserted Patent or Related Patent and/or Application on or after the call.

Mr. Chance again reached out to Dr. Jiang on May 11, 2021 to "touch base" and Dr. Jiang and Mr. Chance had a call regarding Cytek and Aurora on May 18, 2021. CYTEK_0000948856-CYTEK_0000948858. Again, Mr. Chance never indicated concerns that Aurora infringed any claim in any Asserted Patent or Related Patent and/or Application on or after the call.

Cytek subsequently gave a management presentation to Danaher and Beckman Coulter again on May 26, 2021 that included the following individuals on the call:

- Kevin Chance, Vice President & Group Executive, Danaher Life Sciences
- Greg Milosevich, President, Beckman Coulter Life Sciences
- Mario Koksch, Vice President & General Manager, Beckman Coulter Life Sciences/ Flow Cytometry
- Sidharth Kapileshwar, Vice President Strategy & Innovation, Beckman Coulter Life Sciences

68

- Anne Murphy, Chief IP Counsel, Beckman Coulter Life Sciences

- Laura Pajak, Director Flow Cytometry, Beckman Coulter Life Sciences

- Daniel Nothelfer, Vice President Business Development, Danaher Life Sciences

- Chris Korves, Vice President Corporate Development, Danaher

- Michael Mergler, Director Corporate Development, Danaher

CYTEK_0000882746. Danaher "debriefed internally and confirmed their interest in Cytek" after the call. CYTEK_0000949411. Michael Mergler from Danaher followed up after the call with several follow-up questions for Cytek that he passed through Cytek's banker, Vitalli Trotsko from PSC. CYTEK_0000949411-CYTEK_0000949413. But Danaher and Beckman Coulter never alleged infringement of its then-issued '412 and '582 patents in connection with the 2021 acquisition discussions, consistent with Dr. Jiang's August 2020 conclusion that the '412 and '582 patents did not (and could not) cover Cytek's flow cytometer products at the time. Indeed, it was not until June 14, 2024 did Cytek first learn of Beckman Coulter's infringement allegations as to a limited number of claims with respect to the '443 and '582 patents when Beckman Coulter's counsel served a letter on Cytek. CYTEK_0000909015. Cytek analyzed the infringement allegations in the letter and determined that there was no infringement by Cytek and that the then-asserted claims of the '443 and '582 patents were (and are) invalid. Cytek promptly sent a letter to Beckman Coulter prior to the lawsuit indicating its position with respect to non-infringement and invalidity on the '443 and '582 patent claims.

Cytek first learned of Beckman Coulter's infringement allegations as to a single claim in the '107 patent when Beckman Coulter amended its complaint and added these patents to the case.

Cytek learned of Beckman Coulter's infringement allegations generally on February 14, 2025, when Beckman Coulter served its Initial Infringement Contentions in this litigation.

69

Dated: December 12, 2025

Respectfully submitted,

COOLEY LLP

Adam Pivovar
Dustin M. Knight
Rosalynd D. Upton
David Yun
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
(202) 842-7800
apivovar@cooley.com
dknight@cooley.com
rupton@cooley.com
dyun@cooley.com

By: */s/ Elizabeth M. Flanagan*
Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@morrisnichols.com
jtigan@morrisnichols.com
cclark@morrisnichols.com

Elizabeth M. Flanagan (#5891)
COOLEY LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402
bflanagan@Cooley.com

Reuben Chen
HanByul Chang
Juan Pablo Gonzalez
COOLEY LLP
3175 Hanover Street
Pal Alto, CA 94304
(650) 843-5000
rchen@cooley.com
HanByul.chang@cooley.com
jgonzalez@cooley.com

Attorneys for Defendant
**CYTEK BIOSCIENCES, INC.**

79

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing

**DEFENDANT CYTEK BIOSCIENCES, INC.'S TENTH SUPPLEMENTAL RESPONSES**

**AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES (NOS. 1-**

**15)** was served to be served on the following persons by email on December 12, 2025:

Omar A. Khan
Jeffrey Dennhardt
Lauren E. Matlock-Colangelo
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800
omar.khan@wilmerhale.com
Jeffrey.Dennhardt@wilmerhale.com
Lauren.Matlock-Colangelo@wilmerhale.com

Asher S. McGuffin
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000
Asher.McGuffin@wilmerhale.com

Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff Beckman Coulter, Inc.*

*/s/ Elizabeth M. Flanagan*
Elizabeth M. Flanagan

80

# EXHIBIT 2



# Transcript of Wenbin Jiang, Ph.D., Corporate Designee & Individually

**Date:** November 26, 2025
**Case:** Beckman Coulter, Inc. -v- Cytek Biosciences

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BECKMAN COULTER, INC.,          )
                                )
          Plaintiff,            )
                                )
     VS.                        ) NO. 24-CV-00945
                                )
CYTEK BIOSCIENCES, INC.,        )
                                )
          Defendant.            )
_____)


-- H I G H L Y  C O N F I D E N T I A L --

OUTSIDE ATTORNEYS' EYES ONLY

IN-PERSON VIDEOTAPED DEPOSITION OF

CYTEK BIOSCIENCES, INC.,

By and through its Designated Representative,

WENBIN JIANG, PH.D.,

and in his Individual Capacity

WEDNESDAY, NOVEMBER 26, 2025


STENOGRAPHIC REPORTER:  CHRISTA YAN, CSR NO. 14316, RPR
                                  _____

---

PERSONAL APPEARANCES:

FOR PLAINTIFF:
     WILMERHALE LLP
     BY:  JEFFREY DENNHARDT, ATTORNEY-AT-LAW
     250 Greenwich Street
     New York, New York 10007
     jeffrey.dennhardt@wilmerhale.com

FOR DEFENDANT:
     COOLEY LLP
     BY:  REUBEN CHEN, ATTORNEY-AT-LAW
          HANBYUL CHANG, ATTORNEY-AT-LAW
     3175 Hanover Street
     Palo Alto, California 94304
     rchen@cooley.com


ALSO PRESENT PERSONALLY:
TOMAS REYES, The Videographer


ALSO PRESENT REMOTELY:
KELLY TODD, WilmerHale
MAGGIE SAWIN, WilmerHale


--oOo--

---

INDEX OF EXAMINATIONS

                                        PAGE

BY MR. DENNHARDT                        9

BY MR. CHEN                             358

BY MR. DENNHARDT                        372


--oOo--


Witness's Changes or Corrections        380

Reporter's Certificate                  381


--oOo--

---

E X H I B I T S

| EXHIBIT | MARKED FOR IDENTIFICATION | PAGE |
|---|---|---|
| Exhibit 1 | Wenbin Jiang LinkedIn Profile | 14 |
| Exhibit 2 | US Patent 7,280,204 October 9, 2007 | 55 |
| Exhibit 3 | CYTEK_0000976929 Cytek Launches DxP Athena System | 82 |
| Exhibit 4 | CYTEK_0000893707 Message from Ming Yan, sent June 17, 2018 | 85 |
| Exhibit 5 | CYTEK_0000975537 DxP Athena Flow Cytometer Analysis | 91 |
| Exhibit 6 | CYTEK_0000584758 Message from Dave Kennedy, January 18, 2023 | 100 |
| Exhibit 7 | CYTEK_0000967248 Objective/ Product Positioning | 102 |
| Exhibit 8 | CYTEK_0000894551 Message from Ming Yan, February 15, 2016 | 118 |
| Exhibit 9 | CYTEK_0000987089 Outline, Technology Introduction | 122 |
| Exhibit 10 | CYTEK_0000970732 Products and Services Overview | 142 |

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY
Transcript of Wenbin Jiang, Ph.D., Corporate Designee & Individually 47 (185 to 188)
Conducted on November 26, 2025



185

THE WITNESS: Non-collimated and reimage on every other detector --

THE STENOGRAPHIC REPORTER: You said the image every other detector?

THE WITNESS: Reimage on every other detector.

MR. DENNHARDT: Reimage, r-e image.

THE WITNESS: Reimage, yeah.

And this one require collimated beam across, so obviously, we are very different. The scope is different. The implementation is different. And so we feel there's no need. It's so obvious. At that time, we didn't really go to consult with our legal counsel. Just too different.

BY MR. DENNHARDT:

Q   When you say it's so obvious, are you referring to it's so obvious that, in your view, the Aurora doesn't infringe or are you referring to obviousness as it relates to invalidity?

A   No, not infringing. That term, yeah.

Q   I understand.

A   We didn't study really in detail. Nonvalidity require we really consult with the attorneys and, right, we basically look at the infringement mostly.

Q   So the first time you considered whether the Aurora product infringed Beckman Coulter's patents was after the Aurora product was launched, right?

186

MR. CHEN: Objection; outside the scope, calls for a legal conclusion.

But you can answer.

THE WITNESS:

187

THE STENOGRAPHIC REPORTER: I'm sorry, I didn't understand that. Earlier mentioned what?

THE WITNESS:

MR. CHEN: Objection; outside the scope.

THE WITNESS:

BY MR. DENNHARDT:

Q

188

And so... that was the whole reason why. Right. And frankly speaking, and if you look at our -- that's also a reason why we have our own IP as well. And when we look at those IP, and in fact, Cytek, the design really is following our own IP. And, you know, our IP, our patent has been issued by the U.S. Patent Office, over Yong Chen's patent. That's another reason --

THE STENOGRAPHIC REPORTER: I'm sorry, over what?

THE WITNESS: Over Yong Chen's patent. This one, '412, right.

And the U.S. Patent Office feels, we don't infringe. And there's a substantial difference of Cytek's IP from those early patents. Yeah.

BY MR. DENNHARDT:

Q   So you believe that the U.S. Patent Office performed an infringement analysis of whether --

A   I don't think --

Q   Let me finish my question.

You believe that the U.S. Patent Office performed an infringement analysis of whether Cytek's products infringed Dr. Chen's patents?

A   I'm not sure how U.S. patent reviews their process. I'm not an expert on that aspect. We cited Yong Chen's patents during our patent applications.

Q   You cited it because it was closely related

Transcript of Wenbin Jiang, Ph.D., Corporate Designee & Individually 53 (209 to 212)
Conducted on November 26, 2025

209

A   I think there are many other subjects involved. And earlier I mention the whole architecture. I already earlier, I mentioned with regarding to the detector capturing the light, right. In this particular design in Yong Chen's patent, and every detector signal, corresponding to the one particular dyes information. That's what's capturing. And it's -- it captures a discrete wavelength, right, and whole block.

In fact, our whole optical block captured the continuum and sequentially continuing the whole spectrum from the -- all the dyes. It's a spectral profile, that's what we are capturing. And in this Yong Chen's patent, each dye correspond, each detector, the signal, correspond to the light information fluorescence intensity of one particular dye. So there are many other things showing we don't actually infringe on this patent.

Q   Anything else? I just want to make sure I have a complete understanding.

A   I think you're asking me to go through every count... subject, with regard to any infringement. I have to rely on legal counsel and experts to go through those claims. Right.

Q   You're not a lawyer, right?

A   I'm not a lawyer. Exactly. That's why I'm saying is, I can't state everything complete. Right. I

210

have to rely on experts to help and do that.

Q   You don't have any legal training, correct?

A   No, I don't.

Q   You haven't reviewed the claims of the '443 or the '107, right?

A   No.

Q   You haven't reviewed the Court's claim construction in this case, right?

A   No.

Q   You haven't reviewed any of the prior art Cytek is asserting in this case, right?

A   No.

Q   You haven't reviewed Cytek's noninfringement contentions in this case, right?

A   Put it this way --

THE STENOGRAPHIC REPORTER: I didn't hear that. Repeat that.

THE WITNESS: Put it this way, it's so clear Cytek does not infringe on Yong Chen's patents because first is, right, Yong Chen's patents is about conventional flow cytometer, and Cytek is about flow spectral. Those are two very different concepts in terms of earlier explaining the whole architecture, whole data analysis algorithms. And U.S. Patent Office has already reviewed, and our patents, and over Yong Chen's patent and issued

211

Cytek's patents. And our practice, our implementation is actually based on our own patents, architecture so clear we don't infringe.

And in fact, even Beckman admit that, right. 2018, Beckman actually sent us a letter of intent with the intention to acquire Cytek. And in that letter, it clearly states Cytek has an innovative technology, because that time, we already have Yong Chen's patent over there. And nowhere in that letter of intent Beckman indicated Cytek infringed on Beckman's patent and Beckman in that letter of intent and ███████████████████ ██████████ Right.

And a few years later, two years later, Beckman approached me again -- that's around 2020 -- and indicated the intention to acquire Cytek. That's also the time when Beckman's second patent was issued. During that conversation. And nowhere Beckman actually indicated we infringed on Yong Chen's patents.

And even just, I think, a few weeks or a few months before the allegation, I had a dinner with Greg Milosevich, and again during that dinner meeting, and he indicated Beckman's intention of acquiring Cytek. That was 2024. Right. And there was no indication about Cytek's infringing on Yong Chen's patents.

So clearly it was all those circumstances, right.

212

Plus all those what we have shown clearly, and those collimated beam and all of those other facts I have stated. Nowhere Cytek is infringing on Cytek -- in Yong Chen's patents. And otherwise, Beckman would have told us during all those engagement throughout the process, over six years. Right? And from 2018 through 2024, 6 years.

Nowhere Beckman has ever mentioned about Cytek infringing on any of Yong Chen's patents. Right. So... it's clear, Cytek does not infringe any of those patents.

BY MR. DENNHARDT:

Q   Sir, the question was: Have you reviewed Cytek's noninfringement contentions in this case, yes or no?

A   I have not really reviewed what our legal counsel has submitted. Of course, I'm not an expert. But on the other hand, I'm just talking about all the circumstances here. And it's not possible, in good faith, to claim our products are infringing on Beckman's patents, especially when Beckman already declared Cytek has an innovative technology on their letter to Cytek.

Q   Well, that's for the jury to decide, right?

A   Yeah.

Q   So no, you haven't reviewed Cytek's infringement contentions in this case, right, sir?

A   No, I haven't.

Q   You haven't reviewed Cytek's invalidity

Transcript of Wenbin Jiang, Ph.D., Corporate Designee & Individually 65 (257 to 260)
Conducted on November 26, 2025

257

the document.

THE WITNESS: Again, it's just to caution our investors. And there's a potential out there. And... it's not necessary. And we do but just want to be cautious here.

BY MR. DENNHARDT:

[redacted]

Q   Beckman Coulter has a larger intellectual property portfolio than Cytek, right?

MR. CHEN: Objection; calls for speculation.

THE WITNESS: Beckman could have -- do have lots of patents, but we don't know with regarding to this particular space, this particular technology whether Beckman Coulter has or not. Frankly speaking, it's for the legal counsel to make the determination. What we have practiced is what we call the full spectral profiling and technology, and we practice our products actually and our technology based on our own IP, our own patents.

And in fact, patent office issued our patents over Yong Chen's patents, and therefore, we feel we do

258

have the freedom to operate. And I don't know if Beckman has any full spectral profiling based technology or patents out there and -- which we infringe. We don't think so. And based on all the information engagement, we have had since 2018, and clearly -- and in the best-faith basis, I don't think Beckman has any IPs.

Thinking about starting from 2018, the first engagement with the letter of intent to acquire Cytek, thereafter 2020 and '21 continued the engagement and to express interest. And thereafter, 2024, all the meeting I had with Greg Milosevich over dinner. Nowhere in the -- in the -- indicated by Beckman that Cytek infringed on Yong Chen's patents or Beckman's patents.

Beckman has had all those opportunities to indicate so over the period. We launched our product in 2017. Right? And Beckman didn't do anything until late 2024. And then come to actually associate with Beckman, launching their own product, spectral then come to accuse Cytek of infringement. You could have done so many years before then, right?

And Beckman didn't do that.

BY MR. DENNHARDT:

Q   Is that it?

A   Yes.

Q   Move to strike as nonresponsive.

259

MR. CHEN: Disagree.

BY MR. DENNHARDT:

Q   Beckman Coulter has a larger patent portfolio than Cytek, right?

MR. CHEN: Same objection.

THE WITNESS: Beckman clearly has a larger patent portfolio but doesn't mean Beckman has the patent portfolio on the technology we are practicing.

BY MR. DENNHARDT:

Q   All right.

MR. CHEN: Before you go to another exhibit, we've actually been going for a while here.

MR. DENNHARDT: Happy to take a break.

MR. CHEN: Yeah, let's take a break.

MR. DENNHARDT: Yeah.

THE VIDEOGRAPHER: Okay, we're going off the record. Time, 3:35 p.m.

(Recess taken.)

THE VIDEOGRAPHER: We are back on the record. Time, 3:54 p.m.

(Whereupon Deposition Exhibit 26 was marked for identification.)

BY MR. DENNHARDT:

Q   All right. Sir, you've just been handed Exhibit 26, which is a document bearing Bates Number

260

CYTEK 20892. [redacted]

MR. CHEN: Objection; foundation.

THE WITNESS: [redacted]

BY MR. DENNHARDT:

[redacted]

MR. CHEN: Objection; lacks foundation, calls for a legal conclusion.

THE WITNESS: [redacted]

BY MR. DENNHARDT:

Q [redacted]

# EXHIBIT 3

Beckman Coulter, Inc.

v.

Cytek Biosciences, Inc.

Civil Action No. 1:24-cv-00945-CFC

Expert Rebuttal Report of John L. Hansen

HKA Global, LLC

January 20, 2026

John L. Hansen

**Table 3: Ms. Riley's Claimed Total Damages by U.S. Only or Worldwide[7]**

|       |                                      | U.S. Only | Worldwide |
| :---: | ------------------------------------ | --------- | --------- |
| *A*   | Claimed Cell Lost Profits            | ████████  | ████████  |
| *B*   | Claimed Reasonable Royalties         | ████████  | ████████  |
| *C=A+B* | **Ms. Riley's Claimed "Total Damages"** | ██████ | ██████  |

14.    In an alternative scenario in Exhibit 1A, Ms. Riley presents claimed damages ranging from ████████████████████████████████ when including the BD FACSARIA III in the alternative market share scenario for cell sorters.[8]

15.    Ms. Riley also set forth an alternative reasonable royalty only damages scenario assuming "the Court determines that Defendant is not liable for lost profit damages" totaling ███████████████████████████████████████ ████████████[9]

16.    I address flaws in Ms. Riley's lost profits and reasonable royalty analyses and opinions, as well as present adjusted damages figures (as summarized in **Section VI** below), in this Rebuttal Report.

## III.    BACKGROUND

### A.  Beckman Coulter, Inc.

17.    BEC is a Delaware corporation headquartered in Brea, California.[10]  In 2011, BEC was acquired by Danaher Corporation ("Danaher") and today operates as a subsidiary of Danaher.[11]  Beckman Coulter Life Sciences and Beckman Coulter Diagnostics are the two operating companies for Beckman Coulter, Incorporated, which is fully-owned by Danaher.[12]  The two operating companies exist as one legal entity, however, they each have their own president and CFO.[13]  Beckman Coulter-branded products are sold under

---

[7] Riley Report: Exhibit 1
[8] Riley Exhibits 1A, 3.1, 3.2.
[9] Riley Report: ¶693 and Exhibit 1.1.
[10] Complaint, August 14, 2024, p. 1.
[11] Danaher Corporation, SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 5, Exhibit 21.1.
[12] Deposition of Patricia Del Castillo (Director of Finance at Beckman), October 24, 2025: pp. 7, 39-40; Deposition of Pietro Lopriore (SVP of Global Commercial Operations at Beckman), October 29, 2025: pp. 12-13.
[13] Deposition of Patricia Del Castillo (Director of Finance at Beckman), October 24, 2025: pp. 40-41.

both Danaher's Life Sciences and Diagnostics business segments.[14] Beckman Coulter's life sciences offerings include centrifuges, air and liquid particle counters, genomic instruments, microbioreactors, and flow cytometers.[15] Beckman Coulter's Life Sciences division contains two further portfolio groups: Biotech and Flow Cytometry.[16] The Flow Cytometry division is further divided into Clinical and RUO (Research Use Only) subdivisions.[17] Previously, the CHC (Cell Health and Centrifuge) and BWS (Biotech Workflow Solutions) stood alongside the Flow Cytometry division, but the two groups have since been collapsed into the single Biotech group, which now exists alongside the continued Flow Cytometry division.[18]

### B. Danaher Corporation

18.    Danaher is the Parent Company of Beckman Coulter.[19] Danaher is a Delaware corporation headquartered in Washington, D.C.[20] Danaher describes itself as comprising 15 operating companies within the biotechnology, life sciences, and diagnostics industries.[21] In 2024, Danaher's Diagnostics business segment was the largest revenue-generating division with nearly $9.8 billion in revenue followed by Life Sciences ($7.3 billion) and Biotechnology ($6.8 billion).[22]

### C. Cytek Biosciences, Inc.

19.    Cytek was founded in 2014 as is headquartered in Fremont, California.[23] Cytek is a cell analysis solutions company offering a number of flow cytometers including its Northern Lights, Aurora, Guava, and Amnis product lines.[24] The company offers additional

---

[14] Danaher Corporation, SEC Form 10-K for the Fiscal Year ended December 31, 2024, pp. 5-7.
[15] https://www.beckman.com/shop.
[16] Deposition of Patricia Del Castillo (Director of Finance at Beckman), October 24, 2025: p. 9.
[17] Deposition of Patricia Del Castillo (Director of Finance at Beckman), October 24, 2025: p. 9.
[18] Deposition of Patricia Del Castillo (Director of Finance at Beckman), October 24, 2025: pp. 18-20.
[19] Danaher Corporation, SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 5, Exhibit 21.1.
[20] Danaher Corporation, SEC Form 10-K for the Fiscal Year ended December 31, 2024: p. 1.
[21] Danaher Corporation, SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 3.
[22] Danaher Corporation, SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 38.
[23] Cytek Biosciences, Inc., SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 20.
[24] Cytek Biosciences, Inc., SEC Form 10-K for the Fiscal Year ended December 31, 2024, pp. 4-5. https://cytekbio.com/pages/aurora; https://cytekbio.com/pages/northern-lights; https://cytekbio.com/pages/imagestream; https://cytekbio.com/pages/guava. See also, https://cytekbio.com/pages/muse-micro; https://cytekbio.com/pages/orion.

products including micro cell analyzers and reagent cocktail preparation systems.[25] Cytek's customers include pharmaceutical and biopharma companies, academic institutions, and clinical research organizations.[26] In the U.S., Cytek products are available for research use only.[27] Cytek's sales in the United States are primarily direct, meaning that Cytek's sales representatives will sell direct to a customer.[28] In a very small percentage of situations, Cytek will go through a partner, such as GSS, when selling to the government.[29] Outside of the United States, sales in Europe, Canada, Australia and China are mostly direct, however other regions such as Africa, South America and Taiwan are through distributors.[30]

20. Cytek touts its patented Full Spectrum Profiling ("FSP") technology as optimizing sensitivity and accuracy through a unique optical and electronic design.[31] According to Cytek, this patented optics design enables researchers to effectively collect the full range of light emissions in an extremely compact space, resulting in higher resolution and enabling the development of highly complex assays with numerous colors and biomarkers.[32]

21. In addition to its patented technology, Cytek's SEC filings lists several competitive strengths including a complete offering across price points, service of customers' unmet needs, diversified customer base and breadth of relationships, and global scale and reach.[33] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

[25] https://cytekbio.com/pages/muse-micro; https://cytekbio.com/pages/orion.
[26] Cytek Biosciences, Inc., SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 4.
[27] https://investors.cytekbio.com/.
[28] Deposition of David Kennedy (VP of Global Sales at Cytek), October 2, 2025: pp. 222-223.
[29] Deposition of David Kennedy (VP of Global Sales at Cytek), October 2, 2025: p. 223.
[30] Deposition of David Kennedy (VP of Global Sales at Cytek), October 2, 2025: pp. 224-225.
[31] Cytek Biosciences, Inc., SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 4.
[32] Cytek Biosciences, Inc., SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 4.
[33] Cytek Biosciences, Inc., SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 5.
[34] CYTEK_0000124118-146 (at 120).

# EXHIBIT 4

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BECKMAN COULTER, INC., | |
| Plaintiff, | C.A. No. 22-945-CFC-EGT |
| v. | |
| CYTEK BIOSCIENCES, INC., | |
| Defendant. | |

**REBUTTAL EXPERT REPORT OF FEDOR A. ILKOV, PH.D. REGARDING NON-INFRINGEMENT OF U.S. PATENT NOS. 10,330,582; 11,703,443; and 12,174,107**

Dated:      January 20, 2026

Respectfully submitted,

_____

Fedor A. Ilkov, Ph.D.

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

collecting light by wavelength.

B.    **The Asserted Patents Only Describe the Use of an Effectively Collimated Beam, Not Any Type of "Light"**

50.    Second, as explained in my Opening Report, in my opinion no written description support exists for the "light" recited in the Asserted Claims of the '107 and '443 patents to be any light other than an "effectively collimated" beam.  (Ilkov Op. Rep., Section XV.H.)

C.    **The Asserted Patents Only Describe the Use of Bandpass Filters**

51.    Third, as explained in my Opening Report, in my opinion no written description support exists for the "filters" recited in the Asserted Claims of the '107 and '443 patents to be any type of filter besides a dichroic filter.  (Ilkov Op. Rep., Section XV.H; *id.* at ¶¶1034-1036.)

VIII.  **OVERVIEW OF THE DISCLOSURES IN THE ASSERTED PATENTS AND THE MATERIAL DIFFERENCES IN CYTEK'S ACCUSED PRODUCTS**

A.    **Cytek's Full-Spectral Aurora & Northern Lights Flow Cytometers are Innovative**

1.    **Cytek launched its innovative full spectral Aurora with 20+ color capability and unmixing algorithms in June 2017**

52.    On June 7, 2017, Cytek announced the launch of its advanced full-spectral Aurora flow cytometer, noting its unique combination of patent pending and innovative technologies:

████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement



(*See*      https://cytekbio.com/pages/cytek-biosciences-debuts-new-advanced-flow-cytometry-system.)

53.    Cytek's innovative Aurora full spectral flow cytometer was developed based on Cytek having been on "the frontlines of the industry for decades to address the unmet need for "a user-friendly and truly affordable hyper-parametric flow cytometer" that would permit more labs to "have the ability to obtain deeper biological insights from a single sample," and noting that "[t]his will have a significant impact on research and clinical application files such as immunology, oncology, and systems biology":

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement





Cytek has been on the frontlines of the industry for decades, providing services and customization to keep cytometry systems tuned and running at high performance levels. The introduction of Aurora combines the company's vast pool of technical expertise with its profound market understanding to mark its full circle evolution from a service provider to a solution provider. "Cytek has evolved to address an unmet need," noted Dr. Wenbin Jiang, CEO of Cytek Biosciences. "Years of experience have revealed to us that the cytometry community has lacked a user-friendly and truly affordable hyper-parametric flow cytometer. Our technology allows us to provide an instrument that offers outstanding performance and unparalleled reagent flexibility when it comes to dye selection and multicolor panel design. With Aurora, more labs will have the ability to obtain deeper biological insights from a single sample. This will have a significant impact on research and clinical application fields such as immunology, oncology and systems biology."

(*See* https://cytekbio.com/pages/cytek-biosciences-debuts-new-advanced-flow-cytometry-system.)



### Introduction

When working with conventional flow cytometers, researchers are often limited by the number of reagents they can combine into a single tube. To gather the desired amount of information from each sample, they need multiple tubes, often with some redundant markers across them, to fully characterize cells of interest. With Cytek's full spectrum cytometers, researchers can consolidate a larger number of parameters into a single tube assay. With more reagents combined per tube, less sample is needed, and the need for redundant markers is eliminated.

To demonstrate these sample-to-answer workflow efficiencies, Cytek's scientists designed and optimized a 1-tube acute myeloid leukemia (AML) minimum residual disease (MRD) detection assay based on a published 3-tube assay[1]. Data from the original 3-tube assay and the consolidated 1 tube assay were generated using a Cytek 3-laser full spectrum cytometer and compared.



███████████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

55.    In my opinion, Cytek's launch of the Aurora spectral flow cytometer was a critical and fundamental advancement in flow cytometry that went well above-and-beyond the capabilities of conventional flow cytometers like BEC's CytoFLEX. In my opening report on invalidity, I have already explained the fundamental differences between spectral flow cytometry and conventional flow cytometry, which I incorporate by reference herein.  Additionally, however, Cytek's Aurora also provided capabilities and functionality within a less-complex, less-expensive, and more user-friendly system than the Sony spectral flow cytometer that had already been on the market for a few years as of 2017 but had not gained substantial traction within the flow cytometry community.

> **2.    Danaher (BEC's corporate parent) recognized Cytek's innovative Aurora spectral flow cytometers just months after launch**

56.    I understand that on February 14, 2018 BEC's corporate parent, Danaher, sent a letter of intent to Cytek, noting Danaher's and "Beckman Coulter Life Sciences" recognition that Cytek's Aurora spectral flow cytometer was one of Cytek's "*innovative* cellular analysis platforms" and made a non-binding offer to acquire Cytek for ███████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement



**CONFIDENTIAL**

February 14, 2018

Wenbin Jiang
Chief Executive Officer
Cytek Biosciences, Inc.
46107 Landing Parkway
Fremont, CA 94538

Dear Dr Jiang:

Thank you for providing us an opportunity to evaluate a potential transaction involving Cytek Biosciences, Inc. ("**Cytek**" or the "**Company**"). We are pleased to submit this non-binding indication of interest ("**IOI**") for the Company.

Beckman Coulter Life Sciences believes a transaction with Cytek is compelling and will complement our business and enhance the value proposition we offer to our customers. We believe that the Company's innovative cellular analysis platforms, Aurora and Athena, with their broad range of spectra and resulting multiplexing capability provide strong customer value. Our global commercial infrastructure will accelerate the growth potential of your company and product platforms.

Our non-binding offer to acquire the Company on a cash-free, debt-free basis, is for aggregate potential consideration of ▮▮▮▮▮▮▮▮▮▮▮ consisting of upfront consideration and contingent consideration based on mutually agreed milestones. This offer is based on the information in the Management Presentation. Our offer also presumes (i) that the transaction would be structured in a manner that is tax-efficient for us and (ii) that the Company is transferred with an adequate, normalized level of working capital.

(CYTEK_0000882748.)

57.    I agree with Danaher that Cytek's Aurora spectral flow cytometer was (and remains) an "***innovative*** cellular analysis platform." There are many innovative features within Cytek's Aurora and Northern Lights spectral flow cytometers, including, among others:

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

58.    I understand that Danaher never mentioned any alleged issues with any patent rights, including any of the presently Asserted Patents at the time of this letter of intent or anytime before BEC sent Cytek a letter alleging infringement in June 2024.

      **3.     Cytek's innovative spectral flow cytometers (Aurora and Northern Lights) continue to be recognized for how they have advanced the field of flow cytometry**

59.    Cytek's innovative Aurora and Northern Lights spectral flow cytometers have continued to be recognized throughout the industry.  Indeed, Cytek

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

**b.**

78.

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

79.

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

(CYTEK_00000000104.)

82.

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

disclosure in the specification regarding how much beam divergence is permitted or what constitutes "large beam expansion" as part of the disclosure that "the present disclosure extends the collimated optical path length *without large beam expansion*."

88.    The patent further contends that "[i]t is apparent to those skilled in the art that dichroic filters may be inserted anywhere along the *long, narrow and collimated beam path* afforded by *the present disclosure's* relay imaging." ('582 patent, 5:11-14.)  Again, the specification is referring to "the present disclosure" as requiring a "long, narrow, *collimated beam path*," which a POSA would understand as requiring a "collimated beam" along the entire "collimated beam path."  A POSA would have further recognized that the disclosure that "dichroic filters may be inserted anywhere" along a beam path only applies when the path is entirely a "collimated beam."

89.    Again contrary to the disclosures of the Asserted Patents, Cytek's Accused Products

As such, contrary to the "WDM" disclosed in the specification of the Asserted Patents,

- 62 -

███████████████████████████████████

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████████. The use of a relay architecture that directs defocused light onto even filters while reimaging light onto odd filters is a fundamental innovation of the optical design in Cytek's non-collimated focused/defocused array design, which was expressly recognized by the Patent Office as not being disclosed in the disclosure of the Asserted Patents (in the form of family member US Patent 9,746,412 as noted below):

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

**Allowable Subject Matter**

Claims 1, 3-15 and 30-33 are allowed.

The prior art does not disclose, in the claimed environment, a flow cytometer having an image array comprising a transparent block, a plurality of micro-mirrors and a plurality of filters, wherein each of the filters reflects light onto one of the plurality of micro-mirrors and passes light of a differing wavelength onto a detector channel, and wherein incident light within the image array zigzags back and forth between consecutive filters and consecutive micro-mirrors. The closest prior art is believed to be the Chen (US 9746412), Frazier (US 8284402) and Grann (US 6201908) references cited in Applicant's most recent information disclosure statements. Although these

Application/Control Number: 15/659,610                                        Page 3
Art Unit: 1799

references teach the state of the art regarding optical blocks that reflect light between mirror and filters to produce incident light that travels in a zigzag pattern, these references do not utilize micro-mirrors or mirrors having a radius of curvature that directs light onto even filters while reimaging light onto odd filters of a plurality of filters arranged in a row.

(*See* 2021-07-09 Notice of Allowability in prosecution of Cytek's '076 patent (Appl. No. 15/659,610), pp. 2-3.)

90.    I agree with the Examiner that there is no disclosure in the Asserted Patents of using a non-collimated focused/defocused beam within a curved-mirror relay architecture that reimages onto odd filters and directs defocused light onto even filters of a plurality of filters in a row.  (*See* '582 patent, 45:22-29 ("The light beam between the concave mirror **907** and the second image at the lens **908** may have

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

As explained in the previous response sent June 4, 2024 ("Prior Response"), Applicant respectfully disagrees that Oostman's objective lens 19 is configured to "focus fluorescent light" because the objective lens "collimate[s]" rather than focuses "the fluorescent signal from the target substance." Oostman at ¶ [0003] (emphasis added). A POSITA would have understood that collimation means generally maintaining the width of a beam for some distance, including by, for example, limiting its convergence or divergence. E.g., Specification at 4:46-63. Oostman's objective lens 19's collimation—while not necessarily maintaining parallelism, given that achieving perfectly parallel rays of light is not realizable in practice—is not "focus[ing]" the fluorescent light, which instead involves converging the light. See, e.g., Excerpts from Newport Catalog at 480, available at http://rpdata.caltech.edu/courses/aph162/2007 (attached as APPENDIX A to the Prior Response) (distinguishing between "Focusing" and "Collimating" in "Application 1" and "Application 2").

Nevertheless, in an effort to expedite prosecution, independent claims 1, 13, and 18 are each amended to recite "that the fluorescent light leaving the collecting optical element converges," which makes clear that the fluorescent light "focus[ed]" by the "collecting optical element" converges instead of being collimated. Because Oostman's objective lens 19 collimates the fluorescent light, it is not configured to "focus [the] fluorescent light … such that the fluorescent light leaving [the objective lens] converges" as the claims require. See Oostman at ¶ [0003]; supra.

(BEC-CYTEK-00004404 ('106 patent file history (July 18, 2024 Applicant Remarks), 15.)

135.    In my opinion, Dr. Schaafsma and Dr. Houston are taking a position inconsistent with what BEC told the patent office during prosecution—i.e., that a "collimated beam" is distinguishable and substantially different from prior art that

Fedor A. Ilkov, Ph.D. Rebuttal Report Regarding Non-Infringement

uses a focused beam of converging light. (BEC-CYTEK-00004404 at -4753-754 ('106 patent file history (June 4, 2024 Applicant Remarks), 9-10).)

136. I also note that in granting Cytek's '076 patent, the U.S. Patent Office also recognized that Cytek's teaching of a focused/defocused beam that allows for "reimaging light onto odd filters of a plurality of filters arranged in a row" was inventive over the disclosure of the Asserted Patents. (CYTEK_0000989932 at -990378 ('076 patent file history (July 9, 2021 Notice of Allowability), 3).) This further supports my opinion that a "collimated beam" and Cytek's focused/unfocused beam are not equivalent.

> **b.  1(b): "a collimating optical element arranged to receive light from a light source, the collimating optical element configured to project a collimated beam;"**

137. In my opinion, the Accused Products do not infringe claim limitation 1(b), "a collimating optical element arranged to receive light from a light source, the collimating optical element configured to project a collimated beam." ('582 patent, cl. 1.) I incorporate my analysis in Sections VIII.B.2 and VIII.C above and Appendix A, my analysis on the claim construction of "collimating optical element," and my analysis in Section IX.A.1.a on "collimated beam," and I disagree with Dr. Schaafsma's and Dr. Houston's opinions.

138. For "**collimating optical element**," I understand that BEC has proposed a purported "plain and ordinary meaning" construction of "an optical

# EXHIBIT 5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BECKMAN COULTER, INC.,

          Plaintiff,

    v.

CYTEK BIOSCIENCES, INC.,

          Defendant.

C.A. No. 22-945-CFC-EGT

 

## REBUTTAL EXPERT REPORT OF JAMES F. LEARY, PH.D. REGARDING NON-INFRINGEMENT OF U.S. PATENT NOS. 10,330,582; 11,703,443; and 12,174,107

Dated:  1/20/2026

_James F. Leary_

James F. Leary, Ph.D.

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

Becton Dickinson as early as 2004 employs a linear configuration demultiplexer),

IX.B (BD LSR-II System, flow cytometer manufactured and distributed by Becton

Dickinson as early as 2007 employs an octagonal configuration demultiplexer), IX.D

(DxP System, flow cytometer manufactured and distributed by Cytek Development,

Inc. as early as 2010 employs a zig-zag configuration demultiplexer), IX.E (Luminex

FlexMap 3D System, flow cytometer manufactured and distributed by Diasorin as

early as 2008 employs a linear configuration demultiplexer).)

## XII.  CYTEK'S PATENTS

106.  I understand that Cytek has its own patents on full spectral flow

cytometers.  For example, U.S. Patent No. 11,169,076 ("the '076 patent") by Yan et

al. was published on November 9, 2021.  (CYTEK_0000990444; *see also* U.S.

Patent Nos. 11,333,597 and 10,739,245.)  I understand that the specification of the

'076 patent describes principles of Cytek's flow cytometry technology as embodied

in the Accused Products.  *See, e.g.,* M. Yan Dep. Tr. at 215:9-12 ("Q.

). Notably, nowhere in the Cytek '076 patent is

the term "Wavelength Division Multiplexer" or "WDM" ever used.  Instead, Cytek's

patent describes a demultiplexing process which is performed in a totally different

way than by a WDM.

107.  My review of the file history of the '076 patent further confirms my

███████████████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

opinion that the Accused Products do not infringe any of the Asserted Patents.

108.   The application that issued as the '076 patent was filed on July 25, 2017. (CYTEK_0000989932.)  The Examiner issued a notice of allowance on February 2, 2021, stating that the prior art references do not disclose "imaging at plurality of detectors."  (*Id.* at CYTEK_0000990302 (Feb. 2, 2021 Notice of Allowance, 2).)

109.   After the Applicant filed a supplemental Information Disclosure Statement Form ("IDS"), which I understand concerns the submission of additional references for the Patent Office's consideration, the Examiner issued a notice of allowance on July 9, 2021 for the '076 patent, specifically allowing the claims over U.S. Patent No. 9,746,412 (which I understand is the parent patent in the same patent family as the Asserted Patents, shares a common specification with the Asserted Patents, and also names the same inventor as the Asserted Patents, Yong Chen), along with two other references.  The Examiner allowed the claims of the '076 patent over the references because they did not disclose "reimaging light onto odd filters of a plurality of filters arranged in a row."  (*Id.* at CYTEK_0000990378 (July 9, 2021 Notice of Allowance, 3).)

110.   ████████████████████████████████████████

████████████████████████████████████████████

██████   ██████████████████████████████████████

███████████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████ shows that the Accused Product "reimag[es] light

onto odd filters of a plurality of filters arranged in a row," (CYTEK_0000989932 at

-378 (July 9, 2021 Notice of Allowance, 3), just as disclosed.

111.  First, ████████████████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

(CYTEK_0000000089 at -103; '076, FIG. 2B, 11:1-4 (annotated).)

112.  ████████████████████████████████████████████

████████████████████████████████

██████████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

(email from Cytek's CTO stating █████████████████████████████████

█████████████████████████████████████████████████

(emphasis added)).)

165.    This is further evidenced by Cytek's own patents.   For example, nowhere does the Cytek '076 patent claim or describe a WDM device. Indeed, the specification of the patent repeatedly describes a "wavelength de-multiplexing system" and light that is "de-multiplexed" or "wavelength demultiplexed" into detector channels.  (*See* '076 patent at 4:9-10 ("The detection module 100 is a wavelength *de-multiplexing* system." (emphasis added)); *see also id.* at 12:31-33 ("Accordingly, different wavelengths are *de-multiplexed* by the plurality of detectors in each of the first detection module 714 and second detection module 715." (emphasis added)).)

166.    Cytek's CEO and CTO also repeatedly testified that the Accused Products do not contain a "wavelength division multiplexer," but instead, implement de-multiplexing technology.  W. Jiang Dep. Tr. at 68:17-21 ("Q. ████████████████

█████████████████████████████████████████████████

█████████ █████████ ███████████ ████████ );  *id.*at  63:5-13  ████  ████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

342.    Third, the beam in the Accused Products and the claimed "collimated beam" do not achieve substantially the same result.  To the contrary, the converging and diverging beam allows the Accused Products to more efficiently perform full spectral flow cytometry.  The converging and diverging optics of the Accused Products is not collimated optics, and is fundamental to the design of Cytek's spectral cytometers because it efficiently minimizes aberrations such that the full fluorescence spectrum can be captured by the higher number of detector channels so that subsequent unmixing algorithm software can resolve overlapping spectra from two or more fluorophores based on each dye's unique spectral signature.  Hence, any trade-off incident to color separation between the use of a "collimated beam"— which the specification of the Asserted Patents says "*can only be accomplished economically with collimated light beam*" ('582 patent, 44:25-26 (emphasis added)) versus the aberration-limiting, non-collimated focused/defocused beam within the Accused Products clearly lands in favor of Cytek's design, which is specific to the needs of Cytek's spectral flow cytometers.

343.    Therefore, in my opinion, the beam in Cytek's Accused Products and the claimed "collimated beam" do not perform substantially the same function, in substantially the same way, to achieve substantially the same result.

344.    Again, the Patent Office allowing the claims of Cytek '076 patent over the disclosures in the Asserted Patents and other prior art because they did not

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

disclose "reimaging light onto odd filters of a plurality of filters arranged in a row" (CYTEK_0000989932 at -990378 ('076 patent file history (July 9, 2021 Notice of Allowability), 3)), further supports my opinion.

> **b.    1(b): "a collimating optical element arranged to receive light from a light source, the collimating optical element configured to project a collimated beam;"**

345.   In my opinion, limitation 1(b), "a collimating optical element arranged to receive light from a light source, the collimating optical element configured to project a collimated beam" is not present in the Accused Products.

346.   Drs. Houston and Schaafsma opine that the Accused Products meet this claim limitation by identifying two separate components in the Accused Products as the claimed "collimating optical element":  the "collimating lens" and, in the alternative, odd-numbered "concave mirrors."  (Houston Rep., ¶¶417-427; *see also* Schaafsma Rep., ¶¶196-197.)   I disagree with either of Drs. Houston's and Schaafsma's mappings, and reference my opinions above on the claim construction of the term "collimating optical element" and my opinions above concerning "collimated beam."  I further explain below why this limitation is not present in the Accused Products.

347.   For the term "collimating optical element," as I noted in Section VIII.B.1 above, I understand that Beckman has proposed a purported "plain and ordinary meaning" construction of "an optical element, such as a lens, mirror, or

- 195 -

██████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

16, and 20.

499. ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████



FIG. 1

500. ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████, I reserve the

right to respond to any opinion should Dr. Houston be permitted to later provide a

new opinion.

501. ████████████████████████████████████████████

██ ██ ██ ████ ████ ██ ██ ██ ██ ████ ████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement



502.   Based on the above facts, it is my opinion that Dr. Jiang developed a reasonable belief that Cytek did not infringe claims 1, 3, 14, or 16 of the '412 patent.

█████████████████████████████████████████

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

For example, I agree with Dr. Jiang that claim 3 is not infringed. █████████

████████████████████████, claim 1, which recites a "collimating optical element" is also not infringed, consistent with my opinions above on "collimating optical element." (CYTEK_0000988641 at –641-642.) ██████████████████████

███████████████████████████████████████, and instead concludes summarily that they are "not correct" based on her review of Dr. Schaafsma's report. (Houston Rep., ¶485 (citing Schaafsma Rep., ¶¶94-97, 188-192).) But Dr. Schaafsma also did not analyze the specific non-infringement positions articulated in the █████████████████████████. (*See* Schaafsma Rep., ¶¶94-97 (merely providing an overview of the '412 patent); *id.* at ¶¶188-192 (citing two non-infringement positions from the '582 chart, and concluding without explanation that

████████████████████████████████████████████

████).)[25] In my opinion, █████████████████████████████

████████████████████████████████████████████

████████████████████████████████. I further understand that, contrary to Dr. Houston's suggestion, "consult[ing] an[] attorney" is not required to develop a reasonable belief in non-infringement. (*See* Houston Rep., ¶485.) In any event, I understand that █████████████████████████████████████

---

[25] I address Dr. Schaafsma's opinions regarding Dr. Jiang's '582 claim chart below.

- 300 -

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

503. I have also reviewed Dr. Jiang's deposition testimony, which reinforces my opinion that Cytek had a reasonable belief in invalidity and non-infringement of the '412 patent. (W. Jiang Dep. Tr., 181:14-212:9 (discussing CYTEK_0000988641).) As Dr. Jiang explains, the '412 patent is directed to a conventional flow cytometer, while Cytek's products use full spectral flow cytometry. (W. Jiang Dep. Tr., 184:9-11 ("[A]fter reviewing [the '412 patent], it's so obvious, so different. And this is a conventional flow cytometer while Cytek's is full spectral profile technology"); *see also id.* at 210:18-23 ("[I]t's so clear Cytek does not infringe on Yong Chen's patents because . . . Yong Chen's patents [are] about conventional flow cytometer, and Cytek is about [full] spectral. Those are two very different concepts in terms of earlier explaining the whole architecture, whole data analysis algorithms.").) As explained in this report, I agree that conventional flow cytometry is fundamentally different from full spectral flow cytometry.

504. Dr. Houston asserts that "Cytek's spectral cytometer is predicated on the use of a WDM" and "[t]herefore, the use of spectral technology alone does not render Cytek's products non-infringing with respect to the [']412 Patent or the Asserted Patents." (Houston Rep., ¶485.) I disagree, because as I explain above, the Accused Products do *not* use a WDM as claimed in the Asserted Patents.

- 301 -

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

2017, before even the parent '412 patent issued on August 29, 2017, and well before the '582 patent issued. And as explained above, even if Cytek knew that Beckman owned patents allegedly cover the CytoFLEX or the XTG product, knowledge of patents alone is insufficient to establish willful infringement.

514. Further, in my experience, all of Cytek's activities described in this section are common practice in the flow cytometry industry—it is normal and expected for competitors to monitor and analyze each others' products.

515. In fact, the evidence shows that Beckman and its parent company Danaher Corporation were well-aware of—and even interested in acquiring—Cytek's technology. (*See* Cytek's Second Suppl. Resp. to Interrog. No. 11 (Oct. 22, 2025).) Cytek gave a management presentation in January 2018 to Danaher and Beckman, including a comprehensive overview of Cytek's products and IP portfolio. (CYTEK_0000893376.) This occurred after Yong Chen's '412 patent had issued in August 2017. In the presentation shared with Danaher and Beckman, Cytek identified many of its own patents and patent applications covering principles of Cytek's flow cytometry technology. (*Id.* at -405.) I understand that, instead of alleging infringement or even raising the '412 patent and its disclosure as a concern vis-à-vis Cytek's technology, Beckman and Danaher responded to this presentation by offering to acquire Cytek. On February 14, 2018, Danaher sent an indication of interest ("IOI") letter to Cytek, stating that Cytek's "innovative cellular analysis

- 311 -

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

platforms, Aurora and Athena, with their broad range of spectra and resulting multiplexing capability provide strong customer value." (CYTEK_0000882748.) Danaher explained that "Beckman Coulter Life Sciences believes a transaction with Cytek is compelling and will complement our business and enhance the value proposition we offer to our customers" and █████████████████████████ ████████ (*Id.*) I am informed that neither Danaher nor Beckman ever shared any concerns that Aurora infringed any claim in any Asserted Patent or related patent or application, even after the '582 patent issued in June 2019, until the June 2024 letter mentioned above.

516. In September 2020, several years after Danaher's February 2018 IOI, Danaher again reached out to Cytek to resume acquisition discussions. (CYTEK_0000948858.) Kevin Chance, Vice President and Group Executive at Danaher Life Sciences (which I understand includes Beckman), met with Dr. Jiang over a video call on September 16, 2020. (CYTEK_0000948859.) I understand that, yet again, Mr. Chance never expressed any concerns that Cytek's products infringed any patents owned by Danaher or Beckman, which by then included the '582 patent. On May 26, 2021, Cytek gave another management presentation to Danaher and Beckman (CYTEK_0000882746), after which Danaher "debriefed internally and confirmed their interest in Cytek" (CYTEK_0000949411). A Danaher representative followed up with several questions. (CYTEK_0000949411.) I am

James F. Leary, Ph.D. Rebuttal Report Regarding Non-Infringement

informed that at no point in time did Danaher or Beckman allege infringement of its then-issued '412 and '582 patents.

517. ███████████████████████████████████████████████████ and their failure to allege infringement during those times—confirm that Cytek had no reason to believe it was infringing any patents owned by Beckman. ███████████████████████████████████████ ████████████████████████████████.

518. Turning back to Dr. Houston's opinions, Dr. Houston describes Dr. Ming Yan's former employment at Becton Dickinson and the ensuing trade secret litigation. (Houston Rep., ¶¶490-491.) I understand that case is separate from and has nothing to do with the instant litigation, and is certainly not relevant to willful infringement. Dr. Houston relies on this trade secret litigation as evidence that "Dr. Yan and Cytek had knowledge and awareness of Xitogen, the company that originally developed the claimed inventions, Dr. Chen, and Dr. Chen's work on the claimed inventions." (Houston Rep., ¶491.)

519. Dr. Houston then provides a bulleted list of documents allegedly showing that "Cytek frequently and repeatedly[] studied, examined, and analyzed the CytoFLEX and its performance throughout its development of the Accused Products and compared and analyzed the structure, function, operation, features, benefits, and performance of the CytoFLEX to the Accused Products." (Houston

# EXHIBIT 6

Case 1:24-cv-00945-CFC    Document 420-5    Filed 08/06/26    Page 69 of 244 PageID #: 40690



🔍

## Our Businesses

# Solving today's critical challenges



# Danaher is comprised of a set of businesses across biotechnology,

Case 1:24-cv-00945-CFC   Document 420-5   Filed 08/06/26   Page 70 of 244 PageID #: 40691

diagnostics, and life sciences united by a shared commitment to innovate for tangible impact.

## The Danaher ecosystem

The Danaher ecosystem — made up of more than 15 businesses with leadership positions in their respective end markets — is dedicated to advancing continuous improvement and accelerating innovation to make a meaningful impact. What differentiates Danaher is not only the strength of our individual businesses, but how they work together—connected by a shared operating system and a commitment to continuous improvement.

Each business is backed by Danaher and its resources, including the Danaher Business System, which empowers our businesses to make a tangible difference in lives around the world. We take on the most pressing challenges and leverage our expertise in science and technology to deliver transformative innovations.

This ecosystem allows us to orchestrate connected science across entire workflows—bringing together the right technologies, expertise, and scale to solve complex challenges faster and with greater certainty.



# Driving change around the world

With a global presence and a commitment to excellence, we are dedicated to making an impact in every corner of the world.

## ~$25B

Case 1:24-cv-00945-CFC    Document 420-5    Filed 08/06/26    Page 72 of 244 PageID #: 40693

total revenue in 2025

## >15

businesses across science and technology

## 60K

associates



# Biotechnology

Our biotechnology businesses deliver researchers and biopharmaceutical companies the expertise, tools, and services they need to develop and commercialize life-changing therapeutics. We support our customers from

Case 1:24-cv-00945-CFC    Document 420-5    Filed 08/06/26    Page 73 of 244 PageID #: 40694

discovery to delivery as they undertake life-saving activities ranging from fundamental biological research to developing and manufacturing innovative vaccines, biologic drugs, novel cell and gene therapies, and new technologies such as mRNA. As part of the Danaher ecosystem, these businesses benefit from shared capabilities and cross company collaboration—continuously accelerating ideas from discovery to real world impact.



**Learn about biotechnology** →

# Diagnostics

We're generating proprietary insights into disease areas and innovation trends to develop inventive solutions of high clinical impact. Operating in both established and emerging markets, we provide our expertise to healthcare practitioners, researchers, and other leaders in the field, enabling them to save and improve lives. Our businesses come together for unparalleled breadth and depth of offerings, resulting in high-quality and accurate diagnostic confidence for a wide range of critical health conditions. Working together, our diagnostics businesses combine speed, scale and DBS-driven rigor to support faster, more confident decisions when they matter most.









6/25/26, 10:08 AM
Case 1:24-cv-00945-CFC    Document 420-5    Filed 08/06/26    Page 74 of 244 PageID #:
40695
Danaher is Comprised of Leading Science and Technology Companies







**Learn about diagnostics →**

# Life Sciences

Our life sciences businesses are dedicated to accelerating the discovery, development, and delivery of solutions that safeguard and improve human health. We bridge the gap between research and practical application, enabling the development of revolutionary innovations such as biopharmaceuticals and enhanced synthetic biologics—connecting science across disciplines and workflows, at global scale, to help people live longer, healthier lives.













6/25/26, 10:08 AM
Case 1:24-cv-00945-CFC   Document 420-5   Filed 08/06/26   Page 75 of 244 PageID #:
Danaher Is Comprised of Leading Science and Technology Companies
40696











**Learn about life sciences  →**

# Explore all businesses

When the challenge is complex, the right answer rarely comes from a single company. Every Danaher business brings distinct strengths—together, they form a connected portfolio built to solve the hardest problems in science and healthcare.

Looking for a specific business or want to see the whole portfolio? Our business directory organizes all of Danaher's businesses in one place.

# See all businesses  →

# EXHIBIT 7

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BECKMAN COULTER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-945 (CFC) (EGT) |
| | ) | |
| CYTEK BIOSCIENCES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPENING EXPERT REPORT OF BERNHARD H. WEIGL, PH.D.</u>

Dated: December 19, 2025

Respectfully submitted,

_____

Bernhard H. Weigl, Ph.D., MSc

Brannen Dep Tr. 37:14-24, 43:17-46:8; Del Castillo Dep. Tr. 51:10-53:6; Koksch Dep. Tr. 187:22-189:5.) I understand that Beckman Coulter takes the position that CytoFLEX practices the '582, '443, and '107 patents.

80. I have reviewed the deposition testimony of named inventor Yong Chen and note that he did not have any involvement in the prosecution of the '443 and '107 patents, as Dr. Chen had already left Beckman Coulter. (Chen Rough Dep. Tr. 39:22-40:4.) This means that the additional limitation of "substantially full spectrum of visible light" was added by Beckman Coulter's patent attorneys without Dr. Chen's knowledge prior to the September 3, 2024 filing of the patent application that became the '107 patent.

81. Additionally, a decade after the asserted April 2012 priority date of the Asserted Claims, Beckman Coulter filed an unrelated patent application that attempts to disclose a full spectral flow cytometer. *See* U.S. Patent Publication No. 2025/0198904 at Para. [0043] ("At present, the flow cytometry is developing from the conventional multi-color fluorescence channel to the high-channel fluorescence full spectrum."). Beckman Coulter's patent application appears to claim priority to a foreign filing date of a Chinese patent application on March 23, 2022. Similarly, Beckman Coulter filed another patent application on October 17, 2023 which also mentions newly filed patents directed to "spectral flow cytometry" and "unmixing," in contrast to conventional flow cytometry using "compensation"/"spillover," long

Lopriore Dep. Tr. 109:9-13; Goff Dep. Tr. 77:9-13; Brannen Dep Tr. 37:14-24, 43:17-46:8; Del Castillo Dep. Tr. 51:10-53:6; Koksch Dep. Tr. 187:22-189:5.) It is further, in my opinion, demonstrated by the fact that it took Beckman Coulter over a decade to develop and launch the mosaic module. The long development timeline Beckman Coulter undertook further supports the conclusion that the technological implementation of the detector modules in a spectral flow cytometer was not enabled by the specification of the Asserted Patents

87. Moreover, I understand that on Feb. 1, 2023, Beckman Coulter filed U.S. Patent Application No. 18/847,394 entitled "Light Detecting System and Light Detecting Method for Flow Cytometer." (*See* U.S. Patent Application Publication No. 2025/0198904 to Jianhua Wang ("Wang").) In this 2023 patent application Beckman Coulter acknowledges the distinction between conventional flow cytometry and conventional flow cytometry:

> [0043] At present, the flow cytometry is developing from the conventional multi-color fluorescence channel to the high-channel fluorescence full spectrum. With the fluorescence full spectrum, more fluorescence information is acquired and more (*up to 40 or more or more channels* of) fluorescein and other information are analyzed at the same time, so as to acquire more sample expression information, thereby achieving a sensitive and accurate test result. *In order to achieve this objective, high-density channel acquisition of the fluorescence spectrum is required to reflect a spectral feature of the fluorescence.*

(Wang, [0043].)

88. Beckman Coulter's 2023 patent filing was directed to a "light

65

==detection system 100 for a flow cytometer" that "includes a beam separating device **102** and multiple wavelength division multiplexing devices **104**."== (*Id.*, [0031].) The "beam splitting device 102" and multiple wavelength division multiplexing devices 104" are described and depicted in FIG. 2: "As an example, the multiple first beams may be transmitted in a layered layout in a vertical direction (for example, a z-axis direction shown in FIG. **2** ), so that, for example, the size of the wavelength division multiplexing device **104** can be further reduced." (*Id.*, [0046].)



Figure 2

(*Id.*, [0043].)



68



71



Case 1:24-cv-00945-CFC    Document 420-5    Filed 08/06/26    Page 85 of 244 PageID #: 40706

72

90.      The fact that Beckman Coulter has filed a patent application directed to its recently launch mosaic detector module indicates that Beckman Coulter believes the mosaic to be new and not previously disclosed or enabled by Yong Chen's Asserted Patents from a decade earlier. I agree. The Asserted Patents here are solely directed to one-dye-one-detector conventional flow cytometry and provides no disclosures, teachings, or guidance that would have enabled a POSA to create and design a spectral WDM that would be suitable for use within a spectral flow cytometer. In my opinion, the one-detector-one-dye conventional flow cytometer and WDM disclosures in the Asserted Patents would not have enabled a

72

POSA to make and use a "WDM capable of detecting a substantially full spectrum of visible light" to the extent the phrase could be interpreted as going being a one-detector-one-dye conventional flow cytometer detector configuration to a non-conventional all-detectors-all-dyes configuration of spectral flow cytometry.

91.     To convert the conventional flow cytometer WDM disclosed in the Asserted Patent would require substantial research, development, and trial-and-error testing considering the nascent state of spectral flow cytometry before 2014.  At that time, only Sony had already launched a commercial flow cytometer, based on a diffraction grating for separating the fluorescent signal and using PMTs for detection channels, and publications in the art by researchers at Purdue University had also used a diffraction grating.  There were no teachings or guidance within the art that I am aware of prior to the priority date of the Asserted Patents (i.e., prior to 2014), directed towards how to make and use a "flow cytometer . . . wherein the WDM is capable of detecting a substantially full spectrum of visible light" using the recited "zig-zag" WDM configuration required by claims 9 and 29 without undue experimentation.  Accordingly, it is my opinion that claims 9 and 29 are not enabled. I reached my conclusion based on my evaluation of the *Wands* Factors, which I apply below.

92.     **Breadth of the Claims (*Wands* Factor No. 1)**:  The "flow cytometer . . . wherein the WDM is capable of detecting a substantially full spectrum of visible

73

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| BECKMAN COULTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> CYTEK BIOSCIENCES, INC., <br><br> Defendant. | C.A. No. 24-cv-945 (CFC) <br><br> ██████████████ |

## CYTEK'S OPPOSITION TO BECKMAN COULTER'S MOTION *IN LIMINE* NO. 2

BEC's motion to preclude any references or evidence related to BEC's parent corporation, Danaher, is overbroad and should be denied.  BEC seeks a blanket exclusion of probative evidence on joint Danaher-BEC efforts to acquire Cytek from 2018-2021, including related statements and conduct by Danaher/BEC.  BEC's unfounded claims of prejudice do not outweigh the probative value of the evidence.

BEC wrongly asserts that "non-party Danaher has nothing to do with this case." (MIL, 1.)  In fact, Danaher (as corporate parent) and BEC (its wholly owned subsidiary) have and continue to act jointly without corporate distinction vis-à-vis Cytek.  Danaher and BEC jointly undertook negotiations to acquire Cytek.  Cytek presented jointly to Danaher/BEC in January 2018 with extensive details about Cytek, its products, and its IP portfolio, including technical design and operation details of the now-accused Aurora products.  (Ex. 1, Jiang Dep. Tr. at 268:25-269:5, 270:16-24 (Danaher-related 30(b)(6) testimony); Ex. 2, Koksch Dep. Tr. at 192:6-194:3.)  Danaher/BEC's subsequent letter to Cytek in February 2018 (nominally from "Danaher") refers to Danaher/BEC without distinction: "Beckman Coulter Life Sciences believes a transaction with Cytek is compelling and will complement *our* business," "*[o]ur* Life Sciences Platform . . . under the Danaher umbrella," "*[w]e* believe *we* are an attractive strategic partner for Cytek," "part of Beckman Coulter and Danaher." (Ex. 3, 1 (emphasis added).)  In 2021, Cytek again presented to both BEC and Danaher.  (Ex. 4.)  And at the outset of the litigation on August 14, 2024,

1

Danaher's in-house IP counsel Michael Levy wrote to Cytek noting that "*we* filed a suit based on the two patents identified in *our* letter," again indicating Danaher's direct involvement.   (Ex. 5, 3 (emphasis added).)  Indeed, two Danaher in-house counsel are designated under the protective order in this case.  (Ex. 6, 1; Ex. 7, 2.)

BEC and Danaher's joint pre-suit activities bear directly on Cytek's subjective intent, knowledge, and reasonable belief of non-infringement, as relevant at least to §§ 271(b), (c) and (f) and willfulness.  (Ex. 8, 8-30.)   Danaher/BEC's 2018 "Indication of Interest" letter praised Cytek's Aurora technology as "innovative" and ███████████████████████████████████████████████  (Ex. 3, 1.) Danaher/BEC never alleged patent infringement during the 2018-2021 acquisition discussions.   Accordingly, Danaher/BEC's own admissions and conduct only confirm that that Cytek had no reason to believe it was infringing, let alone that it was a willful infringer.   The probative value of this evidence outweighs any purported prejudice to BEC.  *See, e.g.*, *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1351 (Fed. Cir. 2009); *Halo Elecs., Inc. v. Pulse Elecs., Inc.,* 579 U.S. 93, 105–06 (2016); *Sw. eFuel Network, L.L.C. v. Transaction Tracking Techs., Inc.*, No. 2:07-cv-311, Dkt. 135 at 1 (E.D. Tex. Dec. 17, 2009) (lack of reference to asserted patents during potential acquisition probative of lack of willfulness).  Excluding *all* evidence related to Danaher would unduly prejudice Cytek's defenses of lack of intent and reasonable reliance on Danaher/BEC's conduct.  This evidence is also vital to rebut

2

copying allegations. *Nortek Air Sol's, LLC v. Energy Lab Corp.*, 2016 WL 3856250, at \*3 (N.D. Cal. July 15, 2016) (acquisition efforts are relevant rebuttal evidence).

Danaher-related evidence is also relevant to Cytek's "RDOE," noninfringement, and § 112 defenses on whether the Asserted Claims' scope (conventional flow cytometers) captures spectral flow cytometers. BEC alleges CytoFLEX embodies the Asserted Claims, thus arguing the scope extends to spectral flow cytometers. (See Ex. 9, Goff Dep. Tr. at 99:22-100:12, Ex. 10, Chen Dep. Tr. at 149:17-150:7.) ███████████████████████████ (Ex. 11, Lopriore Dep. Tr. at 191:3-198:25, 201:2-206:13; Ex. 14, BEC-CYTEK-00156103-5; Ex. 13, BEC-CYTEK-00248229-30, -00248244.) Exclusion would improperly preclude cross-examination and impeachment on these relevant materials.

BEC's other arguments cannot justify the requested overbroad relief. Cytek will not make a "David-versus-Goliath" argument. Jury instructions will negate BEC's unsupported concerns about damages. Moreover, in denying Mr. Milosevich's motion to quash, the Court considered and rejected the same arguments BEC makes here about the relevance of Danaher to this litigation. (Ex. 12 (Apr. 16, 2026 Hr'g Tr.), at 57:15-58:16, 60:19-63:12, 65:20-66:3.) Cytek is still receiving discovery about Danaher/BEC under the subpoena to Mr. Milosevich, whose deposition is set for July 22. This Motion prematurely seeks a ruling on unproduced evidence and should also be denied on that basis too.

3

Dated: July 9, 2026

Adam Pivovar
Dustin M. Knight
David Yun
COOLEY LLP
1299 Pennsylvania Avenue NW,
Suite 700
Washington, DC 20004
(202) 842-7800
apivovar@cooley.com
dknight@cooley.com
dyun@cooley.com

Respectfully submitted,

MORRIS, NICHOLS, ARSHT &
TUNNELL LLP

By: */s/ Jeremy A. Tigan*
Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@morrisnichols.com
jtigan@morrisnichols.com
cclark@morrisnichols.com

Elizabeth M. Flanagan (#5891)
COOLEY LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402
bflanagan@cooley.com

Reuben Chen
HanByul Chang
Juan Pablo Gonzalez
Alexandra Leeper
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000
rchen@cooley.com
hanbyul.chang@cooley.com
jgonzalez@cooley.com
aleeper@cooley.com

Attorneys for Defendant
**CYTEK BIOSCIENCES, INC.**

4

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


BECKMAN COULTER, INC.,          )
                                )
            Plaintiff,          )
                                )
      VS.                       )   NO. 24-CV-00945
                                )
CYTEK BIOSCIENCES, INC.,        )
                                )
            Defendant.          )
_____  )


IN-PERSON VIDEOTAPED DEPOSITION OF

CYTEK BIOSCIENCES, INC.,

By and through its Designated Representative,

WENBIN JIANG, PH.D.,

and in his Individual Capacity

WEDNESDAY, NOVEMBER 26, 2025


STENOGRAPHIC REPORTER:  CHRISTA YAN, CSR NO. 14316, RPR

_____

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY
Transcript of Wenbin Jiang, Ph.D., Corporate Designee & Individually
Conducted on November 26, 2025                    2

PERSONAL APPEARANCES:

FOR PLAINTIFF:
     WILMERHALE LLP
     BY:  JEFFREY DENNHARDT, ATTORNEY-AT-LAW
     250 Greenwich Street
     New York, New York 10007
     jeffrey.dennhardt@wilmerhale.com

FOR DEFENDANT:
     COOLEY LLP
     BY:  REUBEN CHEN, ATTORNEY-AT-LAW
          HANBYUL CHANG, ATTORNEY-AT-LAW
     3175 Hanover Street
     Palo Alto, California 94304
     rchen@cooley.com

ALSO PRESENT PERSONALLY:
TOMAS REYES, The Videographer

ALSO PRESENT REMOTELY:
KELLY TODD, WilmerHale
MAGGIE SAWIN, WilmerHale

                    --oOo--

trying to acquire Cytek and instead go to Series C.  That was in the meantime, and certainly, we received -- got this allegation from BD.  So that happened all simultaneously, but in the end, we continued on and finished the Series C financing at a valuation higher than 200 million.

BY MR. DENNHARDT:

Q   Cytek did not provide Danaher any confidential technical information about its products in connection with its 2018 acquisition discussion, right?

A   Signed -- we had an NDA signed, and Cytek provided the information requested by Danaher.  And --

Q   Wasn't my question.

My question was Cytek didn't provide Danaher any confidential technical information about its products in connection with the 2018 acquisition discussions, right?

A   All the information we submitted to Danaher was under NDA.

Q   That wasn't my question, sir.

I'd like you to answer my question, okay?  Do you have that in mind?

A   Yes.

Q   Cytek didn't provide Danaher --

MR. CHEN:  Hold on, just slow down, Counsel.

BY MR. DENNHARDT:

Q    -- any confidential technical information about its products in connection (indecipherable utterance) with the --

THE STENOGRAPHIC REPORTER:  Sorry, can you start over? I'm sorry.

MR. DENNHARDT:  Sure, of course.

MR. CHEN:  And you're getting very excited, Counsel. Just ask your question a little slower.

MR. DENNHARDT:  I'm perfectly calm, my friend.

BY MR. DENNHARDT:

Q    Withdrawn.

Cytek didn't provide Danaher any confidential technical information about its products in connection with the 2018 acquisition discussions, correct?

A    If Danaher did not receive the confidential information of our product, why would Danaher indicate on the letter of intent saying Cytek has an innovative technology and why would Danaher ████████████████ ████████████  So what's the base of Danaher's submission with such a high valuation at that time and without receiving all the information of Cytek's technology?

Q    What confidential information -- strike that.

What confidential technical information did Cytek

04:06:10
04:06:12
04:06:13
04:06:13
04:06:13
04:06:13
04:06:13
04:06:13
04:06:13
04:06:18
04:06:18
04:06:21
04:06:21
04:06:24
04:06:26
04:06:29
04:06:34
04:06:40
04:06:43
04:06:49
04:06:54
04:06:56
04:06:58
04:06:59
04:07:02

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY

Transcript of Wenbin Jiang, Ph.D., Corporate Designee & Individually
Conducted on November 26, 2025                                   269

provide Danaher in 2018?

A     I think all the management presentation we submitted at that time was under NDA, and our design informations are already in the presentation, management presentation, we submitted.

Q     The full scope of confidential information Cytek provided to Danaher in 2018 was the management presentation, right?

MR. CHEN:  Objection; outside the scope, lacks foundation.

THE WITNESS:  I don't recall whether other information are provided.  But clearly, Danaher has received all the information necessary in order to submit a (indecipherable utterance) tender offer.

THE STENOGRAPHIC REPORTER:  I'm sorry, submit a what offer?  Tender offer?  Is that what you said?

THE WITNESS:  Right.

BY MR. DENNHARDT:

Q     Sitting here today, you can't identify for me any other confidential technical information Cytek provided to Danaher other than the management presentation, right?

MR. CHEN:  Objection; lacks foundation.

THE WITNESS:  All the information were provided at that time was under NDA.

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY
Transcript of Wenbin Jiang, Ph.D., Corporate Designee & Individually
Conducted on November 26, 2025

270

BY MR. DENNHARDT:

Q    And it was in the management presentation?

A    At least that's one of the presentations. Whether there would be additional, I don't recall anymore. But we do submitted -- submit many other information to our banker.  But I don't know what information banker has passed over to Danaher, which I don't -- I cannot comment. I don't know.

Q    Did Cytek disclose its technical drawings to Danaher in 2018?

A    I don't recall that.

Q    Did Cytek disclose its R&D materials to Danaher in 2018?

A    But all the architecture was already in the management presentation.

Q    Did Cytek disclose its R&D materials to Danaher in 2018?

A    As I said, all the key architecture design are already in the management presentation.

Q    Sir, sitting here today, can you identify for me whether Cytek disclosed its R&D materials to Danaher in 2018, yes or no?

A    Yes.  We provided all the information necessary for Danaher to make a tender offer.

Q    And did that include R&D materials?

04:08:06
04:08:06
04:08:09
04:08:12
04:08:14
04:08:22
04:08:26
04:08:29
04:08:29
04:08:33
04:08:33
04:08:36
04:08:42
04:08:43
04:08:45
04:08:46
04:08:49
04:08:50
04:08:54
04:08:56
04:08:59
04:09:02
04:09:02
04:09:06
04:09:08

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY
Transcript of Wenbin Jiang, Ph.D., Corporate Designee & Individually
Conducted on November 26, 2025                    271

MR. CHEN:  Objection; asked and answered.    04:09:11

BY MR. DENNHARDT:    04:09:12

Q    Yes or no, simple question.    04:09:12

MR. CHEN:  Asked and answered.  You don't get to dictate how the witness answers your question, Counsel.    04:09:13 04:09:16

MR. DENNHARDT:  You're getting a little excited here, Counsel.  So maybe let's take it down a notch.    04:09:19 04:09:21

BY MR. DENNHARDT:    04:09:23

Q    Sir, did Cytek disclose its R&D materials to Danaher in 2018, yes or no?    04:09:24 04:09:26

MR. CHEN:  Objection; asked and answered.    04:09:28

Go ahead.    04:09:28

THE WITNESS:  The architecture design is part of the R&D material.    04:09:28 04:09:31

BY MR. DENNHARDT:    04:09:32

Q    What was the scope of R&D material Cytek provided to Danaher in 2018?    04:09:33 04:09:35

A    You have them in the management presentation. All the information is there.  Which you can see.  Yeah.    04:09:36 04:09:39

Q    Okay.  Thank you.    04:09:41

Now, BD alleged that Cytek misappropriated its trade secrets and infringed its patents, right?    04:09:42 04:09:54

MR. CHEN:  Objection; outside the scope.    04:09:56

THE WITNESS:  BD did not allege a violation or infringement of BD patents.    04:09:57 04:10:03

REPORTER'S CERTIFICATE

I, Christa Yan, CSR No. 14316, do hereby declare:

That, prior to being examined, the witness named in the foregoing proceeding was by me duly sworn pursuant to Section 30(f)(1) of the Federal Rules of Civil Procedure, and the proceeding is a true record of the testimony given by the witness as accurately as possible.  That said proceeding was taken down by me stenographically at the time therein named and thereafter reduced to text under my direction.

___ That said witness was requested to review the transcript and make any changes to the transcript as a result of that review pursuant to Section 30(e) of the Federal Rules of Civil Procedure.
___ No changes have been provided by the witness during the period allowed.
___ The changes made by the witness are appended to the transcript.
___ No request was made that the transcript be reviewed pursuant to Section 30(e) of the Federal Rules of Civil Procedure.

I further declare that I have no interest in the event of the action.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

WITNESS my hand this 2nd day of December 2025.

_____
Christa Yan, CSR NO. 14316

# EXHIBIT 2

Page 1

UNITED STATES DISTRICT COURT

IN THE DISTRICT OF DELAWARE


BECKMAN COULTER, INC.,              )
                                   )
                    Plaintiff,     )
                                   )
          against                  )
                                   )C.A. No.
CYTEK BIOSCIENCES, INC.,           )1:24-cv-00945-
                                   )CFC-EGT
                    Defendant.     )
---------------------------------------)


- - -


███████████████████████████████


- - -


November 7, 2025 - Friday


9:06 a.m. CET

- - -

video-recorded in-person deposition


taken at:

WILMER HALE

Servcorp - Bastion Tower, Pl, du Champ de Mars 5

1050 Bruxelles, Belgium


MAGNA JOB No. 1425571

Taken remotely before Sherry Yan, CSR 14442, RPR



A P P E A R A N C E S

(in person)


Attorneys for Defendant:

by:  Betsy Flanagan, Esq.

bflanagan@cooley.com

COOLEY LLP

30 South Ninth Street

7th Floor

Minneapolis, MN  55402

T  +1 312 881 6383

M  +1 612 723 2854




Attorneys for Plaintiff:

by Omar Khan, Esq.

Omar.khan@wilmerhale.com

WILMER HALE

7 World Trade Center

New York, New York 10007



     Also present:

     Pat Kirk, Videographer



Page 3

I N D E X

| WITNESS | EXAMINATION | PAGE |
|---|---|---|
| MARIO KOKSCH | by Ms. Flanagan | 8, 261 |
| | by Mr. Khan | 247 |

- - -

E X H I B I T S

KOKSCH

| Exhibit | DESCRIPTION | Page |
|---|---|---|
| 58 | Bates No. BEC-CYTEK-00341863 | |
| | -00341865 | 72 |
| 59 | Bates No. BEC-CYTEK-00341868 | |
| | -00341902 | 84 |
| 60 | Bates No. BEC-CYTEK-00341944 | |
| | -00341947 | 100 |
| 61 | Bates No. BEC-CYTEK-00308444 | |
| | -00308455 | 108 |
| 62 | Bates No. BEC-CYTEK-00308600 | 119 |
| 63 | Bates No. BEC-CYTEK-00308601 | |
| | -00308618 | 121 |
| 64 | Bates No. BEC-CYTEK-00308294 | 134 |
| 65 | Bates No. BEC-CYTEK-00308296 through | |
| | -00308312 | 135 |
| 66 | Bates No. BEC-CYTEK-00308286 | 136 |
| 67 | Bates No. BEC-CYTEK-00341927 | |
| | -00341933 | 150 |





Page 192

Q. ████████████    ███████████████

██ ██████████████████████████████████████

██ ███████████████████

MR. KHAN:  Objection.

THE WITNESS:  That's correct.

Q.  BY MS. FLANAGAN:  In January 2018, personnel from Beckman Coulter had a meeting with personnel from Cytek; correct?

A.  By meeting, are you referring to a Teams video meeting or in-person meeting?

Q.  I am not really sure, the format.  But is it fair to say that in January of 2018 in some format, personnel from Cytek and personnel from Beckman Coulter had a meeting?

A.  That is correct.  We've had a management presentation, and I participated in this one.

Q.  Who else participated in that management presentation?

A.  I cannot write down the list of participants because I simply participated in thousands of meetings over the years.  So it is reasonable to assume that together with me as a Business Unit Leader, we would've had Tim Kerr as the R&D Leader, the Strategy Leader back then -- looked like it was Charlie Purtell.  And maybe the Finance Leader.



Page 193

Q.    Okay.  What do you remember about the content of that meeting in January 2018 with Cytek?

A.    The CEO of Cytek and two or three other members of the leadership team introduced the product portfolio, showed data about the financial performance in the first year -- yeah.  '17 was Aurora.   '18, they showed history a little bit because Cytek had been in existence for 25 years or so, with very different business goals and pretty much reshaped the whole strategy in '15, '16, and the Aurora had been the first product; so there was a financial presentation.

And there was a forecast about how the Cytek team expected the sales of Aurora and other products to evolve over the next couple of years.



Page 194

Q.   You have been handed, I think Exhibit 79, which is an email chain bearing Bates numbers BEC-CYTEK-32916 through 921; is that right?

        (Exhibit 79 marked.)

A.   That's correct.





# CERTIFICATE OF COURT REPORTER

I, Sherry Yan, CSR 14442, RPR, do hereby certify that I took the stenographic notes of the foregoing statement under oath/affirmation and that the transcript thereof is a true and accurate record transcribed to the best of my skill and ability.

I further certify that I am neither counsel for, related to, nor employed by any of the parties to the action in which the deposition was taken, and that I am not a relative or employee of any attorney or counsel employed by the parties hereto, nor financially or otherwise interested in the outcome of the action.

Signed .....................

Sherry Yan

Date:   Monday, November 17, 2025

# EXHIBIT 3



**CONFIDENTIAL**

February 14, 2018

Wenbin Jiang
Chief Executive Officer
Cytek Biosciences, Inc.
46107 Landing Parkway
Fremont, CA 94538

Dear Dr Jiang:

Thank you for providing us an opportunity to evaluate a potential transaction involving Cytek Biosciences, Inc. ("**Cytek**" or the "**Company**"). We are pleased to submit this non-binding indication of interest ("**IOI**") for the Company.

Beckman Coulter Life Sciences believes a transaction with Cytek is compelling and will complement our business and enhance the value proposition we offer to our customers. We believe that the Company's innovative cellular analysis platforms, Aurora and Athena, with their broad range of spectra and resulting multiplexing capability provide strong customer value. Our global commercial infrastructure will accelerate the growth potential of your company and product platforms.

Our Life Sciences Platform is a global group of companies under the Danaher umbrella which brings strong brands, channels and technologies across customer segments and is a primary area of investment for Danaher. We have grown the Life Sciences platform to approximately $5.7 billion of revenue organically and inorganically through acquisitions, including many well-known companies and brands such as Beckman Coulter, Leica Microsystems, Sciex, Molecular Devices, Pall and Phenomenex, to become the global leader in life sciences.

We believe we are an attractive strategic partner for Cytek. We are a long-term owner and our track record demonstrates that we preserve and grow businesses that we acquire, building upon those business's unique competitive advantages. We also anticipate that the Company's management and employees will find their opportunities for personal growth and career development greatly expanded as part of Beckman Coulter and Danaher. We are committed to building a world-class team in all our businesses, so Company employees would have opportunities not only within the Company but also across all of Danaher and its various businesses and markets.

Our non-binding offer to acquire the Company on a cash-free, debt-free basis, is for aggregate potential consideration of ▮▮▮▮▮▮▮▮▮▮▮▮ consisting of upfront consideration and contingent consideration based on mutually agreed milestones. This offer is based on the information in the Management Presentation. Our offer also presumes (i) that the transaction would be structured in a manner that is tax-efficient for us and (ii) that the Company is transferred with an adequate, normalized level of working capital.

CONFIDENTIAL

CYTEK_0000882748

Wenbin Jiang
Cytek Biosciences, Inc.
February 14, 2018
Page 2 of 2

We would fund the purchase price from cash on hand, and our offer would not be subject to any contingency related to financing.

We are prepared to move quickly. Our due diligence would be customary in scope, and we would expect to be able to leverage our own team's familiarity with the relevant technology and trends in the industry.

We believe the management and employees of the Company are critical to the future success of the organization. In the subsequent stage of this process, we look forward to discussing optimal strategies for retaining the Company's key employees.

This proposal has the support of our senior management, but is subject to our completion of customary due diligence with results that are satisfactory to us, the negotiation and execution of mutually acceptable transaction documents, the approval of the transaction by our Board of Directors and any necessary regulatory approvals.

Of course, unless and until a definitive agreement regarding a potential transaction is negotiated and executed between the parties, neither party shall be obligated with respect to any transaction and no obligation or rights or liabilities of any kind whatsoever are created (or shall be deemed to be created) as a result of this letter, or any other written or oral statement or any further actions by the parties, except in the case of this letter for the provisions contained in this paragraph. Accordingly, either party is free to abandon discussions regarding the potential transaction at any time for any reason or for no reason and the decision of either party to so abandon discussions shall not be subject to legal challenge by the other. No part of this letter can be waived or amended without our prior written consent. For purposes of this paragraph, the term "definitive agreement" does not include this letter, an executed letter of intent or any other preliminary written agreement nor does it include any written or verbal acceptance of an offer or bid.

Please feel free to contact me directly at (202) 419-7615 if you have any questions regarding this proposal.

We look forward to hearing from you.

Very truly yours,

Elizabeth A. Cheever
Corporate Development

# EXHIBIT 4

Case 1:24-cv-00945-CFC    Document 420-5    Filed 08/06/26    Page 115 of 244 PageID #: 40736



Highly Confidential - Outside Attorneys' Eyes Only



Highly Confidential - Outside Attorneys' Eyes Only



Highly Confidential - Outside Attorneys' Eyes Only

MILOSEVICH-00000139

Highly Confidential - Outside Attorneys' Eyes Only

MILOSEVICH-00000140

# EXHIBIT 5



3

# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BECKMAN COULTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> CYTEK BIOSCIENCES, INC., <br><br> Defendant. | C.A. No. 25-mc-157 |

**CYTEK'S OPPOSITION TO NON-PARTY
DANAHER CORPORATION'S MOTION TO QUASH
<u>DEPOSITION AND DOCUMENT SUBPOENA</u>**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKROUND ........................................... 2

    A.    The underlying litigation and the parties ................................................. 2

    B.    Danaher's pre-suit dealings with and explored acquisition of Cytek ................... 2

    C.    Cytek's subpoenas to Danaher and Danaher's response ....................................... 4

III.  LEGAL STANDARD ...................................................................................... 6

IV.   ARGUMENT .................................................................................................... 7

    A.    Cytek has proposed narrowing the scope of its discovery requests to information specifically relating to Danaher's explored acquisition of Cytek in 2018 and 2021 ................................................................................ 7

    B.    Cytek's discovery requests seek information relevant to its noninfringement and no willfulness defenses, as well as damages ..................... 10

    C.    Cytek's narrowed requests of Danaher are not duplicative or cumulative of discovery sought or received from Plaintiff Beckman Coulter ........................... 13

    D.    Cytek's subpoenas were timely served and provided a reasonable and flexible time for compliance .................................................................................. 15

    E.    Danaher fails to show the subpoenas are unduly burdensome ............................. 17

V.    CONCLUSION ................................................................................................ 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
     300 F.R.D. 406 (C.D. Cal. 2014)........................................................................17

*Bridgebuilders v. Lexington Ins. Co.*,
     No. 1:21-CV-1436-RCL, 2023 WL 7129990 (D.D.C. Mar. 24, 2023) ...................13

*In re Denture Cream Prod. Liab. Litig.*,
     292 F.R.D. 120 (D.D.C. 2013)............................................................................13

*Flanagan v. Wyndham Int'l Inc.*,
     231 F.R.D. 98 (D.D.C. 2005)..............................................................7, 10, 13, 17

*Halo Elecs., Inc. v. Pulse Elecs.*,
     579 U.S. 93 (2016).............................................................................................13

*Jewish War Veterans of the United States of Am., Inc. v. Gates*,
     506 F.Supp.2d 30 (D.D.C. 2007) ..........................................................................7

*MAP Co. v. Lebanese Arak Corp.*,
     No. CV-1605039-ABRAOX, 2017 WL 10434017 (C.D. Cal. Oct. 26, 2017)........17

*Natera, Inc. v. CareDx, Inc.*,
     No. 23-MC-80117-LJC, 2023 WL 3763808 (N.D. Cal. May 31, 2023) ...............17

*Nguyen v. Fraunhofer-Gesellschaft Zur Förderung der Angewandten Forschung
     E.V.*,
     No. MC 21-0014 (CKK), 2021 WL 5800741 (D.D.C. Dec. 7, 2021) ...........7, 11, 14

*Northrop Corp. v. McDonnell Douglas Corp.*,
     751 F.2d 395 (D.C. Cir. 1984) ............................................................................10

*Stati v. Republic of Kazakhstan*,
     No. CV 14-1638 ABJ/DAR, 2020 WL 3259244 (D.D.C. June 5, 2020) ...............19

*Sterne Kessler Goldstein & Fox, PLLC v. Eastman Kodak Co.*,
     276 F.R.D. 376 (D.D.C. 2011)..............................................................................6

*U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.*,
     301 F.R.D. 20 (D.D.C. 2014)........................................................................ *passim*

## I.    INTRODUCTION

Defendant Cytek Biosciences, Inc. ("Defendant" or "Cytek") hereby responds in opposition to petitioner Danaher Corporation's ("Petitioner" or "Danaher") Motion to Quash Deposition and Document Subpoena.

Cytek timely served document and deposition subpoenas on Danaher—the parent company of Plaintiff Beckman Coulter, Inc. ("BEC") in BEC's underlying patent litigation against Cytek. Danaher is not an uninvolved party. To the contrary, Danaher has been driving the patent litigation from its beginning,[1] and Beckman Coulter and Danaher insisted on having Danaher's Chief Counsel Global Litigation & Investigations and Danaher's Senior Counsel - M&A IP as two of its three designated in-house counsel managing the litigation approved to access Cytek's "Highly Confidential" information under the protective order.[2] Cytek's subpoenas seek relevant discovery from Danaher, including information relating to Danaher's explored acquisition of Cytek in 2018 and 2021, in support of Cytek's noninfringement and no willfulness defenses.

Danaher comes nowhere close to satisfying its "particularly heavy" burden to show that the subpoenas are oppressive or unduly burdensome and should be quashed in their entirety. To the contrary, the subpoenas were and are reasonably tailored to elicit relevant, non-duplicative discovery from Danaher. And, rather than sharing the basis for believing the subpoenas posed an undue burden and working with Cytek to limit the subpoenas' scope in any regard, Danaher moved to quash. Moreover, after Danaher filed its motion to quash, Cytek proposed narrowing the subpoenas' scope to concern just two specific events in 2018 and 2021 relating to Danaher's explored acquisition of Cytek, further lessening the burden on Danaher, and completely mooting

---

[1] *See* Ex. G (email correspondence between in-house counsel for Danaher and Cytek concerning the commencement of the underlying patent litigation); Flannagan Decl., ¶18
[2] *See* Ex. H; Flanagan Decl., ¶19.

Dated: November 5, 2025                  Respectfully submitted,

                                         COOLEY LLP

                                         By: */s/ Isha Agarwal*
                                         Isha Agarwal (D.C. BAR NO. 1743501)
                                         Adam Pivovar (D.C. Bar No. 1015247)
                                         Dustin M. Knight (D.C. Bar No.1656236
                                         Rosalynd D. Upton (D.C. Bar No. 90016059)
                                         David Yun (D.C. Bar No. 90006261)
                                         COOLEY LLP
                                         1299 Pennsylvania Avenue NW,
                                         Suite 700
                                         Washington, DC 20004
                                         (202) 842-7800
                                         igarwal@cooley.com
                                         apivovar@cooley.com
                                         dknight@cooley.com
                                         rupton@cooley.com
                                         dyun@cooley.com

                                         Elizabeth M. Flanagan
                                         COOLEY LLP
                                         30 S. 9th Street, 7th Floor
                                         Minneapolis, MN 55402
                                         bflanagan@Cooley.com

                                         Reuben Chen
                                         HanByul Chang
                                         Juan Pablo Gonzalez
                                         COOLEY LLP
                                         3175 Hanover Street
                                         Pal Alto, CA 94304
                                         (650) 843-5000
                                         rchen@cooley.com
                                         amwood@cooley.com
                                         HanByul.chang@cooley.com
                                         jgonzalez@cooley.com

                                         *Counsel for Defendant*
                                         *Cytek Biosciences, Inc.*

21

# EXHIBIT 7

| | |
|---|---|
| **From:** | McGuffin, Asher S. <Asher.McGuffin@wilmerhale.com> |
| **Sent:** | Monday, December 16, 2024 3:39 PM |
| **To:** | Chen, Reuben |
| **Cc:** | Upton, Rozzi D; Pivovar, Adam; Dennhardt, Jeffrey; Knight, Dustin M; Flanagan, Betsy; Yun, David Y; Feliciano, Loly; JTigan@morrisnichols.com; Clark, Cameron; Jacobs, Karen; Khan, Omar; Matlock-Colangelo, Lauren E.; cottrell@rlf.com; farnan@rlf.com; haynes@rlf.com |
| **Subject:** | RE: Beckman Coulter v. Cytek, No. 24-945 (D. Del.) - Protective Order |
| **Attachments:** | Mary Britton - LinkedIn.pdf; Michael Levy - LinkedIn.pdf; Anne Murphy - LinkedIn.pdf |

**[External]**

Reuben,

We have reviewed the cases you sent, and they appear to be cases in which there was no dispute as to the inclusion of a vetting procedure for in-house attorneys.  We don't view those as particularly meaningful because we are aware of dozens of protective orders in which the parties agreed not to include vetting for in-house attorneys and/or limited vetting to in-house non-attorneys.

That said, so that we may resolve the parties' disputes over the Protective Order, please find below, for your consideration, further information regarding Beckman Coulter's intended in-house attorney designees, consistent with your proposed (but not agreed to) Paragraph 38(a)(ii).  Please also find attached another copy of each of their LinkedIn profiles for your reference.  So that we may avoid bringing the remaining disputes to the Court and consistent with the terms you proposed, please raise any objections and all bases for those objections to any of Beckman Coulter's intended attorney designees promptly and, given that Beckman Coulter first disclosed its designees over two weeks ago, no later than close of business on Wednesday, Dec 18.  If Cytek feels it needs another 7 days to decide whether to raise any objections and all bases for those objections to Beckman Coulter's designees, we would not oppose Cytek's motion for a further extension.

As we have previously noted, we don't think it makes sense to hide the ball on the in-house attorneys that each side intends to designate.  Each of our designees plainly falls within the category of in-house attorneys who are not competitive decisionmakers for any purpose, much less in the area of flow cytometry hardware.  And, as the rest of the proposed Protective Order contemplates, each of these attorneys has agreed to be bound by the prosecution bar.  Once we know whether you have objections to any of our designees, and if so all bases for those objections, we will be in a position to either agree to your proposal, propose further changes, or, if necessary, bring this dispute to the Court.

Best,

Asher S. McGuffin

***

1

Mary Britton is Vice President, Chief Counsel Global Litigation and Investigations at Danaher Corporation in Washington, D.C.  Her role is to provide legal advice to Danaher and its subsidiaries.  Specifically, Ms. Britton supervises and oversees litigation and investigations for Danaher and its subsidiaries globally.  Her role does not involve competitive decision making or day-to-day operations for Danaher or its subsidiaries.  For example, Ms. Britton's role does not entail providing business advice on pricing, product design, sales, marketing, or other business matters.  Ms. Britton is not an officer or director of Danaher or any of its subsidiaries.

Michael Levy is Senior Counsel – M&A IP at Danaher Corporation., located in New Jersey.  His role is to provide legal advice to Danaher and its subsidiaries.  Specifically, Mr. Levy's primary role is to assist in IP due diligence related to M&A projects, which entails providing legal advice on the IP position(s) of any potential target and evaluation and management of IP risks associated with particular investment opportunities.  The role does not involve choosing what investment targets to pursue, making decisions as to whether to invest in particular opportunities, or strategic planning concerning investment priorities looking forward.  Mr. Levy also assists Ms. Britton in the day-to-day management and supervision of IP litigation involving Danaher and its subsidiaries.  His role does not involve competitive decision making or day-to-day operations for Danaher or its subsidiaries.  For example, Mr. Levy's role does not entail providing business advice on pricing, product design, sales, marketing, or other business matters.  Mr. Levy is not an officer or director of Danaher or any of its subsidiaries.

Anne Murphy is Chief IP Counsel of Beckman Coulter Life Sciences at Beckman Coulter, Inc., located in Indiana.  In that role, she provides legal advice to the Beckman Coulter Life Sciences unit of Beckman Coulter, Inc.  Specifically, Ms. Murphy provides IP advice to Beckman Coulter Life Sciences and she manages a team of patent attorneys responsible for conducting IP clearance for new product development projects, reviewing marketing materials for IP compliance, managing trademarks, patent prosecution, and portfolio maintenance.  Ms. Murphy will take appropriate steps to comply the prosecution bar in this case, including recusing herself from any prosecution work in the areas defined in the protective order.  Ms. Murphy's role does not involve competitive decision making or day-to-day operations for Beckman Coulter Life Sciences or Beckman Coulter, Inc.  For example, Ms. Murphy's role does not entail providing business advice on pricing, product design, sales, marketing, or other business matters.  Ms. Murphy is also an Assistant Secretary of Beckman Coulter, Inc., which entails executing ministerial duties for that legal entity, such as executing powers of attorney for law firms hired to perform patent prosecution and providing the corporate seal when necessary to enact decisions made by officers and authorized management.

**Asher S. McGuffin | WilmerHale**
60 State Street
Boston, MA 02109 USA
+1 617 526 6201 (t)
+1 617 526 5000 (f)
asher.mcguffin@wilmerhale.com

**Please consider the environment before printing this email.**

This email message and any attachments are being sent by Wilmer Cutler Pickering Hale and Dorr LLP, are confidential, and may be privileged. If you are not the intended recipient, please notify us immediately—by replying to this message or by sending an email to postmaster@wilmerhale.com—and destroy all copies of this message and any attachments. Thank you.

For more information about WilmerHale, please visit us at http://www.wilmerhale.com.

**From:** Chen, Reuben <rchen@cooley.com>
**Sent:** Wednesday, December 11, 2024 12:58 PM
**To:** McGuffin, Asher S. <Asher.McGuffin@wilmerhale.com>
**Cc:** Upton, Rozzi D <rupton@cooley.com>; Pivovar, Adam <apivovar@cooley.com>; Dennhardt, Jeffrey <Jeffrey.Dennhardt@wilmerhale.com>; Knight, Dustin M <dknight@cooley.com>; Flanagan, Betsy <bflanagan@cooley.com>; Yun, David Y <dyun@cooley.com>; Feliciano, Loly <lfeliciano@cooley.com>; JTigan@morrisnichols.com; Clark, Cameron <cclark@morrisnichols.com>; Jacobs, Karen <KJacobs@morrisnichols.com>; Khan, Omar <Omar.Khan@wilmerhale.com>; Matlock-Colangelo, Lauren E. <Lauren.Matlock-Colangelo@wilmerhale.com>; cottrell@rlf.com; farnan@rlf.com; haynes@rlf.com
**Subject:** RE: Beckman Coulter v. Cytek, No. 24-945 (D. Del.) - Protective Order

**EXTERNAL SENDER**

Asher,

Another extension is fine with us.  We don't think the parties need until December 23 though.  Given the holidays, let's set the deadline for Friday, December 20.

Best,
Reuben

**From:** McGuffin, Asher S. <Asher.McGuffin@wilmerhale.com>
**Sent:** Tuesday, December 10, 2024 9:52 PM
**To:** Chen, Reuben <rchen@cooley.com>
**Cc:** Upton, Rozzi D <rupton@cooley.com>; Pivovar, Adam <apivovar@cooley.com>; Dennhardt, Jeffrey <Jeffrey.Dennhardt@wilmerhale.com>; Knight, Dustin M <dknight@cooley.com>; Flanagan, Betsy <bflanagan@cooley.com>; Yun, David Y <dyun@cooley.com>; Feliciano, Loly <lfeliciano@cooley.com>; JTigan@morrisnichols.com; Clark, Cameron <cclark@morrisnichols.com>; Jacobs, Karen <KJacobs@morrisnichols.com>; Khan, Omar <Omar.Khan@wilmerhale.com>; Matlock-Colangelo, Lauren E. <Lauren.Matlock-Colangelo@wilmerhale.com>; cottrell@rlf.com; farnan@rlf.com; haynes@rlf.com
**Subject:** RE: Beckman Coulter v. Cytek, No. 24-945 (D. Del.) - Protective Order

**[External]**

Reuben,

Thanks for providing these cases—we will take a look.  In the meantime, we are not available at noon ET.  Since our schedules don't seem to line up tomorrow, let's go ahead and file another extension to give us time to work this out.  We would propose a 10-day extension, to December 23, so we can get this done before Christmas.  Let us know if that works for you, and Delaware counsel can coordinate filing the extension.

Thanks,

**Asher S. McGuffin | WilmerHale**
60 State Street
Boston, MA 02109 USA
+1 617 526 6201 (t)
+1 617 526 5000 (f)

# EXHIBIT 8

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BECKMAN COULTER, INC., | |
| Plaintiff, | C.A. No. 24-0945-CFC-EGT |
| v. | **DEMAND FOR JURY TRIAL** |
| CYTEK BIOSCIENCES, INC., | |
| Defendant. | |

**PLAINTIFF'S SECOND AMENDED DISCLOSURE OF ASSERTED
CLAIMS AND INFRINGEMENT CONTENTIONS**

Plaintiff Beckman Coulter, Inc. ("Beckman Coulter" or "Plaintiff") hereby submits the following Second Amended Disclosure of Asserted Claims and Infringement Contentions ("Infringement Contentions") with respect to Defendant Cytek Biosciences, Inc. ("Cytek" or "Defendant") for U.S. Patent Nos. 10,330,582 (the "'582 Patent"), 11,703,443 (the "'443 Patent"), 12,174,106 (the "'106 Patent"),[1] and 12,174,107 (the "'107 Patent") (collectively, the "Asserted Patents").

---

[1] Pursuant to the Court's Oral Order at the Supplemental Markman Hearing (9/17/2025 Hr'g Tr. at 206:16-19), on October 1, 2025 Plaintiff elected 16 Asserted Claims, which did not include any Asserted Claims from the '106 Patent. Plaintiff made this election solely because the Court has ordered it over Beckman Coulter's objection, and Plaintiff reserves the right to amend, substitute, and/or supplement its election of claims as the case progresses to assert one or more claims from the '106 Patent.

1

I.    **PRELIMINARY STATEMENT**

Plaintiff's Infringement Contentions are based on information reasonably available to Plaintiff at this time.  Discovery is ongoing, and Plaintiff's investigation into this matter is also ongoing.  Plaintiff reserves the right to supplement or amend its Infringement Contentions based on additional information gathered during discovery, including, but not limited to, additional productions, expert opinions; and/or samples of Cytek's Accused Instrumentalities.  Plaintiff additionally reserves the right to submit expert opinions and analyses of Cytek's infringement in accordance with the schedule for expert discovery set by the Court.

Additionally, Cytek's production of core technical documents pursuant to Paragraph 2 of the Scheduling Order (D.I. 25, 55) was and is substantially deficient and failed to comply with the Court's order.  Further, Cytek's Document Production Accompany Invalidity Contentions, and its document production more generally, was and is also substantially deficient because, for example, it failed to provide all required "source code, specifications, schematics, flow carts, artwork, formulas, or other documentation sufficient to show operation of any aspects or elements of [each] Accused Instrumentality" pursuant to Paragraph 6(a) of the Scheduling Order (D.I. 25, 55) and because Defendant failed to substantially complete its production by the August 22, 2025 deadline for substantial completion of document production

2

Patents by the Accused Instrumentalities. The exhibits specifically identify each infringing limitation practiced by the Accused Instrumentalities. Citations to particular documents or portions of documents in the attached exhibits are representative and non-exhaustive, including in view of ongoing deficiencies in Cytek's productions, including without limitation Cytek's core technical document production and document production accompanying invalidity contentions, as discussed above. For example, where a claim limitation is implemented in the same or substantially the same way for each version and/or workflow of the Accused Instrumentalities, Plaintiff provides an exemplary illustration and description setting forth how the Accused Instrumentalities satisfy the claim limitation, without repeating the same illustration or description for each version and/or workflow of each Accused Instrumentality. For the avoidance of doubt, a reference to a page of a document is a reference to the entire document and to every page of that document, which is expressly incorporated by reference herein and in Exhibits 1-3. For the further avoidance of doubt, a reference to the name of a file produced natively is a reference to every file produced natively with the same name and every version of the native files named, which are expressly incorporated by reference herein and in Exhibits 1-3.

7

Defendant has and continues to infringe each limitation of each Asserted Claim of the Asserted Patents directly, literally, and/or by equivalents under § 271(a). By making, importing, offering to sell, selling, performing research, development, and testing, and/or using the Accused Instrumentalities in the United States, Defendant infringes the Asserted Claims of the Asserted Patents.

Defendant has actively induced and continues to actively induce infringement of each Asserted Claim of each Asserted Patent under 35 U.S.C. § 271(b). Defendant has long had knowledge of the Asserted Patents and of its infringement. *See, e.g.,* D.I. 1 at ¶¶ 16-23, 29-31, 37-39; D.I. 16 at ¶¶ 18, 22, Counterclaim ¶ 11; D.I. 42 at ¶¶ 18-27, 32-34, 40-42, 48-50, 56-58; D.I. 48 at ¶¶ 20, 24, Counterclaim ¶ 11; Defendant Cytek Biosciences, Inc.'s Second Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories (Nos., 5, 7) at 10-11. Defendant knew and intended that its making, offering for sale, sale, and importing of the Accused Instrumentalities and their subsequent use according to Defendant's guides, manuals, instructions, and marketing materials would infringe the Asserted Claims of the Asserted Patents. *See, e.g.,* CYTEK_0000011064; CYTEK_0000011098;

CYTEK_0000005641; CYTEK_0000021502.[3]  Defendant provides customers with the Accused Instrumentalities, along with instructions for use, that, when followed in an intended manner and in a normal mode of operation, Defendant knew infringed the Asserted Claims or was willfully blind to such infringement.  *See, e.g.*, CYTEK_0000008383, Cytek® Aurora CS User's Guide (providing instructions for using the Cytek Aurora flow cytometer); BEC-Cytek-00009094, Cytek® Aurora User's Guide (providing instructions for using the Cytek Aurora CS cell sorter); CYTEK_0000008909, Cytek® Northern Lights-CLC User's Guide (providing instructions for using the Cytek Aurora Northern Lights-CLC flow cytometer)[4]; CYTEK_0000009029, Cytek® Northern Lights User's Guide (providing instructions for using the Cytek Northern Lights flow cytometer); CYTEK_0000009149, Cytek® Northern Lights (NL)-CLC User's Guide (providing instructions for using the Cytek Northern Lights (NL)-CLC flow cytometer)[5]; CYTEK_0000021502, Cytek® Aurora

---

[3] *See also, e.g.*, CYTEK_0000005647; CYTEK_0000005644; CYTEK_0000005656;  CYTEK_0000008584; CYTEK_0000009783; CYTEK_0000009784; CYTEK_0000009785; CYTEK_0000009786; CYTEK_0000009845; CYTEK_0000009846; CYTEK_0000009847; CYTEK_0000009848; CYTEK_0000009849;  CYTEK_0000009921; CYTEK_0000009946; CYTEK_0000010012; CYTEK_0000010038.
[4]  *See also, e.g.*, CYTEK_0000009557, Cytek® Northern Lights™-CLC User's Guide.
[5] *See also, e.g.*, CYTEK_0000009271; CYTEK_0000009435.

Evo™ User's Guide (providing instructions for using the Cytek Aurora Evo flow cytometer); CYTEK_0000002061, Aurora™ Service Manual (providing instructions for using the Cytek Aurora™)[6]; CYTEK_0000002507, Northern Lights NL-CLC Service Manual (providing instructions for using the Northern Lights NL-CLC); CYTEK_0000005338, Plate Loader Service Manual (providing instructions for the Plate Loader); CYTEK_0000005664, Aurora CS Service Manual Guide (providing instructions for using the Aurora CS)[7]; CYTEK_0000008311, Why Use Cytek Aurora & Aurora CS Systems (encouraging use of Aurora and Aurora CS).[8] Further, the Accused Instrumentalities function in the same manner as the claimed inventions. *Compare* '582 Patent at FIG. 25 (illustrating an optical subsystem), '443

---

[6] *See also, e.g.*, CYTEK_0000002264; CYTEK_0000003882; CYTEK_0000005697.

[7] *See also, e.g.*, CYTEK_0000005673; CYTEK_0000005706; CYTEK_0000005737; CYTEK_0000005880; CYTEK_0000006544; CYTEK_0000006655; CYTEK_0000006767; CYTEK_0000007697; CYTEK_0000007824; CYTEK_0000007952; CYTEK_0000007998; CYTEK_0000008199; CYTEK_0000008235; CYTEK_0000008237; CYTEK_0000008284.

[8] *See also, e.g.*, CYTEK_0000008312; CYTEK_0000008328; CYTEK_0000008335; CYTEK_0000008347; CYTEK_0000008359; CYTEK_0000008371; CYTEK_0000008583; CYTEK_0000008831; CYTEK_0000008838; CYTEK_0000008850; CYTEK_0000008862; CYTEK_0000008874; CYTEK_0000008885; CYTEK_0000008897; CYTEK_0000009725; CYTEK_0000009736; CYTEK_0000009747; CYTEK_0000009758; CYTEK_0000009771.

Patent at FIG. 25 (same), '106 Patent at FIG. 25 (same), '107 Patent at FIG. 25 (same) with BEC-CYTEK-00009226 at 2 ("Light emitted from the sample is collected and passes through the optical filter-based coarse wavelength division multiplexing (CWDM) demultiplexer arrays on the Cytek Aurora and Northern Lights cytometers."). Defendant provides its customers with the Accused Instrumentalities, user guides, manuals, instructions, and marketing materials despite knowledge of, or willful blindness to, the Asserted Patents and knowledge of, or willful blindness to, the fact that the induced acts infringe one or more of the Asserted Claims. Such conduct by Defendant is intended to cause, and has resulted in, past and ongoing direct infringement of the Asserted Patents by Cytek's customers in the United States.

Defendant has contributed and continues to contribute to the infringement of the Asserted Claims of the Asserted Patents under 35 U.S.C. § 271(c). Defendant has had knowledge of, or willful blindness to, the Asserted Patents and of its infringement. *See, e.g.*, D.I. 1 at ¶¶ 16-23, 29-31, 37-39; D.I. 16 at 18, 22, Counterclaim ¶ 11; D.I. 42 at ¶¶ 18-27, 32-34, 40-42, 48-50, 56-58; D.I. 48 at ¶¶ 20, 24, Counterclaim ¶ 11; Defendant Cytek Biosciences, Inc.'s Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories (Nos., 5, 7) at 10-11. Defendant has designed the Accused Instrumentalities and/or component(s)

11

thereof to specifically be used in the manner recited in the Asserted Claims of the Asserted Patents. As such, the Accused Instrumentalities and/or component(s) thereof comprise a material part of the patented inventions, are specifically designed to be used according to the Asserted Claims of the Asserted Patents and are especially made and adapted for use in a manner that infringes the Asserted Claims of the Asserted Patents. Defendant thus offers for sale and sells the Accused Instrumentalities and/or component(s) thereof within the United States knowing these products are especially made and adapted for use in a manner that infringes the Asserted Claims of the Asserted Patents. Further, these products are not staple articles of commerce suitable for substantial non-infringing use. Additionally, Defendant offers to sell and/or sells the Accused Instrumentalities and/or component(s) thereof to third parties, including Defendant's customers, who use Defendant's products in a manner that directly infringes the Asserted Claims of the Asserted Patents.

Defendant has infringed and continues to infringe the Asserted Claims of the Asserted Patents under 35 U.S.C. § 271(f)(1). Defendant has had knowledge of, or willful blindness to, the Asserted Patents and of its infringement. *See, e.g.*, D.I. 1 at ¶¶ 16-23, 29-31, 37-39; D.I. 16 at ¶¶ 18, 22, Counterclaim ¶ 11; D.I. 42 at ¶¶ 18-27, 32-34, 40-42, 48-50, 56-58; D.I. 48 at ¶¶ 20, 24, Counterclaim ¶ 11; Defendant Cytek

12

Biosciences, Inc.'s Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories (Nos., 5, 7) at 10-11. Defendant knows that to the extent it supplies all or a substantial portion of the components of the Accused Instrumentalities, which are uncombined in whole or in part, in or from the United States to actively induce the combination of such components outside the United States Defendant is supplying all or substantial portion of the component(s) of the inventions claimed in the Asserted Claims of the Asserted Patents in a manner that infringes the claims. *See, e.g.,* CYTEK_0000008584 at 8604 ███████████████████ ██████████████████; CYTEK_0000009785 (identifying components of ███████████████████████; Defendant Cytek Biosciences, Inc.'s Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories (Nos. 1-3) at 5-14 (describing "sales and distribution channel(s)" and "supply chain"

13

for the Accused Products).[9]  Defendant further understands that the combination of the supplied component(s) according to Defendant's guides, instructions, manuals and marketing materials infringes the Asserted Claims of the Asserted Patents.  *See, e.g.*, CYTEK_0000008383, Cytek® Aurora CS User's Guide (providing instructions for using the Cytek Aurora flow cytometer); BEC-Cytek-00009094, Cytek® Aurora User's Guide (providing instructions for using the Cytek Aurora CS cell sorter); CYTEK_0000008909, Cytek® Northern Lights-CLC User's Guide (providing instructions for using the Cytek Aurora Northern Lights-CLC flow cytometer)[10]; CYTEK_0000009029, Cytek® Northern Lights User's Guide (providing instructions for using the Cytek Northern Lights flow cytometer); CYTEK_0000009149, Cytek® Northern Lights (NL)-CLC User's Guide (providing instructions for using the Cytek

---

[9] *See also, e.g.*, CYTEK_0000011064;CYTEK_0000009783; CYTEK_0000009784; CYTEK_0000009786; CYTEK_0000009845; CYTEK_0000009846; CYTEK_0000009847; CYTEK_0000009848; CYTEK_0000009849;  CYTEK_0000009921; CYTEK_0000009946; CYTEK_0000010012; CYTEK_0000011212; CYTEK_0000011214; CYTEK_0000010038; CYTEK_0000011216; CYTEK_0000011217; CYTEK_0000011218; CYTEK_0000011219; CYTEK_0000011224; CYTEK_0000011230; CYTEK_0000010062; CYTEK_0000010972; CYTEK_0000010634; CYTEK_0000010097; CYTEK_0000010599; CYTEK_0000010549; CYTEK_0000010584; CYTEK_0000010276; CYTEK_0000011261; CYTEK_0000011263; CYTEK_0000011064.

[10]  *See also, e.g.*, CYTEK_0000009557-0000009724, Cytek® Northern Lights™-CLC User's Guide.

Northern Lights (NL)-CLC flow cytometer)[11]; CYTEK_0000021502, Cytek® Aurora Evo™ User's Guide (providing instructions for using the Cytek Aurora Evo flow cytometer); CYTEK_0000002061, Aurora™ Service Manual (providing instructions for using the Cytek Aurora™)[12]; CYTEK_0000002507, Northern Lights NL-CLC Service Manual (providing instructions for using the Northern Lights NL-CLC); CYTEK_0000005338, Plate Loader Service Manual (providing instructions for the Plate Loader); CYTEK_0000005664, Aurora CS Service Manual Guide (providing instructions for using the Aurora CS)[13]; CYTEK_0000008311, Why Use Cytek Aurora & Aurora CS Systems (encouraging use of Aurora and Aurora CS).[14]

---

[11] *See also, e.g.*, CYTEK_0000009271; CYTEK_0000009435.

[12] *See also, e.g.*, CYTEK_0000002264; CYTEK_0000003882; CYTEK_0000005697.

[13] *See also, e.g.*, CYTEK_0000005673; CYTEK_0000005706; CYTEK_0000005737; CYTEK_0000005880; CYTEK_0000006544; CYTEK_0000006655; CYTEK_0000006767; CYTEK_0000007697; CYTEK_0000007824; CYTEK_0000007952; CYTEK_0000007998; CYTEK_0000008199; CYTEK_0000008235; CYTEK_0000008237; CYTEK_0000008284.

[14] *See, e.g.*, CYTEK_0000008312; CYTEK_0000008328; CYTEK_0000008335; CYTEK_0000008347; CYTEK_0000008359; CYTEK_0000008371; CYTEK_0000008583; CYTEK_0000008831; CYTEK_0000008838; CYTEK_0000008850; CYTEK_0000008862; CYTEK_0000008874; CYTEK_0000008885; CYTEK_0000008897; CYTEK_0000009725; CYTEK_0000009736; CYTEK_0000009747; CYTEK_0000009758; CYTEK_0000009771.

█████████████████████████████████████████

Additionally, to the extent supplied abroad, Defendant supplies to customers the Accused Instrumentalities and/or component(s) thereof along with directions and instructions for use that, when followed in the manner intended by Defendant and in a normal mode of operation, Defendant knows, or is willfully blind to, and intends actively induce consumers to combine the component(s) in a manner that would infringe the Asserted Claims of the Asserted Patents if such combination occurred in the United States. *See, e.g.,* CYTEK_0000008584  at 8604 ███████████ ██████████████████████████████████████; CYTEK_0000009785 (identifying components of the ████████████████████████; Defendant Cytek Biosciences, Inc.'s Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories (Nos. 1-3) at 5-14 (describing "sales and distribution channel(s)" and "supply chain" for the Accused Products).[15]   Such conduct by

---

[15] *See also, e.g.,* CYTEK_0000011064; CYTEK_0000009783;
CYTEK_0000009784; CYTEK_0000009786; CYTEK_0000009845;
CYTEK_0000009846; CYTEK_0000009847; CYTEK_0000009848;
CYTEK_0000009849;  CYTEK_0000009921; CYTEK_0000009946;
CYTEK_0000010012; CYTEK_0000011212; CYTEK_0000011214;
CYTEK_0000010038; CYTEK_0000011216; CYTEK_0000011217;
CYTEK_0000011218; CYTEK_0000011219; CYTEK_0000011224;
CYTEK_0000011230; CYTEK_0000010062; CYTEK_0000010972;
CYTEK_0000010634; CYTEK_0000010097; CYTEK_0000010599;
CYTEK_0000010549; CYTEK_0000010584; CYTEK_0000010276;
CYTEK_0000011261; CYTEK_0000011263; CYTEK_0000011064.

16

Defendant is intended to cause, and has resulted in, the past and ongoing combination of component(s) that would infringe the Asserted Claims of the Asserted Patents if such combination occurred in the United States.

Defendant has and continues to infringe the Asserted Claims of the Asserted Patents under 35 U.S.C. § 271(f)(2). Defendant has had knowledge of, or willful blindness to, the Asserted Patents and of its infringement. *See, e.g.*, D.I. 1 at ¶¶ 16-23, 29-31, 37-39; D.I. 42 at ¶¶ 18-27, 32-34, 40-42, 48-50, 56-58; D.I. 16 at ¶¶ 18, 22, Counterclaim ¶ 11; D.I. 48 at ¶¶ 20, 24, Counterclaim ¶ 11; Defendant Cytek Biosciences, Inc.'s Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories (Nos., 5, 7) at 10-11. Defendant knows that to the extent it supplies any component of the Accused Instrumentalities that is especially made or especially adapted for us in the invention and not a staple article or commodity of commerce capable for substantial noninfringing use in and from the United States, where such component is uncombined in whole or in part and intending that such component will be combined outside the United States, Defendant is supplying at least one component especially made and especially adapted for use in the inventions claimed in the Asserted Claims of the Asserted Patents in a manner that infringes the claims. *See, e.g.,* CYTEK_0000008584 at 8604 ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆ CYTEK_0000009785 (identifying components of

17

██████████████████████████████████████████████████████

██████████████████████████████████); Defendant Cytek Biosciences, Inc.'s

Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories

(Nos. 1-3) at 5-14 (describing "sales and distribution channel(s)" and "supply chain"

for the Accused Products).[16] Defendant further understands that the combination of

the supplied component(s) according to Defendant's guides, instructions, manuals

and marketing materials infringes the Asserted Claims of the Asserted Patents. *See,*

*e.g.*, CYTEK_0000008383, Cytek® Aurora CS User's Guide (providing instructions

for using the Cytek Aurora flow cytometer); BEC-Cytek-00009094, Cytek® Aurora

User's Guide (providing instructions for using the Cytek Aurora CS cell sorter);

CYTEK_0000008909, Cytek® Northern Lights-CLC User's Guide (providing

instructions for using the Cytek Aurora Northern Lights-CLC flow cytometer)[17];

CYTEK_0000009029, Cytek® Northern Lights User's Guide (providing instructions

---

[16] *See also, e.g.*, CYTEK_0000011064; CYTEK_0000009783;
CYTEK_0000009784; CYTEK_0000009786; CYTEK_0000009845;
CYTEK_0000009846; CYTEK_0000009847; CYTEK_0000009848;
CYTEK_0000009849; CYTEK_0000009921; CYTEK_0000009946;
CYTEK_0000010012; CYTEK_0000011212; CYTEK_0000011214;
CYTEK_0000010038; CYTEK_0000011216; CYTEK_0000011217;
CYTEK_0000011218; CYTEK_0000011219; CYTEK_0000011224;
CYTEK_0000011230; CYTEK_0000010062; CYTEK_0000010972;
CYTEK_0000010634; CYTEK_0000010097; CYTEK_0000010599;
CYTEK_0000010549; CYTEK_0000010276; CYTEK_0000010584;
CYTEK_0000011261; CYTEK_0000011263; CYTEK_0000011064.
[17] *See also, e.g.*, CYTEK_0000009557.

for using the Cytek Northern Lights flow cytometer); CYTEK_0000009149, Cytek®

Northern Lights (NL)-CLC User's Guide (providing instructions for using the Cytek

Northern Lights (NL)-CLC flow cytometer)[18]; CYTEK_0000021502, Cytek®

Aurora Evo™ User's Guide (providing instructions for using the Cytek Aurora Evo

flow cytometer); CYTEK_0000002061, Aurora™ Service Manual (providing

instructions for using the Cytek Aurora™)[19]; CYTEK_0000002507, Northern Lights

NL-CLC Service Manual (providing instructions for using the Northern Lights NL-

CLC); CYTEK_0000005338, Plate Loader Service Manual (providing instructions

for the Plate Loader); CYTEK_0000005664, Aurora CS Service Manual Guide

(providing instructions for using the Aurora CS)[20]; CYTEK_0000008311, Why Use

Cytek Aurora & Aurora CS Systems (encouraging use of Aurora and Aurora CS).[21]

---

[18] *See also, e.g.*, CYTEK_0000009271; CYTEK_0000009435.

[19] *See also, e.g.*, CYTEK_0000002264; CYTEK_0000003882; CYTEK_0000005697.

[20] *See also, e.g.*, CYTEK_0000005673; CYTEK_0000005706; CYTEK_0000005737; CYTEK_0000005880; CYTEK_0000006544; CYTEK_0000006655; CYTEK_0000006767; CYTEK_0000007697; CYTEK_0000007824; CYTEK_0000007952; CYTEK_0000007998; CYTEK_0000008199; CYTEK_0000008235; CYTEK_0000008237; CYTEK_0000008284.

[21] CYTEK_0000008312; CYTEK_0000008328; CYTEK_0000008335; CYTEK_0000008347; CYTEK_0000008359; CYTEK_0000008371;

Additionally, to the extent supplied abroad, Defendant supplies to customers the Accused Instrumentalities and/or component(s) thereof along with directions and instructions for use that, when followed in an intended manner and in a normal mode of operation, Defendant knows and intends would result in a combination that would infringe the Asserted Claims of the Asserted Patents if such combination occurred in the United States. *See, e.g.,* CYTEK_0000008584  at 8604 (█████████████████████; CYTEK_0000009785 (identifying components of ████████████████████████); Defendant Cytek Biosciences, Inc.'s Supplemental Responses and Objections to Plaintiff's

---

CYTEK_0000008583; CYTEK_0000008831; CYTEK_0000008838; CYTEK_0000008850; CYTEK_0000008862; CYTEK_0000008874; CYTEK_0000008885; CYTEK_0000008897; CYTEK_0000009725; CYTEK_0000009736; CYTEK_0000009747; CYTEK_0000009758; CYTEK_0000009771.

20

First Set of Interrogatories (Nos. 1-3) at 5-14 (describing "sales and distribution channel(s)" and "supply chain" for the Accused Products).[22]

**B. Cytek Infringes Literally and Under the Doctrine of Equivalents**

Each limitation of each Asserted Claim is literally present in and/or practiced by the Accused Instrumentalities as set forth in **Exhibits 1-3**. To the extent that any claim limitation is not found to be literally embodied in and/or practiced by the Accused Instrumentalities, each such limitation is embodied in and/or practiced by the Accused Instrumentalities under the doctrine of equivalents—*e.g.*, because the Accused Instrumentalities perform substantially the same function, in substantially the same way, to achieve substantially the same result as would be achieved by the limitations if literally present, and/or because the differences between the claim limitation and the corresponding functionality or feature in the Accused

---

[22] *See also, e.g.*, CYTEK_0000011064; CYTEK_0000009783; CYTEK_0000009784; CYTEK_0000009786; CYTEK_0000009845; CYTEK_0000009846; CYTEK_0000009847; CYTEK_0000009848; CYTEK_0000009849;  CYTEK_0000009921; CYTEK_0000009946; CYTEK_0000010012; CYTEK_0000011212; CYTEK_0000011214; CYTEK_0000010038; CYTEK_0000011216; CYTEK_0000011217; CYTEK_0000011218; CYTEK_0000011219; CYTEK_0000011224; CYTEK_0000011230; CYTEK_0000010062; CYTEK_0000010972; CYTEK_0000010972; CYTEK_0000010972; CYTEK_0000010634; CYTEK_0000010097; CYTEK_0000010599; CYTEK_0000010549; CYTEK_0000010584; CYTEK_0000010276; CYTEK_0000011261; CYTEK_0000011263; CYTEK_0000011064.

21

Instrumentalities are insubstantial.   *See* **Exhibits 1-3.**  Plaintiff reserves the right to identify alternative literal or equivalent infringing elements in the Accused Instrumentalities to the extent Plaintiff becomes aware of additional relevant information during the course of fact discovery, including in view of Defendant's deficient core technical document production, in light of Defendant's claim construction or invalidity contentions, in light of Defendant's expert opinions and analysis, any further *Markman* order(s), or in light of any additional claim construction or invalidity arguments.[23]   Plaintiff's infringement theories under the doctrine of equivalents are set forth in **Exhibits 1-3**, which are incorporated herein.

## IV.    WILLFULNESS

Defendant's infringement is willful because Defendant knew of, should have known, and/or was willfully blind to the Asserted Patents and Defendant's

---

[23] In the Parties' Joint Claim Construction Chart, Cytek took the position that "Cytek had proposed constructions for these terms and reserves its right to pursue these constructions, including to raise potential disputes related to the scope of these terms for resolution if necessary."  D.I. 89-1 at 1-2 n.3.  Cytek's purported reservation is inconsistent with the Court's typical practice and with the Parties' agreement that only ten Cytek terms would be construed.  To the extent Cytek argues for constructions besides the 10 disputed constructions the parties briefed, Beckman Coulter reserves the right to provide additional evidence and argument regarding how the Accused Instrumentalities infringe each limitation of each Asserted Claim, either literally or under the doctrine of equivalents, under any such constructions.

22

infringement thereof but nevertheless continued its willful and deliberate infringement of the Asserted Patents.  Beckman Coulter incorporates by reference its response to Interrogatory No. 8 and all amendments and supplements thereto.

*First*, Cytek is a competitor of Beckman Coulter with sophisticated processes that identified, monitored, investigated, and assessed Beckman Coulter's patent portfolio, including Beckman Coulter's marked flow cytometer and cell sorter patents. *See, e.g.*, U.S. Patent No. 10,739,245 (Cytek patent citing Beckman Coulter's U.S. Patent No. 7,440,101, entitled "System and method for multiple laser triggering"); U.S. Patent No. 8,660,332 at 2:7-10 (Cytek patent stating "Companies such as … Beckman Coulter Inc. (Fullerton, Calif.) … continue to advance [flow cytometry] technologies.").  Beckman Coulter's patent portfolio includes the Asserted Patents.

Cytek has long been aware of the patent family containing the Asserted Patents and therefore knew, or should have known, about the Asserted Patents themselves.  Cytek admits that it has long been aware of the '582 and U.S. Patent No. 9,746,412 (the "'412 Patent"), conceding that it became aware of both the '582 Patent and the '412 Patent since at least "on or around July 31, 2020" and reviewed both patents at least as of "early August 2020."  Defendant Cytek Biosciences, Inc.'s Responses and Objections to Plaintiff's First Set of Interrogatories (Nos. 1-15) at 17;

23

Defendant Cytek Biosciences, Inc.'s Supplemental Responses and Objections to Plaintiff's First Set of Interrogatories (Nos., 5, 7) at 10-11; D.I. 48 ¶ 20.  The '412 Patent is in the same patent family as the Asserted Patents and is the parent of the '582 Patent, and the '412 Patent and the Asserted Patents share the same inventor and specification.

Further, Cytek's U.S. Patent No. 10,436,697 cites U.S. Publication No. 2015/0115174 (the "'174 Publication"), a publication of U.S. Application No. 14/555,102, which issued as the '412 Patent.  Cytek has known about the '174 Publication since at least May 7, 2019, when Cytek filed an Information Disclosure Statement with the U.S. Patent and Trademark Office identifying the '174 Publication.  Similarly, Cytek's U.S. Patent No. 11,333,597 cites the '412 Patent. On June 17, 2021, Cytek filed an Information Disclosure Statement with the U.S. Patent and Trademark Office in connection with the application for the '597 patent identifying the '412 Patent.  As noted above, the '412 Patent and the Asserted Patents are in the same family and share the same inventor and specification.

*Second*, Cytek and Beckman Coulter are and were sophisticated parties and competitors in the flow cytometer and cell sorter markets.  Beckman Coulter has sold flow cytometry and cell sorter products since at least 1984, and Cytek has sold flow cytometry and cell sorter products since at least 2011.  It is common practice

24

for companies in these markets to identify, monitor, investigate, and assess competitor products and competitor patents for risk assessment purposes, and as a result, companies in this market identify, monitor, investigate, and assess Beckman Coulter products, such as Beckman Coulter's CytoFLEX products, and the patents marked thereon.  Consistent with this, Cytek identified, monitored, investigated, and assessed its competitors' patents, including Beckman Coulter's patents, which include the Asserted Patents.  For example, Cytek publicly stated that it was aware of patents and applications owned by competitors that covered flow cytometers, cell sorters, and related devices; publicly acknowledged that third parties may have had patents on which Cytek's products infringed; and stated that it expected to be increasingly subject to third-party infringement claims.[24]

Similarly, Cytek's counterclaim alleges that "Cytek … believe[d] that the CytoFLEX® products are covered by the '443, '582, and '106 Patents" (D.I. 48, Counterclaim ¶ 35; *see also* D.I. 16, Counterclaim ¶ 34), further evidencing its awareness of the relevant patent family, including the Asserted Patents.[25]

---

[24] *See, e.g.*, Cytek, Inc. Form S1 (2021), BEC-CYTEK-00066256 at 123-24.

[25] As explained in Beckman Coulter, Inc.'s Answer and/or Reply to Counterclaim, Beckman Coulter denies that it falsely marked the CytoFLEX Products with the '582 and '443 Patents. (D.I. 19 ¶¶ 12-34).  Beckman Coulter also denies that it falsely marked the CytoFLEX Products with the '106 Patent.

*Third*, the Infringing Instrumentalities function in the same or substantially the same manner as the claimed inventions. For example, Cytek's product literature and webpage for the Infringing Instrumentalities feature optical ray diagrams that are substantially similar to the figures in the Asserted Patents. *Compare* '582 Patent at FIG. 25 (illustrating an optical subsystem), '443 Patent at FIG. 25 (same), '106 Patent at FIG. 25 (same), '107 Patent at FIG. 25 (same) *with* BEC-CYTEK-00009226 at 2 (similar illustration of an optical subsystem) *and* BEC-CYTEK-00039733 (same).

*Fourth*, prior to the filing of the Complaint on August 14, 2024, and during the damages period under 35 U.S.C. § 286, the '443 and '582 Patents were listed on Beckman Coulter's public virtual marking page in associated with its CytoFLEX platform products,[26] and Beckman Coulter properly fixed the words "patent" or "pat." next to the virtual marking web address on its CytoFLEX platform products and/or the package of the CytoFLEX platform products in compliance with 35 U.S.C. § 287. *Infra* Section VIII.I. Similarly, prior to the filing of the Amended Complaint on January 9, 2025, and during the damages period under 35 U.S.C. § 286, the '106 and '107 Patents were listed on Beckman Coulter's public virtual

---

[26] *See* https://www.beckman.com/patents.

26

marking page in associated with its CytoFLEX platform products, and Beckman Coulter properly fixed the words "patent" or "pat." next to the virtual marking web address on its CytoFLEX platform products and/or the package of the CytoFLEX platform products in compliance with 35 U.S.C. § 287. *Infra* Section VIII.I. Further, the Asserted Patents are known in the industry and have been cited by at least 20 patents.

As Cytek acknowledged, Cytek's Aurora and Northern Lights flow cytometers and Aurora CS cell sorters are in direct competition with Beckman Coulter's CytoFLEX flow cytometer and cell sorter products marked with the Asserted Patents, and therefore, Cytek considered Beckman Coulter's CytoFLEX flow cytometer and cell sorter products to be in direct competition with at least the Accused Instrumentalities.[27]  Thus, Cytek monitored, investigated, and assessed at least the patents marked on Beckman Coulter's CytoFLEX flow cytometer and cell sorter products and therefore knew or should have known that at least the Accused

---

[27] *See, e.g.*, Cytek, Inc. Form S1 (2021), BEC-CYTEK-00066256 at 122-23 ("Our direct competitors include …Beckman Coulter (Danaher Corporation)…"); D.I. 16, Counterclaim ¶ 10 ("Beckman Coulter sells flow cytometers that compete with those sold by Cytek.  Specifically, Beckman Coulter sells a family of flow cytometers (CytoFLEX®, CytoFLEX® S, CytoFLEX® LX, CytoFLEX® nano), and a cell sorter (CytoFLEX® SRT) with the brand names CytoFLEX® (collectively referred to herein as 'the CytoFLEX® products'), each of which contains a WDM."); D.I. 48, Counterclaim ¶ 10 (same).

27

Instrumentalities were infringing the Asserted Patents, or else Cytek deliberately avoided evaluating its products and was willfully blind to its infringement of the Asserted Patents and acted despite an objectively high likelihood that its products infringed the Asserted Patents.  For example, Cytek's counterclaim alleges that it was "believe[d] that the CytoFLEX® products are covered by the '443, '582, and '106 patents," (D.I. 48, Counterclaim ¶ 35; *see also* D.I. 16, Counterclaim ¶ 34), evidencing that Cytek monitored the relevant patent family, including the Asserted Patents, and also at least the patents marked on Beckman Coulter's CytoFLEX platform products.[28]  Cytek further admits that Beckman Coulter "has marked the CytoFLEX® products with the '582 patent since at least October 17, 2021" and "started virtually marking the CytoFLEX® products with the '443 patent somewhere between February 19, 2024 and September 9, 2024."  D.I. 16, Counterclaim ¶ 29; *see also, e.g.*, D.I. 48, Counterclaim ¶ 30.  Cytek also admits that Beckman Coulter "started virtually marking the CytoFLEX® products with the '106 patent somewhere between September 10, 2024 and now."  D.I. 48, Counterclaim ¶ 30.  Thus, Cytek knew or should have known that at least the Accused Instrumentalities were

---

[28] As explained in Beckman Coulter, Inc.'s Answer and/or Reply to Counterclaim, Beckman Coulter denies that it falsely marked the CytoFLEX Products with the '582 and '443 Patents.  (D.I. 19 at ¶¶ 12-34).  Beckman Coulter also denies that it falsely marked the CytoFLEX Products with the '106 Patent.

infringing the '582 Patent since at least October 17, 2021, the '443 Patent since at least February-September 2024, and the '106 and '107 Patents since issuance.

Moreover, Cytek admits that it received a June 14, 2024 letter from Beckman Coulter.  D.I. 16 at ¶¶ 18, 22, Counterclaim ¶ 11; *see also, e.g.*, D.I. 1-3 at Exhibit 16; D.I. 48 at ¶¶ 20, 24, Counterclaim ¶ 11.  The letter informed Cytek of the '582 and '443 Patents, as Cytek admits.  D.I. 1-3 at Exhibit 16; *see also, e.g.*, D.I. 16 at ¶¶ 18, 22, Counterclaim ¶ 11; D.I. 48 at ¶¶ 20, 24, Counterclaim ¶ 11.  The letter accused Cytek of infringing the '443 and '582 Patents and provided claim charts, as Cytek admits.  D.I. 1-3 at Exhibit 16; *see also, e.g.*, D.I. 16 at ¶¶ 18, 22, Counterclaim ¶ 11; D.I. 48 at ¶¶ 20, 24, Counterclaim ¶ 11.  This letter provided Cytek with actual notice of the '443 and '582 Patents and explained how and why Cytek's products infringe. D.I. 1-3 at Exhibit 16.  Accordingly, Cytek has known of the '443 and '582 Patents and recognized that it was infringing, directly and/or indirectly, the '443 and '582 Patents at least as of June 14, 2024.  Notwithstanding its knowledge of the Asserted Patents and its infringement, Cytek continues to willfully and intentionally infringe.

Cytek received additional notice of the '443 and '582 Patents and its infringement thereof on August 14, 2024, when Beckman Coulter filed the Complaint in this proceeding.  D.I. 1.  The Complaint attached copies of the '582

29

and '443 Patents and exemplary infringement charts as exhibits, which provided Cytek with further notice of the '443 and '582 Patents and explained how and why the Accused Instrumentalities infringe. D.I. 1, 1-1; D.I. 48 ¶ 25. Accordingly, Cytek has known of the '443 and '582 Patents and its infringement thereof at least as of the date of the Complaint. Notwithstanding its knowledge of the Asserted Patents and its infringement, Defendant continues to willfully and intentionally infringe.

Further, Cytek received additional notice of the '106 and '107 Patent on January 9, 2025, when Beckman Coulter filed the First Amended Complaint in this proceeding. D.I. 42; D.I. 48 ¶ 20. The First Amended Complaint attached copies of the Asserted Patents and exemplary infringement charts as exhibits, which provided Cytek with actual notice of the Asserted Patents, including the '106 and '107 Patents, and explained how and why the Accused Instrumentalities infringe. D.I. 42, 42-2, 42-3, 42-4, 42-5, 43-16, 43-17, 43-18, 43-19. Accordingly, Cytek has known of the '106 and '107 Patents and its infringement thereof at least as of the date of the Amended Complaint. Notwithstanding its knowledge of the '106 and '107 Patents and its infringement, Defendant continues to willfully and intentionally infringe.

## V.    EMBODYING INSTRUMENTALITIES

The identification of Embodying Instrumentalities and practiced claims are subject to expert analysis. Beckman Coulter therefore reserves the right to amend

30

its identification of Embodying Instrumentalities and practiced claims during or following expert discovery in this case.  Beckman Coulter additionally reserves the right to submit expert opinions and analyses of the Embodying Instrumentalities and practiced claims in accordance with the schedule for expert discovery set by the Court.  Beckman Coulter incorporates by reference its interrogatory responses and all supplements thereto.  Based on the information currently available to Plaintiff and pursuant to Paragraph 3(g) of the Scheduling Order (D.I. 25), the Embodying Instrumentalities are all versions past and present of products using the CytoFLEX platform, including, e.g., the CytoFLEX, CytoFLEX S, CytoFLEX LX, CytoFLEX Nano, CytoFLEX SRT, DxFLEX, and Mosaic Spectral Detection Module products. The Embodying Instrumentalities practice the following Asserted Claims of the Asserted Patents:

| Asserted Patent | Asserted Claims |
|---|---|
| 10,330,582 | 1, 3, 6, 23, 26 |
| 11,703,443 | 4, 6, 10, 11, 15 |
| 12,174,107 | 5, 16, 18, 26, 27, 29 |

## VI.    PRIORITY DATES

The priority date for the Asserted Claims is subject to expert analysis. Beckman Coulter therefore reserves the right to amend its identification of the priority date following expert discovery in this case.  Beckman Coulter additionally

31

00040986; BEC-CYTEK-00040987; BEC-CYTEK-00040988; BEC-CYTEK-

00040989; BEC-CYTEK-00040990; BEC-CYTEK-00040991; BEC-CYTEK-

00040998; BEC-CYTEK-00040999; BEC-CYTEK-00033942; BEC-CYTEK-

00040969; BEC-CYTEK-00033947.

### J.  F/RAND Commitment or Agreement

Beckman Coulter is not presently aware of any documents comprising or

reflecting a F/RAND commitment or agreement with respect to the Asserted

Patents.


|  |  |
|---|---|
| | */s/ Frederick L. Cottrell III* |
| OF COUNSEL: | Frederick L. Cottrell III (#2555) |
| | Kelly E. Farnan (#4395) |
| Omar A. Khan | Christine D. Haynes (#4697) |
| Jeffrey A. Dennhardt | RICHARDS, LAYTON & FINGER P.A. |
| Lauren E. Matlock-Colangelo | One Rodney Square |
| WILMER CUTLER PICKERING HALE | 920 North King Street |
| AND DORR LLP | Wilmington, Delaware 19801 |
| 7 World Trade Center | (302) 651-7700 |
| 250 Greenwich Street | cottrell@rlf.com |
| New York, NY 10007 | farnan@rlf.com |
| (212) 230-8800 | |
| | *Attorneys for Plaintiff* |
| Asher S. McGuffin | |
| WILMER CUTLER PICKERING HALE | |
| AND DORR LLP | |
| 60 State Street | |
| Boston, MA 02109 | |
| (617) 526-6000 | |

Dated:  November 19, 2025

███████████████████████

## CERTIFICATE OF SERVICE

I hereby certify that on November 19, 2025, true and correct copies of the foregoing document were served upon the following counsel of record in the manner indicated:

**BY E-MAIL**

Karen Jacobs
Jeremy A. Tigan
Cameron P. Clark
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE  19801

**BY EMAIL**

Reuben H. Chen
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304

Elizabeth M. Flanagan
Cooley LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402

Adam Pivovar
Dustin M. Knight
Rosalynd D. Upton
David Yun
Cooley LLP
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004

*/s/ Christine D. Haynes*
Christine D. Haynes (#4697)
haynes@rlf.com

76

# EXHIBIT 9

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


C.A. NO. 1:24-cv-00945-CFC-EGT


BECKMAN COULTER, INC.,


            Plaintiff,


-against-


CYTEK BIOSCIENCES, INC.,


            Defendant.

_____/


                    Remotely via Zoom
                    Friday, November 14, 2025
                    9:11 a.m. - 8:10 p.m.

      VIDEO RECORDED AND VIDEOCONFERENCE DEPOSITION

                          OF

                    MATTHEW GOFF

        Taken before Darline M. West,
Registered Professional Reporter, Florida
Professional Reporter, FPR-C, and Notary Public
in and for the State of Florida At Large,
pursuant to Notice of Taking Deposition filed
by the Defendant in the above cause.
                    -   -   -
            MAGNA LEGAL SERVICES
                www.MagnaLS.com
                866.624.6221



Page 2

APPEARANCES:

On behalf of the Plaintiff:

WILMER HALE

7 World Trade Center

New York, New York 10007

By:  OMAR KAHN, ESQ.

KELLY TODD, ESQ.

On behalf of the Defendant:

COOLEY LLP

3175 Hanover Street

Palo Alto, California 94304-1130

Phone:  650.843.5000

By:  JUAN PABLO GONZALEZ, ESQ.

DAVID YUN, ESQ.

ALSO PRESENT:

JOHN VITALI - Video Technician

                        -   -   -











Page 357

REPORTER'S CERTIFICATE

STATE OF FLORIDA

COUNTY OF PALM BEACH

I, DARLINE MARIE WEST, RPR, certify that I was authorized to and did stenographically report the foregoing deposition; and that the transcript is a true record thereof.

I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorney or counsel connected with the action, nor am I financially interested in the action.

Dated this 25th day of November 2025.

_____
DARLINE MARIE WEST, RPR, FPR, FPR-C



# EXHIBIT 10

Page 1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

---o0o---

BECKMAN COULTER, INC.,              )
                                   )
                Plaintiff,          )
                                   )
        vs.                        )    Case No.
                                   )    1:24-cv-00945
CYTEK BIOSCIENCES, INC.,            )    -CFC-EGT
                                   )
                Defendant.          )
                                   )

---o0o---

FRIDAY, DECEMBER 5, 2025

VIDEOTAPED DEPOSITION OF YONG QIN CHEN

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---o0o---

STENOGRAPHIC REPORTER:

BALINDA DUNLAP, CSR 10710, RPR, CRR, RMR



Page 2

                    A P P E A R A N C E S
                         ---o0o---

FOR THE PLAINTIFF:

          WILMERHALE
          7 World Trade Center
          250 Greenwich Street
          New York, New York  10007
          BY: OMAR KHAN, ESQ.
              LAURA MACRO, ESQ.
          (212) 937-7252
          omar.khan@wilmerhale.com


FOR THE DEFENDANTS:

          COOLEY LLP
          1299 Pennsylvania Avenue NW, Suite 700
          Washington, DC  20004
          BY: ADAM PIVOVAR, ESQ.
          (202) 842-7800
          apivovar@cooley.com


          COOLEY LLP
          3175 Hanover Street
          Palo Alto, California  94304
          BY: HANBYUL CHANG, ESQ.
          (650) 843-5000
          hanbyul.chang@cooley.com

   ALSO PRESENT:

          Andrew Butko, Videographer











Case 1:24-cv-00945-CFC    Document 420-5    Filed 08/06/26    Page 180 of 244 PageID #: 40801



Page 337

DEPOSITION OFFICER'S CERTIFICATE

(Civ.Proc. § 2025.520(e))

STATE OF CALIFORNIA      )

                         )  Ss.

COUNTY OF SAN FRANCISCO )

I, Balinda Dunlap, hereby certify:

I am the deposition officer that stenographically recorded the testimony in the foregoing deposition.

Written notice pursuant to Code of Civil Procedure, Section 2025.520(a), having been sent, the deponent took the following action within the allotted period with respect to the transcript of the deposition:

(  ) In person, at the office of the deposition officer, made the changes set forth on the original of the transcript.  (The parties attending the deposition have been notified of said changes.)

(  ) Approved the transcript by signing it.

(  ) Refused to approve the transcript by not signing it.

(  ) By means of a signed letter, made the changes and approved or refused to approve the transcript as set forth therein.  (Said letter has been attached to the original transcript and copies



Page 338

thereof mailed to all parties attending the deposition.)

( ) Failed to approve the transcript within the allotted time period.

Dated _____.

_Balinda Dunlap_



# EXHIBIT 11

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

C.A. NO. 1:24-cv-00945-CFC-EGT

BECKMAN COULTER, INC.,

　　　　　Plaintiff,

-against-

CYTEK BIOSCIENCES, INC.,

　　　　　Defendant.
_____/

　　　　　　　　　█████████████████

　　　　　　　█████████████████████

　　　　　Remotely via Zoom
　　　　　Wednesday, October 29, 2025
　　　　　9:35 a.m. - 5:15 p.m.

VIDEO RECORDED AND VIDEOCONFERENCE DEPOSITION
OF PIETRO LOPRIORE

Taken before Darline M. West,

Registered Professional Reporter, Notary Public

in and for the State of Florida At Large,

pursuant to Notice of Taking Deposition filed

by the Defendant in the above cause.

　　　　　　　　　-　-　-

MAGNA LEGAL SERVICES
www.MagnaLS.com
866.624.6221

Page 1



APPEARANCES:

On behalf of the Plaintiff:

    WILMER HALE

    7 World Trade Center

    New York, New York 10007

    By:  OMAR KAHN, ESQ.

        KELLY TODD, ESQ.


On behalf of the Defendant:

    COOLEY LLP

    30 S. 9th Street, 7th Floor

    Minneapolis, Minnesota 55402

    By:  DUSTIN KNIGHTLY, ESQ.


ALSO PRESENT:

    MICHAEL LEVY, ESQ. - In-house counsel for

    Danaher Corporation

    PETER BERG - Video Technician

    ROBERT MORISON - MLV TECH


                -   -   -



MAGNA
LEGAL SERVICES





█████████████████████████████

█   ████    ██████    ████████ LEGAL SERVICES ███████████████████

█   █████████████████████

█       █████████████████████    ████████████    █████

█     ███████    █████████████████████████

█       ████████████    █████████████████████

█   ████████████████████████████████

█       ████████████████████    █████████    ████

█   ████████

█        █████████████    ███████████████████████

█   █████████████████████████████████████████

█   ██████████████████████████████████

█   ██████████████    ████████████████████████████

█   ███████████████████████████████████████

█   ███████    ██████████████████████████████

█   ██████████████

█   ████████████████

█   ███    █████████████████████████████████████

█   █████████████████

█   ███    ████████████████

█   ███    █████████████████████████████████████

█   ██████████████████████████████████

█   ██████████████████████████████████████

█   ████████████████████████████████████████████

█       ████████████    ████████████



1



Page 194



████████████████

█   █   ██████████████████████████████████

█   ████████████████████████████████████████

█   ████████████████████████

█   █   ████████████

█   ████████████  ████████████

█   ████████████████  ████████████████████

█   ██████████████████  ████████████

█   ████████████████████████████████  ████████████

█   ████████████████████████████████████████

█   ██████████████████████████████████

█   ████████████████████  ████████████  █████

█   ████████████████████

█   ████████████  ████████████

█   ████████████████████████████

█   ██████████████████████████████████

█   ████████████████████████████████████

█   ████████████  ████████████████████████████

█   ████████████████████

█   ████████████████████████████

█   ████████████████████████  ████████████████████

█   ████████████  ████████████████████

█   ████████████████

█   ████████████████████

█   █   ████████████████  ████████████████████









it.





Page 202





MAGNA
LEGAL SERVICES

Page 204







REPORTER'S CERTIFICATE


STATE OF FLORIDA

COUNTY OF PALM BEACH


I, DARLINE MARIE WEST, RPR, certify that I was authorized to and did stenographically report the foregoing deposition; and that the transcript is a true record thereof.


I further certify that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorney or counsel connected with the action, nor am I financially interested in the action.


Dated this 7th day of November 2025.



*Darline Marie West*

_____

DARLINE MARIE WEST, RPR, FPR, FPR-C



# EXHIBIT 12

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BECKMAN COULTER, INC.,            )
                                  )
          Plaintiff,              )
                                  )   C.A. No. 24-945-CFC
   v.                             )
                                  )
CYTEK BIOSCIENCES, INC.,          )
                                  )
          Defendant.              )
                                  )


                    Thursday, April 16, 2026
                         9:02 a.m.
                    Discovery Conference


                      844 King Street
                    Wilmington, Delaware


     BEFORE: THE HONORABLE COLM F. CONNOLLY
     United States District Court Judge


     APPEARANCES:


               RICHARDS, LAYTON & FINGER
               BY:  CHRISTINE D. HAYNES, ESQ.
               BY:  FREDERICK L. COTTRELL III, ESQ.

               -and-

APPEARANCES CONTINUED:

                WILMERHALE
                BY:  OMAR KAHN, ESQ.
                BY:  JEFFREY DENNHARDT, ESQ.

                        Counsel for the Plaintiff

                MORRIS NICHOLS ARSHT & TUNNELL
                BY:  JEREMY TIGAN, ESQ.

                -and-

                COOLEY LLP
                BY:  REUBEN CHEN, ESQ.
                BY:  BETSY FLANAGAN, ESQ.

                        Counsel for the Defendant

                    _ _ _ _ _ _ _ _ _ _

                    P R O C E E D I N G S

    (Proceedings commenced in the courtroom beginning at 9:02 a.m.)

            **THE COURT:**  Good morning.  Please be seated.

            Mr. Cottrell.

            **MR. COTTRELL:**  Good morning, Your Honor.  Fred Cottrell from Richards, Layton & Finger on behalf of

plaintiff, Beckman Coulter, and also from my office Christine Haynes, and from WilmerHale, Omar Khan and Jeffrey Dennhardt.  And Mr. Dennhardt will respond to the defense's motion.  Thank you.

**THE COURT:**  Mr. Tigan.

**MR. TIGAN:**  Good morning, Your Honor.  Jeremy Tigan with Morris Nichols on behalf of Cytek.

From the Cooley firm, I'm joined today by Betsy Flanagan, Reuben Chen and Alexandra Leeper with Ms. Flanagan presenting our argument.

**THE COURT:**  All right.

**MS. FLANAGAN:**  Good morning, Your Honor.  And may it please the Court, Betsy Flanagan on behalf of defendant Cytek Biosciences, Incorporated.

We're here today because Beckman Coulter did not timely disclose that its lost profits damages theory would rely on a market-share apportionment analysis and the presence of acceptable substitutes in the marketplace.

Beckman Coulter actually advanced the opposite theory during fact discovery with its interrogatory responses advancing the position that there were no acceptable non-infringing substitutes. That can be found in their interrogatory response at Page 149 of Exhibit 1.

**MS. FLANAGAN:** I know we called the Court, I think, in California when we didn't see it go through.

**THE COURT:** Well, I wrote an e-mail to her. That's how I met her. And then I ended up being on a panel with her.

I said, "by the way, you may want to look into this in your Clerk's Office because this just came in, and I realize you apparently ruled on this back in November. And just you may want to address that with your Clerk's Office." And she did.

And then kind of small world, I end up being on a panel with her. She's very nice, actually.

By the way, do you know she was a magistrate judge? And do you know, before she was a magistrate judge, she was a law clerk on the Court?

I've now met two district court judges who started as a permanent law clerk for a judge on the court that they ended up being a district court judge.

Spread that out to very talented associates if you would.

All right. My point is, look, I'm always practical about stuff. I don't want to make decisions I don't have to make.

So understand, if I deny the motion to quash, I'm not moving the trial date.

MS. FLANAGAN:  That's understood, Your Honor.

THE COURT:  Do you still want to go forward?

MR. CHEN:  Yes, Your Honor.

THE COURT:  Okay.  I will say this.  I'm going to bend over backwards.  You're going to have to accommodate this, so that we, you know, get this done.

MR. KAHN:  Your Honor, just a couple of quick things.

THE COURT:  Yeah, so come on up.  We'll talk about the merits.

It's your motion, right?

MR. KAHN:  Your Honor, we didn't prepare to argue the motion, but I am prepared.  I can address it at a high level.  So --

THE COURT:  Well, here's what you should address, all right.  Why isn't it relevant to infringement and willfulness?

MR. KAHN:  So, Your Honor, Judge Tennyson, in connection with --

THE COURT:  I don't need to know what Judge Tennyson said.  I asked you why.

MR. KAHN:  Right.  And so it's not --

THE COURT:  Lets say I don't agree with Judge Tennyson --

MR. KAHN:  Sure, sure.

58

THE COURT: I'll give you a specific example. Suppose you get or they get an internal communication where somebody on your side says "I don't think they infringe." It's an admission by a party opponent. Why doesn't it come into evidence?

MR. KAHN: So they are not a party to the case. Danaher is not and neither is Mr. Milosevich.

THE COURT: You're owned completely by them, right?

MR. KAHN: Beckman Coulter is a wholly-owned subsidiary, but they operate as very different -- they are different companies.

THE COURT: All right. So we have an issue about agency. But again, why do I have to decide that now? That can be decided down the road. You might be right, but this is discovery.

MR. KAHN: Right.

And so there's a couple of different problems. So the first is Mr. Milosevich was not even involved with this particular company, Beckman Coulter, Inc., until after --

THE COURT: All right. So you'll establish that. It will be a very short discovery.

MR. KAHN: Right. And so that's the first point.

**THE COURT:** Okay. Well, then actually I don't have to worry about the trial date, because it's going to be a really, really short discovery.

**MR. KAHN:** Right. And so that was going to be my first request, Your Honor. He is Number 2 in the org chart for Danaher.

**THE COURT:** Right.

**MR. KAHN:** Number 2 or Number 3. So this is absolutely an Apex deposition, and so we'd ask, first, for some limits on the scope of the deposition, you know, a couple of hours so that we could sort of make sure that it's a cabined deposition.

But then I also think, you know, he doesn't have any documents to produce.

**THE COURT:** Okay. Well, then, again, it is going to be really easy, right? You're going to certify that?

That's another one I don't understand. You know, if I'm a lawyer and I issued, propound discovery requests on you, and you say, we don't have any.

**MR. KAHN:** Right.

**THE COURT:** I think the system should be allowed, well let's check to see if the subsidiaries or the parent companies have those documents, because we think they should exist.

MR. KAHN:  Okay.  Just on a couple of different -- so first, Your Honor, given that it is an Apex deposition, we'd asked for some guidance on the scope, on the timing of the deposition.

THE COURT:  Well, maybe, you know -- Mr. Chen, are you arguing this?

MR. CHEN:  Sure.

THE COURT:  All right.  Well, he will probably agree to some kind of, you know, limitations.

MR. KAHN:  Right.  And then the second thing, Your Honor, is like we also would like the Court to be aware, essentially, that he had nothing to do with any of that.

THE COURT:  Okay.  Again, he can say that in discovery.

MR. KAHN:  Okay.

THE COURT:  They've got a prima facie basis to believe he might have.

MR. KAHN:  All right.  And then, on the basic point, it's not relevant to infringement because, of course, on the -- infringement is comparing the claims to the products.

THE COURT:  Right.

MR. KAHN:  Right?  And there's no suggestion anywhere in their papers that he did that in his personal

capacity.

THE COURT:  So just help me out on that.

What I'm having a little bit of difficulty with that is, let's suppose their equivalent to this fellow, Milosevich, all right, let's say in the company.

MR. KAHN:  Sure.

THE COURT:  Let's say in an e-mail he said, "we infringed those Beckman patents," right.  Would that be admissible?

MR. KAHN:  I think it would be hearsay, Your Honor.

THE COURT:  It's an admission by a party opponent.  It's not hearsay.

MR. KAHN:  Well, they're not -- they are not Beckman Coulter, Your Honor.  He's not affiliated with Beckman.

THE COURT:  You're back on your guy.  I asked the hypothetical is somebody from Cytek, some executive from Cytek says --

MR. KAHN:  Oh, from Cytek.

THE COURT:  -- that we infringe Beckman Coulter's asserted patents.  You're telling me that doesn't come into evidence?  You're not trying to get that one?

MR. KAHN:  That would be a party opponent

because he's a Cytek employee, correct.

THE COURT: Okay. So now, if somebody from Beckman Coulter says "this lawsuit, it's a complete farce. They don't infringe and we know it," you're telling me that's not admissible?

MR. KAHN: It would be admissible at least under the hearsay rule, right, could be, yeah.

THE COURT: It's not hearsay. It's by definition. So the definition of hearsay, right --

MR. KAHN: I understand.

THE COURT: -- takes out, by definition under the rules, an admission by a party opponent.

MR. KAHN: It could be inadmissible for other reasons is all I'm saying. Yes, Judge, I agree with you that it would be, you know, contrary to the interest and therefore a party opponent.

THE COURT: So it comes in. So then it could be relevant to infringement?

MR. KAHN: Yes.

THE COURT: Okay.

MR. KAHN: Well, if it was a Beckman Coulter employee.

THE COURT: Agreed. I totally agree with you, and it would depend on who it was and the content, all sorts of things. But we'll deal with that. That's an

agency question, it seems to me.  It's premature to rule that definitively now.

But the point is it could be relevant to infringement.  So you say it's a strict liability offense.  That's what you say in your papers.

MR. KAHN:  Correct.

THE COURT:  Okay.  That's right.  But to prove a strict liability offense, you can, and, in fact, I think typically you would love an admission by a party opponent, right, to bring in to prove infringement?

MR. KAHN:  I hear the point on infringement.

THE COURT:  Okay.

MR. KAHN:  And then so, I mean, he doesn't have anything like that.

THE COURT:  So then I kind of sense it's going to be --

MR. KAHN:  And we kind of told them that already.

THE COURT:  -- short discovery.

MR. KAHN:  So I think that's why this is just a fishing expedition, which has been explained in the papers, Your Honor.

THE COURT:  Right.

MR. KAHN:  But there's a really important secondary reason why this deposition and subpoena should

not go fo███████ and that's why we brought the motion to quash is they got everything from everybody in the litigation already.

THE COURT: Right. So that's, again, if they did, you can confirm that. You just said he's not going to have any documents to produce.

MR. KAHN: Well, I mean, we haven't done -- we showed you in the papers, Your Honor, that, you know, when we do some searches for the word "Cytek," it's just an enormous number of documents. But I'm not aware, sitting here today, of a statement along the lines of what you just said.

THE COURT: Okay.

MR. KAHN: That's all I am saying. I want to be very clear about that.

You know, so they've gotten everything they could possibly need, you know, in connection with discovery from the witnesses and the employees of Beckman Coulter, Inc., who were intimately involved in the transactions, potential transactions that they're interested in, extensive discovery.

So when we're talking about what is concededly, on their part, they don't dispute this, an Apex deposition or Apex subpoena, we have to consider what have they already gotten and what is it that he

uniquely has, uniquely has, that only he has that no one else has. And they have not established that by any stretch of the imagination that he has anything that's uniquely his and is not anybody else's.

So that really, Your Honor, is, even if we get past all of the other issues, relevance and Apex, the fundamental problem with their motion -- with their subpoena is that they deposed three different heads of the Beckman Coulter business who were involved in that -- in those relevant potential transactions.

They've got thousands of pages of materials, you know, and there's not a shred of evidence in the record that Mr. Milosevich has anything, knowledge, documents, information, anything that has not already been provided to them. And so there's just nothing to suggest that he has any unique information or knowledge.

And on that basis alone, Your Honor, I think we think that it's improper for the subpoena to proceed.

THE COURT: Okay. All right.

I'm going to let it proceed. Now, the question is, though, let's address some of these issues about burden and scope.

MR. CHEN: Understood, Your Honor.

THE COURT: I mean the burden is on you. I don't think you've established. You've not met your

burden to establish that this is overly burdensome. You've not met your burden to establish that it has no relevance, which is the principal argument.

So, but let's be mindful of time.  Let's be mindful of this gentleman's position.  And also let's be mindful of unnecessarily requiring just redundant production of documents.

So how do you address those specific things so that we can be practical?

MR. CHEN:  Absolutely, Your Honor.

So we would be happy to work with counsel here to agree to a narrowed set of search terms to be more targeted, in terms of documents that we would like to be actually run.  And if it sounds like there aren't relevant documents, then it sounds like it's not going to be very burdensome for them.

I do want to note that Mr. Milosevich was the president of Beckman Coulter between 2019 and 2022, and there are actually two acquisition discussions during that time and that Mr. Milosevich has also directly contacted Cytek's CEO as well.  And Cytek's CEO actually has been deposed in this case, so to the point about the Apex Doctrine.

We would also be happy to limit the amount of time for the deposition.

**THE COURT:** Yeah, so what do you think is reasonable?

**MR. CHEN:** Four hours.

**THE COURT:** All right. Four hours good? That's what we'll set. We'll limit it to four hours. It's not going to be 7.5. Four hours, all right.

**MR. CHEN:** Thank you, Your Honor.

**THE COURT:** All right. So I'm going to deny the motion to quash. I don't think the burden has been met. I'm going to limit it to four hours. I'm going to require a discussion about narrowing the search terms to be reasonable.

And anything else I can do on that?

**MR. CHEN:** No. Thank you, Your Honor.

**THE COURT:** Anything else?

**MR. KAHN:** We understand the Court's ruling, Your Honor.

**THE COURT:** Okay. All right.

Then anything else we need to address?

**MR. DENNHARDT:** Not from plaintiff, Your Honor.

**MR. CHEN:** Not from defendant, Your Honor.

**THE COURT:** All right. Thank you, all. Very nice arguments. Appreciate it.

(The proceedings concluded at 10:17 a.m.)

# EXHIBIT 13

# EXHIBIT 14

Highly Confidential - Outside Attorneys' Eyes Only

BEC-CYTEK-00156103

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

BECKMAN COULTER, INC.,

                Plaintiff,

      v.

CYTEK BIOSCIENCES, INC.,

                Defendant.

C.A. No. 24-0945-CFC

**Highly Confidential – Attorneys' Eyes Only**

**PLAINTIFF BECKMAN COULTER, INC.'S REPLY IN SUPPORT OF ITS MOTION *IN LIMINE* NO. 2 TO PRECLUDE EVIDENCE, TESTIMONY, OR ARGUMENT REGARDING NON-PARTY DANAHER CORPORATION, SPECULATION REGARDING DANAHER'S PURPORTED MENTAL STATE TO ARGUE NON-INFRINGEMENT, AND DANAHER'S NON-COMPARABLE VALUATION OF <u>CYTEK TO SUPPRESS DAMAGES</u>**

**TABLE OF EXHIBITS**[1]

| Exhibit No. | Exhibit |
|---|---|
| 8 | File History of U.S. Patent No. 9,746,412 |
| 9 | Expert Rebuttal Report of John L. Hansen, Jan. 20, 2026 |

---

[1] Exhibits cited in this reply as "Ex. __" are attached to the Declaration of L. Matlock-Colangelo, filed as an attachment to this Motion.

Beckman's Motion is not overbroad. While Beckman does not seek redaction of references to Danaher, substantive arguments regarding non-party Danaher are irrelevant and confusing. ***First***, Cytek agrees "David-versus-Goliath" arguments are improper (Opp.3) but does not disclaim reliance on its damages expert's irrelevant and unduly prejudicial discussion of Danaher's size, wealth, and success. Ex. 9 at ¶ 18; Br.1-2. ***Second***, Cytek cites no case (Opp.2-3) finding lack of intent to infringe based on the actions of an entity that never owned the Asserted Patents. ***Third***, Cytek's arguments would require a "mini trial" on the relationship between Beckman and Danaher, including a sideshow on Cytek's unfounded assertion that they operate "without corporate distinction." Opp.1. ***Fourth***, Cytek does not dispute that telling the jury that Danaher described Cytek as innovative risks juror confusion because a product can be innovative and still infringe. Br.2. ***Fifth***, it is undisputed that Danaher's acquisition offer is non-comparable and does not meet a "basic evidentiary precondition" for use at trial. *VLSI Tech. v. Intel*, 87 F.4th 1332, 1346 (Fed. Cir. 2023). ***Sixth***, whether the CytoFLEX products use spectral detection (Opp.3) is irrelevant because the claims do not recite "conventional flow cytometers" (Opp.3) and are not limited by "features of a commercial embodiment," *Myco Indus. v. BlephEx*, 955 F.3d 1, 15 (Fed. Cir. 2020). ***Finally***, Beckman's Motion is not premature. Opp.3. Mr. Milosevich's production is complete, and the denial of his motion to quash did not decide what can be presented to the jury.

1

OF COUNSEL:

Robert J. Gunther, Jr.
Omar A. Khan
Jeffrey A. Dennhardt
Laura Macro
Lauren Matlock-Colangelo
Jennifer L. Graber
Maggie Sawin
Kelly A. Todd
WILMER CUTLER PICKERING
HALE and DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

James Dowd
WILMER CUTLER PICKERING
HALE and DORR LLP
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
(213) 443-5300

Akkad Y. Moussa
WILMER CUTLER PICKERING
HALE and DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037


Dated:  July 15, 2026

/s/ Frederick L. Cottrell III
Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff*

2

# CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2026, true and correct copies of the foregoing

document were served upon the following counsel of record in the manner indicated:

<table>
<tr><td><strong>BY E-MAIL</strong></td><td><strong>BY EMAIL</strong></td></tr>
<tr><td>

Karen Jacobs<br>
Jeremy A. Tigan<br>
Cameron P. Clark<br>
Morris, Nichols, Arsht & Tunnell LLP<br>
1201 N. Market Street<br>
P. O. Box 1347<br>
Wilmington, DE  19801

</td><td>

Reuben H. Chen<br>
Cooley LLP<br>
3175 Hanover Street<br>
Palo Alto, CA 94304<br><br>

Elizabeth M. Flanagan<br>
Cooley LLP<br>
30 S. 9th Street, 7th Floor<br>
Minneapolis, MN 55402<br><br>

Adam Pivovar<br>
Dustin M. Knight<br>
Rosalynd D. Upton<br>
David Yun<br>
Cooley LLP<br>
1299 Pennsylvania Avenue NW<br>
Suite 700<br>
Washington, DC 20004

</td></tr>
</table>

/s/ Christine D. Haynes
Christine D. Haynes (#4697)
haynes@rlf.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BECKMAN COULTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> CYTEK BIOSCIENCES, INC., <br><br> Defendant. | C.A. No. 24-0945-CFC <br><br> **FILED UNDER SEAL** <br> **Highly Confidential** <br> **Attorney's Eyes Only** |

## DECLARATION OF LAUREN MATLOCK-COLANGELO IN SUPPORT OF PLAINTIFF BECKMAN COULTER, INC.'S REPLY BRIEFS IN SUPPORT OF ITS MOTIONS *IN LIMINE*

I, Lauren Matlock-Colangelo, declare as follows:

1.    I am licensed to practice law in the State of New York and have been admitted to this Court *pro hac vice* by Order dated September 3, 2024. D.I. 8 (so ordered).

2.    I am an attorney with the law firm of Wilmer Cutler Pickering Hale and Dorr LLP, located at 7 World Trade Center, 250 Greenwich Street, New York, New York 10007, and counsel for Plaintiff Beckman Coulter, Inc. ("Beckman Coulter").

3.    I have personal knowledge of the facts set forth herein and with the proceedings in this case, and if called to testify, I would competently testify thereto.

4.    I submit this Declaration in support of the following oppositions by Beckman Coulter:

a.  Plaintiff Beckman Coulter, Inc.'s Reply Brief in Support of Its Motion *in Limine* No. 1 to Preclude Evidence, Testimony, or Argument Regarding Unasserted Patents and Patent Applications in Support of Cytek's Non-Infringement, Invalidity, or Damages Arguments

b.  Plaintiff Beckman Coulter, Inc.'s Reply in Support of its Motion *in Limine* No. 2 to Preclude Evidence, Testimony, or Argument Regarding Non-Party Danaher Corporation, Speculation Regarding Danaher's Purported Mental State to Argue Non-

2

Infringement, and Danaher's Non-Comparable Valuation of Cytek to Suppress Damages

c. Plaintiff Beckman Coulter, Inc.'s Reply in support of Its Motion *in Limine* No. 3 to Preclude Evidence, Testimony, or Argument That the Timing of This Lawsuit Evidences Non-Infringement or Impacts Damages

5.     A true and correct copy of excerpts from the File History of U.S. Patent No. 9,746,412, are attached hereto as **Exhibit 8**.

6.     A true and correct copy of excerpts from the Expert Rebuttal Report of John L. Hansen, dated January 20, 2026, are attached hereto as **Exhibit 9**.

7.     I declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 15th day of July, 2026.

/s/     Lauren E. Matlock-Colangelo

Lauren E. Matlock-Colangelo

3

## CERTIFICATE OF SERVICE

I hereby certify that on July 15, 2026, true and correct copies of the foregoing

document were served upon the following counsel of record in the manner indicated:

**BY E-MAIL**

Karen Jacobs
Jeremy A. Tigan
Cameron P. Clark
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE  19801

**BY EMAIL**

Reuben H. Chen
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304

Elizabeth M. Flanagan
Cooley LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402

Adam Pivovar
Dustin M. Knight
Rosalynd D. Upton
David Yun
Cooley LLP
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004


*/s/ Christine D. Haynes*
Christine D. Haynes (#4697)
haynes@rlf.com

# EXHIBIT 8

Application No. 14/555,102                        Docket No.: BECC.P0002US.CIP/11412161
Reply to Office Action of June 27, 2016

and focusing elements to form a beam emitted from a light source, and a photomultiplier tube to detect the beam. *See Oostman*, at col. 6, lns. 40-49. In *Oostman*, the photomultiplier tube is used to detect light emitted from a pinhole or a multimode optical fiber (common light source of the detector) in fluorescence detection instrument, e.g., flow cytometer. The size of an object of such light source is usually measured in millimeters. *See* specification, on p. 69, lns. 19-22; *see also Oostman*, at col. 10, lns. 25-47. However, such light source has an etendue hundreds of times greater than that of a laser beam out of a single mode optical fiber, and, therefore, it is more difficult to focus a beam from such light source down to a small size. *See* specification, on p. 69, lns. 1-8. As such, a photomultiplier tube, as illustrated by *Oostman* in detail, instead of a semiconductor detector with a small active area, is normally used to detect light with greater etendue in fluorescence detection instrument in the prior art. *Id.*

On the contrary, *Capewell* teaches an optical communication system that includes multiple optical assemblies to collimate and redirect a beam emitted from a light source, and a detector to detect the beam. *See Capewell*, at ¶s [0002] and [0039]. In *Capewell*, the detector is used to detect light emitted from a point light source, such as a single mode optical fiber, in a WDM to be used with a communication system. *Id.*, at ¶ [0030]. The size of an object of such point light source is usually measured in micrometers. *See* specification, on p. 69, lns. 22-23; *see also Capewell*, at ¶ [0049]. As such, such point light source has much less etendue than a bigger light source. *See* specification, on p. 69, lns. 1-8.

From the foregoing, it is clear that *Oostman* and *Capewell* discuss different kinds of optical systems (fluorescence detection instrument v. optical communication system) with different sizes of light sources. The Office Action fails to provide any explicit analysis to support the combination of optical elements from different kinds of optical systems, as taught by *Oostman* and *Capewell*. For instance, the Office Action asserts that since *Capewell* has disclosed that the size of the focused light beam can be minimized in order to maximize the tolerance to detector misalignment, it would have been obvious to one of ordinary skill in the art to modify the focusing element of *Oostman* to be able to focus to a size smaller than the object of the extended light source. *See* Office Action, on p. 4. However, the Office Action fails to address ***how*** to modify a focusing element in ***fluorescence detection instrument*** with a focusing

Application No. 14/555,102
Reply to Office Action of June 27, 2016

Docket No.: BECC.P0002US.CIP/11412161

element in an ***optical communication system*** to focus a beam to a size smaller than the object of the extended light source to a first semiconductor detector, as claimed. *See In re Kumar,* 418 F.3d 1361, 1369 (Fed. Cir. 2005) ("To render a later invention unpatentable for obviousness, the prior art must enable a person of ordinary skill in the field to make and use the later invention."). As discussed above, it is more difficult to focus a beam with greater etendue in fluorescence detection instrument than to focus a beam with less etendue in an optical communication system.

According to the above, a *prima facie* conclusion of obviousness has not been established. *Oostman* in view of *Capewell* fails to render claim 364 obvious. Hence, Applicant respectfully requests that the Examiner withdraw the rejection under 35 U.S.C. § 103(a) of claim 364.

### 2.    Dependent claims 366-379

#### a.    Claim 366

Claim 366 recites that "an image relay optical element arranged to receive a color band of interest of the first light beam, the image relay optical element configured to project a second image as a second light beam, wherein the second light beam is substantially a unit magnification of the first light beam." The Office Action asserts that *Oostman* has disclosed the above features. *See* Office Action, on ps. 4-5. In particular, the Office Action asserts that beam splitting element 151 in *Oostman* meets the image relay optical element as claimed. *Id.* Applicant respectfully disagrees with such assertion.

For example, *Oostman*'s beam splitting element 151 does ***not receive a color band of interest*** of the first light beam as the claimed image relay optical element does. Instead, *Oostman*'s beam splitting element 151 receives beam 147 output from a fiber ***in its entirety*** and splits beam 147 into beam 155 and beam 153. *See Oostman,* at col. 6, lns. 45-47 and 55-57. Further, the cited selections of *Oostman* do not teach or suggest the size of beam 147 received by beam splitting element 151, or beams 155 and 153 output from beam splitting element 151. In fact, controlling the beam size is important for a WDM. As specified in the specification, utilizing an image relay optical element to extend a collimated beam path without expanding the

Application/Control Number: 14/555,102                                       Page 2
Art Unit: 2884

## DETAILED ACTION

The present application is being examined under the pre-AIA first to invent provisions.

### *Response to Arguments*

Applicant's arguments, see page 8, filed October 27, 2016, with respect to independent claim 364 have been fully considered and are persuasive. Upon reconsideration, Capewell suggests minimizing the size of the image to maximize the optical energy and tolerance to detector misalignment. However, there's no teaching to focus the light beam to **a size smaller than the object**. Therefore, the rejection of claim 364 and those depend from 364 has been withdrawn.

Thus, claims 364-382 and 387 are allowed.

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to MINDY VU whose telephone number is (571)272-8539. The examiner can normally be reached on M-F 9am - 5:30pm.

Examiner interviews are available via telephone, in-person, and video conferencing using a USPTO supplied web-based collaboration tool. To schedule an interview, applicant is encouraged to use the USPTO Automated Interview Request (AIR) at http://www.uspto.gov/interviewpractice.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, Dave Porta can be reached on 571-272-2444. The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

# EXHIBIT 9

Beckman Coulter, Inc.

v.

Cytek Biosciences, Inc.

Civil Action No. 1:24-cv-00945-CFC

**Expert Rebuttal Report of John L. Hansen**

**HKA Global, LLC**

**January 20, 2026**

John L. Hansen

both Danaher's Life Sciences and Diagnostics business segments.[14] Beckman Coulter's life sciences offerings include centrifuges, air and liquid particle counters, genomic instruments, microbioreactors, and flow cytometers.[15] Beckman Coulter's Life Sciences division contains two further portfolio groups: Biotech and Flow Cytometry.[16] The Flow Cytometry division is further divided into Clinical and RUO (Research Use Only) subdivisions.[17] Previously, the CHC (Cell Health and Centrifuge) and BWS (Biotech Workflow Solutions) stood alongside the Flow Cytometry division, but the two groups have since been collapsed into the single Biotech group, which now exists alongside the continued Flow Cytometry division.[18]

## B. Danaher Corporation

18. Danaher is the Parent Company of Beckman Coulter.[19] Danaher is a Delaware corporation headquartered in Washington, D.C.[20] Danaher describes itself as comprising 15 operating companies within the biotechnology, life sciences, and diagnostics industries.[21] In 2024, Danaher's Diagnostics business segment was the largest revenue-generating division with nearly $9.8 billion in revenue followed by Life Sciences ($7.3 billion) and Biotechnology ($6.8 billion).[22]

## C. Cytek Biosciences, Inc.

19. Cytek was founded in 2014 as is headquartered in Fremont, California.[23] Cytek is a cell analysis solutions company offering a number of flow cytometers including its Northern Lights, Aurora, Guava, and Amnis product lines.[24] The company offers additional

---

[14] Danaher Corporation, SEC Form 10-K for the Fiscal Year ended December 31, 2024, pp. 5-7.
[15] https://www.beckman.com/shop.
[16] Deposition of Patricia Del Castillo (Director of Finance at Beckman), October 24, 2025: p. 9.
[17] Deposition of Patricia Del Castillo (Director of Finance at Beckman), October 24, 2025: p. 9.
[18] Deposition of Patricia Del Castillo (Director of Finance at Beckman), October 24, 2025: pp. 18-20.
[19] Danaher Corporation, SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 5, Exhibit 21.1.
[20] Danaher Corporation, SEC Form 10-K for the Fiscal Year ended December 31, 2024: p. 1.
[21] Danaher Corporation, SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 3.
[22] Danaher Corporation, SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 38.
[23] Cytek Biosciences, Inc., SEC Form 10-K for the Fiscal Year ended December 31, 2024, p. 20.
[24] Cytek Biosciences, Inc., SEC Form 10-K for the Fiscal Year ended December 31, 2024, pp. 4-5. https://cytekbio.com/pages/aurora; https://cytekbio.com/pages/northern-lights; https://cytekbio.com/pages/imagestream; https://cytekbio.com/pages/guava. See also, https://cytekbio.com/pages/muse-micro; https://cytekbio.com/pages/orion.