# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

BECKMAN COULTER, INC.,  )
                                       )

       Plaintiff,  )       C. A. No.:  24-945-CFC

                                       )

       v.  )       ████████████

                                       )

CYTEK BIOSCIENCES, INC.,  )
                                       )       **REDACTED - PUBLIC VERSION**

       Defendant.  )

                                       )

## EXHIBIT 20

## CYTEK'S MOTION *IN LIMINE* NO. 2
## OPENING, ANSWERING AND REPLY

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BECKMAN COULTER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C. A. No.:  24-0945-CFC |
| | ) | |
| v. | ) | ██████████████ |
| | ) | |
| CYTEK BIOSCIENCES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**CYTEK'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE EVIDENCE,
TESTIMONY, AND ARGUMENT THAT CYTEK COPIED, STOLE, OR
<u>MISAPPROPRIATED THE TECHNOLOGY IN BEC'S PRODUCTS</u>**

Cytek moves to preclude BEC from introducing evidence, testimony, or argument that Cytek copied, stole, or misappropriated the technology in BEC's products, subject to the limited exception that BEC may introduce evidence of purported copying of CytoFLEX in its rebuttal case during Phase 1 of the trial if relevant to secondary considerations of nonobviousness, to the extent admissible and after offering evidence that its CytoFLEX products practice the asserted claims. BEC has not asserted copyright, trade secret, or theft claims and should not be permitted to use such inflammatory language. Further, any suggestion that Cytek copied CytoFLEX technology in Phase 1 beyond potential secondary considerations is highly prejudicial, irrelevant, and would mislead the jury, confuse the issues, and waste time. Fed. R. Evid. 401-403; Fed. R. Civ. P. 26, 37; *Finjan, Inc. v. Blue Coat Sys., Inc.*, 2015 WL 4129193, at *6 (N.D. Cal. July 8, 2015) ("[T]here is significant prejudice associated with this evidence, as a jury may use evidence of copying to unfairly conclude that Defendant's products *infringe* the patents-in-suit.").

Allegations of Cytek copying, misappropriating, or stealing the technology in BEC's products, whether through unasserted patents and applications or physical products, are irrelevant to BEC's opening statement and affirmative case. *See, e.g., Martin v. Barber*, 755 F.2d 1564, 1567 (Fed. Cir. 1985) ("Infringement, either literal or by equivalence, is determined by comparing the accused device with the claims in suit, not with a preferred or commercial embodiment of the patentee's claimed

1

invention."). In a patent case, such allegations are minimally probative, at best, and are routinely excluded due to their inherent inflammatory character. *See, e.g.*, *Helios Software, LLC v. Spectorsoft Corp.*, 2015 WL 3653098, at *2 (D. Del. May 22, 2015) (precluding reference to alleged copying or stealing); Ex. 1, *Mfg'ing Resources Int'l, Inc. v. Civiq Smartscapes, LLC*, C.A. No. 17-269-RGA, at 3 (D. Del. Sep. 5, 2019) (precluding copy evidence); *Finjan*, 2015 WL 4129193, at *6. Theft, stealing, and misappropriation allegations are unduly prejudicial and should be barred.

Copying allegations are only potentially relevant to secondary considerations and willfulness. In 2014, BEC acquired the named inventor Yong Chen's company, Xitogen, including its prototype flow cytometer that was later launched as the CytoFLEX. BEC apparently plans to suggest to the jury that



(*See, e.g.*, Ex. 2, Schaafsma Rebuttal Rep., ¶¶ 775-782.) These allegations are baseless, but throughout discovery, BEC cited this purported evidence for secondary considerations or willfulness. (*Id.*; Ex. 3, BEC's Eighth

Supp. Interrogatory Responses, 112, 114, 127, 137-138, 192, 198-199; Ex. 4, Houston Opening Rep., ¶¶ 490-501.)   This purported copying evidence, if allowed at all, should be confined to these issues.  Fed. R. Civ. P. 26, 37.

For Phase 1 of the trial, BEC's purported copying evidence can only be presented, if at all, for secondary considerations in BEC's rebuttal.  *Finjan*, 2015 WL 4129193, at *6; *B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.*, 72 F.3d 1577, 1583 (Fed. Cir. 1996).  **But first**, Cytek must make a *prima facie* showing for a § 103 defense, and afterward BEC must show its CytoFLEX products embody the claims.  *In re GPAC Inc.*, 57 F.3d 1573, 1580 (Fed. Cir. 1995).  BEC's purported copying evidence is "legally irrelevant" before then.   *Amazon.com, Inc. v. Barnesandnoble.com*, 239 F.3d 1343, 1366 (Fed. Cir. 2001); *Leapfrog Enter., Inc. v. Fisher-Price, Inc.*, 2005 WL 1331216, at *2-3 (D. Del. 2005).  **Second**, BEC must tie its purported copying evidence to claimed features in its embodying product.  BEC should not be allowed to introduce evidence that generally references copying its product or unclaimed product features.  *Cf. Cot'n Wash, Inc. v. Henkel Corp.*, 56 F. Supp. 3d 626, 650-51 (D. Del. 2014), *aff'd*, 606 F. App'x 1009 (Fed. Cir. 2015).

Given the strong potential for unfair prejudice, should BEC introduce purported copying evidence in rebuttal, Cytek also requests a limiting instruction at the close of evidence to "ensure that the jury does not impermissibly conflate the copying inquiry with infringement."  *Finjan*, 2015 WL 4129193 at *6.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Reuben H. Chen
Alexandra Leeper
Juan Pablo González
HanByul Chang
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000

Elizabeth M. Flanagan
COOLEY LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402

Adam Pivovar
Dustin M. Knight
David Yun
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
(202) 842-7800

Dated: June 26, 2026

/s/ Jeremy A. Tigan
Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@morrisnichols.com
jtigan@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendant*
*Cytek Biosciences, Inc.*

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BECKMAN COULTER, INC.,   )
           )
  Plaintiff,      )   C. A. No.:  24-0945-CFC
           )
  v.        )
           )
CYTEK BIOSCIENCES, INC.,   )
           )
  Defendants.    )
           )

## [PROPOSED] ORDER GRANTING CYTEK'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE EVIDENCE, TESTIMONY, AND ARGUMENT THAT CYTEK COPIED,STOLE, OR MISAPPROPRIATED <u>THE TECHNOLOGY IN BEC'S PRODUCTS</u>

On this _____ day of _____, 2026, the Court having considered Cytek Biosciences Inc.'s ("Cytek's") Motion *in Limine* to Exclude Evidence, Testimony, and Argument That Cytek Copied, Stole, or Misappropriated the Technology in BEC's Products, and all papers and arguments submitted therewith,

IT IS ORDERED that the motion is GRANTED.  Plaintiff Beckman Coulter, Inc. ("Beckman Coulter") is PRECLUDED from offering testimony, evidence, or argument that Cytek stole or misappropriated the technology in Beckman Coulter's products.   Beckman Coulter is further PRECLUDED from offering testimony, evidence, or argument that Cytek copied the technology in Beckman Coulter's products, including in its opening statement and affirmative case in Phase 1 of trial

5

to prove infringement.  To the extent Cytek presents an obvious defense in Phase 1, Beckman Coulter will be allowed to offer testimony, evidence, or argument on copying related to secondary considerations of nonobviousness in its rebuttal case, but only after presenting testimony, evidence, or argument to show that one or more of its products practices one or more of the asserted claims of the asserted patents. Beckman Coulter is PRECLUDED from presenting testimony, evidence, or argument related to copying that is not directly related to one of the elements of asserted claims of the asserted patents.  The Court also ORDERS Beckman Coulter to submit a proposed limiting instruction in advance of offering copying evidence that indicates the jury should consider copying evidence in evaluating nonobvious, not infringement.

Dated: _____        _____
                                    United States District Court Judge

6

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MANUFACTURING RESOURCES )
INTERNATIONAL, INC., )
       )
      Plaintiff, )
       )
      v. )    C.A. No. 17-269-RGA
       )
CIVIQ SMARTSCAPES, LLC, CIVIQ )
HOLDINGS, LLC, COMARK, LLC, and )
COMARK HOLDINGS, LLC, )
       )
      Defendants. )

## ORDER ON MOTIONS IN LIMINE

At Wilmington this 5 day of September, 2019, having considered the parties respective motions *in limine*, and having heard argument at the pretrial conference on August 30, 2019,

IT IS HEREBY ORDERED as follows:

1. Plaintiff Manufacturing Resources International, Inc.'s ("MRI's") Motion *in Limine* No. 1 is GRANTED.

     a. Defendants Civiq Smartscapes, LLC, Civiq Holdings, LLC, Comark, LLC and Comark Holdings, LLC's ("Civiq's") Counterclaims for declaratory judgment of unenforceability due to inequitable conduct, Violation of the Lanham Act, Copyright Infringement, and Unfair Competition under 6 Del. C. § 2532 (*See* D.I. 107) will not be presented to the jury at the trial beginning on September 9, 2019.

2. MRI's Motion *in Limine* No. 2 is GRANTED in PART and DENIED in PART.

     a. Civiq may introduce U.S. Provisional Patent Application No. 61/051,197 ("the

1

'197 application") into evidence and present testimony regarding the '197 application.

    b.  Civiq may not introduce its other patents into evidence unless MRI places them at issue.

    c.  Civiq may present testimony on the existence of its patent portfolio and general practice of respecting intellectual property.

3. MRI's Motion *in Limine* No. 3 is GRANTED in PART and DENIED in PART.

    a.  Civiq may not introduce any undisclosed opinions of counsel into evidence.

    **b.**  Civiq may introduce a redacted version of its December 27, 2016 letter from Civiq's counsel to MRI ("the Civiq Letter") (PTX-436) into evidence. The Civiq Letter will be redacted to remove the name of the author and the law firm, discussion of the '322 patent, as well as any references to *inter partes* review.

    c.  No witness will be questioned regarding the substance of the Civiq Letter (PTX-436) in its redacted form.

    d.  MRI may introduce a redacted versions of its May 24, 2016 letter from MRI's counsel to Civiq ("the MRI Letter") (PTX-340) into evidence. The MRI Letter will be redacted to remove the name of the author and law firm, as well as discussion of the '322 patent.

    e.  No witness will be questioned regarding the substance of the MRI Letter (PTX-340) in its redacted form.

4. Civiq's Motion *in Limine* No. 1 to Preclude Testimony that Plaintiff's Products Practice the Patents-in-Suit is GRANTED.

    a.  MRI will be precluded from presenting testimony from any fact witness,

2

including Mr. Dunn, that any MRI products are embodiments of the patents-in-suit.

5. Civiq's Motion *in Limine* No. 2 to Preclude Plaintiff from Alleging that Defendants Copied MRI's Urban Panel is GRANTED.

   a. MRI's witnesses and attorneys will be precluded from alleging, arguing or implying that Defendant's copied MRI's Urban Panel.

   b. MRI is granted leave to file supplemental briefing for consideration by the Court on September 4, 2019.

6. Civiq's Motion *in Limine* No. 3 to Preclude Evidence or Argument that Defendants are Owned by a Private Equity Firm is GRANTED.

   a. MRI is precluded from referring to Civiq's corporate owner as a private equity firm or presenting any evidence or argument regarding the work, perception, or reputation of private equity firms.

IT IS FURTHER ORDERED, that Civiq's request made in paragraph 103 of the proposed pretrial order is GRANTED in Part. MRI will be precluded from asserting that any accused product infringes the patents-in-suit under the doctrine of equivalents. The Court reserves its ruling on whether MRI will be allowed to assert that Civiq induces infringement of any patent-in-suit other than the '572 patent.

/s/ Ryan P. Newell
Arthur G. Connolly, III (No. 2667)
Ryan P. Newell (No. 4744)
CONNOLLY GALLAGHER LLP
The Brandywine Building
1000 West Street, Suite 1400
Wilmington, DE 19801
(302)757-7300
aconnolly@connollygallagher.com
rnewell@connollygallagher.com
*Attorneys for Plaintiff*

Dated: September 4, 2019

/s/ John W. Shaw
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
dfry@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendants*

SO ORDERED this  5  day of September, 2019.

_____
United States District Judge

4

# EXHIBIT 2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BECKMAN COULTER, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    C.A. No. 24-0945-CFC-EGT |
| | ) |
| CYTEK BIOSCIENCES, INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## REBUTTAL EXPERT REPORT OF DR. DAVID SCHAAFSMA, PHD
## REGARDING VALIDITY OF U.S. PATENT NOS. 10,330,582, 11,703,443, AND 12,174,107

January 20, 2026

Dr. David Schaafsma

i

Dr. David Schaafsma Rebuttal Validity Report

Objective Indicia of Non-Obviousness

PMT's large and bulky size. *See, e.g.*, CYTEK_0000012414 at 7:32-36 ("In FIG. 5, the transfer leg forwarded upstream from one beam splitter to the next follows a zigzag pattern. In FIG. 6, the transfer legs intersect in a star-shaped pattern yielding a more compact polygonal arrangement of detectors."); *see also* CYTEK_0000011930. Therefore, it is my opinion that Oostman teaches a POSA to optimize detectors by arranging PMTs in polygonal orientations and does not teach the use of a compact zig-zag pattern of optical relay elements with focusing elements and compact APDs.

774.    Further evidence of teaching away can be found in the prevailing strategy in flow cytometry design as of the priority date of the Asserted Patents of using primarily filters configured to pass certain wavelengths to be detected, with or without an additional filter between the mirror and the detector, while reflecting other wavelengths to additional dichroic mirrors. *See e.g.*, Oostman at FIG. 5; US2003/0044967 ("Heffelfinger"), at [0011] ("Typical systems use a dichroic mirror to reflect wavelengths of the laser light and transmit wavelengths of the emission light."); US 8,284,402 ("Frazier") at FIG. 1 (describing a relay of filters); Beckman Coulter's Eight Supplemental Responses and Objections to Cytek's First Set of Interrogatories (Nos. 1-12) at 135-136. Before the invention claimed in the Asserted Patents, having a light path where each stage at which the light was reflected include light being passed through for detection was viewed as the shortest and most efficient path to separate each wavelength for light detection; thus, a POSA viewing Oostman, Heffelfinger, and Frazier would have understood that those references teach away from the mirror:filter relay described in several of the claims of the Asserted Patents. A POSA reading these references would therefore not recognize the benefits of a mirror: filter relay, as allowing for a more controlled light beam over longer distances and enabling the use of APDs, especially small-area APDs.

281

Dr. David Schaafsma Rebuttal Validity Report

Objective Indicia of Non-Obviousness

██████████

██  ████████████████████████████████████████

████████████████████████████████████████████████

██████  Beckman Coulter's Amended Complaint, Exhibits 3-4 and 24-25; Plaintiff's First Amended Infringement Contentions; Plaintiff's Second Amended Infringement Contentions; Beckman Coulter's Eight Supplemental Responses and Objections to Cytek's First Set of Interrogatories (Nos. 1-12) at 127, 199-231; Schaafsma Opening Report; Houston Opening Report.

776.   ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

understand that Maria Jaimes, Pierce Norton, and David Vrane all had roles at Becton Dickinson's diligence on Xitogen before they moved to Cytek.  I further understand that Becton Dickinson sued Dr. Yan and other former Becton Dickinson employees who went to Cytek, alleging the misappropriation of Becton Dickinson's trade secrets.  First Amended Complaint, *Becton, Dickinson & Co. v. Cytek Biosciences, Inc.*, No. 3:18-cv-00933 (N.D. Cal. June 8, 2018), Dkt. No. 57; Yan Tr. at 123:20-124:24.  One of the allegations that Becton Dickinson included in its suit was that Dr. Yan downloaded 17,000 files, including Chinese-language files, onto a removable storage device, which I understand that Dr. Yan admitted to.  First Amended Complaint ¶ 78, *Becton, Dickinson & Co. v. Cytek Biosciences, Inc.*, No. 3:18-cv-00933(N.D.

282

Dr. David Schaafsma Rebuttal Validity Report

Objective Indicia of Non-Obviousness

Cal. June 8, 2018), Dkt. No. 57; Answer and Counterclaim to First Amended Complaint ¶ 78,

*Becton, Dickinson & Co. v. Cytek Biosciences, Inc.*, No. 3:18-cv-00933 (N.D. Cal. Sept. 7,

2018), Dkt. No. 70; Yan Tr. at 123:20-124:24. ██████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████ ████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

---

[28] *See, e.g.*, Cytek's Resp. to Interrogatory No. 6 (12/16/2024); Cytek's Suppl. Resp. to Interrogatory No. 6 (9/12/2025); Jiang Tr. at 222:16-234:9; CYTEK_0000725267; CYTEK_0000909015 (Beckman Coulter's June 14, 2024 Letter to Cytek); CYTEK_0000989599 (Cytek's Response to Beckman Coulter's June 14, 2024 Letter); First Amended Complaint, *Beckman Coulter, Inc. v. Cytek Biosciences, Inc.*, No. 24-00945 (D. Del. Jan. 1, 2025), Dkt. No. 42; CYTEK_0000988900 and associated metadata; Jiang Tr. at 176:14-177:2; '412 patent at Related U.S. Application Data; '582 patent at Related U.S. Application Data; '443 patent at Related U.S. Application Data; '107 patent at Related U.S. Application Data; Jiang Tr. at 177:5-180:19; CYTEK_0000988641; Jiang Tr. at 182:1-184:9-12; *id.* at 186:1-11; Cytek's First Suppl. Resp. to Interrogatory No. 7 (5/9/2025); Jiang Tr. at 222:16-232:15; CYTEK_0000725267; CYTEK_0000725270; CYTEK_0000151524; Jiang Tr. at 234:14-236:20; CYTEK_0000020893; Jiang Tr. at 209:23-210:3; *id.* at 250:9-251:1; *id.* at 236:4-251:1; *id.* at 245:22-246:17; CYTEK_0000217139 at CYTEK_00000217140; CYTEK_0000217165 at CYTEK_0000217166.

Dr. David Schaafsma Rebuttal Validity Report

Objective Indicia of Non-Obviousness

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████ Cytek filed U.S. Patent No. 11,169,076 on July 25, 2017, which includes the '412 patent in its references cited, and filed U.S. Patent No. 11,33,597 on March 30, 2018, and again included the '412 patent in its references cited. CYTEK_0000217139 at CYTEK_00000217140; CYTEK_0000217165 at CYTEK_0000217166; Houston Opening Rep. ¶488.

777.    ████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[29] *See, e.g.*, Yan Tr. at 12: 9-22, 13:1-7, 96:10-19; *id.* at 35:16-23; *id.* at 98:6-8; First Amended Complaint, *Becton, Dickinson & Co. v. Cytek Biosciences, Inc.*, No. 3:18-cv-00933 (N.D. Cal. June 8, 2018), Dkt. No. 57; Yan Tr. at 123:20-124:24; Answer and Counterclaim to First Amended Complaint, *Becton, Dickinson & Co. v. Cytek Biosciences, Inc.*, No. 3:18-cv-00933 (N.D. Cal. Sept. 7, 2018), Dkt. No. 70; Yan Tr. at 125:2-126:9; CYTEK_0000020561 at CYTEK_0000020565; Yan Tr. at 133:13-134:21; CYTEK_0000893973; CYTEK_0000897412 at CYTEK_0000897439; CYTEK_0000970313 at CYTEK_0000970330; CYTEK_0000892725; CYTEK_0000892727; CYTEK_0000895619 at CYTEK_0000895622; CYTEK_0000900170; CYTEK_0000892984; CYTEK_0000900196; CYTEK_0000967317 at CYTEK_0000967317-19; CYTEK_0000967248; Yan Tr. at 172:16-173:8; *id.* at 171:1-24; CYTEK_0000897410; CYTEK_0000892549 at CYTEK_0000892551; Yan Tr. at 187:2-7; CYTEK_0000892389 at CYTEK_0000892389; Yan Tr. at 191:19-20; CYTEK_0000893935 at CYTEK_0000893935; CYTEK_0000900140; Yan Tr. at 194:19-22, 195:15-17; CYTEK_0000892402 at CYTEK_0000892424-25; Yan Tr. at 199:15-21; *id.* at 200:19-25, 201:19-202:15; CYTEK_0000987089 at CYTEK_0000987106; Yan Tr. at 204:7-15; CYTEK_0000892534; Yan Tr. at 216:18-222:12; CYTEK_0000892534; CYTEK_0000894989; Yan Tr. at 227:4-10, 228:7-12; CYTEK_0000900143 at CYTEK_0000900143-44; CYTEK_0000900155 at CYTEK_0000900155-56; CYTEK_0000900168; Yan Tr. at 241:13-245:12; Yan Tr. at 242:18-19; *id.* at 243:22-25, 244:1-245:12; CYTEK_0000892836; CYTEK_0000892837; Yan Tr. at 237:21-238:12; CYTEK_0000900181; Yan Tr. at 239:3-19; CYTEK_0000892902; CYTEK_0000900193; CYTEK_0000892987 at CYTEK_0000892988; Yan Tr. at 247:1-12; CYTEK_0000900281 at CYTEK_0000900282-84; Press Release, Cytek, Cytek Biosciences Debuts New Advanced Flow Cytometry System (June, 7, 2017), https://cytekbio.com/blogs/news/cytek-biosciences-debuts-newadvanced-flowcytometry-system; CYTEK_0000900198; Yan Tr. at 251:18-252:5; CYTEK_0000893693; CYTEK_0000893434; CYTEK_0000099802 at CYTEK_0000099802-03; CYTEK_0000084774; Yan Tr. at 141:2-10, 143:5-21, 152:23-154:3; CYTEK_0000951874; CYTEK_0000824631 at CYTEK_0000824633; Kennedy Tr. at 307:10-14; *id.* at 308:5-12, 309:4-13; Ginestet-Araki Tr. at 255:19-256:23; Jiang Tr. at 318:1-320:2; CYTEK_0000124118 at CYTEK_0000124123; Lannigan Tr. at 324:2-14.

Dr. David Schaafsma Rebuttal Validity Report

Objective Indicia of Non-Obviousness

778.

Dr. David Schaafsma Rebuttal Validity Report

Objective Indicia of Non-Obviousness

Dr. David Schaafsma Rebuttal Validity Report

Objective Indicia of Non-Obviousness

Dr. David Schaafsma Rebuttal Validity Report

Objective Indicia of Non-Obviousness

Dr. David Schaafsma Rebuttal Validity Report

Objective Indicia of Non-Obviousness



### H.  Commercial Success

783.    The CytoFLEX platform, which embodies the Asserted Patents, and the Accused Products, which practice and infringe the Asserted Patents, have achieved significant commercial success through the innovations claimed in the Asserted Patents.

784.

785.    The success of the CytoFLEX is attributable to customers' preference for affordable and compact, "benchtop" devices that provide a flexible number of colors without compromising sensitivity and resolution, which is made possible only through the patented features, including the implementation of compact WDMs to enable the use of APDs.

289

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BECKMAN COULTER, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CYTEK BIOSCIENCES, INC.,<br><br>Defendant. | C.A. No. 24-0945-CFC-EGT<br><br> |

**PLAINTIFF'S EIGHTH SUPPLEMENTAL OBJECTIONS & RESPONSES
TO DEFENDANT'S FIRST SET OF INTERROGATORIES (NOS. 1-12)**

Pursuant to Federal Rules of Civil Procedure 26 and 33, Plaintiff Beckman Coulter, Inc. ("Beckman Coulter") hereby responds to Defendant Cytek Biosciences, Inc.'s ("Defendant") First Set of Interrogatories to Plaintiff Beckman Coulter (Nos. 1-12).

**GENERAL OBJECTIONS**

Plaintiff incorporates each of the following General Objections into its responses to each of the Interrogatories, whether or not each such General Objection is expressly referred to in Plaintiff's response to a specific Interrogatory.

1.      Plaintiff will make reasonable efforts to respond to the Interrogatories, to the extent that no objection is made, as Plaintiff understands and interprets each Interrogatory.   If Defendant subsequently asserts an interpretation of any

1

| Claim Limitation | Exemplary Support in Priority Applications |
|---|---|
| | '245 application at Abstract, ¶¶ [0002], [0006]-[0007], [0016]-[0022], Claims 1-16, Figs. 1-8 and all other related disclosures in the application.<br><br>'5819 application at Abstract, ¶¶ [0001]-[0022], Claims 1-12, Figures 1-6 and all other related disclosures in the application.<br><br>'836 application at Abstract, ¶¶ [0002], [0004], [0007]-[0008], [0015]-[0018], [0020]-[0022], Claims 1-18, Figs 1-7 and all other related disclosures in the application.<br><br>'6819 application at Abstract, ¶¶ [0002], [0004]-[0006], [0010]-[0014], Claims 1-16, Figs 1-2 and all other related disclosures in the application.<br><br>'453 application at Abstract, 1:1-3:26, 4:24-5:2, 5:31-21:28, 10:12-11:9, 42:6-48:29, Claims 1-173, FIGs. 1-15, 25-30 and all other related disclosures in the application.<br><br>'859 application at Abstract, 3:10-35:14, 41:25-90:9, 90:10-91:2, Claims 1-190, FIGs. 1-15, 25-38 and all other related disclosures in the application. |
| "the WDM is capable of detecting a substantially full spectrum of visible light" ('107 patent, claim 29) | Defendant has the burden of proof on priority issues and has failed to put priority at issue and/or to meet its burden by failing to provide any basis for any contention that each claim is not entitled to a priority date before the "Application Filing Date."  Plaintiff reserves the right to supplement, amend, or otherwise modify this response.<br><br>'328 application at Abstract, ¶¶ [0002], [0004]-[0006], [0019], Claims 29-56 and all other related disclosures in the application.<br><br>'5819 application at Abstract, ¶¶ [0001]-[0002], [0006]-[0009], [0017]-[0022], Claims |

111

| Claim Limitation | Exemplary Support in Priority Applications |
|---|---|
| | 1-12, Figs. 1-4 and all other related disclosures in the application. |
| | '836 application at Abstract, ¶¶ [0002], [0004], [0007-[0008], [0015]-[0018], [0020]-[0022], Claims 1-18, Figs 1-7 and all other related disclosures in the application. |
| | '6819 application at Abstract, ¶¶ [0002], [0004]-[0006], [0010]-[0014], Claims 1-16, Figs 1-2 and all other related disclosures in the application. |
| | '453 application at Abstract, 1:32-3:12, 8:15-12:12, 14:29-16:10, 21:30-27:27, 25-30, 42:6-47:34, 47:36-48:29, Claims 1-73, 162-173, FIGs. 1-7, 25-30 and all other related disclosures in the application. |
| | '859 application at Abstract, 3:10-35:14, 41:25-50:21, 67:1-90:9, 70:28-30, 88:5-9, 90:10-91:2, Claims 1-190, FIGs. 1-15, 25-38 and all other related disclosures in the application. |

Further information responsive to this interrogatory may be found in testimony and exhibits of witnesses whose depositions have been taken to date and those yet to be taken, including testimony of party and third-party witnesses.

## INTERROGATORY NO. 4

Describe in detail Your contention, if any, that any secondary considerations support a conclusion that the Asserted Claims are not obvious under 35 U.S.C. § 103, including by identifying all facts, documents, persons with knowledge, and materials regarding such contention and identifying the factual and legal basis regarding the purported nexus between the secondary consideration and the specific Asserted Claims (with specific Bates numbers to any cited pages).

**RESPONSE TO INTERROGATORY NO. 4**

Plaintiff objects to this Interrogatory as compound, overly broad, unduly burdensome, not relevant to any party's claims or defenses, and as not proportional to the needs of the case, including without limitation to the extent it seeks information directed to "all facts, documents, persons with knowledge, and materials," and because it is not limited in time. Plaintiff further objects to this Interrogatory because the phrases used—including, without limitation, the phrases "support a conclusion that the Asserted Claims are not obvious," "regarding such contention," and "purported nexus"—are vague, ambiguous and undefined. Plaintiff further objects to this Interrogatory as improperly containing multiple discrete subparts that are not logically or factually subsumed within and necessarily related to the primary question and therefore each amount to a separate interrogatory. Plaintiff reserves the right to count each subpart as a separate interrogatory against Defendant's interrogatory limit.

Plaintiff further objects to this Interrogatory to the extent it rests on a legal conclusion, including without limitation as to "legal basis," "secondary considerations," non-obviousness, and "nexus." Plaintiff further objects to this Interrogatory as premature to the extent that it seeks contentions, information, expert discovery, or opinions in a manner inconsistent with the Federal Rules of Civil Procedure, the Local Rules, and/or the Court's Scheduling Order (D.I. 25), and

113

insofar as Plaintiff's response may depend on, without limitation, Defendant's disclosure of the factual and legal bases for its affirmative defenses and counterclaim and fact discovery which has not yet occurred, and because Defendant bears the burden on its affirmative defenses and counterclaim—including invalidity—and has yet to provide discovery and provide its contentions on its defenses and counterclaim. In particular, Plaintiff objects to this Interrogatory as premature because it seeks information that is properly the subject of expert discovery prior to the date set for expert reports by the Court's Scheduling Order (D.I. 25).

Incorporating by reference the above specific and general objections, Plaintiff responds that at least commercial success, long felt but unsolved needs, failure of others, skepticism of experts, unexpected results, industry praise, teaching away by others, recognition of a problem, and/or ████████████ each supports a conclusion that the Asserted Claims are not obvious under 35 U.S.C. § 103. Plaintiff will supplement this response at an appropriate time, including following Defendant's disclosure of any invalidity theories under 35 U.S.C. § 103. Plaintiff's investigation and discovery in this case are ongoing. Plaintiff reserves the right to supplement or amend this response as discovery, including expert discovery, and its investigation proceed.

114

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4**

Plaintiff incorporates the General and Specific Objections and responses set forth in its initial response to Interrogatory No. 4. Plaintiff incorporates by reference its disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1), Paragraph 3 of the Delaware Default Standard for Discovery, Paragraph 3 of the Court's Scheduling Order (D.I. 25, 55), and all amendments and supplements thereto, as well as all pleadings, filings, disclosures, expert declarations or reports, and other materials submitted by Plaintiff in connection with any post-grant proceedings, including *inter partes* review, post grant review, or *ex parte* reexam proceedings. Subject to and without waiving the foregoing general and specific objections, Plaintiff further responds that it has produced documents pursuant to Federal Rule of Civil Procedure 33(d) from which Defendant may derive additional information responsive to this interrogatory, and the burden of deriving such information is substantially the same for Defendant as it is for Plaintiff.

Plaintiff further responds as follows:

a)      *Long-felt But Unresolved Need*

Prior to the inventions embodied in the claims of the Asserted Patents, APDs were highly desired but viewed as impracticable for flow cytometry outside of very limited circumstances despite existing for decades and having wide acceptance in optical communications. *See, e.g.*, '582 Patent at 43:42-44:35. Commercially

115

*technologies*."  BEC-CYTEK-00235439 (emphasis in original).  Dr. Chen's innovations were further recognized by the multiple prospective buyers of his technology, including both Beckman Coulter (*see, e.g.*, BEC-CYTEK-0023539; BEC-CYTEK-00158644) and Beckton Dickenson, through which multiple scientists who would later form Cytek were introduced to, and examined, Dr. Chen's flow cytometers embodying his innovations.

> f)      *Teaching Away by Others*

Before the priority date, PMTs were the primary detector for flow cytometer fluorescent detection, and the use of APDs was relegated to niche use cases such as non-cellular particles such as beads.  Other references, rather than looking to solutions for implementing APDs, sought completely different solutions, such as identifying improvements in how PMTs were used and implemented.  For example, U.S. Patent No. 6,683,314 ("Oostman"), sought to find the most compact optimized detector clusters while working within the constraints of PMTs. Oostman found a polygonal arrangement of detectors, utilizing planar mirrors and precise arrangements of angles of beam splitters, "optimizes balance between reflection and transmission."  CYTEK_0000012414at 7:42-46.  Further, Oostman's star-shaped arrangement of PMTs on the outside of detector clusters at polygonal angles, *see, e.g.*, CYTEK_0000012414at FIGs 6-8, 8:21-26, provided a different optical path than, e.g., a zig-zag pattern due to the constraints of PMTs'

126

bulky design.  *See, e.g.*, CYTEK_0000012414 at 7:32-36 ("In FIG. 5, the transfer leg forwarded upstream from one beam splitter to the next follows a zigzag pattern. In FIG. 6, the transfer legs intersect in a star-shaped pattern yielding a more compact polygonal arrangement of detectors."); *see also* CYTEK_0000011930.  A POSA reading Oostman would be taught to follow the path of optimizing detector clusters using PMTs as well as using polygonal orientations, rather than look toward ways to unlock the use of APDs using curved optical elements, enabling an extremely compact zig-zag pattern of optical relay elements with focusing elements and APDs.

### h)    *Commercial Success*

Both the CytoFLEX platform and Accused Products have achieved significant commercial success by virtue of the technologies in the Asserted Patents.  For example, the CytoFLEX platform ██████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████ Customers

value affordable and compact, "benchtop" devices that provide a flexible number

of colors without compromising sensitivity and resolution, which is made possible

only through the patented features, including the implementation of compact

WDMs to enable the use of APDs.  *See, e.g.*, BEC-CYTEK-00035378; BEC-

CYTEK-00033859; BEC-CYTEK-00033843.  Demand for the Accused Products

is driven by customer preferences for features and benefits that result from

infringement of the inventions claimed in the Asserted Patents including, *e.g.*, high

performance at an affordable price and a flexible number of colors in a compact

instrument enabling spectral analysis, *see, e.g.*, CYTEK_0000026089;

CYTEK_0000029985; CYTEK_0000038804; CYTEK_0000241141;

CYTEK_0000349152; CYTEK_0000165781.  Further information regarding

commercial success of the CytoFLEX platform and Accused Products may be

derived from at least the following documents: *see, e.g.,* BEC-CYTEK-00158655;

CYTEK_0000020670; CYTEK_0000020985; BEC-CYTEK-00035378; BEC-

CYTEK-00033859; BEC-CYTEK-00033843; CYTEK_0000026089;

CYTEK_0000029985; CYTEK_0000038804; CYTEK_0000026089;

CYTEK_0000241141; CYTEK_0000349152.

longer distances and better enabling APDs, particularly small-area APDs. Further information regarding teaching away by others may be derived from at least the following exemplary documents: CYTEK_0000011595; CYTEK_0000011594; CYTEK_0000011596; CYTEK_0000011506; CYTEK_0000011507; CYTEK_0000011605; CYTEK_0000011505; CYTEK_0000011608; CYTEK_0000011516; CYTEK_0000011600; CYTEK_0000011599; CYTEK_0000011602; CYTEK_0000011509; CYTEK_0000011601; CYTEK_0000011597; CYTEK_0000011610; CYTEK_0000011510; CYTEK_0000011613; CYTEK_0000011517; CYTEK_0000011511; CYTEK_0000011512; CYTEK_0000011614; CYTEK_0000011618; CYTEK_0000011513; CYTEK_0000011519; CYTEK_0000011615; CYTEK_0000011616; CYTEK_0000011523; CYTEK_0000011620; CYTEK_0000011604; CYTEK_0000011606; CYTEK_0000011598; CYTEK_0000011621; CYTEK_0000011524; CYTEK_0000011611; CYTEK_0000011609; CYTEK_0000011525; CYTEK_0000011526; CYTEK_0000011612; CYTEK_0000011514; CYTEK_0000011622; CYTEK_0000011527; CYTEK_0000011520; CYTEK_0000011508; CYTEK_0000011532; CYTEK_0000011515; CYTEK_0000011521; CYTEK_0000011623; CYTEK_0000011528; CYTEK_0000011603; CYTEK_0000011529; CYTEK_0000011530; CYTEK_0000011522;

CYTEK_0000011624; CYTEK_0000011607; CYTEK_0000011625;

CYTEK_0000011531; CYTEK_0000011533; CYTEK_0000011619;

CYTEK_0000011617; CYTEK_0000011518; CYTEK_0000398815;

CYTEK_0000018178.

CYTEK_0000824631; CYTEK_0000368262;

CYTEK_0000892560; CYTEK_0000900139; CYTEK_0000900140;

CYTEK_0000892534; CYTEK_0000900157; CYTEK_0000900164;

CYTEK_0000900165; CYTEK_0000900166; CYTEK_0000900168; CYTEK_0000900170; CYTEK_0000900172; CYTEK_0000892838; CYTEK_0000893143; CYTEK_0000892389. Additional evidence and arguments are presented in Plaintiff's Initial and Supplemental Responses to Interrogatory No. 8.

Plaintiff further responds that information regarding commercial success may be derived from at least the following exemplary documents: CYTEK_0000020985; CYTEK_0000075125; BEC-CYTEK-00215913; BEC-CYTEK-00263409; BEC-CYTEK-00215964; CYTEK_0000075395; CYTEK_0000032867; BEC-CYTEK-00251070; BEC-CYTEK-00220748; BEC-CYTEK-00219740; BEC-CYTEK-00153729; CYTEK_0000079376; CYTEK_0000071944; CYTEK_00000134997; CYTEK_0000062690; CYTEK_0000037423; CYTEK_0000041552; CYTEK_0000481734; CYTEK_0000481528; CYTEK_0000127343; CYTEK_0000137347; BEC-CYTEK-00268322; BEC-CYTEK-00270892; BEC-CYTEK-00267056; BEC-CYTEK-00268858; BEC-CYTEK-00220152; BEC-CYTEK-00253475; BEC-CYTEK-00252579; BEC-CYTEK-00262500; BEC-CYTEK-00219459; BEC-CYTEK-00220151; BEC-CYTEK-00243467; BEC-CYTEK-00151170; CYTEK_0000075741; CYTEK_0000165670; CYTEK_0000892560; CYTEK_0000041592; CYTEK_0000473765; CYTEK_0000042061;

138

CYTEK_0000039987; CYTEK_0000061590; CYTEK_0000032057;

CYTEK_0000032429; CYTEK_0000032444; CYTEK_0000032642;

CYTEK_0000032867; CYTEK_0000058635.  Plaintiff incorporates by reference

its initial and supplemental responses to Interrogatory Nos. 6 and 24.

Plaintiff further responds that information regarding nexus may be derived

from at least the following exemplary documents: BEC-CYTEK-00166632; BEC-

CYTEK-00253482; BEC-CYTEK-00033904; BEC-CYTEK-00067552; BEC-

CYTEK-00038047; BEC-CYTEK-00035378; BEC-CYTEK-00033843; BEC-

CYTEK-00033838; BEC-CYTEK-00033859; BEC-CYTEK-00265573; BEC-

CYTEK-00153502; CYTEK_0000026089; CYTEK_0000241141;

CYTEK_0000349152; CYTEK_0000029915; CYTEK_0000165781;

CYTEK_0000008312; CYTEK_0000038804; CYTEK_0000029858;

CYTEK_0000842142; CYTEK_0000035354; CYTEK_0000137345;

CYTEK_0000029762; CYTEK_0000851866; CYTEK_0000330054;

CYTEK_0000029989; CYTEK_0000297466; CYTEK_0000032444;

CYTEK_0000032825; CYTEK_0000082026; CYTEK_0000354915;

CYTEK_0000030560; CYTEK_0000032439; CYTEK_0000032687;

CYTEK_000071944; BEC-CYTEK-00219740; CYTEK_0000020985;

CYTEK_0000075125; BEC-CYTEK-00215913; BEC-CYTEK-00263409; BEC-

CYTEK-00215964; CYTEK_0000075395; BEC-CYTEK-00251070; BEC-

00006801;   BEC-CYTEK-00006831;   BEC-CYTEK-00009252;   BEC-CYTEK-00006710;   BEC-CYTEK-00009230;   BEC-CYTEK-00006709;   BEC-CYTEK-00038722;   BEC-CYTEK-00041561;   BEC-CYTEK-00041564;   BEC-CYTEK-00041572;   BEC-CYTEK-00041575;   BEC-CYTEK-00041578;   BEC-CYTEK-00041581;   BEC-CYTEK-00038733;   BEC-CYTEK-00041584;   BEC-CYTEK-00066206;   BEC-CYTEK-00066214;   BEC-CYTEK-00066222;   BEC-CYTEK-00066230;   BEC-CYTEK-00000001;   BEC-CYTEK-00000740;   BEC-CYTEK-00006087;   BEC-CYTEK-00004404;   BEC-CYTEK-00009252;   BEC-CYTEK-00009230;   BEC-CYTEK-00009271;   BEC-CYTEK-00006922;   BEC-CYTEK-00010929;   BEC-CYTEK-00010840;   BEC-CYTEK-00006833;   BEC-CYTEK-00010840.

Plaintiff's investigation and discovery in this case are ongoing. Plaintiff reserves the right to supplement or amend this response as discovery, including expert discovery, and its investigation proceed.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 7 (OCT. 22, 2025)**

Plaintiff incorporates the General and Specific Objections and Responses set forth in its initial response to Interrogatory No. 7. Subject to and without waiving the foregoing general and specific objections, Plaintiff further responds as follows:

191

Further information responsive to this interrogatory may be found in testimony and exhibits of witnesses whose depositions have been taken to date and those yet to be taken, including testimony of party and third-party witnesses.

**INTERROGATORY NO. 8**

Separately for each Asserted Patent and Accused Product, describe in detail the factual and legal basis for Your contention that Defendants' alleged infringement of the Asserted Patent(s) has been willful, including an identification by Bates number of the Documents You intend to rely upon and the names of any witnesses You intend to rely upon for willfulness.

**RESPONSE TO INTERROGATORY NO. 8**

Plaintiff objects to this Interrogatory as compound, overly broad, unduly burdensome, not relevant to any party's claims or defenses, and as not proportional to the needs of the case, including without limitation because it is not limited in time. Plaintiff further objects to this Interrogatory because the phrases used—including, without limitation, the phrase "intend to rely upon"—are vague, ambiguous and undefined. Plaintiff further objects to this Interrogatory as improperly containing multiple discrete subparts that are not logically or factually subsumed within and necessarily related to the primary question and therefore each amount to a separate interrogatory. Plaintiff reserves the right to count each subpart as a separate interrogatory against Defendant's interrogatory limit.

Plaintiff further objects to this Interrogatory to the extent it rests on a legal conclusion, including without limitation as to "legal basis" and "willfulness."

192

Plaintiff further objects to this Interrogatory as premature because it seeks contentions, information, expert discovery, or opinions in a manner inconsistent with the Federal Rules of Civil Procedure, the Local Rules, and/or the Court's Scheduling Order (D.I. 25), and insofar as Plaintiff's response may depend on, without limitation, Defendant's disclosure of the factual and legal bases for its affirmative defenses and counterclaim and fact discovery which has not yet occurred, and because Defendant bears the burden on its affirmative defenses and counterclaim—including invalidity—and has yet to provide discovery and provide its contentions on its defenses and counterclaim.  In particular, Plaintiff objects to this Interrogatory as premature because it seeks Plaintiff's willfulness contentions prior to the date set by the Court's Scheduling Order (D.I. 25).

Incorporating by reference the above specific and general objections, Plaintiff responds that its complaint, which is incorporated herein by reference, cites specific facts that show Cytek has known of, should have known of, and/or has been willfully blind to the Asserted Patents since at least ▮▮▮▮▮▮ and knew of, should have known of, and/or was willfully blind to its infringement but acted despite an objectively high likelihood that such acts would infringe the Asserted Patents.  (D.I. 1 ¶¶ 16-23, 31, 39.)

Plaintiff further responds that Beckman Coulter and Cytek were and are competitors in the spectral flow cytometry industry.  Beckman Coulter's flow

███████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

Pursuant to Fed. R. Civ. P. 33(d), Beckman Coulter identifies the following documents that contain information that may be relevant to the subject matter of this Interrogatory: CYTEK_0000020892; CYTEK_0000020893; CYTEK_0000151524; CYTEK_0000151525; CYTEK_0000079394; CYTEK_0000079513; CYTEK_0000079710; CYTEK_0000081739.

Plaintiff further responds that individuals that are most likely knowledgeable regarding Cytek's knowledge and willful infringement of Plaintiff's patents include Cytek's current and former employees, including without limitation

197

██████████████████████████. Plaintiff further identifies Leo Shi and Yong Qin Chen as individuals knowledgeable about the subject matter of this Interrogatory.

Plaintiff's investigation and discovery in this case are ongoing. Plaintiff reserves the right to supplement or amend this response as discovery, including expert discovery, and its investigation proceed.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 8 (OCT. 22, 2025)**

Plaintiff incorporates the General and Specific Objections and responses set forth in its initial and supplemental responses to Interrogatory No. 8.  Plaintiff incorporates fully by reference the allegations in its Complaint, Initial Infringement Contentions, and any amendments or supplements thereto. Plaintiff incorporates by reference its disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1), Paragraph 3 of the Delaware Default Standard for Discovery, Paragraph 3 of the Court's Scheduling Order (D.I. 25, 55), and all amendments and supplements thereto.  Plaintiff incorporates by reference its initial and supplemental responses to Interrogatory Nos. 4 and 9.  Subject to and without waiving the foregoing general and specific objections, Plaintiff further responds as follows:

███████████████████████████████████████

███████████████████████████████████████

████████. *See, e.g.,* CYTEK_0000892389; CYTEK_0000900155;

198

CYTEK_0000892402; CYTEK_0000895619; CYTEK_0000892902;

CYTEK_0000900198; CYTEK_0000898903; CYTEK_0000009872.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████

Further information responsive to this interrogatory may be found in

testimony and exhibits of witnesses whose depositions have been taken to date and

those yet to be taken, including testimony of party and third-party witnesses.

**INTERROGATORY NO. 9**

For each apparatus, service, product, device, process, method, or other instrumentality (collectively, "Product") You contend practices or embodies an Asserted Claim, provide a chart identifying specifically where each element of each Asserted Claim is found within each Product, provide an identification of the first sale dates, the dates of design and development, and the time period for public availability in the United States, provide an identification by Bates number of all Documents supporting Beckman Coulter's allegations, and provide the names of any witnesses You intend to rely upon for your contention(s).

**RESPONSE TO INTERROGATORY NO. 9**

Plaintiff objects to this Interrogatory as compound, overly broad, unduly

burdensome, not relevant to any party's claims or defenses, and as not proportional

to the needs of the case, including without limitation to the extent it seeks

information directed to "each apparatus, service, product, device, process, method,

or other instrumentality," and "each element of each Asserted Claim," and because it is not limited in time or geography. Plaintiff additionally objects to this Interrogatory because it purports to impose upon Plaintiff any duty or obligation to answer in a specific form of response that is beyond the scope of its discovery obligations under the Federal Rules of Civil Procedure, Local Rules, the Court's Scheduling Order (D.I. 25), and/or other applicable law. Plaintiff further objects to this Interrogatory because the phrases used—including, without limitation, the phrases "first sale dates," "the dates of design and development," "the time period for public availability," and "intend to rely upon"—are vague, ambiguous and undefined. Plaintiff further objects to this Interrogatory as improperly containing multiple discrete subparts that are not logically or factually subsumed within and necessarily related to the primary question and therefore each amount to a separate interrogatory. Plaintiff reserves the right to count each subpart as a separate interrogatory against Defendant's interrogatory limit.

Plaintiff further objects to this Interrogatory to the extent it rests on a legal conclusion, including without limitation as to "practice[ing] or embod[ying] an Asserted Claim," "first sale dates," and "public availability in the United States." Plaintiff further objects to this Interrogatory as premature because it seeks contentions, information, expert discovery, or opinions in a manner inconsistent with the Federal Rules of Civil Procedure, the Local Rules, and/or the Court's Scheduling

200

OF COUNSEL:

Omar A. Khan
Jeffrey A. Dennhardt
Lauren E. Matlock-Colangelo
WILMER CUTLER PICKERING HALE
AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

Asher S. McGuffin
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

Dated:  November 5, 2025

/s/ Christine D. Haynes
Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com

Attorneys for Plaintiff

294

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2025, true and correct copies of the

foregoing document were served upon the following counsel of record in the

manner indicated:

**BY E-MAIL**

Karen Jacobs
Jeremy A. Tigan
Cameron P. Clark
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE  19801

**BY EMAIL**

Reuben H. Chen
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304

Elizabeth M. Flanagan
Cooley LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402

Adam Pivovar
Dustin M. Knight
Rosalynd D. Upton
David Yun
Cooley LLP
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004

*/s/ Christine D. Haynes*
Christine D. Haynes (#4697)
haynes@rlf.com

# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| BECKMAN COULTER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-0945-CFC-EGT |
| | ) | |
| CYTEK BIOSCIENCES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**OPENING EXPERT REPORT OF DR. JESSICA P. HOUSTON, PHD**
**REGARDING INFRINGEMENT OF U.S. PATENT NOS. 10,330,582, 11,703,443, AND 12,174,107**

December 19, 2025

_____
Dr. Jessica P. Houston

Houston Opening Infringement Report

Cytek's Knowledge of the Patents; Knowledge of Xitogen, Dr. Chen, and CytoFLEX; ███

███

251:1.  I have reviewed Dr. Schaafsma's report, and understand that ███████████████

███████████████████████████████████  Schaafsma Op.

Rep., ¶¶94-97, 188-192, 371-400.

487.  ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████

488.  Cytek filed U.S. Patent No. 11,169,076 on July 25, 2017, which includes the '412 patent in its references cited.  CYTEK_0000217139 at CYTEK_00000217140.  Cytek filed U.S. Patent No. 11,33,597 on March 30, 2018, and again included the '412 patent in its references cited.  CYTEK_0000217165 at CYTEK_0000217166.

489.  Therefore, it is my opinion that ██████████████████████████

████████████████████████████████████████

████████████████████████████████████.

██  ████████████████████████████████████

490.  I understand that ████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

235

Houston Opening Infringement Report
Cytek's Knowledge of the Patents; Knowledge of Xitogen, Dr. Chen, and CytoFLEX; ██

██████ ████████████████████████████████████ *Id.* at

98:6-8.

491.    I understand that ███████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██  ████████████████████████████████████████

██████████████████████████████████████

---

[12] First Amended Complaint ¶ 78, *Becton, Dickinson & Co. v. Cytek Biosciences, Inc.*, No. 3:18-cv-00933(N.D. Cal. June 8, 2018), Dkt. No. 57; Answer and Counterclaim to First Amended Complaint ¶ 78, *Becton, Dickinson & Co. v. Cytek Biosciences, Inc.*, No. 3:18-cv-00933 (N.D. Cal. Sept. 7, 2018), Dkt. No. 70; Yan Tr. at 123:20-124:24.

Houston Opening Infringement Report
Cytek's Knowledge of the Patents; Knowledge of Xitogen, Dr. Chen, and CytoFLEX; ■



---

[13] *See also*

Houston Opening Infringement Report

Cytek's Knowledge of the Patents; Knowledge of Xitogen, Dr. Chen, and CytoFLEX; ██

██

- ████████████████████████████
████████████████████

██ ████████████████████████████
████████████████████

██ ████████████████████████████████
████████████████████████
████████████████

██ ████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████

██ ████████████████████████████
████████████

██ ████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████

██ ████████████████████████████████
████████████████████████
████████████

Houston Opening Infringement Report
Cytek's Knowledge of the Patents; Knowledge of Xitogen, Dr. Chen, and CytoFLEX; ██

██

- ████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
██████████████████████████████████ █

█ ████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
█████████████████████████████████
████████████████████████████

█ ████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
██████████████████████████████████ █
█████████████████████

█ ████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
█████████ █

█ ████████████████████████████████████
████████████████████████████████████
██████████████████

█ ████████████████████████████████████

█ ████████████████████████████████████
████████████████████████████████████
████████████████████████████████

█ ████████████████████████████████████
████████████████████████████████████
███████████████████████████

█ ████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
█████████████████████ ███████████████
███████████████████████
███████████

Houston Opening Infringement Report
Cytek's Knowledge of the Patents; Knowledge of Xitogen, Dr. Chen, and CytoFLEX; █████
█████

493.    ███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████



Houston Opening Infringement Report
Cytek's Knowledge of the Patents; Knowledge of Xitogen, Dr. Chen, and CytoFLEX;



*See, e.g.*, CYTEK 0000988900; Jiang Tr. at 177:18-25, 176:14-177:17, 186:1-11; CYTEK_0000967317; CYTEK_0000967248; Yan Tr. at 172:16-173:8; CYTEK_0000967317; CYTEK_0000897410; CYTEK_0000892549 at CYTEK_0000892551; Yan Tr. at 187:2-7; CYTEK_0000892389; Yan Tr. at 191:19-20; CYTEK_0000893935; CYTEK_0000900140; Yan Tr. at 194:19-22, 195:15-17; CYTEK_0000892402 at CYTEK_0000892424; Yan Tr. at 199:15-21; CYTEK_0000892402 at CYTEK_0000892424; Yan Tr. at 200:19-25; CYTEK_0000987089 at CYTEK_0000987106; Yan Tr. at 204:7-15; CYTEK_0000892534; Yan Tr. at 216:18-222:12; CYTEK_0000892534; CYTEK_0000894989; Yan Tr. at 227:4-10, 228:7-12; CYTEK_0000900143 at CYTEK_0000900143-44; CYTEK_0000900155; CYTEK_0000900168; CYTEK_0000900155

Houston Opening Infringement Report

Cytek's Knowledge of the Patents; Knowledge of Xitogen, Dr. Chen, and CytoFLEX; ███

███

at CYTEK_0000900155-56; Yan Tr. at 241:13-245:12; *id.* at 242:18-19; *id.* at 243:22-25; *id.* at

244:1-245:12; CYTEK_0000892836; CYTEK_0000892837; Yan Tr. at 237:21-238:12;

CYTEK_0000900181; Yan Tr. at 239:3-19. *See also* CYTEK_0000892902;

CYTEK_0000900193; CYTEK_0000892987 at CYTEK_0000892988; Yan Tr. at 247:1-12;

CYTEK_0000900281 at CYTEK_0000900282-84.

498. ███████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

███████████████████ CYTEK_0000900198; Yan Tr. at 251:18-

252:5; CYTEK_0000893434; CYTEK_0000893693; CYTEK_0000099802 at

CYTEK_0000099803; CYTEK_0000099802; CYTEK_0000084774; Yan Tr. at 141:2-10,

143:5-21, 152:23-154:3; CYTEK_0000951874.

Houston Opening Infringement Report
Cytek's Willful Infringement of the Asserted Patents

499.    Based on my experience designing and building flow cytometers and my professional expertise, this evidence is inconsistent with Cytek undertaking independent design as it relates to the WDMs claimed in the Asserted Patents.  Indeed, ██████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████  Thus, it is my conclusion that Cytek copied Dr. Chen's inventions in designing and developing the Accused Products.

## XIII.  Cytek's Willful Infringement of the Asserted Patents

500.    ████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████  .  Specifically, with the knowledge of the Asserted Patents, the family of the Asserted Patents, and the claimed inventions, as described above, Cytek deliberately and wantonly copied the claimed inventions recited in the Asserted Patents in a manner that infringed those patents.  Cytek did so knowing the Accused Products infringed the Asserted Patents, and its purported non-infringement positions were not reasonable.

501.    To the extent Cytek claims it was not aware of the Asserted Patents, it was nonetheless willfully blind to the patents and its infringement of those patents, including because

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████  Cytek was aware of a high likelihood the Accused Products

243

Houston Opening Infringement Report
Beckman Coulter's CytoFLEX Flow Cytometers

infringed the patent family and instead actively avoided identifying, reviewing, and analyzing the

Asserted Patents.

## XIV.  Beckman Coulter's CytoFLEX Flow Cytometers

### A.      The CytoFLEX Platform

#### 1.       Development of CytoFLEX

502.    Beckman Coulter developed the CytoFLEX Platform by scaling and expanding

the compact and high-sensitivity flow cytometer technology pioneered by the XTG-1600 flow

cytometer that was first built by Xitogen Technologies.  The first CytoFLEX instrument was

launched in November 2014 and was based on the XTG-1600 flow cytometer designed by Dr.

Chen at Xitogen.  *See, e.g.*, BEC-CYTEK-00037985-00038046 at BEC-CYTEK-00037987.

503.    Since the launch of the original CytoFLEX Platform, Beckman Coulter has then

developed a family of flow cytometry products based on technologies common to the CytoFLEX

Platform: CytoFLEX S, CytoFLEX LX, CytoFLEX nano, CytoFLEX SRT, DxFLEX, and

CytoFLEX mosaic.  *See, e.g.*, *id.* at BEC-CYTEK-00037987-00037989; BEC-CYTEK-

00136717-00136735 at BEC-CYTEK-00136718, BEC-CYTEK-00136721-00136724. As

detailed below, I conclude that the CytoFLEX Platform Products practice the Asserted Patents,

and I understand that the CytoFLEX Platform Products are marked with the Asserted Patents and

that the CytoFLEX Platform was marked with the '582 patent by at least October 17, 2021, the

CytoFLEX Platform was marked with the '443 patent by at least June 22, 2024, and the

CytoFLEX Platform is currently marked with the '107 patent, which Cytek has been aware of

since at least January 9, 2025.  *See* BEC's Seventh Supp. R&Os to Cytek's First Set of

Interrogatories (Nos. 1-12) at Interrogatory No. 11; Cytek's Answer to First Amended Complaint

and Counterclaims (Dkt. 48) at Counterclaims ¶¶ 13-16, 25-30; Cytek's Tenth Supp. R&Os to

Plaintiff's First Set of Interrogatories (Nos. 1-15) at Interrogatory Nos. 14-15; Plaintiff's First

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BECKMAN COULTER, INC., <br><br> Plaintiff, <br><br> v. <br><br><br> CYTEK BIOSCIENCES, INC., <br><br> Defendant. | C.A. No. 24-0945-CFC <br><br>  |

# PLAINTIFF BECKMAN COULTER, INC.'S OPPOSITION TO
# CYTEK'S MOTION *IN LIMINE* NO. 2

**TABLE OF EXHIBITS**[1]

| Exhibit No. | Exhibit |
|---|---|
| 1 | Excerpts from Opening Expert Report of Michele Riley (Dec. 19, 2025) |
| 2 | Excerpts from Opening Expert Report of David Schaafsma (Dec. 19, 2025) |
| 3 | Excerpts from Deposition of Bing Shan (Oct. 24, 2025) |
| 4 | Excerpts from Opening Invalidity Expert Report of Fedor Ilkov, Ph.D. (Dec. 19, 2025) |
| 5 | Excerpts from Deposition of Fedor Ilkov, Ph.D. (Feb. 24, 2026) |

---

[1] Exhibits cited in this opposition as "Ex. __" are attached to the Declaration of L. Matlock-Colangelo, filed as an attachment to this brief.

Cytek's Motion ("Mot.") seeking to exclude evidence and argument that Cytek copied Beckman's technology should be denied in full.  During the liability phase, evidence that Cytek copied Beckman's patented technology is admissible to show at least (1) the subjective intent element of inducement, (2) direct infringement, (3) copying as an objective indicia of non-obviousness, and (4) enablement.[2]  During the damages phrase, it is admissible to show (5) willfulness, as Cytek admits.  Mot. 2.  Cytek's Motion fails for each of these independent reasons.

*First*, Cytek incorrectly contends that evidence of its copying is "irrelevant to BEC's opening statement and affirmative case."  Mot. 1.  Just as Cytek concedes that evidence of copying is relevant to willfulness, Mot. 2, it is likewise probative of Cytek's subjective intent to cause infringement by others.  *See Roche Diagnostics v. Meso Scale Diagnostics*, 30 F.4th 1109, 1119 (Fed. Cir. 2022) ("the intent standard for inducement is akin to the one for willfulness, as both rest on the subjective intent of the accused infringer").  Because both questions ask the jury to evaluate Cytek's state of mind, evidence of copying is admissible both to show liability for induced infringement in Phase I and for willful infringement in Phase II.  *See Sonos v. D&M Holdings*, 2017 WL 5633204, at *2 (D. Del. Nov. 21, 2017) ("copying or reverse

---

[2] Cytek agrees Beckman may rely on copying evidence to support non-obviousness. Mot. 1.  Contrary to Cytek's suggestion (Mot. 3), Beckman intends to tie all evidence of copying to the claimed inventions.  Moreover, to the extent Cytek is seeking a ruling on the sufficiency of Beckman's copying evidence, whether Beckman can prove copying "cannot be decided" on a motion *in limine*.  *St. Jude Med. v. Volcano Corp.*, 10-00631-RGA-MPT, D.I. 395, at 1 (D. Del. Oct. 9, 2012).

1

engineering … generally admissible" as relevant to "inducement of infringement" or "willful infringement"); *Power Integrations v. Fairchild Semiconductor Int'l*, 843 F.3d 1315, 1333 (Fed. Cir. 2016) ("culture of copying" relevant to inducement); *Digital Reg of Texas v. Adobe*, 2014 WL 4090550, at *8 (N.D. Cal. Aug. 19, 2014) ("evidence supporting … copying" "relevant" to "induced infringement"); *Motio v. BSP Software*, 2016 WL 4430452, at *5 (E.D. Tex. Aug. 22, 2016) (copying supported whether defendant "possessed the intent to cause infringement.").

Further, under the facts of this case, copying is also relevant to direct infringement. Cytek relies solely on outdated dicta in *Martin v. Barber*, which actually involved "compar[ing] the operation of a preferred embodiment" in the asserted patent's specification to an accused product. 755 F.2d 1564, 1567 (Fed. Cir. 1985). The Federal Circuit subsequently clarified that "when a commercial product meets all of the claim limitations, then a comparison to that product may support a finding of infringement." *Adams Respiratory Therapeutics v. Perrigo*, 616 F.3d 1283, 1288-89 (Fed. Cir. 2010). Because Beckman's CytoFLEX products practice the Asserted Claims, *e.g.*, Ex. 2 ¶ 359, Beckman is "free" to use "product-to-product comparison[s]" to support infringement, provided the comparison relates to limitations of the asserted claims. *SZ DJI Tech. v. Autel Robotics USA*, 2021 WL 3403930, at *3 (D. Del. Aug. 4, 2021).

**Second**, Cytek is mistaken that evidence of copying is only relevant for

2

validity as an objective indicia of nonobviousness (Mot. 3).  The Federal Circuit and District of Delaware have held that copying is also probative of enablement.  *See American Axle & Mfg. v. Neapco Holdings*, 2024 WL 125186, at *3 (D. Del. Jan. 11, 2024) ("Plaintiff may introduce evidence of copying if Defendants raise … non-enablement defense"); *Medtronic v. Cardiac Pacemakers*, 721 F.2d 1563, 1583 (Fed. Cir. 1983) ("copying may defeat assertions of nonenablement.").  Beckman should be permitted to address copying to rebut any allegations of non-enablement by showing that Cytek was able to make and use the claimed inventions.

*Finally*, Cytek's cases do not support undue prejudice, confusion, or waste of time.  For example, in *Helios Software v. SpectorSoft*, copying evidence was excluded because the plaintiff "ha[d] no intention" to "introduce a theory of copying." No. 12-81-LPS, D.I. 572-1 at 629 (D. Del. May 27, 2015); *see also Mfg'ing Resources Int'l. v. Civiq Smartscapes*, No. 17-269-RGA, D.I. 289-5 at 4 (D. Del. Sep. 3, 2019) (no "expert analysis" showing embodiment of the claims); *Finjan v. Blue Coat Sys.*, 5:13-cv-03999, D.I. 337 at 3-5 (D. Del. June 25, 2015) (copying not used to support indirect infringement or enablement).  Moreover, as Cytek admits (Mot. 3), any such risk can be addressed with jury instructions.  *SZ DJI*, 2021 WL 3403930, at *3.  Accordingly, Beckman should be permitted to present evidence of Cytek's copying to support induced, direct, and willful infringement, as well as enablement, and non-obviousness.

OF COUNSEL:

Robert J. Gunther, Jr.
Omar A. Khan
Jeffrey A. Dennhardt
Laura Macro
Lauren Matlock-Colangelo
Jennifer L. Graber
Maggie Sawin
Kelly A. Todd
WILMER CUTLER PICKERING
HALE and DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

James Dowd
WILMER CUTLER PICKERING
HALE and DORR LLP
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
(213) 443-5300

Akkad Y. Moussa
WILMER CUTLER PICKERING
HALE and DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037

*/s/ Frederick L. Cottrell III*
Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com

*Attorneys for Plaintiff*

4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 9, 2026, true and correct copies of the foregoing

document were served upon the following counsel of record in the manner indicated:

<table>
<tr><td><b><u>BY E-MAIL</u></b></td><td><b><u>BY EMAIL</u></b></td></tr>
<tr><td>

Karen Jacobs<br>
Jeremy A. Tigan<br>
Cameron P. Clark<br>
Morris, Nichols, Arsht & Tunnell LLP<br>
1201 N. Market Street<br>
P. O. Box 1347<br>
Wilmington, DE  19801

</td><td>

Reuben H. Chen<br>
Cooley LLP<br>
3175 Hanover Street<br>
Palo Alto, CA 94304<br>
<br>
Elizabeth M. Flanagan<br>
Cooley LLP<br>
30 S. 9th Street, 7th Floor<br>
Minneapolis, MN 55402<br>
<br>
Adam Pivovar<br>
Dustin M. Knight<br>
Rosalynd D. Upton<br>
David Yun<br>
Cooley LLP<br>
1299 Pennsylvania Avenue NW<br>
Suite 700<br>
Washington, DC 20004

</td></tr>
</table>

*/s/ Christine D. Haynes*
Christine D. Haynes (#4697)
haynes@rlf.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| BECKMAN COULTER, INC., <br><br> Plaintiff, <br><br> v. <br><br> CYTEK BIOSCIENCES, INC., <br><br> Defendant. | C.A. No. 24-0945-CFC |

**[PROPOSED] ORDER DENYING CYTEK'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE EVIDENCE, TESTIMONY, AND ARGUMENT THAT CYTEK COPIED, STOLE, OR MISAPPROPRIATED THE <u>TECHNOLOGY IN BEC'S PRODUCTS</u>**

Defendant Cytek Biosciences, Inc. ("Cytek") having filed a Motion to Exclude evidence, testimony, or argument excluding evidence, testimony, and argument that Cytek copied, stole, or misappropriated the technology in Beckman Coulter's products, and the Court having considered the Motion and the accompanying briefs; now, therefore,

IT IS HEREBY ORDERED that the motion is DENIED.

SO ORDERED this ____day of _____, 2026.


_____

Hon. Colm F. Connolly
Chief, United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

BECKMAN COULTER, INC.,

                Plaintiff,

       v.

CYTEK BIOSCIENCES, INC.,

                Defendant.

C.A. No. 24-0945-CFC



# DECLARATION OF LAUREN MATLOCK-COLANGELO IN SUPPORT OF PLAINTIFF BECKMAN COULTER, INC.'S OPPOSITION TO CYTEK'S MOTIONS *IN LIMINE*

I, Lauren Matlock-Colangelo, declare as follows:

1.     I am licensed to practice law in the State of New York and have been admitted to this Court *pro hac vice* by Order dated September 3, 2024.  D.I. 8 (so ordered).

2.     I am an attorney with the law firm of Wilmer Cutler Pickering Hale and Dorr LLP, located at 7 World Trade Center, 250 Greenwich Street, New York, New York 10007, and counsel for Plaintiff Beckman Coulter, Inc. ("Beckman Coulter").

3.     I have personal knowledge of the facts set forth herein and with the proceedings in this case, and if called to testify, I would competently testify thereto.

4.     I submit this Declaration in support of the following oppositions by Beckman Coulter:

> a.  Plaintiff Beckman Coulter, Inc.'s Opposition to Cytek's Motion *in Limine* No. 1 to Exclude Evidence, Testimony, and Argument Relating to Either Party's Other Litigations or Arbitrations
>
> b.   Plaintiff Beckman Coulter, Inc.'s Opposition to Cytek's Motion *in Limine* No. 2 to Exclude Evidence, Testimony, and Argument that Cytek Copied, Stole, or Misappropriated the Technology in BEC's Products

1

c. Plaintiff Beckman Coulter, Inc.'s Opposition to Cytek's Motion *in Limine* to Exclude Evidence, Testimony, and Argument Relating to the Court's Commentary Regarding Claim Construction

5. A true and correct copy of excerpts from the Opening Expert Report of Michele Riley, dated December 19, 2025, is attached hereto as **Exhibit 1**.

6. A true and correct copy of excerpts from the Opening Expert Report of David Schaafsma, dated December 19, 2025, is attached hereto as **Exhibit 2**.

7. A true and correct copy of excerpts from the deposition transcript of Bing Shan, dated October 24, 2025, is attached hereto as **Exhibit 3**.

8. A true and correct copy of excerpts from the Opening Invalidity Expert Report of Fedor Ilkov, Ph.D., dated December 19, 2025, is attached hereto as **Exhibit 4**.

9. A true and correct copy of excerpts from the deposition transcript of Fedor Ilkov, Ph.D., dated February 24, 2026, is attached hereto as **Exhibit 5**.

10. I declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code.

2

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 9th day of July, 2026.

/s/  Lauren E. Matlock-Colangelo

Lauren E. Matlock-Colangelo

3

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2026, true and correct copies of the foregoing

document were served upon the following counsel of record in the manner indicated:

**BY E-MAIL**

Karen Jacobs
Jeremy A. Tigan
Cameron P. Clark
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE  19801

**BY EMAIL**

Reuben H. Chen
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304

Elizabeth M. Flanagan
Cooley LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402

Adam Pivovar
Dustin M. Knight
Rosalynd D. Upton
David Yun
Cooley LLP
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004

*/s/ Christine D. Haynes*
Christine D. Haynes (#4697)
haynes@rlf.com

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| BECKMAN COULTER, INC.,<br><br>      Plaintiff,<br><br>    v.<br><br>CYTEK BIOSCIENCES, INC.,<br><br>      Defendant. | C.A. No. 24-000945-CFC |

**EXPERT REPORT OF MICHELE M. RILEY**

December 19, 2025



150.    My bases for the conclusions summarized in **Table 8** and **Table 9** are discussed in the remainder of this section.

### *Standard Material Costs*

151.    Standard material costs include Cytek's costs for the materials it uses to produce the Accused Products.



[412] My review of Cytek documents indicates that

[413] This is consistent with

, for example. [414]

### *Other Direct Costs*

152.    "Other direct costs" include Cytek's costs associated with the production of the Accused

---

[412] Deposition of Al Hernandez, October 8, 2025, pp. 50-51.

[413] Exhibits 22.4 and 22.8.

[414] CYTEK_0000115974; See, also, Deposition of Al Hernandez, October 8, 2025, pp. 50-51;

See Deposition of Al Hernandez, October 8, 2025, pp. 95-96.



Products, beyond standard material costs.[415] These include ███████████████ ████████ ████████ ████ ██████ ██████ ███████████████████████████████ ████ ██████████████████████ ████████ ██████████████████████████.[424]

---

[415] CYTEK_0000084065 (2021); CYTEK_0000213648 (2022); CYTEK_0000068829 (2023); CYTEK_0000437854 (2024); CYTEK_0000289623 (2024); Cytek stated in its 2024 form 10-K that cost of sales "associated with our products primarily consists of manufacturing-related costs incurred in the production process, inventory write-downs, warranty costs, third-party royalty costs, personnel and related costs, costs of component materials, overhead, packaging and delivery and depreciation expense." Cytek also stated that its gross margins factor in "production overhead costs." See Cytek Biosciences, Inc. Form 10-K for the fiscal year ended December 31, 2024, pp. 70, 72, and 75.

[416] ██████████████████████████████████████████████████████████████████████████████ See Deposition of Al Hernandez, October 8, 2025, p. 97 and CYTEK_0000084065 (2021); CYTEK_0000213648 (2022); CYTEK_0000068829 (2023); CYTEK_0000437854 (2024); CYTEK_0000289623 (2024).

[417] █████████████████████████████████████████████ See CYTEK_0000115974; Deposition of Al Hernandez, October 8, 2025, p. 130.

[418] ████████████████████████████████████ See CYTEK_0000115974.

[419] ████████████████████████████████████████████████████████████████ See CYTEK_0000115974 and Deposition of Al Hernandez, October 8, 2025, p. 129.

[420] ████████████████████████████████ See CYTEK_0000115974.

[421] ████████████████████████████████████████████. See CYTEK_0000115974.

[422] █████████████████████████████████ See CYTEK_0000115974.

[423] As further discussed in *Georgia-Pacific* factor 2, I am aware that █████████████████████████████████████████████████████████████████████████████████████████████████████ See CYTEK_0000115974; CYTEK_0000071182; CYTEK_0000020561 ███████████████; CYTEK_0000426043 ██████████████████████████.

[424] ██████████████████████████████████████████████████████████████████████████ See CYTEK_0000115974.

████████████████████████████████████████████

153.    I used ████████████████████████ documents (████████████████████ ████████████) to calculate Cytek's other direct costs.[425] Because these documents cover all Cytek instruments, I calculated each cost category other than royalty expense as a percentage of revenue and assumed that this percentage applied proportionally to the Accused Product revenue. ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████.[426]

154.    Deducting standard and indirect costs yields a gross margin for the Accused Products ranging from ████████[427]

155.    This estimate is supported by Cytek's budgets for the Accused Products, which I understand are ████████████████████████████,[428] and which show ████████████████████████████████████

████████████████. For example:

- ████████████████████████████████.[429]

- ████████████████████████████████████ ████[430]

- ████████████████████████████████████ ████.[431]

---

[425] CYTEK_0000115974.

[426] ████████████████████████████████ ████████s (Deposition of Wenbin Jiang, Ph.D., November 26, 2025, p. 321).

[427] Exhibit 30.2; I note that this is a conservative measure of gross margin, ████████████████ ████████████████████████████ (CYTEK_0000139886).

[428] Deposition of Al Hernandez, October 8, 2025, pp. 11-13.

[429] CYTEK_0000448293.

[430] CYTEK_0000109394 at 397.

[431] CYTEK_0000208404; ████████████████████ ████████████████

### c. The Market Approach

531. The Market Approach values assets based on comparable transactions between unrelated parties. "The Market Approach to valuing intangible assets is the process by which a market value estimate is derived by analyzing similar intangible assets that have recently been sold or licensed and then comparing those intangible assets to the subject intangible asset."[1066] When considering the Market Approach, an examination of the terms of transfer for similar technology is undertaken and inferences are drawn from those observations to identify terms the parties might have agreed to at the time of the hypothetical negotiation.

532.

533. Cytek's CEO and Chairman of the Board, Dr. Jiang, ███████████████████████ ████████████████████████████████████ ██████████████████████████████.[1071]

---

[1066] Reilly, Robert F. and Schweihs, Robert P., Valuing Intangible Assets, 1999, pp. 157-158.

[1067] Deposition of Patricia del Castillo, October 24, 2025, p. 7.

[1068] Deposition of Patricia del Castillo, October 24, 2025, pp. 56-57.

[1069] Redacted Deposition of Mario Koksch, November 7, 2025, pp. 8, 35-36.

[1070] Redacted Deposition of Mario Koksch, November 7, 2025, pp. 80, 84, 263-264.

[1071] Deposition of Wenbin Jiang, Ph.D., November 26, 2025, pp. 15, 321-322.

████████████████████████████████████████████████████████

534. Under the Market Approach, I have analyzed the documents discussed below, including a ████████████████████████████████████████████ discussed by Dr. Jiang and ████████████████████████████████████████████████ ████████████████████████████████████████████

          *i.*     ████████████████████████████

535. I reviewed a document titled, ████████████████████████████████ ██████████████████████████████[1072] ████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ █████████████████████████████.[1073]

536. ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ███████████████████████████.[1074] I note, in the interest of completeness under my analysis of the Market Approach, that ██████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████[1075]

537. Because this document references a ████████████████████ ████████████ I reviewed ██████████████████████████ ██████████████████████████████[1076] ████████████ ██████████████████████████████████████████████████

---

[1072] CYTEK_0000115286 at 286.
[1073] CYTEK_0000115286 at 289.
[1074] CYTEK_0000115286 at 294.
[1075] CYTEK_0000115286 at 294.
[1076] CYTEK_0000115286 at 294, 476.

███████████████████████████████████████████████

iv.    ████████████████████████████████████████████

544.   ████████████████████████████████████████████████████████████

████████████████████████████████ [1098] The agreement settled ongoing litigation between the parties, in which BD accused Cytek and a number of its former employees of trade secret misappropriation and breach of contract. [1099] █████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ [1100] C████████████████████████████████████████

████████ [1101] The parties also agreed to dismiss the pending litigation (without either party admitting liability in the matter). [1102] █████████████████████████████

████████████████████████. [1103] ████████████████████████████. [1104]

545.   The Licensed Products ██████████████████████████████████████ [1105] █████████

████████████████████████████████████████████████████████

██████████. [1106]

---

[1098] CYTEK_0000020561 at 561.

[1099] CYTEK_0000020561 at 561; Complaint in *Becton, Dickinson and Company v. Cytek Biosciences Inc., Ming Yan, Alfred Riley, David Vrane, Stephen Zhang, Zhenxiang Gong, Alex Zhong, Marina Jaimes, Gil Reinn, and Janelle Shook (Case 3:18-cv-00933-SK)*, pp. 23-35; Deposition of Wenbin Jiang, Ph.D., November 26, 2025, pp. 271-272.

[1100] CYTEK_0000020561 at ████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ See

CYTEK_0000020561 at 563. ████████████████████████████████████████████

████████████████████████████████ See CYTEK_0000020561 at 563.

[1101] CYTEK_0000020561 at 569.

[1102] CYTEK_0000020561 at 565, 576. See, also, Deposition of Wenbin Jiang, Ph.D., November 26, 2025, pp. 272-273.

[1103] CYTEK_0000020561 at 570.

[1104] CYTEK_0000020561 at 565-566.

[1105] CYTEK_0000020561 at 563, 569.

[1106] Discussions with Drs. Houston and Schaafsma.

██████████████████████████████████████████

546.    The agreement defines ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████.[1107]

547.    In consideration for the above license grant, releases, covenant not to sue, and litigation

dismissal, ██████████████████████████████████████████████

████████████████████.[1108] Cytek agreed t████████████████████████████

████████████████████ which are defined to include the ██████████████████

███████████████████████████████████████ [1109] ████████████

████████████████████████████████████████████████████

███████████[1110] If ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████[1111] The parties agreed that

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████ that was alleged in the

litigation proceeding.[1112]

548.    Cytek also agreed ██████████████████████████████████████

████████████████████████████████████████████████████

---

[1107] CYTEK_0000020561 at 563; Deposition of Wenbin Jiang, Ph.D., November 26, 2025, p. 273.

[1108] CYTEK_0000020561 at 566.

[1109] CYTEK_0000020561 at 563, 566. See, also, Deposition of Wenbin Jiang, Ph.D., November 26, 2025, pp. 273-274.

[1110] CYTEK_0000020561 at 566.

[1111] CYTEK_0000020561 at 567.

[1112] CYTEK_0000020561 at 566-567. ██████████████████████████████

████████████████████████████████████████ (Deposition of Wenbin Jiang, Ph.D., November 26, 2025, pp. 273-274).

236



1113 In addition, on the effective date,



. 1114

549.    There are certain similarities concerning the terms of the BD and Cytek Settlement Agreement and those of the hypothetical license, as noted below:

-

550.    There are certain differences concerning the terms of the BD and Cytek Settlement Agreement and those of the hypothetical license, as noted below:

-

---

1113 CYTEK_0000020561 at 566.

1114 CYTEK_0000020561 at 577; Deposition of Wenbin Jiang, Ph.D., November 26, 2025, pp. 273-274.

1115 CYTEK_0000020561 at 569.

1116 

1117 CYTEK_0000020561 at 561; Complaint in *Becton, Dickinson and Company v. Cytek Biosciences Inc., Ming Yan, Alfred Riley, David Vrane, Stephen Zhang, Zhenxiang Gong, Alex Zhong, Marina Jaimes, Gil Reinn, and Janelle Shook (Case 3:18-cv-00933-SK)*, pp. 23-35.



551.    Another important difference between the BD and Cytek Settlement Agreement and the hypothetically negotiated license is that ███████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████

552.

[1118] CYTEK_0000020561 at 561.
[1119] CYTEK_0000020561 at 567.
[1120] CYTEK_0000154619 at 758.
[1121] ████████████████████████████████████████████████████ (CYTEK_0000426043). I note ████████████████████████████████

553. ███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████ [1122] ████████████████████████████

███████████████████████████████████████ . [1123]

554. ███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████ [1124] ████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████ . [1125]

555. <mark>I understand from Dr. Houston that the Asserted Patents have comparatively more technological value than the patents covered by the BD and Cytek Settlement Agreement.</mark> [1126]

556. Therefore, the effective royalty rate actually to be paid by Cytek under the terms of the BD and Cytek Settlement Agreement was ████ ████████████████████████████ ███████ . [1127] ████████████████ reflects the royalties Cytek paid on the royalty-bearing sales made during the remaining lives of the patents licensed to Cytek from BD.

*v.* ████████████████████

█ ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████ ███████████████████████████████

███████████████████████████████████████████████

---

[1122] CYTEK_0000426043 at 075.
[1123] CYTEK_0000426043 at 075.
[1124] CYTEK_0000514743 at 744.
[1125] CYTEK_0000514743 at 748.
[1126] Discussion with Dr. Houston.
[1127] Effective royalty rate of ████████████████████████████████
[1128] BEC-CYTEK-00041387 at 387, 400.

███████████████████████████████████████████████████

### viii.    Market Approach Conclusion

574. The most relevant agreement to the hypothetical negotiation that I considered under the Market Approach is ███████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████ The settlement agreement between BD and Cytek licenses patents that relate to flow cytometry, and it is a patent license to which Cytek is a party. However, this agreement was entered into in settlement of litigation (which would require a significant upward adjustment to the ███ running royalty). Further, as I discussed in my analysis of the agreement above, the effective royalty rate is actually ████████████████████████ ██████████████████████████████

575. Therefore, the Market Approach yields a royalty rate indicator in the range of ██████████ of Accused Product sales.

### d.  The Georgia-Pacific Factors

576. In the well-recognized *Georgia-Pacific* case, the court set forth certain factors to be considered when determining a reasonable royalty.[1179] These factors, commonly referred to as the *Georgia-Pacific* factors, are guidelines for evaluating the likely actions of the parties in a hypothetical negotiation. Based on the facts and circumstances of any case, the factors are not necessarily given equal weight, nor are the factors all-inclusive. Rather, the *Georgia-Pacific* factors are part of the overall analysis to determine reasonable royalty damages. Many courts, including the Court of Appeals for the Federal Circuit, have considered the *Georgia-Pacific* factors when determining a reasonable royalty rate under the construct of a hypothetical negotiation.

577. BEC and Cytek would enter into a discussion of the *Georgia-Pacific* factors after determining the negotiating reference range for the royalty rate through consideration of the income,

---

[1179] *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970), mod. and aff'd, 446 F.2d 295 (2d Cir. 1971), *cert. denied*, 404 U.S. 870 (1971).

███████████████████████████████████████████████

with this royalty obligation, Cytek would maintain a significant pricing advantage relative to most competitors in the ultra-high parameter segment.

## IX.    DAMAGES CONCLUSIONS

693.    If the Court determines that Defendant is liable for infringing the Asserted Patents, then Cytek owes Beckman Coulter reasonable royalty damages of at least ████████ and lost profits damages of ██████████████████████████████ , assuming damages begin on October 17, 2021.[1363] Alternatively, if the Court determines that Defendant is not liable for lost profits damages, Cytek owes Beckman Coulter reasonable royalty damages of at least ███████████████████████████ , totaling ████████ , assuming damages begin on October 17, 2021.[1364]

## X.    PREJUDGMENT INTEREST

694.    I understand that upon a finding of infringement by Defendant, Plaintiff may be entitled to collect prejudgment interest on its damages. If asked to do so, I will calculate prejudgment interest consistent with this Court's practices.

_____

Michele M. Riley
December 19, 2025

---

[1363] Exhibits 1, 1.1, 2 and 8.
[1364] Exhibit 1.1.

# EXHIBIT 2

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| BECKMAN COULTER, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 24-0945-CFC-EGT |
| CYTEK BIOSCIENCES, INC., | ) ) | |
| Defendant. | ) ) ) | |

**OPENING EXPERT REPORT OF DR. DAVID SCHAAFSMA, PHD REGARDING INFRINGEMENT OF U.S. PATENT NOS. 10,330,582, 11,703,443, AND 12,174,107**

December 19, 2025

Dr. David Schaafsma





# EXHIBIT 3



Planet Depos
We Make It *Happen*™

# Transcript of Bing Shan, Corporate Designee & Individually

**Date:** October 24, 2025
**Case:** Beckman Coulter, Inc. -v- Cytek Biosciences

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

Transcript of Bing Shan, Corporate Designee & Individually
Conducted on October 24, 2025

17 (65 to 68)



65

on the front side of the block right, in the real product?

**A.  You mean I know this structure?  Right.**

Q.  I'm just trying to make sure it's clear that there's a part missing from this view; right?

**A.  It's missing?  Can you remind me which part is missing?**

MR. CHEN:  Objection.  Calls for a legal conclusion.  Foundation.

THE WITNESS:  Yeah, I would suggest you not use "mirror" here.

BY MR. McGUFFIN:

Q.  Okay.

Q.  Okay.  But there is --

66

**A.  Components, yeah.**

MR. CHEN:  Objection.  Foundation.

BY MR. McGUFFIN:

MR. CHEN:  Objection.  Foundation.

BY MR. McGUFFIN:

Q.  Okay.  So if you can turn to the last page, I want to talk through quickly the components that are shown.

I'm going to start in the lower-left corner.

**A.  The last page.  Okay.**

67

Q.  Yeah, the last page.  Starting in the lower-left corner.

MR. CHEN:  Objection.  Form.

THE WITNESS:  Yeah.

BY MR. McGUFFIN:

Q.

MR. CHEN:  Objection.  Calls for a legal conclusion.

68

BY MR. McGUFFIN:

MR. CHEN:  Objection.  Misstates testimony.

BY MR. McGUFFIN:

MR. CHEN:  Objection.  Calls for a legal conclusion.

BY MR. McGUFFIN:

Q.  Okay.

HIGHLY CONFIDENTIAL - OUTSIDE ATTORNEYS' EYES ONLY
Transcript of Bing Shan, Corporate Designee & Individually
Conducted on October 24, 2025

18 (69 to 72)



Q.  Before we get to that, I do want to ask -- the optical fiber is an extended light source; right?

MR. CHEN:  Objection.  Foundation.

THE WITNESS:  What do you mean "extended light source"?

BY MR. McGUFFIN:

Q.  Are you familiar with the term "extended light source"?

A.  Can you define that?

Q.  Well, I'm asking if you're familiar with the term.

A.  I don't use this word.

Q.  So you don't know what the term "extended light source" means?

A.  I don't know the exact word.  Maybe we use different term.

Q.  I'm move on.  If you don't understand the term, it's not important.

MR. CHEN:  Objection.  Calls for a legal conclusion.

BY MR. McGUFFIN:

Q.  So you're familiar with the term "dichroic filter"; right?

A.  Dichroic, we use a lot on the mirrors.  It's different from -- from band-pass filter.

Q.  Okay.  But are you familiar with the term "dichroic filter"?

A.  Dichroic mirror, I familiar with.  Dichroic filter, I think I rarely use that as -- yeah, as a -- as a technical term.

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BECKMAN COULTER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-945 (CFC) |
| | ) | (EGT) |
| CYTEK BIOSCIENCES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPENING INVALIDITY EXPERT REPORT OF FEDOR A. ILKOV, PH.D.

Dated: 12/19/2025

Respectfully submitted,

Fedor A. Ilkov, Ph.D.

element, such as a lens, mirror or grating, to render rays of light more nearly parallel; a collimator." (D.I. 114, Joint Claim Construction Brief at 74.) Plaintiff also suggests in the alternative that, if "collimating optical element" is construed as a "means-plus-function" term, that its function is to "(1) receive light from a light source; (2) project a collimated beam including a first image." (*Id.*) Plaintiff states that a "lens" or structural equivalents may qualify as a "collimating optical element" under this alternate construction. (*Id.*) In my opinion, Oostman's collimating lens, implemented in Lemoff's WDM, is a "**collimating optical element**" under either interpretation of the term.

231. Oostman's collimating lens added into Lemoff's zig-zag WDM also "**projects a collimated beam**" under the Court's plain and ordinary meaning construction of this term. While my opinion is that the term "collimated beam" is indefinite, in the alternative, a POSA would have understood that a beam wherein all rays of light originating from a point on the source are projected parallel with each other and those rays within the beam are neither converging (i.e., a focused beam) or diverging would satisfy the "**collimated beam**" limitation, which a POSA would have expected to project from Oostman's collimating lens when positioned at a focal length away from the output end of Lemoff's optical fiber **42**. I understand that Plaintiff has proposed that the plain and ordinary meaning of this term means "a beam with nearly parallel rays." In my opinion, the beam projected by Oostman's

149

collimating lens equally satisfies Plaintiff's proposed construction as well.

        iii.    **Claim 1[b]: "an optical relay element arranged to receive at least a portion of the collimated beam from the collimating optical element,"**

232. The combination of Oostman and Lemoff discloses and/or renders obvious Claim 1[b] for the same reasons I provided for Claim 1[b] in Ground 1, fully incorporated here.

        iv.    **Claim 1[c]: "the optical relay element comprising a curved mirror configured to reflect the portion of the collimated beam received from the collimating optical element to produce a first image;"**

233. The combination of Oostman and Lemoff discloses and/or renders obvious Claim 1[c] for the same reasons I provided for Claim 1[c] in Ground 1, fully incorporated here.

        v.    **Claim 1[d]: "a first focusing optical element arranged to receive at least a portion of the collimated beam reflected by the optical relay element; and"**

234. The combination of Oostman and Lemoff discloses and/or renders obvious Claim 1[d] for the same reasons I provided for Claim 1[d] in Ground 1, fully incorporated here.

        vi.    **Claim 1[e]: "a first semiconductor detector,"**

235. The combination of Lemoff and Frazier discloses and/or renders obvious Claim 1[e]. Whereas Lemoff generally teaches that each of "an array of lenses **50**, **52**, **54**, and **56** is coupled to the output end **46** of the MOB **14** to <u>direct</u>

150

# EXHIBIT 5





# Transcript of Fedor Ilkov, Ph.D.

**Date:** February 24, 2026
**Case:** Beckman Coulter, Inc. -v- Cytek Biosciences

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

Transcript of Fedor Ilkov, Ph.D.
Conducted on February 24, 2026

165

document speaks for itself.

THE WITNESS: I do.

BY MR. KHAN:

Q. Okay. In your patent which recites a collimating lens, there's no indication of any divergence or convergence angle; correct?

MR. PIVOVAR: Objection to form. Lacks foundation. Mischaracterizes the document.

THE WITNESS: It implies collimating lens -- collimating light, yes.

BY MR. KHAN:

Q. So in your patent, collimating -- the collimating lens is recited in order to collimate the light; correct?

A. That's correct.

Q. And in your patent, it recites the collimating lens to collimate the light. The patent does not specify any convergence or divergence angle; correct?

MR. PIVOVAR: Objection to form. Lacks foundation. Calls for speculation.

THE WITNESS: Reading my patent, POSA would understand that this lens would create light with parallel beams. That's correct.

///

166

BY MR. KHAN:

Q. Okay. And --

A. Not diverging or converging.

Q. And so "collimating" by itself means not diverging or converging; correct?

MR. PIVOVAR: Objection to form.

THE WITNESS: That's general understanding. That's how I think POSA would interpret it, the word "collimating" and word "collimating lens" produces.

BY MR. KHAN:

Q. Okay. And the word "collimating" by itself does not mean just narrowing the spatial cross section of a light beam; correct?

MR. PIVOVAR: Objection to form. Vague. Incomplete hypothetical.

THE WITNESS: That's correct.

BY MR. KHAN:

Q. Okay. And collimating by itself does not mean reducing the divergence by the light from a common -- well, stop that. Let me just make my question clear. Sorry.

The word "collimating" by itself does not mean reducing the divergence by the light; correct?

MR. PIVOVAR: Objection to form. Vague. Incomplete hypothetical to the extent it calls for a

167

legal conclusion.

THE WITNESS: In understanding of POSA, if the light emanating from the source that collimating or -- of this light achieved with collimating lens will render the rays in this light parallel each other.

If source has a diverging light, then it renders in parallel each other.

BY MR. KHAN:

Q. So the -- I guess my question was a little bit different. So let me try -- let me see if I can rephrase slightly. Strike that.

The term "collimate" by itself, in your view, does not mean just reducing the divergence by the light; correct?

MR. PIVOVAR: Objection. Asked and answered. Vague. Incomplete hypothetical. Calls for a legal conclusion.

THE WITNESS: It's not just mean that. Among other things, it depends in the situation and specific.

BY MR. KHAN:

Q. So, in your view, the word "collimate" by itself can mean reducing divergence by the light?

MR. PIVOVAR: Objection. Mischaracterizes

168

testimony. Asked and answered. Incomplete hypothetical. Calls for a legal conclusion.

THE WITNESS: Collimation in POSA view, without specifying and limiting anything else, would understood as a parallel -- parallel rays.

And parallel rays usually apply zero divergence or zero angle between these rays.

BY MR. KHAN:

Q. Okay. So the term "collimated" by itself does not mean merely reducing divergence by the light; correct?

MR. PIVOVAR: Objection. Asked and answered several times. Lacks foundation. Incomplete hypothetical. And calls for a legal conclusion.

THE WITNESS: Reducing divergence of light could be achieved and done by quite a few different ways or approaches.

Collimation has, in optics, very specific meaning which renders the rays parallel with -- if someone for some application they wanted to use this term a little bit wider range, they could specify limits within which this terminology used.

Without that limit specifying, it's indefinite or understood as parallel rays.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BECKMAN COULTER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No.  24-0945-CFC |
| | ) | |
| CYTEK BIOSCIENCES, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**REPLY IN SUPPORT OF CYTEK'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE EVIDENCE, TESTIMONY, AND ARGUMENT THAT CYTEK COPIED, STOLE, OR MISAPPROPRIATED THE TECHNOLOGY IN <u>BEC'S PRODUCTS</u>**

Cytek's MIL No. 2 should be granted because BEC does not dispute that its copying allegations were limited in discovery to secondary considerations and willfulness. BEC's other alleged bases are irrelevant, undisclosed, or prejudicial.

BEC's copying allegations cannot support intent to infringe. The copying allegations focus on the accused Aurora product's development period, but Aurora launched in June 2017, before BEC filed applications for *any* of the Asserted Patents. Cytek could not intend to infringe claims that did not exist. *See Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1196 (Fed. Cir. 1996) (no inducement for pre-issuance activities). These allegations are irrelevant to induced infringement.

Allowing BEC's copying allegations in its direct infringement case would unfairly prejudice Cytek. BEC contends a "product-to-product comparison" is permitted to support direct infringement, but BEC and its experts never provided any such opinions. They cannot do so for the first time at trial. Fed. R. Civ. P. 26, 37.

BEC also cannot use copying allegations to rebut Cytek's potential non-enablement defense because, again, BEC's experts never offered these opinions. *Id*. The only appropriate place for BEC's copying allegations in Phase I is in its rebuttal case for secondary considerations *if* Cytek raises a § 103 defense.

Finally, before BEC argues copying for *any* purpose, it must first introduce evidence that the product Cytek allegedly copied practices the Asserted Claims. BEC cannot assume relevance before meeting its burden on this disputed issue.

1

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

OF COUNSEL:

Reuben H. Chen
Alexandra Leeper
Juan Pablo González
HanByul Chang
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000

Elizabeth M. Flanagan
COOLEY LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402

Adam Pivovar
Dustin M. Knight
David Yun
COOLEY LLP
1299 Pennsylvania Avenue NW, Suite 700
Washington, DC 20004
(202) 842-7800

Dated: July 15, 2026

/s/ Jeremy A. Tigan
Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
kjacobs@morrisnichols.com
jtigan@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendant
Cytek Biosciences, Inc.*

2