# EXHIBIT A

1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

BECKMAN COULTER, INC.,          )
                                )
          Plaintiff,            )
                                )  C.A. No. 24-945-CFC
   v.                           )
                                )
CYTEK BIOSCIENCES, INC.,        )
                                )
          Defendant.            )
                                )


                    Friday, August 7, 2026
                         1:48 p.m.
                    Pretrial Conference


                      844 King Street
                    Wilmington, Delaware


  BEFORE: THE HONORABLE COLM F. CONNOLLY
  United States District Court Judge


  APPEARANCES:

              RICHARDS, LAYTON & FINGER

              BY:  FREDERICK L. COTTRELL III, ESQ.
              BY:  CHRISTINE D. HAYNES, ESQ.

              -and-

APPEARANCES CONTINUED:


                    WILMER CUTLER PICKERING HALE and DORR LLP
                    BY:  ROBERT J. GUNTHER, JR., ESQ.
                    BY:  OMAR KAHN, ESQ.
                    BY:  JEFFREY DENNHARDT, ESQ.
                    BY:  JAMES M. DOWD, ESQ.
                    BY:  LAUREN MATLOCK-COLANGELO, ESQ.


                              Counsel for the Plaintiff




                    MORRIS NICHOLS ARSHT & TUNNELL
                    BY:  KAREN JACOBS, ESQ.
                    BY:  JEREMY TIGAN, ESQ.



                    -and-

                    COOLEY LLP
                    BY:  REUBEN CHEN, ESQ.
                    BY:  ADAM PIVOVAR, ESQ.
                    BY:  ALEXANDRA LEEPER, ESQ.
                    BY:  BETSY FLANAGAN, ESQ.
                    BY:  DUSTIN M. KNIGHT, ESQ.
                    BY:  JUAN PABLO GONZALEZ, ESQ.


                              Counsel for the Defendant


                         _ _ _ _ _ _ _ _ _


                         P R O C E E D I N G S

this, right?  And this is the way they, you know, quote. Here's the opening sentence of their motion:  "Cytek intends to rely on Cytek's IP" and, et cetera, et cetera.  "Such evidence and argument should be precluded."

I mean, you know, are you serious?  Like you're not going to let them argue about your IP?  This is part of the problem, again, with the way the case is litigated.  I don't have a specific order with very specific information that I could issue an order that would say you can't bring this in.

On the other hand, they must have some idea, and he alluded to it, what you want to do.  All right.

So what is it that you want to do that you think they're trying to preclude?

MR. CHEN:  Absolutely.  There's four categories here.  There is Cytek's IP, Your Honor, and it's absolutely relevant to issues in this case.

THE COURT:  Well, I mean, they're accusing Cytek IP, or, you know, essentially, some of your IP, at least, as being involved in infringement.

MR. CHEN:  Correct.  Correct.

THE COURT:  It may not be legitimate IP, but it's your IP at some level.

MR. CHEN:  Right.  Right.

84

THE COURT:  Okay.  So just tell me what it is that you want to bring.  The first category you say --

MR. CHEN:  The first category is Cytek's patents, and it's not just the mere fact that Cytek has patents.

THE COURT:  Yep.

MR. CHEN:  It's the fact that Cytek's patents were granted over Yong Chen's patents, the entire patent disclosure, the original parent patent application.

THE COURT:  So you want to bring in the fact that the PTO said they agreed with you that your stuff is patentable over theirs?

MR. CHEN:  Precisely for this reason at the very bottom here, which is that the Patent Office said that Cytek's technology reimages light onto odd filters of a plurality of filters arranged in a row.

THE COURT:  Right.  So stop you there. That's hearsay, right?

MR. CHEN:  No.  It's going to come through our expert, which our expert can obviously opine about --

THE COURT:  But have your expert opine.  He's not going to refer to what the Patent Office says.  You know, we're not putting the imprimatur of the patent office on what your expert says.  Okay?

MR. CHEN:  Well --

THE COURT:  So that's not coming in.

What's next?

MR. CHEN:  Okay.

THE COURT:  And that's an easy call.  You should know that.  It's an easy call.  It's not admissible.

What's next?

MR. CHEN:  Okay.  And their patents -- their expert's relying on our patents, so I am assuming that you're going to say that their experts cannot rely on our patents then, right?

THE COURT:  Well, did you bring a motion to stop it?

MR. CHEN:  Well, they said -- they offered to not have their experts opine about our patents if we -- if we're not -- if our experts aren't allowed to opine -- or opine about Cytek's patents, that their experts will not opine about Cytek's patents.  I think that's only fair, Your Honor.  So they can use it as a sword, but not -- or a shield or --

THE COURT:  All right.  I mean, are you done?

You don't need Cytek's patents, do you?

MR. DOWD:  Your Honor, this is defensive on our point of view.  We're not going to offer them if

they don't.

THE COURT:  Okay.  Good.  Then they're not coming in.

All right.  Next?

MR. CHEN:  Okay.  We have Beckman's pending IP.  You just heard from counsel about that.

THE COURT:  All right.  So how is that relevant?

MR. CHEN:  So why that is relevant -- and they're wrong about a few points that they made, first of all --

THE COURT:  Just tell me what you want to bring in and why it's relevant.

MR. CHEN:  Yeah, absolutely.  So we want to bring in the fact that the Patent Office found that art that's in the flow cytometry field is analogous to art from the optical telecommunications field.

THE COURT:  And what Rule of Evidence would allow that in?

MR. CHEN:  We get to cross-examine their experts to impeach their credibility.

THE COURT:  I will have to wait and see how that goes.

MR. CHEN:  Right.

THE COURT:  It is possible it could come in,

**MS. LEEPER:**  Around whether or not Beckman Coulter and/or Danaher would acquire Cytek.

**THE COURT:**  Okay.

**MS. LEEPER:**  And these are --

**THE COURT:**  Why is this relevant --

**MS. LEEPER:**  These are all highly probative --

**THE COURT:**  Of what?

**MS. LEEPER:**  -- of Cytek's subjective state of mind, which is relevant to --

**THE COURT:**  How so?

**MS. LEEPER:**  -- induced infringement.

**THE COURT:**  How so?

**MS. LEEPER:**  Cytek was engaged in these discussions, including after issuance of the patent, during which neither Beckman Coulter, nor its parent Danaher, nor an agent representing one or both of them together, mentioned any issues with IP, any alleged infringement.  There was no notice to Cytek or to Dr. Jiang as its CEO or anyone else at the company that there might be a problem around supposed infringement. Instead, they were essentially assured that Beckman Coulter and Danaher thought very highly of Cytek's technology, which is probative of intent for induced infringement, willful infringement in Phase II.

THE COURT:  Wait, wait.

Okay.  So you're saying it's probative of -- you're saying lack of intent.

MS. LEEPER:  Lack of intent.

THE COURT:  Okay.  For induced infringement.

MS. LEEPER:  The subjective intent question for inducement.

THE COURT:  All right.

MS. LEEPER:  271(f), Subsections 1 and 2. That's for the infringement phase of the case.  It's also relevant to, in Phase II, questions around willfulness.

And, again, this is --

THE COURT:  All right.  What else?

MS. LEEPER:  And it's also potentially relevant for the non-infringement events of reverse doctrine of equivalents.  There's a number of documents here discussing the major breakthrough of spectral technology.  A lot of these documents come up in the context of discussions between Beckman Coulter/Danaher and Cytek, or, in some cases, presentations that were made within the Beckman Coulter/Danaher entity about the revolution spectral technology.

THE COURT:  All right.  So here's what... I don't think I have to rule on this until I hear the

evidence come in.

I can conceive of this evidence being relevant to rebut the mens rea requirement of inducement that Beckman Coulter would have to prove, and what I will say is this should be teed up very, very discretely. You mentioned specific documents, for instance. Have those documents ready to roll, and I can rule on the morning of trial about their admissibility. I am not going to preclude it across the board.

Now, you know, the motion, the way it's written, it starts talking about the David-Goliath thing here and all that. There will be none of that.

**MS. LEEPER:** Correct, Your Honor.

**THE COURT:** But I can see a very narrow range of evidence and documents coming in to the extent they would suggest that Beckman Coulter wanted, for instance, to acquire Cytek, and during the course of those discussions, never mentions anything about Cytek infringing its patents. And probably, or I should say to the extent, during the course of those discussions, it characterizes Cytek's IP as novel, it would be very probative for Cytek if, for instance, the document suggested that spectral flow cytometry was a Cytek conception as opposed to conventional flow cytometry, which the theory of at least Cytek's expert is that's

the argument, if they are going to close and say there was seven years of silence and that is --

THE COURT:  Well, they can't say it.

If your calendar is right, the most they can say is that there's... well, the absolute most is five years, but it sounds like it's going to be more like two years or three years.  It's going to be during the second negotiation.

But anyway, my point is, it's not going to be seven years.

MR. DOWD:  And the only thing I'm saying is, if they want to say, okay, there was an event on a date and that it influenced my mental state, that's one thing.  It's the generalized argument that somehow delay equals non-infringement, delay equals --

THE COURT:  So I think -- again, I don't think they're going to say non-infringement.  I think they are going to say non-induced infringement.

Am I right?

MS. LEEPER:  Yes, Your Honor.

THE COURT:  What law would preclude them from making that argument?  Why is that irrelevant as a matter of law?  Well, why is it even under 403, unfairly prejudicial to you?

MR. DOWD:  There's a difference between

saying the timing of the suit is what gives rise to a mental state versus there was an event at which we had a meeting and we discussed this or that, right?

THE COURT:  All right.  I'm going to grant in part and deny in part the motion.

I'm going to grant it in part, and I think it's really uncontested that they can't go to the jury and say that your lawsuit lacks merit because of when it was filed, and they can't go to the jury and say we didn't directly infringe the patent based in any way on the timing of the lawsuit.

But I'm going to deny the motion insofar it was intended to preclude them from arguing to the jury or adducing evidence to the jury that there were discussions between the parties that predate the filing of the lawsuit that postdate their knowledge of the patent and Beckman Coulter's awareness of their knowledge of the patent.  I think that could be relevant to whether they have sufficient mens rea to induce infringement.  All right?

MR. DOWD:  Understood, Your Honor.  Thank you.

THE COURT:  Do you understand the ruling? Anybody else, clarification?

MR. DOWD:  Totally get it.

**MS. LEEPER:**  Your Honor, one clarification.

**THE COURT:**  Yes.

**MS. LEEPER:**  I believe when you asked counsel for Beckman Coulter a few minutes ago what they were pointing to for their evidence of inducement, their lead argument pointed to conduct that predated the issuance of the patent.  I'd just like to ask Your Honor that if they are going to pointing to evidence --

**THE COURT:**  They wouldn't... you know what?  There's no way Mr. Gunther will argue to the jury that their mens rea before the issuance of the patent...

He can't, right?  I mean, he couldn't do it.

**MR. GUNTHER:**  A, I won't do it because I -- you told me not to do it.

**THE COURT:**  Well, okay, but, I mean --

**MR. GUNTHER:**  Right.  But, you know, yeah, I'm not going to do it.  You've ruled.

**THE COURT:**  It doesn't make --

**MR. GUNTHER:**  And I am not going to do it.

**THE COURT:**  Well, wait a second.  I mean, if you think you need to.

**MR. GUNTHER:**  No.

**THE COURT:**  I don't know how it makes any sense that you could have the mens rea to knowingly tell somebody to infringe a patent that you know that doesn't

even exist yet.  It just doesn't make sense at all.

MR. GUNTHER:  Yeah.  Yeah.

THE COURT:  Okay.

MR. DOWD:  Understood, Your Honor.  Thank you.

THE COURT:  All right.  Thanks.

All right.  Next MIL.

MR. CHEN:  Your Honor, may I be heard just really, really briefly on -- basically, related to this intent knowledge requirement 271(f), 271(f)(2), (b), (c) with respect to MIL 1, can I just make one very small point?

THE COURT:  Go ahead.

MR. CHEN:  Okay.  And that point is, the fact that Cytek was granted patent rights over Yong Chen's patent where the Patent Office said you don't use a collimated beam, essentially, you do re-imaging, that goes to the mental state of Cytek believing that it doesn't infringe.

THE COURT:  So, and that makes sense to me. When did that occur?

MR. CHEN:  When did that occur?

THE COURT:  When was the statement made by the PTO?

MR. CHEN:  2020, after the issuance of the

'582 patent.

THE COURT:  Okay.  Yeah, that actually does make me... that sounds relevant.

You guys have got to hone in on your arguments.  You've got to make that MIL much more discrete.  The main thing you've got to do is, for instance, if you want a specific opinion precluded, you did this in your *Dauberts*, identify the paragraph, so I can go look at it, and I can rule on it.  I don't like ruling on these broad things.

I mean, look, next time you're in front of me with your motions in limine, begin with "We move to preclude this," and it should be written like I could sign an order and it would be like "that is what is going to be precluded."

What you do when you write were your MILs is you're, like, this general thing, they're going to argue or they should be prohibited in general from doing this, and then you argue, and it's just really hard to rule.

MR. DOWD:  Understood, Your Honor.

THE COURT:  All right.  Refine Motion in Limine Number 1.  Talk to each other.  I mean, I am sensing that some of the stuff that you think you want to preclude should come in.  All right?  But it needs to be very specific.