**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BECKMAN COULTER, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CYTEK BIOSCIENCES, INC.,<br><br>Defendant. | C.A. No. 24-0945-CFC |

**JOINT [PROPOSED] FINAL JURY INSTRUCTION (PHASE I)[1]**

[1] Language proposed by Beckman Coulter and opposed by Cytek appears in blue text and brackets. Language proposed by Cytek and opposed by Beckman Coulter appears in green text and brackets. The parties reserve the right to modify their proposals, and the proposals are without prejudice to outstanding or forthcoming motions.

# TABLE OF CONTENTS

1. GENERAL INSTRUCTIONS .......... 1

1.1. Introduction .......... 1

1.2. Juror's Duties .......... 1

1.3. Consideration of Evidence .......... 2

1.4. Direct and Circumstantial Evidence .......... 3

1.5. Exhibits and Demonstratives .......... 4

1.6. Deposition Testimony .......... 5

1.7. Credibility of Witnesses .......... 5

1.8. Expert Testimony .......... 6

1.9. Admissions .......... 7

1.10. Statements of Counsel .......... 7

1.11. Comments by the Court .......... 8

1.12. Use of Juror Notes .......... 8

2. PARTIES AND THEIR CONTENTIONS .......... 9

2.1. The Parties .......... 9

2.2. The Parties' Contentions .......... 9

3. ISSUES PRESENTED .......... 10

4. PATENT INSTRUCTIONS ........ 11

4.1. The Patent System ........ 11

4.2. The Role of Claims in a Patent ........ 12

4.3. Independent and Dependent Claims ........ 13

4.4. Construction of the Claims ........ 14

4.5. "Comprising" Claims ........ 15

5. INFRINGEMENT ........ 16

5.1. Patent Infringement Generally ........ 16

5.2. Direct Infringement -- Literal Infringement under 35 U.S.C. § 271(a) 18

5.3. Literal Infringement of Means-Plus-Function Claims ........ 20

5.4. Direct Infringement – Infringement Under the Doctrine of Equivalents 22

5.5. Non-Infringement under the Reverse Doctrine of Equivalents ........ 25

6. INVALIDITY ........ 26

6.1. Summary of Invalidity Defense ........ 26

6.2. Invalidity of Independent and Dependent Claims ........ 27

6.3. Prior Art ........ 28

6.5. Level of Ordinary Skill in the Art .......... 29

6.6. Obviousness .......... 30

6.7. Indefiniteness .......... 33

6.8. Written Description Requirement .......... 34

6.9. Enablement Requirement .......... 36

7. DELIBERATIONS AND VERDICT .......... 38

7.1. Introduction .......... 38

7.2. Unanimous Verdict .......... 39

7.3. Duty to Deliberate .......... 40

7.4. Social Media .......... 41

7.5. Court Has No Opinion .......... 42

# 1. GENERAL INSTRUCTIONS

## 1.1. Introduction[2]

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding the issues for the first phase of this trial.

I gave you some instructions at the beginning of the case. I will not repeat them now, but they still apply. You should consider those instructions and these instructions together as a whole.

Please listen very carefully to everything I say.

You will have a written copy of the preliminary instructions and these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this case.

## 1.2. Juror's Duties[3]

You have two main duties as jurors. The first is to decide what the facts are from the evidence that you saw and heard in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant

---

[2] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346 at § 1.1 (D. Del. Aug. 12, 2025).

[3] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346 at § 1.2 (D. Del. Aug. 12, 2025).

to influence your decision about the facts in any way. You are the sole judges of the facts.

Your second duty is to take the law that I give you, apply it to the facts, and decide, under the appropriate burden of proof, which party should prevail on any given issue. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All of the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy, or prejudice that you may feel toward one side or the other influence your decision in any way.

### 1.3. Consideration of Evidence[4]

The evidence in this case includes the testimony of witnesses and the exhibits that I have admitted into evidence. What the lawyers say, as I have noted previously, is not evidence.

You should use your common sense in weighing the evidence. Consider the evidence in light of your everyday experience with people and events and give it

[4] *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346 at § 2.4 (D. Del. Aug. 12, 2025).

whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

### 1.4. Direct and Circumstantial Evidence[5]

During the preliminary instructions, I told you about "direct evidence" and "circumstantial evidence." I will remind you now what each means.

Direct evidence is evidence like the testimony of an eyewitness, which if you believe it, directly proves a fact. If a witness testified that he saw it raining outside and you believed him, that would be direct evidence that it was raining.

Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into a courtroom wearing a raincoat covered in drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. You should consider all the evidence, both direct and circumstantial, and give it whatever weight you believe it deserves.

[5] *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346 at § 2.3 (D. Del. Aug. 12, 2025).

### 1.5. Exhibits and Demonstratives[6]

During the course of the trial, you have seen many exhibits, and many of these exhibits were admitted as evidence. You will have these admitted exhibits in the jury room during your deliberations.

During the course of the trial, other items (including charts and animations presented by attorneys and witnesses) were offered to help illustrate the testimony of the various witnesses. These illustrations, called "demonstratives," have not been admitted as evidence, are not evidence, and should not be considered as evidence. Rather, it is the underlying testimony of the witness that you heard when you saw the demonstrative exhibits that is the evidence in this case. As a result, you will not have demonstratives in the jury room for your deliberations.

---

[6] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 2.7 (D. Del. Aug. 12, 2025) and *Deere & Co. v. AGCO Corp.*, 1:18-cv-00827-CFC-JLH, D.I. 535-1, at § 1.12 (D. Del. Mar. 28, 2023).

### 1.6. Deposition Testimony[7]

[Beckman: You should not draw any inference from the absence of a potential witness at trial.][8]

During the trial, certain testimony was presented to you through the playing of video excerpts from depositions. A deposition is the sworn testimony of a witness taken before trial. You should not attribute any significance to the fact that the testimony is not live at trial. Deposition testimony is entitled to the same consideration you would give if the witness had appeared personally in court.

The deposition testimony may have been edited or cut to exclude irrelevant testimony. You should not attribute any significance to the fact that the deposition videos may appear to have been edited.

### 1.7. Credibility of Witnesses[9]

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified

---

[7] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 2.6 (D. Del. Aug. 12, 2025) and *Deere & Co. v. AGCO Corp.*, 1:18-cv-00827-CFC-JLH, D.I. 535-1, at § 1.11 (D. Del. Mar. 28, 2023).

[8] **Beckman:** Beckman Coulter suggests this curative instruction to address its question regarding Dr. Yan's absence from trial. Beckman Coulter's counsel did not remember the "empty chair" restriction at the moment the question was asked and apologizes for the question.

[9] *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 2.8 (D. Del. Aug. 12, 2025).

falsely about some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave at the trial. You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

### 1.8. Expert Testimony[10]

During the trial, you heard testimony from expert witnesses. Expert testimony is testimony from a person who has a special skill or technical knowledge in some science, profession, or business. This skill or knowledge is not common to the average person but has been acquired by the expert through special study or experience. However, you are not required to accept any expert's opinion. As with any other witness, it is up to you to judge the credibility of the expert witness and decide whether to rely upon his or her testimony.

In weighing expert testimony, you may consider the expert's qualifications, the reasons for the expert's opinions, and the reliability of the information supporting

---

[10] *Deere & Co. v. AGCO Corp.*, 1:18-cv-00827-CFC-JLH, D.I. 535-1, at § 1.10 (D. Del. Mar. 28, 2023).

the expert's opinions, as well as the factors I have previously mentioned for weighing testimony by any other witness. Expert testimony should receive whatever weight and credit you think appropriate, given all the other evidence in the case. You are free to accept or reject some or all of the testimony of experts, just as with any other witness.

### 1.9. Admissions[11]

The parties have stipulated that certain facts are true. To the extent that stipulated or admitted facts have been read to you during this trial, you must treat these facts as having been proven for the purposes of this case.

### 1.10. Statements of Counsel[12]

A further word about statements of counsel and arguments of counsel. The attorneys' statements and arguments are not evidence. Instead, their statements and arguments are intended to help you review the evidence presented.

If you remember the evidence differently from the way it was described by the attorneys, you should rely on your own recollection.

[11] *f'real Foods, LLC v. Hamilton Beach Brands*, 1:16-cv-00041-CFC, D.I. 255, at § 1.17 (D. Del. Apr. 28, 2019).

[12] *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 2.9 (D. Del. Aug. 12, 2025).

### 1.11. Comments by the Court[13]

During the course of the trial, I may have asked questions of a witness in order to bring out facts not then fully covered in the testimony. Please do not assume that I hold any opinion on the matters to which my questions may have related. Remember that you, as jurors, are at liberty to disregard all comments of the Court in arriving at your own findings as to the facts.

On the other hand, you are required to follow the Court's instructions on the law, whether you agree with these instructions or not.

### 1.12. Use of Juror Notes[14]

You may have taken notes during trial to assist your memory. As I instructed you at the beginning of the case, you should use caution in consulting your notes. There is a tendency to attach undue importance to matters that have been written down. Some testimony that is considered unimportant at the time presented, and therefore not written down, takes on greater importance later in the trial in light of all the evidence presented. Therefore, your notes are only a tool to aid your own individual memory.

[13] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 2.10 (D. Del. Aug. 12, 2025).

[14] *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 2.11 (D. Del. Aug. 12, 2025).

Your notes are not evidence and are not a complete outline of the proceedings or a list of the highlights of the trial. Above all, your memory should be the greatest asset when it comes time to deliberate and render a decision in this case.

## 2. PARTIES AND THEIR CONTENTIONS

### 2.1. The Parties[15]

I will now review for you the parties in this action, and the positions of the parties that you will have to consider in reaching your verdict.

As I previously mentioned, the plaintiff in this case is Beckman Coulter, Inc., which I will refer to as "Beckman Coulter," or "Plaintiff."

The defendant in this case is Cytek Biosciences, Inc., which I will refer to as "Cytek," "Cytek Biosciences," or "Defendant."

### 2.2. The Parties' Contentions[16]

Beckman Coulter is the owner of the three U.S. Patents at issue in this case: U.S. Patent No. 10,330,582, U.S. Patent No. 11,703,443, and U.S. Patent No. 12,174,107, which we have been referring to by their last three digits: the '582 Patent, '443 Patent, and '107 Patent. You may have also heard the '582, '443, and '107 Patents referred to collectively as the "Asserted Patents" or "Patents-in-Suit."

---

[15] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 3.1 (D. Del. Aug. 12, 2025).

[16] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 3.2 (D. Del. Aug. 12, 2025).

Beckman Coulter alleges that Cytek infringes claim 3 of the '582 Patent; claims 4 and 10 of the '443 Patent; and claim 18 of the '107 Patent. We have been referring to these claims collectively as the "Asserted Claims."

The Cytek products that Beckman Coulter alleges infringe are as follows: Cytek Aurora™, Aurora CS™, Aurora Evo™, and Northern Lights™ (including Northern Lights™ Research, Northern Lights™ Clinical, and Northern Lights™ NL-CLC) flow cytometers. In addition, Beckman Coulter alleges infringement by Cytek's laser upgrade kits and APD modules, which allow users to add additional colors and channels to Cytek's accused flow cytometers. We have been referring to these products as the "Accused Products."

Cytek denies that it has infringed the Asserted Claims of the Asserted Patents. Cytek also contends that the Asserted Claims are invalid. Beckman Coulter contends that the Asserted Claims are valid.

I will give you further instructions regarding the meaning of infringement and invalidity later in these instructions.

## 3. ISSUES PRESENTED[17]

You must decide the following issues for this phase of the trial:

[17] Adapted from *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, Case 1:19-cv-00097-CFC-CJB, D.I. 448, at § 2 (D. Del. Aug. 4, 2022) and *Deere & Co. v. AGCO Corp.*, 1:18-cv-00827-CFC-JLH, D.I. 535-1, at § 2 (D. Del. Mar. 28, 2023).

1) Whether Beckman Coulter has proven by a preponderance of the evidence that Cytek directly infringes, either literally or through the doctrine of equivalents, the Asserted Claims of the '582, '443, and '107 Patents.

2) If you find Beckman Coulter has proven by a preponderance of evidence that Cytek infringes any Asserted Claim of the '443 and '107 Patents, whether Cytek does not infringe such claim(s) under the reverse doctrine of equivalents.

3) Whether Cytek has proven by clear and convincing evidence that the Asserted Claims are invalid.

## 4. PATENT INSTRUCTIONS

### 4.1. The Patent System[18]

At the beginning of the trial, I gave you some general information about patents and the patent system and a brief overview of the patent laws relevant to this case. I will now give you more detailed instructions about the patent laws that specifically relate to this case. If you would like to review my instructions at any time during your deliberations, they will be available to you in the jury room.

[18] *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 4.1 (D. Del. Aug. 12, 2025).

### 4.2. The Role of Claims in a Patent[19]

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers and thus the patent owner's property rights.

Only the claims of a patent can be infringed. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

Each claim is made up of claim elements, also referred to as claim limitations. A claim element, or claim limitation, is a requirement of a claim. A patent claim is infringed only if an Accused Product includes each and every element stated in that patent claim.

Both infringement and invalidity must be assessed on a claim-by-claim basis. There may be infringement of all claims, there may be infringement as to one claim

[19] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 4.2 (D. Del. Aug. 12, 2025) and *Deere & Co. v. AGCO Corp.*, 1:18-cv-00827-CFC-JLH, D.I. 535-1, at § 3.1 (D. Del. Mar. 28, 2023).

but no infringement as to another, or there may be no infringement of any claims. Similarly, all claims may be invalid, one claim may be invalid but another claim may not be, or all claims may not be invalid.

### 4.3. Independent and Dependent Claims[20]

There are two types of patent claims: independent claims and dependent claims. In this case, Beckman Coulter asserts dependent claims.

An "independent" claim does not refer to any other claim of the patent and sets forth all of the requirements that must be met in order for a product or method to be covered by that claim, and thus infringe that claim. It is not necessary to look at any other claim to determine what an independent claim covers.

A "dependent" claim refers to and incorporates the requirements of another claim and adds its own additional requirements. In this way, the claim "depends" on another claim. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim from which it depends. For example, Claim 3 of the '582 Patent is a dependent claim because it incorporates the requirements of claims 1 and 2.

[20] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 4.3 (D. Del. Aug. 12, 2025) and *Deere & Co. v. AGCO Corp.*, 1:18-cv-00827-CFC-JLH, D.I. 535-1, at § 3.2 (D. Del. Mar. 28, 2023).

### 4.4. Construction of the Claims[21]

It is my job as the judge to provide to you the meaning of any claim language that must be interpreted. You must accept the definitions I give you and use them when you decide whether any claim has been infringed and whether any claim is invalid. You must use the same claim meaning for both your decision on infringement and your decision on invalidity.

You should not take my definition of the language of the patent claims as an indication that I have a view regarding how you should decide the infringement or invalidity issues that you are being asked to decide. These issues are yours to decide.

I have already defined the meaning of some of the words of the Asserted Claims in this case. These definitions, which I will now read to you, are also in your glossary of terms.

| CLAIM TERM | DEFINITION |
|---|---|
| "[first / second] filter" ('443 Patent, cl. 10) | "first filter" is "initial filter," "second filter" is "second sequential filter after an initial filter" |
| "focusing lenses … configured to focus light" ('107 Patent, cl. 18) | "lenses that capture and converge light." |
| "image" ('582 Patent, cl. 3) | "representation of an object created by light or emanating from a light source" |

[21] Unless otherwise indicated, adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 4.4 (D. Del. Aug. 12, 2025) and *Deere & Co. v. AGCO Corp.*, 1:18-cv-00827-CFC-JLH, D.I. 535-1, at § 3.3 (D. Del. Mar. 28, 2023).

| CLAIM TERM | DEFINITION |
|---|---|
| "portion of the" ('582 Patent, cl. 3; '443 Patent, cls. 4, 10; '107 Patent, cl. 18) | "subset of the spectrum of the wavelengths of light" |
| "collimating optical element" ('582 Patent, cl. 3) | *Function*: (1) receive light from a light source; (2) project a collimated beam<br><br>*Structure*: a lens, such as an achromatic doublet lens, and structural equivalents thereof |

Although I have only construed some of the claim terms, it is important to understand that a patent claim is infringed only if the product accused of infringement includes each and every element in that patent claim. For any other claim term that I have not provided a definition, you should use its plain and ordinary meaning within the context of the patent in which the claim term is used as determined from the perspective of a person of ordinary skill in the art as of the priority date.

### 4.5. "Comprising" Claims[22]

The beginning portion, or preamble, of a claim commonly uses the word "comprising." "Comprising" means "including" or "containing." A claim that uses the word "comprising" or "comprises" is not limited to products having only the

[22] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 4.5 (D. Del. Aug. 12, 2025).

elements that are recited in the claim, but also covers products that include additional features.

## 5. INFRINGEMENT

### 5.1. Patent Infringement Generally[23]

I will now instruct you how to decide infringement. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another. To prove that any claim of a patent is infringed, Beckman Coulter must persuade you by a preponderance of the evidence that it is more likely true than not that a claim is infringed. Cytek contends that it does not infringe any of the Asserted Claims.

In this case, Beckman Coulter contends Cytek has and continues to directly infringe, either literally or under the doctrine of equivalents.

You have heard evidence about Beckman Coulter's commercial products and Cytek's Accused Products. However, in deciding the issue of infringement, you may not compare Cytek's Accused Products to Beckman Coulter's commercial

[23] Unless otherwise indicated, adapted from *Magnolia Medical Tech., Inc. v. Kurin, Inc.*, 1:24-cv-01124-CFC, D.I. 416, at § 4.1 (D. Del. Dec. 14, 2025).

products. Rather, you must compare Cytek's Accused Products to the Asserted Claims when making your decision regarding infringement.[24]

You have also heard evidence about the specifications of the Asserted Patents, including preferred embodiments and exemplary figures of the claimed inventions. However, in deciding the issue of infringement, you may not compare Cytek's

---

[24] Adapted from United States District Court, Northern District of California, Model Patent Jury Instructions (Oct. 2019) at § 3.2, https://cand.uscourts.gov/sites/default/files/documents/NDCA_Model_Patent_Jury_Instructions_erroneous-citation-omitted-10-28-24.pdf; *see also Johnson & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) (en banc) ("Moreover, the law of infringement compares the accused product with the claims as construed by the court. Infringement, either literally or under the doctrine of equivalents, does not arise by comparing the accused product 'with a preferred embodiment described in the specification, or with a commercialized embodiment of the patentee.'" (quoting *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985))); *Adams Respiratory Therapeutics v. Perrigo Co.*, 616 F.3d 1283, 1289 (Fed. Cir. 2010) ("Perrigo is correct that here, the accused product must meet all limitations of the claim. However, when a commercial product meets all of the claim limitations, then a comparison to that product may support a finding of infringement.").

Accused Products to the specifications, including to any preferred embodiments or exemplary figures.[25]

### 5.2. Direct Infringement -- Literal Infringement under 35 U.S.C. § 271(a)[26]

In order to prove direct infringement, Beckman Coulter must prove by a preponderance of the evidence that Cytek has made, used, sold, or offered for sale within the United States, or imported into the United States, at least one of the Accused Products that meets all of the requirements of at least one Asserted Claim. Cytek contends that it does not directly infringe any of the Asserted Claims.

A patent claim can be literally infringed only if the Accused Product meets each and every element of that patent claim. So, to prove literal infringement of an

[25] *Johnson & Johnston Assocs. v. R.E. Serv. Co.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) (en banc) ("Moreover, the law of infringement compares the accused product with the claims as construed by the court. Infringement, either literally or under the doctrine of equivalents, does not arise by comparing the accused product 'with a preferred embodiment described in the specification, or with a commercialized embodiment of the patentee.'" (quoting *SRI Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1121 (Fed. Cir. 1985))); *SRI Int'l v. Matsushita Elec. Corp. of America*, 775 F.2d 1107, 1121 (Fed. Cir. 1985) (en banc) ("The law does not require the impossible. Hence, it does not require that an applicant describe in his specification every conceivable and possible future embodiment of his invention."); *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1303 (Fed. Cir. 2007) ("This court has cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification.").

[26] Unless otherwise indicated, adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 4.8 (D. Del. Aug. 12, 2025).

Asserted Claim, Beckman Coulter must show by a preponderance of the evidence that the Accused Products meet all of the limitations of that claim. If an Accused Product does not satisfy one or more elements recited in an Asserted Claim, that Accused Product does not infringe that claim literally.

A party can directly infringe a patent whether or not they know of the patent or whether or not they know that what the party is doing is patent infringement.

The existence of one's own patent does not constitute a defense to infringement of someone else's patent.

You must determine infringement with respect to each Asserted Claim individually. However, a product can infringe a dependent claim only if the product meets all of the requirements of both the dependent claim and any other claims from which the dependent claim depends. Because a dependent claim incorporates all of the features of the independent claim it refers to, if you find that an independent claim is not infringed, then the claims that depend on that claim cannot be infringed.[27]

[27] Unless otherwise indicated, adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 4.3 (D. Del. Aug. 12, 2025).

### 5.3. Literal Infringement of Means-Plus-Function Claims[28]

Claims 1 and 3 of the '582 Patent each include what is known as a "means-plus-function" claim element. Means-plus-function elements express a claim requirement by its function, rather than by any specific structure, and cover only those structures that the specification describes as corresponding to that function, as well as equivalents of those structures.

To establish that the Accused Products include a means-plus-function element, Beckman Coulter must prove by a preponderance of the evidence that the Accused Products:

1) Include a structure or a set of structures that perform(s) the identical functions recited in the claim; and
2) That structure or set of structures is either identical or equivalent to the structure or set of structures that the patent describes as corresponding to those functions, which I have set out for you in your claim construction chart.

Beckman Coulter contends that Cytek directly infringes all of the Asserted Claims. Cytek contends that it does not directly infringe any of the Asserted Claims.

[28] Adapted from *Personal Audio LLC v. Google LLC*, 1:17-cv-01751-CFC, D.I. 886, at § 5.B (D. Del. Sept 12, 2023).

In deciding whether Beckman Coulter has proven that any Accused Product includes a structure that meets a means-plus-function element of the Asserted Claims, you must first decide whether the Accused Product has any structure that performs the same function identified in your claim construction chart. If you find that an Accused Product does include a structure that performs the same function, you must next decide whether the structure in the Accused Product is the same as or equivalent to the structure identified in your claim construction chart.

If an Accused Product does not perform the same function recited in the claim, the means-plus-function requirement is not met, and the product does not infringe that claim literally. Alternatively, even if the Accused Product has a structure that performs the same function recited in the claim, but the structure that performs the function is not identical or equivalent to the structure provided in the '582 Patent, the Accused Product does not infringe claim 3.

The structure of an Accused Product is equivalent to a structure identified in the '582 Patent if a person of ordinary skill in the field of technology of the patent would consider the differences between the structure found in the product and the structure identified in the patent to be insubstantial at the time the patent issued or if that person would have found the structure performed the same function in substantially the same way to achieve substantially the same result. In deciding whether the differences would be "insubstantial," you may consider whether a

person having an ordinary level of skill in the field of technology of the patent would have known the interchangeability of the two structures or sets of structures at the time the patent issued. The fact that a structure or a set of structures is known to be equivalent today is not enough. For the '582 Patent, the structure or set of structures must have been available at the time the '582 Patent issued: June 25, 2019.

The individual components or elements, if any, of an overall structure that I have defined for you as corresponding to a claimed function are not claim limitations by themselves. Rather, the claim limitation is the overall structure corresponding to the claimed function. Equivalence cannot be used to erase meaningful structural and functional limitations of the claim. A substitute structure in the accused device with a different number of component parts may still be a structural equivalent if the structure as a whole complies with the requirements I have just described.

### 5.4. Direct Infringement – Infringement Under the Doctrine of Equivalents[29]

There are two types of direct infringement, literal infringement and infringement under doctrine of equivalents. What I have explained to you so far is literal infringement. If you decide that Cytek's Accused Products do not literally

[29] Unless otherwise indicated, adapted from *f'real Foods, LLC v. Hamilton Beach Brands, Inc.*, 1:16-cv-00041-CFC, D.I. 307-1, at § 4.2.4 (D. Del. Sept. 30, 2019) and *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, Case 1:19-cv-00097-CFC CJB, D.I. 448, § 4 (D. Del. Aug. 4, 2022).

infringe an Asserted Claim, you must then decide whether it is more likely than not that an Accused Product infringes the Asserted Claim under what is called the "doctrine of equivalents." Beckman Coulter contends that Cytek literally infringes and also infringes under the doctrine of equivalents. Cytek contends that it does not infringe any of the Asserted Claims under the doctrine of equivalents.

Under the doctrine of equivalents, an Accused Product can infringe an Asserted Claim if it includes component parts that are equivalent to those elements of the claim that are not literally present in the Accused Product. Here, Beckman Coulter asserts that the Accused Products include equivalents of various elements in the Asserted Claims.

If an Accused Product literally lacks a certain element of an Asserted Claim, and has no equivalent to that missing element, then it cannot infringe the claim under the doctrine of equivalents. Thus, in making your decision under the doctrine of equivalents, you must look at a particular element of the Asserted Claim and decide whether an Accused Product has an equivalent part.

To show infringement under the doctrine of equivalents, Beckman Coulter must show that the differences between the claim element and a corresponding aspect of the Accused Products are insubstantial. One way to determine this is to look at whether or not the corresponding aspect of the Accused Product performs

substantially the same function, in substantially the same way, to achieve substantially the same result as the element in the claimed invention.

For means-plus-function terms, a structure may infringe under the doctrine of equivalents even if it does not literally infringe if the accused structure performs substantially the same function, in substantially the same way, to achieve substantially the same result, as the disclosed structure.

Application of the doctrine of equivalents is on an element-by-element basis. The question is not whether the Accused Product as a whole is equivalent to the claimed invention as a whole. In other words, for a product to infringe an Asserted Claim under the doctrine of equivalents, the element of the Asserted Claim which is not literally found in the Accused Product must contain an equivalent for each element of the claim that is not literally present in the Accused Product.

### 5.5. Non-Infringement under the Reverse Doctrine of Equivalents[30]

The doctrine of equivalents can also be used to negate a finding of infringement. This is sometimes called the "reverse doctrine of equivalents." Under this doctrine, an Accused Product that meets all the limitations of an Asserted Claim nevertheless does not infringe if the Accused Product is so far changed in principle from the patented invention that it performs the same or a similar function in a

[30] **Cytek:** Cytek's proposed language is adapted from *Steuben Foods, Inc. v. Shibuya Hoppmann Corp. et al.*, No. 1:19-cv-02181-CFC, D.I. 784 at § 4 (D. Del. Nov. 18, 2021), *Magnolia Medical Technologies, Inc. v. Kurin, Inc.*, No. 1:19-cv-00097-CFC CJB, D.I. 448 at §4 (D. Del. Aug. 4, 2022), and *Maquet Cardiovascular LLC v. Abiomed, Inc. et al.*, No. 1:17-cv-12311-FDS, D.I. 784 (Trial Tr. (Day 10)) at 153:6-17 (D. Mass. May 27, 2026); *see also Maquet Cardiovascular LLC v. Abiomed, Inc. et al.*, --- F. Supp. 3d ----, 2026 WL 1217150 (D. Mass. May 4, 2026) (holding that the reverse doctrine of equivalents is a viable defense for the jury to decide); *see also* D.I. 367; *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1123 (Fed. Cir. 1985); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 609 (1950). This Court has already rejected Beckman Coulter's motion for summary judgment against Cytek's RDOE defense. *See* D.I. 367. Therefore, this instruction is proper and necessary. As this Court properly found, the Supreme Court held that § 271(a) left intact the entire body of case law on direct infringement and rejected the argument that the doctrine of equivalents, as set out in *Graver Tank* in 1950, did not survive the 1952 revision of the Patent Act. *Id.*, at 4 (citations and quotation marks omitted).

**Beckman Coulter:** For the reasons given in Beckman Coulter's motion for summary judgment against Cytek's reverse doctrine of equivalents defense, Beckman Coulter preserves the argument that the reverse doctrine of equivalents did not survive the Patent Act of 1952 and that, in any event, Cytek's application of the doctrine is legally flawed. *See* D.I. 234; 246 at 6-12; 326 at 1-7; *see also Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, 127 F.4th 348, 357 (Fed. Cir. 2025).

substantially different way. That determination must be made against the context of the patent, the prior art, and the particular circumstances of this case.

## 6. INVALIDITY

### 6.1. Summary of Invalidity Defense[31]

Patent invalidity is a defense to patent infringement. Cytek contends that the Asserted Claims are invalid. Beckman Coulter contends that all Asserted claims are valid.

Cytek must prove invalidity by clear and convincing evidence. As a reminder, clear and convincing evidence is evidence that produces a high probability that a fact is true. This is a higher standard than the "preponderance of the evidence" standard that is used for infringement but lower than the "proof beyond a reasonable doubt" standard.

Cytek contends that the Asserted Patent Claims are invalid for the following reasons:

1. claim 4 of the '443 Patent and claim 18 of the '107 Patent are obvious;
2. claim 3 of the '582 Patent and claim 10 of the '443 Patent are indefinite;
3. all Asserted Claims lack written description support;

[31] Adapted from *Deere & Co. v. AGCO Corp. Precision Planting LLC*, 1:18-cv-00827-CFC-JLH, D.I. 535-1, at § 5 (D. Del. Mar. 28, 2023).

4. all Asserted Claims are not enabled.

I will now instruct you in more detail why Cytek alleges that the Asserted Patent Claims are invalid.

### 6.2. Invalidity of Independent and Dependent Claims[32]

As I stated earlier, there are two different types of asserted claims. One type of claim is called an independent claim. The other type of claim is called a dependent claim.

You must evaluate the invalidity of each Asserted Claim separately. Even if an independent claim is invalid, this does not mean that the dependent claims that depend from it are automatically invalid. Rather, you must consider the validity of each claim, separately. You must decide this issue of validity on a claim-by-claim basis. However, if you find that a dependent claim is invalid, then you must find that the independent claim from which it depends is also invalid. The dependent claim includes all of the elements of the independent claim from which it depends.

[32] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 4.10 (D. Del. Aug. 12, 2025).

### 6.3. Prior Art[33]

Under the patent laws, in order for someone to be entitled to a patent, the invention must be new and not obvious over what came before it. That which came before is referred to as the "prior art."

The parties agree that the following are prior art:

1. BD FACSArray System
2. U.S. Patent No. 6,198,864 to Lemoff and Aronson ("Lemoff")
3. DxP System

The parties dispute how the DxP System was configured, and it is for you to decide what the DXP System disclosed before May 30, 2013.

**[Cyek's Proposal:** In addition to the above references, Cytek introduced other publications and patents that published before the priority date of the Asserted Claims. You may also consider these references as part the knowledge of a person of ordinary skill in the art at the time.][34]

---

[33] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 4.11 (D. Del. Aug. 12, 2025) and *Deere & Co. v. AGCO Corp.*, 1:18-cv-00827-CFC-JLH, D.I. 535-1, at § 5.2 (D. Del. Mar. 28, 2023).

[34] **Cytek:** Cytek may rely at trial on references that are indisputably prior art to establish the knowledge of a person having ordinary skill in the art, to show the level of ordinary skill in the art, to provide motivations to combine prior art, or for other proper purposes—indeed, Beckman Coulter does not dispute that background art can properly be used for such purposes. This instruction thus is appropriate to provide context to the jury that other references discussed during the trial but not expressly listed in this instruction are likewise prior art.

### 6.4. Prior Art Considered or Not by the Patent Office

For all Asserted Claims, regardless of whether or not particular prior art references were considered by the Patent Examiner during the prosecution of the application that issued as the Asserted Patents, Cytek must prove invalidity by clear and convincing evidence. This burden of proof remains the same whether or not the Patent Examiner considered the references.

### 6.5. Level of Ordinary Skill in the Art[35]

The question of invalidity of a patent claim is determined from the perspective of a person of ordinary skill in the art in the field of the asserted invention as of the priority date.

In this case, a person of ordinary skill in the art would have had at least a B.S. in physics, mechanical engineering, electrical engineering, or optical engineering (or equivalent degree) and at least two years of experience in designing optical and

---

**Beckman Coulter:** Cytek identifies no previous instructions from this Court using Cytek's proposed language. Cytek also cites no case law supporting its proposed language. To the extent Cytek's proposal is adopted, it should be modified to instruct the jury that it may only find obviousness based on Cytek's specific identified combinations of references and limiting the use of any additional references. Cytek has not provided Beckman Coulter with notice of how it intends to use purported "Background Art," or even what such art it intends to rely upon, and Beckman Coulter reserves all rights to dispute the use of Cytek's purported background art.

[35] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 4.13 (D. Del. Aug. 12, 2025)

electro-optical systems, including for flow cytometer applications. A person could also have qualified as a person of ordinary skill in the art with a combination of (1) more formal education (such as a doctoral degree) and less technical experience, or (2) less formal educational and more technical or professional experience.

### 6.6. Obviousness[36]

In order to be patentable, the invention must not have been obvious to a person of ordinary skill in the field of technology of the patent. You must determine whether Claim 4 of the '443 Patent and Claim 18 of the '107 Patent would have been obvious as of May 30, 2013.

Cytek contends that Claim 4 of the '443 Patent and Claim 18 of the '107 Patent are invalid as obvious over the following combinations of prior art. Beckman Coulter disagrees and contends that all Asserted Claims are valid and non-obvious.

| Claims | Obviousness Ground |
|---|---|
| **U.S. Patent No. 11,703,443 (the '443 Patent)** | |
| Claim 4 | DxP System & Lemoff |
| **U.S. Patent No. 12,174,107 (the '107 Patent)** | |
| Claims 18 | Cytek DxP System & BD FACSArray System |

[36] Unless otherwise indicated, adapted from *Natera, Inc. v. CareDx, Inc.*, 1:20-cv-00038-CFC-CJB, D.I. 455, at § 6.D (D. Del. Jan. 25, 2024).

You should consider each claim separately. If a patent claim is obvious, it is invalid. Cytek must prove by clear and convincing evidence that the claimed inventions of the Asserted Patents would have been obvious to a person having ordinary skill in the art at the time of the priority date of the Asserted Patents. Beckman Coulter contends that the claims are valid and are not obvious.

The issue is not whether the claimed subject matter would have been obvious to you as a layperson, to me as the judge, or for that matter to a genius in the field of technology, but whether it would have been obvious to one of ordinary skill in the art at the time of the priority date of the Asserted Claim. To be clear, a person of ordinary skill in the art is also a person of ordinary creativity, and when combining prior art, obviousness does not require that a feature from one prior art item actually be incorporated into another prior art item or that items from different prior art perfectly fit together.

You should not consider what is known today or use what is taught in the patent as a road map for selecting and combining items of prior art. Do not use hindsight. Instead, put yourself in the place of a person of ordinary skill in the art as of the relevant priority date.

In determining whether an Asserted Patent Claim would have been obvious, you must consider:

1. the scope and content of the prior art;

2. the level of ordinary skill in the field of the invention that someone would have had at the time of the priority date;

3. any differences between the prior art and the claimed invention; and

4. any relevant "objective indicia" of nonobviousness, which I will explain shortly.

In considering whether a claimed invention is obvious, you may find obviousness if you find that at the time of the claimed invention, a reason existed that would have prompted a person of ordinary skill in the art in the relevant field to combine the known elements in the same way the claimed invention does.

You should also consider whether a person of ordinary skill would have had a reasonable expectation of success in making or carrying out the invention through combining or modifying the prior art without the benefit of the Asserted Patents and their disclosure.

You should also consider what are called "objective indicia" that may show whether or not the claimed invention is obvious. These indicia include:

1) whether the claimed invention was commercially successful as a result of the merits of the claimed invention;

2) whether the claimed invention satisfied a long-felt need;

3) whether others had tried and failed to make the claimed invention;

4) whether the claimed invention achieved unexpected results;

5) whether others in the field praised the claimed invention;

6) whether others in the field copied the claimed invention; and

7) whether persons having ordinary skill in the art of the claimed invention expressed surprise or disbelief regarding whether the claimed invention would work.

Patents are publicly available documents, and it is not improper to obtain, download, and review another party's patents. A party may properly review another's patents and that is not, in and of itself, evidence of copying.

Beckman Coulter bears the burden to prove objective indicia. When considering these factors, there must be a connection, or what we call a nexus, between the objective evidence of non-obviousness, if it's been presented at trial, and the specific inventive aspect of the claim rather than a feature that was known in the prior art or unclaimed features.

### 6.7. Indefiniteness[37; 38]

Cytek alleges that claim 3 of the '582 Patent and claim 10 of the '443 Patent are invalid for failing to meet the definiteness requirement. Beckman Coulter contends that these claims are definite and not invalid.

---

[37] Adapted from *Boston Scientific Corp. v. Nevro Corp.*, 1:16-cv-01163-CFC-CJB, D.I. 793, at § 5.6 (Oct. 8, 2021).

[38] Cytek reserves the right to reorganize the Jury Instruction sections to conform to the order of the Verdict Form, including having Indefiniteness follow the Instructions concerning Written Description and Enablement.

Definiteness is decided on a claim-by-claim basis. Cytek must prove indefiniteness by clear and convincing evidence. If a patent claim is indefinite, it is invalid.

A patent must be precise enough to afford clear notice of what is claimed, thereby informing the public what is outside the claim and still open to them. This is known as the definiteness requirement. A claim is indefinite if the patent fails to inform those skilled in the art about the metes and bounds of the claim with reasonable certainty. Indefiniteness is to be evaluated from the perspective of someone skilled in the art at the time of the priority date of the Asserted Claim.

A claim is indefinite if its language might mean several different things and no informed and confident choice is available among the contending definitions. For example, a claim is indefinite if the patent and/or prosecution history fails to disclose a single known approach or establish that, where multiple known approaches exist, a person having ordinary skill in the art would know which approach to select.

### 6.8. Written Description Requirement[39]

The patent laws contains what is called the written description requirement. If clear and convincing evidence shows that a patent claim lacks adequate written description, it is invalid.

---

[39] Adapted from *Natera v. CareDx*, 1:20-cv-00038-CFC-CJB, D.I. 455, at § 6.E (D. Del. Jan. 25, 2024).

Cytek contends that the Asserted Claims are invalid because the patent specification of the patents does not contain an adequate description of the claimed inventions. Beckman Coulter contends that the Asserted Claims are not invalid and have sufficient written description support. To succeed, Cytek must show that a person having ordinary skill in the field reading the patent specification as of the priority date would not have recognized that it describes the full scope of the invention as it is finally claimed in the Asserted Claims. If a patent claim lacks adequate written description, it is invalid.

In deciding whether Cytek has shown by clear and convincing evidence that the patents do not satisfy the written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of technology of the patent as of the priority date for each Asserted Claims.

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent specification and the exact words found in the claim need not be used. The specification is not required to expressly include what was well-known to a person of ordinary skill in the art as of the priority date. The level of required disclosure depends on a variety of factors, such as the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, and

other considerations appropriate to the subject matter. The written description requirement does not demand either examples or an actual reduction to practice,

In evaluating whether the specification has provided an adequate written description, you may consider such factors as:

1) the nature and scope of the patent claims;

2) the complexity, predictability, and maturity of the technology at issue;

3) the existing knowledge in the relevant field; and

4) the scope and content of the prior art.

The issue of written description is decided on a claim-by-claim basis, not as to the entire patent or group of claims.

### 6.9. Enablement Requirement[40]

Cytek contends that the Asserted Claims are invalid because the specification of the Asserted Patents does not enable the full scope of the claimed inventions. Beckman Coulter contends that the Asserted Claims are valid and enabled.

To succeed, Cytek must show by clear and convincing evidence that the patent specifications of the Asserted Patents do not contain a sufficiently full and clear description to have allowed a person having ordinary skill in the art to make and use

---

[40] Unless otherwise indicated, adapted from *Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, 1:19-cv-02181-CFC-CJB, D.I. 784, at § 5.3 (Nov. 18, 2021).

the full scope of the claimed inventions as of the priority date without undue experimentation. If a patent claim is not enabled, it is invalid.

The question of undue experimentation is a matter of degree, and what is required is that the amount of experimentation not be "unduly extensive." Some amount of experimentation to make and use the invention is allowable.

In deciding whether a person having ordinary skill would have to experiment unduly in order to make and use the invention, you may consider several factors:

1) The time and cost of any necessary experimentation;
2) how routine any necessary experimentation is in the field;
3) whether the patent discloses specific working examples of the claimed invention;
4) The amount of guidance presented in the patent;
5) The nature and predictability of the field;
6) The level of ordinary skill in the field; and
7) The nature and scope of the claimed invention.;

No one of these factors is alone dispositive. Rather, you must make your decision about whether or not the degree of experimentation required is undue based upon all of the evidence presented to you. You should weigh these factors and determine whether, in the context of this invention and the state of the art as of the priority date of the Asserted Patents person having ordinary skill would have needed to experiment unduly to make and use the full scope of the claimed invention.

# 7. DELIBERATIONS AND VERDICT

## 7.1. Introduction[41]

That concludes the part of my instructions on the law. I will end by explaining some things about how you will conduct your deliberations in the jury room and about your possible verdicts.

Once you start deliberating, do not talk to the jury officer, or to me, or to anyone else except each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can. I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you. Any questions or messages normally should be sent through your foreperson, who by custom of this Court is Juror No. 1.

One more thing about messages. Do not write down or tell anyone how you stand on your votes. For example, do not write down or tell anyone that you are split 4-4, or 6-2, or whatever your vote happens to be. Your votes should stay secret until you are finished.

---

[41] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 5.1 (D. Del. Aug. 12, 2025) and *Deere & Co. v. AGCO Corp.*, 1:18-cv-00827-CFC-JLH, D.I. 535-1, at § 7.1 (D. Del. Mar. 28, 2023)

### 7.2. Unanimous Verdict[42]

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view towards reaching an agreement, if you can do so without disregarding your individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinions, if convinced they are erroneous. But you should not give up your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the purpose of returning a verdict. Remember at all times that you are not partisans. You are judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

A verdict form has been prepared for you. I will review it with you in a moment. You will take the form to the jury room, and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date,

---

[42] *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 5.2 (D. Del. Aug. 12, 2025).

and sign the form. You will then return to the courtroom, and my deputy will read aloud your verdict.

Do not show the completed verdict form to anyone or share it with anyone until you are in the courtroom. Unless I direct you otherwise, do not reveal your answers until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

And I will remind you that nothing said in these instructions, and nothing in the form of a verdict, is meant to suggest or convey in any way or manner any intimation as to what verdict I think you should find. It is your sole and exclusive duty and responsibility to determine the verdict.

### 7.3. Duty to Deliberate[43]

Now that all the evidence is in and the arguments are completed, you are free to talk about the case in the jury room. In fact, it is your duty to talk with each other about the evidence, and to make every reasonable effort you can to reach unanimous agreement. Talk with each other, listen carefully and respectfully to each other's views, and keep an open mind as you listen to what your fellow jurors have to say. Try your best to work out your differences. Do not hesitate to change your mind if

[43] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 5.3 (D. Del. Aug. 12, 2025).

you are convinced that other jurors are right and that your original position was wrong.

But do not ever change your mind just because other jurors see things differently, or just to get the case over with. In the end, your vote must be exactly that, your own vote. It is important for you to reach unanimous agreement, but only if you can do so honestly and in good conscience.

No one will be allowed to hear your discussions in the jury room, and no record will be made of what you say. So you should all feel free to speak your minds.

Listen carefully to what the other jurors have to say, and then decide for yourself.

### 7.4. Social Media[44]

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a telephone, cellphone, smartphone, iPhone, iPad, tablet or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chatroom, blog, website, or app such as Facebook or Meta, LinkedIn, Snapchat, YouTube, Twitter, now known as X, TikTok, or Instagram to communicate to anyone about this case or to conduct any research about this case

[44] Adapted from *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 5.4 (D. Del. Aug. 12, 2025).

until I accept your verdict. You also should not communicate to anyone any information about this case or conduct any research about this case, until I accept your verdict.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations.

### 7.5. Court Has No Opinion[45]

Let me finish by repeating something I have said to you earlier. Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourself based on the evidence presented.

[45] *Globus Medical, Inc. v. Life Spine, Inc.*, No. 1:21-cv-01445-CFC, D.I. 346, at § 5.5 (D. Del. Aug. 12, 2025).