**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BECKMAN COULTER, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CYTEK BIOSCIENCES, INC.,<br><br>Defendant. | C.A. No. 24-0945-CFC |

# JOINT [PROPOSED] FINAL JURY INSTRUCTIONS (PHASE II)

# TABLE OF CONTENTS

PHASE II ........................................................................................1

1. INTRODUCTION ........................................................................1

2. ISSUES PRESENTED IN PHASE II...............................................2

3. BURDENS OF PROOF ...................................................................2

4. PATENT INFRINGEMENT DAMAGES ..........................................3

4.1. Damages Generally ........................................................................3

4.2. The Damages Period ......................................................................4

4.3. Lost Profits ....................................................................................4

4.3.1. Lost Profits – Demand for the Patented Product ........................5

4.3.2. Lost Profits – Acceptable Non-Infringing Substitutes................6

4.3.3. Lost Profits – Market Share .......................................................7

4.3.4. Lost Profits – Capacity...............................................................8

4.3.5. Lost Profits – Amount of Profit ..................................................8

4.3.6. Sales to Global Customers .........................................................9

4.4. Reasonable Royalty ........................................................................9

4.4.1. Reasonable Royalty – Hypothetical Negotiation......................11

4.4.2. Sales to Global Customers ....................................................... 14

4.4.3. No Double Recovery ............................................................... 14

5. DELIBERATION AND VERDICT ....................................................... 14

**PHASE II**

## 1. INTRODUCTION

Members of the jury, now it is time for me to instruct you about the law that you must follow in deciding the second phase of the case.

I have given you instructions at the beginning of each phase and before you began deliberations for Phase I. I will not repeat those instructions now. Instead, I will only explain the positions of the parties and the law you will apply in this phase. Please listen very carefully to everything I say.

You will have a written copy of the instructions I gave you previously and of these instructions with you in the jury room for your reference during your deliberations. You will also have a verdict form, which will list the questions that you must answer to decide this phase of the case.

## 2. ISSUES PRESENTED IN PHASE II

During this phase of the case, you must decide the following issue according to the instructions that I give you:

1) What amount of damages, if any, has Beckman Coulter proven by a preponderance of the evidence is adequate to compensate for Cytek's past infringement for claim 3 of the '582 Patent?

## 3. BURDENS OF PROOF

Beckman Coulter has the burden of proving damages by a preponderance of the evidence. This means Beckman Coulter must produce evidence which, when considered in light of all of the facts, leads you to believe that what Beckman Coulter claims is more likely true than not. This is the same burden of proof that you applied in the first phase of the trial as to infringement.

# 4. PATENT INFRINGEMENT DAMAGES

## 4.1. Damages Generally

You have found claim 3 of the ’582 Patent to be infringed. You must now consider what amount of damages to award to Beckman Coulter. I will now instruct you about the measure of damages. The fact that I am instructing you about damages does not mean that Beckman Coulter has proven damages. I am expressing no opinion one way or the other.

The amount of damages you award must be adequate to compensate Beckman Coulter for Cytek’s infringement. Your damages award should put Beckman Coulter in approximately the same financial position that it would have been in had the infringement not occurred.

Beckman Coulter has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Beckman Coulter establishes that it more likely than not suffered. While Beckman Coulter is not required to prove the amount of damages with mathematical precision, it must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case, Beckman Coulter seeks damages for Cytek’s past infringement in two forms: lost profits and reasonable royalty. I will explain both shortly. Cytek

contends that Beckman Coulter cannot prove lost profits and would only be entitled to a reasonably royalty.

You should keep in mind that the damages you award are meant to adequately compensate Beckman Coulter and not to punish Cytek. You must be careful to ensure that award is no more or no less than the value of the patented invention.

**4.2. The Damages Period**

The damages period begins on December 1, 2022.

**4.3. Lost Profits**

Beckman Coulter seeks to recover damages in the form of lost profits for Cytek's sales of the infringing products. To recover lost profits, Beckman Coulter must show a causal relationship between the infringement and its loss of profit. In other words, Beckman Coulter must show by a preponderance of the evidence that, "but for" the infringement, there is a reasonable probability that Beckman Coulter would have made additional profits. To show this, Beckman Coulter must prove that, if there had been no infringement, Beckman Coulter would have made some portion of the sales that Cytek made to customers who purchased the infringing product. The relevant profits are those allegedly lost by Beckman Coulter, not the profits, if any, made by Cytek on the infringing sales.

Beckman Coulter may prove entitlement to lost profits by establishing each of the following by a preponderance of the evidence:

(1) That there was demand for Beckman Coulter's patented product;

(2) That there were no available, acceptable, non-infringing substitute products, or if there were, Beckman Coulter's market share of the sales made by Cytek that Beckman Coulter would have made despite the availability of those non-infringing substitute products;

(3) That Beckman Coulter had the manufacturing and marketing capacity to make the additional sales of Cytek to satisfy the demand; and

(4) The amount of profit that Beckman Coulter would have made if Cytek had not infringed.

I will now instruct you on each of these four elements.

### 4.3.1. Lost Profits – Demand for the Patented Product

The first factor in the lost profits analysis looks to the demand for Beckman Coulter's patented CytoFLEX products. Beckman Coulter can prove demand for its patented CytoFLEX products by showing significant sales of its CytoFLEX products or by showing significant sales of Cytek's infringing products containing the same features that are covered by claim 3 of the '582 Patent. To use sales of Cytek's products as proof of this demand, Beckman Coulter's and Cytek's products must be sufficiently similar to compete against each other in the same market.

### 4.3.2. Lost Profits – Acceptable Non-Infringing Substitutes

The second factor in the lost profits analysis asks whether non-infringing, acceptable substitutes for Beckman Coulter's products competed with Cytek's infringing products in the marketplace and the impact of such substitutes on the marketplace absent the sales of Cytek's infringing products. If the realities of the marketplace are that competitors other than Beckman Coulter would likely have captured some or all of the sales made by Cytek, even despite a difference in the products, then Beckman Coulter is not entitled to lost profits on those sales that would have been made by a non-infringing substitute. Likewise, if the realities are that Cytek itself had a non-infringing substitute, then Beckman Coulter is not entitled to lost profits on those sales that would have been made by a non-infringing substitute. Here, Cytek contends that one available non-infringing substitute was for it to manufacture accused products, including APD modules, for foreign sales entirely outside of the United States, such that no act of infringement within the United States would have occurred for those products. Beckman Coulter contends that Cytek could not move all manufacturing abroad for foreign sales, including because Cytek already had issues manufacturing certain APD modules abroad.

To be an acceptable substitute, the product must have had one or more of the advantages of the patented invention that were important to the actual buyers of the infringing products, not the public in general.

Any acceptable substitute must also not infringe the '582 Patent. Any acceptable substitute, in addition, must have been available during the damages period. The substitute need not have been actually sold at the time. But, if the acceptable substitute was not sold during the damages period, then Cytek must show by a preponderance of the evidence that, during the damages period, a competitor or Cytek had all the necessary equipment, materials, know-how, and experience to design and manufacture the acceptable non-infringing substitute. If you determine that some of the purchasers of Cytek's infringing products would just as likely have purchased a non-infringing acceptable substitute, then Beckman Coulter has not shown it lost those specific sales but for Cytek's infringement.

Even if you find that Beckman Coulter and Cytek were the only ones with the advantages of the patented invention, Beckman Coulter is nonetheless required to prove to you by a preponderance of the evidence that it would have, in fact, made Cytek's infringing sales.

#### 4.3.3. Lost Profits – Market Share

If you find that there were acceptable non-infringing substitutes in the marketplace, Beckman Coulter may still be entitled to lost profits on a portion of Cytek's infringing sales. The burden is on Beckman Coulter to prove that it is more likely than not that its CytoFLEX products competed in the same market as Cytek's infringing products, and that Beckman Coulter would have made a portion of the

infringing sales equal to at least Beckman Coulter's share of the market but for Cytek's infringement. It is not necessary for Beckman Coulter to prove that Beckman Coulter and Cytek were the only two suppliers in the market for Beckman Coulter to demonstrate entitlement to lost profits, but it must prove that it was entitled to a portion of Cytek's sales.

**4.3.4. Lost Profits – Capacity**

The third factor in the lost profits analysis asks whether Beckman Coulter had the manufacturing and marketing ability to actually make the sales it allegedly lost due to Cytek's infringement. To be awarded lost profits based on additional sales of Beckman Coulter's products that Beckman Coulter claims it would have made but for Cytek's infringement, Beckman Coulter must prove that it was more likely than not that it would have had the capacity to manufacture enough products to make those additional sales, as well as the marketing capacity to make those additional sales.

**4.3.5. Lost Profits – Amount of Profit**

The fourth factor in the lost profits analysis asks the amount of profit that Beckman Coulter would have made if Cytek had not infringed. Beckman Coulter may calculate the amount of its lost profits by calculating its lost sales and subtracting any additional costs or expenses it would have incurred in making those lost sales, such as cost of goods, sales costs, packaging costs, and shipping costs.

Fixed costs that do not vary with increases in production or scale, such as taxes, insurance, rent, and administrative overhead, should not be subtracted from a patent holder's lost revenue.

#### 4.3.6. Sales to Global Customers

Beckman Coulter contends it is entitled to lost profits based on Cytek's sales of its infringing products to foreign customers through March 2025. To prove its entitlement to these lost profits, Beckman Coulter must show that (1) there was an act of infringement in the United States directly associated with that foreign sale, including making, using, or selling the infringing product in the United States, and (2) it was reasonably, objectively foreseeable that but for the infringement, Beckman Coulter would have made the foreign sales that were made by Cytek.

### 4.4. Reasonable Royalty

For any infringing sales for which you find Beckman Coulter has not proven lost profits, Beckman Coulter is entitled to at least a reasonable royalty.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and alleged infringer would have agreed to in a hypothetical negotiation taking place at a time just prior to when the infringement first began. In this case, that hypothetical negotiation would have taken place shortly before the '582 Patent issued on June 25, 2019. The reasonable royalty award must

be based on the incremental value that the patented invention adds to the end product. When the infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features and not the unpatented features.

In considering this hypothetical negotiation, you should focus on what the expectations of Beckman Coulter and Cytek would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. Having that in mind, you may consider any relevant fact in determining the reasonable royalty for the use of a patented invention, including the testimony of experts. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

A reasonable royalty is typically made up of a royalty base and a royalty rate that is applied to that base. There may be more than one way to calculate a royalty base and a royalty rate. The ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more.

Evidence of events after infringement first began can be considered in evaluating the reasonable royalty, but only to the extent that the evidence of such later events aids in assessing what royalty would have resulted from a hypothetical negotiation just before the time of infringement.

**4.4.1. Reasonable Royalty – Hypothetical Negotiation**

In determining the reasonable royalty, you may consider the following nonexclusive list of factors:

1) Any royalties received by Beckman Coulter for licensing of the ’582 Patent, providing or tending to prove an established royalty;
2) The rates paid by Cytek to license other patents comparable to the ’582 Patent;
3) The nature and scope of the license, such as whether the license is exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold;
4) Any established policy by Beckman Coulter to maintain its patent monopoly by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity;

5) The commercial relationship between Beckman Coulter and Cytek, such as whether or not they are competitors in the same territory in the same line of business;

6) The effect of selling the patented specialty in promoting sales of other Cytek products; the existing value of the invention to Beckman Coulter as a generator of sales of its non-patented items; and the extent of such derivative and convoyed sales;

7) The duration of the ’582 Patent and the term of the license;

8) The established profitability of the product made under the ’582 Patent; its commercial success; and its current popularity;

9) The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

10) The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Beckman Coulter, and the benefits of those who have used the invention;

11) The extent to which Cytek has made use of the invention and any evidence probative of the value of that use;

12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions;

13) The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by Cytek;

14) The opinion testimony of qualified experts;

15) The amount that a licensor (such as Beckman Coulter) and a licensee (such as Cytek) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

No one factor is dispositive, and you can and should consider the evidence that has been presented to you in this case as well as any other factors that would have increased or decreased the royalty Cytek would have been willing to pay and

Beckman Coulter would have been willing to accept, acting as normally prudent business people.

#### 4.4.2. Sales to Global Customers

Beckman Coulter contends it is entitled a reasonable royalty based on Cytek's sales of its infringing products to foreign customers through March 2025. To establish entitlement to these reasonable royalty damages, Beckman Coulter must prove those sales were proximately caused by infringement in the United States, including making, using, or selling the infringing products in the United States.

#### 4.4.3. No Double Recovery

The law does not permit double recovery for sales or profits relating to the same product. If a sale is the basis of one form of monetary recovery, that same sale cannot also be the basis of another form of monetary recovery. This means that if you award Beckman Coulter its lost profits under patent infringement for the sale of a certain number of accused product, you may not also award a reasonable royalty for those same sales.

## 5. DELIBERATION AND VERDICT

I have completed my instructions on the law. All the instructions I gave you previously about the rules for deliberations still apply, and you will have a copy of them with you. I will remind you that, when you start deliberating, do not talk to the

jury officer, to me, or to anyone but each other about the case. If you have any questions or messages, you must write them down on a piece of paper, sign them, and then give them to the jury officer. The officer will give them to me, and I will respond as soon as I can.

Your verdict must represent the considered judgment of each juror. In order for you as a jury to return a verdict, it is necessary that each juror agree to the verdict. Your verdict must be unanimous.

I remind you that in your deliberations you are to consider the instructions I have given you as a whole, including the instructions I gave you previously. You should not single out any part of any instruction, including this one, and ignore others. They are all equally important.

Nothing that I have said or done during this trial was meant to influence your decision in any way. You must decide the case yourself based on the evidence presented. You may now retire and continue your deliberations.