# EXHIBIT A

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/016,303 | 05/15/2026 | 12174107 | BECC.P0018US.RE | 6561 |

129381 7590 08/10/2026
NORTON ROSE FULBRIGHT US LLP - BCI
98 San Jacinto Blvd., Suite 1100
Austin, TX 78701

| EXAMINER | |
|---|---|
| KISS, ERIC B | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/10/2026 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

COOLEY IP LITIGATION
1299 Pennsylvania Avenue, NW
Suite 700
Washington DC 20004

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/016,303* .

PATENT UNDER REEXAMINATION *12174107* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| *Order Granting Request For Ex Parte Reexamination* | Control No. | Patent Under Reexamination | |
|---|---|---|---|
| | 90/016,303 | 12174107 | |
| | Examiner | Art Unit | AIA (FITF) Status |
| | ERIC B KISS | 3992 | No |

***--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--***

The request for *ex parte* reexamination filed 05/15/2026 has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments: a)☐ PTO-892, b)☑ PTO/SB/08, c)☐ Other: ____

1. ☑ The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

/Eric B. Kiss/
Patent Reexam Specialist, Art Unit 399

cc:Requester ( if third party requester )

**ORDER GRANTING REQUEST FOR *EX PARTE* REEXAMINATION**

A substantial new question of patentability affecting claims 1-3, 5, 16-18, 20-22, and 26-29 of U.S. Pat. 12,174,107 ("'107 patent") is raised by the request for *ex parte* reexamination.

Extensions of time under 37 CFR 1.136(a) will not be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and not to parties in a reexamination proceeding. Additionally, 35 U.S.C. 305 requires that *ex parte* reexamination proceedings "will be conducted with special dispatch" (37 CFR 1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided for in 37 CFR 1.550(c).

The patent owner is reminded of the continuing responsibility under 37 CFR 1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent proceeding, involving the '107 patent throughout the course of this reexamination proceeding. The third party requester is also reminded of the ability to similarly apprise the Office of any such activity or proceeding throughout the course of this reexamination proceeding. See MPEP §§ 2207, 2282 and 2286.

## I. Concurrent Proceedings

The Examiner is aware of the following concurrent proceeding involving the '107 patent:

*1.* *Beckman Coulter, Inc. v. Cytek BioSciences, Inc.*, case no. 1:24-cv-945 (D. Del.).

## II. Publications Cited in the Current Request

The current Request cites the following printed publications as raising a substantial new question of patentability:

1. U.S. Pat. 6,139,800 ("Chandler");
2. U.S. Pat. 6,198,864 ("Lemoff");

3. U.S. Pat. App. Pub. 2014/0219606 (“Sorin”);

4. U.S. Pat. 6,542,306 (“Goodman”);

5. Archived website page for Hamamatsu NIR High Sensitivity Type products, (June 20, 2010), https://web.archive.org/web/20100620045039/http://jp.hamamatsu.com/products/sensor-ssd/pd078/pd079/pd083/index_en.html (“Hamamatsu1”);

6. Archived website page for Hamamatsu Short Wavelength Type products, (June 20, 2010), https://web.archive.org/web/20100620044720/http://jp.hamamatsu.com/products/sensor-ssd/pd078/pd079/pd082/index_en.html (“Hamamatsu2”)[1];

7. U.S. Pat. 6,683,314 (“Oostman”); and

8. U.S. Pat. 8,284,402 (“Frazier”).

## III. Other Evidence

The third party requester has filed numerous additional exhibits with the Request. See Request (May 15, 2026), pp. 198-205 (List of Exhibits).

The exhibits have been appropriately considered.

[1] The third party requester appears to refer to Hamamatsu1 and Hamamatsu2 collectively as “Hamamatsu,” even though they are cited as two separate and distinct documents. See Request at 31-32.

## IV. Original Prosecution History

U.S. Pat. 12,174,107 issued from App. No. 18/823,596 ("the '596 App."), filed on Sep. 3, 2024,which is a continuation of App. 17/645,727, filed on Dec. 22, 2021, which is a continuation of App. 15/638,477, filed on Jun. 30, 2017, which is a divisional of App. 14/555,102, filed on Nov. 26, 2014, which is a continuation-in-part of Int'l App. PCT/US2013/043453, filed on May 30, 2013.

The '107 patent also claims the benefit of Prov. Apps. 61/911,859, filed on Dec. 4, 2013, 61/816,819, filed on Apr. 29, 2013, 61/715,836, filed on Oct. 19, 2012, 61/715,819, filed on Oct. 18, 2012, 61/653,328, filed on May 30, 2012, and 61/653,245, filed on May 30, 2012.

The '596 App. was filed with claims numbered 1-30.

The first Office action was a Notice of Allowability, in which the Examiner provided the following statement of reasons for allowance:

> As to claims 1 and 16, the prior art of record, taken alone or in combination, fails to disclose or render obvious wherein each of the mirrors in the array of mirrors is configured to: receive light reflected by a filter in the array of filters; and reflect light to another filter in the array of filters, in combination with the rest of the limitations of the claim. Claims 2-15 and 17-30 are allowable by virtue of their dependency.
>
> The closest prior art reference of Oostman, JR. et al. (2003/0048539 A1) and Kanda (2007/0195310 A1) discloses a flow cytometer.
>
> However, Oostman, JR. and Kanda fail to disclose, teach or suggest wherein each of the mirrors in the array of mirrors is configured to: receive light reflected by a filter in the array of filters; and reflect light to another filter in the array of filters, as claimed and as specified in the present application specification.

'596 App., Notice of Allowability (Oct. 30, 2024), p. 3.

## V. Patent Owner's Pre-Order Paper

On June 15, 2026, Patent Owner filed a pre-order paper ("Pre-Order Paper") in accordance with "Pre-order Procedure regarding Substantial New Question determination in *ex parte* Reexamination Proceedings," 1545 O.G. 217 (April 28 2026) ("SNQ Notice")[2].

In response to Patent Owner's Pre-Order Paper, Requester filed a response to the Pre-Order Paper ("Requester's Reply") along with a 37 C.F.R. § 1.182 petition on June 30, 2026. Requester's § 1.182 petition was dismissed. See Decision on Petition expunging Requester's Reply mailed July 14, 2026. Because Requester's petition was dismissed and Requester's Reply was expunged, Requester's Reply has not been considered.

### A. Patent Owner's SNQ Arguments

The Patent Owner argues that the proposed substantial new questions of patentability presented in the Request are not new (see e.g., Pre-Order Paper, pp. 7-14).

Chandler, Sorin, and Hamamatsu were not cited and applied against the claims or otherwise discussed during prosecution of the '596 App.

Goodman, Lemoff, and Frazier were cited in an IDS during prosecution of the '596 App. These references were not applied against the claims or otherwise discussed during prosecution of the '596 App.

Oostman (the corresponding patent application publication) was discussed, along with U.S. Pat. App. 2007/0195310 (Kanda) during prosecution of the '596 App. The Examiner contended that neither reference (presumably alone or in combination) taught each of the mirrors in the array of mirrors being configured to: receive light reflected by a filter in the array

[2] Available at www.uspto.gov/web/offices/com/sol/og/2026/week17/TOC.htm#ref9 (Last accessed June 24, 2026).

of filters; and reflect light to another filter in the array of filters. The present Request does not rely on Oostman, or a combination of Oostman and Kanda, for this teaching. Although Oostman is "old art," the presentation of Oostman with additional references that teach the indicated missing feature presents Oostman in a new light and materially different way than previously considered by the Office.

Although Chandler, Goodman, Hamamatsu, and Frazier were cited in PGR2025-00088, the petition in that proceeding was discretionarily denied for reasons unrelated to the merits based on the prior art teachings. PGR2025-00088, Denial (PTAB Mar. 17, 2026). There has been no final holding of invalidity as to the claims of the '107 patent based on the prior art cited in the PGR Petition or in the current Reexamination Request.

As set forth below, the Examiner finds that the cited prior art raises a substantial new question of patentability.

**B. Patent Owner's 35 U.S.C. § 325(d) Arguments**

Regarding Patent Owner's 35 U.S.C. § 325(d) arguments in the Pre-Order Paper (see e.g., Pre-Order Paper, pp. 5-6, 14, and 16), those arguments have not been considered in this Order because the SNQ Notice expressly states that "[t]he paper … should not address why the USPTO should exercise discretion under 35 U.S.C. 325(d) …." 1545 O.G. at 217.

**C. Patent Prior Art Arguments**

The remainder of Patent Owner's arguments in the Pre-Order Paper are directed to obviousness (see e.g., Pre-Order Paper, pp. 8-12 and 15-24). Such arguments have not been considered in this Order since they are directed to 35 U.S.C. §§ 102 and 103, not an SNQ. As

noted in the MPEP, an SNQ can be present even if a prior art rejection could not necessarily be made:

> It is not necessary that a "*prima facie*" case of unpatentability exist as to the claim in order for "a substantial new question of patentability" to be present as to the claim. Thus, "a substantial new question of patentability" as to a patent claim could be present even if the examiner would not necessarily reject the claim as either fully anticipated by, or obvious in view of, the prior art patents or printed publications. As to the importance of the difference between "a substantial new question of patentability" and a "prima facie" case of unpatentability, see generally *In re Etter*, 756 F.2d 852, 857 n.5, 225 USPQ 1, 4 n.5 (Fed. Cir. 1985).

MPEP § 2242 I(b).

Additionally, the MPEP expressly states that no statement will be made in the Order as to whether claims are rejected over the prior art:

> In the decision on the request, the examiner will not decide, and no statement should be made as to, whether the claims are rejected over the patents and printed publications. The examiner does not decide the question of patentability of the claims in the decision on the request. The examiner only decides whether there is a substantial new question of patentability to grant the request to order reexamination.

MPEP § 2246 (emphasis in original).

After an Order granting reexamination is mailed, Patent Owner may make arguments concerning anticipation and obviousness in a Patent Owner Statement under 37 C.F.R. § 1.530 (filed in accordance with MPEP § 2249) or in remarks in response to any future claim rejection(s) during reexamination.

## VI. Substantial New Questions of Patentability

### A. The SNQ requirement

The Office may only grant a reexamination request if an SNQ affecting any claim of the patent concerned is raised by the request, with or without consideration of other patents or printed publications. 35 U.S.C. §§ 303(a) and 304.

A prior art patent or printed publication raises a substantial question of patentability where there is a substantial likelihood that a reasonable examiner would consider the prior art patent or printed publication important in deciding whether or not the claim is patentable, unless the same question of patentability has already been decided as to the claim in a final holding of invalidity by the Federal court system or by the Office in a previous examination. MPEP § 2242.

### B. Proposed SNQs

The Request proposes the following bases for finding a substantial new question of patentability:

| No. | Claims | Prior Art |
|---|---|---|
| 1 | 1-3, 5, 16-18, 20-22, 26-29 | Chandler, Lemoff |
| 2 | 17, 18 | Chandler, Lemoff, Hamamatsu |
| 3 | 1-3, 5, 16-18, 20-22, 26-29 | Oostman, Lemoff, Frazier |
| 4 | 17, 18 | Oostman, Lemoff, Frazier, Hamamatsu |
| 5 | 1-3, 5, 16-18, 20-22, 26-29 | Chandler, Sorin |
| 6 | 17, 18 | Chandler, Sorin, Hamamatsu |
| 7 | 1-3, 5, 16-18, 20-22, 26-29 | Oostman, Sorin, Frazier |
| 8 | 17 , 18 | Oostman, Sorin, Frazier, Hamamatsu |
| 9 | 1-3, 5, 16-18, 20-22, 26-29 | Chandler, Goodman |
| 10 | 17, 18 | Chandler, Goodman, Hamamatsu |
| 11 | 1-3, 5, 16-18, 20-22, 26-29 | Oostman, Goodman, Frazier |
| 12 | 17, 18 | Oostman, Goodman, Frazier, Hamamatsu |

**C. SNQs based on Chandler (proposed SNQs 1, 2, 5, 6, 9, and 10)**

The request asserts that a substantial new question of patentability as to claims 1-3, 5, 16-18, 20-22, and 26-29 of the ’107 patent is raised by Chandler in various combinations with Lemoff, Hamamatsu, Sorin, and Goodman (proposed SNQs 1, 2, 5, 6, 9, and 10). See Request at 35-72, 96-125, and 145-177. The examiner agrees.

Chandler discloses an improved fluorescence-detection based flow cytometer that uses multiple lasers to irradiate fluorescence-tagged materials in a flow cell ("viewing chamber"). The light is gathered by multiple collecting optical units ("optical detectors") routed through multimode optical fibers into filtering, amplification, and digital conversion units ("F ADC units") for demultiplexing, detection, digital conversion, and signal processing. (Chandler, 4:62-5:4, 5:23-33, 7:24-45; see also *id.*, FIG. 4.) Each FADC unit consists of a set of standard bandpass filters, a set of standard photodetectors, and a set of standard analog to digital converters. (*Id.*, 3:66,-4: 15, 7:46-49.) The photodetectors may be avalanche photodiode detectors ("APDs"). (*Id.*, 4:6-8, 5:30-32, 8:32-34.)

**1. Chandler and Lemoff (SNQs 1 and 2)**

Lemoff discloses "[a] demultiplexer [that] includes a unitary optically transparent structure that utilizes focusing relay mirrors to relay a multiwavelength beam of light among a series of wavelength-specific interference filters, with each filter separating out a specific wavelength component from the multiwavelength beam." (Lemoff, Cover, Abstract.)

Lemoff understood that existing pnor art optical demultiplexers posed concerns that related to a large footprint associated with "utilizing filters arranged in series along an optical path[.]" (Lemoff, 2: 19-21.) Lemoffs invention is intended to provide a solution for this known

problem by disclosing an "optical demultiplexer that can be easily produced with greater miniaturization." (Id., 2:21-23.)

Lemoffs FIG. 1 embodiment depicts a demultiplexer 10 that includes:

> a main optical block 14 (MOB), an input surface 38, an objective mirror 40, wavelength-specific dielectric interference filters 20, 22, 24 and 26 coupled to the MOB, and a series of relay mirrors 30, 32, and 36 integrated into the MOB to direct and focus light between the interference filters.

(Lemoff, 4:38-45.)

"[L]ight is coupled from an optical fiber 42 into the MOB [14.]" (Lemoff, 4:49-50.) "The objective mirror 40 integrated into the MOB receives the input light 44 ... and focuses and directs the light 70 to a first filter 20[.]" (Id., 4:51-54.) "The light beam 58 that is transmitted through the first filter is focused by an adjacent lens 50 onto a detector 60 for signal detection." (Id., 4:57-59.) "The light beam portion 68 that is not transmitted through the first filter is reflected by the first filter for impingement upon a second filter 22 via the first internally reflective concave relay mirror 30." (Id., 4:59-62.) This process is repeated using subsequent wavelength specific filters 24 and 26 and relay mirrors 32 and 36. (Id., 4:63-67.) The result of this process is separation of the signal into four channels. (Id., 4:67-5:2.)

Relay mirrors 30, 32, and 36 are "concave mirrors." (Lemoff, 5:2-3.) Furthermore, the relay mirrors are located such that the beam propagates in a "zigzag fashion" between the wavelength-specific filters and the relay mirrors. (Id., 7: 1-4.)

These new teachings of Chandler and Lemoff appear to be particularly relevant to a substantial portion of the ’107 patent claims and the claimed features found allowable over the prior art during prosecution of the underlying ’596 App. Accordingly, there is a substantial

likelihood that a reasonable examiner would consider these teachings important in deciding whether claims 1-3, 5, 16-18, 20-22, and 26-29 of the ’107 patent are patentable. Therefore, Chandler and Lemoff raises a substantial new question of patentability as to claims 1-3, 5, 16-18, 20-22, and 26-29 of the ’107 patent.

**2. Chandler and Sorin (SNQs 5 and 6)**

Sorin discloses a "multi-mode fiber system" where a multi-mode fiber propagates a signal that is passed through a collimating lens into a splitter demultiplexer, where the demultiplexed signal is focused into an array of receivers. (Sorin, Cover, [0041]-[0043], FIG 4.)

"Fiber 404 provides propagated signal 410 that is passed to lens 432, splitter 430, lens array 446, and receiver 406." (Sorin, [0041].) Sorin explains that lens 432 "may collimate the propagated signal 410" that is received by splitter 430. (Id., [0042].) Splitter 430 "may be used for a WDM multiplexer/demultiplexer" and "includes selective mirrors 450 and collimating mirrors 448." (Id., [0042]-[0043].) A POSITA would have understood selective mirrors 450 to be dichroic filters, as they "may be wavelength selective" and "transmit a selected range of wavelengths/power and reflect a selected range." (Id., [0043].) Collimating mirrors 448 are "curved reflecting mirrors to re-collimate the beam as [it] travels through the splitter 430" to "compensate for beam divergence, e.g., caused by diffraction." (Id.) Portions of the beam transmitted through selective mirrors 450 are "passed to lens array 446" where these portions are focused to receiver 406. (Id.) Sorin acknowledges that the receiver can be a detector (id., [0031]), and also that receiver 406 may be an array of receivers (id., [0043]).

These new teachings of Chandler and Sorin appear to be particularly relevant to a substantial portion of the ’107 patent claims and the claimed features found allowable over the

prior art during prosecution of the underlying ’596 App. Accordingly, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether claims 1-3, 5, 16-18, 20-22, and 26-29 of the ’107 patent are patentable. Therefore, Chandler and Sorin raises a substantial new question of patentability as to claims 1-3, 5, 16-18, 20-22, and 26-29 of the ’107 patent.

**3. Chandler and Goodman (SNQs 9 and 10)**

Goodman explains that in a typical wavelength division demultiplexing system, optical signals, generated by some light sources, are transmitted over a waveguide, such as an optical fiber and then demultiplexed into individual color bands to be routed to an optical detector, corresponding to each channel wavelength range. (Goodman, 1:46-52.) Goodman also identifies, and provides a solution for, conventional, bulky wavelength division demultiplexers with optical attenuation issues. (Id., 3:37-44, FIG. 1.)

Device 10 includes an optical block 12, configured to receive an optical beam 19 through an optical fiber 15. (Goodman, 7:1-3, 7:17-21.) The optical beam 19 first impinges on imaging optical element 18 that reflects the beam onto imaging optical element 20. (Id., 7: 17-30.) Imaging optical element 20 then reflects optical beam 19 onto a first of a set of wavelength selective elements 22a-22n. (Id., 8:21-23.)

Wavelength selective elements 22a-22n are "each capable of transmitting a selected range of wavelengths within beam 19 and reflecting other wavelengths." (Goodman, 8:23-26.) These wavelength selective elements can be dichroic filters, among other types, and separate each wavelength channel to demultiplex the entire multiwavelength beam. (Id., 9: 16-49.) A set of reflectors 24a-24n are positioned on the top surface of the optical block 12, opposite from

the wavelength selective elements 22a-22n, such that "each of the reflectors directs beam 19 from one wavelength selective element to an adjacent wavelength selective element." (Id., 9:58-67.) For each reflector, Goodman explains "[t]he reflective surface can comprise at least one collimating reflector or at least one non-collimating reflector," for example, "converging lenses or mirrors, collimating lenses or mirrors, or simple reflecting surfaces." (Id., 10:17-21.)

Selected ranges of wavelengths transmitted through wavelength selective elements 22a-22n travel into a beam-directing member 14 that is configured to "redirect and focus the optical energy transmitted through wavelength selective elements 22a-22n." (Goodman, 10:45-51.) Beam-directing member 14 includes a set of focusing lenses 42 within each optical channel that focuses a selected wavelength beam into a corresponding optical receiver, such as a detector. (Id., 11 :30-41.)

These new teachings of Chandler and Goodman appear to be particularly relevant to a substantial portion of the ’107 patent claims and the claimed features found allowable over the prior art during prosecution of the underlying ’596 App. Accordingly, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether claims 1-3, 5, 16-18, 20-22, and 26-29 of the ’107 patent are patentable. Therefore, Chandler and Goodman raises a substantial new question of patentability as to claims 1-3, 5, 16-18, 20-22, and 26-29 of the ’107 patent.

**D. SNQs based on Oostman (proposed SNQs 3, 4, 7, 8, 11, and 12)**

The request asserts that a substantial new question of patentability as to claims 1-3, 5, 16-18, 20-22, and 26-29 of the ’107 patent is raised by Oostman in various combinations with

Lemoff, Frazier, Hamamatsu, Sorin, and Goodman (proposed SNQs 3, 4, 7, 8, 11, and 12). See Request at 73-96, 125-144, and 178-197. The examiner agrees.

Oostman discloses "an improved system for detecting fluorescent light having multiple colors emitted from a target[.]" (Oostman, Cover, 2:60-63.) The preferred embodiment of the invention features a flow cytometer that uses multiple wavelength division demultiplexers for fluorescent and scattered light color band separation and detection. (Id., 5:33-37.)

Oostman discloses an optical instrument (flow cytometer) that includes multiple laser light sources, a flow cell, collection lens, optical fibers, and a plurality of detector array clusters (Oostman, FIG. 4.)

Each of lasers 85, 87, 89, and 91 produces a beam of light with a unique wavelength that is directed toward a flow stream 103 in fluid system 105 that contains fluorescent dye marked particles within a liquid sample. (Oostman, 5:27-33, 5:41-44.) Laser beams interact with the fluorescent dye marked particles, "causing scattering and fluorescence that is spatially separated along a line parallel to the flow channel 109." (Id., 5:58-62.) This impinging of the laser beams upon the fluorescent dye-marked particles of the liquid sample of flow stream 103 in flow channel 109 creates an "illuminated zone." (Id., 5:44-46.)

Scattered and fluorescent light is then "imaged by a lens light collector 111 to four respective optical fibers 123, 125, 127, and 129," each of which is a multi-mode optical fiber. (Oostman, 5:63-6:7.) Light collected and focused into each optical fiber is then transmitted to a respective detector cluster 124, 126, 128, and 130, which comprises an array of detectors. (Id., 6:26-28.) "Each array of detectors differentially separates bands of light by filtering, using coatings on beam splitters and lenses, in a known manner." (Id., 6:34-36.)

Oostman's FIG. 5 and FIG. 6 each shows a detector cluster with two polygonal wavelength division demultiplexer arrangements to demultiplex the fluorescent light into separate bands for each detector. (Oostman, FIGs. 5, 6.) An optical fiber 123 guides light into each of Oostman's polygonal wavelength division demultiplexers within each detector cluster and is optically coupled to a collimating lens (145 for FIG. 5, 203 for FIG. 6).

**1. Oostman and Lemoff (SNQs 3 and 4)**

Lemoff discloses "[a] demultiplexer [that] includes a unitary optically transparent structure that utilizes focusing relay mirrors to relay a multiwavelength beam of light among a series of wavelength-specific interference filters, with each filter separating out a specific wavelength component from the multiwavelength beam." (Lemoff, Cover, Abstract.)

Lemoff understood that existing pnor art optical demultiplexers posed concerns that related to a large footprint associated with "utilizing filters arranged in series along an optical path[.]" (Lemoff, 2: 19-21.) Lemoffs invention is intended to provide a solution for this known problem by disclosing an "optical demultiplexer that can be easily produced with greater miniaturization." (Id., 2:21-23.)

Lemoffs FIG. 1 embodiment depicts a demultiplexer 10 that includes:

> a main optical block 14 (MOB), an input surface 38, an objective mirror 40, wavelength-specific dielectric interference filters 20, 22, 24 and 26 coupled to the MOB, and a series of relay mirrors 30, 32, and 36 integrated into the MOB to direct and focus light between the interference filters.

(Lemoff, 4:38-45.)

"[L]ight is coupled from an optical fiber 42 into the MOB [14.]" (Lemoff, 4:49-50.) "The objective mirror 40 integrated into the MOB receives the input light 44 ... and focuses and

directs the light 70 to a first filter 20[.]" (Id., 4:51-54.) "The light beam 58 that is transmitted through the first filter is focused by an adjacent lens 50 onto a detector 60 for signal detection." (Id., 4:57-59.) "The light beam portion 68 that is not transmitted through the first filter is reflected by the first filter for impingement upon a second filter 22 via the first internally reflective concave relay mirror 30." (Id., 4:59-62.) This process is repeated using subsequent wavelength specific filters 24 and 26 and relay mirrors 32 and 36. (Id., 4:63-67.) The result of this process is separation of the signal into four channels. (Id., 4:67-5:2.)

Relay mirrors 30, 32, and 36 are "concave mirrors." (Lemoff, 5:2-3.) Furthermore, the relay mirrors are located such that the beam propagates in a "zigzag fashion" between the wavelength-specific filters and the relay mirrors. (Id., 7: 1-4.)

These new teachings of Oostman and Lemoff appear to be particularly relevant to a substantial portion of the ’107 patent claims and the claimed features found allowable over the prior art during prosecution of the underlying ’596 App. Accordingly, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether claims 1-3, 5, 16-18, 20-22, and 26-29 of the ’107 patent are patentable. Therefore, Oostman and Lemoff raises a substantial new question of patentability as to claims 1-3, 5, 16-18, 20-22, and 26-29 of the ’107 patent.

**2. Oostman and Sorin (SNQs 7 and 8)**

Sorin discloses a "multi-mode fiber system" where a multi-mode fiber propagates a signal that is passed through a collimating lens into a splitter demultiplexer, where the demultiplexed signal is focused into an array of receivers. (Sorin, Cover, [0041]-[0043], FIG 4.)

"Fiber 404 provides propagated signal 410 that is passed to lens 432, splitter 430, lens array 446, and receiver 406." (Sorin, [0041].) Sorin explains that lens 432 "may collimate the propagated signal 410" that is received by splitter 430. (Id., [0042].) Splitter 430 "may be used for a WDM multiplexer/demultiplexer" and "includes selective mirrors 450 and collimating mirrors 448." (Id., [0042]-[0043].) A POSITA would have understood selective mirrors 450 to be dichroic filters, as they "may be wavelength selective" and "transmit a selected range of wavelengths/power and reflect a selected range." (Id., [0043].) Collimating mirrors 448 are "curved reflecting mirrors to re-collimate the beam as [it] travels through the splitter 430" to "compensate for beam divergence, e.g., caused by diffraction." (Id.) Portions of the beam transmitted through selective mirrors 450 are "passed to lens array 446" where these portions are focused to receiver 406. (Id.) Sorin acknowledges that the receiver can be a detector (id., [0031]), and also that receiver 406 may be an array of receivers (id., [0043]).

These new teachings of Oostman and Sorin appear to be particularly relevant to a substantial portion of the ’107 patent claims and the claimed features found allowable over the prior art during prosecution of the underlying ’596 App. Accordingly, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether claims 1-3, 5, 16-18, 20-22, and 26-29 of the ’107 patent are patentable. Therefore, Oostman and Sorin raises a substantial new question of patentability as to claims 1-3, 5, 16-18, 20-22, and 26-29 of the ’107 patent.

**3. Oostman and Goodman (SNQs 11 and 12)**

Goodman explains that in a typical wavelength division demultiplexing system, optical signals, generated by some light sources, are transmitted over a waveguide, such as an optical

fiber and then demultiplexed into individual color bands to be routed to an optical detector, corresponding to each channel wavelength range. (Goodman, 1:46-52.) Goodman also identifies, and provides a solution for, conventional, bulky wavelength division demultiplexers with optical attenuation issues. (Id., 3:37-44, FIG. 1.)

Device 10 includes an optical block 12, configured to receive an optical beam 19 through an optical fiber 15. (Goodman, 7:1-3, 7:17-21.) The optical beam 19 first impinges on imaging optical element 18 that reflects the beam onto imaging optical element 20. (Id., 7: 17-30.) Imaging optical element 20 then reflects optical beam 19 onto a first of a set of wavelength selective elements 22a-22n. (Id., 8:21-23.)

Wavelength selective elements 22a-22n are "each capable of transmitting a selected range of wavelengths within beam 19 and reflecting other wavelengths." (Goodman, 8:23-26.) These wavelength selective elements can be dichroic filters, among other types, and separate each wavelength channel to demultiplex the entire multiwavelength beam. (Id., 9: 16-49.) A set of reflectors 24a-24n are positioned on the top surface of the optical block 12, opposite from the wavelength selective elements 22a-22n, such that "each of the reflectors directs beam 19 from one wavelength selective element to an adjacent wavelength selective element." (Id., 9:58-67.) For each reflector, Goodman explains "[t]he reflective surface can comprise at least one collimating reflector or at least one non-collimating reflector," for example, "converging lenses or mirrors, collimating lenses or mirrors, or simple reflecting surfaces." (Id., 10:17-21.)

Selected ranges of wavelengths transmitted through wavelength selective elements 22a-22n travel into a beam-directing member 14 that is configured to "redirect and focus the optical energy transmitted through wavelength selective elements 22a-22n." (Goodman, 10:45-

51.) Beam-directing member 14 includes a set of focusing lenses 42 within each optical channel that focuses a selected wavelength beam into a corresponding optical receiver, such as a detector. (Id., 11 :30-41.)

These new teachings of Oostman and Goodman appear to be particularly relevant to a substantial portion of the ’107 patent claims and the claimed features found allowable over the prior art during prosecution of the underlying ’596 App. Accordingly, there is a substantial likelihood that a reasonable examiner would consider these teachings important in deciding whether claims 1-3, 5, 16-18, 20-22, and 26-29 of the ’107 patent are patentable. Therefore, Oostman and Goodman raises a substantial new question of patentability as to claims 1-3, 5, 16-18, 20-22, and 26-29 of the ’107 patent.

## VII. 35 U.S.C. § 325(d)

After considering the record, and in view of all relevant considerations, it is determined that denial under 35 U.S.C. 325(d) of the request for reexamination is not appropriate under the specific facts of this case.

## VIII. Conclusion

A substantial new question of patentability affecting claims 1-3, 5, 16-18, 20-22, and 26-29 of U.S. Pat. 12,174,107 is raised by the request for *ex parte* reexamination. Accordingly, the request for *ex parte* reexamination is GRANTED.

Any inquiry concerning this communication or earlier communications from the Examiner should be directed to ERIC B KISS whose telephone number is (571)272-3699. The Examiner can normally be reached Mon - Fri 7:30-5:00.

If attempts to reach the Examiner by telephone are unsuccessful, the Examiner's supervisor, Andrew J. Fischer can be reached on 571-272-6779.

Information regarding the status of published or unpublished applications may be obtained from Patent Center. To file and manage patent submissions in Patent Center, visit: https://patentcenter.uspto.gov.

/Eric B. Kiss/
Patent Reexamination Specialist, Art Unit 3992

Conferee:

/ANDREW J. FISCHER/
Supervisory Patent Reexamination Specialist, Art Unit 3992