**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BECKMAN COULTER, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CYTEK BIOSCIENCES, INC.,<br><br>Defendant. | C.A. No. 24-0945-CFC |

**BECKMAN COULTER, INC.'S OPENING BRIEF IN SUPPORT OF MOTION FOR JUDGMENTAS A MATTER OF LAW OR NEW TRIAL PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 50(B) AND 59(A)**

OF COUNSEL:

Robert J. Gunther, Jr.
Omar A. Khan
Jeffrey A. Dennhardt
Laura Macro
Lauren Matlock-Colangelo
Jennifer L. Graber
Maggie Sawin
Kelly A. Todd
Khalil Waddell
WILMER CUTLER PICKERING HALE and DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
Gabriela Z. Monasterio (#7240)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com
monasterio@rlf.com

*Attorneys for Plaintiff*

James Dowd
WILMER CUTLER PICKERING
HALE and DORR LLP
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
(213) 443-5300

Thomas G. Saunders
Patrick Nyman, Ph.D.
WILMER CUTLER PICKERING
HALE and DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037

Dated: October 13, 2026

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

I. INTRODUCTION .......... 1

II. LEGAL STANDARD .......... 1

III. ARGUMENT .......... 2

A. JMOL of Non-Obviousness for ’107 Patent Claim 18 Should Be Granted .......... 2

B. JMOL of No Reverse Doctrine of Equivalents for ’443 Patent Claim 4 and ’107 Patent Claim 18 Should Be Granted .......... 6

1. Cytek’s RDOE theory was legally deficient .......... 6

2. No reasonable jury could find that RDOE applies here .......... 7

3. RDOE Is Not a Defense to Infringement .......... 14

C. JMOL of Literal Infringement of ’582 Patent Claim 3 Should Be Granted .......... 15

D. JMOL of Sufficient Written Description for ’443 Patent Claims 4 and 10 Should Be Granted .......... 18

E. At Minimum, a New Trial Should Be Granted on these Issues .......... 22

IV. CONCLUSION .......... 23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Allergan, Inc. v. Barr Laby's, Inc.*, 501 Fed. App'x 965 (Fed. Cir. 2013) ....................5

*Ambrose v. Twp. Of Robinson, Pa.*, 303 F.3d 488 (3d Cir. 2002) ....................1

*Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324 (Fed. Cir. 2012) ....................13

*City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304 (1981) ....................14

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314 (Fed. Cir. 2009) ....................6

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288 (Fed. Cir. 2009) ....................2

*HVLPO2, LLC v. Oxygen Frog, LLC*, 949 F.3d 685 (Fed. Cir. 2020) ....................4

*Innogenetics, N.V. v. Abbott Laby's*, 512 F.3d 1363 (Fed. Cir. 2008) ....................5

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir. 2004) ....................13

*Int'l Med. Devices, Inc. v. Cornell*, 174 F.4th 64 (Fed. Cir. 2026) ....................18

*InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327 (Fed. Cir. 2014) ....................5

*Koito Mfg. Co., Ltd. v. Turn-Key-Tech, LLC*, 381 F.3d 1142 (Fed. Cir. 2004) ....................5, 20

*Northern Telecom, Inc v. Datapoint Corp.*, 908 F.2d 931 (Fed. Cir. 1990) .................... 11-12

*Odetics, Inc. v. Storage Tech. Corp.*, 116 F.3d 1497, 1997 WL 357598 (Fed. Cir. 1997) ....................8

*Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372 (Fed. Cir. 2008)...6, 7, 8, 9, 11

*SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107 (Fed. Cir. 1985) (en banc) ....................11, 13

*Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, 127 F.4th 348 (Fed. Cir. 2025) ....................8, 14

*Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*, 279 F.3d 1357 (Fed. Cir. 2002) ....................14

*Union Carbide Chems. & Plastics Tech. v. Shell Oil Co.*, 308 F.3d 1167 (Fed. Cir. 2002) ....................22

*WBIP, LLC v. Kohler Co.*, 829 F.3d 1317 (Fed. Cir. 2016) ....................20, 21

*Wiener v. NEC Elecs, Inc.*, 102 F.3d 534 (Fed. Cir. 1996), *abrogated on other grounds Cybor Corp. v. FAS Tech, Inc.*, 138 F.3d 1448 (Fed. Cir. 1998) ....................18

*Williamson v. Consolidated Rail Corp.*, 926 F.2d 1344 (3d Cir. 1991) ....................2, 22

*Wyers v. Master Lock Co.*, 616 F.3d 1231 (Fed. Cir. 2010) ....................5

**STATUTES, RULES, AND REGULATIONS**

35 U.S.C. § 112 ....................14

35 U.S.C. § 271(a) ....................14

Fed. R. Civ. P. 50(b) ....................1

Fed. R. Civ. P. 59(a) ....................1

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 50(b), Beckman renews its motion for judgment as a matter of law ("JMOL") that (1) claim 18 of U.S. Patent No. 12,174,107 ("'107 Patent) is non-obvious; (2) Cytek cannot escape infringement of claim 18 of the '107 Patent and claim 4 of U.S. Patent No. 11,703,443 ("'443 Patent") under the reverse doctrine of equivalents ("RDOE"); (3) Cytek literally infringes claim 3 of U.S. Patent No. 10,330,582 ("'582 Patent"); and (4) claims 4 and 10 of the '443 Patent have sufficient written description. Beckman alternatively moves for a new trial on these issues. Fed. R. Civ. P. 59(a).

## II. LEGAL STANDARD

JMOL is appropriate when, "viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 492 (3d Cir. 2002); *see also* Fed. R. Civ. P. 50(b).

A new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court," Fed. R. Civ. P. 59(a)(1)(A), including when "the weight of the evidence" cuts against the verdict and "a miscarriage of justice would result if the verdict were to stand" or the "verdict,

on the record, cries out to be overturned or shocks [the] conscience," *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1352-1353 (3d Cir. 1991).

## III. ARGUMENT

### A. JMOL of Non-Obviousness for '107 Patent Claim 18 Should Be Granted

Claim 18 of the '107 Patent depends on claims 16 and 17 and, as relevant here, requires both (1) a "plurality of focusing lenses . . . configured to focus light . . . to a spot on an APD [avalanche photodiode] . . . hav[ing] a ***diameter that is smaller than a diameter of a core of the multimode optical fiber***" and (2) "for each of the plurality of focusing lenses, the diameter of the spot is ***less than 1 mm***." JTX-005, 60:60-61:3.[1] Cytek did not present ***any*** obviousness evidence addressing these two claim limitations. *Infra* pp. 2-5. A reasonable jury therefore could not have found claim 18 obvious. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1300 (Fed. Cir. 2009) (affirming JMOL of non-obviousness where defendant "cited no testimony" addressing claim requirement).

Cytek relied at trial on its expert, Dr. Ilkov, who rushed through his obviousness testimony and failed to address key limitations when alleging that claim 18 was obvious over a combination of APDs from the Becton Dickinson FACSArray

---

[1] All emphasis added unless otherwise indicated.

and the DxP system, which used large photomultiplier tubes (PMTs). Trial Tr. 993:18-996:16. Dr. Ilkov's testimony suffered from three fatal flaws.

***First***, Dr. Ilkov's ***only*** reference to a multimode optical fiber in the prior art was a general statement that "multi-mode fibers started to be widely used about that time, in the beginning of 2000." Trial Tr. 996:5-16. Wholly absent was any reference to the ***diameter*** of a multimode fiber. *Id.* Dr. Ilkov identified no contemporaneous evidence showing the diameter of any multimode fiber in the DxP or FACSArray. Trial Tr. 992:5-993:16 (discussing prior art), 993:18-996:16 (obviousness opinion for claim 18). And he failed to compare that diameter and the diameter of the light spots on the APDs as claim 18 requires. Trial Tr. 992:5-996:16; JTX-005, 60:60-61:3 (claims 17 and 18). There was thus a complete failure of proof on this issue.

***Second***, Dr. Ilkov likewise never established that his proposed combination would render obvious light spots having a "diameter . . . less than 1 mm." *See* Trial Tr. 993:18-996:16. At best, Dr. Ilkov asserted that a POSA would focus light "to size of sensitive area of [the] APD," without addressing what the size of that sensitive area would actually be. Trial Tr. 995:7-20. Moreover, Beckman's expert Dr. Schaafsma testified without contradiction that "the APD used in the FACSArray ***is larger than 1 millimeter***." Trial Tr. 1046:2-14; *see also id.* at 1046:15-1047:4 ("active area of the APD" was "1.5 millimeters or larger"), 1045:11-1047:4

(FACSArray's APD was "36 times smaller" than DxP's PMT, and even that would not "get to a spot size less than 1 millimeter"). Thus, even under Dr. Ilkov's conclusory theory, the only evidence in the record confirms non-obviousness because the active area of the FACSArray's APD was larger than 1 mm.

***Third***, Dr. Ilkov failed to show that a POSA would have reasonably expected success in achieving a spot size smaller than either (1) the diameter of the multi-mode fiber or (2) 1 mm. Dr. Ilkov said he "d[id]n't think it will be any big technical issues" in "switching the compact PMT detectors in the DxP curved mirror box with the APDs" ***from the FACSArray*** by putting a "focusing lens in front of the APD" to produce "stricter" focusing." Trial Tr. 994:24-995:20. But this fails to show a reasonable expectation of success in achieving claim 18 because (1) it does not address fiber diameter at all; and (2) the active area of the FACSArray's APD was larger than 1 mm. *See* JTX-005, 60:60-61:3 (claims 17 and 18); Trial Tr. 1046:2-1047:4.

None of the other record evidence supports obviousness. The technology at issue is indisputably complex. *E.g.*, Pretrial Conference Tr. 73:4-6 (Cytek's attorney stating asserted patents involve "very complicated technology"). Cytek's fact witnesses therefore cannot shore up the gaps in Dr. Ilkov's testimony. *See HVLPO2, LLC v. Oxygen Frog, LLC*, 949 F.3d 685, 689 (Fed. Cir. 2020) ("the conclusion of obviousness and its underlying technical questions, is the province of qualified

experts, not lay witnesses"); *Allergan, Inc. v. Barr Laby's, Inc.*, 501 Fed. App'x 965, 972 (Fed. Cir. 2013) ("In complex cases . . . 'expert testimony may be critical, for example, to establish the existence of certain features in the prior art or the existence (or lack thereof) of a motivation to combine references.'" (quoting *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1240 n.5 (Fed. Cir. 2010)). In any event, Cytek's Mr. Lannigan testified about the DxP and BD FACSArray only generally and did not address the size of the multimode fiber, APDs, or spot sizes in either system, let alone in the proposed combination. *See* Trial Tr. 506:10-531:16.

In short, Cytek "failed to articulate how the [prior art] reference[s] . . . make[] obvious" claim 18 and therefore "has not presented sufficient evidence for the jury." *Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1152 (Fed. Cir. 2004); *see also InTouch Techs., Inc. v. VGO Commc'ns, Inc.*, 751 F.3d 1327, 1351 (Fed. Cir. 2014) (expert "failed to provide the necessary articulated reasoning with some rational underpinning to support a conclusion of invalidity" (internal quotation marks and citation omitted)); *Innogenetics, N.V. v. Abbott Laby's*, 512 F.3d 1363, 1373 (Fed. Cir. 2008) (expert's "vague testimony would not have been helpful to a lay jury in avoiding the pitfalls of hindsight that belie a determination of obviousness").

### B. JMOL of No Reverse Doctrine of Equivalents for ’443 Patent Claim 4 and ’107 Patent Claim 18 Should Be Granted

#### 1. Cytek’s RDOE theory was legally deficient

JMOL should be granted because Cytek did not perform a proper RDOE analysis. “The reverse doctrine of equivalents, like the doctrine of equivalents, is applied ***to individual limitations of a claim***.” *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1338-39 (Fed. Cir. 2009). An accused infringer must articulate “[t]he ‘principle’ or ‘equitable scope of the claims’ of the patented invention [a]s determined in light of the specification, prosecution history, and the prior art.” *Roche Palo Alto LLC v. Apotex, Inc.*, 531 F.3d 1372, 1378 (Fed. Cir. 2008) (citation omitted). The accused infringer must then show that RDOE applies at the level of individual limitations, not amorphously with respect to the invention as a whole. *DePuy*, 567 F.3d at 1338-39.

Cytek did not present a legally proper RDOE case. Cytek relied on the testimony of Dr. Ilkov, who provided only generalized testimony that spectral flow cytometry and conventional flow cytometry are different, without tying his analysis to specific claim requirements. Trial Tr. 940:3-941:22 (discussing spectral and conventional flow cytometry without referencing claim limitations), 980:21-983:14 (same), 983:15-984:7 (asserting “family of patents” “describe how” to use “replaceable filters” without addressing claim language). Dr. Ilkov likewise failed to articulate the equitable scope of the claims, let alone explain how that scope is

supported by the intrinsic evidence and prior art. *See* Trial Tr. 940:3-941:22, 980:21-984:7.[2]

Indeed, Dr. Ilkov's testimony assumed that Cytek's accused products did not literally infringe claims 4 and 18 because they are spectral cytometers, and thus he never truly argued in the alternative that even if the claims were literally infringed, there would nevertheless be non-infringement because Cytek's products were so far changed in principle from the claimed inventions. *See* Trial Tr. 940:3-941:22 (Dr. Ilkov asserting non-infringement "because accused product are spectral flow cytometers, like we discussed, and they don't use collimated beam"). Accordingly, Cytek "did not properly support its alleged 'principle' of the patented invention and consequently failed to make out a prima facie case of non-infringement under the reverse doctrine of equivalents." *Roche*, 531 F.3d at 1379.

**2. No reasonable jury could find that RDOE applies here**

JMOL of no RDOE is separately warranted because Cytek's distinction between "spectral" and "conventional" flow cytometry is insufficient as a matter of law to establish RDOE. "The reverse doctrine of equivalents is rarely applied,"

[2] This contrasts with Beckman's evidence showing infringement of claim 3 of the '582 Patent under the doctrine of equivalents, which included particularized expert testimony linked to a specific claim element that detailed why the function, way, and result of the claimed invention and accused products are the same. *See, e.g.*, Trial Tr. 381:6-383:16.

*Roche*, 531 F.3d at 1378, and the Federal Circuit has "never affirmed a decision finding noninfringement based on the reverse doctrine of equivalents." *Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, 127 F.4th 348, 357 (Fed. Cir. 2025) (internal quotation marks and citation omitted). If it still applies at all, RDOE is limited to "extremely rare cases in which the accused device is so far changed in principle from the claimed invention that the application of the doctrine is warranted." *Odetics, Inc. v. Storage Tech. Corp.*, 116 F.3d 1497, 1997 WL 357598, at *6 (Fed. Cir. June 25, 1997) (TABLE). This is not such a case.

***First***, there is no dispute that Cytek's products can be operated as ***conventional*** flow cytometers. *See, e.g.*, PTX-274 at 43 ("conventional method"). This ability to operate in conventional mode conclusively establishes that Cytek's products do not operate in a fundamentally different way than the claimed inventions. *See* PTX-2798 at 18 ("SpectroFlo® software offers two modes of operation—Full Spectrum mode and Conventional mode"); PTX-274 at 43 ("files can also be compensated with the conventional method"); *see also* Trial Tr. 648:18-23 (Dr. Jiang stating that accused products operating in conventional mode "will detect the data like conventional"), 1022:16-1023:21 (Dr. Robinson addressing PTX-274).

As Cytek's Dr. Yan admitted, "[s]pectral . . . did not change the fundamental[s] of cytometry." PTX-57 at 1. Rather, spectral detection is driven by

software. *Infra* p. 10; *see also* PTX-2798 at 18 ("SpectroFlo® software . . . Full Spectrum mode and Conventional mode"). Thus, a given cytometer can operate as a conventional or spectral cytometer ***without changing the hardware***. *See* PTX-765 at 5 (academic paper demonstrating conventional cytometers "can be used as spectral flow cytometers"); Trial Tr. 1020:21-1022:15 (Dr. Robinson explaining that "traditional or conventional cytometers can be used as spectral cytometers," and confirming "instruments that are classified as spectral can perform as conventional"), 761:3-764:16 (Dr. Chen explaining that the CytoFLEX can perform spectral detection), PTX-2758 at 11, 25 (presentation discussing same). For at least these reasons, no reasonable jury could find that Cytek's products operate in a substantially different way than the claimed hardware inventions.

***Second***, Cytek's theory that the claims exclude spectral flow cytometry is impermissibly "inconsistent" with the "intrinsic evidence." *Roche*, 531 F.3d at 1379. The claims broadly recite "flow cytometer[s]." JTX-003, 59:53-62 (claim 4); JTX-005, 61:1-3 (claim 18); *see also* Trial Tr. 238:22-239:1 (Dr. Houston stating claims require "[j]ust any flow cytometer"), 906:4-14 (Dr. Weigl agreeing that "the word 'conventional' doesn't appear" in asserted claims). In fact, Cytek's Dr. Ilkov admitted that he would "interpret, as a person of ordinary skill in the art, the term 'flow cytometer' in Claim 18 of the '107 patent" "[a]s generally understood in the field, ***very broadly***, flow cytometer." Trial Tr. 980:16-20. Nothing in the intrinsic

evidence supports narrowing the equitable scope of these claims to a specific type of flow cytometry.

Cytek primarily relied on differences in fluorescent signal processing between commercial spectral and conventional flow cytometers. *See* Trial Tr. 940:3-20 (Dr. Ilkov discussing differences in how "fluorescence information" is "interpret[ed]"), 869:13-23 (Dr. Weigl pointing to how spectral systems "gather and interpret fluorescent -- fluorescence information"). But there is no dispute that the "spectral unmixing" on which Drs. Ilkov and Weigl relied is "performed by ***software***" and not hardware. Trial Tr. 925:3-15 (Dr. Wiegl not "aware of" a flow cytometer that "performed spectral unmixing using hardware").[3]

Claims 4 and 18 are ***hardware claims*** and do not recite software. *See* JTX-003, 59:53-62 (claim 4); JTX-005, 61:1-3 (claim 18). At most, Cytek's theory is that the hardware in the accused products is ***used*** differently than the hardware in conventional flow cytometers, not that the hardware ***is*** fundamentally different. Trial Tr. 940:3-20, 869:13-871:11. But "[o]ne who takes a claimed structure and

[3] *See also* Trial Tr. at 800:14-21 (Ms. Kim explaining that "the hardware itself is really agnostic to the spectral or to the conventional"), 921:2-924:14 (Dr. Weigl admitting that you cannot tell whether a flow cytometer is conventional or spectral based on whether it has "a filter," "a curved mirror," "an image relay," "collimating lens," or "APDs"), 1015:11-1016:4 (Dr. Robinson explaining that "[s]pectral flow cytometry is where you analyze data in a special way" and "it doesn't matter what the instrument is").

merely uses it in a way that differs from that in which a specification-described embodiment uses it, does not thereby escape infring[e]ment." *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1123 (Fed. Cir. 1985) (en banc).

Further, there is no dispute that spectral flow cytometers predate "Dr. Chen's inventions," Trial Tr. 218:12-14, and that "Cytek was not the first" to sell spectral flow cytometers, Trial Tr. 616:8-617:20. *See* Trial Tr. 561:4-9 (Cytek's "first spectral product" launched in "2017"), 917:1-918:2 (Dr. Weigl agreeing "Dr. Robinson's patent on spectral flow cytometry" "issued in 2007"), 1012:25-1013:14 (invention of spectral flow cytometry "[b]etween 2001 and 2004"). Cytek cannot show that the accused products are fundamentally different from the claims by contending that it used the innovative hardware disclosed and claimed by Beckman for an application long known in the art. *See Roche*, 531 F.3d at 1378 ("prior art" considered in determining "'equitable scope of the claims'") (citation omitted).

There were some passing references to using "many more detectors" for spectral, Trial Tr. 869:4-870:1 (Dr. Weigl); 873:14-875:11 (similar), but the number of detectors used is not fundamentally different than the claims. Dr. Weigl "st[ood] by" his testimony that "the number of detectors is not the relevant issue" for determining if a system is spectral. Trial Tr. 923:19-924:7. Moreover, the asserted claims are "comprising" claims that do not limit the number of detectors. *See* JTX-003, 59:53-62 (claim 4); JTX-005, 61:1-3 (claim 18); *N. Telecom, Inc v. Datapoint*

*Corp.*, 908 F.2d 931, 945 (Fed. Cir. 1990) ("The addition of features does not avoid infringement . . ..").

Indeed, the shared specification expressly discloses adding detectors and filters to facilitate detection of additional wavelengths of light. JTX-005, 46:7-12, 21-24. It explains that "WDMs [wavelength division multiplexers] having different numbers of ports can easily be built in accordance with some embodiments of the present disclosure." *Id.* at 46:10-12. Consistent with this, Beckman's experts confirmed that the claimed inventions "enable[] spectral flow cytometry," including by increasing the number of detectors and filters. Trial Tr. 1017:16-1020:5 (Dr. Robinson); *see also* Trial Tr. 217:23-218:11 (Dr. Houston explaining that the "invention will allow a multitude of photodetectors which adds to the ability to improve how you do this mathematical unmixing technique"), 320:16-23 (Dr. Schaafsma stating invention allows "many relay elements" and therefore "many detectors").

None of the other purported hallmarks of conventional flow cytometers discussed by Cytek's witnesses are required by the claims or specification. For example, Drs. Weigl and Ilkov pointed to "replaceable filter set[s]," "one detector, one dye system[s]," and "color isolation filter[s]" as features of conventional cytometers, Trial Tr 861:4-20, 884:3-885:7, 889:5-21, 930:2-22, 983:15-984:7. *See also* Trial Tr. 563:15-564:3 (Dr. Jiang). But neither claim 4 nor claim 18 recites any

of these features. JTX-003, 59:53-62; JTX-005, 61:1-3. And neither Dr. Weigl nor Dr. Ilkov explained how the intrinsic evidence would nevertheless limit the equitable scope of the claims to require these features. *See* Trial Tr. 861:4-20, 884:3-885:7, 889:5-21, 930:2-22, 983:15-984:7; *see also* 563:15-564:3 (Dr. Jiang). While Drs. Weigl and Ilkov cited "replaceable filter[]" and one-dye-one-detector embodiments in the specification, Trial Tr. 884:3-885:7, 983:15-984:7, it is black letter law that claims cannot be restricted to select embodiments in the specification. *See SRI Int'l*, 775 F.2d at 1121; *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004) ("particular embodiments appearing in the written description will not be used to limit claim language that has broader effect"); *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1330 (Fed. Cir. 2012) ("[I]t is . . . not enough that the only embodiments, or all of the embodiments, contain a particular limitation to limit a claim term beyond its ordinary meaning." (internal quotation marks and citation omitted)). Further, such embodiments would not suggest that the claims are limited to conventional detection because Dr. Weigl conceded that it "is correct as a fact by itself" that "the ratio of dyes to detectors does not by itself indicate whether a flow cytometer is conventional or spectral," Trial Tr. 924:15-23, and Dr. Robinson's unrebutted testimony confirmed that "there are several instruments that are on the market that have replaceable filters that have been demonstrated to work perfectly well with spectral," Trial Tr. 1019:20-1020:5. For

at least these reasons, Cytek's purported distinctions do not meet the high standard for RDOE, and no reasonable jury could find non-infringement under RDOE.

**3. RDOE Is Not a Defense to Infringement**

Separately, JMOL of no non-infringement under RDOE should be granted because RDOE is no longer a defense to infringement. Section 271(a) governs direct infringement "[e]xcept as otherwise provided in this title." 35 U.S.C. § 271(a). The plain language of Section 271(a) therefore requires that any exceptions to infringement be expressly "provided" in Title 35. *Id.* Moreover, "when Congress enacted 35 U.S.C. § 112, after the decision in *Graver Tank*, it imposed requirements for the written description, enablement, definiteness, and means-plus-function claims that are co-extensive with the broadest possible reach of the reverse doctrine of equivalents." *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1368 (Fed. Cir. 2002); *see also Steuben*, 127 F.4th at 357 (same). As a result, when an accused product literally falls within the scope of the claim, but the claim is too broad, the appropriate recourse is a Section 112 challenge and not non-infringement under RDOE. Because "Congress has addressed the problem" originally addressed by RDOE, separation of powers precludes continued "rel[iance] on federal common law." *City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 315, 325 (1981).

### C. JMOL of Literal Infringement of ’582 Patent Claim 3 Should Be Granted

No reasonable jury could find no literal infringement of claim 3 of the ’582 Patent because the accused products meet every limitation and Cytek’s non-infringement theory misled the jury by reading “portion” out of the claim.

At trial, Beckman demonstrated literal infringement of claim 3 of the ’582 Patent. *E.g.*, Trial Tr. 215:2-237:10 (Dr. Houston discussing features of the accused products); *see also* Trial Tr. 342:20-350:10, 358:13-376:8, 380:10-381:5, 1031:18-1036:13 (Dr. Schaafsma’s literal infringement testimony). In response, Dr. Ilkov testified that claim 3 was not infringed because the accused products do not have a “collimated beam [that] goes through the system,” i.e., a beam that ***stays collimated throughout the WDM***. Trial Tr. 948:21-949:13.[4] But that is not a requirement of the claim.

Claim 3 requires a “collimating optical element configured to project a collimated beam.” JTX-001 at 59:15-41. But once the collimated beam is projected, the claim stops referring to a “collimated beam” and instead recites a “***portion*** of the

[4] *See also* Trial Tr. 941:9-22 (“don’t use collimated beam”), 942:10-944:8 (claim requires “using [a] single collimated element which creates [a] single beam which propagates throughout the whole detection system”), 959:4-23 (“no collimated beam [that] goes through detection system”), 960:3-961:7 (“there is no optical component in the detection system of accused product which receives and reflects collimated beam”).

collimated beam." JTX-001 at 59:15-41. The parties stipulated that "portion of the" means "a subset of the spectrum of wavelengths of light." 9/17/2025 Markman Tr. 92:21-24. It is undisputed that every wavelength of light in Cytek's WDM (indeed, every photon) passes through Cytek's collimation lens and thus begins as a part of Cytek's collimated beam. *See* Figure 1 *infra*; Trial Tr. 340:22-341:22 (Dr. Schaafsma describing the optical path), 361:6-11 (Dr. Schaafsma stating "[e]very portion of light in the system comes from the collimated beam"), 347:1-6 (similar), 565:22-566:8 (Dr. Jiang discussing "collimation lens" in accused products).[5] This beam is then focused onto the first filter, which reflects some of the wavelengths of light to the first curved mirror and allows other wavelengths of light to pass through the filter to a detector. *See* Trial Tr. 340:22-341:22; *see also* PTX-2824; PTX-2805 at 4. As the beam continues through the WDM, "subsequent portions of the light are routed into each of the different wavelength channels" until "the end of the relay." Trial Tr. 340:22-341:22; *see also* PTX-2824; PTX-2805 at 4. Accordingly, the light passing through Cytek's WDM is a "portion of" that original collimated beam.

[5] *See also, e.g.*, 948:21-961:7 (Dr. Ilkov discussing light path); PTX-2824 (depicting light path); PTX-2805 at 4 (depicting accused products); PTX-352 at 1 (discussing collimation lens); PTX-108 (same).




*Figure 1*. Optical path through Cytek's WDM. PDX-3.16 (annotating PTX-2824).

Contrary to Dr. Ilkov's theory that the beam must remain collimated throughout the WDM, the specification explains that the claimed invention encompasses WDMs wherein the beam converges and diverges as it passes through the image relay portion of the optical subsystem. *E.g.*, JTX-001, 46:30-35 ("In some embodiments, the concave mirrors 907, 910, 911, 912, and 913 may be structurally formed on a relaying assembly 939. It should be understood by those having skill in the art that the concave mirror can be replaced with a convex lens, which is also able to ***converge and relay*** the beam of light."); Trial Tr. 464:15-24 (Dr. Schaafsma discussing JTX-001, 46:30-35). Dr. Ilkov never addressed this portion of the specification. *See* Trial Tr. 948:21-961:7 (Dr. Ilkov's non-infringement opinion).

Because Dr. Ilkov ignored key claim language, which was subject to a stipulated construction, the only legally cognizable evidence the jury heard supports literal infringement and JMOL is warranted. *See Wiener v. NEC Elecs., Inc.*, 102 F.3d 534, 542 (Fed. Cir. 1996) (no factual dispute where expert's "statements rest on an incorrect claim interpretation"), *abrogated on other grounds by Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998); *Int'l Med. Devices, Inc. v. Cornell*, 174 F.4th 64, 73 (Fed. Cir. 2026) ("[E]xpert testimony that is inconsistent with unambiguous intrinsic evidence should be accorded no weight." (alteration in original) (citation omitted)).

### D. JMOL of Sufficient Written Description for '443 Patent Claims 4 and 10 Should Be Granted

No reasonable jury could find that claims 4 and 10 of the '443 Patent lack sufficient written description support because Cytek relied solely on Dr. Ilkov's desultory testimony, which was conclusory and ignored key disclosures in the specification.[6]

Dr. Ilkov stated, without explanation, that "Claim 4 and 10 omit the required optical element" for collimation despite "assuming or describing propagating of [a] collimated beam through the system of detection." Trial Tr. 969:2-18. But Dr.

[6] While Beckman is not challenging the jury's non-infringement finding for claim 10, the jury's invalidity determination for this claim is a live issue because it impacts Beckman's right to assert the claim against anyone going forward.

Ilkov's conclusory assumption that claims 4 and 10 require a "collimated beam through the system of detection," *id.*, is contrary to the intrinsic evidence. Claim 4 does not use the word "collimation" and instead refers more generally to "light." JTX-003, 59:53-62. And Claim 10 requires that a "first filter" receive "light"—with no reference to collimation—while the second filter "receive[s] a first collimated beam of light" and the "fourth filter . . . receive[s] a second collimated beam of the light." JTX-003, 60:20-26. Thus, claim 4 is silent on collimation and claim 10 expressly requires a "collimated beam" at only two places in the optical relay. JTX-003, 59:53-62, 60:20-26.

The shared specification supports the full scope of claims 4 and 10 by disclosing embodiments that do not require propagation of a collimated beam throughout the WDM, such as an embodiment using "a relaying assembly" that "converge[s] and relay[s] the beam of light," JTX-001, 46:30-35,[7] and embodiments that do not mention collimation at all, *e.g.*, JTX-003, 2:39-44, 2:45-62, 7:1-20. Dr. Ilkov did not address any of these embodiments, and instead myopically concentrated on an embodiment reciting "efficient color separation," Trial Tr. 971:4-13, and on Figure 25, Trial Tr. 973:1-974:9. *See also* Trial Tr. 969:2-18. But neither claim 4 nor claim 10 recite "efficient" color separation, JTX-003, 59:53-62, 60:20-

[7] *See also* JTX-003, 46:40-45 (same).

26, and Figure 25 is expressly identified as "exemplary" in the specification, JTX-003, 26:3-6. Because Dr. Ilkov's "conclusory testimony" on written description "ignore[d]" "embodiment[s] of the invention described" by the specification, JMOL of sufficient description should be granted. *Koito*, 381 F.3d at 1154-1155 ("as a matter of law," claim was sufficiently described).

In contrast to Dr. Ilkov's failure to address the intrinsic evidence, Dr. Schaafsma explained that a "collimated beam" was not "essential," Trial Tr. 1041:21-1042:4, and that the specification discussed an embodiment that "converge[s] and relay[s] an image" as the beam propagates throughout the WDM, Trial Tr. 1043:8-1044:13.

The argument that other patents and applications in the family claim "a collimating optical element and a collimated beam," Trial Tr. 972:11-21, does not change the fact that the specification's written description is broader. *Supra* pp. 19-20. Moreover, Dr. Ilkov did not explain ***why*** these unasserted claims were evidence that claims 4 and 10 lack written description. Trial Tr. 972:11-21. Such "conclusory testimony . . . does not suffice as substantial evidence of invalidity." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1339 (Fed. Cir. 2016) (citation omitted).

Dr. Ilkov also failed to establish that a collimating optical element is an "essential element" of these claims. Rather, Dr. Ilkov's testimony was conclusory and did not explain ***why*** a collimating optical element would constitute an essential

element of the claims. *See* Trial Tr. 971:23-972:3 (asserting with no explanation "This is essential component in the WDM"). Again, Dr. Ilkov's "general and conclusory testimony" cannot support the verdict. *WBIP*, 829 F.3d at 1339 (alternation and citation omitted).

Finally, Dr. Ilkov's testimony that a WDM would not work without a collimating optical element, Trial Tr. 971:14-22, 972:22-25, is contrary to his opinion that Cytek's system works by focusing, rather than collimating, light into Cytek's optical detection module, Trial Tr. 944:13-945:22.[8] As Dr. Schaafsma explained, those of skill in the art would know how to implement a WDM without a collimated beam by, for example using "[a]n imaging optical arrangement" that "focus[es] the beam," and the specification discloses an "imaging" approach that could be used, Trial Tr. 1042:5-1043:14; *see* JTX-003, 57:3-15 (WDM "may comprise an imaging optical arrangement 902" that "forms a beam of light from the . . . light source," which "may be an outlet of an optical fiber" that "transfer[s] detected light . . . to the WDM"). For at least these reasons, no reasonable jury could find that claims 4 and 10 lack sufficient written description.

---

[8] *See also* Trial Tr. 566:2-12 (Dr. Jiang discussing the "fiber focus lens . . . used to focus the fluorescent light into the optical detection module").

### E. At Minimum, a New Trial Should Be Granted on these Issues

At minimum, a new trial on (1) non-obviousness of claim 18; (2) RDOE for claims 4 and 18; (3) direct infringement of claim 3; and (4) written description for claims 4 and 10 is warranted because the jury's verdict on these issues was against the great weight of the evidence and upholding these determinations would be a miscarriage of justice. *Supra* §§ III.A-D.

On claim 18, Cytek presented ***no evidence*** regarding key elements of the obviousness analysis. *Supra* § III.A. Thus, the jury's obviousness determination was plainly against the great weight of evidence and "cries out to be overturned." *Williamson*, 926 F.2d at 1353; *see also Union Carbide Chems. & Plastics Tech. v. Shell Oil Co.*, 308 F.3d 1167, 1187 (Fed. Cir. 2002) (relying on defendant's burden to prove invalidity and affirming new trial on obviousness where prior art did not "suggest[]" claim limitation). Likewise, it would be a miscarriage of justice to allow Cytek to prevail on RDOE, direct infringement of claim 3, and written description for claims 4 and 10 based solely on legally deficient expert testimony, where Beckman presented clear evidence of infringement and sufficient written description. *Supra* §§ III.B-D. Accordingly, at minimum, this Court should grant a new trial on these issues.

## IV. CONCLUSION

Beckman respectfully requests JMOL or, in the alternative, a new trial on each issue raised in this motion.

*<u>/s/ Frederick L. Cottrell III</u>*
Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
Gabriela Z. Monasterio (#7240)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com
monasterio@rlf.com

*Attorneys for Plaintiff*

OF COUNSEL:

Robert J. Gunther, Jr.
Omar A. Khan
Jeffrey A. Dennhardt
Laura Macro
Lauren Matlock-Colangelo
Jennifer L. Graber
Maggie Sawin
Kelly A. Todd
Khalil Waddell
WILMER CUTLER PICKERING HALE and DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

James Dowd
WILMER CUTLER PICKERING HALE and DORR LLP
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
(213) 443-5300

Thomas G. Saunders
Patrick Nyman, Ph.D.
WILMER CUTLER PICKERING HALE and DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037

Dated: October 13, 2026