IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| BECKMAN COULTER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 24-945 (CFC) (EGT) |
| | ) | |
| CYTEK BIOSCIENCES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CYTEK BIOSCIENCES, INC.'S OPENING BRIEF IN SUPPORT OF ITS RULE 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW OR, ALTERNATIVELY, RULE 59 MOTION FOR A NEW TRIAL**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@morrisnichols.com
jtigan@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendant Cytek Biosciences, Inc.*

OF COUNSEL:

Reuben H. Chen
Alexandra Leeper
HanByul Chang
Juan Pablo Gonzalez
Lauren Strosnick
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304

Adam Pivovar
Dustin M. Knight
David Yun
COOLEY LLP
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004

Elizabeth M. Flanagan
COOLEY LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402

Joseph Van Tassel
COOLEY LLP
Reston Town Center
11951 Freedom Drive, 14th Floor
Reston, VA 20190

October 13, 2026

# TABLE OF CONTENTS

**Page**

I. NATURE AND STAGE OF PROCEEDINGS ... 1

II. SUMMARY OF ARGUMENTS ... 1

III. LEGAL STANDARD ... 2

IV. ARGUMENTS ... 3

A. JMOL of No Infringement of ’582 Patent, Claim 3 Under DoE Is Warranted For Insufficient Evidence ... 3

1. The Jury Found Cytek Uses a Non-Collimated Focused/Defocused Beam ... 3

2. Schaafsma’s DoE Theory Lacked Specificity and Does Not Provide a Legally Sufficient Basis for DoE Infringement ... 6

B. JMOL Is Warranted Because BEC’s DoE Theory Is Barred Under Well-Established Legal Doctrines ... 13

1. Schaafsma’s DoE Testimony Impermissibly Vitiates the Recited “Portion of the Collimated Beam” ... 14

2. Prosecution History Estoppel Bars Schaafsma’s DoE Theory ... 16

3. Disclosure-Dedication Also Bars BEC’s DoE Theory ... 20

C. The Term “Collimated Beam” Is Indefinite, Rendering ’582 Patent, Claim 3 Invalid ... 22

D. JMOL Should Be Granted That Claim 18 of the ’107 Patent Lacks Written Description ... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Biosig Instruments, Inc. v. Nautilus, Inc.*,
783 F.3d 1374 (Fed. Cir. 2015) ....................24

*Brita LP v. Int'l Trade Comm'n*,
156 F.4th 1326 (Fed. Cir. 2025) ....................26

*Callaway Golf Co. v. Acushnet Co.*,
576 F.3d 1331 (Fed. Cir. 2009) ....................29

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
480 F.3d 1335 (Fed. Cir. 2007) ....................20

*Eagle Pharms. Inc. v. Slayback Pharma LLC*,
958 F.3d 1171 (Fed. Cir. 2020) ....................20

*Enviro Tech Chem. Servs., Inc. v. Safe Foods Corp.*,
174 F.4th 919 (Fed. Cir. 2026) ....................25

*Festo v. Shoketsu Kinzoku Kogyo Kabushiki*,
344 F.3d 1359 (Fed. Cir. 2003) ....................16, 19, 20

*Freedman Seating Co. v. Am. Seating Co.*,
420 F.3d 1350 (Fed. Cir. 2005) ....................14

*Gentry Gallery, Inc. v. Berkline Corp.*,
134 F.3d 1473 (Fed. Cir. 1998) ....................25, 28

*IBSA Institut Biochimique, S.A. v. Teva Pharms. USA, Inc.*,
966 F.3d 1374 (Fed. Cir. 2020) ....................25

*Johnson & Johnston Assoc. Inc. v. R.E. Service Co.*,
285 F.3d 1046 (Fed. Cir. 2002) (en banc) ....................20

*Juno Thers., Inc. v. Kite Pharma, Inc.*,
10 F.4th 1330 (Fed. Cir. 2021) ....................29

*Magnolia Med. Techs., Inc. v. Kurin, Inc.*,
2023 WL 5000562 (D. Del. Aug. 4, 2023)....................22

**TABLE OF AUTHORITIES**
**continued**

**Page(s)**

*Mycogen Plant Sci., Inc. v. Monsanto Co.*,
243 F.3d 1316 (Fed. Cir. 2001) ....................29

*NexStep, Inc. v. Comcast Cable Commc'ns, LLC*,
119 F.4th 1355 (Fed. Cir. 2024) ....................6, 11, 13

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
789 F.3d 1335 (Fed. Cir. 2015) ....................22

*Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*,
90 F.3d 1558 (Fed. Cir. 1996) ....................7

*Tronzo v. Biomet, Inc.*,
156 F.3d 1154 (Fed. Cir. 1998) ....................15

*VLSI Tech. LLC v. Intel Corp.*,
87 F.4th 1332 (Fed. Cir. 2023) ....................7, 12

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*,
520 U.S. 17 (1997)....................2, 6, 11, 13

**Other Authorities**

35 U.S.C. § 112....................26

Fed. R. Civ. P. 50(a)(1)....................2

## TABLE OF ABBREVIATIONS

| Abbreviation | Term/Meaning |
|---|---|
| ’582 patent | U.S. Patent No. 10,330,582 |
| ’443 patent | U.S. Patent No. 11,703,443 |
| ’107 patent | U.S. Patent No. 12,174,107 |
| Asserted Patents | ’582 patent; ’443 patent; ’107 patent |
| Asserted Claims | Claim 3, of the ’582 patent; claims 4 and 10 of the ’443 patent; claim 18 of the ’107 patent |
| BEC | Plaintiff Beckman Coulter, Inc. |
| Cytek | Defendant Cytek Biosciences, Inc. |
| JMOL | Judgment as a Matter of Law |
| DoE | Doctrine of Equivalents |
| Schaafsma | Dr. David Schaafsma, Ph.D., BEC’s expert |
| Tr. | Trial Transcript |
| RDOE | Reverse Doctrine of Equivalents |
| POSA | Person of Ordinary Skill in the Art |
| APD | Avalanche photodiode |
| WDM | Wavelength Division Multiplexer |
| COE | Collimating Optical Element |
| PTX | Plaintiff’s Trial Exhibit |
| PDX | Plaintiff’s Demonstrative Exhibit |
| JTX | Joint Trial Exhibit |

**All emphasis added unless otherwise noted

## I. NATURE AND STAGE OF PROCEEDINGS

A jury trial was held August 17-21. The jury returned a verdict of no infringement and invalidity on ’443 patent, claims 4 and 10, and ’107 patent, claim 18. The jury found no literal infringement of ’582 patent, claim 3, but infringement of claim 3 under the doctrine of equivalents (“DoE”). (D.I. 459 (verdict).)

## II. SUMMARY OF ARGUMENTS

***No Infringement Under DoE.*** JMOL is warranted for the sole claim found infringed under DoE—’582 patent, claim 3. First, Schaafsma’s DoE testimony lacked the required particularity and linking argument on a limitation-by-limitation basis for each of the five claim elements at issue. (*See* Tr. 381:6-383:16.) Second, BEC’s DoE theory impermissibly vitiates the recited “collimated beam” limitation. Third, prosecution history estoppel bars BEC from recapturing the claim scope it surrendered during prosecution. Fourth, if Schaafsma’s testimony is credited, the disclosure-dedication rule forecloses equivalents because the specification discloses an embodiment that is not claimed.

***Indefiniteness.*** Claim 3 is also indefinite as a matter of law. The parties agree that a beam can be either diverging/defocused, collimated, or converging/focused. But the ‘582 specification provides no reasonable guidance for how much convergence or divergence a beam may exhibit before it ceases to be “collimated,” rendering the term indefinite.

***Lack of Written Description.*** ’107 patent, claim 18 lacks written description as a matter of law. The ’107, ’443, and ’582 patents share the same specification, which describes only WDMs that include a “collimating optical element” (COE) and does not disclose any WDM configuration without one. Consistent with the jury’s finding that ’443 patent, claims 4 and 10 lack written description, the jury heard undisputed testimony from Cytek’s expert, and BEC’s corporate witness, that the claimed “WDM” works only with a COE. Like the other asserted claims, because claim 18 recites a “WDM” without a COE, it too lacks written description support.

## III. LEGAL STANDARD

JMOL should be granted if the Court “finds that a reasonable jury would not have a legally sufficient evidentiary basis” to find for the nonmoving party. Fed. R. Civ. P. 50(a)(1). Further, DoE is limited by the legal doctrines of claim vitiation, prosecution history estoppel, and disclosure-dedication, which are for the Court to decide. (D.I. 376-5, 12-13.) *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997) (“the various legal limitations on the application of the doctrine of equivalents are to be determined by the court”).

# IV. ARGUMENTS

## A. JMOL of No Infringement of ’582 Patent, Claim 3 Under DoE Is Warranted For Insufficient Evidence

### 1. The Jury Found Cytek Uses a Non-Collimated Focused/Defocused Beam

’582 patent, claim 3 is directed to an “optical subsystem” that propagates a collimated beam, as illustrated in PDX-3.20[1]:

| ’582 Patent, Claim 3 | | Cytek |
|---|---|---|
| 1[a] | An optical subsystem for a flow cytometer, the optical subsystem comprising: | |
| 1[b] | a collimating optical element arranged to receive light from a light source, the collimating optical element configured to project a collimated beam; | |
| 1[c] | an optical relay element arranged to receive at least a portion of the collimated beam from the collimating optical element; | |
| 1[d] | the optical relay element comprising a curved mirror configured to reflect the portion of the collimated beam received from the collimating optical element to produce a first image; | |
| 1[e] | a first focusing optical element arranged to receive at least a portion of the collimated beam reflected by the optical relay element; and | |
| 1[f] | a first semiconductor detector, wherein the first focusing optical element is configured to focus the portion of the collimated beam received from the optical relay element onto the first semiconductor detector. | |
| 2 | The optical subsystem of claim 1, further comprising the light source, wherein the light source comprises light passing through a pinhole or light emitted from a facet of a multimode optical fiber. | |
| 3 | The optical subsystem of claim 2, wherein the first focusing optical element is configured to focus the portion of the collimated beam received from the optical relay element to a size smaller than 1 millimeter in diameter. | |

PDX-3.20

Schaafsma’s admissions, coupled with the verdict, reflect factual determinations by the jury that Cytek’s accused APD module does ***not*** meet the required collimated beam limitations along the optical path after focusing lens L2:[2]

[1] This brief uses the element annotations for claim 3 BEC used at trial.

[2] Schaafsma presented this annotated demonstrative of an optical ray tracing image for Cytek’s APD module, derived from PTX-2824, with alphanumeric labels—i.e.,




First, Schaafsma confirmed that: (1) L2 is a "focusing lens" and "the beam between L2 and F1 is not collimated because it's focused" (Tr. 392:8-16, 439:9-19); (2) "from F1 to M1, that's the defocused reflected portion of the beam, and that's not collimated" and "the mirror M1 is receiving a beam of light that is not collimated" (Tr. 439:20-440:5); (3) from "M2 to F3, we see that the beam is focused again," "[t]hat portion right there is not a collimated beam," and that for M2 "[t]he reflected beam is not collimated" (Tr. 440:13-21). Schaafsma provided undisputed testimony that M1 and M2 were, respectively, representative of all odd and even mirrors in the accused modules. (*See, e.g.*, Tr. 364:19-365:22.)

---

L (lens), F (filter), M (mirror), FL (focusing lens) onto detector (D)—in support of his testimony. (PDX-3.16; Tr. 339:20-341:22.)

Second, the jury's finding of no infringement of '443 patent, claim 10 while finding infringement of '443 patent, claim 4 (which does not recite a "collimated beam") necessarily reflects a factual determination that the beam between the odd-mirrors and even-filters (e.g., M1-to-F2) is not a "collimated beam." (D.I. 459, 2.) That is so because claim 10's "collimated beam" requirement—i.e., the "second"/"fourth filter" [F2/F4] is configured to receive a "first"/"second collimated beam of the light" from the "first"/"third mirror" [M1/M3] was the only disputed issue distinct from claim 4 to distinguish claim 10's non-infringement finding. (*See* Tr. 958:5-8, 959:4-23, 960:21-961:7, 969:2-18.)

The record therefore demonstrates Cytek's APD module has no "collimated beam" anywhere along the optical path L2-F1-M1-F2-M2-F3-M3-F4-etc. In other words, no curved mirror receives or reflects a "collimated beam," let alone both receiving ***and*** reflecting a "collimated beam" as required by claim elements 1[c] and 1[d]. There is also no focusing lens (FL) in Cytek's module that receives a "collimated beam" from any curved mirror (M) or focuses a "collimated beam" onto a detector (D) as claim elements 1[e] and 1[f] require. (Tr. 432:21-433:14, 434:22-435:20, 436:11-437:11.)

Although recognizing "the claim requires a collimated beam in several recited locations" (Tr. 389:1-4), Schaafsma never identified or addressed any differences between the recited limitations of claim 3 and the non-collimated focused/defocused

beam in Cytek's module. (*See* Tr. 364:19-382:10.) Instead, Schaafsma's plain meaning interpretation of "portion of the collimated beam" recited in claim elements 1[c], 1[d], 1[e], 1[f], and 3, did not require the "portion of the collimated beam" to itself be collimated. (Tr. 359:15-360:1, 365:19-366:12; *see also id.* 487:9-16.) Schaafsma attempted to support his literal infringement theory from subject matter disclosed in the specification, but not the claims. (*See* Tr. 1044:5-16, 315:7-24, 318:23-319:4, 1043:25-1044:4; *see also id.* 492:1-495:14.)

The jury rejected Schaafsma's interpretation, finding no literal infringement. (*See* Tr. 357:11-358:5; D.I. 459, 2.) In so doing, the jury necessarily found claim 3 requires the "optical relay element" (1[c]/1[d]) and "first focusing optical element" (1[e]/1[f]/3) to receive, reflect, and/or focus "a/the portion of the collimated beam"—not merely a portion of a beam that has ceased to be collimated.

### 2. Schaafsma's DoE Theory Lacked Specificity and Does Not Provide a Legally Sufficient Basis for DoE Infringement

Schaafsma's sparse, product-level analysis was legally insufficient to meet Plaintiff's evidentiary burden for DoE.

"[P]roof under the doctrine of equivalents must be on a limitation-by-limitation basis: '[T]he doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole.'" *NexStep, Inc. v. Comcast Cable Commc'ns, LLC*, 119 F.4th 1355, 1370 (Fed. Cir. 2024) (quoting *Warner-Jenkinson Co.* 520 U.S. at 29 (1997)). The law also imposes strict requirements for

"particularized testimony and linking argument as to the insubstantiality of the differences between the claimed invention and the accused device." *VLSI Tech. LLC v. Intel Corp.*, 87 F.4th 1332, 1343 (Fed. Cir. 2023). "Generalized testimony as to the overall similarity between the claims and the accused infringer's product or process will not suffice." *Tex. Instruments, Inc. v. Cypress Semiconductor Corp.*, 90 F.3d 1558, 1567 (Fed. Cir. 1996).

Schaafsma's DoE theory—spanning less than three transcript pages (Tr. 381:6-383:16)—was directed to five distinct claim elements—1[c], 1[d], 1[e], 1[f] and 3—i.e., "each element in which the portion of the collimated beam is recited" (Tr. 383:9-13):

| | '582 Patent, Claim 3 | Cytek |
|---|---|---|
| 1[a] | An optical subsystem for a flow cytometer, the optical subsystem comprising: | ✓ |
| 1[b] | a collimating optical element arranged to receive light from a light source, the collimating optical element configured to project a collimated beam; | ✓ |
| 1[c] | an optical relay element arranged to receive at least a portion of the collimated beam from the collimating optical element; | ✓ |
| 1[d] | the optical relay element comprising a curved mirror configured to reflect the portion of the collimated beam received from the collimating optical element to produce a first image; | ✓ |
| 1[e] | a first focusing optical element arranged to receive at least a portion of the collimated beam reflected by the optical relay element; and | ✓ |
| 1[f] | a first semiconductor detector, wherein the first focusing optical element is configured to focus the portion of the collimated beam received from the optical relay element onto the first semiconductor detector. | ✓ |
| 2 | The optical subsystem of claim 1, further comprising the light source, wherein the light source comprises light passing through a pinhole or light emitted from a facet of a multimode optical fiber. | ✓ |
| 3 | The optical subsystem of claim 2, wherein the first focusing optical element is configured to focus the portion of the collimated beam received from the optical relay element to a size smaller than 1 millimeter in diameter. | ✓ |

PDX-3.57

(Tr. 381:6-11 (referencing PDX-3.57).)

But Schaafsma's function-way-result testimony was directed solely to element 1[c]:




(*See* Tr. 381:12-383:8 (PDX-3.58-61 (only identifying 1[c]).)

His only DoE testimony for elements 1[d], 1[e], 1[f], and 3 was conclusory and bootstrapped onto his "analysis" for element 1[c]:

> **Q.** Is your analysis under the doctrine of equivalents the same for each element in which the portion of the collimated beam is recited?
>
> **A.** Yes, it is.

(Tr. 383:10-13.)

Schaafsma's function-way-result testimony for element 1[c] was unclear, conclusory, and inconsistent. (*See* Tr. 382:2-383:3.) Regarding the "function," he testified:

> **A.** In the claim, the function, the portion of the collimated beam, the function of using this optical relay to transmit this, the portions of the collimated beam is to control the beam diameter, is to make sure that we're not losing light when it -- such that it would become larger than the mirror filters in the system. We want to keep it controlled.
>
> **Q.** How does that compare with the function in the Cytek WDM APD module?
>
> **A.** The Cytek APD module does exactly that.

(Tr. 382:2-13.)

Schaafsma's "function" testimony referred to an "optical relay" but never mentions that the "optical relay element" recited in 1[c] must be "arranged to receive at least a portion of the collimated beam from the collimating optical element." (JTX-001 (claim 1[c]).) After stating his new, redefined function for 1[c] "to control beam diameter" and "make sure that we're not losing light," Schaafsma merely concluded equivalence without explanation. (Tr. 382:11-13.)

Regarding the "way," Schaafsma testified:

> **A.** Right. The patent describes an optical relay that has curved mirrors, and the Cytek product has curved mirrors that do perform that same function. It is an optical relay.

(Tr. 382:15-20.)

This testimony was generic to "curved mirrors" without addressing any distinctions between the odd/even mirrors in Cytek's module and relied on "that same" redefined function—but not the function recited in 1[c] ("arranged to receive

at least a portion of the collimated beam from the [COE]"). (Tr. 440:3-21; JTX-001 (1[c]).)

Finally, Schaafsma's testimony regarding the "result" was ambiguously directed to a comparison between the claim and the product and was again untethered to element 1[c]:

> **A.** Right. The motivation for doing this was so that we could separate out portions of the light and detect them using sensitive detectors. And that's what's described in the patent. This is what Cytek's model shows. They are the same.

(Tr. 382:24-383:3.) This was directed to an overall function of separating and detecting light—he never explained how this purported "result" is directed to any limitations recited in claim element 1[c], let alone any other claim element.

Beyond this function-way-result testimony, Schaafsma presented a catchall theory to cover "any difference" between Cytek's module and the literal scope of the claim:

> **Q.** And have you formed a conclusion based on that analysis about whether, if there is any difference between the Cytek product and the claim, those are substantial or insubstantial differences?
>
> **A.** I believe they are insubstantial.

(Tr. 381:20-24; *see also* 383:4-8 (same).) But Schaafsma never identified "any difference" between Cytek's product and the literal claim scope, nor did he ever explain how or why any unidentified "difference" was equivalent to any recited limitation of claim 3. (*See* Tr. 381:6-383:16.)

Taken as a whole, Schaafsma's DoE testimony is legally insufficient to support a DoE verdict.

As an initial matter, Schaafsma's generic testimony about "the claim" and "the Cytek product" violates the long-standing legal principle that DoE "must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson*, 520 U.S. at 29. And Schaafsma's additional testimony failed to "provide particularized testimony and linking argument" on "a limitation-by-limitation basis," as the law requires. *See, e.g.*, *NexStep*, 119 F.4th at 1373.

First, Schaafsma did not testify about each element to support his DoE theory. He provided no particularized testimony and linking argument on a limitation-by-limitation basis with respect to 1[d]/1[e]/1[f]/3 against Cytek's module. (Tr. 383:10-13.) Instead, he relied on high level conclusions about Cytek's products containing an "optical relay," which did not address individual claim elements. This alone warrants JMOL in Cytek's favor. *See, e.g.*, *NexStep*, 119 F.4th at 1374 ("conclusory and circular 'because I said so' testimony is insufficient").

Second, Schaafsma failed to explicitly identify the accused equivalents in Cytek's module on a limitation-by-limitation basis, instead impermissibly deferring to the jury to make any such determination based on his unspecified "if there is any difference" testimony. (*See* Tr. 381:20-24, 383:4-8.) *See NexStep*, 119 F.4th at 1373 ("the failure to explicitly identify the alleged equivalent is fatal").

Third, Schaafsma's "way" testimony for element 1[c] being a "curved mirror" is irrelevant to any plausible "way" associated with the "first focusing optical element" and "portion of the collimated beam" limitations recited by elements 1[e]/1[f]/3. (*See* Tr. 367:18-21 (identifying a "half-ball lens"—not a curved mirror—as the purportedly recited "first focusing optical element").) Plus, Cytek intentionally designed its module to alternately focus and defocus a non-collimated beam between optical elements: this design propagates light across a greater number of detectors to enable full-spectrum profiling, and receives, separates, and detects light in a substantially different "way" than the claimed collimated-beam-architecture system. (*E.g.*, Tr. 565:7-566:12, 940:3-941:18, 943:17-944:8, 967:13-968:17, 1044:5-16; *see also* D.I. 459, 4 (RDOE).) *See VLSI*, 87 F.4th at 1341-46. This is only highlighted by the jury's RDOE finding on other claims that Cytek's spectral flow cytometers operate in a fundamentally different way.

Fourth, Schaafsma's "optical relay" testimony with respect to the "function" and "way" likewise fails because he never separately addressed claim elements 1[c]/1[d]. (Tr. 382:2-20.) These elements recite an "optical relay element" with specific and distinct limitations associated with how it must be "arranged to receive" (1[c]) ***and*** "configured to reflect" (1[d]) the "portion of the collimated beam . . . from the collimating optical element," not any generic "optical relay" with "curved mirrors." (*Id.*) Schaafsma admitted there is no curved mirror in Cytek's APD

module that is both "arranged to receive" and "configured to reflect" a collimated beam. (Tr. 440:3-21.) Yet, his "way" testimony was directed to any "optical relay that has curved mirrors, and the Cytek product has curved mirrors" because "[i]t is an optical relay" (Tr. 382:17-20), which is circular and fails to separately address the distinct limitations recited in 1[c] and 1[d]. Failure on this alone warrants JMOL.

Fifth, Schaafsma's testimony also failed to account for the functional differences between the accused components. The odd-mirrors (e.g., M1) receive a defocused, non-collimated beam, while the even-mirrors (e.g., M2) also receive a non-collimated beam, while reflecting a focused, non-collimated beam. (Tr. 440:3-21; *supra* IV.A.1.) Schaafsma never identified which mirror configuration he contended was equivalent to the "optical relay element" in 1[c], or why. *See, e.g.*, *NexStep*, 119 F.4th at 1373 ("If a jury is not told what components are equivalent, it necessarily cannot find those components to be equivalent to a claim limitation.").

Because Schaafsma's testimony fails to provide a legally sufficient basis to support a DoE finding, JMOL is warranted.

### B. JMOL Is Warranted Because BEC's DoE Theory Is Barred Under Well-Established Legal Doctrines

JMOL is also warranted because, in addition to lacking sufficient evidence, BEC's DoE theory is barred under the legal doctrines of claim vitiation, prosecution history estoppel, and disclosure-dedication, which are for the Court to decide. *Warner-Jenkinson*, 520 U.S. at 39 n.8.

### 1. Schaafsma's DoE Testimony Impermissibly Vitiates the Recited "Portion of the Collimated Beam"

"[A]n element of an accused product or process is not, as a matter of law, equivalent to a limitation of the claimed invention if such a finding would entirely vitiate the limitation" i.e., where on the facts and theories presented in a case "the alleged equivalent can[not] be fairly characterized as an insubstantial change from the claimed subject matter without rendering the pertinent limitation meaningless." *Freedman Seating Co. v. Am. Seating Co.*, 420 F.3d 1350, 1358-59 (Fed. Cir. 2005).

Schaafsma's DoE theory impermissibly vitiates the "collimated beam" requirement of the "portion of the collimated beam" recited in 1[c] (and throughout claim 3) of the '582 patent. Element 1[c] recites a structure—an "optical relay element"—that must be "arranged to" perform the recited function of "receiv[ing] at least a portion of the collimated beam from the collimating optical element." Schaafsma's testimony vitiates the recited function by rewriting the claim such that the recited "optical relay element" is instead arranged "to control the beam diameter, is to make sure that we're not losing light when it – such that it would become larger than the mirror filters in the system. We want to keep it controlled." (*See* Tr. 382:2-10.) But controlling the beam diameter is not the function recited for the "optical relay element" in 1[c], and in fact appears nowhere in the claim, resulting in vitiation.

Schaafsma's control-beam-diameter and not-lose-light functions further fail to distinguish between beam types. His admissions confirm that a beam can be either

"collimated," "focused," or "defocused" and there are "three different ways we can characterize how rays of light change" in a beam through a lens by having the "light converging, light is collimating and light diverges." (Tr. 394:20-396:13; *see also* Tr. 424:12-425:21, 434:5-435:13; 1044:5-16.) The specification also distinguishes between a beam that is "collimated" (e.g., JTX-001, 5:8-9), "nearly collimated" (e.g., a "nearly collimated circular Gaussian beam" (e.g., JTX-001, 28:29-30)), "focused" (e.g., JTX-001, 6:48), and "tightly focused" (e.g., JTX-001, 5:15). (*See also* Tr. 482:18-483:23.) Indeed, element 1[f] itself distinguishes between an input "collimated beam" and the controlled, non-collimated focused beam output projected onto the "semiconductor detector." (JTX-001 (claim 3).)

Under Schaafsma's theory, these distinctions between different beams are rendered meaningless. (*See* Tr. 967:15-968:5.) A collimated beam, a nearly collimated beam, a focused beam, a tightly focused beam, and a defocused beam can all equally be "controlled" without "losing light" depending on the size of the optical elements—such that under Schaafsma's "function," there is no distinction among them regardless of how much (or how little) convergence or divergence there is within the beam. (*Id.*) This is precisely the type of conclusory theory the Federal Circuit rejected in *Tronzo v. Biomet, Inc.*: just as "any shape would function essentially the same way" improperly "write[s]...the limitation out of the claims," 156 F.3d 1154, 1160 (Fed. Cir. 1998), so too a function that does not differentiate

between collimated, nearly collimated, focused, tightly focused, and defocused beams alike writes "collimated" out of the claim entirely.

JMOL therefore should be granted based on vitiation.

**2. Prosecution History Estoppel Bars Schaafsma's DoE Theory**

Prosecution history estoppel "bars the patentee from relying on the doctrine of equivalents for the accused element" when: (1) the amendment has "narrowed the literal scope of the claim;" (2) "the reason for that amendment was a substantial one relating to patentability;" and (3) the patentee cannot rebut "the presumption that the patentee has surrendered all territory between the original claim limitation and the amended claim limitation." *Festo v. Shoketsu Kinzoku Kogyo Kabushiki*, 344 F.3d 1359, 1366-1367, 1368 (Fed. Cir. 2003).

Here, claim 3 was substantially narrowed for patentability during prosecution specifically to require additional propagation of a portion of a collimated beam to specific elements within the optical relay. BEC is thus barred from asserting DoE of the "portion of a collimated beam" limitations.

Claim 3 was originally presented as claims 364-366 in a preliminary amendment:

**AMENDMENT TO THE CLAIMS**

The listing of claims will replace all prior versions, and listing of claims in the application.

1-363. (cancelled)

364. (New) An optical module for a flow cytometer, the optical module comprising:

(a) a light source;

(b) a collimating optical element arranged to receive light from the light source, the collimating optical element configured to project a collimated beam; and

(c) an optical relay arranged to receive at least a portion of the collimated beam from the collimating optical element, the optical relay configured to project at least a portion of the collimated beam to a first focusing optical element,

wherein the optical relay is one of a curved mirror and a refractive lens.

365. (New) The optical module of claim 364, wherein the light source is one of light passing through a pinhole and light emitted from a facet of a multimode optical fiber.

366. (New) The optical module of claim 365, wherein the first focusing optical element is configured to focus the collimated beam to a size smaller than 1 millimeter in diameter to a first semiconductor detector.

(JTX-002.4.)

The Examiner rejected these claims based on prior art. (JTX-002.565-578.)

The patentee responded to the rejection by amending claims 364-366, as follows:

**AMENDMENTS TO THE CLAIMS**

This listing of claims will replace all prior versions, and listings, of claims in the application:

1-363. (Canceled).

364. (Currently Amended) An optical ~~module~~ subsystem for a flow cytometer, the optical ~~module~~ subsystem comprising:

~~(a) a light source;~~

~~(b)~~ a collimating optical element arranged to receive light from ~~the~~ a light source, the collimating optical element configured to project a collimated beam; ~~and~~

~~(c)~~ an optical relay element arranged to receive at least a portion of the collimated beam from the collimating optical element, the optical relay element comprising a curved mirror configured to ~~project at least a~~ reflect the portion of the collimated beam received from the collimating optical element to produce a first image;

a first focusing optical element~~, wherein the optical relay is one of a curved mirror and a refractive lens~~ arranged to receive at least a portion of the collimated beam reflected by the optical relay element; and

a first semiconductor detector,

wherein the first focusing optical element is configured to focus the portion of the collimated beam received from the optical relay element onto the first semiconductor detector.

365. (Currently Amended) The optical ~~module~~ subsystem of claim 364, further comprising the light source, wherein the light source ~~is one of~~ comprises light passing through a pinhole ~~and~~ or light emitted from a facet of a multimode optical fiber.

366. (Currently Amended) The optical ~~module~~ subsystem of claim 365, wherein the first focusing optical element is configured to focus the portion of the collimated beam received from the optical relay element to a size smaller than 1 millimeter in diameter ~~to a first semiconductor detector~~.

(JTX-002.604.)

The patentee's "Remarks" asserted that the prior art failed to "disclose the specific combination of claim 364." (JTX-002.611-617.) And the patentee specifically distinguished the prior art based on the optical relay element's recited configuration:

> ***Further, Heffelfinger does not disclose an optical relay element (that includes a curved mirror) configured to reflect a portion of a collimated beam received from a collimating optical element.*** In rejecting claim 364, the Office identified relay lens 42 and ¶¶ [0047] and [0049] of Heffelfinger as allegedly corresponding to and describing an optical relay. As explained above,

(JTX-002.613-614.) The Examiner then allowed the claim. (JTX-002.635-636.)

Accordingly, the literal scope of claim 3 was materially narrowed regarding element 1[d], for purposes of patentability. (*See* JTX-002.604.) Additionally, original claim 364 merely recited a "first focusing optical element"—full stop—but the amendments added narrowing limitations to what became elements 1[e] and 1[f]:

> a first focusing optical element~~, wherein the optical relay is one of a curved mirror and a refractive lens~~ arranged to receive at least a portion of the collimated beam reflected by the optical relay element; and
>
> a first semiconductor detector,
>
> wherein the first focusing optical element is configured to focus the portion of the collimated beam received from the optical relay element onto the first semiconductor detector.

(JTX-002.604.) The patentee thus presumptively further surrendered scope regarding any "first focusing optical element" under 1[e]/1[f] that is not arranged/configured to receive/focus a/the "portion of the collimated beam." *See Festo*, 344 F.3d at 1367.

BEC cannot carry its burden to rebut the presumption of surrender as unforeseeable, tangential, or for "some other reason." *See id.* at 1368; *see also Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 480 F.3d 1335, 1342 (Fed. Cir. 2007) (the "tangential" exception is "very narrow"). Because BEC cannot recapture claim scope it surrendered during prosecution for elements 1[d], 1[e], and 1[f], Cytek should be granted JMOL.

### 3. Disclosure-Dedication Also Bars BEC's DoE Theory

"[W]hen a patent drafter discloses but declines to claim subject matter … this action dedicates that unclaimed subject matter to the public." *Johnson & Johnston Assoc. Inc. v. R.E. Service Co.,* 285 F.3d 1046, 1054 (Fed. Cir. 2002) (en banc). This disclosure-dedication rule "bars application of the doctrine of equivalents." *Eagle Pharms. Inc. v. Slayback Pharma LLC*, 958 F.3d 1171, 1175 (Fed. Cir. 2020).

Schaafsma's testimony supports applying the disclosure-dedication rule. To support literal infringement, Schaafsma opined the '582 patent discloses a relay that converges and focuses/defocuses the light "exactly how Cytek[']s" product operates. (Tr. 1044:5-16; *see also* Tr. 315:7-23, 318:23-319:4.)




**Q.** And if we go, actually, to PDX-9.17. And we reproduced here JTX-1, which is ***Column 46 at Lines 30 to 35***. Can you tell us whether the patents actually describe this idea of ***focus, defocus, focus, defocus within the relay***?

**A.** This is something that conveys what the relay does. You are going to be able to converge and relay an image in this beam as it transits the relay.

**Q.** ***So does the patent actually describe exactly how Cytek explains its WDM***?

**A.** ***Yes, it does***.

(Tr. 1044:5-16 (emphases added); *see also id.* 315:7-23, 318:23-319:4, 1043:25-1044:4; *see also id.* 492:1-495:14.) Schaafsma's testimony thus asserted that an equivalent to the optical relay elements 1[c]/1[d] was disclosed in the written description covering Cytek's non-collimated "focus, defocus, focus, defocus with the relay." (*Id.*; *see also* Tr. 318:4-6 ("It's in the written description of the patent.").)

The written description that Dr. Schaafsma relies on states: "It should be understood by those having skill in the art that the concave mirror can be replaced

with ***a convex lens***, which is also able to converge and relay the beam of light." (JTX-001 at 46:32-35.) But no claim of the '582 patent recites an embodiment using a convex lens. The jury's finding of no literal infringement further confirms that any "focus, defocus, focus, defocus with[in] the relay" is unclaimed, even if, as Schaafsma testified, it was disclosed by the specification's invocation of a convex lens "able to converge and relay the beam of light." (*Id.*)

Because Schaafsma testified that the patent discloses "exactly how Cytek explains its WDM" (Tr. 1044:5-16), but that subject matter is unclaimed, it has been dedicated to the public. Cytek thus cannot infringe under DoE as a matter of law.

### C. The Term "Collimated Beam" Is Indefinite, Rendering '582 Patent, Claim 3 Invalid

JMOL of indefiniteness is warranted because "read in light of the specification and the prosecution history, the patentee [BEC] has failed to inform with *reasonable certainty* those skilled in the art about the scope of the invention." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1345 (Fed. Cir. 2015) (emphasis in original). Indefiniteness is an issue of law. *Magnolia Med. Techs., Inc. v. Kurin, Inc.*, 2023 WL 5000562, at *14 (D. Del. Aug. 4, 2023).

The Court construed "collimated beam" to have its plain meaning but reserved ruling on indefiniteness (D.I. 151 (*Markman* Hr'g Tr.), 133:11-15, 134:15-135:2 (noting "serious concerns")), expecting the experts to "tell me and tell the jury what is an acceptable degree of divergence or convergence that would not render

something non-collimat[ed]." (*Id.*, 110:15-20.) BEC never provided any such "acceptable degree" evidence. As Cytek's expert, Dr. Ilkov, explained, neither the patent nor prosecution history provides any objective guidance for a POSA to distinguish a "collimated beam" from a non-collimated beam with reasonable certainty. (*E.g.*, Tr. 961:11-968:17.)

BEC's experts instead offered several formulations of the purported plain meaning of "collimated beam," all of which included imprecise, subjective terms of degree. (*See, e.g.*, Tr. 273:2-17 ("maintains ***substantially*** the same diameter and with rays that are ***slightly*** converging and/or diverging but remain ***nearly*** paral[lel]"), 305:1-4 ("rays that are ***more nearly*** parallel"); 341:13-18 ("***nearly*** parallel" rays); 480:11-12 ("There will always be ***some degree*** of convergence and divergence"); 483:5-10 ("***well collimated***" over "certain distance"); 486:19-487:2 ("determine ***how well a beam is collimated***", "the beam maintains a ***pretty consistent*** diameter"); 1039:25-1040:2.)

As Ilkov testified, skilled artisans would disagree over whether rays are sufficiently "nearly parallel" and thus considered "collimated" under BEC's subjective interpretations. (Tr. 961:11-962:20.) This problem is only further highlighted by the jury's DoE verdict – what degree of convergence and divergence is not literally satisfied, but sufficient under DoE? The patent provides no answer.

"When a word of degree is used, the court must determine whether the patent

provides some standard for measuring that degree." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015) (cleaned up). BEC offered no evidence, and nothing in the specification provides any objective standard for how much convergence or divergence differentiates a "collimated" from a non-collimated beam.

Indeed, in response to the Court's questions, Schaafsma could point to no objective standard. (*See* Tr. 480:6-487:1.) For example, referring to the image below, the Court asked: "how do you know whether the [beam] on the left [of the lens], the convergence, is not too much such that it's collimated, but the one on the right is significant enough that it's not collimated and it's focused? How do you distinguish between that?" (Tr. 481:22-482:2.)




**Figure 3.2-4** Focusing a collimated beam.

(PTX-726A.0004.) Schaafsma gave the (non-)answer: "So to give you an answer from the art, in optics, ***we don't generally make these characterizations based on convergence, divergence***." (Tr. 482:3-5.) But when the Court later asked: "How do you know that if you looked at this, that the beam between the lens and that focal point are focusing as opposed to collimated?," Schaafsma answered: "***Just based on***

***pure convergence***." (*Id.*, 485:24-486:3.) These responses highlight the subjective indefiniteness of the term with no guidance in the patent. *See IBSA Institut Biochimique, S.A. v. Teva Pharms. USA, Inc.*, 966 F.3d 1374, 1381 (Fed. Cir. 2020) (affirming indefiniteness where expert "was unable to articulate a boundary").

BEC's prosecution statements concerning whether a "collimated beam" excludes or includes "converging" light (as its experts contended at trial) likewise were inconsistent and ambiguous. (*Compare* DTX-0040.0009-0010 (collimation "is not 'focus[ing]' the fluorescent light, which instead involves converging the light" and "light 'effectively collimated' by collimating optical element 902 [in Figure 25] is not converging") *with* DTX-0714.0417 ("collimation means generally maintaining the width of a beam for some distance, including by, for example, limiting its convergence or divergence"); *see also* Tr. 401:14-405:17, 1036:23-1038:15.) These inconsistent prosecution statements further support indefiniteness. *Enviro Tech Chem. Servs., Inc. v. Safe Foods Corp.*, 174 F.4th 919, 923 (Fed. Cir. 2026).

JMOL thus should be granted based on indefiniteness.

### D. JMOL Should Be Granted That Claim 18 of the '107 Patent Lacks Written Description

JMOL that '107 patent, claim 18 lacks written description is warranted because it recites a "WDM" without an essential element of the invention, a "collimating optical element" (COE). *See Gentry Gallery, Inc. v. Berkline Corp.*,

134 F.3d 1473, 1479 (Fed. Cir. 1998) (§112 requires claims to recite an invention's "essential element"); *Brita LP v. Int'l Trade Comm'n*, 156 F.4th 1326, 1332 (Fed. Cir. 2025) (invalid for covering more than specification described).

Claim 18, drafted years after the original patent and after filing of this case without the inventor's involvement (*see* Tr., 743:1-10, 21-24), claims a flow cytometer with a broadly recited WDM that does not require a COE and covers any "light":

> **16**. A flow cytometer comprising:
> a flow cell configured to permit liquid to flow through the flow cell;
> a laser configured to project light into the flow cell;
> a multimode optical fiber configured to receive light from the flow cell; and
> a wavelength division multiplexer (WDM) configured to receive light from the multimode optical fiber, wherein the WDM comprises:
> a plurality of mirrors, wherein at least one of the mirrors is a concave mirror;
> a plurality of filters; and
> a plurality of avalanche photodiodes (APDs) configured to receive light that passed through one or more filters of the plurality of filters;
> wherein each of the plurality of filters is configured to receive light such that:
> a portion of light passes through the filter; and
> another portion of light is reflected; and
> wherein each of the plurality of mirrors is configured to:
> receive light reflected by a filter of the plurality of filters; and
> reflect light to another filter of the plurality of filters.
>
> **17**. The flow cytometer of claim **16**, wherein the WDM further comprises:
> a plurality of focusing lenses, wherein each of the plurality of focusing lenses is configured to focus light that passed through a filter of the plurality of filters to a spot on an APD of the plurality of APDs, wherein the spot has a diameter that is smaller than a diameter of a core of the multimode optical fiber.
>
> **18**. The flow cytometer of claim **17**, wherein for each of the plurality of focusing lenses, the diameter of the spot is less than 1 mm.

(JTX-005, cl. 18; *see* Tr. 1094:8-1095:11.) Yet the specification teaches the "WDM

includes … a collimating optical element" 902. (JTX-003, Abstract, 45:1-53 ("collimating optical element 902"), FIG. 25.) This COE 902, as Schaafsma agreed in discussing FIG. 25, "takes light from light source 901 and projects it onto this first filter 903" in the WDM. (Tr. 391:4-10.)




FIG. 25

(JTX-005, FIG. 25 (annotated).)

Cytek's expert testified a POSA would have understood a collimated beam is a "requirement" based on the patent's disclosure that "efficient color separation" can only be accomplished economically with a collimated beam. (Tr. 971:9-13 (citing JTX-003, 44:34-42).) Accordingly, a POSA would understand the COE is an

"essential component in the WDM" because without a COE "the light from the fiber will be diverging," meaning "this light will be mostly lost" and could not achieve color separation. (Tr. 971:23-972:3, 972:22-25, 973:1-13, 974:8-9; *see also* 979:24-980.) BEC witness Dr. Shi agreed, admitting he is not aware of any WDM designed by inventor Chen, Xitogen, or BEC "that would work if there was no collimating lens to collect the light from the fiber-optic." (Tr. 776:13-25, 793:19-23.)

Schaafsma only reinforced this. Schaafsma pointed to the "imaging optical arrangement 902" as allegedly providing an alternative way "to get the light into the WDM." (Tr. 1042:22-1043:14 (citing JTX-003, 57:3-7).) But that passage refers to the same "FIGS. 25, 27, and 28" and the same element 902, "imaging optical arrangement **902**," as the "collimating optical element **902**." (*Compare* JTX-003, 57:3-7 *with* 45:1-53.) Thus, the evidence showed the specification disclosed only a WDM that includes and works with a COE to collect and collimate light from the fiber optic. Since claim 18 encompasses a WDM without a COE, the claim lacks written description for its full scope. (Tr. 979:24-980, 969:2-974:14.) *See Gentry Gallery*, 134 F.3d at 1479.

The jury's finding that '443 patent, claims 4 and 10 lack written description further supports JMOL of claim 18. Those claims cover a "WDM" that likewise does not recite a COE and broadly encompasses use of "uncontrolled light." (Tr. 1094:8-1095:11.) The same testimony and evidence was presented against those

claims and claim 18. (Tr. 979:24-980:3.) Schaafsma offered no opinion separately addressing claim 18. (Tr. 1041:5-1044:25.) Because the evidence was the same, no reasonable jury could have reached different verdicts on those patents. Therefore, JMOL that claim 18 lacks written description should be granted. *See Juno Thers., Inc. v. Kite Pharma, Inc.*, 10 F.4th 1330, 1342 (Fed. Cir. 2021).

Alternatively, JMOL should be granted to "resolve" the inconsistency in the verdict. *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1326 (Fed. Cir. 2001) (recognizing duty to resolve inconsistency).

Finally, if JMOL on written description is denied and other JMOL rulings reverse both the jury's RDOE and obviousness findings, Cytek requests a new trial on written description. *See Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1344-45 (Fed. Cir. 2009).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jeremy A. Tigan*

Karen Jacobs (#2881)
Jeremy A. Tigan (#5239)
Cameron P. Clark (#6647)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
kjacobs@morrisnichols.com
jtigan@morrisnichols.com
cclark@morrisnichols.com

*Attorneys for Defendant*
*Cytek Biosciences, Inc.*

Reuben Chen
Alexandra Leeper
HanByul Chang
Juan Pablo Gonzalez
Lauren Strosnick
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
(650) 843-5000
rchen@cooley.com
aleeper@cooley.com
HanByul.chang@cooley.com
jgonzalez@cooley.com
lstrosnick@cooley.com

Adam Pivovar
Dustin M. Knight
David Yun
COOLEY LLP
1299 Pennsylvania Avenue NW,
Suite 700
Washington, DC 20004
(202) 842-7800
apivovar@cooley.com
dknight@cooley.com
dyun@cooley.com

Elizabeth M. Flanagan (#5891)
COOLEY LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402
bflanagan@cooley.com

Joseph Van Tassel
COOLEY LLP
Reston Town Center
11951 Freedom Drive, 14th Floor
Reston, VA 20190
(703) 456-8000
jvantassel@cooley.com

October 13, 2026

**WORD COUNT CERTIFICATION**

The undersigned counsel hereby certifies that the foregoing document contains 5,000 words, which were counted using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2026, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 13, 2026, upon the following in the manner indicated:

Frederick L. Cottrell III *VIA ELECTRONIC MAIL*
Kelly E. Farnan
Christine D. Haynes
RICHARDS, LAYTON & FINGER P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801
*Attorneys for Plaintiff*

Omar A. Khan *VIA ELECTRONIC MAIL*
Jeffrey A. Dennhardt
Lauren E. Matlock-Colangelo
Kelly A. Todd
Laura Macro
Maggie Sawin
Robert J. Gunther, Jr.
Gillian T. Farrell
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
*Attorneys for Plaintiff*

Daniel S. Perry
WILMER CUTLER PICKERING HALE AND
DOOR LLP
1225 17th Street
Suite 2600
Denver, Colorado 80202
*Attorneys for Plaintiff*

*VIA ELECTRONIC MAIL*

Akkad Y. Moussa
WILMER CUTLER PICKERING HALE
AND DORR LLP
2100 Pennsylvania Avenue NW
Washington DC 20037
*Attorneys for Plaintiff*

*VIA ELECTRONIC MAIL*

James M. Dowd
WILMER CUTLER PICKERING HALE AND
DORR LLP
350 South Grand Avenue
Los Angeles, California 90071
*Attorneys for Plaintiff*

*VIA ELECTRONIC MAIL*

*/s/ Jeremy A. Tigan*

Jeremy A. Tigan (#5239)