**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| BECKMAN COULTER, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CYTEK BIOSCIENCES, INC.,<br><br>Defendant. | C.A. No. 24-0945-CFC<br><br>**PUBLIC VERSION** |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF MOTION TO AMEND JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(e)**


OF COUNSEL:

Robert J. Gunther, Jr.
Omar A. Khan
Jeffrey A. Dennhardt
Laura Macro
Lauren E. Matlock-Colangelo
Jennifer L. Graber
Maggie Sawin
Kelly A. Todd
Khalil Waddell
WILMER CUTLER PICKERING
HALE and DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

James M. Dowd
WILMER CUTLER PICKERING
HALE and DORR LLP

Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
Gabriela Z. Monasterio (#7240)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com
monasterio@rlf.com

*Attorneys for Plaintiff*

350 South Grand Avenue
Los Angeles, California 90071
(213) 443-5300

Thomas G. Saunders
WILMER CUTLER PICKERING
HALE and DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037

Dated: October 13, 2026

# TABLE OF CONTENTS

Page


I. INTRODUCTION ....... 1

II. FACTUAL BACKGROUND ....... 1

III. ARGUMENT ....... 2

A. SUPPLEMENTAL DAMAGES THROUGH JUDGMENT ....... 2

B. PREJUDGMENT INTEREST ....... 3

C. POST-JUDGMENT INTEREST ....... 4

D. ONGOING ROYALTY ....... 4

1. Beckman Should Be Awarded Ongoing Royalties on Post-Judgment Sales ....... 4

2. An Increased Ongoing Royalty Is Appropriate ....... 5

i. Beckman Has Greater Bargaining Power Post-Verdict ....... 6

ii. Post-Verdict Economic Circumstances Support a Higher Royalty ....... 8

a. More Direct Competition (*Georgia-Pacific* Factor 5) ....... 8

b. Cytek's Derivative Service Revenue Has Increased (*Georgia-Pacific* Factor 6) ....... 9

c. Cytek Now Uses the Patented Technology More Extensively to Earn Greater Profit (*Georgia-Pacific* Factors 8 and 11) ....... 9

iii. Other Post-Verdict Circumstances Support a Higher Royalty ....... 10

a. Shorter Duration and Cytek's Entrenchment Reduce Its Design-Around Incentive (*Georgia-Pacific* Factor 7) ....... 10

b. Inflation Has Eroded the Value of the Jury-Awarded Rate ....... 11

iv. Other *Georgia-Pacific* Factors Favor Beckman to the Same or Greater Degree as Presented at Trial ....... 11

3. The Court Should Set the Ongoing Royalty at $12,750 per WDM-APD Module ..... 12

IV. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012) ....................6

*Amado v. Microsoft Corp.*,
517 F.3d 1353 (Fed. Cir. 2008) ....................6

*ArcherDX, LLC v. Qiagen Scis. LLC*,
(D. Del. Sept. 30, 2022) ....................4

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
876 F.3d 1350 (Fed. Cir. 2017) ....................5, 12

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*,
670 F.3d 1171 (Fed. Cir. 2012) ....................12

*Bayer Healthcare LLC v. Baxalta Inc.*,
989 F.3d 964 (Fed. Cir. 2021) ....................2

*Bos. Sci. Corp. v. Cordis Corp.*,
838 F. Supp. 2d 259 (D. Del. 2012) ....................8

*E.I. du Pont de Nemours & Co. v. Unifrax I LLC*,
2017 WL 4004419 (D. Del. Sept. 12, 2017) ....................2

*Gen. Motors Corp. v. Devex Corp.*,
461 U.S. 648 (1983) ....................3

*IMX, Inc. v. LendingTree, LLC*,
469 F. Supp. 2d 203 (D. Del. 2007) ....................3

*Magnolia Med. Techs., Inc. v. Kurin, Inc.*,
2026 WL 2679390 (D. Del. Sept. 11, 2026) ....................3

*Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*,
2025 WL 3653157 (D. Del. Dec. 17, 2025) ....................3

*Mondis Tech. Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d 639
(E.D. Tex. 2012) ....................9

*Paice LLC v. Toyota Motor Corp.*,
504 F.3d 1293 (Fed. Cir. 2007) ....................................................4, 7

*Paice LLC v. Toyota Motor Corp.*,
609 F. Supp. 2d (E.D. Tex. 2009)....................................................7

*Purewick Corp. v. Sage Prods., LLC*,
666 F. Supp. 3d 419 (D. Del. 2023)....................................................5

*Sensonics, Inc. v. Aerosonic Corp.*,
81 F.3d 1566 (Fed. Cir. 1996) ....................................................3

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*,
612 F.3d 1365 (Fed. Cir. 2010) ....................................................5

*VB Assets, LLC v. Amazon.com Servs. LLC*,
2024 WL 5090650 (D. Del. Dec. 12, 2024) ....................................................11

*Whitserve, LLC v. Computer Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012) ....................................................2, 3, 4

*XY, LLC v. Trans Ova Genetics, L.C.*,
890 F.3d 1282 (Fed. Cir. 2018) ....................................................5, 6, 9

**STATUTES**

28 U.S.C. § 1961 ....................................................4

35 U.S.C. § 284 ....................................................2

## I. INTRODUCTION

Plaintiff Beckman Coulter, Inc. ("Beckman") respectfully moves to amend the September 15, 2026 Judgment (D.I. 474) to award (1) supplemental damages at the jury's rate of $10,500 per WDM-APD module for Cytek's infringement from October 1, 2025 through September 15, 2026[1]; (2) prejudgment interest; (3) post-judgment interest; and (4) an ongoing royalty of $12,750 per infringing WDM-APD module through expiration of the '582 patent.

## II. FACTUAL BACKGROUND

The jury found that Cytek's Aurora and Northern Lights flow cytometers infringe claim 3 of the '582 patent under the doctrine of equivalents and that claim 3 is not invalid. D.I. 459 at 3, 8. It awarded Beckman $56.11 million for past infringement: $20 million in lost profits and $36.11 million in reasonable royalties. D.I. 466 at 2. The reasonable royalty award adopted in full the $10,500 royalty rate per infringing WDM-APD module proffered by Beckman's damages expert. Tr. 1329:24-1330:6, 1332:7-12; *see also* PDX-14.82. The damages evidence at trial covered infringement from December 1, 2022 through September 30, 2025. Tr.

[1] Because Cytek has yet to produce updated sales data through September 15, 2026 as of the filing of this brief, the calculations herein account only for Cytek's additional infringing sales made through August 2026. Beckman reserves all rights to supplement its calculations when additional sales data becomes available.

1294:22-24, 1387:3-8. The Court entered a non-final Judgment on September 15, 2026. D.I. 474.

## III. ARGUMENT

### A. SUPPLEMENTAL DAMAGES THROUGH JUDGMENT

"District courts have discretion to award damages for periods of infringement not considered by the jury." *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 38 (Fed. Cir. 2012); *see* 35 U.S.C. § 284 ("When the damages are not found by a jury, the court shall assess them."). Courts routinely award supplemental damages by applying the jury's rate to sales the jury did not consider. *See Bayer Healthcare LLC v. Baxalta Inc.*, 989 F.3d 964, 985-88 (Fed. Cir. 2021) (affirming supplemental damages at jury-awarded rate); *E.I. du Pont de Nemours & Co. v. Unifrax I LLC*, 2017 WL 4004419, at *7 (D. Del. Sept. 12, 2017) ("Typically, supplemental damages are calculated based on the jury's damages verdict.").

The damages evidence at trial stopped at September 30, 2025. Tr. 1294:22-24, 1387:3-8; Riley Decl. ¶15. Cytek has continued to make and sell the infringing products since then. Riley Decl. ¶15. Because the jury's verdict did not include these additional sales, supplemental damages are appropriate. Beckman therefore requests supplemental damages from October 1, 2025 through September 15, 2026

at the jury-awarded rate of $10,500 per WDM-APD module,[2] for a total of $8,704,500. Riley Decl. ¶¶15-19.

**B. PREJUDGMENT INTEREST**

Prejudgment interest is awarded to place the patentee "in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement." *Whitserve*, 694 F.3d at 36-37 (citation omitted); *see also General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655 (1983); *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996).

Delaware courts "recognize[] that the prime rate best compensate[s] a patentee for lost revenues during the period of infringement[.]" *IMX, Inc. v. LendingTree, LLC*, 469 F. Supp. 2d 203, 227 (D. Del. 2007) (citation omitted). Accordingly, "[t]he most common practice in the District of Delaware is to calculate pre-judgment interest at the prime rate, and to compound pre-judgment interest on a quarterly basis." *Midwest Energy Emissions Corp. v. Arthur J. Gallagher & Co.*, 2025 WL 3653157, at *9 (D. Del. Dec. 17, 2025) (internal quotation marks omitted); *see also Magnolia Med. Techs., Inc. v. Kurin, Inc.*, 2026 WL 2679390, at *3 (D. Del. Sept. 11, 2026). Beckman thus requests prejudgment interest using the prime rate,

[2] Although the verdict did not separately state the per unit rate, it is clear that the jury adopted the $10,500 per unit rate proffered by Ms. Riley by awarding the full reasonable royalty amount—$36.11 million. Tr. 1294:18-21; *see also* PDX-14.82.

compounded quarterly, from December 1, 2022 through September 15, 2026, totaling $10,562,210. Riley Decl. ¶¶20-27.

### C. POST-JUDGMENT INTEREST

"Post-judgment interest is mandatory[.]" *ArcherDX, LLC v. Qiagen Scis. LLC*, 2022 WL 4597877, at *19 (D. Del. Sept. 30, 2022); 28 U.S.C. § 1961(a). It is awarded at the rate "equal to the weekly average 1-year constant maturity Treasury yield . . . for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a).

Judgment was entered on September 15, 2026. D.I. 474. The weekly average 1-year constant maturity Treasury yield for the preceding week was 4.24%. Riley Decl. ¶29. Beckman respectfully requests post-judgment interest at that rate, computed daily and compounded annually, on the entire judgment, including supplemental damages and prejudgment interest. 28 U.S.C. § 1961(b); *ArcherDX*, 2022 WL 4597877, at *19.

### D. ONGOING ROYALTY

#### 1. Beckman Should Be Awarded Ongoing Royalties on Post-Judgment Sales

"[A]warding an ongoing royalty for patent infringement in lieu of an injunction may be appropriate." *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1314 (Fed. Cir. 2007); *see also Whitserve*, 694 F.3d at 35. An ongoing royalty ensures that a patent owner is "compensated for . . . continuing infringement,"

*Telcordia Techs., Inc. v. Cisco Sys., Inc.*, 612 F.3d 1365, 1379 (Fed. Cir. 2010), and avoids the need for repeated lawsuits to recover damages for later infringement.

Beckman and Cytek are competitors in the flow cytometer market, but rather than seek a permanent injunction, Beckman requests the more modest remedy of an ongoing royalty on Cytek's post-judgment infringement. Cytek continues to sell the infringing products. Riley Decl. ¶15. Absent an ongoing royalty, Beckman would not be fully compensated and would need to keep bringing suit for further damages.

**2. An Increased Ongoing Royalty Is Appropriate**

In awarding an ongoing royalty, courts consider "what a hypothetical negotiation would look like after the prior infringement verdict." *XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1297 (Fed. Cir. 2018) (emphasis omitted). "Generally, the jury's damages award is a starting point for evaluating ongoing royalties." *Purewick Corp. v. Sage Prods., LLC*, 666 F. Supp. 3d 419, 449 (D. Del. 2023) (citation omitted). The court then considers "(i) the 'change in the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability'; (ii) 'changed economic circumstances, such as changes related to the market for the patented products'; and (iii) any other 'post-verdict factor' that would impact" the negotiation. *Id.* (quoting *XY*, 890 F.3d at 1297). Courts may use the *Georgia-Pacific* factors as a guide. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1370 (Fed. Cir. 2017).

The starting point here is the $10,500 rate the jury adopted based on Ms. Riley's 2019 *Georgia-Pacific* analysis. *See supra* n.2. A 2026 negotiation would produce a higher royalty for several reasons. ***First***, the judgment that Beckman's patent is valid and infringed—and that Cytek's infringement diverts Beckman's sales—substantially improves Beckman's bargaining position. ***Second***, economic circumstances have shifted certain *Georgia-Pacific* factors further in Beckman's favor. ***Third***, other factors, including the shorter patent term and inflation, make this a different bargain than it was in 2019.

**i. Beckman Has Greater Bargaining Power Post-Verdict**

The Federal Circuit has held that a verdict creates a "substantial shift in the bargaining position of the parties," *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1342 (Fed. Cir. 2012), and "there is a 'fundamental difference' between 'a reasonable royalty for pre-verdict infringement and damages for post-verdict infringement,'" *XY*, 890 F.3d at 1297 (quoting *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1360 (Fed. Cir. 2008)). Thus, "when calculating an ongoing royalty rate, the district court should consider the 'change in the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability.'" *XY*, 890 F.3d at 1297 (quoting *Amado*, 517 F.3d at 1362).

For example, in a hypothetical negotiation considered by a jury, the patentee is deemed to be a willing licensor without the ability to withhold use of its invention. By contrast, in a post-verdict negotiation, the patentee has the added leverage of the right to request a permanent injunction. *Paice*, 504 F.3d at 1314 (ongoing royalties may be awarded "in lieu of an injunction"). Further, even without a guarantee that enhanced damages would be awarded, the defendant's status as a willful infringer in the wake of the verdict creates a risk of enhanced damages that would factor into the negotiation. *See Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 626 (E.D. Tex. 2009) (infringer failed to consider "that its continued infringement is willful and that a new lawsuit . . . would likely result in treble damages").

Ignoring the "stronger bargaining position" of the victor at trial "would create an incentive for every defendant to fight each patent infringement case to the bitter end because without consideration of the changed legal status[.]" *Telcordia Techs.*, 2014 WL 1457797 at *4 (citation omitted). For all these reasons, "courts frequently impose a post-verdict ongoing royalty rate that is higher than the reasonable royalty found at trial[.]" *Id.* The Court should do the same here, as Cytek would pay substantially more for a license post-verdict. Riley Decl. §VII.

The jury's lost profits award further strengthens Beckman's position. While the pre-verdict hypothetical negotiation assumes validity and infringement, it does not assume that the infringement will divert the licensor's sales. By awarding lost

profits, the jury found that Beckman directly competes with Cytek and that Cytek's infringement cost Beckman sales. *See, e.g.*, D.I. 464, at 7-8. Post-verdict, the parties would acknowledge that Cytek's ongoing infringement will continue to cost Beckman sales—losses Beckman forgoes by not seeking a lost profits award—and would agree to a higher royalty reflecting both components of the jury's award. *See Boston Sci. Corp. v. Cordis Corp.*, 838 F. Supp. 2d 259, 276 (D. Del. 2012) (awarding ongoing royalty at the effective rate of the jury's combined reasonable royalty and lost profits award).

**ii. Post-Verdict Economic Circumstances Support a Higher Royalty**

Multiple factors support a higher royalty than the $10,500 rate awarded by the jury.

**a. More Direct Competition (*Georgia-Pacific* Factor 5)**

The parties compete more directly for sales. At trial, Cytek argued that customers purchase the infringing products for spectral capabilities. For example, Cytek's expert attributed approximately 75% of Beckman's recorded losses to Cytek to spectral capability. Tr. 1402:3-8; *see also* Tr. 1369-73. Putting aside that the jury rejected that argument, the market has since shifted. Beckman's Mosaic spectral module, launched in March 2025, has matured since September 2025, and Beckman increasingly competes with Cytek for spectral customers, Riley Decl. ¶¶49-51,

which increases the rate Beckman would demand to license a direct competitor. Tr. 1328:21-25.

**b. Cytek's Derivative Service Revenue Has Increased (*Georgia-Pacific* Factor 6)**

At trial, Ms. Riley identified approximately $55 million in service revenue associated with Cytek's infringing sales, which she testified would tend to increase the royalty. Tr. 1329:4-12. Cytek has since increasingly leveraged service contracts to drive revenue, resulting in a substantial increase in service revenue in the one-year post-damages period. Riley Decl. ¶¶53-54. Each infringing instrument sale is therefore worth more to Cytek than its purchase price alone reflects. *Id.* And because Cytek's infringing sales displace Beckman's, that service revenue is revenue Beckman would otherwise earn. *Id.* Accordingly, this factor would tend to increase the royalty rate. *Id.* ¶54.

**c. Cytek Now Uses the Patented Technology More Extensively to Earn Greater Profit (*Georgia-Pacific* Factors 8 and 11)**

Changes in the market and commercial success of the patented technology favor a higher ongoing royalty. *See XY*, 890 F.3d at 1297 (district court must "consider changed economic circumstances"); *Mondis Tech. Ltd. v. Chimei InnoLux Corp.*, 822 F. Supp. 2d 639, 648 (E.D. Tex. 2012) (*Georgia-Pacific* factors favored increase where patented technology had "proven to be more of a commercial success"). Since the 2019 hypothetical negotiation, Cytek expanded its infringing

use of the patented WDM-APD module. Riley Decl. ¶¶74-77. In June 2026, Cytek announced Borealis, its most expensive product yet, which appears to incorporate more WDM-APD modules than any other Cytek instrument. *Id.* ¶76. Cytek's decision to commercialize its newest and most expensive product around the WDM-APD architecture reflects the increased success Cytek achieved from its infringement.

Cytek's weighted average revenues have also grown, from $252,341 per U.S. analyzer during the damages period at trial to $296,435 over the past year. *Id.* ¶75. Cytek's expanded use of the invention in new products, and its growing success from that use, support that the technology is worth more to Cytek today. A licensee that derives more value from patented technology will pay more for it. *Id.* ¶77.

#### iii. Other Post-Verdict Circumstances Support a Higher Royalty

##### a. Shorter Duration and Cytek's Entrenchment Reduce Its Design-Around Incentive (*Georgia-Pacific* Factor 7)

In June 2019, Cytek faced nearly fourteen years of royalties; today, fewer than seven years remain, and so it is less likely to pursue a design around. Riley Decl. ¶55. Meanwhile, Cytek's sunk costs have risen. Cytek's well-established platform, which includes at least five infringing products, is built around the infringing WDM-APD modules. *Id.* ¶¶58-73. With less to gain and more to lose from a design-around, Cytek would accept a higher royalty.

**b. Inflation Has Eroded the Value of the Jury-Awarded Rate**

The parties would recognize that a per-unit rate based on a 2019 hypothetical negotiation requires adjustment for inflation. Riley Decl. ¶¶78-79. Unlike revenue- or percentage-based royalties, flat per-unit royalties do not scale with inflation. *Id.* Inflation thus justifies an increase to the jury-awarded rate. *See VB Assets, LLC v. Amazon.com Servs. LLC*, 2024 WL 5090650, at *4 (D. Del. Dec. 12, 2024) (finding "increased inflation . . . would itself support a larger royalty rate" by driving up costs). Since 2019, instrument manufacturer prices have risen by approximately 27.84%. Riley Decl. ¶79. At a post-verdict hypothetical negotiation, the parties would thus expect to adjust the per unit royalty upwards to a similar degree.

**iv. Other *Georgia-Pacific* Factors Favor Beckman to the Same or Greater Degree as Presented at Trial**

The remaining *Georgia-Pacific* factors have not materially changed since the 2019 hypothetical negotiation. Beckman's Head of Flow Cytometry Hardware, Matthew Goff, confirmed, for example, that the relative market positions of the principal competitors and the features of the third-party products that Ms. Riley analyzed at trial remain materially the same. Riley Decl. ¶81. These factors therefore neither favor increasing nor decreasing the jury's rate.

### 3. The Court Should Set the Ongoing Royalty at $12,750 per WDM-APD Module

An ongoing royalty of $12,750 per module is appropriate in view of the above and well within the range that courts have awarded. *See Arctic Cat*, 876 F.3d at 1357, 1370 (affirming ongoing royalty, which was double the jury's rate); *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, 670 F.3d 1171, 1192-93 (Fed. Cir. 2012) (affirming ongoing royalty of 12.5% to 20% where jury awarded 10%).

## IV. CONCLUSION

For the foregoing reasons, Beckman respectfully requests that the Court grant its motion to amend the Judgment.

*/s/ Frederick L. Cottrell III*
Frederick L. Cottrell III (#2555)
Kelly E. Farnan (#4395)
Christine D. Haynes (#4697)
Gabriela Z. Monasterio (#7240)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
cottrell@rlf.com
farnan@rlf.com
haynes@rlf.com
monasterio@rlf.com

*Attorneys for Plaintiff*

OF COUNSEL:

Robert J. Gunther, Jr.
Omar A. Khan
Jeffrey A. Dennhardt
Laura Macro
Lauren E. Matlock-Colangelo
Jennifer L. Graber
Maggie Sawin
Kelly A. Todd
Khalil Waddell
WILMER CUTLER PICKERING HALE and DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

James M. Dowd
WILMER CUTLER PICKERING HALE and DORR LLP
350 South Grand Avenue
Los Angeles, California 90071
(213) 443-5300

Thomas G. Saunders
WILMER CUTLER PICKERING HALE and DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037

Dated: October 13, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2026, true and correct copies of the foregoing document were served upon the following counsel of record in the manner indicated:

**BY E-MAIL**

Karen Jacobs
Jeremy A. Tigan
Cameron P. Clark
Morris, Nichols, Arsht & Tunnell LLP
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19801

**BY EMAIL**

Reuben H. Chen
Cooley LLP
3175 Hanover Street
Palo Alto, CA 94304

Elizabeth M. Flanagan
Cooley LLP
30 S. 9th Street, 7th Floor
Minneapolis, MN 55402

Adam Pivovar
Dustin M. Knight
Rosalynd D. Upton
David Yun
Cooley LLP
1299 Pennsylvania Avenue NW
Suite 700
Washington, DC 20004

*/s/ Christine D. Haynes*
Christine D. Haynes (#4697)
haynes@rlf.com

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing Plaintiff Beckman Coulter, Inc.'s Opening Brief in Support of Motion to Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e) complies with the type-volume requirements of the Court's November 6, 2019 Standing Order Regarding Briefing in All Cases and the Court's September 15, 2026 Order Regarding Post-Trial briefing. The text of the brief, including footnotes, was prepared in Times New Roman 14-point font and contains 2,489/5,000 words, and when combined with all of Beckman Coulter's post-trial briefing, the total is 7,464/7,500 words.

*/s/ Frederick L. Cottrell III*
Frederick L. Cottrell III (#2555)
cottrell@rlf.com

Dated: October 13, 2026